## Exhibit 1

## Settlement Agreement

01:23222940.4

**Mediation Term Sheet**
**(In re: Zohar III Corp., et al., Case No. 18-10512 (CSS))**

*15 Month Window* – The period that expires 15 months from the date hereof.

*18 Month Extended Window* – If each of MBIA and the Zohar III Claims receive 50% of their respective Paid in Full amount within the 15 Month Window, the 15 Month Window shall be deemed to be extended by 3 months and shall be hereafter referred to herein as the 18 Month Extended Window.

*Bankruptcy Court* – The United States Bankruptcy Court for the District of Delaware, which is presiding over the Chapter 11 cases of the Debtors.

*Debtors* – The debtors in the Chapter 11 cases captioned: In re: Zohar III Corp., et al., Case No. 18-10512 (CSS).

*Designated Tax Director* - the limited role Tilton shall have on behalf of the Debtors as described in paragraph 2 below.

*Full Payment Date* – The date on which the parties or the classes of noteholders on Exhibit A are Paid in Full.

*Independent Director* – the director appointed by the Mediator. The Independent Director (a) shall be unaffiliated with any party and (b) shall have played no role in connection with and held no claim against or interest in any of the Debtors.

*Indentures* – (1) The Indenture among Zohar CDO 2003-1, Limited, Zohar CDO 2003-1 Corporation, Zohar CDO 2003-1, LLC, and MBIA Insurance Corporation, CDC Financial Products, Inc., and U.S. Bank National Association, dated November 13, 2003; (2) The Indenture among Zohar II 2005-1, Limited, Zohar II 2005-1, Corp., Zohar II 2005-1, LLC, MBIA Insurance Corporation, IXIS Financial Products Inc., and LaSalle Bank National Association, dated January 12, 2005; and (3) The Indenture among Zohar III, Limited, Zohar III, Corp., Zohar III, LLC, Natixis Financial Products Inc., and LaSalle Bank National Association, dated April 6, 2007.

*MBIA* – MBIA Insurance Corp.

*Mediator* – The Honorable Kevin Gross, and if Judge Gross resigns as mediator Judge Sontchi will appoint a replacement mediator.

*Other Stakeholders* – (a) US Bank and MBIA, when not referring to Zohar III, (b) US Bank and the Controlling Class representative when solely referring to Zohar III, and (c) US Bank, MBIA and the Zohar III Controlling Class when referring to Zohar III and either or both of Zohar I and Zohar II.

01:23191627.1

***Paid in Full*** – The amount owed to the parties  and in the amounts listed and calculated on the schedule attached hereto as Exhibit A to be updated monthly to reflect accrued and unpaid interest and fees allowable under the Indentures.[1]

***Patriarch Stakeholder*** – Entities included in Exhibit B.

***Group A Portfolio Companies*** – Those companies listed on the schedule attached hereto as Exhibit C.

***Group B Portfolio Companies*** – Those companies listed on the schedule attached hereto as Exhibit D.[2]

***Tilton*** – Ms. Lynn Tilton.

***U.S. Bank*** – U.S. Bank National Association, solely in its capacity as Trustee under the Indentures, and not in its individual capacity.

***Zohar III Noteholders*** – those entities or the classes of noteholders listed on the schedule attached hereto as Exhibit E.

***Zohar III Claims*** – Claims under the Zohar III Indenture $[X]

***Zohar Funds*** – collectively, Zohar CDO 2003-1, Limited; Zohar CDO 2003-1 Corporation; nondebtor Zohar CDO 2003-1, LLC; Zohar II 2005-1, Limited; Zohar II 2005-1, Corp.; nondebtor Zohar II 2005-1, LLC; Zohar III, Limited; Zohar III, Corp.; and nondebtor Zohar III, LLC)

**Terms**

---

[1]    This footnote is intended to cover MBIA's claims.  Other than the Policy Payment in the amount of $148,951,585 with respect to Zohar I and the Policy Payment of $770,109,326 with respect to Zohar II reflected on Exhibit A, the calculation of which amounts are not subject to challenge by Tilton; all other rights reserved.  MBIA will consult in good faith with Tilton regarding the other amounts and calculations specified in Exhibit A.   If the parties are unable to agree on those other amounts, the matter shall be referred to the Mediator.  If the Mediator is unable to resolve the dispute, the matter shall be brought to the Bankruptcy Court for resolution.  Any equity interest owed to MBIA or Zohar I, as applicable, will be escrowed until the expiration of the 15 Month Window; all parties' rights reserved.  Any proceeds from the sale or repayment of Zohar I loans (but not the equity interest) shall be paid directly to MBIA.

[2]    Group B Portfolio Companies will exclude the Group A Portfolio Companies.

1. The Mediator shall appoint a single Independent Director for each of the Zohar Funds (same director shall be appointed for all of the Zohar Funds).  The Independent Director shall not have the power to convert or dismiss the Chapter 11 cases during the 15 Month Window.  Tilton shall resign as a director of each and shall have no governance authority or responsibility for the Zohar Funds, other than as Designated Tax Director.  On the Full Payment Date, the Independent Director shall be deemed to resign and Tilton shall be automatically reinstated as director of each of the Zohar Funds (with all powers attendant to such position also automatically reinstated).

2. Notwithstanding anything to the contrary herein except subject only to paragraph 3 and 14, Tilton shall remain the director of each of the Debtors (until such time as she is no longer the taxpayer for the Debtors, the Group B Portfolio Companies, and Group A Portfolio Companies) solely for the purpose of exercising (and having no other rights or authority) to (a) manage the tax liability and reporting of the Debtors and the Group B Portfolio Companies, (b) manage the tax reporting of the Group A Portfolio Companies and (c) with respect to the Group B Portfolio Companies, manage any event causing cancellation of debt income (forgiveness of debt, liquidation, unwind, or foreclosure) including to manage the timing of sale of the Group B Portfolio Companies, forgiveness of debt and realizing gains and losses (the "Designated Tax Director").  In that capacity, Tilton shall continue to bear the tax liability associated with ownership of the Debtors, the Group B Portfolio Companies, and the Group A Portfolio Companies, including with respect to any Group A Portfolio Company transactions.

3. Subject to the last sentence of this paragraph 3, if the Full Payment Date does not occur within the 15 Month Window, Tilton and the CRO shall negotiate in good faith on how to monetize the Group B Portfolio Companies.  In the event of any dispute in such negotiations, in the first instance such dispute shall be referred to the Mediator.  If the Mediator cannot resolve any or all disputes, the parties shall jointly seek an order of the Bankruptcy Court resolving such disputes.

4. [TBD: CRO and LT will develop reasonable process milestones related to hiring bankers, ....]

5. The Group A Portfolio Companies will be sold without regard to Tilton's personal tax liability.

6. The Independent Director/CRO shall appoint a new independent administrative agent under the Zohar credit agreements (the "New Agent") who shall report only to the Independent Director/CRO and U.S. Bank ; provided, (a) that PPAS remains the administrative agent under the Zohar credit agreements for all purposes related to the Patriarch Stakeholders and any other third party; and (b) during the 15 Month Window or the 18 Month Extended Window, as applicable, the New Agent shall

have all rights and remedies available under the Credit Agreement with respect to the Zohar interests in the Group A Portfolio Companies; provided, however, that the New Agent shall not have the ability to take any action, declare any default or exercise any remedy with respect to any Group A Portfolio Company (other than for prospective non-payment of interest) or any Group B Portfolio Company and subject to the tolling of claims and other terms hereof. PPAS, the Independent Director/CRO, and the New Agent shall use reasonable efforts to transition existing Zohar-related PPAS matters to the new agent. Subject to the approval of the Independent Director/CRO. PPAS shall use commercially reasonable efforts to take all reasonable actions to ensure the continued validity and perfection of any security interests and liens for loans transferred to the New Agent. PPAS may be reimbursed for reasonable transition costs incurred in transition to the New Agent. If there is any dispute with respect to any of the foregoing, in the first instance such dispute shall be referred to the Mediator. If the Mediator cannot resolve that dispute, the parties shall jointly seek an order of the Bankruptcy Court resolving that dispute. Nothing in the foregoing paragraph shall prejudice rights and remedies of the parties to Patriarch Partners Agency Services, LLC v. Zohar CDO 2003-1, Ltd., No. 16-cv-4488 (S.D.N.Y.), in the event that litigation is resumes.

7. If the Independent Director resigns prior to the Full Payment Date, the Mediator shall appoint a replacement Independent Director. In connection therewith, the Mediator shall consult with the controlling class of Zohar III noteholders, MBIA and Tilton about director candidates. The Independent Director shall be fully charged with governance of the Zohar Funds under applicable Cayman or Delaware law.

8. The Independent Director will retain a CRO to participate in the process to monetize the Debtors' interests in the Group A Portfolio Companies, whether through sale or refinancing (the "*Monetization Process*"). The CRO shall (a) replace the current CRO, (b) be unaffiliated with any party, and (c) have played no role in connection with and held no claim against or interest in any of the Debtors; provided, however, that Rob Kost may be considered for any role in the monetization process, by the CRO. The Independent Director and CRO each will execute a standard NDA consistent with the practice in the District of Delaware.

9. Tilton shall remain in her position as director, manager and officer, as applicable, of the Group A Portfolio Companies during the 15 Month Window, or, if qualified, for the 18 Month Extended Window. During the 15 Month Window or, if qualified, for the 18 Month Extended Window, all parties agree that no action shall be taken to remove Tilton from any such position.

10. With full and joint authority, Independent Director/CRO, with full authority on behalf of the Debtors, and Tilton, with full authority on behalf of the Group A Portfolio Companies, will conduct a process to monetize the Group A Portfolio

Companies and the Group B Portfolio Companies. It is acknowledged that the CRO will act in the best interests of the Zohar Funds, and Tilton in the best interests of the Group A Portfolio Companies. Tilton and the CRO shall jointly select bankers and other professionals, prioritize sales, oversee the bid process and select transactions to complete. Tilton shall work with the CRO, who shall jointly with Tilton choose bankers to be retained for Group A Portfolio Company sales. Each shall have full and complete information regarding the Monetization Process and sources and uses of funds in any transaction consummated as part of the Monetization Process. Tilton and the CRO shall use good faith, commercially-reasonable efforts to coordinate prospective meetings with bankers and buyers. But in no event shall the CRO interfere in any way with the operations of the Group A Portfolio Companies and the Group B Portfolio Companies.

11. Any dispute with respect to the Monetization Process between the Independent Director/CRO and Tilton, in the first instance, shall be referred to the Mediator. If the dispute cannot be resolved by the Mediator, the parties retain all rights to seek an order of the Bankruptcy Court resolving such dispute.

12. Tilton and the CRO shall work jointly as outlined herein to monetize the Group A Portfolio Companies until such time as the (i) the parties each agree in writing to terminate this settlement agreement, such agreement to be granted or withheld in their sole respective discretion or (ii) the Full Payment Date.

13. At the Full Payment Date, MBIA and the Zohar III Noteholders shall have no direct or indirect claim against, or interest or participation in the Zohar Funds or the Group A Portfolio Companies; provided, however, that the resolution of any dispute regarding the escrow referenced in footnote 1 shall not be barred as of the Full Payment Date by the provisions of this paragraph.

14. The 225 Action remains subject to the stay subject to satisfaction of the 15 Month Window. The Status Quo Orders entered in the 225 Action are held in abeyance and shall have no effect during the 15 Month Window or 18 Month Extended Window with respect to the Monetization Process involving any Group A Portfolio Company.

15. MBIA and Zohar III shall form a Zohar Fund creditors committee (the "Committee") to oversee and monitor the Zohar bankruptcy. The CRO shall provide the Committee members with all information necessary to assess and represent the interests of the Other Stakeholders other than information whose distribution is reasonably limited at the request of investment bankers or potential buyers. The committee shall be comprised of 3 representatives. The members and their respective advisors shall execute standard NDAs consistent with the practice in the District of Delaware. The reasonable fees and expenses of the Committee and its advisors shall be set forth in a budget to be approved by the CRO and shall

be paid by the estates. All other litigation, motions and contested matters between any of the parties other than the 225 Action as discussed above, shall be stayed, with appropriate protections so there is no prejudice to any parties. Except as specifically set forth herein, no other litigation, motions, and/or contested matters may be re-initiated or brought (directly or indirectly) by (a) any Other Stakeholders, (b) the Debtors, (c) the New Agent, (d) the Group A Portfolio Companies, (e) the Group B Portfolio Companies, and (f) any Collateral Manager, seeking any relief against the Patriarch Stakeholders (and their respective officers, directors, employees, affiliates and agents), or any of the Group A or Group B Portfolio Companies.

For the avoidance of doubt, with respect to any of the entities identified in paragraph 15: (1) (a) any litigation, claim, motion, or contested matter that was or could have been brought prior to the date hereof, and (b) any litigation, claim, motion, or contested matter that could be brought after the date hereof arising from any facts, acts, or omissions that first arose prior to the date hereof, shall be stayed during the 15-Month Window, with appropriate protections so there is no prejudice to any party and; (2) any other litigation, claim, motion, or contested matter not referenced in paragraph 15(1) shall only be brought subject to the provisions of paragraphs 17 and 23, and no other litigation, claim, motion, or contested matter that does not fall within paragraph 17 and 23 shall be brought by any such entity against any other such entity during the 15-Month Window.

16. AMZM and any of its affiliates (collectively, "AMZM") shall not be a member of or advisor to the Committee, and, except herein, AMZM shall not be paid or reimbursed by the estates or the Portfolio Companies for any fees or expenses with respect to the Monetization Process or any other purpose; provided, however, that (a) AMZM shall be terminated as Collateral Manager, and MBIA and the Zohar III Noteholders shall designate a new Collateral Manager who has no claim against the Debtors, and the Collateral Management Agreement shall be amended in a manner to reflect the settlement herein and (b) all parties reserve their rights with respect to any AMZM fees and expenses incurred prior to the date hereof. Subject to the approval of the CRO, AMZM may be reimbursed for reasonable transition costs solely incurred in the transmitting of information to the new collateral manager. [TBD: Side agreement b/w cro and CM ensuring reasonable fees which will be escrowed to escrow CM fees due under the indenture ]

17. The Debtors shall promptly negotiate with the secured parties funding of the Debtors' Chapter 11 cases from the use of the secured parties' cash collateral. In order to facilitate this negotiation, the Zohar Funds will provide customary bankruptcy case budgets, including anticipated sources and uses of cash (including payments from the Group A Portfolio Companies). It is understood and agreed the Zohar Funds shall not utilize any cash they are holding pending an agreed order. In the event of any dispute among the parties with respect to use of cash collateral, in

the first instance such dispute shall be referred to the Mediator. If the Mediator cannot resolve that dispute, the parties will jointly seek an order of the Bankruptcy Court resolving that dispute.

18. Any (A) claim asserted by the Patriarch Stakeholders that is supported by written documentation showing the claim (a) was funded to a Group A Portfolio Company by a Patriarch Stakeholder (in the case of funded debt claim), or (b) represents a fee or other claim arising from a deferral of payment or any management and/or administrative fee owed to a Patriarch Stakeholder[3] and (B) equity interest asserted by the Patriarch Stakeholders is supported by written documentation, then such claim and equity interest, as applicable, shall be deemed due and payable through the closing of any monetization event on a pari passu basis with other similarly situated claims and equity unless the applicable credit agreement provides otherwise.[4] In connection with any such closing, the Patriarch Stakeholders will release any liens that secure any of the foregoing non-challenged claims on a pari passu basis with liens on the same collateral held by the Other Stakeholders. All parties' respective rights to challenge the propriety of any of the foregoing claims or equity interests are tolled without prejudice until the expiration of the 18 Month Window (provided the Full Payment Date does not occur on or before such date), but no such claim shall be brought during the 18 Month Window or used to block the closing of any pending transaction in the Monetization Process. The Patriarch Stakeholders will promptly provide any information reasonably requested by the CRO to verify the existence of the funding and documentation described above (provided that the CRO may share the foregoing information with Other Stakeholders (subject to the execution of an NDA approved by the Mediator) as required in the CRO's reasonable discretion. With respect to the claims in (A) above, the payments to the Patriarch Stakeholders that shall be made without further analysis or challenge shall be capped at $250 million, with any amounts in excess to be held in escrow until Full Payment Date. Tilton represents that none of the claims in (A) currently prime the secured claims of the Other Stakeholders in the Group A Portfolio Companies, other than ABLs in ████████████. Nothing herein is intended to or shall elevate or modify the existing priority of any claims or liens.

19. All causes of action among the Debtors, Other Stakeholders and Patriarch Stakeholders (including any of their affiliates or agents) with respect to the Debtors, the Group A Portfolio Companies and the Group B Portfolio Companies

---

[3] Management and/or administrative fees as noted here are defined in a separate agreement entered between the parties concurrent with this agreement.

[4] Tilton to provide a good faith estimate on company by company basis for each of the Group A Portfolio Companies on an aggregate basis, in each case reflecting the aggregate amount she expects will be covered by this paragraph 17.

shall be tolled during the 15 Month Window or, if qualified, for the 18 Month Extended Window, and all parties' respective rights shall be reserved with respect thereto, including with respect to venue and jurisdiction.

20. Tilton represents that the Group A Portfolio Companies and the Group B Portfolio Companies will be operated in the ordinary course of business during the 15 Month Window. During the 15 Month Window, the Group A Portfolio Companies and the Group B Portfolio Companies shall not declare dividends but shall be authorized to (b) (i) enter into financing transactions with affiliates on market terms, subject to first consulting with the CRO or (ii) issue new equity that will dilute the existing equity holdings on market terms, subject to first consulting with the CRO; provided, however, that if the CRO objects to the financing or equity described in the foregoing subparagraphs (b)(i) and (ii), the CRO may take that dispute to the Mediator for final resolution. Notwithstanding the foregoing, the Group A Portfolio Companies and the Group B Portfolio Companies can distribute payments as designated by the Designated Tax Director for the payment of their state and federal income taxes.

21. The Group A Portfolio Companies shall share with employees of MBIA (who sign NDAs as described in Paragraph 15 herein) financial statements and backup reasonably requested in writing by MBIA. Any information provided to MBIA shall only be shared in the following way: someone employed by MBIA can view the documents in the New York offices of Gibson Dunn but may not take copies or pictures of any documents or share any information in those documents, except with the CRO. In the event of any dispute among the parties with respect to the reasonableness of that request, such dispute shall be finally decided by the Mediator.

22. While any dispute is before the Mediator, no party to such dispute shall take any action in Bankruptcy Court.

23. If any party materially breaches this Agreement, the dispute shall be in the first instance determined by the Mediator on a confidential basis. The Mediator shall have all remedies available to him. If the Mediator cannot resolve the dispute, the Mediator shall make a report and recommendation to the Bankruptcy Court and the parties shall jointly seek an order of the Bankruptcy Court resolving such dispute. In connection with the foregoing, the Mediator shall determine to what extent information should be filed under seal, subject to the order of the Bankruptcy Court approving such filing under seal. The parties agree that for purposes of any decision of the Bankruptcy Court dealing with any matter covered by this paragraph, the Agreement is non-severable under all circumstances.

24. Any application by any party for assistance from the Mediator shall be brought within seven (7) days of identifying the dispute to the other party or parties

involved in the dispute, and heard at the Mediator's earliest availability. Any application shall be in writing and served by email on the other parties.

25. Upon the expiration of the 15 Month Window, the Independent Director/CRO may take all necessary and appropriate action in the best interests of the Zohar Funds without any restriction herein or otherwise, including, but not limited to, seeking relief from the Bankruptcy Court to lift the automatic stay, taking action to remove Tilton as a director or manager of the Group A Portfolio Companies or the Group B Portfolio Companies, or dismissing or converting the cases to chapter 7 cases. Upon the expiration of the 15 Month Window, all parties to the chapter 11 cases shall have and may exercise any and all rights available under applicable law.

26. The parties (other thn U.S. Bank) shall issue the joint press release as set forth in Exhibit F stating that the parties will work in a mutually cooperative process in support of the Monetization Process (and no other press release). If the parties cannot jointly agree, then the Mediator shall resolve any disputes. The parties shall also agree to standard non-disparagement terms.

27. The Bankruptcy Court shall retain jurisdiction to enforce the terms of this agreement and all parties agree to submit to the jurisdiction of the Bankruptcy Court for resolution of any matter in connection with this agreement or the enforcement thereof; provided, however, that no party shall be deemed to consent to venue or jurisdiction before the Bankruptcy Court for any matter not in connection with this agreement or the enforcement thereof.

28. The parties will work with the indenture trustee under the Zohar indentures to satisfy the requirements of the indentures with respect to the implementation of this Agreement. Any such dispute related to satisfaction of such requirements shall be, in the first instance, referred to the Mediator. If the Mediator cannot resolve that dispute, the parties will jointly seek an order of the Bankruptcy Court resolving that dispute..

29. For the avoidance of doubt, if each of MBIA and the Zohar III Claims receive 50% of the Paid in Full amount within the 15 Month Window, the 15 Month Window shall be herein shall be replaced with the term 18 Month Extended Window for all purposes.

30. The foregoing terms shall be memorialized in a confidential stipulation filed under seal and entry of an order by Judge Sontchi, on terms and conditions satisfactory to the parties. The order shall provide, among other provisions, that this Agreement and the order shall be binding on all parties and their successors and assigns.

[INSERT SIGNATURE BLOCKS]

01:23191627.1

EXHIBIT A

01:23191627.1

**ZOHAR I**

| | | |
|---|---|---|
| Amounts paid on Nov. 20, 2015 under the Policy | 148,951,585 | Indenture § 11.1(a)(i)(G), 11.1(a)(i)(B); Insurance Agreement (definition of Accrued Insurance Liabilities) |
| Interest (Prime + 2%), as of April 18, 2018 | 8,249,532 | Insurance Agreement § 4.03 |
| SUBTOTAL | 157,201,117 | |
| Credit Enhancement Liabilities incurred in connection with MBIA's administration, enforcement, defense or preservation of rights under the Transaction Documents* | 7,718,876 | Indenture § 11.1(a)(i)(G), 11.1(a)(i)(B); Insurance Agreement (definition of Accrued Insurance Liabilities) |
| Legal fees/expenses | 7,531,990 | |
| Financial, investment and non-legal advisors | 186,886 | |
| **TOTAL ZOHAR I CLAIM** | **164,919,993*** | |

**ZOHAR II**

| | | |
|---|---|---|
| 1/20/2017 Policy Payment | 770,109,326 | Indenture § 11.1(a)(i)(G), 11.1(a)(i)(B); Insurance Agreement (definition of Accrued Insurance Liabilities) |
| Interest (Prime + 2%), as of April 18, 2018 | 27,080,207 | Insurance Agreement § 4.03 |
| SUBTOTAL | 797,189,533 | |
| Credit Enhancement Liabilities incurred in connection with MBIA's administration, enforcement, defense or preservation of rights under the Transaction Documents* | 14,851,685 | Indenture § 11.1(a)(i)(G), 11.1(a)(i)(B); Insurance Agreement (definition of Accrued Insurance Liabilities) |
| Legal fees/expenses | 10,641,048 | |
| Financial, investment and non-legal advisors | 4,210,637 | |
| **TOTAL ZOHAR II CLAIM** | **812,041,218*** | |

| | |
|---|---|
| **ZOHAR PAID IN FULL AMOUNT** | **$976,961,211** |

*Assumptions:

All amounts are "as of" April 18, 2018 and will change pending Full Payment Date, including to reflect interest accrued and other Credit Enhancement Liabilities which MBIA has not yet paid

Portfolio Company Zohar I loan interest payments will continue to be paid directly to MBIA

Zohar II claim amount does not reflect Portfolio Company loan interest payments which MBIA is entitled to receive, but have not yet been distributed to MBIA.

MBIA is not seeking reimbursement for costs, expenses or interest payments made in connection with MZ Funding loan.

# EXHIBIT A

## [ZOHAR III CLAIMS]

**Disclaimer:** The Zohar III Claims as forth in this _Exhibit A_ have not been verified by the Collateral Manager since January 2016 as required by the Indentures and Management Agreement, and therefore, U.S. Bank makes no representation as to accuracy of the Zohar III Claims as set forth below, which claims and interest accruals may be modified or otherwise revised or verified when the new Collateral Manager is designated in accordance with the Mediation Term Sheet. Once the Collateral Manager is appointed, that person or entity, after consultation with U.S. Bank, will be responsible for updating the amounts herein to reflect unpaid principal, accrued and unpaid interest, and other fees, expenses, and other amounts allowable under the Indentures. Notwithstanding anything to the contrary in this _Exhibit A_ or in the Mediation Term Sheet, nothing shall modify, alter, or otherwise change the Priority of Payments set forth in the Indentures, and U.S. Bank's rights, remedies, and objections to any such modification, alteration, or other change thereto are fully reserved. Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Mediation Term Sheet to which this _Exhibit A_ is attached or in the Indentures.

The following does not include interest accruing after 5/18/18. The following schedule excludes certain categories and amounts that must be paid prior to principal and interest owing to the Holders of the notes, including, without limitation, certain fees, expenses, reserves, and other amounts, which are set forth in the Priority of Payments of each Indenture (that have accrued or may accrue in the future):

| Issue Name | Issue Date | Maturity Date | Issue Amount | Original Par Amount | Current Balance | Prepetition Accrued Interest** | Addt'l Accrued Interest Thru 5/18/18*** | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| Class A-1R | 4/11/2007 | 4/15/2019 | $ 200,000,000.00 | $ 200,000,000.00 | $ 135,767,116.30 | $ 686,522.34 | $ 586,182.09 | $ 137,039,820.73 |
| Class A-1T | 4/11/2007 | 4/15/2019 | $ 150,000,000.00 | $ 150,000,000.00 | $ 101,825,337.23 | $ 509,743.92 | $ 436,203.28 | $ 102,771,284.43 |
| Class A-1D | 4/11/2007 | 4/15/2019 | $ 350,000,000.00 | $ 350,000,000.00 | $ 237,592,453.54 | $ 1,189,402.47 | $ 1,017,807.66 | $ 239,799,663.67 |
| Class A-2 | 4/11/2007 | 4/15/2019 | $ 200,000,000.00 | $ 200,000,000.00 | $ 200,000,000.00 | $ 1,087,156.78 | $ 914,108.70 | $ 202,001,265.48 |
| Class A-3 | 4/11/2007 | 4/15/2019 | $ 116,000,000.00 | $ 116,000,000.00 | $ 116,000,000.00 | $ 689,195.38 | $ 569,346.03 | $ 117,258,541.41 |

**This is the accrued interest that wasn't paid because of the $4,637,241.39 deposit of interest outside the collection account before the petition date

***The "Addt'l Accrued Interest Thru 5/18/18" column capitalizes the "Prepetition Accrued Interest" into the Current Balance and then Accrues Interest Thereon through 5/18/18

EXHIBIT B

**Exhibit B: Patriarch Stakeholders**

• Ark Entities (including Ark Angels, LLC; Ark Angels II, LLC; Ark Angels III, LLC; Ark Angels VIII, LLC; Ark Investment Partners II, LP; Ark II CLO 2001-1, Ltd.)
• LD Investments, LLC
• Lynn Tilton
• Octaluna LLC Entities (including Octaluna LLC; Octaluna II, LLC; Octaluna III, LLC)
• Patriarch Partners Entities (including Patriarch Partners, LLC; Patriarch Partners VIII, LLC; Patriarch Partners, XIV, LLC; Patriarch Partners XV, LLC)
• Patriarch Partners Management Group, LLC (PPMG)
• Patriarch Partners Agency Services, LLC (PPAS)
• Zohar Holdings, LLC

EXHIBIT C

**Group A Portfolio Companies**

**[REDACTED]**

EXHIBIT D

**Group B Portfolio Companies**

**[REDACTED]**

EXHIBIT E

[To be provided]

01:23191627.1

EXHIBIT F

**The Zohar Funds, Lynn Tilton, MBIA, and the Zohar III Noteholders
Announce Resolution to
Stay Litigation, Refinance and Monetize Zohar Assets**

NEW YORK – April [XX], 2018 –Zohar CDO 2003-1, Zohar CDO 2003-1 Corp., Zohar II 2005-1, Limited, Zohar II 2005-1 Corp., Zohar III, Limited, and Zohar III, Corp. (collectively, the "Zohar Funds"), Lynn Tilton, MBIA Insurance Corporation, a wholly owned subsidiary of MBIA Inc. (NYSE: MBI), and the Zohar III Controlling Class of Noteholders jointly announce today that the parties have mutually resolved the motions pending in federal Bankruptcy Court in the District of Delaware relating to the Zohar Funds, and have agreed to a deal that will include a stay of all pending litigation between the parties. This agreement is intended to facilitate the refinancing and monetization of assets of the Zohar Funds to the benefit of all stakeholders, and the parties have agreed to work in a mutually cooperative process in support of such refinancing and monetization.

As part of the agreement, an Independent Director will be appointed to govern the Zohar Funds, along with a Chief Restructuring Officer, who together with Ms. Tilton as director and manager of each Portfolio Company, will jointly implement the refinancing and monetization process. During the process, Ms. Tilton will remain in her current roles at the Portfolio Companies, all litigation between the parties will be stayed for a minimum of 15 months, and the bankruptcy cases will proceed without the appointment of a Trustee.

Ms. Tilton stated, "This agreement is a meaningful and important step towards allowing the Zohar Funds to monetize and refinance their assets in order to pay off all creditor claims in full. It is in the best interest of all stakeholders that we lay down our swords and stop the years of damaging litigation in order to maximize value for all of the Funds' stakeholders."

Anthony McKiernan, Chairman of MBIA Insurance Corporation, stated that "MBIA is pleased that the parties have been able to come to a consensual agreement that will put in place a process to enable MBIA to recover on the significant amounts it has paid its policyholders."

Marc Kirschner of Goldin Associates, Chief Restructuring Officer of the Zohar Funds, added, "The resolution of the hotly contested litigation in the bankruptcy cases is in the best interests of the Zohar Funds and their stakeholders as it will pave the way for the Zohar Funds to maximize the value of their assets for the benefit of all. The mediated result was the culmination of significant negotiations and the Zohar Funds are deeply appreciative of the efforts of the mediator, Judge Kevin Gross, for facilitating a settlement of the pending matters, which was no simple task."

Today's agreement will have no immediate effect on the operations of the Portfolio

Companies to whom the Zohar Funds have made senior secured loans.  The Portfolio Companies will continue to operate their businesses in the ordinary course as they are not parties to these bankruptcy cases.

**MEDIA CONTACTS:**

FOR LYNN TILTON
**Brunswick Group**
Alex Yankus
212-333-3810
ayankus@brunswickgroup.com

**MBIA**
Greg Diamond, 914-765-3190
Investor and Media Relations
greg.diamond@mbia.com

01:23191627.1