# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*,[1]<br><br>　　　　　　Debtors. | ) Chapter 11<br>)<br>) Case No. 18-10512 (CSS)<br>)<br>) Jointly Administered<br>)<br>) **Hearing Date: July 23, 2018 at 1:00 p.m. (ET)**<br>) **Objection Deadline: July 18, 2018 at 4:00 p.m. (ET)**<br>) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## AUTHORIZING THE USE OF CASH COLLATERAL

Zohar III, Corp. and its affiliated debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "Debtors") hereby submit this motion (the "Motion"), pursuant to sections 105(a), 361, 362, 363, 364, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), for entry of an order: (i) authorizing the Debtors' use of Cash Collateral (as defined below), which is purported collateral of the Debtors' secured creditors, U.S. Bank, N.A., as indenture trustee (the "Indenture Trustee"), on behalf of the Secured Parties (as such term is defined in the Indentures[2]), including MBIA[3] and

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] The term "Indentures" means: (A) the Indenture among Zohar CDO 2003-1 Limited, Zohar CDO 2003-1 Corp., Zohar CDO 2003-1, LLC, and MBIA Insurance Corporation ("MBIA"), CDC Financial Products, Inc., and the Indenture Trustee, dated November 13, 2003 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time); (B) the Indenture among Zohar II 2005-1, Limited, Zohar II 2005-1, Corp., Zohar II 2005-1, LLC, MBIA, IXIS Financial Products Inc., and the Indenture Trustee, as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time); and (C) the Indenture among Zohar III, Limited, Zohar III, Corp., Zohar III, LLC, Natixis Financial Products Inc., and the Indenture Trustee, as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association, dated April 6, 2007 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time).

[3] Capitalized terms used, but not otherwise defined herein, shall have the meaning given to such terms in the Settlement Agreement (which is defined below).

the members of the Zohar III Controlling Class (the "Senior Secured Parties"); and (ii) deeming the Secured Parties adequately protected. In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief requested herein are sections 105, 361, 362, 363, 364, 507 and 552 of the Bankruptcy Code.

## BACKGROUND

**A.    General Background**

4. On March 11, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors' Chapter 11 cases are being jointly administered, for procedural purposes only, pursuant to Bankruptcy Rule 1015(b).

**B.     The Settlement Agreement**

5.     On April 30, 2018, the Debtors filed a settlement motion [Docket No. 222] (the "Settlement Motion") seeking entry of the *Order Approving and Authorizing the Settlement Agreement by and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class* (the "Settlement Order" and the settlement agreement attached thereto, the "Settlement Agreement"), which provided a comprehensive resolution of the numerous Litigated Contested Matters (as defined in the Settlement Motion) between and among the parties to the Settlement Agreement.  The Settlement Agreement was a significant achievement, following four full-day mediation sessions and weeks of additional negotiations. The Settlement Agreement created a platform where years of hotly contested litigation will be put to the side and a monetization process will be implemented that will maximize the value of the Debtors' assets for the benefit of all stakeholders.

6.     On May 21, 2018, the Court entered (i) the Settlement Order, thereby, approving and authorizing the Settlement Agreement and (ii) an order appointing Joseph J. Farnan, Jr. as the Debtors' Independent Director and granting certain related relief on an interim basis pending Court consideration and approval of the Independent Director's service agreement (the "Service Agreement") and a subsequent indemnification agreement (the "Indemnification Agreement"). *See* Docket Nos. 266 & 267.  On June 26, 2018, the Court entered an order approving the Service Agreement and Indemnification Agreement on a final basis. *See* Docket No. 345.

7.     In accordance with the Settlement Agreement, on May 25, 2018, the Debtors filed a motion to retain Mr. Michael Katzenstein as the Debtors' newly appointed chief restructuring officer (the "New CRO") and to retain certain professionals from FTI Consulting Inc.

to assist him in carrying out his duties as the New CRO.  *See* Docket No. 279.  On June 11, 2018, the Court entered an order approving the appointment of Mr. Katzenstein as the Debtors' New CRO.  *See* Docket No. 297.

**C.     Cash Collateral Negotiations**

8.     The Settlement Agreement provides that "the Debtors shall promptly negotiate with the secured parties funding of the Debtors' Chapter 11 cases from the use of the secured parties' cash collateral.  In order to facilitate this negotiation, the Zohar Funds will provide customary bankruptcy case budgets, including anticipated sources and uses of cash . . ."  Settlement Agreement at ¶ 19.  It is essential to the Debtors' efforts to preserve and maximize the value of these estates through the monetization process that they have the ability to use the cash claimed as collateral by the Secured Parties (the "Cash Collateral").

9.     The Debtors promptly engaged the Indenture Trustee and the Senior Secured Parties in good-faith and arms'-length negotiations over the agreed use of Cash Collateral to fund the monetization process and these Chapter 11 cases, all consistent with the Settlement Agreement.  As of the date hereof, the Debtors and the Senior Secured Parties have not agreed-upon the final terms regarding the use of Cash Collateral, but the parties have made significant progress towards a consensual resolution and will continue working collectively to try to resolve any outstanding issues in advance of a hearing on this Motion.  The Debtors will also engage in discussions with the Patriarch Stakeholders over the terms of the use of Cash Collateral.

10.     The Debtors submit that the funding of these cases is critical to the success of the process set forth in the Court-approved Settlement Agreement, so the Debtors intend to proceed with a hearing and seek entry of an order regarding the use of cash collateral at the hearing currently scheduled for July 23, 2018, notwithstanding that there is not yet an agreement on such

use. The Cash Collateral will be used to pay for the items identified in a proposed 13-week budget (the "<u>Budget</u>"),[4] which items are necessary to fund the monetization process. The Budget prepared by the Debtors, with the assistance of their professionals, shows the Debtors' projected expenditures for cost incurred through the end of June, 2018 and expected to be incurred in the 13-week period from July through September, 2018. The amounts set forth in the Budget represent estimates, and are subject to revision based upon the actual amounts incurred and any changes in the assumptions on which the Budget was formulated.

11. The Debtors are prepared to provide the Secured Parties with the following adequate protection terms (as appropriate under applicable law and consistent with and subject to the priorities and other terms dictated by the underlying Indentures and related documents), subject in all instances to the their receipt of adequate cash in excess of the amounts necessary to fund the Budget: (i) interest payments pursuant to the Indentures, (ii) legal fees (subject to review by parties and this Court, if necessary), (iii) replacement liens and claims, (iv) protection pursuant to section 507(b) of the Bankruptcy Code, (v) frequent reporting from the Debtors regarding the chapter 11 process, monetization process and costs incurred in these cases, (vi) updated budgeting to reflect actual and going-forward modifications to the Budget annexed hereto, and (vii) such other adequate protection, if any, that may be set forth in a proposed form of agreed order.

12. The Debtors submit that the relief requested herein in the only way to fund the process agreed upon in the Settlement Agreement. Subject to obtaining terms critical to the monetization process, proper administration of these cases and strict adherence to the Independent Director's and CRO's fiduciary duties, the Debtors intend to continue negotiating the use of Cash Collateral and to consider terms (as appropriate under applicable law and consistent with the

---

[4] The Debtors previously shared the Budget in substantially final form with the Indenture Trustee, Senior Secured Parties and Patriarch Stakeholders and anticipate filing the Budget on or around July 9, 2018.

01:23379129.5

priorities dictated by the underlying Indentures and related documents) acceptable to the Debtors, Indenture Trustee, the Senior Secured Parties and the Patriarch Stakeholders and the Court.

## RELIEF REQUESTED

13. By this Motion, the Debtors request that the Court: (i) authorize the Debtors, pursuant to sections 105(a), 361, 362, 363, 364, 507 and 552 of the Bankruptcy Code to use the Cash Collateral; and (ii) deem the Secured Parties adequately protected.

## BASIS FOR RELIEF

14. The use of Cash Collateral is necessary to maintain and maximize the value of the Debtors' assets through the monetization process. Unless the Debtors have access to Cash Collateral, that process will not get off the ground, and the value of the Secured Parties' collateral will be seriously diminished. Simply stated, without access to Cash Collateral, the Debtors will be unable to fund these Chapter 11 cases, and the monetization process will be stopped in its tracks, returning these Debtors and their assets to value-destroying uncertainty.

15. Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001(b)(2). In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Co. 1985), 47 B.R. at 449; *see also In re Ames Dep't Stores Inc.*, 115 B.R. 34, 38 (Bank S.D.N.Y. 1990) 115 B.R. at 38. After the 14-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent destruction of the debtor's business. A debtor is entitled to use cash collateral that it believes prudent in the operation of its business. *See, e.g., Simasko*, 47 B.R. at 449; *Ames Dep't Stores*, 115 B.R. at 36.

16.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).  Further, Bankruptcy Code section 363(e) provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).  Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to: (a) lump sum or periodic cash payments to the extent that such use will result in a decrease in value of such entity's interest in the property; (b) provisions for an additional or replacement lien to the extent that the use of the property will cause a decrease in the value of such entity's interest in the property; and (c) such other relief as will result in the realization by the entity of the indubitable equivalent of such entity's interest in the property.  11 U.S.C. § 361.

17.     Adequate protection must be determined on a case-by-case basis, in light of the particular facts and circumstances presented, the focus being that which is required to protect a secured creditor from diminution in the value of its interest in the particular collateral during the use period.  *See In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990); *Delbridge v. Production Credit Assoc. & Federal Land Bank*, 104 B.R. 824, 827 (E.D. Mich. 1989); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

18.     Entry of an order approving the relief sought herein will ensure that the Debtors have access to cash to fund these cases, the monetization process, and all that must be

7

accomplished in connection therewith, and, therefore, maximizes the value of the assets for the benefit of all stakeholders.  At the same time, the Secured Parties will be adequately protected in a manner that is consistent with the Settlement Agreement and under applicable law and precedent before this Court. Therefore, the Debtors respectfully submit that the use of Cash Collateral pursuant to the Budget is in the best interest of the Debtors, their estates, the Secured Parties, and all parties in interest, and therefore should be authorized by this Court.

## COMPLIANCE WITH LOCAL RULE 4001-2

19. Local Rule 4001-2 requires that certain provisions contained in motions requesting use of cash collateral be highlighted.  The Debtors do not believe that the order authorizing the use of Cash Collateral will contain any provisions requiring special disclosure under Local Rule 4001-2.

## NOTICE

20. Notice of this Motion has been provided to:  (i) the U.S. Trustee; (ii) counsel to the Patriarch Stakeholders; (iii) counsel to U.S. Bank, as indenture trustee; (iv) counsel to MBIA; (v) counsel to the Zohar III Controlling Class; and (vi) all parties that have filed a notice of appearance in these Chapter 11 cases pursuant to Fed. R. Bankr. P. 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court: (i) authorize the Debtors to use the Cash Collateral; (ii) deem the Secured Parties adequately protected; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: July 6, 2018  
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Shane M. Reil*

James L. Patton, Jr. (No. 2202)  
Robert S. Brady (No. 2847)  
Michael R. Nestor (No. 3526)  
Joseph M. Barry (No. 4221)  
Ryan M. Bartley (No. 4985)  
Shane M. Reil (No. 6195)  
Rodney Square  
1000 North King Street  
Wilmington, Delaware 19801  
Telephone: (302) 571-6600  
Facsimile: (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*

## **EXHIBIT A**

**Budget**

**[TO BE FILED]**