## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Zohar III, Corp., *et al.*,[1] | ) | Case No. 18-10512 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Hearing Date:  October 25, 2018 at 2:00 p.m. (ET)** |
| | ) | |
| | ) | **Objection Deadline:  October 9, 2018 at 4:00 p.m. (ET)** |
| | ) | |
| | ) | |

## MOTION OF LYNN TILTON, ON BEHALF OF THE PORTFOLIO COMPANIES, AND THE PATRIARCH STAKEHOLDERS FOR PROTECTIVE ORDER PURSUANT TO 11 U.S.C. § 107(b) AND FED. R. BANKR. P. 2015.3(e) AND 9018 PROHIBITING FILING OF PORTFOLIO COMPANY FINANCIAL INFORMATION IN BANKRUPTCY REPORTING

Lynn Tilton ("Tilton"), in her capacity as manager, director, and/or chief executive officer of the Group A Portfolio Companies[2] and the Group B Portfolio Companies (collectively, the "Portfolio Companies"), and the other Patriarch Stakeholders (collectively, the "Patriarch Entities") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 107(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2015.3(e) and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and directing the Debtors to omit the Portfolio Companies' financial statements from the Debtors' reporting under

---

1   The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

2   Capitalized terms not otherwise defined herein shall have the meanings afforded to them in that "Mediation Term Sheet" (the "Settlement Agreement"), attached as Exhibit 1 to the *Order Approving and Authorizing the Settlement Agreement By and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class* [D.I. 266] (the "Settlement Order").

Bankruptcy Rule 2015.3.  In support of the Motion, the Patriarch Entities respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Portfolio Companies comprise twenty-five (25) operating business platforms that, in the aggregate, employ tens of thousands of employees.  Further, the Portfolio Companies are non-debtor entities that are the primary, if not the only, source of value for the Debtors' estates and the eventual repayment of creditor claims in these Chapter 11 cases.  Tilton, as manager, director, and/or chief executive officer of the Portfolio Companies, and the other Patriarch Stakeholders, as holders of certain equity interests in, and lenders and creditors to, certain Portfolio Companies, request a protective order to prevent the public filing of the Portfolio Companies' financial statements that, to the extent applicable, would otherwise be filed on this Court's public docket pursuant to Bankruptcy Rule 2015.3.  For the reasons explained herein, the Portfolio Companies' financial statements constitute "commercial information," and the Court must therefore enter a protective order restricting the filing of such information pursuant to Bankruptcy Code section 107(b), and authorizing and directing the Debtors to omit the Portfolio Companies' financial statements from the Debtors' reporting under Bankruptcy Rule 2015.3.

2.      The protective order requested herein is contemplated under Bankruptcy Rule 2015.3(e), and is necessary to ensure that the Debtors and the Portfolio Companies are able to successfully monetize certain Portfolio Companies, as contemplated under the Settlement Agreement approved by this Court.  In the absence of the Proposed Order, the public filing of the Portfolio Companies' financial information would disadvantage the Portfolio Companies in any sale or refinancing negotiations as information presented in the form contemplated under

57772/0001-16335859V1

Bankruptcy Rule 2015.3 could conflict with how confidential information is being provided to banks and potential buyers.  It is essential that Portfolio Company information provided to these constituents be presented in the form and substance that the investment bankers determine will best create and enhance the value of the underlying Portfolio Companies.  Further, the public filing of the Portfolio Companies' financial statements would give competitors an unfair advantage, thereby depressing the companies' value and putting at risk the tens of thousands of jobs created by the Portfolio Companies.

3.      Precedent in this district warrants the entry of the Proposed Order.  This is particularly true where, as here, the key stakeholders that have a pecuniary interest in the Debtors have already agreed under the Settlement Agreement to the level and manner of Portfolio Company information that is required to be shared in connection with these cases.  Further, prior to the Petition Date, Tilton and certain Patriarch Entities, on the one hand, and the Zohar Funds under the control of their prior collateral manager, on the other hand, were engaged in extensive litigation over whether the Debtors were in fact the record and beneficial owners of the equity in the Portfolio Companies.  Such dispute has been stayed under the Settlement Agreement. However, if that dispute were to be resolved against the Debtors, then Bankruptcy Rule 2015.3 would not even apply to the Portfolio Companies.

4.      For the reasons set forth herein, the Patriarch Entities request that the Court enter the Proposed Order, and authorize and direct the Debtors to omit the Portfolio Companies' financial statements from the Debtors' reporting under Bankruptcy Rule 2015.3.  The Debtors support the relief requested herein, and intend to file a statement in support of this Motion.

## JURISDICTION

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334(b), and the *Amended Standing Order of Reference* from the United States District Court for

the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28

U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware, the Patriarch

Entities consent to the entry of a final order by the Court in connection with this Motion to the

extent that it is later determined that the Court, absent consent of the parties, cannot enter final

orders or judgments in connection herewith consistent with Article III of the United States

Constitution.

6.      Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory and legal predicates for the relief sought herein are section 107(b) of

the Bankruptcy Code and Bankruptcy Rules 2015.3 and Bankruptcy Rule 9018.

## BACKGROUND

**A.      General Background.**

8.      On March 11, 2018 (the "Petition Date"), Tilton, then as sole director for the

Debtors, caused the Debtors to file petitions for relief under Chapter 11 of the Bankruptcy Code.

The Debtors' Chapter 11 cases are being jointly administered, for procedural purposes only,

pursuant to Bankruptcy Rule 1015(b).

9.      General information about the Debtors and the events leading up to the Petition

Date can be found in the *Declaration of Marc S. Kirschner in Support of Chapter 11 Petitions*

[D.I. 6] and the *Declaration of Lynn Tilton in Support of Chapter 11 Petitions* [D.I. 5], each filed

on March 12, 2018.

57772/0001-16335859V1

**B.      The Debtors' Original Reporting Motion.**

10.      On March 12, 2018, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving the Debtors' Reporting Protocol and (II) (A) Modifying the Debtors' Reporting Requirements Under Bankruptcy Rule 2015.3, and (B) As Necessary, Extending the Deadline Within Which to Report Under Bankruptcy Rule 2015.3* [D.I. 7] (the "<u>Debtors' Reporting Motion</u>").  Pursuant to the Debtors' Reporting Motion, the Debtors requested approval of a Reporting Protocol (as defined in the Debtors' Reporting Motion), that if approved would have required the Debtors to provide periodic reporting to the Court and to stakeholders, in lieu of the Debtors' reporting obligations under Bankruptcy Rule 2015.3.  Specifically, under the Debtors' proposed Reporting Protocol, the Debtors would have filed certain Public Reports (as defined in the Debtors' Reporting Motion) providing, among other things, (a) information regarding the balance and status of the Debtors' loans to the Portfolio Companies, (b) other summary information regarding the Portfolio Company monetization process (on an anonymous basis), and (c) the Debtors' cash status.  Debtors' Reporting Motion, ¶ 8(a).  Further, the Debtors would have distributed certain Confidential Reports (as defined in the Debtors' Reporting Motion) to, among others, the Office of the United States Trustee (the "<u>US Trustee</u>") and "creditors of the Debtors" that executed a confidentiality agreement, which Confidential Reports would have included, among other things, (i) Portfolio Company-specific information with respect to the monetization process, (ii) detailed information regarding "[l]oans, equity kickers and record equity interests held at each Portfolio Company," and (iii) other detailed information regarding the Portfolio Company's outstanding loans and equity interests.  *Id.* at ¶ 8(b).

11.      MBIA, the Zohar III Noteholders, and U.S. Bank all objected to the relief requested in the Debtors' Reporting Motion.  [D.I. 90, 91, 96].  As explained below, these

57772/0001-16335859V1

objections, filed by parties with pecuniary interests in these Chapter 11 cases, were resolved

through the negotiated terms of the Settlement Agreement.

12.     On March 27, 2018, the US Trustee also objected to the Debtors' Reporting

Motion.  [D.I. 82] (the "UST Reporting Objection").  As set forth in its pleading, the US

Trustee's objection appeared to be primarily based on its procedural interpretation that

modifying the reporting requirements under Bankruptcy Rule 2015.3(d) required the Portfolio

Companies to seek a protective order under Bankruptcy Code section 107:

> The relief requested by the Debtors does not fall within the parameters of
> Rule 2015.3(d), but rather is of the nature of relief that must comply with
> Section 107 of the Bankruptcy Code, if grounds exist under that statute.
> Rule 2015.3(e) provides that any entity that is the subject of information
> being reported may seek protection of the information under Section 107.
> The Portfolio Companies, however, have not sought such relief, nor have
> the Debtors even argued that Section 107 applies to the information being
> withheld.

UST Reporting Objection, ¶ 17.

13.     The Patriarch Entities are filing this Motion in order to satisfy the concerns raised

by the US Trustee in its UST Reporting Objection, and to replace the relief requested in the

Debtors' Reporting Motion.  On September 18, 2018, the Debtors filed their first report under

Bankruptcy Rule 2015.3 [D.I. 453], omitting the financial statements proposed under Exhibit A

thereto pending a ruling with respect to this Motion.  The Patriarch Entities have conferred with

the Debtors, and understand that they support and intend to file a statement in support of the

relief requested herein.

**C.     The Settlement Agreement.**

14.     On May 21, 2018, this Court entered its Settlement Order approving the

Settlement Agreement.  The Settlement Agreement provides a comprehensive resolution to the

numerous disputes among the economic stakeholders of the Debtors that were raised at the outset

6

of these Chapter 11 cases.  Among other things, the Settlement Agreement provides for a fifteen or eighteen month stay of all litigation, during which time the Debtors and Tilton, on behalf of the Portfolio Companies, are to conduct a joint monetization process with the intent of paying in full the allowed claims of the Other Stakeholders.  *See* Settlement Agreement, ¶¶ 10, 15, 18. Further, the Settlement Agreement provides for specific reporting to be provided to the Other Stakeholders and to a Committee to be formed for the purpose of representing the interests of the Other Stakeholders.  *Id.* at ¶¶ 15, 18, 21.

15.     The reporting provisions of the Settlement Agreement effectively mooted the Reporting Protocol contemplated under the Debtors' Reporting Motion.  However, as explained below, in order to preserve the value of the Debtors' interests in the Portfolio Companies, and in order to protect and maximize the value achievable in the monetization process that is underway, the Patriarch Entities respectfully request that the Court enter the Proposed Order authorizing and directing the Debtors to omit the Portfolio Companies' financial statements from the Debtors' reporting under Bankruptcy Rule 2015.3.

**D.     The Marketing Process and the Portfolio Companies' Interest in Confidentiality**.

16.     The Portfolio Companies are not debtors in these Chapter 11 cases.  Today, the Portfolio Companies comprise twenty-five (25) operating business platforms across a broad spectrum of industries including automotive and aerospace, fashion, technology, manufacturing, industrial and home goods.  Many, if not all, of the industries in which the Portfolio Companies operate are highly competitive.  Prior to Patriarch and the Zohar's investments in the Portfolio Companies, many of these companies were deeply distressed and typically had no positive cash flow.  Currently, under Tilton's active involvement, many of the Portfolio Companies have

7

thrived and currently provide tens of thousands of jobs, primarily for American workers, in a number of industries.

17.    Under the Settlement Agreement, the Debtors and the economic stakeholders in these cases all agreed that the monetization would focus on the sale or refinancing of the Debtors' interests in certain Group A Portfolio Companies.  The sale and marketing processes contemplated under the Settlement Agreement is well underway.  As part of these processes, the Portfolio Companies' investment bankers will utilize their experience in marketing and selling businesses in the Portfolio Companies' respective industries, and oversee the flow of information to potential purchasers and financiers in a manner designed to maximize interest and value.  If the Debtors are required to publicly file the Portfolio Companies' financial statements and information, this would undermine that entire process and would disadvantage the Portfolio Companies in any sale or refinancing negotiations.  It would further provide competitors with information that could be used to gain an unfair advantage against the Portfolio Companies.

18.    Notably, in connection with Tilton's SEC trial in October 2016, the Administrative Law Judge (the "ALJ") entered an order similar to that requested by this Motion. Specifically, in response to a motion filed by Tilton and certain of the Patriarch Stakeholders, the ALJ took the highly unusual step of entering a protective order (the "SEC Protective Order") requiring financial information related to several of the Portfolio Companies to be kept confidential, and closed the courtroom during testimony involving such Portfolio Company financial data.  *See* SEC Protective Order, ¶ 2.

19.    For the foregoing reasons, the Court should enter the Proposed Order as requested herein.

## RELIEF REQUESTED

20.     By this Motion, the Patriarch Entities request that the Court authorize and direct the Debtors, pursuant to Bankruptcy Code section 107 and Bankruptcy Rules 2015.3(e) and 9018, to omit the Portfolio Companies' financial statements from the Debtors' reporting under Bankruptcy Rule 2015.3.

## BASIS FOR RELIEF

21.     Bankruptcy Rule 2015.3 requires Chapter 11 debtors to "file periodic financial reports . . . of each entity that is not a publicly traded corporation or a debtor in a case under title 11, and in which the estate holds a substantial or controlling interest." The legislative history for Bankruptcy Rule 2015.3(e) provides that the rule's purpose is "to ensure that the debtor's interest in any of [the] entities is used for the payment of allowed claims against the debtor." H.R. Rep. No. 109-31, at 90 (2005).

22.     Bankruptcy Rule 2015.3(e) provides that "[t]he entity in which the estate has a substantial or controlling interest, or a person holding an interest in that entity, may request protection of the information under [section] 107 of the Code." Bankruptcy Code section 107(b) provides that, upon request of a party in interest, the Court shall authorize the redaction of confidential "commercial information." *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del. 2006). Similarly, under Bankruptcy Rule 9018, either "[o]n motion or on its own initiative, with or without notice, the court may make any order which justice requires . . . to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . ." In order to warrant protection under section 107 or Bankruptcy Rule 9018, "commercial information" does not have to rise to the level of a trade secret. *See e.g.*, *In re Altegrity, Inc.*, 2015 WL 10963572, at *3 (Bankr. D. Del. Jul. 6, 2015).

23.    Courts have recognized that the term "confidential information" is not limited to information that will give an unfair advantage to an entity's competitors.  *E.g.*, *In re Borders Grp.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011).  Indeed, "the term includes situations where a bankruptcy court may reasonably determine that allowing such disclosure would have a chilling effect on business negotiations, ultimately affecting the viability of Debtors."  *Id.* (internal quotation marks omitted).  For example, at least one court has recognized that "commercial information that is entitled to protection under Code section 107(b) and Bankruptcy Rule 9018 must be viewed from the practical perspective of damage to the estate or its creditors, and squarely includes information that could prejudice either of them as part of a sale process."  *In re Global Crossing Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003); *accord In re 1031 Tax Grp., LLC*, 2007 WL 1836525, at *2 (Bankr. S.D.N.Y. June 22, 2007) ("Premature disclosure of the identity of the property that is the subject of the confidential negotiations could threaten the successful completion of the financing transaction, with significant adverse effects on the Debtors and on all parties in interest.").  Similarly, courts have recognized that sensitive information such as an entity's tax information is entitled to protection under section 107.  *Transpacific Tire & Wheel, Inc. v. Orteck Int'l, Inc.*, 2010 WL 2774445, at *3 (D. Md. Jul. 13, 2010); *Robins v. Morgan (In re Williams)*, 2017 WL 6278764, at *5 (Bankr. W.D. Va. Dec. 8, 2017).

24.    In *In re MIG, LLC*, a Chapter 11 debtor filed a motion requesting authority to file under seal the debtor's subsidiary's financial statements required under Bankruptcy Rule 2015.3.  *In re MIG, LLC*, Case No. 14-11605 (Bankr. Del. Aug. 19, 2014).  Judge Gross overruled the objection of the US Trustee, and "[p]ursuant to Bankruptcy Code section 107(b) and Rules 2015.3(e) and 9018 of the Bankruptcy Rules, . . . authorize[d] the Debtors to file the reports of

10

financial information required under Fed. R. Bankr. P. 2015.3(a) of its Non-Debtor Affiliate . . .

under seal." *In re MIG, LLC*, Case No. 14-11605 (Sept. 17, 2014).

25.     If a document or information meets the standard set forth in section 107(b), "the

court is required to protect a requesting interested party and has no discretion to deny the

application." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures*

*Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994) (citation omitted).

26.     Here, pursuant to Bankruptcy Rules 2015.3(e) and 9018 and Bankruptcy Code

section 107(b), the Court should follow the precedent in *MIG*, and authorize and direct the

Debtors to omit the Portfolio Companies' financial statements from the Debtors' reporting under

Bankruptcy Rule 2015.3.  The Portfolio Companies' financial information is "confidential

information," and must be protected under Bankruptcy Code section 107(b) and Bankruptcy

Rule 9018.  Public disclosure of this information would have substantial adverse effects on the

Portfolio Companies and the Debtors in multiple ways.

27.     *First*, consistent with the Settlement Agreement, Tilton, on behalf of the Portfolio

Companies, has been actively pursuing a monetization process focused on selling or refinancing

certain Portfolio Companies.  Tilton and the Debtors' CRO and Independent Director appear to

be in lock-step on the current process, which to date has been productive.  This monetization

process, if conducted without interference or unnecessary hindrances (such as the public

dissemination of the Portfolio Companies' financial information), should yield sufficient value to

repay the Other Stakeholders in full, with value remaining for Tilton's Notes or Preference

Shares.  If potential buyers or financiers of the Portfolio Companies gain access to confidential

financial information regarding the companies outside the process coordinated by the retained

investment bankers, it could disadvantage the Portfolio Companies in any sale or refinancing negotiations.

28.     *Second*, public dissemination of the Portfolio Companies' financial information may provide unfair advantages to the companies' competitors.  By providing competitors with access to the Portfolio Companies' financial information, such competitors may be able to anticipate the companies' financial outlook, and use such information to make strategic decisions aimed at combatting or undermining the Portfolio Companies' businesses and market share. They may even use the very fact that the Portfolio Companies are connected with the monetization process to inflict harm.

29.     The potential harm from the public filing of the Portfolio Companies' confidential financial information would threaten recoveries for creditors in these Chapter 11 cases.  By providing a windfall to the companies' competitors, the public filing of such information would also put at risk the tens of thousands of jobs currently made available by the Portfolio Companies.  Such potential harm greatly outweighs any minimal benefits from the public filing of the Portfolio Companies' confidential financial information.  This is particularly true where, as here, there are either no or very few general unsecured creditors, and the key stakeholders in these cases have all agreed under the Settlement Agreement that the Debtors would be controlled by a new Independent Director and CRO to oversee the flow of funds to pay off creditors, as well as to certain procedures with respect to the flow of information and reporting.

30.     *Third*, depending on the outcome of prepetition litigation, which is not currently relevant in these Chapter 11 cases as a result of the agreed Settlement Agreement, there is a serious question as to whether Bankruptcy Rule 2015.3 would even apply to the Portfolio Companies at all.  Prior to the Petition Date, Tilton and certain Patriarch Entities, on the one

hand, and the Zohar Funds under the control of their prior collateral manager, on the other hand, were engaged in extensive litigation over whether the Debtors were in fact the beneficial owners of the equity in the Portfolio Companies.  Such dispute would not affect the monetization process and has been stayed under the Settlement Agreement.  However, if that dispute were to be resolved against the Debtors, then Bankruptcy Rule 2015.3 would not apply to the Portfolio Companies.

31.     The SEC ALJ previously determined that the Portfolio Companies' financial information was sensitive enough to warrant protection through the SEC Protective Order. Similarly, the bankruptcy court in *MIG* granted relief similar to what is requested here, by permitting the debtors to file under seal any financial information required under Bankruptcy Rule 2015.3.[3]  This Court should follow the precedent set by these two courts, and authorize and direct the Debtors to omit the Portfolio Companies' financial statements from the Debtors' reporting under Bankruptcy Rule 2015.3.

## RESERVATION OF RIGHTS

32.     Neither this Motion nor any appearance in connection with this Motion shall constitute a waiver of (i) the right to have final orders in non-core matters entered only after de novo review by a District Judge, (ii) the right to trial by jury in any proceeding related to, or triable in, these cases or any case, controversy or proceeding related to these cases, (iii) the right to have the District Court withdraw the reference in any matter subject to mandatory or

---

[3]   In *MIG*, upon the debtor's request, the bankruptcy court ordered that the subsidiary entity's financial information be filed under seal, rather than be omitted from any reporting under Bankruptcy Rule 2015.3, as is requested in this Motion.  Such relief is appropriate here given that the key constituents in these chapter 11 cases have negotiated in the Court-approved Settlement Agreement the amount and manner in which information should be provided in order to protect their respective interests.  Requiring financial statements to be filed under seal, rather than being omitted, would not add any value, and, in light of the number of Portfolio Companies, would only increase the administrative cost of these cases.

discretionary withdrawal, (iv) any objection to the jurisdiction of this Court for any purpose other than with respect to this Motion, (v) an election of remedy, or (vi) any other rights, claims, actions, defenses, setoffs or recoupments as appropriate, in law or in equity, under any agreements, all of which rights, claims, actions, defenses, setoffs and recoupments are expressly reserved.

33.     Prior to the Petition Date, the Zohar Funds (through their prior collateral manager) and Tilton, among others, were engaged in litigation as to which persons or entities owned the record and/or beneficial equity interests in the Portfolio Companies.  This litigation has been stayed pursuant to the Settlement Agreement.  Nothing in this Motion shall constitute an admission, waiver, or modification with respect to any of the positions or arguments taken in such litigation.

## NOTICE

34.     Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) counsel to the Debtors; (iii) counsel to U.S. Bank, as indenture trustee; (iv) counsel to MBIA; (v) counsel to the Zohar III Controlling Class; and (vi) all parties that have filed a notice of appearance in these chapter 11 cases pursuant to Fed. R. Bankr. P. 2002.  In light of the nature of the relief requested herein, Tilton submits that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, Tilton, in her capacity as manager, director, and/or chief executive officer of the Portfolio Companies, and the Patriarch Entities request that this Court (i) authorize and direct the Debtors to omit the Portfolio Companies' financial statements from the Debtors' reporting under Bankruptcy Rule 2015.3, and (ii) grant such other and further relief as the Court deems just and proper.

57772/0001-16335859V1

Dated:  September 19, 2018

**COLE SCHOTZ P.C.**


By: */s/ Norman L. Pernick*
      Norman L. Pernick (No. 2290)
      Patrick J. Reilley (No. 4451)
      500 Delaware Avenue, Suite 1410
      Wilmington, DE  19801
      Telephone: (302) 652-3131
      Facsimile: (302) 652-3117
      npernick@coleschotz.com
      preilley@coleschotz.com

        – and –

**GIBSON, DUNN & CRUTCHER LLP**
Robert Klyman (Admitted Pro Hac Vice)
Michael S. Neumeister (Admitted Pro Hac Vice)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
mneumeister@gibsondunn.com


Randy M. Mastro (Admitted Pro Hac Vice)
Mary Beth Maloney (Admitted Pro Hac Vice)
200 Park Avenue
New York, NY  10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
rmastro@gibsondunn.com
mmaloney@gibsondunn.com

*Counsel to Lynn Tilton and the Patriarch Stakeholders*

57772/0001-16335859V1