## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| Zohar III, Corp., *et al.*,[1] | ) |
| | ) Case No. 18-10512 (CSS) |
| Debtors. | ) |
| | ) Jointly Administered |
| | ) |
| | ) **Hearing Date:  November 1, 2018 at** |
| | ) **9:00 a.m. (ET)** |
| | ) |
| | ) **Re: 454, 455, 472** |
| | ) |

**REPLY OF LYNN TILTON IN SUPPORT OF MOTION, ON BEHALF OF THE PORTFOLIO COMPANIES, AND THE PATRIARCH STAKEHOLDERS FOR PROTECTIVE ORDER PURSUANT TO 11 U.S.C. § 107(b) AND FED. R. BANKR. P. 2015.3(e) AND 9018 PROHIBITING FILING OF PORTFOLIO COMPANY FINANCIAL INFORMATION IN BANKRUPTCY REPORTING**

Lynn Tilton ("Tilton"), in her capacity as manager, director, and/or chief executive officer of the Portfolio Companies,[2] and the other Patriarch Stakeholders (collectively, the "Patriarch Entities") hereby submit this reply (this "Reply") in support of their motion for entry of a protective order authorizing the Debtors to omit Portfolio Company financial information from the Debtors' reporting under Bankruptcy Rule 2015.3 [D.I. 454] (the "Motion") and in response to the sole objection to the Motion filed by the Office of the United States Trustee (the "U.S. Trustee") [D.I. 472] (the "Objection").  In support of this Reply, the Patriarch Entities respectfully represent as follows:

---

[1]  The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2]  Capitalized terms not otherwise defined herein shall have the meanings afforded to them in the Motion.

## PRELIMINARY STATEMENT

1.      Rule 2015.3 is designed to ensure "that the debtor's interest in any of [the applicable] entities is used for the payment of allowed claims against the debtor."  H.R. Rep. No. 109-31, at 90 (2005).  Here, all of the economic stakeholders in these Chapter 11 cases have agreed, after an extensive, arm's-length mediation, to a monetization process that achieves that exact result—the sale or financing of the Portfolio Companies to pay off allowed claims on or prior to the Full Payment Date (as defined in the Settlement Agreement)—without the corresponding damage to the monetization process that could result from implementation of Rule 2015.3.  Likewise, this Court entered an order approving the Settlement Agreement, which, in substance, achieves the goals of Rule 2015.3 by establishing an agreed process for the Portfolio Companies to be monetized "for the payment of allowed claims," with the oversight of an Independent Director and Chief Restructuring Officer on behalf of the Debtors.

2.      The monetization process has commenced, with a blue-chip set of investment bankers marketing or seeking refinancing of various Portfolio Companies.  The Independent Director, the Chief Restructuring Officer and the Chief Monetization Officer are participating jointly in the monetization process.  Both the non-debtor Portfolio Companies, on the one hand, and the Independent Director, on the other, have relied on the investment bankers to serve as the single source of information to potential buyers and financiers of the Portfolio Companies. Absent the relief sought in the Motion, the Debtors will be filing information about the Portfolio Companies that could be in a different form and covering different time periods than made available to buyers/financiers by investment bankers.  The result will be confusion in the marketplace that could negatively impact or confuse the monetization process without corresponding benefit of the Debtors or any stakeholders.

57772/0001-16489933V1

3.      Further, the relationship between the Debtors and the Portfolio Companies is not a parent/subsidiary relationship; the Debtors are principally lenders to the Portfolio Companies. Consistent with a typical lender/borrower relationship, the Debtors do not control the Portfolio Companies.  In fact, a critical element of the Settlement Agreement mandates that Ms. Tilton remain in possession and control of the Portfolio Companies during the fifteen-to-eighteen month term under the Settlement Agreement. *See* Settlement Agreement, ¶ 9.  Filing the Portfolio Companies' financial statements, which are treated as confidential in the ordinary course, on the bankruptcy docket, whether under seal or not, will only put these private companies and their value at risk, either (1) by disrupting the monetization process, or (2) by risking public dissemination of confidential financial statements that in the hands of competitors or customers could be used to harm the Portfolio Companies, some of which remain in, or have recently emerged from, distressed situations.

4.      As a result, the Motion seeks limited relief:  The Debtors shall file reports for each Portfolio Company contemplated by Bankruptcy Rule 2015.3(a), on the timeframe provided under Bankruptcy Rule 2015.3(b).  However, the Patriarch Entities request that the Debtors not be required or permitted to file the Portfolio Companies' confidential financial statements with their Rule 2015.3 reports.  As explained below, the Zohar III Controlling Class provided informal comments to the relief requested below, all of which were resolved through modifications to the revised protective order attached hereto as Exhibit A (the "Revised Proposed Order").  No other stakeholder with a pecuniary interest in these Chapter 11 cases objects to the Motion.

5.      The U.S. Trustee filed the only Objection to the Patriarch Entities' Motion, the primary point of which is that the Portfolio Companies' financial statements should not be

57772/0001-16489933V1

omitted, but should rather be filed under seal.  This position is based exclusively on a technical interpretation of Bankruptcy Rule 2015.3 that ignores the unique facts and history of these Chapter 11 cases.  The U.S. Trustee's position (a) is inconsistent with precedent and the literal language of the Bankruptcy Rules and statutes governing the relief requested in the Motion, and (b) does not recognize the harm that filing the Portfolio Companies' financial statement under seal could have on the Portfolio Companies and the Debtors' estate—namely, by disrupting the monetization process and increasing the risk of public disclosure of confidential Portfolio Company information.  As recognized by the Settlement Agreement, preservation of the Portfolio Companies' value and the process to monetize the Debtors' interests are essential for stakeholders to be paid in full in these Chapter 11 cases.  The Motion was filed to aid the preservation and maximization of such value in the Portfolio Companies.  Even if the U.S. Trustee were correct in its legal position, which it is not, this Court should modify the requirements of Rule 2015.3 to grant the relief requested in the Motion, which is consistent with the positions of the stakeholders in these cases.

6.      There is ultimately no compelling reason, as a matter of precedent or policy, to require full disclosure of the Portfolio Companies' financial information, under seal or otherwise, given the particular facts of, and during this critical stage of, these Chapter 11 cases.  As a result, the Patriarch Entities request that the Court approve the Proposed Order over the objection of the U.S. Trustee.

57772/0001-16489933V1

## REPLY

**A.    The Debtors' Key Stakeholders Support or Do Not Oppose Entry of the Proposed Order Due to the Unique Structure and Protections of the Settlement Agreement.**

7.       As noted above, Bankruptcy Rule 2015.3 is designed "***to ensure that the debtor's***

***interest in any of [the applicable] entities is used for the payment of allowed claims against the***

***debtor***."  H.R. Rep. No. 109-31, at 90 (2005) (emphasis added).  In other words, Rule 2015.3

creates a vehicle to ensure that a debtor's interests in non-debtor entities are not depleted and

remain available to satisfy creditors during the bankruptcy case.  Here, that concern has been

rendered moot by the strictures of the Settlement Agreement, the rights of the Independent

Director to be involved in the monetization process, and the fact that ***all of the Debtors'***

***stakeholders in these Chapter 11 Cases either support or do not object to the relief the***

***Patriarch Entities are seeking***.  In fact, the Patriarch Entities only received comments from the

Zohar III Controlling Class, and neither MBIA nor any other creditor raised any formal or

informal objection or concern to the Motion.

8.       After arm's-length discussions among the Patriarch Entities, the Debtors, and the

Zohar III Controlling Class, the parties resolved the Zohar III Controlling Class's concerns by

making the following concessions:

- The percentage interests of each Debtor in the Portfolio Companies shall be included in the Debtors' Rule 2015.3 reports.  As a result, the public and the key stakeholders in these cases will receive regular reporting to show the Debtors' interests in the Portfolio Companies.  Note that the Patriarch Entities take the position that the Debtors hold only record interests in the Portfolio Companies and not beneficial interests, but agreed to defer litigation over this issue pursuant to the Settlement Agreement.

- The Proposed Order shall include the following language:

   "This Order only addresses the Debtors' obligations under Bankruptcy Rule 2015.3, and this Order shall not expand or impair any person's or entity's rights or

obligations, under contract or law, with respect to the disclosure of information for any other purpose."

As a result of this language, the parties have agreed to make clear that entry of the requested protective order will not impair any parties' rights to similar information, or the Patriarch Stakeholders' or Portfolio Companies' obligation to provide such information, to the extent required under contract or law (other than Rule 2015.3).

9.      The support for the entry of the Proposed Order (and the lack of any objection from an economic stakeholder) reflects the unique nature of the Settlement Agreement.  The Settlement Agreement embodies the key stakeholders' agreement that a structured monetization process, with the joint involvement of the Debtors (and their Independent Director and CRO), is the surest way to maximize the value of the Debtors' interests in the Portfolio Companies for the benefit of the Debtors' creditors.  In other words, the key stakeholders agreed that the Settlement Agreement is the best way "to ensure that the debtor's interest in [the Portfolio Companies] is used for the payment of allowed claims against the [D]ebtor[s]."  H.R. Rep. No. 109-31, at 90 (2005).

10.     Requiring the Debtors to file the private Portfolio Companies' financial statements pursuant to Rule 2015.3, even under seal as proposed by the U.S. Trustee, would undermine the Debtors' ability to maximize their interests in the Portfolio Companies.  It would interfere with the monetization process contemplated under the Settlement Agreement, and could significantly harm the Portfolio Companies.  All of the key stakeholders in these Chapter 11 cases, whom Rule 2015.3 was designed to protect, recognize this, and any alternative use of Rule 2015.3 in these cases would, irrationally, undermine the interests of the stakeholders the rule was designed to protect.

57772/0001-16489933V1

**B.      Requiring Disclosure of Portfolio Company Financial Information, Under Seal or Not, Is Unnecessary Under Bankruptcy Rule 2015.3, and Would Harm the Portfolio Companies and the Debtors' Stakeholders.**

11.      The U.S. Trustee asserts that it is "essential for the Debtors to comply with Rule 2015.3(a) and specifically file the financial information of the Portfolio Companies . . ., under seal if the Court deems appropriate, rather than omit the financial information." Objection, ¶ 13. Further, the U.S. Trustee argues that "such information should be unsealed upon an event that negates the designation of the financial information as commercial information." *Id.*  As an example, the U.S. Trustee asserts that if a Portfolio Company is sold, then the need for protection of that Portfolio Company's financial information shall become moot, and the information is no longer required to be sealed.  *Id.*

12.      The U.S. Trustee's position is wrong as a matter of law.  Bankruptcy Rule 2015.3 expressly contemplates modifications of its requirements under both Bankruptcy Rule 2015.3(d) and (e).  Specifically, Bankruptcy Rule 2015.3(d) provides that "[t]he court may, after notice and a hearing, vary the reporting requirement established by subdivision (a) of this rule for cause . . . ."  Similarly, Bankruptcy Rule 2015.3(e) provides that "[t]he entity in which the estate has a substantial or controlling interest, or a person holding an interest in that entity, may request protection of the information under [section] 107 of the Code."  ***Nothing*** in Bankruptcy Rule 2015.3(d) or (e) or Bankruptcy Code section 107 requires financial statements contemplated under Rule 2015.3 to be filed under seal, rather than omitted as requested by the Patriarch Entities.  Further, as explained below, the U.S. Trustee's position, if adopted, would hinder the monetization process and actually harm (or at a minimum put at substantial risk) the value of the Portfolio Companies and the Debtors' interests therein.  Significantly, as noted above, the economic stakeholders in these Chapter 11 cases do not oppose entry of the Proposed Order.

1.      Bankruptcy Rule 2015.3 Provides for the Relief Sought in the Proposed Order.

13.     The U.S. Trustee effectively concedes that, subject to the Patriarch Entities satisfying Bankruptcy Code section 107 (which the Patriarch Entities have done through the Motion and this Reply), the Debtors should not be required to publicly file the financial statements contemplated under Bankruptcy Rule 2015.3, but must nonetheless undertake the time and expense to prepare such financial statements and file them under seal.  This interpretation of Bankruptcy Rule 2015.3 is not supported by precedent or by the language of the applicable rules and statutes.

14.     The requirements of Rule 2015.3 are designed to protect the interests of a specific constituency—namely, holders of claims against the debtors[3]—and, in cases where those interests are not served by disclosure, courts regularly permit debtors to omit information otherwise required by Rule 2015.3.  For example, in prepackaged cases, where there is a pre-arranged protocol for cooperation and information sharing amongst the debtors' economic stakeholders, it is not unusual for debtors to seek and obtain the bankruptcy court's permission to omit financial information about non-debtor subsidiaries, or forego submitting Rule 2015.3 reports in their entirety.  *See In re HCR ManorCare, Inc.*, Case No. 18-10467 (Bankr. D. Del. Mar. 4, 2018) (accessible on Westlaw at 2018 WL 1325691) (motion requesting waiver of Rule 2015.3 requirements and collecting cases[4]).

---

[3]  The legislative history for Rule 2015.3 provides that the rule's purpose is "to ensure that the debtor's interest in any of [the] entities is used for the payment of allowed claims against the debtor." H.R. Rep. No. 109-31, at 90 (2005).

[4]  The debtors in *HCR ManorCare* cited the following prepackaged bankruptcy cases in which courts waived Debtors' obligations to file Rule 2015.3 reports: *In re Global A&T Elecs. Ltd.*, Case No. 17-23931 (RDD) (Bankr. S.D.N.Y. Dec. 19, 2017); *In re GateHouse Media, Inc.*, Case No. 13-12503 (MFW) (Bankr. D. Del. Sept. 30, 2013); *In re SuperMedia Inc.*, Case No. 13-10545 (KG) (Bankr. D. Del. Mar. 19, 2013); *In re Xerium Techs., Inc.*, Case No. 10-11031 (KJC) (Bankr. D. Del. Apr. 27, 2010); *In re Lear Corp.*, Case No. 09-14326

*(Cont'd on next page)*

15.     In *HCR ManorCare*, for example, the debtors sought a permanent waiver of the requirement to file non-debtor subsidiaries' financial information pursuant to Rule 2015.3, conditional on the confirmation of a plan of reorganization within a specified period.  The debtors noted that no parties in interest would be prejudiced by the waiver of the Rule 2015.3 requirements, as the sole member of the only voting class in that case engaged in "extensive negotiations" with the debtors and received sufficient protections and/or information through those negotiations.  In these circumstances, the debtors argued that the preparation and filing of Rule 2015.3 reports in the form required by Official Form No. 426 would be both "unnecessary" and "unduly burdensome."  2018 WL 1325691, ¶¶ 46–47.[5]  The bankruptcy court granted a conditional waiver permitting the Debtors to forego filing of the Rule 2015.3 reports pending confirmation of the Debtors' prepackaged plan of reorganization.  *In re HCR ManorCare, Inc.*, Case No. 18-10467 (Bankr. D. Del. Mar. 6, 2018).

16.     Similarly, in *In re Quicksilver, Inc.*, the debtors filed a motion requesting that the bankruptcy court waive the requirement of Bankruptcy Rule 2015.3 that the debtors disclose financial information for the debtors' many non-debtor affiliates.  Case No. 15-11880-BLS (Bankr. D. Del. Oct. 30, 2015).  The debtors in that case argued that such relief was justified in light of the fact that they provided information similar to that contemplated under Bankruptcy Rule 2015.3 through SEC filings.  *Id.* at p. 5.  Given that the parties in interest already had access to substantially similar information through different channels, the Debtors argued that

---

*(Cont'd from previous page)*

(ALG) (Bankr. S.D.N.Y. Aug. 25, 2009); and *In re BearingPoint, Inc.*, Case No. 09-10691 (REG) (Bankr. S.D.N.Y. Aug. 20, 2009).

[5]     *See also In re Gatehouse Media, Inc.*, 2013 WL 5609580 (Bankr. D. Del. Sep. 27, 2018) (noting that, where the Rule 2015.3 disclosures are "of dubious value to any party in interest but still would require a significant expenditure of time and resources by the Debtors . . . a conditional waiver of the requirement to file [the disclosures] is appropriate under section 105(a) of the Bankruptcy Code . . . .").

"[c]ompliance with the Rule 2015.3 Reporting Requirements would be unnecessary, duplicative, and unduly burdensome." *Id.* at p. 6. Judge Shannon agreed with the debtors, and entered an order waiving the debtors' reporting obligations under Rule 2015.3 *in toto*. *In re Quicksilver, Inc.*¸ Case No. 15-11880 (Bankr. D. Del. Dec. 2, 2015).

17.    Finally, the U.S. Trustee's Objection assumes, without justification, that the only relief the Court can grant in response to the Patriarch Entities' request for a protective order under Bankruptcy Rule 2015.3(e) and Bankruptcy Code section 107 is for the Portfolio Companies' financial statements to be sealed, rather than omitted. This is not correct. Under Bankruptcy Rule 2015.3(e), the Patriarch Entities have the right to "request protection of the information [required under Rule 2015.3] under [section] 107 of the Code." Nothing in sections 107(b) or (c) provide that a bankruptcy court's sole mechanism for protecting covered information is to seal such information. Rather, those statutes broadly grant the Court discretion to "protect" parties and information covered by the statute. *See* 11 U.S.C. § 107(b)(1)–(2), (c). Ordering that confidential financial statements not be filed at all is certainly a means of protecting information covered by Bankruptcy Rule 107. *See In re A.G. Fin. Serv. Ctr., Inc*, 395 F.3d 410, 415–16 (7th Cir. 2005) (denying creditor's request that the debtor disclose confidential customer lists and stating that 11 U.S.C. § 107(b)(1) "authorize[s] the court to withhold confidential commercial information from public disclosure").

18.    The Motion falls squarely within the foregoing authorities.[6] Like the economic stakeholders in *HCR ManorCare* and *Quicksilver*, the economic stakeholders in these Chapter 11

---

[6]    In a footnote, the U.S. Trustee argues that Bankruptcy Rule 2015.3(d) is the exclusive statutory basis for seeking waiver or modification of the requirements of Rule 2015.3, and that, because the Motion seeks relief under 11 U.S.C. § 107, the only relief available is permission to file under seal. Objection, ¶ 12 n.1. While Bankruptcy Rule 2015.3(d) is an alternative basis for relief, the U.S. Trustee is incorrect that filing under seal is

*(Cont'd on next page)*

cases have already determined the appropriate structure for ensuring that the Debtors' interests in the Portfolio Companies are preserved and made available to satisfy allowed claims (e.g., the heavily negotiated Settlement Agreement).  As a result, contrary to the U.S. Trustee's unsupported position in the Objection, the Court has authority to enter the Proposed Order, ordering the Debtors to omit, rather than file under seal, the Portfolio Companies' financial statements.  As explained below, such relief is also necessary and appropriate to protect the Portfolio Companies—private companies that are not parties in these Chapter 11 cases—and the Debtors' estates.

> 2.    The Portfolio Companies' Financial Statements Must Be Omitted from Rule 2015.3 Reports, Rather Than Conditionally Sealed as Requested by the U.S. Trustee.

19.    For the reasons set forth in the Motion, requiring the Debtors to file the Portfolio Companies' financial statements on the public docket would have substantial adverse effects on the Portfolio Companies and the Debtors in several ways.  For example:

- Several of the Portfolio Companies are in the middle of complex marketing processes, the success of which are necessary for the stakeholders in these Chapter 11 cases to be paid.  As part of these processes, the Portfolio Companies and their investment bankers are providing interested buyers and financiers with financial information regarding the Portfolio Companies.  The form of financial information provided to buyers may be different from what is contemplated under Rule 2015.3.  As a result, public dissemination of such information would materially impact the marketing process.

- Competitors of the Portfolio Companies may use filed financial statements to disadvantage the Portfolio Companies, thereby harming their operations and value.  Further, public disclosure of financial information could adversely affect the Portfolio Companies' customer and vendor relationships.

---

*(Cont'd from previous page)*

the only remedy available under 11 U.S.C. § 107, and entry of a protective order in the form attached hereto as Exhibit A is appropriate.

57772/0001-16489933V1

The U.S. Trustee's proposal to file the financial statements under seal does not alleviate the potential prejudice to the Portfolio Companies or the Debtors.

20.    *First*, the potential purchasers and financiers that the Portfolio Companies' investment bankers are soliciting are highly sophisticated parties who are likely to monitor the docket for these Chapter 11 cases.  Even if financial statements—which may not have otherwise been created—are being filed under seal, interested buyers and financiers will almost certainly demand such information.  The investment bankers engaged in the monetization process are already hard at work marketing the Portfolio Companies so that the monetization process is a success, and creditors are paid in full.  Requiring the filing of the Portfolio Companies' financial statements under Rule 2015.3, even if under seal, would create a source or form of information that would not otherwise be created in the ordinary course or in the sale process, which buyers will almost certainly demand.  This will only complicate the monetization process by interfering with the efforts of the financial professionals to (i) manage the flow of information to potential buyers, and (ii) control the presentation of Portfolio Company financial information.

21.    *Second*, the U.S. Trustee suggests that once a Portfolio Company is sold, the protection of its financial statements becomes "moot," and the Rule 2015.3 filings with respect to that entity can be unsealed.  *See* Objection, ¶ 13.  This suggestion wholly misunderstands the fact that the Portfolio Companies are private entities, and a buyer or financier of a particular Portfolio Company will be just as interested in preserving the confidentiality of the company's financial statements as the company itself.  If a potential buyer or financier knows that upon completion of a monetization transaction, confidential financial information regarding the target Portfolio Company will become public, that buyer or financier may walk away or, at a minimum, depress its price in light of the harm such public dissemination may have on the company.  As a result,

the conditional sealing contemplated under the U.S. Trustee's objection would suppress the value realizable through the monetization process, to the detriment of the Patriarch Entities and all other stakeholders in these Chapter 11 cases.

22.     *Third*, there is no guarantee that the Portfolio Companies' financial statements will remain confidential, even if filed under seal.  For example, these are highly public Chapter 11 cases, and each filing of a Rule 2015.3 statement would create an opportunity for enterprising third parties, including reporters, to obtain access even to sealed information, for instance by serving the U.S. Trustee with a FOIA request.[7]

23.     *Fourth*, Rule 2015.3 contemplates the ongoing preparation and filing of financial statements every six (6) months.  Some of the Portfolio Companies operate in highly regulated industries and prepare and audit their financial statements under schedules or guidelines that may be different from what is contemplated by Rule 2015.3.  Alternatively, some of the Portfolio Companies that are not currently being marketed remain in, or are recently emerging from, distressed situations, and may not regularly create or update their financial statements. Requiring these third-party Portfolio Companies to disrupt their ongoing financial reporting would be unduly burdensome, and could disrupt these private companies' operations and value.

24.     Under any metric, all of the above risks substantially undermine the potential value to having the Debtors file the Portfolio Companies' financial statements under seal.  As described above, adherence to Rule 2015.3 provides no value to the Debtors' economic

---

[7]     *See Allnutt v. U.S. Dep't of Justice*, 99 F. Supp. 2d 673, 678 (D. Md. 2000), aff'd sub nom. *Allnut v. Handler*, 8 F. App'x 225 (4th Cir. 2001) (holding that "[i]n response to a FOIA request, [the office of the U.S. Trustee] is required to produce 'agency records,' which are those records either created **or obtained by the agency** and subject to the control of the agency when the request is made") (emphasis added).  Counsel for the U.S. Trustee has acknowledged this concern and the parties have engaged in discussions in order to address it.  However, no agreement was reached prior to the filing of this Reply.

stakeholders that could outweigh the undisputed risks associated with disclosure.  Accordingly, this Court should grant the relief sought in the Motion.

### C.    The Debtors Do Not Control the Portfolio Companies, and Should Not Be Compelled to Disclose Confidential Information That Could Harm Them.

25.    Chapter 11 debtors have also been permitted to omit otherwise-required financial information in Rule 2015.3 reports in situations where the debtor lacks control and supervision over the non-debtor entities in question, and where third parties who do control the non-debtors object to the disclosures due to confidentiality concerns.  For example, in *In re Smurfit-Stone Container Corp.*, the debtors requested permission to omit financial information for 19 companies that would otherwise be subject to the Rule 2015.3 reporting requirements (the "Non-Reporting Entities") in light of the fact that "[t]he Debtors lack and control over the Non-Reporting Entities and do not have access to the information," and do not "control the board of directors" or "participate in the day-to-day management" of the entities.  Case No. 09-10235 (Bankr. D. Del. Apr. 22, 2009).  The debtors further argued that the omissions were justified because "confidentiality constraints limit the Debtors' ability to publicly disclose certain financial information regarding Non-Reporting Entities" and that "the Debtors believe the third party owners of such [entities] would not consent to the public disclosure of the information required by Bankruptcy Rule 2015.3(a)." *Id.*

26.    In *Smurfit-Stone* Judge Shannon never entered an order addressing the debtors' Rule 2015 motion.  Instead, the hearing on the motion was repeatedly continued until the court confirmed a Plan of Reorganization over a year later, rendering the motion moot.  *See* Confirmation Order dated June 21, 2010.  However, during the intervening period, the Debtors filed three Rule 2015.3 reports omitting all financial information for the Non-Reporting entities,

without eliciting a formal objection from the U.S. Trustee or any other party.  *See* Rule 2015.3

reports dated Apr. 22, 2009; Oct. 22, 2009; and Apr. 22, 2010.[8]

27.    These cases are factually similar to *Smurfit-Stone*, insofar as the Debtors are

principally only lenders to the Portfolio Companies, and are not involved in the day-to-day

management or oversight of the Portfolio Companies.  Likewise, in the ordinary course of

business, the Debtors have not had access to the Portfolio Companies' financial information,

other than to the extent provided in the applicable credit agreements under which the Debtors

served as lenders to the Portfolio Companies.[9]  The Settlement Agreement did not alter the

prepetition status quo with respect to control of the Portfolio Companies.  *See* Settlement

Agreement ¶ 9 (providing that Tilton shall remain in her position as director, manager and

officer, as applicable, of the Portfolio Companies while the Settlement Agreement remains in

effect).

28.    The Portfolio Companies are private companies that treat their financial

information as confidential, and wish to avoid any scenario that could result, intentionally or

unintentionally, in the disclosure of their financial information to competitors and/or customers.

As in *Smurfit-Stone*, the Debtors should be permitted the file their Rule 2015.3 reports without

forcing third-party companies, whom the Debtors do not control, from divulging confidential

financial information without their consent.

---

[8]  The Rule 2015.3 motion, confirmation order, and Rule 2015.3 reports from *In re Smurfit-Stone* are attached hereto as Exhibits C – G.

[9]  As noted in the Motion, prior to the Petition Date, the Zohar Funds (through their prior collateral manager) and Tilton, among others, were engaged in litigation as to which persons or entities owned the record and/or beneficial equity interests in the Portfolio Companies.  This litigation has been stayed pursuant to the Settlement Agreement.  Nothing in this Motion shall constitute an admission, waiver, or modification with respect to any of the positions or arguments taken in such litigation.

57772/0001-16489933V1

**D.      To Address the U.S. Trustee's Concern, the Proposed Order Should Be Limited in Duration Consistent with the Settlement Agreement.**

29.      In deference to the U.S. Trustee's concern that the Debtors should not be excused indefinitely from making financial disclosures under Rule 2015.3, the Patriarch Stakeholders have agreed that their Proposed Order should only cover Rule 2015.3 reports filed or required to be filed through November 21, 2019, which is the last day of the 18 Month Extended Window under the Settlement Agreement.  For any Rule 2015.3 reports after that period, the U.S. Trustee and the Patriarch Entities reserve all rights with respect to the form of disclosure necessary to comply with Rule 2015.3.  The Revised Proposed Order is attached hereto as Exhibit A, and a blackline comparison showing changes to the original Proposed Order included in the Motion is attached hereto as Exhibit B.

WHEREFORE, Tilton, in her capacity as manager, director, and/or chief executive officer of the Portfolio Companies, and the Patriarch Entities respectfully requests that this Court (i) overrule the Objection, and (ii) grant the relief requested in the Motion and enter the Proposed Order as modified, attached hereto as Exhibit A, and (iii) grant such other and further relief as the Court deems just and proper.

57772/0001-16489933V1

Dated:  October 29, 2018

**COLE SCHOTZ P.C.**


By: */s/ Patrick J. Reilley*
Norman L. Pernick (No. 2290)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117
npernick@coleschotz.com
preilley@coleschotz.com

– and –

**GIBSON, DUNN & CRUTCHER LLP**
Robert Klyman (Admitted Pro Hac Vice)
Michael S. Neumeister (Admitted Pro Hac Vice)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile:  (213) 229-7520
rklyman@gibsondunn.com
mneumeister@gibsondunn.com


Randy M. Mastro (Admitted Pro Hac Vice)
Mary Beth Maloney (Admitted Pro Hac Vice)
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile:  (212) 351-4035
rmastro@gibsondunn.com
mmaloney@gibsondunn.com

*Counsel to Lynn Tilton and the Patriarch*
*Stakeholders*

57772/0001-16489933V1