**EXHIBIT A**



Joseph J. Farnan, Jr.
Independent Director for the Zohar Debtors
Farnan, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801

Dated:  [•], 2018

Re:  New Agent Agreement and Fee Letter

Dear Joe:

This letter (the "Letter Agreement") confirms that Ankura Trust Company, LLC ("Ankura Trust") has been selected to serve as the new agent (the "New Agent") under the Zohar credit agreements currently existing with the borrowers set forth on Exhibits A-1 and A-2 hereto (the "A-1 Credit Agreements" and "A-2 Credit Agreements", respectively; and together, the "Credit Agreements"), in accordance with section 6 of the settlement agreement (the "Settlement Agreement") approved by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on May 21, 2018 in *In re Zohar III, Corp.*, Case No. 18-10512 (CSS) (the "Proceedings").  Defined terms used herein but not otherwise defined herein shall have the meanings set forth in the Settlement Agreement as in effect on the date hereof.

1.  New Agent's Services; Fees.  The New Agent shall perform the services and duties set forth in the respective Credit Agreements, as modified and limited by the Settlement Agreement (the "New Agent Matters"), as well as such services as may otherwise be agreed in writing by the Independent Director or CRO, on the one hand, and the New Agent, on the other hand, from time to time.  Upon Bankruptcy Court approval of the appointment of the New Agent, the Zohar Debtors shall pay the New Agent for the New Agent's own account the Acceptance Fee set forth on Exhibit B hereto. Additionally, the New Agent shall be entitled to receive the Annual Fees and any applicable hourly administration fees as set forth on Exhibit B hereto.  All fees of the New Agent shall be fully earned as provided in Exhibit B hereto.

2.  Reimbursement of Expenses; Indemnification; Non-Payment.

    a.  *Expense Reimbursement.*  The New Agent shall be entitled to reimbursement of its expenses, costs and fees in accordance with the Credit Agreements, including reasonable fees and expenses of legal counsel.  In addition, the Zohar Debtors shall be responsible pursuant to paragraph 2(f) below for all reasonable and documented costs of legal counsel to the New Agent in connection with negotiating, documenting and executing this Letter Agreement, including obtaining Bankruptcy Court approval of the same.

    b.  *Indemnification*.  The New Agent, its affiliates and their respective directors, officers, members, stockholders, partners, agents and employees (each, solely in their respective capacities as such, an "Indemnified Party", and collectively, the "Indemnified Parties") shall be entitled to indemnification from each borrower in accordance with the terms of the Credit Agreements.



    c.    *Non-Payment*.

    i.    To the extent that any borrower under a Credit Agreement fails to timely pay or reimburse the New Agent for fees, expenses, costs or indemnities owed to the New Agent or any other Indemnified Party under such Credit Agreement, including, without limitation, the fees, expenses and costs of any professionals employed in furtherance thereof (in each case, to the extent arising on or after Bankruptcy Court approval of this Letter Agreement), the Zohar Debtors that are lenders under such Credit Agreement shall pay or reimburse the New Agent such amounts on behalf of the relevant borrower under such Credit Agreement on a pro rata basis (based on the ratio of outstanding indebtedness owed by such borrower to a Zohar Debtor-lender over the outstanding indebtedness owed by such borrower to all Zohar Debtor-lenders); provided, that ZII Corp. and the Zohar II Debtors shall be responsible for any and all obligations owed by ZI Corp. or the Zohar I Debtors under this paragraph; provided, further, that any unpaid fees (but not any indemnity obligations) of the New Agent with respect to any A-2 Credit Agreement shall be payable as provided in Exhibit B hereto and not this paragraph.

    ii.    Nothing set forth in this Agreement shall limit the Zohar Debtors' right to seek payment or reimbursement or assert any claims, including, but not limited to, for any New Agent fees, expenses, costs, indemnities or amounts advanced under any Credit Agreement or this Agreement from any party, including any borrower or other lender under any Credit Agreement.

    d.    *Additional Reimbursement and Indemnification Obligations*.  If the New Agent is requested in writing by the Independent Director or CRO to perform any services or to take any action that are not covered by provisions of an applicable Credit Agreement (a "Debtor Directed Matter"), the fees and expenses (to the extent not payable by an underlying borrower) for such Debtor Directed Matter shall be paid directly by the Zohar Debtors pursuant to paragraph 2(f) below within 30 days of being invoiced for such services or in accordance with any applicable procedures in the Proceedings, provided, however, the New Agent shall not be obligated to perform (and the Independent Director and the CRO shall not direct it to perform) any Debtor Directed Matter that is prohibited by the Settlement Agreement while it remains in force and effect.  If the New Agent becomes subject to any litigation or other proceeding brought by another party related to a Debtor Directed Matter for which indemnity is not available to it under a Credit Agreement (an "Uncovered Matter"), then the New Agent shall be entitled to indemnification from the Zohar Debtors pursuant to paragraph 2(f) below with respect to such Uncovered Matter; provided, that such indemnity shall not be available to the extent determined by a final order of a court of competent jurisdiction to have arisen from the gross negligence or willful misconduct of the New Agent.

    e.    *Form of Payment; Setoff, Recoupment, and Counterclaim*.  All payments with respect to fees, expenses, costs and indemnities incurred by the New Agent shall be paid in U.S. dollars and in immediately available funds.  The parties agree that, once paid, such fees, expenses, costs and indemnities, or any part thereof, will not be refundable under any circumstances and shall not be subject to reduction by way of setoff, recoupment, or counterclaim against the New Agent or any other Indemnified Party.

    f.    *Allocation of Financial Obligations*.  To the extent not otherwise expressly specified herein, any obligation of the Zohar Debtors to pay any amounts hereunder, including the fees, expenses,



costs or indemnities described herein, shall be allocated to each Zohar Debtor based on the amount of the then outstanding Paid in Full amount applicable to such Zohar Debtor; provided, that ZII Corp. and the Zohar II Debtors shall be responsible for any and all obligations owed by ZI Corp. or the Zohar I Debtors under this Letter Agreement.

3. Bankruptcy Court Approval. The Zohar Debtors shall promptly seek Bankruptcy Court approval of this Letter Agreement, including the fee schedule set forth in Exhibit B hereto. Upon Bankruptcy Court approval of this Letter Agreement, the New Agent shall report only to the Independent Director, the Chief Restructuring Officer ("CRO") and the Indenture Trustee, U.S. Bank.

4. Co-Agent. The New Agent acknowledges that the existing agent, Patriarch Partners Agency Services, LLC ("PPAS"), may be designated as a co-agent under some of the Credit Agreements for all purposes (and only for such purposes) related to the Patriarch Stakeholders and any other third parties.[1] Pursuant to section 6 of the Settlement Agreement, PPAS, the Independent Director, the CRO and the New Agent shall use commercially reasonable efforts to transition existing Zohar-related PPAS agent matters to the New Agent.

5. Confidentiality. The Independent Director and CRO shall, and shall cause each of the Zohar Debtors and their respective directors, managers, officers, employees, consultants, advisors, counsel, accountants, agents and other representatives to, hold the terms and conditions of the fee schedule attached as Exhibit B hereto (the "Fee Schedule") in confidence. The Independent Director and the CRO shall, and shall cause each of the Zohar Debtors to, support the motion by Ankura Trust to file the Fee Schedule under seal in connection with the Zohar Debtors seeking Bankruptcy Court approval of this Letter Agreement; provided, that such motion permits disclosure of the Fee Schedule to MBIA, the Zohar III Controlling Class, US Bank, as Indenture Trustee, the Patriarch Stakeholders and the US Trustee and each of their respective professionals; provided, that each such entity shall agree that the use of the information contained in the Fee Schedule shall be solely for the purpose of the Proceedings, that the information will be kept confidential in accordance with the terms of this paragraph 5 and any disclosure of such information within such entity shall be limited to those individuals who need to know the information in order to perform their duties in connection with the Proceedings. Notwithstanding anything to the contrary herein, the Independent Director, Zohar Debtors, MBIA, the Zohar III Controlling Class, US Bank, in its capacity as Indenture Trustee, and the Patriarch Stakeholders may disclose information contained in the Fee Schedule to the extent such disclosure is (i) consented to in writing by Ankura Trust, (ii) ordered by a court of competent jurisdiction, or (iii) required by applicable law, rule or regulation, or pursuant to an interrogatory, subpoena, civil investigatory demand or similar legal process. To the extent disclosure of information contained in the Fee Schedule is required pursuant to the preceding clause (iii), the party that is subject to such legal requirement or process shall (to the extent not prohibited by applicable law, rule or regulation) (a) provide Ankura Trust with prompt notice in advance of such disclosure so that Ankura Trust may seek, at its own expense, a protective order or other appropriate remedy or waive compliance with this Letter Agreement, and (b) object to

---

[1] Notwithstanding the designation of PPAS as a co-agent with the New Agent under any Credit Agreement, the New Agent shall have the exclusive authority and right to act, or refrain from acting, with respect to any and all New Agent Matters under the Credit Agreements, in each case, without having to obtain the consent or direction of PPAS or any other co-agent designated under such Credit Agreements and without any duty or liability to such co-agents or the lenders for whom such co-agents act.



the production of such confidential information on the grounds of the existence of this Letter Agreement.

6. <u>Resignation of New Agent</u>. The New Agent shall be entitled to resign (i) in accordance with the terms of the Credit Agreements or (ii) otherwise pursuant to an order of the Bankruptcy Court. In the event of such resignation, the CRO, in consultation with the Independent Director, shall appoint a new independent administrative agent in accordance with paragraph 4 of the Settlement Agreement.

7. <u>GOVERNING LAW; SUBMISSION TO JURISDICTION; SELECTION OF FORUM; WAIVER OF TRIAL BY JURY</u>.

    a. *Governing Law.* THIS LETTER AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH, AND GOVERNED IN ALL RESPECTS BY, THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

    b. *Jurisdiction; Forum.*

        i. Except for those matters expressly covered by clause (ii) below, each party hereto irrevocably and unconditionally (a) submits for itself and its property in any legal action or proceeding relating to this Letter Agreement or for recognition and enforcement of any judgment in respect thereof, to the exclusive general jurisdiction of the federal courts of the United States for the Southern District of New York, and appellate courts from any thereof (or, if such federal courts do not have jurisdiction, to the exclusive general jurisdiction of the New York State Courts of New York County and the appellate courts from any thereof), and (b) consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same.

        ii. Notwithstanding the foregoing, for so long as the Zohar Debtors remain subject to the Proceedings before the Bankruptcy Court, any dispute arising in connection with the provisions of section 6 of the Settlement Agreement shall in the first instance be referred to the Mediator. If the Mediator cannot resolve that dispute, the parties shall jointly seek an order of the Bankruptcy Court resolving the dispute (provided that, to the extent the Bankruptcy Court lacks jurisdiction, the dispute will be heard by a court of competent jurisdiction specified in the foregoing clause (i)).

    c. *Trial by Jury Waiver.* THE PARTIES HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS LETTER AGREEMENT.

8. <u>Power and Authority</u>. The Independent Director represents and warrants that (x) he is duly authorized and has legal capacity to execute and deliver this Letter Agreement on behalf of the Zohar Debtors, and (y) subject to Bankruptcy Court approval, this Letter Agreement shall be a valid and legal agreement binding on the Zohar Debtors, which shall be enforceable in accordance with its terms.



9.  Severability and Construction. If any provisions of this Letter Agreement shall be held to be invalid, void, or unenforceable, the remaining provisions hereof shall not be affected or impaired and such remaining provisions shall remain in full force and effect.

10. Due Inquiry; Intended Beneficiaries. Each of the parties hereto represents and declares that such party has carefully read this Letter Agreement and that such party knows the contents thereof and signs the same freely and voluntarily. This Letter Agreement is intended to be solely for the benefit of the parties hereto, and is not intended to confer any benefits upon, or create any rights in favor of, any person other than the parties hereto.

11. Amendment and Waiver. This Letter Agreement may not be amended or any provision hereof waived or modified except (1) by an instrument in writing signed by each of the parties hereto and (2) to the extent such amendment, waiver or modification would materially affect the Zohar Debtors' rights or obligations under this Letter Agreement (a "Material Amendment"), with Bankruptcy Court approval; provided, that the Zohar Debtors shall file a notice in the Proceedings of any proposed non-Material Amendment to this Letter Agreement at least five business days in advance of executing such non-Material Amendment. Failure of any party to enforce any of the provisions hereof shall not be construed as a waiver of such provisions or of the right thereafter to enforce such provisions.

12. Successors and Assigns. This Letter Agreement shall be binding on and shall inure to the benefit of the New Agent and the Zohar Debtors and their respective successors and permitted assigns.

13. Complete Agreement. This Letter Agreement shall supersede any prior written or oral agreements among the parties hereto with respect to the compensation described herein.

14. Headings. The headings of all paragraphs of this Letter Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.

15. Execution of Agreement. This Letter Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of this Letter Agreement by fax or electronic mail shall have the same force and effect as the delivery of an original executed counterpart of this Letter Agreement.

16. Execution of Tolling Agreement. Upon execution hereof, the New Agent (solely in its capacity as such) shall join that certain Tolling and Litigation Standstill Agreement, dated September 7, 2018 (the "Tolling Agreement"), by and among certain parties to the Settlement Agreement.

Please indicate your agreement with the foregoing terms and provisions by countersigning this Letter Agreement and returning to us executed counterparts hereof.



By: _____

Name:  David Sawyer
Title:  Chief Executive Officer

Agreed and accepted to
as of the date first written above:

Joseph J. Farnan, Jr. on behalf of each of the Zohar Debtors

By: _____

Name:  Joseph J. Farnan, Jr.
Title:   Independent Director

Michael Katzenstein, as CRO of the Zohar Debtors

By: _____

Name:  Michael Katzenstein
Title:   Chief Restructuring Officer

6



# EXHIBIT A-1

**Performing Borrowers**

In accordance with the Court's *Order Authorizing the Debtors to File Portions of Settlement Agreement and Related Motion Under Seal* (the "Seal Order") dated May 17, 2018 [Docket No. 263] the information on this Exhibit constitutes Sealed Material (as defined in the Seal Order).



# EXHIBIT A-2

**Non-Performing Borrowers**

**In accordance with the Court's** *Order Authorizing the Debtors to File Portions of Settlement Agreement and Related Motion Under Seal* **(the "Seal Order") dated May 17, 2018 [Docket No. 263] the information on this Exhibit constitutes Sealed Material (as defined in the Seal Order).**



**EXHIBIT A-3**

**Non-Performing Inactive Borrowers**

**In accordance with the Court's** *Order Authorizing the Debtors to File Portions of Settlement Agreement and Related Motion Under Seal* **(the "**<u>Seal Order</u>**") dated May 17, 2018 [Docket No. 263] the information on this Exhibit constitutes Sealed Material (as defined in the Seal Order).**

Case 18-10512-KBO    Doc 490-2    Filed 10/29/18    Page 11 of 12



**EXHIBIT B**

*See Motion of Ankura Trust Company, LLC for Entry of Order Directing Fee Schedules to be Maintained Under Seal* **filed contemporaneously herewith.**

01:23796831.1

ankura.com



## Schedule I

*See Motion of Ankura Trust Company, LLC for Entry of Order Directing Fee Schedules to be Maintained Under Seal* **filed contemporaneously herewith.**