# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.,*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10512 (CSS)<br><br>Jointly Administered<br><br>**Ref. Docket Nos. 356, ~~382~~382, 432** |

**ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363 AND
507, AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING
DEBTORS TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE
PROTECTION TO PREPETITION SECURED PARTIES; (III) PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (IV) MODIFYING
AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (each a

"Debtor," and collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases")

for entry of an order (the "Order") under sections 105, 361, 362, 363, and 507 of title 11 of the

United States Code (as amended, the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the

Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), seeking:

      (a)      authorization for the Debtors, pursuant to sections 105, 361, 362, 363, and
507 of the Bankruptcy Code, to (i) use the Cash Collateral; and (ii)
provide adequate protection and superpriority administrative expense
claims to U.S. Bank National Association, solely in its capacity as
Indenture Trustee (the "Indenture Trustee"), on behalf of all Secured
Parties (as defined under the Indentures), including[3], Secured Parties

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as
follows: Zohar III, Corp. (9612) ("Zohar Corp. III"), Zohar II 2005-1, Corp. (4059) ("Zohar Corp. II"),
Zohar CDO 2003-1, Corp. (3724) ("Zohar Corp. I"), Zohar III, Limited (9261) ("Zohar III Fund"), Zohar
II 2005-1, Limited (8297) ("Zohar II Fund"), and Zohar CDO 2003-1, Limited (5119) ("Zohar I Fund").
The Debtors' address is Zohar III, Corp., 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] Except as otherwise stated herein, all capitalized terms used but not otherwise defined herein shall have
the meanings ascribed to them in the Motion.

[3] The terms "including" and "includes" as used throughout this Order shall be interpreted as not limiting
consistent with their interpretation pursuant to § 102(3) of the Bankruptcy Code.

MBIA Insurance Company ("MBIA") and the Zohar III Secured Noteholders[4] (the "Controlling Secured Parties"[5] and together with the Indenture Trustee, each a "Secured Party," and collectively, the "Secured Parties") under the Transaction Documents as defined in Exhibit 2 hereto. All outstanding debts, liabilities, and obligations of every kind and nature arising under any and all of the Transaction Documents, including, all Class A Notes and all Credit Enhancement Liabilities are referred to herein as the "Transaction Obligations";

(b)     to provide adequate protection of the Secured Parties' interests in the Prepetition Collateral to the Indenture Trustee on behalf of Secured Parties pursuant to sections 361 and 363(c) of the Bankruptcy Code, subject to the terms of the applicable Indentures, and in accordance with the terms of this Order;

(c)     authorization to grant adequate protection liens on the proceeds and property recovered in respect of the Debtors' claims and causes of action arising under sections 544, 545, 547, 548, 549, 553, and 550 of the Bankruptcy Code or any other similar state or federal law (collectively, the "Avoidance Actions");

(d)     to modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Order;

(e)     ~~except to the extent of the funding and payment of the Carve Out, the waiver by the Debtors of any right to surcharge against~~ to provide adequate protection of the interests of the Patriarch Secured Parties (as defined below) in the Prepetition Collateral ~~or the Adequate Protection Collateral~~ in the form of payment of (i) professional fees and expenses, pursuant to ~~section 506~~ sections 361 and 363(c) of the Bankruptcy Code ~~or any other applicable principle of equity or law; and~~, subject to the terms of the applicable Indentures, and in accordance with the terms of this Order, and (ii) payment of accruing post-petition interest under the Class A-3 Notes (as defined under the Indentures);

(f)     waiver of any applicable stay with respect to the effectiveness and enforceability of this Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

---

[4] The Zohar III Secured Noteholders include Halcyon Capital Management LP, Coöperatieve Rabobank U.A., New York Branch, STS Master Fund, Ltd., SBF Opportunities Master Fund, Ltd., and Candlewood Structured Credit Harvest Master Fund, Ltd.

[5] The term Controlling Secured Parties includes MBIA as a Controlling Party and as Credit Enhancer under the applicable Indentures (as defined herein) or such other Controlling Class or Controlling Party as defined in the applicable Indentures.

This Court having entered the *Interim Order Authorizing the Debtors' Limited Use of Cash Collateral* [Docket No. 382] (the "First Interim Order") on July 23, 2018 [Docket No. 382]and the *Second Interim Order Authorizing the Debtors' Limited Use of Cash Collateral* [Docket No. 432] (the "Second Interim Order", and together with the First Interim Order, the "Interim Orders") on August 22, 2018, previously authorizing the Debtors' limited use of cash collateral in accordance with the Interim OrderOrders; and hearing (the "Hearing") having been held by this Court on August 21,October 29, 2018 to consider the relief requested in the Motion on a final basis and entry of this Order; and upon the record made at the Hearing; and this Court having heard and resolved or overruled all objections to the relief requested in the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation and consideration and sufficient cause appearing therefor,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *The Motion.* The Motion is granted as set forth herein. Any objection, reservation of rights, or statements to or otherwise with respect to the Motion with respect to entry of this Order to the extent not withdrawn, waived, or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2. *Jurisdiction.* The Court has jurisdiction over these above-captioned Chapter 11 cases (the "Cases") and the Motion pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for these Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. *Notice.* Notice of the Motion, the relief requested therein, and the Hearing was served by the Debtors on the parties set forth in the Motion.  Under the circumstances, such

notice constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002,

4001(b), (c), and (d) and the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware.

    4.    *Debtors' Stipulations*. ~~The~~Subject to the limitations contained in paragraph 27

below, the Debtors admit, stipulate, and agree that:

> (a)    *Prepetition Secured Obligations*. As of the Petition Date ~~and in accordance with the Settlement Agreement~~, the Debtors ~~previously agreed, through the Settlement Agreement, that they~~ were indebted and liable to the Secured Parties for all of the "Paid in Full"[6] amounts as defined in and on the terms set forth in the Settlement Agreement,[7] plus accrued and unpaid interest, ~~indemnification obligations,~~ and the reasonable fees and documented out of pocket expenses (including, the reasonable fees and documented out of pocket expenses of the Indenture Trustee and its advisors, any Controlling Secured Party's advisors and other obligations incurred in connection therewith) in accordance with the terms of the Indentures and the Transaction Documents~~, which amounts are not subject to attack, avoidance, objection, recharacterization, defense, equitable subordination, or any other challenge~~;

> ~~(b)~~    ~~*Enforceability of the Transaction Obligations*. To the extent not inconsistent with the Settlement Agreement, the Transaction Obligations constitute "allowed claims" within the meaning of section 502 of the Bankruptcy Code; and~~

> (b)    ~~(c)~~*Enforceability and Priority of the Prepetition Liens*. ~~Subject to (i) the Debtors' right to confirm the stipulations, admissions and agreements set forth in this paragraph 4(c) within ninety (90) days of the date of entry hereof (including any extension thereof in accordance with paragraph 27 hereof, the "Confirmation Period"), and (ii) the provisions contained in paragraph 27 hereof, the~~The liens and security interests granted by Zohar I, Zohar II, and Zohar III to the Indenture Trustee for the benefit of the Secured Parties (as defined under the Indentures) to secure the Transaction Obligations pursuant to and in connection with the Indentures (each a "Prepetition Lien" and collectively the "Prepetition Liens"), are valid,

---

[6] The amounts set forth on Exhibit A to the Settlement Agreement are not fixed or static. For example, as noted in Exhibit A, accruing interest is excluded and Exhibit A excludes certain categories and amounts that must be paid prior to principal and interest owing to the Holders of the notes, including, without limitation, certain fees, expenses, reserves, and other amounts, which are set forth in the Priority of Payments of each Indenture (that have accrued or may accrue in the future).

[7] The "Settlement Agreement" means that Mediation Term Sheet setting forth the terms of the settlement by and between the Debtors, Lynn Tilton, the Patriarch Stakeholders (as defined in the Settlement Agreement), MBIA, and the Zohar III Secured Noteholders approved by order of the Court entered on May 21, 2018 [Docket No. 266, Exhibit 1].

binding, fully perfected, enforceable, first priority liens and security interests on all property and assets of any type or nature owned by the Debtors (the "Collateral," including the Cash Collateral (as defined below), are collectively referred to herein as the "Prepetition Collateral"); provided, however that the Prepetition Liens shall be subject and subordinate only to (i) the funding and payment of the Carve Out, and (ii) liens and security interests granted to secure the Adequate Protection Obligations.; and

(c) *Patriarch Secured Party Obligations.* As of the Petition Date, the Debtors were indebted and liable on account of either Class A-3 Notes or Class B Notes (as defined under the Indentures) in the principal amounts and to the holders of such notes listed below, plus accrued and unpaid interest, and fees and expenses (including, the reasonable fees and expenses of such holders and their advisors, and other obligations incurred in connection therewith), secured by the Prepetition Collateral, in accordance with the terms of the Indentures and the Transaction Documents (including the Priority of Payments in the Indentures):

(1) Zohar Corp. I, Zohar Fund I: Class A-3 Notes in the principal amount of $286,445,355.00 to Patriarch Partners XV, LLC ("Patriarch XV"); and Class B Notes in the principal amount of $150,000,000 to Octaluna, LLC ("Octaluna I");

(2) Zohar Corp. II, Zohar Fund II: Class B Notes in the principal amount of $200,000,000 to Octaluna II, LLC ("Octaluna II");

(3) Zohar Corp. III, Zohar Fund III: Class B Notes in the principal amount of $186,000,000 to Octaluna III, LLC ("Octaluna III").

Patriarch XV, Octaluna I, Octaluna II, and Octaluna III are collectively referred to herein as the "Patriarch Secured Parties").

5. *Release.*

(a) *Controlling Secured Parties Release.* Each of the Debtors and the Debtors' estates, on the one hand, and the Controlling Secured Parties and the Patriarch Secured Parties, on the other hand, each on its own behalf and on behalf of their respective past, present and future predecessors, successors, heirs, subsidiaries, and assignees, do hereby to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully forever (i) release, remise, relinquish, irrevocably waive, discharge, and acquit each other and each of their respective affiliates, subsidiaries, former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest (collectively, the

"Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, solely arising out of actions relating to each Releasee's negotiation or entry into this Order; provided, however, that nothing set forth, in this paragraph 5(a) is intended to, nor shall it, release any Releasees' obligations under this Order.

(b)     *Indenture Trustee Release.* The Debtors and their respective estates and the Secured Parties (as defined under the Indentures) hereby and shall be deemed to release, forever discharge, and acquit the Indenture Trustee and each of its respective affiliates, subsidiaries, former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest from all claims, demands, causes of action, damages, defenses, setoff rights, and any other liabilities whatsoever of every kind, name, nature, and description, whether known or unknown, both at law and equity, in connection with or in any way related to this Order, including, all negotiations in connection with this Order.

(c)     Notwithstanding anything herein to the contrary, nothing in this paragraph 5 shall (i) modify the right of the Fee Review Parties (as defined below) to review and object to any Invoiced Fees (as defined below) pursuant to the terms and conditions set forth in paragraph 12(c) hereof or (ii) modify any right of the Patriarch Stakeholders under the Settlement Agreement.

6.     *Findings Regarding the Use of Cash Collateral and Prepetition Collateral.*

(a)     Good cause has been shown for the entry of this Order.

(b)     The Debtors have an immediate need to use Cash Collateral, to, among other things, fund the administrative expenses assessed in the Cases and monetize the Prepetition Collateral in accordance with this Order and the Settlement Agreement.

(c)     The terms of the use of the Cash Collateral pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(d)    The terms of the use of the Cash Collateral pursuant to this Order have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the Independent Director, the CRO[8] the Indenture Trustee, and the Controlling Secured Parties, and the Patriarch Secured Parties, and, pursuant to Bankruptcy Code sections 105, 361, and 363, the Indenture Trustee and, the Controlling Secured Parties, and the Patriarch Secured Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Order, and each is entitled to the protection provided under section 363(m) of the Bankruptcy Code.

(e)    The Debtors have requested entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and (d).

(f)    *Cash Collateral.* For purposes of this Order, the term "Cash Collateral" shall have the meaning ascribed to it in section 363(a) of the Bankruptcy Code and shall include all of the Debtors' cash, cash equivalents, including, all proceeds, products, rents, or profits of the Prepetition Collateral, including proceeds realized from a sale or disposition thereof, or from payment thereon, and the New Zohar Bank Accounts (as defined below) and all cash deposited therein, all of which constitute Cash Collateral of the Indenture Trustee on behalf of the Secured Parties.

(g)    *Indemnity.* The Indenture Trustee and, Controlling Secured Parties, and Patriarch Secured Parties have acted in good faith, and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the use of Cash Collateral, including in respect of the Debtors' granting of the Adequate Protection Liens, any challenges or objections to the use of Cash Collateral, and this Order. Accordingly, the Indenture Trustee and, Controlling Secured Parties, and Patriarch Secured Parties shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability solely arising from the negotiation or entry of this Order, except for claims relating to willful misconduct or fraud; provided, however, that nothing in this paragraph 6(g) shall modify the right of the Fee Review Parties to review and object to any Invoiced Fees pursuant to the terms and conditions set forth in paragraph 12(c) hereof, and the Indenture Trustee, the Controlling Secured Parties, and the Patriarch Secured Parties shall not be indemnified with respect to any fees, costs, or expenses in connection with any objection to Invoiced Fees sought to be paid pursuant to paragraph 12(c) hereof.

(h)    *No Control.* None of the Indenture Trustee or Controlling Secured Parties are control persons or insiders of the Debtors or any of their affiliates by

---

[8] CRO is defined as Michael Katzenstein, appointed as the Chief Restructuring Officer pursuant to Order of the Court entered on June 11, 2018 (Docket No. 297) or any successor approved by the Court.

01:23432150.9                                         -7-
                     USActive 47182981.1

virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Order.

7.    *Authorization of Use of Cash Collateral.* The Debtors are hereby authorized to use Cash Collateral during the period from the date of entry of this Order through and including the Termination Date (as defined below) for (i) administrative costs and expenses of the Debtors incurred in the Cases as permitted by the Budget (as defined below) and subject to the terms hereof; (ii) adequate protection payments to the Secured Parties and the Patriarch Secured Parties, as provided herein and consistent with the Priority of Payments in the Indentures, and (iii) facilitating the Monetization Process as set forth in the Settlement Agreement.

8.    *Consent by the Secured Parties.* The Controlling Secured Parties and, the Indenture Trustee, and the Patriarch Secured Parties consent to the Debtors' use of Cash Collateral, solely in accordance with and subject to the terms and conditions contained in this Order.  Notwithstanding any other provision of this Order, but subject to the Carve Out (as defined below), the Debtors' use of Cash Collateral under this Order shall terminate upon the occurrence of the Termination Date (as defined below), subject to the Debtors' right to cure any Termination Event within the Termination Notice Period (as defined below). All use of Cash Collateral by the Debtors shall be pursuant to a 13-week budget in form and substance reasonably acceptable to the Controlling Secured Parties, and Indenture Trustee, and the Patriarch Secured Parties (such an acceptable budget, the "Budget," and each 13-week period a "Budget Period"), subject to any Permitted Variance (as such term is defined below).  The Budget shall set forth the Debtors' (i) anticipated cash receipts, including from payments of interest due under loans owed to the Debtors for the Zohar II and III Funds, and proceeds from monetization events, (ii) cash disbursements and accruals, including, Professionals' fees and expenses accrued but unpaid during the relevant Budget Period as well as any cash

disbursements on account of Professionals' fees and expenses during the Budget Period for both past or current services, and (iii) any other amounts set forth in the Restructuring Reserve Operating Cap (as defined below).  The initial Budget is attached to this Order as <u>Exhibit 1</u> (the "<u>Initial Budget</u>"). Beginning on ~~August 10,~~[_____], 2018 and thereafter on the 10th of every month until a Termination Event under this Order, if any, the Professionals (as defined in paragraph 13(a) below) shall provide to the CRO good faith estimate of their accrued fees through that date and projected fees for the next Budget Period.  Beginning on ~~August 20,~~[_____], 2018 and thereafter on the 20th of every month until a Termination Event under this Order, if any (or, with greater frequency should the Debtors choose to do so), the Debtors shall deliver to the Controlling Secured Parties, the Indenture Trustee, the U.S. Trustee, the Patriarch Secured Parties, and each of their counsel and financial advisors, if any, a proposed new 13-week budget (a "<u>Proposed Budget</u>").  Such Proposed Budget shall be of no force and effect absent the express, written approval of the Controlling Secured Parties ~~and,~~ the Indenture Trustee (subject to direction, if any, by the Controlling Secured Parties), and the Patriarch Secured Parties of such Proposed Budget; <u>provided</u>, <u>however</u>, such approval shall not be unreasonably withheld; <u>provided</u>, <u>further</u>, that if the Controlling Secured Parties ~~and,~~ the Indenture Trustee, and the Patriarch Secured Parties fail to respond to a Proposed Budget within five (5) business days, such Proposed Budget shall be deemed approved.  Absent and until such approval, the then-existing Budget shall remain in place. Beginning on ~~August 9,~~[_____], 2018, and every other Thursday thereafter by 5:00 p.m. (prevailing Eastern Time), the Debtors shall deliver to the Controlling Secured Parties, the Indenture Trustee, the Patriarch Secured Parties, and each of their counsel and financial advisors, if any, a variance report (a "<u>Variance Report</u>") setting forth the Debtors' actual cash receipts and accrued expenditures for the

preceding two weeks compared to the then existing Budget with narrative explanations of key variances. For purposes of this Order, the Debtors shall ensure that at no time shall there exist an unfavorable variance in the Budget of (i) the greater of (a) ~~25~~10% or more over any accrued expenditures on an individual line item basis, and (b) $~~750,000~~250,000 in the aggregate, or (ii) greater than ~~25~~10% below the aggregate interest payment receipts for each Zohar Fund from the Group A Portfolio Group Companies based on the amount stated on the applicable interest payment notices issued to the Group A Portfolio Companies, tested every other week on a cumulative rolling four (4) week basis (except the first Variance Report, which shall be tested on a cumulative basis for the two (2) weeks preceding the delivery of such Variance Report) (a "Non-Permitted Variance" and in contrast to any variance which does not constitute a Non-Permitted Variance, a "Permitted Variance")[9]; provided, however, ~~payments to the Secured Party Professionals (as defined in paragraph 12(e) below),~~ payments to the U.S. Trustee, and payments to the Independent Director on account of Incentive Fees, as defined in section 4(b) of the Independent Director Service Agreement (see Docket No. 278-1), shall not be subject to such test and shall not constitute a Non-Permitted Variance or serve as the basis of a Termination Event or Cash Collateral Trigger Event. The Initial Budget is the first Budget for reporting and permitted variance purposes.

9.      *Cash Management/Excess Sweep.*

(a)      *New Zohar Bank Accounts Funding.* So long as no Termination Event has occurred and is continuing or would result therefrom, and absent further order of the Court, the Debtors shall deposit all funds received, including interest payments received under the loans owed to the Debtors and funds received from the Monetization Process (as defined in the Settlement

---

[9] Non-Permitted Variances with respect to Estate Professionals' fees and expenses shall be measured based on the Estate Professionals' fees and expenses accrued during the relevant testing period compared to the projected Estate Professionals' fees and expenses set forth in the Budget for that period.

Agreement) in the New Zohar Bank Accounts.[10]  The New Zohar Bank Accounts, to the extent sufficient cash is available, shall at all times be funded (net of any payments made during the relevant Budget Period) in the aggregate amount that is the sum of (i) the amount of (a) anticipated cash disbursements, and (b) projected Professionals' fees and expenses, each set forth in the Budget for that Budget Period, inclusive of an additional twenty-fiveten percent (2510%) variance cushion, (ii) all unpaid amounts set forth in the Budget for prior Budget Periods, subject to adjustment up or down to account for any Permitted Variance, and [(iii) $500,000, and (iv) the Indemnification Reserve (as defined herein)] (the "Restructuring Operating Reserve Cap").  Each New Zohar Bank Account shall be funded in an amount commensurate with each Zohar Fund's allocable portion of the Restructuring Operating Reserve Cap based on outstanding Paid in Full amount as of the 1st of each Month (each a "Allocated Restructuring Operating Reserve Cap").  Additional amounts and categories of disbursements not included in the Initial Budget, if any, shall be established by agreement of the Debtors, the Controlling Secured Parties and, the Indenture Trustee and the Patriarch Secured Parties or order of this Court prior to such additional amounts and/or categories being included in any subsequent Budget or Restructuring Operating Reserve Cap, even if such amounts relate to a period prior to the subject Budget.  Upon the occurrence of a Termination Event, the New Zohar Bank Accounts shall be funded in accordance with paragraph 13(b) of this Order.  For the avoidance of doubt, absent further order of the Court or consent of the Secured Parties and the Patriarch Secured Parties, as applicable, the Secured Parties and the Patriarch Secured Parties shall not be responsible for, and neither the Restructuring Operating Reserve Cap nor the Carve Out shall include, claims (administrative or otherwise) asserted against the Debtors not contemplated by the Budget[ and Indemnification Reserve].  The Controlling Secured Parties and, the Indenture Trustee, and the Patriarch Secured Parties will confer in good faith with the CRO on necessary modifications to ensure allocable funding is commensurate with each Zohar Fund's allocable portion of the Restructuring Operating Reserve Cap in accordance with this Order.  The New Zohar Bank Accounts and all amounts on deposit therein (the "Cash Reserve Amounts") shall constitute Collateral and Cash Collateral securing the Debtors' performance of the Transaction Obligations.  For the avoidance of doubt, the Debtors are prohibited from opening any new bank or cash accounts except as expressly permitted by this Order.

(b)    *Excess Cash Sweep/Special Payment Date.*  Any date on which the cash balance at any New Zohar Bank Account exceeds its respective Allocated

---

[10] New Zohar Bank Accounts shall have the meaning ascribed to it in the *Order Pursuant to 11 U.S.C. §§ 105(a) and 345(b) and Del. Bankr. L.R. 2015-2(b) (I) Setting the Deadline by Which the Debtors Must Comply with the Requirements of Section 345(b) of the Bankruptcy Code and (II) Authorizing the Debtors to Keep and Maintain Certain Bank Accounts* [Docket No. 237].

Restructuring Operating Reserve Cap (such excess amount, the "Excess Cash") may be deemed a "Payment Date" under the Indentures (a "Special Payment Date"), and payment of such Excess Cash shall be made and applied in the manner outlined in paragraph 12(b) below, provided, however, that (A) the Debtors shall notify the Controlling Secured Parties and, the Indenture Trustee, and the Patriarch Secured Parties of such Excess Cash, (B) a Special Payment Date must be requested and declared by the Controlling Secured Parties and the Patriarch Secured Parties upon eight (8) business days' notice in writing to the Debtors and the Indenture Trustee, (C) the Indenture Trustee shall be entitled to be paid an additional fee of $10,000.00 (each such fee, a "Special Payment Date Fee") from such Excess Cash for the Indenture Trustee's services in connection with each such Special Payment Date, and (D and (C) a Special Payment Date shall not occur more frequently than every thirty (30) days unless the Excess Cash exceeds $25 million.

(c)    [Indemnification Reserve: Upon entry of the Order, the Debtors shall establish and fund a reserve solely for the benefit of the Independent Director, CRO and the Chief Monetization Officer (the "CMO"), in the amount of $1,500,000 (the "Indemnification Reserve") to provide indemnification and a source for the advancement of expenses (i) for the Independent Director pursuant to the Indemnification Agreement for the Independent Director approved by the Bankruptcy Court pursuant to an Order dated June 26, 2018 [Docket No. 345] (the "Independent Director Indemnification Agreement"), (ii) for the CRO, pursuant to and consistent withParagraphwith Paragraph 5 of that certain Order, dated June 11, 2018, Authorizing and Approving, *Nunc Pro Tunc* to May 21, 2018, the Agreement with FTI Consulting, Inc. to Provide (I) Michael Katzenstein as the Debtors' Chief Restructuring Officer, (II) Hourly Temporary Staff, and (III) Services Related Thereto [Docket No. 297] and (iii) for the CMO, pursuant to and consistent with Paragraph 6 of that certain Order Amending the Terms of the Retention of Goldin Associates LLC, dated June 11, 2018 [Docket No. 298]. The Indemnification Reserve may be increased in amount only after the written threat or assertion of a Claim (as defined below) against any of the CMO, CRO or the Independent Director for an Indemnifiable Event (as defined below) (i) upon five (5) business days' notice by the CMO, CRO or Independent Director to the Controlling Secured Parties and the Indenture Trustee, which notice shall be submitted only after the threat or assertion of a Claim against any of the CMO, CRO or the Independent Director for an Indemnifiable Event, the Indenture Trustee, and the Patriarch Secured Parties (provided that no party having made the threat or assertion of such a Claim shall be included in this provision), or (ii) as otherwise ordered by the Bankruptcy Court. The CMO, CRO and Independent Director may not draw upon or remove any funds from the Indemnification Reserve except for indemnification obligations owed to the CMO, CRO or Independent Director related to a

Claim for an Indemnifiable Event, and only after first seeking coverage from any insurance policy covering such Claim. For the avoidance of doubt, the Debtors shall use good faith and best efforts to obtain directors' and officers' insurance coverage for the Independent Director, CMO and CRO in connection with these cases as promptly as possible. "Claim" and "Indemnifiable Event" for purposes of the Indemnification Reserve shall be defined as set forth in the Independent Director Indemnification Agreement. Upon the occurrence of a Termination Event, the Indemnification Reserve shall be included in the Carve- Out in accordance with paragraph [13(a)]. The Debtors, the Controlling Secured Parties and, the Indenture Trustee, and the Patriarch Secured Parties acknowledge that when there is a reasonable basis on which to contend that there is no longer any need for the Indemnification Reserve (i.e., that the Independent Director, CRO and CMO is released or otherwise fully protected for remaining exposure, if any), any Controlling Secured Party or, the Indenture Trustee, or the Patriarch Secured Party may seek relief from the Bankruptcy Court for release of any amounts remaining in the Indemnification Reserve. If the Bankruptcy Court issues a final non-appealable order approving the release of such remaining Indemnification Reserve funds, such funds shall be transferred to the Indenture Trustee to be distributed in accordance with the Priority of Payments in the Indentures. Upon the Full Payment Date, without further Bankruptcy Court order, any amounts remaining in the Indemnification Reserve shall be transferred to the Indenture Trustee to be distributed in accordance with the Priority of Payments in the Indentures.]

10. *Entitlement to Adequate Protection.* The Indenture Trustee, for the benefit and security of the Controlling Secured Parties and/or the Patriarch Secured Parties (each, as applicable), is entitled, pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, and subject to the Priority of Payments and other terms of the Indentures, to adequate protection of its interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate post-petition diminution in value of such interests in the Prepetition Collateral, including any such diminution resulting from the sale, lease, or use by the Debtors of the Prepetition Collateral, including the Cash Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (each such diminution in value, a "Diminution in Value").

01:23432155.1

USActive 47182981.1

11.    *Adequate Protection Claims and Liens*.

As adequate protection, the Indenture Trustee on behalf of the Secured Parties and the Patriarch Secured Parties, pursuant to and consistent with the Priority of Payments in the Indentures, is hereby granted the following claims, liens, rights and benefits:

(a)    Section 507(b) Claim. Solely to the extent of any Diminution in Value and any unpaid fees and expenses of the Secured Party Professionals, administrative expense claims, which shall constitute superpriority claims against the applicable Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "507(b) Claims"), subject and subordinate only to funding and payment of the Carve Out.  The 507(b) Claims (i) on behalf of the Controlling Secured Parties shall be allocable on a *pro rata* basis against each Zohar Fund based on its respective Paid in Full amount as of the 1st of each Month (to the extent not otherwise allocable to a particular asset or Zohar Fund), provided, however, that ZII Corp. and Zohar II shall be jointly responsible for any obligations by ZI Corp. and Zohar I under this paragraph 11(a), and (ii) on behalf of the Patriarch Secured Parties shall be allocable on a *pro rata basis* against each Zohar Fund based on their respective outstanding note obligations as of the 1st of each Month (to the extent not otherwise allocable to a particular asset or Zohar Fund). The Controlling Secured Parties and, Indenture Trustee, and Patriarch Secured Parties will confer in good faith with the CRO on necessary modifications to claim allocations to ensure allocations are commensurate with each Zohar Fund's allocable portion of such claims based on outstanding Paid in Full amounts.  For the avoidance of doubt, no 507(b) Claim is being granted under this Order against any person or entity other than the Debtors.

(b)    Adequate Protection Liens. As security for and solely to the extent of any Diminution in Value and unpaid fees and expenses of the Secured Party Professionals, or upon the avoidance of termination of any Prepetition Lien for any reason, effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing by Debtors, the Indenture Trustee, or any Secured Party, or any Patriarch Secured Party) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar

documents, or the possession or control by the Indenture Trustee ~~or,~~ any Secured Party, or any Patriarch Secured Party of any Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to the Indenture Trustee on behalf of the Secured Parties and the Patriarch Secured Parties (all property identified in clauses (1), (2), (3) and (4) below being collectively referred to as the "Adequate Protection Collateral"), subject and subordinate only to the Carve Out (all such liens and security interests, the "Adequate Protection Liens"):

(1)     First Priority on Unencumbered Property. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable first priority replacement lien on, and security interest in, all of the Debtors' rights in tangible and intangible assets, including all prepetition and post-petition property, assets, and interests of the Debtors' estates of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, and all products and proceeds thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to (x) valid, perfected, non-avoidable, and enforceable liens in existence on or as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, if any (collectively, the "Unencumbered Property"), including accounts receivable, other rights to payment, cash, inventory, instruments, general intangibles, contracts, servicing rights, servicing receivables, agreements transitioning services, management agreements, securities, chattel paper, owned real estate, real property, leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, commercial tort claims, and claims and causes of action and the proceeds of all of the foregoing; any proceeds or property recovered in respect of any Avoidance Actions, in each case whether arising prepetition or ~~postpetition~~post-petition of any nature whatsoever;

(2)     Liens Junior to Certain Existing Liens. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, all tangible and intangible assets, including all prepetition and post-petition property, assets, and interests of the Debtors' estates of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, and all products and proceeds thereof, whether now existing or hereafter acquired (other than the property described in clause (1) or (3) of

01:23432158.1
USActive 47182981.1

this paragraph 11), that is subject to (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Indenture Trustee for the benefit of the Secured Parties;

(3)     <u>Liens Senior to Certain Existing Liens</u>. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable consensual priming lien on, and security interest in, all tangible and intangible assets, including all prepetition and post-petition property, assets, and interests of the Debtors' estates of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, and all products and proceeds thereof, whether now existing or hereafter acquired; provided, however, that no lien or security interests granted under this Order shall prime any lien or security interests (i) with respect to liens or security interests granted to or for the benefit of the Controlling Secured Parties, that are held or asserted by the Patriarch Secured Parties or other Patriarch Stakeholders, or (ii) with respect to liens or security interests granted to or for the benefit of the Patriarch Secured Parties, that are held or asserted by the Controlling Secured Parties; and

(4)     <u>Status of the Adequate Protection Liens</u>. The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, subject to the Carve Out, or (ii) except as otherwise set forth in clauses (1), (2), and (3) of this paragraph 11, subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

(5)     <u>No Application to Non-Debtors</u>. For the avoidance of doubt, the Adequate Protection Collateral does not include any assets or property of any person or entity that is not a Debtor.

12.     *Additional Adequate Protection.* As adequate protection in addition to the 507(b)

Claims and Adequate Protection Liens, the Indenture Trustee, for the benefit and security of the

Secured Parties and/or the Patriarch Secured Parties (each, as applicable), is entitled, pursuant to

sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, to the following (together with the

507(b) Claims and the Adequate Protection Liens, the "Adequate Protection Obligations"):

(a)    Accrued Interest: No later than five (5) business days after entry of this Order the Debtors are authorized to pay to the Indenture Trustee's collection account for the applicable Debtor any Excess Cash, to be paid to holders (in a deemed Special Payment Date) subject to the Priority of Payments and § 13.1 of the Indentures, all accrued and unpaid post-petition interest due and payable on the Controlling Secured Parties' and the Patriarch Secured Parties' outstanding obligations under the Indentures at the non-default rate as of the date of entry of this Order, and, subject to paragraph 12(c) below, any costs and accrued fees incurred by or owing to the Controlling Secured Parties and, Patriarch Secured Parties, or Indenture Trustee, on behalf of the Secured Parties and the Patriarch Secured Parties (the "Accrued and Owing Interest").  If Accrued and Owing Interest is not paid in full, whether due to insufficient Excess Cash to pay such amounts or otherwise, such amounts shall accrue pursuant to the terms of the applicable Indenture and shall be accretive to (i) with respect to the Controlling Secured Parties, the Paid in Full amounts under the Settlement Agreement (as contemplated in the definition of Paid in Full amount in the Settlement Agreement), and (ii) with respect to the Patriarch Secured Parties, their outstanding allowed claim against the Debtors.

(b)    Interest Payments:  The holders shall be entitled to payment or accrual of current post-petition interest at the non-default rate on each Payment Date (as that term is defined in the applicable Indenture).  From and after the entry of this Order, on each Payment Date under the applicable Indenture or Special Payment Date under this Order, the Debtors are authorized to pay to the Indenture Trustee's collection account for the applicable Debtor any Excess Cash, to be paid to holders subject to the Priority of Payments and § 13.1 of the Indentures (except that the Patriarch Secured Parties' interest shall be paid pursuant to paragraph 12(a) as adequate protection of their interests), as accrued and unpaid post-petition interest due and payable under the Indentures (each a "Current Post-Petition Interest Payment") or the applicable Transaction Documents, with such payments calculated based on the contract rate of interest (as set forth in the applicable Indenture or the other applicable Transaction Documents) (the "Adequate Protection Interest Rate").  If there is insufficient Excess Cash to pay Current Post-Petition Interest Payments in full, such amounts shall accrue and shall be accretive to the Paid in Full amounts under the Settlement Agreement.  The Indenture Trustee is authorized and directed to distribute all payments under this paragraph pursuant to the Priority of Payments (as set forth in the applicable Indentures) except as expressly set forth herein to the contrary.

01:23432154.1
USActive 47182981.1

(c)    Fees and Expenses: The Debtors are authorized and directed to pay after ten (10) business days (the "Objection Period") of delivery an invoice (the "Invoiced Fees") to the Debtors, the U.S. Trustee, the Patriarch Secured Parties, and the Fee Examiner (collectively, the "Fee Review Parties"),[11] describing in customary detail (subject in all respects to applicable privilege or work product doctrines and redacted in the Controlling Secured Party's and, Indenture Trustee's, and Patriarch Secured Parties' respective sole and absolute discretion for privileged, confidential or otherwise sensitive information), the reasonable and documented fees, costs, expenses, and disbursements incurred or accrued by the Controlling Secured Parties and, the Indenture Trustee, and the Patriarch Secured Parties arising before or after the Petition Date, subject first to the full funding of the fees and expenses of the Estate Professionals (as defined herein) as set forth in the Budget in accordance with paragraph 9(a), including the reasonable fees and disbursements of their professional advisors (collectively, the "Secured Party Creditor Professionals"), in connection with  (i) the Cases or any successor case; (ii) the Settlement Agreement; (iii) the Transaction Documents; or (iv) enforcement of any rights or remedies under the Transaction Documents this Order, in each case whether or not the transactions contemplated hereby are fully consummated.   The Secured Party Creditor Professionals shall not be required to file fee applications.  The Debtors, U.S. Trustee and the Fee Examiner Fee Review Parties shall have through the Objection Period to object to the reasonableness of any specific portion of the Invoiced Fees. If no such objection is made, the Debtors shall pay the Invoiced Fees within three (3) business days following the expiration of the Objection Period.  If any such objection is made and not resolved within ten (10) days after such objection is interposed, a hearing with respect thereto shall be conducted at a regularly-scheduled omnibus hearing in the Cases, provided that the Debtors shall immediately pay any undisputed portion of such fees, costs and expenses following the Objection Period.  Upon resolution of any such objection, whether by agreement of the parties or Court order, the Debtors shall pay within five (5) business days any remaining unpaid Invoiced Fees in accordance with such agreement or Court order, as applicable.  Fees and expenses of the (1) Indenture Trustee shall be allocable to Zohar II or Zohar III based on their respective Paid in Full amount as of the 1st of each Month (to the extent not otherwise allocable to a particular asset or Zohar Fund), and (2) Patriarch Secured Parties shall be allocable to Zohar I, Zohar II, or Zohar III based on their respective outstanding note obligations as of the 1st of each Month.  The Controlling Secured Parties and Indenture Trustee will confer in good faith with the CRO on necessary modifications to fee and expense allocations to ensure allocations are commensurate with each Zohar

---

[11] Fee Examiner shall mean Direct Fee Review LLC pursuant to the *Order Appointing Fee Examiner and Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [Docket No. 289].

Fund's allocable portion of such fees and expenses based on outstanding Paid in Full amounts.  To the extent any fees and expenses of the Secured ~~Party~~Creditor Professionals remain unpaid as of the Termination Date, after full funding of the Carve Out, such unpaid fees shall be paid from proceeds of Collateral pursuant to the terms of Priority of Payments in the respective Indentures as such proceeds become available.  The foregoing sentence shall survive termination of this Order.  As used in this paragraph 12(c), the term "customary detail" shall mean that the invoices for such fees and expenses shall at least include a general description of the nature of the matters worked on, a list of the professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed, and, with respect to the invoices of law firms, shall include the year of law school graduation for each attorney; provided however, that the U.S. Trustee reserves the right to seek that copies of such invoices containing the detailed time entries of the applicable professional be provided to the U.S. Trustee.  Notwithstanding anything herein to the contrary, the Debtors shall only make payments on account of Invoiced Fees up to the amounts set forth in the Budget for any applicable period, without prejudice of the right to seek payments for amounts in excess of the Budget pursuant to the terms of the Indentures, in all instances subject to the procedures set forth herein in paragraph 12(c).

(d)    <u>Reporting</u>: The Debtors shall:

(1)    ~~provide to the Controlling Secured Parties and Indenture Trustee (a) (i)~~ on a <u>bi-</u>weekly basis~~,~~: (a) provide to the Committee (as defined in the Settlement Agreement) reports with respect to the progress and status of the Monetization Process, provided that such reports shall be (i) subject to a non-disclosure agreement between the Debtors and the Committee and its members, and agreed to in form by the Patriarch Stakeholders or authorized by this Court (the "Committee NDA"), (ii) in a form reasonably acceptable to ~~each Controlling Secured Party and~~the Committee, and (iii) consistent with the Debtors' reporting obligations under the Settlement Agreement (in consultation with the Indenture Trustee)~~,~~ (the "Monetization Process Reports")~~, and (ii~~; and (b) subject to the terms of the Committee NDA, host conference calls with the Committee to discuss the Monetization Process, including the Monetization Process Reports and any material developments relating to the collateral being monetized or the Monetization Process;

(2)    provide to the Controlling Secured Parties and Indenture Trustee;  (a)  on a bi-weekly basis (i.e. twice per month), statement of the Debtors' cash balances, cash receipts and cash disbursements, as well as variances of same from the corresponding budgeted amounts (the "<u>Statement of Cash Flow and Cash Balance Reports</u>"

01:23432151.1
USActive 47182981.1

and the "Variance Reports", respectively); and (b) such other Debtor financial reporting and information requested by the Indenture Trustee as required under and consistent with the requirements contained in the Transaction Documents, including but not limited to the Indentures, and (c) any other reporting or information reasonably requested by any of the Controlling Secured Parties or the Indenture Trusteethe Indentures; and

(3)    (2) host bi-weekly conference calls with the Controlling Secured Parties and Indenture Trustee to discuss (a) the Monetization Process, including the Monetization Process Reports and any material developments relating to the collateral being monetized or the Monetization Process, and (b) the Debtors' financial performance, including the Budget, the Statement of Cash Flow and Cash Balance Reports, Cash Flow Variance Reports, and monthly operating reports.

(4)    The Patriarch Secured Parties shall receive copies of all written reports, documents, or information provided pursuant to paragraphs 12(d)(1)–(3) contemporaneous with the delivery of such reports, documents, or information.

(e)    Transaction Documents: In the event the Debtors seek to terminate, amend, supplement, modify, or replace any of the Transaction Documents, or any contract, agreement, or arrangement, related thereto, such termination, amendment, modification, or replacement shall be subject to and effective only upon the express written consent of the Indenture Trustee and the Controlling Secured Parties or an order of this Court. For the avoidance of doubt, nothing in this paragraph 12(e) shall be construed or interpreted as a termination, reduction or waiver of any existing rights of the Indenture Trustee or Controlling Secured Parties under the Transaction Documents with respect to the Debtors' ability or inability to effectuate any termination, amendment, modification, or replacement of the Transaction Documents.

(f)    Preservation of Bankruptcy Code Section 506(b). Notwithstanding anything herein to the contrary, any payment of interest, fees, or expenses as adequate protection to any of the Controlling Secured Parties, Indenture Trustee, or the Patriarch Secured Parties shall be subject to recharacterization in accordance with Bankruptcy Code section 506(b) and applied to reduce outstanding principal.

(g)    Effect of Full Payment Date. Upon the Full Payment Date as to either MBIA or the Zohar III Noteholders (each as defined in the Settlement Agreement), then such parties' respective rights (as well as the rights of the Indenture Trustee with respect to the applicable Debtor or Indenture)

01:23432152
USActive 47182981.1

to adequate protection under paragraphs 11 and 12 of this Order shall terminate.

13.    *Carve Out.*

(a)    As used in this Order, the "Carve Out" shall include the following: (i) all fees required to be paid to the Clerk of the Court, statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with the statutory rate of interest, and the court-appointed fee examiner; (ii) any amounts payable pursuant to the Independent Director Service Agreement [Docket No. 278-1]) except as set forth in (iv) hereof; (iii) any indemnification obligations owed by the Debtors to the Independent Director, the CRO  or the Chief Monetization Officer[, plus the Indemnification Reserve], (iv) the fees and expenses of the Independent Director's professionals (the "Independent Director Professionals") incurred prior to the Termination Date; (v) subject to this Court's approval (without regard to whether such fees and expenses are approved prior to or following the Termination Date), the unpaid fees and expenses incurred by each person or firm retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals, and together with the Independent Director Professionals, the "Estate Professionals" and collectively with the Secured PartyCreditor Professionals, the "Professionals") that have accrued before the Termination Date, and (vi) fees and expenses of Estate Professionals in an aggregate amount not to exceed $[2.5] million incurred after the Termination Date, to the extent allowed or otherwise payable at any time, whether by interim order, procedural order, or otherwise.

(b)    Carve Out Reserves. On a Termination Date, the New Zohar Bank Accounts shall be funded in an amount sufficient to fund the Carve Out (the "Post-Termination Funding Requirement"). For the avoidance of doubt, on the Termination Date, the amounts on deposit to fund the Restructuring Operating Reserve Cap shall be used to fund the Carve Out and shall be included in the calculation of the Post-Termination Funding Requirement. Subject to the Debtors' rights under paragraph 18 hereof, including, without limitation the right to seek the contested use of cash collateral all amounts in excess of the Post-Termination Funding Requirement on the Termination Date shall then be paid by the Debtors to pay the unpaid fees and expenses of the Secured PartyCreditor Professionals and Indenture Trustee pursuant to paragraph 12(c), and then to the Indenture Trustee to be distributed in accordance with paragraph 12(b) of this Order.  To the extent there are insufficient funds available on the Termination Date to fund the Post-Termination Funding Requirement, the New Zohar Bank Accounts shall continue to be funded with proceeds from the Collateral until the balance of the New Zohar Bank Accounts equals the Post-Termination Funding Requirement.  For the avoidance of

doubt and notwithstanding anything to the contrary in this Order or in any of the Transaction Documents, (i) at all times, the amounts on deposit in the New Zohar Bank Accounts shall constitute Collateral of the Indenture Trustee on behalf of Secured Parties (as defined under the Indentures) and (ii) funding and payment of the Post-Termination Funding Requirement shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, and the 507(b) Claim, and any and all other forms of adequate protection, liens, or claims securing the Transaction Obligations and any such lien or priority granted herein.

(c)    No Direct Obligation to Pay Allowed Professional Fees or Claim Against the Estates. None of the Secured Parties or, the Indenture Trustee, or the Patriarch Secured Parties shall be responsible for the payment or reimbursement of any claim asserted against the Debtors' estates, or of any fees or disbursements of any Estate Professional incurred in connection with the Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Order or otherwise shall be construed to obligate the Secured Parties or the Patriarch Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Estate Professionals (by direct payment, disgorgement or otherwise) or any other party asserting a claim against the Debtors' estates, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d)    Payment of Carve Out on or After the Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination Date in respect of any allowed Professional fees or other amount contemplated under the Carve Out shall permanently reduce the Carve Out on a dollar-for-dollar basis.

14.    *No Compromise of Causes of Action*. No Debtor shall attempt to or otherwise compromise, release, or transfer any cause of action without the consent of the Controlling Secured Parties and, the Indenture Trustee (except as to MBIA in the case of Zohar I), and the Patriarch Secured Parties or an order of the Bankruptcy Court; and any purported compromise, release, or transfer of any cause of action by any Debtor which does not comply with the foregoing is void *ab initio*.

15.    *Monetization Event*. In exchange for the release of liens on Collateral to effectuate a monetization event, a Special Payment Date shall occur and all proceeds from such

monetization event (less an Incentive Fee as defined in section 4(b) of the Independent Director Service Agreement (*see* Docket No. 278-1), as applicable) shall be paid in accordance with paragraphs 9(b) and 12(b) of this Order (except in the case of a monetization event for Zohar I, which shall go to MBIA subject to the Priority of Payments in the Indenture for Zohar I, paragraph 27 of this Order, and footnote 1 of the Settlement Agreement), provided, however, that to the extent the Restructuring Operating Reserve Cap is underfunded at the time of a monetization event, such Restructuring Operating Reserve Cap underfunding must be fully funded upon the closing of such monetization event prior to the occurrence of any Special Payment Date.  For the avoidance of doubt, nothing in this Order shall be construed as providing advance consent or approval from any Controlling Secured Party ~~or the~~, Indenture Trustee, or the Patriarch Secured Parties to any monetization event.

16.    *Credit Bid Protection.* ~~Each Secured Party, and the Indenture Trustee, as applicable, shall each have, subject to paragraphs 4 and 27 hereof and section 363(k) of the Bankruptcy Code, the right to credit bid (a) an amount up to the amount owed to it pursuant to the Transaction Obligations, and (b) the 507(b) Claim and any amounts due and owing, but unpaid, under paragraph 11(a) hereof, respectively, without the need for further Court order authorizing the same, in connection with any sale of the Prepetition Collateral or Adequate Protection Collateral, whether such sale is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise, provided, however, that, in the case of a bid by a Secured Party other than a Controlling Secured Party, such right to credit bid shall be subject to payment in full in cash of the Paid in Full amounts (as defined in the Settlement Agreement).~~ Reserved.

17.    *Meet and Confer*. Upon delivery by either the Controlling Secured Parties and, the Indenture Trustee, or the Patriarch Secured Parties of a written notice ("Cash Collateral Trigger Event Notice") to the Debtors and CRO(a copy of which shall be concurrently provided to the Controlling Secured Parties, the Indenture Trustee, or the Patriarch Secured Parties, as applicable) of the occurrence of any of the events set forth in clauses (a) through (f) below (each a "Cash Collateral Trigger Event," and collectively referred to herein as the "Cash Collateral Trigger Events"), the Debtors, Controlling Secured Parties, and Indenture Trustee, and Patriarch Secured Parties shall, within five (5) business days, meet and confer in good faith regarding the continued use of Cash Collateral (a "Cash Collateral Conference"); provided, however, that the Debtors are obligated to communicate to the Controlling Secured Parties and, the Indenture Trustee, and the Patriarch Secured Parties as promptly as is practical any anticipated or actual occurrence of a Cash Collateral Trigger Event. If at the conclusion of any such Cash Collateral Conference, the Controlling Secured Parties and, Indenture Trustee, and Patriarch Secured Parties have not consented to the continued use of Cash Collateral on terms mutually agreeable to the Controlling Secured Parties, Indenture Trustee, the Patriarch Secured Parties, and the Debtors, the Debtors; shall have the right to immediately seek relief from the Mediator under the Settlement Agreement and, thereafter, to seek relief from the Court (an "Expedited Request for Relief").  For the avoidance of doubt, the Debtors' rights and obligations under this Order shall continue in full force and effect during the pendency of any Cash Collateral Conference and any mediation or hearing resulting from an Expedited Request for Relief, including the funding of the Restructuring Operating Reserve Cap and any payments made and to be made on account thereof, including the Carve Out; provided, however, that such rights shall terminate upon the

occurrence of a Termination Date (as defined below).    The Cash Collateral Trigger Events

include the following:

(a)    There shall occur any Non-Permitted Variance;

(b)    The Court shall shorten or terminate the period pursuant to section 1121 of the Bankruptcy Code during which the Debtors have the exclusive right to file a plan of reorganization and solicit acceptances thereof;

(c)    The entry of an order by the Bankruptcy Court granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code, authorizing any party to proceed against any asset of any of the Debtors when the amount at issue is greater than $1,000,000;

(d)    The payment of any prepetition claims against the Debtors not expressly permitted by this Order or another Court order;

(e)    The Debtors shall use, sell or lease any material assets outside the ordinary course of business unless approved by the Court; and

(f)    Upon an interest payment default of one of the Group A Companies (as defined in the Settlement Agreement).

18.    *Termination.* The Debtors' right to use the Cash Collateral pursuant to this Order

shall terminate (the date of any such termination, the "Termination Date") without further notice

or court proceeding five (5) business days following the delivery of a written notice (a

"Termination Notice") by the respective Controlling Secured Party ~~or~~, Indenture Trustee, or

Patriarch Secured Party (the "Notice Delivering Party") (any such five (5) business-day period of

time or such longer period if extended by the ~~Controlling Secured Parties and Indenture~~

~~Trustee~~Notice Delivering Party or order of this Court, the "Termination Notice Period") of the

occurrence of any of the events set forth in clauses (a) through (s) below (each a "Termination

Event," and collectively referred to herein as the "Termination Events") unless waived in writing

by the ~~Controlling Secured Parties and the Indenture Trustee~~Notice Delivering Party, or cured by

the Debtors prior to expiration of the Termination Notice Period, or stayed, modified or

-25-

otherwise adjudicated by order of this Court; provided, that (i) a Termination Event ~~solely with~~

respect to Zohar I may only be waived by MBIA in its sole and absolute discretion the Notice Delivering Party with respect to an applicable Termination Notice, and (ii) the failure or decision by any party to not deliver a Termination Notice with respect to any Termination Event shall not affect or waive any other party's right under this paragraph 18 to deliver a Termination Notice with respect to such Termination Event:

(a)    Following the delivery of a Cash Collateral Trigger Event Notice (absent consent of the Controlling Secured Parties and Indenture Trustee or Court order providing otherwise) upon failure of the Debtors to make an Expedited Request for Relief within fourteen (14) days after delivery of the Cash Collateral Trigger Event Notice;

(b)    Failure of the Debtors to make any payment provided in this Order on the date that such payment becomes due (unless such payment is waived, excused or otherwise not mandatory under this Order);

(c)    Failure of the Debtors to comply with any material provision of this Order;

(d)    The Debtors shall create, incur or suffer to exist any post-petition liens or security interests other than: (i) those granted pursuant to this Order; and (ii) deposits to secure the payment of any post-petition statutory obligations, statutory liens, performance bonds and other obligations of a like nature incurred in the ordinary course of business;

(e)    An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Order without the consent of the Controlling Secured Parties and, the Indenture Trustee, or the Patriarch Secured Parties;

(f)    The Debtors shall create, incur or suffer any other claim which is pari passu with or senior to the 507(b) Claim (other than the Carve Out);

(g)    The Debtors shall create, incur or suffer to exist any senior, pari passu, or, subject to paragraph 31,32, junior debt without (i) the written consent of the applicable Controlling Secured Party, and (ii) the written consent of the Indenture Trustee if required under the applicable Indenture;

(h)    The entry of an order in the Cases charging any of the Prepetition Collateral or Adequate Protection Collateral under section 552(b) of the Bankruptcy Code or section 506(c) of the Bankruptcy Code;

(i)    Occurrence of the Full Payment Date as to either MBIA or the Zohar III Noteholders (each as defined in the Settlement Agreement);

(h)    (j) A filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Transaction Obligations or asserting any other cause of action against and/or with respect to the Transaction Obligations, the Prepetition Collateral securing the Transaction Obligations, the New Zohar Bank Account, or the Indenture Trustee (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party);

(k)    The Debtors file any plan of reorganization or liquidation without the written consent of (i) the Controlling Secured Parties and (ii) the Indenture Trustee if required under the Indenture;

(l)    Removal or resignation of the Independent Director (as defined in the Settlement Agreement);

(i)    (m) The Debtors shall use, sell or lease any material assets outside the ordinary course of business unless approved by the Court when the amount at issue is greater than $1,000,000;

(j)    (n) The Court shall have entered an order dismissing any of the Cases (unless such dismissal is the result of the Paid in Full amount having been paid in such Case);

(k)    (o) The Court shall have entered an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code;

(l)    (p) The Court shall have entered an order appointing a chapter 11 trustee or any examiner with enlarged powers relating to the operation of the businesses in the Cases, unless consented to in writing by the Controlling Secured Parties and Indenture Trustee;

(m)    (q) The Court shall have entered a final non-appealable order terminating the Settlement Agreement (if such relief was requested by the Indenture Trustee or a Secured Party);

(n)    (r) The Court shall have entered an order terminating the Settlement Agreement (if such relief was requested by a party other than the Indenture Trustee or a Secured Party);

(o)    (s) Termination of either the 15-Month Window or, if the 15-Month Window is extended, the 18-Month Window, as applicable (pursuant to and as defined in the Settlement Agreement); and

(p)    (t) The Court shall allow any priority or administrative claim, other than the Carve Out or a claim by the Secured Party Creditor Professionals, in an amount greater than $5,000,000.

19.    *Remedies upon the Termination Date.* The Debtors shall promptly provide notice to the Controlling Secured Parties and the Patriarch Secured Parties (with a copy to the U.S. Trustee, the Indenture Trustee, and the Collateral Manager) of the occurrence of any known Termination Event. Upon the occurrence of the delivery of a Termination Notice, the Debtors and, each Controlling Secured Party, and each Patriarch Secured Party consent to a hearing on an expedited basis.  Except as otherwise ordered by the Court and subject in all respects to the terms and provisions of the Settlement Agreement and the funding and payment of the Carve Out pursuant to paragraph 13(b), on the Termination Date (a) the Debtors shall no longer be permitted to utilize Cash Collateral, other than to fund the Carve Out, and to make any payments in accordance therewith, and (b) with respect to Termination Events (n), (o), (p), (q), (r), and (s) in paragraph 18, (i) the automatic stall be deemed modified and vacated without need for an order of the Court to the extent necessary to allow the Controlling Secured Parties, collateral manager and the Indenture Trustee to exercise their rights under the Transaction Documents and/or applicable law, and (ii) the Controlling Secured Parties shall have the right to seek expedited consideration for standing to bring causes of action on behalf of the Debtors and their estates, and (c) the Controlling Secured Parties and Indenture Trustee Indenture Trustee, and the Patriarch Secured Parties, as applicable, shall be entitled to apply the payments or proceeds of the Prepetition Collateral and the Adequate Protection Collateral in accordance with the provisions of the Transaction Documents and in no event shall the Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral, the Adequate Protection Collateral or otherwise, including but not limited

to the Priority of Payments in the respective Indentures.  Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Secured Parties and the Patriarch Secured Parties under this Order shall survive the Termination Date.

20.    *No Waiver.* Any delay or failure of a Secured Party to exercise rights under any of the Transaction Documents or this Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable Transaction Documents.

21.    *Limitation on Charging Expenses Against Collateral.  In consideration for the provision of the Carve Out and funding of the Budget and the Restructuring Operating Reserve Cap pursuant to this Order, upon entry of this Order no costs or expenses which may have been or may be incurred in any of the Cases or any future proceeding or successor case that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, other than the Carve Out, shall be charged against or recovered from the Prepetition Collateral or the Adequate Protection Collateral, or any Collateral including Cash Collateral pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity.* Reserved.

22.    *Payments Free and Clear.* Upon entry of this Order, any and all payments or proceeds remitted to the Controlling Secured Parties ~~or~~, the Indenture Trustee, or the Patriarch Secured Parties pursuant to the provisions of this Order or any subsequent order of this Court shall be irrevocable (subject to ~~paragraph 27~~ paragraphs 12(f), 27, and 35 of this Order), received free and clear of any claim, charge, assessment or other liability, ~~including any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or~~

assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.  For the avoidance of doubt, the foregoing shall survive termination of this Order.

23.    *Section 552(b) of the Bankruptcy Code.  The Controlling Secured Parties and Indenture Trustee shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Controlling Secured Parties or Indenture Trustee.*Reserved.

24.    *Reservation of Rights of the Controlling Secured Parties and, Indenture Trustee, and Patriarch Secured Parties*.  Notwithstanding any other provision hereof, the grant of adequate protection to the Controlling Secured Parties and, Indenture Trustee, and Patriarch Secured Parties pursuant hereto is without prejudice to the right of the Controlling Secured Parties or, Indenture Trustee, or Patriarch Secured Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Controlling Secured Parties and, Indenture Trustee, and Patriarch Secured Parties under the Transaction Documents or under equity or law, and the Controlling Secured Parties and, Indenture Trustee, Patriarch Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the Transaction Documents and/or equity or law in connection with all Events of Default (as defined in the respective Indenture), and whether arising prior to or after the Petition Date).

25.    *Perfection of Adequate Protection Liens*.

(a)    The Indenture Trustee, for the benefit and security of the Secured Parties and Patriarch Secured Parties, is hereby authorized, but not required, to

file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments (each, a "Filing") in any jurisdiction in order to validate and perfect the liens and security interests granted to it hereunder. Whether or not the Indenture Trustee shall choose or otherwise be directed by the Controlling Secured Parties or Patriarch Secured Parties to file such Filings, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order. If the Indenture Trustee determines or is otherwise directed by the Controlling Secured Parties or Patriarch Secured Parties to file Filings, the Debtors will cooperate and assist in any such filings as reasonably requested by the Indenture Trustee, and the automatic stay shall be modified to allow such Filings.

(b)     A certified copy of this Order may, in the discretion of the Indenture Trustee (subject to direction, if any, by the Controlling Secured Parties and Patriarch Secured Parties), be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording; provided that the Debtors shall reimburse the Indenture Trustee, or its respective designees for the payment of any stamp, intangibles, recording or similar tax.

26.     *Preservation of Rights Granted Under this Order.*

(a)     Except as expressly provided in this Order and subject to the funding and payment of the Carve Out, no claim or lien having a priority senior to, or *pari passu* with the Adequate Protection Liens shall be granted or allowed, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Notwithstanding any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time, (i) any 507(b) Claims, the other administrative claims granted pursuant to paragraph 11 of this Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and any 507(b) Claims, the other administrative claims granted pursuant to paragraph 11 of this Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims,

liens and security interests referred to in clause (i) above.

(c)    If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the applicable Controlling Secured Party and, Indenture Trustee, and the Patriarch Secured Parties, of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of the Prepetition Collateral or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the applicable Controlling Secured Party and, Indenture Trustee, and the Patriarch Secured Parties, of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the Controlling Secured Parties and, Indenture Trustee, and the Patriarch Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code with respect to all uses of the Prepetition Collateral and all Adequate Protection Obligations.

(d)    Subject to paragraphs 2212(f), 22, and 27 of this Order, the adequate protection payments made pursuant to this Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

(e)    Except as expressly provided in this Order, the Adequate Protection Obligations, any 507(b) Claims and the Adequate Protection Liens and all other rights and remedies of the Secured Parties and Patriarch Secured Parties granted by the provisions of this Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this Order shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the 507(b) Claims, the other administrative claims granted pursuant to this Order, and all other rights and remedies of the Secured Parties and Patriarch Secured Parties granted by the provisions of this Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

27. *Effect of Stipulations on Debtors and Third Parties.* ~~Subject to the Confirmation Period as set forth in paragraph 4 above (which Confirmation Period may be extended by either (i) written consent of the Indenture Trustee and the Controlling Secured Parties, or (ii) Court order for cause upon application by the Debtors)~~ and this paragraph 27, ~~the Debtors have admitted, stipulated and agreed to various matters as set forth in paragraph 4 above. The Debtors shall have through the Confirmation Period to conclude their review of the Transaction Documents and facts and circumstances related thereto and to notify the Controlling Secured Parties and Indenture Trustee of any basis for challenging the validity, enforceability, priority or extent of the liens on the Prepetition Collateral securing the Transaction Obligations. Absent the Debtors providing such notice prior to the expiration of the Confirmation Period, the stipulations and admissions contained in paragraph 4 of this Order, shall be binding upon the Debtors and any successor thereto in all circumstances. The stipulations and admissions contained in this Order, including in paragraph 4 of this Order, shall be binding upon all other parties in~~ The stipulations and admissions of the Debtors contained in paragraph 4 of this Order shall be binding on the Debtors and all other parties-in-interest (~~subject to~~except the ~~process~~Patriarch Stakeholders as set forth ~~in footnote 1 of the Settlement Agreement~~herein), including ~~any~~without limitation, any committee or chapter 7 or chapter 11 trustee appointed ~~or elected for any of the Debtors (a "Trustee").~~ in the Cases, unless, and solely to the extent that, (a) the Debtors or any other party-in-interest with standing and requisite authority files appropriate pleadings and commences the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules challenging the claims or liens referenced in paragraph 4 of this Order within sixty (60) days after the earlier of the (i) the entry of an order of this Court terminating the Settlement Agreement, or (ii) the expiration of the 15 Month Window—or the 18 Month Extended Window

if the conditions for such extended period are satisfied pursuant to the Settlement Agreement— (the "Confirmation Period"), (b) this Court or another court of competent jurisdiction rules in favor of the plaintiff in any such timely and properly commenced proceeding; provided, that, the filing by a party in interest of a motion for standing to pursue any challenge against the Controlling Secured Parties, the Indenture Trustee, or the Patriarch Secured Parties regarding the claims or liens referenced in paragraph 4 of this Order before the expiration of the Confirmation Period shall automatically toll the Confirmation Period until ten (10) business days following the adjudication of such motion.  The Confirmation Period may be extended by either (i) written consent of the Indenture Trustee, the Controlling Secured Parties, or the Patriarch Secured Parties solely with respect to any claim or lien asserted by such party, or (ii) Court order for cause upon application by the Debtors or other party in interest with standing and requisite authority (provided such application is filed prior to expiration of the Confirmation Period).  Notwithstanding anything herein to the contrary, the stipulations and admissions contained in paragraph 4 of this Order shall not bind the Patriarch Stakeholders or the Controlling Secured Parties under any circumstance, and neither the Patriarch Stakeholders nor the Controlling Secured Parties are under any obligation to commence any challenge to the claims or liens asserted by the Controlling Secured Parties or Indenture Trustee, or the Patriarch Secured Parties, respectively, prior to the expiration of the Confirmation Period.

28.    *Credits Toward Paid in Full Amounts*.  Notwithstanding anything herein or in the Settlement Agreement to the contrary, (i) all Cash Reserve Amounts [and any cash held in the Indemnification Reserve ]shall be credited toward the Paid in Full amount for purposes of calculating whether the 15 Month Window (as defined in the Settlement Agreement) shall be extended to the 18 Month Extended Window (as defined in the Settlement Agreement)[, (ii) any

cash held in the Indemnification Reserve shall be credited toward the Paid in Full amount for purposes of determining whether the Full Payment Date has occurred], and (iii) in the event of a pending dispute as to any Invoiced Fees consistent with the procedures set forth in paragraph 12(c) hereof, then any such disputed amount shall not be included in the Paid in Full amount for purposes of calculating whether the 15 Month Window shall be extended to the 18 Month Extended Window or for determining whether the Full Payment Date has occurred.

29.    28. *Limitation on Use of Collateral.* The Debtors shall use Cash Collateral solely as provided in this Order and for such other expenses as may be agreed to in accordance with the relevant terms of this Order.  Except to the extent necessary by the ~~Independent Director~~Debtors pursuant to paragraph 27 during the Confirmation Period, no Prepetition Collateral or the Carve Out may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Indentures, or the liens or claims granted under this Order or the Indentures; (b) assert any claims or defenses against any of the Controlling Secured Parties, Indenture Trustee, Patriarch Secured Parties, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) seek to modify any of the rights granted to the Controlling Secured Parties ~~or~~, Indenture Trustee, or Patriarch Secured Parties hereunder; or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court (without limiting a Termination Event, if any, that would result therefrom~~). In addition, upon entry of this Order:~~

(a)    ~~(i) the Issuer shall be authorized to take actions necessary to release the Issuer's portion of those holdback funds (the "Issuer Holdback") arising from the Zohar I foreclosure auction and currently in the possession of the Indenture Trustee for purposes of satisfying claims of and amounts due to pre-petition service providers to the Issuer; provided however that all such claims and amounts due have been approved by the Zohar I Independent~~

~~Director; (ii) any remaining amounts of the Issuer Holdback shall be used to fund valid costs and expenses of the Zohar I chapter 11 cases at the direction of the Independent Director; and (iii) the Indenture Trustee shall be authorized to release and use the Indenture Trustee's portion of those holdback funds (the "Trustee Holdback") to satisfy outstanding invoices owed to the Indenture Trustee, its counsel, and any related expenses; and(b) the Indenture Trustee shall be authorized to conduct a Special Payment Date for each of Zohar II and Zohar III for the purposes of releasing monies currently held in the Payment Account (as such term is defined in the applicable Indentures) for distribution to noteholders pursuant to the applicable Priority of Payments (as defined in the applicable Indentures~~).

30.    ~~29.~~   *Binding Effect; Successors and Assigns.* The provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Cases and the Debtors and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Controlling Secured Parties, the Indenture Trustee, for the benefit and security of all Secured Parties (as defined under the Indentures), the Patriarch Secured Parties, and the Debtors and their respective successors and assigns, provided, that, except to the extent expressly set forth in this Order, the Controlling Secured Parties ~~and, the~~ Indenture Trustee, and the Patriarch Secured Parties shall have no obligation to permit the use of the Prepetition Collateral or extend any financing to any trustee or similar responsible person appointed for the estate of any Debtor. For all adequate protection and stay relief purposes throughout the Cases, the Controlling Secured Parties ~~and, the~~ Indenture Trustee, and the Patriarch Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date. For the avoidance of doubt, such requests will survive termination of this Order.

31.    30. *Limitation of Liability.* In permitting the use of the Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order, neither*Applicability of Priority of Payments.*  Any payments or distributions made to the Controlling Secured Parties nor the Indenture Trustee shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Order shall in any way be construed or interpreted to impose or allow the imposition upon either the Controlling Secured Parties or Indenture Trustee of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code), the Indenture Trustee, or the Patriarch Secured Parties shall be applied pursuant to the Priority of Payments in the respective Indentures; provided, however, that nothing in this paragraph 31 shall alter the parties' right to retain and apply adequate protection payments pursuant to the terms of this Order.

32.    31. *Proceeds of Subsequent Financing.* So long as this Order remains in effect and is not otherwise stayed, terminated, or vacated, if at any time prior to the indefeasible repayment and satisfaction in full in cash of the Transaction Obligations, including subsequent to the confirmation of any Chapter 11 plan or plans with respect to the Debtors, the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt in violation of this Order, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned

01:23432159.1
USActive 47182981.1

over to the Indenture Trustee for application in accordance with paragraph [19] hereof and the Transaction Documents including the Priority of Payments in the applicable Indentures

33. 32. *Effectiveness.* This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Order. To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

34. 33. *Proofs of Claim.* None of the Controlling Secured Parties or, the Indenture Trustee, on behalf of the Secured Parties, (as defined under the Indentures), or the Patriarch Secured Parties will be required to file proofs of claim in any of the Cases or successor cases, and the Debtors' stipulations in paragraph 4 herein (which incorporate by reference the Settlement Agreement) shall be deemed to constitute a timely filed proof of claim. Any order entered by this Court in relation to the establishment of a bar date for any claim (including administrative claims) in any of the Cases or successor cases shall not apply to the Controlling Secured Parties, or Indenture Trustee, or Patriarch Secured Parties with respect to the Transaction Obligations. Notwithstanding the foregoing, the Indenture Trustee is hereby authorized and entitled, in its sole discretion, but is not required, to file (and amend and/or supplement, as it sees fit) in the applicable Debtor's Case, a single master proof of claim in the Cases for any claims arising under the Indentures and hereunder (the "Master Proof of Claim"). The Master Proof of Claim, if filed, shall not be required to identify whether any Secured Party acquired its claim from another party and the identity of any such party or be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this paragraph 3334 and the Master Proof of Claim are intended solely for the

purpose of administrative convenience. The Master Proof of Claim, if filed, shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Secured Parties or Patriarch Secured Parties, which instruments, agreements or other documents are already in the possession of the Debtors and are hereby deemed provided thereto.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including administrative claims) in any of the Cases or successor cases shall not apply to the Controlling Secured Parties or the Controlling Secured Parties, Indenture Trustee, or Patriarch Secured Parties with respect to the Transaction Obligations.

35.    *Non-Prejudice Regarding Fee Allocation*.  Nothing in this Order, including paragraphs 11(a), 13(c), and 22 hereof, shall alter, impair, or modify the rights, claims or arguments of the Controlling Secured Parties and the Indenture Trustee, on the one hand, and the Patriarch Stakeholders, on the other hand, with respect to the allocation of the costs of the Incentive Fee,[12] any indemnification obligations of the Independent Director or the CRO, New Agent (as defined in the Settlement Agreement), AMZM (as defined in the Settlement Agreement), or any replacement collateral manager, and all such rights, claims or arguments are expressly preserved.

36.    34. [*Payment of Accrued Professional Fees*. Within three (3) business days of the date of entry of this Order, the Debtors are authorized and directed to pay all fees and expenses that are then properly payable as set forth in the first, second and third monthly fee application of Young Conaway Stargatt & Taylor, LLP [Docket Nos. 307, 308 and 351] in accordance with this Court's interim compensation procedures order [Docket No. 293], the first monthly staffing report of FTI Consulting, Inc. [Docket No. 328], the first and second monthly staffing reports of

---

[12]   The "Incentive Fee" has the meaning afforded to such term in the *Order Approving Independent Director Service Agreement and Indemnification Agreement* [Docket No. 345].

Goldin Associates LLC [Docket Nos. 347 & 348] and any accrued and unpaid fees and expenses of the Independent Director in accordance with the Independent Director's Service Agreement [Docket No. 345].][13]

37.    *Incorporation of Settlement Agreement. This Order is entered in furtherance of the Settlement Agreement, and the Settlement Agreement is hereby incorporated by reference herein. Notwithstanding anything herein to the contrary, in the event of any inconsistency between the Settlement Agreement and this Order, the Settlement Agreement shall control.*

38.    35. *Survival of Certain Provisions*. In the event of entry of any order converting any of these Cases into a successor case, the Adequate Protection Liens, the 507(b) Claims and the Carve- Out shall continue in these proceedings and in any ~~Successor Case~~successor case, and such Adequate Protection Liens, the 507(b) Claims and the Carve- Out shall maintain their respective priorities as provided by this Order.

39.    36. *Amendment*. Except as otherwise provided herein, no waiver, modification or amendment of any of the provisions hereof shall be effective unless ~~set forth~~either approved by the Court after notice to parties in interest, or agreed to in writing, signed by, or on behalf of, the Debtors, the Controlling Secured Parties, ~~and~~ the Indenture Trustee, and ~~approved by the Court after notice to parties in interest~~the Patriarch Secured Parties.

40.    37. *No Waiver or Modification of this Order*. The Debtors irrevocably waive any right to seek any modification or extension of this Order without the prior written consent of the Controlling Secured Parties and the Indenture Trustee, and no such consent shall be implied by any other action, inaction or acquiescence of the Controlling Secured Parties, any other Secured Party, Indenture Trustee, or Collateral Manager. The Debtors may not seek to modify or to alter relative lien priority of the Adequate Protection Liens or the Prepetition Liens set forth in this

[13]  NTD:  May not be necessary in light of the entry of the Interim Orders.

Order.*Occurrence of Full Payment Date.*  Upon the occurrence of the Full Payment Date, this Order shall not limit or affect the Debtors' use or distribution of cash, or otherwise provide the Secured Parties any rights other than what is provided in the Transaction Documents; provided, however, for the avoidance of doubt, the releases and indemnifications in paragraph 5 and 6 of this Order shall survive the occurrence of the Full Payment Date.

41.    38. *Jurisdiction.* This Court shall retain jurisdiction to enforce the terms of this Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Order.

42.    39. *Controlling Effect of Order.* To the extent any provision of this Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Order shall control to the extent of such conflict.

Dated: AugustOctober ___, 2018    _____

THE HONORABLE CHRISTOPHER S. SONTCHI
CHIEF UNITED STATES BANKRUPTCY JUDGE

**Exhibit 2**

Transaction Documents

(A)      the Indenture among Zohar CDO 2003-1 Limited ("Zohar I"), Zohar CDO 2003-1 Corp. ("ZI Corp."), Zohar CDO 2003-1, LLC, and MBIA Insurance Corporation ("MBIA"), CDC Financial Products, Inc., and the Indenture Trustee, dated November 13, 2003 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Zohar I Indenture");

(B)      the Indenture among Zohar II 2005-1, Limited ("Zohar II"), Zohar II 2005-1, Corp. ("ZII Corp."), Zohar II 2005-1, LLC, MBIA, IXIS Financial Products Inc., and the Indenture Trustee, as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Zohar II Indenture");

(C) the Indenture among Zohar III, Limited ("Zohar III" and with Zohar I and Zohar II, the "Zohar Funds"), Zohar III, Corp., Zohar III, LLC, Natixis Financial Products Inc., and the Indenture Trustee, as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association, dated April 6, 2007 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Zohar III Indenture" and together with the Zohar I Indenture and Zohar II Indenture, the "Indentures"); and

(D)      (i) each Collateral Management Agreement dated March 3, 2016 (each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "CMAs") entered into between certain of the Debtors and Alvarez & Marsal Zohar Management, LLC ("AMZM"), as Collateral Manager (including any successors thereto, the "Collateral Manager"), (ii) the Insurance Agreement and Policy Issued by MBIA (with respect to Zohar I and Zohar II), (iii) the Insurance and Indemnity Agreements by and among MBIA and Zohar I (and the Co-Issuers (as defined therein)) and Zohar II (and the Co-Issuers (as defined therein)), respectively (the "Insurance and Indemnity Agreements"), and (iv) all other agreements or other documentation executed by any Debtor in connection with or related to any of the foregoing, including, the Transaction Documents (as defined in the Indentures) (each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, collectively with the Indentures, CMAs, and Insurance and Indemnity Agreements, the "Transaction Documents").

01:23432157.4
USActive 47182981.1