# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 18-10512 (CSS)<br><br>(Jointly Administered)<br><br>**Docket Ref. Nos. 356, 365, 503 & 542** |

**ZOHAR III CONTROLLING CLASS' JOINDER AND SUPPLEMENTAL RESPONSE
IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER
AUTHORIZING THE USE OF CASH COLLATERAL**

The holders (the "Zohar III Controlling Class") of the majority of A-1 notes issued by Debtor Zohar III, Corp. ("Zohar III") hereby join in the responses of the Debtors and MBIA Insurance Company ("MBIA") to the extent they address issues related to Zohar III, which are being filed contemporaneously herewith, and the response of U.S. Bank National Association ("U.S. Bank") [D.I. 530] (collectively, the "Other Stakeholder Responses") to *Patriarch's*[2] *Objection to Debtors' Motion For Entry of an Order Authorizing the Use of Cash Collateral* [D.I. 503] (the "Objection") and in support of the *Debtors' Motion For Entry of an Order Authorizing the Use of Cash Collateral* [D.I. 356] (the "Motion") and the proposed *Final Order Under 11 U.S.C. §§ 105, 361, 362, 363 and 507, and Bankruptcy Rules 2002, 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protection to Prepetition*

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] Despite an objection from "Patriarch" (as that term is defined in the Objection), the only Patriarch entity with creditor standing on the issue of adequate protection related to Zohar III is Octaluna III, LLC ("Octaluna III"). *See Declaration of Lynn Tilton in Support of Chapter 11 Petitions* [D.I. 5] ("Tilton Decl.") ¶ 41 ("The Class B Notes are all held by the Octaluna Entities (and therefore indirectly by me) and, while also secured, are subordinate in right of payment to the Class A Notes."); *see also* Indenture (as defined below) § 5.2 (providing that "Holders of the Preference Shares shall not have any creditors' rights against the Issuer and shall not have the right to determine the remedies to be exercised under this Indenture," thus, leaving Octaluna III as the only Patriarch entity with creditor standing at Zohar III).

*Secured Parties; (III) Providing Superpriority Administrative Expense Status; (IV) Modifying Automatic Stay; and (V) Granting Related Relief* [D.I. 542, Exhibit A] (the "Revised Order") and submit this supplemental response (the "Joinder"). In support of this Joinder, the Zohar III Controlling Class respectfully states as follows:

## PRELIMINARY STATEMENT

1. ***First***, the Zohar III Controlling Class is entitled to adequate protection. Section 363(e) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") requires a debtor to provide adequate protection to a party with an interest in its property for the debtor's use of that collateral. The Settlement Agreement[3] acknowledges this basic principle and requires that "[t]he Debtors shall promptly negotiate with the secured parties funding of the Debtors' Chapter 11 cases from the use of the secured parties' cash collateral . . . It is understood and agreed the Zohar Funds shall not utilize any cash they are holding pending an agreed order." *See* Settlement Agreement ¶ 17. Further, there is no dispute that the lien securing the claims of the holders of notes issued by Zohar III (collectively, the "Zohar III Noteholders") is valid. *See* Tilton Decl. ¶¶ 41–42; Objection ¶ 6.[4]

2. ***Second***, entry of an agreed-upon cash collateral order is the only way to ensure proper funding of these cases, absent a valuation fight. The Debtors have not (and cannot) demonstrate that the Zohar III Noteholders are adequately protected absent the relief provided in the Revised Order. Patriarch's attempt to claim the existence of an equity cushion at Zohar III

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Revised Order or the Indenture (as defined below), as applicable.

[4] In one of several contradictory positions set forth in the Objection, Patriarch argues that the cash collateral order must preserve its rights to review and challenge the "amount and validity of the Other Stakeholder Creditors' claims and liens." Objection ¶ 22. Yet, Patriarch argues it (more accurately, Octaluna III) is entitled to adequate protection ***because it shares the same lien as the Zohar III Controlling Class***. Objection ¶ 2 ("The Patriarch Secured Claims share the same collateral and liens under the Indentures pledged to secure the claims of the MBIA/ZIII Creditors . . ."). Thus, Patriarch cannot claim the liens securing the claims of the Zohar III Noteholders do not exist or are invalid.

2

based on speculative hearsay involving purported "valuations" of Zohar I and Zohar II, is misleading at best, and, in any event, irrelevant to Zohar III.[5]

3. **_Third_**, the Revised Order contains reasonable, fair, and market terms consistent with recent precedent in this Court and this District and is the product of extensive, good faith negotiations resulting in significant compromises by MBIA and the Zohar III Controlling Class.

4. **_Fourth_**, the Revised Order does not violate Patriarch's rights under the Bankruptcy Code nor does it run afoul of the Settlement Agreement. Indeed, the Revised Order addresses the legitimate concerns raised in Patriarch's Objection.[6]

5. Therefore, the real question before the Court is whether (a) it should approve the Revised Order, which provides for the consensual use of cash collateral and represents the prudent exercise of the business judgement of the Debtors' Independent Director after extensive arms'-length, good faith negotiations, or (b) the parties must litigate the issue of adequate protection—an exercise that would run afoul of the Settlement Agreement and the "cardinal principle" of "laying down arms" often articulated by Patriarch. _See, e.g._, Objection ¶ 1. The answer is easy and obvious.[7] Moreover, Patriarch's efforts to attack the exercise of the Independent Director's business judgement with respect to estate matters undermine messaging regarding the Independent Director's authority to act on behalf of the estate in the monetization process.

---

[5] MBIA is not a creditor of Zohar III, and does not "wrap" any of the claims of the Zohar III Noteholders.
[6] With respect to the Objection's discussion of the Class B Note, the Court should take note of Exhibit A to the Settlement Agreement, which sets forth the Zohar III claims (_and forms the basis for calculating the target to achieve the "18 Month Extended Window"_). The Class B Note (and the $186 million of claims associated therewith) is absent, and a copy of the Class B Note was not produced to the Debtors until September. Interestingly, despite Octaluna III's reliance on the Class B Note to assert creditor standing and demand adequate protection, the Objection makes no effort to include the Class B Note in the Zohar III claims on Exhibit A to the Settlement Agreement—Patriarch cannot have it both ways.
[7] A third option is available if the Court denies the Motion—certain members of the Zohar III Controlling Class have previously prepared a DIP term sheet and are prepared to fund these cases on customary terms for such financing.

6. For the reasons set forth below, as well as in the Other Stakeholder Responses (to the extent related to use of cash collateral at Zohar III), the Objection should be overruled and the Court should enter a cash collateral order substantially in the form set forth in the Revised Order.

## BACKGROUND

7. As this Court is well aware, this case has a long and contentious history, both before and after the Debtors filed for bankruptcy protection.  The Zohar III Controlling Class, however, intentionally avoided prepetition litigation in favor of a consensual resolution involving the monetization of the Debtors' assets and repayment of Zohar III's debt.  Notably, the Zohar III Controlling Class' involvement in the oft-mentioned prepetition litigation was as a third-party defendant in *Zohar CDO 2003-1 Ltd. v. Patriarch Partners, LLC* (where Ms. Tilton brought a claim alleging that certain Zohar III Noteholders, as holders of debt, breached fiduciary duties they allegedly owed to her, in her capacity as equity holder and director—a unique claim to say the least).[8]  Nearly a year prior to the filing of these cases, the Zohar III Controlling Class attempted to discuss a global resolution that would have achieved an outcome not dissimilar to the path Ms. Tilton ultimately chose to take.  In fact, at that time, due to the runway necessary to successfully market the assets, the upcoming maturity, and the unanimity requirements under the Zohar III indenture (the "<u>Indenture</u>"),[9] the Zohar III Controlling Class contemplated that a chapter 11 process would likely be necessary to implement any consensual transaction.

8. Notwithstanding the Controlling Class' desire for a consensual transaction, Patriarch chose to take the unusual step of filing for a chapter 11 bankruptcy without any advance discussions with the Debtors' secured creditors regarding use of cash collateral and

---

[8] No. 17-cv-307 (S.D.N.Y. 2017).
[9] A copy of the Indenture is attached as Exhibit 3 to the *Declaration of Carolyn Schiff in Support of Patriarch's Objection to the Debtors' Motion for Entry of an Order Authorizing the Use of Cash Collateral* [D.I. 504].

4

funding of the cases. Perhaps most offensively, Patriarch initially funded these cases (including payment of its hand-picked chief restructuring officer (a "CRO")) by diverting funds that Patriarch Partners Agency Services LLC ("PPAS"), as agent, was obligated to pay to U.S. Bank, as indenture trustee (the "Trustee"), on account of the loans made by Zohar III to certain of the portfolio companies. These funds should have run through the Indenture's Priority of Payment provisions to make interest (and potentially principal) payments to the Zohar III Noteholders. *See* Indenture, Art. 11. Patriarch now brazenly argues that it is somehow improper to pay (e.g., return) approximately $2.4 million of accrued prepetition interest to the holders of A-1 notes as adequate protection.[10] *See, e.g.*, Objection ¶ 69.

9. The early litigation in these bankruptcy cases led to the Settlement Agreement, whereby the parties agreed to a "single Independent Director for each of the Zohar Funds" and that "Tilton shall resign as a director for each [of the Zohar Funds] and shall have no governance authority or responsibility for the Zohar Funds, other than as a Designated Tax Director." Settlement Agreement ¶1. Thus, Joseph J. Farnan, Jr. was appointed as the Debtors' Independent Director, and he alone is empowered to act on their behalf. Consistent with the terms of the Settlement Agreement, Mr. Farnan on behalf of the Debtors, MBIA, the Trustee, and the Zohar III Controlling Class engaged in extensive, good faith negotiations regarding adequate protection and funding of these cases and proposed an initial cash collateral order (the "Proposed Cash Collateral Order"). In reliance on the terms agreed to by the Debtors (and Mr. Farnan), the Trustee, the Zohar III Controlling Class, and MBIA consented to interim relief while the Motion was pending to permit interim funding of these cases and did so without receiving any economic consideration in exchange.

---

[10] Ironically, Patriarch argues that there is no need for adequate protection because an equity cushion exits, yet also argues that adequate protection should be limited to the extent MBIA/ZIII Creditors are found to be oversecured. Objection ¶¶ 46, 63.

10. Unfortunately, Patriarch objected to the Proposed Cash Collateral Order and invoked mediation under the Settlement Agreement. Mediation before Judge Gross did not resolve the dispute. On November 9, 2018, the Debtors filed the Revised Order, which addresses certain of the issues raised by Patriarch.

## SUPPLEMENTAL RESPONSE

**I. The Secured Parties Are Entitled to Adequate Protection and the Proposed Adequate Protection Does Not Violate the Settlement Agreement.**

11. The Bankruptcy Code requires a secured creditor to receive adequate protection before a debtor may use its cash collateral. *See* 11 U.S.C. § 363(e) ("[A]t any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."). Nothing in the Settlement Agreement overrides these basic tenets of the Bankruptcy Code. As mentioned in paragraph 1 *supra*, the Settlement Agreement expressly contemplates that the parties will negotiate an appropriate cash collateral order to protect the secured parties' interests. Notably, the Settlement Agreement does not include any provision stating that the cash collateral order would vary in any way from standard market terms or otherwise specify any additional or unusual protections for any of the Patriarch stakeholders (*e.g.*, preservation of claims under sections 506(c) and 552 of the Bankruptcy Code).

### A. The Zohar III Debtors Bear the Burden of Establishing the Zohar III Noteholders are Adequately Protected.

12. When seeking adequate protection, a creditor bears the initial burden of proof to demonstrate that it has a valid interest in the property to be used, sold, or leased.[11] As discussed above, it is beyond dispute that the Zohar III Noteholders, through the Trustee, have a valid and enforceable lien in the Collateral, and that the claims of the holder of the Class B Note are subordinated to the claims of the Zohar III Controlling Class, as well as the holders of the A-2 and A-3 Notes. *See* Tilton Decl. ¶¶ 41–42 (admitting that the Zohar funds' Class A Notes are secured and indicating that the approximate outstanding Zohar III Class A Notes are $791 million); Settlement Agreement, Ex. A (reflecting that the outstanding Zohar III Class A Notes total approximately $791 million); Objection ¶ 6 (reflecting that the outstanding Zohar III Class A Notes total approximately $791 million).

13. The Debtors now bear the burden to establish that the Zohar III Noteholders are adequately protected.[12] The Debtors have not, and cannot, provide credible evidence to meet their burden. For the reasons mentioned in paragraph 2 above, Patriarch's argument that an equity cushion exists at Zohar III, obviating the need for adequate protection, is misleading and not applicable. *See* Objection ¶ 48. Thus, absent a consensual agreement to use cash collateral, the Debtors cannot fund these cases.[13] *See* Objection ¶¶ 2, 48.

---

[11] *See In re Heritage Highgate, Inc.*, 679 F.3d 132, 140 (3d Cir. 2012) (holding that "the ultimate burden of persuasion is upon the creditor to demonstrate by a preponderance of the evidence both the extent of its lien and the value of the collateral securing its claim").

[12] *See Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) (holding, in the context of granting a priming lien under section 364(d)(1), that the "debtor has the burden to establish that the holder of the lien to be subordinated has adequate protection").

[13] As mentioned in footnote 7, certain members of the Zohar III Controlling Class are prepared to provide DIP financing to fund these cases.

**B.    The Revised Order Contains Reasonable, Necessary, and Standard Market Provisions.**

14.    The Revised Order is fair and reasonable for all parties and contains necessary and standard market terms, as demonstrated below.

| Provision Type | Discussion |
|---|---|
| *Debtor Stipulations* | The Debtors' stipulations in the Revised Order are extremely limited, especially when compared to cash collateral orders routinely entered in this District.[14]  Specific limitations in the Revised Order include the following:<br><br>• With respect to Zohar III, the Paid in Full amounts stipulations confirm that which was set forth in the Settlement Agreement as to the Debtors' indebtedness and liability, and the Revised Order includes Class B Notes as well. Revised Order ¶ [4(a)(1)].<br><br>• The allowability of Transaction Obligations under section 502 is stipulated only to the extent not inconsistent with the Settlement Agreement. Revised Order ¶ [4(b)].<br><br>• While the Revised Order creates a presumption of validity if no challenge is raised, **_Patriarch_** is not bound by the Debtors' stipulation.[15]  Revised Order ¶ [27]. |
| *Interest and Fees* | • The Revised Order provides for nominal **contract-rate** interest (LIBOR + (38 - 40) bps) to be paid only after funding of the budget for the cases and for professional fees and expenses. Payment of |

---

[14]    *See, e.g.*, *In re Nordam Group, Inc.*, No. 18-11699 (MFW) (Bankr. D. Del. June 22, 2018) [D.I. 217]; *In re Enduro Resource Partners LLC*, No. 18-11174 (KG) (Bankr. D. Del. May 15, 2018) [D.I. 132]; *In re Gibson Brands, Inc.*, No. 18-11025 (CSS) (Bankr. D. Del. May 1, 2018) [D.I. 220]; *In re EV Energy Partners, L.P.*, No. 18-10814 (CSS) (Bankr. D. Del. Apr. 2, 2018) [D.I. 128]; *In re HCR ManorCare, Inc.*, No. 18-10467 (KG) (Bankr. D. Del. Mar. 4, 2018) [D.I. 94]; *In re The Wet Seal, LLC*, No. 17-10229 (CSS) (Bankr. D. Del. Feb. 2, 2017) [D.I. 251] ; *In re Ensequence, Inc.*, No. 18-10182 (KG) (Bankr. D. Del. Jan. 30, 2018) [D.I. 90]; *In re Orchard Acquisition Company, LLC*, No. 17-12914 (KG) (Bankr. D. Del. Dec. 12, 2017) [D.I. 110]; *In re Extreme Plastics Plus, Inc.*, No. 16-10221 (CSS) (Bankr. D. Del. Jan. 31, 2016) [D.I. 352].

[15]    Patriarch asserts that the stipulations violate the Settlement Agreement because they impair Ms. Tilton's ability to bring claims **_on behalf of the Debtors_**.  *See* Objection ¶ 28.  Such a position undercuts Mr. Farnan's role, undermines this process, and makes the "Paid in Full" concept illusory.  The Settlement Agreement vests full governance rights in Mr. Farnan.  One of Mr. Farnan's fundamental duties is to determine who has and does not have valid claims against the Debtors' estates.  Thus, while the Settlement Agreement limits the *parties* from bringing claims to permit an orderly monetization process (and the Revised Order preserves those rights), it empowers Mr. Farnan to govern the Debtors' estates in his business judgment, including evaluating claims held by the Debtors.

8

| Provision Type | Discussion |
|---|---|
|  | interest and fees (especially at the contract rate) is routine in this District.[16]<br><br>• The Revised Order provides for the payment of accrued prepetition interest and fees, amounts owed to the Zohar III Controlling Class under the Indenture, and such payments are routine in this District.[17]<br><br>• Patriarch's claim that the fees are excessive is nonsense. Interestingly, to justify this faulty conclusion, Patriarch compares the combined fees of MBIA, the Zohar III Controlling Class, and U.S. Bank against Debtors' counsel fees; however, Patriarch does not disclose its fees or compare its fees to support its conclusion (repeated requests for the outstanding amount of fees have gone unanswered by Patriarch likely to avoid this issue).[18]<br><br>• Moreover, there are essentially three different bankruptcy cases: Zohar I with MBIA as the senior secured creditor, Zohar II with MBIA as the senior secured creditor, and Zohar III with the Zohar III Controlling Class as the senior secured creditor.  It is improper to aggregate the fees without providing context. |
| *Patriarch Fees and Expenses* | • Patriarch's attempt to avoid payment of interest and fees is a contrived effort to get its fees paid through the Debtors' estates. Ironically, Patriarch demands that funds flow through the Priority of Payments in the Indenture, yet payment of Patriarch's fees would require funds to flow contrary to the Priority of Payments and the subordination provisions of the Indenture.   Indenture §§ 11.1(a)(i)-(ii), 13.1.<br><br>• Finally, the Zohar III Controlling Class suspects that Patriarch desires to get its fees paid with respect to its roles other than Octaluna III, as holder of the Class B Note at Zohar III.  Such efforts are impermissible as adequate protection and offensive in light of (a) Patriarch's objection to payment of the Zohar III Controlling Class' |

---

[16] *See, e.g.*, *In re Nordam Group, Inc.*, No. 18-11699 (MFW) (Bankr. D. Del. June 22, 2018) [D.I. 217]; *In re Enduro Resource Partners LLC*, No. 18-11174 (KG) (Bankr. D. Del. May 15, 2018) [D.I. 132]; *In re Gibson Brands, Inc.*, No. 18-11025 (CSS) (Bankr. D. Del. May 1, 2018) [D.I. 220]; *In re EV Energy Partners, L.P.*, No. 18-10814 (CSS) (Bankr. D. Del. Apr. 2, 2018) [D.I. 128]; *In re Ensequence, Inc.*, No. 18-10182 (KG) (Bankr. D. Del. Jan. 30, 2018) [D.I. 90]; *In re Orchard Acquisition Company, LLC*, No. 17-12914 (KG) (Bankr. D. Del. Dec. 12, 2017) [D.I. 110]; *In re Extreme Plastics Plus, Inc.*, No. 16-10221 (CSS) (Bankr. D. Del. Jan. 31, 2016) [D.I. 352].

[17] *See, e.g.*, *In re Enduro Resource Partners LLC*, No. 18-11174 (KG) (Bankr. D. Del. May 15, 2018) [D.I. 132] (providing for payment of prepetition accrued interest and professionals' fees); *In re Gibson Brands, Inc.*, No. 18-11025 (CSS) (Bankr. D. Del. May 1, 2018) [D.I. 220] (providing for payment of prepetition professionals' fees).

[18] The post-petition fees and expenses of the Zohar III Controlling Class through October 31, 2018 are approximately $2.2 million, which is extremely reasonable in light of the activity in these cases.

9

| Provision Type | Discussion |
|---|---|
| | fees and expenses and (b) various non-Debtor Patriarch affiliates' receipt of fees through their various roles, including PPAS, as agent, Patriarch Partners Management Group, and non-Debtor affiliates of Patriarch that receive interest payments from their loans to the Portfolio Companies. |
| *Waivers of Sections 506(c) and 552(b)* | • As an initial matter, the right to assert a surcharge claim under section 506(c) belongs exclusively to the Debtors. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000) (holding that only a trustee or debtor in possession may invoke the surcharge provisions of section 506(c)).<br><br>• Further, not only are the waivers in the Revised Order warranted and a valid exercise of the Debtors' business judgment, but section 506(c) and section 552(b) "equities of the case" waivers are commonly approved in this District, particularly where, as here, secured creditors have agreed to permit, and the Debtors have bargained for, the use of cash collateral to fund post-petition expenses on a current basis and to subordinate their liens and claims to post-default carve out.[19]<br><br>• Moreover, while the Settlement Agreement provides for an Independent Director and CRO, it is not for the sole benefit of the Controlling Secured Creditors. Rather, the compromise permits Patriarch to exclude the Controlling Secured Creditors from exercising remedies and monetizing collateral, a result Ms. Tilton vigorously sought to prevent. Thus, the Settlement Agreement and the costs associated with Debtors' governance and funding of the cases are as much, or more, a benefit to Patriarch than to any other party. The Court should also note that prior to the filing of these cases, and in violation of the Indentures, Ms. Tilton hired a CRO and its firm.<br><br>• Finally, despite Patriarch negotiating several benefits for itself and |

---

[19] *In re Brookstone Holdings Corp.*, No. 18-11780 (BLS) (Bankr. D. Del. Aug. 2, 2018) [D.I. 19] ¶ 70 ("In connection with consenting to . . . the use of Cash Collateral, *secured parties commonly request a waiver of (i) section 506(c) of the Bankruptcy Code*, which permits the Debtors to surcharge collateral and *(ii) the 'equities of the case' exception from the general rule of section 552 of the Bankruptcy Code* that prepetition liens that attach to proceeds of collateral will continue to attach to postpetition proceeds.") (emphasis added). Gibson Dunn is co-counsel for the debtors in *Brookstone*. *See also, e.g.*, *In re Enduro Resource Partners LLC*, No. 18-11174 (KG) (Bankr. D. Del. May 15, 2018) [D.I. 132] (approving section 506(c) waiver and section 552(b) "equities of the case" waiver in final cash collateral order); *In re EV Energy Partners, L.P.*, No. 18-10814 (CSS) (Bankr. D. Del. Apr. 2, 2018) [D.I. 128] (same); *In re HCR ManorCare, Inc.*, No. 18-10467 (KG) (Bankr. D. Del. Mar. 4, 2018) [D.I. 94] (same); *In re Ensequence, Inc.*, No. 18-10182 (KG) (Bankr. D. Del. Jan. 30, 2018) [D.I. 90] (same); *In re Orchard Acquisition Company, LLC*, No. 17-12914 (KG) (Bankr. D. Del. Dec. 12, 2017) [D.I. 110] (same); *In re Extreme Plastics Plus, Inc.*, No. 16-10221 (CSS) (Bankr. D. Del. Jan. 31, 2016) [D.I. 352] (same)

| **Provision Type** | **Discussion** |
|---|---|
| | its affiliates in the Settlement Agreement, such as paragraph 18 thereof, *no provision* in the Settlement Agreement contemplates surcharging the administrative costs of the estate to the Controlling Secured Creditors. Doing so would violate the Settlement Agreement's contemplation of an agreement to provide adequate protection for funding of these cases. |

**CONCLUSION**

For the foregoing reasons, the Zohar III Controlling Class respectfully requests that this Court enter a cash collateral order substantially in the form of the Revised Order.

Dated: November 9, 2018
Wilmington, DE

    Brian J. Lohan
    Ginger Clements
    ARNOLD & PORTER KAYE SCHOLER LLP
    70 West Madison Street Suite 4200
    Chicago, IL 60602-4231
    Telephone:   +1 312 583 2300
    Facsimile:   +1 312 583 2360
    Email:  brian.lohan@arnoldporter.com
    Email:  ginger.clements@arnoldporter.com

    Jeffrey A. Fuisz
    Peta Gordon (*pro hac vice* admission pending)
    ARNOLD & PORTER KAYE SCHOLER LLP
    250 West 55th Street
    New York, New York 10019-9710
    Telephone:   +1 312 863 8000
    Facsimile:   +1 212 863 8689
    Email:  jeffrey.fuisz@arnoldporter.com
    Email:  peta.gordon@arnoldporter.com

    -and-

    */s/ Matthew P. Ward*
    Matthew P. Ward (Del. Bar No. 4471)
    Morgan L. Patterson (Del. Bar No. 5388)
    Womble Bond Dickinson (US) LLP
    222 Delaware Avenue, Suite 1501
    Wilmington, DE 19801
    Telephone:  (302) 252-4320
    Facsimile:  (302) 252-4330
    Email:  matthew.ward@wbd-us.com
    Email:  morgan.patterson@wbd-us.com

    *Counsel to the Zohar III Controlling Class*