**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*,[1]<br><br>       Debtors. | Chapter 11<br><br>Case No. 18-10512 (CSS)<br><br>Jointly Administered<br><br>**Ref. Docket No. 266** |

**CERTIFICATION OF COUNSEL REGARDING
ORDER APPROVING FORM OF COMMITTEE NON-DISCLOSURE AGREEMENT**

  On May 21, 2018, the Court entered an order [Docket No. 266] approving that certain Mediation Term Sheet [Docket No. 266, Exhibit 1] (the "**Settlement Agreement**")[2] setting forth the terms of a settlement by and between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA, and the controlling class of the Zohar III Noteholders. Paragraph 15 of the Settlement Agreement provides for the formation of the Committee and that its "members and their respective advisors shall execute standard NDAs consistent with the practice in the District of Delaware." The parties have submitted for consideration by the Court proposed forms of non-disclosure agreements (each an "**NDA**") to be used in accordance with paragraph 15 of the Settlement Agreement.

  The Court has advised the Debtors that it has approved the form of NDA that is attached as **Exhibit 1** to the proposed form of order (the "**Proposed Order**") attached hereto as **Exhibit A**, as the NDA to be used in accordance with paragraph 15 of the Settlement Agreement.

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059) ("Zohar II Corp."), Zohar CDO 2003-1, Corp. (3724) ("Zohar I Corp."), Zohar III, Limited (9261) ("Zohar III"), Zohar II 2005-1, Limited (8297) ("Zohar II"), and Zohar CDO 2003-1, Limited (5119) ("Zohar I" and with Zohar II and Zohar III, collectively, the "Zohar Funds" and each a "Zohar Fund"). The Debtors' address is Zohar III, Corp., 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] Unless defined herein, capitalized terms have the meaning ascribed to them in the Settlement Agreement.

The Debtors respectfully request that the Court enter the Proposed Order at its earliest opportunity.

| | |
|---|---|
| Dated: November 19, 2018<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Ryan M. Bartley*<br>James L. Patton, Jr. (No. 2202)<br>Robert S. Brady (No. 2847)<br>Michael R. Nestor (No. 3526)<br>Joseph M. Barry (No. 4221)<br>Ryan M. Bartley (No. 4985)<br>Shane M. Reil (No. 6195)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600 / Facsimile: (302) 571-1253<br><br>*Counsel to the Debtors and Debtors in Possession* |

## **EXHIBIT A**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 18-10512 (CSS)<br><br>Jointly Administered<br><br>**Ref. Docket No. 266** |

### ORDER APPROVING FORM OF COMMITTEE NON-DISCLOSURE AGREEMENT

    WHEREAS, on May 21, 2018, the Court entered an order [Docket No. 266] approving that certain Mediation Term Sheet [Docket No. 266, Exhibit 1] (the "**Settlement Agreement**")[2] setting forth the terms of a settlement by and between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA, and the controlling class of the Zohar III Noteholders; and

    WHEREAS, paragraph 15 of the Settlement Agreement provides for the formation of the Committee and that its "members and their respective advisors shall execute standard NDAs consistent with the practice in the District of Delaware."

    NOW THEREFORE, the Court hereby ORDERS that:

    1.  The form of non-disclosure agreement attached hereto as **Exhibit 1** is approved as the non-disclosure agreement to be used in accordance with paragraph 15 of the Settlement Agreement (the "**Committee NDA**").

Dated: November ___, 2018
   Wilmington, Delaware

                        _____
                        Christopher S. Sontchi
                        United States Bankruptcy Judge

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059) ("Zohar II Corp."), Zohar CDO 2003-1, Corp. (3724) ("Zohar I Corp."), Zohar III, Limited (9261) ("Zohar III"), Zohar II 2005-1, Limited (8297) ("Zohar II"), and Zohar CDO 2003-1, Limited (5119) ("Zohar I" and with Zohar II and Zohar III, collectively, the "Zohar Funds" and each a "Zohar Fund"). The Debtors' address is Zohar III, Corp., 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] Unless defined herein, capitalized terms have the meaning ascribed to them in the Settlement Agreement.

01:23878627.1

# **EXHIBIT 1**

**Form of Committee NDA**

01:23878627.1

# NONDISCLOSURE AGREEMENT

THIS AGREEMENT ("Agreement") is made as of the ____ day of November 2018, by and between Zohar CDO 2003-1, Limited, Zohar CDO 2003-1, Corp., Zohar II 2005-1, Limited, Zohar II 2005-1, Corp., Zohar III, Limited, and Zohar III, Corp. (each a "Debtor" and, collectively, the "Debtors"), the Committee (as defined in the Settlement Agreement, which is defined below), and the Patriarch Stakeholders (as defined in the Settlement Agreement, and, together with the Debtors and the Committee, the "Parties") that has been formed in the Debtors' Chapter 11 cases.

WHEREAS, each of the Debtors is a debtor and a debtor-in-possession in those certain cases filed under Chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and captioned as *Zohar III, Corp., et al.*, Case No. 18-10512 (CSS) (the "Bankruptcy Cases");

WHEREAS, pursuant to that certain Settlement Agreement approved in the Bankruptcy Cases (the "Settlement Agreement"),[1] *see* Bankruptcy Case Docket No. 266, the Independent Director and the Debtors' Chief Restructuring Officer ("CRO") have been appointed on behalf of the Debtors to conduct with full and joint authority with Ms. Tilton the process of monetizing the Debtors' interests in the Portfolio Companies and to protect the Debtors' interests in the Portfolio Companies;

WHEREAS, pursuant to paragraph 8 of the Settlement Agreement, the Independent Director, the CRO, and Robert S. Kost, as Chief Monetization Officer, have entered into a nondisclosure agreement (the "Patriarch/PC NDA") with respect to the designation of confidential documents and information to be furnished or disclosed by the Group A Portfolio Companies and Group B Portfolio Companies (together and collectively, the "Portfolio Companies") and the Patriarch Stakeholders (such documents and information constituting "Confidential Material" under the Patriarch/PC NDA, the "Patriarch/PC Confidential Material");

WHEREAS, pursuant to paragraph 15 of the Settlement Agreement, the CRO shall provide to the Committee to be formed pursuant to the Settlement Agreement and which shall consist of MBIA, and the Zohar III Controlling Class (the "Committee Members"), who shall appoint representatives to serve on the Committee as Creditor Representatives (as such term is defined below), all information that the CRO determines, in consultation with the Independent Director, is necessary to assess and represent the interests of the Other Stakeholders, other than information whose distribution is reasonably limited at the request of investment bankers or potential buyers of the Portfolio Companies;

WHEREAS, certain of the documents and information that the Debtors may disclose to the Committee (the "Produced Material") may be information related to the Debtors that the Independent Director and CRO may deem confidential commercial information, or may be confidential information related to the Portfolio Companies or Monetization Process; and

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to them in the Settlement Agreement.

01:23848863.1

WHEREAS, the Debtors and the Committee wish to enter into this Agreement to protect the confidential nature of any information that is shared with the Committee.

NOW, THEREFORE, IT IS HEREBY AGREED, as follows:

1. "<u>Confidential Material</u>" means all documents, data, reports, interpretations, forecasts, financial and business projections, records, agreements, contracts, business plans, marketing materials and vendor agreements or programs (whether in oral or written form, electronically stored, or otherwise) containing or otherwise reflecting trade secrets, proprietary business information, competitively sensitive information, nonpublic personal information, or other information that the Debtors in good faith believe the disclosure of which would be detrimental to it or them or otherwise require the protections provided in this Agreement, which may include, without limitation, (i) Patriarch/PC Confidential Material (as defined in the Patriarch/PC NDA), (ii) written information concerning the Debtors', the Portfolio Companies' or the Patriarch Stakeholders' assets, liabilities, business operations or projections, or (iii) written analyses, compilations, studies, notes, summaries, compilations, presentations, or memoranda of the foregoing. The CRO shall be expressly authorized pursuant to the terms of this Agreement to provide the following to the Committee: (a) with respect to the Group A Portfolio Companies, audited financial statements, and, when available, quality of earnings reports with respect to such Portfolio Companies and the interim financial statement information used in the quality of earnings reports, (b) reports with respect to the timing and general status of sales and refinancings of the Portfolio Companies, and (c) with respect to each Portfolio Company being marketed as part of the Monetization Process: (1) the name of any investment bankers retained by the Portfolio Company, (2) the number of confidential information memoranda distributed, (3) the number of executed nondisclosure agreements, (4) the number of submitted letters of intent, (5) the number of management presentations made, and (6) the number of offers received, in each case excluding the name of any potential or interested buyer or lender, and the amount or term of any bid, offer, or proposal (collectively, "<u>Monetization Process Information</u>").

2. For Produced Material to qualify as Confidential Material hereunder, it must be designated as such by affixing the legend "Confidential" to the document or by including the word "Confidential" in the file name for the electronic file that contains Confidential Material. Any information that is orally communicated shall be designated as Confidential Material by stating that the information is intended to be "Confidential" within the meaning of this Agreement prior to conveying the information. Notwithstanding anything herein to the contrary, the Monetization Process Information shall be treated as Confidential Material regardless of whether it has been designated as such.

3. It is agreed and acknowledged that the CRO under the supervision and direction of the Independent Director may in his discretion provide the Committee and the Receiving Persons such Confidential Material that the CRO/Independent Director believe to be information necessary for the Committee to assess and represent the interests of the Other Stakeholders, other than information whose distribution is reasonably limited at the request of investment bankers or potential buyers, all of which as provided in paragraph 15 of the Settlement Agreement.

4. Inadvertent failure to designate Confidential Material as "Confidential" shall not constitute a waiver of such claim and may be corrected. The Debtors may designate as

"Confidential" any Confidential Material that has already been produced (i) by notifying in writing the Party to whom the production has been made that such documents or information constitutes Confidential Material, or (ii) in a manner consistent with paragraph 2 hereof (a "Supplemental Notice").  Upon receiving such Supplemental Notice, the Parties shall thereafter mark and treat the subject documents or information so designated as Confidential Material, and such Confidential Material shall be fully subject to this Agreement from the date of receipt of such supplemental notice forward.  The party receiving such notice (the "Notice Party") shall make a commercially reasonable effort to ensure that any analyses, memoranda, notes, or other such materials generated based upon such newly designated information are immediately treated as containing Confidential Material. In addition, upon receiving such Supplemental Notice, any Notice Party that disclosed the subject documents or information prior to its designation as "Confidential" shall request the return or destruction of such documents or information if the Confidential Information was disclosed to a non-Receiving Person (as defined below) prior to receipt of a relevant Supplemental Notice and shall exercise a commercially reasonable effort (i) to ensure that any documents or information derived therefrom by a Notice Party are treated as if it had been designated as "Confidential" when originally produced, (ii) to ensure that such documents or information not further disclosed by the Notice Party except in accordance with the terms of this Agreement, and (iii) to ensure that any such documents or information is used by the Notice Party solely for the purposes described herein with respect to Confidential Material.

5. The term Confidential Material does not include information that: (a) was known to a Receiving Person (as defined below) or in its possession prior to its being furnished by the Debtors to that Receiving Person or becomes known to a Receiving Person without violation of its respective obligations hereunder; (b) is or has been communicated to a Receiving Person by a third party that is under no known duty of confidentiality to the Debtors, Patriarch Stakeholders, or the Portfolio Companies; (c) is independently developed by a Receiving Person or its respective advisors without violation of any of their respective obligations hereunder; (d) was or becomes generally available to the public other than as a result of disclosure by a Receiving Person in breach of this Agreement; or (e) information that is not designated as "Confidential" subject otherwise to the terms hereof.

6. Except as specifically provided for in this Agreement, Confidential Material shall not be disclosed, summarized, described, or otherwise communicated or made available in whole or in part by a Receiving Person to any person (the definition of which shall be broadly interpreted to include, without limitation, any company, partnership, limited liability company, trust, other entity, or individual, but shall not include Receiving Persons, as defined below), directly or indirectly, other than to the following ("Receiving Persons"):

   a. Each individual serving as a creditor representative on the Committee (each, a "Creditor Representative") as of the time of or following the disclosure;

   b. (1) To the extent MBIA Insurance Corp. ("MBIA") designates a representative as a Creditor Representative and such Creditor Representative remains on the Committee, up to five individuals who serve as officers, directors or employees of MBIA or MBIA, Inc., and (2) to the extent a Creditor Representative is employed by a Zohar III

    Noteholder (each, a "Designating Noteholder", and together with MBIA to the extent it designates a Creditor Representative, the "Designating Stakeholders") and such Creditor Representative remains on the Committee, up to five individuals who serve as officers, directors or employees of such Designating Noteholder.  The individuals identified in (1) and (2) are hereafter collectively defined as the "Individual Recipients."  For the avoidance of doubt and except as otherwise permitted by this Agreement, the Individual Recipients shall not be permitted to share, disclose, or make available any Confidential Material to any person employed by MBIA or any Zohar III Noteholder unless such person is an Individual Recipient or Creditor Representative;

  c. Outside counsel retained by (1) the Committee or (2) any Creditor Representative (or any such Creditor Representative's designating firm or organization) in connection with the Bankruptcy Cases;

  d. Experts, consultants, accountants or other advisors engaged by (1) the Committee and their respective counsel or (2) any Creditor Representative (or any such Creditor Representative's designating firm or organization) and their respective counsel, in each case in connection with the Bankruptcy Cases; and

  e. Subject to paragraph 10 of this Agreement, to any person to whom disclosure is required by law, regulation, court rule or court order.

Notwithstanding anything herein to the contrary, prior to the receipt of any Confidential Material, each Receiving Person (or a representative of any firm that is a Receiving Person if the Receiving Person is not an individual) identified in paragraphs 6(b) through (d) shall execute a joinder to this Agreement in the form attached hereto as Exhibit A.  The Committee's counsel shall retain in its file an original or copy of each such joinder and shall, within (two) 2 days of receipt, provide a copy of such joinder to Michael Nestor of Young Conaway Stargatt & Taylor, counsel to the Debtors, and to Robert Klyman of Gibson, Dunn & Crutcher LLP, counsel to the Patriarch Stakeholders.

  7. Confidential Material may be disclosed in pleadings filed with the Bankruptcy Court by a Receiving Person consistent with any Bankruptcy Court order governing any Confidential Material, provided that the filing party shall file such information accompanied by a request that the information be filed under seal, which motion to seal shall be filed on no less than five (5) business days' notice.  Nothing in this paragraph shall be construed to require that such motion to seal must be resolved prior to resolution of the underlying matter to which the motion to seal relates.

  8. The Receiving Persons shall keep Confidential Material confidential in accordance with and subject to the terms of this Agreement and will not disclose any of the Confidential Material in any manner whatsoever to any other person not bound hereby except as otherwise permitted by this Agreement, or as otherwise described in paragraph 10 of this Agreement.  Each Creditor Representative, Committee Member, Designating Stakeholder, or

Receiving Person that breaches this Agreement with respect to Confidential Material, including the Monetization Process Information or Patriarch/PC Confidential Material, may be subjected to claims for damages and/or relief available under law and/or equity, and may be subjected to sanction by the Bankruptcy Court; *provided further* that each Designating Stakeholder may be subject to any such claims or relief for the breach of this Agreement by any Creditor Representative it designates or any Individual Recipient that serves as an officer, director or employee of such Designating Stakeholder.

9. The Debtors shall provide a request in writing to the Committee, within three (3) business days of the termination of this Agreement, pursuant to paragraph 18 hereof, to destroy such Confidential Material or return it, and the Committee and any Receiving Person shall be obligated to return or destroy any Confidential Material within thirty days after the Committee's receipt of such written request. The Committee shall notify all Receiving Persons of any such written request. Counsel for the Receiving Persons, as applicable, shall be entitled to retain any court papers, correspondence and attorney work product containing Confidential Material, and such retained copies shall remain subject to the obligations of confidentiality and non-disclosure set forth herein. Notwithstanding the foregoing, each Receiving Person identified in 5(a) through (d), (i) shall be entitled to retain a copy of its work papers, including work papers containing or reflecting Confidential Information, in accordance with its professional standards and subject to the obligations of confidentiality set forth herein; and (ii) will not be obligated to return or destroy Confidential Information that is contained on a computer system backup in accordance with its security and/or disaster recovery procedures provided such Confidential Information remains subject to the obligations of confidentiality and non-disclosure set forth herein. To the extent the Debtors do not provide the written request contemplated in the first sentence of this paragraph, then the Patriarch Stakeholders and/or the Portfolio Companies shall be permitted to make such request solely with respect to any Patriarch/PC Confidential Material, including any Patriarch/PC Confidential Material that is included in any Monetization Process Information, and the Committee and the Receiving Persons shall have the same obligations under this paragraph in response to such request as if the request had been provided by the Debtors.

10. If any Receiving Person is required (by law, regulation, government action or investigation, court order, interrogatory, subpoena, civil investigatory demand or any similar process relating to any legal proceeding, investigation, hearing, or otherwise) to disclose in any manner any Confidential Material or information contained therein, the Receiving Person, to the fullest extent legally permitted to do so, shall provide the Debtors, the Committee and the Patriarch Stakeholders, through their respective counsel (each, as applicable, the "Producing Party") with prompt notice in advance of such disclosure so that such Producing Party may seek, at its own expense, a protective order or other appropriate remedy, in the Bankruptcy Court or other court or related forum with competent jurisdiction, or waive compliance with this Agreement. Any Receiving Person shall cooperate with the Producing Party, at the sole expense of the Producing Party, in efforts in connection therewith. Unless the applicable Producing Party obtains an order directing that the subpoena or other disclosure requirement not be complied with and serves such order upon a Receiving Person identified in paragraphs 6(a) through 6(d) of this Agreement, as applicable, prior to the date on which disclosure is required by law, such Receiving Person shall be permitted to disclose that portion of the Confidential Material that it is advised by legal counsel must be disclosed (provided that notice of the subpoena or other disclosure requirement is provided as required herein and provided that specific notice is

provided regarding what Confidential Material will be disclosed).  For the avoidance of doubt, and notwithstanding anything herein to the contrary, nothing in this paragraph shall be construed to permit disclosure of Confidential Material during the pendency of efforts by the applicable Producing Party to obtain an order directing that a subpoena or other disclosure requirement not be complied with, unless such disclosure is required by law or court order.

11. This Agreement may be modified or waived only by a separate writing executed by the Debtors and any applicable Receiving Persons that expressly so modifies or waives this Agreement, *provided* that any modification or waiver that affects the use or disclosure of Monetization Process Information and Patriarch/PC Confidential Material must also be agreed to in writing by the applicable Portfolio Company or Patriarch Stakeholder.  No failure or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, and no single or partial exercise of any right, power, or privilege hereunder shall preclude any other or further exercise of any right, power, or privilege.

12. Notwithstanding anything in this Agreement to the contrary, in the event that any Party hereto determines that modifications or revisions to this Agreement or to the disclosure of Confidential Material to any additional persons are necessary to protect or preserve their respective interests, nothing in this Agreement shall alter or impair such Party's right or ability to seek permission from the Bankruptcy Court (including by way of telephone conference with the Bankruptcy Court) upon appropriate notice; *provided* that nothing in this Agreement shall waive or impair any Party's rights or defenses with respect to any such requested relief, including but not limited to rights or defenses based on estoppel, reliance, prejudice, or other legal or equitable doctrine or concept.

13. This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and, with the exception of the Settlement Agreement, supersedes all prior agreements, understandings, and negotiations, both written and oral, among the Parties with respect to the subject matter of this Agreement.

14. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Any signature in counterpart provided by facsimile and/or by electronic mail with an Adobe PDF attachment of this Agreement shall be deemed an original signature.  All amendments to, modifications of, and waivers of this Agreement must be in writing and signed by or on behalf of the Parties.

15. Each entity executing this Agreement represents and warrants that the execution and delivery of this Agreement has been duly authorized.

16. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to applicable principles of conflicts of law to the extent that the application of the laws of another jurisdiction would be required thereby.  Subject to paragraph 10, the Parties and any Receiving Person, or other signatory acknowledging and agreeing to this Agreement hereby irrevocably and unconditionally submit to the exclusive jurisdiction of the Bankruptcy Court for, and the Bankruptcy Court shall retain jurisdiction over, any dispute, suit, action, or other proceeding or matter arising out of this Agreement.

17. In the event any provision of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

18. This Agreement and all of the obligations under this Agreement shall terminate upon the termination of the Settlement Agreement; *provided* that no termination of this Agreement shall relieve any party of liability for breach of this Agreement arising prior to termination or otherwise relieve any party of its obligations under paragraph 10 of this Agreement. For the avoidance of doubt, termination of this Agreement does not relieve any party from any obligations under any other confidentiality agreement. Notwithstanding the foregoing, (a) no action arising under or otherwise relating to this Agreement, other than with respect to Monetization Process Information and Patriarch/PC Confidential Material, may be brought after a time period of one (1) year has elapsed following termination of the Agreement, and (b) any restrictions on the use or disclosure of Monetization Process Information shall survive the termination of this Agreement and the Full Payment Date.

19. Each signatory agrees that money damages may not be a sufficient remedy for any breach of this Agreement and that the Debtors, the Patriarch Stakeholders, or the Portfolio Companies, as applicable, may be irreparably harmed in the event of such a breach. Accordingly, in addition to any other remedies to which it may be entitled by law or in equity, each signatory to this Agreement shall have the right to seek specific performance and injunctive or other equitable relief as a remedy for any breach of this Agreement (regardless of whether damages may or may not be readily quantifiable and without posting a bond or other security). Further, the remedies provided for herein are cumulative and not exclusive of any remedies provided by law or in equity.

20. For the avoidance of doubt, each Portfolio Company is a third-party beneficiary to this Agreement solely with respect to the use or distribution of any Patriarch/PC Confidential Material, including any Patriarch/PC Confidential Material that is included in any Monetization Process Information, involving such Portfolio Company, and may enforce the provisions hereof with respect to Patriarch/PC Confidential Material as if they were a party hereto (including without limitation any provisions related to damages and equitable relief).

21. Notwithstanding anything herein to the contrary, in the event of any disputed or contested matter or litigation among the Parties or the Portfolio Companies, nothing in this Agreement shall limit or constitute a waiver of the right of any party, to demand different restrictions on the use of documents or other information produced in connection with such disputed or contested matter or litigation ("Litigation Production Material"), and this Agreement shall not apply to Litigation Production Material absent an express agreement of the Parties hereto.

22. This Agreement and any right to Confidential Material hereunder shall not be assignable by MBIA, the Zohar III Noteholders, the Committee, or any Receiving Person without (i) authorization by the Bankruptcy Court or (ii) written approval by the Debtors, the Patriarch Stakeholders, and the Portfolio Companies, and any assignment purported to be made in violation of this provision shall be void and of no effect.

23. Each signatory to this Agreement, and any other documents executed in connection with this Agreement, whether signed individually or on behalf of any person or entity, warrants and represents that he or she has full authority to so execute this Agreement on behalf of the signatory on whose behalf he or she so signs. Each signatory to this Agreement separately acknowledges and represents that this representation and warranty is an essential and material provision of this Agreement and will survive execution of this Agreement.

24. This Agreement may be executed in multiple counterparts, each of which will be deemed an original Agreement, and all of which will constitute one agreement. Any signature in counterpart provided by facsimile and/or by electronic mail with an Adobe PDF attachment of this Agreement shall be deemed an original signature.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

AGREED AND ACCEPTED:

DEBTORS:

_____
Name: Joseph J. Farnan, Jr.
Title: Director

COMMITTEE MEMBER:

_____
Name:
Title:

COMMITTEE MEMBER:

_____
Name:
Title:

COMMITTEE MEMBER:

_____
Name:
Title:

MBIA INSURANCE CORP.:

_____
Name:
Title:

HALCYON CAPITAL MANAGEMENT LP:

_____
Name:
Title:

Cooöperatieve Rabobank U.A., New York Branch:

_____
Name:
Title:

STS Master Fund, LTD:

_____
Name:
Title:

SBF Opportunities Master Fund, Ltd:

_____
Name:
Title:

Candlewood Structured Credit Harvest Master Fund, LTD:

_____
Name:
Title:

LYNN TILTON, in her personal capacity

———————————————
Name: Lynn Tilton

PATRIARCH STAKEHOLDERS

By:_____
Name: Lynn Tilton

**ACKNOWLEDGED AND AGREED BY:**

PORTFOLIO COMPANIES:

By:_____
Name: Lynn Tilton
Title: Manager/Director/Chief Executive Officer

Additional Signatory Joinder

By the signature indicated below, the undersigned accepts and agrees to be fully and personally bound to the terms and provisions of the Nondisclosure Agreement made as of November ____, 2018 (the "Agreement"), by and among Zohar CDO 2003-1, Limited, Zohar CDO 2003-1, Corp., Zohar II 2005-1, Limited, Zohar II 2005-1, Corp., Zohar III, Limited, and Zohar III, Corp., the Committee, and the Patriarch Stakeholders.

_____

Name

_____

Title

_____

Date