## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10512 (CSS)<br><br>Jointly Administered<br><br>**Ref. Docket No. 356, 382 & 432** |

### FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363 AND 507, AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (III) PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (IV) MODIFYING AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (each a

"Debtor," and collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases")

for entry of a final order (the "Order") under sections 105, 361, 362, 363, and 507 of title 11 of

the United States Code (as amended, the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of

the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), seeking:

> (a)    authorization for the Debtors, pursuant to sections 105, 361, 362, 363, and
> 507 of the Bankruptcy Code, to (i) use Cash Collateral (as defined below);
> and (ii) provide adequate protection and superpriority administrative
> expense claims to U.S. Bank National Association, solely in its capacity as
> Indenture Trustee (the "Indenture Trustee"), on behalf of all Secured

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059) ("Zohar II Corp."), Zohar CDO 2003-1, Corp. (3724) ("Zohar I Corp."), Zohar III, Limited (9261) ("Zohar III"), Zohar II 2005-1, Limited (8297) ("Zohar II"), and Zohar CDO 2003-1, Limited (5119) ("Zohar I" and with Zohar II and Zohar III, collectively, the "Zohar Funds" and each a "Zohar Fund"). The Debtors' address is Zohar III, Corp., 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] Except as otherwise stated herein, all capitalized terms used but not otherwise defined herein or in the exhibits hereto shall have the meanings ascribed to them in the Motion.

01:23940445.2

Parties (as defined under the Indentures), including[3] Secured Parties MBIA Insurance Company ("MBIA") and the Zohar III Secured Noteholders[4] (the "Controlling Secured Parties"[5] and together with the Indenture Trustee and any other holder of a Class A Note or Class B Note, each a "Secured Party," and collectively, the "Secured Parties")[6] under the Transaction Documents as defined in Exhibit 2 hereto. All outstanding debts, liabilities, and obligations of every kind and nature arising under any and all of the Transaction Documents, including, all Class A Notes, Class B Notes, and all Credit Enhancement Liabilities are referred to herein as the "Transaction Obligations";

(b)     to provide adequate protection to the Indenture Trustee on behalf of all Secured Parties pursuant to sections 361 and 363(c) of the Bankruptcy Code, subject to the terms of the applicable Indentures, and in accordance with the terms of this Order;

(c)     authorization to grant adequate protection liens to the Indenture Trustee, on behalf of all Secured Parties, on the proceeds and property recovered in respect of the Debtors' claims and causes of action arising under sections 544, 545, 547, 548, 549, 553, and 550 of the Bankruptcy Code or any other similar state or federal law (collectively, the "Avoidance Actions");

(d)     to modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Order; and

(e)     waiver of any applicable stay with respect to the effectiveness and enforceability of this Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

This Court having entered the Interim Order Authorizing the Debtors' Limited Use of

Cash Collateral [Docket No. 382] (the "First Interim Order") on July 23, 2018 and the *Second*

---

[3] The terms "including" and "includes" as used throughout this Order shall be interpreted as not limiting consistent with their interpretation pursuant to § 102(3) of the Bankruptcy Code.

[4] The term Zohar III Secured Noteholders include, among others, Bardin Hill Investment Partners LP f/k/a Halcyon Capital Management LP, Coöperatieve Rabobank U.A., New York Branch, STS Master Fund, Ltd., SBF Opportunities Master Fund, Ltd., and Medalist Partners, LP f/k/a Candlewood Structured Credit Harvest Master Fund, Ltd.

[5] The term Controlling Secured Parties includes MBIA as a Controlling Party and as Credit Enhancer under the applicable Indentures (as defined herein) or such other Controlling Class or Controlling Party as defined in the applicable Indentures.

[6] The Secured Parties include Patriarch Partners XV, LLC, solely in its capacity as holder of Class A-3 Notes issued by Zohar I, and Octaluna, LLC, Octaluna II, LLC and Octaluna III, LLC, solely in their capacity as holders of Class B Notes (in such capacities, collectively, the "Patriarch Secured Parties").

*Interim Order Authorizing the Debtors' Limited Use of Cash Collateral* [Docket No. 432] (the "Second Interim Order", and together with the First Interim Order, the "Interim Orders") on August 22, 2018 previously authorizing the Debtors' limited use of Cash Collateral in accordance with the Interim Orders; and hearing (the "Hearing") having been held by this Court on December 6, 2018 to consider the relief requested in the Motion on a final basis and entry of this Order; and upon the record made at the Hearing; and this Court having heard and resolved or overruled all objections to the relief requested in the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation and consideration and sufficient cause appearing therefor,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *The Motion.* The Motion is granted as set forth herein. Any objection, reservation of rights, or statements to or otherwise with respect to the Motion with respect to entry of this Order to the extent not withdrawn, waived, or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2. *Jurisdiction.* The Court has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for these Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. *Notice.* Notice of the Motion, the relief requested therein, and the Hearing was served by the Debtors on the parties set forth in the Motion. Under the circumstances, such notice constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c), and (d) and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

4.      *[Reserved.]*

5.      *Release.*

    (a)     *Certain Secured Parties Release.* Each of the Debtors and the Debtors' estates, on the one hand, and the Controlling Secured Parties and the Patriarch Secured Parties, on the other hand, each on its own behalf and on behalf of their respective past, present and future predecessors, successors, heirs, subsidiaries, and assignees, do hereby to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully forever (i) release, remise, relinquish, irrevocably waive, discharge, and acquit each other and each of their respective affiliates, subsidiaries, former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, solely arising out of each Releasee's negotiation of this Order or the entry of this Order; provided, however, that nothing set forth in this paragraph 5(a) is intended to, nor shall it, release any Releasees' obligations under this Order.

    (b)     *Indenture Trustee Release.* The Debtors and their respective estates and the Secured Parties hereby and shall be deemed to release, forever discharge, and acquit the Indenture Trustee and each of its respective affiliates, subsidiaries, former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, solely arising out of the Indenture Trustee's negotiation of this Order or the entry of this Order; provided, however, that nothing set forth in this

paragraph 5(b) is intended to, nor shall it, release any of the Indenture Trustee's obligations under this Order.

6.    *Findings Regarding the Use of Cash Collateral and Prepetition Collateral.*

(a)    Good cause has been shown for the entry of this Order.

(b)    The Debtors have an immediate need to use Cash Collateral, to, among other things, fund the administrative expenses assessed in the Cases and monetize the Prepetition Collateral in accordance with this Order and the Settlement Agreement.

(c)    The terms of the use of the Cash Collateral pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(d)    The terms of the use of the Cash Collateral pursuant to this Order have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the Independent Director, the CRO[7] the Indenture Trustee, the Patriarch Secured Parties, and the Controlling Secured Parties, and, pursuant to Bankruptcy Code sections 105, 361, and 363, the Indenture Trustee, the Patriarch Secured Parties, and the Controlling Secured Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Order, and each is entitled to the protection provided under section 363(m) of the Bankruptcy Code.

(e)    The Debtors have requested entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and (d).

(f)    *Cash Collateral.* For purposes of this Order, the term "Cash Collateral" shall have the meaning ascribed to it in section 363(a) of the Bankruptcy Code and shall include all of the Debtors' cash, cash equivalents, including, all proceeds, products, rents, or profits of the Prepetition Collateral, including proceeds realized from a sale or disposition thereof, or from payment thereon, and the New Zohar Bank Accounts (as defined below) and all cash deposited therein, all of which constitute Cash Collateral of the Indenture Trustee on behalf of the Secured Parties.

(g)    *Indemnity.* The Indenture Trustee, the Patriarch Secured Parties, and the Controlling Secured Parties, and each of their respective advisors, have acted in good faith, and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection

---

[7] CRO is defined as Michael Katzenstein, appointed as the Chief Restructuring Officer pursuant to Order of the Court entered on June 11, 2018 (Docket No. 297) or any successor approved by the Court.

with negotiating, implementing, documenting, or obtaining requisite approvals of the use of Cash Collateral, including in respect of the Debtors' granting of the Adequate Protection Liens, any challenges or objections to the use of Cash Collateral, and this Order. Accordingly, the Indenture Trustee, the Patriarch Secured Parties, and the Controlling Secured Parties, and each of their respective advisors, shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability solely arising from the negotiation of or entry into this Order, except for claims relating to willful misconduct or fraud.

(h)    *No Control.* None of the Indenture Trustee, the Patriarch Secured Parties, or Controlling Secured Parties are control persons and none of the Indenture Trustee and Controlling Secured Parties are insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Order.

7.    *Authorization of Use of Cash Collateral.* The Debtors are hereby authorized to use Cash Collateral during the period from the date of entry of this Order through and including the Termination Date (as defined below) for (i) administrative costs and expenses of the Debtors incurred in the Cases as permitted by the Budget (as defined below) and subject to the terms hereof; (ii) adequate protection payments to the Indenture Trustee, for the benefit of the Secured Parties, as provided herein and consistent with the Priority of Payments in the Indentures, (iii) payments to the Patriarch Secured Parties under paragraph 12(g) hereof, and (iv) facilitating the Monetization Process as set forth in the Settlement Agreement.

8.    *Consent by the Secured Parties.* The Secured Parties consent to the Debtors' use of Cash Collateral, solely in accordance with and subject to the terms and conditions contained in this Order. Notwithstanding any other provision of this Order, but subject to the Carve Out (as defined below), the Debtors' use of Cash Collateral under this Order shall terminate upon the occurrence of the Termination Date (as defined below).

(a)    All use of Cash Collateral by the Debtors shall be pursuant to a rolling 13-week budget (each a "Budget," and each 13-week period, a "Budget Period"), subject to any Permitted Variance (as defined below). The Budget shall set forth the Debtors' (i) anticipated cash receipts, including from payments of interest due under loans owed to Zohar II and Zohar III,

and proceeds from monetization events, (ii) cash disbursements and accruals, including, Professionals' fees and expenses accrued but unpaid during the relevant Budget Period as well as any cash disbursements on account of Professionals' fees and expenses during the Budget Period for both past or current services, and (iii) any other amounts set forth in the Restructuring Reserve Operating Cap (as defined below). The initial Budget is attached to this Order as Exhibit 1 (the "Initial Budget").

(b)     Beginning on or before December 10, 2018 and thereafter by the 10th of every month until the Termination Date, if any, the Professionals (as defined in paragraph 13(a) below) shall provide to the CRO a good faith estimate of their accrued fees through that date and projected fees for the next Budget Period.

(c)     Beginning on or before December 20, 2018 and thereafter by the 20th of every month until the Termination Date, if any (or, with greater frequency should the Debtors choose to do so), the Debtors shall deliver to the Controlling Secured Parties, the Patriarch Secured Parties, the Indenture Trustee, the U.S. Trustee, and each of their counsel and financial advisors, if any, a proposed new 13-week budget (a "Proposed Budget").

(d)     Such Proposed Budget shall become the operative Budget upon filing such Proposed Budget with the Court, except that each of the following shall be subject to the 5-Business Day Notice Period (i) any disbursement line item for the proposed Budget Period that is more than twenty percent (20%) higher in the aggregate than what is set forth for that line item in the Initial Budget for December 2018 to January 2019 or (ii) any line item that was not included in the Initial Budget; provided that, and for the avoidance of doubt, any increase in the Indemnity Reserve or payments to the Independent Director on account of Incentive Fees, as defined in section 4(b) of the Independent Director Service Agreement (see Docket No. 278-1), shall not be subject to the 5-Business Day Notice Period.

(e)     Beginning on November 28, 2018, and every other Thursday thereafter by 5:00 p.m. (prevailing Eastern Time), the Debtors shall deliver to the Controlling Secured Parties, the Indenture Trustee, the Patriarch Secured Parties, and each of their counsel and financial advisors, if any, a variance report (a "Variance Report") setting forth the Debtors' actual cash receipts and accrued expenditures for the preceding two weeks compared to the then existing Budget with narrative explanations of key variances. For purposes of this Order, the Debtors shall ensure that at no time shall there exist an unfavorable variance in the Budget of (i) the greater of (a) 25% or more over any accrued expenditures on an individual line item basis, and (b) $750,000 in the aggregate, or (ii) greater than 25% below the aggregate interest payment receipts for each Zohar Fund from the Group A Portfolio Group Companies based on the amount stated on the applicable interest payment notices issued to the Group A Portfolio Companies, tested every

other week on a cumulative rolling four (4) week basis (except the first Variance Report, which shall be tested on a cumulative basis for the two (2) weeks preceding the delivery of such Variance Report) (a "Non-Permitted Variance" and in contrast to any variance which does not constitute a Non-Permitted Variance, a "Permitted Variance")[8]; provided, however, payments to the Secured Party Professionals (as defined in paragraph 12(c) below), payments to the U.S. Trustee, and payments to the Independent Director on account of Incentive Fees, as defined in section 4(b) of the Independent Director Service Agreement (*see* Docket No. 278-1), shall not be subject to such test and shall not constitute a Non-Permitted Variance or serve as the basis of a Termination Event or Cash Collateral Trigger Event. The Initial Budget is the first Budget for reporting and permitted variance purposes.

9.    *Cash Management/Excess Sweep.*

(a)    *New Zohar Bank Accounts Funding.*  So long as no Termination Date has occurred and is continuing or would result therefrom, and absent further order of the Court, the Debtors shall deposit all funds received, including interest payments received under the loans owed to the Debtors and funds received from the Monetization Process[9] (as defined in the Settlement Agreement) in the New Zohar Bank Accounts.[10]  The New Zohar Bank Accounts, to the extent sufficient cash is available, shall at all times be funded (net of any payments made during the relevant Budget Period) in the aggregate amount that is the sum of (i) the amount of (a) anticipated cash disbursements, and (b) projected Professionals' fees and expenses, each set forth in the Budget for that Budget Period, inclusive of an additional twenty-five percent (25%) variance cushion, (ii) all unpaid amounts set forth in the Budget for prior Budget Periods, subject to adjustment up or down to account for any Permitted Variance, (iii) [reserved], and (iv) the Indemnification Reserve (as defined herein) (the "Restructuring Operating Reserve Cap").  Each New Zohar Bank Account shall be funded in an amount commensurate with each Zohar

---

[8] Non-Permitted Variances with respect to Estate Professionals' fees and expenses shall be measured based on the Estate Professionals' fees and expenses accrued during the relevant testing period compared to the projected Estate Professionals' fees and expenses set forth in the Budget for that period.

[9] Provided, however, as set forth in footnote 1 to the Settlement Agreement, any equity interest owed to MBIA or Zohar I, as applicable, will be escrowed until the expiration of the 15 Month Window; all parties' rights reserved, and, any proceeds from the sale or repayment of Zohar I loans (but not the equity interest) shall be paid directly to MBIA.

[10] The term "New Zohar Bank Accounts" shall have the meaning ascribed to the "Zohar Funds Bank Accounts" as defined in the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 345(b) and Del. Bankr. L.R. 2015-2(b) for an Order (I) Setting the Deadline by Which the Debtors Must Comply with the Requirements of Section 345(b) of the Bankruptcy Code and (II) Authorizing the Debtors to Keep and Maintain Certain Bank Accounts* [Docket No. 31].

Fund's allocable portion of the Restructuring Operating Reserve Cap based on outstanding Paid in Full amount as of the 1st of each Month, (each a "Allocated Restructuring Operating Reserve Cap") provided, however, that (i) ZII Corp. and Zohar II shall be jointly responsible for any obligations by ZI Corp. and Zohar I under this paragraph, (ii) the Allocated Restructuring Operating Reserve Cap for Zohar II shall be increased in an amount equal to the Allocated Restructuring Operating Reserve Cap otherwise attributable to Zohar I and, accordingly, (iii) the New Zohar Bank Account for Zohar I shall not be funded in accordance with this paragraph; provided, further, however, that Zohar II shall retain a claim and the right to seek reimbursement and contribution from Zohar I with respect to the amounts described in the prior proviso (a "Zohar I Reimbursement Claim"). Upon the occurrence of a Termination Date, the New Zohar Bank Accounts shall be funded in accordance with paragraph 13(b) of this Order. For the avoidance of doubt, absent further order of the Court, the Secured Parties shall not be responsible for, and neither the Restructuring Operating Reserve Cap nor the Carve Out shall include, claims (administrative or otherwise) asserted against the Debtors not contemplated by the Budget and Indemnification Reserve. The Controlling Secured Parties, the Patriarch Secured Parties, and the Indenture Trustee will confer in good faith with the CRO on necessary modifications to ensure allocable funding is commensurate with each Zohar Fund's allocable portion of the Restructuring Operating Reserve Cap in accordance with this Order, including the reallocation of any Zohar I Reimbursement Claim. The New Zohar Bank Accounts and all amounts on deposit therein shall constitute Collateral and Cash Collateral securing the Debtors' performance of the Transaction Obligations or as otherwise provided under this Order. For the avoidance of doubt, the Debtors are prohibited from opening any new bank or cash accounts except as expressly permitted by this Order.

(b)    *Excess Cash Sweep/Special Payment Date.* Any date on which the cash balance at any New Zohar Bank Account exceeds its respective Allocated Restructuring Operating Reserve Cap (such excess amount, the "Excess Cash") may be deemed a "Payment Date" under the Indentures (a "Special Payment Date"), and payment of such Excess Cash shall be made and applied in the manner outlined in paragraph 12(b) below, provided, however, that (A) the Debtors shall notify the Controlling Secured Parties, the Patriarch Secured Parties, and the Indenture Trustee of such Excess Cash, (B) a Special Payment Date must be requested and declared by the Controlling Secured Parties upon eight (8) business days' notice in writing to the Debtors and the Indenture Trustee, (C) the Indenture Trustee shall be entitled to be paid an additional fee of $10,000.00 (each such fee, a "Special Payment Date Fee") from such Excess Cash for the Indenture Trustee's services in connection with each such Special Payment Date, and (D) a Special Payment Date shall not occur more frequently than every thirty (30) days unless the Excess Cash exceeds $25 million. The

Debtors shall file a notice with the Bankruptcy Court following the occurrence of a Special Payment Date.

(c)     <u>Indemnification Reserve</u>: Upon entry of the Order, the Debtors shall establish and fund a reserve solely for the benefit of the Independent Director, CRO and the Chief Monetization Officer (the "<u>CMO</u>"), in the amount of $1,500,000 (the "<u>Indemnification Reserve</u>") to provide indemnification and a source for the advancement of expenses (i) for the Independent Director pursuant to the Indemnification Agreement for the Independent Director approved by the Bankruptcy Court pursuant to an Order dated June 26, 2018 [Docket No. 345] (the "<u>Independent Director Indemnification Agreement</u>"), (ii) for the CRO, pursuant to and consistent with paragraph 5 of that certain Order, dated June 11, 2018, Authorizing and Approving, *Nunc Pro Tunc* to May 21, 2018, the Agreement with FTI Consulting, Inc. to Provide (I) Michael Katzenstein as the Debtors' Chief Restructuring Officer, (II) Hourly Temporary Staff, and (III) Services Related Thereto [Docket No. 297] and (iii) for the CMO, pursuant to and consistent with paragraph 6 of that certain Order Amending the Terms of the Retention of Goldin Associates LLC, dated June 11, 2018 [Docket No. 298]. The Indemnification Reserve may be increased in amount (i) upon five (5) business days' notice by the CMO, CRO or Independent Director to the U.S. Trustee, Controlling Secured Parties, the Patriarch Secured Parties, and the Indenture Trustee (with such parties having the right to object to such noticed increase within such five business day period, provided that any hearing on such objection may occur at a later date subject to the Court's availability), which notice shall be submitted only after the threat or assertion of a Claim against any of the CMO, CRO or the Independent Director for an Indemnifiable Event or (ii) as otherwise ordered by the Bankruptcy Court. The Debtors shall file notice with the Bankruptcy Court of any increase in the Indemnification Reserve under clause (i) of the preceding sentence. The CMO, CRO and Independent Director may not draw upon or remove any funds from the Indemnification Reserve except for indemnification obligations owed to the CMO, CRO or Independent Director related to a Claim for an Indemnifiable Event, and only after first seeking coverage from any insurance policy covering such Claim. For the avoidance of doubt, the Debtors shall use good faith and best efforts to obtain directors' and officers' insurance coverage for the Independent Director, CMO and CRO in connection with these cases as promptly as possible. "Claim" and "Indemnifiable Event" for purposes of the Indemnification Reserve shall be defined as set forth in the Independent Director Indemnification Agreement.    Upon the occurrence of a Termination Date, the Indemnification Reserve shall be included in the Carve-Out in accordance with paragraph 13(a). The Debtors, the Controlling Secured Parties, the Patriarch Secured Parties, and the Indenture Trustee acknowledge that when there is a reasonable basis on which to contend that there is no longer any need for the Indemnification Reserve or that a reduction in the

Indemnification Reserve is warranted, any Controlling Secured Party, Patriarch Secured Party, or the Indenture Trustee may seek relief from the Bankruptcy Court for release of any amounts remaining in the Indemnification Reserve. If the Bankruptcy Court issues a final non-appealable order approving the release of such remaining Indemnification Reserve funds, such funds shall be transferred to the Indenture Trustee to be distributed in accordance with the Priority of Payments in the Indentures.

10.    *Entitlement to Adequate Protection.* The Indenture Trustee, for the benefit and security of the Secured Parties, is entitled, pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate post-petition diminution in value of such interests in the Prepetition Collateral, including any such diminution resulting from the sale, lease, or use by the Debtors of the Prepetition Collateral, including the Cash Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (each such diminution in value, a "Diminution in Value").

11.    *Adequate Protection Claims and Liens.*

As adequate protection, the Indenture Trustee on behalf of the Secured Parties, pursuant to and consistent with this Order and consistent with and subject to the terms of the Indentures, is hereby granted the following claims, liens, rights and benefits:

(a)    Section 507(b) Claim. Solely to the extent of any Diminution in Value, administrative expense claims, which shall constitute superpriority claims against the applicable Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "507(b) Claims"), subject and subordinate only to funding and payment of the Carve Out.  The 507(b) Claims shall be allocable on a *pro rata* basis against each Zohar Fund based on its respective Paid in Full amount plus the allowed amounts of any Class A-3

Notes at Zohar I and the allowed amounts of any Class B Notes issued by each Zohar Fund as of the 1st of each Month (to the extent not otherwise allocable to a particular asset or Zohar Fund), provided, however, that ZII Corp. and Zohar II shall be jointly responsible for any obligations by ZI Corp. and Zohar I under this paragraph 11(a), subject to the right of each party named in this proviso to seek reimbursement and contribution. The Controlling Secured Parties, the Patriarch Secured Parties, and Indenture Trustee will confer in good faith with the CRO on necessary modifications to claim allocations to ensure allocations are commensurate with each Zohar Fund's allocable portion of such claims based on outstanding Paid in Full amounts plus the allowed amounts of any Class A-3 Notes at Zohar I and the allowed amounts of any Class B Notes issued by each Zohar Fund.

(b)     Adequate Protection Liens. As security for and solely to the extent of any Diminution in Value, or upon the avoidance or termination of any Prepetition Lien for any reason, effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing by Debtors, the Indenture Trustee, or any Secured Party) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Indenture Trustee or any Secured Party of any Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to the Indenture Trustee on behalf of the Secured Parties (all property identified in clauses (1), (2), (3) and (4) below being collectively referred to as the "Adequate Protection Collateral"), subject and subordinate only to the Carve Out (all such liens and security interests, the "Adequate Protection Liens"):

(1)     First Priority on Unencumbered Property. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable first priority replacement lien on, and security interest in, all of the Debtors' rights in tangible and intangible assets, including all prepetition and post-petition property, assets, and interests of the Debtors' estates of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, and all products and proceeds thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to (x) valid, perfected, non-avoidable, and enforceable liens in existence on or as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, if any (collectively, the "Unencumbered Property"), including accounts receivable, other rights to payment, cash, inventory, instruments, general intangibles, contracts, servicing rights, servicing receivables, agreements transitioning services,

management agreements, securities, chattel paper, owned real estate, real property, leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, commercial tort claims, and claims and causes of action and the proceeds of all of the foregoing; any proceeds or property recovered in respect of any Avoidance Actions, in each case whether arising prepetition or postpetition of any nature whatsoever;

(2)   <u>Liens Junior to Certain Existing Liens</u>. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, all tangible and intangible assets, including all prepetition and post-petition property, assets, and interests of the Debtors' estates of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, and all products and proceeds thereof, whether now existing or hereafter acquired (other than the property described in clause (1) of this paragraph 11), that is subject to (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code;

*(3)   [Reserved].*

(4)   <u>Status of the Adequate Protection Liens</u>. The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, subject to the Carve Out, or (ii) except as otherwise set forth in clauses (1), (2), and (3) of this paragraph 11, subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

12.   *Additional Adequate Protection and Other Payment Provisions.* As adequate protection in addition to the 507(b) Claims and Adequate Protection Liens, the Indenture Trustee, for the benefit and security of the Secured Parties, is entitled, pursuant to sections 361,

363(c)(2) and 363(e) of the Bankruptcy Code, to the following (together with the 507(b) Claims and the Adequate Protection Liens, the "Adequate Protection Obligations")[11]:

(a)    Accrued Interest and Fees: No later than five (5) business days after entry of this Order, the Debtors are authorized to pay (i) to the Indenture Trustee's collection account for the applicable Debtor any Excess Cash, to be paid to holders of Class A Notes (in a deemed Special Payment Date) subject to the Priority of Payments and § 13.1 of the Indentures, all accrued and unpaid interest due and payable under the Indentures as of the date of entry of this Order, and (ii) subject to paragraphs 12(c), 12(g), and 21 below, as applicable, any costs and accrued fees incurred by or owing to the Controlling Secured Parties, the Patriarch Secured Parties, and Indenture Trustee, on behalf of the Secured Parties (each of (i) and (ii), the "Accrued and Owing Interest and Fees"). If Accrued and Owing Interest and Fees are not paid in full, whether due to insufficient Excess Cash to pay such amounts or otherwise, such amounts shall accrue pursuant to the terms of the applicable Indenture and shall be accretive to (i) other than with respect to the Patriarch Secured Parties, the Paid in Full amounts under the Settlement Agreement (as contemplated in the definition of Paid in Full amount in the Settlement Agreement), and (ii) with respect to any Patriarch Secured Parties, their asserted outstanding claim against the applicable Debtor.

(b)    Interest Payments:  The holders of Class A Notes shall be entitled to payment or accrual of current interest on each Payment Date (as that term is defined in the applicable Indenture).  From and after the entry of this Order, on each Payment Date under the applicable Indenture or Special Payment Date under this Order, the Debtors are authorized to pay to the Indenture Trustee's collection account for the applicable Debtor any Excess Cash, to be paid to holders of Class A Notes subject to the Priority of Payments and § 13.1 of the Indentures, as accrued and unpaid post-petition interest due and payable under the Indentures (each a "Current Post-Petition Interest Payment") or the applicable Transaction Documents, with such payments calculated based on the contract rate of interest (as set forth in the applicable Indenture or the other applicable Transaction Documents) (the "Adequate Protection Interest Rate").  If there is insufficient Excess Cash to pay Current Post-Petition Interest Payments in full, such amounts shall accrue and shall be accretive to the Paid in Full amounts under the Settlement Agreement.  The Indenture Trustee is authorized and directed to distribute all payments under this paragraph pursuant to the Priority of Payments (as set forth in the applicable Indentures).

---

[11] The Patriarch Secured Parties' rights are expressly reserved as set forth in Paragraph 12(g) to later assert that payments thereunder are adequate protection

(c)     Fees and Expenses: Subject to paragraphs 12(h) and 21 below, the Debtors are authorized and directed to pay after ten (10) business days (the "Objection Period") of delivery of an invoice (the "Invoiced Fees") to the Debtors, the U.S. Trustee, and the Fee Examiner[12] (the "Fee Review Parties"), describing in customary detail (subject in all respects to applicable privilege or work product doctrines and redacted in the Controlling Secured Party's, Patriarch Secured Parties' and Indenture Trustee's, respective, sole and absolute discretion for privileged, confidential or otherwise sensitive information),[13] the reasonable and documented fees, costs, expenses, and disbursements incurred or accrued by the Controlling Secured Parties, the Patriarch Secured Parties, and the Indenture Trustee arising before or after the Petition Date, subject first to the full funding of the fees and expenses of the Estate Professionals (as defined herein) as set forth in the Budget in accordance with paragraph 9(a), including the reasonable fees and disbursements of their professional advisors (collectively, the "Secured Party Professionals"), in connection with (i) the Cases or any successor case; (ii) the Settlement Agreement; (iii) the Transaction Documents; or (iv) enforcement of any rights or remedies under the Transaction Documents, in each case whether or not the transactions contemplated hereby are fully consummated. The Secured Party Professionals shall not be required to file fee applications. The Fee Review Parties shall have through the Objection Period to object to the reasonableness of any specific portion of the Invoiced Fees. If no such objection is made, the Debtors shall pay the Invoiced Fees within three (3) business days following the expiration of the Objection Period. If any such objection is made and not resolved within ten (10) days after such objection is interposed, a hearing with respect thereto shall be conducted at a regularly-scheduled omnibus hearing in the Cases, provided that the Debtors shall immediately pay any undisputed portion of such fees, costs and expenses following the Objection Period. Upon resolution of any such objection, whether by agreement of the parties or Court order, the Debtors shall pay within five (5) business days any remaining unpaid Invoiced Fees in accordance with such agreement or Court order, as applicable. Fees and expenses (1) of the Indenture Trustee shall be allocable to Zohar II or Zohar III based on their respective Paid in Full amount as of the 1st of each Month (to the extent not otherwise allocable to a particular asset or Zohar Fund) and (2) of the Patriarch Secured Parties shall be allocable to Zohar I, Zohar II, or Zohar III based on the Patriarch Secured Parties' respective asserted outstanding note obligations as of the 1st of each Month. The Controlling Secured Parties,

---

[12] Fee Examiner shall mean Direct Fee Review LLC pursuant to the *Order Appointing Fee Examiner and Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [Docket No. 289].

[13] Nothing set forth in this paragraph 12(c) shall limit the rights of the U.S. Trustee to challenge any asserted privilege or confidentiality with all such rights being expressly preserved.

the Patriarch Secured Parties, and Indenture Trustee will confer in good faith with the CRO on necessary modifications to fee and expense allocations to ensure allocations are commensurate with each Zohar Fund's allocable portion of such fees and expenses based on outstanding Paid in Full amounts. To the extent any fees and expenses of the Secured Party Professionals remain unpaid as of the Termination Date, after full funding of and payment from the Carve Out, such unpaid fees shall be paid from proceeds of Collateral as such proceeds become available. The foregoing sentence shall survive termination of this Order. As used in this paragraph 12(c), the term "customary detail" shall mean that the invoices for such fees and expenses shall at least include a general description of the nature of the matters worked on, a list of the professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed, and, with respect to the invoices of law firms, shall include the year of law school graduation for each attorney; provided however, that the U.S. Trustee reserves the right to seek copies of such invoices containing more detailed time entries (in a format that will not cause the waiver of attorney-client privilege or work product protection). Notwithstanding anything herein to the contrary, the Debtors shall only make aggregate payments on account of Invoiced Fees for each Secured Party Professional up to the amount set forth in the operative Budget and any prior Budgets for that professional (including by using any unused amounts in the Budget for one month to fund any excess fees and expenses incurred in another month, whether prior to or after the month in question), without prejudice to the right to seek payments for amounts in excess of the Budget pursuant to the terms of the Indentures. The payments contemplated under this paragraph 12(c) shall be made either to the applicable Secured Party or directly to such Secured Party's professionals pursuant to written direction provided by the applicable Secured Party Professional. Notwithstanding the foregoing, subject to paragraph 12(h), the amounts identified in the Budget attached hereto as owing to the Secured Party Professionals for the period up to and through November 30, 2018 (collectively, the "Pre-December Fees and Expenses"), shall be paid within three (3) business days after entry of this Order.

(d)     Reporting: The Debtors shall:

    (1)     Subject, where applicable, to entry into, and the terms of conditions of, a non-disclosure agreement, provide to the Controlling Secured Parties and Indenture Trustee (a) (i) on a weekly basis, reports with respect to the progress and status of the Monetization Process, provided that such reports shall be in a form reasonably acceptable to each Controlling Secured Party and consistent with the Debtors' reporting obligations under the Settlement Agreement (in consultation with the Indenture Trustee), (the "Monetization Process Reports"); provided, however, that inclusion of any information in any such Monetization Process

Report shall remain subject to the sole discretion of the CRO, in consultation with the Independent Director, and (ii) on a bi-weekly basis (i.e. twice per month), statement of Debtors' cash balances, cash receipts and cash disbursements, as well as variances of same from the corresponding budgeted amounts (the "Statement of Cash Flow and Cash Balance Reports" and the "Variance Reports", respectively), and (b) such other financial reporting and information requested by the Indenture Trustee as required under and consistent with the requirements contained in the Transaction Documents, including but not limited to the Indentures; and

(2) host weekly conference calls with the Controlling Secured Parties and Indenture Trustee to discuss (a) the Monetization Process, including the Monetization Process Reports and any material developments relating to the collateral being monetized or the Monetization Process, and (b) the Debtors' financial performance, including the Budget, the Statement of Cash Flow and Cash Balance Reports, Cash Flow Variance Reports, and monthly operating reports.

(3) provide to the Patriarch Secured Parties any written materials distributed under this paragraph 12(d) on a substantially contemporaneous basis.

(e)   Transaction Documents: In the event the Debtors seek to terminate, amend, supplement, modify, or replace any of the Transaction Documents, or any contract, agreement, or arrangement, related thereto, such termination, amendment, modification, or replacement shall be subject to and effective only upon the express written consent of the Indenture Trustee and the Secured Parties or an order of this Court. For the avoidance of doubt, nothing in this paragraph 12(e) shall be construed or interpreted as a termination, reduction or waiver of any existing rights of the Indenture Trustee, the Patriarch Secured Parties, or the Controlling Secured Parties under the Transaction Documents with respect to the Debtors' ability or inability to effectuate any termination, amendment, modification, or replacement of the Transaction Documents.

(f)   *Reserved.*

(g)   Payments to Patriarch Secured Parties.  Subject to the terms hereof, including but not limited to paragraphs 12(c), (h) and 21, the Debtors are authorized under sections 363 and 503(b) of the Bankruptcy Code to pay the reasonable fees, costs and expenses of the Patriarch Secured Parties provided however, that the Patriarch Secured Parties' rights to later assert that such payments are adequate protection is expressly reserved.

(h)    <u>General Applicability of Fee Review Procedures</u>.    Notwithstanding anything herein to the contrary, (i) the Secured Parties shall each receive copies of the Invoiced Fees substantially contemporaneously with their delivery to the Fee Review Parties; (ii) no party, including the Fee Review Parties, shall object to any Pre-December Fees and Expenses until the occurrence of a Termination Event; (iii) no Secured Party shall object to any other Secured Party's Invoiced Fees consistent with the Budget until the occurrence of a Termination Event; and (iv) all parties reserve their respective  rights to object to the payment of Invoiced Fees within thirty (30) days after a Termination Event.

13.    *Carve Out.*

(a)    As used in this Order, the "<u>Carve Out</u>" shall include the following: (i) all fees required to be paid to the Clerk of the Court, statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with the statutory rate of interest, and the court-appointed fee examiner; (ii) any amounts payable pursuant to the Independent Director Service Agreement [Docket No. 278-1]) except as set forth in (iv) hereof; (iii) any indemnification obligations owed by the Debtors to the Independent Director, the CRO or the CMO, plus the Indemnification Reserve, (iv) the fees and expenses of the Independent Director's professionals (the "<u>Independent Director Professionals</u>") incurred prior to the Termination Date; (v) subject to this Court's approval (without regard to whether such fees and expenses are approved prior to or following the Termination Date), the unpaid fees and expenses incurred by each person or firm retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>, and together with the Independent Director Professionals, the "<u>Estate Professionals</u>" and collectively with the Secured Party Professionals, the "<u>Professionals</u>") that have accrued before the Termination Date, (vi) subject to paragraphs 12(h) and 21 (without regard to whether such fees and expenses have been objected to without such objection being resolved by an order of this Court), the unpaid fees and expenses incurred by the Secured Party Professionals that have accrued before the Termination Date, and (vii) fees and expenses of Estate Professionals in an aggregate amount not to exceed $2.5 million incurred after the Termination Date, to the extent allowed or otherwise payable at any time, whether by interim order, procedural order, or otherwise.

(b)    <u>Carve Out Reserves</u>. On a Termination Date, the New Zohar Bank Accounts shall be funded in an amount sufficient to fund the Carve Out (the "<u>Post-Termination Funding Requirement</u>").    For the avoidance of doubt, on the Termination Date, the amounts on deposit to fund the Restructuring Operating Reserve Cap shall be used to fund the Carve Out and shall be included in the calculation of the Post-Termination Funding Requirement.  Subject to the Debtors' rights under paragraph 18 hereof,

including, without limitation the right to seek the contested use of Cash Collateral, all amounts in excess of the Post-Termination Funding Requirement on the Termination Date shall then be paid by the Debtors to pay the unpaid fees and expenses of the Secured Party Professionals and Indenture Trustee pursuant to paragraph 12(c), and then to the Indenture Trustee to be distributed in accordance with paragraph 12(b) of this Order. To the extent there are insufficient funds available on the Termination Date to fund the Post-Termination Funding Requirement, the New Zohar Bank Accounts shall continue to be funded with Cash Collateral until the balance of the New Zohar Bank Accounts equals the Post-Termination Funding Requirement. For the avoidance of doubt and notwithstanding anything to the contrary in this Order or in any of the Transaction Documents, (i) at all times, the amounts on deposit in the New Zohar Bank Accounts shall constitute Collateral of the Indenture Trustee on behalf of Secured Parties and (ii) funding and payment of the Post-Termination Funding Requirement shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, and the 507(b) Claim, and any and all other forms of adequate protection, liens, or claims securing the Transaction Obligations and any such lien or priority granted herein.

(c)   <u>No Direct Obligation to Pay Allowed Professional Fees or Claims Against the Estates</u>. Nothing in this Order shall obligate or be deemed to obligate the Secured Parties or Indenture Trustee to be responsible for the payment or reimbursement of any claim asserted against the Debtors' estates, or of any fees or disbursements of any Estate Professional incurred in connection with the Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Order or otherwise shall be construed to obligate the Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Estate Professionals (by direct payment, disgorgement or otherwise) or any other party asserting a claim against the Debtors' estates, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d)   <u>Payment of Carve Out on or After the Termination Declaration Date</u>. Any payment or reimbursement made on or after the occurrence of the Termination Date in respect of any allowed Professional fees or other amount contemplated by the Carve-Out shall permanently reduce the Carve Out on a dollar-for-dollar basis.

14.   *No Compromise of Causes of Action.* No Debtor shall compromise, release, or transfer any cause of action without an order of the Bankruptcy Court.

15.   *Monetization Event.* Upon a monetization event approved in accordance with the procedures set forth in the *Order in Aid of Implementation of the Global Settlement Agreement*

01:23940445.2

-19-

*Approved in these Cases Establishing Certain Procedures for the Independent Director's Approval of Monetization Transactions and Related Relief* [Docket No. 545], including the release of liens on Collateral in accordance therewith, a Special Payment Date shall occur and all proceeds from such monetization event (less an Incentive Fee as defined in section 4(b) of the Independent Director Service Agreement (*see* Docket No. 278-1), as applicable) shall be paid in accordance with paragraphs 9(b) and 12(b) of this Order (except in the case of a monetization event for Zohar I, which shall be paid in accordance with footnote 1 of the Settlement Agreement), provided, however, that to the extent the Restructuring Operating Reserve Cap is underfunded at the time of a monetization event, such Restructuring Operating Reserve Cap underfunding must be fully funded upon the closing of such monetization event prior to the occurrence of any Special Payment Date. For the avoidance of doubt, nothing in this Order shall be construed as providing advance consent or approval from any Secured Party or the Indenture Trustee to any monetization event.

16.    *[Reserved].*

17.    *[Reserved].*

18.    *Termination.*  The Debtors' right to use the Cash Collateral shall be subject to the occurrence of a Termination Event (as defined below) and the following procedures.

(a)    Each of the following constitute a "Termination Event":

(1)    The Court shall have entered an order dismissing any of the Cases (unless such dismissal is the result of the Paid in Full amount having been paid in such Case);

(2)    The Court shall have entered an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code;

(3)    The Court shall have entered an order appointing a chapter 11 trustee or any examiner with enlarged powers relating to the operation of the businesses in the Cases;

(4)   The Independent Director (as defined in the Settlement Agreement) shall have resigned or been removed, and shall have not been replaced pursuant to paragraph 7 of the Settlement Agreement;

(5)   The Court shall have entered a final non-appealable order terminating the Settlement Agreement; or

(6)   Termination of either the 15-Month Window or, if the 15-Month Window is extended, the 18-Month Window, as applicable (pursuant to and as defined in the Settlement Agreement)

(b)   The Debtors shall promptly provide notice to the Controlling Secured Parties, the Patriarch Secured Parties, the U.S. Trustee, the Indenture Trustee and the Collateral Manager of the occurrence of any known Termination Event.

(c)   Upon the occurrence of a Termination Event, the Debtors shall have the right to immediately seek relief from the Court on no less than fourteen (14) days' notice (an "Expedited Request for Relief"). For the avoidance of doubt, the Debtors' rights and obligations under this Order shall continue in full force and effect from the time an Expedited Request for Relief is made until any hearing resulting from an Expedited Request for Relief, including the funding of the Restructuring Operating Reserve Cap and any payments made and to be made on account thereof, including the Carve Out.

(d)   "Termination Date" means the effective date of termination of the use of Cash Collateral under this Order following an Expedited Request for Relief, if any.

19.   *[Reserved]*.

20.   *No Waiver*. Any delay or failure of a Secured Party to exercise rights under any of the Transaction Documents or this Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable Transaction Documents.

21.   *Reservation of Rights.* Nothing contained herein shall prejudice any rights, claims, objections, or remedies of the Debtors or any Secured Party with respect to (i) payment of interest, fees, or expenses as adequate protection pursuant to this Order or the payment of fees,

costs and expenses of the Patriarch Secured Parties pursuant to paragraph 12(g) of this Order, or (ii) the recovery, allocation or surcharge of any fees, expenses or reserves in these Cases, in both cases under the Bankruptcy Code, contract, agreement, or any other applicable law, and to the extent consistent with the Settlement Agreement.

22.     *[Reserved].*

23.     *[Reserved].*

24.     *Reservation of Rights of the Secured Parties.* Notwithstanding any other provision hereof, the grant of adequate protection to the Secured Parties pursuant hereto is without prejudice to the right of any Secured Party to seek modification of the grant of adequate protection provided hereunder so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of any Secured Party under the Transaction Documents, the Settlement Agreement, or under equity or law, and the Secured Parties hereby reserve all of their respective rights and remedies whether now existing or hereafter arising under the Transaction Documents, the Settlement Agreement, and/or equity or law in connection with, among other things, all Events of Default (as defined in the respective Indenture), and whether arising prior to or after the Petition Date.

25.     *Perfection of Adequate Protection Liens.*

(a)     The Indenture Trustee, for the benefit and security of the Secured Parties, is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments (each, a "Filing") in any jurisdiction in order to validate and perfect the liens and security interests granted to it hereunder. Whether or not the Indenture Trustee shall choose or otherwise be directed (in accordance with the applicable Indenture) to file such Filings, such liens and security interests shall be deemed valid, perfected, allowed,

enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order. If the Indenture Trustee determines or is otherwise directed (in accordance with the applicable Indenture) to file Filings, the Debtors will cooperate and assist in any such filings as reasonably requested by the Indenture Trustee, and the automatic stay shall be modified to allow such Filings.

(b)     A certified copy of this Order may, in the discretion of the Indenture Trustee (subject to direction consistent with the applicable Indenture), be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording; _provided_ that the Debtors shall reimburse the Indenture Trustee, or its respective designees for the payment of any stamp, intangibles, recording or similar tax.

26.     *Preservation of Rights Granted Under this Order.*

(a)     Except as expressly provided in this Order and subject to the funding and payment of the Carve Out, no claim or lien having a priority senior to, or *pari passu* with the Adequate Protection Liens shall be granted or allowed, and the Adequate Protection Liens shall not be subject to or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Notwithstanding any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time, (i) any 507(b) Claims, the other administrative claims granted pursuant to paragraph 11 of this Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and any 507(b) Claims, the other administrative claims granted pursuant to paragraph 11 of this Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (i) above.

(c)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the applicable Secured Party, of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens. Notwithstanding any such reversal, stay,

modification or vacatur, any use of the Prepetition Collateral or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the applicable Secured Party, of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code with respect to all uses of the Prepetition Collateral and all Adequate Protection Obligations.

(d)     Except as expressly provided in this Order, the Adequate Protection Obligations, any 507(b) Claims and the Adequate Protection Liens and all other rights and remedies of the Secured Parties granted by the provisions of this Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this Order shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the 507(b) Claims, the other administrative claims granted pursuant to this Order, and all other rights and remedies of the Secured Parties granted by the provisions of this Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

27.     *[Reserved]*.

28.     *Limitation on Use of Collateral.* The Debtors shall use Cash Collateral solely as provided in this Order. Upon entry of this Order,

(a)     the Indenture Trustee shall be authorized to release and use the Indenture Trustee's portion of those holdback funds arising from the Zohar I foreclosure auction and currently in the possession of the Indenture Trustee to satisfy outstanding invoices owed to the Indenture Trustee, its counsel, and any related expenses

(b)     the Indenture Trustee shall be authorized to conduct a Special Payment Date for each of Zohar II and Zohar III for the purposes of releasing monies currently held in the Payment Account (as such term is defined in the applicable Indentures) for distribution to noteholders pursuant to the applicable Priority of Payments (as defined in the applicable Indentures).

29.     *Binding Effect; Successors and Assigns.* The provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Cases and the Debtors and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Controlling Secured Parties, the Patriarch Secured Parties,  the Indenture Trustee, for the benefit and security of all Secured Parties, and the Debtors and their respective successors and assigns, provided, that, except to the extent expressly set forth in this Order, the Secured Parties shall have no obligation to permit the use of the Prepetition Collateral or extend any financing to any trustee or similar responsible person appointed for the estate of any Debtor. For all adequate protection and stay relief purposes throughout the Cases, the Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date. For the avoidance of doubt, such requests will survive termination of this Order.

30.     *[Reserved].*

31.     *[Reserved].*

32.     *Effectiveness.* This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Order. To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

33.     *[Reserved].*

34.     *[Reserved].*

35.    *Survival of Certain Provisions.* In the event of entry of any order converting any of these Cases into a successor case, the Adequate Protection Liens, the 507(b) Claims and the Carve-Out shall continue in these proceedings and in any successor case, and such Adequate Protection Liens, the 507(b) Claims and the Carve-Out shall maintain their respective priorities as provided by this Order.

36.    *Amendment.* Except as otherwise provided herein, no waiver, modification or amendment of any of the provisions hereof shall be effective unless approved by the Court after notice to parties in interest.

37.    *Indenture Trustee's Reliance on this Order.*    Upon entry of this Order, the Indenture Trustee shall be permitted to take any action in furtherance of this Order, including the distribution of Excess Cash in accordance with paragraph 9(b) hereof, and the Indenture Trustee shall have no liability for acting in reliance with the terms of this Order.  For the avoidance of doubt, the foregoing shall survive termination of this Order.

38.    *No Modification of Indentures.*  For the avoidance of doubt, nothing in this Order shall be deemed to alter or modify the Indentures.

39.    *Jurisdiction.* This Court shall retain jurisdiction to enforce the terms of this Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Order.

40.    *The 5-Business Day Notice Period.*  If any Budget item is subject to the "5-Business Day Notice Period" under this Order, such Budget item shall be authorized and shall be deemed effective to the extent no objection is made as set forth in this paragraph.  The Debtors shall file with the Court a Budget including any Budget item that is subject to the 5-Business Day Period (a "Budget Notice"), and the U.S. Trustee, the Secured Parties, and other parties in

interest shall have five (5) business days from the filing of such Budget Notice (the "5-Business Day Notice Period") to file a written objection with respect to such Budget Notice. If any party timely objects to a Budget Notice, (i) amendment or modification to the Budget item requested shall only be permitted pursuant to an order of this Court, and (ii) the Budget then in effect pursuant to this Order shall remain binding, and the last month of the Budget Period for such Budget shall apply to each subsequent month until the Court enters an order resolving the objection.

41.   *Credits Toward Paid in Full Amounts*. Solely for purposes of calculating whether the 15 Month Window[14] shall be extended to the 18 Month Extended Window (and for no other purpose), all cash held pursuant to the Indemnification Reserve and the Restructuring Operating Reserve Cap under this Order by any Zohar Fund other than cash held on account of the fees, costs and expenses of the Patriarch Secured Parties, on the date that would trigger the 18 Month Extended Window shall be counted toward the calculation of the respective Paid in Full amount for that Zohar Fund; provided that the foregoing fees, costs and expenses of the Patriarch Secured Parties that are excluded from the calculation referenced herein shall not (i) include any Pre-December Fees and Expenses, which shall be paid promptly as provided in Paragraph 12(c) or (ii) otherwise modify the Patriarch Secured Parties' rights under this Order.

42.   *Controlling Effect of Order*. To the extent any provision of this Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Order shall control to the extent of such conflict.

---

[14] Capitalized terms used in this paragraph but not otherwise defined in this Order shall have the meanings ascribed to them in the Settlement Agreement.

01:23940445.2

43.    *Controlling Effect of Settlement Agreement.*  Notwithstanding anything herein to the contrary, in the event of any inconsistency between the Settlement Agreement and this Order, the Settlement Agreement shall control.

Dated: December ⎽⎽10⎽⎽, 2018

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
CHIEF UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

Initial Budget

**Zohar III, Corp., *et al***
**Cash Collateral Budget**

Budget to be filed with Cash Collateral Order
DRAFT - Material Subject to Change

| ($ in 000s) | Est. Case to Date - Sep 30, 2018[1] | Estimated Oct 2018 | Nov 2018 | Dec 2018 | Jan 2019 | Feb 2019 | Nov - Feb 2019 Total |
|---|---|---|---|---|---|---|---|
| **RECEIPTS - Cash Basis[2][3]** | | | | | | | |
| Zohar II | $ 18,844 | $ 6,819 | $ 830 | $ 519 | $ 6,202 | $ 546 | $ 8,097 |
| Zohar III | 14,564 | 3,660 | 605 | 5,477 | 811 | 481 | 7,375 |
| | | | | | | | |
| **OPERATING EXPENSES - Accrual Basis** | | | | | | | |
| **Professional Fees:** | | | | | | | |
| **Debtor** | | | | | | | |
| Joe Farnan Jr. (Independent Director)[4] | (129) | (25) | (26) | (28) | (28) | (28) | (110) |
| Young, Conaway, Stargatt & Taylor (Counsel)[5] | (4,544) | (635) | (775) | (850) | (850) | (850) | (3,325) |
| FTI Consulting, Inc. (CRO) | (3,388) | (800) | (750) | (750) | (750) | (750) | (3,000) |
| Goldin Associates, LLC (Transition Period)[6] | (355) | - | - | - | - | - | - |
| Goldin Associates, LLC (CMO)[6] | (384) | (80) | (100) | (110) | (130) | (130) | (470) |
| **Collateral Manager** | | | | | | | |
| AMZM (Transition Period)[7] | - | - | - | - | - | - | - |
| New Collateral Manager (TBD)[8] | - | - | - | - | - | - | - |
| | | | | | | | |
| **Creditors / Interested Parties** | | | | | | | |
| **MBIA** | | | | | | | |
| Cadwalader, Wickersham & Taft | (5,604) | (595) | (580) | (580) | (580) | (580) | (2,320) |
| Pachulski Stang Ziehl & Jones | (448) | (20) | (30) | (30) | (20) | (20) | (100) |
| **US Bank** | | | | | | | |
| US Bank (Indenture Trustee)[9] | (525) | (155) | - | (105) | (105) | - | (210) |
| Alston & Bird (Counsel) | (1,290) | (154) | (150) | (125) | (125) | (125) | (525) |
| **Z3 Noteholders** | | | | | | | |
| Arnold & Porter Kaye Scholer (Sidley Austin) | (2,852) | (135) | (275) | (225) | (200) | (250) | (950) |
| Womble Bond Dickinson | (186) | (6) | (19) | (15) | (15) | (15) | (64) |
| **Creditors' Committee** | | | | | | | |
| Committee Professional(s) | - | - | - | - | - | - | - |
| ***Lynn Tilton/Patriarch*** | | | | | | | |
| Gibson, Dunn & Crutcher | - | (6,461) | (550) | (550) | (550) | (550) | (2,200) |
| Cole Schotz P.C. | - | (254) | (30) | (30) | (30) | (30) | (120) |
| **Total Professional Fees** | **(19,704)** | **(9,320)** | **(3,285)** | **(3,398)** | **(3,383)** | **(3,328)** | **(13,394)** |
| **Other Operating Expenses:** | | | | | | | |
| US Trustee[10] | (69) | - | - | (250) | - | - | (250) |
| Direct Fee Review LLC (Fee Examiner) | (20) | (4) | (4) | (4) | (4) | (4) | (14) |
| Insurance[11] | - | (1,260) | - | - | - | - | - |
| Other | (859) | (377) | (365) | (365) | (365) | (365) | (1,460) |
| **Total Operating Expenses[12]** | **$ (20,652)** | **$ (10,960)** | **$ (3,653)** | **$ (4,017)** | **$ (3,752)** | **$ (3,697)** | **$ (15,118)** |

**Zohar III, Corp., et al**
**Cash Collateral Budget**

**Footnotes:**

(1) Includes estimated gross professional fees and other case expenses accrued through September 30, 2018. Based on (i) input and discussions with individual professionals and (ii) estimated fees in the event projected fees were not provided. Pursuant to the Interim Order Authorizing the Debtors' Limited Use of Cash Collateral (Docket #382), the Second Interim Order Authorizing the Debtors' Limited Use of Cash Collateral (Docket #432), and the Third Interim Order Authorizing the Debtors' Limited Use of Cash Collateral (Docket #516), filed on 7/23/18, 8/22/18, and 11/1/2018, respectively, estate professionals' fee payments have been made in accordance with these orders.

(2) Case to date receipts represent cash collections from Portfolio Companies for Zohar II and Zohar III since the March 11, 2018 Petition Date. Other than certain Portfolio Company proceeds received in October 2018, receipts do not reflect Portfolio Company monetizations during the current Cash Collateral Budget period.

(3) Portfolio Company interest receipts for October 2018 - February 2019 were developed based on: (i) for October and November 2018, actual cash receipts and (ii) for December 2018 through February 2019, the understanding of historical interest and payment timing (based on the review of interest invoices/notices provided by PPAS). Current forward LIBOR curves were applied as deemed appropriate to illustrate possible future interest receipts. Projected future LIBOR rates are per Bloomberg as of September 2018.

(4) The Independent Director's incentive fees were not projected in the current Cash Collateral Budget.

(5) Young, Conaway, Stargatt & Taylor's post-petition fees through September 30, 2018 were approximately $5.0M. After the application of the $434K pre-petition retainer, the net amount reflected through September 30, 2018 is approximately $4.5M.

(6) Goldin Associates' post-petition fees through September 30, 2018 were approximately $1.2M. After the application of the $484K pre-petition retainer, the net amount reflected through September 30, 2018 is approximately $738K.

(7) AMZM is in the process of being replaced as the Collateral Manager pursuant to the Settlement Agreement. We contemplate that a transition period would exist whereby go-forward AMZM fees are [TBD].

(8) New Collateral Manager fees [TBD] following agreement on go-forward duties and retention of new firm.

(9) US Bank has historically charged approximately $105K per quarter for "Trustee and Collateral Administrator Expense & Indemnities," for Zohar II and Zohar III entities. Fees paid on behalf of the Zohar I account have not been included. Budget does not include any fees charged by US Bank for monetized assets or other charges.

(10) Estimated US Trustee fees are calculated at the lesser of (i) $250,000 per Debtor and (ii) 1% of cash expenditures for (a) estate professional fees paid in July, August and September 2018 for fees due in September 2018 and (b) all remaining accrued and unpaid case professional fees incurred to date and estate professional fees incurred in October, November and December for fees due in December 2018.

(11) D&O insurance cost represents a one-time payment of

(12) The Operating Expenses reflected herein represent the total projected estate expenses for the Zohar III, Corp., et al Bankruptcy cases, which have been consolidated for procedural purposes only. Allocation of case Operating Expenses on an individual entity basis will be done pursuant to the cash collateral order and will be subject to ongoing reconciliation and reallocation based on facts and circumstances including ongoing changes to the Paid in Full amounts and other potential factors and variables.

**Note:** Operating Expenses in the accompanying Cash Collateral Budget are intended to provide an illustrative view of the potential estate costs of the cases, incurred (i) through September 30, 2018 and (ii) projected during the subsequent projection period. Actual expenses could deviate materially based on the level of disputes going forward or due to other unforecasted circumstances.

## Exhibit 2

### Transaction Documents

(A)  the Indenture among Zohar CDO 2003-1 Limited ("Zohar I"), Zohar CDO 2003-1 Corp. ("ZI Corp."), Zohar CDO 2003-1, LLC, and MBIA Insurance Corporation ("MBIA"), CDC Financial Products, Inc., and the Indenture Trustee, dated November 13, 2003 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Zohar I Indenture");

(B) the Indenture among Zohar II 2005-1, Limited ("Zohar II"), Zohar II 2005-1, Corp. ("ZII Corp."), Zohar II 2005-1, LLC, MBIA, IXIS Financial Products Inc., and the Indenture Trustee, as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Zohar II Indenture");

(C) the Indenture among Zohar III, Limited (Zohar III" and with Zohar I and Zohar II, each, a "Zohar Fund" and together, the "Zohar Funds"), Zohar III, Corp., Zohar III, LLC, Natixis Financial Products Inc., and the Indenture Trustee, as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association, dated April 6, 2007 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Zohar III Indenture" and together with the Zohar I Indenture and Zohar II Indenture, the "Indentures"); and

(D) (i) each Collateral Management Agreement dated March 3, 2016 (each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "CMAs") entered into between certain of the Debtors and Alvarez & Marsal Zohar Management, LLC ("AMZM"), as Collateral Manager (including any successors thereto, the "Collateral Manager"), (ii) the Insurance Agreement and Policy Issued by MBIA (with respect to Zohar I and Zohar II), (iii) the Insurance and Indemnity Agreements by and among MBIA and Zohar I (and the Co-Issuers (as defined therein)) and Zohar II (and the Co-Issuers (as defined therein)), respectively (the "Insurance and Indemnity Agreements"), and (iv) all other agreements or other documentation executed by any Debtor in connection with or related to any of the foregoing, including, the Transaction Documents (as defined in the Indentures) (each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, collectively with the Indentures, CMAs, and Insurance and Indemnity Agreements, the "Transaction Documents").