# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*,[1]<br><br>　　　　　　　　　Debtors. | ) Chapter 11<br>)<br>) Case No. 18-10512 (CSS)<br>)<br>) Jointly Administered<br>)<br>) **Hearing Date: January 14, 2019 at 1:00 p.m. (ET)**<br>) **Obj. Deadline: January 4, 2019 at 4:00 p.m. (ET)** |

## DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE, EXTENDING THE EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND SOLICITATION OF ACCEPTANCES THEREOF

Zohar III, Corp. and its affiliated debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code") and in accordance with the terms of the *Settlement Agreement By and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class* [Docket No. 266, Ex. A] (the "Settlement Agreement"),[2] extending the Exclusive Filing Period and Exclusive Solicitation Period (each as defined below) by roughly seven and one-half months, through and including August 21, 2019, and October 21, 2019, respectively. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

01:23965678.3

## PRELIMINARY STATEMENT[3]

1. As discussed more fully below, since the filing of the First Extension Motion, the Debtors, in cooperation with their stakeholders, have achieved significant progress in their on-going efforts to maximize the value of their assets through the Monetization Process, and to otherwise move these Chapter 11 cases forward in accordance with the Settlement Agreement. Nonetheless, despite these significant efforts and accomplishments, much work remains to be done.

2. A further extension of the Exclusive Periods is both fundamentally consistent with the Settlement Agreement, and necessary and appropriate to ensure that the Debtors and their stakeholders can continue to work productively towards achieving its purpose. Thus, for the reasons set forth more fully herein, the requested extension is in the best interest of the Debtors, their estates and creditors and should be granted.[4]

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the

---

[3] Capitalized terms used in this Preliminary Statement shall have the meanings given to such terms below.

[4] The Debtors submit that the tolling provisions of the Settlement Agreement and a separate tolling agreement by and among the parties to the Settlement Agreement, dated September 7, 2018, prevent the Exclusive Periods from expiring. Nonetheless, the Debtors seek the relief requested herein out of an abundance of caution and for completeness of the record.

parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory bases for the relief requested herein are section 1121(d) of the Bankruptcy Code, Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9006-2. The relief sought herein is also in accordance with the terms of the Settlement Agreement by and between the Debtors and their major stakeholders, as discussed more fully herein.

## BACKGROUND

### A. General Background

6. On March 11, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors have continued in possession of their properties and the operation of their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. General information about the Debtors and the events leading up to the Petition Date can be found in the *Declaration of Marc S. Kirschner in Support of Chapter 11 Petitions* [Docket No. 6] and the *Declaration of Lynn Tilton in Support of Chapter 11 Petitions* [Docket No. 5], each filed on March 12, 2018.

### B. The Litigated Contested Matters

8. Shortly after the commencement of these cases, various parties-in-interest, including the Debtors, MBIA, the Zohar III Controlling Class and the Patriarch Stakeholders, engaged in litigation, including a contested collateral management agreement rejection motion, motion for relief from the automatic stay, and two motions to dismiss these cases or appoint a Chapter 11 trustee (the "Litigated Contested Matters").

01:23965678.3

3

9.      A two-day trial to adjudicate the Litigated Contested Matters was set for April 17–18, 2018 (the "Trial").  *See* Docket Nos. 108, 110 & 138.  On April 5, 2018, the Court appointed Judge Kevin Gross to mediate the Parties' various disputes on April 16, 2018, the day before the Trial was scheduled to begin [Docket No. 143].  The Parties thereafter engaged in expedited discovery, including extensive document production and four separate day-long depositions, and devoted significant effort towards preparing for the Trial, while simultaneously preparing for the mediation.

C.     **The Mediation and Settlement**

10.     Following four full-day mediation sessions and weeks of additional negotiations, on April 30, 2018, the Debtors filed a settlement motion seeking approval of a comprehensive resolution of the numerous Litigated Contested Matters between and among the parties to the Settlement Agreement.  *See* Docket No. 222.  The Settlement Agreement created a platform where years of hotly contested litigation are put to the side and a monetization process (the "Monetization Process") is being implemented with the aim of maximizing the value of the Debtors' assets for the benefit of all stakeholders.

11.     On May 21, 2018, the Court entered an order (the "Settlement Order") approving the Settlement Agreement.

12.     Among other things, the Settlement Agreement provides an initial period of 15 months to monetize the Debtors' assets (the "15-Month Window"), which is automatically extended for an additional three months (the "18-Month Window"), if each of MBIA and the Zohar III Claims receive 50% of the Paid in Full amount within the 15-Month Window.  *See* Settlement Agreement ¶ 29.  The Settlement Agreement provides that all litigation, motions, and contested matters between the parties to the Settlement Agreement are stayed and tolled

during the 15-Month or 18-Month Window, as applicable, with all parties' rights reserved.

*See* Settlement Agreement ¶¶ 14, 15, 19. Specifically, the Settlement Agreement states in part:

> All other litigation, motions and contested matters between any of the parties other than the 225 Action as discussed above, shall be stayed, with appropriate protections so there is no prejudice to any parties. Except as specifically set forth herein, no other litigation, motions, and/or contested matters may be re-initiated or brought (directly or indirectly) by (a) any Other Stakeholders, (b) the Debtors, (c) the New Agent, (d) the Group A Portfolio Companies, (e) the Group B Portfolio Companies, and (f) any Collateral Manager, seeking any relief against the Patriarch Stakeholders (and their respective officers, directors, employees, affiliates and agents), or any of the Group A or Group B Portfolio Companies.

Settlement Agreement, ¶15. The Settlement Agreement further elaborates:

> All causes of action among the Debtors, Other Stakeholders and Patriarch Stakeholders (including any of their affiliates or agents) with respect to the Debtors, the Group A Portfolio Companies and the Group B Portfolio Companies shall be tolled during the 15 Month Window or, if qualified, for the 18 Month Extended Window, and all parties' respective rights shall be reserved with respect thereto, including with respect to venue and jurisdiction.

Settlement Agreement, ¶19.

**D.    The Appointment of the Independent Director, Chief Restructuring Officer and Chief Monetization Officer**

13.    On May 21, 2018, the Court entered an order, consistent with the Settlement Order, appointing Joseph J. Farnan, Jr. as the Debtors' Independent Director and granting certain related relief on an interim basis pending Court consideration and approval of the Independent Director's service agreement (the "<u>Service Agreement</u>") and indemnification agreement (the "<u>Indemnification Agreement</u>"). *See* Docket Nos. 266 & 267. On June 26, 2018, the Court entered an order approving the Service Agreement and Indemnification Agreement on a final basis. *See* Docket No. 345. Pursuant to the Settlement Agreement, Mr. Farnan is "fully charged with the governance of the Zohar Funds under applicable Cayman or Delaware law." Settlement Agreement, at ¶ 7.

14. In accordance with the Settlement Agreement, on May 25, 2018, the Debtors filed a motion to retain Mr. Michael Katzenstein as the Debtors' newly appointed chief restructuring officer (the "CRO") and to retain certain professionals from FTI Consulting Inc. to assist him in carrying out his duties as the CRO. *See* Docket No. 279. On June 11, 2018, the Court entered an order approving the retention of Mr. Katzenstein as the Debtors' CRO. *See* Docket No. 297. Further, in accordance with the Settlement Agreement, on May 25, 2018, the Debtors filed a motion to retain Mr. Robert S. Kost as the Debtors' Chief Monetization Officer (the "CMO") and to otherwise amend the Debtors' prior retention of Goldin Associates, LLC. *See* Docket No. 280. On May 29, 2018, the Court entered an order approving the retention of Mr. Kost as the Debtors' CMO. *See* Docket No. 283.

**E.     The Prior Exclusivity Extension**

15. Section 1121(b) of the Bankruptcy Code provides for an initial period of one hundred twenty (120) days after the commencement of a Chapter 11 case during which the debtor has the exclusive right to file a Chapter 11 plan (the "Exclusive Filing Period"). Furthermore, section 1121(c)(3) of the Bankruptcy Code provides that if the debtor files a plan within the Exclusive Filing Period, the debtor has an exclusive period of one hundred eighty (180) days from the commencement of the Chapter 11 case to solicit acceptances of and confirm such a plan (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods"). The initial Exclusive Filing Period in these Chapter 11 cases extended through and including July 9, 2018, while the initial Exclusive Solicitation Period extended through and including September 7, 2018.

16. On August 15, 2018, the Court entered an order extending the Exclusive Filing Period through and including January 9, 2019 and the Exclusive Solicitation Period

through and including March 7, 2019, without prejudice to the rights of the Debtors and their estates to seek further extensions of the Exclusive Periods.  *See* Docket No. 410.[5]

17. Given the litigation stay, no prejudice, tolling and preservation of rights provisions of the Settlement Agreement, and the significant progress that has been made to-date in these Chapter 11 cases, the Debtors submit that a further extension of the Exclusive Periods is not only warranted on the merits, but necessary to the continued implementation of the Settlement Agreement.

## RELIEF REQUESTED

18. By this Motion, the Debtors request entry of the Proposed Order, pursuant to section 1121(d)(1) of the Bankruptcy Code, further extending the Exclusive Filing Period and Exclusive Solicitation Period by roughly seven and one-half months, through and including August 21, 2019, and October 21, 2019, respectively, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.  The requested extensions are intended to tie the expiration of the Exclusive Periods to the 15-Month Window.

## BASIS FOR RELIEF

**A.    Section 1121(d) of the Bankruptcy Code Permits the Court to Extend the Exclusive Periods "For Cause"**

19. Section 1121(d) of the Bankruptcy Code allows the Court to extend the Exclusive Periods for "cause."  11 U.S.C. § 1121(d).  Although the Bankruptcy Code does not define "cause" for purposes of an extension request under section 1121(d), courts have looked to the legislative history of section 1121(d) for guidance.  *See In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989); *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr.

---

[5] In addition to the automatic tolling of the Exclusive Periods noted in footnote 4, above, pursuant to Local Rule 9006-2, the filing of this Motion prior to the expiration of the current Exclusive Periods shall automatically extend the Exclusive Periods until the Court acts on the Motion without the necessity for entry of a bridge order.

01:23965678.3

S.D. Ohio 1996). Such legislative history indicates that Congress did not intend that the 120- and 180-day exclusive periods be a hard and fast limit. *See Amko Plastics, Inc.*, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity*); Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of [section 1121(d)] is flexibility."). The decision to extend the Exclusive Periods is left to the sound discretion of the Court and should be based upon the facts and circumstances of a particular case.[6] *See First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). In making the determination to affirm or deny a request to extend the Exclusive Periods for "cause," courts have considered a variety of factors, including the following:

(a) The size and complexity of the debtor's case;

(b) The necessity of sufficient time to negotiate and prepare adequate information;

(c) The existence of good-faith progress towards reorganization;

(d) Whether the debtor is paying its debts as they become due;

(e) Whether the debtor has made progress negotiating with creditors;

(f) The length of time a case has been pending;

(g) Whether the debtor is seeking an extension to pressure creditors; and

(h) Whether or not unresolved contingencies exist.

*In re Cent. Jersey Airport Servs., LLC*, 228 B.R. 176, 184 (Bankr. D.N.J. 2002) (citations omitted); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (citing to most of the factors listed above in determining whether to extend the exclusive periods); *In re*

---

[6] Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("<u>BAPCPA</u>") amended section 1121(d) by prohibiting extensions of the Exclusive Periods beyond 18 and 20 months, respectively, of the date of the order for relief, there was no revision to the standards for obtaining interim extensions. Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of the instant cases.

01:23965678.3

*United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed "cause" to extend its exclusive period based upon certain of above-quoted factors).

**B.    Cause Exists for a Further Extension of the Exclusive Periods**

20.    The requested extension of the Exclusive Periods is fully consistent with the terms of the Settlement Agreement and is reasonable given the current posture of these Chapter 11 cases. Pursuant to the Settlement Agreement, all litigation, motions, and contested matters—including proposals for competing plans of reorganization—are stayed during the 15-Month Window (or 18-Month Window, if applicable). These windows of time are designed, under the Settlement Agreement, to permit the Debtors, in cooperation with other stakeholders, the ability to focus the majority of their efforts on the Monetization Process in an effort to maximize the value of the Debtors' estates for the benefit of all stakeholders. Competing proposed plans of reorganization would distract the Debtors and their stakeholders from advancing the Monetization Process, the primary task at hand, and would violate the various provisions of the Settlement Agreement highlighted herein. The relief sought herein is simply a request to maintain the status quo during, at least, the balance of the 15-Month Window, as was contemplated by the Settlement Agreement. Additionally, the relief sought herein will not prejudice any party, as the parties' rights remain subject to appropriate protections and free from prejudice, as required by the Settlement Agreement. *See* Settlement Agreement ¶15.

21.    In the time since the filing of the Debtors' first extension request, the Debtors' representatives and professionals, in consultation and cooperation with the Debtors' significant stakeholders, have spent substantial amounts of time and effort completing various critical tasks under the Settlement Agreement, including: (i) advancing the Monetization Process and conducting related diligence of, among other things, the Group A Portfolio Companies'

corporate and capital structures; (ii) interviewing several candidates for the position of New Agent under the Settlement Agreement and, ultimately, selecting and seeking approval of Ankura's retention in such role; (iii) conducting ongoing negotiations regarding the appointment of a replacement collateral manager; (iv) obtaining entry of a heavily-negotiated final Court order approving their the use of Cash Collateral; (v) developing and obtaining Court approval of procedures and guidelines to govern the Monetization Process; (vi) working with the stakeholders on the matters attendant to the formation of the creditor committee contemplated under the Settlement Agreement, including negotiating and obtaining court-approval for the non-disclosure agreement that governs the provision of information to the such committee; and (vii) providing regular updates to their various stakeholders concerning the Monetization Process and other relevant matters. In addition, the Debtors have continued to handle the various other tasks related to the administration of the Debtors' bankruptcy estates and the Chapter 11 cases, including filing their schedules of assets and liabilities and statements of financial affairs and complying with their periodic reporting requirements under the Bankruptcy Code and Bankruptcy Rules.

22.    Given the array of crucial tasks completed by, and still required of, the Debtors' representatives and professionals, the Debtors have not had sufficient time or capacity to formulate, much less propose and solicit, a plan of reorganization. Accordingly, the Debtors believe that, on that basis alone, the requested extension of the Exclusive Periods is warranted.

23.    Other factors that support the relief requested herein include the following:

(a)    The tremendous progress that has been made since entry of the First Extension Order in implementing the Settlement Agreement, including a number of mediation sessions amongst a variety of stakeholders in an effort to resolve myriad critical issues.

 (b) The size and complexity of these Chapter 11 cases, which currently involve the monetization of dozens of Portfolio Companies involved in numerous different businesses and industries across the country.

 (c) The Debtors are not seeking an extension of the Exclusive Periods to pressure creditors; rather, the Debtors are seeking the relief requested herein to allow the Monetization Process to run its course and for the Debtors to administer the cases in a manner consistent with the Settlement Agreement. Indeed, as discussed above, the Debtors' creditors and other major stakeholders specifically agreed to the implementation of the 15-Month Window (and, under certain conditions, the 18-Month Window) as a timeframe within which the status quo would remain intact as the Debtors and certain stakeholders work to complete the Monetization Process; the extensions sought herein are, thus, consistent with these terms.

 (d) Termination of the Debtors' Exclusive Periods would adversely impact these Chapter 11 cases, as proposals of competing plans would significantly distract the Debtors and other stakeholders from the critical task at hand—monetizing the Debtors' assets to provide the greatest value possible.

 (e) Finally, the extension of the Exclusive Periods will not prejudice any parties because such extension is without prejudice to any party's rights to seek to terminate the Exclusive Periods if such relief is warranted and is not in conflict with the prevailing terms of the Settlement Agreement.

24. Based upon the foregoing, the Debtors respectfully submit that cause exists to extend the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code. Specifically, the Debtors request that the Exclusive Filing Period and the Exclusive Solicitation Period be extended through and including August 21, 2019, and October 21, 2019, respectively, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods in the future.

## **NOTICE**

25. Notice of this Motion has been or will be provided to: (i) the U.S. Trustee; (ii) counsel to the Patriarch Entities; (iii) counsel to U.S. Bank, as indenture trustee; (iv) counsel to MBIA; (v) counsel to the Zohar III Controlling Class; and (vi) all parties that have filed a

01:23965678.3

notice of appearance in these Chapter 11 cases pursuant to Fed. R. Bankr. P. 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order, further extending the Exclusive Periods through and including August 21, 2019, and October 21, 2019, respectively, without prejudice to the Debtors' right to seek further extensions in the future, and grant such other and further relief as the Court may deem just and proper.

Dated: December 21, 2018  
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Shane M. Reil*  
James L. Patton, Jr. (No. 2202)  
Robert S. Brady (No. 2847)  
Michael R. Nestor (No. 3526)  
Joseph M. Barry (No. 4221)  
Ryan M. Bartley (No. 4985)  
Shane M. Reil (No. 6195)  
Rodney Square  
1000 North King Street  
Wilmington, Delaware 19801  
Telephone: (302) 571-6600  
Facsimile: (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*