# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*[1]<br><br>                             Debtors | Chapter 11<br><br>Case No. 18-10512 (CSS)<br><br>(Jointly Administered)<br><br>Ref. Docket Nos. 490, 491, 520, 623 |

### MBIA INSURANCE CORPORATION'S STATEMENT IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE APPOINTMENT OF ANKURA TRUST COMPANY, LLC AS NEW AGENT UNDER THE COURT-APPROVED SETTLEMENT AGREEMENT

MBIA Insurance Corporation ("MBIA") submits this statement in support of the *Debtors' Motion, Pursuant to Sections 105(a), 363 and 503(b) of the Bankruptcy Code, for Entry of an Order (I) Authorizing the Appointment of Ankura Trust Company, LLC as New Agent Under the Court-Approved Settlement Agreement By and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class and (II) Granting Related Relief* (the "Motion") [Docket No. 490], and in reply to the *[Sealed] Patriarch's Objection to Debtors' Motion, Pursuant to Sections 105(a), 363 and 503(b) of the Bankruptcy Code, for Entry of an Order (I) Authorizing the Appointment of Ankura Trust Company, LLC as New Agent Under the Court-Approved Settlement Agreement By and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class and (II) Granting Related Relief)* (the "Patriarch Objection") [Docket No. 623].

---

[1] The Debtors in these chapter 11 cases include Zohar III Corp., Zohar II 2005-1 Corp., Zohar CDO 2003-1 Corp., Zohar III, Limited, Zohar II 2005-1, Limited, and Zohar CDO 2003-1, Limited. "D.I." numbers referred to herein are references to Case No. 18-10512, unless otherwise indicated.

-2-

1.  Approval of the Debtors' Motion is necessary to uphold the Settlement Agreement.[2]

2.  Under the explicit terms of Settlement Agreement, the Zohar Funds' creditors expressly bargained for an independent agent under the loan agreements because, contrary to the Patriarch Objection, there were significant conflicts of interest inherent in Patriarch Partners Agency Services, LLC ("PPAS")—a Tilton-controlled entity—continuing to serve in that capacity. Indeed, prior to the chapter 11 cases, PPAS's position as agent had given rise to such significant concerns that the Debtors removed PPAS as Administrative Agent effective June 17, 2016, and replaced PPAS with AMZAS, an affiliate of the collateral manager, AMZM (who also replaced a Patriarch affiliate serving as the former collateral manager). The Debtors and PPAS were in the midst of litigation[3] regarding PPAS's capacity as agent, when these bankruptcy cases were commenced and the litigation was, accordingly, stayed.

3.  Accordingly, it was expressly negotiated that Paragraph 6 of the Settlement Agreement set forth in no uncertain terms that the "Independent Director/CRO shall appoint a new independent administrative agent under the Zohar credit agreements . . . .". This language served as a cornerstone of the Settlement Agreement and the fundamental agreement reflected therein that independent management and fiduciaries, as well as an independent agent, would be put in place because of Ms. Tilton's conflicted positions. And yet, we are eight months into the 15-Month

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement by and between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class approved by the Bankruptcy Court on May 21, 2018 [Docket No. 266] (the "Settlement Agreement").

[3] *See Patriarch Partners Agency Servs., LLC v. Zohar CDO 2003-1, Ltd., et al.*, Case No. 16-cv-04488-VM-KHP (S.D.N.Y.) (Marrero, J.).

Window of the monetization process, and a new and independent agent is not yet in place because of Ms. Tilton's meritless objections—that are inconsistent with the Settlement Agreement—all in order to try prevent PPAS from being officially replaced.  Further, the New Agent Agreement is the product of extensive and good faith negotiations by the independent fiduciaries of the Debtors with Ankura as a means to effectuate the agreed to terms of the Settlement Agreement and provide the Debtors with the new agent protections bargained-for thereunder.  The New Agent Agreement accomplishes the agreements in the Settlement Agreement while maintaining all parties' respective rights and obligations without modifying the credit agreements in any way.

4. In short, Patriarch's Objection creates roadblocks and red herrings by raising new issues, such as the costs associated with the new agent, that were never agreed in the Settlement Agreement.  Taking a "second bite at the apple" by trying to put new stakes in the ground surrounding a non-controversial and non-ambiguous term in the Settlement Agreement, eight months after the Settlement Agreement was approved, should be seen for what it is.  Ms. Tilton should not be permitted to cause further delay to implementation of the Settlement Agreement and the new agent term as agreed thereunder.

5. By way of example of Patriarch's attempts to impose new terms to the Settlement Agreement through the Ankura retention, Patriarch's Objection improperly attempts to invoke loan agreement modifications with regard to agency fees through the Ankura Engagement Letter.  Specifically, the existing loan agreements between the Zohar Funds and the borrower Portfolio Companies provide that the Portfolio Company borrowers are responsible for the payment of the agent's fees.  Now, however, Patriarch is improperly attempting to shift the obligation to pay the agent's fees to the Debtors (and, thus, to the lenders under the loan agreements including potentially by way of reducing Paid in Full).  This is not only inconsistent with the

underlying loan agreements, but also not provided for under the Settlement Agreement.  Further, it is a far cry from how commercial lending works generally whereby agency fees and costs are the responsibility of the underlying borrowers.  Again, Paragraph 6 of the Settlement Agreement regarding the appointment of a substitute agent does not speak in any regard to any changes to the existing credit agreements or any additional costs being shifted to and borne by the Zohar Funds instead of the borrower Portfolio Companies.  As such, there is no basis for any deviation from the loan agreements and Patriarch has offered no compelling arguments in this regard.

6. MBIA's "Paid in Full" amounts were agreed in the Settlement Agreement and were the *sine qua non* to MBIA under the Settlement Agreement.  Any proposed shifting of Ankura agency costs first to the Debtors and, further, to potentially reduce the expressly defined Paid in Full amounts due to the secured creditors represents a thinly disguised attempt to redefine, and reduce, the fundamental agreed-upon concepts under the Settlement Agreement.  Patriarch's proposed language directly contravenes the Settlement Agreement and the entire premise of how creditors were to get paid thereunder.  Patriarch's latest tactic is simply an attempt to shift costs first from the Tilton-controlled Portfolio Company borrowers onto the Debtors, and thereafter to the creditors funding these chapter 11 cases, which was not bargained for in the Settlement Agreement and should be rejected.  Simply stated, this as an attempt to retrade concessions and obligations undertaken by Patriarch under the Settlement Agreement.[4]

---

[4] As a further example at Patriarch taking a second bite at the apple in the context of Ankura notwithstanding the clear language of the Settlement Agreement, Patriarch also now is attempting to include a provision that provides for the automatic reinstatement of PPAS as agent in place of Ankura in the event that the Full Payment Date under the Settlement Agreement is achieved.  The Settlement Agreement does not contain any language that provides PPAS the automatic right to spring back as agent.  Rather, paragraph 6 of the Settlement Agreement provides that the New Agent shall be hired by the Independent Director and CRO. The Settlement Agreement is silent as to when and how the New Agent is terminated; such matters should be resolved if and when the Full Payment Date is reached.

## **CONCLUSION**

For the reasons set forth herein, as well as reasons articulated by the other parties supporting the Motion and additional reasons that may be raised at the hearing, MBIA respectfully requests that the relief requested in the Debtors' Motion be entered, and that Patriarch's objections thereto be overruled. MBIA expressly reserves the right to supplement, modify and amend this statement, and to raise additional objections or responses in writing or orally at the hearing.

Wilmington, Delaware
February 1, 2019

                                        PACHULSKI STANG ZIEHL & JONES LLP

                                        */s/ Laura Davis Jones*
                                        Laura Davis Jones (Bar No. 2436)
                                        Timothy P. Cairns (Bar No. 4228)
                                        919 N. Market Street, 17th Floor
                                        P.O. Box 8705
                                        Wilmington, DE  19899-8705 (Courier 19801)
                                        Telephone:  (302) 652-4100
                                        Facsimile:  (302) 652-4400
                                        Email:       ljones@pszjlaw.com
                                                                 tcairns@pszjlaw.com
                                        and

                                        CADWALADER, WICKERSHAM & TAFT LLP
                                        Gregory Petrick
                                        Jonathan M. Hoff
                                        Ingrid Bagby
                                        Michele Maman
                                        200 Liberty Street
                                        New York, NY 10281
                                        Telephone:  (212) 504-6000
                                        Facsimile:  (212) 504-6666
                                        Email: gregory.petrick@cwt.com
                                                       jonathan.hoff@cwt.com
                                                       ingrid.bagby@cwt.com
                                                       michele.maman@cwt.com

                                        Counsel to MBIA Insurance Corporation