**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Zohar III, Corp., *et al.*,[1] | ) | Case No. 18-10512 (KBO) |
| Debtors. | ) | Jointly Administered |
| | ) | **Hearing Date: September 24, 2019 at 10:00 a.m. (ET)** **Response Deadline: September 17, 2019 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR AN ORDER DETERMINING DISPUTE BETWEEN THE DEBTORS AND PATRIARCH PARTNERS MANAGEMENT SERVICES, LLC RELATED TO PENDING OASIS TRANSACTION**

Zohar III, Corp. and its affiliated debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "Debtors") hereby submit this motion (the "Motion"), pursuant to (i) section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), (ii) this Court's *Order Approving and Authorizing the Settlement Agreement By and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class* (the "Settlement Order") [Docket No. 266], and (iii) the Settlement Agreement[2] (as defined in the Settlement Order) [Docket No. 266, Exh. 1],[3] for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), determining that no "Transaction Fee" is owed to Patriarch Partners Management Group, LLC ("PPMG") pursuant to

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261) ("Zohar III"), Zohar II 2005-1, Limited (8297) ("Zohar II"), and Zohar CDO 2003-1, Limited (5119) ("Zohar III"). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement or the *Debtors' Motion, Pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, for an Order Approving and Authorizing the Settlement Agreement* [Docket No. 222], as applicable.

[3] A copy of the Settlement Order and Settlement Agreement is annexed hereto as Exhibit B.

the applicable Management Services Agreement between PPMG and LVD Acquisition, LLC's ("LVD"). In support of the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT[4]

1. [redacted]. The Zohar Funds are the only secured debt holders of LVD and are receiving several million dollars less than the fixed and liquidated obligations owed to them under the express terms of LVD's credit agreement (i.e., indebtedness of LVD). Accordingly, no transaction fee is due to PPMG under the PPMG MSA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The predicates for the relief sought herein are section 105(a) of the Bankruptcy Code, the Settlement Order, and, among others, paragraph 18 of the Settlement Agreement.

[4] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to them below.

## BACKGROUND

### A. General Background

4. On March 11, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

5. Shortly after the commencement of these cases, various parties-in-interest, including the Debtors, MBIA, U.S. Bank, the U.S. Trustee, the Zohar III Controlling Class, and the Patriarch Stakeholders, engaged in litigation including a contested collateral management agreement rejection motion, a motion for relief from the automatic stay, and two (2) motions to dismiss the cases or appoint a chapter 11 trustee (the "Litigated Contested Matters").

6. On April 5, 2018, the Court appointed Judge Kevin Gross to mediate the parties' various disputes on April 16, 2018, the day before the trial on the Litigated Contested Matters was scheduled to begin [Docket No. 143]. As the result of the arduous good-faith, in-person mediation efforts overseen and facilitated by the Mediator, the parties agreed to a comprehensive resolution of the Litigated Contested Matters, the terms of which are embodied in the Settlement Agreement.

7. On May 21, 2018, the Court entered the Settlement Order approving the Settlement Agreement.

8. Also on May 21, 2018, the Court entered an order, consistent with the Settlement Order, appointing Joseph J. Farnan, Jr. as the Debtors' Independent Director. *See* Docket Nos. 266 & 267. Pursuant to the Settlement Agreement, Mr. Farnan is "fully charged with the governance of the Zohar Funds under applicable Cayman or Delaware law." Settlement Agreement, at ¶ 7. Also in accordance with the Settlement Agreement, Mr. Michael Katzenstein was appointed as the Debtors' Chief Restructuring Officer (the "CRO") and Mr. Robert S. Kost was appointed as the Debtors' Chief Monetization Officer (the "CMO"). *See* Docket Nos. 297 & 283.

9. On November 9, 2018 date the Court entered the *Order in Aid of Implementation of the Global Settlement Agreement Approved in These Cases Establishing Certain Procedures for the Independent Director's Approval of Monetization Transactions and Related Relief* [Docket No. 545] (the "Monetization Procedures Order") establishing a joint process through which the Debtors and Ms. Tilton would monetize the various portfolio companies in which the Debtors hold interests.

**B.   LVD**

10. Zohar I, Zohar II and Zohar III (collectively, the "Zohar Funds") are, collectively, the sole members of LVD, holding 18.9%, 58.3%, and 22.8% of its membership interests, respectively. The Zohar Funds are also secured lenders to LVD pursuant to that certain Credit Agreement among LVD and its subsidiary, as borrowers, and the Zohar Funds, as lenders, dated June 1, 2009 (the "Credit Agreement").[5] Schedule 2.1 to the Credit Agreement lists the various loan commitments thereunder, which initially consisted of (a) a $2 million revolving credit commitment from Zohar III, and (b) Term A Loans from Zohar I, Zohar II, and Zohar III of approximately $9.3 million, $30 million, and $11.6 million, respectively. Further, Section 2.8 of the Credit Agreement initially provides that interest on unpaid principal would accrue at a per annum rate of LIBOR plus the "Applicable Margin," which was initially set at 8.0% for all Revolving Credit Loans, Term A Loans, and Term B Loans (each as defined in the Credit Agreement). As of the date hereof, it is undisputed that approximately $59,957,540 plus interest is currently owed by LVD to the Zohar Funds under the Credit Agreement.[6]

---

[5] A copy of the relevant portions of the Credit Agreement is attached hereto as Exhibit C.

[6] In connection with the LVD Transaction (as defined below), the Debtors, Oasis, Patriarch Partners Agency Services, LLC and Ankura Trust Company, LLC agreed to the form of a payoff letter, a copy of which was filed on September 6, 2019 [Docket No. 909] and is attached hereto as Exhibit D (the "Payoff Letter"). By the Payoff Letter, LVD and the Debtors agree that $59,957,540.49 plus accrued interest is due under the Credit Agreement (other than under Amendment 8 (as defined below)).

11. In November of 2015, LVD and the Zohar Funds entered into Amendment Number 8 to the Credit Agreement ("Amendment 8").[7] Amendment 8 provides that:

> The contents and columns set forth on Schedule A hereto are hereby inserted at the end of Schedule 2.1 to the Credit Agreement to reflect a restructuring of $20,291,872.92 of unpaid interest and commitment fees into Tranches TLD, TLE and TLF. In addition, Administrative Agent hereby waives its ability to call an Event of Default for the past failure to pay such unpaid interest.

Amendment 8, at § 1(a)(i).[8] On its face, the effect of Amendment 8 was to convert accrued and unpaid interest and fee obligations (i.e., indebtedness) into new Term Loans under the Credit Agreement (i.e., indebtedness), following the TLA, TLB, TLC, *et cetera* naming convention used for all of the term loan indebtedness owed under the Credit Agreement (collectively, the "Amendment 8 Tranches"). It is undisputed that the aggregate amount of the Amendment 8 Tranches is not less than $20,291,872.91.[9]

12. Taking into account the drawn amounts under the two revolving commitments, and the outstanding term loans under the Credit Agreement, LVD has outstanding indebtedness to the Zohar Funds under the Credit Agreement of not less than $80,249,412 in principal amount, plus accrued and unpaid interest.

## C. The PPMG MSA

13. On September 30, 2010, LVD entered into to a Management Services Agreement (the "PPMG MSA") with PPMG – an entity owned and controlled by Ms. Tilton – pursuant to

[7] A copy of Amendment 8 is attached hereto as Exhibit E. Between execution of the Credit Agreement and entry into Amendment 8, LVD, the Zohar Funds, and the administrative agent under the Credit Agreement entered into a series of amendments that served to (i) add $2 million in revolving loan commitments extended by Zohar II, (ii) create a Term C Loan funded by Zohar III in the amount of $1.5 million, and (iii) create a delated draw Term D Loan, with commitments extended by Zohar II in the amount of $1.0 million.

[8] Amendment 8 further provides that, as it relates to Tranches TLD, TLE, and TLF the "Applicable Margin" is 0%. Thus, pursuant to Section 2.8 of the Credit Agreement, interest on the Amendment 8 Tranches accrues at the LIBOR rate.

[9] By the Payoff Letter, in connection with Amendment 8, LVD and the Debtors likewise agree that an additional "not less than $20,291,872.91" is due to the Debtors under the Credit Agreement. Payoff Letter, at Para 2(a).

which PPMG purports to provide LVD with certain management and consulting services.[10]

D. **The LVD Transaction**

14. LVD commenced its monetization process in or about June of 2018. On or about April 18, 2019, LVD entered into a letter of intent with a prospective buyer (the "Buyer") to

[10] A copy of the PPMG MSA is attached hereto as Exhibit F.

[11]

[12]

acquire all of the limited liability membership interests in LVD. Following extensive due diligence and negotiations, on August 23, 2019, the Zohar Funds, LVD, and the Buyer executed an Equity Purchase Agreement (the "EPA")[13] pursuant to which the Buyer will acquire 100% of the Zohar Funds' equity interests in LVD (the "LVD Transaction").

15. Under the EPA, proceeds of the LVD Transaction will be applied first to fund certain escrows and indemnification funds, second to "Seller Transaction Expenses," which would include the Transaction Fee, if payable, and only then to "Indebtedness," including LVD's obligations to the Zohar Funds, which, it is not disputed, will not be paid in full in connection with the LVD Transaction. The EPA – as approved and signed by Ms. Tilton – defines "Indebtedness" as including:

> Credit Agreement, dated as of June 1, 2009, by and among the Company, B2 Acquisition, Inc., the domestic subsidiaries of the borrowers from time to time guarantors thereunder, the lenders party thereto and Patriarch Partners Agency Services, LLC ("PPAS"), as amended by Amendment No. 1, dated as of April 12, 2010, Amendment No. 2, dated as of November 29, 2010, Amendment No. 3, dated as of June 2, 2011, Commitment Settlement Amendment, dated as of June 6, 2012, Amendment No. 4, dated as of September 22, 2013, Amendment No. 5, dated as of March 14, 2015, Amendment No. 6, dated as of September 1, 2015, Amendment No. 7, November 12, 2015, ***Amendment No. 8, dated as of November 25, 2015***, and Amendment No. 9, dated as of November 19, 2015 (collectively and with other related loan documents, the "Zohar Credit Agreement").

EPA Disclosure Schedules, Schedule 2.02(c)(iii) (emphasis added).[14] Further, Schedule 4.05(a) of the Disclosure Schedules to the EPA – LVD's 2017 and 2018 consolidated financial statements – lists [REDACTED], which would be inclusive of indebtedness under the Amendment 8 Tranches. The financial statements, referencing the Amendment 8 Tranches further provide, in relevant part, that: "[REDACTED]

[13] A copy of the EPA was submitted for *in camera* review in connection with the Transaction Notice (as defined below).

[14] Relevant portions of the EPA Disclosure Schedules are attached hereto as Exhibit G.

[REDACTED]." EPA, Disclosure Schedules, Schedule 4.05, p. 15.

16. On August 26, 2019, the Debtors filed the *Notice of Binding Portfolio Company Transaction Pursuant to Portfolio Company Transaction Procedures* [Docket No. 868] (the "Transaction Notice") in accordance with the Monetization Procedures Order. The hearing to consider the Transaction Notice is currently scheduled for September 11, 2019. Assuming the Court approves the transaction contemplated therein (the "LVD Transaction"), the closing date shall be the date that is two business days following the date upon which all conditions set forth in Article II of the EPA have been satisfied or waived; *provided, however*, that the Buyer shall not be required to close prior to October 7, 2019.

17. The parties do not dispute that the LVD Transaction will result in the Zohar Funds receiving substantially less than the $80.2 million due to them under their credit facility to LVD (with or without payment of the Transaction Fee).[15]

## E. The Transaction Fee Dispute

18. Early in the negotiations of the EPA, Ms. Tilton made clear her view that PPMG would be owed a Transaction Fee in connection with the LVD Transaction despite the fact that the LVD Transaction would not result in full payment of LVD's existing debt obligations to the Zohar Funds. The Zohar Funds likewise made clear their position that the Transaction Fee was not triggered or payable under the PPMG MSA, the Settlement Agreement, or otherwise because the

[15] Specifically, as set forth in the *Declaration of Robert S. Kost in Support of Order Authorizing the Oasis Transaction*, which is attached to the Transaction Notice as Exhibit A, the Zohar Funds expect to receive between $63 and $73 million upon the closing of the LVD Sale, or approximately ***$6 to $16 million less*** than what is owed to them.

debt obligations to the Zohar Funds would not be paid in full in connection with the LVD Transaction.[16]

19. In accordance with paragraph 11 of the Settlement Agreement, the parties participated in an in-person mediation session on July 31, 2019 with Judge Gross, but no resolution of this issue was reached.

20. The Debtors and the Patriarch Stakeholders agreed to a schedule for the Court to adjudicate the disputed Transaction Fee. So as not to delay the execution of the EPA and closing of the LVD Transaction, the Debtors also agreed that, in the event the Court has not ruled on the matter prior to the closing of the LVD Transaction, the disputed Transaction Fee shall be paid to PPMG; *provided, however*, that such payment shall be expressly subject to any remedy that the Court may direct in the event that the Court determines such payment was improper, including claw-back.[17]

**RELIEF REQUESTED**

21. By this Motion, the Debtors seek entry of an order, pursuant to section 105(a) of the Bankruptcy Code, the Settlement Order, and, among others, paragraph 18 of the Settlement Agreement, determining that no Transaction Fee is payable to PPMG in connection with the LVD Transaction.

[16] PPMG will likely attempt to argue that the Transaction Fee must be paid pursuant to paragraph 18 of the Settlement Agreement, which provides: "Any (A) claim asserted by the Patriarch Stakeholders ***that is supported by written documentation*** showing the claim...***represents a fee*** or other claim arising from a deferral of payment or any management and/or administrative fee ***owed to a Patriarch Stakeholder***...shall be deemed due and payable through the closing of any monetization event...." Settlement Agreement, ¶ 18 (emphasis added). There is no written documentation showing that the Transaction Fee is, in fact, owed to a Patriarch Stakeholder. To the contrary, as set forth herein, the only written documentation – the PPMG MSA – plainly shows that the Transaction Fee ***is not owed*** under the circumstances. Simply put, the condition precedent to the Transaction Fee being paid was not met so nothing is "due" nor "payable."

[17] In connection therewith, the parties have agreed to simultaneous initial filings on September 6, 2019 and simultaneous responding papers on September 17, 2019.

**BASIS FOR RELIEF REQUESTED**

22. Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code," and that "[n]o provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules....". 11 U.S.C. § 105(a). Further, bankruptcy courts retain "jurisdiction to interpret and enforce settlements and the accompanying orders approving settlements." *See In re Baseline Sports, Inc.*, 393 B.R. 105, 118–19 (Bankr. E.D. Va. 2008); *accord In re Lazy Days' RV Center, Inc.*, 724 F.3d 418, 423 (3d Cir. 2013); *In re Patriot Coal Corp.*, 539 B.R. 812, 818–19 (Bankr. E.D. Mo. 2015). Although "there are some significant limits to a bankruptcy court's ability to use section 105(a) of the Code . . . [it] plainly may be used 'to enforce and implement' earlier orders." *In re River Ctr. Holdings, LLC*, 394 B.R. 704, 711 (Bankr. S.D.N.Y. 2008); *See Also In re Ames Dep't Stores, Inc.*, 317 B.R. 260, 273–74 (Bankr. S.D.N.Y. 2004).

23. For the reasons set forth herein, the Debtors request that the Court enter the Proposed Order in furtherance of the Settlement Agreement and the Monetization Process, determining that the Transaction Fee is not payable in connection with the LVD Transaction.

**A. The Transaction Fee is not Payable Under the Plain Terms of the PPMG MSA**

24. As set forth above [REDACTED], no Transaction Fee is owed or payable to PPMG.

25. That is clearly the case here. As Ms. Tilton concedes in the EPA itself (see paragraph 15, *supra*), the liabilities under the Credit Agreement – including Amendment 8 – constitute "Indebtedness" of LVD. In order to trigger the Transaction Fee, all "outstanding debt"

must be paid. It cannot be disputed that the entirety of the amount owed by LVD to the Zohar Funds (not less than $80.2 million) will not be fully repaid in connection with the LVD Transaction.

26. Accordingly, the Debtors respectfully submit that the PPMG MSA speaks for itself and the facts clearly dictate denial of the PPMG Fee in connection with the LVD Transaction.

**B. Tilton's Treatment [redacted] in Connection With the LVD Transaction is Further Proof That no Transaction Fee is Owed**

27. Additional context for the Debtors' position can found in connection with [redacted]

18 [redacted]

[redacted]

**C. Tilton's Own Flow of Funds Model in Connection With a Prior Potential Portfolio Company Transaction is Still Further Proof That no Transaction Fee is Owed**

28. In addition, in the context of a potential monetization process for a different Portfolio Company, Ms. Tilton previously conceded that under the PPMG MSAs, no transaction fee can be payable to PPMG unless and until the relevant transaction clears the respective Portfolio Company's debt.[19] [redacted]

[redacted].

30. For these reasons, the Debtors respectfully request that the Court enter the Proposed Order finding that no Transaction Fee is owed to PPMG in connection with the LVD Transaction.

---

19 [redacted]

**NOTICE**

31. The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) counsel to the Patriarch Stakeholders; (iii) counsel to U.S. Bank, as indenture trustee; (iv) counsel to MBIA; (v) counsel to the Zohar III Controlling Class; and (vi) all parties that, as of the filing of this Motion, have requested notice in these Chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: September 6, 2019
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Joseph M. Barry*

James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4221)
Ryan M. Bartley (No. 4985)
Shane M. Reil (No. 6195)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*