IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 )  |
| Zohar III, Corp., *et al.*[1] | ) Case No. 18-10512 (KBO) ) |
| Debtors. | ) (Jointly Administered) ) |
| | ) **Docket Ref. Nos. 1164, 1167** |

**PRELIMINARY STATEMENT AND RESPONSE OF ZOHAR III CONTROLLING CLASS IN RESPONSE TO MOTIONS SEEKING MONETIZATION PROCEDURES FILED BY DEBTORS AND PATRIARCH**

The holders (the "Zohar III Controlling Class") of the majority of A-1 notes issued by Debtor Zohar III, Corp. ("Zohar III") hereby submit this preliminary statement and response ("Statement") to (i) Debtors' Motion for Entry of an Order and (ii) Motion of Lynn Tilton for Approval of Timeline and Guidelines Regarding Monetization of the Group A Portfolio Companies [D.I. 1164] (the "Patriarch Motion" and together with the Debtors' Motion, the "Timeline Motions"). In support of this Statement, the Zohar III Controlling Class respectfully states as follows:

**STATEMENT AND RESPONSE**

1. These cases are at a critical juncture. The need for a definitive timeline and significant judicial oversight is regrettably overdue. As of the date of this Statement, the Debtors have been in chapter 11 for 667 days.

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

2.      Despite Ms. Tilton representing to this Court that her intent in filing these cases was to monetize assets and repay the Debtors' secured creditors, the past 667 days (and for the foreseeable future) have only furthered a strategy of delay and questionable litigation tactics that run contrary to her stated intent—to timely monetize the Portfolio Companies and pay creditors in full.  The only difference between the Petition Date and now is that there are new parties for Ms. Tilton (and Patriarch) to blame for their failures—Mike Katzenstein, Joe Farnan, Young Conaway, FTI, and White and Case.[2]  And, true to its strategy, Patriarch seeks to inundate the Court with facts largely irrelevant to the relief sought in the Patriarch Motion.  Patriarch chooses to spread blame, contort facts, and launch accusations in an effort to distract the Court from Patriarch's own failure to monetize assets and repay creditors.  The Court should decline Patriarch's invitation to convert the hearing on the Timeline Motions into an open forum for airing perceived grievances and presenting a public relations campaign.

3.      The Zohar III Controlling Class strongly supports the concept of a court imposed (*and enforced*) timeline, but it supports a *timeline for sales*—██████████ ██████████.  While Patriarch may not want to acknowledge this reality, it does not change the fact that a subset of the Debtors' assets (the Group A Portfolio Companies) were to be monetized during the 15/18 month window in the Settlement Agreement.  Patriarch's failure to do so should not be rewarded with a "Settlement Agreement 2.0" which permits Patriarch to further delay to October 2020 to begin a process that was supposed to show significant progress by November 2019.

---

[2] The Court should note Patriarch's belief that the Debtors' decision not to seek relief in this Court earlier somehow vindicates Patriarch, and decline to incentivize parties (such as Patriarch) from bringing matters to this Court that would, under normal circumstances in a bankruptcy case, be resolved by the parties.  If the Debtors were more litigious earlier, then Patriarch would now be complaining that such litigation "clouded" the monetization process.  Instead, the Debtors' restraint is being used against the Debtors and their creditors.

4.  These cases need a well-defined path to finality which include deadlines for closing sales and consequences for failure to comply with such deadlines. Absent such a well-defined path, as well as a streamlined and expedited process for resolving disputes, the parties likely will be back in front of this Court in January 2021 seeking yet another timeline.[3]

5.  Patriarch will undoubtedly argue that the above recommendation is too restrictive, and may ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[4] But ▇▇▇▇▇▇▇▇ do not result from a well-defined process with a real "finish line" to focus buyers' attention on a legitimate sale process. While the Zohar III Controlling Class desires to obtain the highest possible value for each asset, at some point, the market speaks — sales processes are not infinite. Moreover, Congress intended such limitations in the 2005 amendments to the Bankruptcy Code. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (codified as amended at 11 U.S.C. § 1121 (2018)). Simply put, debtors in chapter 11 are not afforded the luxury of waiting for value that may never come. Unfortunately, this must also be the case here.

6.  Patriarch acknowledges hiring blue chip investment bankers. Presumptively, such bankers are adept at running value-maximizing sale processes. While Patriarch (and/or the Debtors and their stakeholders) may not like the results of the sale process, it is time to sell, or provide reasons for not selling to the creditors and this Court. Patriarch simply saying that the Portfolio Companies are "worth more" is not one of them.

---

[3] Without a well-defined path to finality and closure of these cases, the Zohar III Controlling Class is not inclined to consent to further use of cash collateral to fund more of the same in these cases.

[4] Patriarch's argument also ignores the fact that the Debtors are CLOs with an investment period and maturity. In this case, each of the Debtors (Zohar I, Zohar II and Zohar III) issued debt with 12-year maturities. Thus, unless there was never an intent to repay the debt issues, the Debtors were structured (by Ms. Tilton) to purchase assets during an investment period, and then sell off those assets to repay the obligations by the maturity (a date certain). They had 12 years to do so, and the maturity date was no secret.

## PROPOSED TIMELINE AND PROTOCOL

### Sale Process Deadlines and Delegation

7. The Zohar III Controlling Class generally agrees with the Debtors' proposal timeline for completing marketing materials and launching buyer outreach for the Group A Portfolio Companies.

8. The Zohar III Controlling Class acknowledges that Ms. Tilton's involvement in certain of the Group A Portfolio Companies is or may become more extensive than in others. Therefore, the Zohar III Controlling Class believes that, in exchange for modest extensions (30–60 days) for certain of the Group A Portfolio Companies in which Ms. Tilton has more extensive involvement, Ms. Tilton should be required to identify a delegate for the companies where she is less involved. That delegate should be authorized to oversee the sales process and prepare initial drafts of all marketing documents and presentations (to the extent not already prepared) with Ms. Tilton retaining (or delegating) the right to sign off on all materials and presentations. That delegate should be required to freely communicate with the Debtors and their advisors. To be clear, however, under this proposal, Ms. Tilton would not be delegating her rights (whatever they may be) to agree to a sale or refinancing transaction—only process-related actions.

9. Group A Portfolio Companies where the Debtors hold all (or nearly all) of the debt and equity (or equity upside) interests should be prioritized according to the Debtors' proposed timeline.

### Streamlined and Expedited Dispute Resolution Process

10. As this Court likely has observed, there is no such thing as a small matter in these cases. Every issue is met with discovery requests, volumes of briefing, and delay. In order to avoid history repeating itself, further delay, and unnecessary cost, the Zohar III Controlling Class

urges this Court to establish and implement a streamlined process for efficiently "calling balls and strikes" on any disputes over the process in near real time. Specifically, for matters involving compliance with the timeline and guidelines (including access to information, diligence, bankers, etc.) the Zohar III Controlling Class proposes that the Court mandate a streamlined and expedited dispute resolution process which includes page limitations on submissions, short response deadlines, and hearings on the merits of a dispute only in instances where the Court determines a hearing is necessary.

### Timing of Executed Purchase Agreements

11.     A timeline without milestones for completing sales invites additional delay and may cause potential buyers to question the legitimacy/seriousness of the sale process. The Zohar III Controlling Class believes that the Court should require executed purchase agreements for all Group A Portfolio Companies by ███████████, (the "Sale Deadline") unless either (i) the effected parties agree or (ii) the Court finds the requesting party complied with the timeline and guidelines and that an extension of the Sale Deadline would create greater value for the Debtors' estates. Absent an extension, the failure to adhere to the Sale Deadline should have defined consequences and provide for a clear and automatic remedy.

12.     ███████████ is more than enough time to complete the marketing processes that were supposed to demonstrate significant progress by November 2019. Moreover, when compared to some of this Court's recent cases, an additional year is more than generous. *See e.g.*, *In re Emerge Energy* (Case No. 19-11563 (KBO)) (filed July 15, 2019; confirmed plan of reorganization December 18, 2019); *In re Bayou Steel BD Holdings, L.L.C.* (Case No. 19-12153 (KBO)) (filed October 1, 2019; Order Approving Sale of Assets: December 26, 2019 [D.I. 371]); *In re The News-Gazette, Inc.* (Case No. 19-11901 (KBO)) (filed August 30, 2019; Order

Approving Sale of Assets:  October 2, 2019 (stalking horse after six-month pre-petition marketing process) [D.I. 129]).

**Miscellaneous Provisions**

13.     **Definition of** ███████████████████████████████████████

████████████████████████████████████████████████████████████████

███████. The Zohar III Controlling Class acknowledges that certain types of offers that should not be brought before this Court under the guise of a transaction dispute, such as preliminary indications of interest. There is, however, a vast middle ground between those types of offers and ██████████████████████████████████████████. For example, █████████████████

███████████████████████████████████████████████████████. In addition,

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████     ██████████████████████████████████████████

████████████████████████████████████████     ████████████████████

████████████████████████████████████████████████████████████████

███████████████████. This does nothing more than ensure the continued stalemate of these cases.

14.     Any relevant party in interest should be able to bring a dispute over a potential transaction if either Houlihan or the company's banker believe that the offer (a) is not a preliminary indication of interest, (b) the purchaser is a bona fide purchaser acting in good faith, and (c) it is likely that any conditions on closing a potential transaction would be met (or waived).

15. **Group B Portfolio Companies**. The Debtors' debt and equity interests in the Group B Portfolio Companies are assets of their estates. They are not carved out of the secured creditors' collateral nor are they immune from monetization at this point. The Settlement Agreement requires monetization of the Group B Portfolio Companies—at this point monetization of these companies is not optional. While the Zohar III Controlling Class understands that the monetization of the Group A Portfolio Companies is a priority, failure to do so during the 15/18 month window under the Settlement Agreement cannot now be used as justification for further delay to market/sell the Group B Portfolio Companies.

16. The Court should order the parties to confer and present an agreed upon timeline for the sale of the Group B Portfolio Companies by no later than March 31, 2020. If the parties cannot agree to a timeline, then the Court should enter an order establishing a timeline to further guarantee continued progress in these cases over the next year.

17. **The timeline and guidelines are unconditional**. Ms. Tilton and Patriarch filed these cases (667 days ago) with the stated intention of monetizing assets and repaying creditors. They cannot now credibly tell this Court: (i) it cannot require them to sell or (ii) their agreement to sell is conditioned upon the District Court affirming this Court's Order (A) Implementing the Terms of the Settlement Agreement and (B) Resolving Dispute Over Monetization Process, Pursuant to Paragraph 11 of the Settlement Agreement. The Court should make clear that the parties obligations to sell pursuant to the timeline are unconditional.

18. Finally, the Patriarch Proposed Order ignores (or perhaps, does not) that Bardin Hill is a lender to two Portfolio Companies. The Patriarch Proposed Order ███████ ████████████████████████████ ████████—this is clearly inappropriate.

**Other Issues Raised in the Patriarch Motion**

19.     The Zohar III Controlling Class does not respond to the numerous misleading and factually incorrect statements and allegations raised by Patriarch, but expressly reserves the right to do so at the appropriate time.  By not raising an issue in this Statement, the Zohar III Controlling Class is expressly not waving any rights with respect to any issue or allegation raised in the Timeline Motions.

**Reservation of Rights/Supplement**

20.     The Zohar III Controlling Class reserves its right to supplement this Statement at or prior to any hearing on the Timeline Motions.

## CONCLUSION

For the foregoing reasons, the Zohar III Controlling Class respectfully requests that this Court enter an order establishing timelines and guidelines for the sale of the Group A Portfolio Companies and the Group B Portfolio Companies not inconsistent with the issues discussed herein.

Dated: January 7, 2020
      Wilmington, DE

    Brian J. Lohan
    ARNOLD & PORTER KAYE SCHOLER LLP
    70 West Madison Street Suite 4200
    Chicago, IL 60602-4231
    Telephone:  +1 312 583 2300
    Facsimile:  +1 312 583 2360
    Email:  brian.lohan@arnoldporter.com

    Jeffrey A. Fuisz
    ARNOLD & PORTER KAYE SCHOLER LLP
    250 West 55th Street
    New York, New York 10019-9710
    Telephone:  +1 312 863 8000
    Facsimile:  +1 212 863 8689
    Email: jeffrey.fuisz@arnoldporter.com

    -and-

    */s/ Morgan L. Patterson*
    Matthew P. Ward (Del. Bar No. 4471)
    Morgan L. Patterson (Del. Bar No. 5388)
    Womble Bond Dickinson (US) LLP
    222 Delaware Avenue, Suite 1501
    Wilmington, DE 19801
    Telephone: (302) 252-4320
    Facsimile: (302) 252-4330
    Email:  matthew.ward@wbd-us.com
    Email:  morgan.patterson@wbd-us.com

    *Counsel to the Zohar III Controlling Class*