## Exhibit A

**Proposed Redacted Document**

**REDACTED**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Zohar III, Corp., *et al.*,[1] | ) | Case No. 18-10512 (KBO) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Hearing Date: April 21, 2020 at 10:00 a.m. (ET)** |
| | ) | |
| | ) | **Obj. Deadline: April 14, 2020 at 4:00 p.m. (ET)** |

### SECOND SUPPLEMENT TO THE DEBTORS' AND INDEPENDENT DIRECTOR'S JOINT EMERGENCY MOTION FOR AN ORDER DECLARING THAT THE DEBTORS CONTROL THE PORTFOLIO COMPANIES AND GRANTING RELATED RELIEF

Zohar III, Corp. and its affiliated debtors and debtors in possession in the above-captioned

Chapter 11 cases (collectively, the "Debtors") hereby submit this second supplement (this "Second

Supplement") to the *Debtors' and Independent Directors' Joint Emergency Motion for Entry of*

*an Order Declaring that the Debtors Control the Portfolio Companies and Granting Related Relief*

[Docket No. 1505] (the "Emergency Motion")[2] and request entry of an order, in furtherance of the

Court's *Order Granting in Part the Debtors' and Independent Director's Joint Emergency Motion*

*for an Order Declaring That the Debtors Control the Portfolio Companies and Granting Related*

*Relief* [Docket No. 1542] (the "Transition Order"), substantially in the form attached hereto as

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261) ("Zohar III"), Zohar II 2005-1, Limited (8297) ("Zohar II"), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Emergency Motion.  A detailed discussion of the events preceding the March 26, 2020 hearing on the Emergency Motion, including relevant background on the Settlement Agreement, the Monetization Ruling, the Timeline Motions, the Final Monetization Order, and Tilton's Resignation Letter, is set forth in the Emergency Motion and the Debtors' supplement thereof [Docket No. 1526] and is incorporated herein by reference.

Exhibit A (the "Proposed Order"): (i) clarifying that Ms. Tilton's resignation as the Manager of ███████ remains effective; (ii) directing the execution of a written consent immediately appointing Zohar III, Corp. as the Manager of ████████████████████ and (iii) granting related relief. In support of this Second Supplement, the Debtors rely on the Declaration of Michael Katzenstein attached hereto as Exhibit B and respectfully state as follows:

## PRELIMINARY STATEMENT

1.       As the Court is aware, following a two-day evidentiary hearing and a third day of closing arguments in late February, the Court entered an order [Docket No. 1500][3] (the "Final Monetization Order") establishing sale milestones and procedures for each of the Portfolio Companies, including, but not limited to, ██████. The next day, on March 21, 2020, Ms. Tilton served a letter on the Debtors immediately resigning her roles as director, manager and CEO of the Portfolio Companies and turning over ownership and control of those companies to the Debtors, and the following day, she communicated her resignations and turn-over of control of the Portfolio Companies to their management teams. Then on March 26, 2020, less than an hour before the hearing on the Emergency Motion, Ms. Tilton purportedly sent letters to five of the Portfolio Companies and filed notice with this Court [D.I. 1531] (the "Purported Rescission") purporting to rescind her resignations at those five companies, including her resignation as the Manager of ██████.[4] Ms. Tilton took these actions without regard to applicable law or these Portfolio Companies' governing documents, none of which—including ██████—allows unilateral rescission of manager resignations.

---

[3] A publicly-viewable redacted version of the Final Monetization Order has been filed at Docket No. 1501.

[4] The letters are attached to the Purported Rescission as Exhibits A-E.

2.      Eight days ago, the Court entered the Transition Order, deeming Ms. Tilton's resignation as Manager of the Portfolio Companies effective as of March 21, 2020 and ordering Ms. Tilton to work with the Debtors to "transition . . . control of the Portfolio Companies" to the Debtors, as Ms. Tilton committed to do in her Resignation Letter and at the hearing on the Emergency Motion.  *See, e.g.*, Resignation Letter at 3 ("I will of course reasonably cooperate with your new leadership to accomplish the transition"); March 26, 2020 Hr'g Tr. at 19:10-13 ("[R]est assured that Ms. Tilton is committed to working with the debtors and working with management of the portfolio companies to accomplish as smooth a transition as can be accomplished.").  At the direction of the Court, the Transition Order was drawn almost entirely from a proposed form of order filed by Ms. Tilton with a single addition from the Court—that Ms. Tilton cooperate to transition control to the Debtors as she represented to the Debtors and the Court that she intended to do.  The Transition Order does not reference the Purported Rescission or carve out any of the Portfolio Companies from its purview.  Nor did Ms. Tilton submit an alternative revised form of order, despite having the opportunity to do so.

3.      Nonetheless, on March 31, 2020, Ms. Tilton sent an email to the Debtors contending that, despite the clear and unambiguous terms of the Transition Order and without regard to ██████s governing documents and applicable law, she remains the manager of ██████ pursuant to the Purported Rescission.   And despite Ms. Tilton's and her counsel's explicit pronouncements regarding her commitment to cooperating in the transition of control over the Portfolio Companies to the Debtors, and the requirement under the Transition Order that she do just that, she has refused to consent to the Debtors' proposal to appoint Zohar III Corp., a debtor in these chapter 11 cases, as the new Manager for ██████.

4.      The result leaves ████ and its officers ██████████ and unable to enact the mandate under the Final Monetization Order to effectively proceed with the ongoing sale process despite active and ongoing bidder discussions.  In sum, absent the relief requested in this Motion, the Debtors' ability to meet their obligations under the Final Monetization Order with respect to the ████ sale process will be jeopardized.  This will, once again, give Ms. Tilton the delay she has repeatedly sought in these cases, in violation of the intent and decree of the Final Monetization Order.

## BACKGROUND

**A.      ████'s Corporate Structure and Governance**

5.      ████ is a Delaware limited liability company.  Its common members are ████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████ is currently indebted to ██████████████████████████████████ ██████████████████████████████████████████████████ ████ and to ████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████

6.      Pursuant to ████'s Limited Liability Company Agreement, as amended (the "LLC Agreement") (a copy of which is annexed hereto as Exhibit C), it is governed by a Manager. Ms. Tilton served as Manager until March 21, 2020 when she resigned.  Pursuant to section 5.9 of the LLC Agreement, a resignation by the Manager "will take effect at the time specified [in the resignation], or if no time be specified, at the time of its receipt by any Common Member," namely ████    "The acceptance of a resignation is not necessary to make it effective, unless expressly so provided in the resignation."  LLC Agreement, § 5.9.  There is no provision of the LLC

Agreement allowing for the unilateral rescission of a Manager resignation once made, nor any provision that permits an officer of ███ to accept a rescission or otherwise unwind a Manager's resignation.   Nor does Ms. Tilton's purported rescission find support in Delaware law[5] Additionally, Sections 5.9 and 5.12 of the LLC Agreement require unanimous consent of both Zohar III and Ark II to replace a resigned Manager.

7.     As the Court is aware, on March 21, 2020, Ms. Tilton provided Zohar III, through its Independent Director and Chief Restructuring Officer, with written notice of her immediate resignation from ███ and all other Group A and Group B Portfolio Companies with immediate effect.   *See* Exhibit D hereto, p. 2 ("this letter shall serve *as notice of my immediate resignation . . . . Under the express terms of the LLC Agreements and Shareholder Agreements, such resignation is deemed accepted upon receipt.*") (emphasis added).   Pursuant to ███'s LLC Agreement, Ms. Tilton's resignation as Manager of ███ was effective at the time she specified, *i.e.*, immediately.   *See* LLC Agreement, § 5.9.

8.     In her Resignation Letter, Ms. Tilton states, among other things, that she "can no longer effectively serve in [her] positions as Manager, Director and/or CEO of the Group A and Group B Portfolio Companies."   Exhibit D, at p. 2.   She goes on to state her belief that "it is more important that the Portfolio Companies are not caught in the middle of constituency conflict or personal battles" and that they "need unilateral support, relief, capital and attention."   *Id*. at p. 3. Finally, Ms. Tilton notes that the "***the Zohars*** control the future of" the Portfolio Companies and commits to "reasonably cooperate with ***your*** new leadership to accomplish the transition."   *Id.* at pp. 2, 3 (emphasis added).

---

[5]  The provisions of the Delaware Limited Liability Company Act, 6 Del. C. § 18-101 *et seq.*, do not contemplate a manager's ability to rescind a resignation.  6 Del. C. § 18-602 provides that "[a] manager may resign as a manager of a limited liability company at the time or upon the happening of events specified in a limited liability company agreement and in accordance with the limited liability company agreement," but is silent on a manager's ability to rescind a resignation.

9.      Despite Ms. Tilton's commitments that ███████ has "full and complete control" and the full ability to "install a board, new managers . . . etc." and "need[s nothing] further from Ms. Tilton," less than two days after serving the Resignation Letter, Ms. Tilton transmitted a letter to ████████ of ████████, attached hereto as <u>Exhibit E</u>, purporting to rescind her resignation as ████████s Manager.  No such written rescission letter was transmitted to ████████, and ████████ has neither accepted the rescission nor consented to Ms. Tilton being reappointed as Manager of ████████ following her resignation effective as of March 21, 2020.  To the contrary, ████████ has expressly conveyed to Ms. Tilton's counsel that her resignations remain effective as tendered by her on March 21st and as confirmed by the Court.  Nor, as noted above, does any provision of ████████s LLC Agreement permit the unilateral rescission of Manager resignations.

## B.      The Transition Order

10.      On March 26, 2020, the Court held a hearing to consider the Debtors' Emergency Motion and related filings, including a proposed form of order tendered by Ms. Tilton  [Docket No. 1523] (the "<u>Tilton Order</u>").  At the hearing, Ms. Tilton's counsel repeatedly re-affirmed Ms. Tilton's commitment to honoring her resignations at the Portfolio Companies and working to transition control over those companies to the Debtors as smoothly and quickly as possible.  *See, e.g.*, March 26, 2020 Hr'g Tr. at 19:10-13 ("[R]est assured that Ms. Tilton is committed to working with the debtors and working with management of the portfolio companies to accomplish as smooth a transition as can be accomplished."); *id.* at 19:23-20:4 ("Importantly, Ms. Tilton made the personal offer to Mr. Katzenstein that day that he should feel free to call her, email her, reach her in person at any time if there was anything that he needed to accomplish the smooth transition of governance and management at the portfolio companies.  She absolutely has an interest in making sure this transition is accomplished as smoothly as possible[.]").

11.     Ms. Tilton did not oppose the relief requested in the Emergency Motion in its entirety.[6]  Rather, through the Tilton Order, Ms. Tilton affirmatively requested that the Court order that "[e]ffective immediately upon entry of this Order, Ms. Tilton's resignation as Manager, Director, or officer of the Portfolio Companies (with the exception of the Dura entities) is deemed effective as of its receipt by Debtors' Independent Director and Chief Restructuring Officer on March 21, 2020."  Tilton Order, at ¶ 2.

12.     Following the March 26th hearing, the Debtors submitted a revised proposed form of order that specifically incorporated the Court's comments at the hearing.  Despite having been served with the Debtors' proposed form of order on April 3rd and April 5th, Ms. Tilton did not submit her own proposed revised form of order or contest the form of order submitted by the Debtors.[7]

13.     On March 30, 2020, the Court entered the Transition Order, which contains the language requested by Ms. Tilton in paragraph 2 of the Tilton Order ***verbatim***.  And consistent with the Court's explicit direction to Ms. Tilton at the March 26th hearing, the Transition Order provides that "Ms. Tilton and the other Patriarch Stakeholders shall work reasonably and in good faith with the Debtors to transition the ownership ***and control*** of the Portfolio Companies as set forth in the Resignation Letter."  Transition Order, at ¶ 6 (emphasis added); *see also* March 26, 2020 Hr'g Tr. at 44:4-8 ("I do feel [it is] appropriate [] to add a provision to that proposed order that requires Ms. Tilton and the other Patriarch stakeholders to work reasonably and in good faith to transition the ownership and control as set forth in her resignation letter.").

---

[6] *See* Tilton Limited Objection, p. 9 ("Patriarch respectfully requests that this Court grant the Motion only in part as set forth in the Proposed Order attached hereto as Exhibit 1.").

[7] On April 2, 2020, Ms. Tilton filed a motion seeking to amend the Transition Order.  *See* D.I. 1553.  The Debtors intend to object to this motion and reserve all rights in connection therewith.  A more detailed recitation of the facts and circumstances surrounding the submission of the Debtors' proposed Transition Order to the Court will be set forth therein.

14.     The day after that hearing, the Debtors notified Ms. Tilton that they had selected Zohar III Corp. as the new Manager of ███████. The Debtors also notified Ms. Tilton that they had selected Zohar III Corp. as the manager at two other Portfolio Companies ██████████ ██████████████████████████████████ and identified separate individuals to serve as replacement director for Ms. Tilton at the two Portfolio Companies ████████████████████ ████████████████████████████████.[8]

15.     On March 31, 2020, the Debtors transmitted to Ms. Tilton a form of written consent effectuating that appointment (the "Final Written Consent"). *See* Exhibit 1 to the Proposed Order. Ms. Tilton, through her counsel, rejected the proposed Final Written Consent, arguing that she is still the Manager of ████████ because she rescinded her resignation. Additionally, Ms. Tilton contended that "The Court's [Transition Order] did not address the effectiveness of those rescissions (let alone suggest in any way that they are ineffective), and your contention that ████████ (or any other company) is without a Manager is incorrect." Exhibit F.

**C.     The Sale Process is ████████████████████ Which Requires the Immediate Installation of Zohar III Corp. as Manager**

16.     As the Court is well aware, ████████'s sale process has been ██████████████ ████████ and is ████████████████████████████████████ ██████████████████████████████████████ *See* Feb. 19, 2020 Hr'g Tr. 151:14-17; Final Monetization Order ¶ 1. Pursuant to the Transition Order, the Debtors intend to ensure that ████████ can successfully capitalize on its sale process and capture the best possible value for its assets—a result that is in all stakeholders' best interests. Unfortunately, Ms. Tilton's purported resignation and the resulting uncertainty has ██████████████████████████████████████

---

[8] ████████████████████████████████████████████████████████ ████████████████████████.

████████████████████████████████████████████████████

████████████.

17.    The Court entered the Final Monetization Order to "ensure proper and timely compliance with the Settlement Agreement, maximize value for all stakeholders, and establish a reasonable and fair process for all parties."  Final Monetization Order ¶ Preamble.  Although the Final Monetization Order and the Settlement Agreement ordered the Debtors and Ms. Tilton to undertake a joint sales process for the Portfolio Companies, Ms. Tilton determined that she "can no longer effectively lead the companies forward into the future" and resigned her positions at each of the Portfolio Companies before that process had concluded.  Exhibit D, at p. 2.  The Court confirmed these resignations were effective as of March 21, 2020.  Transition Order ¶ 2.  The Court further authorized the Debtors to "take such corporate actions permitted under, or in accordance with, each Portfolio Company's governing documents, as the Independent Director determines in his sole discretion is necessary and appropriate" to "transition the ownership and control of the Portfolio Companies as set forth in the Resignation Letter[]" to the Debtors.  *Id.* ¶¶ 5 and 6.  The Court also ordered Ms. Tilton to "work reasonably and in good faith" to assist the Debtors in achieving this transition of ownership and control.  *Id.* ¶ 6.

18.    The Independent Director has determined in his discretion that appointing Zohar III Corp. as the Manager of ██████ is necessary and appropriate to ███████████, transition control of ██████ to the Debtors, and, most importantly, provide necessary leadership and guidance in support of the ongoing sale process that is required under this Court's Final Monetization Order.

19.    The urgency of executing the Final Written Consent appointing Zohar III Corp. as the ███████████████was conveyed to Ms. Tilton in light of her resignation.  Nonetheless, she

refused.  Her purported rescission of her resignation (despite the Transition Order) and refusal to

consent to the Debtors' appointment of Zohar III Corp. as ███████'s Manager (also despite the

Transition Order) have left ████████████████████████████████████████████████████████

████████████████████████████████████████████████.  Leaving ████████████

████████████████████████████████████████████████████████████████████████

████████████████████████ Zohar III Corp. should be installed as Manager

immediately to provide ████████ with ████████████████████████████████████

████████ for the benefit of the Debtors and their estates.

## JURISDICTION AND VENUE

20.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

1334, the Settlement Agreement and the *Amended Standing Order of Reference from the United

States District Court for the District of Delaware*, dated as of February 29, 2012.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2).  Pursuant to Rule 9013-1(f) of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware, the Debtors consent to entry of a final order by the Court in connection with this Motion

to the extent that it is later determined that the Court, absent consent of the parties, cannot enter

final orders or judgments in connection herewith consistent with Article III of the United States

Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal

predicates for the relief requested herein are section 105(a) of the Bankruptcy Code, Bankruptcy

Rule 9019, the Settlement Order, the Settlement Agreement, the Final Monetization Order, and the

Transition Order.

## RELIEF REQUESTED

21.      Through this Second Supplement, the Debtors request that the Court enter an order,

in furtherance of the Transition Order, and substantially in the form attached hereto as Exhibit A,

(i) clarifying that Ms. Tilton's resignation as the Manager of ███ remains effective, (ii) directing Ms. Tilton to execute the Final Written Consent attached as Exhibit 1 to the Proposed Order; and (iii) granting related relief.

## BASIS FOR RELIEF REQUESTED

22.    Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code," and that "[n]o provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules[.]" 11 U.S.C. § 105(a).

23.    Bankruptcy courts retain "jurisdiction to interpret and enforce settlements and the accompanying orders approving settlements." *See In re Baseline Sports, Inc.*, 393 B.R. 105, 118-19 (Bankr. E.D. Va. 2008); *accord In re Lazy Days' RV Center, Inc.*, 724 F.3d 418, 423 (3d Cir. 2013); *In re Patriot Coal Corp.*, 539 B.R. 812, 818–19 (Bankr. E.D. Mo. 2015). Although "there are some significant limits to a bankruptcy court's ability to use section 105(a) of the Code . . . [it] plainly may be used 'to enforce and implement' earlier orders." *In re River Ctr. Holdings, LLC*, 394 B.R. 704, 711 (Bankr. S.D.N.Y. 2008); *see also In re Ames Dep't Stores, Inc.*, 317 B.R. 260, 273–74 (Bankr. S.D.N.Y. 2004).[9]

---

[9] This Court has previously recognized its authority to grant relief in furtherance of the Settlement Agreement. *See* Feb. 6, 2020 Hr'g Tr. at 66:23-67:3 ("It is black letter law that I possess the ability to enforce the terms and provisions of the [S]ettlement [O]rder entered by Judge Sontchi on May 21st, 2018, as well as the agreements reached between the parties embodied in that [S]ettlement [A]greement which was approved by and incorporated into the [S]ettlement [O]rder."). Pursuant to this authority, this Court can order "multiple types of transactions . . . including a sale of the equity interest of the [P]ortfolio [C]ompanies held by the [D]ebtors and/or Ms. Tilton and her affiliated entities or a sale of the [P]ortfolio [C]ompanies' assets owned and/or controlled by Ms. Tilton, her affiliated entities and/or the [D]ebtors." *See id.* at 70:7-12. This Court even "has the authority to order a monetization of a portfolio company over the objection of Ms. Tilton or the debtors or Ms. Tilton's affiliated entities." *See id.* at 66:18-20.

24.     The Transition Order, among other things, deems Ms. Tilton's resignation as the

Manager ████████ effective as of March 21, 2020 and orders her to "work reasonably and in good

faith with the Debtors to ***transition*** ownership and ***control of the Portfolio Companies*** as set forth

in the Resignation Letter[]" to the Debtors.  The Resignation Letter, in turn, manifests Ms. Tilton's

commitment to "reasonably cooperate with [the Debtors'] new leadership to accomplish the

transition."  Transition Order ¶¶ 2, 6 (emphasis added).  Indeed, Ms. Tilton's counsel characterized

the resignation as giving "[t]he Zohars… ***full and complete control*** since delivery of the letter…

You need nothing further from Ms. Tilton or any Patriarch entity."  <u>Exhibit G</u> (emphasis added).

Ms. Tilton and her counsel have repeatedly affirmed their commitment to this mandate both in and

out of Court.

25.     Now, in the face of a Court order deeming her resignation effective and ordering

her to transition control, Ms. Tilton strives to do the opposite: unwind her resignation as ████████

Manager and block transition of control to the Debtors' choice of new Manager, Zohar III Corp.

(a debtor herein).  But Ms. Tilton has offered no support for her position, which violates the clear

terms of the Transition Order, contradicts her prior statements and has no basis in either applicable

law or ████████'s governing documents.  Ms. Tilton's actions, moreover, have left ████████ without

a Manager, thus ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████.  In

fact, installing Zohar III Corp., a Debtor and party to the Settlement Agreement, as ████████'s

Manager would be wholly consistent with the purposes of the Settlement Agreement, including

the obligation undertaken by ████████████████████████████████████) to engage in a joint

process to sell ████████  Without a ████████████████████████████████████████████

████████████████████████████████████████████████ has been hampered in executing the

Court's Final Monetization Order and ▮▮▮▮▮▮▮▮▮▮ obligations under the Settlement Agreement are similarly being frustrated. ▮▮▮▮ should not be allowed to avoid its sale obligation, and Ms. Tilton should not be able to avoid her commitments under the Transition Order, by withholding consent to the appointment of Zohar III Corp. as Manager of ▮▮▮▮.

26.     For the foregoing reasons, the Debtors submit that the relief requested through this Second Supplement is critical and appropriate, is consistent with the Transition Order and the Settlement Agreement, is in the best interests of the Debtors, their estates, and all stakeholders, and should be approved.

## **RESERVATION OF RIGHTS**

27.     The relief sought herein is urgently needed for the reasons set forth herein, but is by no means the full set of relief the Debtors will need in the upcoming days, weeks and months. For the avoidance of doubt, the Debtors do not by this Second Supplement waive, forfeit or otherwise release any rights, claims or causes of action against Ms. Tilton or the Patriarch Stakeholders arising from their control of the Portfolio Companies, the Resignation Letter, the Purported Rescission or any other matter related to these cases.  Any and all such rights, claims and causes of action are expressly reserved.

## **NOTICE**

28.     The Debtors will provide notice of this Second Supplement to: (i) the U.S. Trustee; (ii) counsel to Ms. Tilton and the Patriarch Stakeholders; (iii) counsel to U.S. Bank, as indenture trustee; (iv) counsel to MBIA; (v) counsel to the Zohar III Controlling Class; and (vi) all parties that, as of the filing of this Second Supplement, have requested notice in these Chapter 11 cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors request entry of the Proposed Order, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:  April 7, 2020
        Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shane M. Reil*
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4221)
Ryan M. Bartley (No. 4985)
Shane M. Reil (No. 6195)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: jpatton@ycst.com
      rbrady@ycst.com
      mnestor@ycst.com
      jbarry@ycst.com
      rbartley@ycst.com
      sreil@ycst.com

*Counsel to the Debtors and Debtors in Possession*

26233392

**<u>EXHIBIT A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Zohar III, Corp., *et al.*,[1] | ) | Case No. 18-10512 (KBO) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Docket Ref. No. ___** |

**ORDER DIRECTING THE APPOINTMENT OF ZOHAR III, CORP. AS THE
MANAGER OF A CERTAIN PORTFOLIO COMPANY
AND GRANTING RELATED RELIEF**

Upon the Debtors' and the Independent Director's second supplement (the "Second

Supplement")[2] to their *Joint Emergency Motion for Entry of an Order Declaring that the Debtors

Control the Portfolio Companies and Granting Related Relief* (the "Emergency Motion"); and the

Court having jurisdiction to consider the Second Supplement and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the

United States District Court for the District of Delaware*, dated as of February 29, 2012; and the

Court having entered the Transition Order; and consideration of the Second Supplement and the

requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Second

Supplement having been provided, and it appearing that no other or further notice need be

provided; and this Court having found and determined that the relief sought in the Second

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Second Supplement or the Emergency Motion, as applicable.

Supplement is in the best interests of the Debtors' estates, their creditors, and other parties in interest and that the legal and factual bases set forth in the Second Supplement establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED**:

1. The relief requested in the Second Supplement is **GRANTED** as set forth herein.

2. Pursuant to the Transition Order, Ms. Tilton's resignation as Manager of ███████ was effective as of March 21, 2020, and remains effective.

3. Within one (1) business day of entry of this Order, Ms. Tilton is directed to execute the Unanimous Written Consent of the Common Members of ████████████████ on behalf of ███████████████. attached hereto as Exhibit 1.

4. This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

# EXHIBIT 1

## Final Written Consent

## UNANIMOUS WRITTEN CONSENT OF
## THE COMMON MEMBERS
## OF
████████████████████

THE UNDERSIGNED, being all of the common members (the "<u>Members</u>") of ████████████████, a Delaware limited liability company (the "<u>Company</u>"), hereby consent to, approve, and adopt the following resolutions:

**WHEREAS**, the Members are all of the common members of the Company;

**WHEREAS**, Lynn Tilton ("<u>Ms. Tilton</u>") tendered her resignation as the sole Manager of the Company on March 21, 2020;

**WHEREAS**, the Members desire to acknowledge the resignation of Ms. Tilton as the Manager;

**WHEREAS**, pursuant to that certain Order Granting in Part Debtors' and Independent Director's Joint Emergency Motion for an Order Declaring that the Debtors Control the Portfolio Companies and Granting Related Relief, entered by the United States Bankruptcy Court for the District of Delaware on March 30, 2020, (i) Amendment ████████████████████████ was terminated in all respects, and as a result, the putative "Class B Members" identified in Amendment ████ do not have rights related to the appointment of a Manager of the Company, and (ii) Ms. Tilton's resignation was deemed effective as of its receipt by Debtor's Independent Director and Chief Restructuring Officer on March 21, 2020; and

**WHEREAS**, the Members desire to appoint Zohar III, Corp. as the sole Manager of the Company.

**NOW, THEREFORE, BE IT:**

**RESOLVED**, that the resignation of Ms. Tilton as a Manager of the Company is hereby recognized effective March 21, 2020; and

**FURTHER RESOLVED,** that Zohar III, Corp. is hereby appointed as the sole Manager of the Company until removed by the Members, or until its successor is duly elected and qualified.

[signature page follows]

1

IN WITNESS WHEREOF, the undersigned members have caused this consent to be duly executed and effective as of __March___31_, 2020.

**COMMON MEMBERS:**

By: _____
Name: Mike Katzenstein
Title: Chief Restructuring Officer


By: _____
Name:
Title:

# **EXHIBIT B**

**Katzenstein Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Zohar III, Corp., *et al.*,[1] | ) Case No. 18-10512 (KBO) |
| | ) |
| Debtors. | ) Jointly Administered |

**Ref. Docket Nos. 1505, 1526, and 1542**

## DECLARATION OF MICHAEL KATZENSTEIN IN SUPPORT OF SECOND SUPPLEMENT TO THE DEBTORS' AND INDEPENDENT DIRECTOR'S JOINT EMERGENCY MOTION FOR ENTRY OF AN ORDER DECLARING THAT THE DEBTORS CONTROL THE PORTFOLIO COMPANIES AND GRANTING RELATED RELIEF

I, Michael Katzenstein, declare under penalty of perjury that:

1.      I am a Senior Managing Director of FTI Consulting, Inc. ("FTI"), based out of FTI's office at Three Times Square, 9th Floor New York, NY, 10036.

2.      By order dated June 11, 2018, this Court authorized and approved my appointment as the Chief Restructuring Officer (the "CRO") for the above-captioned debtors and debtors-in-possession (collectively, the "Debtors" or the "Zohar Funds") effective as of May 21, 2018.

3.      I am authorized to execute this declaration on behalf of the Zohar Funds in support of the *Debtors' and Independent Director's Joint Emergency Motion for Entry of an Order Declaring that the Debtors Control the Portfolio Companies and Granting Related Relief* [Docket No. 1505] (the "Motion"), the *Supplement* in support of the Motion [Docket No. 1526] (the "First Supplement"), and the *Second Supplement* in support of the Motion (the "Second

---

[1]  The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. ("Zohar I") (3724), Zohar III, Limited (9261) ("Zohar III"), Zohar II 2005-1, Limited (8297) ("Zohar II"), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

Supplement").[2]  Except as otherwise indicated herein, all facts set forth herein are based upon

my personal knowledge, information learned from my review of relevant documents or

information supplied to me by members of the FTI team or other professional advisors to the

Zohar Funds.

**A.     ████████s Corporate Structure and Governance**

4.      ████████ is a Delaware limited liability company.  ████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

5.      As discussed in the Second Supplement, Ms. Tilton served as ████████'s Manager

until March 21, 2020.  On March 21, 2020, I received notice from Ms. Tilton of her immediate

resignation from ████████ and all other Group A and Group B Portfolio Companies with

immediate effect.  I understand that in accordance with ████████'s governing documents, Ms.

Tilton's resignation as Manager of ████████ was effective at the time she specified, *i.e.*,

immediately.

**B.     The Transition Order and Ms. Tilton's Purported Rescission**

6.      On March 26, 2020, the Court held a telephonic hearing to consider the Debtors'

Emergency Motion, which Ms. Tilton did not oppose in its entirety.  That same day just hours

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Second Supplement, as applicable.

prior to the hearing, Ms. Tilton purported to rescind her resignation as the Manager of ███ by letter sent to ███'s ███.[3] Neither I nor any of the Debtors' advisors in any way approved or ratified Ms. Tilton's purported rescission of her resignation.

7.      On March 27, 2020, the Debtors' counsel notified Ms. Tilton's counsel that, among other things, the Debtors had selected Debtor Zohar III Corp. as the new Manager of ███. The Zohar Funds believe that installing one of the Debtors as Manager of ███ appropriate under the circumstances and that Zohar III Corp., acting through the Independent Directors and the CRO with the support of the Debtors' and Independent Director's respective advisors, can successfully manage ███ Moreover, since Zohar III Corp. is a party to the Settlement Agreement, as Manager of ███ it can carry out this Court's mandate that ███ ████████████████████████████████.

8.      On March 30, 2020, the Court entered the Transition Order.

## C.    Zohar III's Attempt to Install a New Manager

9.      On March 31, 2020, the Debtors' counsel transmitted to Ms. Tilton's counsel a written consent (the "Final Written Consent") executed by me on behalf of Zohar III, Limited, appointing Zohar III Corp. as ███'s new Manager and requesting Ms. Tilton's signature on behalf of ███ Zohar III Corp., as Manager, would be directed by Mr. Farnan, as Zohar III Corp.'s Independent Director, and me, as Zohar III Corp.'s Chief Restructuring Officer, and would have the support of the Debtors' professionals, including financial advisors at FTI Consulting and investment bankers at Houlihan Lokey.  Ms. Tilton responded through counsel that her purported rescission of her resignation survives entry of the Transition Order and that

---

[3] A copy of Ms. Tilton's purported rescission letter is attached as Exhibit E to the Second Supplement.

she remains the Manager of ▮▮▮▮.[4]  Ms. Tilton also refused (and continues to refuse) to transition control of ▮▮▮▮y to the Debtors' chosen Manager, Zohar III Corp.

**D.    A New Manager is Needed to Execute Upon the Final Monetization Order**

10.    Ms. Tilton resigned because she "can no longer effectively lead the companies forward into the future" and stated that "the Zohars control the future of" the Portfolio Companies and committed to "reasonably cooperate with your new leadership to accomplish the transition."[5]  Pursuant to the Final Monetization Order, that future contemplates ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11.    Because Ms. Tilton has resigned yet refuses to transition control to Zohar III Corp., there is currently no Manager at ▮▮▮▮.  As a result, ▮▮▮▮'s ▮▮▮ does not know ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This confusion is created entirely by Ms. Tilton's assertion that she remains the Manager of ▮▮▮▮and her refusal to transition control of ▮▮▮▮ to the Debtors, despite her resignation and the Transition Order.

12.    I believe—based in part upon conversations with ▮▮▮▮'s ▮▮▮—that absent an order confirming that Ms. Tilton's resignation is effective and directing Ms. Tilton to transition control to Zohar III Corp. as ▮▮▮▮'s Manager, ▮▮▮▮'s ▮▮▮ and management team will be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, to the detriment of ▮▮▮▮▮▮▮▮and sale process, and, as a result, the Debtors' estates.  Appointing Zohar III Corp. as the Manager of ▮▮▮▮ is necessary and appropriate to ▮▮▮▮▮▮▮▮▮, transition control of the Company to the Debtors, and, most importantly, provide necessary leadership and guidance in support of

---

[4]  Copies of the relevant correspondence are attached as Exhibits D through F to the Second Supplement.

[5]  A copy of Ms. Tilton's resignation letter is attached to the Second Supplement as Exhibit D.

the long ongoing sale process that is required to be completed under this Court's Final Monetization Order.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: April 7, 2020

*/s/ Michael Katzenstein*

Michael Katzenstein
Chief Restructuring Officer

**<u>EXHIBIT C</u>**

**LLC Agreement**

# REDACTED

**<u>EXHIBIT D</u>**

**Resignation Letter**

# REDACTED

**<u>EXHIBIT E</u>**

**Purported Rescission**



**PATRIARCH PARTNERS**

One Liberty Plaza, 35th Floor
New York, NY 10006

March 26, 2020



Dear ███,

As you are aware, on March 22, 2020, I notified you of my resignation as director, manager and CEO roles in order to free the Portfolio Companies from the overhang of the Zohar battles.

Please rest assured that I intend to remain in my role as ████████████'s manager until a qualified independent manager is identified and the requisite vote is held to appoint that person or persons as the company's new manager.  In order to avoid any confusion, my resignation as manager is rescinded until such time as a replacement has been appointed.

I request that the equity holders hold such vote as soon as practicable.

Please feel free to contact me if you have any questions.

Sincerely,

Lynn Tilton

# EXHIBIT F

**Email from Ms. Tilton's Counsel in Response to Final Written Consent**

**Sazant, Jordan E.**

| | |
|---|---|
| **From:** | Loseman, Monica K. <MLoseman@gibsondunn.com> |
| **Sent:** | Tuesday, March 31, 2020 4:28 PM |
| **To:** | Bartley, Ryan; Nestor, Michael; 'Pernick, Norman' |
| **Cc:** | Patton, James; Brady, Robert; Barry, Joseph; Shore, Christopher (cshore@whitecase.com); Pfeiffer, Brian <brian.pfeiffer@whitecase.com> (brian.pfeiffer@whitecase.com) |
| **Subject:** | RE: Zohar |

Ryan,

As you know, Ms. Tilton rescinded her resignation with respect to ▇▇▇ and certain other Portfolio Companies on Thursday, March 26. Ms. Tilton rescinded her resignation in response to the Supplement Debtors filed with the Court the morning of March 26 in an effort to be cooperative during the transition period and to make sure no company was left without appropriate corporate governance (as Debtors apparently feared they might) during the transition period. Those rescissions were acknowledged by each company, including ▇▇▇, as well as Debtors' representatives. Therefore, rest assured that any decisions requiring Manager approval may be appropriately approved by Ms. Tilton until such time as a new Manager is authorized per the terms of the ▇▇▇ agreement. The Court's order did not address the effectiveness of those rescissions (let alone suggest in any way that they are ineffective), and your contention that ▇▇▇ (or any other company) is without a Manager is incorrect.

Debtors' attempt to ignore the rescission appears to be yet another maneuver to manufacture an emergency and supposed justification to go the Court to request the Court invalidate ▇▇▇▇▇▇▇▇▇▇▇ (no doubt this email and attached consent are Exhibit 1 to the motion you already intend to file this evening). There is no emergency. There is no action the company has been rendered unable to take as a result of Debtors' legal position that the rescission was ineffective. Ms. Tilton has kept Mr. Katzenstein apprised of the company's operations in the interim, as she has for all the companies where she remains in her Director/Manager position.

To the extent Debtors take a view contrary to Patriarch's regarding the effectiveness of the rescissions, this appears to be just more maneuvering; an attempt to create an emergency to justify running to Court rather than working with Ms. Tilton in good faith. As to those portfolio companies where Ms. Tilton rescinded her resignation, those rescissions were tendered following the Debtors filing a supplemental brief with the court expressing supposed genuine concern at certain companies being left without effective governance following the resignation. Ms. Tilton addressed that concern with the rescissions in good faith, and the companies and the Zohars acknowledged and acquiesced to those rescissions. Indeed, the Zohars were made aware of Ms. Tilton's exercise of appropriate authority following the rescissions and voiced no objection. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Your expression of concern for the companies therefore rings hollow.

If anything, your email appears to be in direct response to Ms. Tilton's expression of concern that Debtors have failed to identify qualified candidates for the Director/Manager positions where Ms. Tilton's entities hold an equity voting interest in those positions. With regard to ▇▇▇, Ms. Tilton expressed her concern that no one at ▇▇▇ – Debtors' proposed Manager entity – appears to have any experience in ▇▇▇'s industry. Rather than engage in good faith or even attempt to identify any candidates with such experience, Debtors sent this email and are no doubt have already drafted yet another emergency motion.

We ask that Debtors engage with Ms. Tilton on an appropriate replacement manager immediately rather than run into Court, yet again, in order to avoid the waste of resources Debtors' pattern of emergency litigation has caused. We reserve all rights.

Finally, with regard to the continued unilateral imposition of immediate deadlines for response – given the unprecedented circumstances in which we all find ourselves, and the limited capacity it has unfortunately placed on our ability to respond as quickly as we otherwise would, I ask that you be reasonable. The game of "gotcha" with the unilateral imposition of 5-hour deadlines in these circumstances is becoming a serious problem and an unfair imposition on us all when we are all no doubt contending with challenges in these times. If there is a specifically-identified emergency at any of the companies, please call me or Norm.

Thank you,

Monica

**Monica K. Loseman**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5784 • Fax +1 303.313.2828
MLoseman@gibsondunn.com • www.gibsondunn.com

**Monica K. Loseman**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5784 • Fax +1 303.313.2828
MLoseman@gibsondunn.com • www.gibsondunn.com

---

**From:** Bartley, Ryan
**Sent:** Tuesday, March 31, 2020 11:05 AM
**To:** Nestor, Michael ; Loseman, Monica K. ; 'Pernick, Norman'
**Cc:** Patton, James ; Brady, Robert ; Barry, Joseph ; Shore, Christopher (cshore@whitecase.com) ; Pfeiffer, Brian (brian.pfeiffer@whitecase.com)
**Subject:** RE: Zohar

[External Email]
Monica and Norm
Yesterday, Judge Owens confirmed that Ms. Tilton's resignations as manager or director of the Portfolio Companies were effective as of March 21, 2020, and also directed Ms. Tilton to cooperate reasonably and in good faith to transition ownership and control of the Portfolio Companies to the Zohar Funds, consistent with the statements in her March 21 resignation letter.

At present,  does not have a manager. We understand from ████████████, and as Ms. Tilton is fully aware, ██████████████████████████████████████████ but ████████ is constrained by the ██████████████████████████ which prevents ████████████ from acting. The inability of ████████████ to ██████████████████████ is value destructive and must be rectified.

On Friday, March 27, we advised you that the Zohar Funds would install Zohar III, Corp., one of the Debtors in the Chapter 11 Cases, as the manager ██████████████. Attached is a consent of the members of ████████ to appoint Zohar III, Corp. as manager of ████████. We request ██████████████████████, as member of ████████ execute and return this consent to us by 4:00 p.m. (ET) on March 31.

The Zohar Funds are moving forward with appointing new managers and directors at the Zohar Funds at the other Portfolio Companies as well. For the companies where Zohar and Ark/Octaluna assert ownership interests, during the interim period where we are awaiting the appointment of replacement managers and directors, we expect that Ms. Tilton will advise Mr. Katzenstein of any immediate actions that need to be taken by the Portfolio Companies for which the remaining management team is not authorized to act to determine how best to proceed. For the companies where

Ark/Octaluna are not equityholders, if for any reason Ms. Tilton needs to contact any employees or officers of those companies, she should obtain authorization from the new directors and managers before doing so.

We will ask Mr. Katzenstein to share this with Ms. Tilton directly, as well.



**Ryan M. Bartley, Partner**
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.5007 | F: 302.576.3464
RBartley@ycst.com | www.youngconaway.com | vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

**From:** Nestor, Michael <mnestor@ycst.com>
**Sent:** Friday, March 27, 2020 11:25 AM
**To:** Loseman, Monica K. (MLoseman@gibsondunn.com) <MLoseman@gibsondunn.com>; 'Pernick, Norman' <NPernick@coleschotz.com>
**Cc:** Patton, James <jpatton@ycst.com>; Brady, Robert <RBRADY@ycst.com>; Barry, Joseph <jbarry@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Shore, Christopher (cshore@whitecase.com) <cshore@whitecase.com>; Pfeiffer, Brian <brian.pfeiffer@whitecase.com> (brian.pfeiffer@whitecase.com) <brian.pfeiffer@whitecase.com>
**Subject:** Zohar

Monica and Norm:

Attached please find the CVs for ████████████████████████, the director candidates selected by the Zohar Funds for ████████████████████████, respectively. In addition, the Zohar Funds have determined to appoint Zohar III Corp. as the managing member of ████████████████████████████████. Please indicate your client's support. We will forward the applicable documents by separate communication.

Best,
Mike



**Michael Nestor, Partner & Vice Chairman**
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.6699 | C: 302.559.4799
mnestor@ycst.com | www.youngconaway.com | vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this

message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

**<u>EXHIBIT G</u>**

**Email from Ms. Tilton's Counsel in Response to Omnibus Consent
Agreement Transitioning Control of the Portfolio Companies**

**Healy, Elaine**

| | |
|---|---|
| **From:** | Loseman, Monica K. <MLoseman@gibsondunn.com> |
| **Sent:** | Monday, March 23, 2020 6:51 PM |
| **To:** | Nestor, Michael |
| **Cc:** | Pernick, Norman; Patton, James; Brady, Robert; Barry, Joseph; Bartley, Ryan; Shore, Christopher (cshore@whitecase.com); Pfeiffer, Brian <brian.pfeiffer@whitecase.com> (brian.pfeiffer@whitecase.com); tlauria@whitecase.com; Katzenstein, Mike (Mike.Katzenstein@fticonsulting.com) |
| **Subject:** | Re: Zohar - Omnibus Consent Agreement |

Mike,

We are not executing this document. You have articulated no need for it or the relief you apparently intend to seek from the Court. We believe the document is unnecessary and wildly over broad in any event. Ms. Tilton made clear that she and the Patriarch Stakeholders have withdrawn their objections to the Zohars' assertions of beneficial ownership of the equity recorded in their names, consistent with declaratory relief sought by the Zohars in the March 10 complaint. The Zohars have had full and complete control since delivery of the letter; the Zohars can vote their equity to install a Board, new managers, stand on previously executed consents, etc. You need nothing further from Ms. Tilton or any Patriarch entity.

We further dispute your characterization of Ms. Tilton's resignation. For example, you had notice from Ms. Tilton that she could no longer continue making commitments for the companies without extensions of maturities. ██████████ ████████████████████████████████████████ And Ms. Tilton has cooperated/is cooperating with Mr. Katzenstein on transition, even offering to be available to him at anytime as he works through the transition. It becomes increasingly difficult to continue cooperation when efforts to be helpful are met with the vitriol espoused below.

Thank you,

Monica

On Mar 23, 2020, at 4:40 PM, Nestor, Michael <mnestor@ycst.com> wrote:

 [External Email]
Due to the exigence circumstances caused by the Saturday resignation, the Debtors and the Independent Director will be filing a motion to effectuate Ms. Tilton's commitment as set forth in her

1

letter.   Let us know if Ms. Tilton will execute the consent agreement, which would impact the need to move forward with the motion.

Best,
Mike

<image001.jpg>**Michael Nestor**, **Partner & Vice Chairman**
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P:  302.571.6699 | C: 302.559.4799
mnestor@ycst.com | www.youngconaway.com | vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

**From:** Nestor, Michael <mnestor@ycst.com>
**Sent:** Monday, March 23, 2020 2:42 PM
**To:** Loseman, Monica K. (MLoseman@gibsondunn.com) <MLoseman@gibsondunn.com>; 'Pernick, Norman' <NPernick@coleschotz.com>
**Cc:** Patton, James <jpatton@ycst.com>; Brady, Robert <RBRADY@ycst.com>; Barry, Joseph <jbarry@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Shore, Christopher (cshore@whitecase.com) <cshore@whitecase.com>; Pfeiffer, Brian <brian.pfeiffer@whitecase.com> (brian.pfeiffer@whitecase.com) <brian.pfeiffer@whitecase.com>; 'tlauria@whitecase.com' <tlauria@whitecase.com>; Katzenstein, Mike (Mike.Katzenstein@fticonsulting.com) <Mike.Katzenstein@fticonsulting.com>
**Subject:** Zohar - Omnibus Consent Agreement

Monica and Norm – consistent with Lynn Tilton's letter of Saturday and her conversation with Mike Katzenstein a short while ago, attached please find an omnibus consent agreement designed to deliver the committed control to the Zohar Funds with respect to the Group A and Group B Portfolio Companies.   Based upon the fact that Ms. Tilton resigned without any prior notice effective as of Saturday during an unprecedented health and economic crisis, time is of the essence in terms of her execution of the attachment and delivery to the Zohar Funds of the uncontroverted/unconditional authority and control necessary to stabilize the companies.

Best,
Mike

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.