## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Zohar III, Corp., *et al.*,[1] | Case No. 18-10512 (KBO) |
| Debtors. | Jointly Administered |
| | **Hearing Date: June 23, 2020 at 10:30 a.m. (ET)**<br>**Objection Deadline: June 16, 2020 at 4:00 p.m. (ET)** |

### DEBTORS' MOTION, PURSUANT TO BANKRUPTCY RULE 2004, FOR ENTRY OF AN ORDER DIRECTING EXAMINATION OF PATRIARCH PARTIES AND THE PRODUCTION OF DOCUMENTS

Zohar III, Corp. and its affiliated debtors and debtors in possession in the above captioned chapter 11 cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (a) authorizing the Debtors to examine Lynn Tilton, including in her capacity as Designated Tax Director of the Zohar Funds ("Ms. Tilton"), Patriarch Partners, LLC ("Patriarch Partners"), Patriarch Partners VIII, LLC ("Patriarch VIII"), Patriarch Partners XIV, LLC ("Patriarch XIV"), Patriarch Partners XV, LLC (together with Patriarch Partners, Patriarch VIII, and Patriarch XIV, the "Patriarch Managers"), Octaluna, LLC ("Octaluna I"), Octaluna II, LLC ("Octaluna II"), Octaluna III, LLC ("Octaluna III" and, together with Octaluna I and Octaluna II, the "Octaluna Entities"), and Patriarch Partners Management

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is 350 Fifth Avenue, c/o Goldin Associates, LLC, New York, NY 10118.

Group, LLC ("PPMG"), and Patriarch Partners Agency Services, LLC ("PPAS" and collectively with Ms. Tilton, the Patriarch Managers, the Octaluna Entities, and PPMG, the "Patriarch Parties"), and (b) directing the Patriarch Parties to produce to the Debtors documents responsive to the requests for production attached as Exhibit 1 to the Proposed Order (the "Requests").  In support of this Motion,[2] the Debtors respectfully represent as follows:

### PRELIMINARY STATEMENT[3]

1.      A critical facet of the Zohar Funds at their formation was that they would not be responsible for federal income taxes and, instead, that the Octaluna Entities, as holders of the Zohar Funds' preference shares, would bear the tax obligations incidental to the Zohar Funds' business activities.  In June 2016, notwithstanding the unambiguous contractual language prohibiting her from doing so, Ms. Tilton improperly caused the Zohar Funds to be treated as corporations for tax by filing certain forms with Internal Revenue Service and making what is commonly referred to as a "check the box" election ("CTB Election").  The practical effect of Ms. Tilton's CTB Election was to shift the burden for taxes associated with any income generated by the Zohar Funds or the Portfolio Companies from the Octaluna Entities, and ultimately Ms. Tilton (who had contractually committed to bear that liability), to the Zohar Funds.

2.      The Settlement Agreement restored the parties to the *status quo ante* CTB Election by appointing Ms. Tilton as Designated Tax Director, in which role she would again be responsible for the taxes associated with income generated by the Zohar Funds, including via sales or refinancing of debt and equity in the underlying Portfolio Companies.  But Ms. Tilton again

---

[2] Capitalized terms used but not otherwise defined in this Motion shall have the meaning given to such terms in the *Declaration of Marc S. Kirschner in Support of Chapter 11 Petitions* [Docket No. 6] (the "Kirschner Declaration"), *Declaration of Lynn Tilton in Support of Chapter 11 Petitions* [Docket No. 5] (the "Tilton Declaration"), or the *Order Approving and Authorizing the Settlement Agreement By and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class* (the "Settlement Order") [Docket No. 266], and the Settlement Agreement (as defined in the Settlement Order) [Docket No. 266, Ex. C], as applicable.

[3] Capitalized terms not described in this section shall have the meanings ascribed to them below.

reneged on her tax commitments when on March 23, 2020, she purportedly resigned from her position as Designated Tax Director, the result of which was to allegedly foist on the Zohar Funds the responsibility for tax reporting compliance that she agreed to be responsible for under the Settlement Agreement.  Thus, in the middle of active sale processes for the Portfolio Companies that may have imminent tax implications for the Zohar Funds and with impending 2019 tax reporting obligations, the Zohar Funds now find themselves in a position not contemplated by the Zohar transaction documents or Settlement Agreement and which they never should have been in, namely, as entities subject to taxation.  Nevertheless, placed in such circumstances by Ms. Tilton, the Zohar Funds now are in need of the critical historical accounting and tax information Ms. Tilton and the other Patriarch Parties used to address the Zohar Funds' tax reporting obligations.

3.    To date, Ms. Tilton has failed to provide the records necessary for the Debtors to prepare federal tax returns for the Zohar Funds and to manage certain additional reporting obligations—duties that that were Ms. Tilton's court-ordered responsibility until she abandoned them on March 23, 2020.  To be sure, the Debtors have endeavored during these cases to understand the taxes incidental to the Zohar Funds' structure and activities.  Throughout these cases, taxes have been a "black box" wielded by Ms. Tilton as leverage to remain in control of the Portfolio Companies.  The Debtors have never been provided a comprehensive picture of the Zohar Funds' or the Portfolio Companies' tax situation.  The Debtors have instead received only a narrow and incomplete production of tax-related document from the Patriarch Parties,[4] consisting primarily of three (3) previously-filed federal tax returns for the Zohar Funds, a limited subset of Forms K-1 issued by Portfolio Companies, and Portfolio Company-level tax returns for certain

---

[4] Much of the documentation the Debtors have received in these productions relating to the Zohar Funds' and Portfolio Companies' taxes and financial information is so heavily redacted that it lacks any relevance and is virtually incomprehensible.

Portfolio Companies selected by Ms. Tilton.  Of course, as the person responsible for preparing

and signing the Zohar Funds' tax returns (as well as the person who oversaw the creation of the

Zohar Funds and the acquisition or origination of all, or at least substantially all, of the assets about

which the Zohar Funds now seek critical information), Ms. Tilton and the Patriarch Parties that

she controls and through which she transacted with the Zohar Funds and the Portfolio Companies

are uniquely equipped to respond to all of the Debtors' information requests.  The information to

date withheld from the Debtors renders it impossible for them to assess their purported tax

situation, let alone satisfy any purported tax reporting obligations.

4.      To effectively administer their estates, the Debtors need historical accounting and

tax information to assess the impact of Ms. Tilton's resignation as Designated Tax Director.

Assuming only for purposes of this Motion the validity and enforceability of such resignation,

such information is also needed to evaluate and fulfill their current tax liabilities and reporting

obligations associated with sales of the Portfolio Companies in which they have invested, as well

as any current or prospective tax and reporting obligations of the Zohar Funds arising from their

business operations.  This information includes, without limitation, the tax basis of each asset

(including, equity interests in each Portfolio Company and the indebtedness extended to the

Portfolio Companies) of each Zohar Fund and underlying tax attributes of any tax partnership of

which a Zohar Fund may be deemed a partner.

5.      Time is of the essence for the Debtors to obtain this accounting and tax information.

The deadline for filing federal tax returns is fast approaching on July 15, 2020.  The Debtors plan

to seek a three (3) month extension (an extension that will extend the filing deadline to the

maximum allowed date); however, given the lack of historic information to date and the complex

nature of the Zohar Funds, the Debtors believe they will need all or more of this timeframe to

conduct an appropriate analysis and prepare related filings.  Moreover, with the monetization

milestone guidelines in place and multiple active sale processes in progress, anticipated sales of Portfolio Companies are imminent.  The Debtors need the information sought in <u>Exhibit 1</u> to the Proposed Order now to engage in meaningful tax evaluation of these transactions as well as to comply with tax liabilities and reporting obligations arising out of Portfolio Company sales.

6.      In light of the foregoing, the Debtors are not asking the Court to authorize a stereotypical Bankruptcy Rule 2004 "fishing expedition."  Rather, the targeted Requests seek the production of documents held and maintained by Ms. Tilton or her controlled Patriarch Parties, and that are immediately necessary for the Debtors to, among other things, administer these Chapter 11 Cases, understand the nature and extent of their current tax reporting obligations and liabilities, if any, and otherwise prepare and file their tax returns.  Good cause therefore exists for the requested Bankruptcy Rule 2004 examination of the Patriarch Parties, and the Motion should be granted.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Bankruptcy Rule 2004 and Local Rule 2004-1.

# BACKGROUND

## A.    General Background

9.    On March 11, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  General information about the Debtors and the events leading up to the Petition Date can be found in the Kirschner and Tilton Declarations.

## B    The Zohar Funds' Purported Tax Obligations

10.    Upon information and belief, for taxable years 2003 through 2015, Ms. Tilton filed tax returns consistent with the Zohar Funds being treated as disregarded entities and during that time, the Zohar Funds were not taxed on any interest, dividends, or distributions they received from their various Portfolio Company investments.  This course of conduct was, notwithstanding other misconduct by Ms. Tilton that is at issue in related litigation between the Zohar Funds and Ms. Tilton, wholly consistent with the Zohar Funds' formation documents and the indentures entered into by the Zohar Funds when they issued notes to investors.

11.    However, in June 2016, Ms. Tilton and the Octaluna Entities made the CTB Election causing each of the Zohar Funds to be taxable corporations.[5]  As a result, for United States federal income tax purposes, all items of income, gain, and loss no longer flowed through to entities controlled by Ms. Tilton.  Instead, each of the Zohar Funds became a taxable entity and have been subject to tax as such since that time.

---

[5] Even the CTB Election is shrouded in uncertainty as, after the CTB Election, the equity interests in Portfolio Companies owned by the Zohar Funds was not reflected on tax returns filed on behalf of the Zohar Funds.

**C.      The Litigated Contested Matters and Ms. Tilton's Appointment as Designated Tax Director**

12.      Shortly after the commencement of these cases, various parties-in-interest, including the Debtors, MBIA, U.S. Bank, the U.S. Trustee, the Zohar III Controlling Class, and the Patriarch Stakeholders engaged in litigation, including a contested collateral management agreement rejection motion, a motion for relief from the automatic stay, and two (2) motions to dismiss the cases or appoint a chapter 11 trustee (the "Litigated Contested Matters").

13.      As the result of the arduous good-faith, in-person mediation efforts overseen and facilitated by a Court-appointed mediator, the parties agreed to a comprehensive resolution of the Litigated Contested Matters, the terms of which are embodied in the Settlement Agreement.  On May 21, 2018, the Court entered the Settlement Order approving the Settlement Agreement.

14.      The Settlement Agreement, among other things, provided that Ms. Tilton would remain the Designated Tax Director of each of the Debtors solely for the purpose of (a) managing the tax liability and reporting of the Debtors and the Group B Portfolio Companies, (b) managing the tax reporting of the Group A Portfolio Companies, and (c) with respect to the Group B Portfolio Companies, managing any event causing cancellation of debt income including to manage the timing of sale of the Group B Portfolio Companies, forgiveness of debt and realizing gains and losses.[6]  Additionally, as the Designated Tax Director, Ms. Tilton was required to continue to bear the tax liability associated with ownership of the Debtors, the Group B Portfolio Companies, and the Group A Portfolio Companies, including with respect to any Group A Portfolio Company transactions.[7]  In other words, her appointment as Designated Tax Director would serve potentially

---

[6] *See* Settlement Agreement at ¶2.

[7] *Id.*

to remedy the damage to the Zohar Funds arising from the various breaches occasioned by the CTB Election.

**D.      Ms. Tilton's Resignation as the Designated Tax Director**

15.      On March 21, 2020, following the entry of the Court's *Order Establishing Certain Guidelines and Milestones in Furtherance of the Monetization Process for the Group A and Group B Portfolio Companies* [Docket No. 1500], Ms. Tilton emailed a letter to the Debtors' Independent Director and Chief Restructuring Officer, advising them of her immediate resignation as the chief executive officer of certain Portfolio Companies and as the sole director or manager, as applicable, of all of the Group A and Group B Portfolio Companies, other than Dura.  Two (2) days later, on March 23rd, Ms. Tilton transmitted a second letter to the Debtors' Independent Director and Chief Restructuring Officer purporting to resign as Designated Tax Director.

16.      Since that time, the Debtors have worked diligently to find new leadership to replace Ms. Tilton at each of the Portfolio Companies and stabilize the Portfolio Companies to guide them through the current pandemic and their current or impending sale processes.

17.      Now the Debtors are turning to the next hurdle posed by Ms. Tilton's abrupt actions: preparing and filing their taxes.  In light of the COVID-19 pandemic, the Internal Revenue Service announced that taxpayers generally have until July 15, 2020, to file and pay federal income taxes.  The Debtors intend to seek a further three (3) month extension of this deadline to October 15, 2020, the latest date to which the filing deadline can be extended.

18.      As noted above, Ms. Tilton historically arranged for preparation of the Zohar Funds' tax returns and expressly assumed the obligation to file such returns as the Designated Tax Director.  Neither the Independent Director nor the Chief Restructuring Officer had a role in preparing the Zohar Funds' tax returns, nor do they currently (or did they ever) possess the books of accounts and records needed to properly prepare and file the Zohar Funds' tax returns.  Given

that Ms. Tilton unilaterally abandoned her role as Designated Tax Director, she and her related Patriarch Parties should be required to turn over these tax and accounting records so the Zohar Funds can satisfy their tax reporting obligations.

**E.     The Debtors' Attempts to Obtain Their Tax Records from Ms. Tilton**

19.     Throughout these cases and prior to filing this Motion, the Debtors made multiple requests to Ms. Tilton for information with respect to various historical accounting and tax information for the loans and equity interests in the Portfolio Companies in which the Zohar Funds have an interest.

20.     To date, Ms. Tilton has provided limited and incomplete information in response to these requests.  The information provided included only the Zohar Funds' actual prior three (3) tax returns, statements of aggregate loan and equity values, and certain Ms. Tilton-selected Forms K-1.  Of course, as the person responsible for preparing the Zohar Funds' taxes (as well as the architect and initial and long-serving collateral manager of the Zohar Funds), Ms. Tilton and the entities she controls have no legitimate reason not to have the information the Zohar Funds now need to address their immediate tax evaluation needs and reporting obligations.  In this regard, there is not anyone better situated under the circumstances to provide that information to the Zohar Funds.

21.     On June 4, 2020, counsel for the Debtors and the Patriarch Parties participated in a telephonic meet and confer concerning the Requests.  As of the date hereof, the Debtors and the Patriarch Parties could not reach an agreement related to the production of the requested documents and other information to the Debtors.  Since the information requested by the Debtors directly relates to the Debtors' assets, liabilities, and financial affairs, the requested examination of the Patriarch Parties and production of documents is both warranted and squarely within the intended scope of Bankruptcy Rule 2004 examinations.

**RELIEF REQUESTED**

22.     By this Motion, the Debtors request entry of the Proposed Order, (i) authorizing the

Debtors to examine the Patriarch Parties and (ii) requiring the Patriarch Parties to (a) provide

written responses and objections to the Requests no later than seven (7) days after the Proposed

Order is entered and (b) produce, no later than fourteen (14) days after the Proposed Order is

entered, documents responsive to the Requests, without the need for further Court order.

**BASIS FOR RELIEF REQUESTED**

23.     Bankruptcy Rule 2004 provides that "[o]n motion of any party in interest, the court

may order the examination of any entity" relating to, among other things, "the acts, conduct or

property or to the liabilities and financial condition of the debtor, or to any matter that may affect

the administration of the debtor's estate." Fed. R. Bankr. P. 2004(a) & (b).

24.     The purpose of Bankruptcy Rule 2004 is to assist a party in interest, such as the

Debtors, in determining the nature and extent of the bankruptcy estate, uncovering assets, and

examining transactions. *See In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009);

*In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016); *see also In re*

*Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).[8]

25.     Bankruptcy Rule 2004(b) further states that the examination may relate to, among

other things, "the acts, conduct, or property or to the liabilities and financial condition of the debtor,

or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P.

2004(b). *See, e.g., In re E. & Juniper Co-op. Ass'n., Inc.,* No. 08-00734, 2008 WL 5381448, at *1

---

[8] The Debtors are parties in interest who may utilize Bankruptcy Rule 2004.  11 U.S.C. §1109(b) ("A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."); *see also* 7 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1109.02[1] (16th ed. 2018) ("In general, a 'party in interest' under section 1109(b) is any person with a direct financial stake in the outcome of the case, including the debtor, any creditor and any equity participant.").

(Bankr. D.D.C. Dec. 18, 2008) (ordering a third-party to produce "federal and local tax returns (including all schedules, forms, and worksheets)" and submit for examination pursuant to Bankruptcy Rule 2004); *In re Xiang Yong Gao*, 559 B.R. 319, 322 (Bankr. E.D.N.Y. 2016) (observing the trustee obtained the debtor's personal tax returns under Bankruptcy Rule 2004). Such an examination:

> may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan

*Id.* Courts have consistently emphasized that the scope of a Bankruptcy Rule 2004 examination is extremely broad. *See, e.g.*, *In re Washington Mut.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) ("The scope of a Rule 2004 examination is unfettered and broad . . . [and] is commonly recognized as more in the nature of a 'fishing expedition.'" (internal citations omitted)); *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) ("[I]t is well settled that the scope of examination allowed under Rule 2004 is broader than discovery allowed under the Federal Rules of Civil Procedure and may be in the nature of a 'fishing expedition.'").

26.     Good cause for a Bankruptcy Rule 2004 examination exists when there is a reasonable basis for the examination and the subject matter of the examination is necessary to establish the movant's claim, or denial of the examination would cause undue hardship or injustice. *See In re Millennium Lab Holdings II, LLC*¸ 562 B.R. 627, 620 (Bankr. D. Del. 2016).   The decision to authorize Bankruptcy Rule 2004 discovery is within the sound discretion of the Court. *See*, *e.g.*, *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002).   In deciding whether to exercise that discretion, courts "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Drexel Burnham Lambert Grp.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).

27.     Here, good cause exists for the requested examination of Ms. Tilton.  The Debtors need the requested accounting and tax information to evaluate the Debtors' assets and liabilities, comply with their tax reporting obligations,[9] and to administer a central aspect of these Chapter 11 Cases—the Monetization Process.  The Debtors do not have anywhere near the information necessary to evaluate the Debtors' current tax liabilities and fulfill all of their tax reporting obligations.  Ms. Tilton historically took responsibility for maintaining the Zohar Funds' tax and accounting records, preparing their tax returns, and managing other reporting obligations with respect to taxes.  It is unjust for Ms. Tilton to abandon her duties as Designated Tax Director under the Settlement Agreement while at the same time withholding the information she historically used and maintained, including through her related and controlled Patriarch Parties, to fulfill those duties.  Without this information, the Debtors believe it is impossible for the Debtors to meaningfully evaluate their current tax obligations and fulfill the duties abandoned when Ms. Tilton purported to resign as Designated Tax Director.

28.     Accordingly, the Debtors specifically seek via the Requests, information related to following general categories: (a) historic tax filings for or associated with the Zohar Funds, (b) forms and reports issued to the Zohar Funds by the Portfolio Companies regarding the Zohar Funds interests in such companies, (c) the tax basis for the loans to and equity interests in the Portfolio Companies, and (d) other tax attributes related to tax partnerships in which the Zohar Funds are partners.  Without this information, the Debtors will be unable to meaningfully evaluate present tax obligations, reporting requirements and the impact of sales through the Monetization Process.

---

[9] *See Office of the United States Trustee's Operating Guidelines for Chapter 11 Cases for Region 3*, revised January 8, 2020, p. 2 (providing "[a]ll tax returns and reports for post-petition obligations shall be timely filed and accompanied by payment in full of any liability").

29.     It is critical for the Debtors to obtain this information as soon as practicable.  The Debtors must evaluate their current tax obligations and prepare their 2019 tax returns.  They are currently due on July 15, 2020.  Although the Debtors intend to seek a three (3) month extension to October 15, 2020 to file the returns, given the anticipated amount of information, the Debtors believe that they will need this entire extension to fully evaluate their complex tax liabilities and obligations once they finally receive the requested information.  Failure to file the returns by the extended deadline will expose the Zohar Funds to potential penalties for such failure.  Moreover, with the monetization milestone guidelines in place, the Debtors anticipate that sales of certain Portfolio Companies are imminent.

30.     The information sought by the Debtors pursuant to the Requests clearly falls within the scope of a Bankruptcy Rule 2004 examination because the Debtors need such information to, at a minimum, (a) review and assess data regarding their Portfolio Company assets, particularly the equity assets and any income deriving from those assets, (b) prepare and file their tax returns pursuant to applicable federal regulations, and (c) analyze potential tax consequences based on sales of Debtors' assets through the Monetization Process.  This rationale constitutes a *prima facie* permissible purpose consistent with Bankruptcy Rule 2004.  *See* Fed. R. Bankr. P. 2004(b) (the scope of an examination extends to the "property . . . liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate"); *In re E. & Juniper Co-op. Ass'n., Inc.,* No. 08-00734, 2008 WL 5381448, at *1; *In re Xiang Yong Gao*, 559 B.R. at 322.

31.     Timely production of this information is critical for the administration of the Debtors' estates.  Accordingly, the Debtors respectfully request the Court grant the Motion.

## RESERVATION OF RIGHTS

32.    The Debtors reserve their right to amend or supplement the factual bases or legal arguments set forth herein, including through any responsive or other supplemental pleading.  The Debtors further reserve their right to seek additional documents or examination of additional parties upon review of the documents produced as a result of this Motion and entry of an order with respect thereto.

33.    For the avoidance of doubt, the Debtors reserve all rights with respect to the various actions that Ms. Tilton has taken to abandon her commitment to ensure that the Zohar Funds were not subject to federal income tax, including her purported March 2020 "resignation" as Designated Tax Director, and all actions taken to foist her tax obligations onto the Debtors.  Nothing in this Motion shall be construed as a waiver or admission by the Debtors regarding any right, claim or argument in connection with tax payments by, for or on behalf of the Zohar Funds or the Portfolio Companies.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 2004-1

34.    Pursuant to Local Rule 2004-1(b), the Debtors' undersigned counsel certifies that they have conferred with the Patriarch Parties' counsel regarding the Requests.  As of the filing of this Motion, the parties are unable to come to an agreement regarding an examination and date, time and scope of document production.

## NOTICE

35.    The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to U.S. Bank, as indenture trustee; (iii) counsel to MBIA Insurance Company; (iv) counsel to the Zohar III Controlling Class; and (v) counsel to the Patriarch Parties.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

26582165.11

## CONCLUSION

36.    For the foregoing reasons, the Debtors respectfully request that the Court enter an

order, in substantially the form of the Proposed Order attached hereto as Exhibit A, thereby

granting the Motion and such other and further relief as the Court deems is just and proper.

Dated: June 9, 2020
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Erin D. Edwards*
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No.. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4421)
Erin D. Edwards (No. 4392)
Ryan M. Bartley (No. 4985)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

*Counsel to the Debtors*
*and Debtors in Possession*