# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Zohar III, Corp., *et al.*,[1] | ) | Case No. 18-10512 (KBO) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Hearing Date: October 14, 2020 at 1:00 p.m. (ET)** |
|  | ) | **Objection Deadline: September 30, 2020 at 4:00 p.m.** |
|  | ) | **(ET)** |

**MOTION OF CERTAIN PORTFOLIO COMPANIES OF THE DEBTORS FOR AN
ORDER STAYING LITIGATION AGAINST THE PORTFOLIO COMPANIES UNDER
11 U.S.C. § 105 AND 11 U.S.C. § 362**

Certain portfolio companies of the Debtors[2] (collectively, the "Portfolio Companies" or

"Movants") move for entry of an order, pursuant to Sections 105 and 362 of Title 11 of the

United States Code (the "Code"), extending the automatic stay of Section 362 of the Code to stay

the state court actions against the Portfolio Companies commenced in the Supreme Court of the

State of New York (the "State Court Actions") by Lynn Tilton and her affiliated entities

(collectively, "Patriarch"), and in support thereof state as follows.[3]

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119) (collectively, the "Zohar Funds"). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] 12 Portfolio Companies are filing this Motion: 180s, Inc., FSAR Holdings, Inc., Glenoit Universal, Ltd., Gorham Paper and Tissue, LLC, IMG Holdings, Inc., Intrepid U.S.A., Inc., Libertas Copper, LLC, RM Acquisition, LLC, Scan-Optics, LLC, Snelling Holdings, LLC, UI Acquisition Holding Co., and Vulcan Engineering Co.

[3] "Patriarch Stakeholders" hereinafter refers to Ms. Tilton and the following entities: Ark Angels, LLC, Ark Angels II, LLC, Ark Angels III, LLC, Ark Angels VIII, LLC, Ark Investment Partners II, LP, ARK II CLO 2001-1, Ltd., LD Investments, LLC, Octaluna LLC, Octaluna II, LLC, Octaluna III, LLC, Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners, XIV, LLC, Patriarch Partners

**PRELIMINARY STATEMENT**

1.      Ms. Tilton commenced these Chapter 11 Cases to dispel the cloud of litigation surrounding the Zohar Funds and their portfolio companies in order to permit the monetization of the portfolio companies and the maximization of value.  But now that Ms. Tilton no longer operates the Zohar Funds, she has reversed course and embarked on a campaign of aggressive litigation that has been disruptive to the Court-ordered Monetization Process.  The latest salvo in that campaign is Patriarch's filing of 17 separate State Court Actions, including 14 against the Portfolio Companies here, even though the claims alleged arise in and relate to the Chapter 11 Cases, ███ ██████████████████████████, and Patriarch's own recent motion in this Court.

2.      The automatic stay should be extended to the State Court Actions because they undermine the goals of the Chapter 11 Cases and directly impair property of the Debtors' estates. As Ms. Tilton has previously told this Court, the cloud of litigation will interfere with the monetization of the Portfolio Companies.  Unless a stay is granted, this proliferation of parallel actions will consume not only the resources of the Portfolio Companies but the time and resources of this Court and the courts in New York, and risk inconsistent rulings of law and determinations of fact.  Absent a stay, the State Court Actions will continue to destroy value to the detriment of all stakeholders, including employees and vendors, and prevent the orderly and equitable distribution of the Debtors' estates.

---

XV, LLC, Patriarch Partners Management Group, LLC, Patriarch Partners Agency Services, LLC, and Zohar Holdings, LLC.  The following Patriarch Stakeholders have asserted claims in the State Court Actions: ARK II CLO 2001-1, Ltd., Lynn Tilton, Octaluna LLC, Octaluna II LLC, Octaluna III LLC, Patriarch Partners Agency Services, LLC, and Patriarch Partners Management Group, LLC.  Copies of the various complaints (or motions in lieu of complaint) in the State Court Actions against the Portfolio Companies are attached as exhibits to the Declaration of Sean H. McMahon ("McMahon Decl." ¶ 2).

## JURISDICTION AND VENUE

3.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

1334, and the *Amended Standing Order of Reference from the United States District Court for the*

*District of Delaware*, dated as of February 29, 2012.  This is a core proceeding pursuant to 28

U.S.C. § 157(b)(2).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice of the

United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Movants consent

to entry of a final order by the Court in connection with the Motion to the extent it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution.  Venue is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are sections 105(a) and 362

of the Bankruptcy Code.

## RELEVANT FACTS

### A.      Patriarch Files the State Court Actions

5.      Between June 19 and July 14, 2020, Patriarch commenced the 17 State Court

Actions in New York Supreme Court against 15 of the Zohar Funds' portfolio companies.  *See*

McMahon Decl. ¶ 2.

6.      To date, 13 of the State Court Actions have been removed to the United States

District Court for the Southern District of New York, where they are pending before or have been

referred to Judge Andrew L. Carter, Jr. as related cases.[4]  *See id.* ¶ 3.

---

[4] Undersigned counsel represents the 12 Portfolio Companies filing this Motion, which are the subject of 14 State Court Actions (one of which, against Libertas Copper, LLC, has not been served).  Patriarch has voluntarily discontinued the state court action against another portfolio company (Natura Water, LLC).  The two remaining portfolio companies subject to state court actions (Croscill Home, LLC and Heritage Aviation, Ltd.) have not retained the undersigned counsel.  *See* McMahon Decl. ¶ 2.

7.      Between July 24, 2020 and September 3, 2020, the Portfolio Companies submitted letters to Judge Carter seeking pre-motion conferences on motions to transfer the removed actions to the District of Delaware, where they may be referred to this Court. *See id.* ¶ 4.

8.      On July 17, 2020, Patriarch filed remand motions in three of the removed actions. *See* McMahon Decl. ¶ 5.  The Portfolio Companies in those actions filed their oppositions to the remand motions on August 31, 2020, and Patriarch's reply date is September 10, 2020. *See id*.  Patriarch has indicated that it intends to move for remand of the remaining actions. *See id*. ¶ 6.

**B.      Ms. Tilton Filed These Chapter 11 Cases to Stop Value-Destructive Litigation Casting a Cloud of Uncertainty over the Monetization of the Portfolio Companies**

9.      Ms. Tilton has already explained why the State Court Actions are at odds with the central purposes of these Chapter 11 Cases.  She swore at the commencement of these Chapter 11 Cases that "I determined it was in the best interest of the Zohar Funds and all the stakeholders to voluntarily file these Chapter 11 Cases to permit the bankruptcy court to oversee an *orderly process* of unlocking the value in the Zohar Funds through sales and refinancings of the Portfolio Companies. *Only through this process* will Noteholders be made whole." Dkt. No. 5 ¶ 7 (emphasis added).  According to Ms. Tilton, "the full value of the cash flows from Portfolio Companies sales or refinancings . . . is locked as a result of protracted litigations." *Id.* ¶ 9.

10.      The "cloud of uncertainty" created by prepetition litigation, Ms. Tilton stated, has "*directly interfered* with my recent efforts to sell at least one Portfolio Company and to obtain financing for several others.  I understand from my negotiations with potential buyers and lenders that though they are more than willing to engage in sale and refinancing transactions, they will only do so absent the ligation risk and with certainty that assets and equity will be delivered to them free and clear with no ongoing risk." *Id.* ¶ 6 (emphasis added).  "[T]he current litigious

4

environment," Ms. Tilton reiterated, "has made it very difficult to sell or refinance the Portfolio Companies, while maximizing their value." *Id.* ¶ 102.

11.     Marc Kirschner, then the Zohar Funds' Chief Restructuring Officer, testified: "I have been informed that the litigation has cast a cloud over the 'Portfolio Companies' . . . . This cloud of uncertainty has resulted in several of these Portfolio Companies facing difficulty in obtaining the financing necessary to maximize their value.  Additionally, I understand that *the Debtors' ability to monetize their investments is impaired by the litigation quagmire.* . . . For the Debtors to achieve success, the fighting must end.  The Debtors have filed these cases to find equilibrium and directional bearing, end the distracting and expensive litigation, and work with stakeholders under this Court's supervision to maximize value for all stakeholders. Without the protection of this Court, the Debtors will continue adrift, *the litigation will have no end, and value will continue to deteriorate* to the detriment of all stakeholders." Dkt. No. 6 ¶ 14 (emphasis added). "By commencing these Chapter 11 Cases," Mr. Kirschner added, "the Debtors intend for the automatic stay to offer the 'breathing spell' that is axiomatic with every bankruptcy filing to quell the hotbed of litigation. Now that all of the Debtors' assets are under the supervision of this Court and pending litigation is stayed, the stakeholders can work to find common ground on a path forward.   The Debtors are in desperate need of more consensus building and less value destruction." *Id.* ¶ 39.

12.     Ms. Tilton has since reiterated that she "initially filed these Chapter 11 cases because she believed it was the only path forward to monetize the Portfolio Companies for the benefit of all stakeholders.  Years of litigation initiated by Zohar Fund noteholders, among other things challenging ownership of the Portfolio Companies, had the disastrous effect of scaring off buyers and chilling sales, making it impossible for the Portfolio Companies to be sold or refinanced

in order to repay their debt to the Zohar Funds.  The bankruptcy filing and subsequent Settlement Agreement temporarily placed on hold those value destructive disputes so the Debtors and Ms. Tilton could engage jointly in a process to monetize various Portfolio Companies." Dkt. No. 1182 ¶ 2.  This same logic should compel this Court to extend the automatic stay to the State Court Actions.

13.    During the August 4, 2020 hearing on the Zohar Funds' motion to stay the State Court Actions solely on the basis of the Settlement Agreement, the Court stated that "I agree" with the Zohar Funds that "the State Court suits are at odds with one of the stated purposes of these proceedings which is to centralize the disputes between the parties and maximize value." Dkt. No. 1864 ("Aug. 4 Hr'g Tr.") at 85:12-16.  The Court added that "one of the main goals" of the Monetization Process initiated by the Settlement Agreement is "to sell the portfolio companies as soon as possible for the best price possible free and clear of the part[ies'] disputes and the claims and risks asserted against the portfolio companies by both the debtors and the Patriarch stakeholders." *Id.* at 86:15-20.

**C.    Patriarch's State Court Actions Decentralize the Parties' Disputes, Destroy Value, and Cast a Cloud of Uncertainty over the Monetization of the Portfolio Companies**

14.    The State Court Actions contravene all of the goals at the center of the Chapter 11 Cases.  They have decentralized the parties' disputes across 17 cases filed against 15 portfolio companies.  This flurry of new litigation that destroys value for all stakeholders is the antithesis of a "breathing spell" to "quell the hotbed of litigation."  The State Court Actions have created a new "cloud of uncertainty" that threatens to prevent the sale of the Portfolio Companies "free and clear" of ongoing risk and to impair the Monetization Process overall.  The only difference is that, now that Ms. Tilton no longer operates the Zohar Funds, Patriarch seeks to capture value for itself at the expense of the Zohar Funds, the Portfolio Companies, vendors, employees, and other

stakeholders. Mr. Kirschner was prescient in stating at the commencement of these Chapter 11 Cases that "[l]itigation appears to have taken precedence over the preservation, enhancement and monetization of asset value" (Dkt. No. 6 ¶ 14) – although he may not have realized he was predicting Patriarch's own litigation strategy.

15.    After two-and-a-half years of these Chapter 11 Cases that Ms. Tilton claimed were dedicated to the monetization of the portfolio companies, only two have been sold. *See* Dkt. No. 1182 ¶ 4. Patriarch has raised numerous disputes regarding the Monetization Process, including at one point arguing that this Court did not have jurisdiction to force the sale of the portfolio companies (*see* Dkt. No. 1379 ¶ 3), an argument that this Court swiftly rejected (*see* Dkt. No. 1389 at 66:17-22). It is puzzling why Patriarch continues to throw wrenches into the Monetization Process, including via the State Court Actions that have taken precedence over the preservation, enhancement, and monetization of asset value. So long as the Portfolio Companies are unsold, Patriarch may continue to rack up claims against them for tens of millions of dollars in management fees, administrative agent fees, tax distributions, and indemnification obligations, and the litigation of issues surrounding the Portfolio Companies will, as Ms. Tilton previously testified, continue to have "the disastrous effect of scaring off buyers and chilling sales."

**D.**    ███████████████████████████████████████████
           █████████████████████

           16.    ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

17.     Patriarch's claims in the State Court Actions fall into four general categories.  First, Patriarch claims to be owed management fee and indemnification obligations under the management services agreements the Portfolio Companies executed with Patriarch while Ms. Tilton operated both sets of entities (the "MSAs").  Second, and similarly, Patriarch claims to be owed administrative fees under the credit agreements the Portfolio Companies executed with Patriarch while Ms. Tilton operated both sets of entities (the "Credit Agreements").  Third, Patriarch claims to be owed tax distributions pursuant to the Portfolio Companies' operating agreements or promissory notes executed while Ms. Tilton operated both sets of entities.  Finally, Patriarch (and Ms. Tilton in particular) claims to be owed separate indemnification obligations pursuant to certain Portfolio Companies' governing documents.  ████████████████████

███████████████████████████████████

        **i.**     ████████████████████████████████████

18.     Patriarch claims $22,669,767 in management fees and indemnification obligations under the MSAs with the 12 Portfolio Companies filing this Motion.  *See* McMahon Decl. ¶ 7.  The alleged indemnification obligations relate to Patriarch's prosecution of the State Court Actions.

19.     ████████████████████████████████████████

████████████████████████████████████████████████████

---

5 ████████████████████████████████████████



20.

21.

22.

23.

    ii.

24.    Patriarch claims $700,472 in administrative fees under the Credit Agreements with the Portfolio Companies. *See* McMahon Decl. ¶ 8.

25.  ██████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████

26.  ██████████████████████████████████████████████████████
██████████████████████████████████████████████████████████

27.  ██████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████████████████████████

iii.  ████████████████████████████████████████████
██████████████████

28.  Patriarch claims $2,470,945 in tax distributions from the Portfolio Companies. *See* McMahon Decl. ¶ 10.

29.  ██████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████

30.  ██████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████████████

31.  ██████████████████████████████████████████████████████
███████████████████████████████████████████████████████████



32. ████████████████████████████████████████████

33. ████████████████████████████████████████████

E. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

35.     Patriarch claims $32,101,877 in aggregate damages against all 15 portfolio companies, and $30,287,902 against the Portfolio Companies filing this Motion. *See* McMahon Decl. ¶ 11. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████

**F.     The Court Suggests It Has Jurisdiction to Stay the State Court Actions Under Sections 105 and 362 of the Code**

36.     The sole, narrow issue before the Bankruptcy Court during the August 4 Hearing with respect to the Zohar Funds' motion to stay was whether the Settlement Agreement, on its own, precluded Patriarch from bringing the State Court Actions outside of the Bankruptcy Court. The Court determined the parties had not agreed to such a restriction, but prefaced its ruling by reiterating that "I am not saying that those lawsuits cannot be stayed or that I'm unable to adjudicate them." Aug. 4 Hr'g Tr. at 86:1-2 (emphasis added). The Court added: "For the relief the debtors argue that the State Court suits are at odds with one of the stated purposes of these proceedings which is to centralize the disputes between the parties and maximize value. While I

agree with it for this purpose and believe that it lends support [for] my jurisdiction to oversee the lawsuits and perhaps stay them under Sections 105 and 362, those particular issues are not before me today." *Id.* at 85:15-18. That is the motion Movants now bring.

**G.    Patriarch Brings Its State Court Claims to the Bankruptcy Court**

37.    On September 3, 2020, Patriarch moved this Court for an order deeming Patriarch's claims against the Portfolio Companies in the State Court Actions to be due and payable, and requiring that these claims be paid in full upon the closing of a monetization event (the "September 3 Motion"). *See* Dkt. No. 1912-1. In the September 3 Motion, Patriarch wrote that "[t]o quickly close any monetization transaction, *assure any prospective purchasers that the transaction will not be impeded by further litigation*, and preserve the claims of Patriarch, the Debtors should be compelled to pay Patriarch's claims from the proceeds of any Portfolio Company monetization." *Id.* ¶ 1 (emphasis added). In effect, Patriarch has requested that the Court order the payment of the claims while Patriarch litigates its entitlement to those very same claims in the New York courts.

## LEGAL STANDARDS

38.    11 U.S.C. § 105(a) empowers the Bankruptcy Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 362 provides that a chapter 11 petition "operates as a stay, applicable to all entities, of the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title [and] . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

39.    In the Third Circuit, an action involving non-debtors may be stayed where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be

the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor" or "where stay protection is essential to the debtor's efforts of reorganization." *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997). A preliminary injunction for a stay of an action involving non-debtors is subject to the familiar equitable factors: (1) the likelihood of success on the merits, (2) the extent to which the plaintiff will be irreparably harmed absent a stay, (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is granted, and (4) the public interest. *See Am. Film Techs. v. Taritero (In re Am. Film Techs.)*, 175 B.R. 847, 849 (Bankr. D. Del. 1994).

## ARGUMENT

40.     As Ms. Tilton has testified, it is essential to the Debtors' reorganization efforts that the torrent of litigation outside of this Court stops.  Absent a stay, the depletion of the Zohar Funds' estate and the disruption to the Debtors' monetization efforts will cause irreparable harm and lead to the inequitable distribution of assets, frustrating the purpose of the Code.  The balance of equities and the public interest weigh in favor of enjoining the State Court Actions to promote the centralized resolution of disputes and successful reorganization of the Zohar Funds.

**H.     These Chapter 11 Cases Are Likely to Be a Success, If the Flurry of Litigation Stops**

41.     The first prong of the preliminary injunction standard in the bankruptcy context considers whether there is a reasonable likelihood of a successful reorganization. *See W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 386 B.R. 17, 43 (Bankr. D. Del. 2008) ("*Grace III*"). A stay of non-debtor litigation is proper where, as here, "the litigation could interfere with the reorganization of the debtor." *In re W.R. Grace & Co.*, 115 F. App'x 565, 570 (3d Cir. 2004) ("*Grace II*"). To demonstrate interference with the reorganization, a non-debtor must show that the litigation "is sufficiently likely to have a material effect upon . . . reorganization effort[s]," such that "debtor protection requires an exception to the usual limited scope of the stay." *JNA-1*

*Corp. v. Uni-Marts, LLC (In re Uni-Marts, LLC)*, 404 B.R. 767, 781 (Bankr. D. Del. 2009). That is the case here because, as the Court has recognized, the State Court Actions are at odds with the goal of centralizing disputes and maximizing value.

42.     While courts in the Third Circuit extend the automatic stay to actions against non-debtors under "extreme and unusual circumstances," *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 2004 WL 954772, at *2 (Bankr. D. Del. Apr. 29, 2004) ("*Grace I*"), those circumstances are present in these "novel and complex" cases. Aug. 4 Hr'g Tr. at 90:1-5. As Ms. Tilton has repeatedly testified, the entire purpose of commencing these Chapter 11 Cases was to dispel the litigious environment and litigation risk in order to unlock the value of the Portfolio Companies for all stakeholders through an orderly Monetization Process. Just like the prepetition litigation Ms. Tilton decried, Patriarch's strategy of fragmenting its claims against the Portfolio Companies into 17 separate proceedings outside the ambit of this Court threatens to disrupt the goal of selling the Portfolio Companies as soon as possible, for the best price possible, free and clear of the parties' disputes. If Patriarch were to secure a judgment against a Portfolio Company in one of the State Court Actions prior to its sale, for example, then that sale would no longer be free and clear of Patriarch's claims against the Portfolio Company, ███████████████

███████████████████████████████████████████████

███████ or with respect to the September 3 Motion. This result would undermine the centralization of disputes that is a core purpose of these Chapter 11 Cases, and would have a disruptive effect on the sales process for that Portfolio Company.

43.     The Monetization Process is the core of the Zohar Funds' reorganization efforts. "The purpose served by extending the stay must be consistent with the purpose of the stay itself, that is, to suspend actions that pose a serious threat to a corporate debtor's reorganization efforts."

*In re Irish Bank Resol. Corp.*, 2019 WL 4740249, at *5 (D. Del. Sept. 27, 2019). Allowing protracted, scattershot litigation against the Portfolio Companies in an alternate forum injects significant uncertainty into the Monetization Process, and potential buyers could reasonably be expected to be wary of becoming embroiled in litigation with Patriarch and Ms. Tilton through the acquisition of a Portfolio Company. The Settlement Agreement provision that the Portfolio Companies be sold free and clear of claims like these is meant to address precisely that concern. Moreover, it is common sense that any rational buyer of a business needs to understand the assets and liabilities of the company it is buying, and that a rational buyer may adjust its offer based on those assets and liabilities. The resolution of the State Court Actions ███████████████████ will affect the Portfolio Companies' liabilities relating to the same claims. The determination of these liabilities will clearly impact the value of the company, which will in turn impact the administration of the Monetization Process.

44.     Just as the cloud of uncertainty surrounding the prepetition litigation has directly interfered with the efforts to sell the Portfolio Companies, the cloud of uncertainty surrounding the State Court Actions will continue to interfere with the Monetization Process. The current litigious environment, like the environment that prevailed at the time Ms. Tilton commenced these Chapter 11 Cases, will continue to make it very difficult to monetize the Portfolio Companies while maximizing their value. To the extent this is a "parade of horribles," it is a reasonably foreseeable one, and indeed is the exact same one that Ms. Tilton has decried for years in sworn testimony before the Court. Only a stay of the State Court Actions will end this distracting and expensive litigation that otherwise will continue to deteriorate value to the detriment of all stakeholders.

**I.      The State Court Actions Will Cause Irreparable Harm by Depleting the Assets of the Estate and Preventing Equitable Distribution**

45.     The Zohar Funds, the Portfolio Companies, vendors, employees, and other stakeholders face irreparable harm if the State Court Actions continue to deplete the assets of the estates and prevent the equitable distribution of assets that these Chapter 11 Cases are meant to provide.  A stay of non-debtor litigation is appropriate where it will "deplete or adversely affect property of the estate."  *Grace II*, 115 F. App'x at 570.  Inefficient litigation of more than a dozen cases against the Portfolio Companies outside of the Bankruptcy Court threatens to deplete the assets of the Portfolio Companies, and thus the Zohar Funds' estates.  It will also frustrate the stated purpose of the Chapter 11 Cases, which is to maximize the value of the estates via the Monetization Process.

46.     ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████   There are significant efficiencies in hearing the underlying disputes all at once in this Court.  For example, the Court may permit the use of omnibus objections and consolidated hearings or trials to allow or disallow claims involving common questions of law or fact.  *See* Fed. R. Bankr. P. 3007(d), 7042.  ████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████.

47.    ████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████    In *Grace II*, 115 F. App'x at 570, the Third Circuit approvingly cited *In re Johns–Manville Corp.*, 40 B.R. 219 (S.D.N.Y. 1984). The *Johns-Manville* court spoke to the potential effect that witness testimony could have on the debtor. "Once a witness has testified to a fact, or what sounds like a fact, that witness may be confronted with his prior testimony under oath in a future proceeding directly involving [the debtor], whether or not [the debtor] was a party to the record on which the initial testimony was taken. Once an admission against interest is made, under oath or otherwise, by the agent of a party, that admission stands for all time." *Id.* at 225. ██████████████████████████████

48.    ██████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████    *See Williams v. Reliance Acceptance Corp. (In re Reliance Acceptance Grp., Inc.)*, 2000 WL 33712305, at *5 (Bankr. D. Del. Dec. 6, 2000) ("[Plaintiff's] claims against [a non-debtor] are based on [the non-debtor's] alleged improper conduct engaged in with [the debtor]. The discovery in the litigation will therefore directly implicate [the debtor] and interfere with its ability to conclude the consummation of its Plan. It will also generate duplicate proceedings when [the debtor] addresses the same issues under the Plan's claim resolution

process."); *cf. In re Eagle Enters.*, 265 B.R. 671, 680 (E.D. Pa. 2001) (denying request for relief from automatic stay due to "concerns about judicial economy and the avoidance of duplicitous litigation," where "the basic allegations of wrongdoing against [a non-debtor] are largely the same in both proceedings," and granting relief from the stay would invite "essentially duplicitous litigation with the accompanying risk of inconsistent rulings").

49.     The automatic stay is meant to cease creditor collection efforts of antecedent debts, to protect assets of the debtor's estate, to provide for equitable treatment of all creditors, and to ensure successful reorganization efforts. *See Grace I*, 2004 WL 954772, at *2. That is precisely why Ms. Tilton commenced these Chapter 11 Cases in the first place – to permit the Court to oversee an orderly process of unlocking the value in the Zohar Funds through sales and refinancings of the Portfolio Companies unconstrained by wasteful litigation. As Mr. Kirschner stated, "[t]he Debtors are in desperate need of more consensus building and less value destruction." Patriarch is not the only stakeholder in the Zohar Funds, and the point of these Chapter 11 Cases is to distribute assets fairly and equitably amongst all of the Zohar Funds' creditors. Permitting the State Court Actions to proceed would be tantamount to sanctioning Patriarch's race to state court, which is contrary to the purposes of these Chapter 11 Cases and could work to the detriment of other creditors.

50.     ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████ That is precisely the "duplicative and wasteful" litigation these Chapter 11 Cases are meant to avoid. *N.Y. City Emps' Ret. Sys. v. Ebbers (In re Worldcom,*

*Inc. Sec. Litig.)*, 293 B.R. 308, 334 (S.D.N.Y. 2003). ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

**J.      The Equities and Public Interest Favor Enjoining the State Court Actions**

51.      The balance of harms favors staying the State Court Actions.  Unlike the Portfolio

Companies, Patriarch will not suffer irreparable harm if this injunction is granted.  *See Opticians*

*Ass'n of Am. v. Indep. Opticians of Am.,* 920 F.2d 187, 192 (3d Cir. 1990) (explaining that district

courts must consider "the extent to which the defendant will suffer irreparable harm if [a]

preliminary injunction is issued").  Enjoining the State Court Actions would not require Patriarch

to forego its claims for tax distributions, management and administrative fees, and indemnification

obligations entirely. ████████████████████████████████████████

████████████████████████████████████████████ *See In*

*re Am. Film Techs.*, 175 B.R. at 849 (granting an injunction to stay litigation where the non-moving

party was "not being asked to forego his prosecution against [defendants], only to delay it.");

*Union Tr. Phila., LLC v. Singer Equip. Co. (In re Union Tr. Phila., LLC)*, 460 B.R. 644, 660-61

(E.D. Pa. 2011) (finding that the non-moving party had "failed to identify any harm that [it] would

suffer" where an injunction staying state court proceedings "would be of limited duration").  Any

harm to Patriarch from a delay in prosecuting its claims in the State Court Action would be minimal

– and certainly not irreparable. ███████████████████████████████████

████████████████████████████████████

52.      As Patriarch and the Zohar Funds agreed in the Settlement Agreement, all of

Patriarch's claims that are properly documented will be fully paid through the closing of a

monetization transaction, subject to a later challenge by the Zohar Funds.  *See* Dkt. No. 266-1

¶ 18.  Therefore, staying the State Court Actions will not deprive Patriarch of any funds to which

it is legitimately entitled. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

53.     None of the harm to Patriarch that will result from enjoining the State Court Actions – if indeed there is any – is irreparable.  By contrast, if allowed to proceed, these actions will undermine the central goals of the Zohar Funds' reorganization efforts by disrupting the Monetization Process, decentralizing the underlying disputes, imposing upon the Portfolio Companies the unnecessary cost of protracted and duplicative litigation, and causing the further deterioration of value for all stakeholders.

54.     The public interest also favors enjoining the State Court Actions.  "In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests." *Rehabworks, Inc. v. Lee (In re Integrated Health Servs.)*, 281 B.R. 231, 239 (Bankr. D. Del. 2002); *In re Am. Film Techs.*, 175 B.R. at 849 ("In the context of bankruptcy proceedings, the 'public interest' element means 'the promoting of a successful reorganization.'").  These Chapter 11 Cases have been ongoing for two-and-a-half years already.  The efforts by Patriarch to evade the process it agreed to when commencing these proceedings – efforts which undermine the twin goals of centralizing disputes and maximizing value – are plainly contrary to the interest of the public in fostering a successful reorganization for the Zohar Funds. *See McCartney*, 106 F.3d at 512 ("The centralization of all claims in the bankruptcy court also permits the assets of the debtor's estate to be marshaled for distribution to creditors in an orderly and equitable fashion"); *Rickel Home Ctrs. v. Baffa (In re Rickel Home Ctrs.)*, 199 B.R. 498, 501 (Bankr. D. Del. 1996) (enjoining securities class action suit against non-debtors, except with respect to litigation of motion to

dismiss, because "there is a strong public interest in promoting a successful Chapter 11 reorganization" and "[t]his public interest would be frustrated if the [securities class] action proceeds wholly unimpeded.").

55.     Further, enjoining the State Court Actions will serve the interest of judicial economy, by concentrating Patriarch's claims against the Portfolio Companies in this Court – ███████████████████████████████████████ – rather than requiring the courts of New York to preside over 17 separate actions. *Saxby's Coffee Worldwide, LLC v. Larson (In re Saxby's Coffee Worldwide, LLC)*, 440 B.R. 369, 383 (Bankr. E.D. Pa. 2009) ("[T]he issuance of the injunction may lead to the concentration of litigation in the bankruptcy court with the concomitant beneficial effect of promoting judicial economy.").

## NOTICE

56.     Movants will provide notice of this Motion to: (i) the U.S. Trustee; (ii) counsel to the Patriarch Stakeholders; (iii) counsel to U.S. Bank, as indenture trustee; (iv) counsel to MBIA; (v) counsel to the Zohar III Controlling Class; and (vi) all parties that, as of the filing of this Motion, have requested notice in these Chapter 11 cases pursuant to Bankruptcy Rule 2002.

## CONCLUSION

57.     Movants respectfully request that the Court extend the automatic stay in these cases to encompass and stay the State Court Actions.

WHEREFORE, Movants request entry of an order in the form attached hereto as Exhibit A granting the relief requested herein and such other and further relief as is just and proper.

Dated: September 9, 2020
      Wilmington, Delaware

Respectfully submitted,

TROUTMAN PEPPER HAMILTON SANDERS LLP

*/s/ David B. Stratton*
David B. Stratton (DE No. 960)
David M. Fournier (DE No. 2812)
Hercules Plaza, Suite 5100
1313 N. Market Street, Suite 5100
Wilmington, DE 19801
Tel: (302) 777-6500
Fax: (302) 421-8390
Email: david.stratton@troutman.com
david.fournier@troutman.com

- and -

LATHAM & WATKINS LLP
Christopher J. Clark (*Pro Hac Vice* Pending)
Robert H. Hotz, Jr. (*Pro Hac Vice* Pending)
Sean H. McMahon (*Pro Hac Vice* Pending)
885 Third Avenue
New York, New York 10022
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: chris.clark@lw.com
robert.hotz@lw.com
sean.mcmahon@lw.com

*Attorneys for 180s, Inc., FSAR Holdings, Inc., Glenoit Universal, Ltd., Gorham Paper and Tissue, LLC, IMG Holdings, Inc., Intrepid U.S.A., Inc., Libertas Copper, LLC, RM Acquisition, LLC,\* Scan-Optics, LLC, Snelling Holdings, LLC, UI Acquisition Holding Co., and Vulcan Engineering Co.*
*\* Troutman Pepper Hamilton Sanders LLP is not counsel for RM Acquisition, LLC*

23

BERGER HARRIS LLP

*/s/ Richard I. G. Jones, Jr.*_____
Richard I. G. Jones, Jr., Esq. (DE No. 3301)
David T. Anthony, Esq. (DE No. 5452)
1105 North Market Street, 11th Floor
Wilmington, DE 19801
(302) 655-1140

*Attorneys for RM Acquisition, LLC*