IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*,[1]<br><br>Debtors. | )<br>)<br>)  Chapter 11<br>)<br>)  Case No. 18-10512 (KBO)<br>)<br>)  Jointly Administered<br>)<br>)  **Docket Ref. No. 545**<br>)<br>)  **Hearing Date: October 14, 2020 at 10:00 a.m. (ET)**<br>)  **Obj. Deadline: October 7, 2020 at 4:00 p.m. (ET)** |

**NOTICE OF BINDING PORTFOLIO COMPANY (RAND) TRANSACTION PURSUANT TO PORTFOLIO COMPANY TRANSACTION PROCEDURES**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors"), pursuant to the *Order in Aid of Implementation of the Global Settlement Agreement Approved in These Cases Establishing Certain Procedures for the Independent Director's Approval of Monetization Transactions and Related Relief* [Docket No. 545] (the "Procedures Order"), intend to consummate the transaction (the "Rand Transaction") described herein. The Rand Transaction is not subject to higher and/or better offers or a bankruptcy auction process. This Notice is being provided in accordance with, and sets forth the information required under, the Procedures Order.

    1.    <u>Material Economic Terms and Conditions of the Proposed Rand Transaction</u>. The Rand Transaction contains the following material terms:[2]

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261) ("Zohar III"), Zohar II 2005-1, Limited (8297) ("Zohar II"), and Zohar CDO 2003-1, Limited (5119) ("Zohar I," and together with Zohar III and Zohar II, the "Sellers")). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] The Notice provides a summary of the material terms of the EPA only; in the event of a conflict between the terms of the EPA and the Notice, the terms of the EPA shall govern. A copy of the EPA will be submitted to the Court for *in camera* review. [NOTE TO DRAFT: All quoted sections of EPA to be conformed to execution version before finalizing notice.]

a. RM Technologies, Inc. ("Buyer") has entered into an Equity Purchase Agreement ("EPA") for the acquisition of 100% of the limited liability company membership interests in RM Acquisition, LLC ("Rand" or the "Company" and such interest the "RM Interests") from the Sellers. The Sellers are also agreeing to compromise their outstanding, secured indebtedness owed by Rand in the outstanding principal amount of $58,500,000.

b. Buyer shall acquire the RM Interests free and clear of all Liens,[3] options, proxies, voting trusts or agreements and other restrictions and limitations of any kind (other than (x) applicable federal, state and foreign securities Law restrictions with respect to future transfers and (y) as set forth in Rand's Constituent Documents).[4]

c. Through the Rand Transaction, the Indebtedness (as defined in the EPA) of Rand and its Subsidiaries (as defined in the EPA) specified in the EPA and all Seller Transaction Expenses will be paid from the purchase price as set forth in the EPA. Certain escrow amounts and a representative fund for the benefit of the Seller Representative (which will be Debtor Zohar II 2005-1, Corp.) will also be paid from the purchase price to satisfy post-Closing amounts owed in accordance with the EPA.

d. The Debtors contemplate that the Sellers will receive approximately $15 million to $30 million from the Rand Transaction, with the ultimate amount to be determined by the outcome of certain post-closing target net working capital and closing cash reconciliations, the amount of post-closing expenses of the Seller Representative that are paid, and ultimate distributions from an escrow set up under the EPA as a holdback related to certain indemnification provisions. This amount excludes any recoveries from the Retained Claims or the Patriarch Closing Date Payment.

e. The Sellers shall retain an interest in certain Retained Claims[5] as follows:

---

[3] "Liens" means any lien, mortgage, security interest, pledge, encumbrance, easement, encroachment, defect, exception, covenant, restriction, or other similar restriction.

[4] "Constituent Documents" means, with respect to a specified entity, such entity's certificate or articles of incorporation, organization or formation, bylaws, operating agreement, partnership agreement, limited partnership agreement or other equivalent governing document.

[5] "Retained Claims" means any and all of the claims, actions, suits and proceedings of the Company or any of its Subsidiaries, whether commenced or filed before, at or after the Closing, including any counterclaims, third-party claims, and claims for contribution or indemnification, against any of the Sellers or any of the Sellers', the Company's or any of its Subsidiaries' former directors, managers or officers, or current or former direct or indirect equityholders or controlling persons, attorneys, advisors, agents or representatives or representatives of any of the foregoing or any of such Persons' Affiliates, in whatever capacity, or any of their or their Affiliates' respective former, current or future directors, officers, employees, general or limited partners, managers, members, direct or indirect equityholders, controlling persons, attorneys, advisors, agents or representatives or representatives of any of the foregoing, or any former, current or future estates, heirs, executors, administrators, trustees, successors or assigns of any of the foregoing, in each case to the extent based upon, attributable to, or resulting from actions, omissions, or circumstances occurring or existing prior to the Closing.

(1) Subject to the Sellers' continuing obligation to compensate and reimburse each of the Buyer Indemnitees for any Retained Claim Out-of-Pocket Costs, the Parties acknowledge and agree that Sellers shall retain the sole and exclusive right (in their collective discretion) to pursue, and to direct and manage the Company's and its Subsidiaries' participation in, the prosecution, defense, and, if applicable, compromise, settlement, or assignment of each of the Retained Claims. In furtherance of the foregoing, the Parties acknowledge and agree that in connection with each of the Retained Claims, notwithstanding anything to the contrary herein, from and after the Closing:

(i) the Sellers shall have the sole and exclusive control in all respects over the conduct of each of the Retained Claims, including (A) the determination as to whether to initiate or continue to pursue any of the Retained Claims, (B) retaining outside counsel in connection therewith, (C) all proceedings related or ancillary thereto, including disclosure of any non-proprietary information to the extent relevant to such Retained Claims, (D) the settlement, compromise or discharge thereof and (E) any decision whether to appeal; provided that none of the Sellers shall settle, compromise or discharge the applicable Retained Claim without the prior written consent of Buyer or the Company in the event that any such proposed settlement, compromise or discharge (x) imposes an injunction or other equitable relief upon Buyer or any of its Affiliates (including the Company or any of its Subsidiaries) or (y) involves a finding or admission of any violation of Law or other wrongdoing by Buyer or any of its Affiliates (including the Company or any of its Subsidiaries);

(ii) Buyer shall, and shall cause the Company and its Subsidiaries to, reasonably cooperate with each Seller (and their respective counsel and other representatives) with respect to these efforts, including by giving access during normal business hours, to employees of the Company and its Subsidiaries (including for purposes of serving as witnesses) and the Books and Records (including the ability to make copies of the Books and Records and other documentation solely to the extent necessary or advisable to advance or defend any of the Retained Claims or as part of producing information as part of discovery or equivalent procedures), third party witnesses and counsel as may be requested from time to time by any Seller; provided that (x) all such access shall be granted under the conditions which shall not unreasonably interfere with the business and operations of the Buyer, the Company or any Subsidiary thereof and (y) Sellers shall be liable for all reasonable and documented out-of-pocket costs or expenses incurred by Buyer, the Company or its Subsidiaries in connection

with providing such access or cooperation (but, for the avoidance of doubt, not including any amounts for wages, salaries or similar remuneration or any amounts for administrative overhead or any similar amounts) and such out-of-pocket costs or expenses shall be deemed to constitute Retained Claim Out-of-Pocket Costs hereunder;

(iii) the Seller Representative shall keep Buyer reasonably informed with respect to the status of and any material developments in each of the Retained Claims;

(iv) Buyer shall, and shall cause the Company and its Subsidiaries to, hold in trust for and pay all income, proceeds and other monies received by Buyer, the Company or any of its Subsidiaries from any Person in connection with any of the Retained Claims to the Seller Representative promptly, and in any event within five (5) Business Days, upon receipt thereof; and

(v) Buyer shall, and shall cause the Company and its Subsidiaries to, not take any action without the prior written consent of the Seller Representative (such consent not to be unreasonably withheld, conditioned or delayed) to the extent such action would reasonably be expected to impair the benefits of, or be detrimental to, any of the Sellers, the Seller Representative, their respective Affiliates or the Company in connection with the participation in and the prosecution, defense, and, if applicable, compromise, settlement, or assignment of any of the Retained Claims.

(2) Upon the request of any of the Sellers, the Parties (or their applicable Affiliates) will enter into a mutually acceptable joint defense agreement with respect to certain matters related to the Retained Claims, with any reasonable and documented out-of-pocket costs or expenses (which shall constitute Retained Claim Out-of-Pocket Costs) incurred by the Buyer or the Company in connection with the negotiation or entering into such joint defense agreement to be reimbursed by the Sellers by wire transfer of immediately available funds as a precondition of entering into such joint defense agreement.

a. The EPA contains the following release provisions at Section 7.07:

(1) Sellers shall cause all receivables and payables between the Company or any of its Subsidiaries, on the one hand, and any Seller or any current or former Affiliate thereof (other than the Company or any of its Subsidiaries), on the other hand, to be settled or extinguished at or prior to the Closing. Effective as of the Closing, each Seller on behalf of itself, its Affiliates, and each of

its and their current and former officers, directors, managers, advisors, successors and assigns (collectively, the "Seller Releasing Parties"), hereby irrevocably and unconditionally releases and forever discharges the Buyer, its Affiliates (including, after the Closing, the Company) and each of its and their respective current and former officers, directors, managers, employees, partners, equityholders, advisors, attorneys, financial advisors, lenders, successors and assigns (collectively, the "Company Released Parties") of and from any and all actions, causes of action, suits, proceedings, executions, judgments, duties, debts, dues, accounts, bonds, contracts and covenants (whether express or implied), and claims and demands whatsoever whether in law or in equity which the Seller Releasing Parties may have against each of the Company Released Parties, now or in the future, in each case in respect of any cause, matter or thing relating to any of the Company Released Parties occurring or arising on or prior to the Closing; provided, however, that notwithstanding the foregoing, this release shall not be applicable to, and shall not affect, (x) any claim against a Company Released Party pursuant to this Agreement or any other agreement or instrument to be executed in connection herewith or the transactions contemplated hereby or thereby, including the Transaction Agreements, (y) any of the Retained Claims, or (z) any right to indemnification, exculpation or expense reimbursement in favor of, or limitation of liability of, a current or former director, manager or officer of the Company or any of its Subsidiaries for claims or actions that are not Retained Claims.

(2)  The Company and each Seller hereby acknowledge and agree that any Contract, agreement, arrangement or understanding, whether written or oral (together with any amendment thereto) by and between the Company or any of its Subsidiaries, on the one hand, and any Seller or any Affiliates thereof (other than the Company or any of its Subsidiaries), on the other hand (collectively, "Related Party Contracts"), other than (i) this Agreement; (ii) any agreement entered into in connection with this Agreement; or (iii) any rights to indemnification, or expense advancement or reimbursement or contribution as an officer, director, manager or employee of the Company or any of its Subsidiaries hereunder or pursuant to Constituent Documents, is terminated effective as of the Closing and that none of any Seller nor any of its respective Affiliates have any claim or cause of action of any kind against the Company or any of its Subsidiaries, with respect to such Related Party Contract, and that, to the extent any such claims or causes of action exist, each Seller, on its own behalf and on behalf of its Affiliates, on the one hand, and the Company, on its behalf and on behalf of any of its Subsidiaries, on

        the other hand, hereby knowingly and voluntarily releases the same.

2.      <u>Transaction Declaration</u>.  Attached hereto as <u>Exhibit A</u> are the declarations (the "<u>Transaction Declarations</u>") of Michael Katzenstein, Fred Vescio, and Jason Russell.

3.      <u>Proposed Transaction Order</u>.  Attached hereto as <u>Exhibit B</u> is a proposed order approving the Rand Transaction (the "<u>Proposed Transaction Order</u>").

4.      <u>Free and Clear Sale</u>.  Pursuant to the Proposed Transaction Order, effective as of the Closing, the sale of the RM Interests by the Debtors to the Buyer shall constitute a legal, valid and effective transfer of the Interests notwithstanding any requirement for approval or consent by any person and shall vest Buyer with all rights, title and interests of the Debtors in and to the Interests, free and clear of all liens, claims, encumbrances and interests of any kind (including but not limited to (i) beneficial interests and (ii) any liens recorded with the register of mortgages in the Cayman Islands) pursuant to section 363(f) of the Bankruptcy Code with such liens, claims, encumbrances and interests attaching to the proceeds from the Rand Transaction with the same validity and priority as such released liens.

5.      <u>Treatment of Patriarch Stakeholders' Claims Pursuant to Paragraph 18 of the Settlement Agreement</u>.  The payments to be made at closing will include the amounts asserted to be owed and outstanding to the Patriarch Stakeholders.  As of the filing of this Notice, the Debtors understand that to be (i) $3,094,920, calculated based on the aggregate amounts detailed on Exhibit B to the Motion filed at Docket No. 1903 (the "<u>Patriarch Paragraph 18 Motion</u>") with respect to Rand *plus* (ii) the amount of the Transaction Fee asserted to be owed to Patriarch Partners Management Group, LLC ("<u>PPMG</u>") in connection with the Rand Transaction (which will be equal to 5% *times* Eligible Equity Value under the Management Services Agreement, as determined at the Closing), unless the order approving the Rand Transaction entered by the Court provides that any portion of such amount should not be paid (such amount, including any

reduction in payment ordered by the Court are referred to as the "Patriarch Closing Date Payment"). The Patriarch Closing Date Payment may be revised down by the Court in connection with approval of the Rand Transaction, including as a result of its rulings on the Patriarch Paragraph 18 Motion and the *Debtors' Motion for an Order Determining Dispute Between the Debtors and Patriarch Partners Management Services, LLC Related to Pending Oasis Transaction* [Docket No. 911]. The Debtors' rights to challenge and recover any amounts paid to the Patriarch Stakeholders, including the Patriarch Closing Date Payment, shall be preserved in accordance with the Settlement Agreement, notwithstanding any payment of such amount through the Closing..

6. Proposed Transaction Order. Consistent with the Court's ruling on August 4, 2020, the Proposed Transaction Order seeks to approve the following provisions

> Effective as of the Closing of the EPA and receipt of the Patriarch Closing Date Payment, the Patriarch Stakeholders, and Ankura Trust Company, LLC are hereby deemed to release all liens, claims, encumbrances and interests of any kind that could be asserted or have been asserted by the Patriarch Stakeholders, or Ankura Trust Company, LLC against Rand,
>
> \*\*\*
>
> Subject to the occurrence of the Closing of the EPA, the Management Services Agreement between Rand and Patriarch Partners Management Group, LLC dated as of November 20 2010, as amended, shall be deemed to have terminated.

Further, the Proposed Transaction Order seeks to approve the releases set forth in Section 7.07 of the EPA (which are also set forth in Paragraph 1(f) of this Notice) and will provide that the Patriarch Stakeholders shall dismiss the pending actions against Rand with prejudice within 10 days of entry of the order approving the Rand Transaction.

7. Defined Term. The term "Patriarch Stakeholders" as used herein shall have the meaning ascribed to it in that certain Order Approving and Authorizing the Settlement

Agreement By and Between the Debtors. Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class dated May 21, 2018 [Docket No. 266].

8. <u>Procedures for Objecting to the Proposed Rand Transaction</u>. Any objection to the proposed Rand Transaction (an "<u>Objection</u>") must: (a) be in writing; (b) state with specificity the nature of the objection; and (c) be filed with the Bankruptcy Court and served on (i) the Debtors, 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036 (Attn: Michael Katzenstein, mike.katzenstein@fticonsulting.com); (ii) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Michael R. Nestor and Ryan M. Bartley, mnestor@ycst.com, rbartley@ycst.com); (iii) counsel to the Patriarch Entities, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, CA 90071 (Attn: Robert A. Klyman, rklyman@gibsondunn.com) and Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 (Attn: Norman L. Pernick, npernick@coleschotz.com); (iv) counsel to U.S. Bank, as indenture trustee, Alston & Bird LLP, 90 Park Avenue, New York, NY 10016 (Attn: John W. Weiss, john.weiss@alston.com); (v) counsel to MBIA Insurance Corp., Cadwalader, Wickersham & Taft, LLP, 200 Liberty Street, New York, NY 10281 (Attn: Gregory M. Petrick, gregory.petrick@cwt.com) and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (Attn: Laura Davis Jones, ljones@pszjlaw.com); (vi) counsel to the Zohar III Controlling Class, Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, IL 60602-4321 (Attn: Brian J. Lohan, brian.lohan@arnoldporter.com) and Womble Bond Dickinson (US) LLP, 222 Delaware Avenue, Suite 1501, Wilmington, DE 19801 (Attn: Matthew P. Ward, matthew.ward@wbd-us.com); (vii) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Juliet M. Sarkessian,

Juliet.m.sarkessian@usdoj.gov); (viii) Counsel for Rand, Latham & Watkins, 885 Third Avenue, New York, New York 10022-4834 (Attn: James Gorton, Esq., James.Gorton@lw.com); and (ix) Counsel for the Buyer, Troutman Pepper Hamilton Sanders, LLP, The New York Times Building, 620 Eighth Avenue, 37th Floor, New York, New York 10018-1405 (Attn: James D. Rosener, E-mail: James.Rosener@troutman.com) (collectively, the "Notice Parties") on or before 4:00 p.m. (ET) on October 7, 2020 (the "Objection Deadline").

9. *Hearing to Consider the Proposed Rand Transaction*. If any Objections are filed and served, as outlined above, a hearing to consider such transaction shall be held before the Court on October 14, 2020, at 10:00 a.m. (ET) (a "Hearing"). If no Objections are filed with the Court and served on the Notice Parties by the Objection Deadline in accordance with the terms of the Procedures Order, then the Court may enter the Proposed Transaction Order without further notice or a hearing.

Dated: September 25, 2020
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ryan M. Bartley*
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4221)
Ryan M. Bartley (No. 4985)
Shane M. Reil (No. 6195)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*