# **EXHIBIT B**

**Proposed Transaction Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 <br> ) <br> ) Case No. 18-10512 (KBO) <br> ) <br> ) Jointly Administered <br> ) <br> ) **Docket Ref. No.** |
| Zohar III, Corp., *et al.*,[1] | |
| Debtors. | |

ORDER APPROVING CONSUMMATION OF PORTFOLIO
COMPANY TRANSACTION

Upon the *Order in Aid of Implementation of the Global Settlement Agreement Approved in these Cases for Authority to Establish certain Procedures for the Corporate Approval of Portfolio Company Transactions and for Related Relief*, [Docket No. 545] (the "Procedures Order"); and upon the notice filed with the Court on September 25, 2020 [Docket No. _____] (the "Transaction Notice")[2] and the declarations attached thereto as Exhibit A and Exhibit B; and the Court having jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the sale, pursuant to section 363 of the Bankruptcy Code, of the beneficial or equity interests (the "Interests") in the Company to Buyer pursuant to that certain Equity Purchase Agreement (the "EPA") by and among RM Acquisition, LLC, the Debtors that

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Procedures Order, the Transaction Notice or the EPA, as applicable. The terms "Patriarch Stakeholders" and "Other Stakeholders" as used herein shall have the meanings ascribed thereto in that certain Order Approving and Authorizing the Settlement Agreement By and Between the Debtors. Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class dated May 21, 2018 [Docket No. 266].

1

are parties thereto as Sellers, Zohar II 2005-1, Corp., as the Seller Representative, RM Technologies, Inc., as Buyer, and Optimus Midco, LLC, as Parent, dated September 21, 2020 (the "Portfolio Company Transaction"); and it appearing that no other or further notice need be provided; and the Court having found and determined that the consummation of the Portfolio Company Transaction is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and any objections to the Portfolio Company Transaction having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1. Joseph J. Farnan, Jr., as Independent Director, has been fully charged with governance of the Debtors under applicable Cayman or Delaware law, as applicable, to authorize, approve and consummate the Portfolio Company Transaction, including, but not limited to (i) authorizing the Debtors to vote or consent to any vote, as applicable, any and all Interests in favor of the Portfolio Company Transaction, (ii) exercising any rights with respect to the Interests to implement or consummate the Portfolio Company Transaction, and (iii) authorizing and approving the release of Debtors' liens, claims, encumbrances or other interests, including beneficial interests, in connection with the Portfolio Company Transaction.

2. Subject to the entry of this Order, the Debtors (i) have full corporate power and authority to perform all of their obligations under the EPA and each of the agreements executed in connection therewith and the consummation thereof, and the Debtors' prior execution and delivery of, and performance of obligations under, the EPA and each of the agreements executed in connection therewith is hereby ratified, (ii) have all of the corporate power and authority necessary to consummate the Portfolio Company Transaction, (iii) have taken all corporate action necessary to authorize, approve, execute and deliver the EPA and each of the agreements executed

#108304240 v8

in connection therewith and the consummation thereof and the Portfolio Company Transaction itself, and (iv) no consents or approvals are required to consummate Portfolio Company Transaction or otherwise perform obligations under the EPA or each of the agreements executed in connection therewith, except for the Closing conditions expressly agreed to therein.

3. Pursuant to sections 363 and 365 of the Bankruptcy Code, entry by the Debtors into the EPA is hereby authorized and approved as a valid exercise of the Debtors' business judgment.

4. The Debtors are authorized, pursuant to section 363 of the Bankruptcy Code, to enter into the EPA. The EPA (and all ancillary documents), all of the terms and conditions thereof, and all of the transactions contemplated by the Transaction Agreements are approved in all respects. The failure specifically to include any particular provision of the EPA in the Transaction Notice or this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the EPA be authorized and approved in its entirety. The transfer of the Interests to the Buyer shall be a legal, valid and effective transfer of the Interests.

5. Based upon, among other considerations, the Transaction Notice and the Transaction Declaration, the Independent Director's authorization, approval and consummation of the Portfolio Company Transaction is prudent, in good faith and in the best interest of the Debtors' estates and stakeholders and is fully consistent with the duties imposed upon him as a fiduciary.

6. The sale of the Interests and the consideration provided by the Buyer are fair and reasonable and shall be deemed for all purposes to constitute a transfer for fair value, full and adequate consideration, reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

7. Effective as of the Closing, the sale of the Interests by the Debtors to the Buyer shall constitute a legal, valid and effective transfer of the Interests notwithstanding any requirement for approval or consent by any person and shall vest Buyer with all rights, title and interests of the Debtors in and to the Interests, free and clear of all liens, claims, encumbrances and interests of any kind (including but not limited to (i) beneficial interests and (ii) any liens recorded with the register of mortgages in the Cayman Islands) pursuant to section 363(f) of the Bankruptcy Code with such liens, claims, encumbrances and interests attaching to the proceeds from such Portfolio Company Transaction with the same validity and priority as such released liens. The Debtors shall promptly (i) update the register of mortgages in the Cayman Islands to reflect the transfer of the Interests consistent with this paragraph and (ii) provide the Buyer with an updated certificated copy of the register of mortgages reflecting the same.

8. The sales process conducted by the Debtors was at arms' length, non-collusive, in good faith, and substantively and procedurally fair to all entities. Neither the Buyer nor its designees is an "insider" as that term is defined in section 101(31) of the Bankruptcy Code. The Buyer is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code. Neither the Debtors, the Seller Representative nor the Buyer has engaged in any action or inaction that would cause or permit the EPA or the transactions completed by the Transaction Agreements to be avoided or would impose any costs or damages under section 363(n) of the Bankruptcy Code or otherwise.

9. In accordance with Paragraph 18 of the Settlement Agreement, from the Base Purchase Price, the Patriarch Stakeholders shall receive a payment in the aggregate amount of $[_____][3] (the "Patriarch Closing Date Payment"). The Debtors' rights to challenge

---

[3]    [NOTE: This amount will equal (i) $3,094,920, which is the unpaid amount detailed on Exhibit B to the Motion filed at Docket No. 1903 with respect to RM Acquisition, LLC, **plus** (ii) 5% times the "Total Equity Value,"

and recover any amounts paid to the Patriarch Stakeholders, including the Patriarch Closing Date Payment, shall be preserved in accordance with paragraph 18 of the Settlement Agreement, notwithstanding any payment of such amount through the Closing.  Effective as of the Closing of the EPA and receipt of the Patriarch Closing Date Payment, the Patriarch Stakeholders and Ankura Trust Company, LLC are hereby deemed to release all liens, claims, encumbrances and interests of any kind that could be asserted or have been asserted by the Patriarch Stakeholders or Ankura Trust Company, LLC against RM Acquisition, LLC.  The Patriarch Stakeholders shall dismiss the pending actions against RM Acquisition, LLC (the "Pending Actions") with prejudice within 10 days of the occurrence of the Closing.  A list of the Pending Actions is attached hereto as **Exhibit 1**.

10. Service of the Transaction Notice on the Selling Releasing Parties (including the Patriarch Stakeholders) constitutes proper, timely, adequate, and sufficient notice of the release of the Company Released Parties by the Seller Releasing Parties as set forth in Section [7.07] of the EPA and as described in the Transaction Notice (the "Release").  The Release is hereby approved in all respects and in its entirety and shall be effective as of the Closing.

11. Subject to the occurrence of the Closing of the EPA, the Management Services Agreement between RM Acquisition, LLC and Patriarch Partners Management Group, LLC dated as of November 20 2010, as amended, shall be deemed to have terminated.

12. The Debtors are authorized to execute and deliver all instruments and documents, and take such other action—including the exercise of any shareholder or lender

---

as determined at the Closing, on account of the Transaction Fee asserted to be owed to ("PPMG") in connection with the Rand Transaction.  *Provided*, *however* that, as set forth in the Transaction Notice, in entering an order approving the Rand Transaction, the Court may provide for a reduction in the Patriarch Closing Date Payment and such decreased amount ordered by the Court shall not be treated as adverse to the Buyer.]

approval rights —as may be necessary or appropriate to consummate, implement and effectuate the Portfolio Company Transaction.

13. Nothing in this Order shall modify or waive any closing conditions or termination rights in the EPA, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

14. This Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, the Patriarch Stakeholders, the Other Stakeholders, Lynn Tilton, all holders of any interests or claims (whether known or unknown) against any Debtor, the Buyer and all successors and assigns of Buyer, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases.

15. The provisions of this Order and the EPA are non-severable and mutually dependent.

16. As provided by Bankruptcy Rule 9014, the terms and conditions of this Order shall be effective immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rules 6004(h) and 6006(d). Time is of the essence in closing the sale and the Debtors and the Buyer intend to close the sale as soon as possible.

17. The EPA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court.

18. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in these chapter 11 cases, any subsequent chapter 7 or chapter 11 case of

the Debtors, or any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the EPA or the terms of this Order.

19. This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

**Exhibit 1**

1. Octaluna LLC, Octaluna II LLC and Octaluna III LLC vs. RM Acquisition LLC
    a. Index Number: 652625/2020 (New York Supreme Court)
    b. Docket Number: 1:20-cv-05528 (S.D.N.Y.)

2. Octaluna LLC, Octaluna II LLC, Octaluna III LLC, Patriarch Partners Management Group LLC and Patriarch Partners Agency Services LLC vs. RM Acquisition LLC
    a. Index Number: 652883/2020 (New York Supreme Court)
    b. Docket Number: 1:20-cv-05540 (S.D.N.Y.)

3. Any other lawsuits filed by the Patriarch Stakeholders against RM Acquisition, LLC which have not been dismissed by the Patriarch Stakeholders prior to the Closing Date.