IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| Zohar III, Corp., *et al.*,[1] | ) ) ) | Case No. 18-10512 (KBO) |
| Debtors. | ) ) ) | Jointly Administered |
| | ) | Ref. Docket No. 2029 |

**DEBTORS' OBJECTION TO PPMG'S MOTION FOR STAY
PENDING APPEAL OF THE TRANSACTION FEE ORDER AND
FOR THE ESCROWING OF CERTAIN TRANSACTION FEES**

Zohar III, Corp. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby file this objection (the "Objection") to the motion [Docket No. 2029] (the "Stay Motion")[2] of PPMG for (1) a stay pending appeal of the *Order Determining Dispute Between the Debtors and Patriarch Partners Management Services, LLC Related to Pending Oasis Transaction* [Docket No. 2019] (the "Transaction Fee Order") and (2) for the entry of an order requiring placement of the Transaction Fee (defined below) "and certain [other] transaction fees" into escrow pending final resolution of PPMG's appeal. In support of this Objection, the Debtors state as follows:

**PRELIMINARY STATEMENT**

1. In considering the Stay Motion, the Third Circuit instructs the Court to first consider whether PPMG (i) has made a strong showing that it is likely to succeed in its appeal and (ii) will suffer irreparable harm if the Stay Motion is denied. PPMG has demonstrated neither.

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] Unless otherwise defined herein, capitalized terms shall have them meaning ascribed in the Stay Motion.

27205265.4

With respect to the first factor, PPMG simply restates its prior arguments, which this Court found unavailing. PPMG has likewise not shown that complying with the Transaction Fee Order will cause it to suffer irreparable harm and, instead, merely contends that some or all of the Transaction Fee – which PPMG has had the use and benefit of for over a year – may instead now be utilized by the Debtors' estates.

2. Since PPMG cannot establish that either of these factors weighs in favor of granting the Stay Motion, the Court need not consider the remaining factors—the balance of the harms and the public interest. If the Court does consider those factors, however, the Court should similarly conclude that neither weighs in favor of issuing a stay.

3. Accordingly, the Stay Motion should be denied.

**OBJECTION**

**I.     PPMG Has Not Satisfied the Standard for a Stay Under Rule 8007**

4. A stay pending appeal is extraordinary relief. *See United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978). When seeking such extraordinary relief, "the moving party bears the burden of showing that the circumstances justify the imposition of a stay." *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012) (citation omitted). In evaluating whether to grant a stay pending appeal, courts in the Third Circuit consider:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citation omitted). The Third Circuit has "provide[d] guidance on how to conduct a balancing of the four (4) stay factors" and adopted a "sliding-scale approach." *Id.* at 569. The *Revel* court noted that the most critical factors are the first two (2) and that the first "is arguably the more important piece of the stay analysis." *Id.* The

27205265.4

court also clarified that irreparable harm – factor two – refers to "harm that cannot be prevented or fully rectified" by a successful appeal. *Id.* at 568 (internal quotations omitted). In evaluating these factors, the Third Circuit notes that "all four (4) stay factors are interconnected" and that the analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) [it] will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach.

*Id.* at 571 (citation omitted). If PPMG fails to make the requisite showings on either of the first two (2) factors, then "the [] inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis." *Id.* (citation omitted).

### A. PPMG Will Not Succeed on the Merits of its Appeal

5. Here, the Court – following months of briefing and an extensive evidentiary presentation – concluded that (a) "it's clear to me from the four corners of the MSA that the defined term, change of control, means liquidity event, because any reading of the contract terms would be unreasonable[,]" Hr'g Tr. 10:2–7, Oct. 14, 2020; (b) the $20 million Amendment Eight Tranche was debt, not equity, "based on the unambiguous language of Amendment Number Eight[,]" among other things, *Id.* at 13:1–3; and (c) that neither (a) nor (b) was "a close call." *Id.*

6. To establish a likelihood of success on the merits of an appeal, the moving party must show a "substantial" or "strong" case on appeal. *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir. 1997). The moving party cannot meet its burden by merely "rehashing" previous arguments. *W.R. Grace*, 475 B.R. at 206; *see also Schwartz v. Dolan*, 159 F.R.D. 380, 384 (N.D.N.Y. 1995) ("Defendant advances no arguments that this court has not heard, and ruled upon, before. Mere repetition of arguments previously considered and rejected cannot be characterized as a 'strong showing.'"); *MWK Recruiting, Inc. v. Jowers*, No. 1:18-CV-444-RP,

27205265.4

2019 WL 7759522, at *2 (W.D. Tex. Dec. 11, 2019) (denying a motion to stay pending appeal because "[a] party that merely repeats arguments the Court has already considered and rejected fails to meet its burden of showing that the Court should exercise its discretion"); *Wynnefield Partners Small Cap Value L.P. v. Niagara Corp.*, No. CIV.A. 1261-N, 2006 WL 2521434, at *1 (Del. Ch. Aug. 9, 2006) (denying portions of a motion to stay pending appeal because the movant "merely restated the arguments it presented to the Court in the first instance").

7. PPMG has, in no way, demonstrated a likelihood of success on the merits because it has simply rehashed the same arguments that the Court already rejected. Accordingly, PPMG does not meet the "substantial" burden it has to show a likelihood of success on the merits of its appeal. On the "negligible but not greater than 50%" scale that the *Revel* court adopted, PPMG has made *zero* showing that it is likely that the Court's prior ruling should be disturbed on appeal. Thus, this factor weighs against granting a stay.

### B. There Has Been no Showing of Irreparable Harm to PPMG

8. PPMG maintains that the Debtors are "more apt . . . than not" to spend the Transaction Fee on ongoing litigation disputes, thereby constraining the Debtors' liquidity, which would subsequently constrain the Debtors' ability to pay PPMG should it prevail on appeal. Stay Motion ¶ 20. This argument presupposes that (a) PPMG will prevail on appeal, which, as noted above, it has made no effort to demonstrate (much less succeeded in showing), and (b) the Transaction Fee is the sole source of liquidity for the Debtors' estates. As Ms. Tilton and the Court are aware, however, there are several Portfolio Companies in various – and in several instances, advanced – stages of the monetization process and several more yet to be sold. As these sales are consummated, the Debtors expect their estates will be funded with sufficient liquidity to administer these cases and to honor administrative claims in the priority they arise. Simply put, there is no harm to PPMG if forced to comply with the Transaction Fee Order and even if there was, it is in

27205265.4

no way "irreparable," as the Debtors fully expect they will have sufficient cash available to cover the Transaction Fee should PPMG prevail on appeal. *See Revel,* at 802 F.3d at 569 (noting that "irreparable harm" is "harm that cannot be prevented or fully rectified" by a successful appeal.) Further, as such "harm" is based solely on PPMG's misguided assumptions about the Debtors' future liquidity, it is clearly "remote or speculative, irreparable harm[,]" and therefore insufficient to carry PPMG's burden. *See id.,* at 566 (internal quotations omitted).

9.  Lastly, any alleged harm to PPMG is of its own making. First, as noted in the *Debtors' Motion for Entry of an Order in Aid of Enforcement of the Settlement Agreement (A) Staying the Tilton Plaintiffs From Prosecuting Litigation Outside the Delaware Bankruptcy Court, (B) in Connection With the Sales of Portfolio Companies, (I) Establishing an Escrow for All Amounts Claimed by the Patriarch Stakeholders Pending Their Validation Under Paragraph 18 and (II) Ordering Releases of the Patriarch Stakeholders' Claims With Such Claims Attaching to the Proceeds of Such Sale, and (C) Granting Related Relief* [Docket No. 1817] (the "<u>Stay and Escrow Motion</u>"), the Debtors offered from the outset to escrow proceeds of the LVD Transaction, but Ms. Tilton refused, demanding that the Transaction Fee be paid at closing of the LVD Transaction or she (as LVD's manager) would not sign the EPA. Later, on June 30th, 2020, the Debtors again offered to escrow amounts in connection with the parties' disputes over the documentation of certain of Patriarch's claims under Paragraph 18 of the Settlement Agreement (including PPMG's asserted 5% transaction fees) pending a consensual resolution or adjudication of those disputes. However, in an email dated July 2nd, 2020, Ms. Tilton declined. Thus, the Debtors filed the Stay and Escrow Motion, requesting that the Court order the escrow of (among other amounts) any disputed PPMG transaction fees in connection with future Portfolio Company sales. Ms. Tilton objected to that request as well, and the Court ultimately denied the motion. It

27205265.4

is only now, after the Court determined that no Transaction Fee was in fact owed in connection with the LVD Transaction, and after Ms. Tilton refused, on three separate occasions, the Debtors' request to establish an escrow, that PPMG asks the Court to order that exact relief *for its benefit*.

10. For the foregoing reasons, this factor weighs against granting a stay.

### C. A Stay Pending Appeal Will Harm the Debtors

11. PPMG has deprived the Debtors' estates of nearly $3.8 million that, pursuant to the Court's October 14th ruling, it had no entitlement to under the clear terms of the PPMG MSA. And according to the Stay Motion, PPMG now seeks an order requiring the escrow of *all future transaction fees until its appeal in this matter runs its course*. *See* Stay Motion, Proposed Order ¶ 3 ("Should any further transaction fees become due and payable under a Management Service Agreement between PPMG and a Portfolio Company prior to resolution of PPMG's appeal, those transaction fees shall be deposited into the Transaction Fee Escrow Account . . . ."). Thus, PPMG now seeks to further deprive the Debtors of their rightful property – both the $3.8 million LVD Transaction Fee and potentially tens of millions of dollars of future (alleged) transaction fees – while it pursues its appeal. With multiple Portfolio Company sales in the near- and mid-term offing, PPMG is attempting to deny the Debtors and their stakeholders tens of millions of dollars that might otherwise be wrongfully paid to PPMG under the MSAs. The infusion of $3.8 million now and the additional fees that might otherwise be wrongfully paid to PPMG, will ensure the momentum the Debtors have built in the monetization process since Ms. Tilton's resignations is not disrupted by any short-term liquidity concerns. And while the Debtors are confident that, through other monetization transactions, they can fund their cases into the foreseeable future, the fact is, the Transaction Fee (and any alleged future transaction fees) belong to the Debtors and their liquidity should not be further constrained by – or in any way tied to – an appeal that PPMG is highly unlikely to win.

12. Accordingly, this factor weighs in favor of denying a stay.

### D. A Stay Pending Appeal is Not in the Public Interest

13. PPMG has offered only a generic assertion for why it believes the public interest weighs in favor of a stay – "the public has an interest in clarity on and correct application of the law." Stay Motion, ¶ 22 (internal quotations omitted). The Court found that its interpretation of the relevant provisions of the PPMG MSA, the Credit Agreement and Amendment Eight thereto "was not a close call" and that the "bargaining parties of the caliber of those who negotiated and signed Amendment Number Eight know what they intended in their dealings and that the draft documents reflect that intention." Hr'g Tr. 13:1–3; 13:24–14:3, Oct. 14, 2020. The public interest is not served by allowing sophisticated parties to heavily-negotiated agreements to avoid their obligations under such agreements or to deprive the prevailing litigant of their property rights merely by filing a two-page notice of appeal. Rather, "[t]he public has an interest in seeing that parties oblige by their contractual obligations and are not allowed to skirt such obligations at another's expense." *Rex Medical L.P. v. Angiotech Pharm. (US) Inc.*, 754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010); *see also In re Los Angeles Dodgers LLC*, 2011 WL 6749081, at *1 (D. Del. Dec. 23, 2011) (same).

14. There are no matters of public interest at play here that warrant a stay. As this Court has observed, delay is not a friend to these estates, and escrowing the Transaction Fee until resolution of PPMG's appeal would serve only to hinder, rather than promote, the goal of expeditious administration of the estate. If anything, the public interest is best served through the prompt resolution of chapter 11 cases. *See In re Metiom, Inc.*, 318 B.R. at 272 (finding that the public interest is served by "the expeditious administration of bankruptcy cases as well as in the preservation of the bankrupt's assets for purposes of paying creditors.").

15. Accordingly, this factor also weighs in favor of denying a stay.

27205265.4

*[Remainder of this page intentionally left blank]*

27205265.4

**WHEREFORE**, for the reasons stated above, the Debtors respectfully request that the Court deny the Stay Motion and grant such other and further relief as the Court deems just and proper.

Dated: October 19, 2020
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Shane M. Reil*
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4221)
Ryan M. Bartley (No. 4985)
Shane M. Reil (No. 6195)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: jpatton@ycst.com
      rbrady@ycst.com
      mnestor@ycst.com
      jbarry@ycst.com
      rbartley@ycst.com
      sreil@ycst.com

*Counsel to the Debtors and Debtors in Possession*

27205265.4