## EXHIBIT A

Redacted Public Version of Sealed Objection [DI 2006]

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*,[1]<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 18-10512 (KBO)<br><br>Jointly Administered<br><br>**Ref. Docket No. 1682 and 1992** |

**PATRIARCH'S OBJECTION TO THE DEBTORS' REQUEST FOR SUPPLEMENTAL ORDER UNDER BANKRUPTCY RULE 2004 DIRECTING PRODUCTION OF FORM 906 CLOSING AGREEMENT**

Lynn Tilton and the Patriarch Stakeholders (collectively, "Patriarch"),[2] by and through their counsel, hereby submit this objection (the "Objection") to the *Debtors' Request for Supplemental Order Under Bankruptcy Rule 2004 Directing Production of Form 906 Closing Agreement* [D.I. 1992] (the "Supplemental Request"), which is related to Debtors' prior Rule 2004 request for production of documents [D.I. 1682]. In support of this Objection, the Patriarch Stakeholders incorporate by reference their prior pleadings submitted in connection with the Debtor's Rule 2004 Motion [*see* D.I. 1692, 1758], rely upon the record developed at the June 23 and July 14, 2020 hearings, including the Court's rulings, and, by and through their attorneys, respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The Debtors' timing is, once again, impeccable. More than six months after Ms. Tilton resigned as Designated Tax Director for the Debtors, and more than three months after the

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261) ("Zohar III"), Zohar II 2005-1, Limited (8297) ("Zohar II"), and Zohar CDO 2003-1, Limited (5119) ("Zohar I," and together with Zohar II and Zohar III, the "Zohar Funds"). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the 2004 Motion or Settlement Agreement [D.I. 266] (the "Settlement Agreement"), as applicable.

Court's ruling on this issue, the Debtors have again manufactured an "emergency" filing to this Court late in the evening on the cusp of a holiday weekend. According to the Debtors, any Form 906 documents are absolutely essential to filing the Zohar Funds' 2019 tax returns, which Debtors claim are due on October 15, 2020, such that an emergency hearing must be held immediately. The emergency motion is a ruse.

2. The Court previously directed the parties to work together in order to transition tax information for the Zohar Funds to the new tax adviser selected by the Debtors. *See* July 14, 2020 Hr'g Tr. 41:12-18; 44:8-17. Ms. Tilton and her advisors have diligently done so, providing more than 20,000 pages of tax records to the Debtors over the previous months, which is in addition to the tax information already provided by Ms. Tilton well before the Rule 2004 Motion was ever filed. Both counsel for Ms. Tilton and her tax return preparer (the Debtors' prior tax return preparer) have been working with Debtors to accommodate follow-up requests.

3. The information now requested by Debtors is not new, or the result of a recently discovered fact they stumbled on after engaging a new tax return preparer. Debtors have long been aware of the IRS settlement agreement, *i.e.* "Form 906" documents that they seek by this emergency Supplemental Request. Indeed, Request 13 of the Debtors' original Rule 2004 motion requests "any final agreement with the Internal Revenue Service," but Request 13 referred to the period January 2016 and forward, and the closing agreements relate to tax years 2007 through 2011 (a period during which Debtors were disregarded entities and therefore did not file tax returns).

4. The Court did not order production of the Form 906 documents:

With respect to Request 13, I'm not going to order a stay pending appeal because I do not believe that the debtors sought documents prior to January 2016. I think page 11 of their reply papers is clear on this and, accordingly, I did [not] order such relief and such production is not required. The stay, therefore is not necessary. If

2

the debtors need to supplement the request or amend it, then they may do so another way and not at today's hearing.

Tr. July 14, 2020 Hr'g at 39:12-20. For *nearly three months*, Debtors did nothing to supplement their request or otherwise seek the Form 906 documents. Then, on the afternoon of October 7, while the parties were deep in preparation for the various matters to be heard at the October 14 Omnibus Hearing, the Debtors requested the immediate production of Form 906 documents. While Patriarch refused to provide any Form 906 documents "late on the afternoon of October 9th," Patriarch responded just over a day later after hearing from Debtors on the issue *for the first time in nearly 3 months*. Exhibit 1.[3]

5. Even setting aside Debtors' dilatory Motion and Supplemental request, there is no emergency here precisely because there is no justification for the request in the first place. The Form 906 documents sought by the Debtors are entirely personal to Ms. Tilton: the closing agreements are an agreement between Ms. Tilton, in her personal capacity, and the IRS and not an agreement between the Debtor Zohar Funds and the IRS. As such, it is not only unnecessary for the completion of the Zohar Funds' tax filings, it cannot be relied upon by the Debtors in connection with their tax filing as a matter of law. The Motion and Supplement are a wholly manufactured smoke screen; an effort to obtain improper discovery related to Debtors' adversary complaint and to harass Ms. Tilton under the guise of an emergency related to an approaching tax filing deadline. Even Rule 2004 has limits, and those limits are exceeded here.

---

[3] Exhibit 1 is a copy of email correspondence between counsel regarding follow-up requests related to the Rule 2004 Order. The Patriarch Stakeholders provided additional information and confirmation to various follow-up requests; the closing agreement issue was not raised until the evening of October 7.

3

**OBJECTION**[4]

6. It is telling, and troubling, that the Debtors reference Form 906 as some newly found piece of information. The documents appended to Debtors' Request in Appendix A, "Excerpts of 2018 Tax Returns"—documents the Patriarch Stakeholders produced *months before* Debtors filed the Rule 2004 Motion in June 2020—include reference to "Closing Agreements on Form 906." Indeed, this was the basis for the Debtors' original Rule 2004 Request No. 13. *See, e.g.,* June 23, 2020 Hr'g Tr. 14:8-21 ("Finally, Your Honor, with respect to the request for any examinations or settlements with the IRS . . . if any of those exist we believe that we're entitled to them and will need them to assess what the reporting obligations are going forward. And if there is any non-conventional, aggressive or incomprehensible tax positions it's important to know whether the IRS has agreed to those or how they were treated in the eyes of the IRS or Ms. Tilton, and what those examinations or settlements may provide for."). The Debtors' purported rationale for seeking Form 906 is the very same purported rationale. *See* Supplemental Request ¶ 3 ("But KPMG needs the Form 906 to confirm for itself what the IRS has agreed to and that the accounting method historically used by the Debtors is, in fact, consistent with the IRS's agreed to treatment.")

7. The Court's Rule 2004 Order is clear that "[e]xcept where otherwise noted these [Rule 2004] Requests refer to the period from January 2016 to the present." Rule 2004 Order, Instructions ¶ 5. Request No. 13 seeks documents sufficient to show any examination by the IRS for the relevant period and contains no "otherwise" language, therefore excluding the closing agreements, which resolved disputes between Ms. Tilton and the IRS for tax years 2007 through 2011. *Id.* Request No. 13. The Debtors have previously argued that this is the result of "inartful"

---

[4] Patriarch incorporates by reference the background facts set forth in its objection [D.I. 1692] to the Debtors' original Rule 2004 motion [D.I. 1682] and Patriarch's motion for stay pending appeal of certain aspects of the Rule 2004 motion [D.I. 1758].

drafting, and that the Debtors' "intent [in seeking documents under Request No. 13] is really to obtain copies of the agreements that are referred to in tax returns and to address the relevance of those." *See* July 14, 2020 Hr'g Tr. 29:17-20.  This Court held, however, that given the language of Debtors' request, "such production [of the closing agreements] is not required." *Id.* at 39:12-17 (denying motion for stay pending appeal as unnecessary).  But the Court also noted that "[i]f the [D]ebtors need to supplement the request or amend it, then they may do so another way and not at today's hearing." *Id.* at 39:18-20.  And yet here we are, supposedly on the eve of Debtors' tax filing deadline, revisiting this issue for the first time in nearly three months.

8. Moreover, Debtors' baseless request must be considered in light of the widely-recognized principal that tax returns and tax return information, *particularly that belonging to individuals*, is highly confidential and should be protected from unnecessary and obtrusive disclosure.  "[P]ublic exposure of one's wallet or purse is, in the abstract, an invasion of privacy." *DeMasi v. Weiss*, 669 F.2d 114, 119 (3d Cir. 1982).  "Congress has guaranteed that federal income tax returns will be treated as confidential communications between a taxpayer and the government." *Id.*  The "crux of the issue is *not merely the tax returns, but the personal information contained in the tax returns*." *Id.* at 120 (emphasis added, quotation marks and alterations omitted).

9. Courts therefore generally accord a qualified privilege over tax returns that balances "two competing and important interests—the taxpayer's expectation of privacy and the benefits of broad pre-trial discovery." *Haas v. Kohl's Dep't Store, Inc.*, No. CIV.A. 08-CV-2507, 2009 WL 2030567, at *1 (E.D. Pa. July 7, 2009) (citing *DeMasi*, 669 F.2d at 119); *see also Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214, 217 (W.D. Va. 1997) (applying qualified privilege over tax returns).  To overcome the qualified privilege over tax returns, a court "must determine whether

5

(1) the tax return is relevant to the subject matter in dispute; and (2) a compelling need exists for the return, because the information sought is not obtainable from other sources." *Terwilliger*, 176 F.R.D. at 217; *see also Haas*, 2009 WL 2030567, at *1. There is no legitimate countervailing interest compelling—or even tepidly supporting—production of Ms. Tilton's agreements with the IRS.

10. Even if the Debtors were entitled to emergency treatment (and they are not), the Supplemental Request should still be denied because the Form 906 documents are entirely unnecessary for the preparation of the Debtors' upcoming tax returns. The closing agreements are agreements between Ms. Tilton and the IRS, not between the Debtors and the IRS. *See* 26 U.S.C. § 7121 ("The Secretary is authorized to enter into an agreement in writing *with any person relating the liability of such person*, . . . and such agreement shall be final and conclusive . . . in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.") (emphasis added). Critically, the closing agreements, which resolved disputes between Ms. Tilton and the IRS for tax years 2007 through 2011, *reference numerous entities owned or controlled by Ms. Tilton, but do not identify any of the Debtor*s.[5] The Debtors are not entitled to tax information concerning other investment funds and businesses associated with Ms. Tilton.

---

[5] If helpful to the Court in resolving this objection, the Patriarch Stakeholders are willing to make the closing agreements available to the Court for *in camera* review. None of the Form 906 documents that Ms. Tilton and the IRS executed to resolve the audit for tax years 2007 through 2011 specifically reference any of the Debtors. There were numerous other issues addressed in the agreements that have no relevance at all to the Debtors, the method of accounting language is a very small part of these agreements and, in any event, the agreements themselves do not explain the method of accounting. The information needed to understand the method of accounting is in the disclosure statements that were attached to the Debtors' tax returns.

11. The Debtors have access to their tax returns from 2016, 2017, and 2018, and there is no indication that KPMG has not been able to understand the established accounting methods utilized by the Zohar Funds. Indeed, the accounting method is clearly set out in the disclosures to the tax returns that are already in Debtors' possession. Instead, the Debtors' stated rationale for seeking Form 906 is so that KPMG may confirm that the "accounting method historically used by the Debtors is, in fact, consistent with the IRS's agreed to treatment" in advance of the October 15 filing deadline. Supplemental Request ¶ 3.

12. The Debtors' purported justification has no foundation: the tax law prohibits a taxpayer from deviating from a historically-used accounting method without the permission of the Commissioner. *See* 26 U.S.C. § 446(e); 26 C.F.R. § 1.446-1(e)(2)(i) ("[A] taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner."). Because the Debtors' tax returns for 2016, 2017 and 2018 consistently applied the same tax accounting methods, the Debtors cannot now change those methods unilaterally.[6] Thus, even if the historical accounting method at issue here is flawed (it is not, and Debtors have set forth no evidence even to suggest otherwise), the Debtors may not unilaterally shift to a different method without permission of the IRS Commissioner. 26 U.S.C. § 446(e). Accordingly, the requested information is of no use to the Debtors in preparing their upcoming tax filings as the method of accounting used by the Zohar Funds is plainly available from the documents already provided *and must be used for the 2019 tax filings.*

---

[6] Indeed, current IRS rules provide that if a taxpayer wants to change a method of accounting, it must file a request to change its method of accounting *during the year in which it seeks to adopt that change*. *See* Rev. Proc. 2015-13, 2015-15 I.R.B. 419 § 2.03(2) (emphasis added). Thus, it is not possible in October 2020 for the Debtors to change an accounting method for the tax year that ended on December 31, 2019.

13. That the Debtors tax returns referenced the closing agreements does not change this analysis. The disclosure statements attached to the Debtors' tax returns do not state that the Debtors were relying upon the closing agreements. Rather, the disclosure statements reference the closing agreements merely to provide notice to the IRS that the Debtors were adopting the same method of accounting as had been used by the Octaluna entities prior to the check-the-box elections. The details of that method of accounting are specified directly in the disclosure statements, so Debtors have the information they need to understand the method of accounting employed on their prior tax returns and to complete and timely file their 2019 returns.

## RESERVATION OF RIGHTS

14. Patriarch expressly reserves, and does not waive, its right to amend, modify, or supplement this Objection and to object to the Supplemental Request and any and all discovery requests of the Debtors on any grounds that governing law permits. Patriarch expressly preserves and does not waive its right to assert the attorney-client privilege or any other privilege recognized under governing law with respect to any discovery sought by the Debtors.

## CONCLUSION

WHEREFORE, Patriarch respectfully requests that this Court deny the Debtors' Supplemental Rule 2004 Request.

Dated: October 13, 2020            **COLE SCHOTZ P.C.**

By: *Norman L. Pernick*
Norman L. Pernick (No. 2290)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
npernick@coleschotz.com
preilley@coleschotz.com

– and –

8

**GIBSON, DUNN & CRUTCHER LLP**
Monica K. Loseman (Admitted Pro Hac Vice)
1801 California Street, Suite 4200
Denver, CO 80202-2642
Telephone: (303) 298-5784
Facsimile: (303) 313-2828
mloseman@gibsondunn.com

Randy M. Mastro (Admitted Pro Hac Vice)
Mary Beth Maloney (Admitted Pro Hac Vice)
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
rmastro@gibsondunn.com
mmaloney@gibsondunn.com

– and –

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, DUNN & CRUTCHER LLP**
Armando Gomez (Admitted Pro Hac Vice)
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Telephone: (202) 371-7000
armando.gomez@skadden.com

*Counsel to Lynn Tilton; Patriarch Partners, LLC; Patriarch Partners VIII, LLC; Patriarch Partners XIV, LLC; Patriarch Partners XV, LLC; Octaluna, LLC; Octaluna II, LLC; and Octaluna III, LLC*

9

**EXHIBIT 1**

# (REDACTED)

57772/0001-21468554v1