IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 )  |
| Zohar III, Corp., *et al.*,[1] | ) Case No. 18-10512 (KBO) ) |
| Debtors. | ) Jointly Administered ) |
| | ) **Docket Ref. No. 2110** |

## ORDER APPROVING CONSUMMATION OF PORTFOLIO COMPANY TRANSACTION

Upon the *Order in Aid of Implementation of the Global Settlement Agreement Approved in these Cases for Authority to Establish Certain Procedures for the Corporate Approval of Portfolio Company Transactions and for Related Relief*, [Docket No. 545] (the "Procedures Order"); and upon the notice filed with the Court on November 16, 2020 [Docket No. 2110] (the "Transaction Notice")[2] and the declarations attached thereto as Exhibit A and Exhibit B; and the Court having jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the sale, pursuant to section 363 of the Bankruptcy Code, of the beneficial or equity interests (the "Interests") in the Company to Buyer pursuant to that certain

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Procedures Order, the Transaction Notice or the EPA, as applicable. The terms "Patriarch Stakeholders" and "Other Stakeholders" as used herein shall have the meanings ascribed thereto in that certain Order Approving and Authorizing the Settlement Agreement By and Between the Debtors. Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class dated May 21, 2018 [Docket No. 266].

Equity Purchase Agreement (the "EPA") by and among Kokkino Inc., a Delaware corporation ("Buyer"), Kokkino LLC 2, a Delaware limited liability company ("Parent"), Libertas Copper, LLC, a Delaware limited liability company (the "Company"), Zohar III, Limited, a Cayman Islands exempt company ("Zohar Seller"), Ark II CLO 2001-1 Ltd., a Cayman Islands exempt company (together with Zohar Seller, each, a "Seller" and, collectively, the "Sellers"), and Zohar III, Corp., a Delaware corporation, in its capacity as the representative of the Sellers (the "Seller Representative") dated November 30, 2020 (the "Portfolio Company Transaction"); and it appearing that no other or further notice need be provided; and the Court having found and determined that the consummation of the Portfolio Company Transaction is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Patriarch Stakeholders' limited objection [Docket Nos. 2133, 2134] having been deemed withdrawn hereby and any other objections to the Portfolio Company Transaction having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

    1.    Joseph J. Farnan, Jr., as Independent Director, has been fully charged with governance of the Debtors under applicable Cayman or Delaware law, as applicable, to authorize, approve and consummate the Portfolio Company Transaction, including, but not limited to (i) authorizing the Debtors to vote or consent to any vote, as applicable, any and all Interests in favor of the Portfolio Company Transaction, (ii) exercising any rights with respect to the Interests to implement or consummate the Portfolio Company Transaction, and (iii) authorizing and approving the release of Debtors' liens, claims, encumbrances or other interests, including beneficial interests, in connection with the Portfolio Company Transaction.

    2.    Subject to the entry of this Order, the Debtors (i) have full corporate power and authority to perform all of their obligations under the EPA and each of the agreements executed

in connection therewith and the consummation thereof, and the Debtors' prior execution and delivery of, and performance of obligations under, the EPA and each of the agreements executed in connection therewith is hereby ratified, (ii) have all of the corporate power and authority necessary to consummate the Portfolio Company Transaction, (iii) have taken all corporate action necessary to authorize, approve, execute and deliver the EPA and each of the agreements executed in connection therewith and the consummation thereof and the Portfolio Company Transaction itself, and (iv) no consents or approvals are required to consummate Portfolio Company Transaction or otherwise perform obligations under the EPA or each of the agreements executed in connection therewith, except for the Closing conditions expressly agreed to therein.

3.      Pursuant to sections 363 and 365 of the Bankruptcy Code, entry by the Debtors into the EPA is hereby authorized and approved as a valid exercise of the Debtors' business judgment.

4.      The Debtors are authorized, pursuant to section 363 of the Bankruptcy Code, to enter into the EPA. The EPA (and all ancillary documents), all of the terms and conditions thereof, and all of the transactions contemplated by the Transaction Agreements are hereby approved, including but not limited to the transfer of the Interests to the Buyer and the termination of intercompany balances set forth in section 8.05 of the EPA. The failure specifically to include any particular provision of the EPA in the Transaction Notice or this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the EPA be authorized and approved in its entirety. The transfer of the Interests to the Buyer shall be a legal, valid and effective transfer of the Interests.

5.      Based upon, among other considerations, the Transaction Notice and the Transaction Declarations, the Independent Director's authorization, approval and consummation

of the Portfolio Company Transaction is prudent, in good faith and in the best interest of the Debtors' estates and stakeholders and is fully consistent with the duties imposed upon him as a fiduciary.

6. The sale of the Interests and the consideration provided by the Buyer are fair and reasonable and shall be deemed for all purposes to constitute a transfer for fair value, full and adequate consideration, reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

7. Effective as of the Closing, the sale of the Interests by the Debtors and the Sellers to the Buyer shall constitute a legal, valid and effective transfer of the Interests notwithstanding any requirement for approval or consent by any person and shall vest Buyer with all rights, title and interests of the Debtors and the Sellers in and to the Interests, free and clear of all liens, claims, encumbrances and interests of any kind (including but not limited to (i) beneficial interests and (ii) any liens recorded with the register of mortgages in the Cayman Islands) pursuant to section 363(f) of the Bankruptcy Code with such liens, claims, encumbrances and interests attaching to the proceeds from such Portfolio Company Transaction with the same validity and priority as such released liens.  The Debtors and Sellers shall promptly (i) update the register of mortgages in the Cayman Islands to reflect the transfer of the Interests consistent with this paragraph and (ii) provide the Buyer with an updated certificated copy of the register of mortgages reflecting the same.

8. The sales process conducted by the Debtors was at arms' length, non-collusive, in good faith, and substantively and procedurally fair to all entities.  Neither the Buyer nor its designees is an "insider" as that term is defined in section 101(31) of the Bankruptcy Code. The Buyer and Parent are hereby granted and are entitled to all of the protections provided to a

good faith buyer under section 363(m) of the Bankruptcy Code. Neither the Debtors, the Seller Representative, the Buyer nor the Parent has engaged in any action or inaction that would cause or permit the EPA or the transactions completed by the Transaction Agreements to be avoided or would impose any costs or damages under section 363(n) of the Bankruptcy Code or otherwise.

9. In accordance with Paragraph 18 of the Settlement Agreement, from the Base Purchase Price, the Patriarch Stakeholders shall receive a payment in the aggregate amount of $1,496,980.15 (the "Patriarch Closing Date Payment"). The Debtors' rights to challenge and recover any amounts paid to the Patriarch Stakeholders, including the Patriarch Closing Date Payment, shall be preserved in accordance with paragraph 18 of the Settlement Agreement, notwithstanding any payment of such amount through the Closing. Effective as of the Closing of the EPA and receipt of the Patriarch Closing Date Payment, the Patriarch Stakeholders and Ankura Trust Company, LLC are hereby deemed to release all liens, claims, encumbrances and interests of any kind that could be asserted or have been asserted by the Patriarch Stakeholders or Ankura Trust Company, LLC against any of the Company Released Parties (as defined in Section 8.05 of the EPA). The Patriarch Stakeholders shall dismiss the pending actions against the Company (the "Pending Actions") with prejudice within 10 days of the occurrence of the Closing. A list of the Pending Actions is attached hereto as **Exhibit 1**.

10. Service of the Transaction Notice on the Seller Releasing Parties (including the Patriarch Stakeholders) constitutes proper, timely, adequate, and sufficient notice of the release of the Company Released Parties by the Seller Releasing Parties as set forth in Section 8.05 of the EPA and as described in the Transaction Notice and this Order (the "Release"). The Release is hereby approved in all respects and in its entirety and shall be effective as of the Closing. Notwithstanding anything to the contrary in the Transaction Notice, the EPA (including the

Release and/or 8.05 of the EPA), any other document executed in connection with consummating the Hussey Transaction or this Order, any release granted or provided to or benefitting Patriarch Stakeholders shall be solely and exclusively from the Company and the Buyer, including with respect to derivative claims which are hereby deemed released, and no other person or entity.

11. Subject to the occurrence of the Closing of the EPA and the payment of the Patriarch Closing Date Payment, the Management Services Agreement between the Company and Patriarch Partners Management Group, LLC dated as of December 15, 2011, as amended ("MSA") and any other agreements among and between the Company and any of the Patriarch Stakeholders, shall be deemed to have terminated. The Patriarch Stakeholders expressly reserve all rights solely as against the Debtors with respect to, and do not release their claims solely as against the Debtors with respect to, payment of the Transaction Fee (as that term is defined and provided for in the MSA). The foregoing claims relating to the Transaction Fee reserved against the Debtors are hereby preserved in accordance with paragraph 18 of the Settlement Agreement, notwithstanding nonpayment of such claim at Closing of the EPA or anything to the contrary in the EPA, including but not limited to Section 8.05(b).

12. The Debtors are authorized to execute and deliver all instruments and documents, and take such other action—including the exercise of any shareholder or lender approval rights —as may be necessary or appropriate to consummate, implement and effectuate the Portfolio Company Transaction.

13. Nothing in this Order shall modify or waive any closing conditions or termination rights in the EPA, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

14. This Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, the Patriarch Stakeholders, the Other Stakeholders, Lynn Tilton, all holders of any interests or claims (whether known or unknown) against any Debtor, the Buyer, Parent, the Company and all successors and assigns of Buyer and Parent, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases.

15. The provisions of this Order and the EPA are non-severable and mutually dependent.

16. As provided by Bankruptcy Rule 9014, the terms and conditions of this Order shall be effective immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rules 6004(h) and 6006(d). Time is of the essence in closing the sale and the Debtors and the Buyer intend to close the sale as soon as possible.

17. The EPA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court.

18. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in these chapter 11 cases, any subsequent chapter 7 or chapter 11 case of the Debtors, or any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the EPA or the terms of this Order.

19. The Debtors, acting as one or more of the Sellers and Seller Representative under the EPA, shall be authorized to establish and maintain an escrow account with Ankura Trust Company, LLC, for the purposes of holding and disbursing the Representative Fund Amount as

directed by the Seller Representative in accordance with the terms of the EPA. Section 345 of the Bankruptcy Code, shall be waived (to the extent applicable) with respect to the Representative Fund Amount and the related escrow account.

20. The Seller Representative shall (a) promptly provide to the Patriarch Stakeholders copies of any proposed purchase price allocation, objections thereto, determinations of the Accounting Firm, and final purchase price allocation in the form received or provided by the Seller Representative, all as contemplated under section 11.01 of the EPA; and (b) promptly provide to Ark II copies of any Pass-Through Tax Return for a taxable period ending on or prior to the Closing Date and any amendments thereto as well as notice and copies of any audit, examination or assessment by any taxing authority received by the Seller Representative with respect to any Pass-Through Tax Return for a taxable period ending on or prior to the Closing Date.

21. Nothing herein or in the Transaction Notice, EPA or any other document relating to the Hussey Transaction shall have any impact or precedential effect with respect to any other sale of a Portfolio Company in these cases, and the rights of all parties, including with respect to the parties' rights and obligations under the Settlement Agreement, their rights and obligations with respect to any adversary proceeding, including but not limited to the right to assert defenses and counterclaims in those proceedings, and other orders of this Court are expressly preserved. Except as expressly stated herein, nothing set forth herein is intended to, nor shall it, affect the releases in the EPA.

22. This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

Dated: November 30th, 2020  
Wilmington, Delaware

KAREN B. OWENS  
UNITED STATES BANKRUPTCY JUDGE

27270242.22

90910684v.2