# EXHIBIT A

1

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE

                                  .      Chapter 11
IN RE:                            .
                                  .      Case No. 18-10512 (KBO)
ZOHAR III CORP., et al.,          .
                                  .      Courtroom No. 1
                                  .      824 North Market Street
                                  .      Wilmington, Delaware 19801
                                  .
                 Debtors.         .      October 19, 2020
. . . . . . . . . . . . . . . . . .      10:00 A.M.

                        TRANSCRIPT OF HEARING
                 BEFORE THE HONORABLE KAREN B. OWENS
                   UNITED STATES BANKRUPTCY JUDGE
```

APPEARANCES:

| | |
|---|---|
| For the Debtors: | Michael Nestor, Esquire |
| | Joseph Barry, Esquire |
| | Michael Neiburg, Esquire |
| | YOUNG CONAWAY STARGATT & TAYLOR LLP |
| | 1000 North King Street |
| | Wilmington, Delaware 19801 |
| For Patriarch: | Monica Loseman, Esquire |
| | GIBSON DUNN |
| | 333 South Grand Avenue |
| | Los Angeles, California 90071 |
| | - and - |
| | Armando Gomez, Esquire |
| | SKADDEN ARPS SLATE MEAGHER FLOM LLP |
| | 1440 New York Avenue |
| | Washington, DC 20005 |
| | - and - |
| | David Dean, Esquire |
| | COLE SCHOTZ P.C. |
| | 500 Delaware Avenue |
| | Wilmington, Delaware 19801 |

```
 1  Audio Operator:          Al Lugano

 2  Transcription Company:   Reliable
                             1007 N. Orange Street
 3                           Wilmington, Delaware 19801
                             (302)654-8080
 4                           Email: gmatthews@reliable-co.com

 5
    Proceedings recorded by electronic sound recording,
 6  transcript produced by transcription service.

 7

    APPEARANCES (Continued):
 8
    For the Portfolio Companies
 9  And RM Acquisition:      Christopher Clark, Esquire
                             LATHAM & WATKINS
10                           10 Northview Drive
                             New York, New York 12110
11
    For U.S. Trustee:        Juliet Sarkessian, Esquire
12                           UNITED STATES DEPARTMENT OF JUSTICE
                             OFFICE OF THE U.S. TRUSTEE
13                           844 King Street, Suite 2207
                             Lockbox 35
14                           Wilmington, Delaware 19801

15
    For Teleo Capital:       Evelyn Meltzer, Esquire
16                           TROUMAN PEPPER LLP
                             1313 N. Market Street
17                           Wilmington, Delaware 19801

18

19

20

21

22

23

24

25
```

1  September 16th response, I just want to make sure you're
2  looking -- is this the email that you're referring to where
3  you say at the end:
4      "If you are truly interested in my bid, it may be
5  time to engage."
6  A    Yes.
7  Q    And why did you feel the need to indicate to PJ Solomon
8  in this email that it may be time to engage?
9  A    Well, because at this point, I thought that I would
10 hear back from them beyond asking me where the money was
11 coming from.  But it would be -- you know, I wanted it to be
12 a firm, actionable bid, but I also had expected, like any
13 other banker would do when you receive a bid, is to call and
14 ask questions, and if something does not meet, you know,
15 their requirements or if they think that something needs to
16 be changed or negotiated, they engage with that party to make
17 certain that the bid is, you know, what each party needs it
18 to be or at least an attempt to make certain that everybody
19 is happy with those negotiated terms.
20      It's unusual to have to submit a bid signed without
21 having engaged with the seller.
22          MR. CLARK:  Objection, Your Honor.
23          I move to strike as nonresponsive, Ms. Tilton's
24 characterization of what's usual.
25          THE COURT:  I'll allow it and I'll take it for

```
 1  what it's worth.
 2              MR. CLARK:  Thank you, Your Honor.
 3  BY MR. DEAN:
 4  Q      Thank you, Ms. Tilton.
 5         So, let's discuss the bid that you submitted with your
 6  objection.  I'm not going to put it up on the screen, but
 7  it's PX-1-A, which is the clean, and JX-08, which is the
 8  blackline.  I'm going to ask you some general questions about
 9  the bid, not with respect to any specific provisions of it,
10  so I don't think you need to open it unless you want to.
11  A      Okay.
12  Q      So, with respect to the bid that you submitted with
13  your objection on October 9th, were you requesting an auction
14  through your bid?
15  A      No.
16  Q      Are you attempting to create an in-court auction with
17  your revised bid?
18  A      No.
19  Q      Now, what was the purpose of submitting this bid to the
20  Court?
21  A      Twofold.  One, to show where we could have gotten to,
22  had there been engagement and negotiation, and the other was
23  so that if the TELEO bid was denied, that there was an
24  actionable bid in place that could be closed upon so that it
25  wouldn't be an excuse that there was no other bidder there,
```

1  other than TELEO, and, therefore, the objection should not be
2  withheld or upheld, excuse me.
3  Q      Thank you.
4          MR. DEAN:  At this time, Your Honor, I'll move
5  PX-1-A and JX-08 into evidence with the caveat that the
6  attorney letter that we're referring to is not being admitted
7  for a hearsay purpose.
8          MR. CLARK:  Two things, Your Honor.  One, I think
9  Mr. Dean said it's not being admitted for a hearsay purpose.
10 I think he meant to say it's not being admitted for the truth
11 of the matter asserted therein.
12         MR. DEAN:  That's what I meant.
13         MR. CLARK:  Other than that, we have no objection.
14         THE COURT:  Okay.  Mr. Dean, is that correct?
15         MR. DEAN:  Yes, Your Honor.
16         When I'm referring to "not for a hearsay purpose"
17 I'm meaning that it's not being admitted for the truth of the
18 matter asserted.
19         THE COURT:  Okay.  That's fine.
20         With that, they're admitted.
21    (Exhibits PX-1-A and JX-08 received into evidence)
22 BY MR. DEAN:
23 Q      Did you hear testimony last -- the testimony last week
24 from Mr. Vescio, Ms. Tilton, about the impact that your
25 revised bid would have on the overall portfolio company

1 marketing process?
2 A    Yes.
3 Q    And do you agree with that testimony?
4 A    No.
5 Q    Can you explain why not.
6 A    My revised bid is not marching into court after the
7 process is finished to try to overbid in court. This was
8 based on the fact that my objection is about not being
9 treated fairly or equally in the process and just revising my
10 former bid, my bid from September 15th before they signed the
11 deal with TELEO.
12     So, this is not an overbid. This is the same bid,
13 46 million, that I submitted with nearly the exact same net
14 proceeds to the estate. So, this is not trying to create an
15 auction process. Hopefully, it will lead to a more equitable
16 process going forward for these companies where everyone is
17 treated fairly from a procedural process.
18 Q    Thank you, Ms. Tilton.
19     Would you have submitted a bid with your objection if
20 you thought that your September 15th bid was given proper
21 consideration?
22 A    No, I would not have.
23 Q    And would you have submitted a bid with your objection
24 if you had not made a bid for Rand in the first place?
25 A    No.

1  Q    Do you intend to submit bids as part of an objection
2  for companies, going forward, if you are properly included in
3  the process and decide not to participate as a bidder?
4  A    No.
5  Q    Now, in response to Mr. Vescio's stated concerns about
6  the process going forward, do you have concerns of your own
7  that have come to light through the Rand process that you
8  would like to share with the Court?
9  A    Yes.
10       Look, I have been called a bidder everywhere that I
11 have not, you know, declared that I was not a bidder, which
12 is only two companies, and so I'm deemed as a bidder, treated
13 as a bidder, yet none of the bankers reach out to me with an
14 NDA, with information, with a timeline.
15       I have to try to chase the bankers down.  Often, they
16 don't respond to me for weeks or months, and then I have to
17 somehow be able to meet their timelines.  Often, I'm not even
18 sent anything until after first-round bids are in and
19 management meetings have happened.
20       So, you know, I have took every care to treat the
21 debtors equally with me during a process, getting information
22 as soon as I completed it and from the bankers at the same
23 time, keeping them updated, and so if I'm declared a bidder
24 and I'm kept out of the process, then I'd like to be treated
25 like a bidder from the first get-go when information is sent

1   to other buyers so I can meet the process and not be accused
2   of coming in late or guessing on time frames.
3          But this has not been the only instance where I'm
4   trying to chase down a banker or information to be a bidder,
5   which I have been deemed to be, since my resignation.
6              MR. CLARK:  Your Honor, I object.
7              I waited until the answer because I wanted to see
8   what it was about.  That was an answer about a process,
9   without regard to any companies and Ms. Tilton, with regard
10  to Rand, I didn't hear the word Rand.  But she said, Like, in
11  this case, you had to chase down a bidder.
12             I think her testimony about her interactions with
13  the bankers, specific to Rand, should control, not a
14  generalized, sweeping statement.
15             MR. DEAN:  May I respond, Your Honor?
16             THE COURT:  Well, I will allow the testimony and I
17  will make that decision.  I'm not trier of the facts, so --
18             MR. CLARK:  Thank you, Your Honor.
19             THE COURT:  -- I can make that decision on my own.
20  BY MR. DEAN:
21  Q    Ms. Tilton, I'd like to ask you a couple of questions
22  about the so-called Paragraph 18 claims, which refer to the
23  claims under Paragraph 18 of the settlement agreement.
24         You address in Paragraph 32 of your declaration, the
25  claims that you have under Paragraph 18.

1        Do you believe that there are other potential claims
2 that you may have against Rand that have not been documented?
3 A    Yes.
4 Q    And what are those?
5 A    Primarily indemnification claims, but they could also
6 be counterclaims based on what the debtors' plan to bring
7 against me in their retained claims that they are holding
8 onto and their joint defense agreement with the new buyer of
9 Rand.
10 Q    And are those indemnification rights, at least in part,
11 reflected in the operating agreement of Rand?
12 A    Yes.
13          MR. DEAN:  I'd move DX-30 into evidence, Your
14 Honor, which is the operating agreement.
15          THE COURT:  Any objection?
16          MR. CLARK:  I have no objection, Your Honor.
17          THE COURT:  Okay.  It's admitted.
18      (Exhibit DX-30 received into evidence)
19 BY MR. DEAN:
20 Q    Ms. Tilton, are you aware that the debtors have taken
21 the position in their reply brief that if the Paragraph 18
22 claims are paid, then the Patriarch stakeholders have to
23 release any and all claims against Rand?
24 A    I know they've taken that position, but it's contrary
25 to the settlement agreement and various monetization orders.