# EXHIBIT A

**Proposed Redacted Version**

MorrisonCohen LLP

Joseph T. Moldovan
Partner
(212) 735-8603
jmoldovan@morrisoncohen.com

**CONFIDENTIAL COMMUNICATION, NOT TO BE FILED ON THE PUBLIC DOCKET AS THE CONTENTS RELATE TO MATTERS THAT HAVE BEEN SEALED OR CONTENTS REDACTED**

April 11, 2021

**VIA EMAIL**

Honorable Karen B. Owens
United States Bankruptcy Judge
United States Bankruptcy Court
24 N Market Street
Wilmington, DE 19801

**Re*: In re: Zohar III Corp.*, Ch. 11 Case No. 18-10512 (KBO)**

To the Honorable Karen B. Owens:

We and Bayard, P.A. represent Portfolio Company C, Global Automotive Systems, LLC ("**Company**" or "**GAS**")) in connection with the sales and monetization process ("**Sale Process**"). Mark Berger, the Independent Sales Process Manager for GAS, and his professional team including Donnelly Penman Partners ("**DPP**"), the Investment Bankers retained to conduct the Sales Process, have reviewed the letter, of Stacy L. Newman of Ashby & Geddes filed with the Court at 5:33 pm on Friday April 9, 2021("**MGC Letter")** on behalf of MiddleGround Capital Partners ("**MGC**"), after the close of evidence in the hearing ("**Hearing**") relating to Patriarch's Motion for Entry of an Order (A) Enforcing and Implementing the Terms of the Settlement Agreement with Respect to a Portfolio Company Sale and (B) Granting Related Relief [D.I. 2388; 246] ("**Motion**"). As the Court knows, GAS filed a joinder to the Motion. *See* ECF No. 2453.

Although the MGC Letter was filed on the public docket, portions of this response contain material that has been sealed as part of the Hearing. As a result, this letter is being submitted only to the Court and other parties permitted to review sealed material by email, and therefore not MGC, and a redacted version will be filed on the public docket.

Mark Berger and DPP have wrestled extensively with this letter and its implications all weekend despite the strange vehicle of its delivery—addressed to the Court and filed in the public record—and are submitting this letter to the Court to explain why the Court should not consider seriously the MGC Letter and why GAS should not and cannot move forward with MGC.

Before we address the specifics, or lack of specifics, in the MGC Letter, we believe that some background about MGC would be helpful to the Court and provide context for GAS' decision.

**MGC Participated In The Sales Process And Voluntarily Withdrew From The Sales Process Three Months Ago**

Last year, this Court oversaw the sale of Dura Automotive Systems ("**Dura**"). Bardin Hill Investment Partners ("**Bardin Hill**")—one of the major noteholders of Zohar III, and a party with access to the sealed portions of the Hearings—and Charlton Group Inc. ("**Charlton**") purchased Dura's North American assets with a credit bid in April 2020.

In August 2020, after the sale of Dura to Bardin Hill and Charlton, MGC purchased a majority ownership of Dura from Bardin Hill and Charlton. Based on information and belief, Bardin Hill retained a minority interest.

Dura, is a competitor of GAS, in the highly competitive automotive supply industry.

During the Hearing, the Court heard testimony from Jim Penman, the leader of the DPP team running the Sale Process and Mr. Berger. Mr. Penman and Mr. Berger testified that they came up with a group of 300 potential acquirers, the Confidential Information Memorandum was sent to approximately 80 potential bidders who signed NDAs, and that MGC was one of the parties who submitted a bid as part of the Sales Process. *See* April 8 Hearing Tr. at 266:17-19; April 9 AM Hearing Tr. at 142:8-13. Mr. Penman further testified that MGC had submitted a non-binding indication of interest for the purchase of GAS ("**MGC IOI**") in which MGC offered total consideration of $35 -$50 million "with a working capital adjustment." *Id.* at 142:14-15.

The MGC IOI was one of fourteen IOIs received by DPP. *See* April 8 Hearing Tr. at 137:18-20. After reviewing all the IOIs, DPP and Mr. Berger made the business determination to move forward only with bidders whose bids exceeded $55 million and

asked all interested bidders to raise their bids above this threshold. *See* April 9 AM Hearing Tr. at 98:3-7; 142:9-13. Investment bankers often make this kind of demand in private auctions such as this one to weed out bidders who are not really interested in going the full distance and purchasing a business, but rather are engaged in a "fishing expedition" intended to obtain access to confidential information and thereby obtain a competitive advantage.

As the Court will recall from testimony, Ms. Tilton and two other parties who submitted IOIs raised their bids, but MGC did not and exited the Sales Process. April 9 AM Hearing Tr. at 98:3-7; 102:11-13.

Mr. Penman also testified that he received an email from MGC on March 23, 2021, in which MGC reached out to DPP to inquire about the Sales Process. Mr. Penman testified that he informed MGC that DPP was unable to provide information to MGC because GAS was at that time subject to exclusivity with another party. As the court is aware, this party was Advanced Vehicle Assemblies LLC ("**AVA**"). *See* April 9 AM Hearing Tr. at 143:16-18.

**The MGC Letter Is Not An Offer And Is Utterly Devoid Of Specificity**

It is critical to state what the MGC Letter is not: it is not a cash on the barrelhead, no conditions, offer to buy GAS. It is in the words Ms. Newman, an offer "*to make a **non-binding letter of intent** for GAS within seven business days.*" In other words, it is an invitation to begin a dialog. Basically, the same dialog that would have happened if MGC had not chosen to exit the Sales Process three months ago.

The MGC Letter does not provide any of the critical terms that would enable Mr. Berger and DPP to evaluate it in any meaningful way. Most significantly, the MGC Letter states that the purchase price is subject to "normalized levels of working capital". However, neither the MGC Letter nor the MGC IOI specify how a normalized level of working capital would be calculated. In Mr. Berger's view, a normalized level of working capital could easily result in a downward adjustment to the purchase price in excess of $10 million; normalizing the FCA receivables—a critical component of the Company's revenue—alone would result in a downward adjustment of at least $8 million. Despite the "top line" number of $40 million indicated in the MGC Letter, Mr. Berger's and DPP's best estimation is that if MGC and the Company spent the time and effort

necessary to get to a deal, the "real" purchase price would likely be $30 to $32 million or lower, but it is not possible to make this determination given the sparseness of the MGC Letter.

Additionally, the MGC IOI from three months ago specified that the purchase price would be financed with a combination of debt and equity financing; that MGC would need to conduct due diligence for a period of 45 days; and that it intended to enter into definitive documents containing customary representations, warranties, covenants, indemnities and conditions. The MGC Letter does not address any of these terms or provide an estimated timeline to close.

Neither the MGC Letter nor the MGC IOI address the identity or creditworthiness of MGC's financing sources, whether working capital or indemnity escrows would be required, the survival period for representations and warranties, sources of indemnification (or the use of representation and warranty insurance), indemnity deductibles or caps, whether non-competes or other restrictive covenants would be required, whether members of management would be required to sign employment agreements, and many other key terms.

In sum and substance, the MGC Letter is nothing more than a request for a do-over which, in the business judgment of Mr. Berger and DPP, is neither wise nor proper.

MGC chose not to proceed in the Court ordered Sales Process, which followed milestones set by DPP and Mr. Berger in order to execute the plan approved by this Court, was comprehensive and conducted in a commercially reasonable manner that led to a fair and reasonable price, and that was the best offer received under the current challenging circumstances. Consideration of what MGC has lobbed in at the last minute, after all deadlines have passed, and after an arm's length process has concluded, would be manifestly unfair to the other bidders who participated in the process and played by the rules and an evisceration of the rules established by this Court for the Sale Process.

# Morrison Cohen LLP

Honorable Karen B. Owens
April 11, 2021
Page 5

[Content redacted]

MorrisonCohen LLP

Honorable Karen B. Owens
April 11, 2021
Page 6

For these reasons, and after giving this matter more serious and due deliberation than it merits, GAS declines to explore MGC's new expression of "interest" and urges this Court to approve its prompt sale to AVA.

Respectfully submitted,

Joseph T. Moldovan

#10236434 v2 \028496 \0001