# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 18-10512 (KBO)<br><br>Jointly Administered<br><br>**Re: D.I. 2388 and 2505** |

### ORDER (A) ENFORCING AND IMPLEMENTING THE TERMS OF THE SETTLEMENT AGREEMENT WITH RESPECT TO A PORTFOLIO COMPANY SALE AND (B) GRANTING RELATED RELIEF

Upon the *Motion for Entry of An Order (A) Enforcing and Implementing the Terms of the Settlement Agreement With Respect to a Portfolio Company Sale and (B) Granting Related Relief* (the "Motion"),[2] filed by Lynn Tilton and the Patriarch Stakeholders (collectively, "Patriarch"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided under the circumstances, and it appearing that no other or further notice need be provided; and the Court having considered the Motion, the

---

[1] The "Debtors," and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited ("Zohar III") (9261), Zohar II 2005-1, Limited ("Zohar II") (8297), and Zohar CDO 2003-1, Limited (together with Zohar II and Zohar III, the "Zohar Funds") (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Asset Purchase Agreement (defined below), as applicable.

57772/0001-40552359v5

accompanying declarations of Mark Berger, James C. Penman, and Lynn Tilton, and that certain *Asset Purchase Agreement*, by and among Advanced Vehicle Assemblies LLC (the "Buyer"), on the one hand, and Global Automotive Systems, LLC, Milan Metal Systems, LLC, Global Rollforming Systems, LLC, Tubular Metal Systems, LLC, and Zohar TT Acquisition, LLC (each a "Seller" and collectively, "GAS," the "Company," or the "Sellers"), on the one hand, dated March 23, 2021, as amended by that *First Amendment to Asset Purchase Agreement*, dated as of April 6, 2021 (the "Asset Purchase Agreement"); and the Court having found and determined on the record that the relief sought in the Motion is consistent with the terms of the Settlement Agreement and other prior orders of this Court, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED**:

1. The Motion is GRANTED to the extent provided herein.

2. The Debtors and their officers and directors are hereby directed to execute, or take any corporate or limited liability company action necessary to authorize the execution of, the Asset Purchase Agreement within three (3) days of the entry of this Order.

3. The Debtors and their officers and directors are hereby directed to release any liens, claims, or interests with respect to the Transferred Assets and against and in each Non-Seller Sub.

4. Joseph J. Farnan, Jr., as Independent Director, and Michael Katzenstein, as chief restructuring officer, as applicable under the Settlement Agreement, has been fully charged with governance of the Debtors under applicable Cayman or Delaware law, as applicable, to authorize, approve and/or consummate the transaction contemplated in the Asset Purchase Agreement (the "Portfolio Company Transaction"), including, but not limited to (i) authorizing the Debtors' consent to the Portfolio Company Transaction, (ii) exercising any of the Debtors' rights with

respect to the Transferred Assets to implement or consummate the Portfolio Company Transaction, and (iii) authorizing and approving the release of Debtors' liens, claims, encumbrances or other interests, including beneficial interests, in connection with the Portfolio Company Transaction as provided herein.

5. The Asset Purchase Agreement and all of the transactions contemplated by the Portfolio Company Transaction are hereby approved, including but not limited to the transfer of the Transferred Assets to the Buyer. The failure specifically to include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

6. The transfer of the Transferred Assets to the Buyer shall be a legal, valid, and effective transfer of the Transferred Assets. Buyer is hereby authorized to satisfy the Purchase Price pursuant to section 2(a) of the Asset Purchase Agreement.

7. The sale of the Transferred Assets and the consideration provided by the Buyer, including the payments at Closing pursuant to section 2(a) of the Asset Purchase Agreement, are fair and reasonable and shall be deemed for all purposes to constitute a transfer for fair value, full and adequate consideration, reasonably equivalent value and fair consideration.

8. Effective as of the Closing, the sale of the Transferred Assets by the Sellers to the Buyer shall constitute a legal, valid and effective transfer of the Transferred Assets and shall vest Buyer with all rights, title and interests of the Sellers in and to the Transferred Assets. The sale of the Transferred Assets to Buyer shall be free and clear of all of the Debtors' liens, claims, encumbrances and interests of any kind ("<u>Encumbrances</u>"), with any and all such Encumbrances attaching to the cash proceeds to the Sellers from such Portfolio Company Transaction with the

same validity and priority as such released Encumbrances had against the Transferred Assets; *provided*, *however*, notwithstanding anything herein to the contrary, nothing in this Order shall alter, impair, or release any of the Debtors' claims, liens or encumbrances against the Sellers or the Debtors' membership interests in Global Automotive Systems, LLC (except any claims against or interests of the Debtors in each Non-Seller Sub, which shall be free and clear of any Encumbrances as to each Non-Seller Sub).  Any cash proceeds of the Portfolio Company Transaction that are to be distributed to the Debtors or the Agent shall be first turned over to the Agent and then applied by the Agent to the obligations under the ABL Agreement and Term Loan Agreement in accordance with their terms; *provided further however*, that notwithstanding anything herein or in the Asset Purchase Agreement to the contrary, nothing in this Order or the Asset Purchase Agreement shall alter, impair, or release any of DUS Operating, Inc.'s claims, if any, against Global Automotive Systems, LLC and/or any existing contracts between DUS Operating, Inc. and Global Automotive Systems, LLC; and provided further, that nothing in this order or the Asset Purchase Agreement shall limit and/or preclude DUS Operating, Inc.'s right to bring claims, if any, against Buyer AVA to enforce such claims.  Nor shall anything in this order preclude or in any way limit Global Automotive Systems, LLC's or Buyer AVA's claims, if any, against DUS Operating, Inc., or defenses to any claims asserted by DUS Operating, Inc. or any rights to counterclaim.

9.     Notwithstanding section 2(b)(ii)(C) of the Asset Purchase Agreement, the $75,000 owed to PPAS shall not be paid at Closing, and shall be paid consistent with the Term Loan Agreement, with all parties' rights, claims or defenses with respect to such payment hereby reserved.

10. Pursuant to section 2(b)(ii)(D) of the Asset Purchase Agreement, upon the Closing, $594,586.09 (the "Escrowed Proceeds") shall be paid into an escrow account to be established pursuant to the mutual agreement of Debtors and Patriarch or by the Bankruptcy Court, which amounts shall be held in escrow and disbursed solely in accordance with a final order of the Bankruptcy Court. For the avoidance of doubt, all rights, interests, and defenses of all parties with respect to any entitlement to the Escrowed Proceeds are preserved.

11. The Patriarch Stakeholders and the Debtors expressly reserve all rights with respect to any claims asserted under paragraph 18 of the Settlement Agreement, notwithstanding nonpayment of any such claim at Closing of the Asset Purchase Agreement or anything to the contrary in the Asset Purchase Agreement.

12. Subject to paragraph 8, *supra*, the Debtors, the Patriarch Stakeholders, PPAS, the Sellers, and the Agent are authorized to execute and deliver all instruments and documents, and take such other action—including the exercise of any shareholder or lender approval rights—as may be necessary or appropriate to consummate, implement and effectuate the Portfolio Company Transaction including, without limitation, execution of any and all instruments necessary to terminate, cancel and release all credit facilities to which any Debtor or Patriarch Stakeholder is a party, and all Encumbrances of any kind arising under or related to said credit facilities, including any mortgage, deed of trust, security agreement, UCC financing statement, pledge, control agreement, or other instrument related to the perfection of any Encumbrance against the Assets.

13. Nothing in this Order shall modify or waive any closing conditions or termination rights in the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

14. A certified copy of this Order may be filed with the appropriate clerk and recorded with the recorder of any state, county, or local authority to act to terminate and cancel any and all Encumbrances against the Assets.

15. This Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, the Patriarch Stakeholders, the Other Stakeholders, Lynn Tilton, the Buyer, the Company and all successors and assigns of Buyer, all holders of any interests or claims (whether known or unknown) against any Debtor, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases.

16. The provisions of this Order are non-severable and mutually dependent.

17. As provided by Bankruptcy Rule 9014, the terms and conditions of this Order shall be effective immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rules 6004(h) and 6006(d). Time is of the essence in closing the sale and the Sellers and the Buyer intend to close the sale as soon as possible.

18. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in these chapter 11 cases, any subsequent chapter 7 or chapter 11 case of the Debtors, or any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the terms of this Order. In the event of any discrepancy between the terms of the Asset Purchase Agreement and the terms of this Order, the terms of this Order shall govern.

19. This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

**Dated: April 19th, 2021**
**Wilmington, Delaware**

*/s/ Karen B. Owens*
**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**

57772/0001-40552359v5