**<u>EXHIBIT A</u>**

**Proposed Redacted Document**

28262811.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Zohar III, Corp., *et al.*,[1] | Case No. 18-10512 (KBO) |
| Debtors. | Jointly Administered |
| | **Hearing Date: June 22, 2021 at 1:00 p.m. (ET)**<br>**Objection Deadline: June 15, 2021 at 4:00 p.m. (ET)** |

## NOTICE OF MOTION

TO:   (I) THE U.S. TRUSTEE; (II) COUNSEL TO THE PATRIARCH STAKEHOLDERS; (III) COUNSEL TO U.S. BANK, AS INDENTURE TRUSTEE; (IV) COUNSEL TO MBIA; (V) COUNSEL TO THE ZOHAR III CONTROLLING CLASS; (VI) PORTFOLIO COMPANY AND (VII) ALL PARTIES THAT, AS OF THE FILING OF THIS MOTION, HAVE REQUESTED NOTICE IN THESE CHAPTER 11 CASES PURSUANT TO BANKRUPTCY RULE 2002

**PLEASE TAKE NOTICE** that the debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "Debtors") have filed the *Debtors' Motion for Entry of an Order Enforcing the Settlement Agreement and the Ankura Appointment Order Regarding Portfolio Company and for Related Relief* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that any objections to the Motion are due by **June 15, 2021 at 4:00 p.m. (ET)** (the "Objection Deadline") with the United States Bankruptcy Court for the District of Delaware, 3rd Floor, 824 Market Street, Wilmington, Delaware 19801. At the same time, you must serve a copy of any objection upon the undersigned counsel to the Debtors so as to be received on or before the Objection Deadline.

**PLEASE TAKE FURTHER NOTICE** THAT A HEARING ON THE MOTION WILL BE HELD ON **JUNE 22, 2021 AT 1:00 P.M. (ET)** BEFORE THE HONORABLE KAREN B. OWENS, IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 NORTH MARKET STREET, 6TH FLOOR, COURTROOM NO. 3, WILMINGTON, DELAWARE 19801.

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR A HEARING.**

Dated: June 8, 2021
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Shane M. Reil*

James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4221)
Ryan M. Bartley (No. 4985)
Shane M. Reil (No. 6195)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: jpatton@ycst.com
      rbrady@ycst.com
      mnestor@ycst.com
      jbarry@ycst.com
      rbartley@ycst.com
      sreil@ycst.com

*Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Zohar III, Corp., *et al.*,[1] | ) Case No. 18-10512 (KBO) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Hearing Date: June 22, 2021 at 1:00 p.m. (ET)** |
| | ) **Objection Deadline: June 15, 2021 at 4:00 p.m. (ET)** |
| | ) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER ENFORCING
THE SETTLEMENT AGREEMENT AND THE ANKURA APPOINTMENT ORDER
REGARDING** PORTFOLIO COMPANY **AND FOR RELATED RELIEF**

Zohar III, Corp. and its affiliated debtors and debtors in possession in the above captioned chapter 11 cases (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), enforcing this Court's *Order Approving and Authorizing Settlement Agreement By and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp. and the Zohar III Controlling Class* (the "Settlement Order") [Docket No. 266][2] and *Order (I) Authorizing the Appointment of Ankura Trust Company, LLC as New Agent Under the Court-Approved Settlement Agreement Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp. and the Zohar III Controlling Class and (II) Granting Related Relief* (the "Ankura Appointment Order") [Docket No. 709] in connection with the Zohar Funds' secured indebtedness and/or equity

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261) ("Zohar III"), Zohar II 2005-1, Limited (8297) ("Zohar II"), and Zohar CDO 2003-1, Limited (5119) ("Zohar I," and together with Zohar II and III, the "Zohar Funds"). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] The term "Settlement Agreement" as used herein shall refer to the settlement agreement attached to the Settlement Order. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

interests in ███████████████████████ a Group B Portfolio Company under the Settlement Agreement.  In support of this Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT[3]

1.      ████████████████████████████████████ Almost three years ago, Patriarch told the Debtors that Portfolio Company had been foreclosed upon in 2016, was "winding down in the ordinary course," and that the Debtors had no right to information about the Company despite their holding over $111 million of its secured debt and an overwhelming majority of its equity interests. Unbeknownst to the Debtors, in 2016, PPAS, in its capacity as agent for Portfolio Company's secured lenders, appears to have accepted most of Portfolio Company's assets in partial satisfaction of the Zohar Funds' indebtedness and, between 2018 and 2020, collected tens of millions of dollars of cash on account of those assets.  Where did that cash go?  During these bankruptcy cases, approximately $9.9 million was used to pay off (or virtually pay off) Patriarch's portion of Portfolio Company's secured indebtedness, approximately $1.9 million was paid to PPMG for alleged past due management fees, and $2.5 million remains in a PPAS-controlled account.  Only approximately $4.2 million was ever paid to the Zohar Funds.  And, inexplicably, over $16.2 million continues to reside at Portfolio Company.

2.      The Settlement Agreement requires the installation of a new agent for all of the Zohar Funds' loans and the Ankura Appointment Order deems Ankura the new agent at all of the Zohar Funds' loan facilities, including at Portfolio Company.  Nonetheless, PPAS has kept Ankura in the dark.  It has repeatedly told Ankura there was no role for it at Portfolio Company because it had already been liquidated and/or that the Zohar Funds' secured loans had been satisfied.  Indeed,

---

[3] Information contained in this Motion is primarily derived from e-mail correspondence among the Debtors' counsel and counsel to the Patriarch Stakeholders and certain documentation provided by the Patriarch Stakeholders to the Debtors on January 31, 2021, May 5, 2021 and May 11, 2021.

Patriarch has told the Court that no replacement agent was necessary because Portfolio Company "was foreclosed upon and no longer operates[,]" suggesting that it had no assets available for recovery to the Debtors' estates.[4]  It is unclear whether any of these representations were true.

3.      And the story surrounding Portfolio Company  keeps shifting. Despite producing documents that seem to show that Patriarch's debt was fully paid off, Patriarch claims amounts remain owing (but it is not clear how much).  And despite Patriarch's own records showing that the Zohar Funds are still owed over $107 million by Portfolio Company and the Zohar Funds having received principal payments in 2018, the Debtors' advisors were recently told the Zohar Funds' debt was all written off, or written down, in 2016.  And even though the Zohar Funds are owed $107 million on a secured basis by Portfolio Company, Patriarch caused over $1.8 million in unsecured PPMG management fees to be paid in November of 2019, long after Ankura should have been transitioned as the agent, which would have prevented such an improper payment.

4.      It is clear that the only way for the real picture at Portfolio Company to come into focus, and for the Zohar Funds' interests to be adequately protected, is for the Court to order PPAS to promptly and finally hand the agency reins to Ankura and to compel a full accounting from Patriarch and Portfolio Company.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Local Rule 9013-1(f), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent

---

[4] *See* Docket No. 623, ¶ 29, the relevant pages of which are attached hereto as Exhibit B.

consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.    Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.    The legal predicates for the relief sought herein are the Settlement Agreement, the Ankura Appointment Order and section 105 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

## BACKGROUND

**A.    General Background**

8.    On March 11, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors have continued in possession of their properties and the operation of their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**B.    Portfolio Company**

          *(i)    The Zohar Funds' Interests in Portfolio Company*

9.    Portfolio Company was a ███████████████████████████ which primarily operated out of ███████████████████████████████████████ ███████████████████████████████████.

10.    On information and belief, Debtors Zohar I and Zohar II collectively own approximately ██████ of Portfolio Company's Class A interests and ██████ of its Series A preferred interests, and the remainder of each class of interests is held by Patriarch affiliates Ark CLO 2000-1 Limited, Ark II 2001-1 Limited ("Ark II"), and AIP-ES, Inc.

11.    Prior to March 21, 2020, the Debtors understand that Lynn Tilton was Portfolio Company's manager.  On March 30, 2020, the Court entered an order giving effect to Ms. Tilton's

resignation as a manager, officer or director of Portfolio Company.[5]  Currently, Portfolio Company does not have a manager.[6]

12.    Records produced by the Patriarch Stakeholders[7] show that, as of June 1, 2017, the Zohar Funds are, and the Patriarch Stakeholders were, secured lenders to Portfolio Company as follows:

| Secured Lender | ABL | Term Loan |
|---|---|---|
| Zohar I | $1.2 million | $26.7 million |
| Zohar II | $1.4 million | $34.6 million |
| Zohar III | $5.8 million | $41.6 million |
| Ark Investment Partners II, L.P. ("AIP") | $347,335.41 | $8.3 million |
| Ark II | $1.27 million | $2.6 million |

13.    The same records indicate that as of March 31, 2021, all principal allegedly owed to the Patriarch Stakeholders by Portfolio Company was paid in full and that the Zohar Funds were still owed approximately $107 million under the Portfolio Company secured credit facilities.[8]

14.    Until entry of the Ankura Appointment Order on March 29, 2019, Patriarch Partners Agency Services LLC ("PPAS") was the loan agent to the Zohar Funds, AIP, and Ark II.

---

[5] Docket No. 1542, a copy of which is attached as Exhibit C.

[6] Per its amended LLC agreement, the appointment of a new manager at Portfolio Company requires unanimous consent of the members. By emails dated April 19, 21, 23, and 26, 2021, the Debtors requested and followed up with Patriarch regarding appointing Debtor Zohar II Corp. as the manager for Portfolio Company. Patriarch responded that it would do so only if the Debtors agreed to indemnify Patriarch and Ms. Tilton and/or assume Portfolio Company's indemnification obligations, including any obligation to advance fees and costs, which the Debtors cannot do.

[7] See Exhibit D (Bates Production Ending 0001971)

[8] On March 25, 2021, a representative of Patriarch stated on a phone call that AIP was still owed approximately $82,000 in accrued interest under the AIP facility and that PPAS was still owed approximately $117,000 in agency fees accruing between June 2016 to-date. As discussed more fully below, a document produced on May 11, 2021 states that all "principal" has been paid off. It is unclear whether the $82,000 in accrued interest has been paid off with the $18.7 million in funds residing with Portfolio Company and PPAS.

      *(ii)*    *PPAS's "Foreclosure," Payment to the Zohar Funds, and Refusal to Cooperate*

15.      In October 2018, the Zohar Funds and MBIA received payments from PPAS – the then-acting loan agent under all of the Zohar Funds' loan facilities – totaling approximately $4.2 million.[9]  Because no payment notices or advance explanation was provided, the Debtors asked PPAS's counsel what the payments related to.  The Debtors were then advised by PPAS that these were principal payments under the Portfolio Company revolver facility.

16.      The Debtors' counsel and financial advisor inquired about the source of these payments and held a call with Carolyn Schiff, PPAS' in-house counsel, on October 16, 2018.  During that call, Ms. Schiff advised the Debtors' representatives that the funds were received as a result of ███████████████████████████████████████████ that there was a lump sum payment made and that additional payments were scheduled to be made under the ███████████████ in the future.  Following the October 16, 2018 call with Ms. Schiff, the Debtors requested a copy of the ████████████████████ along with "a flow of funds/waterfall that shows the gross proceeds received by PPAS and then any expenses/costs/fees/other payments that were made resulting in the net to the Zohars…"[10]

17.      On October 26, 2018, counsel for PPAS responded to this information request,[11] refusing to provide the requested information and stating, in part, that

> PC   was foreclosed upon by PPAS in 2016.  The Company is winding down in the ordinary course….There is nothing that we can see that requires   PC   (or any of the Portfolio Companies or Patriarch Stakeholders) to provide underlying information regarding where the money for the payment came from and how it is distributed…we do not think it makes sense for time or money to be spent arguing over, or analyzing, Group B company matters.

---

[9] Approximately $581,000 of this was paid directly to MBIA pursuant to the terms of the Settlement Agreement.

[10] *See* e-mail from Joseph Barry to Carolyn Schiff dated 10/16/2018, attached hereto as <u>Exhibit E</u>.

[11] *See* e-mail from Carolyn Schiff to Joseph Barry dated 10/26/2018, which is attached hereto as <u>Exhibit F</u>.

18.    The Debtors' counsel then convened a conference call with PPAS's outside counsel at Gibson Dunn the same day and followed up on October 30, 2018 expressing confusion as to why PPAS, the Debtors' agent, would not grant the Debtors' reasonable information requests pertaining to Portfolio Company.[12]

19.    PPAS's counsel responded that same day that: "We disagree that any Patriarch stakeholder is required to provide this information under the settlement agreement and therefore decline to provide it.  If you have a different view of the settlement agreement, please let us know what provision you believe authorizes this request."[13]

20.    The Debtors' counsel responded on October 31, 2018, asserting that the information sought would be routinely given in any other agent-lender relationship and the Settlement Agreement gave the Debtors certain rights relative to the requests.[14]

21.    PPAS's counsel responded on November 6, 2018 as follows:[15]

Portfolio Company   is not subject to the Monetization Process as defined and contemplated in the Settlement Agreement. The monetization process contemplates the sale or refinancing of a company, beginning with the Group A companies (Paras. 10, 12). Portfolio Company is instead a Group B company being operated in the ordinary course (in this case, its ordinary course is wind down), and the CRO has no right to intercede in those operations. PPAS has complied with its obligations under the credit agreement, and we continue to view this request as directly inconsistent with the terms of the settlement agreement and the protections from continual discovery requests the Patriarch Stakeholders bargained for in negotiations with Judge Gross.

22.    The matter thereafter remained unresolved since, on October 29, 2018 (a few days prior), the Debtors filed a motion seeking to replace PPAS as agent with Ankura pursuant to the

---

[12] *See* e-mails between Joseph Barry and Monica Loseman dated 10/30/2018, attached hereto as Exhibit G.

[13] *Id.*

[14] *Id.*

[15] *Id.*

Settlement Agreement and believed they could simply obtain the information they requested from Ankura once it had transitioned in as agent.

*(iv)    Appointment of Ankura and PPAS's Refusal to Transition*

23.    On March 29, 2019, the Court entered the Ankura Appointment Order, over the objection of Patriarch.  Ankura's engagements were split into three (3) types depending on the financial condition of the applicable Portfolio Company.  Exhibit A-1 to Ankura's engagement letter[16] lists "Performing Borrowers" and Exhibit A-2 lists "Non-Performing Borrowers."  These two (2) exhibits differed only in the annual fee payable to Ankura; Ankura was to assume agency responsibilities at both kinds of borrowers immediately.  The third designation – Non-Performing Inactive Borrowers – are Portfolio Companies that are no longer operating and cannot pay any agency fee; at these entities, Ankura was not to assume agency responsibilities.

24.    Ankura's engagement letter also designates which Portfolio Company borrowers required a "co-agency" with PPAS.  For those loans where a Patriarch Stakeholder held secured debt, PPAS remained as the agent for the applicable Patriarch Stakeholder(s).  Portfolio Company was not designated by Patriarch as a borrower necessitating a co-agency relationship, meaning Patriarch was not owed any debt from Portfolio Company.  Indeed, at the time, Patriarch argued that Portfolio Company should be placed on the lowest designation where Ankura's agency role was not activated.  In its objection to the Ankura Appointment Order, Patriarch argued that "Portfolio Company should be removed from Exhibit A-2 because it was foreclosed upon and no longer operates."[17]  In Court, the Debtors argued that, despite Patriarch's objection, installation of Ankura

---

[16] Attached hereto as Exhibit H.

[17] *See* Docket No. 623, ¶ 29, the relevant pages of which are attached hereto as Exhibit B.

at Portfolio Company specifically was important because of the Debtors' need for information about the company and its assets and Patriarch's refusal to provide that information.[18]

25.    Paragraph 9 of the Ankura Appointment Order provides that: "Pursuant to section 6 of the Settlement Agreement, PPAS, the Debtors and the New Agent shall use commercially reasonable efforts to transition existing Zohar-related PPAS agent matters to the New Agent." Further, Paragraph 6 of the Settlement Agreement provides that: "PPAS, the Independent Director/CRO, and the New Agent shall use commercially reasonable efforts to transition existing Zohar-related PPAS matters to the new agent…."

26.    Paragraph 3 of the Ankura Appointment Order deemed Portfolio Company's credit agreements "modified and amended to appoint Ankura, in its capacity as the New Agent, as the loan administrative agent or "Agent" thereunder on behalf of the Debtors…." And because Portfolio Company was not identified by Patriarch as a co-agency borrower, Ankura was to transition in as sole agent.[19]   However, Ankura's efforts to transition to the agency role were undermined by PPAS.

---

[18] *See* Exhibit I (relevant pages), Feb. 6, 2019 Hr'g. Trans., 14:1-13 & 34:1-12:

"In October, the debtors unexpectedly received several million dollars in funds from PPAS as a paydown on the debtors' loan to an entity, one of the portfolio companies. When the debtors inquired to PPAS on the source of these funds, PPAS's counsel advised us it was the result of a ▆▆▆ at one of the portfolio companies in wind-down. When the CRO then requested that PPAS provide some additional information and an accounting what money came in, what money was sent elsewhere, what money came to the debtors, PPAS flatly refused. And they said, among other things, that there was no requirement for the agent to provide that information under the credit agreement.

… And I've given the court a real-life example, one that we went through as debtor, in deal with PPAS[]. That issue was never resolved, obviously, Your Honor. We asked for the information, they refused. We then rescheduled that portfolio company, which was A-3 to A-2, so that we could insert Ankura there and get the information. In that particular instance, Your Honor, PPAS[] was not just acting as agent; they foreclosed on that portfolio company. So, they're not just the agent there. They foreclosed. So, certainly the lender, whose agent foreclosed on the portfolio company, should be entitled to that information. We're not raising that dispute today other than to say this is exactly why we need that flexibility to have Ankura provide us with information we think the debtors should have."

[19] Even if PPAS and Ankura were co-agents with respect to Portfolio Company Ankura's engagement letter expressly provides that it "shall have the exclusive authority and right to act, or refrain from acting, with respect to any and all New Agent Matters under the Credit Agreements …" *See* Ankura Engagement Letter, attached hereto as Exhibit H, at p. 3, fn. 1.

27.    On June 30, 2020, the Debtors were compelled to file the *Zohar Funds Motion to Compel Compliance With Prior Orders Directing the Transition of Loan Agency Services, Including the Turn Over of Possessory Collateral and for an Accounting* [Docket No. 1748] (the "Pledged Securities Motion") after a dispute arose between the Debtors and Patriarch regarding Patriarch's refusal to turn over to Ankura possessory collateral that PPAS was holding solely in its capacity as the Debtors' prior agent (i.e., collateral that should have been immediately transitioned in accordance with the Ankura Appointment Order).

28.    In addition to the turn-over of the possessory collateral, the Pledged Securities Motion requested an accounting of any and all collateral that PPAS took possession of or controlled to secure obligations owed to the Zohar Funds.   The Pledged Securities Motion – and the accounting PPAS agreed to provide in response to it – revealed the magnitude of PPAS's failings in transitioning the agency to Ankura.

29.    As this Motion demonstrates, PPAS's failure to transition the agent matters to Ankura in accordance with the Settlement Agreement and Ankura Appointment Order persist to this day.   And had the Debtors not filed the Pledged Securities Motion, thereby bringing these matters to the attention of the Court, the limited information the Debtors received in respect of Portfolio Company that has allowed them to identify this significant issue would likely never have been produced.

(iii)    *The Debtors Receive Limited Information Regarding* Portfolio Company

30.    On January 31, 2021, as part of PPAS's ongoing production of documents and information that resulted from the Pledged Securities Motion, the Debtors received the first bit of substantive information regarding Portfolio Company since 2018.  In addition to receiving copies of the previously referenced ███████ and related documents, the Debtors received a two-page financial summary regarding Portfolio Company that the Debtors understand was prepared by the

28191123.3                                               10

Patriarch Stakeholders.[20]  The financial summary revealed that (a) Portfolio Company was in possession of over $18.7 million in cash, and (b) between 2018 and 2020, the Patriarch Stakeholders were paid almost $10 million in loan repayments and PPMG was paid over $1.8 million in unsecured management fees ahead of the Zohar Funds' secured indebtedness.

31.     The Debtors then attempted for a number of weeks to schedule a call with Patriarch's financial personnel and counsel to discuss the many questions raised by the financial summary received on January 31st.  On March 25, 2021, counsel for the Debtors and Patriarch, as well as Patriarch's Senior Controller, Carlos Mercado, and financial professionals from FTI Consulting, convened by phone to discuss the January 31st financial summary.

32.     At that time, Mr. Mercado advised the Debtors that, through the previously-referenced ▮▮▮▮▮▮▮▮▮▮ (referred to as the ▮▮▮▮▮), Portfolio Company had received in excess of $32 million, paid in installments between 2018 and 2020, and that Portfolio Company, under Ms. Tilton's direction (as Portfolio Company's manager), had used those funds to pay-off nearly $10 million in secured debt to Patriarch entities and to make the aforementioned partial distribution to the Zohar Funds on account of their secured loans.   Mr. Mercado also relayed that of the $18.7 million reflected in the financial summary and received on account of the ▮▮▮▮ ▮▮▮▮ the sale of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, $2.5 million was in a PPAS-controlled account and the remaining $16.2 million resided with Portfolio Company.  Mr. Mercado advised that the approximately $16.2 million was being held by Portfolio Company to cover potential indemnification obligations of Patriarch, taxes, and ▮▮▮▮▮▮▮▮ in connection with a planned sale of ▮▮▮▮▮▮.[21]

---

[20] A copy of which is attached hereto as Exhibit J.

[21] As discussed herein, all of the proceeds held by Portfolio Company are derived from collateral that was accepted by PPAS in partial satisfaction of Portfolio Company secured indebtedness to the Zohar Funds.  As those funds do not belong

33.    Patriarch also advised that it was marketing ▮▮▮▮▮▮▮▮▮▮ for sale.[22]  When asked on what authority it was doing so, since there was no manager at Portfolio Company, representatives of PPAS indicated they would follow up with the Debtors on the issue, but have not.

(v)    *The Debtors' Follow-Up Information Requests and Patriarch's Response*

34.    Following the revelations in the financial disclosure and the March 25th conference call with Patriarch and its counsel, the Debtors indicated an intention to seek an examination under Bankruptcy Rule 2004 and conferred in writing with the Patriarch Stakeholders as to their specific information requests.  On April 26, 2021, Patriarch agreed to provide the information "to the extent it exists" and stated that "we think we will be able to respond to substantially all the listed requests below in some shape or form."[23]  The Debtors agreed to forbear from filing a motion under Bankruptcy Rule 2004 subject to receiving complete response by May 5th and counsel to PPAS confirmed: "We intend to provide information if it exists…"[24]

35.    On May 5, 2021, the Debtors received a production that was primarily comprised of (a) two default notices, (b) two notices of acceptance of collateral in partial satisfaction, (c) loan agreements and amendments (that the Debtors already had), (d) the LLC agreement and amendments (that the Debtors already had), and (e) loan statements.  That same day, counsel to the Debtors asked that Patriarch "confirm what was produced today is the totality that your clients

---

toPortfolio Company there is no basis on which it should possess them, nor any basis why a loan agent would permit a borrower to do so.

[22] The Debtors understand that ▮▮▮▮▮▮▮▮ was excluded from PPAS's 2016 acceptance of assets, and thus is presumably still owned by Portfolio Company (and subject to the Zohar Funds' liens), per two documents produced by PPAS on May 11th, 2021 and dated September 26, 2016 titled "*Notice of Acceptance of Subject Collateral in Partial Satisfaction of Obligation.*" *See* Exhibit K.

[23] *See* Exhibit L.

[24] *Id.*

intend to produce in response to our request."[25]  Despite the understanding that the production was due on May 5th in resolution to a potential Bankruptcy Rule 2004 motion, Patriarch's counsel responded that "I understand certain financial information is still being gathered, and that we should have it early next week."[26]  On May 11th, a subsequent production of financial information was provided to the Debtors.

36.    One of the documents produced by the Patriarch Stakeholders was financial summary titled " Portfolio Company      – Senior Secured Debt" dated March 31, 2021.[27]  It shows over $107 million in "Current Principal Balance" owed to the Zohar Funds on a secured basis and nothing owed to the Patriarch Stakeholders.  As noted above, the production also includes two documents dated September 26, 2016 titled "*Notice of Acceptance of Subject Collateral in Partial Satisfaction of Obligation*" pursuant to which PPAS accepted from Portfolio Company various collateral in partial satisfaction of $5 million of the ABL loans and $20 million of the term loans.[28]  The collateral subject to these notices specifically includes personal and real property, the ████ ████, commercial tort claims and any and all proceeds of the foregoing, but excluded the ████████ and  Portfolio Company   interest in ██████████████████ No documents relating to any forgiveness or write down of debt were produced.

37.    In summary, these productions – coupled with the various communications from Patriarch and/or its counsel – lead to the following conclusions:

a.    Portfolio Company is in possession of approximately $16-19 million of cash;

b.    Patriarch's debt has been paid in full (or a de minimis amount is due that is far exceeded by the $2.5 million it may be holding);

---

[25] *Id.*

[26] *Id.*

[27] *See* <u>Exhibit M</u>.

[28] *See* <u>Exhibit K</u>.

      c.      The cash residing with Portfolio Company is entirely derived from assets accepted by PPAS, in its capacity as the Zohar Funds' agent, in 2016;

      d.      The cash residing with Portfolio Company is not Portfolio Company's, and Portfolio Company has no interest in it or basis to be possessing it.

      *(vi)*     *The Debtors' Demand That Ankura Be Transitioned Immediately*

38.     In light of the foregoing, on May 26, 2021, the Debtors demanded in writing that Ankura be transitioned into the agency role and be given immediate possession of all collateral securing any of the Zohar Funds' loans or any property acquired or collected by PPAS on account of the Zohar Funds' loans to Portfolio Company for any reason.[29]   The Debtors' May 26th communication noted that " Portfolio Company should not be in possession of any assets that were accepted by PPAS, as agent for the ABL and term lenders, in partial satisfaction of the Zohar Funds' indebtedness.  These assets are not the property of Portfolio Company and any use of them without the Zohar Funds' knowledge or consent is not proper, particularly in light of the Bankruptcy Code's prohibition on exercising control over property of a chapter 11 debtor and its estate.  See 11 U.S.C. § 362(a)(3)."  The Debtors specifically demanded:[30]

> pursuant to paragraph 9 of the Ankura retention order and paragraph 6 of the Settlement Agreement that (a) PPAS immediately transition all agent functions to Ankura, (b) any Patriarch Stakeholder immediately turnover any and all assets accepted by PPAS or relating to Portfolio Company in any way, (c) PPAS assign any DACAs in place if Portfolio Company does, in fact, have a bank account, and, (d) as a part of the transition, PPAS provide, within one week, a full and complete accounting from and after 2015.

39.     Counsel for Ankura, PPAS and the Debtors thereafter attended a meet-and-confer on May 28, 2021 to attempt to resolve the Debtors' demands but no resolution of any issues resulted.

---

[29] *See* Exhibit N.

[30] *Id.*

## RELIEF REQUESTED

40.     By this Motion, the Debtors request entry of the Proposed Order, requiring that (a) PPAS immediately transition all agent functions to Ankura with respect to the Portfolio Company facilities, (b) the Patriarch Stakeholders immediately turnover any and all assets accepted by PPAS or relating to Portfolio Company in any way to Ankura, (c) PPAS assign to Ankura any deposit account control agreements in place relating to Portfolio Company, and, (d) as a part of the transition, PPAS provide, within one week of entry of the Proposed Order, a full and complete accounting of all transactions involving Portfolio Company from and after 2015.

## BASIS FOR RELIEF REQUESTED

41.     Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code," and that "[n]o provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules....". 11 U.S.C. § 105(a).  Although "there are some significant limits to a bankruptcy court's ability to use section 105(a) of the Code . . . [it] plainly may be used 'to enforce and implement' earlier orders." *In re River Ctr. Holdings, LLC*, 394 B.R. 704, 711 (Bankr. S.D.N.Y. 2008); *see Also In re Ames Dep't Stores, Inc.*, 317 B.R. 260, 273–74 (Bankr. S.D.N.Y. 2004). Consistent with section 105(a) and this decisional law, the Settlement Order specifically provides that the terms of the Settlement Agreement are "binding on all parties-in-interest in these Chapter 11 cases, including, but not limited to, the Parties…the Patriarch Stakeholders…" and the Court expressly "retain[ed] jurisdiction to hear any and all disputes arising out of the interpretation or enforcement of this Order." Settlement Order, ¶¶ 2, 8 (emphasis added).  The Ankura Appointment Order provides to like effect.  *See* Ankura Appointment Order ¶ 30.  As such, the Court has the

authority to interpret and enforce the Settlement Order, the Settlement Agreement, and the Ankura Appointment Order, including granting the relief requested herein.

42.    Here, PPAS, in its capacity as agent for Portfolio Company's secured lenders, appears to have repossessed most of Portfolio Company's assets in 2016, repaid most, if not all, of the Patriarch-affiliated debt, paid over $1.8 million in unsecured PPMG fee claims, made an approximately $4.2 million distribution to the Zohar Funds, and then allowed the borrower to retain approximately $16-19 million, apparently to insulate Lynn Tilton and her affiliates from exposure to contingent and unspecified liabilities that are subordinate to the Debtors' claims *for years*.[31]

43.    Furthermore, the Ankura Appointment Order deemed Ankura the loan agent under the Portfolio Company debt facility and requires PPAS to "use commercially reasonable efforts to transition existing Zohar-related PPAS agent matters to the New Agent." Nearly two years after Ankura was appointed as the loan agent at Portfolio Company, PPAS revealed for the first time that it is apparently holding $2.5 million of cash for the Zohar Funds' benefit and is allowing a defaulted and defunct borrower with no operations to hold another $16.2 million. This is patently unreasonable and a potential $18.7 million recovery for the Zohar Funds' estates and their creditors is being jeopardized.

44.    A full accounting is clearly warranted here. PPAS accepted tens of millions of dollars of collateral in partial satisfaction of the Zohar Funds' secured indebtedness and there is seemingly still over $100 million outstanding. PPAS has apparently been using the funds it received, for years, to pay contractors to maintain ████████ and to pay alleged accrued fees to its affiliate, PPMG, of over $1.8 million. It also appears that legal advisors to Portfolio Company and/or Patriarch have been paid hundreds of thousands of dollars out of the funds received

[31] As noted above, the foregoing payments occurred after the Petition Date and, as the Debtors understand it, Portfolio Company continues to possess the funds as of the filing of this Motion.

by PPAS, in its capacity as agent for Portfolio Company secured lenders, in exchange for the Zohar Funds' partial debt forgiveness.

45.    No rational and faithful loan agent would accept collateral from a borrower in partial satisfaction of debt and then allow the borrower to retain those proceeds and/or use them to pay subordinate unsecured claims against the borrower (and also the secured and unsecured claims of its affiliates), rather than pay the proceeds over to its principal (the lenders).  There must be a reckoning.

## NOTICE

46.    The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to U.S. Bank, as indenture trustee; (iii) counsel to MBIA Insurance Company; (iv) counsel to the Zohar III Controlling Class; (v) counsel to the Patriarch Stakeholders, and (vi) Portfolio Company.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

47.    For the foregoing reasons, the Debtors respectfully request that the Court enter an order, in substantially the form of the Proposed Order attached hereto as Exhibit A, granting the Motion and such other and further relief as the Court deems is just and proper.

*[Remainder of this page intentionally left blank]*

Dated: June 8, 2021
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Shane M. Reil*
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No.. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4421)
Ryan M. Bartley (No. 4985)
Shane M. Reil (No. 6195)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email: jpatton@ycst.com
      rbrady@ycst.com
      mnestor@ycst.com
      jbarry@ycst.com
      rbartley@ycst.com
      sreil@ycst.com

*Counsel to the Debtors*
*and Debtors in Possession*

**EXHIBIT A**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*,[1]<br><br>　　　　　　　　Debtors. | )<br>)<br>)　Chapter 11<br>)<br>)　Case No. 18-10512 (KBO)<br>)<br>)　Jointly Administered<br>)<br>)　**Ref. Docket No.: ___**<br>)<br>) |

## ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER ENFORCING THE SETTLEMENT AGREEMENT AND THE ANKURA APPOINTMENT ORDER REGARDING   Portfolio Company    AND FOR RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order enforcing the Settlement Order and Ankura Appointment Order in connection with the Zohar Funds' secured indebtedness and/or equity interests in Portfolio Company; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion and the relief provided for herein having been given; and it appearing that no other or further notice of the same

---

[1]  The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2]  Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

need be provided; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors and their estates; and after due deliberation, and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      PPAS shall immediately transition all agent functions to Ankura with respect to the Portfolio Company facilities.

3.      Pursuant to the Settlement Agreement and the Ankura Appointment Order, the Patriarch Stakeholders shall immediately turnover any and all assets accepted by PPAS in satisfaction of Portfolio Company's secured debt, or relating to Portfolio Company in any way, to Ankura.

4.      PPAS shall assign to Ankura any deposit account control agreements in place relating to Portfolio Company. If no such agreements are in place, Portfolio Company is hereby directed to cooperate with Ankura to establish such agreements with Ankura relating to any bank about held, controlled, or in the name of Portfolio Company.

5.      No later than seven (7) calendar days following the entry of this Order, PPAS and Portfolio Company shall provide the Debtors with a full and complete accounting of any and all transactions and/or payments made to, from, or for Portfolio Company by any party from and after 2015, including how and when any payments were applied to any amounts alleged to be due to any Patriarch Stakeholder and/or the sources of any such payments.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from the implementation or interpretation of this Order.

**EXHIBIT B**

# FILED UNDER SEAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Zohar III, Corp., *et al.*,[1] | ) | Case No. 18-10512 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Ref. Docket No. 490, 491, 520** |
| | ) | |

**PATRIARCH'S OBJECTION TO DEBTORS' MOTION, PURSUANT TO SECTIONS 105(a), 363 AND 503(b) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER (I) AUTHORIZING THE APPOINTMENT OF ANKURA TRUST COMPANY, LLC AS NEW AGENT UNDER THE COURT-APPROVED SETTLEMENT AGREEMENT BY AND BETWEEN THE DEBTORS, LYNN TILTON, THE PATRIARCH STAKEHOLDERS, MBIA INSURANCE CORP., AND THE ZOHAR III CONTROLLING CLASS AND (II) GRANTING RELATED RELIEF**

Lynn Tilton ("Tilton"), Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Patriarch Partners XV, LLC (collectively, the "Patriarch Entities"), Octaluna, LLC, Octaluna II, LLC, and Octaluna III, LLC ("Octaluna," together with Tilton and the Patriarch Entities, "Patriarch"),[2] by and through their counsel, hereby submit this objection (the "Objection") to the *Debtors' Motion, Pursuant to Sections 105(a), 363 and 503(b) of the Bankruptcy Code, for Entry of an Order (I) Authorizing the Appointment of Ankura Trust Company, LLC as New Agent Under the Court-Approved Settlement Agreement By and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III*

---

[1]   The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261) ("Zohar III"), Zohar II 2005-1, Limited (8297) ("Zohar II"), and Zohar CDO 2003-1, Limited (5119) ("Zohar I", and together with Zohar II and Zohar III, the "Zohar Funds"). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2]   Patriarch is a creditor as well as the holder of residual equity in the Debtors. *See Declaration of Lynn Tilton in Support of Chapter 11 Petitions* [D.I. 5], at ¶¶ 4, 12–16. Patriarch also holds direct equity interests in certain of the Portfolio Companies.

28.    The New Agent's legal expenses must be subject to review and a right to object.
The Proposed New Agent Agreement does not provide any procedures for the review and
objection to the New Agent's legal expenses.  However, Patriarch understands that Milbank has
already incurred hundreds of thousands of dollars of legal expenses before the New Agent has
even been appointed and before Patriarch had the opportunity to review the proposed agreement.
It is possible that upon a review of the work conducted by the New Agent's counsel, parties will
agree that such fees and costs are reasonable and should be paid.  However, the fees incurred to
date seem facially excessive under the circumstances, and Patriarch and Other Stakeholders
should have the right to review and object to any proposed fees to be paid on behalf of the New
Agent.  *See, e.g.*, *In re Hale-Halsell Co.*, 391 B.R. 459, 469 (Bankr. N.D. Okla. 2008)
("Bankruptcy is designed to be a transparent process, where creditors and the public can easily
view and understand what is going on in any particular case.  Fee arrangements between
professionals and a bankruptcy estate are to be equally transparent.").

29.

**EXHIBIT C**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Zohar III, Corp., *et al.*,[1] | ) | Case No. 18-10512 (KBO) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Docket Ref. No. 1505** |

## ORDER GRANTING IN PART DEBTORS' AND INDEPENDENT DIRECTOR'S JOINT EMERGENCY MOTION FOR AN ORDER DECLARING THAT THE DEBTORS CONTROL THE PORTFOLIO COMPANIES AND GRANTING RELATED RELIEF

Upon the *Debtors' and Independent Director's Joint Emergency Motion for Entry of an Order Declaring that the Debtors Control the Portfolio Companies and Granting Related Relief* [Docket No. 1505] (the "Emergency Motion") filed by Zohar III, Corp. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors"),[2] through Joseph J. Farnan, Jr., solely in his capacity and role as the Independent Director of the Debtors; and the Court having jurisdiction to consider the Emergency Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012; and consideration of the Emergency Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Emergency Motion having been provided, and it appearing that no other or further notice need be provided; and this Court having found and

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Emergency Motion.

26213953

determined that the relief sought in the Emergency Motion, in relevant part, is in the best interests

of the Debtors' estates, their creditors, and other parties in interest and that the legal and factual

bases set forth in the Emergency Motion establish just cause for the relief granted herein; and after

due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED**:

1.      The Emergency Motion is **GRANTED IN PART** as set forth herein.

2.      Effective immediately upon entry of this Order, Ms. Tilton's resignation as

Manager, Director, or officer of the Portfolio Companies (with the exception of the Dura entities)

is deemed effective as of its receipt by Debtors' Independent Director and Chief Restructuring

Officer on March 21, 2020.

3.      Effective immediately upon entry of this Order, the Debtors are hereby declared to

be the legal and beneficial owners of the equity or membership interests issued or otherwise

recorded in the Debtors' names.

4.      Effective, immediately upon entry of this Order, the September 2015 Amendments

and the September 2015 Proxies[3] are hereby terminated in all respects.

5.      The Debtors are hereby authorized to take such corporate actions permitted under,

or in accordance with, each Portfolio Company's governing documents, as the Independent

Director determines in his sole discretion is necessary and appropriate.

6.      Ms. Tilton and the other Patriarch Stakeholders shall work reasonably and in good

faith with the Debtors to transition the ownership and control of the Portfolio Companies as set

forth in the Resignation Letter.

---

[3] Capitalized terms in this paragraph have the meanings ascribed to them in the Debtors' Adversary Complaint. Adv. Pro. No. 20-50534, D.I. 1.

26213953

7.      This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

Dated: March 30th, 2020
Wilmington, Delaware

KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE

26213953

3

**EXHIBIT D**

| FUND | Facility Number | Facility | Payment Priority | Principal Balance (6/1/2017) | Term Loans | ABL | Sale Proceeds | Proceeds | Current Principal Balance (3/31/2021) |
|---|---|---|---|---|---|---|---|---|---|
| Zohar I | 808-06 | [redacted] T/L | 3rd | $21,476,619.53 | $21,476,619.53 | | | | $21,476,619.53 |
| Zohar I | 808-10 | [redacted] | 3rd | $2,550,324.45 | $2,550,324.45 | | | | $2,550,324.45 |
| Zohar I | 808-11 | TL E | 3rd | $1,360,173.04 | $1,360,173.04 | | | | $1,360,173.04 |
| Zohar I | 808-17 | TL K | 3rd | $586,573.78 | $586,573.78 | | | | $586,573.78 |
| Zohar I | 808-20 | TL M | 3rd | $680,086.52 | $680,086.52 | | | | $680,086.52 |
| Zohar I | 808-32 | New ABL Revolver | 2nd | $1,180,176.25 | | $1,180,176.25 | | ($581,506.03) | $598,670.22 |
| Total | | | | $27,933,953.57 | $26,653,777.32 | $1,180,176.25 | $0.00 | ($581,506.03) | $27,252,447.54 |
| Zohar II | 808-06 | [redacted] T/L | 3rd | $15,384,981.69 | $15,384,981.69 | | | | $15,384,981.69 |
| Zohar II | 808-10 | TL D | 3rd | $6,375,811.10 | $6,375,811.10 | | | | $6,375,811.10 |
| Zohar II | 808-11 | TL E | 3rd | $935,118.96 | $935,118.96 | | | | $935,118.96 |
| Zohar II | 808-12 | TL F | 3rd | $1,208,853.79 | $1,208,853.79 | | | | $1,208,853.79 |
| Zohar II | 808-16 | TL J | 3rd | $3,910,813.55 | $3,910,813.55 | | | | $3,910,813.55 |
| Zohar II | 808-17 | TL K | 3rd | $850,108.15 | $850,108.15 | | | | $850,108.15 |
| Zohar II | 808-18 | TL L | 3rd | $850,108.15 | $850,108.15 | | | | $850,108.15 |
| Zohar II | 808-22 | DDTL A | 3rd | $5,100,648.89 | $5,100,648.89 | | | | $5,100,648.89 |
| Zohar II | 808-32 | New ABL Revolver | 2nd | $1,445,692.35 | | $1,445,692.35 | | ($712,333.28) | $733,359.08 |
| Total | | | | $36,062,136.63 | $34,616,444.28 | $1,445,692.35 | $0.00 | ($712,333.28) | $35,349,803.36 |
| Zohar III | 808-09 | TL C | 3rd | $10,141,451.81 | $10,141,451.81 | | | | $10,141,451.81 |
| Zohar III | 808-10 | TL D | 3rd | $9,776,243.71 | $9,776,243.71 | | | | $9,776,243.71 |
| Zohar III | 808-13 | TL G | 3rd | $850,108.15 | $850,108.15 | | | | $850,108.15 |
| Zohar III | 808-14 | TL H | 3rd | $2,550,324.45 | $2,550,324.45 | | | | $2,550,324.45 |
| Zohar III | 808-15 | TL I | 3rd | $1,020,129.78 | $1,020,129.78 | | | | $1,020,129.78 |
| Zohar III | 808-18 | TL L | 3rd | $1,700,216.30 | $1,700,216.30 | | | | $1,700,216.30 |
| Zohar III | 808-19 | TL B | 3rd | $4,250,540.74 | $4,250,540.74 | | | | $4,250,540.74 |
| Zohar III | 808-20 | TL M | 3rd | $582,259.86 | $582,259.86 | | | | $582,259.86 |
| Zohar III | 808-21 | DDTL | 3rd | $377,474.66 | $377,474.66 | | | | $377,474.66 |
| Zohar III | 808-23 | DDTL N | 3rd | $5,481,780.34 | $5,481,780.34 | | | | $5,481,780.34 |
| Zohar III | 808-24 | DDTL B | 3rd | $935,118.96 | $935,118.96 | | | | $935,118.96 |
| Zohar III | 808-25 | DDTL C | 3rd | $850,108.15 | $850,108.15 | | | | $850,108.15 |
| Zohar III | 808-26 | DDTL D | 3rd | $1,275,162.22 | $1,275,162.22 | | | | $1,275,162.22 |
| Zohar III | 808-27 | DDTL E | 3rd | $778,386.96 | $778,386.96 | | | | $778,386.96 |
| Zohar III | 808-28 | DDTL F | 3rd | $1,013,836.21 | $1,013,836.21 | | | | $1,013,836.21 |
| Zohar III | 808-32 | New ABL Revolver | 2nd | $5,814,978.25 | | $5,814,978.25 | | ($2,865,203.31) | $2,949,774.94 |
| Total | | | | $47,398,120.56 | $41,583,142.30 | $5,814,978.25 | $0.00 | ($2,865,203.31) | $44,532,917.25 |
| AIP II | 808-06 | [redacted] T/L | 1st | $8,316,788.02 | $8,316,788.02 | | | ($8,316,788.02) | $0.00 |
| AIP II | 808-34 | New ABL Revolver (1st | 1st | $347,335.41 | | $347,335.41 | | ($347,335.41) | $0.00 |
| Total | | | | $8,664,123.43 | $8,316,788.02 | $347,335.41 | $0.00 | ($8,664,123.43) | $0.00 |
| Ark II | 808-34 | New ABL Revolver (1st | 1st | $1,266,325.74 | | $1,266,325.74 | | ($1,266,325.74) | $0.00 |
| Ark II | 808-35 | Delayed Draw TL H (1st | 1st | $2,582,357.10 | $2,582,357.10 | | ($2,582,357.10) | | $0.00 |
| Total | | | | $3,848,682.84 | $2,582,357.10 | $1,266,325.74 | ($2,582,357.10) | ($1,266,325.74) | $0.00 |
| GRAND TOTALS - SENIOR SECURED | | | | $123,007,017.03 | $113,752,509.00 | $10,054,508.00 | ($2,582,357.10) | ($14,089,491.79) | $107,135,168.15 |

### SERIES A PREFERRED

| FUND | Facility Number | Facility | Payment Priority | Principal Balance | Term Loans | ABL | Sale Proceeds | Proceeds | Current Principal Balance |
|---|---|---|---|---|---|---|---|---|---|
| Zohar I | 808-07 | Series A - Pref | | $43,616,000.00 | | | | | $43,616,000.00 |
| Zohar II | 808-07 | Series A - Pref | | $31,866,000.00 | | | | | $31,866,000.00 |
| AIP-ES | 808-07 | Series A - Pref | | $22,001,053.77 | | | | | $22,001,053.77 |
| Ark II | 808-07 | Series A - Pref | | $2,209,505.37 | | | | | $2,209,505.37 |
| TOTALS - PREFERRED | | | | $99,692,559.14 | $0.00 | $0.00 | $0.00 | $0.00 | $99,692,559.14 |

CONFIDENTIAL

[redacted]_SUPPLEMENTAL_PRODUCTION0001971

**EXHIBIT E**

Direct: (302) 571-6705
Mobile: (302) 584-7021

On Oct 16, 2018, at 1:22 PM, Barry, Joseph <jbarry@ycst.com<mailto:jbarry@ycst.com><mailto:jbarry@ycst.com>>
wrote:

Cari – Thanks very much for your time today. I know you were crunched for time so I thought I'd follow up so you have
what we're looking for in once place. If you could provide us with a copy of the ▮▮▮▮ ▮▮ arbitration ▮▮▮▮
▮▮▮▮ along with a flow of funds/waterfall that shows the gross received by PPAS and then any
expenses/costs/fees/other payments that were made resulting in the net to the Zohars we'd very much appreciate it.
After you speak with Carlos/Lynn, let us know if they are aware of any ▮▮▮▮▮ situations where we might expect
funds to flow up from any of the PCs. On the tax returns, please let us know if they were filed and provide us with a copy
of the Zohars' returns. Finally, let us know if/when a specific closing date for the ▮▮▮▮ transaction gets set. Thanks
again – appreciate your help.

Joe

Joseph M. Barry, Partner ■ Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street ■ Wilmington, DE 19801
P 302.571.6705 F 302.576.3280 ■ jbarry@ycst.com<mailto:jbarry@ycst.com><mailto:jbarry@ycst.com> ■
www.youngconaway.com<http://www.youngconaway.com> ■ vCard<https://www.youngconaway.com/joseph-m-
barry.vcf<https://www.youngconaway.com/joseph-m-barry.vcf>>

This message may contain confidential attorney-client communications or other protected information. If you believe
you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or
retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this
message. Thank you for your cooperation.

From: Carolyn Schiff [mailto:Carolyn.Schiff@PatriarchPartners.com]
Sent: Monday, October 15, 2018 8:11 PM
To: Barry, Joseph
Cc: Nestor, Michael; Tully, Conor
Subject: RE: Zohar - PCs in Bankruptcy

Dial in is best

-----Original Message-----
From: Barry, Joseph [mailto:jbarry@ycst.com]
Sent: Monday, October 15, 2018 8:04 PM
To: Carolyn Schiff
Cc: Nestor, Michael; Tully, Conor
Subject: Re: Zohar - PCs in Bankruptcy

Cari - Thanks a lot for making yourself available. I can do between 12 and 2 so shall we try for 12 and let me know if you
get jammed? Should I just call your mobile or would you prefer a dial in? Let me know what's convenient for you.
Thanks. Joe

Joseph Barry
Young Conaway Stargatt & Taylor, LLP
jbarry@ycst.com<mailto:jbarry@ycst.com><mailto:jbarry@ycst.com<mailto:jbarry@ycst.com%3cmailto:jbarry@ycst.co
m<mailto:jbarry@ycst.com>>>
Direct: (302) 571-6705

6

**EXHIBIT F**

**From:** Barry, Joseph
**Sent:** Friday, October 26, 2018 3:20 PM
**To:** 'Carolyn Schiff'
**Cc:** Nestor, Michael; Tully, Conor; Mike Katzenstein; Loseman, Monica K. (MLoseman@gibsondunn.com)
**Subject:** RE: Zohar - PCs in Bankruptcy

Cari – Thanks. We'll follow up with Gibson Dunn. Have a nice weekend.

Joe

**Joseph M. Barry**, Partner ■ YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square, 1000 North King Street ■ Wilmington, DE 19801
**P** 302.571.6705  **F** 302.576.3280 ■ jbarry@ycst.com ■ www.youngconaway.com ■ vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

**From:** Carolyn Schiff [mailto:Carolyn.Schiff@PatriarchPartners.com]
**Sent:** Friday, October 26, 2018 2:36 PM
**To:** Barry, Joseph
**Cc:** Nestor, Michael; Tully, Conor; Mike Katzenstein; Loseman, Monica K. (MLoseman@gibsondunn.com)
**Subject:** RE: Zohar - PCs in Bankruptcy

Patriarch/PC Confidential

Joe,

This is to respond to your request for information in your emails below.

First, to summarize and follow up on the information provided last week regarding the recent principal payments by ████████████████ a Group B company, ████ was foreclosed upon by PPAS in 2016. The Company is winding down in the ordinary course. ████████

████████████████████████████████████████████

████████████████████████████████████ The first payment on ████ was recently made and the principal payment was made from those proceeds. This is purely a ████ matter – none of the Zohars, nor PPAS, are parties to this ████████

3

Accordingly, we do not believe that we are required to provide a copy of the ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or a waterfall for this principal payment and decline to do so.  In fact, the ▮▮▮▮▮▮▮▮ are confidential and we are unable to share them with third parties.  Unlike the ▮▮▮▮▮▮ matter, where we were asking the Debtors to agree to release a lien, in the case of ▮▮▮ we are not asking anything of the Debtors. ▮▮▮ was simply making a payment based on funds available to it.  There is nothing that we can see that requires ▮▮ (or any of the Portfolio Companies or Patriarch Stakeholders) to provide underlying information regarding where the money for the payment came from and how it is distributed.  The Debtors would not, for example, require the Portfolio Companies to explain where the money for each interest payment came from.  Where the Patriarch Stakeholders or a Portfolio Company is asking the Debtors to take some sort of action such as releasing a lien, it makes sense to provide the CRO with background information, documents and a waterfall; but this is not warranted nor required in the case of a simple principal payment.  We are fully aware that paragraph 20 of the Settlement Agreement requires that the Patriarch Stakeholders consult with the CRO prior to taking certain actions, but the payment of principal is not such an action.

As we discussed on our call, we do not think it makes sense for time or money to be spent arguing over, or analyzing, Group B company matters.  To the extent that these companies are making interest and/or principal payments, that is all to everyone's benefit. But unless the Debtors are being asked to change their position in some way as a result of an anticipated Group B action, we do not intend, nor do we believe we have any obligation, to provide waterfalls and documents.  We all need to focus our attention on monetizing the Group A companies.

Second, as to whether there are any ▮▮▮▮▮▮▮▮ situations where we expect funds to flow up to the Zohars (outside of interest payments, and funds received from refinancings or sales), from time to time property of foreclosed upon companies may be sold, and/or receivables collected.  After the payment of expenses and other loan facilities with first priority of payment, it is possible that there may be funds available from such activities that will flow up to the Zohars.  At this time, however, we cannot predict with certainty whether and when any such payments will be made.

Third, as to your inquiry re the Zohar tax returns, we can represent that the appropriate tax filings have been made.

Finally, regarding ▮▮▮▮▮▮▮ we have recently learned that the Purchaser may be trying to back out of the deal. ▮▮▮▮ representatives are now reaching out to other potential purchasers while at the same time pushing the Purchaser to take a final position in writing as to whether they are prepared to go forward with the closing.  This was an entirely unexpected development and we will let you know the outcome when the situation resolves itself.

Carolyn Traister Schiff, Esq.
Vice President, Litigation
Patriarch Partners, LLC
1 Liberty Plaza, 35th Floor
New York, New York 10006
(646) 723-7652 (d)
(212) 825-2038 (f)
Carolyn.Schiff@PatriarchPartners.com

**EXHIBIT G**

28191123.3

**From:** Loseman, Monica K. [mailto:MLoseman@gibsondunn.com]
**Sent:** Tuesday, November 06, 2018 11:48 AM
**To:** Barry, Joseph; Neumeister, Michael S.
**Cc:** Nestor, Michael; 'Tully, Conor'; 'Mike Katzenstein'; Brady, Robert; Bartley, Ryan
**Subject:** RE: Zohar - PCs in Bankruptcy

Joe,

███████ is not subject to the Monetization Process as defined and contemplated in the Settlement Agreement. The monetization process contemplates the sale or refinancing of a company, beginning with the Group A companies (Paras. 10, 12). ███████ is instead a Group B company being operated in the ordinary course (in this case, its ordinary course is wind down), and the CRO has no right to intercede in those operations. PPAS has complied with its obligations under the credit agreement, and we continue to view this request as directly inconsistent with the terms of the settlement agreement and the protections from continual discovery requests the Patriarch Stakeholders bargained for in negotiations with Judge Gross.

Thank you,

Monica

**Monica K. Loseman**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5784 • Fax +1 303.313.2828
MLoseman@gibsondunn.com • www.gibsondunn.com

**From:** Barry, Joseph <jbarry@ycst.com>
**Sent:** Wednesday, October 31, 2018 1:15 PM
**To:** Loseman, Monica K. <MLoseman@gibsondunn.com>; Neumeister, Michael S.
<MNeumeister@gibsondunn.com>
**Cc:** Nestor, Michael <mnestor@ycst.com>; 'Tully, Conor' <Conor.Tully@FTIConsulting.com>; 'Mike
Katzenstein' <Mike.Katzenstein@fticonsulting.com>; Brady, Robert <RBRADY@ycst.com>; Bartley, Ryan
<RBartley@ycst.com>
**Subject:** RE: Zohar - PCs in Bankruptcy

[External Email]
Monica – Appreciate the response. In the first instance, I was requesting this information from our agent in our capacity as
lenders. This is information that an agent would ordinarily be willing to provide to its lender. So we still don't understand
the agent's flat out refusal to cooperate with the Zohar lenders. Nonetheless, this squarely falls within the Settlement
Agreement. ██████ is (according to Cari) in wind down and this ██████ would seem to be its primary (or
possibly sole) asset. The monetization of that asset is squarely addressed in paragraph 10 of the Settlement Agreement.
Paragraph 10 provides that Joe and Mike, on behalf of the Debtors, and Lynn, on behalf of the PCs, "will conduct a
process to monetize the Group A Portfolio Companies **and the Group B Portfolio Companies**" and that Mike is entitled
to "full and complete information regarding the Monetization Process and **sources and uses of funds** in any transaction
consummated as part of the Monetization Process." Given that ██████ is in liquidation, Mike is entitled to a joint
seat at the table and any and all information related to its monetization, including any monetization of the ██████ in
question. In addition, we understand that amounts may have been paid to Patriarch Stakeholders. Such amounts are
subject to the terms of Paragraph 18 of the Settlement Agreement and Mike is entitled to documentation supporting those
amounts prior to their payment and such amounts, once paid, count against the cap set forth in Paragraph 18. We renew
our request for the information below and ask for a response by noon on Friday, October 2nd. To the extent the Patriarch
Stakeholders – be it PPAS, ██████ or another entity – continue to refuse to provide the CRO the requested
documentation and flow of funds beyond that date and time, we will immediately present this to Judge Gross for
resolution under paragraph 11 of the Settlement Agreement.

We look forward to hearing from you.

Joe


**Joseph M. Barry,** Partner ■ Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street ■ Wilmington, DE 19801
P 302.571.6705 F 302.576.3280 ■ jbarry@ycst.com ■ www.youngconaway.com ■ vCard


This message may contain confidential attorney-client communications or other protected information. If you
believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not
use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-
mail, and then delete this message. Thank you for your cooperation.


**From:** Loseman, Monica K. [mailto:MLoseman@gibsondunn.com]
**Sent:** Tuesday, October 30, 2018 4:55 PM
**To:** Barry, Joseph; Neumeister, Michael S.
**Cc:** Nestor, Michael; 'Tully, Conor'; 'Mike Katzenstein'; Brady, Robert; Bartley, Ryan
**Subject:** RE: Zohar - PCs in Bankruptcy

Hi Joe,

Thanks for the email and the call last Friday. We disagree that any Patriarch stakeholder is required to provide this information under the settlement agreement and therefore decline to provide it. If you have a different view of the settlement agreement, please let us know what provision you believe authorizes this request.

On the tax returns, we will provide them on the same basis as the 2016 returns; that they be treated as confidential and not filed (under seal of otherwise) on the public docket. Does that work?

Thanks,

Monica


**Monica K. Loseman**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5784 • Fax +1 303.313.2828
MLoseman@gibsondunn.com • www.gibsondunn.com

---

**From:** Barry, Joseph <jbarry@ycst.com>
**Sent:** Tuesday, October 30, 2018 10:20 AM
**To:** Loseman, Monica K. <MLoseman@gibsondunn.com>; Neumeister, Michael S. <MNeumeister@gibsondunn.com>
**Cc:** Nestor, Michael <mnestor@ycst.com>; 'Tully, Conor' <Conor.Tully@FTIConsulting.com>; 'Mike Katzenstein' <Mike.Katzenstein@fticonsulting.com>; Brady, Robert <RBRADY@ycst.com>; Bartley, Ryan <RBartley@ycst.com>
**Subject:** RE: Zohar - PCs in Bankruptcy
**Importance:** High

[External Email]
Monica and Mike – I'm following up on our discussion last Friday regarding the ▇▇▇▇▇▇ situation. As noted in my email to Cari last week, Joe has a call with the Zohar III Controlling Class tomorrow to discuss, among other things, the ▇▇▇▇▇▇ recovery and future revenue from the ▇▇▇▇▇▇. As we expressed on our call, this is not a "Company A" versus "Company B" issue and, even if it were, nothing in the settlement agreement prohibits the Debtors from asking for and receiving information regarding the Group B PCs or their potential recovery on their loan to ▇▇▇▇▇▇ (both Cari's email and our call suggested that Patriarch believes our agreement to *prioritize* the Group A PCs somehow suggests we're not entitled to or somehow agreed not to ask for information on the B Group – that is assuredly not the case). We really don't understand Cari's refusal and tone and don't really think a negotiation is necessary or appropriate here – PPAS is the Debtors' agent and the Debtors are making a reasonable information request of its agent with respect to the facts surrounding the loan, the ▇▇▇▇▇▇, the payment and future payments going forward, and the flow of funds (including amounts paid from the proceeds before funds flowed to the Zohar funds). We cannot assess the alleged confidentiality issue raised but Cari indicated that PPAS has a copy of the ▇▇▇▇▇▇ ▇▇▇▇▇▇, yet also acknowledges below that PPAS is not a party to it which presumably means PPAS is not subject to whatever confidentiality restrictions it contains.

Please let us know PPAS's intentions today so Joe can be prepared to advise the creditors as to status on tomorrow's call.

Separately, is there a reason the Debtors cannot be provided with their own tax filings?

3

**Joseph M. Barry,** Partner ■ Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street ■ Wilmington, DE 19801
**P** 302.571.6705 **F** 302.576.3280 ■ jbarry@ycst.com ■ www.youngconaway.com ■ vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

**EXHIBIT H**

REDACTED



Joseph J. Farnan, Jr.
Independent Director for the Zohar Debtors
Farnan, LLP
919 N. Market Street, 12ᵗʰ Floor
Wilmington, DE 19801

Dated: October 29, 2018

Re: New Agent Agreement and Fee Letter

Dear Joe:

This letter (the "Letter Agreement") confirms that Ankura Trust Company, LLC ("Ankura Trust") has been selected to serve as the new agent (the "New Agent") under the Zohar credit agreements currently existing with the borrowers set forth on Exhibits A-1 and A-2 hereto (the "A-1 Credit Agreements" and "A-2 Credit Agreements", respectively; and together, the "Credit Agreements"), in accordance with section 6 of the settlement agreement (the "Settlement Agreement") approved by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on May 21, 2018 in *In re Zohar III, Corp.*, Case No. 18-10512 (CSS) (the "Proceedings"). Defined terms used herein but not otherwise defined herein shall have the meanings set forth in the Settlement Agreement as in effect on the date hereof.

1.    New Agent's Services; Fees. The New Agent shall perform the services and duties set forth in the respective Credit Agreements, as modified and limited by the Settlement Agreement (the "New Agent Matters"), as well as such services as may otherwise be agreed in writing by the Independent Director or CRO, on the one hand, and the New Agent, on the other hand, from time to time. Upon Bankruptcy Court approval of the appointment of the New Agent, the Zohar Debtors shall pay the New Agent for the New Agent's own account the Acceptance Fee set forth on Exhibit B hereto. Additionally, the New Agent shall be entitled to receive the Annual Fees and any applicable hourly administration fees as set forth on Exhibit B hereto. All fees of the New Agent shall be fully earned as provided in Exhibit B hereto.

2.    Reimbursement of Expenses; Indemnification; Non-Payment.

a.    *Expense Reimbursement.* The New Agent shall be entitled to reimbursement of its expenses, costs and fees in accordance with the Credit Agreements, including reasonable fees and expenses of legal counsel. In addition, the Zohar Debtors shall be responsible pursuant to paragraph 2(f) below for all reasonable and documented costs of legal counsel to the New Agent in connection with negotiating, documenting and executing this Letter Agreement, including obtaining Bankruptcy Court approval of the same.

b.    *Indemnification.* The New Agent, its affiliates and their respective directors, officers, members, stockholders, partners, agents and employees (each, solely in their respective capacities as such, an "Indemnified Party", and collectively, the "Indemnified Parties") shall be entitled to indemnification from each borrower in accordance with the terms of the Credit Agreements.

1



c.    *Non-Payment.*

        i.    To the extent that any borrower under a Credit Agreement fails to timely pay or reimburse the New Agent for fees, expenses, costs or indemnities owed to the New Agent or any other Indemnified Party under such Credit Agreement, including, without limitation, the fees, expenses and costs of any professionals employed in furtherance thereof (in each case, to the extent arising on or after Bankruptcy Court approval of this Letter Agreement), the Zohar Debtors that are lenders under such Credit Agreement shall pay or reimburse the New Agent such amounts on behalf of the relevant borrower under such Credit Agreement on a pro rata basis (based on the ratio of outstanding indebtedness owed by such borrower to a Zohar Debtor-lender over the outstanding indebtedness owed by such borrower to all Zohar Debtor-lenders); provided, that ZII Corp. and the Zohar II Debtors shall be responsible for any and all obligations owed by ZI Corp. or the Zohar I Debtors under this paragraph; provided, further, that any unpaid fees (but not any indemnity obligations) of the New Agent with respect to any A-2 Credit Agreement shall be payable as provided in Exhibit B hereto and not this paragraph.

        ii.    Nothing set forth in this Agreement shall limit the Zohar Debtors' right to seek payment or reimbursement or assert any claims, including, but not limited to, for any New Agent fees, expenses, costs, indemnities or amounts advanced under any Credit Agreement or this Agreement from any party, including any borrower or other lender under any Credit Agreement.

        d.    *Additional Reimbursement and Indemnification Obligations.* If the New Agent is requested in writing by the Independent Director or CRO to perform any services or to take any action that are not covered by provisions of an applicable Credit Agreement (a "Debtor Directed Matter"), the fees and expenses (to the extent not payable by an underlying borrower) for such Debtor Directed Matter shall be paid directly by the Zohar Debtors pursuant to paragraph 2(f) below within 30 days of being invoiced for such services or in accordance with any applicable procedures in the Proceedings, provided, however, the New Agent shall not be obligated to perform (and the Independent Director and the CRO shall not direct it to perform) any Debtor Directed Matter that is prohibited by the Settlement Agreement while it remains in force and effect. If the New Agent becomes subject to any litigation or other proceeding brought by another party related to a Debtor Directed Matter for which indemnity is not available to it under a Credit Agreement (an "Uncovered Matter"), then the New Agent shall be entitled to indemnification from the Zohar Debtors pursuant to paragraph 2(f) below with respect to such Uncovered Matter; provided, that such indemnity shall not be available to the extent determined by a final order of a court of competent jurisdiction to have arisen from the gross negligence or willful misconduct of the New Agent.

        e.    *Form of Payment; Setoff, Recoupment, and Counterclaim.* All payments with respect to fees, expenses, costs and indemnities incurred by the New Agent shall be paid in U.S. dollars and in immediately available funds. The parties agree that, once paid, such fees, expenses, costs and indemnities, or any part thereof, will not be refundable under any circumstances and shall not be subject to reduction by way of setoff, recoupment, or counterclaim against the New Agent or any other Indemnified Party.

        f.    *Allocation of Financial Obligations.* To the extent not otherwise expressly specified herein, any obligation of the Zohar Debtors to pay any amounts hereunder, including the fees, expenses, costs or indemnities described herein, shall be allocated to each Zohar Debtor based on the amount of

2



the then outstanding Paid in Full amount applicable to such Zohar Debtor; provided, that ZII Corp. and the Zohar II Debtors shall be responsible for any and all obligations owed by ZI Corp. or the Zohar I Debtors under this Letter Agreement.

3.     Bankruptcy Court Approval.  The Zohar Debtors shall promptly seek Bankruptcy Court approval of this Letter Agreement, including the fee schedule set forth in Exhibit B hereto, *nunc pro tunc* to September 5, 2018.  Upon Bankruptcy Court approval of this Letter Agreement, the New Agent shall report only to the Independent Director, the Chief Restructuring Officer ("CRO") and the Indenture Trustee, U.S. Bank.

4.     Co-Agent.  The New Agent acknowledges that the existing agent, Patriarch Partners Agency Services, LLC ("PPAS"), may be designated as a co-agent under some of the Credit Agreements for all purposes (and only for such purposes) related to the Patriarch Stakeholders and any other third parties.[1]  Pursuant to section 6 of the Settlement Agreement, PPAS, the Independent Director, the CRO and the New Agent shall use commercially reasonable efforts to transition existing Zohar-related PPAS agent matters to the New Agent.

5.     Confidentiality.  The Independent Director and CRO shall, and shall cause each of the Zohar Debtors and their respective directors, managers, officers, employees, consultants, advisors, counsel, accountants, agents and other representatives to, hold the terms and conditions of the fee schedule attached as Exhibit B hereto (the "Fee Schedule") in confidence.  The Independent Director and the CRO shall, and shall cause each of the Zohar Debtors to, support the motion by Ankura Trust to file the Fee Schedule under seal in connection with the Zohar Debtors seeking Bankruptcy Court approval of this Letter Agreement; provided, that such motion permits disclosure of the Fee Schedule to MBIA, the Zohar III Controlling Class, US Bank, as Indenture Trustee, the Patriarch Stakeholders and the US Trustee and each of their respective professionals; provided, that each such entity shall agree that the use of the information contained in the Fee Schedule shall be solely for the purpose of the Proceedings, that the information will be kept confidential in accordance with the terms of this paragraph 5 and any disclosure of such information within such entity shall be limited to those individuals who need to know the information in order to perform their duties in connection with the Proceedings.  Notwithstanding anything to the contrary herein, the Independent Director, Zohar Debtors, MBIA, the Zohar III Controlling Class, US Bank, in its capacity as Indenture Trustee, and the Patriarch Stakeholders may disclose information contained in the Fee Schedule to the extent such disclosure is (i) consented to in writing by Ankura Trust, (ii) ordered by a court of competent jurisdiction, or (iii) required by applicable law, rule or regulation, or pursuant to an interrogatory, subpoena, civil investigatory demand or similar legal process.  To the extent disclosure of information contained in the Fee Schedule is required pursuant to the preceding clause (iii), the party that is subject to such legal requirement or process shall (to the extent not prohibited by applicable law, rule or regulation) (a) provide Ankura Trust with prompt notice in advance of such disclosure so that Ankura Trust may seek, at its own expense, a protective order or other

---

[1] Notwithstanding the designation of PPAS as a co-agent with the New Agent under any Credit Agreement, the New Agent shall have the exclusive authority and right to act, or refrain from acting, with respect to any and all New Agent Matters under the Credit Agreements, in each case, without having to obtain the consent or direction of PPAS or any other co-agent designated under such Credit Agreements and without any duty or liability to such co-agents or the lenders for whom such co-agents act.

3

01:23702239.10



appropriate remedy or waive compliance with this Letter Agreement, and (b) object to the production of such confidential information on the grounds of the existence of this Letter Agreement.

6.    Resignation of New Agent. The New Agent shall be entitled to resign (i) in accordance with the terms of the Credit Agreements or (ii) otherwise pursuant to an order of the Bankruptcy Court. In the event of such resignation, the CRO, in consultation with the Independent Director, shall appoint a new independent administrative agent in accordance with paragraph 4 of the Settlement Agreement.

7.    GOVERNING LAW; SUBMISSION TO JURISDICTION; SELECTION OF FORUM; WAIVER OF TRIAL BY JURY.

    a.    *Governing Law.* THIS LETTER AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH, AND GOVERNED IN ALL RESPECTS BY, THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

    b.    *Jurisdiction; Forum.*

        i.    Except for those matters expressly covered by clause (ii) below, each party hereto irrevocably and unconditionally (a) submits for itself and its property in any legal action or proceeding relating to this Letter Agreement or for recognition and enforcement of any judgment in respect thereof, to the exclusive general jurisdiction of the federal courts of the United States for the Southern District of New York, and appellate courts from any thereof (or, if such federal courts do not have jurisdiction, to the exclusive general jurisdiction of the New York State Courts of New York County and the appellate courts from any thereof), and (b) consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same.

        ii.    Notwithstanding the foregoing, for so long as the Zohar Debtors remain subject to the Proceedings before the Bankruptcy Court, any dispute arising in connection with the provisions of section 6 of the Settlement Agreement shall in the first instance be referred to the Mediator. If the Mediator cannot resolve that dispute, the parties shall jointly seek an order of the Bankruptcy Court resolving the dispute (provided that, to the extent the Bankruptcy Court lacks jurisdiction, the dispute will be heard by a court of competent jurisdiction specified in the foregoing clause (i)).

    c.    *Trial by Jury Waiver.* THE PARTIES HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS LETTER AGREEMENT.

8.    Power and Authority. The Independent Director represents and warrants that (x) he is duly authorized and has legal capacity to execute and deliver this Letter Agreement on behalf of the Zohar Debtors, and (y) subject to Bankruptcy Court approval, this Letter Agreement shall be a valid and legal agreement binding on the Zohar Debtors, which shall be enforceable in accordance with its terms.

4



9.      Severability and Construction. If any provisions of this Letter Agreement shall be held to be invalid, void, or unenforceable, the remaining provisions hereof shall not be affected or impaired and such remaining provisions shall remain in full force and effect.

10.     Due Inquiry; Intended Beneficiaries. Each of the parties hereto represents and declares that such party has carefully read this Letter Agreement and that such party knows the contents thereof and signs the same freely and voluntarily. This Letter Agreement is intended to be solely for the benefit of the parties hereto, and is not intended to confer any benefits upon, or create any rights in favor of, any person other than the parties hereto.

11.     Amendment and Waiver. This Letter Agreement may not be amended or any provision hereof waived or modified except (1) by an instrument in writing signed by each of the parties hereto and (2) to the extent such amendment, waiver or modification would materially affect the Zohar Debtors' rights or obligations under this Letter Agreement (a "Material Amendment"), with Bankruptcy Court approval; provided, that the Zohar Debtors shall file a notice in the Proceedings of any proposed non-Material Amendment to this Letter Agreement at least five business days in advance of executing such non-Material Amendment. Failure of any party to enforce any of the provisions hereof shall not be construed as a waiver of such provisions or of the right thereafter to enforce such provisions.

12.     Successors and Assigns. This Letter Agreement shall be binding on and shall inure to the benefit of the New Agent and the Zohar Debtors and their respective successors and permitted assigns.

13.     Complete Agreement. This Letter Agreement shall supersede any prior written or oral agreements among the parties hereto with respect to the compensation described herein.

14.     Headings. The headings of all paragraphs of this Letter Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.

15.     Execution of Agreement. This Letter Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of this Letter Agreement by fax or electronic mail shall have the same force and effect as the delivery of an original executed counterpart of this Letter Agreement.

16.     Execution of Tolling Agreement. Upon execution hereof, the New Agent (solely in its capacity as such) shall join that certain Tolling and Litigation Standstill Agreement, dated September 7, 2018 (the "Tolling Agreement"), by and among certain parties to the Settlement Agreement.

5

ankura.com

01:23702239.10





Please indicate your agreement with the foregoing terms and provisions by countersigning this Letter Agreement and returning to us executed counterparts hereof.

By: _____

Name: Ryan M. Roy
Title: Managing Director

Agreed and accepted to
as of the date first written above:

Joseph J. Farnan, Jr. on behalf of each of the Zohar Debtors

By: _____

Name: Joseph J. Farnan, Jr.
Title: Independent Director


Michael Katzenstein, as CRO of the Zohar Debtors


By: _____

Name: Michael Katzenstein
Title: Chief Restructuring Officer

6

01:23702239.10



Please indicate your agreement with the foregoing terms and provisions by countersigning this Letter Agreement and returning to us executed counterparts hereof.

By: _____

Name: Ryan M. Roy
Title: Managing Director

Agreed and accepted to
as of the date first written above:

Joseph J. Farnan, Jr. on behalf of each of the Zohar Debtors

By: _____

Name:  Joseph J. Farnan, Jr.
Title:    Independent Director

Michael Katzenstein, as CRO of the Zohar Debtors

By: _____

Name:  Michael Katzenstein
Title:    Chief Restructuring Officer

6

01:23702239.10







01:23702239.10







ankura.com











ankura.com



:23702239.10



01:23702239.10





23702239.10

**EXHIBIT I**

1

1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
2

3                                      .   Chapter 11
     IN RE:                            .
4                                      .   Case No. 18-10512 (CSS)
     ZOHAR III CORP., *et al.,*        .
5                                      .   Courtroom No. 6
                                       .   824 North Market Street
6                                      .   Wilmington, Delaware 19801
                                       .
7              Debtors.                .   February 6, 2019
     . . . . . . . . . . . . . . . .   .   11:00 A.M.
8
                          TRANSCRIPT OF HEARING
9          BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
                    UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:

12   For the Debtors:         Robert Brady, Esquire
                              YOUNG CONAWAY STARGATT & TAYLOR LLP
13                            1000 North King Street
                              Wilmington, Delaware 19801
14

15   For Patriarch:          Michael Neumeister, Esquire
                              GIBSON DUNN
16                            333 South Grand Avenue
                              Los Angeles, California 90071
17

18   For U.S. Bank:          John Weiss, Esquire
                              ALSTON & BIRD LLP
19                            90 Park Avenue
                              New York, New York 10016

20   Audio Operator:         Leslie Murin

21   Transcription Company:  Reliable
                              1007 N. Orange Street
22                            Wilmington, Delaware 19801
                              (302)654-8080
23                            Email:  gmatthews@reliable-co.com

24   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.
25

1        In October, the debtors unexpectedly received

2   several million dollars in funds from PPAS as a paydown on

3   the debtors' loan to an entity, one of the portfolio

4   companies.  When the debtors inquired to PPAS on the source

5   of these funds, PPAS's counsel advised us it was the result

6   of a legal settlement at one of the portfolio companies in

7   wind-down.

8        When the CRO then requested that PPAS provide some

9   additional information and an accounting what money came in,

10  what money was sent elsewhere, what money came to the

11  debtors, PPAS flatly refused.  And they said, among other

12  things, that there was no requirement for the agent to

13  provide that information under the credit agreement.

14        So, we don't agree with that position, obviously.

15  But here's an example where the flexibility that the debtors

16  seek would obviate the need to have a potential delay over

17  whether something is covered by the credit agreement or is

18  not covered by the credit agreement.  But its agent

19  information that the agent has that the debtors, as lenders,

20  would seek. And it's necessary for the independent director

21  and the CRO to understand so that they can fulfill their

22  fiduciary duties.

23        So that is an example of the type of flexibility

24  they're looking for.

25        And, Your Honor, we need to put some words around

1 information, they refused.  We then rescheduled that

2 portfolio company, which was A-3 to A-2, so that we could

3 insert Ankura there and get the information.

4         In that particular instance, Your Honor, PPASS was

5 not just acting as agent; they foreclosed on that portfolio

6 company.  So, they're not just the agent there.  They

7 foreclosed.  So, certainly the lender, whose agent foreclosed

8 on the portfolio company, should be entitled to that

9 information.  We're not raising that dispute today other than

10 to say this is exactly why we need that flexibility to have

11 Ankura provide us with information we think the debtors

12 should have.

13         We did move under 363; it's in the title of the

14 motion.  So, there's an argument that somehow this is a

15 separate retention application.  We did move under 363 for

16 this, Your Honor.  And, again, we think Mr. Farnan, as the

17 independent director, has the right to seek the ability to

18 retain professionals or to utilize professionals in the case

19 in the exercise of his fiduciary duties and he's moved under

20 363 to have that flexibility with respect to Ankura.

21         To the extent the fees are ambiguous I tried to

22 clarify that on the record and it is something we talked

23 about in our numerous mediations and calls on this.  To the

24 extent that Ankura is seeking reimbursement of legal fees for

25 work done under the credit agreements it has to be under the

**<u>EXHIBIT J</u>**

# REDACTED

**EXHIBIT K**



## PATRIARCH
### PARTNERS AGENCY
### SERVICES, LLC

One Broadway, 5th Floor
New York, NY 10004

**VIA EMAIL**

September 26, 2016



Re:     Notice of Acceptance of Subject Collateral in Partial Satisfaction of Obligation

Ladies and Gentlemen:

Reference is made to (a) Term Loan Agreement, dated as of November 8, 2004 (as modified to the date hereof, the "Credit Agreement"), among ███████████ a Delaware limited liability company ████████████████████ "Credit Parties")the financial institutions and other investors from time to time party thereto as lenders ("Lenders"), and Patriarch Partners Agency Services, LLC, a Delaware limited liability company, as administrative agent ("Agent"); and (b) the Amended and Restated Security Agreement, dated as of April 11, 2011, made by ████ and the Grantors that are signatories thereto in favor of Agent. Capitalized terms used but not defined herein are used as defined in the Credit Agreement.

Each of the undersigned acknowledges the occurrence of an Event of Default as defined in the Credit Agreement. Pursuant to Section 9-620 of the Uniform Commercial Code, notice is hereby given of the Agent's acceptance of the subject collateral identified on Schedule A attached hereto in partial satisfaction of the undersigned entities' Obligations under the Credit Agreement (the "Subject Collateral"). The Subject Collateral is accepted by Agent in satisfaction of $20,000,000 of the Obligations, which represents a partial satisfaction of the Obligations.

{PJ105589.2}                                        1

████████SUPPLEMENTAL_PRODUCTION0001800

If you are in agreement with the terms of this letter and agree to Agent's acceptance of the Subject Collateral in partial satisfaction of the undersigned entities' Obligations under the Credit Agreement in the amount set forth in the immediately preceding paragraph, please sign and date below.

*Signature pages follow.*

CONFIDENTIAL                                                                    SUPPLEMENTAL_PRODUCTION0001801

Very truly yours,

**PATRIARCH PARTNERS AGENCY** SERVICES, LLC,
as Agent

By: _____
Lynn Tilton
Manager

By signing below, each entity indicates its agreement with the terms of this letter and agrees to Agent's acceptance of the Subject Collateral identified in Schedule A in partial satisfaction of the entity's Obligations under the Credit Agreement in the amount set forth above:

Date:  September 26, 2016

█████████████████

By: _____
Name:
Title:

███████████████████████

By: _____
Name:
Title:

████████████████

By: _____
Name:
Title:

{PH 05589.2}                                   3

Very truly yours.

PATRIARCH PARTNERS AGENCY SERVICES, LLC,
as Agent

By _____
Lynn Tilton
Manager

By signing below, each entity  indicates its agreement with the terms of this letter and agrees to Agent's acceptance of the Subject Collateral identified in Schedule A in partial satisfaction of the entity's Obligations under the Credit Agreement in the amount set forth above:

Date:  September 26, 2016





PH 1635469.21                                3

CONFIDENTIAL                                                     SUPPLEMENTAL_PRODUCTION0001803

**SCHEDULE A**



CONFIDENTIAL

SUPPLEMENTAL_PRODUCTION0001804



{P1105589.2}

5

CONFIDENTIAL

SUPPLEMENTAL_PRODUCTION0001805



# PATRIARCH
## PARTNERS AGENCY
### SERVICES, LLC

One Broadway, 5th Floor
New York, NY 10004

**VIA EMAIL**

September 26, 2016



Re:   Notice of Acceptance of Subject Collateral in Partial Satisfaction of Obligation

Ladies and Gentlemen:

Reference is made to Loan and Security Agreement, dated as of January 31, 2007 (as modified to the date hereof, the "Credit Agreement") ████████████████ a Delaware limited liability company ████ and ████ a Delaware limited liability company ████ and together with ████ each individually a "Borrower" and collectively, "Borrowers" or "you") ████████ a Delaware limited liability company (the "Guarantor"), the financial institutions and other investors from time to time party thereto as lenders ("Lenders"), and Patriarch Partners Agency Services, LLC, a Delaware limited liability company, successor by assignment from Wells Fargo Bank, National Association, as agent ("Agent"). Capitalized terms used but not defined herein are used as defined in the Credit Agreement.

Each of the undersigned acknowledges the occurrence of an Event of Default as defined in the Credit Agreement. Pursuant to Section 9-620 of the Uniform Commercial Code, notice is hereby given of the Agent's acceptance of the subject collateral identified on Schedule A attached hereto in partial satisfaction of the undersigned entities' Obligations under the Credit Agreement (the "Subject

{P1105589.2}              1

████████ SUPPLEMENTAL_PRODUCTION0001806

Collateral"). The Subject Collateral is accepted by Agent in satisfaction of $5,000,000 of the Obligations, which represents a partial satisfaction of the Obligations.

If you are in agreement with the terms of this letter and agree to Agent's acceptance of the Subject Collateral in partial satisfaction of the undersigned entities' Obligations under the Credit Agreement in the amount set forth in the immediately preceding paragraph, please sign and date below.

*Signature pages follow.*

CONFIDENTIAL                                                                SUPPLEMENTAL_PRODUCTION0001807

Very truly yours.

PATRIARCH PARTNERS AGENCY SERVICES, LLC,
as Agent

By: _____
Lynn Tilton
Manager

By signing below, each entity indicates its agreement with the terms of this letter and agrees to Agent's acceptance of the Subject Collateral identified in Schedule A in partial satisfaction of the entity's Obligations under the Credit Agreement in the amount set forth above:

Date: September 26, 2016



[JP-0005000-2]                                              3

CONFIDENTIAL                                              SUPPLEMENTAL_PRODUCTION0001808

Very truly yours,

**PATRIARCH PARTNERS AGENCY** SERVICES, LLC,
as Agent

By: _____
Lynn Tilton
Manager

By signing below, each entity indicates its agreement with the terms of this letter and agrees to Agent's acceptance of the Subject Collateral identified in Schedule A in partial satisfaction of the entity's Obligations under the Credit Agreement in the amount set forth above:

Date:  September 26, 2016

█████████████████████████

By: _____
Name:
Title:

████████████████████

By: _____
Name:
Title:

█████████████████

By: _____
Name:
Title:

CONFIDENTIAL                                                                         ████SUPPLEMENTAL_PRODUCTION0001809

**SCHEDULE A**



{P1105589.2}                                  4

CONFIDENTIAL                                  SUPPLEMENTAL_PRODUCTION0001810

**EXHIBIT L**



**Joseph Barry, Co-Chair, Bankruptcy & Corporate Restructuring Group**
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.6705 | M: 302.584.7021
jbarry@ycst.com | www.youngconaway.com | vCard

**From:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Sent:** Monday, April 26, 2021 12:44 PM
**To:** Barry, Joseph <jbarry@ycst.com>
**Cc:** Pernick, Norman <NPernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>
**Subject:** RE: Zohar - ███████

Joe,

As to the diligence items, we believe we will be able to provide Debtors the information listed below to the extent it exists. We are gathering the information now and expect to be able to provide it in the next week or so. We suggest a follow-up call once you have an opportunity to review the materials, but we think we will be able to respond to substantially all the listed requests below in some shape or form.

As to the request that Ark, Ark II and AIP consent to appointment of Zohar II as the manager, we are willing to entertain a consent if Debtors agree to indemnify Patriarch and Ms. Tilton and/or assume the company's indemnification obligations, including advancing any fees and costs. The primary concern here is that the company may have ███████ liabilities at the property, and while we do not believe any Patriarch entity or Ms. Tilton have any such liabilities, we need assurances that the company/Debtors will indemnify them and advance costs. It should also be understood that if we consent, Patriarch will not continue doing any work for the company.

As to the ███████ property, we dispute that the property sale is a "monetization event" subject to the amended milestone order. However, to the extent we can reach agreement on the consent re Zohar II acting as manager, we can easily transition those sale activities to Debtors.

As to the question regarding legal process, I don't recall saying that PPAS was in control of the assets, only that Patriarch continued to manage the assets. We will need some time to track down the information necessary to respond to this question but are willing to do so.

Thank you,

Monica

**Monica K. Loseman**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5784 • Fax +1 303.313.2828
MLoseman@gibsondunn.com · www.gibsondunn.com

**From:** Barry, Joseph <jbarry@ycst.com>
**Sent:** Friday, April 23, 2021 1:53 PM
**To:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Cc:** Pernick, Norman <NPernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>
**Subject:** RE: Zohar - ▇▇▇▇▇▇▇

[External Email]
Monica – As I noted in Monday's email, this is a priority for the Debtors.

Joe

 **Joseph Barry, Co-Chair, Bankruptcy & Corporate Restructuring Group**
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.6705 | M: 302.584.7021
jbarry@ycst.com | www.youngconaway.com | vCard

**From:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Sent:** Wednesday, April 21, 2021 11:23 AM
**To:** Barry, Joseph <jbarry@ycst.com>
**Cc:** Pernick, Norman <NPernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>
**Subject:** RE: Zohar - ▇▇▇▇▇▇▇

Thanks, Joe, and understood.  We should be able to respond later today or tomorrow morning.  I agree that cooperation is in everyone's best interests here, and I am hopeful we can find a path forward without resorting to any motion practice.

**Monica K. Loseman**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5784 • Fax +1 303.313.2828
MLoseman@gibsondunn.com · www.gibsondunn.com

**From:** Barry, Joseph <jbarry@ycst.com>
**Sent:** Wednesday, April 21, 2021 5:37 AM

**<u>EXHIBIT M</u>**

| | | Senior Secured Debt | | 6/1/2017 | | | | | 3/31/2021 |
| FUND | Facility Number | Facility | Payment Priority | Principal Balance | Term Loans | ABL | Sale Proceeds | Proceeds | Current Principal Balance |
|---|---|---|---|---|---|---|---|---|---|
| Zohar I | 806-06 | T/L | 3rd | $21,476,619.53 | $21,476,619.53 | | | | $21,476,619.53 |
| Zohar I | 808-10 | TL D | 3rd | $2,550,324.45 | $2,550,324.45 | | | | $2,550,324.45 |
| Zohar I | 808-11 | TL E | 3rd | $1,360,173.04 | $1,360,173.04 | | | | $1,360,173.04 |
| Zohar I | 808-17 | TL K | 3rd | $586,573.78 | $586,573.78 | | | | $586,573.78 |
| Zohar I | 808-20 | TL M | 3rd | $680,086.52 | $680,086.52 | | | | $680,086.52 |
| Zohar I | 808-32 | New ABL Revolver | 2nd | $1,180,176.25 | | $1,180,176.25 | | ($581,506.03) | $598,670.22 |
| Total | | | | $27,833,953.57 | $26,653,777.32 | $1,180,176.25 | $0.00 | ($581,506.03) | $27,252,447.54 |
| Zohar II | 806-06 | T/L | 3rd | $15,364,981.69 | $15,364,981.69 | | | | $15,364,981.69 |
| Zohar II | 808-10 | TL D | 3rd | $6,375,811.10 | $6,375,811.10 | | | | $6,375,811.10 |
| Zohar II | 808-11 | TL E | 3rd | $935,118.96 | $935,118.96 | | | | $935,118.96 |
| Zohar II | 808-12 | TL F | 3rd | $1,208,853.79 | $1,208,853.79 | | | | $1,208,853.79 |
| Zohar II | 808-16 | TL J | 3rd | $3,910,813.55 | $3,910,813.55 | | | | $3,910,813.55 |
| Zohar II | 808-17 | TL K | 3rd | $850,108.15 | $850,108.15 | | | | $850,108.15 |
| Zohar II | 808-18 | TL L | 3rd | $850,108.15 | $850,108.15 | | | | $850,108.15 |
| Zohar II | 808-22 | DDTL A | 3rd | $5,100,648.89 | $5,100,648.89 | | | | $5,100,648.89 |
| Zohar II | 808-32 | New ABL Revolver | 2nd | $1,445,692.35 | | $1,445,692.35 | | ($712,333.28) | $733,359.08 |
| Total | | | | $36,062,136.63 | $34,616,444.28 | $1,445,692.35 | $0.00 | ($712,333.28) | $35,349,803.36 |
| Zohar III | 808-09 | TL C | 3rd | $10,141,451.81 | $10,141,451.81 | | | | $10,141,451.81 |
| Zohar III | 808-10 | TL D | 3rd | $9,776,243.71 | $9,776,243.71 | | | | $9,776,243.71 |
| Zohar III | 808-13 | TL G | 3rd | $850,108.15 | $850,108.15 | | | | $850,108.15 |
| Zohar III | 808-14 | TL H | 3rd | $2,550,324.45 | $2,550,324.45 | | | | $2,550,324.45 |
| Zohar III | 808-15 | TL I | 3rd | $1,020,129.78 | $1,020,129.78 | | | | $1,020,129.78 |
| Zohar III | 808-18 | TL L | 3rd | $1,700,216.30 | $1,700,216.30 | | | | $1,700,216.30 |
| Zohar III | 808-19 | TL B | 3rd | $4,250,540.74 | $4,250,540.74 | | | | $4,250,540.74 |
| Zohar III | 808-20 | TL M | 3rd | $582,259.86 | $582,259.86 | | | | $582,259.86 |
| Zohar III | 808-21 | DDTL | 3rd | $377,474.66 | $377,474.66 | | | | $377,474.66 |
| Zohar III | 808-23 | DDTL N | 3rd | $5,481,780.34 | $5,481,780.34 | | | | $5,481,780.34 |
| Zohar III | 808-24 | DDTL B | 3rd | $935,118.96 | $935,118.96 | | | | $935,118.96 |
| Zohar III | 808-25 | DDTL C | 3rd | $850,108.15 | $850,108.15 | | | | $850,108.15 |
| Zohar III | 808-26 | DDTL D | 3rd | $1,275,162.22 | $1,275,162.22 | | | | $1,275,162.22 |
| Zohar III | 808-27 | DDTL E | 3rd | $778,366.96 | $778,366.96 | | | | $778,366.96 |
| Zohar III | 808-28 | DDTL F | 3rd | $1,013,836.21 | $1,013,836.21 | | | | $1,013,836.21 |
| Zohar III | 808-32 | New ABL Revolver | 2nd | $5,814,978.25 | | $5,814,978.25 | | ($2,865,203.31) | $2,949,774.94 |
| Total | | | | $47,398,120.56 | $41,583,142.30 | $5,814,978.25 | $0.00 | ($2,865,203.31) | $44,532,917.25 |
| AIP II | 806-06 | T/L (1st | 1st | $8,316,788.02 | $8,316,788.02 | | | ($8,316,788.02) | $0.00 |
| AIP II | 806-34 | New ABL Revolver (1st | 1st | $347,335.41 | | $347,335.41 | | ($347,335.41) | $0.00 |
| Total | | | | $8,664,123.43 | $8,316,788.02 | $347,335.41 | $0.00 | ($8,664,123.43) | $0.00 |
| Ark II | 806-34 | New ABL Revolver (1st | 1st | $1,266,325.74 | | $1,266,325.74 | | ($1,266,325.74) | $0.00 |
| Ark II | 806-35 | Delayed Draw TL H (1st | 1st | $2,582,357.10 | $2,582,357.10 | | ($2,582,357.10) | | $0.00 |
| Total | | | | $3,848,682.84 | $2,582,357.10 | $1,266,325.74 | ($2,582,357.10) | ($1,266,325.74) | $0.00 |

| GRAND TOTALS - SENIOR SECURED | | | | $123,807,017.03 | $113,752,509.03 | $10,054,508.00 | ($2,582,357.10) | ($14,089,491.78) | $107,135,168.15 |
|---|---|---|---|---|---|---|---|---|---|

SERIES A PREFERRED

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Zohar I | 806-07 | Series A - Pref | | $43,616,000.00 | | | | | $43,616,000.00 |
| Zohar II | 806-07 | Series A - Pref | | $31,866,000.00 | | | | | $31,866,000.00 |
| AIP-ES | 806-07 | Series A - Pref | | $22,001,053.77 | | | | | $22,001,053.77 |
| Ark II | 806-07 | Series A - Pref | | $2,209,505.37 | | | | | $2,209,505.37 |
| TOTALS - PREFERRED | | | | $99,692,559.14 | $0.00 | $0.00 | $0.00 | $0.00 | $99,692,559.14 |

**EXHIBIT N**

| | |
|---|---|
| **From:** | Barry, Joseph |
| **Sent:** | Wednesday, May 26, 2021 8:03 PM |
| **To:** | 'Loseman, Monica K.' |
| **Cc:** | Norman L. Pernick (npernick@coleschotz.com); Nestor, Michael; Bartley, Ryan; Kephart, Allurie R.; Reil, Shane; Hammond, Tyler Andrew |
| **Subject:** | RE: Zohar – █████████ |
| **Importance:** | High |

Monica –

We have reviewed the materials provided by Patriarch in response to our document request. As we understand Bates production 1971, all AIP/Ark secured debt has been satisfied in full. This is consistent with Exhibit A-2 of Ankura's engagement letter which identifies all companies where Ankura and PPAS will be subject to a co-agency arrangement and ████████████ is not identified as one such entity.

We further understand from Patriarch's production, that on or about September 26, 2016, Patriarch, in its capacity as agent, accepted certain collateral securing the revolving and term loan indebtedness (other than the ███████████████████████████████████████████████ in partial satisfaction of the indebtedness (namely, $5 million on the revolver and $20 million on the term loan). There are two (2) *Notice of Acceptance of Subject Collateral in Partial Satisfaction of Obligations* that were produced dated September 26, 2016 (the "Notices") (these do not appear to be Bates numbered). PPAS's records (Bates 1971) show approximately $107 million still due and owing on the term loan and approximately $4.3 million due and owing on the revolver, all of which is held by the Zohar Funds, and nothing owed to Patriarch on its previous loans.

The "Summary of Remaining Proceeds" provided by Patriarch on January 31, 2021 and that was discussed on our call on March 25, 2021, shows "Available proceeds (*sic*)" of $18,762,615.31. Patriarch's records, as we understand them, show these proceeds are primarily the result of sale of ██████████████, recoveries on account of a ██████████████████████████ All of these assets are subject to, and specifically described in, the Notices ("personal property of every kind ████████████ ██████████ real property…") and those funds were received by PPAS after the September 2016 acceptance of collateral in partial satisfaction.

We further understand from your recent production, that these funds are being held by PPAS in its capacity as agent. However, on our call on March 25th, Mr. Mercado advised that over $16 million of these funds are held in an account in ████████████ name. Information provided by Cari Schiff to Ankura in May of 2019 states that ██████████ does not have a bank account.

Pursuant to the Bankruptcy Court's order appointing Ankura as PPAS's replacement agent, ███████████ credit agreement was "deemed modified and amended to appoint Ankura, in its capacity as the New Agent, as the loan administrative agent or "Agent" thereunder…." And paragraph 9 of the Ankura appointment order requires that "PPAS, the Debtors, and the New Agent shall use commercially reasonable efforts to transition existing Zohar-related PPAS agent matters to the New Agent."

We understand that PPAS has resisted Ankura's efforts to transition to the agency role at ██████████ by, among other things, telling Ankura that ████████████ had already been liquidated and/or that "the debt" had been paid off (which was understood to mean "all debt" not just "Patriarch debt").

This situation must be addressed immediately. Ankura must be transitioned into the role as agent and must gain immediate possession of all collateral securing any of the Zohar Funds loans or any property acquired by the Zohar Funds or the proceeds of such collateral or Zohar Funds-owned property held by PPAS in any capacity whatsoever. Further, ███████ should not be in possession of any assets that were accepted by PPAS, as agent for the ABL and term lenders, in partial satisfaction of the Zohar Funds' indebtedness. These assets are not the property of ███████ and any use of them without the Zohar Funds' knowledge or consent is not proper, particularly in light of the Bankruptcy Code's prohibition on exercising control over property of a chapter 11 debtor and its estate. *See* 11 U.S.C. § 362(a)(3).

Demand is hereby made pursuant to paragraph 9 of the Ankura retention order and paragraph 6 of the Settlement Agreement that (a) PPAS immediately transition all agent functions to Ankura, (b) any Patriarch Stakeholder immediately turnover any and all assets accepted by PPAS or relating to ███████ in any way, (c) PPAS assign any DACAs in place if ███████ does, in fact, have a bank account, and, (d) as a part of the transition, PPAS provide, within one week, a full and complete accounting from and after 2015.

This matter is of urgent concern. We would like to schedule a call for tomorrow to discuss transitioning to Ankura. Young Conaway, Milbank and Ankura are available 11:30-12:30 and 2:30-5:00. Please advise as to the availability of those necessary at PPAS to do so for 30 minutes within this three and a half hour block of time.

Thanks.

Joe



**Joseph Barry**, Co-Chair, Bankruptcy & Corporate Restructuring Group
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.6705 | M: 302.584.7021
jbarry@ycst.com | www.youngconaway.com | vCard

---

**From:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Sent:** Wednesday, May 5, 2021 6:51 PM
**To:** Barry, Joseph <jbarry@ycst.com>
**Cc:** Norman L. Pernick (npernick@coleschotz.com) <npernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>; Reil, Shane <SReil@ycst.com>; Hammond, Tyler Andrew <THammond@gibsondunn.com>
**Subject:** RE: Zohar - ███████

I understand certain financial information is still being gathered, and that we should have it early next week.


**Monica K. Loseman**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5784 • Fax +1 303.313.2828
MLoseman@gibsondunn.com • www.gibsondunn.com

**From:** Barry, Joseph <jbarry@ycst.com>
**Sent:** Wednesday, May 5, 2021 4:39 PM
**To:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Cc:** Norman L. Pernick (npernick@coleschotz.com) <npernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>; Reil, Shane <SReil@ycst.com>
**Subject:** RE: Zohar - ██████████

[External Email]
Monica – The production we received today appears to include (a) 2 default notices, (b) 2 notices of acceptance of collateral in partial satisfaction, (b) loan agreements and amendments, (c) the LLC agreement and amendments, and (d) loan statements. Please confirm what was produced today is the totality that your clients intend to produce in response to our request.

Thanks.

Joe



**Joseph Barry**, Co-Chair, Bankruptcy & Corporate Restructuring Group
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.6705 | M: 302.584.7021
jbarry@ycst.com | www.youngconaway.com | vCard

---

**From:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Sent:** Wednesday, April 28, 2021 3:25 PM
**To:** Barry, Joseph <jbarry@ycst.com>
**Cc:** Norman L. Pernick (npernick@coleschotz.com) <npernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>; Reil, Shane <SReil@ycst.com>
**Subject:** RE: Zohar - ██████████

Joe – In September 2016, notices of default and acceleration under the ABL and term loan agreements were sent to the company, and PPAS, as agent under both the ABL and term loan agreements, accepted the subject collateral in partial satisfaction of amounts due under the credit agreements. I believe Cari was using "foreclosure" as a shorthand reference to this event, and we are gathering documents per your request.

Thanks,

Monica

**Monica K. Loseman**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5784 • Fax +1 303.313.2828
MLoseman@gibsondunn.com • www.gibsondunn.com

**From:** Barry, Joseph <jbarry@ycst.com>
**Sent:** Wednesday, April 28, 2021 5:18 AM
**To:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Cc:** Norman L. Pernick (npernick@coleschotz.com) <npernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>; Reil, Shane <SReil@ycst.com>
**Subject:** RE: Zohar - ▉▉▉▉▉▉

[External Email]
Monica – Can you let us know about whether there was a foreclosure or not? This seems like a pretty straightforward question that has a simple answer. Either there was a foreclosure or not. Again, not trying to be difficult but this is a simple thing and we assume you know the answer by now. Please advise. Joe



**Joseph Barry**, Co-Chair, Bankruptcy & Corporate Restructuring Group
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.6705 | M: 302.584.7021
jbarry@ycst.com | www.youngconaway.com | vCard

---

**From:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Sent:** Tuesday, April 27, 2021 11:57 AM
**To:** Barry, Joseph <jbarry@ycst.com>
**Cc:** Norman L. Pernick (npernick@coleschotz.com) <npernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>; Reil, Shane <SReil@ycst.com>
**Subject:** RE: Zohar - ▉▉▉▉▉▉

No, I cannot. We are considering whether there may be other ways to address all parties concerns so that we can reach mutual agreement on path forward. Will revert.

**Monica K. Loseman**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5784 • Fax +1 303.313.2828
MLoseman@gibsondunn.com • www.gibsondunn.com

---

**From:** Barry, Joseph <jbarry@ycst.com>
**Sent:** Tuesday, April 27, 2021 9:31 AM
**To:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Cc:** Norman L. Pernick (npernick@coleschotz.com) <npernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>; Reil, Shane <SReil@ycst.com>
**Subject:** RE: Zohar - ▉▉▉▉▉▉

[External Email]
Monica – You're welcome. Can you confirm that Lynn Tilton will not agree to appoint a new manager without the requested assumption of liability so we can decide how to proceed on that piece of this.

Thanks.

Joe



**Joseph Barry**, Co-Chair, Bankruptcy & Corporate Restructuring Group
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.6705 | M: 302.584.7021
jbarry@ycst.com | www.youngconaway.com | vCard

---

**From:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Sent:** Monday, April 26, 2021 5:00 PM
**To:** Barry, Joseph <jbarry@ycst.com>
**Cc:** Norman L. Pernick (npernick@coleschotz.com) <npernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>; Reil, Shane <SReil@ycst.com>
**Subject:** RE: Zohar - █████████

Thanks.


**Monica K. Loseman**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5784 • Fax +1 303.313.2828
MLoseman@gibsondunn.com • www.gibsondunn.com

---

**From:** Barry, Joseph <jbarry@ycst.com>
**Sent:** Monday, April 26, 2021 2:54 PM
**To:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Cc:** Norman L. Pernick (npernick@coleschotz.com) <npernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>; Reil, Shane <SReil@ycst.com>
**Subject:** RE: Zohar - █████████

[External Email]
Monica – Attached is the entire thread.

Joe



**Joseph Barry**, Co-Chair, Bankruptcy & Corporate Restructuring Group
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.6705 | M: 302.584.7021
jbarry@ycst.com | www.youngconaway.com | vCard

---

**From:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Sent:** Monday, April 26, 2021 4:48 PM

**To:** Barry, Joseph <jbarry@ycst.com>
**Cc:** Norman L. Pernick (npernick@coleschotz.com) <npernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>; Reil, Shane <SReil@ycst.com>
**Subject:** FW: Zohar - ███████

Joe,

We intend to provide information if it exists; we reserve rights to object if follow-up requests become unreasonable.

On the other items, we are evaluating and will get back to you. Can you send me a copy of the October 26, 2018 communication you reference below?

Thanks,

Monica


**Monica K. Loseman**

### GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5784 • Fax +1 303.313.2828
MLoseman@gibsondunn.com • www.gibsondunn.com

---

**From:** Barry, Joseph <jbarry@ycst.com>
**Sent:** Monday, April 26, 2021 11:39 AM
**To:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Cc:** Pernick, Norman <NPernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>; Reil, Shane <SReil@ycst.com>
**Subject:** RE: Zohar - ███████

[External Email]
Monica – Thanks. The Debtors will hold off on filing the 2004 exam motion based on the statements in your first paragraph but we expect complete responses no later than May 5th at the latest. I just want to be clear what our expectations are since your email refers to "a week or so" and "in some shape or form." And a response of "you're not entitled to it" or "we refuse to provide it" is not a response "in some shape or form." We assume when you say you plan to respond it is with information and not an objection. If your client has objections to the specific requests, we need them today. If certain information does not exist, that's different. I'm not trying to be difficult or pin you down here, but I don't want to lose another week if our expectations and yours are mismatched. We appreciate your cooperation here.

As you might imagine, the Debtors cannot agree to indemnify Ms. Tilton and/or assume any liabilities related to ███████
████ The absence of a manager needs to be fixed and we once again propose Zohar II Corp. as the manager. Please confirm Ms. Tilton is not willing to agree with this without the requested assumption of the indemnification liabilities and we'll proceed accordingly.

Lastly, we're confused on our end. On October 26, 2018, Cari Schiff told us in writing that PPAS foreclosed on ███████ ████ in 2016. I specifically asked on the call we had a couple weeks ago whether title to ██████ assets were transferred to PPAS because of the foreclosure and you said something to the effect that they were being "managed" or "controlled" by PPAS. But you say the sale activities can be transitioned to a new manager and that Patriarch is doing work "for the company." Has PPAS foreclosed on the assets and is now selling them on the lenders' behalf, or are the assets still owned by ██████ such that it's ██████████ that is selling them (which would appear to be the case if a new LLC

manager would be overseeing the sale of the ▮▮ property)? Can you just clarify that point – has the foreclosure occurred? If the foreclosure has not occurred and there is no manager, on what authority would ▮▮▮▮▮▮▮ and/or PPAS be acting since there is no manager?

Thanks very much.

Joe



**Joseph Barry**, Co-Chair, Bankruptcy & Corporate Restructuring Group
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.6705 | M: 302.584.7021
jbarry@ycst.com | www.youngconaway.com | vCard

---

**From:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Sent:** Monday, April 26, 2021 12:44 PM
**To:** Barry, Joseph <jbarry@ycst.com>
**Cc:** Pernick, Norman <NPernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>
**Subject:** RE: Zohar - ▮▮▮▮▮▮

Joe,

As to the diligence items, we believe we will be able to provide Debtors the information listed below to the extent it exists. We are gathering the information now and expect to be able to provide it in the next week or so. We suggest a follow-up call once you have an opportunity to review the materials, but we think we will be able to respond to substantially all the listed requests below in some shape or form.

As to the request that Ark, Ark II and AIP consent to appointment of Zohar II as the manager, we are willing to entertain a consent if Debtors agree to indemnify Patriarch and Ms. Tilton and/or assume the company's indemnification obligations, including advancing any fees and costs. The primary concern here is that the company may have ▮▮▮▮▮▮ liabilities at the property, and while we do not believe any Patriarch entity or Ms. Tilton have any such liabilities, we need assurances that the company/Debtors will indemnify them and advance costs. It should also be understood that if we consent, Patriarch will not continue doing any work for the company.

As to the ▮▮▮▮▮▮ property, we dispute that the property sale is a "monetization event" subject to the amended milestone order. However, to the extent we can reach agreement on the consent re Zohar II acting as manager, we can easily transition those sale activities to Debtors.

As to the question regarding legal process, I don't recall saying that PPAS was in control of the assets, only that Patriarch continued to manage the assets. We will need some time to track down the information necessary to respond to this question but are willing to do so.

Thank you,

Monica

**Monica K. Loseman**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5784 • Fax +1 303.313.2828
MLoseman@gibsondunn.com • www.gibsondunn.com

---

**From:** Barry, Joseph <jbarry@ycst.com>
**Sent:** Friday, April 23, 2021 1:53 PM
**To:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Cc:** Pernick, Norman <NPernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>
**Subject:** RE: Zohar - ██████████

[External Email]
Monica – As I noted in Monday's email, this is a priority for the Debtors.

Joe



**Joseph Barry**, Co-Chair, Bankruptcy & Corporate Restructuring Group
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.6705 | M: 302.584.7021
jbarry@ycst.com | www.youngconaway.com | vCard

---

**From:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Sent:** Wednesday, April 21, 2021 11:23 AM
**To:** Barry, Joseph <jbarry@ycst.com>
**Cc:** Pernick, Norman <NPernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>
**Subject:** RE: Zohar - ██████████

Thanks, Joe, and understood. We should be able to respond later today or tomorrow morning. I agree that cooperation is in everyone's best interests here, and I am hopeful we can find a path forward without resorting to any motion practice.

**Monica K. Loseman**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5784 • Fax +1 303.313.2828
MLoseman@gibsondunn.com • www.gibsondunn.com

---

**From:** Barry, Joseph <jbarry@ycst.com>
**Sent:** Wednesday, April 21, 2021 5:37 AM
**To:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Cc:** Pernick, Norman <NPernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan

<RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>
**Subject:** RE: Zohar - ██████████

[External Email]
Monica – I wanted to follow up on when we will hear back here. We just don't want this to be a prolonged back and forth with calls scheduled a week or more out only to be told we're not going to get any cooperation here. I don't mean that pejoratively, but we were told in October 2018 we were not entitled to any information around Galey & Lord and if that's still your client's position, we would like to get the 2004 motion on file and work on getting a manager appointed. I think it's in everyone's best interest to cooperate here.

Thanks.

Joe



**Joseph Barry**, Co-Chair, Bankruptcy & Corporate Restructuring Group
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.6705 | M: 302.584.7021
jbarry@ycst.com | www.youngconaway.com | vCard

---

**From:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Sent:** Monday, April 19, 2021 5:29 PM
**To:** Barry, Joseph <jbarry@ycst.com>
**Cc:** Pernick, Norman <NPernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>
**Subject:** RE: Zohar - ██████████

Thank you, Joe. Will confer with our client and get back to you.

**Monica K. Loseman**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5784 • Fax +1 303.313.2828
MLoseman@gibsondunn.com • www.gibsondunn.com

---

**From:** Barry, Joseph <jbarry@ycst.com>
**Sent:** Monday, April 19, 2021 3:12 PM
**To:** Loseman, Monica K. <MLoseman@gibsondunn.com>
**Cc:** Pernick, Norman <NPernick@coleschotz.com>; Nestor, Michael <mnestor@ycst.com>; Bartley, Ryan <RBartley@ycst.com>; Kephart, Allurie R. <AKephart@ycst.com>
**Subject:** Zohar - ██████████

[External Email]
Monica – I hope you had a nice weekend. We have a few issues we need to address on ██████████

First, we would like Ark, Ark II and AIP to consent the appointment of Zohar II Corp. as the manager for this entity. The original LLC agreement contemplated that a supermajority of the class A membership interests could appoint the

manager, but as you probably know, the 2nd amendment imposed a unanimous consent requirement. As judge Owens ruled last year, Lynn's March 2020 resignation resulted in a vacancy at, among others, ████████ and we have not consented to a new manager being appointed. Please let us know if Ark, Ark II and AIP will provide the consent we're asking for and we'll send over a form of written consent ASAP.

Second, Carlos mentioned that PPAS was actively seeking out a broker to market and sell the ████████ property. As I said on the call, the Zohars should play a role in any decisions made on that and, as you know, the amended milestone order vests in the Zohars the right to set milestones for any Portfolio Company B monetization event.

Third, we would like to understand exactly what legal process was used and obtain supporting documentation relating to PPAS's current control and apparent oversight of ████████ We were told in October of 2018 that ████████ was foreclosed upon. When I asked about that on the call with Carlos, the follow up answers suggested otherwise. I believe your comment was to the effect that PPAS is "in control of the assets" or words to that effect. Can you please provide us with either the documentation relating to what legal process was undertaken with respect to ████████ or, if no such process was undertaken, what was done and how/why is PPAS controlling that process?

Finally, below please find a follow up diligence list of items we would like to receive this week to avoid proceeding with motion practice (specifically, a 2004 exam). The last time it took us weeks to get a call on the calendar and there was substantial questions unanswered or left open after the call. We would like this to be a priority.

1. Provide ████████ capital structure (debt + equity) at (i) time of liquidation and (ii) to date
2. Provide loan documentation and interest rates on all existing and prior loans (including Patriarch loans that were paid down in connection with the ████████ Transactions)
3. Provide legal documentation in connection with alleged ████ foreclosure in Fall 2016
4. Provide accounting of all Patriarch fees (PPMG, PPAS, Ark Angels, etc.) that are (i) outstanding / accrued to date and (ii) paid from 2016 onwards
   a. Include full accounting of amounts that were paid on to Patriarch on behalf of other expenditures (i.e., Legal, Insurance, Contractors, Other)
5. Provide sources and uses of funds (including gross amounts) in relation to ████ Property Sale
   a. Note that net amounts are listed in the liquidation summary Zohars previously received
6. Please confirm if there was a mortgage on the ████ property at time of sale
7. Provide the following information in connection with the potential ████ Property Sale:
   a. Details, status, and names of the two brokers currently being interviewed
   b. Proposals currently received from brokers
   c. All marketing materials received to date from brokers
   d. Preliminary estimate of proceeds from the property sale
   e. More detailed build up and/or estimate of the $15M of property taxes and ████ liability
   f. Broker Opinion of Value
   g. Any and all appraisals available on the property
   h. Any environmental analysis performed on the property
   i. Why shouldn't property be abandoned if tax and ████ liabilities would be greater than potential proceeds?
8. Provide estimate of state and property taxes listed as "To be Provided" in liquidation summary
9. Provide amounts related to all non-Patriarch expenses currently accrued at ████ (i.e., fees accrued for the 3 contractors employed by ████ that were referenced on the call)
10. Provide invoices and/or support documentation on all legal expenditures listed in the liquidation summary paid in connection with the ████ Transactions
11. Confirm no additional proceeds to be received in connection with the ████ ████. Based on our understanding of the documents, additional payments will be made.

We look forward to hearing back and if a call would be helpful, please let us know.

Joe

10



**Barry, Co-Chair, Bankruptcy & Corporate Restructuring Group**
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.6705 | M: 302.584.7021
jbarry@ycst.com | www.youngconaway.com | vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---