# **EXHIBIT A**

**Proposed Redacted Document**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| Zohar III, Corp., *et al.*,[1] | ) ) | Case No. 18-10512 (KBO) |
| Debtors. | ) ) ) | Jointly Administered |
|  | ) ) ) | Hearing Date: August 25, 2021 at 10:00 a.m. (ET) Objection Deadline: August 10, 2021 at 4:00 p.m. (ET) |

## NOTICE OF MOTION

TO:  (I) THE U.S. TRUSTEE; (II) COUNSEL TO BUYER; (III) COUNSEL TO U.S. BANK, AS INDENTURE TRUSTEE; (IV) COUNSEL TO MBIA; (V) COUNSEL TO THE ZOHAR III CONTROLLING CLASS; AND (VI) ALL PARTIES THAT, AS OF THE FILING OF THIS MOTION, HAVE REQUESTED NOTICE IN THESE CHAPTER 11 CASES PURSUANT TO BANKRUPTCY RULE 2002

**PLEASE TAKE NOTICE** that the debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "Debtors") have filed the *Motion of Debtor Zohar II 2005-1, Corp. for an Order Enforcing the Court's October 22, 2020 Order Approving Consummation of Portfolio Company Transaction (DKT No. 2050)* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that any objections to the Motion are due by **August 10, 2021 at 4:00 p.m. (ET)** (the "Objection Deadline") with the United States Bankruptcy Court for the District of Delaware, 3rd Floor, 824 Market Street, Wilmington, Delaware 19801. At the same time, you must serve a copy of any objection upon the undersigned counsel to the Debtors so as to be received on or before the Objection Deadline.

**PLEASE TAKE FURTHER NOTICE** THAT A HEARING ON THE MOTION WILL BE HELD ON **AUGUST 25, 2021 AT 10:00 A.M. (ET)** BEFORE THE HONORABLE KAREN B. OWENS, IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 NORTH MARKET STREET, 6TH FLOOR, COURTROOM NO. 3, WILMINGTON, DELAWARE 19801.

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

28407853.1

Docket No. 2708
7/27/21

**PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR A HEARING.**

| | |
|---|---|
| Dated: July 27, 2021<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Ryan M. Bartley*<br>James L. Patton, Jr. (No. 2202)<br>Robert S. Brady (No. 2847)<br>Michael R. Nestor (No. 3526)<br>Joseph M. Barry (No. 4221)<br>Ryan M. Bartley (No. 4985)<br>Michael S. Neiburg (No. 5275)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: jpatton@ycst.com<br>   rbrady@ycst.com<br>   mnestor@ycst.com<br>   jbarry@ycst.com<br>   rbartley@ycst.com<br>   mneiburg@ycst.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*,[1]<br><br>　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 18-10512 (KBO)<br><br>Jointly Administered<br><br>**Hearing Date: August 25, 2021 at 10:00 a.m. (ET)**<br>**Objection Deadline: August 10, 2021 at 4:00 p.m. (ET)** |

**MOTION OF DEBTOR ZOHAR II 2005-1, CORP. FOR AN ORDER ENFORCING THE COURT'S OCTOBER 22, 2020 *ORDER APPROVING CONSUMMATION OF PORTFOLIO COMPANY TRANSACTION* (DKT. NO. 2050)**

　　　　Debtor Zohar II 2005-1, Corp. (the "Seller Representative") moves for entry of an order (the "Proposed Order"), substantially in the form attached hereto as Exhibit D, pursuant to Section 105 of Title 11 of the United States Code (the "Bankruptcy Code"), enforcing the Court's October 22, 2020 *Order Approving Consummation of Portfolio Company Transaction* (Dkt. No. 2050) against RM Technologies, Inc. ("Buyer"), and in support thereof states as follows:

## PRELIMINARY STATEMENT

　　　　1.　　　The Seller Representative has been forced to file this motion because Buyer refuses to honor a deal it made and the Court approved.

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119) (collectively, the "Zohar Funds"). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

28407455.1

2. When Buyer agreed to purchase RM Acquisition, LLC (the "Company"), Buyer agreed with the Seller Representative that its sole recourse if representations and warranties made in the purchase agreement turned out to be inaccurate would be an insurance policy it agreed to purchase. With respect to two specified patent disputes the Company disclosed, the parties further agreed to set up an indemnity escrow account. The purpose of the escrow fund was to pay for any amounts owed related to the two specified patent disputes – and only those two disputes – with the remainder to be distributed to the Seller Representative upon resolution of both claims.

3. Yet now Buyer seeks to back out of this Court-approved deal. With one of the patent disputes dismissed and the other on the verge of settlement, Buyer has proclaimed, without any basis in the parties' agreements, that it will not release the remainder of the escrow funds to the Seller Representative upon settlement of the disputes. Buyer claims, contrary to the plain terms of the parties' contracts, that the escrow funds should also be used to settle a third patent dispute, and Buyer is holding the funds hostage unless it gets its way. In reality, the escrow mechanism does not apply to this third patent claim, and Buyer's agreed-upon recourse is to draw on the insurance policy to deal with that claim.

4. The Court should not countenance Buyer's tactics. To that end, the Seller Representative respectfully requests that the Court enforce the terms of the Sale Order and EPA and order that the escrow funds remaining after the two specified patent disputes are settled must be disbursed to the Seller Representative – just as the parties agreed.

## JURISDICTION AND VENUE

5. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012, and the *Order Approving Consummation of Portfolio Company Transaction* dated October 22, 2020 (Dkt. No. 2050) (the "Sale Order"), which

28407455.1

provides that "[t]his Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order."

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Delaware, the Seller Representative consents to entry of a final order by the Court in connection with the Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicate for the relief requested herein is 11 U.S.C. § 105(a).

## RELEVANT FACTS

### A. The Parties Consummate the Purchase Agreement for the Company

9. On September 21, 2020, Buyer reached a deal to purchase the Company from the Debtors pursuant to an Equity Purchase Agreement. The Court approved the transaction and the Equity Purchase Agreement on October 22, 2020. *See* Dkt. No. 2050. Also on October 22, 2020, following the Court's approval of the transaction, the parties entered into an Amended and Restated Equity Purchase Agreement by and among Buyer, Optimus Midco LLC ("Parent"), the Company, the parties listed on Schedule I thereto (the "Sellers"), RM Holding, LLC ("Holdco"), and the Seller Representative (the "EPA"). A true and correct copy of an excerpt of the EPA is attached as Exhibit A.

10. The Company made certain representations and warranties in Article 4 of the EPA and disclosed certain matters, including two specified intellectual property disputes known as the "FCS Claim" and the "Encoditech Claim" (together, the "IP Claims"), in the disclosure schedules accompanying the EPA.

28407455.1

11. The parties agreed that the Sellers would not indemnify Buyer or Parent in the event a representation, warranty, or disclosure turned out to be inaccurate or incomplete. Rather, to allocate that general risk, the parties agreed that Parent would purchase a Representations and Warranties Insurance Policy (the "Policy") that would be Parent's and Buyer's sole recourse in the event of an inaccurate or incomplete disclosure. Specifically, in Section 7.05 of the EPA, Buyer agreed that the Policy "has been bound" and would "expressly provide that the insurer thereunder shall not have the right to, and will not, pursue any subrogation rights or contribution rights (in each case, other than in the case of Fraud) or any other claims against the Company (prior to the Closing), the Seller Representative, Holdco, any Seller or any of the respective Affiliates of the foregoing in connection with any claim made thereunder."

12. To allocate the specific risk with respect to the IP Claims, the parties agreed to an indemnification and escrow mechanism for the benefit of the Buyer Indemnitees.[2] Pursuant to Section 10.02(a)(i) of the EPA, the Sellers agreed to "hold harmless and indemnify each of the Buyer Indemnitees from and against, and shall compensate and reimburse each of the Buyer Indemnitees for, any Losses which are suffered or incurred by any of the Buyer Indemnitees or to which any of the Buyer Indemnitees may otherwise become subject and which arise from or as a result of, or are related to the allegations set forth in [the IP Claims]."

13. To further govern the escrow mechanism, the parties entered into an Escrow Agreement on October 23, 2020 by and among the Seller Representative, Buyer, and Citibank, N.A., as escrow agent (the "Escrow Agent," and such agreement, the "Escrow Agreement"). A

---

[2] The "Buyer Indemnitees" are defined as "Buyer, its Affiliates (including the Company) and each of their respective members, partners, shareholders, equity holders, managers, officers, directors, and employees and any of the respective successors, assigns and estates of any of the foregoing."

28407455.1

true and correct copy of the Escrow Agreement is attached as <u>Exhibit B</u>.  In Section 2(a)(ii) of the Escrow Agreement, Buyer agreed to deposit a certain amount (the "IP Indemnification Escrow Funds") into a segregated account maintained by the Escrow Agent.

14. Section 10.02(c)(ii) of the EPA states that, "[w]ith respect to the IP Claims," the Seller Representative is entitled for one year following the closing date to "assume and conduct and control the defense of and to settle or compromise such IP Claims."  It further provides that "each [Buyer Indemnitee] *shall* cooperate in all respects with . . . the settlement or compromise of such IP Claim by the Seller Representative" (emphasis added).

15. Thus, if the IP Claims are settled before October 22, 2021, the IP Indemnification Escrow Funds are to be used to make any payments required under the settlements.

16. The remainder of the IP Indemnification Escrow Funds are to be returned to the Seller Representative promptly following settlement of the IP Claims.  Section 10.02(g) of the EPA provides that "[w]ithin five (5) Business Days following the date on which all claims set forth in the FCS Letter and Encoditech Claim are settled, compromised or dismissed . . . the Buyer and the Seller Representative *shall* deliver joint written instructions to the Escrow Agent instructing the Escrow Agent to promptly release any remaining portion of the IP Indemnification Escrow Funds to the Sellers in accordance with each such Seller's respective Indebtedness Percentages, in cash by wire transfer of immediately available funds in the proportions and to accounts specified in writing by the Seller Representative (on behalf of the Sellers)" (emphasis added).

17. By the terms of the EPA and Escrow Agreement, this indemnification and escrow mechanism only applies to the two specified IP Claims, and Buyer must look to the Policy in order to address any other undisclosed claims.

**B.    Buyer Refuses to Release the Escrowed Funds, Necessitating Court Intervention**

18.    It is less than one year since the closing date of the transaction, and the Encoditech Claim has been dismissed, while the FCS Claim is on the verge of settlement, with the parties ready to execute the settlement documents.  Once the FCS Claim is settled using the IP Indemnification Escrow Funds, Section 10.02(g) of the EPA provides that Buyer and the Seller Representative "shall" issue joint instructions to release the remainder of the escrow funds to the Seller Representative "[w]ithin five (5) Business Days."  But in a July 16, 2021 email, a true and correct copy of which is attached as Exhibit C, Buyer stated that it would solely agree to release IP Indemnification Escrow Funds to resolve the FCS Claim.  So while Buyer has agreed to release enough of the IP Indemnification Escrow Funds to pay for the settlement, it has refused to issue instructions to release the remainder of the funds to the Seller Representative with five Business Days of the settlement of the IP Claims, as required by the EPA.

19.    Buyer claims that another intellectual property matter (the "PerDiem Claim"), which was disclosed to Buyer after the consummation of the EPA, should be settled with the IP Indemnification Escrow Funds rather than via the Policy.

20.    The plain terms of the EPA show that the opposite is true.  The IP Indemnification Escrow Funds are only for the two specified IP Claims, and any undisclosed claims are to be handled via the Policy.  That was deal the parties agreed to and the Court approved, which Buyer is now trying to back out of.

21.    If Buyer refuses to issue the joint written instructions to the Escrow Agent pursuant to Section 10.02(g) of the EPA, Section 5(c) of the Escrow Agreement provides that the IP Indemnification Escrow Funds may be released pursuant to a "Court Order," defined as "a final

order or judgment of a court of competent jurisdiction,"[3] which the Escrow Agent "shall act on . . . without further question."

## RELIEF REQUESTED

22. Because Buyer has stated it will not comply with its obligation to release the entirety of the IP Indemnification Escrow Funds upon settlement of the FCS Claim, the Seller Representative is left with no choice but to seek a Court Order ordering, in accordance with the EPA and Escrow Agreement, that the Escrow Agent must disburse all remaining IP Indemnification Escrow Funds upon settlement of the FCS Claim, with the Policy being Buyer's sole recourse on the PerDiem Claim.

## ARGUMENT

23. Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code," and that "[n]o provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules . . . ." 11 U.S.C. § 105(a). Although "there are some significant limits to a bankruptcy court's ability to use section 105(a) of the Code . . . [it] plainly may be used 'to enforce and implement' earlier orders." *In re River Ctr. Holdings, LLC*, 394 B.R. 704, 711 (Bankr. S.D.N.Y. 2008); *see also In re Ames Dep't Stores, Inc.*, 317 B.R. 260, 273-74 (Bankr. S.D.N.Y. 2004).

24. This Court has previously held that it has authority to consider and approve a motion to enforce payment obligations to a debtor arising under a court-approved agreement. *See In re WorldCorp, Inc.*, 252 B.R. 890, 892 (Bankr. D. Del. 2000) (granting motion to compel tax

---

[3] The definition does not require that the Court Order be non-appealable.

28407455.1

7

sharing payment to Debtor under Court-approved settlement); *see also In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*, 471 B.R. 331, 337 (Bankr. S.D.N.Y. 2012) (granting motion to enforce sale order against lien holder and directing lien holder to release lien and cease asserting claims against sold assets). Here, the Sale Order approved the EPA and related Transaction Agreements and authorized the Debtors to enter into the EPA and consummate the transactions thereunder, *see* Sale Order ¶¶ 3 and 4, and also provided for the Court to "retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order." *See id.* ¶ 22. Accordingly, the Court can enter the Proposed Order to implement the terms of the EPA consistent with the parties' agreement.

25. The EPA obligates Buyer to sign joint written instructions to the Escrow Agent to release the remainder of the IP Indemnification Escrow Funds after such funds have been used to settle the IP Claims, which Buyer refuses to do.

26. Accordingly, with the settlement of the FCS Claim agreed to and execution of a settlement agreement imminent, a real controversy exists among the parties with respect to the release of the IP Indemnification Escrow Funds.

27. The Escrow Agreement obligates the Escrow Agent to release the remainder of the IP Indemnification Escrow Funds after such funds have been used to settle the IP Claims, if presented with a Court Order directing such release.

28. The Seller Representative therefore seeks an order directing that the Escrow Agent must release the remainder of the IP Indemnification Escrow Funds after such funds have been used to settle the FCS Claim, and finding that the Buyer has no recourse to the IP Indemnification Escrow Funds for the PerDiem Claim.

## NOTICE

29. The Seller Representative will provide notice of this Motion to: (i) the U.S. Trustee; (ii) counsel to Buyer; (iii) counsel to U.S. Bank, as indenture trustee; (iv) counsel to MBIA; (v) counsel to the Zohar III Controlling Class; and (vi) all parties that, as of the filing of this Motion, have requested notice in these Chapter 11 cases pursuant to Bankruptcy Rule 2002.

## CONCLUSION

30. The Seller Representative respectfully requests that the Court enforce the Sale Order by ordering that the Escrow Agent must release the remainder of the IP Indemnification Escrow Funds after such funds have been used to settle the FCS Claim, and finding that the Buyer has no recourse to the IP Indemnification Escrow Funds for the PerDiem Claim.

Dated: July 27, 2021
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ryan M. Bartley*
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4221)
Ryan M. Bartley (No. 4985)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: jpatton@ycst.com
      rbrady@ycst.com
      mnestor@ycst.com
      jbarry@ycst.com
      rbartley@ycst.com
      mneiburg@ycst.com

*Counsel to the Debtors and Debtors in Possession*

28407455.1

**Exhibits A - C**

# REDACTED

**Exhibit D**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Zohar III, Corp., *et al.*,[1] | Case No. 18-10512 (KBO) |
| Debtors. | Jointly Administered |

### ORDER ENFORCING THE COURT'S OCTOBER 22, 2020 *ORDER APPROVING CONSUMMATION OF PORTFOLIO COMPANY TRANSACTION* (DKT. NO. 2050)

Upon consideration of the *Motion for an Order Enforcing the Court's October 22, 2020 Order Approving Consummation of Portfolio Company Transaction (Dkt. No. 2050)* (the "Motion") of Debtor Zohar II 2005-1, Corp.;[2] and the Court having jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012, and the *Order Approving Consummation of Portfolio Company Transaction* dated October 22, 2020 (Dkt. No. 2050); and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119) (collectively, the "Zohar Funds"). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] Capitalized terms not otherwise defined herein shall have the meanings attributed to them in the Motion.

28407458.1

need be provided; and this Court having determined that the relief sought in the Motion is in the bests interests of the Debtors' estates, their creditors, and other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED**:

1. The Motion is GRANTED as set forth herein.

2. The Escrow Agent shall release the remainder of the IP Indemnification Escrow Funds after payment of the amounts needed to satisfy the settlement amount for the FCS Claim, and the Buyer has no recourse to the IP Indemnification Escrow Funds for the PerDiem Claim.

3. This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.