**EXHIBIT A**

**Proposed Redacted Document**

**REDACTED**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ZOHAR III, CORP., *et al.*,[1] | Case No. 18-10512 (KBO) |
| Debtors. | Jointly Administered |
| | Hearing Date: October 19, 2021 at 10:00 a.m. (ET)<br>Objection Deadline: October 12, 2021 at 4:00 p.m. (ET) |

### NOTICE OF MOTION

TO:   (I) THE U.S. TRUSTEE; (II) COUNSEL TO PATRIARCH STAKEHOLDERS; (III) COUNSEL TO U.S. BANK, AS INDENTURE TRUSTEE; (IV) COUNSEL TO MBIA; (V) COUNSEL TO THE ZOHAR III CONTROLLING CLASS; (VI) COUNSEL TO COMPANY G; AND (VII) ALL PARTIES THAT, AS OF THE FILING OF THIS MOTION, HAVE REQUESTED NOTICE IN THESE CHAPTER 11 CASES PURSUANT TO BANKRUPTCY RULE 2002

**PLEASE TAKE NOTICE** that the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") have filed the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Enter Into One or More Potential Transactions Relating to Company G and (II) Granting Related Relief* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that any objections to the Motion must be filed on or before **October 12, 2021 at 4:00 p.m. (ET)** (the "Objection Deadline") with the United States Bankruptcy Court for the District of Delaware, 3rd Floor, 824 Market Street, Wilmington, Delaware 19801.  At the same time, you must serve a copy of any objection upon the undersigned counsel to the Debtors so as to be received on or before the Objection Deadline.

**PLEASE TAKE FURTHER NOTICE** THAT A HEARING ON THE MOTION WILL BE HELD ON **OCTOBER 19, 2021 AT 10:00 A.M. (ET)** BEFORE THE HONORABLE KAREN B. OWENS, UNITED STATES BANKRUPTCY JUDGE FOR THE DISTRICT OF DELAWARE.

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

28655223.1

Docket No. 2833
10/5/21

**PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR A HEARING.**


Dated: October 5, 2021       YOUNG CONAWAY STARGATT & TAYLOR, LLP
Wilmington, Delaware

*/s/ Joseph M. Barry*
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4221)
Ryan M. Bartley (No. 4985)
Shane M. Reil (No. 6195)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: jpatton@ycst.com
        rbrady@ycst.com
        mnestor@ycst.com
        jbarry@ycst.com
        rbartley@ycst.com
        sreil@ycst.com

*Counsel to the Debtors and Debtors in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ZOHAR III, CORP., *et al.*,[1] | Case No. 18-10512 (KBO) |
| Debtors. | Jointly Administered |
| | **Hearing Date: October 19, 2021 at 10:00 a.m. (ET)** |
| | **Objection Deadline: October 12, 2021 at 4:00 p.m. (ET)** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO ONE OR MORE POTENTIAL TRANSACTIONS RELATING TO COMPANY G AND (II) GRANTING RELATED RELIEF

Zohar III, Corp. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this motion (this "Motion"), pursuant to (a) sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), (b) the Court's *Order Approving and Authorizing the Settlement Agreement By and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class* [Docket No. 266] (the "Settlement Order"), and (c) the Settlement Agreement[2] (as defined in the Settlement Order) [Docket No. 266, Exh. 1], for entry of an order (the "Proposed Order"), substantially in the form attached hereto as Exhibit A, (i) authorizing the Debtors to enter into one or more potential transactions with respect to the Company G Secured Loans (defined below), in the sole discretion of the Independent Director and

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

the CRO, without need for further order or approval in these chapter 11 cases (provided that consummation of any sale transaction shall be subject to the order required by the Monetization Procedures Order (defined below) or another subsequent order of this Court), and (ii) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**[3]

1.     Over the past few years, the Debtors, in collaboration with Lynn Tilton, have worked to monetize various Portfolio Companies in which the Debtors hold secured debt and/or equity or membership interests (the "Monetization Process") as contemplated by the Settlement Agreement.  Pursuant to this Motion, the Debtors seek relief to facilitate the Monetization Process and maximize the value of their estates as it pertains to Company G, an entity in which certain Debtors hold ████████████████████.

2.     The Debtors understand that Company G very recently commenced an out-of-court sale process under the oversight of its independent director.  The Debtors—in collaboration with their controlling secured creditors, including MBIA, Bardin Hill, and other Zohar III senior secured creditors, and Company G—have been discussing the Debtors' possible participation in Company G's sale process. ██████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████

3.     ███████████████████████████████

██████████████████████████████████

---

[3] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to them below.



4.      Should the Debtors determine, in their business judgment, that it is in their estates' best interests to transact the Company G Secured Loan Claims in Company G's sale process, the Debtors will need Court approval to do so.  Further, given the Debtors' status as debtors in possession in these chapter 11 proceedings, Company G and its advisors may also require evidence that this Court has authorized the Debtors' participation as a binding bidder in Company G's sale process.  Accordingly, the Debtors seek authority from this Court to enter into one or more transactions in respect of the Company G Secured Loan Claims, in the Independent Director's and the CRO's sole discretion, provided that consummation of such a transaction shall be subject to the noticing, hearing, and order requirements set forth in the Monetization Procedures Order (or another subsequent order of the Court).  The requested relief will best position the Debtors to potentially participate in Company G's sale process as needed and facilitate a value-maximizing transaction that will enhance recoveries for the Debtors' estates.

5.      Finally, as discussed more fully below, the relief requested herein is modeled after the same relief requested of and granted by this Court in connection with the Monetization Process

---

4

for Dura Automotive, one of the Debtors' other Portfolio Companies. ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

## JURISDICTION AND VENUE

6.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

1334, and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28

U.S.C. § 157(b)(2), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent

to entry of a final order by the Court in connection with this Motion to the extent that it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory and legal predicates for the relief requested herein are sections 105(a)

and 363 of the Bankruptcy Code, the Settlement Order, the Settlement Agreement, and the

Monetization Procedures Order.

## BACKGROUND

**A.      General Background**

9.      On March 11, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in possession of their

properties and the operation of their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.    General information about the Debtors and the events leading up to the Petition Date can be found in the *Declaration of Marc S. Kirschner in Support of Chapter 11 Petitions* [Docket No. 6] and the *Declaration of Lynn Tilton in Support of Chapter 11 Petitions* [Docket No. 5] (the "Tilton Declaration"), each filed on March 12, 2018.

**B.    The Monetization Process**

11.    On May 21, 2018, the Court entered the Settlement Order approving the Settlement Agreement.   The Settlement Agreement requires the Debtors' Independent Director/CRO, on behalf of the Debtors, and Ms. Tilton, on behalf of the Group A Portfolio Companies, to conduct the Monetization Process to sell or refinance portfolio companies (the "Portfolio Companies") in which the Debtors hold secured debt and/or equity or membership interests.   Specifically, paragraph 10 of the Settlement Agreement provides:

> With full and joint authority, Independent Director/CRO, with full authority on behalf of the Debtors, and Tilton, with full authority on behalf of the Group A Portfolio Companies, will conduct a process to monetize the Group A Portfolio Companies and the Group B Portfolio Companies.  It is acknowledged that the CRO will act in the best interests of the Zohar Funds, and Tilton in the best interests of the Group A Portfolio Companies.  Tilton and the CRO shall jointly select bankers and other professionals, prioritize sales, oversee the bid process and select transactions to complete.  Tilton shall work with the CRO, who shall jointly with Tilton choose bankers to be retained for Group A Portfolio Company sales.  Each shall have full and complete information regarding the Monetization Process and sources and uses of funds in any transaction consummated as part of the Monetization Process.  Tilton and the CRO shall use good faith, commercially-reasonable efforts to coordinate prospective meetings with bankers and buyers.

12.    Paragraph 12 of the Settlement Agreement further provides that "[Ms.] Tilton and the CRO shall work jointly as outlined herein to monetize the Group A Portfolio Companies until

such time as the [*sic*] (i) the parties each agree in writing to terminate this settlement agreement, such agreement to be granted or withheld in their sole respective discretion or (ii) the Full Payment Date." Company G is one of the Group A Portfolio Companies.   As the Court is aware, in March of 2020, Lynn Tilton resigned her positions at all of the Portfolio Companies—including Company G—and pursuant to a shareholder vote, a sole independent director was appointed at Company G. Pursuant to paragraph 8 of the Court's *Amended Order Establishing Certain Guidelines and Milestones in Furtherance of the Monetization Process for the Group A and Group B Portfolio Companies* [Docket No. 1751], Company G's independent director "shall be responsible for conducting the sale process on behalf of the Portfolio Company."

13.     Also on May 21, 2018, the Court entered an order, consistent with the Settlement Order, appointing Joseph J. Farnan, Jr. as the Debtors' Independent Director.  *See* Docket No. 267. And, in accordance with the Settlement Agreement, Mr. Michael Katzenstein was appointed as the Debtors' Chief Restructuring Officer.  *See* Docket No. 297.

14.     On October 23, 2018, the Debtors filed the *Motion of the Debtors for an Order in Aid of Implementation of the Global Settlement Agreement Approved in These Cases Establishing Certain Procedures for the Independent Directors' Approval of Monetization Transactions and Related Relief* [Docket No. 481] (the "Monetization Procedures Motion").

15.     On November 9, 2018, the Court entered an order [Docket No. 545] (the "Monetization Procedures Order") approving the Monetization Procedures Motion, providing that:

> Joseph J. Farnan, Jr., as Independent Director, has been fully charged with governance of the Debtors . . . to authorize, approve and seek to consummate each Portfolio Company Transaction, including, but not limited to (i) authorizing the Debtors to vote or consent to any vote, as applicable, any and all Zohar Interests in favor of a Portfolio Company Transaction, (ii) ***exercising any rights with respect to the Zohar Interests to implement or consummate a Binding Portfolio Company Transaction***, and (iii) authorizing and

approving the Debtors' release of any of the Debtors' liens, claims or encumbrances in connection with a Portfolio Company Transaction.[5]

## C.    Company G's Business

16.



17.



---

[5] Monetization Procedures Order at ¶ 2 (emphasis added).

**D.      Company G's Credit Facilities**

18.      On ████████, Debtors Zohar I, Zohar II, and Zohar III (collectively, the "Zohar Lenders") entered into that certain Credit Agreement (as amended, the "Credit Agreement"), among (i) Company G, as the borrower, (ii) ███████████████████    ██████ ████████████,[10] (iii) the Zohar Lenders, Ark Investment Partners II, L.P. ("AIP"), Ark II CLO 2001-1, Ltd. ("Ark II" and together with AIP, the "Patriarch Lenders" and, together with AIP and the Zohar Lenders, the "Lenders"), as lenders, and (iv) Patriarch Partners Agency Services, LLC ("PPAS"), as the initial administrative agent.

19.      On March 19, 2019, the Court entered the *Order (I) Authorizing the Appointment of Ankura Trust Company, LLC as New Agent Under the Court-Approved Settlement Agreement By and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class and (II) Granting Related Relief* [Docket No. 709] (the "Co-Agency Order") and thereby appointed Ankura Trust Company, LLC ("Ankura") as the sole administrative agent for the Zohar Lenders as to their debt holdings under the Credit Agreement but retained PPAS as the sole administrative agent for the Patriarch Lenders as to their debt holdings under the Credit Agreement.

20.      The Credit Agreement provides for ██████████████████████ ████████████████ (collectively, the "Company G Secured Loans" and the related claims, the "Company G Secured Loan Claims").  As of December 31, 2020, there was not less than ████ ████ outstanding under the Company G Secured Loans, including not less than ██████████

---

[10] ████████████████████████████████████████████

owed to the Zohar Lenders and not less than ███████████ owed to the Patriarch Lenders.[11]  The
Company G Secured Loans all matured in ██████████ and are in default.

21.    The Company G Secured Loans are secured by liens granted by Company G, as
grantor, to PPAS, as initial agent on behalf of the Lenders, pursuant to a Security Agreement, dated
████████████ and other ancillary loan documents with respect to the Collateral (as defined in the
Credit Agreement) (collectively, the "Security Documents").  Under the Security Documents,
Company G granted a continuing security interest in and lien on Company G's right, title, and
interest to various forms of collateral, including cash, machinery and equipment, inventory
██████████████ equity interests, accounts, intellectual property, commercial tort claims, books
and records, insurance policies, and all proceeds related to the foregoing to secure the obligations
of Company G to the Lenders under the Credit Agreement.[12]

22.    As the "Required Lenders"[13] under the Credit Agreement, the Zohar Lenders are
entitled to direct the "Agent" to pursue the various remedies set forth in the Credit Agreement and
Security Documents on behalf of all Lenders.  Specifically, the Credit Agreement provides that:

> The Agent shall, at the request of or with the consent of the Required
> Lenders, (i) exercise all rights and remedies provided in the Credit
> Documents, (ii) exercise any right of counterclaim, setoff, banker's
> lien or otherwise which it may have with respect to money or
> property of the Borrower, (iii) bring any lawsuit, action or other
> proceeding permitted by law for the specific performance of, or
> injunction against any violation of, any Credit Document and may
> exercise any power granted under or to recover judgment under any
> Credit Document, (iv) enforce any and all Liens and security

---

[11] ████████████████████████████████████████████████████████████████
████████████████████████████████████████

[12] See Security Agreement, § 1.

[13] "Required Lenders" means the lenders having or holding a loan and representing more than 50% of the
sum of the aggregate loans of all lenders.  See Credit Agreement, § 1.1.  Because the Zohar Lenders hold
approximately ███ of the aggregate loans, they are the "Required Lenders."

interests created pursuant to Credit Documents, and (v) exercise any other right or remedy permitted by applicable Regulations.[14]

23.     Regardless of the remedy selected by the Zohar Lenders, the Credit Agreement provides that the Agent will distribute the realization upon any Collateral to the Lenders on a *pro rata* basis.[15]

## E.     Company G's Sale Process

24.     The Debtors understand that Company G very recently commenced an out-of-court process to sell the stock of Company G or its assets (the "Company G Assets") at the direction of its independent director and with the assistance of its own independently-retained investment banker.  Depending on how the sale process proceeds, the Debtors may determine to participate in the sale process on the basis that a Debtor-sponsored transaction involving the Lenders' secured indebtedness claims against Company G would maximize value for their estates (and in all likelihood would be in Company G's and the Patriarch Stakeholders' best interests).

25.     Through this Motion, the Debtors seek prudential relief to position themselves to act upon their business judgment and transact for the benefit of their estates and stakeholders based upon the process and potential outcomes of Company G's sale process.  This may involve a credit bid for the Company G Assets, a release or compromise of the Zohar Debtors' liens/claims in the Company G Assets to facilitate a transaction, a sale or an assignment of the Company G Secured Loans, consent to Company G's ongoing use of cash and/or the stipulation of lender protections in exchange for some accommodations to Company G under the Company G Secured Loans and/or the exercise of other rights or remedies available to the Debtors under the relevant loan documents.

---

[14] *See* Credit Agreement, § 8.1(c).

[15] *See* Credit Agreement, § 2.14(d).

26.    While no specific transaction has been agreed to or documented, one such contingency transaction under consideration would involve the Debtors, as the Required Lenders under the Credit Agreement, directing the Agent to submit a credit bid of some or all of the Company G Secured Loan Claims, on behalf of the Lenders, in exchange for the Company G Assets.

27.    Such a contingent transaction may involve the formation of a newly formed entity—NewCo—which would be owned by the Zohar Lenders and the Patriarch Lenders proportional to their existing Company G Secured Loan Claims.

28.    While the Debtors are still formulating all potential credit bid proposals, through this Motion, the Debtors are seeking authority to take all steps necessary to transact all or a portion of the Company G Secured Loans and the discretion regarding the form of transaction to enable the Debtors to maximize value for their estates and authority to engage in ancillary transactions in preparation of the implementation of such a bid, including contributions of their debt to newly-formed subsidiary entities. Any final transaction would be subject to the entry of an order

approving the ultimate transaction pursuant to the Monetization Procedures Order. The Debtors submit that this relief is consistent with the authority granted to the Independent Director and the CRO under the Settlement Agreement and the Monetization Procedures Order.

29.      Importantly, relief of this nature was sought and obtained in these cases in connection with the Debtors' extensive negotiations concerning a bid sponsorship utilizing the Debtors' secured indebtedness in the Dura Automotive bankruptcy case. *See* Docket No. 1405.[16]

## RELIEF REQUESTED

30.      By this Motion, the Debtors request entry of the Proposed Order, pursuant to sections 105(a) and 363 of the Bankruptcy Code: (i) authorizing the Debtors to enter into one or more potential transactions with respect to the Company G Secured Loan Claims in connection with Company G's sale process, in the sole discretion of the Independent Director and the CRO, without need for further order or approval in these chapter 11 cases, other than that consummation of the transaction shall be subject to approval under the Monetization Procedures Order or other Court order; and (ii) granting related relief.

## BASIS FOR RELIEF REQUESTED

31.      For the reasons explained below, the Debtors believe that obtaining authority to propose a binding, value-maximizing credit bid transaction or series of transactions relating to Company G, subject to Court approval (under the Monetization Procedures Order or otherwise) to consummate the transaction, is authorized by the Settlement Agreement and the Bankruptcy Code,

---

[16] For the convenience of the Court, copies of the motion filed and order entered in connection with Dura Automotive will be submitted to chambers with the hearing binders for the October 26th hearing on this Motion.

is in the best interests of the Debtors' estates and creditors, and is consistent with the Zohar Lenders' rights under the Credit Agreement.

32.    Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code," and that "[n]o provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules . . . .". 11 U.S.C. § 105(a).  Further, bankruptcy courts retain "jurisdiction to interpret and enforce settlements and the accompanying orders approving settlements."  *See In re Baseline Sports, Inc.,* 393 B.R. 105, 118–19 (Bankr. E.D. Va. 2008); *accord In re Lazy Days' RV Ctr., Inc.*, 724 F.3d 418, 423 (3d Cir. 2013); *In re Patriot Coal Corp.*, 539 B.R. 812, 818–19 (Bankr. E.D. Mo. 2015).  Although "there are some significant limits to a bankruptcy court's ability to use section 105(a) of the Code . . . [it] plainly may be used 'to enforce and implement' earlier orders."  *In re River Ctr. Holdings, LLC*, 394 B.R. 704, 711 (Bankr. S.D.N.Y. 2008); *see also In re Ames Dep't Stores, Inc.*, 317 B.R. 260, 273–74 (Bankr. S.D.N.Y. 2004).

33.    Section 363(b) of the Bankruptcy Code permits a debtor to use, sell, or lease, estate property "other than in the ordinary course of business" after notice and a hearing.  11 U.S.C. § 363(b)(1).  Courts have authorized relief under section 363(b) where a debtor demonstrated a sound business justification for such relief.  *See Comm. of Equity Sec. Holders* v. *Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge

determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.").

34.    Under the Settlement Agreement approved by this Court, the Independent Director and the CRO are charged with acting in the best interests of the Debtors in connection with the monetization of the Company G Assets.  As such, subject to approval by this Court, the Debtors have the authority to transact upon or otherwise utilize the Company G Secured Loan Claims under section 363 of the Bankruptcy Code.  Depending on the outcome of Company G's sale process, the Debtors may determine, in their business judgment, that consummating a value-maximizing transaction related to the Company G Secured Loan Claims is necessary to protect their estates.  If the outcome of Company G's sale process is disappointing, the Debtors must be positioned to become an active bidding participant in Company G's sale process.

35.    The Debtors have not entered into any agreement with respect to a potential transaction for the Company G Assets and have not made a bid for the Company G Assets as of the date hereof but, as noted above, have begun formulating potential forms of transactions under various scenarios.  To propose any such transaction in Company G's Monetization Process, it is crucial that the Debtors have the Court-approved flexibility to propose a binding, value-maximizing credit bid transaction relating to Company G so that they can accomplish the best outcome for their creditors and act with certainty in developing and negotiating such transaction.

36.    The relief requested by this Motion is modeled from the relief the Debtors sought and this Court granted in connection with the Dura Automotive chapter 11 case.  As the Court may recall, after its post-petition launch, the Dura Automotive sale process was highly unsuccessful and Dura Automotive—itself a chapter 11 debtor—and its advisors implored the Debtors to

formulate a credit bid utilizing its secured indebtedness to either acquire Dura Automotive or team

with another party to sponsor a joint bid. █████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████

37.    Finally and for the sake of clarity, should the Debtors propose a transaction with

respect to Company G, such a transaction will still be subject to the notice, hearing, and order

requirements set forth in the Monetization Procedures Order (or other Court-approval).  The relief

requested herein is merely intended to confirm the Debtors' ability to propose a binding transaction

as to Company G so that it is clear to Company G and other parties that the Debtors have the

capacity to propose a binding transaction, subject to further Court approval under the Monetization

Procedures Order's requirements.   While the Independent Director is already authorized to

exercise "any rights with respect to the Zohar Interests to implement or consummate a Binding

Portfolio Company Transaction,"[17] the Debtors filed this Motion out of an abundance of caution

so they can demonstrate to Company G that they can timely perform under any credit bid and

thereby maintain the speed and integrity of Company G's sale process.

38.    The Debtors submit that the relief requested herein is consistent with the Zohar

Lenders' rights under the Credit Agreement and the authority granted to the CRO and the

---

[17] Monetization Procedures Order at ¶ 2.

Independent Director under the Settlement Agreement and the Monetization Procedures Order, is a sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors' estates and stakeholders.  Accordingly, the Debtors respectfully request entry of the Proposed Order granting this Motion.

## **NOTICE**

39.     The Debtors will provide notice of this Motion to: (i) Office of the United States Trustee for the District of Delaware; (ii) counsel to the Patriarch Stakeholders; (iii) counsel to U.S. Bank, as indenture trustee; (iv) counsel to MBIA; (v) counsel to the Zohar III Controlling Class; (vi) counsel to Company G; and (vii) all parties that, as of the filing of this Motion, have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: October 5, 2021
     Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Joseph Barry*
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4221)
Ryan M. Bartley (No. 4985)
Shane M. Reil (No. 6195)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors*

28677732.2

**<u>EXHIBIT A</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ZOHAR III, CORP., *et al.*,[1] | Case No. 18-10512 (KBO) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. ___** |

## ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO ONE OR MORE POTENTIAL TRANSACTIONS RELATING TO COMPANY G AND (II) GRANTING RELATED RELIEF

Upon the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Enter Into One or More Potential Transactions Relating to Company G and (II) Granting Related Relief* (the "Motion");[2] and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

28677732.2

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are hereby authorized, in the Independent Director's and the CRO's sole discretion, to enter into one or more transactions with respect to the Company G Secured Loans in connection with a bid for the Company G Assets without need for further order or approval from this Court, other than consummation of such a transaction shall remain subject to final Court approval (as presently contemplated by the Monetization Procedures Order), and the Debtors, or their designee, shall have express authority to take any and all actions in connection therewith, including engaging in transactions in preparation of their credit bid; *provided*, *however*, that any proceeds, assets, securities, or other property received by the Debtors on account of, or in exchange for the Company G Secured Loans, including in preparation for or in advance of consummation of a credit bid transaction, shall constitute Collateral (as defined in the Indentures) and be subject to the liens, claims, and encumbrances of U.S. Bank National Association, as Trustee under the applicable Zohar indenture, with the same validity, extent, and priority as those being released or terminated thereby, *provided*, *further*, that, other than as required to effectuate a credit bid related to Company G as authorized herein, nothing in this Order grants the Debtors authority to enter into any transaction that incurs additional indebtedness by the Debtors without further order of this Court.  For the avoidance of doubt, the terms of this Order relate solely to Company G and, more specifically, the Debtors' interests in the Company G Secured Loans.

3.      The Agent shall be authorized to take any and all actions in furtherance of the relief granted herein.

4.      All parties' rights are reserved with respect to any equity interests in Company G.

5.      This Order shall have no precedential or other effect under the Settlement Agreement or with respect to the Monetization Process for any Portfolio Company other than Company G.

6.      This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.