## EXHIBIT A

**DIP Amendment**

28923420.4

**ASSIGNMENT, EXTENSION AND AMENDMENT AGREEMENT**

**THIS ASSIGNMENT, EXTENSION AND AMENDMENT AGREEMENT** (the "Agreement") dated December [__], 2021, is entered into by Zohar II 2005-1, Limited ("Zohar II"), Zohar III, Limited (the "Zohar III"), Zohar III, Corp. ("Zohar III Corp.") and Zohar II 2005-1, Corp. ("Zohar II Corp." and together with Zohar II, Zohar III and Zohar III Corp., collectively, the "Debtors"), JMB Capital Partners Lending, LLC (the "Existing DIP Lender"), and the parties identified on the signature page hereto as "New DIP Lenders" (collectively, the "New DIP Lender"). The Debtors, the Existing DIP Lender and the New DIP Lender shall hereinafter be referred to each, as a "Party" and collectively, as the "Parties."  Capitalized terms used but not defined in this Agreement shall have the meaning set forth in the Agreement (as defined below).

WHEREAS, the Debtors and the Existing DIP Lender are parties to that certain Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement, dated as of December 16, 2020, with Zohar III as the borrower, each of Zohar II, Zohar II Corp. and Zohar III Corp as the guarantors, and the Existing DIP Lender, as lender (the "Credit Agreement" and the facility thereunder, the "Zohar III DIP Facility").

WHEREAS, there are currently $12,500,000 of Tranche A Commitments and $1,586,920 of Tranche B Commitments under the DIP Facility.

WHEREAS, the Stated Maturity Date for the Zohar III DIP Facility is currently December 31, 2021.

WHEREAS, the Debtors desire to extend the Stated Maturity Date under the Zohar III DIP Facility.

WHEREAS, the Existing DIP Lender has agreed to assign the Zohar III DIP Facility to the New DIP Lender on the terms set forth herein.

WHEREAS, the New DIP Lender has agreed to take assignment of the Zohar III DIP Facility, as modified herein, and to extend the Stated Maturity Date to June 30, 2021, each subject to the terms set forth herein.

NOW THEREFORE, the parties hereto agree as follows:

1.      **Ratification of outstanding Commitments**:  The Debtors and Existing DIP Lender hereby ratify that that following Commitments remain outstanding:

    a.   $12,500,000 of Tranche A Commitments under the Zohar III DIP Facility and

    b.   $1,586,920 of Tranche B Commitments under the Zohar III DIP Facility.

2.      **Effectiveness**:  This Agreement and the transactions contemplated hereby shall become effective upon the later to occur of (i) the entry of the Approval Order (as hereinafter defined) by the Bankruptcy Court, and (ii) the payment of the Assignment Fee (as hereinafter defined) (such date the "AEA Effective Date").

3.    **Assignment Fee**:  As consideration for the transactions contemplated by this Agreement, the Borrower shall pay the Existing DIP Lender an assignment fee of $250,000 (the "Assignment Fee"). Notwithstanding anything set forth in the Credit Agreement, the Parties agree that, except as otherwise set forth herein, the Assignment Fee shall be the only amount due or owing from the Debtors or the New DIP Lender to the Existing DIP Lender with respect to the transactions set forth in this Agreement, including the assignment of the Zohar III DIP Facility to the New DIP Lender.

4.    **Assignment**:

  a.   On the AEA Effective Date, the Existing DIP Lender hereby contributes, conveys, transfers and assigns to the New DIP Lender, and the New DIP Lender hereby accepts and assumes from the Existing DIP Lender, all of the Existing DIP Lender's right, title, interest and obligations in its capacity as Lender under the Credit Agreement and the other Loan Documents, including all of the outstanding Commitments under the Zohar III DIP Facility (the "Assignment").

  b.   From and after the AEA Effective Date, the New DIP Lender shall be a party to the Credit Agreement and the other Loan Documents and succeed to all of the rights of the Existing DIP Lender (other than Retained Rights (as hereinafter defined)) and be obligated to comply with and perform all of the obligations of the Existing DIP Lender under the Loan Documents (other than in connection with the Retained Rights).

5.    **Survival of Existing DIP Lender Indemnification**.  Notwithstanding anything to the contrary in this Agreement or otherwise, the Existing DIP Lender is not hereby assigning or relinquishing, and shall retain, (i) its right for indemnification under Section 10.3 of the Credit Agreement, and (ii) rights under this Agreement (collectively, the "Retained Rights").

6.    **Continuing Obligations and Covenants**.

  a.   The Debtors hereby ratify and confirm their continuing liability to the Existing DIP Lender for the indefeasible payment and satisfaction in full of the following:

  i.    All obligations of Debtors to the Existing DIP Lender hereunder;

  ii.   Any costs and expenses incurred by the Existing DIP Lender up to and including the AEA Effective Date;

  iii.  Any reasonable attorneys' fees and legal expenses in connection with this Agreement; and

  iv.   All indemnification obligations in favor of the Existing DIP Lender as set forth in Section 10.3 of the Credit Agreement.

  b.   Notwithstanding anything to the contrary set forth herein or in the Credit Agreement, the Debtors hereby covenant and agree that the Debtors shall not request or borrow any Loans between the date hereof and the AEA Effective Date.

7.     **Amendment to the DIP Credit Agreement**.  The following amendments shall be made to the Credit Agreement, immediately following the AEA Effective Date and contemporaneously with the Assignment:

a.  Section 1.1 shall be amended as follows:

    i.  The defined term "Debtor" shall exclude Zohar II and Zohar II Corp.

    ii.  The definition of "Chapter 11 Plan" shall be amended and restated in its entirety as follows:

      "<u>Chapter 11 Plan</u>" means a plan of reorganization of the Borrower under Chapter 11 of the Bankruptcy Code.

    iii.  The definition of "Exit Fee" shall be amended by (a) deleting "2.00%" and replacing it with "4.00%" and (b) adding the following to clause (ii) after the words "Section 2.3(e)":

      "or required pursuant to <u>Section 2.3(f)</u>, in each case,"

    iv.  Clause (h) of the definition of "Lender Expenses" shall be amended and restated in its entirety as follows (additional text is shown as emphasized solely for purposes of this Assignment, Extension and Amendment):

      (h) Lender's out-of-pocket costs and expenses (including reasonable attorneys' fees) incurred in administering (including travel, meals, and lodging), or amending the Loan Documents, ***<u>including, without limitation, monitoring the Debtors' bankruptcy cases</u>***,

    v.  The definition of "Stated Maturity Date" shall be revised by deleting "December 31, 2021" and replacing it with "June 30, 2022."

b.  A new Section 2.3(f) of the Credit Agreement is hereby added as follows:

    (f)     <u>Mandatory Commitment Reductions and Funding of Designated Account upon Dispositions</u>.  Notwithstanding anything to the contrary set forth herein,

      (i) upon the first occurrence of a sale or other disposition of the equity in, all or substantially all of the assets of, or the business currently conducted by UI Acquisition Holding Co. or Intrepid U.S.A., Inc. (each such transaction a "<u>Target Company Disposition</u>"), the total Commitments outstanding shall be permanently reduced and terminated by an amount equal to the greater of (x) $7,043,460.00 and (y) (1) the Net Cash Proceeds of such transaction, *less* (2) any adequate protection payments under Paragraph 27 of the Final DIP Order payable from the proceeds of that Target Company Disposition *pro forma* for the transfers to be made under

Section 2.3(f)(iv).  The reduction and termination of Commitments under this subsection (i) shall first apply to any outstanding Tranche B Commitments.

(ii) Upon the second Target Company Disposition, the remaining Commitments (if any) shall be permanently reduced to $0 and all remaining Commitments shall be terminated.

(iii) Upon the sale or other disposition of the equity in, all or substantially all of the assets of, or the business currently conducted by MD Helicopters, Inc., the total Commitments shall be permanently reduced and terminated in an amount equal to the Net Cash Proceeds received from such transaction.  The reduction and termination of Commitments under this subsection (iii) shall first apply to any outstanding Tranche B Commitments.

(iv) As a condition to the reduction and termination in Commitments provided for under subsections (i) through (iii), but subject to the completion of any mandatory prepayments required under Section 2.3(d), the Borrower shall be authorized (which authorization may be delivered by email) by the Lender and Zohar III Controlling Class (as defined in the Final Order) to transfer from the Proceeds Account, from funds then on deposit or subsequently deposited, to the Designated Account cash equal to the amount of Commitments so terminated that have not been drawn previously.

(v) The Exit Fee payable as a result of the reduction of Commitments under this Section 2.3(f) shall be due and payable on the next business day (unless the Lender shall agree to a different date in which case such Exit Fee shall be deemed an outstanding principal obligation and accrue interest pursuant to Section 2.4).

(vi) Commitments reduced under Section 2.3(e) or Section 2.3(f) cannot be reinstated.

c. A new Section 5.16 of the Credit Agreement is hereby added as follows:

**5.16    Plan**.  On or before January 31, 2022, the Borrower shall file a Chapter 11 Plan, and disclosure statement for such Chapter 11 Plan with the Bankruptcy Court reasonably acceptable to the Lender with respect to the treatment of the Lender, the Obligations and the Loan Documents.

d. Each of Sections 6.14, 8.1(e), and 8.1(m) of the Credit Agreement is hereby deleted in its entirety and replaced with "Reserved."

e.   Section 8.1(o) of the Credit Agreement is hereby amended and replaced in its entirety with the following:

> (o)   An Order is entered (i) terminating the Borrower's right to use cash collateral or (ii) terminating any other affiliated Debtor's right to use cash collateral.

f.   A new Section 8.1(p) of the Credit Agreement is hereby added as follows:

> (p)   The Borrower shall fail to perform, or otherwise breach, Section 5.16.

g.   Section 9.7 of the Credit Agreement is hereby amended by adding the following immediately after "this Agreement":

> or is not otherwise agreed to by the Lenders.

h.   Section 11 of the Credit Agreement is hereby amended by deleting the notice information of the Existing Lender and replacing it with the following notice information for the New DIP Lender:

> If to any Lender:
>
> c/o Bardin Hill Investment Partners, LP
> 477 Madison Avenue, 8th Floor
> New York, NY 10022
> Attn:          John Greene
>                Pratik Desai
> Telephone:     (212) 303-9400
> Email:         JGreene@bardinhill.com
>                PDesai@bardinhill.com
>
> With a copy, which shall not constitute notice, to:
>
> Arnold & Porter Kaye Scholer LLP
> 70 West Madison Street, Suite 4200
> Chicago, IL 60602-4321
> Telephone:     (312) 583-2403
> Email:         brian.lohan@arnoldporter.com

i.   Section 11 of the Credit Agreement is hereby amended by deleting the address for the Debtors and replacing it with the following address:

> c/o FTI Consulting
> 1166 Avenue of the Americas, 15th Floor
> New York, NY 10036
> Attn:          Michael Katzenstein, CRO
> Telephone:     (214) 384-4909

Email:      mike.katzenstein@fticonsulting.com
:

j.   The title for Section 13 of the Credit Agreement shall be amended and restated as follows (additional text is shown as emphasized solely for purposes of this Assignment, Extension and Amendment):

**13.    AMENDMENTS;    *ASSIGNMENTS;*    WAIVERS; SUCCESSORS; INDEMNIFICATION.**

k.   A new Section 13.3 is hereby added as follows (with successive subsection renumbered accordingly):

A Lender may assign to one or more assignees (each, an "Assignee"), all or a portion of its rights and obligations under this Agreement; *provided*, *however*, that, unless an Assignee is a fund managed or advised by Bardin Hill Investment Partners, LP or an existing holder of A-1 Notes issued by the Borrower, such assignment shall require the consent of the Borrower, with such consent not to be unreasonably withheld.  Assignee shall notify Borrower of such assignment and provide Borrower with Notice information (which shall constitute notice information for purposes of Section 11 hereof), as well as updated information for the Loan Account on Schedule A-1 (which shall supersede and replace the then existing Loan Account).  From and after the date on which Assignee notifies Borrower of such assignment, Borrower shall make all payments and provide all notices to the Assignee.

8.    **Termination of Guaranty**.  Immediately following the AEA Effective Date and contemporaneously with the Assignment, Zohar II and Zohar II Corp. shall be released and discharged as Guarantors under the Credit Agreement and shall no longer be considered "Debtors" as such term is defined in the Credit Agreement. In connection with the foregoing, all of the Liens granted pursuant to the Credit Agreement on any collateral of Zohar II and Zohar II Corp. are hereby released.

9.    **Amendments to the Final Order**.  The Final Order shall be amended pursuant to an order of the Bankruptcy Court approving this Agreement and that shall include the following provisions and shall be substantially in the form attached hereto as Exhibit A (such order the "***Approval Order***"):

a.   For Zohar III, the "DIP Lender" shall mean the Existing DIP Lender through and including the AEA Effective Date and the New DIP Lender from and after the AEA Effective Date.

b.   This Agreement shall be authorized and approved by the Court.

c.   The Borrower shall be authorized to pay the fee provided for in Section 3 hereof.

d.  Paragraph 3 in the Final Order shall be deleted and replaced with the following:

> 3.  Authorization to Borrow.  From and after the AEA Effective Date, Zohar III shall be authorized to borrow from the DIP Lender under the Zohar III DIP Facility, Loans in an aggregate principal amount of up to $14,086,592.00 consisting solely of Tranche A Loans of up to $12,500,000 and Tranche B Loans of up to $1,586,592,00, as provided under the Zohar III DIP Credit Agreement and subject to the terms and conditions set forth in the DIP Loan Documents and the Final Order.  Subject to the terms and conditions of this Final Order, the Budget (as hereinafter defined) and the DIP Loan Documents, the DIP Debtors are authorized to use Cash Collateral until the earlier of (a) the Maturity Date and (b) the date upon which the DIP Debtors' right to use Cash Collateral is terminated hereunder, subject in all respects to the Budget (as hereinafter defined), plus the Monthly Budget Variance Cushion (as hereinafter defined).  All DIP Debtors have consented to the terms governing their use of Cash Collateral and DIP Lender's respective remedies.  Once repaid, DIP Facility Loans (as hereinafter defined) which have already been drawn or borrowed may not be re-borrowed.

e.  The "Outside Cash Collateral Date" for Zohar III shall be defined as:

> April 30, 2022, subject to extension for any additional time period (a) as may be agreed upon with the consent of the Controlling Secured Party for Zohar III and the Indenture Trustee (which consent shall not be unreasonably withheld), or (b) ordered by the Court.

f.  No "Termination Determination Date" will have been deemed to have occurred.

g.  On the AEA Effective Date (or as soon as reasonably practicable thereafter), Zohar III shall transfer $3,768,949.29 from its Proceeds Account to its Designated Account without any reduction in the Commitments available to Zohar III.

h.  Paragraph 13(b)(ii)(y) is modified as follows:

> (y) **_with the written consent_** ~~*at the request*~~ of the applicable Controlling Secured Party, deposited into the Designated Account for the respective Borrower with**_, at the request of the applicable Controlling Secured Party,_** a dollar-for-dollar reduction in the unused commitments for such Borrower under its DIP Credit Agreement.

a.  The following parenthetical shall be deleted in the *proviso* in Paragraph 13(c):

(with the amount of "Total Estate Professional Fees" as described under the Budget incurred for the period on and after December 1, 2020 to be no more than $25 million).

10.    **Exit Facility Roll Option**.  The New DIP Lender has agreed that the Zohar III DIP Facility can be converted into an "exit facility" (the "Roll Option") on the following terms and conditions.

a.    Conditions Precedent to the Exit Facility Roll Option.  The Roll Option may be exercised, solely at the election of the Borrower, on the effective date of the Borrower's Chapter 11 Plan (such date a "Plan Effective Date") if the following conditions are met on the Plan Effective Date:  (i) the Stated Maturity Date has not occurred; (ii)  the Maturity Date for the applicable DIP has not occurred (other than as a result of the Plan Effective Date occurring with respect to the Borrower); (iii) the DIP Facility has not otherwise terminated; (iv) such Chapter 11 Plan does not provide for the Obligations under such Borrower's DIP Facility to be indefeasibly paid in full; (v) such Chapter 11 Plan provides for (A) the transfer of all DIP Liens to the assets of any successor of the Borrower or Guarantor and (B) a lien on the proceeds of Avoidance Actions, as well as proceeds of any pending or potential causes of action or claims that the DIP Debtors have or may have on behalf the DIP Debtors' estates (whether arising pre-petition or post-petition) against Ms. Lynn Tilton, any affiliates of Ms. Tilton or entities controlled by, or acting on behalf of, Ms. Tilton at any time; and (vi) such Chapter 11 Plan is otherwise reasonably acceptable to the New DIP Lender with respect to the treatment of the New DIP Lender and the Zohar III DIP Facility.  Notwithstanding anything to the contrary in the Loan Documents, the transactions contemplated by a Borrower's Chapter 11 Plan shall not constitute a default, breach or any other violation of any Loan Document.

b.    Amendments to Applicable Credit Agreement under Exit Facility Roll Option.  If the Roll Option is exercised with respect to a Borrower, the applicable Credit Agreement shall be automatically amended as follows without any further action by any Person (except  changes to conform to provisions of the Chapter 11 Plan, Confirmation Order or any other related document):

i.    All undrawn Commitments under the relevant DIP Facility as of the Plan Effective Date shall be terminated.

ii.    The transactions provided for under the Chapter 11 Plan shall not be deemed a "Change of Control."

iii.    Section 1.1 of the Credit Agreement shall be amended as follows

1.    The following terms will be added in correct alphabetic order:

"Confirmation Order" means the Bankruptcy Court's order confirming the Borrower's Chapter 11 Plan.

"Debtor" means the Borrower and the Guarantors as set forth under the Chapter 11 Plan.

"Plan Effective Date" means the date on which the Chapter 11 Plan became effective.

2. The definition of "Borrower" shall be amended by adding the following to the end of the definition:

Upon the entry of the Confirmation Order, the term 'Borrower' shall mean the Borrower as set forth in the Chapter 11 Plan; *provided* that Borrower shall include any entity (including, without limitation, any trust or similar entity) which succeeds the Borrower and which holds, owns, is the transferee of, or otherwise possesses DIP Collateral pursuant to the transactions under the Chapter 11 Plan.

3. The definition of "Guarantors" shall be amended by adding the following to the end of the definition:

Upon the entry of the Confirmation Order, the term 'Guarantors' shall mean the Guarantors as set forth in the Chapter 11 Plan, provided that Guarantors shall include any entity (including, without limitation, any trust or similar entity) which succeeds the Guarantors or holds, owns, is the transferee of, or otherwise possesses DIP Collateral pursuant to the transactions under the Chapter 11 Plan.

4. The definition of "Maturity Date" shall be amended and restated in its entirety as follows:

"Maturity Date" means the earliest to occur of the following: (i) the date that is twenty-four (24) months after the Plan Effective Date; and (ii) entry of an order: (y) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or (z) dismissing the Chapter 11 Case.

iv. Section 2.3(c) of the Credit Agreement shall be deleted in its entirety and replaced with "Reserved."

v. Section 2.3(d) of the Credit Agreement shall be amended by inserting the following words immediately after the words "Mandatory Prepayments.":

Subject in each instance to Section 2.3(g):

vi. The following shall be added as a new Section 2.3(g) of the Credit Agreement:

> (g) **Carve-Out Funding**. All of the Borrower's cash on hand as of the Plan Effective Date and received thereafter shall be used to fund in full, the amounts identified in clauses (i) through (iii) of the Carve-Out and clauses (iv) and (v) of the Carve-Out that are incurred through the Plan Effective Date. The Lender, in its sole and absolute discretion, may consent to the addition of other amounts to be funded pursuant to this Section 2.3(g) following the Plan Effective Date, but may not limit or otherwise modify the amounts required to be funded pursuant to the prior sentence."

vii. Section 2.4(a) of the Credit Agreement shall be amended by deleting "7.00%" and replacing it with "18.00%."

viii. Each of Sections 5.2 and 5.7 of the Credit Agreement shall be deleted in its entirety and replaced with "Reserved."

ix. Section 5.3 of the Credit Agreement shall be amended by adding "or senior most person in control of the Borrower" immediately after the words "chief restructuring officer of the Borrower".

x. Section 8.1 of the Credit Agreement shall be amended by adding a new subsection (q) as follows:

> (q) The Confirmation Order is modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written consent of Lender.

11. **Deposit Accounts; Further Assurances**.

a. Upon the AEA Effective Date, the Existing DIP Lender shall cause to be promptly delivered to the New DIP Lender (or its counsel) by facsimile or other electronic transmission, including an email with a "pdf", in form and substance acceptable to the Existing DIP Lender, an Assignment and Assumption Agreement with respect to each of the Deposit Account Control Agreements with respect to the accounts set forth on the exhibits to the Credit Agreement, as duly executed by the Existing DIP Lender.

b. Each Party hereby agrees to execute and deliver such other instruments, and take such other action, as any other Party hereto may reasonably request in connection with the transactions contemplated by this Agreement, including (i) the delivery of any notices or other documents or instruments which may be required in connection

with the assignment and assumption contemplated hereby, and (ii) the execution and/or delivery by the Existing DIP Lender to the New DIP Lender of UCC-3 assignments and such other agreements, documents and/or instruments as may be reasonably necessary to effectuate the assignment of any Collateral or Loan Documents from the Existing DIP Lender to the New DIP Lender, including, without limitation, assignments of all security interests of the Existing DIP Lender in patents, trademarks and copyrights of Debtors to effectuate the assignment of record of the security interests in patents, trademarks and copyrights granted by Debtors to the Existing DIP Lender pursuant to the DIP Financings. Any such actions by the Existing DIP Lender shall be at the cost and expense of the Borrower.

c.   On the AEA Effective Date, the Existing DIP Lender hereby authorizes the New DIP Lender or its designee to file or record any Uniform Commercial Code amendments in order to reflect the assignment of record to the New DIP Lender under the Loan Documents, any Uniform Commercial Code financing statement naming Borrower or any Guarantor as debtor and naming the Existing DIP Lender as secured party.

12.   **Choice of Law and Venue; Jury Trial Waiver**.

a.   THE VALIDITY OF THIS AGREEMENT, THE CONSTRUCTION, INTERPRETATION, AND ENFORCEMENT HEREOF AND THEREOF, AND THE RIGHTS OF THE PARTIES HERETO AND THERETO WITH RESPECT TO ALL MATTERS ARISING HEREUNDER OR THEREUNDER OR RELATED HERETO OR THERETO SHALL BE DETERMINED UNDER, GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

b.   THE PARTIES AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS SHALL BE TRIED AND LITIGATED ONLY IN THE BANKRUPTCY COURT AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, FEDERAL COURTS LOCATED IN NEW YORK COUNTY, NEW YORK.   EACH PARTY WAIVES, TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, ANY RIGHT EACH MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS SECTION 11(b); PROVIDED, FURTHER, HOWEVER, THAT ALL PARTIES HEREBY AGREE THAT THEY HAVE CONSENTED TO THE JURISDICTION OF THE BANKRUPTCY COURT AND THAT THE BANKRUPTCY COURT WILL RETAIN EXCLUSIVE JURISDICTION WITH RESPECT TO ALL DISPUTES SO LONG AS THE CHAPTER 11 CASES OF THE DEBTORS REMAINS PENDING.

c.   TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING

OUT OF THIS AGREEMENT THE TRANSACTIONS CONTEMPLATED HEREIN, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW OR STATUTORY CLAIMS. EACH PARTY REPRESENTS THAT EACH SUCH PARTY HAS REVIEWED THIS WAIVER AND EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. IN THE EVENT OF LITIGATION, A COPY OF THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

13.    **Amendments; Waivers; Successors**.

   a.   <u>Amendments and Waivers</u>.  No amendment, waiver or other modification of any provision of this Agreement, and no consent with respect to any departure by any Party therefrom, shall be effective unless the same shall be in writing and signed by all Parties; and any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

   b.   <u>No Waivers; Cumulative Remedies</u>.  No failure by a Party to exercise any right, remedy, or option under this Agreement, or any delay by Lender in exercising the same, will operate as a waiver thereof.  No waiver by a Party will be effective unless it is in writing, and then only to the extent specifically stated.  No waiver by a Party on any occasion shall affect or diminish such Party's rights thereafter to require strict performance by any other Party of any provision of this Agreement. Each Party's rights under this Agreement will be cumulative and not exclusive of any other right or remedy that such Party may have.

   c.   <u>Successors</u>.  This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the Parties. No Debtor may assign this Agreement or any rights or duties hereunder without the New DIP Lender's and the Existing DIP Lender's prior written consent. No consent by any Lender shall, unless otherwise provided in such consent, release any Debtor from its Obligations.  A Lender may assign this Agreement and the other Loan Documents and its rights and duties hereunder and thereunder or assign any Loans or Commitments (in whole or in part) to an Affiliate without notice to or consent of any Debtor.

14.    **General Provisions**

   a.   <u>Effectiveness</u>.  This Agreement shall be binding and deemed effective when executed by all Parties.

   b.   <u>Section Headings</u>.  Headings and numbers have been set forth herein for convenience only. Unless the contrary is compelled by the context, everything contained in each Section applies equally to this entire Agreement.

   c.   <u>Interpretation</u>.  Neither this Agreement nor any uncertainty or ambiguity herein shall be construed against any Party, whether under any rule of construction or otherwise.  On the contrary, this Agreement has been reviewed by all Parties and

shall be construed and interpreted according to the ordinary meaning of the words used so as to accomplish fairly the purposes and intentions of all Parties hereto.

d.  <u>Severability of Provisions</u>.  Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision.

e.  <u>Counterparts; Electronic Execution</u>.  This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by facsimile or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement.  Any party delivering an executed counterpart of this Agreement by facsimile or other electronic method of transmission also shall deliver an original executed counterpart of this Agreement; but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

[Signature pages follow.]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered as of the date first above written.

**BORROWER**:

ZOHAR III, LIMITED,

By: _____
Name:  Michael Katzenstein
Title:   Chief Restructuring Officer

**GUARANTORS**:

ZOHAR II 2005-1, CORP.

By: _____
Name:  Michael Katzenstein
Title:   Chief Restructuring Officer

ZOHAR II 2005-1, LIMITED

By: _____
Name:  Michael Katzenstein
Title:   Chief Restructuring Officer

ZOHAR III, CORP.

By: _____
Name:  Michael Katzenstein
Title:   Chief Restructuring Officer

*[Signature Page to Zohar III DIP Assignment, Extension and Amendment Agreement]*

**<u>EXISTING DIP LENDER</u>**:

JMB Capital Partners Lending, LLC


By: _____
Name:  Vikas Tandon
Title:    Chief Investment Officer

**<u>NEW DIP LENDERS</u>**:

[Funds managed by Bardin Hill Investment Partners LP]


By: _____
Name:
Title:

28931318.1

Exhibit A to Agreement

Approval Order

[*Omitted from filing version of Agreement.  See Exhibit B to Notice of (I) Proposed Assignment, Amendment and Extension Agreement with Respect to Zohar III Dip Facility and (II) Presentation of Order Approving Same*]

# **EXHIBIT B**

## **Approval Order**

28923420.4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Zohar III, Corp., *et al.*,[1] | ) | Case No. 18-10512 (KBO) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Ref. Docket No. 2191 & ____** |

### ORDER (I) AUTHORIZING AND APPROVING THE ASSIGNMENT AND AMENDMENT OF THE ZOHAR III DIP FACILITY; (II) AMENDING THE FINAL DIP ORDER; AND (III) GRANTING RELATED RELIEF

Upon consideration of the *Notice of (I) Proposed Assignment, Amendment and Extension Agreement with Respect to Zohar III DIP Facility and (II) Presentation of Order Approving Same* (the "DIP Amendment Notice")[2] filed pursuant to paragraph 33 of the Final DIP Order in connection with the proposed assignment and amendment of the Zohar III DIP Facility on the terms set forth in that certain Assignment, Extension and Amendment Agreement (the "DIP Amendment"), a copy of which is attached as Exhibit A to the DIP Amendment Notice; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. §157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is c/o FTI Consulting, Inc., 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the DIP Amendment Notice, the DIP Amendment, or the Final DIP Order, as applicable.

DIP Amendment Notice having been given; and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the DIP Motion, the Final DIP Order, and the DIP Amendment Notice and having determined that the legal and factual bases set forth therein and at the hearing, if any, establish just cause for the relief granted herein; and the Court having found that the relief requested herein is in the best interests of the Debtors, their creditors, their estates and all other parties in interest; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1. The DIP Amendment is hereby approved, and the DIP Debtors are authorized to enter into DIP Amendment and to perform all acts, and to make, execute, and deliver all instruments and documents in connection therewith that may be reasonably required or necessary for the performance of their obligations under the DIP Amendment.

2. The Existing DIP Lender's assignment pursuant to the DIP Amendment of the Zohar III DIP Facility and all of its obligations resulting from facts, events, or circumstances arising or occurring on or after the AEA Effective Date, related rights, benefits, and liens, under and in connection with the Zohar III DIP Facility and the Existing DIP Loan Documents, is hereby approved.

3. The Borrower is authorized to pay the Assignment Fee to the Existing DIP Lender.

4. On the AEA Effective Date (or as soon as reasonably practicable thereafter), Zohar III shall transfer $3,768,949.29 from its Proceeds Account to its Designated Account without any reduction in the Commitments available to Zohar III.

5. The Final DIP Order is hereby amended as follows:

   a) For Zohar III, the "DIP Lender" shall mean the Existing DIP Lender through and including the AEA Effective Date (as defined in the DIP Amendment) and the New DIP Lender from and after the AEA Effective Date.

28887421.6

b)     For Zohar III, the "DIP Credit Agreement" shall mean the DIP Credit Agreement as amended pursuant to the terms of the DIP Amendment.

c)     The "Outside Cash Collateral Date" for Zohar III shall be defined as:

April 30, 2022, subject to extension for any additional time period (a) as may be agreed upon with the consent of the Controlling Secured Party for Zohar III and the Indenture Trustee (which consent shall not be unreasonably withheld), or (b) ordered by the Court.

d)     Paragraph 3 shall be deleted and replaced with the following:

"Authorization to Borrow.  From and after the AEA Effective Date, Zohar III shall be authorized to borrow from the DIP Lender under the Zohar III DIP Facility, Loans in an aggregate principal amount of up to $14,086,592.00 consisting solely of Tranche A Loans of up to $12,500,000 and Tranche B Loans of up to $1,586,592,00, as provided under the Zohar III DIP Credit Agreement and subject to the terms and conditions set forth in the DIP Loan Documents and the Final Order.  Subject to the terms and conditions of this Final Order, the Budget (as hereinafter defined) and the DIP Loan Documents, the DIP Debtors are authorized to use Cash Collateral until the earlier of (a) the Maturity Date and (b) the date upon which the DIP Debtors' right to use Cash Collateral is terminated hereunder, subject in all respects to the Budget (as hereinafter defined), plus the Monthly Budget Variance Cushion (as hereinafter defined).  All DIP Debtors have consented to the terms governing their use of Cash Collateral and DIP Lender's respective remedies. Once repaid, DIP Facility Loans (as hereinafter defined) which have already been drawn or borrowed may not be re-borrowed."

e)     Clause (ii)(y) in Paragraph 13(b) shall be replaced with the following:

(y) with the written consent of the applicable Controlling Secured Party, deposited into the Designated Account for the respective Borrower with, at the request of the applicable Controlling Secured Party, a dollar-for-dollar reduction in the unused commitments for such Borrower under its DIP Credit Agreement.

f)     The following parenthetical shall be deleted in the *proviso* in Paragraph 13(c):

(with the amount of "Total Estate Professional Fees" as described under the Budget incurred for the period on and after December 1, 2020 to be no more than $25 million).

28887421.6

g)      Paragraph 27(a)(x) shall be amended to include the following:

(iii) a subsequent $750,000 payment by Zohar III

6.      Notwithstanding paragraph 11 of the DIP Amendment, the New DIP Lender shall be deemed to have perfected DIP Liens in the Collateral (as such term is defined in the DIP Amendment) pursuant to paragraph 30 of the Final DIP Order.

7.      Immediately following the AEA Effective Date and contemporaneously with the Assignment, Zohar II and Zohar II Corp. shall be released and discharged as Guarantors under the Zohar III DIP Credit Agreement and shall no longer be considered "Debtors" as such term is defined in the Zohar III DIP Credit Agreement.  In connection with the foregoing, all of the Liens granted pursuant to the Zohar III DIP Credit Agreement on any collateral of Zohar II and Zohar II Corp. shall be released.

8.      Other than as expressly provided for in this Order, nothing herein shall be deemed to modify, supersede, abrogate, or otherwise affect the Final DIP Order or any of its terms.  The Final DIP Order shall remain in full force and effect, and all factual and other findings and conclusions of law contained in the Final DIP Order shall remain fully applicable to the Zohar III DIP Facility.  No "Termination Determination Date" has occurred under the Final DIP Order.

9.      The automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified, to the extent necessary, for the DIP Debtors, the Existing Lender, and the New DIP Lender (i) to perform all acts and to make, execute, and deliver all instruments and documents, including the DIP Amendment, in connection with the relief provided for in this Order, and (ii) to effectuate the provisions of this Order.

10.      The New DIP Lender has acted in good faith in connection with the DIP Amendment, the Zohar III DIP Credit Agreement, this Order, and the Final DIP Order (as amended), and its reliance on this Order and the Final DIP Order (as amended) is in good faith.

The reversal or modification on appeal of the authorizations under section 364 contained in this Order and the Final DIP Order (as amended) does not affect the validity of any DIP Obligation or the DIP Liens, whether or not the New DIP Lender knew of the pendency of the appeal, unless such authorizations and incurrence of DIP Obligations and DIP Liens and advance of the DIP Facility Loan were stayed pending appeal.

11.     Notwithstanding any applicable provision of the Bankruptcy Code or the Bankruptcy Rules, the terms, provisions, and conditions of, and relief granted by, this Order shall be effective immediately and enforceable upon its entry.

12.     This Court shall retain jurisdiction to enforce and interpret this Order and the Final DIP Order (as amended hereby) and any disputes or matters arising out of or in connection therewith.

28887421.6