**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Zohar III, Corp., *et al.*,[1] | Case No. 18-10512 (KBO) |
| Debtors. | Jointly Administered |
|  | **Hearing Date: January 18, 2022 at 2:00 p.m. (ET)**<br>**Obj. Deadline: January 6, 2022 at 4:00 p.m. (ET)** |

**NOTICE OF BINDING PORTFOLIO COMPANY (UNIVERSAL INSTRUMENTS)**
**TRANSACTION PURSUANT TO PORTFOLIO COMPANY**
**TRANSACTION PROCEDURES**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors"), pursuant to the *Order in Aid of Implementation of the Global Settlement Agreement Approved in These Cases Establishing Certain Procedures for the Independent Director's Approval of Monetization Transactions and Related Relief* [Docket No. 545] (the "Procedures Order"), intend to consummate the transaction (the "UI Transaction") described herein. The UI Transaction is not subject to higher and/or better offers or a bankruptcy auction process. This Notice is being provided in accordance with, and sets forth the information required under, the Procedures Order.

    1.    <u>Material Economic Terms and Conditions of the Proposed UI Transaction</u>. The UI Transaction contains the following material terms:[2]

    a.    Delta International Holding Limited B.V., a Netherlands private limited company ("Buyer"), has entered into an Equity Purchase Agreement ("EPA") for the acquisition of 100% of the issued and outstanding equity interests in UI Acquisition

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261) ("Zohar III"), Zohar II 2005-1, Limited (8297) ("Zohar II"), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is c/o FTI Consulting, Inc., 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

[2] The Notice provides a summary of the material terms of the EPA only; in the event of a conflict between the terms of the EPA and the Notice, the terms of the EPA shall govern. A copy of the EPA will be submitted to the Court for *in camera* review.

Holding Co., a Delaware corporation ("UI" or the "Company" and such interests the "UI Interests") from Zohar CDO 2003-1, Limited, Zohar II 2005-1, Limited, Zohar III, Limited, Fair Oaks Income Fund, Eight Bar Financial Partners I, L.P., Francisco Partners Parallel Fund II, LP, and Francisco Partners II, LP (the "Sellers"), with Zohar II 2005-1, Corp. acting as the "Seller Representative."

b. Buyer shall acquire the UI Interests of the Sellers that are Debtors free and clear of all Liens,[3] options, proxies, voting trusts or agreements and other restrictions and limitations of any kind, other than (a) applicable federal, state and foreign securities Law restrictions with respect to future transfers and (b) as set forth in the Company's Constituent Documents.[4]

c. Through the UI Transaction, the Indebtedness (as defined in the EPA) of UI and its Subsidiaries (as defined in the EPA) specified in the EPA and all Seller Transaction Expenses (as defined in the EPA) will be paid from the purchase price as set forth in the EPA. Certain escrow amounts and a representative fund for the benefit of the Seller Representative will also be paid from the purchase price to satisfy post-Closing amounts owed in accordance with the EPA.

d. The Debtors contemplate that the Sellers will receive between $66.7 and $75.3 million from the UI Transaction, with the ultimate amount to be determined by the outcome of certain post-Closing target net working capital and Closing cash reconciliations, the amount of post-Closing expenses of the Seller Representative that are paid, and ultimate distributions from an escrow set up under the EPA as a holdback related to certain net working capital and indemnification provisions. This amount excludes any recoveries from the Retained Claims[5] or the Patriarch Closing Date Payment.

e. The Sellers shall retain interests in certain Retained Claims as follows:

---

[3] "Liens" means any lien, mortgage, security interest, pledge, encumbrance or other similar restriction.

[4] "Constituent Documents" means, with respect to a specified entity, such entity's certificate or articles of incorporation, organization or formation, bylaws, operating agreement, partnership agreement, limited partnership agreement or other equivalent governing document.

[5] "Retained Claims" means any and all of the claims, actions, suits and proceedings of the Company or any of its Subsidiaries, whether commenced or filed before, at or after the Closing, including any counterclaims, third-party claims, and claims for contribution or indemnification, against any of the Sellers or any of the Sellers', the Company's or any of its Subsidiaries' former directors, managers or officers, or current or former direct or indirect equityholders or controlling persons, external legal counsel, advisors, agents or representatives or representatives of any of the foregoing or any of such Persons' Affiliates, in whatever capacity, or any of their or their Affiliates' respective former, current or future directors, officers, employees, general or limited partners, managers, members, direct or indirect equityholders, controlling persons, attorneys, advisors, agents or representatives or representatives of any of the foregoing, or any former, current or future estates, heirs, executors, administrators, trustees, successors or assigns of any of the foregoing, in each case to the extent based upon, attributable to, or resulting from actions, omissions, or circumstances occurring or existing prior to the Closing, including the Retained Claims identified on Schedule 1.01(b) of the EPA, provided, any Retained Claim against individuals employed or otherwise engaged by the Company or any of its Subsidiaries at the time such Retained Claim is initiated shall first require the consent of Buyer to initiate, such consent not to be unreasonably withheld.

i.  Subject to the Participating Sellers'[6] continuing obligation to compensate and reimburse each of Buyer and the Company for any Retained Claim Out-of-Pocket Costs (based on each Participating Seller's respective Participating Pro Rata Portion,[7] and if all Sellers are Participating Sellers, first from the Representative Fund Amount, to the extent of available funds), the Parties acknowledge and agree that the Seller Representative shall retain the sole and exclusive right (in its discretion) to pursue, and to direct and manage the Company's and its Subsidiaries' participation in, the prosecution, defense, and, if applicable, compromise, settlement, or assignment of each of the Retained Claims; provided that the Seller Representative shall initiate any Retained Claim on or before the date that is nine (9) months after entry of the Bankruptcy Approval Order by the Bankruptcy Court (the "Retained Claim Deadline") and shall provide Buyer with at least three (3) Business Days prior written notice of the intent to initiate such Retained Claim. In furtherance of the foregoing, the Parties acknowledge and agree that in connection with each of the Retained Claims, notwithstanding anything to the contrary herein, from and after the Closing and until the entry of a final, non-appealable judgment (from a court of competent jurisdiction) with respect to all Retained Claims initiated prior to the Retained Claim Deadline:

   a)  The Seller Representative shall have the sole and exclusive control in all respects over the conduct of each of the Retained Claims, including (A) the determination as to whether to initiate or continue to pursue any of the Retained Claims, (B) retaining outside counsel in connection therewith, (C) all proceedings related or ancillary thereto, including disclosure of any non-proprietary information to the extent relevant to such Retained Claims, (D) the settlement, compromise or discharge thereof and (E) any decision whether to appeal; provided that the Seller Representative shall not settle, compromise or discharge the applicable Retained Claim without the prior written consent of Buyer or the Company in the event that any such proposed settlement, compromise or discharge (w) imposes an injunction or other equitable relief upon Buyer or any of its Affiliates (including the Company or any of its Subsidiaries), (x) involves a finding or admission of any violation of Law or other wrongdoing by Buyer or any of its Affiliates (including the Company or any of its Subsidiaries), (y) involves criminal liability or may reasonably result in criminal proceedings or any other action before any Governmental Body in respect of Buyer or the Company or its business, (z) is likely in the reasonable judgment of Buyer or any of its Affiliates (including the Company or any of its Subsidiaries) to establish a precedential

---

[6] "Participating Seller" means each Seller providing written notice to the Seller Representative of such Seller's intent to participate in the prosecution and recovery of any Retained Claim within five (5) days of receiving a Retained Claim Notice from the Seller Representative.

[7] "Participating Pro Rata Portion" means the pro rata share of each Participating Seller based upon the Interests (as a single class) sold by all Participating Sellers under the Agreement.

custom or practice materially adverse to the continuing business interests or the reputation of Buyer or any of its Affiliates (including the Company or any of its Subsidiaries);

b) Buyer shall, and shall cause the Company and its Subsidiaries to, reasonably cooperate with the Seller Representative and each Participating Seller (and their respective counsel and other representatives) with respect to these efforts, including by giving reasonable access during normal business hours, upon reasonable advance notice, to employees of the Company and its Subsidiaries (including for purposes of serving as witnesses) and the relevant books and records (including the ability to make copies of the books and records and other documentation solely to the extent necessary or advisable to advance or defend any of the Retained Claims or as part of producing information as part of discovery or equivalent procedures), third party witnesses and counsel as may be reasonably requested from time to time by the Seller Representative; provided that (x) all such access shall be granted under the conditions which shall not unreasonably interfere with the business and operations of the Buyer or any of its Affiliates (including the Company or any of its Subsidiaries) thereof and (y) the Participating Sellers shall be liable, and shall reimburse Buyer (based on each Participating Seller's respective Participating Pro Rata Portion, and, if all Sellers are Participating Sellers, first from the Representative Fund Amount, to the extent of available funds), the Company and its Subsidiaries, for all reasonable and documented costs or expenses incurred by Buyer or any of its Affiliates (including the Company or any of its Subsidiaries) in connection with providing such access or cooperation (but, for the avoidance of doubt, not including any amounts for wages, salaries or similar remuneration or any amounts for administrative overhead or any similar amounts directly related to such cooperation) and such costs or expenses payable by the Participating Sellers shall be deemed to constitute Retained Claim Out-of-Pocket Costs hereunder and, as to the Participating Sellers that are debtors in the Bankruptcy Cases, shall be administrative priority claims under the Bankruptcy Code;

c) the Seller Representative shall keep Buyer and the Participating Sellers reasonably informed with respect to the status of and any material developments in each of the Retained Claims;

d) Buyer shall, and shall cause the Company and its Subsidiaries to, hold in trust for and pay all income, proceeds and other monies received by Buyer, the Company or any of its Subsidiaries from any Person in connection with any of the Retained Claims to the Seller Representative, for the benefit of the Participating Sellers pursuant to

28718848.8

Section 8.04(c) of the EPA, promptly, and in any event within ten (10) Business Days, upon receipt thereof; and

e) Buyer shall, and shall cause the Company and its Subsidiaries to, not take any action without the prior written consent of the Seller Representative (such consent not to be unreasonably withheld, conditioned or delayed) to the extent such action would reasonably be expected to impair the benefits of, or be detrimental to, the Seller Representative, the Participating Sellers, their respective Affiliates or the Company in connection with the participation in and the prosecution, defense, and, if applicable, compromise, settlement, or assignment of any of the Retained Claims.

ii. Upon the request of the Seller Representative, the Parties (or their applicable Affiliates) will enter into a mutually acceptable joint defense and/or common interest agreement with respect to the Retained Claims, with any reasonable and documented out-of-pocket costs or expenses (which shall constitute Retained Claim Out-of-Pocket Costs) incurred by the Buyer or the Company in connection with the negotiation or entering into such joint defense and/or common interest agreement to be reimbursed by the Participating Sellers (based on each Participating Seller's respective Participating Pro Rata Portion, and, if all Sellers are Participating Sellers, first from the Representative Fund Amount, to the extent of available funds) by wire transfer of immediately available funds as a precondition of entering into such joint defense agreement. The Participating Sellers also agrees to indemnify and hold Buyer and its Affiliates (including, from and after the Closing, the Company and its Subsidiaries) harmless (based on each Participating Seller's respective Participating Pro Rata Portion) for any and all claims, damages, losses, liabilities fees and expenses (including, and limited in the case of counsel to, the reasonable fees, disbursements and other charges of a single legal counsel, and, in the case of an actual conflict of interest determined to exist in the reasonable discretion of Buyer or any of its Affiliates (including the Company or any of its Subsidiaries) requiring multiple counsel, any additional counsel), that may be incurred by or asserted or awarded against Buyer or such Affiliate in connection with any of the Retained Claims.

iii. All fees, costs, expenses, and other liabilities in connection with the prosecution, defense, and, if applicable, compromise, settlement, or assignment of the Retained Claims, including without limitation all Retained Claim Out-of-Pocket Costs, indemnification amounts under Section 8.04(b) of the EPA, and indemnification escrow amounts required by the Bankruptcy Approval Order (collectively, the "Retained Claim Fees"), shall be borne by the Participating Sellers and all income, proceeds, and other monies received by the Seller's Representative in connection with the Retained Claims (collectively, the "Retained Claim Recoveries") shall be for the benefit of the Participating Sellers, in each case in accordance with the Participating Sellers' Participating Pro Rata Portion, subject to the remaining provisions of Section 8.04(c) of the

EPA. Each Participating Seller shall pay to the Seller Representative such Participating Seller's Participating Pro Rata Portion of any Retained Claim Fees within five (5) Business Days of written request by the Seller Representative. If any Participating Seller (a "Defaulting Participating Seller") fails to make any such payment when due, the other Participating Sellers (the "Make-Up Participating Sellers") may elect, within two (2) Business Days of written notice by the Seller Representative, to pay such Retained Claim Fees on behalf of such Defaulting Participating Seller in proportion to the relative Participating Pro Rata Portions of all Make-Up Participating Sellers, and such Defaulting Participating Seller's rights and interests in and to any Retained Claim Recoveries shall inure to the benefit of the Make-Up Participating Sellers in accordance with the proportion of the Retained Claim Fees that are attributable to such Defaulting Participating Seller and paid by the Make-Up Participating Sellers.

f.    The EPA contains the following release provisions at Section 6.05:

(a)    Effective as of the Closing, each Seller, on behalf of himself or itself and each of his or its Seller Associated Parties (the "Seller Releasors"), hereby irrevocably and unconditionally releases, acquits and forever discharges (i) the Company and each of its Subsidiaries, (ii) Buyer, and (iii) the successors and past, present and future assigns, directors, managers, officers, employees, equity holders and partners of the respective entities identified or otherwise referred to in clauses "(i)" and "(ii)" of this clause "(a)" and (iv) the representatives of the respective entities identified or otherwise referred to in clauses "(i)" through "(iii)" of this clause "(a)" (each a "Buyer Releasee" and, collectively, the "Buyer Releasees"), of and from any and all Proceedings, causes of action, damages, accounts, Liabilities and obligations (including attorneys' fees), whether known or unknown, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, absolute or contingent, direct or derivative, in each case which arise out of, are based upon or are connected with the ownership, organization, management or operation of the businesses of the Company and its Subsidiaries or the Seller Releasors' relationship with the Company and its Subsidiaries, in each case relating to any facts or events occurring or in existence prior to the Closing (each, a "Seller Released Claim"); provided, however, that in no event shall the foregoing release apply to, diminish or impair, and the term "Seller Released Claim" shall not include any rights of any Seller Releasor (w) with respect to any obligations of any Buyer Releasee set forth in the EPA or in any Transaction Agreement,[8] (x) in the case of Fraud, (y) under Section 7.03 of the EPA or to indemnification, reimbursement or advancement of expenses, or limitation of liability, under the provisions of the Constituent Documents of the Company or the applicable Subsidiary (or any directors' and officers' liability insurance policy maintained by the Company or its Subsidiaries in

---

[8] "Transaction Agreements" means the EPA, the Escrow Agreement, the Confidentiality Agreement, and all certificates delivered pursuant to this Agreement, executed by the parties in connection with the transactions contemplated hereby and thereby.

respect of the same) for claims or actions that are not Retained Claims or (z) with respect to the Retained Claims (each a "Seller Excluded Claim").

(b)     Each Seller represents and warrants, on a several and not joint basis, solely on behalf of such Seller and each of his or its Seller Associated Parties, that (i) such Seller Releasor has not assigned, transferred, conveyed or otherwise disposed of any Seller Released Claim against any of the Buyer Releasees, and, to such Seller's knowledge, no other Person has any interest in any of the Seller Released Claims released pursuant to Section 6.05 of the EPA and (ii) no authorization, instruction, consent or approval of any Person is required to be obtained by such Seller or, to such Seller's knowledge, any of his or its Seller Associated Parties, in connection with the release of the Seller Released Claims hereunder.

(c)     Each Seller, on behalf of such Seller and each of his or its Seller Associated Parties, hereby irrevocably and unconditionally waives and relinquishes any rights and benefits with respect to the Seller Released Claims (other than the Seller Excluded Claims) that any Seller Releasor may have under any statute or common law principle in any jurisdiction which provides that a general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in such creditor's or releasing party's favor at the time of executing the release that, if known by such creditor or releasing party, would reasonably have materially affected his or her settlement with the debtor or released party. Each Seller understands and acknowledges (for such Seller and each of his or its Seller Associated Parties) that such Seller may discover facts different from, or in addition to, those which such Seller knows or believes to be true with respect to the claims released herein, and agrees that (i) it is the intention of such Seller (on behalf of such Seller and each of his or its Seller Associated Parties) to fully, finally and forever waive, release and relinquish all Seller Released Claims against any Buyer Releasee (specifically excluding any Seller Excluded Claims) and (ii) the releases contained in the EPA shall be and remain effective in all respects notwithstanding any subsequent discovery of different or additional facts.

(d)     Effective as of the Closing, Buyer, on behalf of itself and each of the Buyer Releasees, hereby irrevocably and unconditionally releases, acquits and forever discharges (i) each Seller Associated Party and each past, present or future director, officer, manager, employee, equity holder, trustee, consultant, principal, contractor, administrator and partner of any Seller Associated Party (each a "Seller Releasee" and, collectively, the "Seller Releasees"), of and from any and all Proceedings, causes of action, damages, accounts, Liabilities and obligations (including attorneys' fees), whether known or unknown, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, absolute or contingent, direct or derivative, in each case which arise out of, are based upon or are connected with the ownership, organization, management or operation of the businesses of the Company and its Subsidiaries or the Seller Releasees' relationship with the Company and its

Subsidiaries, in each case relating to any facts or events occurring or in existence prior to the Closing (each, a "Buyer Released Claim"); *provided*, *however*, that in no event shall the foregoing release apply to, diminish or impair, and the term "Buyer Released Claim" shall not include any rights of any Buyer (x) with respect to any obligations of any Seller Releasee set forth in the EPA or any other Transaction Agreement, (y) in the case of Fraud or (z) with respect to the Retained Claims (each, a "Buyer Excluded Claim").

(e)     Buyer, on behalf of Buyer and each of the other Buyer Releasees, hereby irrevocably and unconditionally waives and relinquishes any rights and benefits with respect to the Buyer Released Claims (other than the Buyer Excluded Claims) that any Buyer Releasee may have under any statute or common law principle in any jurisdiction which provides that a general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in such creditor's or releasing party's favor at the time of executing the release that, if known by such creditor or releasing party, would reasonably have materially affected his or her settlement with the debtor or released party. Buyer understands and acknowledges (for itself and each of the other Buyer Releasees) that Buyer or any Buyer Releasee may discover facts different from, or in addition to, those which Buyer or a Buyer Releasee knows or believes to be true with respect to the claims released herein, and agrees that (i) it is the intention of Buyer (on behalf of itself and each of the other Buyer Releasees) to fully, finally and forever waive, release and relinquish all Buyer Released Claims against any of the Seller Releasees (specifically excluding any Buyer Excluded Claims) and (ii) the releases contained in the EPA shall be and remain effective in all respects notwithstanding any subsequent discovery of different or additional facts.

(f)     For purposes of Section 6.05 of the EPA, the term "Seller Associated Party" means, with respect to a Seller: (i) such Seller's predecessors, successors, executors, administrators, trusts, spouse, heirs, estate and Affiliates; (ii) such Seller's past, present and future assigns; (iii) each Person that such Seller has the power to bind (by such Seller's acts or signature or over which such Seller directly or indirectly exercises control); (iv) each Person of which such Seller owns, directly or indirectly, at least a majority of the outstanding equity, beneficial, proprietary, ownership or voting interests; and (v) any other Person claiming by, through or under any of the foregoing, other than, in each case, the Company and its Subsidiaries.

2.     Transaction Declaration.   Attached hereto as Exhibit A are the declarations (the "Transaction Declarations") of Michael Katzenstein and Setch Subudhayangkul.

3.     Proposed Transaction Order.   Attached hereto as Exhibit B is a proposed order approving the UI Transaction (the "Proposed Transaction Order").

4.      <u>Free and Clear Sale</u>.  Pursuant to section 363(f) of the Bankruptcy Code, effective as of the Closing, the sale of the UI Interests by the Debtors to the Buyer shall constitute a legal, valid and effective transfer of the UI Interests notwithstanding any requirement for approval or consent by any person and shall vest Buyer with all rights, title and interests of the Debtors in and to the UI Interests, free and clear of all liens, claims, encumbrances and interests of any kind (including but not limited to (i) beneficial interests and (ii) any liens recorded with the register of mortgages in the Cayman Islands) (collectively, "<u>Encumbrances</u>"), including without limitation those held by parties to the Settlement Order[9], with such Encumbrances attaching to the proceeds from the UI Transaction with the same validity and priority as such released liens.

5.      <u>Treatment of Patriarch Stakeholders' Claims Pursuant to Paragraph 18 of the Settlement Agreement</u>.  The payments to be made at closing will include the amounts asserted to be owed and outstanding to the Patriarch Stakeholders.  As of the filing of this Notice, the Debtors understand that to be (i) $5,927,896.50, calculated based on the aggregate amounts detailed on Exhibit B to the Motion filed at Docket No. 1903 (the "<u>Patriarch Paragraph 18 Motion</u>") with respect to UI, as supplemented by the Patriarch Stakeholders, *plus* (ii) the amount of the Transaction Fee asserted to be owed to Patriarch Partners Management Group, LLC ("<u>PPMG</u>") in connection with the UI Transaction (which will be equal to 5% times Eligible Equity Value under the Management Services Agreement between UI Acquisition Holding Co. and Patriarch Partners Management Group, LLC, dated as of March 14, 2011, as amended (the "<u>Management Services Agreement</u>"), as determined at the Closing) (such amounts are referred to as the "<u>Patriarch Closing Date Payment</u>").  The Debtors' rights to challenge and recover any amounts paid to the Patriarch Stakeholders including the Patriarch Closing Date Payment, shall be preserved in accordance with

---

[9] *Order Approving and Authorizing the Settlement Agreement by and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class* [Docket No. 266].

the Settlement Agreement, notwithstanding any payment of such amount through Closing.  Any

recovery by the Debtors of the Patriarch Closing Date Payment shall be for the benefit of the

Sellers in accordance with their Pro Rata Portions; provided, however, that, prior to any

distribution of any recovery of such amounts to the Sellers, the Debtors shall be entitled to set off

against such recovery any and all fees and expenses of pursuing such recovery.  The Proposed

Transaction Order also includes language in the form previously agreed upon by the Debtors and

the Patriarch Stakeholders in connection with the Rand and PDP Transactions[10] relating to the

Retained Claims.[11]

      6.    <u>Proposed Transaction Order</u>.  Consistent with the Court's ruling on August 4, 2020,

the Proposed Transaction Order seeks to approve the following provisions:

> Effective as of the Closing of the EPA and receipt of the Patriarch Closing Date Payment, the Patriarch Stakeholders are hereby deemed to release all liens, claims, encumbrances and interests of any kind that could be asserted or have been asserted by the Patriarch Stakeholders against any of the Buyer Releasees or Seller Releasees (both as defined in Section 6.05 of the EPA, which is set forth in paragraph 1(f) of the Transaction Notice).
>
> ***
>
> Subject to the occurrence of the Closing of the EPA, if not already terminated or expired, the Management Services Agreement between UI Acquisition Holding Co. and Patriarch Partners Management Group, LLC, dated as of March 14, 2011, as amended, shall be deemed to have terminated.

Further, the Proposed Transaction Order (a) seeks to approve the releases set forth in Section 6.05

of the EPA (which are also set forth in Paragraph 1(f) of this Notice) and (b) will provide that the

---

[10] *See* Docket Nos. 2050 & 2480.

[11] The language in the Proposed Transaction Order relating to Retained Claims has been slightly modified from the Rand and PDP Transactions to account for the potential participation of a Participating Seller in the prosecution of a Retained Claim.

Patriarch Stakeholders shall dismiss the pending actions against UI with prejudice within ten (10) days of entry of the order approving the UI Transaction.

7.    <u>Defined Term</u>.  The term "Patriarch Stakeholders" as used herein shall have the meaning ascribed to it in that certain *Order Approving and Authorizing the Settlement Agreement By and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class* dated May 21, 2018 [Docket No. 266].

8.    <u>Procedures for Objecting to the Proposed UI Transaction</u>.  Any objection to the proposed UI Transaction (an "<u>Objection</u>") must: (a) be in writing; (b) state with specificity the nature of the objection; and (c) be filed with the Bankruptcy Court and served on (i) the Debtors, 1166 Avenue of the Americas, 15th Floor New York, NY, 10036  (Attn: Michael Katzenstein, mike.katzenstein@fticonsulting.com); (ii) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Michael R. Nestor and Joseph Barry, mnestor@ycst.com, jbarry@ycst.com); (iii) counsel to the Patriarch Entities, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, CA 90071 (Attn: Robert A. Klyman, rklyman@gibsondunn.com) and Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 (Attn: Norman L. Pernick, npernick@coleschotz.com); (iv) counsel to U.S. Bank, as indenture trustee, Alston & Bird LLP, 90 Park Avenue, New York, NY 10016 (Attn: John W. Weiss, john.weiss@alston.com); (v) counsel to MBIA Insurance Corp., Cadwalader, Wickersham & Taft, LLP, 200 Liberty Street, New York, NY 10281 (Attn: Gregory M. Petrick, gregory.petrick@cwt.com) and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (Attn: Laura Davis Jones, ljones@pszjlaw.com); (vi) counsel to the Zohar III Controlling Class, Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, IL 60602-4321 (Attn: Brian J. Lohan, brian.lohan@arnoldporter.com) and Womble Bond Dickinson (US) LLP, 222

Delaware Avenue, Suite 1501, Wilmington, DE 19801 (Attn: Matthew P. Ward, matthew.ward@wbd-us.com); (vii) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Juliet M. Sarkessian, Juliet.m.sarkessian@usdoj.gov); (viii) Counsel for UI, Latham & Watkins, 885 Third Avenue, New York, New York 10022-4834 (Attn: James Gorton, Esq., James.Gorton@lw.com); (ix) counsel to the DIP Lender, Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020 (Attn: Robert Hirsh, rhirsh@lowenstein.com); and (x) counsel to the Buyer, McDermott Will & Emery (Attn: Joanna Lin, jlin@mwe.com, and Elaine Kao, ekao@mwe.com) (collectively, the "Notice Parties") on or before 4:00 p.m. (ET) on January 6, 2022 (the "Objection Deadline").

9.    Hearing to Consider the Proposed UI Transaction.  If any Objections are filed and served, as outlined above, a hearing to consider such transaction shall be held before the Court on January 18, 2022 (a "Hearing").  If no Objections are filed with the Court and served on the Notice

[*Remainder of page intentionally left blank*]

Parties by the Objection Deadline in accordance with the terms of the Procedures Order, then the

Court may enter the Proposed Transaction Order without further notice or a hearing.


Dated: December 23, 2021
        Wilmington, Delaware

                            YOUNG CONAWAY STARGATT & TAYLOR, LLP

                            */s/ Jared W. Kochenash*
                            James L. Patton, Jr. (No. 2202)
                            Robert S. Brady (No. 2847)
                            Michael R. Nestor (No. 3526)
                            Joseph M. Barry (No. 4221)
                            Ryan M. Bartley (No. 4985)
                            Shane M. Reil (No. 6195)
                            Jared W. Kochenash (No. 6557)
                            Rodney Square
                            1000 North King Street
                            Wilmington, Delaware 19801
                            Telephone: (302) 571-6600
                            Facsimile: (302) 571-1253

                            *Counsel to the Debtors and Debtors in Possession*