IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 <br> ) <br> ) Case No. 18-10512 (KBO) <br> ) <br> ) Jointly Administered <br> ) <br> ) **Docket Ref. No. 2966** |
| Zohar III, Corp., *et al.*,[1] | |
| Debtors. | |

**ORDER APPROVING CONSUMMATION OF PORTFOLIO
COMPANY TRANSACTION (UNIVERSAL INSTRUMENTS)**

Upon the *Order in Aid of Implementation of the Global Settlement Agreement Approved in these Cases for Authority to Establish Certain Procedures for the Corporate Approval of Portfolio Company Transactions and for Related Relief*, [Docket No. 545] (the "Procedures Order"); and upon the notice filed with this Court on December 23, 2021 [Docket No. 2966] (the "Transaction Notice")[2] and the declarations attached thereto as Exhibit A (the "Transaction Declarations"); and this Court having jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the sale, pursuant to section 363 of the Bankruptcy Code, of the equity interests (the "UI Interests") in the Company to Buyer (as

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is c/o FTI Consulting, Inc., 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Procedures Order, the Transaction Notice or the EPA, as applicable. The terms "Patriarch Stakeholders" and "Other Stakeholders" as used herein shall have the meanings ascribed thereto in that *certain Order Approving and Authorizing the Settlement Agreement By and Between the Debtors. Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class* dated May 21, 2018 [Docket No. 266].

28975300.2

defined below) pursuant to that certain Equity Purchase Agreement (the "EPA") by and among Delta International Holding Limited B.V., a Netherlands private limited company (the "Buyer"), UI Acquisition Holding Co., a Delaware corporation (the "Company"), and Zohar CDO 2003-1, Limited, Zohar II 2005-1, Limited, Zohar III, Limited, Fair Oaks Income Fund, Eight Bar Financial Partners I, L.P., Francisco Partners Parallel Fund II, LP, and Francisco Partners II, LP (the "Sellers") with Zohar II-2005-1, Corp. acting as the "Seller Representative," dated December 17, 2021 (the "Portfolio Company Transaction"); and it appearing that no other or further notice need be provided; and this Court having found and determined that the consummation of the Portfolio Company Transaction is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

   1. Joseph J. Farnan, Jr., as Independent Director, has been fully charged with governance of the Debtors under applicable Cayman or Delaware law, as applicable, to authorize, approve and consummate the Portfolio Company Transaction, including, but not limited to (i) authorizing the Debtors to vote or consent to any vote, as applicable, any and all of the Debtors' UI Interests in favor of the Portfolio Company Transaction, (ii) exercising any rights of the Debtors with respect to the UI Interests to implement or consummate the Portfolio Company Transaction, and (iii) authorizing and approving the release of Debtors' liens, claims, encumbrances or other interests, including beneficial interests, in connection with the Portfolio Company Transaction.

   2. Subject to the entry of this Order, the Debtors (i) have full corporate power and authority to perform all of their obligations under the EPA and each of the agreements executed in connection therewith and the consummation thereof, and the Debtors' prior execution and delivery of, and performance of obligations under, the EPA and each of the agreements executed

in connection therewith is hereby ratified, (ii) have all of the corporate power and authority necessary to consummate the Portfolio Company Transaction, (iii) have taken all corporate action necessary to authorize, approve, execute and deliver the EPA and each of the agreements executed in connection therewith and the consummation thereof and the Portfolio Company Transaction itself, and (iv) no consents or approvals are required to consummate Portfolio Company Transaction or otherwise perform obligations under the EPA or each of the agreements executed in connection therewith, except for the Closing conditions expressly agreed to therein.

3. Pursuant to section 363 of the Bankruptcy Code,[3] entry by the Debtors into the EPA is hereby authorized and approved as a valid exercise of the Debtors' business judgment.

4. The Debtors are authorized, pursuant to section 363 of the Bankruptcy Code, to enter into the EPA. The EPA (and all ancillary documents), all of the terms and conditions thereof, and all of the transactions contemplated by the Transaction Agreements are hereby approved, including but not limited to the transfer of the Debtors' UI Interests to the Buyer. The failure specifically to include any particular provision of the EPA in the Transaction Notice or this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the EPA be authorized and approved in its entirety. The transfer of the Debtors' UI Interests to the Buyer shall be a legal, valid and effective transfer of the UI Interests.

5. Based upon, among other considerations, the Transaction Notice and the Transaction Declarations, the Independent Director's authorization, approval and consummation of the Portfolio Company Transaction is prudent, in good faith and in the best interest of the

---

[3] The inclusion of section 363 language in this Order is without prejudice to Patriarch's right to object to the inclusion of such language in subsequent portfolio company transactions.

Debtors' estates and stakeholders and is fully consistent with the duties imposed upon him as a fiduciary.

6. The sale of the UI Interests and the consideration provided by the Buyer are fair and reasonable and shall be deemed for all purposes to constitute a transfer for fair value, full and adequate consideration, reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

7. Effective as of the Closing, the sale of the UI Interests by the Debtors shall constitute a legal, valid and effective transfer of the UI Interests notwithstanding any requirement for approval or consent by any person and shall vest Buyer with all rights, title and interests of the Debtors in and to the UI Interests, free and clear of all liens, claims, encumbrances and interests of any kind (including but not limited to (i) beneficial interests and (ii) any liens recorded with the register of mortgages in the Cayman Islands) (collectively, "Encumbrances"), including without limitation those held by parties to the Settlement Order, with such Encumbrances attaching to the proceeds from the UI Transaction with the same validity and priority as such released liens.

8. The sales process conducted by the Debtors was at arms' length, non-collusive, in good faith, and substantively and procedurally fair to all entities. Neither the Buyer nor its designees is an "insider" as that term is defined in section 101(31) of the Bankruptcy Code. The Buyer is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code. Neither the Debtors, the Sellers, nor the Buyer has engaged in any action or inaction that would cause or permit the EPA or the transactions completed by the Transaction Agreements to be avoided or would impose any costs or damages under section 363(n) of the Bankruptcy Code or otherwise.

9. In accordance with Paragraph 18 of the Settlement Agreement, from the Aggregate Closing Consideration, the Patriarch Stakeholders shall receive at closing a payment in the aggregate amount of $5,927,896.50 *plus* the Transaction Fee under the Management Services Agreement (the "Patriarch Closing Date Payment").  The Debtors' rights to challenge and recover any amounts paid to the Patriarch Stakeholders including the Patriarch Closing Date Payment, shall be preserved in accordance with paragraph 18 of the Settlement Agreement, notwithstanding any payment of such amount through the Closing.  Any recovery by the Debtors of the Patriarch Closing Date Payment shall be for the benefit of the Sellers in accordance with their Pro Rata Portions; provided, however, that, prior to any distribution of any recovery of such amounts to the Sellers, the Debtors shall be entitled to set off against such recovery any and all fees and expenses of pursuing such recovery.  Effective as of the Closing of the EPA and receipt of the Patriarch Closing Date Payment, the Patriarch Stakeholders are hereby deemed to release all liens, claims, encumbrances and interests of any kind that could be asserted or have been asserted by the Patriarch Stakeholders against any of the Buyer Releasees or Seller Releasees (both as defined in Section 6.05 of the EPA, which is set forth in paragraph 1(f) of the Transaction Notice), except to the extent that a Patriarch Stakeholder has, or may have in the future, a claim as an Indemnified Person (as defined in section 7.03 of the EPA) for a matter that is wholly unrelated to a Retained Claim.  The Patriarch Stakeholders shall dismiss the pending actions against the Company (the "Pending Actions") with prejudice within 10 days of the occurrence of the Closing.  A list of the Pending Actions is attached hereto as **Exhibit 1**.

10. Service of the Transaction Notice on the releasing parties (including the Patriarch Stakeholders) constitutes proper, timely, adequate, and sufficient notice of the release of the Buyer Releasees and Seller Releasees by the releasing parties as set forth in Section 6.05 of

the EPA and as described in the Transaction Notice and this Order (the "Release"). The Release is hereby approved in all respects and in its entirety and shall be effective as of the Closing.

11. Subject to the occurrence of the Closing of the EPA, if not already terminated or expired, the Management Services Agreement between UI Acquisition Holding Co. and Patriarch Partners Management Group, LLC, dated as of March 14, 2011, as amended (the "MSA"), shall be deemed to have terminated.

12. The Debtors are authorized to execute and deliver all instruments and documents, and take such other action—including the exercise of any shareholder or lender approval rights—as may be necessary or appropriate to consummate, implement and effectuate the Portfolio Company Transaction.

13. Zohar II 2005-1, Corp., in its capacity as the Seller Representative under the EPA, shall be authorized to establish and maintain an escrow account with Ankura Trust Company, LLC, for the purposes of holding and disbursing the Representative Fund Amount as directed by the Seller Representative in accordance with the terms of the EPA. Section 345 of the Bankruptcy Code shall be waived (to the extent applicable) with respect to the Representative Fund Amount and the related escrow account.

14. Any and all amounts received by, or to be paid to, Zohar I on account of the UI Interests held by Zohar I shall be paid to MBIA Insurance Corporation.

15. Nothing in this Order shall modify or waive any Closing conditions or termination rights in the EPA, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

16. This Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, the Patriarch Stakeholders, the Other

Stakeholders, Lynn Tilton, all holders of any interests or claims (whether known or unknown) against any Debtor, the Buyer, the Company, and all successors and assigns of Buyer, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases.

17. The provisions of this Order and the EPA are non-severable and mutually dependent.

18. As provided by Bankruptcy Rule 9014, the terms and conditions of this Order shall be effective immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rules 6004(h) and 6006(d). Time is of the essence in closing the sale and the Debtors and the Buyer intend to close the sale as soon as possible.

19. The EPA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court.

20. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in these chapter 11 cases, any subsequent chapter 7 or chapter 11 case of the Debtors, or any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the EPA or the terms of this Order.

21. With respect to the Retained Claims as set forth in the EPA:

a. Retained Claims shall be assigned to the Seller Representative for the benefit of the Participating Sellers, and the Seller Representative shall be vested with authority to prosecute the Retained Claims on behalf of the Company, without challenge by virtue of this assignment to standing or the ability of the Seller Representative to file and prosecute any and all Retained Claims. The Retained Claims shall be subject to any defenses by any Patriarch Stakeholder and any counterclaims of any Patriarch Stakeholders, which defenses and counterclaims may only be commenced, filed and prosecuted upon commencement of and in response to a Retained Claim

Action (defined below) and which shall exclude claims or counterclaims of the Patriarch Stakeholders that have been released.

b. In the event the Seller Representative commences and files a cause of action based upon a Retained Claim (a "Retained Claim Action") against any Patriarch Stakeholder, then any right to indemnification from the Company to which such Patriarch Stakeholder may be entitled by virtue of Article IX of the Company's Certificate of Incorporation or applicable law, and/or right to indemnification and advancement from the Company to which such Patriarch Stakeholder may be entitled under the terms of the MSA may be, and shall only be, asserted against and paid by the Participating Sellers subject to the Participating Sellers' right to assert any exclusions or defenses against such claims that the Participating Sellers have or that could otherwise be or have been asserted by the Company, provided, however, that such claim, if any, shall be net of any recoveries under the Company's insurance policies that such Patriarch Stakeholder may be entitled to receive. For the avoidance of doubt, nothing in this paragraph shall modify, curtail or impact the releases provided by the Patriarch Stakeholders in favor of the Company under paragraph 9 hereof or Section 6.05 of the EPA.

c. The Sellers shall continue to maintain the "Retained Claims" escrow (presently in the amount of $825,000) to account and pay indemnification and advancement obligations identified in and in accordance with paragraph 21(b). The parties acknowledge that the indemnity and advancement obligations may exceed the amount placed in escrow and that the escrow shall not limit the amount of any indemnity and advancement obligations identified in paragraph 21(b) to be claimed or paid.

d. The Seller Representative shall commence any Retained Claim Action on or before the date that is nine (9) months after entry of the Bankruptcy Approval Order by the Bankruptcy Court (the "Retained Claim Deadline"), or such later date as agreed to in writing by the Sellers and subject proposed Patriarch Stakeholder defendant. If Retained Claims are not commenced by the Retained Claim Deadline, then the Retained Claims and any counterclaims, claims and defenses relating thereto shall be deemed to be released.

22. This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

**Dated: January 10th, 2022**
**Wilmington, Delaware**

*Ka B. O___*

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**

28975300.2