# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*,[1]<br><br>                               Debtors. | Chapter 11<br><br>Case No. 18-10512 (KBO)<br><br>Jointly Administered<br>**Re: Docket No. 3059** |
| LYNN TILTON; PATRIARCH PARTNERS VIII, LLC; PATRIARCH PARTNERS XIV, LLC; PATRIARCH PARTNERS XV, LLC; OCTALUNA, LLC; OCTALUNA II, LLC; AND OCTALUNA III, LLC,<br><br>                               Plaintiffs,<br>          v.<br><br>MBIA INC., MBIA INSURANCE CORPORATION, U.S. BANK, N.A., ALVAREZ & MARSAL ZOHAR MANAGEMENT, CREDIT VALUE PARTNERS, LP, BARDIN HILL INVESTMENT PARTNERS F/K/A HALCYON CAPITAL MANAGEMENT LP, COÖPERATIEVE RABOBANK U.A., VÄRDE PARTNERS, INC., ASCENSION ALPHA FUND LLC, ASCENSION HEALTH MASTER PENSION TRUST, CAZ HALCYON OFFSHORE STRATEGIC OPPORTUNITIES FUND, L.P., CAZ HALCYON STRATEGIC OPPORTUNITIES FUND, L.P., BROWN UNIVERSITY, HCN LP, HALCYON EVERSOURCE CREDIT LLC, HLF LP, HLDR FUND I NUS LP, HLDR FUND I TE LP, HLDR FUND I UST LP, HALCYON VALLÉE BLANCHE MASTER FUND LP, BARDIN HILL EVENT-DRIVEN MASTER FUND LP, PRAETOR FUND I, A SUB FUND OF PRAETORIUM FUND I ICAV; HIRTLE CALLAGHAN TOTAL RETURN OFFSHORE FUND LIMITED; HIRTLE CALLAGHAN TOTAL RETURN OFFSHORE FUND II LIMITED; HIRTLE CALLAGHAN TRADING PARTNERS, L.P.; AND THIRD SERIES OF HDML FUND I LLC.,<br><br>                               Defendants. | Adversary No. 19-50390 (KBO)<br>**Re: Adv. Docket No. 174** |

---

[1]     The Debtors, and, where applicable, the last four digits of each of their respective taxpayer identification numbers, are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is c/o FTI Consulting, Inc., 1166 Avenue of the Americas, New York, NY 10036.

**PATRIARCH STAKEHOLDERS' OBJECTION TO DEBTORS' MOTION FOR AN ORDER ESTABLISHING A SCHEDULE AND CERTAIN PROTOCOLS IN CONNECTION WITH THE PENDING EQUITABLE SUBORDINATION PROCEEDING, THE PATRIARCH ADMINISTRATIVE CLAIM, AND CONFIRMATION OF THE JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR ZOHAR III, CORP. AND ITS AFFILIATED DEBTORS**

The Patriarch Stakeholders, by and through their counsel, hereby object to the *Debtors' Motion for an Order Establishing a Schedule and Certain Protocols in Connection with the Pending Equitable Subordination Proceeding, the Patriarch Administrative Claim, and Confirmation of the Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors* [D.I. 3059/Adv. D.I. 174] (the "Scheduling Motion").[2] In support of this Objection, Patriarch respectfully states as follows:

**INTRODUCTION**

1. After years of lying in wait, delaying their response to the Equitable Subordination Complaint and ignoring the Patriarch Stakeholders' November proposal to commence discovery in that proceeding alongside the other adversary proceedings, MBIA's end game is now clear: leverage its support of a chapter 11 plan on a provision that "declares" MBIA the winner of the equitable subordination action, and require the Patriarch Stakeholders to litigate their equitable subordination claims on an impossible, expedited timetable. If successful in these efforts, post-confirmation MBIA and the Zohar III Controlling Class will take control of the Debtors' assets including their adversary proceeding, without any worry of the Patriarch Stakeholders' substantial equitable subordination claims.

---

[2] "Patriarch Stakeholders" has the meaning defined in the parties' settlement agreement [D.I. 266, Ex. A], as well any other Lynn Tilton affiliates. Other capitalized terms not otherwise defined herein shall have the meanings set forth in the Scheduling Motion.

2.      MBIA, with the Debtors' lead, set up this proceeding to leave the Court with a Hobson's choice of either (i) ruling against the Patriarch Stakeholders on equitable subordination or (ii) denying confirmation of the Debtors' proposed plan. There are, of course, many alternative ways for the Debtors to confirm a plan faster and more efficiently, without MBIA needing to be declared the winner of the equitable subordination proceeding in advance. The Debtors could even propose and solicit a plan that provides for two alternatives—one if the equitable subordination claim is successful, and the other if it is not, so that the outcome of equitable subordination does not hold the process hostage as MBIA attempts to orchestrate here. The Patriarch Stakeholders understand that the Debtors are entitled to propose a plan of their choosing. But the Court should not have sympathy for them if, in the end, a Patriarch Stakeholders' victory on equitable subordination dooms the one-way ticket they chose to buy to plan confirmation.

3.      Because the Debtors have chosen to rest their confirmation hopes entirely on the outcome of the equitable subordination proceeding—no doubt as a tactic to convince the Court that it must quickly rule against the Patriarch Stakeholders to achieve confirmation—the trial on equitable subordination (and the administrative expense claim) must be conducted and decided in advance of the confirmation hearing. If the Patriarch Stakeholders succeed on equitable subordination, there is no sense in wasting resources on a confirmation hearing and a plan that, on its face, cannot be confirmed as a matter of law. If the Debtors are required to go back to the drawing board and resolicit a new plan following the Court's ruling on equitable subordination, they will have only themselves to blame.

4.      The confirmation portion of the Scheduling Motion is intentionally premature, and again is intended to put the Patriarch Stakeholders in a disadvantaged position on equitable

subordination. The exact discovery plan and time necessary to prepare for and conduct a trial on equitable subordination (and the administrative expense claim) depends on the outcome of two pending motions—the Motion to Strike significant portions of the administrative expense claim (scheduled for February 22nd), and the Motions to Dismiss equitable subordination (scheduled for March 3rd). Without these two decisions, which could materially impact the scope of document discovery, depositions and trial time needed, it is a fools' errand to gauge a reasonable trial or discovery schedule.

5. The Patriarch Stakeholders respectfully submit that the most logical first step in this process would be to require the parties to issue written discovery on the Administrative Expense Claim and the Equitable Subordination Complaint, and continue the rest of the relief in the Scheduling Motion to the omnibus hearing on March 23rd, when the parties will most certainly be in a better position to weigh in on a more complete scheduling order in these matters. During the month between the February and March hearings, the parties can productively issue written discovery and prepare to produce documents, so that neither the Motion to Strike nor the Motions to Dismiss delay discovery from starting.

6. For these reasons, as detailed below, the Scheduling Motion should be denied without prejudice or continued to March 23rd, except to require the parties to issue written discovery requests and establish a deadline to complete document productions prior to the start of depositions.

**BACKGROUND**

A. **Equitable Subordination Proceeding**

7. On October 1, 2019, certain Patriarch Stakeholders commenced an adversary proceeding against MBIA, the Indenture Trustee, AMZM and the Controlling Class for equitable subordination on account of such defendants' alleged actions. *See* Adv. Docket No. 1. The Patriarch Stakeholders initially agreed to three successive requests to extend the defendants' time to respond. *See* Adv. Docket Nos. 18, 22, 25 (orders approving agreed extensions for a total of over 5 months, through April 8, 2000). After six months, on March 23, 2000, the Equitable Subordination defendants moved to extend their deadline to respond pending an order on MBIA's and the Zohar III Noteholders' motions to transfer two actions pending in the U.S. District Court for the Southern District of New York. This time, the Patriarch Stakeholder plaintiffs objected, pointing out that it was unfair to delay the Equitable Subordination lawsuit for an unknown period of time while insisting that the Patriarch Stakeholders move forward in responding to the Debtors' and MBIA's adversary proceedings. By Order entered on July 23, 2020, the Court granted the extension over the Patriarch Stakeholders' objection. *See* Adv. Docket No. 46 (extending deadlines). The transfer motions were ultimately denied, and he deadline to move to dismiss was subsequently set for October 30, 2020 (Adv. Docket. No. 51), more than a year after the lawsuit was filed.

8. Briefing on the motions to dismiss the Equitable Subordination Complaint was completed in early March 2021. *See* Adv. Docket No. 122 (March 16, 2021 notice of completion of briefing). By that time, the Patriarch Stakeholders' motions to dismiss the other two adversary proceedings were already fully briefed and under advisement. The Court decided

those motions on June 18, 2021 (Debtors' adversary proceeding) and July 23, 2021 (MBIA's adversary proceeding). MBIA filed an amended complaint on September 24, 2021.

9. Oral argument on the motions to dismiss the Equitable Subordination Complaint was originally scheduled for October 27, 2021. At a hearing in the main case the prior week (October 19, 2021), the Court approved the Patriarch Stakeholders' sealed disclosure of certain information that, notwithstanding MBIA's own recent disclosures to which the Debtors raised no objection, the Debtors claimed was subject to mediation protection. As a result of that hearing, the Patriarch Stakeholders requested a brief continuance of oral argument to permit them to file a motion to amend the complaint so that they could add allegations concerning the matters subject to the mediation motion. Two weeks later, on November 5, 2021, the Patriarch Stakeholders filed a motion to amend the Equitable Subordination complaint.

10. On December 16, 2021, the Court entered an order granting the motion to amend and directing the amended complaint to be filed in 7 business days. The parties subsequently stipulated to an extension of that deadline through January 6, 2022, which was approved by the Court. The amended complaint was filed on January 6, 2022. On January 21, 2022, the Court approved an agreed briefing schedule on motions to dismiss. Motions have been filed, the Patriarch Stakeholders are filing oppositions on February 17, 2022, defendants' replies are due on February 24, 2022, and oral argument is scheduled for March 3, 2022.

**B.    The Patriarch Stakeholders' Rejected Proposal to Commence Discovery in the Equitable Subordination and Other Adversaries**

11. For at least the last six months, the parties were engaged in discussions regarding the schedules for discovery in the three pending adversary proceedings. During a meet and confer with the Debtors and MBIA in July 2021, the Patriarch Stakeholders made clear their view that, given the substantial overlap in the three complaints, it would be most efficient to

coordinate discovery among all the adversary proceedings. On October 26, 2021, the Debtors proposed a discovery stipulation which provided for, *inter alia*, the issuance of discovery requests and production of documents in the Debtors' adversary and MBIA's adversary against the Patriarch Stakeholders, but not in the Equitable Subordination action. On November 14, 2021, the Patriarch Stakeholders responded with a revised proposal that included the prompt issuance of discovery requests and document production in all three cases.  While not clear to the Patriarch Stakeholders at the time, now that the Plan has been made public, it is clear that the Debtors and MBIA were planning to insist that equitable subordination be tried prior to or as part of confirmation, yet they still refused to agree to start discovery on equitable subordination when it was proposed it November.  Indeed, the Debtors did not respond to that proposal for approximately 7 weeks, when on January 5, 2022 when the Debtors sent a revised draft stipulation that struck the equitable subordination proceeding from the Patriarch Stakeholders' November joint discovery proposal.  With the benefit of hindsight, it is clear that Debtors and MBIA's refusal to start discovery on equitable subordination was designed to jam the Patriarch Stakeholders by forcing them to conduct expedited discovery after the Debtors' filed their proposed Plan.

12. Had the parties accepted the Patriarch Stakeholders' November discovery proposal, written discovery would already have been issued in all three proceedings and the parties undoubtedly would be preparing to produce documents. To date, though, because of the Debtors' objections to the Patriarch Stakeholders' proposal to coordinate discovery across all three actions, there has been no discovery in any of the three adversary proceedings.

### C. The Patriarch Claim, Amendment Thereto, and Motion to Strike

13. On August 18, 2021, the Debtors sought to establish a bar date for administrative expense claims. Docket No. 2742. The Patriarch Stakeholders objected to the administrative bar date. Docket No. 2753. The Court overruled the Patriarch Stakeholders' objection and established an administrative expense claim bar date of October 25, 2021.

14. Prior to filing the October 25, 2021 administrative bar date established by the Court, the Patriarch Stakeholders sought permission to make certain disclosures in the claim that the Debtors contend are protected mediation materials. As noted above, on October 19, 2021, the Court granted that request and directed the Patriarch Stakeholders to file the materials under seal, and directed parties to move to strike any materials they believe should be protected, so the Court could rule on the dispute in the context of a motion to strike. Consistent with that ruling, and in accordance with the administrative bar date order, on October 25, 2021, the Patriarch Stakeholders filed the Patriarch Claim under seal.

15. More than three months later, on January 31, 2022, the Debtors filed the Motion to Strike. Docket No. 3040. On that same day the Debtors filed a preliminary objection to the Patriarch Claim. Docket No. 3041. Four days later, on February 3, 2022, the Patriarch Stakeholders served the Debtors with an amendment to the Patriarch Claim (the "Amended Patriarch Claim"). The Motion to Strike is scheduled for hearing on February 22, 2022.

### D. The Plan and Scheduling Motion

16. On January 31, 2022, the same day the Debtors filed the Motion to Strike and preliminary objection to the Patriarch Claim, the Debtors filed their proposed chapter 11 plan [Docket No. 3042] (the "Plan"). On February 8, 2022, the Debtors filed the Scheduling Motion which is also scheduled for hearing on February 22, 2022. Among other things, that Scheduling

Motion seeks to cram document, fact and expert discovery, and trial preparation, on the Administrative Expense Claim, Equitable Subordination and confirmation, into an impossibly constrained two month window, culminating in a consolidated trial to commence on April 28, 2022.

## OBJECTION

17. The Patriarch Stakeholders respectfully submit that, with the exception of setting deadlines for document discovery, the Scheduling Motion should be denied without prejudice or continued to the omnibus hearing on March 23rd, for several independent reasons.

18. As a threshold matter, it is premature to commit to a deposition discovery and trial schedule until the scope of relevant disputes is more clear. This requires awaiting decisions by the Court on the Motion to Strike (argument scheduled for February 22nd) and the Motion to Dismiss (argument scheduled for March 3rd). The decision on the Motion to Strike will impact a number of critical issues, including the number of depositions and trial witnesses that will be required for any consolidated proceeding. It is impossible to evaluate the reasonableness of the Debtors' proposed deposition schedule and trial time without first having a ruling on the Motion to Strike. The Motion to Dismiss is equally as important, as the parties must understand the claims and parties that will be subject to discovery, depositions and trial. Accordingly, the Patriarch Stakeholders respectfully request that the Court deny without prejudice or continue the Scheduling Motion to the March 23rd hearing.

19. Assuming *arguendo* the Court finds it appropriate to enter a scheduling order on February 22nd, which it should not, the Debtors' proposal is flawed in several overarching respects.

20.     *First*, the Patriarch Stakeholders agree that, subject to the Court's upcoming rulings, the Administrative Expense Claim and Equitable Subordination should be tried on a consolidated basis. Where the parties diverge, however, is on the issue of whether these matters should be "baked" into a confirmation proceeding. The Patriarch Stakeholders submit that it would be unfair and inefficient to hold a combined trial on confirmation with the Administrative Expense Claim and Equitable Subordination.

21.     The Debtors' proposed Plan expressly assumes that the Patriarch Stakeholders will not prevail on their equitable subordination claims. While the Debtors could have crafted a variety of mechanisms to permit their Plan to be confirmed without this assumption, the Debtors chose to propose a Plan with an express condition. Thus, the Debtors should not be permitted to proceed to confirmation until the threshold equitable subordination issue is first decided. It would be unfair to force parties to incur the additional expenses of a confirmation hearing without answering the key gating issue of its confirmability.

22.     *Second*, the proposed schedule is unworkable as proposed and aggressive to the point of infringing on the Patriarch Stakeholders' rights to prosecute their claims in a fair and just manner. After causing the motions to dismiss to be briefed a year and a half after the case was filed, and after having resisted conducting any discovery for many months, the Debtors and MBIA now seek to force the entire document and deposition discovery process, pretrial briefing and coordination, and trial to occur in two months. This proposal is utterly untenable, unfair and wholly unnecessary.

23.     If the Patriarch Stakeholders were to provide an estimated timeframe for discovery and hearing without complete information (on a hypothetical combined administrative expense claim/equitable subordination hearing), the Patriarch Stakeholders estimate that

following schedule would be minimally necessary, subject to the number of depositions and witnesses other parties expect to call:

| **Rule 26 Initial Disclosures** | **5 days from Order** |
|---|---|
| **Initial Written Discovery Requests Issue Date** | **15 days from Order** |
| **Written Responses to Initial Written Discovery** | **30 days from Order** |
| **Document Discovery (including third parties)** | **60 days from Order[3]** |
| **Fact Depositions** | **30 days from Document Discovery Close** |
| **Expert Discovery** | **14 days from Fact Depositions Close** |
| **Pre-Trial Memos, Stipulations, Etc.** | **30 days from Expert Depositions Close** |
| **Combined Trial (Claim and ES)[4]** | **5 days** |
| **Post-Trial Briefs** | **5 days from Trial Conclusion** |
| **Post-Trial Replies** | **5 days from Initial Briefs** |
| **Post-Trial Argument** | **Approx. 5 days from Close of Briefing** |

24. The above schedule is a good faith estimate of the minimum time the Patriarch Stakeholders believe will be needed for a combined administrative claim and equitable subordination hearing, and does not include all intermittent deadlines such as the deadline to answer the Amended Equitable Subordination Complaint and applicable deadlines for briefing the Amended Patriarch Claim objections.[5] To be clear, this is still a highly ambitious schedule

---

[3] The Patriarch Stakeholders submit that the first three deadlines should be set on February 22nd.

[4] Ms. Tilton has a multi-week jury trial in New York starting on July 5th which has been continued twice already due to COVID.

[5] Including the deadline for the Patriarch Stakeholders to file a reply if an amendment to the Patriarch Claim is required, which is missing from the Debtors' proposed schedule.

11

that could prove to be unworkable depending on the Debtors' or other parties' intentions with the scope of discovery and witnesses. The Patriarch Stakeholders respectfully urge the Court to await entering a fulsome scheduling order and setting trial dates until the Court rules on the Motion to Strike and Motion to Dismiss. The Patriarch Stakeholders are committed to using the time between February 22nd and March 23rd productively by issuing and preparing the production of documents for trial, so that no parties will be harmed by the requested continuance to March 23rd. This is a fair and just outcome under the circumstances, especially when considering (i) the serious delays in litigating these matters to completion that have occurred prior to now, (ii) the parties' refusal to agree to start discovery on Equitable Subordination in November when proposed by the Patriarch Stakeholders, (iii) the Patriarch Stakeholders' due process rights, and (iv) the serious and heavy issues to be tried.

## CONCLUSION

14.     For the foregoing reasons, Patriarch respectfully requests that this Court (i) set deadlines for the issuance of written discovery and document production and otherwise deny the Scheduling Motion without prejudice or continue it to March 23rd; and (ii) grant such other relief as may be just and proper.

[*Remainder of Page Blank – Signatures to Follow*]

Dated: February 15, 2022
     Wilmington, Delaware

**COLE SCHOTZ P.C.**

By: */s/ G. David Dean*
    Norman L. Pernick (No. 2290)
    G. David Dean (No. 6403)
    Patrick J. Reilley (No. 4451)
    500 Delaware Avenue, Suite 1410
    Wilmington, DE 19801
    Telephone: (302) 652-3131
    Facsimile: (302) 652-3117
    npernick@coleschotz.com
    ddean@coleschotz.com
    preilley@coleschotz.com

    – and –

**SHER TREMONTE LLP**
Theresa Trzaskoma (Admitted Pro Hac Vice)
90 Broad Street, 23rd Floor
New York, New York 10004
Telephone: (212) 202-2600
Facsimile: (212) 202-4156
ttrzaskoma@shertremonte.com

*Counsel to Lynn Tilton, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Patriarch Partners XV, LLC, Octaluna, LLC, Octaluna II, LLC, and Octaluna III, LLC*