**EXHIBIT A**

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Zohar III, Corp., *et al.*, | ) | Case No. 18-10512 (KBO) |
| | ) | |
| Debtors[1]. | ) | Jointly Administered |
| | ) | |

**FIRST AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE
BANKRUPTCY CODE FOR ZOHAR III, CORP. AND ITS AFFILIATED DEBTORS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4421)
Ryan M. Bartley (No. 4985)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Attorneys for the Debtors*

Dated:  March 21, 2022

---

[1]     The Debtors and the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

# TABLE OF CONTENTS

**Page**

**ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION** ........................................... 1

1.1. "A Notes" ............................................................................................................. 2

1.2. "A-1 Notes" ......................................................................................................... 2

1.3. "A-2 Notes" ......................................................................................................... 2

1.4. "A-3 Notes" ......................................................................................................... 2

1.5. "Adequate Protection Claims" ........................................................................... 2

1.6. "Administrative Claim" ...................................................................................... 2

1.7. "Administrative and Priority Claims Escrow Account" ..................................... 2

1.8. "Affiliate" ............................................................................................................ 2

1.9. "Allow" ............................................................................................................... 2

1.10. "AMZM" ............................................................................................................. 3

1.11. "AMZM Escrow Accounts" ................................................................................ 3

1.12. "Ankura" ............................................................................................................. 3

1.13. "Ankura CM Agreements" .................................................................................. 3

1.14. "Ankura CMA Order" ......................................................................................... 3

1.15. "Ankura CMA Escrows" ..................................................................................... 3

1.16. "Asset Recovery Entity" ..................................................................................... 3

1.17. "Asset Recovery Entity Agreement" .................................................................. 3

1.18. "Asset Recovery Manager" ................................................................................ 3

1.19. "Avoidance Actions" .......................................................................................... 4

1.20. "B Notes" ............................................................................................................ 4

1.21. "Ballot" ............................................................................................................... 4

1.22. "Bankruptcy Code" ............................................................................................. 4

1.23. "Bankruptcy Court" ............................................................................................ 4

1.24. "Bankruptcy Rules" ............................................................................................ 4

1.25. "Bankruptcy Schedules" ..................................................................................... 4

1.26. "Bar Date" ........................................................................................................... 4

1.27. "Bar Date Order" ................................................................................................. 4

1.28. "Business Day" .................................................................................................... 4

1.29. "Case Expenses Allocation" ............................................................................... 4

1.30. "Cash" .................................................................................................................. 4

1.31. "Cash Collateral Order" ...................................................................................... 4

1.32. "Causes of Action" .............................................................................................. 5

1.33. "Chapter 11 Cases" ............................................................................................. 5

1.34.   "Claim" ............................................................................................................. 5

1.35.   "Confirmation" ................................................................................................. 5

1.36.   "Confirmation Hearing" ................................................................................... 5

1.37.   "Confirmation Date" ......................................................................................... 5

1.38.   "Confirmation Order" ....................................................................................... 5

1.39.   "Controlling Class" ........................................................................................... 5

1.40.   "Controlling Party" ........................................................................................... 5

1.41.   "D&O Indemnity Escrow Account" ................................................................. 5

1.42.   "D&O Indemnity Escrow Agreement" ............................................................ 5

1.43.   "Debtors" ........................................................................................................... 5

1.44.   "DIP Claims" ..................................................................................................... 6

1.45.   "DIP Credit Agreement" ................................................................................... 6

1.46.   "DIP Debtors" .................................................................................................... 6

1.47.   "DIP Lenders" .................................................................................................... 6

1.48.   "DIP Order" ....................................................................................................... 6

1.49.   "Disallowed" ...................................................................................................... 6

1.50.   "Disclosure Statement" ..................................................................................... 6

1.51.   "Disclosure Statement Order" .......................................................................... 6

1.52.   "Disputed" .......................................................................................................... 6

1.53.   "Distributable Cash" ......................................................................................... 6

1.54.   "Distribution" .................................................................................................... 7

1.55.   "Distribution Agent" ......................................................................................... 7

1.56.   "Effective Date" ................................................................................................. 7

1.57.   "Entity" ............................................................................................................... 7

1.58.   "Escrow Accounts" ............................................................................................ 7

1.59.   "Estate" ............................................................................................................... 7

1.60.   "Exculpated Parties" ......................................................................................... 7

1.61.   "File" ................................................................................................................... 7

1.62.   "Final Order" ..................................................................................................... 7

1.63.   "General Unsecured Claim" .............................................................................. 8

1.64.   "Governmental Authority" ............................................................................... 8

1.65.   "Group A PC Assets" ........................................................................................ 8

1.66.   "Holder" ............................................................................................................. 8

1.67.   "Impaired" .......................................................................................................... 8

1.68.   "Indenture Trustee" .......................................................................................... 8

1.69.   "Indenture Trustee Claims" .............................................................................. 8

1.70.   "Independent Director" ...................................................................................... 8

1.71.   "Insider" .............................................................................................................. 8

1.72.   "Interest" ............................................................................................................. 8

1.73.   "Interim Compensation Order" ........................................................................... 9

1.74.   "July 2nd Order" ................................................................................................. 9

1.75.   "Lien" .................................................................................................................. 9

1.76.   "Litigation Assets" .............................................................................................. 9

1.77.   "Litigation Trust" ................................................................................................ 9

1.78.   "Litigation Trust Agreement" ............................................................................. 9

1.79.   "Litigation Trustee" ............................................................................................. 9

1.80.   "Local Bankruptcy Rules" ................................................................................... 9

1.81.   "MBIA" ............................................................................................................... 9

1.82.   "New Notes" ........................................................................................................ 9

1.83.   "Noteholder" ........................................................................................................ 10

1.84.   "Noteholder Claims" ........................................................................................... 10

1.85.   "Other Assets" ..................................................................................................... 10

1.86.   "Other Priority Claim" ........................................................................................ 10

1.87.   "Paragraph 18 Bar Order" ................................................................................... 10

1.88.   "Patriarch CMA Fee Dispute Documents" .......................................................... 10

1.89.   "Patriarch Disputed CMA Fee Claims" ............................................................... 10

1.90.   "Patriarch Disputed CMA Fee Escrow" .............................................................. 10

1.91.   "Patriarch Disputed CMA Fee Escrow Agreement" ............................................ 10

1.92.   "Patriarch Stakeholders" ..................................................................................... 10

1.93.   "Person" ............................................................................................................... 11

1.94.   "Petition Date" ..................................................................................................... 11

1.95.   "Plan" ................................................................................................................... 11

1.96.   "Plan Supplement" ............................................................................................... 11

1.97.   "Portfolio Companies" ......................................................................................... 11

1.98.   "Post-Effective Date Administrative Claims Bar Date" ....................................... 11

1.99.   "Priority Tax Claim" ............................................................................................ 11

1.100.  "pro rata" ............................................................................................................. 11

1.101.  "Professional" ...................................................................................................... 11

1.102.  "Professional Claim" ........................................................................................... 12

1.103.  "Professional Claims Escrow Account ................................................................ 12

1.104.  "Professional Claims Escrow Amount" ............................................................... 12

1.105.  "Proof of Claim" .................................................................................................. 12

29197034.1

1.106. "Related Parties" ................................................................................................ 12

1.107. "Released Parties" ............................................................................................... 12

1.108. "Releasing Parties" ............................................................................................. 12

1.109. "Remaining Assets" ............................................................................................ 12

1.110. "Retained Claims Escrow" .................................................................................. 13

1.111. "Sale Orders" ...................................................................................................... 13

1.112. "Settlement Agreement" ...................................................................................... 13

1.113. "Solicitation Package" ......................................................................................... 13

1.114. "Stila Proceeding" ............................................................................................... 13

1.115. "Transaction Documents" .................................................................................... 13

1.116. "Unimpaired" ....................................................................................................... 13

1.117. "U.S. Trustee" ...................................................................................................... 13

1.118. "U.S. Trustee Fees" ............................................................................................. 13

1.119. "Voting Deadline" ................................................................................................ 13

1.120. "Wind-Down Administrator" ................................................................................. 13

1.121. "Wind-Down Company" ....................................................................................... 13

1.122. "Wind-Down Funding Escrow" ............................................................................ 13

1.123. "Zohar Funds" ..................................................................................................... 13

1.124. "Zohar I" .............................................................................................................. 14

1.125. "Zohar I A-3 Note Claims" ................................................................................... 14

1.126. "Zohar I B Note Claims" ...................................................................................... 14

1.127. "Zohar I Corp." .................................................................................................... 14

1.128. "Zohar I Credit Enhancement Claims" ................................................................ 14

1.129. "Zohar I Indenture" .............................................................................................. 14

1.130. "Zohar I Indenture Trustee Claims" ..................................................................... 14

1.131. "Zohar I Issuer Holdback" ................................................................................... 14

1.132. "Zohar I Issuer Holdback Documents" ................................................................ 14

1.133. "Zohar I Limited" .................................................................................................. 14

1.134. "Zohar I Patriarch Disputed CMA Fee Claims" ................................................... 14

1.135. "Zohar I Sale Documents" ................................................................................... 14

1.136. "Zohar II" ............................................................................................................. 14

1.137. "Zohar II Adjusted Plan Value" ........................................................................... 15

1.138. "Zohar II Ankura CM Agreement" ....................................................................... 15

1.139. "Zohar II Ankura CMA Claims" ........................................................................... 15

1.140. "Zohar II Ankura CMA Escrow" ........................................................................... 15

1.141. "Zohar II B Note Claims" ..................................................................................... 15

1.142. "Zohar II Corp." ..................................................................................... 15

1.143. "Zohar II Credit Enhancement Claims" ............................................... 15

1.144. "Zohar II Indenture" .......................................................................... 15

1.145. "Zohar II Indenture Trustee Claims" .................................................. 15

1.146. "Zohar II Intercompany Claim" .......................................................... 15

1.147. "Zohar II Limited" .............................................................................. 15

1.148. "Zohar II Patriarch Disputed CMA Fee Claim" .................................. 15

1.149. "Zohar III" .......................................................................................... 16

1.150. "Zohar III Adjusted Plan Value" ......................................................... 16

1.151. "Zohar III A Note Claims" .................................................................. 16

1.152. "Zohar III A-1 Note Claims" ............................................................... 16

1.153. "Zohar III A-2 Note Claims" ............................................................... 16

1.154. "Zohar III A-3 Note Claims" ............................................................... 16

1.155. "Zohar III Ankura CM Agreement" ..................................................... 16

1.156. "Zohar III Ankura CMA Claims" ........................................................ 16

1.157. "Zohar III Ankura CMA Escrow" ........................................................ 16

1.158. "Zohar III B Note Claims" .................................................................. 16

1.159. "Zohar III Corp." ................................................................................. 16

1.160. "Zohar III Indenture" .......................................................................... 16

1.161. "Zohar III Indenture Trustee Claims" .................................................. 16

1.162. "Zohar III Limited" ............................................................................. 16

1.163. "Zohar III Patriarch Disputed CMA Fee Claim" ................................ 17

1.164. "Zohar Indentures" ............................................................................. 17

1.165. "Zohar-Patriarch Adversay Proceeding" ............................................. 17

**ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS** ............................................. 17

2.1. General Rules of Classification ............................................................ 17

2.2. Classification of Claims and Interests .................................................. 17

2.3. Subordination of Claims Pursuant to Section 510(a) of the Bankruptcy Code ................. 19

**ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS** ............................................. 19

3.1. Administrative Claims .......................................................................... 19

3.2. Time for Filing Administrative Claims ................................................ 19

3.3. Professional Claims .............................................................................. 19

3.4. DIP Claims ........................................................................................... 20

3.5. Adequate Protection Claims ................................................................ 20

3.6. Priority Tax Claims .............................................................................. 20

**ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** ................................ 21

4.1.    Class 1 – Zohar III Other Priority Claims ...................................................21

4.2.    Class 2 – Zohar III Indenture Trustee Claims .............................................21

4.3.    Class 2A – Zohar III Patriarch Disputed CMA Fee Claims .......................21

4.4.    Class 2B – Zohar III Ankura CMA Claims .................................................22

4.5.    Class 3 – Zohar III A-1 Note Claims ..........................................................22

4.6.    Class 4 – Zohar III A-2 Note Claims ..........................................................22

4.7.    Class 5 – Zohar III A-3 Note Claims ..........................................................22

4.8.    Class 6 – Zohar III B Note Claims..............................................................23

4.9.    Class 7 – Zohar III General Unsecured Claims ..........................................23

4.10.   Class 8 - Zohar II Other Priority Claims ....................................................23

4.11.   Class 9 – Zohar II Indenture Trustee Claims ..............................................24

4.12.   Class 9A – Zohar II Patriarch Disputed CMA Fee Claim ..........................24

4.13.   Class 9B – Zohar II Ankura CMA Claims ..................................................24

4.14.   Class 10 - Zohar II Credit Enhancement Claims ........................................24

4.15.   Class 11 – Zohar II B Note Claims .............................................................25

4.16.   Class 12 – Zohar II General Unsecured Claims ..........................................25

4.17.   Class 13 – Zohar I Other Priority Claims ...................................................25

4.18.   Class 14 – Zohar I Indenture Trustee Claims .............................................26

4.19.   Class 14A – Zohar I Patriarch Disputed CMA Fee Claim .........................26

4.20.   Class 15 - Zohar I Credit Enhancement Claims .........................................26

4.21.   Class 16 – Zohar I A-3 Note Claims ..........................................................27

4.22.   Class 17 – Zohar I B Note Claims ..............................................................27

4.23.   Class 18 – Zohar I General Unsecured Claims ...........................................27

4.24.   Class 19 – Interests ....................................................................................27

ARTICLE V ACCEPTANCE OR REJECTION OF THE PLAN ..............................................28

5.1.    Voting of Claims.........................................................................................28

5.2.    Treatment of Vacant Classes ......................................................................28

5.3.    [Reserved]. ..................................................................................................28

5.4.    Nonconsensual Confirmation......................................................................28

ARTICLE VI MEANS OF IMPLEMENTATION OF THE PLAN ...........................................28

6.1.    Emergence Date Transactions.....................................................................28

6.2.    General Settlement of Claims and Interests ................................................32

6.3.    Cancellation of Agreements and Interests; Termination of Liens ...............32

6.4.    Modified Substantive Consolidation...........................................................33

6.5.    Wind-Down Company and Wind-Down Administrator ................................34

6.6.    The Asset Recovery Entities .......................................................................36

6.7.    Post-Confirmation Status of Settlement Agreement ...........................................37

6.8.    Litigation Trust(s) ...........................................................................................38

6.9.    Establishment, Funding and Distribution of Escrow Accounts .......................40

6.10.   Effectuating Documents; Further Transactions ...............................................42

6.11.   Disposition of Books and Records...................................................................42

6.12.   Objection to Pending Request for Allowance of Adequate Protection Claims
        under Section 507(b) .......................................................................................43

6.13.   Approval of Case Expense Allocation .............................................................43

6.14.   Disposition of Zohar II Intercompany Claim...................................................43

6.15.   Treatment of Zohar II Indenture Trustee Claim and Zohar III Indenture Trustee
        Claim................................................................................................................43

6.16.   Disposition of Patriarch Disputed CMA Fee Claims .......................................44

**ARTICLE VII DISTRIBUTIONS UNDER THE PLAN** ............................................44

7.1.    Delivery of Distributions .................................................................................44

7.2.    Undeliverable and Unclaimed Distributions....................................................44

7.3.    Distribution Record Date; Transfer of Claims .................................................45

7.4.    Manner of Payment..........................................................................................45

7.5.    Time Bar to Cash Payments by Check .............................................................45

7.6.    Setoffs and Recoupment ..................................................................................45

7.7.    Allocation of Plan Distributions Between Principal and Interest .....................46

7.8.    Interest on Claims ............................................................................................46

7.9.    No Distribution in Excess of Allowed Amount of Claim .................................46

7.10.   Payment of Taxes on Distributions Received Pursuant to the Plan; Required
        Compliance with Withholding and Reporting Obligations................................46

7.11.   Minimum Distribution Amounts; Rounding .....................................................47

**ARTICLE VIII PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED,
AND DISPUTED CLAIMS**................................................................................................48

8.1.    Claims Administration Responsibilities ..........................................................48

8.2.    Claims Objections ...........................................................................................48

8.3.    Estimation of Claims .......................................................................................48

8.4.    Adjustment to Claims Without Objection.........................................................48

8.5.    No Distributions Pending Allowance ..............................................................49

8.6.    Distributions After Allowance .........................................................................49

8.7.    Disallowance of Certain Claims ......................................................................49

8.8.    Claims Paid and Payable by Third Parties .......................................................49

**ARTICLE IX EXECUTORY CONTRACTS AND LEASES** ......................................50

9.1.    Executory Contracts and Unexpired Leases Deemed Rejected ........................50

9.2.     Cure Amounts and Objection to Assumption ............................................................. 50

**ARTICLE X EFFECT OF CONFIRMATION** ............................................................................. 51

10.1.    Binding Effect ........................................................................................................... 51

10.2.    Reservation of Causes of Action/Reservation of Rights .......................................... 51

10.3.    Releases by the Debtors of Certain Parties .............................................................. 51

10.4.    Releases by Non-Debtors .......................................................................................... 51

10.5.    Exculpation ............................................................................................................... 52

10.6.    Plan Injunction .......................................................................................................... 52

10.7.    Term of Bankruptcy Injunction or Stays .................................................................. 53

10.8.    Setoff ......................................................................................................................... 53

10.9.    Preservation of Insurance .......................................................................................... 53

**ARTICLE XI CONDITIONS PRECEDENT TO THE EFFECTIVE DATE;  EFFECT OF FAILURE OF CONDITIONS** .......................................................................................................... 53

11.1.    Conditions Precedent to the Effective Date ............................................................. 53

11.2.    Satisfaction of Conditions ........................................................................................ 54

**ARTICLE XII RETENTION OF JURISDICTION** .................................................................... 55

**ARTICLE XIII MISCELLANEOUS PROVISIONS** .................................................................. 56

13.1.    Corporate Action ...................................................................................................... 56

13.2.    Modification of Plan ................................................................................................. 56

13.3.    Revocation or Withdrawal of the Plan ..................................................................... 57

13.4.    Plan Supplement ....................................................................................................... 57

13.5.    Payment of Statutory Fees ........................................................................................ 57

13.6.    Exemption from Transfer Taxes ............................................................................... 57

13.7.    Expedited Tax Determination ................................................................................... 57

13.8.    Exhibits/Schedules .................................................................................................... 58

13.9.    Substantial Consummation ....................................................................................... 58

13.10.   Severability of Plan Provisions ................................................................................ 58

13.11.   Governing Law ......................................................................................................... 58

13.12.   Conflicts .................................................................................................................... 58

13.13.   Reservation of Rights ............................................................................................... 58

13.14.   Limiting Notices ....................................................................................................... 59

## INTRODUCTION

Zohar III, Corp., Zohar II 2005-1, Corp., Zohar CDO 2003-1, Corp., Zohar III, Limited, Zohar II 2005-1, Limited, and Zohar CDO 2003-1, Limited (each, a "Debtor," and collectively, the "Debtors") hereby propose the following joint plan of liquidation under chapter 11 of the Bankruptcy Code (the "Plan").

Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, properties, and risk factors, together with a summary and analysis of the Plan.  All Holders of Claims entitled to vote on the Plan are encouraged to review the Disclosure Statement and to read the Plan carefully before voting to accept or reject the Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

Subject to certain restrictions and requirements set forth in the Plan and section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan prior to its substantial consummation.

## <u>ARTICLE I</u>

## <u>DEFINED TERMS AND RULES OF INTERPRETATION</u>

For purposes of the Plan, except as expressly provided or unless the context otherwise requires:

a.       all capitalized terms used in the Plan and not otherwise defined in the Plan shall have the meanings ascribed to them in this Article I of the Plan;

b.       any capitalized term used in the Plan that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable;

c.       whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine;

d.       any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

e.       any reference in the Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time;

f.      unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan;

g.      the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

h.      captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and

i.      the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

Unless otherwise defined in the Plan, or the context otherwise requires, the following terms shall have the respective meaning set forth below.

1.1.      "A Notes" means the A-1 Notes, A-2 Notes, and A-3 Notes.

1.2.      "A-1 Notes" means the Class A-1 Notes issued under the applicable Zohar Indenture.

1.3.      "A-2 Notes" means the Class A-2 Notes issued under the applicable Zohar Indenture.

1.4.      "A-3 Notes" means the Class A-3 Notes issued under the applicable Zohar Indenture.

1.5.      "Adequate Protection Claims" means any Claim under sections 507(a) or 507(b) of the Bankruptcy Code arising from the asserted diminution in the value of a lienholder's interest in the applicable Debtors' property during the Chapter 11 Cases, as well as the "507(b) Claims" as defined in and granted under the Cash Collateral Order and the "Adequate Protection 507(b) Claims" as defined in and granted under the DIP Order.

1.6.      "Administrative Claim" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), or 1114(e)(2) of the Bankruptcy Code, including all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.  Administrative Claims do not include Professional Claims, which are separately classified.

1.7.      "Administrative and Priority Claims Escrow Account" means the escrow account, funded and allocated by the applicable Debtor, created and funded on the Effective Date (and after the Effective Date in the case of Zohar I) to be used for the payment of Administrative Claims, Priority Tax Claims, and Other Priority Claims, as described in the Plan.

1.8.      "Affiliate" means "affiliate," as defined in section 101(2) of the Bankruptcy Code.

1.9.      "Allow" and derivations thereof means, except as otherwise provided in the Plan, with respect to any Claim or Interest: (i) a Claim or Interest that has been scheduled by the Debtors in their Bankruptcy Schedules, as may be amended by the Debtors or (following the Effective

Date) the Wind-Down Administrator, as applicable, other than disputed, contingent, or unliquidated; (ii) solely with respect to whether the Holder of a Claim or Interest is entitled to receive a Distribution under the Plan, a Claim or Interest actually filed in the Chapter 11 Cases that is not Disputed; (iii) a Claim or Interest that is allowed (a) by a Final Order; (b) in any stipulation with a Litigation Trustee, of amount and nature of Claim or Interest executed on or after the Effective Date; or (c) in or pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith; and (iv) a Claim or Interest that is allowed pursuant to the terms of the Plan; provided, however, that Claims or Interests temporarily allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered Allowed Claims; provided, further, that any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code shall not be considered an Allowed Claim.

1.10.    "AMZM" means Alvarez & Marsal Zohar Management, LLC.

1.11.    "AMZM Escrow Accounts" means the escrow accounts at JPMorgan Chase Bank, N.A. funded with the senior collateral manager fees payable to AMZM by each of Zohar II and Zohar III.

1.12.    "Ankura" means Ankura Trust Company, LLC.

1.13.    "Ankura CM Agreements" means the Zohar II Ankura CM Agreement and the Zohar III Ankura CM Agreement.

1.14.    "Ankura CMA Order" means the Order (I) Authorizing the Appointment of Ankura Trust Company, LLC as Collateral Manager and (II) Granting Related Relief [Docket No. 1038].

1.15.    "Ankura CMA Escrows" means the Zohar II Ankura CMA Escrow and the Zohar III Ankura CMA Escrow.

1.16.    "Asset Recovery Entity" means each of New Zohar II LLC, Zohar II Intermediate LLC, Zohar II Recovery LLC (and any subsidiary thereof other than a Litigation Trust), New Zohar III LLC, Zohar III Intermediate LLC and Zohar III Recovery LLC (and any subsidiary thereof other than a Litigation Trust) to be formed for purposes of implementing the Plan, as more fully described in Section 6.6 of the Plan, the Disclosure Statement and the Plan Supplement; *provided*, *however*, that the names of the Asset Recovery Entities may be revised and the final names shall be included in the Plan Supplement.

1.17.    "Asset Recovery Entity Agreement" means each agreement pursuant to which the Asset Recovery Entities shall be formed and administered, which will be included in the Plan Supplement, and shall be subject to initial approval of the Bankruptcy Court, as it may be subsequently modified from time to time.

1.18.    "Asset Recovery Manager" means each Person appointed to act as director, manager or comparable position of an Asset Recovery Entity in accordance with the terms of the Plan, the Confirmation Order, and any Asset Recovery Entity Agreement, or any successor appointed in accordance with the terms of any Asset Recovery Entity Agreement.

1.19.    "<u>Avoidance Actions</u>" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtors and their Estates and the recovery, subordination, or other remedies that may be brought by and on behalf of the Debtors and their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code.

1.20.    "<u>B Notes</u>" means the Class B Notes issued under the applicable Zohar Indenture.

1.21.    "<u>Ballot</u>" means the ballot form distributed to each Holder of a Claim entitled to vote to accept or reject the Plan.

1.22.    "<u>Bankruptcy Code</u>" means Title 11 of the United States Code.

1.23.    "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Delaware, or in the event such court ceases to exercise jurisdiction over any Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over such Chapter 11 Case in lieu of the United States Bankruptcy Court for the District of Delaware.

1.24.    "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075.

1.25.    "<u>Bankruptcy Schedules</u>" means the schedules of assets and liabilities Filed by each Debtor pursuant to Bankruptcy Rule 1007.

1.26.    "<u>Bar Date</u>" shall mean, with respect to any particular Claim or Interest, the specific date set by the Bankruptcy Court as the last day for Filing Proofs of Claim, motions or any other requests for allowance of Administrative Claims, or proofs of Interest against the Debtors in the Chapter 11 Cases for that specific Claim or Interest.

1.27.    "<u>Bar Date Order</u>" means the *Order (i) Establishing Deadlines for the Filing of Proofs of Claim and Requests for Payment of Administrative Expenses, (ii) Approving the Form and Manner of Notice Thereof, and (iii) Granting Related Relief* [Docket No. 2778], entered by the Bankruptcy Court on August 27, 2021.

1.28.    "<u>Business Day</u>" means a day other than a Saturday, Sunday or other day on which commercial banks in Wilmington, Delaware are authorized or required by law to close.

1.29.    "<u>Case Expenses Allocation</u>" means the allocation of the administrative expenses of the Chapter 11 Cases among the Zohar I, Zohar II and Zohar III Estates.

1.30.    "<u>Cash</u>" means the legal tender of the United States or equivalent thereof.

1.31.    "<u>Cash Collateral Order</u>" means the *Final Order Under 11 U.S.C. §§ 105, 361, 362, 363 and 507 and Bankruptcy Rules 2002, 4001 and 9014, (I) Authorizing Debtors to Use Cash Collateral (II) Granting Adequate Protection to Prepetition Secured Parties (III) Providing Superpriority Administrative Expense Status; (IV) Modifying Automatic Stay; and (V) Granting*

*Related Relief* entered by the Bankruptcy Court in the Chapter 11 Cases on December 10, 2018 [Docket No. 588] and shall include any subsequent extension thereof.

1.32.     "Causes of Action" means any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, disclosed or undisclosed, suspected or unsuspected, accrued or unaccrued, apparent or unapparent, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable, in contract or in tort, directly or derivatively, of any kind or nature whatsoever, in law, equity or otherwise.

1.33.     "Chapter 11 Cases" means the bankruptcy cases pending in the United States Bankruptcy Court for the District of Delaware captioned as *In re Zohar III, Corp., et al.*, Case No. 18-10512 (KBO) (Bankr. D. Del.) (Jointly Administered).

1.34.     "Claim" means a claim against any Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

1.35.     "Confirmation" means the Bankruptcy Court's confirmation of the Plan pursuant to the Confirmation Order.

1.36.     "Confirmation Hearing" means the hearing(s) held by the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

1.37.     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

1.38.     "Confirmation Order" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.39.     "Controlling Class" means the parties holding a majority of the Class A-1 Notes issued by Zohar III and identified in that certain *Amended Verified Statement Pursuant To Fed. R. Bankr. P. 2019(a)* [Docket No. 635], as may be subsequently amended.

1.40.     "Controlling Party" means, as set forth in the Zohar I and Zohar II Indenture, MBIA in its capacity as credit enhancer.

1.41.     "D&O Indemnity Escrow Account" means the account to be funded on the Effective Date to be used to advance or reimburse the Independent Director, CROs and CMO for indemnifiable expenses.

1.42.     "D&O Indemnity Escrow Agreement" means the agreement governing the disbursement of the funds in the D&O Indemnity Escrow Account.

1.43.     "Debtors" means each of Zohar CDO 2003-1, Limited; Zohar CDO 2003-1, Corporation; Zohar II 2005-1, Limited; Zohar II 2005-1, Corporation; Zohar III, Limited; and Zohar III, Corporation.

1.44.    "DIP Claims" means any and all Claims of the DIP Lenders arising under the DIP Credit Agreement or the DIP Order.

1.45.    "DIP Credit Agreement" means that certain *Senior Secured, Super Priority Debtor-in-Possession Loan and Security Agreements, among the Borrowers, the Guarantors, and JMB Capital Partners Lending, LLC,* dated as of December 16, 2020, as amended by that certain Assignment, Extension and Amendment Agreement**,** dated December 29, 2021 (and as further amended, modified, restated, or supplemented).

1.46.    "DIP Debtors" means Zohar III Limited, Zohar III Corp., Zohar II Limited and Zohar II Corp.

1.47.    "DIP Lenders" means JMB Capital Partners Lending, LLC, Bardin Hill Event-Driven Master Fund LP, HCN LP, and the other lenders that are parties to the DIP Credit Agreement at any time, solely in such capacity.

1.48.    "DIP Order" means the *Final Order (i) Authorizing the Debtors to Obtain Post-Petition Financing (ii) Granting Security Interests and Super-Priority Administrative Expense Status; (iii) Modifying the Automatic Stay; (iv) Authorizing the Debtors to Enter Into Agreements With JMB Capital Partners Lending, LLC; (v) Authorizing Use of Cash Collateral; and (vi) Granting Related Relief* [Docket No. 2191], as amended by the Order entered on December 28, 2021 [Docket No. 2968].

1.49.    "Disallowed" means any Claim that has either been withdrawn by the Holder, disallowed or expunged by an order of the Bankruptcy Court, or for which the Holder has agreed will be treated as a Disallowed Claim for purposes of the Chapter 11 Cases.

1.50.    "Disclosure Statement" means the disclosure statement for the Plan, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, that describes the Plan and is prepared and distributed in accordance with, among other things, sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Rule 3018 of the Federal Rules of Bankruptcy Procedure, and other applicable law.

1.51.    "Disclosure Statement Order" means an order of the Bankruptcy Court approving the Disclosure Statement, authorizing the commencement of solicitation of acceptances and rejections of the Plan, establishing the schedule and deadlines in connection with Confirmation, and establishing related procedures.

1.52.    "Disputed" means, with respect to any Claim or Interest: (i) listed on the Bankruptcy Schedules as unliquidated, disputed, or contingent, unless a Proof of Claim has been timely Filed; (ii) included in a Proof of Claim or request for Allowance of an Administrative Expense for which the Debtors or a Litigation Trustee, as applicable, have not affirmatively determined to Allow; or (iii) which is otherwise disputed by the Debtors or a Litigation Trustee, as applicable, in accordance with applicable law and for which an objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order.

1.53.    "Distributable Cash" means the cash in the applicable Litigation Trust or Asset Recovery Entity after funding in full, or reserving for, the anticipated expenses of administering

such entity (including repayment of any obligations for funded debt, including any New Notes, owed by the entity), as determined in the sole discretion of a Litigation Trustee or Asset Recovery Manager, as applicable.  Solely for Zohar I, Distributable Cash shall also exclude any amounts that a Litigation Trustee is required to deposit into the Administrative and Priority Claims Escrow Account pursuant to Section 6.9(a) of the Plan.

1.54.    "Distribution" means a delivery of Cash by the Distribution Agent to the Holder of an Allowed Claim pursuant to the Plan.

1.55.    "Distribution Agent" means (i) with respect to the Professional Claims Escrow Account and the Administrative and Priority Claims Escrow Account and the related Professional Claims, Administrative Claims, Priority Tax Claims and Other Priority Claims, the Wind-Down Administrator and (ii) with respect to any other Claims or Interests, the applicable Litigation Trustee.

1.56.    "Effective Date" means a Business Day on which (i) no stay of the Confirmation Order is in effect; (ii) all conditions precedent specified in Section 11.1 of the Plan have been satisfied or waived (in accordance with the terms of the Plan); and (iii) the Plan is declared effective by the Debtors by the Filing of a notice on the docket.

1.57.    "Entity" has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

1.58.    "Escrow Accounts" means the Administrative and Priority Claims Escrow Account, the D&O Indemnity Escrow Account, the Professional Claims Escrow Account, the Retained Claims Escrow, and the Wind-Down Escrow Account.

1.59.    "Estate" means each estate created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

1.60.    "Exculpated Parties" means (a) each Professional retained by the Debtors or the Independent Director after the Petition Date, (b) Joseph J. Farnan, Jr., Marc Kirschner, Michael Katzenstein, Robert Kost, and (c) FTI Consulting, Inc., Goldin & Associates, LLC, Teneo Holdings, LLC, and their respective "additional personnel" supporting the independent CROs and CMO.  For the avoidance of doubt, Exculpated Parties includes (y) Young Conaway Stargatt & Taylor, LLP, White & Case LLP, Houlihan Lokey Capital Inc., KPMG LLP, Direct Fee Review, LLC, Robinson Gray PA, Fox Rothschild LLP, Morris, Nichols, Arsht & Tunnell, LLP, Reliable Companies, and Walkers (Cayman) LLP and (z) the members, partners, directors, officers, managers, and employees of each party referenced in (a)-(c) and (y) of this definition who provided services to the Debtors or Independent Director, solely in their capacities as such.

1.61.    "File" and derivations thereof means, with respect to any pleading, entered on the docket of the Chapter 11 Cases and served in accordance with the Bankruptcy Rules and Local Bankruptcy Rules.

1.62.    "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition

for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

1.63. "General Unsecured Claim" means a Claim that is not an Administrative Claim, a Priority Tax Claim, a Professional Claim, an Other Priority Claim, or a Noteholder Claim.

1.64. "Governmental Authority" means any United States or other international, national, federal, state, municipal or local government, regulatory or administrative authority, agency or commission, licensing body or any judicial (including any state or federal court) or arbitral body or other Entity exercising executive, legislative, judicial, regulatory, licensing, or administrative powers or functions of government.

1.65. "Group A PC Assets" means with respect to each applicable Debtor (i) its debt and equity interests in Intrepid U.S.A., Inc., MD Helicopters, Inc., Stila Styles, LLC, and Vulcan Engineering Co., or the proceeds of any of them; (ii) the loans made to Dura Automotive Systems, LLC and its subsidiaries, Global Automotive Systems, LLC and its subsidiaries, and Snelling Staffing, LLC and its subsidiaries, or the proceeds of any of them; and (iii) any residual interests, including as to escrow accounts, that the applicable Debtor has in the proceeds of the sales of (A) the equity or partnership interests in Denali Incorporated, FSAR Holdings, Inc., Heritage Aviation, Limited, Libertas Copper, LLC, LVD Acquisition, LLC, RM Acquisition, LLC, and UI Acquisition Holding Co. or (B) the assets of Snelling Staffing, LLC and its subsidiaries.

1.66. "Holder" means an Entity holding a Claim or an Interest.

1.67. "Impaired" means any Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.68. "Indenture Trustee" means U.S. Bank, N.A. as the trustee under the applicable Zohar Indenture.

1.69. "Indenture Trustee Claims" means the Zohar I Indenture Trustee Claims, the Zohar II Indenture Trustee Claims and the Zohar III Indenture Trustee Claims.

1.70. "Independent Director" has the meaning ascribed to it in the Settlement Order and includes Joseph J. Farnan, Jr. in his capacity as such.

1.71. "Insider" has the meaning set forth in section 101(31) of the Bankruptcy Code.

1.72. "Interest" means any equity security (as such term is defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock and any other common stock, preferred stock, limited liability company interests, and any other equity, ownership or profits interests of the Debtors, including all options, warrants, rights, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such

interest or other ownership interest in any of the Debtors, whether or not arising under or in connection with any employment agreement, and whether or not certificated, transferable, preferred, common, voting, or denominated "stock," or similar security, that existed immediately before the Effective Date. Interests shall include, without limitation and for the avoidance of doubt, any and all preference shares issued by the Debtors

1.73. "Interim Compensation Order" means that certain *Order Establishing Procedures for Interim Compensation and Reimbursement of Retained Professionals* [Docket No. 293], entered by the Bankruptcy Court on June 8, 2018.

1.74. "July 2nd Order" means that certain *Amended Order Establishing Certain Guidelines and Milestones in Furtherance of the Monetization Process for the Group A and Group B Portfolio Companies* entered by the Bankruptcy Court on July 2, 2020 [Docket No. 1751].

1.75. "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.76. "Litigation Assets" means any Causes of Action, claims or rights to payment beneficially owned by, or that can be asserted by, a Debtor or its Estate as of the Effective Date, including, but not limited to, the claims and causes of action (including counter-claims and defenses) brought, asserted by, or that can be asserted by the Debtors or their Estates in the Zohar-Patriarch Adversary Proceeding, the Stila Proceeding or related to the Portfolio Companies.

1.77. "Litigation Trust" means any litigation trust established by the Plan and described in the Plan Supplement and the Litigation Trust Agreement(s).

1.78. "Litigation Trust Agreement" means any trust agreement pursuant to which a Litigation Trust shall be formed and administered, which will be included in the Plan Supplement, and shall be subject to initial approval of the Bankruptcy Court, as it may be subsequently modified from time to time.

1.79. "Litigation Trustee" means any Person or entity appointed to act as trustee of a Litigation Trust in accordance with the terms of the Plan, the Confirmation Order, and applicable Litigation Trust Agreement, or any successor appointed in accordance with the terms of the Plan and such Litigation Trust Agreement.

1.80. "Local Bankruptcy Rules" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware in effect at the relevant time.

1.81. "MBIA" means MBIA Insurance Corp.

1.82. "New Notes" means notes to be issued pursuant to Section 6.1 of the Plan by each of Zohar II and Zohar III under the Plan, having a maturity of two (2) years from the Effective Date, an annual coupon rate of 5.0%, payable in-kind on a semi-annual basis, secured by all of the Remaining Assets of the respective issuer, subordinated only to the expenses of the respective Asset Recovery Entities and the Indenture Trustee Claims, and with no pre-payment penalties or premiums. The documentation for the New Notes will be included in the Plan Supplement,

1.83.    "Noteholder" means any Holder of a note issued under one of the Zohar Indentures.

1.84.    "Noteholder Claims" means any Claims on account of the A Notes, the B Notes, the Zohar I Credit Enhancement Liabilities or the Zohar II Credit Enhancement Liabilities.

1.85.    "Other Assets" means all assets, entitlements, interests (or property of similar nature) owned or held by the respective Debtor other than Group A PC Assets and Litigation Assets, which, for the avoidance of doubt, shall include the Debtors' interests in and claims against the Group B Portfolio Companies (as defined in the Settlement Agreement) and shall include the Zohar II Intercompany Claim, in the case of Zohar II only.

1.86.    "Other Priority Claim" means a priority Claim against the Debtors under section 507(a) of the Bankruptcy Code, other than Administrative Claims, Professional Claims and Priority Tax Claims.

1.87.    "Paragraph 18 Bar Order" means an Order entered by the Bankruptcy Court in the Chapter 11 Cases establishing a deadline by which the Patriarch Stakeholders must fully and finally assert any and all claims asserted by them against the Portfolio Companies to be paid, disputed and/or clawed-back in accordance with paragraph 18 of the Settlement Agreement.

1.88.    "Patriarch CMA Fee Dispute Documents" means (i) the Patriarch Disputed CMA Fee Escrow Agreement, (ii) that certain Confidential Settlement Agreement, dated as of July 10, 2017, with respect to, among other things the Patriarch Disputed CMA Fee Claims and Patriarch Disputed CMA Fee Escrow, and (iii) that certain Stipulation and Order dated June 23, 2017 filed in *Zohar CDO 2003-1, LLC, et al. v. Patriarch Partners, LLC, et al*. Case No. 12247-VCS, pending in the Court of Chancery of the State of Delaware.

1.89.    "Patriarch Disputed CMA Fee Claims" means the Zohar I Patriarch Disputed CMA Fee Claims, the Zohar II Patriarch Disputed CMA Fee Claims, and the Zohar III Patriarch Disputed CMA Fee Claims.

1.90.    "Patriarch Disputed CMA Fee Escrow" means that certain escrow account maintained under the Patriarch Disputed CMA Fee Escrow Agreement.

1.91.    "Patriarch Disputed CMA Fee Escrow Agreement" means that certain Escrow Agreement dated as of July 11, 2017, with Citbank, N.A., as escrow agent, certain Patriarch Stakeholders and AMZM.

1.92.    "Patriarch Stakeholders" has the meaning ascribed to it in the Settlement Agreement and, for the avoidance of doubt includes, without limitation, Ark Angels, LLC; Ark Angels II, LLC; Ark Angels III, LLC; Ark Angels VIII, LLC; Ark Investment Partners II, LP; Ark II CLO 2001-1, Ltd.; LD Investments, LLC; Lynn Tilton; Octaluna LLC; Octaluna II, LLC; Octaluna III, LLC; Patriarch Partners, LLC; Patriarch Partners VIII, LLC; Patriarch Partners, XIV, LLC; Patriarch Partners XV, LLC; Patriarch Partners Management Group, LLC; Patriarch Partners Agency Services, LLC; Zohar Holdings, LLC; and any respective current and former controlled Affiliates of each of the foregoing.

1.93.    "Person" means an individual, a partnership, a joint venture, a limited liability company, a corporation, a trust, an unincorporated organization, a group, a Governmental Authority, or any Entity or association.

1.94.    "Petition Date" means March 11, 2018, when the Chapter 11 Cases were commenced.

1.95.    "Plan" means this plan, including any amendments or modifications hereto as may hereafter be Filed in accordance with the requirements of Section 1127 of the Bankruptcy Code.

1.96.    "Plan Supplement" means any compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan.

1.97.    "Portfolio Companies" means the Companies in which the Zohar Funds were lenders or equity holders at any time and includes, without limitation, CBA/Universal Instruments; Denali Inc.; Dura Operating, LLC; Global Automotive Systems, LLC; Heritage Aviation, Ltd.; Intrepid U.S.A., Inc.; Libertas Copper LLC; LVD Acquisition, LLC (Oasis); MD Helicopters, Inc.; Rand (RM Acquisition, LLC); Snelling Staffing, LLC; Vulcan Engineering Co.; Performance Designed Products, LLC / FSAR; Stila Styles, LLC; 180s, Inc.; Acme International Enterprises, Inc.; American Doors, LLC; American LaFrance, LLC; Amweld International, LLC; Best Textiles Acquisition, LLC; Bomar Industries International Inc.; Croscill Home, LLC; Duro Textiles, LLC; East Alliance Limited; eMag Solutions, LLC; Fetco Home Decor, Inc.; Galey & Lord, LLC; Glenoit Universal, Ltd.; Gorham Tissue & Paper, LLC; Hartwell Industries, Inc.; Iconic American Trucks, LLC; IMG Holdings, Inc.; Jewel of Jane LLC; MAV (PVI Acquisition, LLC); Natura Water, LLC; Netversant Solutions, LLC; Petry Holding, Inc.; Rapid Rack Holdings, Inc.; Red Shield Acquisition, LLC; Remco Maintenance, LLC; Scan-Optics, LLC; Silverack, LLC; Spiegel, LLC; Transcare Corporation; Xinhua Sports & Entertainment/Patriarch Partners Media Holdings, LLC.

1.98.    "Post-Effective Date Administrative Claims Bar Date" shall mean the first Business Day that is thirty (30) days after the Effective Date; *provided*, *however*, that, for the avoidance of doubt, the Bar Date for Administrative Claims arising prior to August 27, 2021 and the Bar Date for Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code, is the date as established in the Bar Date Order.

1.99.    "Priority Tax Claim" means a Claim against the Debtors under section 507(a)(8) of the Bankruptcy Code.

1.100.    "pro rata" means the proportion that the Allowed Claim in a particular Class bears to the aggregate amount of (a) Allowed Claims in such Class as of the date of determination, plus (b) Disputed Claims in such Class as of the date of determination, in their aggregate face amounts or such other amount:  (i) as calculated by the applicable Distribution Agent on or before the date of any such Distribution; (ii) as determined by an Order of the Bankruptcy Court estimating such Disputed Claim; or (iii) as directed by a Final Order of the Bankruptcy Court.

1.101.    "Professional" means any Entity employed by the Debtors in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy

Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

1.102.  "Professional Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred during the period from the Petition Date through the Effective Date.

1.103.  "Professional Claims Escrow Account" means the escrow account created and funded on the Effective Date, in the amount of the Professional Claims Escrow Amount, to be used for the payment of Professional Claims, as described in Section 6.9 of the Plan.

1.104.  "Professional Claims Escrow Amount" means the total projected amount of unpaid Professional Claims on the Effective Date, as reasonably determined by the Debtors' Chief Restructuring Officer.

1.105.  "Proof of Claim" means a proof of Claim Filed against a Debtor in the Chapter 11 Cases.

1.106.  "Related Parties" means with respect to any Entity, its current and former Affiliates, and their respective current and former equity holders (regardless of whether such interests are held directly or indirectly), successors, assigns, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

1.107.  "Released Parties" means, collectively, in each case, solely in their respective capacities as such:  (a) the Exculpated Parties, (b) Ankura, (c) the Indenture Trustee, (d) each DIP Lender, (e) the Controlling Party; (f) the members of the Controlling Class, (g) all Holders of Claims that vote to accept the Plan; and (h) with respect to each of the Entities described in subsections (c) through (g), such Entity's Related Parties; _provided_, _however_, that notwithstanding any provision of the Plan to the contrary, (i) Lynn Tilton, the Patriarch Stakeholders, the respective Affiliates of any of them and their Related Parties (other than the Exculpated Parties and Ankura, if they are Related Parties or Affiliates of the foregoing) shall not be Released Parties and shall not be released under the Plan and (ii) any party that objects to Confirmation of the Plan (by filing an objection with the Court or appearing at the Confirmation Hearing and making an objection on the record), files a motion to stay the effectiveness of the Confirmation Order or files an appeal of the Confirmation Order shall not be a Released Party and shall not be released under the Plan.

1.108.  "Releasing Parties" means, collectively, in each case only in its capacity as such: (a) Ankura, (b) the Indenture Trustee, (c) the DIP Lender, (d) the Controlling Party, (e) the members of the Controlling Class, and (f) all Holders of Claims that vote to accept the Plan; _provided_, _however_, that if any of the foregoing entities is excluded as a Released Party due to application of the _proviso_ in the definition of "Released Party" such entity also shall not be a Releasing Party..

1.109.  "Remaining Assets" means for each of Zohar II and Zohar III, collectively, its (a) Group A PC Assets, (b) Litigation Assets, and (c) Other Assets.

1.110.   "Retained Claims Escrow" means an escrow account to be created on or prior to the Effective Date to hold the amount required to be held in escrow pursuant to the applicable Sale Orders with respect to indemnification and advancement obligations arising out of Retained Claim Actions (as defined in the applicable Sale Order).

1.111.   "Sale Orders" means the orders concerning the following Porfolio Company sales: FSAR Holdings, Inc. (Docket No. 2480), Heritage Aviation, Ltd. (Docket No. 2926), RM Acquisition, LLC (Docket No. 2050), and UI Acquisition Holding Co. (Docket No. 2988).

1.112.   "Settlement Agreement" means that settlement agreement approved by the Bankruptcy Court by order dated May 21, 2018 [Docket No. 266], as mofidied by the July 2nd Order.

1.113.   "Solicitation Package" means the Disclosure Statement, including the Plan, notice of the Confirmation Hearing approved by the Court, a Ballot, and such other items as directed by the Disclosure Statement Order.

1.114.   "Stila Proceeding" means *Zohar III, Limited v. Stila Styles, LLC and Lynn Tilton*, Case No. 2021-0384-JRS, pending in the Court of Chancery of the State of Delaware and any proceeding on appeal therefrom.

1.115.   "Transaction Documents" has the meaning ascribed to it in the applicable Indenture.

1.116.   "Unimpaired" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

1.117.   "U.S. Trustee" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in the District of Delaware.

1.118.   "U.S. Trustee Fees" means fees arising under 28 U.S.C. § 1930(a)(6) and any accrued interest thereon arising under 31 U.S.C. § 3717.

1.119.   "Voting Deadline" shall mean the deadline for voting to accept or reject the Plan as established by the Disclosure Statement Order.

1.120.   "Wind-Down Administrator" means, effective as of the Effective Date, the individual or entity responsible for, among other things, implementing the applicable provisions of the Plan, or any duly selected successor.

1.121.   "Wind-Down Company" means the company to be formed in connection with the Plan for purposes of resolving the affairs of the applicable Debtor after the Effective Date as provided for in the Plan.

1.122.   "Wind-Down Funding Escrow" means the escrow established on the Effective Date to hold funds sufficient to pay the fees, costs and expenses of the Wind-Down Administrator.

1.123.   "Zohar Funds" means Zohar I, Zohar II, and Zohar III.

1.124.    "Zohar I" means Zohar I Corp. and Zohar I Limited, as consolidated.

1.125.    "Zohar I A-3 Note Claims" means any Claims on account of the A-3 Notes issued by Zohar I.

1.126.    "Zohar I B Note Claims" means any Claims on account of the B Notes issued by Zohar I.

1.127.    "Zohar I Corp." means Zohar CDO 2003-1, Corp. a Delaware corporation.

1.128.    "Zohar I Credit Enhancement Claims" means the Claims of MBIA as credit enhancer under the Zohar I Indenture, including any Claims arising out of the satisfaction of the A Notes issued by Zohar I.

1.129.    "Zohar I Indenture" means that Zohar Indenture among Zohar I Limited, Zohar CDO 2003-1, Corp., Zohar CDO 2003-1, LLC, and MBIA, CDC Financial Products, Inc., and the Indenture Trustee, dated November 13, 2003 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time).

1.130.    "Zohar I Indenture Trustee Claims" means the Claims of the Indenture Trustee under the Zohar I Indenture for all unpaid fees, expenses and other amounts incurred by the Indenture Trustee prior to the Effective Date, plus any fees, expenses and other amounts incurred by the Indenture Trustee after the Effective Date that are required to be indemnified by Zohar I under the Zohar I Indenture.

1.131.    "Zohar I Issuer Holdback" means funds in the amount of $2,609,591.39 held by the Indenture Trustee pursuant to the Zohar I Issuer Holdback Documents"

1.132.    "Zohar I Issuer Holdback Documents" means that certain Directions to Trustee and Indemnification dated June 27, 2016, the supplement thereto dated August 26, 2016, and the Letter Agreement dated January 19, 2017, each between MBIA and the Indenture Trustee.

1.133.    "Zohar I Limited" means Zohar CDO 2003-1, Limited, a Cayman Islands entity.

1.134.    "Zohar I Patriarch Disputed CMA Fee Claims" means the claims asserted by Patriarch Partners VIII, LLC for "Disputed Collateral Management Fees," including any "Newly Payable Disputed Collateral Management Fees," as such terms are defined in the Patriarch CMA Fee Dispute Documents.

1.135.    "Zohar I Sale Documents" means: that certain Purchase Agreement dated as of January 12, 2017 between U.S. Bank, N.A., as Trustee, Zohar CDO 2003-1, Limited, as issues, Zohar CDO 2003-1, LLC, and MBIA, as purchaser; that  certain Master Participation Agreement dated as of January 12, 2017 between Zohar CDO 2003-1, Limited, as issuer, Zohar CDO 2003-1, LLC, U.S. Bank, N.A., in its capacity as Trustee, and MBIA Insurance Corporation; and all other ancillary documents.

1.136.    "Zohar II" means Zohar II Corp. and Zohar II Limited, as consolidated.

1.137.   "Zohar II Adjusted Plan Value" means the fair market value, as of the Effective Date, of the assets transferred to Zohar II Recovery LLC, as determined by the Debtors pursuant to Section 6.6(d).

1.138.   "Zohar II Ankura CM Agreement" means that certain Collateral Management Agreement dated as of December 9, 2019 by and among Zohar II Limited, Zohar II 2005-1, LLC and Ankura, as collateral manager.

1.139.   "Zohar II Ankura CMA Claims" means all amounts payable under the Zohar II Ankura CM Agreement.

1.140.   "Zohar II Ankura CMA Escrow" means that certain Escrow Agreement dated as of December 9, 2019 by and among Ankura, as Party A, MBIA Insurance Corp., as Party B, and JPMorgan Chase Bank, N.A., as Escrow Agent.

1.141.   "Zohar II B Note Claims" means any Claims on account of the B Notes issued by Zohar II.

1.142.    "Zohar II Corp." means Zohar II 2005-1, Corp. a Caymans Islands entity.

1.143.   "Zohar II Credit Enhancement Claims" means the Claims of MBIA as credit enhancer under the Zohar II Indenture, including any Claims arising out of the satisfaction of the A Notes issued by Zohar II.

1.144.   "Zohar II Indenture" means the Zohar Indenture among Zohar II, Zohar II 2005-1, Corp., Zohar II 2005-1, LLC, MBIA, IXIS Financial Products Inc., and the Indenture Trustee, as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time).

1.145.   "Zohar II Indenture Trustee Claims" means the Claims of the Indenture Trustee under the Zohar II Indenture for all unpaid fees, expenses and other amounts incurred by the Indenture Trustee prior to the Effective Date, plus any fees, expenses and other amounts incurred by the Indenture Trustee after the Effective Date that are required to be indemnified by Zohar II under the Zohar II Indenture.

1.146.   "Zohar II Intercompany Claim" means any Administrative Expense Claim held by Zohar II Limited against Zohar I arising out of expenses incurred in the Chapter 11 Cases for the benefit of Zohar I and paid by Zohar II Limited and its Estate, including under the Cash Collateral Order and DIP Order.  The amount of the Zohar II Intercompany Claim shall be disclosed in the Plan Supplement and approved at the Confirmation Hearing.

1.147.   "Zohar II Limited" means Zohar II 2005-1, Limited, a Cayman Islands entity.

1.148.   "Zohar II Patriarch Disputed CMA Fee Claim" means the claim asserted by Patriarch Partners XIV, LLC for "Disputed Collateral Management Fees," including any "Newly Payable Disputed Collateral Management Fees," as such terms are defined in the Patriarch CMA Fee Dispute Documents.

1.149.    "<u>Zohar III</u>" means Zohar III Corp. and Zohar III Limited, as consolidated.

1.150.    "<u>Zohar III Adjusted Plan Value</u>" means the fair market value, as of the Effective Date, of the assets transferred to Zohar III Recovery LLC, as determined by the Debtors pursuant to Section 6.6(d).

1.151.    "<u>Zohar III A Note Claims</u>" means, collectively, the Zohar III-A1 Note Claims, the Zohar III-A2 Note Claims, and the Zohar III-A3 Note Claims.

1.152.    "<u>Zohar III A-1 Note Claims</u>" means any Claims on account of the A-1 Notes issued by Zohar III.

1.153.    "<u>Zohar III A-2 Note Claims</u>" means any Claims on account of the A-2 Notes issued by Zohar III.

1.154.    "<u>Zohar III A-3 Note Claims</u>" means any Claims on account of the A-3 Notes issued by Zohar III.

1.155.    "<u>Zohar III Ankura CM Agreement</u>" means that certain Collateral Management Agreement dated as of December 10, 2019 by and among Zohar III Limited, Zohar III, LLC and Ankura, as collateral manager.

1.156.    "<u>Zohar III Ankura CMA Claims</u>" means all amounts payable under the Zohar III Ankura CM Agreement.

1.157.    "<u>Zohar III Ankura CMA Escrow</u>" means that certain Escrow Agreement dated as of December 10, 2019 by and among Ankura, as Party A, Bardin Hill Investment Partners LP, as Party B, and JPMorgan Chase Bank, N.A., as Escrow Agent.

1.158.    "<u>Zohar III B Note Claims</u>" means any Claims on account of the B Notes issued by Zohar III.

1.159.    "<u>Zohar III Corp.</u>" means Zohar III Corp. a Delaware Corporation.

1.160.    "<u>Zohar III Indenture</u>" means the Indenture among Zohar III, Zohar III Corp., Zohar III, LLC, Natixis Financial Products Inc., and the Indenture Trustee, as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association, dated April 6, 2007 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time).

1.161.    "<u>Zohar III Indenture Trustee Claims</u>" means the Claims of the Indenture Trustee under the Zohar III Indenture for all unpaid fees, expenses and other amounts incurred by the Indenture Trustee prior to the Effective Date, plus any fees, expenses and other amounts incurred by the Indenture Trustee after the Effective Date that are required to be indemnified by Zohar III under the Zohar III Indenture.

1.162.    "<u>Zohar III Limited</u>" means Zohar III Limited, a Cayman Islands entity.

1.163. "<u>Zohar III Patriarch Disputed CMA Fee Claim</u>" means the claim asserted by Patriarch Partners XV, LLC for "Disputed Collateral Management Fees," including any "Newly Payable Disputed Collateral Management Fees," as such terms are defined in the Patriarch CMA Fee Dispute Documents.

1.164. "<u>Zohar Indentures</u>" means (a) the Zohar I Indenture; (b) the Zohar II Indenture; and (c) the Zohar III Indenture.

1.165. "<u>Zohar-Patriarch Adversary Proceeding</u>" means *Zohar CDO 2003-1, Limited, et al. v. Patriarch Partners, LLC, et al.,* Adversary Proceeding No. 20-50534 (KBO), pending in the United States Bankruptcy Court for the District of Delaware.

## <u>ARTICLE II</u>

## <u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>

2.1.    <u>General Rules of Classification</u>

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims and Interests for all purposes under the Plan, including, without limitation, voting, confirmation, and Distributions. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Claims, DIP Claims, Adequate Protection Claims, and Priority Tax Claims, as described below, have not been classified. These Claims are not entitled to vote to accept or reject the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

2.2.    <u>Classification of Claims and Interests</u>

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired under the Plan, (ii) entitled to vote to accept or reject the Plan, and (iii) deemed to either accept or reject the Plan. Each class is a separate Class for each applicable Debtor, other than Equity Interests in Class 19.

| Class | Description | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Zohar III Other Priority Claims | Unimpaired | No (Presumed to accept) |
| 2 | Zohar III Indenture Trustee Claims | Unimpaired | No (Presumed to accept) |
| 2A | Zohar III Patriarch Disputed CMA Fee Claim | Unimpaired | No (Presumed to accept) |
| 2B | Zohar III Ankura CMA Claims | Unimpaired | No (Presumed to accept) |
| 3 | Zohar III A-1 Note Claims | Impaired | Yes |
| 4 | Zohar III A-2 Note Claims | Impaired | No (Deemed to reject) |
| 5 | Zohar III A-3 Note Claims | Impaired | No (Deemed to reject) |
| 6 | Zohar III B Note Claims | Impaired | No (Deemed to reject) |
| 7 | Zohar III General Unsecured Claims | Impaired | No (Deemed to reject) |
| 8 | Zohar II Other Priority Claims | Unimpaired | No (Presumed to accept) |
| 9 | Zohar II Indenture Trustee Claims | Unimpaired | No (Presumed to accept) |
| 9A | Zohar II Patriarch Disputed CMA Fee Claim | Unimpaired | No (Presumed to accept) |
| 9B | Zohar II Ankura CMA Claims | Unimpaired | No (Presumed to accept) |
| 10 | Zohar II Credit Enhancement Claims | Impaired | Yes |
| 11 | Zohar II B Note Claims | Impaired | No (Deemed to reject) |
| 12 | Zohar II General Unsecured Claims | Impaired | No (Deemed to reject) |
| 13 | Zohar I Other Priority Claims | Unimpaired | No (Presumed to accept) |
| 14 | Zohar I Indenture Trustee Claims | Impaired | Yes |
| 14A | Zohar I Patriarch Disputed CMA Fee Claim | Unimpaired | No (Presumed to accept) |
| 15 | Zohar I Credit Enhancement Claims | Impaired | Yes |
| 16 | Zohar I A-3 Note Claims | Impaired | No (Deemed to reject) |
| 17 | Zohar I B Note Claims | Impaired | No (Deemed to reject) |
| 18 | Zohar I General Unsecured Claims | Impaired | No (Deemed to reject) |
| 19 | Interests | Impaired | No (Deemed to reject) |

2.3.    <u>Subordination of Claims Pursuant to Section 510(a) of the Bankruptcy Code</u>

The treatment of Claims in Classes 2 through 6 gives effect to the Priority of Payments (as defined in the Zohar III Indenture) and subordination provisions of the Zohar III Indenture. The treatment of Claims in Classes 9 through 11 gives effect to the Priority of Payments (as defined in the Zohar II Indenture) and subordination provisions of the Zohar II Indenture. The treatment of Claims in Classes 14 through 17 gives effect to the Priority of Payments (as defined in the Zohar I Indenture) and subordination provisions of the Zohar I Indenture.

## <u>ARTICLE III</u>

## <u>TREATMENT OF UNCLASSIFIED CLAIMS</u>

3.1.    <u>Administrative Claims</u> .

Unless otherwise agreed to by a Holder of an Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall receive a Cash payment equal to the Allowed Amount of such Claim from the Administrative and Priority Claims Escrow Account. Such payment will be made: (a) at such time as all Allowed Administrative Claims, Priority Tax Claims and Other Priority Claims against the applicable Debtor are Allowed; (b) at such time and upon such terms as may be agreed upon by such Holder and the applicable Litigation Trustee; or (c) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

3.2.    <u>Time for Filing Administrative Claims</u> .

The Holder of an Administrative Claim, arising after August 26, 2021, other than: (a) Professional Claims; (b) any Administrative Claims that (i) have been previously paid by the Debtors in the ordinary course of business or otherwise or (ii) have otherwise been satisfied; (c) any Administrative Claims previously Filed; (d) any Administrative Claim that has been Allowed by prior order of the Bankruptcy Court; (e) any Administrative Claims held by any Debtor; (f) any claims for fees payable to the Clerk of the Bankruptcy Court; (g) any U.S. Trustee Fees; and (h) any Administrative Claim entitled to administrative expense status pursuant to section 503(b)(1)(D), must File and serve on counsel to the Wind-Down Administrator, a written request for such Administrative Claim so as to be received by 5:00 p.m. on the Post-Effective Date Administrative Claims Bar Date. Such request must include at a minimum: (i) the name of the Debtor(s) that are purported to be liable for the Administrative Claim; (ii) the name of the Holder of the Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim. **FAILURE TO FILE AND SERVE SUCH NOTICE OR REQUEST TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND EXTINGUISHED.**

3.3.    <u>Professional Claims</u>

All Persons seeking Allowance of Professional Claims under the Plan shall File, on or before the date that is thirty (30) calendar days after the Effective Date, their respective

applications for final allowance of compensation for services rendered and reimbursement of expenses incurred.

Objections to any Professional Claim must be Filed and served on counsel to the Wind-Down Administrator and the requesting Professional by no later than twenty-one days (21) days after the service of the applicable final request for payment of the Professional Claim.

Each Holder of an Allowed Professional Claim shall be paid in full in Cash from the Professional Claims Escrow Account within five (5) Business Days after entry of the order approving such Allowed Professional Claim, or at such time and upon such terms as may be agreed upon by such Professional and the Wind-Down Administrator.

### 3.4.    DIP Claims

All remaining unpaid DIP Claims, if any, shall be deemed Allowed as of the Effective Date in an amount equal to all accrued and unpaid fees, expenses, noncontingent indemnification obligations and other amounts payable under the DIP Credit Agreement and the DIP Order. Except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment or pursuant to the "Roll Option" (as defined in the DIP Credit Agreement), if exercised, in full and final satisfaction, settlement, and release, and in exchange for, each Allowed DIP Claim, each such Allowed DIP Claim (as determined by settlement or Final Order of the Bankruptcy Court) shall be paid in full, in Cash, on the Effective Date.

### 3.5.    Adequate Protection Claims

On the Effective Date, the Adequate Protection Claims held by the Indenture Trustee against Zohar III shall be deemed satisfied by the transfer of Zohar III's assets to Zohar III Recovery LLC and the Litigation Trust for Zohar III, as provided for in Section 6.1 of the Plan, and the treatment afforded to Classes 2 and 3 under the Plan.

On the Effective Date, the Adequate Protection Claims held by the Indenture Trustee against Zohar II shall be deemed satisfied by the transfer of Zohar II's assets to Zohar II Recovery LLC and the Litigation Trust for Zohar II, as provided for in Section 6.1 of the Plan, and the treatment afforded to Classes 9 and 10 under the Plan.

The Adequate Protection Claims held by the Indenture Trustee against Zohar I shall be Allowed in the amount of $0.00.

### 3.6.    Priority Tax Claims

Unless the Holder has agreed otherwise, each Holder of an Allowed Priority Tax Claim shall receive a Cash payment equal to the Allowed Amount of such Claim from the Administrative and Priority Claims Escrow Account. Such payment will be made: (i) at such time as all Administrative Claims, Priority Tax Claims and Other Priority Claims against the applicable Debtor are Allowed; (ii) at such time and upon such terms as may be agreed upon by such Holder and the applicable Litigation Trustee; or (iii) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.1.    Class 1 – Zohar III Other Priority Claims

(a)    Classification. Class 1 shall consist of Other Priority Claims against Zohar III.

(b)    Impairment and Voting. Class 1 is Unimpaired by the Plan. Each Holder of an Allowed Other Priority Claim against Zohar III is not entitled to vote to accept or reject the Plan because such Allowed Other Priority Claims are Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)    Treatment. Each Holder of an Allowed Other Priority Claim against Zohar III shall receive a Cash payment equal to the Allowed Amount of such Claim from the Administrative and Priority Claims Escrow Account. Such payment will be made: (i) at such time as all Administrative Claims, Priority Tax Claims and Other Priority Claims against Zohar III are Allowed; (ii) at such time and upon such terms as may be agreed upon by such Holder and the applicable Litigation Trustee; or (iii) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

4.2.    Class 2 – Zohar III Indenture Trustee Claims

(a)    Classification. Class 2 shall consist of all Indenture Trustee Claims against Zohar III.

(b)    Impairment and Voting. Class 2 is Unimpaired by the Plan. Each Holder of an Indenture Trustee Claim against Zohar III is not entitled to vote to accept or reject the Plan because such Zohar III Indenture Trustee Claims are Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)    Treatment. Indenture Trustee Claims against Zohar III shall be assumed by Zohar III Recovery LLC and paid from the Distributable Cash of Zohar III Recovery LLC.

4.3.    Class 2A – Zohar III Patriarch Disputed CMA Fee Claims

(a)    Classification. Class 2A shall consist of the Zohar III Patriarch Disputed CMA Fee Claims.

(b)    Impairment and Voting. Class 2A is Unimpaired by the Plan. Each holder of a Zohar III Patriarch Disputed CMA Fee Claim is not entitled to vote to accept or reject the Plan because such Zohar III Patriarch Disputed CMA Fee Claim is Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code]

(c)    Treatment. To the extent Allowed, the Zohar III Patriarch Disputed CMA Fee Claims shall be paid from the funds in the Patriarch Disputed CMA Fee Escrow allocated to it pursuant to the terms of the Patriarch CMA Fee Dispute Documents.

29197034.1

4.4.    <u>Class 2B – Zohar III Ankura CMA Claims</u>

(a)    <u>Classification</u>.  Class 2B shall consist of the Zohar III Ankura CMA Claims.

(b)    <u>Impairment and Voting</u>.  Class 2B is Unimpaired by the Plan.  Each holder of a Zohar III Ankura CMA Claim is not entitled to vote to accept or reject the Plan because such Zohar III Ankura CMA Claim is Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code

(c)    <u>Treatment</u>.  The Zohar III Ankura CMA Claims shall be paid from the funds in the Zohar III Ankura CMA Escrow pursuant to the terms of the Zohar III Ankura CM Agreement.

4.5.    <u>Class 3 – Zohar III A-1 Note Claims</u>

(a)    <u>Classification</u>.  Class 3 shall consist of Zohar III A-1 Note Claims.

(b)    <u>Allowance of Claims</u>.  The Zohar III A-1 Note Claims shall be Allowed in the amount of $387,131,000.00.

(c)    <u>Impairment and Voting</u>.  Class 3 is Impaired by the Plan.  Each Holder of a Zohar III A-1 Note Claim is entitled to vote to accept or reject the Plan.

(d)    <u>Treatment</u>.  On the Effective Date, the Zohar III A-1 Notes shall be deemed to be reduced in amount to the Zohar III Adjusted Plan Value, and each Holder of a Zohar III A-1 Note Claim shall receive, in exchange for its Zohar III A-1 Note Claim, its pro rata share of (i) the New Notes assumed by Zohar III Recovery LLC (and, if applicable, a Litigation Trust) in the aggregate amount of $100,000, and (ii) 100% of the membership interests in New Zohar III LLC; *provided*, *however*, that Holders of the Zohar III A-1 Note Claims may also receive their pro rata share of the beneficial interests in a Litigation Trust to the extent provided for in the Plan Supplement.

4.6.    <u>Class 4 – Zohar III A-2 Note Claims</u>

(a)    <u>Classification</u>.  Class 4 shall consist of Zohar III A-2 Note Claims.

(b)    <u>Impairment and Voting</u>.  Class 4 is Impaired by the Plan.  Each Holder of a Zohar III A-2 Note Claim is deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

(c)    <u>Treatment</u>.  Holders of Zohar III A-2 Note Claims shall receive no distribution on account of such Claims or the Zohar III A-2 Notes.

4.7.    <u>Class 5 – Zohar III A-3 Note Claims</u>

(a)    <u>Classification</u>.  Class 5 shall consist of Zohar III A-3 Note Claims.

(b)    <u>Impairment and Voting</u>. Class 5 is Impaired by the Plan. Each Holder of a Zohar III A-3 Note Claim is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)    <u>Treatment</u>.  Holders of Zohar III A-3 Note Claims shall receive no distribution on account of such Claims or the Zohar III A-3 Notes.

4.8.    <u>Class 6 – Zohar III B Note Claims</u>

(a)    <u>Classification.</u>  Class 6 shall consist of Zohar III B Note Claims.

(b)    <u>Impairment and Voting</u>. Class 6 is Impaired by the Plan. Each Holder of a Zohar III B Note Claim is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)    <u>Treatment</u>. Holders of Zohar III B Note Claims shall receive no distribution on account of such Claims or the Zohar III B Notes.

4.9.    <u>Class 7 – Zohar III General Unsecured Claims</u>.

(a)    <u>Classification</u> Class 7 shall consist of General Unsecured Claims against Zohar III.

(b)    <u>Impairment and Voting</u>. Class 7 is Impaired by the Plan. Each Holder of a General Unsecured Claim against Zohar III is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)    <u>Treatment</u>.  The Holders of General Unsecured Claims against Zohar III shall neither receive Distributions nor retain any property under the Plan for or on account of such General Unsecured Claims.

4.10.    <u>Class 8 - Zohar II Other Priority Claims</u>

(a)    <u>Classification</u>. Class 8 shall consist of Other Priority Claims against Zohar II.

(b)    <u>Impairment and Voting</u>.  Class 8 is Unimpaired by the Plan.  Each Holder of an Allowed Other Priority Claim against Zohar II is not entitled to vote to accept or reject the Plan because such Allowed Other Priority Claims are Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)    <u>Treatment</u>.  Each Holder of an Allowed Other Priority Claim against Zohar II shall receive a Cash payment equal to the Allowed Amount of such Claim from the Administrative and Priority Claims Escrow Account.  Such payment will be made: (i) at such time as all Administrative Claims, Priority Tax Claims and Other Priority Claims against Zohar II are Allowed; (ii) at such time and upon such terms as may be agreed upon by such Holder and the applicable Litigation Trustee; or (iii) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

4.11.    Class 9 – Zohar II Indenture Trustee Claims

(a)    <u>Classification</u>. Class 9 shall consist of all Indenture Trustee Claims against Zohar II.

(b)    <u>Impairment and Voting</u>. Class 9 is Unimpaired by the Plan.  Each Holder of an Indenture Trustee Claim against Zohar II is not entitled to vote to accept or reject the Plan because such Zohar II Indenture Trustee Claims are Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code

(c)    <u>Treatment</u>.  The Indenture Trustee Claims against Zohar II shall be assumed by Zohar II Recovery LLC and paid from the Distributable Cash of Zohar II Recovery LLC.

4.12.    Class 9A – Zohar II Patriarch Disputed CMA Fee Claim

(a)    <u>Classification</u>.  Class 9A shall consist of the Zohar II Patriarch Disputed CMA Fee Claim.

(b)    <u>Impairment and Voting</u>.  Class 9A is Unimpaired by the Plan.  Each holder of a Zohar II Patriarch Disputed CMA Fee Claim is not entitled to vote to accept or reject the Plan because such Zohar II Patriarch Disputed CMA Fee Claim is Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)    <u>Treatment</u>.  To the extent Allowed, the Zohar II Patriarch Disputed CMA Fee Claim shall be paid from the funds in the Patriarch Disputed CMA Fee Escrow allocated to it pursuant to the terms of the Patriarch CMA Fee Dispute Documents.

4.13.    Class 9B – Zohar II Ankura CMA Claims

(a)    <u>Classification</u>. Class 9B shall consist of the Zohar II Ankura CMA Claims.

(b)    <u>Impairment and Voting</u>. Class 9B is Unimpaired by the Plan.  Each holder of a Zohar II Ankura CMA Claim is not entitled to vote to accept or reject the Plan because such Zohar II Ankura CMA Claim is Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code

(c)    <u>Treatment</u>.  The Zohar II Ankura CMA Claims shall be paid from the funds in the Zohar II Ankura CMA Escrow pursuant to the terms of the Zohar II Ankura CM Agreement.

4.14.    Class 10 - Zohar II Credit Enhancement Claims

(a)    <u>Classification</u>. Class 10 shall consist of Zohar II Credit Enhancement Claims against Zohar II.

(b)    <u>Allowance of Claims</u>.  The Zohar II Credit Enhancement Claims shall be Allowed in the amount of $806,582,747.23.

(c)      <u>Impairment and Voting</u>.  Class 10 is Impaired by the Plan.  Each Holder of Zohar II Credit Enhancement Claims is entitled to vote to accept or reject the Plan.

(d)      <u>Treatment</u>.  On the Effective Date, the Zohar II Credit Enhancement Claims shall be deemed to be reduced in amount to the Zohar II Adjusted Plan Value, and each Holder of Zohar II Credit Enhancement Claims shall receive, in exchange for its Zohar II Credit Enhancement Claims, its pro rata share of (i) the New Notes assumed by Zohar II Recovery LLC (and, if applicable, a Litigation Trust) in the aggregate amount of $100,000, and (ii) 100% of the membership interests in New Zohar II LLC; *provided*, *however*, that Holders of Zohar II Credit Enhancement Claims may also receive their pro rata share of the beneficial interests in a Litigation Trust to the extent provided for in the Plan Supplement.

4.15.   <u>Class 11 – Zohar II B Note Claims</u>

(a)      <u>Classification</u>.  Class 11 shall consist of Zohar II B Note Claims.

(b)      <u>Impairment and Voting</u>.  Class 10 is Impaired by the Plan.  Each Holder of a Zohar II B Note Claim is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)      <u>Treatment</u>.  Holders of Zohar II B Note Claims shall receive no distribution on account of such Claims or the Zohar II B Notes.

4.16.   <u>Class 12 – Zohar II General Unsecured Claims</u>

(a)      <u>Classification</u>.  Class 12 shall consist of General Unsecured Claims against Zohar II.

(b)      <u>Impairment and Voting</u>.  Class 12 is Impaired by the Plan.  Each Holder of a General Unsecured Claim against Zohar II is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan, pursuant to section 1126(g) of the Bankruptcy Code.

(c)      <u>Treatment</u>.  The Holders of General Unsecured Claims against Zohar II shall neither receive Distributions nor retain any property under the Plan for or on account of such General Unsecured Claims.

4.17.   <u>Class 13 – Zohar I Other Priority Claims</u>

(a)      <u>Classification</u>. Class 13 shall consist of Other Priority Claims against Zohar I.

(b)      <u>Impairment and Voting</u>.  Class 13 is Unimpaired by the Plan.  Each Holder of an Allowed Other Priority Claim against Zohar I is not entitled to vote to accept or reject the Plan because such Allowed Other Priority Claims are Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)      <u>Treatment</u>. Each Holder of an Allowed Other Priority Claim against Zohar I shall receive a Cash payment equal to the Allowed Amount of such Claim from the

Administrative and Priority Claims Escrow Account.  Such payment will be made: (i) at such time as all Administrative Claims, Priority Tax Claims and Other Priority Claims against Zohar I are Allowed; (ii) at such time and upon such terms as may be agreed upon by such Holder and the applicable Litigation Trustee; or (iii) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

4.18.    Class 14 – Zohar I Indenture Trustee Claims

(a)    Classification. Class 14 shall consist of all Indenture Trustee Claims against Zohar I.

(b)    Impairment and Voting.  Class 14 is Impaired by the Plan.  Each Holder of an Indenture Trustee Claim against Zohar I is entitled to vote to accept or reject the Plan.

(c)    Treatment.  Indenture Trustee Claims against Zohar I shall be paid, up to the Allowed amount of the Indenture Trustee Claims against Zohar I, from the Distributable Cash attributable to Zohar I in the Litigation Trust applicable to Zohar I available after payment in full of all Allowed Administrative Claims and Priority Claims against Zohar I, as required by the Plan.

4.19.    Class 14A – Zohar I Patriarch Disputed CMA Fee Claim

(a)    Classification.  Class 14A shall consist of the Zohar I Patriarch Disputed CMA Fee Claim.

(b)    Impairment and Voting.  Class 14A is Unimpaired by the Plan.  Each holder of a Zohar I Patriarch Disputed CMA Fee Claim is not entitled to vote to accept or reject the Plan because such Zohar I Patriarch Disputed CMA Fee Claim is Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)    Treatment.  To the extent Allowed, the Zohar I Patriarch Disputed CMA Fee Claim shall be paid from the funds in the Patriarch Disputed CMA Fee Escrow allocated to it pursuant to the terms of the Patriarch CMA Fee Dispute Documents.

4.20.    Class 15 - Zohar I Credit Enhancement Claims

(a)    Classification. Class 15 shall consist of Zohar I Credit Enhancement Claims against Zohar I.

(b)    Allowance of Claims.  The Zohar I Credit Enhancement Claims shall be Allowed in the amount of $20,347,522.55, after giving effect to the Zohar I Sale Documents and the Treatment provided for in Section 6.1(b) of the Plan.

(c)    Impairment and Voting.  Class 15 is Impaired by the Plan.  Each Holder of a Zohar I Credit Enhancement Claim is entitled to vote to accept or reject the Plan.

(d)    Treatment.  Each Holder of a Zohar I Credit Enhancement Claim shall receive (i) the treatment provided for in Section 6.1(b) of the Plan with respect to the Zohar I Sale and (ii) a Cash payment, up to the Allowed amount of the Zohar I Credit Enhancement Claim,

from the Distributable Cash attributable to Zohar I in the Litigation Trust applicable to Zohar I remaining after payment in full of the Zohar I Indenture Trustee Claim.

4.21.  Class 16 – Zohar I A-3 Note Claims

(a)  Classification.  Class 16 shall consist of Zohar I A-3 Note Claims.

(b)  Impairment and Voting.  Class 16 is Impaired by the Plan.  Each Holder of a Zohar I A-3 Note Claim is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)  Treatment.  Holders of Zohar I A-3 Note Claims shall receive no distribution on account of such Claims or the Zohar I A-3 Notes.

4.22.  Class 17 – Zohar I B Note Claims

(a)  Classification.  Class 17 shall consist of Zohar I B Note Claims.

(b)  Impairment and Voting.  Class 17 is impaired by the Plan.  Each Holder of a Zohar I B Note Claim is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)  Treatment.  Holders of Zohar I B Note Claims shall receive no distribution on account of such Claims or the Zohar I B Notes.

4.23.  Class 18 – Zohar I General Unsecured Claims

(a)  Classification.  Class 18 shall consist of General Unsecured Claims against Zohar I.

(b)  Impairment and Voting.  Class 18 is Impaired by the Plan.  Each Holder of a General Unsecured Claim against Zohar I is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)  Treatment.  The Holders of General Unsecured Claims against Zohar I shall neither receive Distributions nor retain any property under the Plan for or on account of such General Unsecured Claims.

4.24.  Class 19 – Interests

(a)  Classification.  Class 19 shall consist of Interests in the applicable Debtor.

(b)  Impairment and Voting.  Class 19 is Impaired by the Plan.  Each Holder of an Interest is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)  Treatment.  Interests shall be cancelled, released, and extinguished, and Holders of Interests shall neither receive any Distributions nor retain any property under the Plan for or on account of such Interests.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THE PLAN

5.1.    Voting of Claims

(a)    Classes Entitled to Vote. Each Claim in Classes 3, 10, 14 and 15 shall be entitled to vote separately to accept or reject the Plan, as provided in the Disclosure Statement Order or any other applicable order of the Bankruptcy Court.

(b)    Class Conclusively Presumed to Accept. Classes 1, 2, 2A, 2B, 8, 9, 9A, 9B 13, and 14A are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

(c)    Classes Deemed to Reject.  Classes 4 through 7, Classes 11 and 12, and Classes 16 through 19 will not (or are not anticipated to) receive a recovery or retain any interest under the Plan.  In accordance with section 1126(g) of the Bankruptcy Code, these Classes are deemed to have rejected the Plan.

5.2.    Treatment of Vacant Classes

Any Class of Claims or Interests that does not contain a Holder of an Allowed Claim or Allowed Interest shall be deemed deleted from the Plan for all purposes.

5.3.    [Reserved].

5.4.    Nonconsensual Confirmation

If any Class of Claims or Interests entitled to vote shall not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan in accordance with Section 13.2 of the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both.  With respect to Impaired Classes of Claims that are deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE VI

## MEANS OF IMPLEMENTATION OF THE PLAN

6.1.    Emergence Date Transactions

For each Debtor, the Plan will be implemented by or through a Wind-Down Company (if applicable), Wind-Down Administrator, Asset Recovery Entity and Asset Recovery Manager, Litigation Trust and Litigation Trustee(s).  The post-Effective Date organization of the Asset Recovery Entities are set forth on Annex A to the Plan.

(a)      Funding of Escrows

To ensure adequate implementation of the Plan, the following amounts and accounts shall be funded on the Effective Date as set forth below:

| Account | Purpose | Amount of Funding | Source of Funding |
|---------|---------|-------------------|-------------------|
| Administrative and Priority Claims Escrow Accounts (with sub-accounts for Zohar I, Zohar II and Zohar III) | Payment of all Allowed Administrative and Priority Claims (other than Professional Claims) against Zohar II and Zohar III | As estimated by Zohar I, Zohar II and Zohar III, based on the respective Claims asserted against them | Zohar II (for itself and Zohar I) and Zohar III (solely for itself) |
| D&O Indemnity Escrow Account | Payment of any indemnification obligations owed to the Independent Director, CROs and CMO | As determined by the Debtors, in consultation with the Controlling Party and Controlling Class, and disclosed in the Plan Supplement | Zohar II and Zohar III, based on the Case Expense Allocation |
| Professional Claims Escrow Account | Payment of all Allowed Professional Fees | The Professional Claims Escrow Amount | Zohar II and Zohar III, based on the Case Expense Allocation |
| Retained Claims Escrow | To be held pursuant to the Sale Orders with respect to any Retained Claim Actions (as defined in the Sale Orders) | $825,000 | Zohar II and Zohar III, based on the Case Expense Allocation |
| Wind-Down Escrow Account | Wind-down expenses | As determined by the Debtors, in consultation with the Controlling Party and Controlling Class, and disclosed in the Plan Supplement | Zohar II and Zohar III, based on the Case Expense Allocation |
| Litigation Trust Bank Account(s) | Expenses of the Litigation Trust(s) and Litigation Trustee(s) | As determined by the Debtors, in consultation with the Controlling Party and Controlling Class, as applicable, and disclosed in the Plan Supplement | To be disclosed in the Plan Supplement |

| Account | Purpose | Amount of Funding | Source of Funding |
|---|---|---|---|
| Asset Recovery Entity Bank Accounts | Expenses of the applicable Asset Recovery Entity and Asset Recovery Manager | As determined by the Debtors, in consultation with the Controlling Party and Controlling Class, as applicable, and disclosed in the Plan Supplement | To be disclosed in the Plan Supplement |
| Reserves for Indenture Trustee Claims | To fund the Indenture Trustee Claims assumed by the Asset Recovery Entities and the Litigation Trust(s) | Initially, $250,000 for the Zohar II Indenture Trustee Claim and $250,000 for the Zohar III Indenture Trustee Claim, and to be replenished on an "evergreen" basis as such Indenture Trustee Claims are paid | $250,000 from Zohar II and $250,000 from Zohar III |

(b)    Zohar I

Under the Zohar I Sale Documents, MBIA acquired all the right, title and interest (whether legal, equitable or beneficial) of the assets of Zohar I existing as of such date and a Participation (as defined in the Zohar I Sale Documents) in 100% of the equitable and beneficial ownership interests in each such asset for which MBIA did not receive the legal and record ownership of such asset. The Confirmation Order shall authorize, approve and deem MBIA to be the legal and record owner of all such assets, in addition to its previous acquisition of the beneficial and equity ownership interests in such assets, except to the extent that an asset was disposed of in connection with a third-party sale transaction approved by the Bankruptcy Court prior to the Effective Date.

On the Effective Date, Zohar I shall complete the transactions contemplated by the Zohar I Sale Documents by (i) fully and finally transferring to MBIA any debt and equity interests that remain recorded in the name of Zohar I; and (ii) substituting MBIA for Zohar I as the Plaintiff (or movant, as applicable) in all pending Causes of Action, including the Zohar-Patriarch Adversary Proceeding, other than with respect to the Avoidance Actions arising under the Bankruptcy Code asserted in Counts XIX, XX, XXI, and XXII.

The Avoidance Actions asserted in Counts XIX, XX, XXI, and XXII of the Zohar-Patriarch Adversary Proceeding shall be transferred to a Litigation Trust as provided in the Plan Supplement on the Effective Date, and that Litigation Trust shall be substituted for Zohar I as the Plaintiff for such Avoidance Actions, subject to any liens of the Indenture Trustee securing the Zohar I Indenture Trustee Claims.

(c)    <u>Zohar II</u>

*Step 1*:  Zohar II shall fund its share of the Escrow Accounts.

*Step 2*:  The Zohar II Credit Enhancement Claims shall be reduced to the Zohar II Adjusted Plan Value and exchanged for the New Notes issued by Zohar II with a face amount equal to the Zohar II Adjusted Plan Value.

*Step 3*:  All of the Remaining Assets of Zohar II shall be transferred to Zohar II Recovery LLC in exchange for Zohar II Recovery LLC's assumption of the New Notes issued by Zohar II and the Zohar II Indenture Trustee Claim.

*Step 4*:  All but $100,000 of the New Notes issued by Zohar II (which were assumed by Zohar II Recovery LLC) will be converted into equity of New Zohar II LLC.

*Step 5*:  To the extent identified in the Plan Supplement, Zohar II Recovery LLC shall contribute any of its Group A PC Assets or Other Assets to one or more subsidiary holding companies, each of which shall be wholly owned by Zohar II Recovery LLC.

*Step 6*:  The applicable Litigation Trust shall also be substituted for Zohar II in all actions where Zohar II is the Plaintiff (or movant as applicable).

(d)    <u>Zohar III</u>

*Step 1*:  Zohar III shall fund its share of the Escrow Accounts.

*Step 2*:  The Zohar III A Note Claims shall be reduced to the Zohar III Adjusted Plan Value and exchanged for New Notes issued by Zohar III with a face amount equal to the Zohar III Adjusted Plan Value.

*Step 3*:  All of the Remaining Assets of Zohar III shall be transferred to Zohar III Recovery LLC in exchange for Zohar III Recovery LLC's assumption of the New Notes issued by Zohar III and the Zohar III Indenture Trustee Claim.

*Step 4*:  All but $100,000 of the New Notes issued by Zohar III (which were assumed by Zohar III Recovery LLC) will be converted into equity of New Zohar III LLC.

*Step 5*:  To the extent identified in the Plan Supplement, Zohar III Recovery LLC shall contribute any of its Group A PC Assets or Other Assets to one or more subsidiary holding companies, each of which shall be wholly owned by Zohar III Recovery LLC.

*Step 6*:  The applicable Litigation Trust shall also be substituted for Zohar III in all actions where Zohar III is the Plaintiff (or movant as applicable).

(e)    <u>Authorization of Transactions</u>

The Confirmation Order shall, and shall be deemed to, pursuant to sections 363, 1123, 1141 and 1142 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary

or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

6.2.    General Settlement of Claims and Interests

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all claims, Interests, Causes of Action (other than the Litigation Assets transferred to a Litigation Trust), and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such claims, Interests, Causes of Action (other than the Litigation Assets transferred to a Litigation Trust), and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 of all such claims, Interests, Causes of Action (other than the Litigation Assets transferred to a Litigation Trust), as well as a finding by the Bankruptcy Court that such compromise and settlement is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. All distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

**For the avoidance of doubt, notwithstanding anything in the Plan or the Confirmation Order to the contrary, neither the Plan nor the Confirmation Order shall settle any Causes Of Action or claims or rights to payment that belong to the Debtors with respect to Lynn Tilton, the Patriarch Stakeholders, the respective Affiliates of any of them and their related Parties (other than the Exculpated Parties and Ankura, if they are Related Parties or Affiliates of the foregoing).**

6.3.    Cancellation of Agreements and Interests; Termination of Liens

On the Effective Date, except to the extent otherwise specifically provided for in the Plan: (a) the Zohar Indentures, the Interests in the Debtors, and all notes, bonds, agreements, instruments, certificates, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, and any other instruments or documents directly or indirectly evidencing, creating, or, relating to any indebtedness or obligations of, or ownership interest, equity, or profits interest in, the Debtors, or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity ownership, or profits interests in the Debtors giving rise to any Claims or Interests (collectively, the "Canceled Debt and Equity Documentation") shall be canceled, surrendered, extinguished and of no force or effect and deemed surrendered to the Debtors and neither the Debtors nor any successor in interest thereto shall have any continuing obligations thereunder; (b) the obligations of the Debtors pursuant, relating, or pertaining to the Zohar Indentures, the Interests in the Debtors and all other Canceled Debt and Equity Documentation shall be fully released, settled, and compromised; and (c) the Indenture Trustee shall be discharged and the collateral manager for each Debtor shall be terminated.

From and after the Effective Date, the parties to the Zohar Indentures and the Transaction Documents  and such other Canceled Debt and Equity Documentation will have no rights arising from or related to the Zohar Indentures and the Transaction Documents and such other Canceled Debt and Equity Documentation, all such rights being expressly extinguished pursuant to this Plan;; _provided_, that, notwithstanding Confirmation or the occurrence of the Effective Date, any such Zohar Indenture or other Canceled Debt and Equity Documentation that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of enabling Holders of Allowed Claims to receive distributions under the Plan solely as expressly provided herein, including the treatment of the Indenture Trustee Claims in Classes 2, 9, 14.

On the Effective Date, all liens in favor of the Indenture Trustee securing the Noteholder Claims, whether arising prior to or after the Petition Date, shall be automatically released; _provided_, _however_, that the Indenture Trustee shall retain all of its liens on the Debtors' assets (but, for the avoidance of doubt, excluding assets transferred to MBIA under the Zohar I Sale Documents) to secure the payment of the Indenture Trustee Claims until such Indenture Trustee Claims have been satisfied.  For the avoidance of doubt, the liens of the Indenture Trustee on any Litigation Assets (x) shall be senior to any interests held by or any distributions made on account thereof to the beneficiaries of any Litigation Trust whose interests in that Litigation Trust arise from Noteholder Claims, but (y) shall, if applicable, be junior to the liens of any litigation funder for that Litigation Trust.  The Indenture Trustee shall not be required to file UCC financing statements or take any other actions to record or perfect its surviving liens pursuant to this section, and such liens shall be deemed perfected and enforceable upon entry of the Confirmation Order.

Upon the payment in full of the Allowed DIP Claims, all liens on property of the DIP Debtors arising out of or related to the DIP Order or the DIP Credit Agreement shall automatically terminate, and all collateral subject to such liens shall be automatically released from such liens, in each case without further action by the DIP Lender and all obligations of the DIP Debtors arising out of or related to the DIP Claims shall be automatically released, in each case without further action by the DIP Lender.

The Indenture Trustee, Noteholders and DIP Lender shall take all actions to effectuate and confirm such termination and release as reasonably requested by the DIP Debtors, the Wind-Down Administrator, the Asset Recovery Managers or the Litigation Trustee(s).

6.4.    Modified Substantive Consolidation

Entry of the Confirmation Order shall constitute the approval, pursuant to sections 105(a), 541, 1123 and 1129 of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of: (i) Zohar I Corp. with Zohar I Limited, (ii) Zohar II Corp. with Zohar II Limited, and (iii) Zohar III. Corp. with Zohar III Limited for all purposes, including voting, confirmation, and Distribution.  On and after the Effective Date, (i) all assets and liabilities of Zohar I Corp. shall be pooled with Zohar I Limited, Zohar II Corp. shall be pooled with Zohar II Limited, and Zohar III. Corp. shall be pooled with Zohar III Limited, (ii) no Distributions shall be made under the Plan on account of any Claim held by a Debtor against any Debtor with which it has been consolidated under the Plan, (iii) no Distributions shall be made under the Plan on account of any Interest held by a Debtor in any other Debtor, and (iv) all guarantees of any Debtors of the obligations of any other Debtor with which it has been consolidated under the Plan shall be eliminated so that any

Claim against any Debtor and any guarantee thereof executed by any other Debtor, and any joint or several liability of any of the Debtors shall be one obligation of the substantively consolidated Debtors.

    6.5.   <u>Wind-Down Company and Wind-Down Administrator</u>

    (a)   <u>The Wind-Down Company</u>

On the Effective Date, the Debtors may, at their election and with the consent of the Controlling Party and Controlling Class, form the Wind-Down Company for the purposes of resolving the affairs of the Debtors after the Effective Date, which, if formed, shall be deemed the successor to the Debtors as provided for herein.

The Wind-Down Company shall hold the Escrow Accounts funded on the Effective Date. If the Debtors elect not to form the Wind-Down Company, the Escrow Accounts shall be held by one or more of the Litigation Trust(s) as set forth in the Plan Supplement.

    (b)   <u>Appointment and Authority of Wind-Down Administrator</u>

To the maximum extent permitted by applicable law, the Wind-Down Administrator shall have all power and authority that may be or could have been exercised, with respect to the Debtors, by any officer, director, shareholder, member, manager or other party acting in the name of such Debtor or its Estate with like effect as if duly authorized, exercised and taken by action of such officer, director, shareholder, member, manager or other party.

The identity of the Wind-Down Administrator will be disclosed in the Plan Supplement, and shall be acceptable to the Controlling Party and Controlling Class, each in their reasonable discretion, and the appointment of the Wind-Down Administrator shall be approved in the Confirmation Order. In the event of the Wind-Down Administrator's resignation, death, incapacity or otherwise inability to serve, a replacement Wind-Down Administrator shall be appointed by the Litigation Trustee or, if there is more than one Litigation Trust provided for in the Plan Supplement, by a plurality of the Litigation Trustees.

    (c)   <u>Duties of Wind-Down Administrator</u>

The Wind-Down Administrator will be responsible for:

    (1)   Winding up the Debtors' affairs as is appropriate under the circumstances;

    (2)   Administering the Plan and taking such actions as are necessary to effectuate the Plan;

    (3)   At the election of the Wind-Down Administrator, effecting the dissolution and cancellation of each of the Debtors;

    (4)   Filing all appropriate (including final) tax returns;

(5)        Administering Distributions to Holders of Allowed Administrative and Priority Claims;

(6)        Ensuring that all reports required by the U.S. Trustee through the date each Debtor's Chapter 11 Case is closed are Filed; and

(7)        Seeking entry of an order closing the Chapter 11 Case and obtaining a final decree for each Debtor, subject to, as applicable, obtaining the consent of the affected Asset Recovery Manager and the affected Litigation Trustee in each instance.

The Wind-Down Administrator shall be discharged upon the filling of a certification with the Bankruptcy Court (or delivery to the Litigation Trustee(s) and Asset Recovery Managers, if no Chapter 11 Case remains open at that time) that the foregoing actions have all been completed, except that items (6) and (7) shall be assumed by the Litigation Trustee(s) if any Chapter 11 Case remains open at the time that the Wind-Down Administrator has otherwise completed its responsibilities under the Plan.

(d)        Expenses of the Wind-Down Administrator

All fees, costs and expenses of the Wind-Down Administrator shall be paid from the funds on deposit in the Wind-Down Escrow Account.

(e)        Engagement of Professionals

The Wind-Down Administrator shall have the authority to retain professionals to assist it in carrying out the purposes of discharging its obligations, which shall be paid from the Wind-Down Escrow Account and no other source.  There shall be no limitation on the Wind-Down Administrator's selection of professionals and no professional may be disqualified from or prohibited from representing the Wind-Down Administrator based on the fact that it previously represented or currently represents a party in interest in the Chapter 11 Cases.

(f)        Corporate Existence and Dissolution or Cancellation of Debtors

Any officer, director or manager of each Debtor shall be deemed to have resigned upon the occurrence of the Effective Date.

Immediately after the Effective Date, the Wind-Down Administrator shall be authorized to take, in his or her sole and absolute discretion, all actions deemed to be appropriate in connection with dissolving or canceling the existence of the Debtors under applicable laws, including under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation.  The Wind-Down Administrator shall be authorized to file any certificate of dissolution or cancellation or other documents as may be necessary or desirable to terminate the legal existence of the Debtors.  For the avoidance of doubt, the Wind-Down Administrator is not obligated to take any affirmative action to dissolve or cancel the existence of any Debtor.

The Wind-Down Administrator and Debtors shall not be required to pay any stamp or similar tax or any other taxes or fees in connection with effecting the dissolution or cancellation of the Debtors.

6.6.    The Asset Recovery Entities

(a)    Establishment of the Asset Recovery Entities

The Controlling Party of Zohar II shall create New Zohar II LLC, Zohar II Intermediate LLC and Zohar II Recovery LLC, which shall have the ownership structure and capitalization described in the Plan Supplement.  Each of these three entities shall elect to be treated as corporations for federal income tax purposes.

The Controlling Class of Zohar III shall create New Zohar III LLC, Zohar III Intermediate LLC and Zohar III Recovery LLC, which shall have the ownership structure and capitalization described in the Plan Supplement.  Each of these three entities shall elect to be treated as corporations for federal income tax purposes.

Zohar II Recovery LLC and Zohar III Recovery LLC may also have one or more subsidiaries, as described in the Plan Supplement, which shall each be wholly owned by its respective parent entity.  The organizational documents for each of the Asset Recovery Entities shall provide that the equity of such Asset Recovery Entities be freely tradeable or assignable to the maximum extent practicable.

(b)    Appointment of the Asset Recovery Managers

On the Effective Date, an Asset Recovery Manager for each Asset Recovery Entity shall be appointed by the applicable Controlling Class or Controlling Party at such Asset Recovery Entity, as the case may be, and shall constitute a representative of the applicable Debtor's estate under section 1123 of the Bankruptcy Code.  The identity of each initial Asset Recovery Manager and its proposed compensation shall be disclosed in the Plan Supplement and shall be subject to approval by the Bankruptcy Court at the Confirmation Hearing.

The same party can serve as the Asset Recovery Manager for more than one Asset Recovery Entity and can also serve as Wind-Down Administrator or a Litigation Trustee.

(c)    Responsibilities of the Asset Recovery Manager

Each Asset Recovery Manager's primary responsibility shall be to maximize the value of the Remaining Assets (other than the Litigation Assets, which shall be administered by the Litigation Trustee(s)) held by its respective Asset Recovery Entity for the benefit of members of the respective Asset Recovery Entity.  Subject to Section 6.7 of this Plan, except as set forth in the Asset Recovery Entity Agreement, no Asset Recovery Entity or Asset Recovery Manager shall have any obligations to the Debtors or any Holders of Claims or Interests against the Debtors.

29197034.1

(d)      Transfer of the Remaining Assets; Free and Clear Transfer

Notwithstanding any prohibition on assignability under applicable non-bankruptcy law, on the Effective Date, pursuant to the terms and conditions of the applicable Asset Recovery Entity Agreement, the Debtors shall be deemed to have automatically transferred to each Asset Recovery Entity all of their right, title, and interest in and to all of the Remaining Assets in accordance with section 1141 of the Bankruptcy Code.  All such assets shall automatically vest in the Asset Recovery Entity free and clear of all Claims, Liens, and other interests, subject only to the expenses of the Asset Recovery Entity and liens securing the applicable Indenture Trustee Claims as set forth in the Plan and in the applicable Asset Recovery Entity Agreement.  Thereupon, the Debtors and Holders of Claims and Interests against the Debtors shall have no interest in or with respect to the Remaining Assets so transferred or the Asset Recovery Entities.

Any provision in any contract purporting to restrict the rights of the Debtors to assign or transfer any Remaining Asset, to prohibit the assignment of any Remaining Asset, or to limit or restrict the rights of any assignee of any Remaining Asset shall not be enforced or enforceable with respect to the Transfer of the Remaining Assets under the Plan.

Prior to the Effective Date, the Debtors shall make a good faith determination of the fair market value of the Remaining Assets as of the Effective Date, *provided*, *however*, that the Debtors shall not be required to hire an expert to make such a valuation.  This valuation shall be used consistently by all parties (including the Debtors, the applicable Asset Recovery Entity and its Asset Recovery Manager, and the members of the applicable Asset Recovery Entity) for all federal income tax purposes.

(e)      Expenses of Asset Recovery Manager; Retention of Advisors

Each Asset Recovery Entity shall be responsible for its own expenses, including the fees and costs of its Asset Recovery Manager and any professionals retained by it.

Except as provided in the applicable organizational documents, there shall be no limitation on an Asset Recovery Manager's selection of professionals and no professional may be disqualified from or prohibited from representing an Asset Recovery Manager based on the fact that it previously represented or currently represent a party in interest.

(f)      Payments to Be Made upon Dissolution of an Asset Recovery Entity

In connection with the dissolution or termination of any Asset Recovery Entity, provisions shall be made for the treatment of any payments to be paid to such Asset Recovery Entity hereunder so as to preserve such payment for its intended beneficiaries, including by substituting the Litigation Trust for the applicable Zohar Fund as the recipient of such payment.

6.7.    Post-Confirmation Status of Settlement Agreement

The terms and provisions of the Settlement Agreement shall remain in full force and effect from and after the Effective Date, except that MBIA, for the assets acquired under the Zohar I Sale Documents, and the applicable Asset Recovery Managers shall assume the obligations of the Independent Director and the CRO with respect to the monetization process under the Settlement

Agreement and July 2 Order for the debt and equity interests in the Portfolio Companies contributed to them on the Effective Date.  The applicable Asset Recovery Managers shall also assume any claims and defenses of the applicable Debtors against any party with respect to the Settlement Agreement, including, without limitation, any claims that the Settlement Agreement was breached.  Furthermore, paragraphs 6 and 18 of the Settlement Agreement, shall remain in effect and binding on the parties to the Settlement Agreement, Ankura (and any successor to it), the Wind-Down Administrator and each Asset Recovery Entity and its respective Asset Recovery Manager.

6.8.    <u>Litigation Trust(s)</u>

(a)    <u>Establishment of the Litigation Trust(s)</u>

One or more Litigation Trusts will be created, and the Litigation Assets will be transferred to and vest in the Litigation Trust(s) as provided for in the Plan Supplement as of the Effective Date.  The transfer of the Litigation Assets to the Litigation Trust(s) will be done in a manner so as to minimize any tax impact on the Debtors and their estates.

From and after the Effective Date, the Litigation Trust(s) and the Litigation Trustee(s) may commence, litigate, and settle any Causes of Action or claims or rights to payment or claims that belong to the Debtors or Estates as of the Effective Date or are instituted by the Litigation Trust(s) or Litigation Trustee(s) on or after the Effective Date, except as otherwise expressly provided in the Plan and the Litigation Trust Agreement(s).  The Litigation Trust(s) shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the applicable Debtor and its Estate, including setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.  Without the need for filing any motion for such relief, in connection with the Litigation Assets, the Litigation Trust(s) or the Litigation Trustee(s) (as applicable) hereby shall be deemed substituted for the applicable Debtor (i) in all pending matters including, but not limited to, motions, contested matters and adversary proceedings in the Bankruptcy Court; and (ii) with respect to any Causes of Action pending before the Bankruptcy Court or any other court, other than as expressly provided for in Section 6.1(b) with respect to Zohar I.

On and after the Effective Date, the Litigation Trust(s) shall have no liability on account of any Claims against, or Interests in, the Debtors except as set forth in the Plan and in the Litigation Trust Agreement(s).

(b)    <u>Appointment of the Litigation Trustee(s)</u>

On the Effective Date, the Litigation Trust(s) and Litigation Trustee(s) shall be appointed and shall constitute a representative of the Debtor's estate under section 1123 of the Bankruptcy Code.  The identity of the Litigation Trustee(s) and their compensation shall be disclosed in the Plan Supplement and subject to approval by the Bankruptcy Court at the Confirmation Hearing.  In the event of a Litigation Trustee's resignation, death, incapacity or otherwise inability to serve, a successor Litigation Trustee shall be appointed in accordance with the applicable Litigation Trust Agreement.

The same party can serve as a Litigation Trustee, Wind-Down Administrator or an Asset Recovery Manager.

(c)    Responsibilities of the Litigation Trustee

Each Litigation Trustee's primary responsibilities shall be as follows, but shall additionally include any other matters set forth in the applicable Litigation Trust Agreement:

(1)    Pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, or resolve the Litigation Assets;

(2)    Determine the allocation of expenses for prosecuting, reducing to cash and collecting the proceeds of any Litigation Assets;

(3)    Determine the allocation of recoveries from Litigation Assets to the extent the recovery is not directly traceable to Litigation Assets; and

(4)    Determine the amount and timing of Distributions of the Cash proceeds of the Litigation Assets to the beneficiaries of the applicable Litigation Trust.

(d)    Transfer of the Litigation Assets

Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date, pursuant to the terms and conditions of the Litigation Trust Agreement(s), the Debtors shall be deemed to have automatically transferred to the Litigation Trust(s), all of their right, title, and interest in and to all of the Litigation Assets in accordance with section 1141 of the Bankruptcy Code.  All such assets shall automatically vest in the Litigation Trust(s) free and clear of all Claims, Liens, and other interests, subject only to the expenses of the Litigation Trust(s) and the liens securing the Zohar II Indenture Trustee Claims and Zohar III Indenture Trustee Claims as set forth in the Plan and the Litigation Trust Agreement(s).  Thereupon, the Debtors shall have no interest in or with respect to the Litigation Assets or the Litigation Trust(s).

(e)    Expenses of Litigation Trustee; Retention of Advisors

The expenses of any Litigation Trust and Litigation Trustee of such trust, including the fees and expenses of any professionals retained by such Litigation Trustee, shall be paid solely from the assets of such Litigation Trust, including any financing obtained by such Litigation Trust. The allocation of the expenses in such Litigation Trust of such trust shall be determined as set forth in the applicable Litigation Trust Agreement.

There shall be no limitation on a Litigation Trustee's selection of professionals and no professional may be disqualified or prohibited from representing a Litigation Trustee based on the fact that it previously represented or currently represents a party in interest.

(f)    Payments to Be Made upon Dissolution of the Litigation Trust(s)

In connection with the dissolution or termination of the Litigation Trust, provisions shall be made for the treatment of any payments to be paid to the Litigation Trust hereunder so as to preserve such payment for its intended recipient.

29197034.1

6.9. <u>Establishment, Funding and Distribution of Escrow Accounts</u>

(a) <u>Administrative and Priority Claims Escrow Account</u>

On the Effective Date, the Administrative and Priority Claims Escrow Account shall be established, shall be divided into sub-accounts for each Debtor, and shall be funded from the applicable Debtor's Cash, subject to the next sentence. Solely with respect to Zohar I, if the Administrative and Priority Claims Escrow Account is not funded in full on the Effective Date, it shall be funded by the relevant Litigation Trustee prior to the distribution of any Distributable Cash to holders of Claims in Classes 14 and 15. The Wind-Down Administrator shall have responsibility for directing the Distribution of the funds in the Administrative and Priority Claims Escrow Account in accordance with the terms of the Plan.

The funds in the Administrative and Priority Claims Escrow Account shall be distributed to satisfy all Allowed Administrative and Priority Claims against the Debtors until the Holders of all such Claims are paid the full Allowed amount of their Claims (or such other less favorable treatment agreed to by the holder of such claim). If there are any funds in the respective sub-account for any Debtor in the Administrative and Priority Claims Escrow Account after the Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims against such Debtor are paid the full Allowed amount of such Claims, the balance of such funds shall be remitted to: (i) the Liquidation Trust specified in the Plan Supplement, for payment of Allowed Claims against Zohar I in accordance with the Plan, (ii) Zohar II Recovery LLC, for payment of Allowed Claims against Zohar II in accordance with the Plan, and (iii) Zohar III Recovery LLC, for payment of Allowed Claims against Zohar III in accordance with the Plan.

(b) <u>D&O Indemnity Escrow Account</u>

On the Effective Date, the D&O Indemnity Escrow Account shall be established, funded, and maintained pursuant to the D&O Indemnity Escrow Agreement. The funds in the D&O Indemnity Escrow Account shall be held in trust for the benefit of the Independent Director, CROs and CMO, and used solely for the purpose of satisfying any indemnification obligations owed to each of them.

The Plan Supplement shall include the form of D&O Indemnity Escrow Agreement, which shall detail the manner for disbursing the funds therein and the duration for such escrow account. Amounts remaining in the D&O Indemnity Escrow Account at its termination shall be remitted to the Zohar II Asset Recovery Entity and Zohar III Asset Recovery Entity, ratably based on the Case Expense Allocation.

(c) <u>Professional Claims Escrow Account</u>

On the Effective Date, the Professional Claims Escrow Account shall be established, funded in the amount of the Professional Claims Escrow Amount, and maintained by the Wind-Down Administrator. The funds in the Professional Claims Escrow Account shall be held in trust for the benefit of the Professionals and used solely for the purpose of satisfying Professional Claims.

From and after the Effective Date, pending the final Allowance of their Professional Claims, retained Professionals shall be paid from the Professional Claims Escrow Account the interim amount permitted to be paid under the Interim Compensation Order on account of their Professional Claims.  Allowed amounts shall be paid within three (3) business days of interim or final allowance, as applicable, including interim allowance in accordance with the procedures set forth in the Interim Compensation Order.  If there are any funds in the Professional Claims Escrow Account after each Holder of an Allowed Professional Claim has received payment in full, the balance of such funds shall be remitted to the Zohar II Asset Recovery Entity and Zohar III Asset Recovery Entity, ratably based on the Case Expense Allocation.

(d)    Wind-Down Escrow Account

On the Effective Date, the Wind-Down Escrow Account shall be established, funded in the amount determined by the Debtors (in consultation with the Controlling Party and Controlling Class) and set forth in the Plan Supplement, and maintained by the Wind-Down Administrator. The funds in the Wind-Down Escrow Account shall be held in trust for the benefit of the Wind-Down Administrator and used solely for the purpose of satisfying the expenses incurred in discharging the Wind-Down Administrator's duties and obligations.

Any amount that remains in the Wind-Down Escrow Account at the time the Wind-Down Administrator has discharged its duties and is eligible to be discharged, as determined by the Wind-Down Administrator in its sole discretion, shall be distributed to Zohar II Recovery LLC and Zohar III Recovery LLC ratably in accordance with the Case Expense Allocation.

(e)    Patriarch Disputed CMA Fee Escrow

Once all Patriarch Disputed CMA Fee Claims are Allowed or Disallowed, any funds remaining in the Patriarch Disputed CMA Fee Escrow after payment of the Allowed amounts of the Patriarch CME Fee Claims shall be paid to (i) the Litigation Trust for Zohar I for any amounts originally contributed by Zohar I that remain after payment of the Zohar I Patriarch Disputed CMA Fee Claim, (ii) Zohar II Recovery LLC for amounts originally contributed by Zohar II that remain after payment of the Zohar II Patriarch Disputed CMA Fee Claim, and (iii) Zohar III Recovery LLC for amounts originally contributed by Zohar III that remain after payment of the Zohar III Patriarch Disputed CMA Fee Claim.

(f)    Ankura CMA Escrows

Not later than three (3) business days prior to the Effective Date, Ankura shall provide each of Zohar II and Zohar III with an estimate of the amounts anticipated to be due and owing under Section 3.01 of the respective Ankura CM Agreement as of the occurrence of the Effective Date. On the Effective Date, the Debtors shall deposit into the applicable Ankura CMA Escrow the amount by which the current balance of the applicable Ankura CMA Fee Escrow is less than the estimate provided to the applicable Zohar Fund pursuant to the prior sentence.  As soon as reasonably practicable after the Effective Date, (i) any amounts in the Ankura Zohar II Escrow shall be used to pay the outstanding Zohar II Ankura CMA Claims due and owing through the Effective Date and the balance of such escrow shall be paid to Zohar II Recovery LLC and (ii) any amounts in the Ankura Zohar III Escrow shall be used to pay the outstanding Zohar III Ankura

CMA Claims due and owing through the Effective Date and the balance of such escrow shall be paid to Zohar III Recovery LLC.  Once such payment has been made, the parties to the documents governing the Ankura CMA Escrows shall take all steps necessary to terminate such escrows.

(g)  Zohar I Issuer Holdback

The Indenture Trustee shall continue to hold the Zohar I Issuer Holdback to secure the payment of the Zohar I Indenture Trustee Claims as permitted by the Zohar I Issuer Holdback Documents.  If any funds remain in the Zohar I Issuer Holdback once all Allowed Zohar I Indenture Trustee Claims have been paid in full, the remaining funds shall be distributed to the Litigation Trust for Zohar I.

(h)  AMZM Escrow Accounts

Upon and after the Effective Date of this Plan and the discharge of the Indenture Trustee pursuant to Section 6.3 of the Plan, any funds to be released from the AMZM Escrow Accounts shall be transferred to the Zohar II Recovery LLC or Zohar III Recovery LLC, as applicable based on the source of the funds in the particular AMZM Escrow Account.

6.10.   Effectuating Documents; Further Transactions

The appropriate officer, director or authorized representative of the Debtors or the Wind-Down Administrator, as applicable, shall be, and hereby are, authorized to execute, deliver, file, and record such contracts, instruments, releases, indentures, certificates, and other agreements or documents, and take such other actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and Confirmation of the Plan shall constitute all necessary corporate or limited liability company authorizations necessary to carry out such actions.

6.11.   Disposition of Books and Records

After the Effective Date, the Debtors shall transfer the Debtors' non-privileged books and records in the Debtors' actual possession and otherwise assign their rights and interest in such books and records to (i) the relevant Litigation Trust, with respect to the books and records related to the Litigation Assets transferred to such Litigation Trust, and (ii) the respective Asset Recovery Entities with respect to the books and records related to all Remaining Assets other than the Litigation Assets.  The Debtors shall also transfer privileged books and records related to the Litigation Assets and/or the Remaining Assets to the relevant Litigation Trust and/or the Asset Recovery Entities, as applicable, and the Plan Supplement shall specify the treatment and manner in which any privileged materials related to the Litigation Assets and the Remaining Assets will be transferred to such Litigation Trust and Asset Recovery Entities, as applicable.  From and after the Effective Date, the Asset Recovery Entities and Litigation Trust shall continue to preserve and maintain all documents and electronic data transferred to them by the Debtors for at least such period as necessary to allow the Wind-Down Administrator to fulfill its obligations.

6.12.    Objection to Pending Request for Allowance of Adequate Protection Claims under Section 507(b)

The Plan constitutes an objection to any request for a claim under Section 507(b) of the Bankruptcy Code filed or made by any party other than the Indenture Trustee. The Court has determined that the Indenture Trustee is the sole party having any lien or security interest in the Debtors' property and, correspondingly, is the only party entitled to assert a claim for any diminution in the value of its interest in the Debtors' property. Therefore, the Debtors object to the pending administrative expense claims filed by MBIA Insurance Corp. against the Zohar II Debtors [Docket Nos. 2877 and 2878], Bardin Hill Investment Partners, LP, on account of funds managed by itself and its affiliates, against the Zohar III Debtors [Docket Nos. 2879 and 2880] and the Patriarch Stakeholders (as defined in their request) against all Debtors [Docket No. 2882], as well as any future claim under Section 507(b) of the Bankruptcy Code submitted by a party other than the applicable Indenture Trustee.

For the avoidance of doubt, the Debtors are not objecting to any claim to enforce a right to payment held by the Controlling Party or the Controlling Class under the DIP Order.

6.13.    Approval of Case Expense Allocation

The Case Expense Allocation shall be disclosed in the Plan Supplement and approved at the Confirmation Hearing.

6.14.    Disposition of Zohar II Intercompany Claim

The Plan contemplates a settlement of the Zohar II Intercompany Claim. Specifically, if the Plan is confirmed for Zohar I and Zohar II, Zohar II shall be deemed to have consented to a treatment, subject to the occurrence of the Effective Date for Zohar I, that results in Zohar II (or Zohar II Recovery, LLC, if it succeeds to the assets of Zohar II) receiving a beneficial interest in the relevant Litigation Trust on account of the Zohar II Intercompany Claim, with a payment preference senior to Classes 14 through 19, in lieu of the treatment required under section 1129(a)(9)(A) of the Bankruptcy Code. As a result of such treatment, and expressly conditioned on the payment preference described in the foregoing sentence, no amounts shall be required to be placed into the Administrative and Professional Claim Escrow Account on account of the Zohar II Intercompany Claim.

6.15.    Treatment of Zohar II Indenture Trustee Claim and Zohar III Indenture Trustee Claim

Zohar II Recovery LLC and the Zohar II Litigation Trust shall be deemed to have assumed the Zohar II Indenture Trustee Claim and Zohar III Recovery LLC and the Zohar III Litigation Trust shall be deemed to have assumed the Zohar III Indenture Trustee Claim, and the Indenture Trustee shall retain its liens on all assets received by the Asset Recovery Entities from the Debtors, including any Litigation Assets subsequently transferred to the Litigation Trust, to ensure that the foregoing claims are Unimpaired. On the Effective Date, the Indenture Trustee shall remit to Zohar II Recovery LLC all funds in its possession with respect to any "Account", as defined in the Zohar II Indenture, of Zohar II, and the Indenture Trustee shall remit to Zohar III Recovery LLC all funds in its possession with respect to any "Account", as defined in the Zohar III Indenture, of

Zohar III. The Asset Recovery Entity Agreements and Liquidation Trust(s) shall provide for a reserve to be established for each of the Zohar II Indenture Trustee Claims and Zohar III Indenture Trustee Claims and replenished on an "evergreen" basis (using funds from the proceeds received by the applicable Asset Recovery Entity and Litigation Trust) to secure the payment of such Indenture Trustee Claims, and the "evergreen" amount of each such reserve shall be $250,000, unless the Indenture Trustee agrees to a lesser amount.

6.16. Disposition of Patriarch Disputed CMA Fee Claims

The applicable Litigation Trustee(s) shall be substituted for AMZM and the applicable Debtors under the Patriarch CMA Fee Dispute Documents. If there are different Litigation Trustee(s), such substitution shall be with respect to the Patriarch CMA Fees (and corresponding amounts in the Patriarch Disputed CMA Fee Escrow Agreement) for the respective Zohar Fund to which the Litigation Trustee is a successor. The Litigation Trustee shall prosecute to conclusion or settlement the dispute over the Patriarch Disputed CMA Fee Claims in accordance with the Patriarch CMA Fee Dispute Documents.

## ARTICLE VII

## DISTRIBUTIONS UNDER THE PLAN

7.1. Delivery of Distributions

Subject to Bankruptcy Rule 9010 and Section 7.3, all Distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the Bankruptcy Schedules filed with the Bankruptcy Court if no Proof of Claim has been filed and otherwise at the address of such Holder as set forth in the most-recently filed Proof of Claim; *provided* that the applicable Distribution Agent shall use any address for purposes of Distributions identified to it in writing, including by a filing with the Bankruptcy Court, by the Holder of a Claim. Nothing in the Plan shall require the Debtors or applicable Distribution Agent to attempt to locate any Holder of an Allowed Claim or Interest.

7.2. Undeliverable and Unclaimed Distributions

(a) Holding Undeliverable and Unclaimed Distributions

If the Distribution to any Holder of an Allowed Claim is returned as undeliverable or is otherwise unclaimed as provided for in the Plan, no additional Distributions shall be made to such Holder unless and until the applicable Distribution Agent is notified in writing of such Holder's then-current address. Nothing contained in the Plan shall require the applicable Distribution Agent to attempt to locate any Holder of an Allowed Claim.

(b) Failure to Claim Unclaimed/Undeliverable Distributions

Any Holder of an Allowed Claim that does not contact the applicable Distribution Agent to claim an undeliverable or unclaimed Distribution within ninety (90) days after the Distribution is made shall be deemed to have forfeited its right to such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or

unclaimed Distribution on account of its Allowed Claims against the Debtors, their Estates, their property, the Administrative and Priority Claims Escrow Account, the Asset Recovery Entities, the Litigation Trust(s), or the respective assets of or in any of the foregoing.  In such cases, such unclaimed/undeliverable Distributions shall be redistributed and paid to Holders of Allowed Claims in accordance with the Plan, free of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary.

7.3.    Distribution Record Date; Transfer of Claims

The Confirmation Order shall establish a record date for Holders of Zohar III A-1 Note Claims and the mechanism for making distributions under the Plan to the Holders of Zohar III A-1 Note Claims.

Except with respect to Noteholder Claims, the claims register shall remain open after the Effective Date and the applicable Distribution Agent shall recognize any transfer of Claims in accordance with Bankruptcy Rule 3001(e) at any time thereafter, provided that for purposes of each Distribution, the applicable Distribution Agent is not obligated to recognize (and will have no liability if it does not recognize) any transfer during the period commencing thirty (30) calendar days prior to making any Distribution.  Except as otherwise provided in the Plan, any transfer of a Claim, whether occurring prior to or after the Confirmation Date, shall not affect or alter the classification and treatment of such Claim under the Plan and any such transferred Claim shall be subject to classification and treatment under the Plan as if such Claim were held by the transferor who held such Claim on the Petition Date.

Each Debtor, Asset Recovery Trust and Asset Recovery Manager, and Litigation Trust and Litigation Trustee shall not be required to recognize the transfer of any Noteholder Claim following the Effective Date, except as expressly provided for in the applicable Asset Recovery Entity Agreement or Litigating Trust Agreement(s).

7.4.    Manner of Payment

At the option of the applicable Distribution Agent, any Cash payment to be made under the Plan may be made by a check or wire transfer or as otherwise determined by the Distribution Agent.

7.5.    Time Bar to Cash Payments by Check

Checks issued pursuant to the Plan on account of Allowed Claims or Interests shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof, following which date the applicable Distribution Agent may void and cancel such check without any recourse to the party to which such check was issued.

7.6.    Setoffs and Recoupment

The applicable Distribution Agent may, but shall not be required to, set off against or recoup from any Distribution on account of an Allowed Claim, any rights to payment of any nature whatsoever that the Debtors may have against the claimant, except where expressly released by the Plan's release provisions; *provided*, *however*, neither the failure to do so nor the allowance of

any Claim or Interest under the Plan shall constitute a waiver or release by any Debtor, Asset Recovery Entity, or Litigation Trust of any such right to payment they may have against such claimant.

7.7.    Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such Distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

7.8.    Interest on Claims

Except as specifically provided for in the Plan, the Confirmation Order or a Final Order of the Bankruptcy Court (including, without limitation, the DIP Order and Cash Collateral Order), interest shall not accrue on Claims or Distributions to be made under the Plan, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim, and no Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

7.9.    No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim.

7.10.    Payment of Taxes on Distributions Received Pursuant to the Plan; Required Compliance with Withholding and Reporting Obligations

In connection with the Plan and all Distributions under the Plan, the applicable Distribution Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under the Plan shall be subject to any such withholding or reporting requirements.  The applicable Distribution Agent may withhold from amounts distributable to any Person any and all amounts, determined in the applicable Distribution Agent's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement.  Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution. The applicable Distribution Agent has the right, but not the obligation, to refrain from making a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

As an express condition to receiving a Distribution, each Holder of an Allowed Claim must furnish any information that the applicable Distribution Agent believes, in good faith, it is required to obtain prior to making a Distribution in order to allow the applicable Distribution Agent to comply with tax-reporting and other regulatory obligations, including furnishing a Taxpayer Identification Number or Employer Identification Number (*i.e.*, social security number for an

individual and employer identification number for a business) and a completed Form W-9 or, if not a US company, comparable Form, which may be obtained from the Internal Revenue Service.

The applicable Distribution Agent shall make an initial request for the information required under this Section of the Plan as soon as reasonably practicable after the Effective Date and shall specify a period of sixty (60) days to respond, and such request shall specify that the information is being requested for purposes of potential Distributions under the Plan. A second request shall be made after the expiration of the initial sixty (60) day period. Each such request shall specify that the information is being requested for purposes of potential Distributions under the Plan and that the failure to respond will result in disallowance of the Claim in accordance with this Section of the Plan. Any party that fails to respond to a second request within sixty (60) days of the applicable Distribution Agent mailing such request, shall have their Claim Disallowed and expunged and shall forfeit any Distributions under the Plan on account of such Claim.

7.11.    <u>Minimum Distribution Amounts; Rounding</u>

The applicable Distribution Agent shall not be required to make any Distribution that is less than $250.00 ("<u>De Minimis Distribution</u>"). Any De Minimis Distribution shall continue to be held for the benefit of the Holders of Allowed Claims entitled to such De Minimis Distributions until such time that the aggregate amount of De Minimis Distributions held by the applicable Distribution Agent for the benefit of a Holder of a Claim equals or exceeds $250.00, at which time the applicable Distribution Agent will distribute such De Minimis Distributions to such Holder. If, at the time that the final Distribution under the Plan is to be made to a particular Class of Claims, the De Minimis Distributions held by the applicable Distribution Agent for the benefit of a Holder of a Claim totals less than $250.00, such funds shall not be distributed to such Holder, but rather, such Claim shall be deemed expunged and such Distribution shall be reallocated for Distribution to the other Holders of Allowed Claims in such affected Class.

On or about the time that a final Distribution is made to a Class and upon the applicable Distribution Agent determining that there are insufficient funds remaining to cost-effectively make any further Distribution to Holders of Claims in that Class, the applicable Distribution Agent may donate any undistributed funds to the American Bankruptcy Institute Endowment Fund.

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down) with amounts equal to or greater than $0.50 being rounded up and fractions less than $0.50 being rounded down.

## **ARTICLE VIII**

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

### 8.1.   Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, or applicable Asset Recover Entity Agreement or Litigation Trust Agreement(s), after the Effective Date, the Litigation Trustee for each applicable Debtor shall have the sole authority (a) to file, withdraw, or litigate to judgment objections to Claims against that Debtor, (b) to settle or compromise any Disputed Claim against that Debtor without any further notice to or action, order, or approval by the Bankruptcy Court, (c) to amend the Bankruptcy Schedules in accordance with the Bankruptcy Code, and (d) to administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### 8.2.   Claims Objections

Unless otherwise provided in the Plan or by order of the Bankruptcy Court, any objections to Claims (including Administrative Claims and Priority Tax Claims but excluding Professional Claims) by the applicable Litigation Trustee shall be Filed not later than 180 days after the later of (i) the Effective Date or (ii) the date such Claim is Filed (the "Claims Objection Deadline"), *provided* that the Litigation Trustee(s) may request (and the Bankruptcy Court may grant) an extension of such deadline by Filing a motion with the Bankruptcy Court.  A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

### 8.3.   Estimation of Claims

Each Litigation Trustee may (but is not required to) at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to sections 105 and 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Litigation Trustee(s) previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the applicable Litigation Trustee may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### 8.4.   Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, amended, settled or superseded may be adjusted or expunged on the claims register at the direction of the applicable Litigation Trustee without the need for any application, motion, complaint, claim objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the

Bankruptcy Court *provided* that such Litigation Trustee shall provide twenty-one (21) days' notice of the proposed adjustment to the Holder of such Claim during which period the Holder may object to such adjustment.

8.5.    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, if any portion of a Claim is Disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed.

8.6.    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.

8.7.    Disallowance of Certain Claims

Any Claims or Interests held by Persons from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or by a Person that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and such Persons may not receive any Distributions on account of their Claims or Interest until such time as such Causes of Action against such Persons have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors by such Person have been turned over or paid to the applicable Litigation Trust.

8.8.    Claims Paid and Payable by Third Parties

A Claim shall be Disallowed without a Claim Objection thereto having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a source other than the Debtors, the Estates, the Escrow Accounts, a Litigation Trust or an Asset Recovery Entity; *provided* that the Litigation Trustee(s) shall provide 21 days' notice of the proposed disallowance to the Holder of such Claim during which period the Holder may object to such disallowance.  If the parties cannot reach an agreed resolution, the matter shall be decided by the Bankruptcy Court.

Any and all rights of the Litigation Trustee(s) to seek return or repayment of a distribution under the Plan from the Holder of a Claim on account of any payment on account of such Claim from a source other than the Debtors, the Escrow Accounts, a Litigation Trust, or an Asset Recovery Entity are reserved.

## ARTICLE IX

## EXECUTORY CONTRACTS AND LEASES

9.1.    <u>Executory Contracts and Unexpired Leases Deemed Rejected</u>

On the Effective Date, all of the Debtors' executory contracts and unexpired leases will be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except to the extent that (a) the Debtors previously have assumed, assumed and assigned, or rejected such executory contract or unexpired lease, (b) prior to the Effective Date, the Debtors have Filed a motion to assume, assume and assign, or reject an executory contract or unexpired lease on which the Bankruptcy Court has not ruled, or (c) an executory contract and unexpired lease is specifically identified in the Plan Supplement as an executory contract or unexpired lease to be assumed pursuant to the Plan, in which case such executory contract or unexpired lease shall be assumed by the applicable Debtor(s) and assigned to the Asset Recovery Entity.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all rejections, assumptions and assignments of executory contracts and unexpired leases pursuant to Section 9.1 of the Plan and sections 365(a) and 1123 of the Bankruptcy Code.

9.2.    <u>Cure Amounts and Objection to Assumption</u>

In the event that the Debtors elect to assume an executory contract or unexpired lease pursuant to clause (c) of Section 9.1 of the Plan, the Debtors shall include in the Plan Supplement the amount that they believe is required to be paid under section 365(b) of the Bankruptcy Code as cure in connection with the assumption of such executory contract or unexpired lease (a "<u>Cure Amount</u>"), and they shall contemporaneously with such filing (or amendment) of the Plan Supplement, serve a notice of such Cure Amount on each affected counterparty (each such notice a "<u>Contract Notice</u>").  The Debtors shall have the right to revise the Cure Amount through the commencement of the Confirmation Hearing.  The affected counterparties shall have (14) fourteen days from the service of the last-served Contract Notice to object to the proposed Cure Amount or the proposed assumption and assignment (the "<u>Contract Objection Period</u>").  If no objection is timely-Filed during the Contract Objection Period, then the Cure Amount shall be fixed as set forth in the Plan Supplement and last-served Contract Notice, such Cure Amount shall promptly be paid on or after the Effective Date by the Asset Recovery Manager as an expense of the Asset Recovery Entity, and such executory contract or unexpired lease shall be deemed assumed as of the later of the Effective Date and the expiration of the Contract Objection Period or as otherwise provided in an order of the Bankruptcy Court.  If an objection is timely-Filed within the Contract Objection Period, such executory contract or unexpired lease shall neither be assumed or rejected until (i) the Debtors (or applicable Asset Recovery Manager, if such objection is not resolved prior to the Effective Date) enter into a written agreement resolving the Cure Amount, (ii) the Debtors file a notice that they are withdrawing their request to assume the executory contract or unexpired lease that is subject to the objection, or (iii) a Final Order is entered by the Bankruptcy Court resolving the objection.

## ARTICLE X

## EFFECT OF CONFIRMATION

10.1.    Binding Effect

Subject to the occurrence of the Effective Date, the provisions of the Plan, the Plan Supplement, and the Confirmation Order shall bind (a) any Holder of a Claim or Interest and such Holder's successors and assigns (whether or not the Claims or Interests are Impaired under the Plan, whether or not such Holder has voted to accept the Plan, and whether or not such Holder is entitled to a Distribution under the Plan), (b) all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, (c) each Person acquiring property under the Plan or the Confirmation Order, and (d) any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

10.2.    Reservation of Causes of Action/Reservation of Rights

Except where expressly released or exculpated in the Plan, nothing contained in the Plan shall be deemed to be a waiver or the relinquishment of any claim or Cause of Action that the Debtors, the Estates or the Litigation Trust(s), as applicable, may have or may choose to assert against any Person, including, but not limited to, the Litigation Assets.

10.3.    Releases by the Debtors of Certain Parties

**To the maximum extent permitted by applicable law, pursuant to section 1123(b)(3) of the Bankruptcy Code, for good and valuable consideration, including the actions of the Released Parties to facilitate the Plan and the implementation of the Plan, effective as of the Effective Date, each Debtor, in its individual capacity and as a debtor in possession for itself and on behalf of its Estate, and any person claiming through, on behalf of, or for the benefit of each Debtor and its Estate, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date or thereafter whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity, arising from or related to any actions, transactions, events or omissions occurring on or before the Effective Date relating to the Debtors, in any way whatsoever, or the Chapter 11 Cases.  The Wind-Down Company (if any) and each Wind-Down Administrator, Asset Recovery Entity, Asset Recovery Manager, Litigation Trust(s) And Litigation Trustee(s), shall be bound, to the same extent that the Debtors and the Estate are bound, by the releases set forth above.  Notwithstanding anything herein to the contrary, the release set forth in this Section 10.3 of the Plan shall not apply to any act or omission constituting gross negligence, actual fraud or willful misconduct by any of the Exculpated Parties.**

10.4.    Releases by Non-Debtors

**To the maximum extent permitted by applicable law, pursuant to sections 105(a) and 1123(b)(5) and (6) of the Bankruptcy Code, for good and valuable consideration, including the actions of the Released Parties to facilitate the Plan and the implementation of the Plan,**

effective as of the Effective Date, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date or thereafter whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity arising from or related to any actions, transactions, events or omissions occurring on or before the Effective Date relating to the Debtors, in any way whatsoever, or the Chapter 11 Cases.  For the avoidance of doubt, the foregoing release shall not waive or release any right that a Releasing Party has under the Plan, including to receive a distribution under the Plan; provided, however, that notwithstanding any other provision of the Plan to the contrary, nothing herein shall constitute a waiver or release of any claims or causes of action to enforce or arising under the Zohar I Issuer Holdback Documents.

10.5.    _Exculpation_

Except as otherwise specifically provided in the Plan, the Plan Supplement or related documents, no Exculpated Party shall have or incur any liability to any entity for any act or omission taken (or not taken, as the case may be) on or after the Petition Date and prior to the Effective Date in connection with, or related to, the Debtors or arising out of the Chapter 11 Cases, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation or consummation of the Plan, the Disclosure Statement, the exhibits to the Plan and the Disclosure Statement, the Plan Supplement documents, any instrument, release or other agreement or document created, modified, amended or entered into in connection with the Plan, except for their willful misconduct or gross negligence as determined by a Final Order.

No Entity may commence or pursue a claim or Cause of Action of any kind against any Exculpated Party without the Bankruptcy Court (i) first determining after notice that such claim or Cause of Action represents a colorable claim for willful misconduct or gross negligence against that Exculpated Party and (ii) specifically authorizing such entity to bring such Claim.  The United States Bankruptcy Court for the District of Delaware will have, and expressly retains, sole jurisdiction to adjudicate any such claim for which approval of the court to commence or pursue has been granted.

10.6.    _Plan Injunction_

Subject to the occurrence of the Effective Date, Confirmation of the Plan shall act as a permanent injunction against any Entity commencing or continuing any action, employment of process, or act to collect, offset (except as permitted by Section 10.8 of the Plan) or recover any claim, interest, or Cause of Action satisfied, released or exculpated under the Plan to the fullest extent authorized or provided by the Bankruptcy Code.

Without limiting the foregoing, from and after the Effective Date, all Entities that have held, hold, or may hold claims, interests, or Causes of Action satisfied, released or exculpated under the Plan shall be permanently enjoined from taking any of the following actions against, as applicable, the Asset Recovery Entity, Asset Recovery Manager, Litigation Trust(s), Litigation Trustee(s), Wind-Down Company (if any), Wind-Down

**Administrator, Released Parties or Exculpated Parties, on account of any such claims, interests, or Causes of Action: (a) commencing or continuing in any manner any suit, action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance of any kind; and (d) commencing or continuing in any manner any action or other proceeding of any kind.**

10.7.    Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect following Confirmation of the Plan, for the maximum period permitted under the Bankruptcy Code, Bankruptcy Rules and the Local Bankruptcy Rules.

10.8.    Setoff

Notwithstanding anything in the Plan, in no event shall any Holder of a Claim be entitled to setoff any Claim against any claim, right, or cause of action of the Debtors, unless such Holder preserves its right to setoff by preserving such right to set-off in a timely filed proof of claim or filing a motion for authority to effect such setoff on or before the Confirmation Date (regardless of whether such motion is heard prior to or after the Confirmation Date).

10.9.    Preservation of Insurance

Notwithstanding anything in the Plan or Plan Supplement to the contrary, Confirmation of the Plan shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, the Debtors' current and former officers and directors, or any other person or entity.

## ARTICLE XI

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE; EFFECT OF FAILURE OF CONDITIONS

11.1.    Conditions Precedent to the Effective Date

The Effective Date shall not occur, and the Plan shall not become effective with respect to a Debtor unless and until the following conditions are satisfied in full or waived by that Debtor and the Controlling Party or Controlling Class for the applicable Debtor and, in the case of condition (h), below, the Independent Director and CRO:

(a)    the Confirmation Order shall have been entered, and shall not be subject to any stay;

(b)    the Confirmation Order shall be a Final Order;

(c)    the Wind-Down Company shall have been formed;

(d)     the Escrow Accounts shall have been funded in the amounts identified in the Plan and Plan Supplement;

(e)     the Asset Recovery Entities and Litigation Trust(s) shall have been formed and the Remaining Assets shall have been transferred to the applicable Asset Recovery Entities and the Litigation Assets to the Litigation Trust(s);

(f)     the Wind-Down Administrator and each Asset Recovery Manager and Litigation Trustee shall have accepted his, her or its appointment;

(g)     the Confirmation Order shall have determined and fixed the maximum amounts payable under Paragraph 18 of the Settlement Agreement, other than for contingent indemnification claims, to the Patriarch Stakeholders and approved the Paragraph 18 Bar Order;

(h)     the D&O Indemnity Escrow Agreement shall be acceptable to the Independent Director and CRO, in their sole discretion;

(i)     the Plan (as confirmed by the Bankruptcy Court), Confirmation Order, Case Expense Allocation, D&O Indemnity Escrow Agreement, Asset Recovery Entity Agreements and Liquidation Trust Agreement(s) shall be in final form reasonably acceptable to the Controlling Party (with respect to Zohar I and Zohar II) and Controlling Class (with respect to Zohar III);

(j)     the amounts required to be deposited into the Escrow Accounts on the Effective Date pursuant to the Plan are acceptable to the Controlling Class and Controlling Party, in their reasonable discretion; and

(k)     the applicable Controlling Class or Controlling Party for such Debtor, as the case may be, shall have provided its prior written consent to the occurrence of the Effective Date with respect to such Debtor.

11.2.   Satisfaction of Conditions

Except as expressly provided or permitted in the Plan, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

In the event that the conditions specified in Section 11.1 of the Plan shall not have occurred or otherwise been waived as permitted under the Plan with respect to any Debtor, (a) the Plan shall be deemed withdrawn with respect to that specific Debtor, (b) all Holders of Claims and Interests against that specific Debtor shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Order were never entered as to that specific Debtor, and (c) that specific Debtor's obligations with respect to Claims and Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Interests by or against that specific Debtor or any other Person or prejudice in any manner the rights of that specific Debtor or any Person in any further proceedings involving that specific Debtor.

***For the avoidance of doubt, the Plan may become effective for one or more Debtors on a date that is different from the date the Plan becomes effective for the other Debtors.***

## ARTICLE XII

## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters in connection with, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including to:

(a)     hear and determine motions for the assumption or rejection of executory contracts or unexpired leases and the allowance of cure amounts and Claims resulting therefrom;

(b)     hear and determine any and all adversary proceedings, applications and contested matters;

(c)     hear and determine all applications for compensation and reimbursement of expenses under sections 330, 331 and 503(b) of the Bankruptcy Code;

(d)     hear and determine any objections (including requests for estimation) in connection with Disputed Claims, in whole or in part;

(e)     enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)     issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(g)     consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including the Confirmation Order;

(h)     hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, the Asset Recovery Entity Agreements, the Litigation Trust Agreement(s), the Settlement Agreement, any transactions or payments contemplated hereby or thereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(i)     hear and determine (i) matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any request by the Debtors), prior to the Effective Date or (ii) requests by the Wind-Down Administrator after the Effective Date for an expedited determination of tax issues under section 505(b) of the Bankruptcy Code;

(j)    issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(k)    hear and determine such other matters as may be provided in the Confirmation Order;

(l)    hear and determine any rights, claims or Causes of Action, held by or accruing to the Debtors, the Estates or the Litigation Trust(s) pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(m)    recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(n)    enforce the terms of any Asset Recovery Entity Agreement or Litigation Trust Agreement;

(o)    enforce the releases granted and injunctions issued pursuant to the Plan and the Confirmation Order;

(p)    enter a final decree closing the Chapter 11 Cases; and

(q)    hear and determine any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

### 13.1.  Corporate Action

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of shareholders, directors, members, or managers of one or more of the Debtors shall be in effect from and after the Effective Date pursuant to the applicable general business, corporation or limited liability company law of the states or country in which the Debtors are incorporated or organized, without any requirement of further action by the shareholders, directors, members, or managers of the Debtors.

### 13.2.  Modification of Plan

Alterations, amendments, or modifications of or to the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date; *provided*, that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with section 1125 of the Bankruptcy Code.  The Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation; provided, that the Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy

Code and the circumstances warrant such alterations, amendments, or modifications. A Holder of a Claim that has accepted the Plan prior to any alteration, amendment, or modification will be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Holders of the Claims.

Prior to the Effective Date, the Debtors may upon consultation with the applicable Controlling Class and Controlling Party for each Debtor, as the case may be, make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not materially change the treatment of Holders of Claims or Interests.

### 13.3. Revocation or Withdrawal of the Plan

Each Debtor reserves the right to revoke or withdraw the Plan as to it prior to the Confirmation Date. Subject to the foregoing sentence, if a Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void for that Debtor. In such event, nothing contained in the Plan shall constitute or be deemed an admission, waiver or release of any Claims or Interests by or against the Debtors or any other Person or to prejudice in any manner the rights of that Debtor, its Estate or any Person in any further proceedings involving any of the Debtors or the Estates.

### 13.4. Plan Supplement

The Plan Supplement and the documents contained therein are incorporated into and made a part of the Plan as if set forth in full in the Plan. The documents initially included in the Plan Supplement may thereafter be amended and supplemented, prior to the Effective Date.

### 13.5. Payment of Statutory Fees

U.S. Trustee Fees for each Debtor shall be paid until the earlier of such time that a particular case is closed, dismissed or converted. For the avoidance of doubt, all U.S. Trustee Fees coming due after the Effective Date of the Plan shall be paid by the applicable Liquidation Trust.

### 13.6. Exemption from Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan shall not be taxed under any law imposing a stamp tax or similar tax.

### 13.7. Expedited Tax Determination

The Debtors and Wind-Down Administrator (as applicable) are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtors for any and all taxable periods (or portions thereof) ending after the Petition Date through and including the Effective Date.

13.8.    Exhibits/Schedules

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full in the Plan.

13.9.    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

13.10.    Severability of Plan Provisions

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, at the request of the Debtors have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.    Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

13.11.    Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to its principles of conflict of law.

13.12.    Conflicts

To the extent that any provision of the Disclosure Statement conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  The Confirmation Order will govern in the event of any conflict between the Confirmation Order and the Plan.

13.13.    Reservation of Rights

If the Plan is not confirmed or if the Plan is confirmed and does not become effective, the rights of all parties-in-interest in the Chapter 11 Cases are and will be reserved in full.  Any concessions or settlements reflected in the Plan, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Chapter 11 Cases shall be bound or deemed prejudiced by any such concession or settlement.

13.14.  <u>Limiting Notices</u>

Only Persons that file renewed requests to receive documents pursuant to Bankruptcy Rule 2002 on or after the Effective Date shall be entitled to receive notice under Bankruptcy Rule 2002 with respect to the Chapter 11 Cases.  After the Effective Date, the Wind-Down Administrator, Asset Recovery Manager, and Litigation Trustee(s) are authorized to limit the list of Persons receiving documents with respect to the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 to those Persons who have Filed such renewed requests.

29197034.1

IN WITNESS WHEREOF, the Debtors have executed the Plan this 21st day of March 2022.

Zohar I Limited
Zohar I Corp.
Zohar II Limited
Zohar II Corp.
Zohar III Limited
Zohar III Corp.

By:    /s/ *Michael Katzenstein*
       By:    Michael Katzenstein
       Their:  Chief Restructuring Officer

29197034.1

**ANNEX A** - **Post-Effective Date Structure of Asset Recovery Entities**

| **Zohar III** |
| :---: |
| Zohar III A-1 Noteholders<br><br>• Holders of 100% of Membership Interests in New Zohar III LLC<br><br>• Holder of $100,000 of New Notes assumed by Zohar III Recovery LLC |
| New Zohar III LLC<br><br>• Holds 100% Interest in Zohar III Intermediate LLC |
| Zohar III Intermediate LLC<br><br>• Holds 100% Interest in Zohar III Recovery LLC |
| Zohar III Recovery LLC<br><br>• Obligor on $100,000 of New Notes<br><br>• Obligor on Zohar III Indenture Trustee Claim, secured by all assets of Zohar III Recovery LLC and the Litigation Assets previously held by Zohar III<br><br>• Owner of Group A PC Recovery Assets of Zohar III<br><br>• Owner of Other Assets of Zohar III<br>(*Other Assets may be held in subsidiary entit(ies))<br><br>• Beneficiary of a Litigation Trust holding the Litigation Assets previously held by Zohar III |

| Zohar II |
|---|
| Zohar II Credit Enhancement Claims<br><br>• Holders of 100% of Membership Interests in New Zohar II LLC<br><br>• Holder of $100,000 of New Notes assumed by Zohar II Recovery LLC |
| New Zohar II LLC<br><br>• Holds 100% Interest in Zohar II Intermediate LLC |
| Zohar II Intermediate LLC<br><br>• Holds 100% interests in Zohar II Recovery LLC |
| Zohar II Recovery LLC<br><br>• Obligor on $100,000 of New Notes<br><br>• Obligor on Zohar II Indenture Trustee Claim, secured by all assets of Zohar II Recovery LLC and the Litigation Assets previously held by Zohar II<br><br>• Owner of Group A PC Recovery Assets of Zohar II<br><br>• Owner of Other Assets of Zohar II<br>(*Other Assets may be held in subsidiary entit(ies))<br><br>• Beneficiary of a Litigation Trust holding the Litigation Assets previously held by Zohar II |