### Exhibit A - Organization Chart for Asset Recovery Entities



Post-Effective Date Asset Recovery Entity Structure

**Zohar II Credit Enh. Liab. Claims (MBIA)**

**Zohar III A-1 Note Claims**

$85,000 New Notes*

$90,000 New Notes*

100% Equity — New Zohar II LLC
100% Equity — Zohar II Intermediate LLC
100% Equity — Zohar II Recovery LLC

100% Equity — New Zohar III LLC
100% Equity — Zohar III Intermediate LLC
100% Equity — Zohar III Recovery LLC
100% Equity — New Stila Holdco LLC

**Operating PCs**:**
180s: Loans & Equity
IMG: Loans & Equity
Intrepid: Loans & Equity
MD: Sub Notes & Equity
Natura: Loans
Scan Optics: Loans & Equity
Vulcan : Loans & Preferred
Universal: Equity

**Operating PCs**:**
180s: Loans
IMG: Loans & Equity
Intrepid: Loans & Equity
Natura: Loans
Scan Optics: Loans
Universal: Equity

Solely 100% of Common Equity in Stila

Trust Beneficial Interest

Trust Beneficial Interest

**Litigation Trust**

Zohar II Litigation Assets

Zohar III Litigation Assets

Trust Beneficial Interest

*Assumes MD Credit Bid Transaction Consummated
**Assets related to non-operating Portfolio Companies are not depicted

Zohar I Litigation Assets

**MBIA (via Zohar I Sale Documents and Plan)**

29304805.3

**_Exhibit B - Form of Organizational Documents for New Zohar II LLC_**

# NEW ZOHAR II LLC

# OPERATING AGREEMENT

This Operating Agreement (this "Agreement") of New Zohar II LLC, a Delaware limited liability company (the "Company"), is made and entered into as of [●], 2022, by MBIA Insurance Corporation, the sole member and manager of the Company (the "Member").

The Member desires to enter into this Agreement to provide for the Company's governance and the conduct of its business.

NOW, THEREFORE, the undersigned, as the Member of the Company, hereby adopts the following as the Company's "operating" agreement, as such term is used in the Limited Liability Company Act of the State of Delaware (as amended from time to time, the "Act"), and hereby agrees as follows:

1. **Formation of the Company.**  The Company was formed in connection with the Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and its Affiliated Debtors, dated January 31, 2022 (as amended, the "Zohar Plan"), pursuant to the provisions of the Act by filing the Certificate of Formation with the Delaware Secretary of State on [●], 2022 (the "Formation Date").  The Member hereby adopts, approves and ratifies such Certificate of Formation.

2. **Name.**  The name of the limited liability company is "New Zohar II LLC".

3. **Term.**  The term of existence of the Company commenced on the Formation Date and shall be perpetual, unless the Company is dissolved in accordance with the Act or at the election of the Member at any time or as otherwise provided by this Agreement or law.

4. **Agent for Service of Process.**  The initial agent for service of process on the Company is The Corporation Trust Company.  The Member may from time to time change the Company's agent for service of process.  If the agent ceases to act as such for any reason, the Member will promptly designate a replacement agent and notify the Delaware Secretary of State of such change.

5. **Purpose.**  The Company is formed in connection with the Zohar Plan for the purpose of engaging in any lawful act or activity for which limited liability companies may be formed under the Act.  The Company shall have all of the powers a limited liability company may have under the Act.

6. **Qualification in Other Jurisdictions.**  The Member shall take and/or authorize the taking of such action as may be necessary to cause the Company to be qualified, formed, or registered under assumed or fictitious name statutes or similar laws in any jurisdiction in which the Company transacts business and in which such qualification or registration is required by law or deemed advisable by the Company.

**7.  Member.**  The name and present mailing address of the Member is as set forth on <u>Schedule A</u>, as may be amended from time to time.

**8.  Management.**  The business and affairs of the Company shall be managed by the Member.  The Member shall have the power to do any and all acts necessary or convenient to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members under the Act.  Except as otherwise provided herein to the contrary, no other person or entity shall have authority to bind the Company.

**9.  Officers; Authorized Signatories.**

(a)  The Member may hire employees and appoint officers of the Company to oversee the daily operation of the Company.  Such officers shall be subject to removal by the Member at any time.

(b)  The Member and any officer of the Company are authorized to execute, deliver and file, in the name of and on behalf of the Company, any and all documents, agreements, certificates, receipts, instruments, forms, letters, or similar documents and to do or cause to be done any other actions as the Member or such officer may deem necessary or desirable to further the interests of the Company, except as may be limited by the terms of this Agreement; <u>provided,</u> that the Member may authorize individuals or entities who are not officers of the Company to act as authorized signatories of the Company to execute, deliver and file, in the name of and on behalf of the Company, such documents, agreements, certificates, receipts, instruments, forms, letters, or similar documents as the Member may deem necessary or desirable.

**10.  Capital Contributions.**  The Member is not required to make any contributions to the capital of the Company (such amounts, the "<u>Capital Contributions</u>").  The Capital Contributions of the Member shall be set forth on the <u>Schedule A</u>.  The Member shall not have the right to demand the return of any Capital Contributions.  The Member shall not be required to contribute additional capital to the Company or to provide any additional financing to the Company except to the extent required by applicable law.  No interest shall be paid on any capital contributed to the Company.

**11.  Distributions.**  All distributions of cash or other property in respect of a Member's membership interest (collectively, "<u>Distributions</u>") shall be made as and when determined by the Member.

**12.  Assignments.**  Subject to applicable securities and other laws, the Member may transfer, assign or otherwise dispose of all or part of its membership interest in the Company, including with respect to all economic and distribution rights and all voting or approval rights.

**13.  Admission of Additional Members.**  One or more additional members of the Company may be admitted to the Company with the consent of the Member upon such terms as the Member shall determine.

**14. Liability of Members.**  Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company by reason of being a member.

**15. Tax Treatment**.  The Company will be classified as an association taxable as a corporation for U.S. federal income tax purposes, and neither the Company nor the Member will take any action (including the filing of any election) that would cause it to be taxable as anything other than a corporation for U.S. federal income tax purposes.[1]

**16. Books of Account**.  Complete books of account of the Company's business, in which each Company transaction will be fully and accurately entered, will be kept at the Company's principal executive office.  The Company's financial books and records will be kept on the method of accounting designated by the Member, which will be the method of accounting followed by the Company for federal income tax purposes.

**17. Exculpation; Indemnification**.  To the fullest extent permitted by the Act, or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification, no present or former Member of the Company or present or former officer of the Company shall be personally liable to the Company or the Member for or with respect to any acts or omissions in the performance of his or her duties as a Member or officer of the Company.  The Company shall indemnify, to the fullest extent permitted by the Act (or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification), each person who is or was or had agreed to become a Member or officer of the Company, or each such person who is or was serving or who had agreed to serve at the request of the Member or an officer of the Company as an employee or agent of the Company or as a manager, director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise (including the heirs, executors, administrators or estate of such person) (collectively, the "Covered Persons").  Without limiting the generality or the effect of the foregoing, the Company may enter into one or more agreements with any person or entity which provide for indemnification greater or different than that provided in this Section 17.  Any repeal or modification of this Section 17 shall not adversely affect any right or protection existing hereunder immediately prior to such repeal or modification.

**18. Winding-Up**.  On the dissolution of the Company, the Company will engage in no further business other than that which is necessary to wind-up its business and affairs.  The Member will wind-up the Company's affairs and give notice of the commencement of winding-up to all known creditors and claimants against the Company whose addresses appear in the Company's records.  After paying or adequately providing for the payment of all known debts of the Company (except debts owing to the Member), the remaining assets of the Company will be distributed or applied in the following order of priority:

---

[1] NTD:  An election must be filed on an IRS Form 8832 no later than 75 days after the Company is organized to make sure that it is treated as a corporation for U.S. federal income tax purposes.

(a)  First, to pay the expenses of liquidation;

(b)  Second, to repay outstanding loans to the Member; and

(c)  Third, to the Member.

**19. Governing Law.**  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, all rights and remedies being governed by said laws.  If any provision of this Agreement conflicts with a default rule under the Act, this Agreement shall govern.

**20. Amendments.**  This Agreement may not be amended without the written consent of the Member.

**21. Successors and Assigns.**  This Agreement is binding upon, and inures to the benefit of, the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and permitted assigns.

**22. Gender; Pronouns.**  The use of any gender herein shall be deemed to be or include the other genders and the use of the singular herein shall be deemed to be or include the plural (and vice-versa), wherever appropriate. The headings herein are inserted only as a matter of convenience and reference, and in no way define, limit or describe the scope of this Agreement, or the intent of any provisions thereof.  Use of either the singular or the plural should not be deemed a limitation, and the use of the singular should be construed to include, where appropriate, the plural.

**23. Other Business Activities.**  Except as provided in this Agreement, no provision of this Agreement will be construed to limit in any manner the Member in the carrying on of its own businesses or activities.

**24. Authority.**  The Member represents and warrants that it has the capacity and authority to enter into this Agreement.

**25. Headings.**  The article, section and paragraph titles and headings in this Agreement are inserted as a matter of convenience and for ease of reference only and will be disregarded for all other purposes, including the construction or enforcement of this Agreement or any of its provisions.

**26. Third Party Beneficiaries.**  This Agreement is made solely for the benefit of the Members and their permitted successors and assigns, and no other person or entity will have or acquire any right by virtue of this Agreement other than the Covered Persons (solely with respect to Section 17).

*[Remainder of page intentionally left blank. Signature page follows.]*

-4-

**IN WITNESS WHEREOF**, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first mentioned above.

**MEMBER:**

MBIA INSURANCE CORPORATION

By: _____

     Name:

     Title:

<u>SCHEDULE A</u>

New Zohar II LLC
Operating Agreement

| <u>Name and Business Address</u> | <u>Membership Interest</u> | <u>Capital Contribution</u> |
|---|---|---|
| MBIA Insurance Corporation<br>1 Manhattanville Road #301<br>Purchase, New York 10577<br>Attention:  Jonathan Harris<br>              Managing Director and Counsel | 100% | - |

**_Exhibit C - Form of Organizational Documents for New Zohar III LLC_**

**LIMITED LIABILITY COMPANY AGREEMENT**
**OF**
**[●]**

THIS LIMITED LIABILITY COMPANY AGREEMENT ("Agreement")
is dated as of the [●] day of [●], 2022, and entered into by the Holders of Zohar III A-1
Note Claims (as defined in the Plan) as set forth on Exhibit A attached to this Agreement,
as such exhibit shall be updated from time to time in accordance with Section 14 of this
Agreement[1] (each, a "Member" and collectively, the "Members"), and shall be binding
upon such other individuals and members as may be added pursuant to the terms of this
Agreement.  For purposes of this Agreement, "Plan" shall mean [●]. For purposes of this
Agreement "Confirmation Order" shall mean [●].

1.    Formation Of The Company.  By execution of this Agreement, each
Member ratifies and confirms the action of [●], as an "authorized person" of the Company
within the meaning of the Delaware Limited Liability Company Act, 6 Del. C. § 18-101,
et seq. (the "Act"), filing a certificate of formation (the "Certificate") with the Secretary of
State of the State of Delaware for the purpose of forming [●] (the "Company"), a limited
liability company formed under the Act. Upon the filing of the Certificate [his/her] powers
as an authorized person of the Company within the meaning of the Act ceased and the
Manager (as defined below) thereupon became an "authorized person" within the meaning
of the Act.

2.    Name Of The Company.  The name of the company to be stated in
the Certificate and the limited liability company governed by this Agreement shall be
"[●]."

3.    Purpose. This Company is formed for the purpose of, and the nature
of the business to be conducted and promoted by the Company is, engaging in any lawful
act or activity for which limited liability companies may be formed under the Act and
engaging in any and all activities necessary or incidental to the foregoing. Notwithstanding
anything to the contrary in the preceding sentence, the Company and the Manager shall
discharge the obligations imposed on the Company, as an "Asset Recovery Entity" under
and as defined in the Plan, and on the Manager, as an "Asset Recovery Manager" under
and as defined in the Plan.

4.    Registered Office; Registered Agent.  The address of the registered
office of the Company in the State of Delaware is [●].  The registered agent for service of
process maintained at such address is [●].

5.    Capital Contributions By The Members.  In consideration for their
limited liability company interests in the Company, each Member has or will contribute a
sum set forth in the books and records of the Company.  Except for the foregoing

---

[1] The initial members shall be the holders of Zohar III A-1 Note Claims (as defined in the
Plan).

consideration, no Member shall be obligated to make capital contributions to the Company and all limited liability company interests in the Company held by the Members shall be nonassessable.

6.    _Distributions_.  To the extent the Company may lawfully do so, it is intended that the Company shall make pro rata distributions of its assets  to the Members as determined by the Manager as expeditiously as possible; _provided_, _however_, that such distributions shall only be made (i) if the DIP Roll-over Facility is repaid or the Lender (as defined in the DIP Roll-over Facility) consents to such distribution and (ii) reserve in the amount of $250,000 (or such lesser amount agreed to by U.S. Bank, N.A.) is maintained to secure the payment of the Zohar III Indenture Trustee Claims in accordance with Section 6.15 of the Plan.  Subject to the limitation set forth in the prior sentence, upon the Vote of a Majority of the Members (as defined below), the Manager shall take all actions to cause (i) any entity which the Company directly or indirectly owns (a "_Subsidiary_") to make a distribution of such Subsidiary's assets to the Company, subject to the limitations set forth in such Subsidiary's governance documents and applicable law, and (ii) the Company to distribute such assets to the Members pursuant to this _Section 6_.  For purposes of this Agreement, "_DIP Roll-over Facility_" shall mean [●].

7.    _Appointment and Removal of Manager_.

a.    At any time, and from time to time, one or more individuals or entities may be elected to manage the Company (the "_Manager_").  A Manager need not be a member or resident of the State of Delaware.  The Manager shall be responsible for any and all such duties as conferred upon the Manager as in this Agreement.

b.    [●][2] shall be appointed as initial Manager of the Company. The initial compensation of the Manager shall be as set forth on _Exhibit B_ attached to this Agreement.

c.    A Manager (whether an initial or a successor Manager) shall cease to be a Manager upon the earlier of (i) such Manager's resignation or (ii) such Manager's removal pursuant to the affirmative vote of the Members holding greater than fifty percent (50%) of the limited liability company interests in the Company (the "_Vote of a Majority of the Members_").

d.    Any vacancy in the Manager position, whether occurring as a result of a Manager resigning or being removed, may be filled by appointment of a successor by (i) the Vote of a Majority of the Members or (ii) if there is no Vote of a Majority of the Members within fourteen (14) days of a vacancy, the entry of an order of the United States Bankruptcy Court for the District of Delaware obtained upon motion of any Member that provides the other Members not less than fourteen (14) days' notice.

---

[2] The Manager shall be the individual or entity disclosed in the Plan Supplement and approved by the Bankruptcy Court in the Confirmation Order.

8.    <u>Management Powers of the Manager</u>.    Except for powers specifically reserved to the members by this Agreement (if any) or by non-waivable provisions of applicable law, as provided herein, the Company shall be managed by the Manager as an authorized agent of the Company.  The Manager shall have the full, exclusive, and absolute right, power, and authority to manage and control the Company and the property, assets, and business thereof.  Subject to the restrictions specifically contained in this Agreement, the Manager may make all decisions and take all actions for the Company not otherwise provided for in this Agreement.  Any person dealing with the Company, other than a member, may rely upon the authority of the Manager or any officer designated in writing as such by the Manager in accordance with <u>Section 9</u> (if any) in taking any action in the name of the Company without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action actually is taken in accordance with the provisions of this Agreement.

9.    <u>Officers</u>.  The Manager may, from time to time, delegate to one or more persons such authority and duties as the Manager may deem advisable.  In addition, the Manager may assign, in writing, titles to any person, including, without limitation, the titles of President, Vice President, Secretary, Assistant Secretary, Treasurer, and Assistant Treasurer.  Unless the Manager decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authority and duties that are normally associated with that office, subject to any specific delegation of authority and duties made pursuant to the first sentence of this <u>Section 9</u>.  Any number of titles may be held by the same person.  Each officer shall hold office until his successor shall be duly designated and shall qualify or until his death, until he shall resign, or until he shall have been removed in the manner hereinafter provided.  Any number of offices may be held by the same person.  The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed by the Manager.  Any delegation pursuant to this <u>Section 9</u> may be revoked at any time by the Manager.  Any officer may resign as such at any time.  Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time be specified, at the time of its receipt by the Manager.  The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation.  Any officer may be removed as such, either with or without cause, by the Manager whenever, in his judgment, the best interests of the Company will be served thereby; provided, however, that such removal shall be without prejudice to the contract rights, if any, of the person so removed.  Designation of any officer shall not of itself create contract rights.  Any vacancy occurring in any office of the Company (other than a Manager) may be filled by the Manager.

10.    <u>Exculpation; Indemnification</u>.  To the fullest extent permitted by the Act, or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification, no present or former Manager of the Company, no present or former Member of the Company, or present or former officer of the Company shall be personally liable to the Company or any Member for or with respect to any acts or omissions in the performance of his or her duties as a Manager, Member or officer of the Company.  The Company shall indemnify, to the fullest extent permitted by the Act (or

3

any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification), each person who is or was or had agreed to become a Manager, Member or officer of the Company, or each such person who is or was serving or who had agreed to serve at the request of the Manager, Members or an officer of the Company as an employee or agent of the Company or as a manager, director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise (including the heirs, executors, administrators or estate of such person) (collectively, the "Covered Persons"). Without limiting the generality or the effect of the foregoing, the Company may enter into one or more agreements with any person or entity which provide for indemnification greater or different than that provided in this Section 10. Any repeal or modification of this Section 10 shall not adversely affect any right or protection existing hereunder immediately prior to such repeal or modification.

11. __Dissolution__. The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (a) the unanimous written consent of the Members, or (b) the entry of a decree of judicial dissolution under § 18-802 of the Act.

12. __Authority of Members__. Unless authorized to do so by this Agreement or by the Manager, no member, agent, or employee of the Company shall have any power or authority to bind the Company in any way, to pledge its credit, or to render it liable pecuniarily for any purpose; provided, however, that the Manager may act by a duly authorized attorney-in-fact.

13. __Limitations On Authority__. The authority of the Manager over the conduct of the affairs of the Company shall be subject only to such limitations as are expressly stated in this Agreement or in the Act.

14. __Transferability of Interests__. A member may not assign in whole or in part its limited liability company interest in the Company without the consent of the Manager, not to be unreasonably withheld, and [*][3] and provided that the transferee of any limited liability company interest in the Company shall be bound by the terms of this Agreement. Notwithstanding the foregoing, there shall be no transfer of any limited liability company interest if such transfer directly or indirectly would cause the termination of the Company for state law or federal or state tax purposes or violate the then applicable U.S. federal or state securities laws or rules and regulations. The Manager may, in its reasonable discretion, require a member proposing to transfer its limited liability company interest in the Company to provide an opinion of counsel in a form reasonably acceptable to the Manager that the proposed transfer of such member's limited liability company interest in the Company shall not violate the immediately preceeding sentence.

15. __Admission of Additional Members__.

a. The Manager shall update __Exhibit A__ hereto from time to time to reflect the identification of Holders of Zohar III A-1 Note Claims that are identified

---

[3] Note: To be discussed

4

subsequent to the Effective Date and are entitled to receive distributions under the Plan, in accordance with the mechanisms and procedures approved in the Confirmation Order.

b.      Except as provided in <u>Section 15</u> and <u>Section 16(a)</u>, additional members of the Company may be admitted to the Company with the consent of all of the members.

16.      <u>Consents</u>.  Any action that may be taken by the members at a meeting may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed by or on behalf of the member or members holding sufficient limited liability company interests in the Company to authorize or approve such action at such meeting.

17.      <u>Amendments</u>.  Except as otherwise provided in this Agreement, this Agreement may be amended only by the Vote of a Majority of the Members.

18.      <u>Governing Law</u>.  This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of Delaware.

19.      <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together, shall constitute one and the same Agreement.

20.      <u>Tax Treatment</u>.  The Company will be classified as an association taxable as a corporation for U.S. federal income tax purposes, and neither the Company nor any Member will take any action (including the filing of any election) that would cause it to be taxable as anything other than a corporation for U.S. federal income tax purposes.

21.      <u>Tax Elections</u>.  Subject to <u>Section 20</u>, the Manager shall have the power to cause the Company to make all elections required or permitted to be made for income tax purposes.

22.      <u>Other Business Activities</u>.  Except as provided in this Agreement, no provision of this Agreement will be construed to limit in any manner any Member in the carrying on of its own businesses or activities.

23.      <u>Third Party Beneficiaries</u>.  This Agreement is made solely for the benefit of the Members and their permitted successors and assigns, and no other person or entity will have or acquire any right by virtue of this Agreement other than the Covered Persons (solely with respect to Section 10).

24.      <u>Effectiveness</u>.  Pursuant to Section 18-201(d) of the Act, this Agreement shall be effective as of the filing of the Certificate on [●].

*{Signature Page Follows}*

IN WITNESS WHEREOF, the parties hereto have made this Agreement effective as of the date and year first above-written.

Members:

[●]

_____
Name:[●]
Title: [●]

[●]

_____
Name:[●]
Title: [●]

Exhibit A

| Member | Address | Percentage Interest in the Company |
|---|---|---|
| [●] | [●] | [●] |

<u>Exhibit B</u>

Manager Compensation

***Exhibit D - Form of Organizational Documents for Subsidiary Entities***

# LIMITED LIABILITY COMPANY AGREEMENT[1]
## OF
## [●]

THIS LIMITED LIABILITY COMPANY AGREEMENT ("<u>Agreement</u>") is dated as of the [●] day of [●], 2022, by [●], a [●], as the sole member (the "<u>Member</u>"), and shall be binding upon such other individuals and members as may be added pursuant to the terms of this Agreement.

1. <u>Formation Of The Company</u>. By execution of this Agreement, the Member ratifies and confirms the action of [●], as an "authorized person" of the Company within the meaning of the Delaware Limited Liability Company Act, 6 <u>Del</u>. <u>C</u>. § 18-101, <u>et</u> seq. (the "<u>Act</u>"), filing a certificate of formation (the "<u>Certificate</u>") with the Secretary of State of the State of Delaware for the purpose of forming [●] (the "<u>Company</u>"), a limited liability company formed under the Act. Upon the filing of the Certificate [his/her] powers as an authorized person of the Company within the meaning of the Act ceased and the Member thereupon became an "authorized person" within the meaning of the Act.

2. <u>Name Of The Company</u>. The name of the company to be stated in the Certificate and the limited liability company governed by this Agreement shall be "[●]."

3. <u>Purpose</u>. This Company is formed for the purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to the foregoing.

4. <u>Registered Office; Registered Agent</u>. The address of the registered office of the Company in the State of Delaware is [●]. The registered agent for service of process maintained at such address is [●].

5. <u>Capital Contributions By The Sole Member</u>. In consideration for its limited liability company interest in the Company, the Member has or will contribute a sum set forth in the books and records of the Company. Except for the foregoing consideration, the Member shall not be obligated to make capital contributions to the Company and all limited liability company interests in the Company held by the Member shall be nonassessable.

6. <u>Capital Accounts</u>. During any period when the Company is treated as a disregarded entity or partnership for Federal income tax purposes, a separate capital account shall be maintained for each member and, at any time when there shall be more

---

[1] This LLC Agreement is intended to be used by (i) each of the Asset Recovery Entities other than ***New Zohar III, LLC*** and (ii) if applicable, any subsiary entity in the MDHI Holdco structure.

than one member, such capital accounts shall be maintained in accordance with the provisions of § 704 of the Internal Revenue Code of 1986, as amended (the "Code"), and the Treasury Regulations promulgated thereunder.  If an event occurs that results in the dissolution of the Company, any distributions made to the members shall be in proportion to the then remaining positive balances in their respective capital accounts.

7.    Allocation of Profits and Losses.  During any period when the Company is treated as a disregarded entity for Federal income tax purposes, all profits and losses of the Company shall be allocated to the Member.  During any period when the Company is treated as a partnership for Federal income tax purposes, the Company's profits and losses shall be allocated among the members in proportion to the limited liability company interests in the Company held by each member and it shall be the intent of the members that each member's distributive share of income, gain, loss, deduction, or credit (or item thereof) shall be determined and allocated in accordance with this Section 7 to the fullest extent permitted by §§ 704(b) and (c) of the Code and the Treasury Regulations promulgated thereunder.

8.    Distributions.  Distributions shall be made to the members at the times and in the aggregate amounts determined by the Member.  Such distributions shall be allocated among the members in proportion to the limited liability company interests in the Company held by each member.

9.    Management Powers of the Member.  The Company shall be managed by the Member as an authorized agent of the Company.  The Member shall have the full, exclusive, and absolute right, power, and authority to manage and control the Company and the property, assets, and business thereof.  Any person dealing with the Company, other than a member, may rely upon the authority of the Member or any officer designated in writing as such by the Member in accordance with Section 10 (if any) in taking any action in the name of the Company without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action actually is taken in accordance with the provisions of this Agreement.

10.    Officers.  The Member may, from time to time, delegate to one or more persons such authority and duties as the Member may deem advisable.  In addition, the Member may assign, in writing, titles to any person, including, without limitation, the titles of President, Vice President, Secretary, Assistant Secretary, Treasurer, and Assistant Treasurer.  Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authority and duties that are normally associated with that office, subject to any specific delegation of authority and duties made pursuant to the first sentence of this Section 10.  Any number of titles may be held by the same person.  Each officer shall hold office until his successor shall be duly designated and shall qualify or until his death, until he shall resign, or until he shall have been removed in the manner hereinafter provided.  Any number of offices may be held by the same person.  The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed by the

2

Member.  Any delegation pursuant to this <u>Section 10</u> may be revoked at any time by the Member.  Any officer may resign as such at any time.  Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time be specified, at the time of its receipt by the Member.  The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation.  Any officer may be removed as such, either with or without cause, by the Member whenever, in his judgment, the best interests of the Company will be served thereby; provided, however, that such removal shall be without prejudice to the contract rights, if any, of the person so removed.  Designation of any officer shall not of itself create contract rights.  Any vacancy occurring in any office of the Company may be filled by the Member.

11.    <u>Exculpation; Indemnification</u>.  To the fullest extent permitted by the Act, or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification, no present or former Member of the Company or present or former officer of the Company shall be personally liable to the Company or the Member for or with respect to any acts or omissions in the performance of his or her duties as a Member or officer of the Company.  The Company shall indemnify, to the fullest extent permitted by the Act (or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification), each person who is or was or had agreed to become a Member or officer of the Company, or each such person who is or was serving or who had agreed to serve at the request of the Member or an officer of the Company as an employee or agent of the Company or as a manager, director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise (including the heirs, executors, administrators or estate of such person) (collectively, the "<u>Covered Persons</u>").  Without limiting the generality or the effect of the foregoing, the Company may enter into one or more agreements with any person or entity which provide for indemnification greater or different than that provided in this <u>Section 11</u>.  Any repeal or modification of this <u>Section 11</u> shall not adversely affect any right or protection existing hereunder immediately prior to such repeal or modification.

12.    <u>Dissolution</u>.  The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (a) the written consent of the members, or (b) the entry of a decree of judicial dissolution under § 18-802 of the Act.

13.    <u>Transferability of Interests</u>.  Subject to applicable securities and other laws, the Member may transfer, assign or otherwise dispose of all or part of its limited liability company interest in the Company, including with respect to all economic and distribution rights and all voting or approval rights.

14.    <u>Admission of Additional Members</u>.  Except as provided in <u>Section 12</u>, additional members of the Company may be admitted to the Company with the consent of all of the members.

15.    <u>Consents</u>.  Any action that may be taken by the members at a meeting may be taken without a meeting if a consent in writing, setting forth the action so

3

taken, is signed by or on behalf of the member or members holding sufficient limited liability company interests in the Company to authorize or approve such action at such meeting.

16.    <u>Amendments</u>.    Except as otherwise provided in this Agreement, this Agreement may be amended only by an affirmative vote of the member or members holding a majority of the limited liability company interests in the Company.

17.    <u>Governing Law</u>.    This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of Delaware.

18.    <u>Counterparts</u>.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together, shall constitute one and the same Agreement.

19.    <u>Tax Treatment</u>.    The Company will be classified as an association taxable as a corporation for U.S. federal income tax purposes, and neither the Company nor any Member will take any action (including the filing of any election) that would cause it to be taxable as anything other than a corporation for U.S. federal income tax purposes.

20.    <u>Tax Elections</u>.    Subject to <u>Section 19</u>, the Member shall have the power to cause the Company to make all elections required or permitted to be made for income tax purposes.

21.    <u>Other Business Activities</u>.    Except as provided in this Agreement, no provision of this Agreement will be construed to limit in any manner the Member in the carrying on of its own businesses or activities.

22.    <u>Third Party Beneficiaries</u>.    This Agreement is made solely for the benefit of the Members and their permitted successors and assigns, and no other person or entity will have or acquire any right by virtue of this Agreement other than the Covered Persons (solely with respect to Section 11).

23.    <u>Effectiveness</u>.    Pursuant to Section 18-201(d) of the Act, this Agreement shall be effective as of the filing of the Certificate on [●].

*{Signature Page Follows}*

IN WITNESS WHEREOF, the parties hereto have made this Agreement effective as of the date and year first above-written.

Member:

[●]


_____

Name:[●]
Title: [●]


29282652.6

**_Exhibit E - Form of New Notes Documents_**

## SECURED NOTE ISSUANCE AGREEMENT

This SECURED NOTE ISSUANCE AGREEMENT, dated as of June __, 2022 (the "Agreement") is entered into by Zohar III Recovery, LLC[1], a Delaware limited liability company and any successor thereto (the "Issuer"), pursuant to the terms and provisions of the Plan (as defined below) for the benefit of the Noteholders (as defined below). Any capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Plan.

## RECITAL

On March 11, 2018, each of Zohar III, Corp., Zohar II 2005-1, Corp, Zohar CDO 2003-1, Corp., Zohar III, Limited ("Zohar III"), Zohar II 2005-1, Limited ("Zohar II"), and Zohar CDO 2003-1, Limited (each a "Debtor" and collectively the "Debtors") commenced their bankruptcy cases by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

On June [●], 2022, the Bankruptcy Court entered an order (the "Confirmation Order") [Docket No. ●] confirming a chapter 11 plan of liquidation for the Debtors (as confirmed the "Plan") [Docket No. ●] and approving the Plan Supplement documents, including this Agreement.

As further set forth in the Plan, on the Effective Date, (i) the existing Zohar III A-1 Note Claims shall be reduced to the Zohar III Adjusted Plan Value and exchanged for New Notes issued by Zohar III with a face amount equal to the Zohar III Adjusted Plan Value, (ii) the MD Term Loan Indebtedness held by Zohar III shall be transferred to MDHI Holdco in exchange for MDHI Holdco's assumption of the New Notes in an amount equal to the Zohar III MD Credit Bid Amount, (iii) all but $10,000 of the New Notes issued by Zohar III and assumed by MDHI Holdco will be converted into the Zohar III MDHI Holdco Interests, (iv) all remaining assets of Zohar III shall be transferred to the Issuer in exchange for the Issuer's assumption of the New Notes issued by Zohar III that were not otherwise assumed by MDHI Holdco and the Zohar III Indenture Trust Claim, and (v) all but $90,000 of the New Notes, issued by Zohar III and assumed by Issuer will be converted into equity of New Zohar III LLC.[2]

The Issuer desires to enter into this agreement to document the issuance by the Issuer to each Holder of a Zohar III A-1 Note Claim (each a "Noteholder" and collectively, the "Noteholders") its *pro rata* share of New Notes in furtherance of the Plan.

## AGREEMENT

NOW THEREFORE, in consideration of the foregoing, and the representations, warranties, and conditions set forth below, the parties hereto, intending to be legally bound, hereby agree as follows:

---

[1]     NOTE: Conforming changes to be made for parallel structures.
[2]     NOTE: This transaction description will be updated if MD Helicopters is sold or reorganized prior to confirmation in accordance with Section 6.17 of the Plan.

1.    **Issuance of Notes.**

(a)    <u>Issuance of Notes</u>.  As of immediately after the occurrence of the Effective Date, the Issuer will be deemed to have issued to each Noteholder, and, subject to all of the terms and conditions hereof, a Promissory Note in the form of <u>Exhibit A</u> hereto (each a "<u>Note</u>" and, collectively, the "<u>Notes</u>") reflecting such Noteholder's *pro rata* share of $90,000 of New Notes, as determined in accordance with the mechanism and procedures set forth in the Confirmation Order for identifying holders of Zohar III A-1 Note Claims.  Each Note will be registered in the name of the respective Noteholder in the note records maintained by the Issuer.  Pursuant to the Plan and Confirmation Order, each Noteholder shall be deemed to have agreed to be bound by the terms of the Note and this Agreement.  As soon as reasonably practicable following the Effective Date, upon the request of a Noteholder, the Issuer will deliver to such Noteholder a physical copy of its respective Note.

(b)    <u>Security</u>.

(i)    <u>Grant</u>.  To secure payment and performance of the Issuer's obligations hereunder and under the Notes (the "<u>Obligations</u>"), the Issuer hereby pledges, assigns and grants to the Noteholders, collectively, a security interest in all of its right, title and interest in, to and under all personal property and other assets, whether now owned by or owing to, or hereafter acquired by or arising in favor of the Issuer, and whether owned or consigned by or to, or leased from or to, the Issuer, and regardless of where located (all of which will be collectively referred to as the "<u>Collateral</u>"), including:

(1)    all contracts, all contract rights, documents and accounts associated with such contracts and each and every document granting security to the Issuer under any such contract;

(2)    all cash;

(3)    all Accounts (as defined in the Uniform Commercial Code as the same may, from time to time, be in effect in the State of Delaware (the "<u>UCC</u>"); <u>provided</u>, <u>however</u>, in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection or priority of the security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State of Delaware, the term "UCC" shall mean the Uniform Commercial Code as in effect in such other jurisdiction for purposes of the provisions hereof relating to such attachment, perfection or priority and for purposes of definitions related to such provisions);

(4)    all Inventory (as defined in the UCC);

(5)    all Equipment (as defined in the UCC);

(6)    all intellectual property;

(7)    all Investment Property (as defined in the UCC);

(8)    all Fixtures (as defined in the UCC);

(9)     all checking, savings, deposit or other account of the Issuer, including, but not limited to Commodities Accounts (as defined in the UCC), Securities Accounts(as defined in the UCC), Deposit Accounts (as defined in the UCC), and all other accounts held in the name of the Issuer in the United States;

(10)     all Receivables (as defined in the UCC);

(11)     any and all liens and security interests (together with the documents evidencing such security interests) granted to the Issuer by an obligor to secure such obligor's obligations owing under any Instrument (as defined in the UCC), Chattel Paper (as defined in the UCC), or contract that is pledged hereunder or with respect to which a security interest in the Issuer's rights in such Instrument, Chattel Paper, or contract is granted hereunder;

(12)     any and all guaranties given by any person for the benefit of the Issuer which guarantees the obligations of an obligor under any Instrument, Chattel Paper or contract, which are pledged hereunder;

(13)     without limiting the generality of the foregoing, all other personal property, goods, Instruments (as defined in the UCC), Chattel Paper, Documents (as defined in the UCC), Fixtures, credits, claims, demands and assets of the Issuer whether now existing or hereafter acquired from time to time; and

(14)     any and all additions, accessions and improvements to, all substitutions and replacements for and all products and Proceeds (as defined in the UCC) of or derived from all of the items described above in this Section 1(b)(i).

(ii)     Ranking of Security.  The Obligations evidenced by the Notes shall be senior secured obligations of the Issuer; provided, however, that the Notes shall be subordinated only to the obligations under [the DIP Roll-over Facility (as defined in Limited Liability Company Agreement of the Issuer)][3], expenses of the Issuer and the Indenture Trustee Claims, and any liens securing such obligations, expenses and claims.

(iii)     Release of Security.

(1)     Upon the date on which the Obligations have been discharged in full, the security interest granted hereby shall terminate and all rights to the Collateral shall revert to the Issuer to the extent such Collateral shall not have been sold or otherwise applied. Upon the discharge in full of the Obligations hereunder, each Noteholder, if appliable, hereby authorizes the Issuer to execute, deliver and file any such documents on behalf of such Noteholder (including, without limitation, UCC-3 termination statements) that the Issuer shall deem necessary or appropriate to evidence such termination.

(2)     Upon the sale of any Collateral pursuant to a monetization transaction pursuant to the Settlement Agreement or distribution of any Collateral authorized pursuant to the Issuer's governance documents, each Noteholder, if applicable, hereby authorizes Issuer to execute, deliver and file any such documents on behalf of such Noteholder (including,

---

[3] NTD: DIP will not be included in the Zohar II form.

- 3

without limitation, UCC-3 termination statements) that the Issuer shall deem necessary or appropriate to evidence the release of such Collateral from the liens set forth hereunder.

(c)    <u>Closing</u>.  The issuance of the Notes as contemplated hereby shall take place immediately and automatically on the Effective Date as contemplated by the Plan.

## 2.    **Issuer Representations.**

The Issuer hereby represents and warrants to the Noteholders as follows:

(a)    The Issuer is a limited liability company duly organized and in good standing under the laws of the State of Delaware.

(b)    The Issuer has the limited liability company power and authority to execute, deliver, and fully perform the Issuer's obligations under this Agreement and all resolutions, if any, required to authorize the execution and delivery of this Agreement have been obtained.

(c)    This Agreement constitutes a valid, legal, and binding obligation of the Issuer enforceable in accordance with the terms hereof except as such enforceability may be limited by applicable bankruptcy or similar laws respecting creditor's rights generally.

(d)    Execution of and performance by the Issuer of this Agreement does not require the consent or approval of any Person (as hereinafter defined) and does not conflict with or breach any terms or conditions of:

(i)    any order, writ, or decree of any court or governmental agency by which the Issuer is bound, or

(ii)    any agreement to which the Issuer is a party or by which the Issuer is bound.

(e)    To the Issuer's knowledge, except for the Bankruptcy, there are no legal or arbitral proceedings, or any proceedings by or before any governmental or regulatory authority or agency, now pending or, to the knowledge of the Issuer, threatened against the Issuer or the Issuer's property that (i) could have a material adverse effect on the Issuer's ability to perform the Issuer's obligations under this Agreement, or (ii) could affect the validity or enforceability of this Agreement or the Issuer's obligations hereunder.

## 3.    **Miscellaneous.**

(a)    <u>Survival</u>.  The covenants and agreements made herein shall survive the execution and delivery of this Agreement.

(b)    <u>Prepayment</u>.  The Issuer may prepay the Notes in whole or in part at any time or from time to time without penalty or premium.

(c)    <u>Registration, Transfer and Replacement of the Note</u>.

(i)    The Notes issuable under this Agreement shall be registered on the Issuer's books and records so as to show each Noteholder as the owner of record of such Note as of the Effective Date. The Issuer will keep books for the registration and registration of transfer of the record ownership of the Notes.  Prior to presentation of written agreement signed by both the owner of record and transferee for registration of transfer, the Issuer shall treat the Person in whose name such Note is then registered as the owner and holder of such Note for all purposes whatsoever, whether or not Note shall be overdue, and the Issuer shall not be affected by notice to the contrary.  No Note may be transferred to a new owner (x) without the prior consent of the [Issuer and the majority of the Noteholders][4] and (y) the transferee agreeing to be bound by the terms of this Agreement.

(ii)    In the event a physical Note has been issued to a Noteholder,

(1)    Subject to any restrictions on or conditions to transfer set forth herein and in any Note, the holder of a Note, at its option, may in person or by duly authorized attorney surrender the same for exchange at the Issuer's chief executive office, and promptly thereafter and at the Noteholder's expense, except as provided below, receive in exchange therefor one or more new Note(s), each in the amount requested by such holder, dated the date of the Note so surrendered and registered in the name of such Person or Persons as shall have been designated in writing by such holder or its attorney for the same amount as the then unpaid amount of the Note so surrendered.

(2)    No transfer of such Note or any interest therein shall be effective without such physical delivery of such Note to the Issuer.

(3)    Upon receipt by the Issuer of evidence reasonably satisfactory to the Issuer of the ownership of and the loss, theft, destruction, or mutilation of any Note and (i) in the case of loss, theft, or destruction, of indemnity reasonably satisfactory to the Issuer; or (ii) in the case of mutilation, upon surrender thereof, the Issuer, at the Issuer's expense, will execute and deliver in lieu thereof to the Noteholder a new Note executed in the same manner as the Note being replaced, in the same principal amount as the unpaid principal amount of such Note and dated the date to which interest shall have been paid on such Note or, if no interest shall have yet been so paid, dated the date of such Note.

(iii)    Any transfer or attempted transfer of any Note in violation of any provision of this Agreement or the Note shall be void, and, without limiting the foregoing, the Issuer shall not register such transfer on its books or treat any purported transferee of such Note as the owner of such for any purpose.

(d)    Entire Agreement.  The Plan, Confirmation Order, and this Agreement, together with the Notes, constitutes the full and entire understanding and agreement with respect to the subject hereof and thereof.  All exhibits and schedules attached hereto are incorporated herein, and made a part hereof, by this reference.

(e)    Notices.  Any notice, request or other communication required or permitted hereunder shall be in writing and shall be deemed to have been duly given if personally delivered

---

[4]    NOTE:  To be discussed.

- 5

or mailed by registered or certified mail, postage prepaid, or by recognized overnight courier or personal delivery, addressed (i) if to a Noteholder, at such Noteholder's address set forth in the books and records of the Issuer, or (ii) if to the Issuer, at its address set forth on the signature page, or at such other address as the Issuer shall have furnished to Noteholders in writing.

(f)    <u>Binding Effect</u>.  This Agreement shall be binding upon each Noteholder and the Issuer and their respective heirs, legal representatives, successors, and assigns.

(g)    <u>Governing Law and Jurisdiction</u>.    THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES. THE ISSUER AND NOTEHOLDERS AGREE THAT IN THE EVENT THAT ANY SUIT OR PROCEEDING IS BROUGHT IN CONNECTION WITH THIS AGREEMENT, SUCH SUIT OR PROCEEDING SHALL BE BROUGHT IN THE BANKRUPTCY COURT, AND THE PARTIES SHALL SUBMIT TO THE EXCLUSIVE JURISDICTION OF SUCH COURT AND WAIVE ANY AND ALL JURISDICTIONAL, VENUE AND INCONVENIENT FORUM OBJECTIONS TO SUCH COURTS.

(h)    <u>Waiver of Jury Trial</u>.  EACH OF THE ISSUER AND NOTEHOLDERS AGREES TO WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT.  The scope of this waiver is intended to be all-encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this transaction, including without limitation contract claims, tort claims, breach of duty claims and all other common law and statutory claims. Each of the Issuer and the Noteholders acknowledges that this waiver is a material inducement to enter into a business relationship, that each has already relied on this waiver in entering into this Agreement, and that each will continue to rely on this waiver in their related future dealings. Each of the Issuer and the Noteholders hereto further warrants and represents that it has reviewed this waiver with its legal counsel and that it knowingly and voluntarily waives its jury trial rights following consultation with legal counsel.  THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING (OTHER THAN BY A MUTUAL WRITTEN WAIVER SPECIFICALLY REFERRING TO THIS <u>SECTION 3(g)</u> AND EXECUTED BY EACH OF THE ISSUER AND THE NOTEHOLDERS), AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT.  In the event of litigation, this Agreement may be filed as a written consent to a trial by the court.

(i)    <u>Person Defined</u>.  "<u>Person</u>" means any individual, corporation, limited liability company, limited or general partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or government or any agency or political subdivisions thereof.

(j)    <u>Severability</u>.  If any provision of this Agreement shall be by arbitration or judicially determined to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(k)    <u>Counterparts</u>.    This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall be deemed to constitute one instrument.

*{Signature Page Follows}*

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed and delivered as of the date and year first written above.

**ISSUER:**

**ZOHAR III RECOVERY, LLC**

By: _____
      Name:
      Title:

Notice to:
Zohar III Recovery, LLC

c/o
[INSERT]
[INSERT]
Attention:

With a copy that shall not constitute notice to:

[INSERT]
[INSERT]
[INSERT]
Attention:

## EXHIBIT A

NOTE

29324386.4

PROMISSORY NOTE

$_____                                    Dated: _____ __, 2022

FOR VALUE RECEIVED, the undersigned, Zohar III Recovery, LLC[1], a Delaware limited liability company (the "**Issuer**"), HEREBY UNCONDITIONALLY PROMISES TO PAY to the order of _____, a _____ (the "**Noteholder**"), in accordance with the terms of that certain Secured Note Issuance Agreement, dated June __, 2022 (the "**Agreement**"), executed by the Issuer pursuant to the terms of the Plan (as defined in the Agreement), the principal sum of $_____ in the aggregate, together with the accrued and unpaid interest thereon no later than [June __, 2024][2].

This Note shall be subject in all respects to the terms of the Agreement and to the following terms and conditions:

Interest shall accrue at a rate of five percent (5%) *per annum* and calculated on the basis of a three hundred sixty-five (365) day year and actual days elapsed. Interest shall be payable in-kind on December __, 2022, June __, 2023, December __, 2023, and June __, 2024[3].

Both principal and interest are payable on the second anniversary of the Effective Date, in lawful money of the United States of America, in same day funds.

The Agreement and the Plan provide for the underlying obligations being evidenced by this Note.

The Issuer hereby irrevocably waives presentment, demand, notice, protest, notice of nonpayment, notice of protest and all other notices, demands or conditions precedent in connection with the delivery, acceptance, performance, collection and/or enforcement of this Note.

All payments on or with respect of this Note shall be made without set-off or counterclaim and free and clear of and without deduction of any kind or conditions of any nature, except as required by applicable law. There shall be no penalty for pre-payment.

If any applicable law (as determined in the good faith discretion of the payor) requires the deduction or withholding of any tax from a payment on or with respect of this Note by the payor, then the payor shall be entitled to make such deduction or withholding and shall timely pay the full amount deducted or withheld to the relevant governmental authority. The payor shall have no obligation to indemnify or "gross-up" such payment due to taxes deducted or withheld. As soon as practicable after the payment of any payment of taxes by a payor to a governmental authority pursuant to this paragraph, the payor shall deliver to the payee the original or a certified copy of a receipt issued by such governmental authority evidencing such payment.

THIS NOTE AND THE OBLIGATIONS OF THE ISSUER HEREUNDER SHALL BE GOVERNED BY AND IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF DELAWARE APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED ENTIRELY IN SUCH STATE.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[1] NTD: Conforming changes to be made for parallel structures.
[2] NTD: This date will be the second anniversary of the Effective Date of the Plan.
[3] NTD: These dates to be confirmed.

**ZOHAR III RECOVERY, LLC**

_____

By:

Title:

**_Exhibit F - Organization Chart for MD Buyer, MDHI Holdco and Parent Companies_**

*(Document to be provided in Amendment to Plan Supplement)*

**_Exhibit G - Organizational Documents for MD Buyer' ultimate parent company_**

*(Document to be provided in Amendment to Plan Supplement)*

***Exhibit H - Form of Liquidating Trust Agreement***

## LITIGATION TRUST AGREEMENT

This Litigation Trust Agreement,[1] dated as of [_____], 2022 (as amended, supplemented, or otherwise modified from time to time, this "Agreement"), by and among (i) Zohar III, Corp. and its affiliated debtors and debtors in possession in the chapter 11 cases (the "Chapter 11 Cases") currently pending in the United States Bankruptcy Court for the District of Delaware and captioned as *Zohar III, Corp., et al.*, Case No. 18-10512 (KBO) (collectively, the "Debtors"), (ii) Zohar II Recovery LLC and Zohar III Recovery LLC, each in its capacity as one of the Asset Recovery Entities established pursuant to the Plan (as hereinafter defined) (together with the Debtors, collectively referenced herein as the "Debtor Entities"), (iii) the undersigned Members of the Litigation Trust Advisory Board (as defined herein), and (iv) [_____], as trustee of the Litigation Trust referred to herein (in such capacity, the "Litigation Trustee"), creates and establishes the litigation trust (the "Litigation Trust") for the benefit of the Litigation Trust Beneficiaries (as defined below) in connection with the *Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III Corp. and its Affiliated Debtors* [Docket No. 3042], dated January 31, 2022 (as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions thereof, the "Plan"). Each of the Debtor Entities, the undersigned Members of the Litigation Trust Advisory Board and the Litigation Trustee are referred to herein individually as a "Party" and, collectively, as the "Parties."

## RECITALS

**WHEREAS**, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on March 11, 2018 (the "Petition Date") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**WHEREAS**, on January 31, 2022, the Debtors filed their *Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III Corp. and its Affiliated Debtors* [Docket No. 3042] (as the same may be amended, modified, or supplement from time to time in accordance with the terms and provisions thereof, the "Plan");[2]

**WHEREAS**, on February 3, 2022, the Debtors filed their *Disclosure Statement for Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III Corp. and its Affiliated Debtors* [Docket No. 3048] (the "Disclosure Statement");

**WHEREAS**, on April 6, 2022, the Bankruptcy Court entered an order approving the Disclosure Statement [Docket No. 3239];

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or, if not defined therein, in the Disclosure Statement.

[2] On April 6, 2022, the Debtors filed their *Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III Corp. and its Affiliated Debtors* [Docket No. 3233].

**WHEREAS**, on [May 6], 2022, the Debtors filed their [Plan Supplement] [Docket No. [●]];

**WHEREAS**, on [_____], 2022, the Bankruptcy Court entered its order confirming the Plan (the "<u>Confirmation Order</u>");

**WHEREAS**, the Effective Date of the Plan (as defined in the Plan) occurred on [_____], 2022;

**WHEREAS**, pursuant to and as provided in the Plan, as of the Effective Date of the Plan (as defined therein) the Debtors hereby seek to effectuate (a) the creation and establishment of the Litigation Trust for the benefit of the Litigation Trust Beneficiaries to pursue the Litigation Trust Causes of Action (as hereinafter defined), (b) the automatic transfer to the Litigation Trust of the Litigation Trust Assets (as hereinafter defined), as well as the rights and powers of each Debtor and Litigation Trust Beneficiary, as applicable, in such Litigation Trust Assets, free and clear of all Claims and Interests, and (c) the prosecution and settlement of the Litigation Trust Causes of Action by the Litigation Trustee and the Litigation Trust Advisory Board (as defined herein) and the distribution of the proceeds therefrom (collectively, the "<u>Litigation Trust Proceeds</u>") to the Litigation Trust Beneficiaries, in each case as set forth in the Plan, the Confirmation Order, and this Agreement;

**WHEREAS**, pursuant to and as provided in the Plan, the Debtors hereby seek for the Litigation Trust to be funded and vested with that certain Litigation Trust Fund (as hereinafter defined);

**WHEREAS**, the Litigation Trust is established hereunder for the sole purpose of prosecuting the Litigation Trust Causes of Action and liquidating and distributing the Litigation Trust Assets to or for the benefit of the holders of the Litigation Trust Interests (as hereinafter defined), [with no objective or authority to continue or engage in the conduct of a trade or business][3];

**WHEREAS**, (x) pursuant to sections 4.5(d) and 4.14(d) of the Plan, Holders of Allowed Class 3 Zohar III A-1 Note Claims and Allowed Class 10 Zohar II Credit Enhancement Claims under the Plan, which by virtue of their ownership interests in Zohar II Recovery LLC and Zohar III Recovery LLC, respectively, are the ultimate economic beneficiaries of the Litigation Trust, respectively, are entitled to receive their *pro rata* share of the Litigation Trust Interests on account of such Allowed Class 3 Claims and Allowed Class 10 Claims, which Litigation Trust Interests are deemed transferred by the Debtors to the Litigation Trust and now comprise part of the Litigation Trust Assets as of the Effective Date of the Plan, and (y) pursuant to sections 4.18(c) and 4.20(d) of the Plan, Holders of Allowed Class 14 Zohar I Indenture Trustee Claims and Allowed Class 15 Zohar I Credit Enhancement Claims under the Plan shall be paid, respectively, up to the Allowed amount of the Indenture Trustee Claims against Zohar I, from the Distributable Cash attributable to Zohar I in the Litigation Trust applicable to Zohar I available after payment in full of all Allowed Administrative Claims and Priority Claims against Zohar I (the Holders referenced in the immediately preceding clause (x), together with (i) solely with respect to the

---

[3] [NTD: Subject to confirmation of tax treatment].

Claims referenced in the immediately preceding clause (y), the Indenture Trustee and (ii) Zohar II Recovery LLC and Zohar III Recovery LLC, collectively referenced herein as the "<u>Litigation Trust Beneficiaries</u>");

**WHEREAS**, for the avoidance of any doubt, and pursuant to and consistent with the Plan, only those parties granted interests in the Litigation Trust pursuant to the Plan and Confirmation Order shall be considered Beneficiaries of the Litigation Trust established pursuant hereto;

**[WHEREAS**, the Litigation Trust is intended to qualify as a "liquidating trust" pursuant to the Internal Revenue Code of 1986, as amended (the "<u>IRC</u>"), and the regulations promulgated thereunder ("<u>Treasury Regulations</u>") including Treasury Regulation section 301.7701-4(d), and thus as a "grantor trust" within the meaning of sections 671 through 677 of the IRC, with the Litigation Trust Beneficiaries treated for U.S. federal income tax purposes as the grantors and owners of their respective shares of the Litigation Trust Assets (as defined herein);][4] and

**WHEREAS**, the Litigation Trustee shall have all powers necessary to implement the provisions of the Plan, the Confirmation Order, and this Agreement and to administer the Litigation Trust as provided herein.

**NOW**, **THEREFORE**, pursuant to the Plan and the Confirmation Order, in consideration of the mutual agreements of the Parties contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

# ARTICLE I

# ESTABLISHMENT OF THE LITIGATION TRUST

1.1    <u>Establishment of the Litigation Trust and Appointment of the Litigation Trustee and the Litigation Trust Advisory Board</u>.  (a) The Parties, pursuant to the Plan and the Confirmation Order, and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish a trust on behalf of the Litigation Trust Beneficiaries, which shall be known as the "Zohar Litigation Trust," on the terms set forth herein.  In connection with the exercise of the Litigation Trustee's powers hereunder, the Litigation Trustee may use this name or such variation thereof as the Litigation Trustee sees fit.

(b)    <u>Litigation Trustee</u>.  **[_____]** is hereby appointed as trustee of the Litigation Trust effective as of the Effective Date of the Plan (such date for purposes hereof, referenced herein as the "<u>Effective Date</u>") and agrees to accept and hold the assets of the Litigation Trust in trust for the Litigation Trust Beneficiaries subject to the terms of the Plan and this Agreement.  The Litigation Trustee (and each successor trustee serving from time to time, as duly appointed hereunder) shall have all the rights, powers and duties set forth herein.

---

[4] [NTD: All tax-related provisions referenced in this form Litigation Trust Agreement remain subject to confirmation of tax treatment and, as such, subject to change in all respects.]

(c)     Litigation Trust Advisory Board.  A board is hereby appointed to oversee the Litigation Trust and the activities of the Litigation Trustee (the "Litigation Trust Advisory Board").  The Litigation Trust Advisory Board shall consist of three (3) members (each, a "Member") as follows: (i) two (2) of the initial Members of the Litigation Trust Advisory Board shall be appointed by MBIA Insurance Corp. ("MBIA") in its capacity as the Holder of Class 10 Zohar II Credit Enhancement Claims under the Plan (each, an "MBIA Member Representative"); and (ii) one (1) Member shall be appointed by Bardin Hill Investment Partners, LP, in its capacity as the Holder of Class 3 Zohar III A-1 Note Claims under the Plan (each, a "Bardin Hill Member Representative").  The initial Members are identified on **Exhibit C** attached hereto.

(d)     Any action(s) undertaken by the Litigation Trustee under this Agreement that require direction by the Litigation Trust Advisory Board shall be in writing approved by a majority in number of the Members of the Litigation Trust Advisory Board (a "Direction").

(e)     The Litigation Trustee and the Members shall serve without bond and shall have no obligation to file any accountings with any state court.

(f)     For the avoidance of doubt, neither the Litigation Trustee nor any Member of the Litigation Trust Advisory Board is or shall be deemed an officer, director, or fiduciary of any of the Debtors.

1.2     Transfer and Vesting of the Litigation Trust Assets.

(a)     Litigation Trust Causes of Action.  On the Effective Date of the Plan, the Debtor Entities shall contribute or otherwise transfer to the Litigation Trust all claims and causes of action as provided by the Plan and more particularly described on **Schedule 1** attached hereto (all claims and causes of action described on **Schedule 1** attached hereto, together with any additional causes of action or Litigation Assets described in the Plan that may be assigned by any party to the Litigation Trust for the benefit of the Litigation Trust Beneficiaries, referenced herein collectively as the "Litigation Trust Causes of Action").  For the avoidance of doubt, the Litigation Trust Causes of Action expressly shall not include any of the "Excluded Claims" described on **Schedule 2** attached hereto (all claims and causes of action described on **Schedule 2** attached hereto, referenced herein collectively as the "Excluded Claims").  The contribution or transfer of the Litigation Trust Causes of Action to the Litigation Trust shall (i) be deemed to occur automatically on the Effective Date of the Plan, (ii) be deemed to include the rights and powers of each Debtor and Litigation Trust Beneficiary, as applicable, in such Litigation Trust Causes of Action, and (iii) be free and clear of all Claims and Interests.

(b)     Pursuant to section 6.8 of the Plan, on the Effective Date, in partial satisfaction of all Allowed Claims classified in Class 3 and Class 10 under the Plan, the Debtor Entities shall be deemed to transfer all of the Litigation Trust Assets (including the rights and powers of the Debtors' Estates applicable to the Litigation Trust Assets in accordance with section 1141 of the Bankruptcy Code) to the Litigation Trust, including all information necessary to investigate, prosecute, protect, and conserve all Litigation Trust Causes of Action, free and clear of all liens, Claims, encumbrances, and Interests (legal, beneficial, or otherwise) for the benefit of the Litigation Trust Beneficiaries.  For the avoidance of doubt, upon the transfer of the Litigation Trust Assets, the Litigation Trust shall succeed to all of the Debtor Entities' rights, title, and

interest in the Litigation Trust Assets, and the Debtor Entities shall have no further interest in or with respect to the Litigation Trust.  The Plan shall be considered a motion pursuant to sections 105, 363, and 365 of the Bankruptcy Code for such relief.

(c)     The Litigation Trustee shall be authorized to obtain, liquidate, and collect all of the Litigation Trust Assets in the possession of third parties, if any, and pursue all of the Litigation Trust Causes of Action.  The Litigation Trust will serve as the successor-in-interest with respect to any action that was or could have been commenced by any of the Debtors prior to the Effective Date that is a Litigation Trust Asset and shall be deemed and entitled to be substituted for the same as the party in all such litigation. To the extent any of the foregoing does not automatically occur on the Effective Date or is not effectuated through the Plan, the Confirmation Order or this Agreement, the Debtors, as applicable, shall, on and after the Effective Date, cause to be executed such other and further documents as are reasonably necessary to effectuate all of the foregoing in connection with the administration of the Litigation Trust Assets by the Litigation Trustee.  In no event shall any part of the Litigation Trust Claims (including, without limitation, Litigation Trust Proceeds) revert to or be distributed to the Debtors or any other third parties other than as expressly provided for herein.

(d)     In connection with the vesting and transfer of the Litigation Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral, including electronic information) relating to the Litigation Trust Assets (collectively, the "Privileges") shall vest in the Litigation Trust.  The Debtors, the Litigation Trust Advisory Board, the Litigation Trust Beneficiaries, and the Litigation Trustee shall take all necessary actions to effectuate the transfer of such privileges, protections, and immunities.  The receipt of the Privileges by the Litigation Trust, Litigation Trustee, and the Litigation Trust Advisory Board (and the Members thereof) shall be without waiver in recognition of the joint/successorship interest in prosecuting claims on behalf of the Debtors' Estates and their stakeholders, where applicable.

(e)     Not later than [__] Business Days following the Effective Date, the Debtor Entities shall deliver or cause to be delivered to the Litigation Trust any and all Books and Records and all other documents and communications related to the Litigation Trust Assets, including those maintained in electronic format and original documents, whether held by the [Responsible Person], the Debtor Entities, or their respective current officers, directors, employees, agents, advisors, attorneys, accountants, or any other professionals; [provided, that the actual fees, costs and expense associated with the collection and transfer of such books and records, including any review deemed necessary to determine that documents (including those that are electronically-stored) are within the scope of the books and records transferred to the Litigation Trust and to preserve and protect all applicable non-transferred Privileges, shall be borne by the [Litigation Trust] and paid contemporaneous with the transfer of such books and records.]

(f)     The Litigation Trustee [and the Litigation Trust Advisory Board] agree to execute any documents or other instruments and take any other steps as necessary to cause title to the Litigation Trust Assets to be transferred to the Litigation Trust on the Effective Date.

(g)     [Reserved.]

(h)     The Litigation Trust shall be authorized to use Bankruptcy Rule 2004 and any other bankruptcy or other tools of discovery available to the Debtor Entities and the Debtors' Estates.  Any and all such rights in connection with Rule 2004 discovery, examinations, orders, and agreements related thereto concerning the Debtor Entities shall vest in the Litigation Trustee and its representatives, and the Debtor Entities and the Litigation Trustee are authorized to take all necessary actions to effectuate the transfer of such rights and privileges.

(i)     [Reserved.]

(j)     The transfer of the Litigation Trust Assets to the Litigation Trust shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code.

1.3     Funding of the Litigation Trust.  On the Effective Date, the Litigation Trust shall be funded with a certain litigation trust fund in an amount of not less than $[_____] (the "Litigation Trust Fund", and together with the Litigation Trust Causes of Action, as well as any proceeds, product and income of each of the foregoing, the "Litigation Trust Assets").  The Litigation Trust Fund shall be funded in the manner described on **Exhibit B** attached hereto.

1.4     Acceptance by Litigation Trustee.  The Litigation Trustee hereby accepts the trust imposed upon it by this Litigation Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order.  In connection with and in furtherance of the purposes of the Litigation Trust, the Litigation Trustee hereby accepts the transfer of the Litigation Trust Assets.

1.5     Payment of Litigation Trust Fees and Expenses.

(a)     The Litigation Trustee may incur on behalf of the Litigation Trust any reasonable and necessary fees and expenses in pursuing the Litigation Trust Assets, administering the Litigation Trust, managing the Litigation Trust Assets and making distributions on account of Litigation Trust Interests.  All reasonable fees, expenses, and costs incurred by the Litigation Trust, including fees and expenses incurred by counsel and other professionals retained by the Litigation Trust (all such fees, expenses, and costs, the "Litigation Trust Expenses") shall be paid by, and shall solely be the obligation of, the Litigation Trust.  On and after the Effective Date, the Litigation Trust Expenses shall be paid solely from the Litigation Trust Fund.  Except as otherwise ordered by the Bankruptcy Court, on or after the Effective Date of the Plan, the Litigation Trust Expenses shall be paid in accordance with this Agreement without the necessity for any further order of the Bankruptcy Court.

(b)     The Litigation Trust Advisory Board may incur reasonable and necessary expenses in connection with the performance of its duties under the Plan, the Confirmation Order, and this Agreement.  No fees and expenses incurred by any individual Member of the Litigation Trust Advisory Board shall be reimbursable as to such Member, unless otherwise provided herein.

(c)     Neither the Debtors nor Litigation Trust Beneficiaries shall have any obligation, nor shall they be required, to pay any of the Litigation Trust Expenses, other than the Litigation Trust Fund.

(d)     The amounts held in the Litigation Trust Fund shall be subject to periodic review by the Litigation Trust Advisory Board at any time upon reasonable request.

(e)     Any failure or inability of the Litigation Trustee to obtain additional funding for the Litigation Trust will not affect the enforceability of this Agreement.

1.6     <u>Title to the Litigation Trust Assets</u>. The transfer of the Litigation Trust Assets to the Litigation Trust pursuant to Section 1.2 hereof is being made for the sole benefit, and on behalf, of the Litigation Trust Beneficiaries.  Upon the transfer of the Litigation Trust Assets to the Litigation Trust, the Litigation Trust shall succeed to all of the Debtor Entities' rights, title, and interest in and to the Litigation Trust Assets, and no other Person[5] shall have any interest, legal, beneficial, or otherwise, in the Litigation Trust or the Litigation Trust Assets (other than as provided in the Plan, the Confirmation Order, or this Agreement).

1.7     <u>Nature and Purpose of the Litigation Trust</u>.

(a)     <u>Purpose</u>. The Litigation Trust is organized and established as a trust, subject to the terms and conditions contained herein, the Plan and the Confirmation Order, for the sole purpose of liquidating the Litigation Trust Assets in an expeditious but orderly manner for the benefit of the Litigation Trust Beneficiaries, including the investigation and prosecution of the Litigation Trust Causes of Action, with no objective to continue or engage in the conduct of a trade or any other business, except to the extent reasonably necessary to effectuate, and consistent with, the purpose of the Litigation Trust.

(b)     <u>Relationship</u>. This Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust.  The Litigation Trust is not intended to be, and shall not be deemed to be, or be treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company, or association, nor shall the Litigation Trustee, the Litigation Trust Advisory Board (or any Member), or the Litigation Trust Beneficiaries for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The relationship of the Litigation Trust Beneficiaries, on the one hand, to the Litigation Trust, Litigation Trustee and the Litigation Trust Advisory Board (and each Member thereof), on the other hand, shall be solely that of a beneficiary of a trust and shall not be deemed a principal and agency relationship, and their rights shall be limited to those conferred upon them by the Plan, the Confirmation Order, and this Agreement.

(c)     <u>No Waiver of Claims</u>. Except as provided in, and unless expressly released, compromised, or settled in the Plan, the Confirmation Order, or in any contract, instrument, release, or other agreement entered into or delivered in connection with the Plan, the Litigation Trustee, upon the Direction of the Litigation Trust Advisory Board, shall enforce the Litigation Trust Causes of Action, in accordance with sections 1123(a)(5)(A) and 1123(b)(3) of the Bankruptcy Code.  No Person or entity may rely on the absence of a specific reference in the Plan to any claim against them as any indication that the Litigation Trustee will not pursue any and all available Litigation Trust Causes of Action against them

---

[5] As used in this Agreement, the term "<u>Person</u>" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

(d)  Relationship to and Incorporation of the Plan. The principal purpose of this Agreement is to aid in the implementation of the Plan and the Confirmation Order, and therefore this Agreement incorporates the provisions thereof by reference; provided, however, that if any provisions of this Agreement are found to be inconsistent with the provisions of the Plan or the Confirmation Order, each such document shall have controlling effect in the following rank order: (1) this Agreement; (2) the Confirmation Order; and (3) the Plan.

1.8  Appointment as Representative. Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Litigation Trustee shall be the duly appointed representative of the Debtors and their Estates for certain limited purposes and, as such, to the extent provided herein, the Litigation Trustee succeeds to the rights and powers of a trustee in bankruptcy solely with respect to the Litigation Trust Assets, including prosecution of the Litigation Trust Causes of Action for the benefit of the Litigation Trust Beneficiaries.  To the extent that any of the Litigation Trust Causes of Action cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Assets shall be deemed to have been retained by the Debtors (other than for tax purposes), and the Litigation Trustee shall be deemed to have been designated as a representative of the Debtors and their Estates to the extent provided herein pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely to enforce and pursue such Litigation Trust Causes of Action on behalf of the Debtors and their Estates.  Notwithstanding the foregoing, all net proceeds of the Litigation Trust Assets shall be distributed to the Litigation Trust Beneficiaries consistent with the provisions of this Agreement, the Plan and the Confirmation Order.   [For the avoidance of doubt, any of the Litigation Trust Causes of Action subject to this Section 1.8 shall be treated by the Parties for U.S. federal, state, and local income tax purposes as a disposition of the Litigation Trust Causes of Action by the Debtors as described in Section 1.2 hereof.]

1.9  Valuation. [RESERVED]

## ARTICLE II

## LITIGATION TRUST INTERESTS

2.1  Litigation Trust Interests.

(a)  Issuance of Litigation Trust Interests.  The Litigation Trust Beneficiaries shall be issued undivided beneficial interests in the Litigation Trust (the "Litigation Trust Interests").  On the Effective Date of the Plan, a total of [●] Litigation Trust Interests shall be issued by the Litigation Trust.  The Litigation Trust Interests shall be comprised of one (1) tranche of interests. The Litigation Trust Interests shall entitle the Litigation Trust Beneficiaries to receive Distributions from the Litigation Trust, as provided in Article IV of this Agreement.

(b)  Allocation of Litigation Trust Interests.  On the Effective Date of the Plan, the Litigation Trust Interests shall be distributed (i) to Zohar II Recovery LLC, on account of the Class 10 Zohar II Credit Enhancement Claims held by MBIA under the Plan, and (ii) to Zohar III Recovery LLC on account of the Holders of Allowed Class 3 Zohar III A-1 Note Claims under the Plan, in each case in the manner specified in **Exhibit A** attached hereto.  The Litigation Trust

Interests shall be allocated to the Litigation Trust Beneficiaries in accordance with **Exhibit A** attached hereto. Notwithstanding anything in this Agreement, any subsequent reallocation of Litigation Trust Interests or recoveries from Litigation Trust Causes of Action, if any, shall be allowed solely upon the unanimous consent of the Litigation Trust Advisory Board.

(c)    The Litigation Trust Interests will be represented by the recording of such ownership in an electronic book-entry system ("Book Entry System") maintained by Registrar (as defined below).

(d)    The Litigation Trustee may serve as or appoint a registrar for the purpose of recording ownership of the Litigation Trust Interests (the "Registrar"). The Registrar, if other than the Litigation Trustee, shall be a third-party institution selected upon the Direction of the Litigation Trust Advisory Board. To the extent the Registrar is not the Litigation Trustee the Registrar, the Litigation Trustee shall be entitled to receive reasonable and documented compensation as an expense of the Litigation Trust.

(e)    The Litigation Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by them from time to time, a registry of the Litigation Trust Beneficiaries of the Litigation Trust (the "Trust Register") and their respective holdings of Litigation Trust Interests, which shall be maintained pursuant to such reasonable regulations as the Litigation Trustee and the Registrar may prescribe. The Litigation Trustee shall, upon the written request of a holder of a Litigation Trust Interest, provide reasonably adequate documentary evidence of such holder's Litigation Trust Interest, as indicated by the Book Entry System. The expense of providing such documentation shall be borne by the requesting holder.

2.2    <u>Interests Beneficial Only</u>. The ownership of the Litigation Trust Interests shall not entitle the Litigation Trust Beneficiaries to any title in or to the Litigation Trust Assets as such (which title shall be vested in the Litigation Trust) or to any right to call for a partition or division of the Litigation Trust Assets or to require an accounting.

2.3    <u>Transferability of Litigation Trust Interests</u>. The Litigation Trust Interests shall be freely transferable; <u>provided</u>, <u>however</u>, that the transfer of the Litigation Trust Interests will be prohibited to the extent such transfer would subject the Debtors to the registration and reporting requirements of the Securities Act or the Securities Exchange Act of 1934, as amended.

(a)    Any transfer of Litigation Trust Interests shall not be recorded unless and until information regarding the sale and transferee is provided to the Litigation Trustee using the litigation trust interest transfer form attached hereto as **Exhibit F** (the "Litigation Trust Interest Transfer Form") [and any other information requested by the Litigation Trustee is received and approved by the Litigation Trustee, including, without limitation, any tax information (including, without limitation, social security numbers or other tax identification numbers) and completed U.S. Internal Revenue Service ("IRS") forms as the Litigation Trustee, in its sole discretion, deems necessary or appropriate].

(b)    There shall be no transfer of any Litigation Trust Interests to Lynn Tilton, any of her affiliates, or any other entity owned or controlled by any of the foregoing, including any

of the Patriarch Stakeholders (as such term is defined in the Plan) absent unanimous approval of the Litigation Trust Advisory Board.

(c)    In connection with any transfer by MBIA and/or Bardin Hill of their respective Litigation Trust Interests or a portion thereof, MBIA and/or Bardin Hill may, in their sole discretion, transfer their respective rights to designate Litigation Trust Advisory Board Member(s) (i.e., the MBIA Member Representative and the Bardin Hill Member Representative, respectively) pursuant to Section 1.1(c) hereof to one or more of the transferee(s) of the Litigation Trust Interests].

2.4    <u>Exemption from Registration</u>.    [It is intended that the Litigation Trust Interests shall not constitute "securities."  None of the Parties hereto make any representation or warranty that the Litigation Trust Interests or the rights associated with such interests are not securities or are exempt from registration under applicable securities laws.  If such rights constitute securities, the Parties hereto intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws to apply to their issuance under the Plan.  If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with the registration and reporting requirements of the Securities Act of 1933, as amended (the "<u>Securities Act</u>"), the Securities Exchange Act of 1934, as amended (the "<u>Exchange Act</u>"), the Trust Indenture Act of 1939, as amended (the "<u>Trust Indenture Act</u>") or the Investment Company Act of 1940, as amended (the "<u>Investment Company Act</u>"), then the Litigation Trustee shall take commercially reasonable efforts to comply with such registration and reporting requirements to the extent required by applicable law.  Notwithstanding the foregoing procedure, the Litigation Trustee may amend this Agreement in accordance with Section 9.1 hereof, to make such changes as are deemed necessary or appropriate by the Litigation Trustee, with the advice of counsel, to ensure that the Litigation Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the Trust Indenture Act, or the Investment Company Act.]

2.5    <u>Effect of Death, Incapacity, or Bankruptcy</u>.    The death, incapacity, or bankruptcy of any Litigation Trust Beneficiary during the term of the Litigation Trust shall not (i) operate to terminate the Litigation Trust; (ii) entitle the representatives or creditors of the deceased party to an accounting; (iii) entitle the representatives or creditors of the deceased party to take any action in the Bankruptcy Court or elsewhere for the distribution of the Litigation Trust Assets or for a partition thereof; or (iv) otherwise affect the rights and obligations of any of the Litigation Trust Beneficiaries under this Agreement.

2.6    <u>Change of Address</u>.    Any Litigation Trust Beneficiaries may, after the Effective Date, select an alternative distribution address by providing notice to the Litigation Trustee identifying such alternative distribution address.  Such notification shall be effective only upon receipt by the Litigation Trustee.  The Trust Register shall thereafter be updated accordingly.  Absent actual receipt of such notice by the Litigation Trustee, the Litigation Trustee shall not recognize any such change of distribution address.

## ARTICLE III

## RIGHTS, POWERS, AND DUTIES OF LITIGATION TRUSTEE; THE LITIGATION TRUSTEE GENERALLY

3.1    <u>Role of the Litigation Trustee</u>.  In furtherance of and consistent with the purpose of the Litigation Trust and the Plan, subject to the terms and conditions contained in the Plan, the Confirmation Order, and this Agreement, the Litigation Trustee shall, in consultation with the Litigation Trust Advisory Board: (i) receive, manage, supervise, and protect the Litigation Trust Assets upon its receipt of same on behalf of and for the benefit of the Litigation Trust Beneficiaries; (ii) investigate, analyze, commence, prosecute, and, if necessary and appropriate, release, settle, and compromise the Litigation Trust Causes of Action and any objections to Claims related to the Litigation Trust Causes of Action; (iii) prepare and file all required tax returns, information returns, and other documents, and pay taxes and all other obligations of the Litigation Trust; (iv) liquidate and convert the Litigation Trust Assets to cash and make timely distributions to the Litigation Trust Beneficiaries in accordance with this Agreement, the Plan, and the Confirmation Order; and (v) have all such other powers and responsibilities as may be vested in the Litigation Trustee pursuant to, or as may be necessary and proper to carry out the provisions of, the Plan, the Confirmation Order, this Agreement, and all other orders of the Bankruptcy Court. In all circumstances, the Litigation Trustee shall act in the best interests of all the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust.  The Litigation Trustee shall consult in good faith with and provide information to the Litigation Trust Advisory Board in accordance with and pursuant to the terms of the Plan, the Confirmation Order, and this Agreement to enable the Litigation Trust Advisory Board to meet its obligations hereunder.

3.2    <u>Authority of the Litigation Trustee</u>.  Without limiting the foregoing, but subject to the Plan, the Confirmation Order, and other provisions of this Litigation Trust Agreement, the Litigation Trustee shall, in consultation with the Litigation Trust Advisory Board (unless Direction of the Litigation Trust Advisory Board is required as set forth below), be expressly authorized to, with respect to the Litigation Trust and the Litigation Trust Assets, and may cause the Litigation Trust to:

(a)    Exercise all power and authority that may be or could have been  exercised, commence all proceedings that may be or could have been commenced, and take all actions that may be or could have been taken, by any officer, director, shareholder or other party acting in the name of the Debtors or their Estates with like effect as if duly authorized, exercised and taken by unanimous action of such officers, directors and shareholders or other party;

(b)    Open and maintain bank accounts on behalf of or in the name of the Litigation Trust, calculate and make transfers of Litigation Trust Proceeds to the Litigation Trust Beneficiaries, and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves (including the Litigation Trust Reserve (as hereinafter defined)), in the name of the Litigation Trust;

(c)    Receive, manage (including, for the avoidance of doubt, use the proceeds, products and income of the Litigation Trust to fund ongoing fees, costs and expenses of the

Litigation Trust), invest, supervise, protect, collect, liquidate and distribute the Litigation Trust Assets and moneys held as part of the Litigation Trust in accordance with the terms hereof;

(d)      Hold legal title to any and all rights of the holders of the Litigation Trust Interests in or arising from the Litigation Trust Assets, including, without limitation, collecting and receiving any and all money and other property belonging to the Litigation Trust and the right to vote any claim or interest relating to a Litigation Trust Asset in a case under the Bankruptcy Code and receive any distribution thereon;

(e)      Upon Direction of the Litigation Trust Advisory Board, commence, prosecute, compromise, adjust, settle, sue on or defend, withdraw, abandon, resolve any or all Litigation Trust Causes of Action, or otherwise protect and enforce the rights to the Litigation Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(f)      Upon Direction of the Litigation Trust Advisory Board, engage in, intervene in, join, compromise, adjust, release, mediate, arbitrate, sue on or defend, counterclaim, recoup, pursue, prosecute, abandon, or otherwise deal with and settle any actions, suits, proceedings, disputes, claims, controversies, demands, causes of action, or other litigation in favor of or against the Litigation Trust, to enter into agreements relating to the foregoing, whether or not any suit is commenced or claim accrued or asserted and, in advance of any controversy, to enter into agreements regarding arbitration, adjudication or settlement thereof, all in the name of the Litigation Trust if necessary or appropriate, and institute or continue actions that were or could have been commenced by any of the Debtors prior to the Effective Date that is a Litigation Trust Asset, and prosecute or defend all related litigation or appeals, and, when appropriate, settle such actions and claims;

(g)      Perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling causes of action, enforcing contracts or asserting claims, defenses, offsets and privileges, but only as such duties and powers relate to the Litigation Trust Assets;

(h)      Protect and enforce the rights to the Litigation Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(i)      Upon the Direction of the Litigation Trust Advisory Board, purchase and carry all insurance policies and pay all insurance premiums and costs the Litigation Trustee Advisory Board deems reasonably necessary or advisable;

(j)      Subject to Section 1.2(d) hereof, waive any privilege or any defense on behalf of the Litigation Trust or the Debtors, as applicable, with respect to the Litigation Trust Assets;

(k)      Conduct discovery or seek the examination of any Entity or Person, including pursuant to Bankruptcy Rule 2004 and any other bankruptcy or other tools of discovery

available to the Debtors and their Estates, subject in all events to the provisions of the Federal Rules of Evidence, Bankruptcy Rule 2004 or any other applicable law or rule;

(l)　　Pay all valid and lawful expenses, debts, charges, taxes and liabilities of the Litigation Trust;

(m)　　Implement, enforce, or discharge all of the terms, conditions, and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Litigation Trust Agreement, including to take all other actions not inconsistent with the provisions of the Plan that the Litigation Trustee deems reasonably necessary or desirable to administer the Litigation Trust and perform all duties and obligations thereunder;

(n)　　At the Direction of the Litigation Trust Advisory Board, enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order or this Agreement;

(o)　　If any of the Litigation Trust Assets are situated in any state or other jurisdiction in which the Litigation Trustee is not qualified to act as trustee, nominate and appoint an Entity duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as may be designated by the Litigation Trustee in its reasonable discretion; confer upon such trustee all the rights, powers, privileges, and duties of the Litigation Trustee hereunder, subject to the conditions and limitations of this Litigation Trust Agreement, except as modified or limited by the Litigation Trustee and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such trustee is acting shall prevail to the extent necessary); require such trustee to be answerable to the Litigation Trustee for all monies, assets and other property that may be received in connection with the administration of all property; and, remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Litigation Trustee of a written instrument declaring such trustee removed from office, and specifying the effective date and time of removal, which notice shall be promptly served on the Beneficiaries;

(p)　　Employ and compensate professionals and other agents subject to the consent by Direction of the Litigation Trust Advisory Board.  Nothing in this Litigation Trust Agreement shall limit the Litigation Trustee from engaging counsel or other professionals, including the Litigation Trustee itself or former counsel to the Litigation Trust Beneficiaries in these cases to do work for or represent the Litigation Trust;

(q)　　At the Direction of the Litigation Trust Advisory Board, obtain financing on behalf of and for the benefit of the Litigation Trust to assist in the pursuit of all Litigation Trust Assets;  and

(r)　　Enter into any joint prosecution and/or common interest agreement(s) as may be required by or consistent with the Plan, the Confirmation Order or this Agreement.

3.3　　Fiduciary Duties.  The Litigation Trustee shall have fiduciary duties to the Litigation Trust and the Litigation Trust Beneficiaries to the same extent that a director or officer of a Delaware corporation owes fiduciary duties to such corporation.  The Litigation Trustee shall

act in good faith and in consideration of (i) the best interests of the Litigation Trust Beneficiaries, and (ii) the fiduciary obligations the Litigation Trustee owes the Litigation Trust Beneficiaries.

3.4    Prosecution of Litigation Trust Causes of Action.    The Litigation Trust Advisory Board shall have the absolute right to provide Direction to the Litigation Trustee to prosecute, pursue, commence, object to, seek to estimate, seek to subordinate, compromise, settle, or take any other action concerning any and all Litigation Trust Causes of Action as it determines in good faith to be in the best interests of the Litigation Trust Beneficiaries, and consistent with the purposes of the Litigation Trust.

(a)    Any determinations by the Litigation Trust Advisory Board with regard to the amount or timing of settlement or other disposition of any Litigation Trust Causes of Action settled in accordance with the terms of this Agreement shall be conclusive and binding on the Litigation Trust Beneficiaries and all other parties in interest.

(b)    To the extent that any action has been taken to prosecute or otherwise resolve any Litigation Trust Causes of Action prior to the Effective Date, the Litigation Trustee shall be substituted for the applicable Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable to the litigation by Bankruptcy Rule 7025, and the caption for such pending litigation shall be changed to the following: "[Name of Trustee], as Trustee for the Zohar Litigation Trust v. [Defendant]" or "Zohar Litigation Trust v. [Defendant]."  Without limiting the foregoing, the Litigation Trustee shall, upon the Direction of the Litigation Trust Advisory Board, take any and all actions necessary or prudent to intervene as plaintiff, movant, or additional party, as appropriate, in any applicable Cause of Action.  For purposes of exercising its powers, the Litigation Trustee shall be deemed to be a representative of the Debtors and their Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.[6]

3.5    Collection of Income.    The Litigation Trustee shall collect all income earned with respect to the Litigation Trust Assets, which shall thereupon become Litigation Trust Assets and held as a part of the Litigation Trust (and which title shall be vested in the Litigation Trust).  Any and all proceeds generated from the Litigation Trust Assets shall be the property of the Litigation Trust.

3.6    Liquidation of Litigation Trust Assets.    The Litigation Trustee shall, upon the Direction of the Litigation Trust Advisory Board, in an expeditious but orderly manner, and subject to the other provisions of the Plan, the Confirmation Order, and this Agreement, liquidate and convert to Cash the Litigation Trust Assets, make timely distributions, and not unduly prolong the duration of the Litigation Trust.  The Litigation Trustee shall use commercially reasonable efforts to resolve the Litigation Trust Causes of Action and to make timely distributions of any Litigation Trust Proceeds and to otherwise monetize the Litigation Trust Assets and not unreasonably prolong the duration of the Litigation Trust.  The Litigation Trustee shall take into consideration the likelihood of success, risks, timing, and costs of potential actions in exercising its reasonable business judgment to maximize net recoveries to the Litigation Trust Beneficiaries.  Such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment, or dismissal of any or all Litigation Trust Causes of Action or otherwise or through

---

[6] See Plan, § 6.8(a).

the sale or other disposition of the Litigation Trust Assets (in whole or in combination). Consistent with an agreed-upon budget in accordance with Section 3.12(c) of this Agreement, if any, the Litigation Trustee may incur any reasonable and necessary expenses in connection with liquidating and converting the Litigation Trust Assets to Cash and distribution of the proceeds thereof.

3.7     <u>Litigation Trust Reserve</u>.  Notwithstanding anything in this Litigation Trust to the contrary, the Litigation Trustee may withhold from amounts transferrable to the Litigation Trust Beneficiaries, and supplement from time to time, a reserve (the "<u>Litigation Trust Reserve</u>") in such amount as the Litigation Trustee, in consultation with the Litigation Trust Advisory Board, determines is or may be reasonably necessary: (i) to meet contingent liabilities and to maintain the value of the Litigation Trust Assets during the term of the Litigation Trust; (ii) to administer the Litigation Trust and pay reasonable administrative expenses including, without limitation, the compensation and the reimbursement of reasonable, actual and necessary costs, fees, and expenses (including attorneys' fees and expenses, financial advisor fees and expenses of the Litigation Trustee in connection with the performance of their duties in connection with this Litigation Trust Agreement); (iii) to wind-up the affairs of the Litigation Trust; and (iv) to satisfy all other liabilities of the Litigation Trust incurred or assumed in respect of the Litigation Trust, or to which the Litigation Trust Assets are otherwise subject, other than Claims, in accordance with the Plan, the Confirmation Order and this Agreement.

3.8     <u>Retention of Counsel and Other Professionals</u>.  The Litigation Trustee may, without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various professionals, including, but not limited to, counsel, experts, consultants, and financial advisors, as needed to assist the Litigation Trustee in fulfilling its obligations under the Plan.  Such employment agreements shall be approved by Direction of the Litigation Trust Advisory Board. Professionals engaged by the Litigation Trustee shall not be required to file applications with the Bankruptcy Court in order to receive compensation for services rendered and reimbursement of actual out-of-pocket expenses incurred. For the avoidance of doubt, unless an alternative fee arrangement has been agreed to (either by order of the Bankruptcy Court or by the Litigation Trustee upon the Direction of the Litigation Trust Advisory Board, as applicable), professionals retained by the Litigation Trustee shall be compensated solely by the Litigation Trust Fund.

3.9     [<u>Investment of Cash</u>.  The right and power of the Litigation Trustee to invest Litigation Trust Assets, the proceeds thereof, or any income earned by the Litigation Trust shall be limited to the right and power to invest such Litigation Trust Assets only in Cash and U.S. Government securities as defined in [section 2(a)(16) of the Investment Company Act]; <u>provided</u>, <u>however</u>, that (a) the scope of any such permissible investments shall be further limited to include only those investments that a liquidating trust within the meaning of [Treasury Regulation Section 301.7701-4(d)] may be permitted to hold pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise; (b) the Litigation Trustee may retain any Litigation Trust proceeds received that are not Cash only for so long as may be required for the prompt and orderly liquidation of such assets; and (c) the Litigation Trustee may expend the assets of the Litigation Trust (i) as reasonably necessary to meet contingent liabilities and maintain the value of the assets of the Litigation Trust during liquidation; (ii) to pay reasonable administrative expenses (including any taxes imposed on the Litigation Trust or reasonable fees and expenses in connection with litigation); and (iii) to satisfy other liabilities

incurred or assumed by the Litigation Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Agreement.]

3.10    <u>Limitations on Power and Authority of the Litigation Trustee</u>. Notwithstanding anything in this Agreement to the contrary, the Litigation Trustee will not have the authority to do any of the following:

(a)    take any action in contravention of the Plan, the Confirmation Order, or this Agreement;

(b)    take any action that would make it impossible to carry on the activities of the Litigation Trust;

(c)    possess property of the Litigation Trust or assign the Litigation Trust's rights in specific property for any purpose other than as provided herein;

(d)    cause or permit the Litigation Trust to engage in any trade or business;

(e)    permit the Litigation Trust to retain Cash or Cash equivalents in excess of a reasonable amount necessary to meet claims and contingent liabilities (including expected expenses) or to maintain the value of the Litigation Trust Assets during liquidation;

(f)    receive transfers of any listed stocks or securities or any readily marketable assets or any operating assets of a going business, except as is necessary or required under the Plan, the Confirmation Order, or this Agreement; <u>provided</u>, <u>however</u>, that in no event shall the Litigation Trustee receive any such investment that would jeopardize [treatment of the Litigation Trust as a "liquidating trust" for U.S. federal income tax purposes under [Treasury Regulation section 301.7701-4(d)], or any successor provision thereof];

(g)    exercise investment power beyond what is provided in Section 3.9 hereof;

(h)    [receive or retain any operating assets of an operating business, any interests in an entity treated as disregarded from its owner for U.S. federal income tax purposes, any interests in an entity treated as a partnership for U.S. federal income tax purposes, or 50% or more of the stock (by either vote or value) of any entity treated as a corporation for U.S. federal income tax purposes, except as is necessary or required under the Plan, the Confirmation Order, or this Agreement; <u>provided</u>, <u>however</u>, that in no event shall the Litigation Trustee receive or retain any such asset or interest that would jeopardize treatment of the Litigation Trust as a "liquidating trust" for U.S. federal income tax purposes under Treasury Regulation section 301.7701-4(d) or any successor provision thereof]; or

(i)    [take any other action or engage in any investments or activities that would jeopardize treatment of the Litigation Trust as a liquidating trust for U.S. federal income tax purposes under [Treasury Regulation section 301.7701-4(d)], or any successor provision thereof].

3.11    <u>Books and Records</u>. The Litigation Trustee shall maintain good and sufficient books and records of account relating to the Litigation Trust Assets, the management thereof, all transactions undertaken by the Litigation Trustee, all expenses incurred by or on behalf

of the Litigation Trustee, and all distributions to Litigation Trust Beneficiaries contemplated or effectuated under the Plan, in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof and in accordance with Delaware law. The Litigation Trustee shall also maintain separate books and records for the Litigation Trust Assets of each Debtor. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Litigation Trust. Nothing in this Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust or as a condition for managing any payment or distribution out of the Litigation Trust Assets.

3.12    Periodic Reports.

(a)    Financial and Status Reports. The fiscal year of the Litigation Trust shall be the calendar year. Within [_____] days after the end of each calendar year during the term of the Litigation Trust, and within [_____] days after the end of each calendar quarter during the term of the Litigation Trust and as soon as practicable upon termination of the Litigation Trust, the Litigation Trustee shall make available upon request to the Litigation Trust Advisory Board appearing on its records as of the end of such period or such date of termination a written report including: (i) financial statements of the Litigation Trust for such period, and, if the end of a calendar year, a report (which may be prepared by an independent certified public accountant employed by the Litigation Trustee) reflecting the result of such agreed-upon procedures relating to the financial accounting administration of the Litigation Trust as proposed by the Litigation Trustee; (ii) a summary description of any action taken by the Litigation Trust that, in the judgment of the Litigation Trustee, materially affects the Litigation Trust and of which notice has not previously been given to the Litigation Trust Beneficiaries; and (iii) a description of the progress of liquidating Litigation Trust Assets and making distributions to the Litigation Trust Beneficiaries and any other material information relating to the Litigation Trust Assets and the administration of the Litigation Trust. In addition, the Litigation Trustee shall provide unaudited financial statements to the Litigation Trust Advisory Board on a quarterly basis. The Litigation Trustee may not post any such report on any website maintained by the Litigation Trustee or otherwise due to the confidential nature of such reports and the information contained therein. Any reports to be filed with the Bankruptcy Court shall be filed under seal due to the confidential nature of such reports and the information contained therein.

(b)    Status Reports. The Litigation Trustee will prepare and make available to Litigation Trust Beneficiaries and the Litigation Trust Advisory Board, on a [_____] basis, a written report detailing, among other things, the litigation status of the Litigation Trust Causes of Action, any settlements entered into by the Litigation Trust, the proceeds recovered to date from the Litigation Trust Assets, and the distributions made by the Litigation Trust.

(c)    Annual Plan and Budget. Upon Direction by the Litigation Trust Advisory Board, the Litigation Trustee shall prepare and submit to the Litigation Trust Advisory Board for approval a plan and budget in such detail as is reasonably requested.

3.13    Independent Litigation Trustee. The Litigation Trustee may not be a Member of the Litigation Trust Advisory Board.

3.14    <u>Litigation Trustee's Compensation and Reimbursement</u>.

(a)    <u>Compensation</u>. The Litigation Trustee shall receive reasonable compensation as provided on **Exhibit D** attached hereto.

(b)    <u>Payment of Expenses</u>. All actual, reasonable, and documented out-of-pocket expenses incurred by the Litigation Trustee in connection with the performance of its duties hereunder or under the Confirmation Order or the Plan shall be eligible for reimbursement from the Litigation Trust Fund. The expenses payable to the Litigation Trustee shall be subject to review and approval by the Litigation Trust Advisory Board and paid to the Litigation Trustee without necessity for review or approval by the Bankruptcy Court or any other Person.

3.15    <u>Resignation</u>. The Litigation Trustee may resign by giving not less than ninety (90) days' prior written notice thereof to the Litigation Trust Advisory Board. Such resignation shall become effective on the later to occur of: (a) the day specified in such notice; and (b) the appointment of a successor as provided herein and the acceptance by such successor of such appointment. If a successor Litigation Trustee is not appointed or does not accept its appointment within ninety (90) days following delivery of notice of resignation, the Litigation Trustee may file a motion with the Bankruptcy Court, upon notice and a hearing, for the appointment of a successor Litigation Trustee, during which time the Litigation Trustee shall be entitled to receive the fees provided for in Section 3.14 hereof. Notwithstanding the foregoing, upon the Termination Date (as defined in Section 8.1 below), the Litigation Trustee shall be deemed to have resigned, except as otherwise provided in Section 8.2 hereof.

3.16    <u>Removal</u>. (a) The Litigation Trustee may be removed by the Litigation Trust Advisory Board for Cause (as defined in Section 5.7 hereof), immediately upon notice thereof, or without Cause, upon thirty (30) days' prior written notice.

(b)    Notwithstanding the foregoing, the Litigation Trustee will continue to serve as the Litigation Trustee after his removal until the earlier of (i) the time when appointment of a successor Litigation Trustee becomes effective in accordance with Section 3.18 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.17    <u>Interim Trustee</u>. In the event of any period in which there is a vacancy in the position of Litigation Trustee, the Litigation Trust Advisory Board shall appoint one of its members to serve as interim Litigation Trustee (the "<u>Interim Trustee</u>"). The Interim Trustee shall be subject to all the terms and conditions applicable to a Litigation Trustee hereunder. Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a member of the Litigation Trust Advisory Board merely by such Person's appointment as Interim Trustee.

3.18    <u>Appointment of Successor Litigation Trustee</u>. In the event of the death (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of the Litigation Trustee that is not a natural person), resignation, incompetency, or removal of the Litigation Trustee, the Litigation Trust Advisory Board shall designate a successor Litigation Trustee by majority vote. If the Litigation Trust Advisory Board is unable to secure a majority vote, one or more Members of the Litigation Trust Advisory Board may file a motion with the Bankruptcy

Court, upon notice and a hearing, for the appointment of a successor Litigation Trustee. Any such appointment shall specify the date on which such appointment shall be effective. Every successor Litigation Trustee appointed hereunder shall execute, acknowledge, and deliver to the Litigation Trust Advisory Board an instrument accepting the appointment under this Agreement and agreeing to be bound as Litigation Trustee thereto, and thereupon the successor Litigation Trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring Litigation Trustee. The successor Litigation Trustee shall not be personally liable for any act or omission of the predecessor Litigation Trustee.

3.19    Effect of Resignation or Removal. The death, dissolution, bankruptcy, resignation, incompetency, incapacity, or removal of the Litigation Trustee, as applicable, shall not operate to terminate the Litigation Trust created by this Agreement or to revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Litigation Trustee or any prior Litigation Trustee. In the event of the resignation or removal of the Litigation Trustee, such Litigation Trustee will promptly (a) execute and deliver such documents, instruments, and other writings as may be ordered by the Bankruptcy Court or reasonably requested by Litigation Trust Advisory Board or the successor Litigation Trustee to effect the termination of such Litigation Trustee's capacity under this Agreement; (b) deliver to the Litigation Trust Advisory Board and/or the successor Litigation Trustee all documents, instruments, records, and other writings related to the Litigation Trust as may be in the possession of such Litigation Trustee (provided, however, that such Litigation Trustee may retain one copy of such documents for archival purposes); and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Litigation Trustee. A Litigation Trustee that has resigned or been removed shall promptly execute and deliver an instrument or instruments conveying and transferring to such successor Litigation Trustee all the estates, properties, rights, powers, and trusts of such predecessor Litigation Trustee and otherwise assist and cooperate, without cost or expense to the predecessor Litigation Trustee, in effectuating the assumption of its obligations and functions by the successor Litigation Trustee.

3.20    Confidentiality. The Litigation Trustee shall, during the period that the Litigation Trustee serves as Litigation Trustee under this Agreement and following the termination of this Agreement or following such Litigation Trustee's removal or resignation hereunder, hold strictly confidential and not use for personal gain any non-public information of or pertaining to any Person to which any of the Litigation Trust Assets relates or of which the Litigation Trustee has become aware in the Litigation Trustee's capacity as Litigation Trustee, except as otherwise required by law.

## ARTICLE IV

## DISTRIBUTIONS

4.1    Distributions.

(a)    On any date determined by the Litigation Trustee in consultation with the Litigation Trust Advisory Board, or on any date directed by unanimous consent of the Litigation Trust Advisory Board (any such date upon which a distribution is made, referenced herein as a "Distribution Date"), the Litigation Trustee shall distribute or cause to be distributed to each

Litigation Trust Beneficiary its share of the Litigation Trust Assets, in accordance with this Section 4.1; [provided, however, that the distributions shall be made not less than annually to the extent necessary for the Zohar Litigation Trust to maintain its status as a "liquidating trust" for U.S. federal income tax purposes].

(b)    Timing and Amount of Distributions.  The Litigation Trust Beneficiaries shall receive distributions of proceeds of the Litigation Trust Assets as monetized pursuant to this Agreement that are remaining after payment of amounts in accordance with Section 4.1(c) hereof and funding the Litigation Trust Reserve as required in this Agreement.  For the avoidance of doubt, the Litigation Trustee shall not be deemed to be an "underwriter" in connection with its distribution of any Litigation Trust Assets, as such term is defined in section 1145(b) of the Bankruptcy Code, and no employees, agents, or representatives of the Litigation Trustee shall be deemed to be a "broker-dealer" as such term is defined in the Securities Exchange Act of 1934, as amended, or any rules promulgated thereunder.

(c)    Priority of Distribution of Litigation Trust Assets and Proceeds.  Any Litigation Trust Assets or Litigation Trust Proceeds available for distribution shall be applied as follows: (i) first, to pay or reimburse, as applicable, the reasonable, documented out-of-pocket fees, costs, expenses, and liabilities of the Zohar Litigation Trust, the Litigation Trustee (and any professionals retained by the Litigation Trustee), and the Litigation Trust Advisory Board as provided in this agreement; (ii) second, to fund the Litigation Trust Reserve as set forth in Section 3.7 hereof; and (iii) third, to make distributions to holders of Litigation Trust Interests, which shall be made on a *pro rata* basis.

(d)    Zohar I Indenture Trustee Claims.  Pursuant to the Plan, should the Litigation Trust collect any proceeds or recoveries in relation to Counts XIX, XX, XXI, and XXII of the Zohar-Patriarch Adversary Proceeding, then, after taking into account any amounts and expenses that must be first satisfied or reserved pursuant to the terms of this Agreement, the Zohar I Indenture Trustee shall be entitled to receive, together with the other Trust Beneficiaries, its pro rata share of such proceeds, in an amount sufficient to satisfy in full the Zohar I Indenture Trustee Claim consistent with the terms of the Plan.

(e)    Distribution of Litigation Trust Assets and Proceeds Upon Termination. Promptly upon the complete liquidation of the Litigation Trust Assets, the Litigation Trustee shall distribute any Litigation Trust Assets available for distribution not yet distributed from the Zohar Litigation Trust in the same manner as described in paragraph (c) of this Section 4.1 and in accordance with the terms of this Agreement and the Plan.

(f)    After the settlement or compromise or resolution of any Litigation Trust Causes of Action, or otherwise in advance of any Distribution, the Litigation Trustee shall provide the Litigation Trust Advisory Board with an accounting showing the allocation of any recoveries among those Litigation Trust Causes of Action.

(g)    Distributions of Cash on account of the Litigation Trust Interests shall, to the extent reasonably practicable, be made on the Distribution Date after the net proceeds of the Litigation Trust Causes of Action are received by the Litigation Trust.

(h)     Subject to the requirements of [_____], the Litigation Trustee shall distribute all Cash on hand (including the net income and net proceeds, if any, from any disposition of Litigation Trust Assets, any Cash received on account of or representing proceeds, and treating as Cash for purposes of this Section 4.1(g) and any permitted investments under Section 3.9 hereof).

(i)     The Litigation Trustee shall make or cause to be made distributions to each Litigation Trust Beneficiary (i) through its authorized designee for purposes of distributions to be made under the Plan; or (ii) at its last-known address, as indicated on the Debtors' or Litigation Trust's records as of the applicable Distribution Date (which, subject to Section 2.6 hereof, for each holder of a Litigation Trust Interest shall be deemed to be the address set forth in the Trust Register).

(j)     In the event that any distribution to any Litigation Trust Beneficiary is returned as undeliverable, no distribution to such holder shall be made unless and until the Litigation Trustee has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one-hundred twenty (120) days from date of the attempted undeliverable payment. After such date, all unclaimed distributions shall be distributed on a *pro rata* basis to all Litigation Trust Beneficiaries whose initial distributions were not returned as undeliverable. Nothing contained herein shall require the Litigation Trustee to attempt to locate any holder of a Litigation Trust Interest.

(k)     The Litigation Trustee may, in its reasonable discretion, withhold from amounts otherwise distributable to any Person any and all amounts required to be withheld by any law, regulation, rule, ruling, directive, treaty, or other governmental requirement. Any party issuing any instrument or making any distribution under this Agreement shall comply with all applicable withholding and reporting requirements imposed by any U.S. federal, state, or local tax law or taxing authority, and all distributions under this Agreement shall be subject to any such withholding or reporting requirements.

(l)     Notwithstanding the above, each holder of a Litigation Trust Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any income taxes imposed on such holder by any governmental unit on account of such distribution. Any party issuing any instrument or making any distribution under this Agreement has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations. [The Litigation Trustee may require, as a condition to the receipt of a distribution, that the holder complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder. If the holder fails to comply with such a request within one-hundred twenty (120) days, such distribution shall be deemed an unclaimed distribution and treated in accordance with section 7.2 of the Plan].

(m)     Notwithstanding anything herein to the contrary, the Litigation Trustee shall not be required to make on account of any Litigation Trust Interest (i) partial distributions or payments of fractions of dollars; (ii) partial distributions or payments of fractions of Litigation

Trust Interests; or (iii) a distribution if the amount to be distributed is or has an economic value of less than one hundred dollars ($100.00). Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent distributions. Notwithstanding the foregoing, all Cash shall be distributed in the final distribution of the Litigation Trust.

(n)     Any check issued by the Litigation Trust on account of any Litigation Trust Interest shall be null and void if not negotiated within one-hundred twenty (120) days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Litigation Trustee by the holder of the relevant Allowed Claim with respect to which such check originally was issued. If any holder of an Allowed Claim holding an un-negotiated check does not request reissuance of that check within one year after the date the check was mailed or otherwise delivered to the holder, such holder's claim to such particular check/distribution shall be released, and the holder thereof shall be forever barred, estopped, and enjoined from asserting any Claim against any of the Debtors, the Litigation Trust, or the Litigation Trustee for such particular check/distribution. In such cases, any Cash or Litigation Trust Interests held for payment on account of such Claims shall be property of the Litigation Trust, free of any Claims of such holder with respect thereto. No later than one-hundred twenty (120) days after the issuance of such checks, the Litigation Trustee shall file with the Bankruptcy Court a list of the holders of any un-negotiated checks. Nothing contained herein shall require the Litigation Trustee to attempt to locate any holder of any Litigation Trust Interest.

(o)     For the avoidance of doubt, the Litigation Trust shall have no obligation to pay any amounts in respect of prepetition deductibles or self-insured retention amounts with respect to Claims covered by the Debtors' insurance policies.

**ARTICLE V**

**LITIGATION TRUST ADVISORY BOARD**

5.1     <u>Authority and Responsibilities of Litigation Trust Advisory Board.</u>  (a) The Litigation Trust Advisory Board shall, as and when requested by the Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult in good faith with and advise the Litigation Trustee as to the administration and management of the Litigation Trust in accordance with (i) the Plan, the Confirmation Order, and this Agreement, and (ii) the Litigation Trustee's and the Litigation Trust Advisory Board's fiduciary duties, and shall have the other responsibilities and powers as set forth herein. The Litigation Trust Advisory Board shall have the authority and responsibility to provide Direction with respect to the activities of the Litigation Trust and the performance of the Litigation Trustee and shall have the authority to remove the Litigation Trustee in accordance with Section 3.16 hereof; <u>provided</u>, <u>however</u>, that the Litigation Trust Advisory Board may not (i) provide Direction to the Litigation Trustee or the Members to act inconsistently with their duties under the Plan, the Confirmation Order, this Agreement, or their fiduciary obligations to the Litigation Trust Beneficiaries; [(ii) be authorized to engage in any trade or business; (iii) take any action inconsistent with the orderly liquidation of the assets of the Litigation Trust as is required or contemplated by applicable law, the Confirmation Order, this Agreement, or the Plan; or (iv) be authorized to engage in any investments or activities inconsistent with the

treatment of the Litigation Trust as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and in accordance with Revenue Procedure 94-45, 1994-2 C.B. 684.].

       5.2    <u>Meetings of the Litigation Trust Advisory Board</u>.  Meetings of the Litigation Trust Advisory Board are to be held not less often than quarterly. Special meetings of the Litigation Trust Advisory Board may be held whenever and wherever called for by the Litigation Trustee or any Member; <u>provided</u>, <u>however</u>, that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice being subject to waiver by the Members). Any action required or permitted to be taken by the Litigation Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent by Direction of the Litigation Trust Advisory Board as evidenced by one or more writings describing the action taken, signed by all Members and recorded in the minutes, if any, or other transcript, if any, of proceedings of the Litigation Trust Advisory Board.  Unless the Litigation Trust Advisory Board decides otherwise (which decision shall rest in the reasonable discretion of the Litigation Trust Advisory Board), the Litigation Trustee and the Litigation Trustee's advisors may, but are not required to, attend meetings of the Litigation Trust Advisory Board.

       5.3    <u>Manner of Acting</u>. (a)  All meetings of the Litigation Trust Advisory Board shall consist of all Members. The affirmative vote of a majority of the Members present at a duly called and noticed meeting (on not less than [one week] notice unless such notice is otherwise waived by all Members) at which all Members are present throughout shall be the act of the Litigation Trust Advisory Board except as provided in this Agreement. Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, Zoom, conference telephone or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any Member participating in a meeting by these means is deemed to be present in person at the meeting. Voting (including on negative notice) may, if approved by the Members at a meeting, be conducted by electronic mail or individual communications by each Member.

       5.4    Notwithstanding anything to the contrary herein, if a Member lacks authority to provide Direction to the Litigation Trustee of this Agreement pursuant to Section 5.1 hereof, a meeting of the Litigation Trust Advisory Board may be held with a quorum consisting of those Members who have authority to provide Direction<u>; provided</u>, <u>however</u>, that all Members must be provided notice of and a reasonable opportunity to attend all meetings of the Litigation Trust Advisory Board.

       (a)    Any Member who is present and entitled to vote at a meeting of the Litigation Trust Advisory Board (including any meeting of the Litigation Trustee and the Litigation Trust Advisory Board) when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Litigation Trust Advisory Board, unless: (i) such Member of the Litigation Trust Advisory Board objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Litigation

Trust Advisory Board before its adjournment. The right of dissent or abstention is not available to any Member of the Litigation Trust Advisory Board who votes in favor of the action taken.

(b)    Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member shall report to the Litigation Trust Advisory Board any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue, other than solely as a holder of Litigation Trust Interests). With respect to a Member who, has or may have a conflict of interest whereby such Member's interests are adverse to the interests of the Litigation Trust (a "Conflicted Member"): (i) such Member shall not be entitled to vote or take part in any action with respect to such matter or issue; (ii) the vote or action with respect to such matter or issue shall be undertaken only by Members of the Litigation Trust Advisory Board who are not Conflicted Members; and (iii) notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the Members who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Litigation Trust Advisory Board; provided, however, that a conflict or potential conflict will not exist merely because (i) a Member has an economic interest in, or business or commercial relationship with, the party who appointed that Member, or has an economic interest in the outcome of such matter or issue; or (ii) a Member, or a party who appoints a Member (or one of their affiliates, units, groups, divisions, or desks), in the ordinary course of business has trading, lending, commercial banking, investment banking, asset management, brokerage activities, or other similar relationships with parties who may be the subject of Litigation Trust Causes of Action, provided that appropriate barriers are put in place to protect against the sharing of confidential information and potential conflicts of interest, and to maintain compliance with any applicable securities laws.

5.5    Tenure of the Members of the Litigation Trust Advisory Board. The authority of the Members will be effective as of the Effective Date and will remain and continue in full force and effect until the Litigation Trust is terminated in accordance with Section 8.1 hereof. Each Member will serve until such Member's successor is duly appointed or until such Member's earlier death or resignation pursuant to Section 5.6 below, or removal pursuant to Section 5.7 below.

5.6    Resignation. A Member may resign for any reason, including by giving not less than thirty (30) days' prior written notice thereof to the Litigation Trustee and the other Members. Such resignation shall become effective on the later to occur of: (i) the day specified in such notice; and (ii) the appointment of a successor in accordance with Section 5.8 below. Notwithstanding the foregoing, upon the occurrence of the Termination Date (as defined in Section 8.1 below), all of the Members shall be deemed to have resigned. In the event of a Member resignation that results from a transfer of Litigation Trust Interests pursuant to Section 2.3 hereof, the prior written notice period may be less than the thirty (30) days required herein.

5.7    Removal. A majority of the Litigation Trust Advisory Board may remove any Member for Cause. "Cause" shall mean (i) a Person's willful failure to perform his material duties hereunder (including with respect to a Member or, to the extent applicable, the Litigation Trustee, regular attendance at meetings of the Litigation Trust Advisory Board) that is not

remedied within thirty (30) days' notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his duties hereunder; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

5.8    Appointment of a Successor Member.

(a)    In the event of a vacancy on the Litigation Trust Advisory Board (whether by removal, death or resignation), a new Member may be appointed to fill such position either: (i) by Bardin Hill, in the case of a Bardin Hill Member Representative; or (ii) by MBIA, in the case of an MBIA Member Representative (or any successor Litigation Trust Interest holders thereof as provided in Section 2.3(c) hereof).  The appointment of a successor Member shall be evidenced by the Litigation Trustee's filing with the Bankruptcy Court of a notice of appointment, which notice will include the name, address, and telephone number of the successor Member.

(b)    Immediately upon the appointment of any successor Member, all rights, powers, duties, authority, and privileges of the predecessor Member hereunder will be vested in and undertaken by the successor Member without any further act, and such successor Member will not be liable personally for any act or omission of the predecessor Member.

(c)    Every successor Member appointed hereunder shall execute, acknowledge and deliver to the Litigation Trustee and other Members an instrument accepting the appointment under this Agreement and agreeing to be bound thereto, and thereupon the successor Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring Member.

5.9    Compensation and Reimbursement of Member Expenses.  Each Member shall be compensated from the Litigation Trust Fund for his or her time expended in Litigation Trust matters as provided on **Exhibit E** attached hereto as determined by the Litigation Trust Advisory Board; provided, however, that notwithstanding anything in this Agreement to the contrary, no fees and expenses incurred by any Member of the Litigation Trust Advisory Board shall be reimbursable as to any Member who is simultaneously an employee of either MBIA or Bardin Hill; provided, further, that fees and expenses incurred by any Member of the Litigation Trust Advisory Board who is a third-party designee of either MBIA or Bardin Hill (and not an employee of either MBIA or Bardin Hill) shall not be subject to the immediately preceding limitation on reimbursement.  The compensation of any such Members shall be subject to unanimous approval by the Litigation Trust Advisory Board.  The Litigation Trustee will reimburse the third-party Members entitled to such compensation and reimbursement as set forth herein from the Litigation Trust Fund for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of each of their duties hereunder.

5.10    Confidentiality. Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of

the Litigation Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member, except as otherwise required by law.

## ARTICLE VI

## LIABILITY AND INDEMNIFICATION

6.1     No Further Liability. Each of the Litigation Trustee, the Members, and their representatives shall have no liability for any actions or omissions in accordance with this Agreement or with respect to the Litigation Trust unless arising out of each such Person's own fraud, self-dealing, intentional misrepresentation, willful misconduct, breach of the fiduciary duty of loyalty, or gross negligence. In performing its duties under this Agreement, the Litigation Trustee, the Members and their representatives (as applicable) shall have no liability for any action taken by each such Person in accordance with the advice of counsel, accountants, appraisers, and/or other professionals retained by the Members or the Litigation Trustee.  Without limiting the generality of the foregoing, the Litigation Trustee, the Members and their representatives may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by such Person to be genuine and shall have no liability for actions taken in reliance thereon. None of the provisions of this Agreement shall require the Litigation Trustee, the Members, or their representatives to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers.  Each of the Litigation Trustee, the Members, and their representatives may rely without inquiry upon writings delivered to such Person pursuant to the Plan or the Confirmation Order that such Person reasonably believes to be genuine and to have been properly given. Notwithstanding the foregoing, nothing in this Section 6.1 shall relieve the Litigation Trustee, the Members, or their representatives from any liability for any actions or omissions arising out of such Person's fraud, self-dealing, intentional misrepresentation, willful misconduct, breach of the fiduciary duty of loyalty, or gross negligence. Any action taken or omitted to be taken in the case of the Litigation Trustee or the Litigation Trust Advisory Board with the express approval of the Bankruptcy Court will conclusively be deemed not to constitute fraud, self-dealing, intentional misrepresentation, willful misconduct, breach of fiduciary duty, or gross negligence. No termination of this Agreement or amendment, modification, or repeal of this Section 6.1 shall adversely affect any right or protection of the Litigation Trustee, the Members of the Litigation Trust Advisory Board, or their respective designees, professional agents, or representatives that exist at the time of such amendment, modification, or repeal.

6.2     Indemnification of the Litigation Trustee and Litigation Trust Advisory Board. (a)  From and after the Effective Date, each of the Litigation Trustee, the Litigation Trust, and the Litigation Trust Advisory Board and its Members (each, a "Litigation Trust Indemnified Party" and collectively, the "Litigation Trust Indemnified Parties") shall be, and hereby is, indemnified by the Litigation Trust, to the fullest extent permitted by applicable law, from and against any and all Claims, debts, dues, accounts, actions, suits, Litigation Trust Causes of Action, bonds, covenants, judgments, damages, attorneys' fees, defense costs, and other assertions of liability arising out of any such Litigation Trust Indemnified Party's exercise of what such Litigation Trust Indemnified Party reasonably understands to be its powers or the discharge of what such Litigation Trust Indemnified Party reasonably understands to be its duties conferred by

the Plan, the Confirmation Order, or this Agreement, any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent ultimately determined by a Final Order to be due to such Litigation Trust Indemnified Party's own fraud, self-dealing, intentional misrepresentation, willful misconduct, gross negligence, or breach of the fiduciary duty of loyalty on and after the Effective Date). The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, arising from, based on, or in any way related to: (i) this Agreement; (ii) the services to be rendered pursuant to this Agreement; (iii) any document or information, whether oral or written, referred to herein or supplied to the Litigation Trustee; or (iv) proceedings against any Litigation Trust Assets by or on behalf of any creditor. The Litigation Trustee shall, on demand, advance or pay promptly, at the election of the Litigation Trust Indemnified Party, solely out of the Litigation Trust Assets, on behalf of each Litigation Trust Indemnified Party, attorneys' fees and other expenses and disbursements to which such Litigation Trust Indemnified Party would be entitled pursuant to the foregoing indemnification provision; provided, however, that any Litigation Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines, by Final Order, that such Litigation Trust Indemnified Party is not entitled to indemnification hereunder due to such Person's own fraud, self-dealing, intentional misrepresentation, willful misconduct, gross negligence, or breach of the fiduciary duty of loyalty. Any indemnification Claim of a Litigation Trust Indemnified Party shall be entitled to a priority distribution from the Litigation Trust Assets, ahead of the Litigation Trust Interests and any other Claim to or Interest in such assets. In any matter covered by the first two sentences of this subsection, any party entitled to indemnification shall have the right to employ such party's own separate counsel, at the Litigation Trust's expense, subject to the foregoing terms and conditions. In addition, the Litigation Trustee shall purchase insurance coverage, including liability insurance covering the Litigation Trustee using funds from the Litigation Trust Assets for the benefit of the Litigation Trustee. The indemnification provided under this Section 6.2 shall survive the death, dissolution, resignation, or removal, as may be applicable, of the Litigation Trustee, the Litigation Trust Advisory Board, any Member, or any other Litigation Trust Indemnified Party and shall inure to the benefit of the Litigation Trustee's, each Member, and each other Litigation Trust Indemnified Party's respective heirs, successors, and assigns.

(b)     The foregoing indemnity in respect of any Litigation Trust Indemnified Party shall survive the termination of such Litigation Trust Indemnified Party from the capacity for which such party is indemnified. Termination or modification of this Agreement shall not affect any indemnification rights or obligations set forth herein.

(c)     The Litigation Trustee may, at the Direction of the Litigation Trust Advisory Board, indemnify any Person who is not a Litigation Trust Indemnified Party for any loss, cost, damage, expense, or liability for which a Litigation Trust Indemnified Party would be entitled to mandatory indemnification under this Section 6.2.

(d)     Any Litigation Trust Indemnified Party may waive the benefits of indemnification under this Section 6.2, but only by an instrument in writing executed by such Litigation Trust Indemnified Party.

(e)     The rights to indemnification under this Section 6.2 are not exclusive of other rights which any Litigation Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.  Nothing in this Section will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party. For the avoidance of doubt, each Litigation Trust Indemnified Party shall be entitled, subject to the terms hereof, to indemnification for any costs and attorneys' fees such Litigation Trust Indemnified Party may incur in connection with enforcing any of its rights under this Article VI.

6.3     <u>Litigation Trust Liabilities</u>. All liabilities of the Litigation Trust, including indemnity obligations under Section 6.2 of this Agreement, will be liabilities of the Litigation Trust as an Entity and will be paid or satisfied from the Litigation Trust Assets and paid on a priority basis. No liability of the Litigation Trust will be payable in whole or in part by any Litigation Trust Beneficiary individually or in the Litigation Trust Beneficiary's capacity as a Litigation Trust Beneficiary, by the Litigation Trustee individually or in the Litigation Trustee's capacity as Litigation Trustee, by any Member individually or in the Member's capacity as Member, or by any representative, member, partner, shareholder, director, officer, professional, employees, agent, affiliate, or advisor of any Litigation Trust Beneficiary, any Member, the Litigation Trustee, or their respective affiliates.

6.4     <u>Limitation of Liability</u>. None of the Litigation Trust Indemnified Parties shall be liable for indirect, punitive, exemplary, consequential, special, or other damages for a breach of this Agreement under any circumstances.

6.5     <u>Burden of Proof</u>. In making a determination with respect to entitlement to exculpation or indemnification hereunder, the court, Person, or Entity making such determination shall presume that any Litigation Trust Indemnified Party is entitled to exculpation and indemnification under this Agreement and any Person seeking to overcome such presumption shall have the burden of proof to overcome that presumption.

## ARTICLE VII

## TAX MATTERS

7.1     [To Be Updated]

## ARTICLE VIII

## TERMINATION OF LITIGATION TRUST

8.1     <u>Termination</u>.  The Litigation Trust Advisory Board and the Litigation Trust shall be dissolved at such time as (i) all of the Litigation Trust Assets have been distributed pursuant to the Plan and this Agreement; or (ii) the Litigation Trust Advisory Board determines that the administration of any remaining Litigation Trust Assets is not likely to yield sufficient additional Litigation Trust proceeds to justify further pursuit; [provided, however, that in no event shall the Litigation Trust be dissolved later than five (5) years from the Effective Date. The Bankruptcy Court, upon motion by the Litigation Trustee, on notice with an opportunity for hearing,

within six (6) months before the expiration of the original term or any extended term, may extend, for a fixed period, the term of the Litigation Trust if it is necessary to facilitate or complete the liquidation of the assets of the Litigation Trust, and not unduly extend the term of the Litigation Trust; [provided, however, the Litigation Trustee must receive a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Litigation Trustee and the Litigation Trust Advisory Board that any extension would not adversely affect the status of the Litigation Trust as a "liquidating trust" for U.S. federal income tax purposes. The Bankruptcy Court may approve multiple extensions of the term of the Litigation Trust.][7] If at any time the Litigation Trust Advisory Board determines, in reliance upon such professionals as the Litigation Trust Advisory Board may retain, that the expense of administering the Litigation Trust so as to make a final distribution to the Litigation Trust Beneficiaries is likely to exceed the value of the assets remaining in the Litigation Trust, the Litigation Trustee, at the Direction of the Litigation Trust Advisory Board, may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the Litigation Trust; (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from U.S. federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC, and that is unrelated to the Debtors, the Litigation Trust, and any insider of the Litigation Trustee; and (iii) dissolve the Litigation Trust. Such date upon which the Litigation Trust shall finally be dissolved shall be referred to herein as the "Termination Date."]

(a)     Notwithstanding the foregoing, multiple extensions can be effectuated as long as the Litigation Trust Advisory Board determines that each such extension is necessary at least [ninety (90)] days prior to the expiration of each extended term; provided, however, that in no event shall the term of the Litigation Trust extend past [____]years from the Effective Date.

8.2     Continuance of Litigation Trust for Winding Up.  After the termination of the Litigation Trust and solely for the purpose of liquidating and winding up the affairs of the Litigation Trust, the Litigation Trustee shall continue to act as such until its duties have been fully performed and shall continue to be entitled to receive the fees called for by Section 3.14 hereof. Upon distribution of all the Litigation Trust Assets, the Litigation Trustee shall retain the books, records, and files that shall have been delivered or created by the Litigation Trustee. At the Litigation Trust Advisory Board's discretion, all of such records and documents may be destroyed no earlier than two years following the date of final distribution of Litigation Trust Assets as the Litigation Trust Advisory Board deems appropriate (unless such records and documents are necessary to fulfill the Litigation Trustee's obligations hereunder) subject to the terms of any joint prosecution and common interest agreement(s) to which the Litigation Trustee may be a party. Except as otherwise specifically provided herein, upon the final distribution of Litigation Trust Assets, the Litigation Trustee shall be deemed discharged and have no further duties or obligations hereunder, except to account to the Litigation Trust Beneficiaries as provided herein, the Litigation Trust Interests shall be cancelled, and the Litigation Trust will be deemed to have dissolved.

---

[7] NTD: Subject to confirmation of tax treatment.

## ARTICLE IX

## AMENDMENT AND WAIVER

9.1    Amendment.    This Agreement may from time to time be amended, supplemented, or modified without the approval of the Bankruptcy Court by (x) a majority of the Litigation Trust Advisory Board or (y) the Litigation Trustee, at the Direction of the Litigation Trust Advisory Board; provided, however, that no such amendment, supplement, or modification shall: [(a) adversely affect the payments and/or distributions to be made under this Agreement; (b) adversely affect the U.S. federal income tax status of the Litigation Trust as a "liquidating trust"; (c) would be inconsistent with the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Litigation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d); or (d) negate any fiduciary obligations established in this Agreement].

9.2    Waiver.    No failure by the Litigation Trust or the Litigation Trustee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1    Governing Law.    This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without reference to principles of conflicts of law thereof).

10.2    Jurisdiction.    The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over disputes arising out of the formation or implementation of the Litigation Trust Agreement or the transfer of the Litigation Trust Assets to the Litigation Trust on the Effective Date; provided, however, that notwithstanding the foregoing, the Litigation Trustee, at the Direction of the Litigation Trust Advisory Board, shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any of the Litigation Trust Causes of Action.   For the avoidance of doubt, nothing in Article XII of the Plan shall be deemed to confer a broader grant of jurisdiction on the Bankruptcy Court than that set forth in this Section 10.2.

10.3    Dispute Resolution.    In the event of any dispute between the Litigation Trustee, the Litigation Trust Beneficiaries, and/or the Litigation Trust Advisory Board with respect to (a) the allocation of Litigation Trust Interests pursuant to Section 2.1(b) hereof or (b) the making of distributions by the Litigation Trustee pursuant to Article IV hereof (the occurrence of either (a) or (b) being referred to herein as a "Dispute"), the Parties hereby agree that any such Dispute shall be resolved by referral of such Dispute to mediation for resolution thereof.

10.4    Reimbursement of Fees and Costs.    In any action or proceeding initiated by a Litigation Trust Beneficiary against (a) the Litigation Trustee or (b) any other current or former fiduciary of the Litigation Trust, the prevailing party in any such action or proceeding shall be

entitled to reimbursement of its incurred attorneys' fees and other costs from the non-prevailing party in such action or proceeding.

        10.5   <u>Severability</u>. In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

        10.6   <u>Notices</u>. Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally, by facsimile, by electronic communication, or by nationally recognized overnight delivery service or mailed by first-class mail. The date of receipt of such notice shall be the earliest of (a) the date of actual receipt by the receiving party; (b) the date of personal delivery (or refusal upon presentation for delivery); (c) the date of the transmission confirmation; or (d) three (3) Business Days after service by first-class mail, to the receiving party's below address(es):

        (i)     if to the Litigation Trustee, to:

        [_____]
        [_____]
        [_____]
        Attn: [_____]
        E-mail: [_____]

        With a copy to:

        [_____]
        [_____]
        [_____]
        Attn: [_____]
        E-mail: [_____]

        (ii)    if to any Litigation Trust Beneficiary, (i) to its authorized designee for purposes of distributions to be made under the Plan; or (ii) to its last-known address according to the Litigation Trustee's records;

        (iii)    if to the Litigation Trust Advisory Board, to:

        [_____]
        [_____]
        [_____]
        Attn: [_____]
        E-mail: [_____]

With a copy to:

[_____]
[_____]
[_____]
Attn: [_____]
E-mail: [_____]

(iv)    if to the Debtors, to:

YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Attn: Mike Nestor and Ryan M. Bartley
E-mail: mnestor@ycst.com; rbartley@ycst.com

*Counsel to the Debtors*

10.7    <u>Headings</u>. The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

10.8    <u>Entire Agreement</u>. This Agreement and the exhibits attached hereto contain the entire agreement between the Parties and supersede all prior and contemporaneous agreements or understandings between the Parties with respect to the subject matter hereof.

10.9    <u>Meanings of Other Terms</u>. Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa, and words importing persons shall include firms, associations, corporations, and other entities. All references herein to Articles, Sections, and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute, or regulation, refer to the corresponding Articles, Sections, and other subdivisions of this Agreement, and the words "herein," "hereof," or "herewith" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement. The term "including" shall mean "including, without limitation."

10.10   <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute one and the same instrument. A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

10.11   [<u>Intention of Parties to Establish a Liquidating Trust</u>. This Agreement is intended to create a "liquidating trust" for U.S. federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity

herein shall be construed consistent herewith and, if necessary, this Agreement may be amended in accordance with Section 9.1 hereof to comply with such U.S. federal income tax laws, which amendments may apply retroactively.]

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives, or agents, effective as of the date first above written.

| | |
|---|---|
| [DEBTORS]<br><br>By:<br>Name:<br>Title: | [LITIGATION TRUSTEE], as Litigation Trustee<br><br>By:<br>Name:<br>Title: |
| [MEMBER], as MBIA Member Representative<br><br>By:<br>Name:<br>Title: | [ZOHAR II RECOVERY LLC]<br><br>By:<br>Name:<br>Title: |
| [MEMBER], as MBIA Member Representative<br><br>By:<br>Name:<br>Title: | [ZOHAR III RECOVERY LLC]<br><br>By:<br>Name:<br>Title: |
| [MEMBER], as Bardin Hill Member Representative<br><br>By:<br>Name:<br>Title: | |
| | |

## EXHIBIT A

**Allocation of Litigation Trust Interests to Litigation Trust Beneficiaries**

| Litigation Trust Beneficiary | Allocation of Litigation Trust Interests |
|---|---|
| [Zohar III Recovery LLC on account of] Holders of Class 3 Zohar III A-1 Note Claims | [To Be Inserted] |
| [Zohar II Recovery LLC on account of] Holders of Class 10 Zohar II Credit Enhancement Claims | [To Be Inserted] |

## **EXHIBIT B**

### **Funding of Litigation Trust Fund**

[To Be Inserted]

## **EXHIBIT C**

**Initial Members of the Litigation Trust Advisory Board**

| Name | Representative |
|---|---|
| [To Be Inserted] | MBIA Member Representative |
| [To Be Inserted] | MBIA Member Representative |
| [To Be Inserted] | Bardin Hill Member Representative |

## **EXHIBIT D**

### **Compensation of Litigation Trustee**

| Professional | Compensation |
|---|---|
| [To Be Inserted] | |
| | |
| | |
| | |
| | |

## EXHIBIT E

**Compensation and Reimbursement of Expenses
of Litigation Trust Advisory Board**

**Fees**

[To Be Inserted]

**Expenses**

[To Be Inserted]

**[EXHIBIT F**

**Litigation Trust Interest Transfer Form**

[To Be Inserted]

[To be updated/revised as necessary.]

## Schedule 1

**Litigation Trust Causes of Action**

In accordance with, inter alia, sections 6.1(b), 6.1(c), 6.1(d), and 6.8(a) of the Plan, the Litigation Trust Causes of Action shall include, without limitation, the following claims and causes of action, as well as any additional claims and causes of action or Litigation Assets that may be assigned by any party to the Litigation Trust for the benefit of the Litigation Trust Beneficiaries. :

| | Litigation Trust Causes of Action |
|---|---|
| | All "avoidance Actions asserted in Counts XIX, XX, XXI, and XXII of the Zohar-Patriarch Adversary Proceeding[.]" <u>See</u> Plan, §6.1(b). |
| | All "actions where Zohar II is the Plaintiff (or movant as applicable)." <u>See</u> Plan, §6.1(c). |
| | All "actions where Zohar III is the Plaintiff (or movant as applicable)." <u>See</u> Plan, §6.1(d). |
| | All "(i) pending matters including, but not limited to, motions, contested matters and adversary proceedings in the Bankruptcy Court; and (ii) with respect to any Causes of Action pending before the Bankruptcy Court or any other court, other than as expressly provided for in Section 6.1(b) with respect to Zohar I." <u>See</u> Plan, §6.8(a). |
| | All Litigation Assets (as such term is defined in the Plan). |

**<u>Schedule 2</u>**

**Excluded Claims**

[To Be Inserted]

***<u>Exhibit I - Escrow Account Funding</u>***

| Zohar - Illustrative Post-Emergence Escrow Accounts Summary | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | Estate Expenses | | | Allocation of Total | |
| # | Account | Purpose | Amount of Funding | Source of Funding | Total | Zohar II | Zohar III |
| 1 | **Administrative and Priority Claims Escrow Accounts (with sub-accounts for Zohar I, Zohar II and Zohar III)** | Payment of all Allowed Administrative and Priority Claims (other than Professional Claims) against Zohar II and Zohar III | As estimated by Zohar I, Zohar II and Zohar III, based on the respective Claims asserted against them | Zohar II (for itself and Zohar I) and Zohar III (solely for itself) | $ 634,493 | To be determined | To be determined |
| 2 | **D&O Indemnity Escrow Account** | Payment of any indemnification obligations owed to the Independent Director, CROs and CMO | As determined by the Debtors, in consultation with the Controlling Party and Controlling Class | Zohar II and Zohar III, based on the Case Expense Allocation | To be determined | To be determined | To be determined |
| 3 | **Professional Claims Escrow Account** | Payment of all Allowed Professional Fees | The Professional Claims Escrow Amount | Zohar II and Zohar III, based on the Case Expense Allocation | To be determined | To be determined | To be determined |
| 4 | **Retained Claims Escrow** | To be held pursuant to the Sale Orders with respect to any Retained Claim Actions (as defined in the Sale Orders) | $825,000 | Zohar II and Zohar III, based on the Case Expense Allocation | 825,000 | 453,750 | 371,250 |
| 5 | **Wind-Down Funding Escrow Account** | Wind-Down Expenses | As determined by the Debtors, in consultation with the Controlling Party and Controlling Class | Zohar II and Zohar III, based on the Case Expense Allocation | To be determined | To be determined | To be determined |
| 6 | **Litigation Trust Bank Account(s)** | Expenses of the Litigation Trust(s) and Litigation Trustee(s) | As determined by the Debtors, in consultation with the Controlling Party and Controlling Class | To be determined | To be determined | To be determined | To be determined |
| 7 | **Asset Recovery Entity Bank Accounts** | Expenses of the applicable Asset Recovery Entity and Asset Recovery Manager | As determined by the Debtors, in consultation with the Controlling Party and Controlling Class | To be determined | 500,000 | 250,000 | 250,000 |

### _Exhibit J -- Form of D&O Indemnity Escrow Agreement_

*(Document to be provided in Amendment to Plan Supplement)*

### *Exhibit K - Form of Organizational Documents for New Stila Holdco LLC*

## LIMITED LIABILITY COMPANY AGREEMENT
## OF
## [NEW STILA HOLDCO LLC]

THIS LIMITED LIABILITY COMPANY AGREEMENT ("Agreement") is dated as of the [●] day of [●], 2022, and entered into by [Zohar III Recovery LLC] (the "Member"), and shall be binding upon such other individuals and members as may be added pursuant to the terms of this Agreement.  For purposes of this Agreement, "Plan" shall mean [●]. For purposes of this Agreement "Confirmation Order" shall mean [●].

       1.     Formation Of The Company.  By execution of this Agreement, the Member ratifies and confirms the action of [●], as an "authorized person" of the Company within the meaning of the Delaware Limited Liability Company Act, 6 Del. C. § 18-101, et seq. (the "Act"), filing a certificate of formation (the "Certificate") with the Secretary of State of the State of Delaware for the purpose of forming [New Stila Holdco LLC] (the "Company"), a limited liability company formed under the Act. Upon the filing of the Certificate [his/her] powers as an authorized person of the Company within the meaning of the Act ceased and the Manager (as defined below) thereupon became an "authorized person" within the meaning of the Act.

       2.     Name Of The Company.  The name of the company to be stated in the Certificate and the limited liability company governed by this Agreement shall be "[New Stila Holdco LLC]."

       3.     Purpose.  This Company is formed for the purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to the foregoing.  Notwithstanding anything to the contrary in the preceding sentence, the Company and the Manager shall discharge the obligations imposed on the Company, as an "Asset Recovery Entity" under and as defined in the Plan, and on the Manager, as an "Asset Recovery Manager" under and as defined in the Plan.

       4.     Registered Office; Registered Agent.  The address of the registered office of the Company in the State of Delaware is [●].  The registered agent for service of process maintained at such address is [●].

       5.     Capital Contributions By The Members.  In consideration for their limited liability company interests in the Company, each Member has or will contribute a sum set forth in the books and records of the Company.  Except for the foregoing consideration, no Member shall be obligated to make capital contributions to the Company and all limited liability company interests in the Company held by the Members shall be nonassessable.

29336469.2

6.    <u>Distributions</u>.  To the extent the Company may lawfully do so, it is intended that the Company shall make pro rata distributions of its assets  to the Members as determined by the Manager as expeditiously as possible.

7.    <u>Appointment and Removal of Manager</u>.

a.    At any time, and from time to time, one or more individuals or entities may be elected to manage the Company (the "<u>Manager</u>").  A Manager need not be a member or resident of the State of Delaware.  The Manager shall be responsible for any and all such duties as conferred upon the Manager as in this Agreement.

b.    [●][1] shall be appointed as initial Manager of the Company. The initial compensation of the Manager shall be as set forth on <u>Exhibit B</u> attached to this Agreement.

c.    A Manager (whether an initial or a successor Manager) shall cease to be a Manager upon the earlier of (i) such Manager's resignation or (ii) such Manager's removal pursuant to the affirmative vote of the Members holding greater than fifty percent (50%) of the limited liability company interests in the Company (the "<u>Vote of a Majority of the Members</u>").

d.    Any vacancy in the Manager position, whether occurring as a result of a Manager resigning or being removed, may be filled by appointment of a successor by (i) the Vote of a Majority of the Members or (ii) if there is no Vote of a Majority of the Members within fourteen (14) days of a vacancy, the entry of an order of the United States Bankruptcy Court for the District of Delaware obtained upon motion of any Member that provides the other Members not less than fourteen (14) days' notice.

8.    <u>Management Powers of the Manager</u>.    Except for powers specifically reserved to the members by this Agreement (if any) or by non-waivable provisions of applicable law, as provided herein, the Company shall be managed by the Manager as an authorized agent of the Company.  The Manager shall have the full, exclusive, and absolute right, power, and authority to manage and control the Company and the property, assets, and business thereof.  Subject to the restrictions specifically contained in this Agreement, the Manager may make all decisions and take all actions for the Company not otherwise provided for in this Agreement.  Any person dealing with the Company, other than a member, may rely upon the authority of the Manager or any officer designated in writing as such by the Manager in accordance with <u>Section 9</u> (if any) in taking any action in the name of the Company without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action actually is taken in accordance with the provisions of this Agreement.  Notwithstanding anything to the contrary contained in this Agreement or otherwise applicable provision of law or equity, to the maximum extent permitted by the Act, the Manager shall owe no duties (including

---

[1] The Manager shall be the individual or entity disclosed in the Plan Supplement and approved by the Bankruptcy Court in the Confirmation Order.

fiduciary duties) to the Company or the Members; provided however that a Manager shall have the duty to act in accordance with the implied contractual covenant of good faith and fair dealing. Notwithstanding anything to the contrary contained in this Agreement or otherwise applicable provision of law or equity, to the maximum extent permitted by the Act, no Manager shall be liable to the Company or any Member for breach of this Agreement or any duty (including any fiduciary duty); provided that such Member or Manager may be liable to the Company or any other Member for any act or omission that constitutes a bad faith violation of the implied covenant of good faith and fair dealing

9.    Officers.  The Manager may, from time to time, delegate to one or more persons such authority and duties as the Manager may deem advisable.  In addition, the Manager may assign, in writing, titles to any person, including, without limitation, the titles of President, Vice President, Secretary, Assistant Secretary, Treasurer, and Assistant Treasurer.  Unless the Manager decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authority and duties that are normally associated with that office, subject to any specific delegation of authority and duties made pursuant to the first sentence of this Section 9.  Any number of titles may be held by the same person.  Each officer shall hold office until his successor shall be duly designated and shall qualify or until his death, until he shall resign, or until he shall have been removed in the manner hereinafter provided.  Any number of offices may be held by the same person.  The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed by the Manager.  Any delegation pursuant to this Section 9 may be revoked at any time by the Manager.  Any officer may resign as such at any time.  Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time be specified, at the time of its receipt by the Manager.  The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation.  Any officer may be removed as such, either with or without cause, by the Manager whenever, in his judgment, the best interests of the Company will be served thereby; provided, however, that such removal shall be without prejudice to the contract rights, if any, of the person so removed.  Designation of any officer shall not of itself create contract rights.  Any vacancy occurring in any office of the Company (other than a Manager) may be filled by the Manager.

10.    Exculpation; Indemnification.  To the fullest extent permitted by the Act, or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification, no present or former Manager of the Company, no present or former Member of the Company, or present or former officer of the Company shall be personally liable to the Company or any Member for or with respect to any acts or omissions in the performance of his or her duties as a Manager, Member or officer of the Company.  The Company shall indemnify, to the fullest extent permitted by the Act (or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification), each person who is or was or had agreed to become a Manager, Member or officer of the Company, or each such person who is or was serving or who had agreed to serve at the request of the Manager, Members or an officer of the Company as an employee or agent of the Company or as a manager, director, officer, employee or agent

3

of another corporation, partnership, joint venture, trust or other enterprise (including the heirs, executors, administrators or estate of such person) (collectively, the "Covered Persons"). Without limiting the generality or the effect of the foregoing, the Company may enter into one or more agreements with any person or entity which provide for indemnification greater or different than that provided in this Section 10. Any repeal or modification of this Section 10 shall not adversely affect any right or protection existing hereunder immediately prior to such repeal or modification.

11.    Dissolution. The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (a) the unanimous written consent of the Members, or (b) the entry of a decree of judicial dissolution under § 18-802 of the Act.

12.    Authority of Members. Unless authorized to do so by this Agreement or by the Manager, no member, agent, or employee of the Company shall have any power or authority to bind the Company in any way, to pledge its credit, or to render it liable pecuniarily for any purpose; provided, however, that the Manager may act by a duly authorized attorney-in-fact.

13.    Limitations On Authority. The authority of the Manager over the conduct of the affairs of the Company shall be subject only to such limitations as are expressly stated in this Agreement or in the Act.

14.    Transferability of Interests. A member may not assign in whole or in part its limited liability company interest in the Company without the consent of the Manager, not to be unreasonably withheld, and [*][3] and provided that the transferee of any limited liability company interest in the Company shall be bound by the terms of this Agreement. Notwithstanding the foregoing, there shall be no transfer of any limited liability company interest if such transfer directly or indirectly would cause the termination of the Company for state law or federal or state tax purposes or violate the then applicable U.S. federal or state securities laws or rules and regulations. The Manager may, in is reasonable discretion, require a member proposing to transfer its limited liability company interest in the Company to provide an opinion of counsel in a form reasonably acceptable to the Manager that the proposed transfer of such member's limited liability company interest in the Company shall not violate the immediately preceeding sentence.

15.    Admission of Additional Members.

a.      The Manager shall update Exhibit A hereto from time to time to reflect the identification of Holders of Zohar III A-1 Note Claims that are identified subsequent to the Effective Date and are entitled to receive distributions under the Plan, in accordance with the mechanisms and procedures approved in the Confirmation Order.

---

[3]      Note: To be discussed

b.    Except as provided in <u>Section 15</u> and <u>Section 16(a)</u>, additional members of the Company may be admitted to the Company with the consent of all of the members.

16.    <u>Consents</u>.  Any action that may be taken by the members at a meeting may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed by or on behalf of the member or members holding sufficient limited liability company interests in the Company to authorize or approve such action at such meeting.

17.    <u>Amendments</u>.  Except as otherwise provided in this Agreement, this Agreement may be amended only by the Vote of a Majority of the Members.

18.    <u>Governing Law</u>.  This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of Delaware.

19.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together, shall constitute one and the same Agreement.

20.    <u>Tax Treatment</u>.  The Company will be classified as an association taxable as a corporation for U.S. federal income tax purposes, and neither the Company nor any Member will take any action (including the filing of any election) that would cause it to be taxable as anything other than a corporation for U.S. federal income tax purposes.

21.    <u>Tax Elections</u>.  Subject to <u>Section 20</u>, the Manager shall have the power to cause the Company to make all elections required or permitted to be made for income tax purposes.

22.    <u>Other Business Activities</u>.  Except as provided in this Agreement, no provision of this Agreement will be construed to limit in any manner any Member in the carrying on of its own businesses or activities.

23.    <u>Third Party Beneficiaries</u>.  This Agreement is made solely for the benefit of the Members and their permitted successors and assigns, and no other person or entity will have or acquire any right by virtue of this Agreement other than the Covered Persons (solely with respect to Section 10).

24.    <u>Effectiveness</u>.  Pursuant to Section 18-201(d) of the Act, this Agreement shall be effective as of the filing of the Certificate on [●].

*{Signature Page Follows}*

29336469.2

IN WITNESS WHEREOF, the parties hereto have made this Agreement effective as of the date and year first above-written.

Members:

[●]

_____
Name:[●]
Title: [●]

[●]

_____
Name:[●]
Title: [●]

<u>Exhibit A</u>

| <u>Member</u> | <u>Address</u> | <u>Percentage Interest in the Company</u> |
|---|---|---|
| [●] | [●] | [●] |

<u>Exhibit B</u>

Manager Compensation