IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Zohar III, Corp., *et al.*,[1] | Case No. 18-10512 (KBO) |
| Debtors. | Jointly Administered |
| | **Re: D.I. 3233** |

**THE PATRIARCH STAKEHOLDERS'
OBJECTION TO CONFIRMATION OF THE SECOND
AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE
BANKRUPTCY CODE FOR ZOHAR III, CORP. AND ITS AFFILIATED DEBTORS**

The Patriarch Stakeholders,[2] by and through their undersigned counsel, submit this objection and reservation of rights with respect to confirmation of the *Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors* [D.I. 3233], as supplemented by the Plan supplement and attachments (the "Plan Supplement") [D.I. 3304] (together, and each as may be amended or further supplemented, the "Plan"). In support of this Objection, the Patriarch Stakeholders state as follows:

---

[1] The Debtors, and, where applicable, the last four digits of each of their respective taxpayer identification numbers, are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is c/o FTI Consulting, Inc., 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

[2] Capitalized terms but not defined herein have the meaning provided in the Plan.

**PRELIMINARY STATEMENT**

1.      The Patriarch Stakeholders do not wish to stand in the way of confirmation. The current version of the Plan, however, is no benign attempt to exit bankruptcy for the noble goal of reducing costs. Instead, the Plan is a blunt instrument intended to demolish the Patriarch Stakeholders' right to defend themselves against litigation claims brought by the Debtors and MBIA seeking hundreds of millions of dollars in damages.

2.      Most significantly, the Plan seeks to transfer the Remaining Assets and Litigation Claims free and clear of the Patriarch Stakeholders' equitable subordination claims. Permitting the Debtors to wipe out third-party equitable subordination claims through the free and clear provisions of §§ 363(b) or 1141(c) would not only sanction an impermissibly broad definition of Claims, Liens or "interests," it would constitute an unauthorized non-consensual third-party release by shielding the estates' assets from equitable subordination claims on appeal.

3.      The Plan also improperly seeks to transform the Debtors' adversary proceeding into a one-sided affair by assigning the Litigation Assets "free and clear" of the Patriarch Stakeholders' setoff rights. To accomplish this objective, the Debtors attempt to cloak the transfer of these Litigation Assets with § 363 sale protections for the sole purpose of using § 363(f) as a sword to extinguish any applicable setoff rights. Here, of course, the litigation assignment is being proposed through a plan, which invokes §§ 1123 and 1141(c), not § 363. As demonstrated below, the "free and clear" provision under § 1141(c) does not impact setoff rights. Moreover, even if § 363 could be used to eliminate setoff rights in a plan context, the proposed litigation assignment is no "sale" in any sense of the word. It is instead a mere procedural device to permit a post-confirmation trustee to stand in the shoes of the pre-confirmation Debtors. The Debtors' attempt to eviscerate the Patriarch Stakeholders' setoff rights through this transaction, therefore, must be rejected as a matter of law and equity.

4. For the Plan to be confirmed, the Confirmation Order must be revised to provide that, notwithstanding anything in the Plan or Confirmation Order (i) the Remaining Assets and Litigation Assets are being transferred subject to the Patriarch Stakeholders' equitable subordination claims, setoff rights, and defenses; and (ii) the Plan does not release or enjoin any of the Patriarch Stakeholders' claims, rights or defenses against non-Debtors.[3]

## OBJECTION

### I. The Plan (Sections 6.6(d) and 6.8(d)) Improperly Seeks to Transfer Assets Free and Clear of Non-Debtor Equitable Subordination Claims and Setoff Rights.

#### A. *The Equitable Subordination Claims Are Not "Interests" Subject to a Free and Clear Transfer or Sale.*

5. Plan Sections 6.6(d) and 6.8(d) seek to transfer the Remaining Assets and Litigation Assets, respectively, free and clear of all "Claims, Liens and other interests."[4] The Debtors' proposed "free and clear" transfers cannot be approved because equitable subordination claims are not "interests" under §§ 363(f) or 1141(c).[5] "Courts faced with the task of defining the scope of the term 'any interest' have been unable to provide a precise definition."[6] Some courts have narrowly construed the term as being limited to *in rem* interests in the property, while others

---

[3] The Plan's injunction provision improperly seeks to enjoin and release a broad swath of non-Debtor claims, including equitable subordination. The Patriarch Stakeholders are in discussions with the Debtors to potentially resolve objections to Plan's injunction, as well as provisions that would retroactively validate MBIA's purported receipt of Portfolio Company equity as part of the 2016 Zohar I foreclosure, as discussed in sections II and III below.

[4] The Litigation Trust Agreement ("LTA") attached to the Plan Supplement contains similarly offending provisions. For example, § 1.2(a) provides that Litigation Trust Causes of Action shall be transferred to the Litigation Trust free and clear of Claims, Interests and encumbrances. Section 1.2(b) provides similar language with respect to the proposed transfer of Litigation Trust Assets. Moreover, § 2.3(b) discusses the proposed transfer and further expressly limits the transfer of Litigation Trust Interests to the Patriarch Stakeholders, absent unanimous approval of the Litigation Trust Advisory Board.

[5] They are, of course, also not claims against the Debtors or liens against their assets.

[6] *Folger Adam Security, Inc. v. DeMatteris/MacGregor JV*, 209 F.3d 252, 257 (3d Cir. 2000); *see also In re Trans World Airlines, Inc.*, 322 F.3d 283, 288 (3d Cir. 2003) (holding that "interest" under § 363(f) must mean more than "liens").

3

(including the Third Circuit) have interpreted the term to include other obligations that may flow from ownership of the property, such as successor liability, depreciation and certain tort claims.[7]

6.      The term "interest" of course is not without limitation. Indeed, courts have found that third-party rights or claims do not constitute "interests" under § 363(f).[8] In *Adelphia*, the court refused to apply § 363(f) to a sale of the debtor's interests in insurance policies based, in part, on a ruling that third parties' contractual rights under the debtor-owned insurance policies were distinct interests separate and apart from the estate's interests in the same policies.[9] Similarly, the court in *Frazer's Boiler* held that the debtor could not sell back its insurance policies under § 363(f) free and clear of third-party equitable contribution and breach of contract claims among the insurers.[10]

7.      Likewise, here, the Patriarch Stakeholders' equitable subordination claims are third-party claims that cannot constitute "interests" under either §§ 363(f) or 1141(c). As such, the proposed transfer of the Remaining Assets and Litigation Claims must be made subject to the Patriarch Stakeholders' equitable subordination claims currently on appeal.

---

[7] *Sed id*. (citations omitted).

[8] 3 COLLIER ON BANKRUPTCY P 363.06 (16th 2022) ("Other courts have also found third-party rights or claims not to constitute 'interests' to which section 363(f) applies.") (citing *In re Resources Tech. Corp.*, 430 F.3d 884 (7th Cir. 2005)).

[9] *In re Adelphia Commc'ns Corp.*, 364 B.R. 518, 527 (Bankr. S.D.N.Y. 2007).

[10] *In re Fraser's Boiler Serv., Inc.*, 2019 WL 1099713, at *7 (W.D. Wash. Mar. 8, 2019).

63958/0001-43095337v1

**B.    *The Assignment of Litigation Claims to the Litigation Trust is Not a "Sale" under § 363(b) that Can Be Used to Override Setoff Rights under § 553(a)(1).***

8.    The proposed assignment of the Litigation Assets free and clear of the Patriarch Stakeholders' setoff rights also runs afoul of § 553(a) and principles of equity.[11]  Section 553(a)(1) provides in relevant part:

> Except as otherwise provided in this section and in ***sections 362 and 363*** of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . . (emphasis added).[12]

9.    Pursuant to the plain text of § 553(a)(1), setoff rights are expressly limited by only two sections of the Bankruptcy Code: §§ 362 and 363.  In *Folger*, the Third Circuit addressed the impact that § 363 sales have on setoff rights, holding that the sale of a prepetition business receivable to a third party was free and clear of certain of the account debtor's setoff rights against the debtor on unrelated contracts.[13]

10.    Here, § 363 cannot be used to eliminate the Patriarch Stakeholders' setoff rights for two separate reasons.  *First*, notwithstanding the Debtors' attempt in Plan Section 6.1(e) to cloak the transfer with the overlapping protections of §§ 363, 1123 and 1141, the proposed transfer is in fact a transfer of property ***under a plan***.  As such, §§ 1123 and 1141, govern, not § 363(b).  The

---

[11] There is no debate that the Patriarch Stakeholders have timely and properly perfected any setoff rights they may have. *See In re Cont'l Airlines*, 134 F.3d 536, 542 (3d Cir. 1998) ("We recognize that a right of set-off is preserved under § 553 in a bankruptcy proceeding but we believe that the right must be exercised by the creditor in a timely fashion and appropriately asserted in accordance with other provisions of the Bankruptcy Code."). Plan Section 10.8 provision that setoff rights are preserved if asserted in a timely-filed claim prior to the Confirmation Order. The Patriarch Stakeholders have complied with the Plan's requirement to preserve their setoff rights, as their claims fully assert and preserve the right of setoff as to any such allowed claim.

[12] Defenses such as recoupment "cannot be extinguished in bankruptcy—whether through a sale or discharged under a plan—because they are neither 'claims' nor 'debts,' nor 'interests.'" *In re Ditech Holding Corp.*, 606 B.R. 544, 596 (Bankr. S.D.N.Y. 2019); *see also Megafoods Stores, Inc. v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1035–36 (3rd Cir. 1995) (holding that recoupment survives discharge following confirmation and implementation of chapter 11 plan even if creditor did not object to plan or seek a stay pending appeal).

[13] *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252 (3d Cir. 2000).

5

distinction is significant here, as multiple courts have held that § 1141(c)'s "free and clear" provision is subject to a creditor's setoff rights under § 553(a).[14] The Debtors cannot invoke § 363(b) in the proposed Plan transaction for the sole purpose of eviscerating setoff rights, and to end-run case law holding that plan sales are not subject to § 1141(c), and by extension, *Folger's* ruling, which is limited to sales under § 363.

11. *Second*, assuming § 363(b) could ever be utilized in a plan transaction to override setoff rights, the proposed assignment of Litigation Assets to the Litigation Trust here is no "sale" at all. Instructive is a line of cases authorizing the assignment of professional malpractice claims to post-confirmation trusts despite state law prohibitions against assignment or sale of such claims.[15] According to those courts, a debtor's assignment of such litigation claims to a post-confirmation trust "did not implicate the concerns" of the anti-assignment and sale laws because assignment to a post-confirmation trust does not constitute a typical third-party transaction like a sale.[16] Unlike third-party transactions, the "Bankruptcy Code authorizes the creation of post-confirmation entities whose purpose is to liquidate the property of the estate for the benefit of the creditors."[17] "As a result, and consistent with fundamental bankruptcy law, the Trustee stands in the shoes of [the debtor]."[18]

---

[14] *In re Holder*, 182 B.R. 770, 775–76 (Bankr. M.D. Tenn. 1995); *see also In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1275 (9th Cir. 1992); *In re BOUSA Inc.*, 2006 WL 2864964, at *6 (Bankr. S.D.N.Y. Sept. 29, 2006) (after considering the argument that section 1141 applies to bar a setoff claim in a liquidating chapter 11, ruling that the confirmation of a liquidation plan did not waive setoff rights that were not asserted pre-confirmation); *In re S. Park Care Assocs., Inc.*, 203 B.R. 445, 448 (Bankr. W.D. Mo. 1996) (Considering the argument that section 1141 may transfer assets 'free and clear' of interests and concluding that, "[s]etoff is not in any way affected by the confirmation process.").

[15] *Parrett v. Nat'l Century Fin. Enterprises, Inc.*, 2006 WL 783361, at *3–4 (S.D. Ohio Mar. 23, 2006); *In re Friedman's Inc.*, 385 B.R. 381, 448 (S.D. Ga.), order vacated in part on reconsideration, 394 B.R. 623 (S.D. Ga. 2008); *Antioch Litig. Tr. v. McDermott Will & Emery LLP*, 738 F. Supp. 2d 758, 782 (S.D. Ohio 2010).

[16] *Parrett v. Nat'l Century Fin. Enterprises, Inc.*, 2006 WL 783361, at *3 (S.D. Ohio Mar. 23, 2006).

[17] *Id.* at *5.

[18] *Antioch Litig. Tr. v. McDermott Will & Emery LLP*, 738 F. Supp. 2d 758, 782 (S.D. Ohio 2010).

12. That is precisely what is being proposed here. The form of Litigation Trust Agreement provides that "[t]he Litigation Trust will serve as the successor-in-interest" to the Debtors to liquidate such claims for the benefit of creditors.[19] Just as the line of cases dealing with the assignment of malpractice claims, the Debtors are proposing to assign the Litigation Trust Assets to a Litigation Trust whose trustee will stand in the Debtors' shoes and administer the claims. Thus, the proposed transfer to the Litigation Trust is not a sale in any sense of the word. At best, the proposed assignment of Litigation Assets is a "transfer" authorized under § 1123(a)(5)(B), free and clear of claims and interests under § 1141(c). For these reasons, § 553(a)'s limitation on setoff rights in connection with § 363 sales is inapplicable to the proposed litigation assignment.[20]

13. Assuming, *arguendo*, that the Court could authorize the proposed transfers free and clear of setoff rights, it should exercise its discretion and decline to do so here. "Absent a setoff, [a creditor in the Patriarch Stakeholders' position] is in the worst of both worlds: it must pay its debt to the debtor in full, but is only entitled to receive a tiny fraction of the money the debtor owes it. It was to avoid this unfairness to creditors that setoffs were allowed in bankruptcy in the first place."[21]

14. The Debtors have filed a pending adversary proceeding against the Patriarch Stakeholders asserting hundreds of millions of dollars in damages. The Plan should not be used as a vehicle to "cleanse" that litigation of setoff rights that may be pursued under § 553.[22]

---

[19] D.I. 3304 Ex. H (Form of Liquidating Trust Agreement), § 1.2(c).

[20] Further, because the Plan proposes to distribute substantially all remaining assets, the Debtors cannot provide the Patriarch Stakeholders adequate protection required under § 363(e).

[21] *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1277 (9th Cir. 1992).

[22] The Debtors do not, nor can they, attempt to transfer the Litigation Assets free and clear of the Patriarch Stakeholders' other defenses, including but not limited to recoupment. *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252 (3d Cir. 2000). The Debtors also confirmed that the rights of the parties

II. **The Plan's Injunction Provision (Section 10.6) and Potentially Other Provisions Impermissibly Release and Enjoin the Patriarch Stakeholders' Equitable Subordination and Other Non-Debtor Claims.**

15. Despite having amended the Plan to remove the Patriarch Stakeholders from the definition of "Releasing Parties"—in a purported attempt to clarify that the Patriarch Stakeholders are not party to the Plan's consensual non-Debtor release provisions—the Plan's injunction provisions would operate as an impermissible, non-consensual, third-party release.

16. The injunction provision (Plan Section 10.6) provides:

> Subject to the occurrence of the Effective Date, Confirmation of the Plan shall act as a permanent injunction against any Entity commencing or continuing any action, employment of process, or act to collect, offset (except as permitted by Section 10.8 of the Plan) or recover any ***claim, interest***, or Cause of Action ***satisfied***, released or exculpated under the Plan to the fullest extent authorized or provided by the Bankruptcy Code. (Emphasis added.)

17. Significantly, this section uses the lower-cased terms "claims" and "interests," not capitalized "Claims" and "Interests." While capitalized "Claims" and "Interests" are expressly limited to the Debtors, the lower-cased version of those words has a much broader meaning that would cover the Patriarch Stakeholders' claims and interests against non-Debtors that are being "satisfied" through the Plan, including, of course, equitable subordination.

18. In addition to the injunction, the Plan contains several broad provisions that could be read to operate as non-Debtor releases. For example, Plan Section 6.3 seeks to terminate all "rights arising from or related to" the Zohar Indentures and related debt and equity documents (collectively defined as the "Canceled Debt and Equity Documentation"). In relevant part, the provision provides:

---

under the Settlement Agreement are fully preserved in Plan Section 6.7; however, the Confirmation Order should be revised to confirm that the assets are not being transferred free and clear of the parties' rights and obligations under the Settlement Agreement, and that nothing in the Plan or Confirmation Order overrides or impacts those rights and obligations.

8

> From and after the Effective Date, the parties to the Zohar Indentures and the Transaction Documents and such other Canceled Debt and Equity Documentation will have no rights arising from or related to the Zohar Indentures and the Transaction Documents and such other Canceled Debt and Equity Documentation, all such rights being expressly extinguished pursuant to this Plan.

19. Additionally, Plan Section 6.2 proposes a broad, general settlement of all "controversies released, settled, compromised, or otherwise resolved pursuant to the Plan."[23]

20. To the extent these or any other provisions of the Plan could operate as a non-consensual release of the Patriarch Stakeholders' claims or rights against third parties, the Plan cannot be confirmed. As the Third Circuit explained in *Continental*, the "hallmarks of permissible non-consensual releases [are] fairness, necessity to the reorganization, and specific factual findings to support these conclusions."[24] Courts in the Third Circuit typically consider four factors in determining whether a non-consensual release satisfies *Continental*:

> whether: (i) the non-consensual release is necessary to the success of the reorganization; (ii) the releasees have provided a critical financial contribution to the debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is fair to the non-consenting creditors, i.e., whether the non-consenting creditors received reasonable compensation in exchange for the release.[25]

21. The Debtors fail to satisfy any of these factors. First, the Debtors are not reorganizing. Regarding the second and third factors, non-debtors are not making financial

---

[23] In relevant part, Plan Section 6.2 provides:

> As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all claims, Interests, Causes of Action (other than the Litigation Assets transferred to a Litigation Trust), and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.

[24] *In re Cont'l Airlines*, 203 F.3d at 214; *see also Opt-Out Lenders v. Millennium Lab Holdings II, LLC (In re Millennium Lab Holdings II, LLC)*, 945 F.3d 126, 139 (3d Cir. 2019) ("Our precedents regarding nonconsensual third-party releases and injunctions in the bankruptcy plan context set forth exacting standards that must be satisfied if such releases and injunctions are to be permitted, and suggest that courts considering such releases do so with caution.").

[25] *U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.)*, 426 B.R. 114, 144 (Bankr. D. Del. 2010).

63958/0001-43095337v1

contributions to the Plan. And a creditor's mere support of a plan is insufficient: a proposed releasee's "substantial (and certainly sometimes exhausting) efforts to formulate and negotiate the current (and former Plan) . . . do not . . . rise to the level of the critical financial contribution contemplated in *Continental*[.]"[26]

22. The fourth factor also weighs against a release. The Plan proposes to distribute no value to the Patriarch Stakeholders, other than a $250,000 allowed Administrative Claim [D.I. 3317].[27] Thus, to the extent the Debtors seek to grant non-consensual third-party releases against the Patriarch Stakeholders through the injunction, the Plan cannot be confirmed.[28]

23. Given the plethora of potential provisions in the Plan that could be construed as an impermissible non-Debtor release of the Patriarch Stakeholders' rights, the Confirmation Order should include an overriding provision that confirms that nothing in the Plan or Confirmation Order constitutes a release or injunction of any of the Patriarch Stakeholders' claims, rights or defenses against non-Debtor third parties.

---

[26] *In re Spansion, Inc.*, 426 B.R at 145.

[27] *See, e.g., In re Spansion, Inc.*, 426 B.R. 114, 145 (Bankr. D. Del. 2010) (finding fairness prong lacking where "[t]he objecting parties . . . are not receiving anything under the Plan."); *In re Medford Crossings N., LLC*, 2011 WL 182815, at *9 (D.N.J. Jan. 20, 2011) (denying non-consensual third-party release where "[t]he parties that would be restrained . . . receive no meaningful distribution under the Plan . . . ."). Earlier this month, in *In re Gulf Coast Health Care, LLC*, this Court rejected a non-debtor release on the basis that of a lack of adequate consideration to the releasing parties. No. 21-1136 (Bankr. D. Del.) D.I. 1236.

[28] The Debtors also cannot bypass *Continental's* requirements by framing releases as a settlement. Bankruptcy Code section 1123(b)(3) allows a plan proponent to "provide for [] the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[28] Thus, § 1123(b)(3) permits settlement of claims belonging to the Debtors or to the estates, but not claims among third-parties. Further, under well-established contract law, the Debtors cannot agree to settle the Patriarch Stakeholders' third-party claims without their consent. *Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986) ("Of course, parties who choose to resolve litigation through settlement may not dispose of the claims of a third party . . . without that party's agreement."); *In re DVR, LLC*, 582 B.R. 507, 514 (Bankr. D. Colo. 2018), *aff'd*, 606 B.R. 80 (D. Colo. 2019) ("Thus, when asked to approve a settlement, the Court must consider whether it attempts to compromise the rights of nondebtor third parties, without their consent. When it does, the court cannot approve it.").

**III.     Plan Section 6.1(b) Seeks an Improper and Unnecessary Declaration Deeming the Transfer of Portfolio Company Equity Interests to MBIA in the Zohar I Foreclosure.**

24.     The first paragraph of Plan Section 6.1(b) proposes to "deem" valid MBIA's 2016 foreclosure of Zohar I's purported equity interests in certain Portfolio Companies. That section goes on to propose that Zohar I would fully and finally transfer to MBIA any equity interests that remain recorded in the name of Zohar I.

25.     The Patriarch Stakeholders do not object to the proposed transfer of the equity in Zohar I's name to MBIA under the terms of the Plan. As the Court may recall, when Ms. Tilton resigned from the certain Portfolio Companies in March 2020, she announced that she would no longer challenge ownership in the Zohar I Portfolio Companies as of that date; however, Ms. Tilton does object to any determination that MBIA acquired the ownership of those Portfolio Companies as part of the Zohar I foreclosure, or that Zohar I actually owned such equity at any time prior to March 2020. Given the Patriarch Stakeholders' agreement not to object to Zohar I's transfer of the equity in Portfolio Companies under the Plan, it is not necessary to "deem" MBIA the owner of such interests at any time prior to confirmation. The need for any such ruling is now moot and would be an impermissible advisory opinion that is not germane to Plan confirmation.

26.     Moreover, determining the ownership of the Zohar I Portfolio Companies' equity at confirmation would violate Bankruptcy Rules 7001(2) and (9), and constitute an end-run of Count I of the pending Zohar-Patriarch Adversary Proceeding, in which the Debtors seek a declaration regarding the propriety of MBIA's 2016 foreclosure. As such, the Confirmation Order should be revised to confirm that neither the Plan nor Confirmation Order constitutes a finding as to Zohar I's ownership in the Portfolio Companies prior to confirmation, or as to MBIA's purported acquisition of the same through the 2016 Zohar I foreclosure.

## IV. The 14-Day Stay Should Not be Waived.

27. The Patriarch Stakeholders object to the extent the Debtors seek to waive the automatic 14-day stay of confirmation orders imposed by Federal Rule of Bankruptcy Procedure 3020(e). The Debtors have offered no explanation to date for why the automatic 14-day stay should be waived and cited no authority to support its request.

28. The purpose of a stay pending appeal is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. Although Rule 3020(e) grants the Court discretion to waive Rule 3020(e)'s automatic 14-day stay, wavier is inappropriate when a party in interest has contested the confirmation order and intends to raise substantial legal issues on appeal.[29] Indeed, waiving the 14-day stay in the face of an objection would effectively rewrite the Bankruptcy Code and Rules to eliminate any appellate rights of an objecting party as a confirmation order will often equitably moot an appeal.

29. Absent revisions to the Plan or Confirmation Order consistent with this objection, the Patriarch Stakeholders intend to appeal an order confirming the Plan and seek a stay. The 14-day stay under Bankruptcy Rule 3020(e) is necessary to preserve the Patriarch Stakeholders' right to seek a stay of any Confirmation Order pending appeal. The Debtors cannot demonstrate that there is a need to consummate the Plan within the 14-day period nor can the Debtors show that the interests of the Patriarch Stakeholders are sufficiently protected.

30. Therefore, the stay should not be waived.

---

[29] *See In re Adelphia Communications Corp.*, 368 B.R. 140, 282 (Bankr. S.D.N.Y. 2007) (declining to waive the 14-day stay because it would be unfair to the objecting party and the appellate court to foreclose review by waiving the automatic stay, notwithstanding the court's belief that a further extension of the stay was not warranted).


## **RESERVATION OF RIGHTS**

31. The Patriarch Stakeholders reserve the right to supplement this objection based on discussions with the Debtors, other modifications to the Plan, and to address the language of the Confirmation Order, a draft of which the Patriarch Stakeholders have not yet viewed.

## **CONCLUSION**

WHEREFORE, the Patriarch Stakeholders respectfully request that the Court: (i) condition confirmation of the Plan to revisions to the Confirmation Order consistent with this objection; and (ii) grant other such further relief as the Court deems appropriate under the circumstances.

Dated: May 13, 2022

**COLE SCHOTZ P.C.**

By: */s/ G. David Dean*
Norman L. Pernick (No. 2290)
G. David Dean (No. 6403)
Andrew J. Roth-Moore (No. 5988)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
npernick@coleschotz.com
ddean@coleschotz.com
aroth-moore@coleschotz.com

– and –

**SHER TREMONTE LLP**
Theresa Trzaskoma (Admitted Pro Hac Vice)
90 Broad Street, 23rd Floor
New York, New York 10004
Telephone: (212) 202-2600
Facsimile: (212) 202-4156
ttrzaskoma@shertremonte.com

*Counsel the Patriarch Stakeholders*

63958/0001-43095337v1