# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Zohar III, Corp., *et al.*,[1] | : | Case No. 18-10512 (KBO) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

## STATEMENT AND JOINDER OF THE ZOHAR III CONTROLLING CLASS TO THE DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THIRD AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR ZOHAR III, CORP. AND ITS AFFILIATED DEBTORS

The holders (the "Controlling Class") of the majority of the A-1 notes issued by Debtor Zohar III, Corp. ("Zohar III"), by its undersigned counsel, hereby file this statement in support of confirmation of the *Third Amended Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors* [Docket No. 3380] (the "Plan") and join the Debtors' *Memorandum of Law in Support of Confirmation of Third Amended Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors* [Docket No. 3381] (the "Memorandum of Law"). In support of this statement and joinder (the "Statement and Joinder"), the Controlling Class respectfully states as follows:

## STATEMENT AND JOINDER

1. The Patriarch Stakeholders'[2] contention that their setoff rights are sacrosanct ignores bankruptcy law and the specific facts of these cases. Perhaps most bold is the Patriarch

---

[1] The Debtors, and, where applicable, the last four digits of each of their respective taxpayer identification numbers, are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting Inc., New York, New York 10036.

[2] Capitalized terms but not defined herein have the meaning provided in the Plan and *The Patriarch Stakeholders' Objection to Confirmation of the Second Amended Joint Plan of Liquidation Under*

Stakeholder's purported claimed right to setoff on account of Class B Notes. Unlike a trade vendor seeking to setoff amounts it owes to a debtor on account of discounts, rebates or warranty claims against amounts the debtor owes to such vendor on account of goods delivered, the Class B Notes claims (to the extent valid) are expressly subordinated to the Class A Notes claims—using the subordinated Class B Note claims as a means to reduce potential recoveries that flow to the Class A Noteholders ignores the express subordination and elevates the priority of the Class B Notes. Taken to a reasonable conclusion, the Patriarch Stakeholders' argument would effectively release a junior secured lender, who is subject to a subordination and turnover agreement, from liability for any harm caused to the borrower, so long as the junior secured lender's claim is at least as large as the senior secured lender's claim. This result doesn't add insult to injury, it proposes insult as compensation for injury.

2. The Controlling Class joins in the Debtors' setoff arguments in the Memorandum of Law. For the reasons set forth therein, as a matter of bankruptcy law, the Debtors' assets can be sold free and clear of, among other things, the Patriarch Stakeholders purported setoff rights.

3. As a gating issue, the Controlling Class believes that, with respect to the Patriarch Stakeholders' setoff argument, the singular issue before the Court is whether the Debtors' assets can be sold free and clear of the Patriarch Stakeholders purported setoff rights. Regardless of whether the Court agrees with the Debtors or not, there is no need for the Court to determine the merits of any purported setoff claim. In other words, to the extent the Court disagrees with the Debtors, the Court need not (and should not) evaluate the merits of any purported setoff claims by Patriarch at this time.

---

*Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and its Affiliated Debtors* [Docket No. 3326] (the "Objection") or are defined in a different section herein.

4. Notwithstanding the foregoing, solely in response to the Patriarch Stakeholders' request that the Court exercise its discretion, and decline to authorize the proposed transfers free and clear of setoff rights[3]—and not in an attempt to argue the merits of any purported setoff claim—the facts of these cases, including the nature of certain of the Patriarch Stakeholder's claims, support the conclusion that the Court should decline the Patriarch Stakeholders' invitation to exercise such discretion.

5. First, the Indenture explicitly states in the section governing subordination that the "Issuer, the Holders of the Class A-2 Notes, the Holders of the Class A-3 Notes, the Holders of the ***Class B Notes*** and the Holders of the Class C Notes" agree "that Class A-2 Notes, the Class A-3 Notes, the ***Class B Notes***, the Class C Notes and the Issuer's rights in and to the Collateral (the "<u>Subordinate Interest</u>") shall be subordinate and junior to the Class A-1 Notes."[4] The Indenture further provides that:

- Holders of Subordinate Interests—including the Patriarch Stakeholders—"shall not demand, accept, or receive any payment or distribution in respect of such Subordinate Interests in violation of the provisions of this Indenture;"[5]

- Subordinate Interests "shall be subordinate and junior to the Class A-1 Notes;" and[6]

- No "Holders of Notes shall have any right in any manner whatever, by virtue of, or by availing of, any provision of this Indenture . . . to seek to obtain priority or preference over any other Holders of the Notes . . . except in the manner herein provided . . . and in accordance with Section 13.1 and the Priority of Payments."[7]

---

[3] Objection, at ¶ 13.
[4] Indenture, at § 13.1(a) (emphasis added). The Class B Notes were issued to Octaluna, LLC, an affiliate of Patriarch, and Patriarch was the beneficial owner of the Class B Notes.
[5] Indenture, at § 13.1(f).
[6] Indenture, at § 13.1(a).
[7] Indenture, at § 5.8.

3

There is no dispute that the Class A-1 Notes—much less all Class A Notes—are not being paid in full. Exercising a right to setoff is a "demand" for payment and distribution in violation of the subordination agreement under the Indenture. To allow the Patriarch Stakeholders to exercise a right to setoff on their claims would be to upend the express agreement by the Patriarch Stakeholders to subordinate its claims—an agreement which is enforceable pursuant to section 510(a).[8]

6. Second, the basic premise of the right to setoff is that it "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A."[9] But, for the right to setoff to be available, debts must be mutual. Debts are only mutual "when they are due to and from the same person in the same capacity."[10] The Class B Notes express contractual subordination defeats the necessary mutuality.[11] Moreover, where a debt owed is a non-recourse debt—which is the case here[12]—the mutuality necessary to

---

[8] 11 U.S.C. § 510(a) ("A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.").
[9] *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995).
[10] *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002).
[11] *Fed. Deposit Ins. Corp. v. Texarkana Nat. Bank*, 874 F.2d 264, 268-69 (5th Cir. 1989) ("[I]n this case, the debentures cannot be made 'mutually extinguishable' with the obligations of TNB to GBSB because of their subordinate quality. TNB purchased these notes with full knowledge and notice of the terms thereof. It should not now be able to rely on an equitable remedy to place itself in a preferred position vis-a-vis other creditors and depositors of GBSB."); *see also Fed. Deposit Ins. Corp. v. De Jesus Velez*, 678 F.2d 371, 376 (1st Cir. 1982) (where "debentures specifically provided for subordination," "the debts are not mutually extinguishable"); *Nw. Racquet Swim & Health Clubs, Inc. v. Resol. Tr. Corp.*, 927 F.2d 355, 363 (8th Cir. 1991) (holding that "[t]he continuing subordinated status of the Securities means that they lack the requisite mutuality of obligation required to set them off with the promissory note which possesses a superior general creditor rank" because that are not "in the same right"); *In re Marta Grp., Inc.*, 47 B.R. 220, 221 (Bankr. E.D. Pa. 1985) ("where the debt instrument provides that the claim it represents is subordinate to the rights of all other creditors of the debtor. . . . we conclude that setoff is not allowable."); *In re K.P. Enter.*, 135 B.R. 174, 185-86 (Bankr. D. Me. 1992) ("Belisle's claims are not presently 'owing and due' because Fleet, to whom Belisle is subordinated, remains unsatisfied. Thus, mutuality is lacking.").
[12] The Indenture provides that obligations under the Indenture are "limited recourse obligations . . . payable solely from the Collateral" and that "following realization of the Collateral, any claims . . . shall be extinguished, and shall not thereafter revive." Indenture, at § 2.6(i).

4

maintain the right to setoff is not present, and any right to setoff cannot be exercised.[13] Because a non-recourse debt is—by its very definition—payable only out of certain identifiable assets, and not from the general funds of an obligor, the requirement that debts "are due to and from the same person in the same capacity" cannot be met.[14] To allow a right to setoff where the debt is non-recourse would be to require payment by a method other than the means by which the debt is payable by its terms, destroying the concept of mutuality.[15]

7. At bottom, the Patriarch Stakeholders' setoff argument is less about preserving rights and more about creating rights in an attempt to impermissibly elevate the priority of their claims—a result which they previously failed to achieve in their equitable subordination efforts.

8. For the reasons set forth in the Memorandum of Law, the Court should conclude that the sale of assets is free and clear of the Patriarch Stakeholders' right to setoff and, based on the facts of this case, the Court should decline Patriarch's invitation to exercise its equitable discretion to reach any contrary conclusion. To the extent the Court determines that the Patriarch Stakeholders' right to setoff are preserved, the Court should also preserve any and all rights the Class A Noteholders have under section 510 of the Bankruptcy Code.

---

[13] *DeFlora Lake Dev. Assocs., Inc. v. Hyde Park*, 689 F. App'x 99, 100-101 (2d Cir. 2017) (applying the common law right to setoff as codified under New York state law to affirm a district court decision holding that attorneys' fees could not be setoff against a non-recourse debt arising under a land contract because of an absence of mutuality); *In re Allen-Main Assocs., Ltd. P'Ship*, 233 B.R. 631, 635 (Bankr. D. Conn. 1999) (finding that where Connecticut law required "mutual debts" to exercise a right to setoff a non-recourse debt was not mutual).

[14] *Westinghouse Credit Corp.*, 278 F.3d at 149; 7 Collier On Bankruptcy ¶ 1111.03(1)(a)(i) (16th ed. 2009) ("[a] lack of recourse means that a secured creditor may not pursue the debtor or its estate after realization of the collateral originally given. A creditor may not have recourse for several different reasons. It may contractually agree that the claim is nonrecourse; that is, it may agree to look solely to the collateral for its recovery.").

[15] *Westinghouse Credit Corp.*, 278 F.3d at 101.

## RESERVATION OF RIGHTS

9. The arguments set forth herein are not exhaustive of all arguments the Controlling Class may have on the issues addressed herein. The failure to include any argument, fact, position or defense in respect of the Patriarch Stakeholders' right to setoff shall not be deemed a waiver of such argument, fact position or defense, and the Controlling Class expressly reserves its right to raise these and any additional arguments, positions, facts or defenses, in any future hearing or proceeding on these or any other issues.

[*Remainder of Page Intentionally Left Blank*]

| | |
|---|---|
| Dated: June 16, 2022<br>Wilmington, Delaware | */s/ Morgan L. Patterson*<br>Matthew P. Ward (Del. Bar No. 4471)<br>Morgan L. Patterson (Del. Bar No. 5388)<br>WOMBLE BOND DICKINSON (US) LLP<br>1313 N. Market Street, Suite 1200<br>Wilmington, DE 19801<br>Telephone: (302) 252-4320<br>Facsimile: (302) 252-4330<br>Email: matthew.ward@wbd-us.com<br>Email: morgan.patterson@wbd-us.com<br><br>-and-<br><br>Brian J. Lohan (*pro hac vice*)<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>70 West Madison Street Suite 4200<br>Chicago, IL 60602-4231<br>Telephone: (312) 583-2300<br>Facsimile: (312) 583-2360<br>Email: brian.lohan@arnoldporter.com<br><br>Jeffrey A. Fuisz (*pro hac vice*)<br>Robert T. Franciscovich (*pro hac vice*)<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>250 West 55th Street<br>New York, New York 10019-9710<br>Telephone: (212) 863-8000<br>Facsimile: (212) 863-8689<br>Email: jeffrey.fuisz@arnoldporter.com<br>Email: robert.franciscovich@arnoldporter.com<br><br>*Counsel to the Zohar III Controlling Class* |