## **EXHIBIT 1**

*Revised* **Proposed Confirmation Order**

[**Revised Proposed Confirmation Order**]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Zohar III, Corp., *et al.*, | ) | Case No. 18-10512 (KBO) |
| | ) | |
| Debtors[1]. | ) | Jointly Administered |
| | ) | |
| | ) | **Ref. Docket No. _____** |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THIRD AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR ZOHAR III, CORP. AND ITS AFFILIATED DEBTORS

Upon consideration of the *Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors,* dated as of June 15, 2022 attached hereto as **Exhibit A** (together with the Plan Supplement, all other exhibits thereto, and as may be amended, modified or supplemented, the "<u>Plan</u>"), proposed by the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"); and the Bankruptcy Court having entered an order [Docket No. 3239] (the "<u>Disclosure Statement Order</u>") approving the *Disclosure Statement for Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors*, attached as Exhibit 1 to the Disclosure Statement Order (the "<u>Disclosure Statement</u>"); and the Debtors having filed the Plan Supplement on May 6, 2022 [Docket No. 3304] and amended or supplemented the same on June [*], 2022 [Docket No. *]; and upon consideration of the affidavit of service filed reflecting compliance with the notice and solicitation requirements of the Disclosure Statement Order [Docket Nos. 3249 and

---

[1]     The Debtors and the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is c/o FTI Consulting, Inc., 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

3272] (together, the "Notice Affidavit"); and upon the *Notice of Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of Ballots and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granting Related Relief* [Docket No. 3239] (the "Confirmation Hearing Notice"); and upon consideration of the following filed with the Bankruptcy Court on June 15, 2022:  (i) the *Declaration of Justin K. Edelson of The Reliable Companies Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors, dated April 6, 2022* [Docket No. *] (the "Voting Declaration"), (ii) the *Declaration of Michael Katzenstein in Support of Confirmation of Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors* [Docket No. *] (the "Katzenstein Declaration"), and (iii) the *Memorandum of Law in Support of Confirmation of the Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp.* [Docket No. *] (the "Confirmation Memorandum"); and a hearing to consider Confirmation having been held on June 21, 2022 (the "Confirmation Hearing"); and any objections to the Plan having been resolved or overruled by the Bankruptcy Court pursuant to this Confirmation Order for the reasons set forth on the record of the Confirmation Hearing; and upon the evidence adduced and proffered and the arguments of counsel made at the Confirmation Hearing; and the Bankruptcy Court having reviewed all documents in connection with Confirmation and having heard all parties desiring to be heard; and upon the

record of the Chapter 11 Cases; and after due deliberation and consideration of all of the foregoing; and sufficient cause appearing therefor; the Bankruptcy Court hereby makes the following:

### Findings of Fact and Conclusions of Law

A.    **Findings of Fact and Conclusions of Law.**  The findings and conclusions set forth herein, together with the findings of fact and conclusions of law set forth in the record of the Confirmation Hearing, constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to this proceeding pursuant to Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    **Capitalized Terms.**  Capitalized terms used herein, but not defined herein, shall have the meaning attributed to such terms in the Plan.

C.    **Jurisdiction and Venue.**  The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution, and the Debtors consent to entry of this Confirmation Order under the Local Rules and Article III of the United States Constitution.  Venue of this proceeding and the Chapter 11 Cases is proper in this district and in this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    **Chapter 11 Petitions.**  On March 11, 2018 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. The cases are jointly administered pursuant to Bankruptcy Rule 1015 and Local Rule 1015-1.

E.     **Judicial Notice.**  The Bankruptcy Court takes judicial notice of the docket in the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed and all orders entered.

F.     **Plan Supplement.**  The filing and notice of the Plan Supplement was appropriate, and complied with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Disclosure Statement Order, and no other or further notice of the Plan Supplement is or shall be required.

G.     **Mailing of Solicitation and Confirmation Materials.**  As is evidenced by the Voting Declaration and the Notice Affidavit, the distribution of the Plan, the Disclosure Statement, the Disclosure Statement Order, the Ballots, the Confirmation Hearing Notice, the Notice of Non-Voting Status (as defined in the Disclosure Statement Order), and the other materials required to be distributed under the Disclosure Statement Order was adequate and sufficient under the circumstances of the Chapter 11 Cases, and all parties required to be given notice of the Disclosure Statement, the Plan, and the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) have been given due, proper, timely, and adequate notice thereof in accordance with the Disclosure Statement Order, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable law, and such parties have had an opportunity to appear and be heard with respect thereto. Except as otherwise provided herein,

no other or further notice of the Disclosure Statement, the Plan, the Confirmation Hearing, and the entry of this Confirmation Order is required.

H. **Voting.** Votes on the Plan were solicited after disclosure of adequate information as defined in section 1125 of the Bankruptcy Code. The procedures by which the Ballots for acceptance or rejection of the Plan were distributed and tabulated, including as set forth in the Voting Declaration, under the circumstances of the Chapter 11 Cases were fair, properly conducted, and complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, other applicable law, and the Disclosure Statement Order. The modification of the Record Date for the Holders of Claims in Class 4 (Zohar III A-1 Note Claims) to May 13, 2022 and the extension of the Voting Deadline for such Holders to May 26, 2022, *see* Docket No. 3331, was fair, reasonable and appropriate under the circumstances, and the record of these proceedings reflect that such modification did not lead to any inconsistent or conflicting votes or disenfranchisement of any Holder that materially affected voting on the Plan. As more fully set forth in the Voting Declaration, the following Classes voted to accept the Plan:

| CLASS | RECEIVED BALLOTS | | | |
|---|---|---|---|---|
| | *Accept* | | *Reject* | |
| | **AMOUNT (% of Amount Voted)** | **NUMBER (% of Number voted)** | **AMOUNT (% of Amount Voted)** | **NUMBER (% of Number Voted)** |
| Class 3 Zohar III A-1 Note Claims | $579,244,253.18 (100%) | 34 (100%) | $0.00 (0%) | 0 (0%) |
| Class 10 Zohar II Credit Enhancement Claims | $806,582,747.23 (100%) | 1 (100%) | $0.00 (0%) | 0 (0%) |

| CLASS | RECEIVED BALLOTS | | | |
|---|---|---|---|---|
| | *Accept* | | *Reject* | |
| | **AMOUNT (% of Amount Voted)** | **NUMBER (% of Number voted)** | **AMOUNT (% of Amount Voted)** | **NUMBER (% of Number Voted)** |
| Class 14 Zohar I Indenture Trustee Claims | *No votes received* | | | |
| Class 15 Zohar I Credit Enhancement Claims | $20,347,522.55 (100%) | 1 (100%) | $0.00 (0%) | 0 (0%) |

I.      **Bankruptcy Rule 3016(a).**  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the proponent of the Plan.

J.      **Burden of Proof**.  The Debtors, as proponents of the Plan, have met their burden of proving the satisfaction of the requirements for confirmation of the Plan set forth in section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard. Further, each witness who testified on behalf of the Debtors at or in connection with the Confirmation Hearing (including by declaration or proffer) was credible, reliable and qualified to testify as to the topic addressed in the testimony of such witness.

K.      **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**  As set forth below, the Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

L.      **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).**  The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code, and no party has objected to the classifications set forth in the Plan.  In addition to Administrative Claims, Professional

Claims, DIP Claims, Adequate Protection Claims, and Priority Tax Claims, which need not be

classified, the Plan designates twenty-four (24) Classes of Claims and Interests.  The Claims or

Interests placed in each Class are substantially similar to other Claims or Interests, as the case may

be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying

the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly

discriminate between Holders of Claims and Interests.  Thus, the Plan satisfies sections 1122 and

1123(a)(1) of the Bankruptcy Code.

M.     **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).**  Article II of the

Plan specifies that Holders of Claims in the Classes listed in the following table are Unimpaired

(collectively, the "Unimpaired Classes").  Thus, section 1123(a)(2) of the Bankruptcy Code is

satisfied.[2]

| Class | Description |
|---|---|
| 1 | Zohar III Other Priority Claims |
| 2 | Zohar III Indenture Trustee Claims |
| 2A | Zohar III Patriarch Disputed CMA Fee Claim |
| 2B | Zohar III Ankura CMA Claims |
| 8 | Zohar II Other Priority Claims |
| 9 | Zohar II Indenture Trustee Claims |
| 9A | Zohar II Patriarch Disputed CMA Fee Claim |
| 9B | Zohar II Ankura CMA Claims |
| 13 | Zohar I Other Priority Claims |
| 14A | Zohar I Patriarch Disputed CMA Fee Claim |

N.     **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).**

Article IV of the Plan designates certain Classes of Claims and Interests as Impaired, and specifies

---

[2]     In accordance with Paragraph 31 of the Disclosure Statement Order, notwithstanding anything to the contrary in the Plan or the Disclosure Statement Order, the Holders of Claims in Classes 2A (Zohar III Patriarch Disputed CMA Fee Claim), 9A (Zohar II Patriarch Disputed CMA Fee Claim) and 14A (Zohar III Patriarch Disputed CMA Fee Claim) were provided provisional ballots to vote to accept or reject the Plan, and voted to reject the Plan (the "Patriarch Provisional Ballots").  However, such Holders did not object to the Plan on the grounds that such claims are not "Unimpaired" under the Plan; therefore, consistent with Paragraph 31 of the Disclosure Statement Order, the Patriarch Provisional Ballots are of no effect and were appropriately not counted.

the treatment of Claims and Interests in such Classes.   Specifically, Holders of Claims in the Classes listed in the following table are Impaired and were entitled to vote to accept or reject the Plan (collectively, the "**Voting Classes**").

| Class | Description |
|-------|-------------|
| 3 | Zohar III A-1 Note Claims |
| 10 | Zohar II Credit Enhancement Claims |
| 14 | Zohar I Indenture Trustee Claims |
| 15 | Zohar I Credit Enhancement Claims |

And Holders of Claims and Interests in the Classes listed in the following table are conclusively presumed to have rejected the Plan and were not entitled to vote to accept or reject the Plan (collectively, the "**Deemed Rejecting Classes**").

| Class | Description |
|-------|-------------|
| 4 | Zohar III A-2 Note Claims |
| 5 | Zohar III A-3 Note Claims |
| 6 | Zohar III B Note Claims |
| 7 | Zohar III General Unsecured Claims |
| 11 | Zohar II B Note Claims |
| 12 | Zohar II General Unsecured Claims |
| 16 | Zohar I A-3 Note Claims |
| 17 | Zohar I B Note Claims |
| 18 | Zohar I General Unsecured Claims |
| 19 | Interests |

Thus, section 1123(a)(3) of the Bankruptcy Code is satisfied.

O.     **No Discrimination (11 U.S.C. § 1123(a)(4)).**   The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Thus, section 1123(a)(4) of the Bankruptcy Code is satisfied.

P.      **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).**  The Plan, including, without limitation, Article VI thereof, provides adequate and proper means for the Plan's implementation.  Thus, section 1123(a)(5) of the Bankruptcy Code is satisfied.

Q.      **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).**  The Plan does not provide for the issuance of any non-voting securities.  Therefore, section 1123(a)(6) of the Bankruptcy Code is satisfied.

R.      **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).**  Pursuant to the Plan, and as disclosed in the Plan Supplement, as of the Effective Date, David Dunn will be appointed as the Wind-Down Administrator, Asset Recovery Manager for Zohar II Recovery LLC, and Zohar III Recovery LLC, and the Litigation Trustee;  John Greene will be appointed as the manager of New Zohar III, LLC, MBIA will be appointed as new manager of New Zohar II, LLC; and the remaining Asset Recovery Entities will be managed by their sole members as set forth in their respective governance documents.  The Wind-Down Administrator, Asset Recovery Manager, and Litigation Trustee will have the rights and responsibilities identified in Article VI of the Plan.  The appointment of the Wind-Down Administrator, Asset Recovery Manager for Zohar II Recovery LLC and Zohar III Recovery LLC, the Litigation Trustee and manager of each other Asset Recovery Entity has been fully disclosed in the Plan Supplement, and the manner for selection of any successor to any of them has been disclosed in the Plan and Plan Supplement documents, and each of the foregoing are consistent with the interest of Holders of Claims and Interests and with public policy, and therefore section 1123(a)(7) of the Bankruptcy Code is satisfied.

S.      **Additional Plan Provisions (11 U.S.C. § 1123(b)).**  The Plan's provisions are appropriate, in the best interests of the Debtors and their Estates, and consistent with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

T.      **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).**  Here, as the Plan contemplates the winding down of the Debtors' affairs, the Debtors have exercised appropriate business judgment in proposing a default rejection plan as it pertains to the Debtors' executory contracts and unexpired leases that have not yet been assumed or rejected or that are not yet subject to a pending motion to assume or reject.

U.      **Compromises and Settlements Under and in Connection with the Plan (11 U.S.C. § 1123(b)(3)).**  The settlements and compromises embodied in the Plan comply with and satisfy the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. The settlements and compromises are reasonable, designed to achieve a beneficial and efficient resolution of the Chapter 11 Cases for all parties-in-interest, a sound exercise of the Debtors' business judgment and in the best interest of the Estates.

V.      **Releases (11 U.S.C. § 1123(b))**.  Under the facts and circumstances of the Chapter 11 Cases, the release given by the Debtors and their Estates pursuant to Section 10.3 of the Plan (the "Debtor Release") is:  (a) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (b) appropriate under applicable law; (c) integral to the Plan, and inextricably bound with the other provisions of the Plan; (d) consistent with established practice in this jurisdiction; (e) in exchange for good and valuable consideration provided by the Released Parties; (f) in the best interests of the Debtors and the Estates; (g) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notice, the Ballots, and the Notice of Non-Voting Status each unambiguously state that the Plan

contains certain release, exculpation and injunction provisions; (h) consistent with the Bankruptcy Code and other applicable law; and (i) an appropriate exercise of business judgment.  The releases given by the Releasing Parties pursuant to Section 10.4 of the Plan (the "Third-Party Releases") are (i) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (ii) appropriate under applicable law; (iii) consensual, (iv) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notice, the Ballots, and the Notice of Non-Voting Status each unambiguously state that the Plan contains certain release, exculpation and injunction provisions; and (v) consistent with the Bankruptcy Code and other applicable law.  The Debtor Release is a bar to any Person and Entity asserting against any of the Released Parties any claims or Causes of Action released pursuant to the Debtor Release, and the Third-Party Releases are a bar to any of the Releasing Parties asserting against any of the Released Parties any claims or Causes of Action released pursuant to the Third-Party Releases, as and to the extent provided for in the Plan and this Confirmation Order. Accordingly, section 1123(b) of the Bankruptcy Code is satisfied with respect to the Debtor Release and the Third-Party Releases.

W.   **Exculpations (11 U.S.C. § 1123(b))**.   Under the facts and circumstances of the Chapter 11 Cases, the exculpation (the "Exculpation") of the Exculpated Parties as provided for in Section 10.5 of the Plan is:  (a) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (b) appropriate under applicable law; (c) integral to the Plan, and inextricably bound with the other provisions of the Plan; (d) consistent with established practice in this jurisdiction; (e) in the best interests of the Debtors and the Estates; (f) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notice, the Ballots, and the Notice of Non-Voting Status each

unambiguously state that the Plan contains certain release, exculpation and injunction provisions; (g) appropriately tailored; and (h) a bar against any Person or Entity commencing or pursuing a claim or Cause of Action against any Exculpated Party, except as set forth in the Exculpation in Section 10.5 of the Plan. Therefore, section 1123(b) of the Bankruptcy Code is satisfied with respect to the Exculpation.

X.     **Plan Injunction (11 U.S.C. § 1123(b))**.  Section 10.6 of the Plan provides for a permanent injunction (the "Plan Injunction") against any Entity commencing or continuing any action, employment of process, or act to collect, offset (except as permitted by Article 10.8 of the Plan) or recover any claim, interest, or Cause of Action satisfied, released or exculpated under the Plan to the fullest extent authorized or provided by the Bankruptcy Code. The Plan Injunction is: (a) within the jurisdiction of the Bankruptcy Code under 28 U.S.C. § 1334; (b) appropriate under applicable law; (c) integral to the Plan, and inextricably bound with other provisions of the Plan, including the Debtor Release, the Third-Party Releases, and the Exculpation; (d) consistent with established practice in this jurisdiction; (e) in the best interests of the Debtors and the Estates; and (f) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notice, the Ballots, and the Notice of Non-Voting Status each unambiguously state that the Plan contains certain release, exculpation and injunction provisions. Thus, section 1123(b) of the Bankruptcy Code is satisfied with respect to the Plan Injunction.

Y.     **Modified Substantive Consolidation.  (11 U.S.C. § 1123(b)(6))**.  Section 6.4 of the Plan provides for the substantive consolidation of the Debtors as set forth more fully therein. Based on the Confirmation Memorandum and the Katzenstein Declaration and in the absence of any objections by the impacted parties to the proposed substantive consolidation, the Bankruptcy

Court finds that such substantive consolidation is justified and appropriate under the circumstances of the Chapter 11 Cases.

Z.  **Sale of Assets Free and Clear (11 U.S.C. § 1123(b))**.  Sections 6.1 and 6.6 of the Plan, together, provide for the sale of the Remaining Assets of Zohar II and Zohar III to the Asset Recovery Entities, free and clear of all Claims, Liens, and other interests, in exchange for the assumption of certain liabilities of Zohar II and Zohar III.  Sections 6.1 and 6.8 of the Plan, together, provide that the Asset Recovery Entities will then contribute the Litigation Assets to the Litigation Trusts.  The transfer of the Remaining Assets "free and clear" is authorized pursuant to sections 363(f), 1123(b)(6), and 1141(c) of the Bankruptcy Code and as result, the Holders of Claims against and Interests in the Debtors may not pursue those Claims or Interests against the Asset Recovery Entities or their assets (including the Litigation Assets and the other Remaining Assets).  No rights of equitable subordination, if any, shall attach to the Litigation Assets and the other Remaining Assets.

AA.  **Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))**.  Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123, 1124, 1125, and 1126 of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, the Plan Supplement, and all other matters considered by the Bankruptcy Court in connection with Confirmation.

BB.  **Plan Proposed in Good Faith and Not by Means Forbidden by Law (11 U.S.C. § 1129(a)(3))**.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan

has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The Plan is the result of extensive arm's-length and good faith negotiations among the Debtors and certain of their significant creditors, including the Controlling Party, the Controlling Class and the Indenture Trustee.  It is clear that the Plan promotes the objectives and purposes of the Bankruptcy Code.

CC. **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**  The procedures set forth in the Plan for the Bankruptcy Court's approval of the fees, costs, and expenses to be paid in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

DD. **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**  Article 6.5(f) of the Plan provides that, on the Effective Date, Michael Katzenstein and Joseph J. Farnan, Jr. shall be deemed to have resigned as the Chief Restructuring Officer and Independent Director, respectively, of the Debtors.  As provided in the Plan Supplement, the following shall be appointed as of the Effective Date: David Dunn as the Wind-Down Administrator, Asset Recovery Manager for Zohar II Recovery LLC and Zohar III Recovery LLC, and the Litigation Trustee; John Greene as the manager for New Zohar III, LLC; and MBIA as manager for New Zohar II, LLC.  For the remaining Asset Recovery Entities, they will be managed by their sole members, as set forth in their respective governance documents.  None of these parties are insiders.  Mr. Dunn's compensation was disclosed in the Plan Supplement.  These appointments are consistent with the interests of stakeholders and with public policy.  The appointment of David Dunn as the Wind-

29297607.12

Down Administrator is acceptable to the Controlling Party and the Controlling Class, as required by the Plan. Thus, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

EE. **No Rate Changes (11 U.S.C. § 1129(a)(6)).** The Plan does not provide for any rate change that requires regulatory approval. Section 1129(a)(6) of the Bankruptcy Code is thus not applicable.

FF. **Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).** Based on the Katzenstein Declaration and the Disclosure Statement, the "best interests" test is satisfied as to all Impaired Classes under the Plan, as each Holder of a Claim or Interest in such Impaired Classes will receive or retain property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code

GG. **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).** The Unimpaired Classes are left unimpaired under the Plan, and as set forth in the Voting Declaration, the Voting Classes have voted to accept the Plan in accordance with the Bankruptcy Code, thereby satisfying section 1129(a)(8) as to those Classes. However, the Deemed Rejecting Classes are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, section 1129(a)(8) of the Bankruptcy Code has not and cannot be satisfied. The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b) of the Bankruptcy Code, as set forth below.

HH. **Treatment of Administrative, Professional, DIP, Adequate Protection, Priority Tax, and Priority Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Claims, Professional Claims, DIP Claims, Adequate Protection Claims, Priority Tax Claims, and

Priority Claims pursuant to Articles III and IV of the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

II.     **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).**  As set forth in the Voting Declaration, the Voting Classes 3, 10 and 15 voted to accept the Plan, determined without including any acceptance of the Plan by any insider, and no ballots were cast in Class 14. Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to each of the Debtors.

JJ.     **Feasibility (11 U.S.C. § 1129(a)(11)).**  The Plan provides for the liquidation of the Debtors on and after the Effective Date.  The funding on the Effective Date of the Escrow Accounts and the bank accounts of the Asset Recovery Entities and Litigation Trusts, as well as the ability of the latter entities to raise additional capital and anticipated near-term receipts are sufficient to establish the Plan's feasibility.  Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.

KK.     **Payment of Fees (11 U.S.C. § 1129(a)(12)).**   In accordance with section 1129(a)(12) of the Bankruptcy Code, Section 13.5 of the Plan provides that all U.S. Trustee Fees for each Debtor shall be paid until the earlier of such time that a particular case is closed, dismissed or converted, thus satisfying section 1129(a)(12) of the Bankruptcy Code.

LL.     **Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16)).**   Sections 1129(a)(13)-(16) of the Bankruptcy Code are inapplicable to Confirmation, as the Debtors:  (a) do not provide "retiree benefits," as defined in section 1114 of the Bankruptcy Code (§ 1129(a)(13)); (b) have no domestic support obligations (§ 1129(a)(14)); (c) are not individuals (§ 1129(a)(15)); and (d) are not nonprofit corporations (§ 1129(a)(16)).

MM.     **No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C. § 1129(b)).**  The classification and treatment of Claims and Interests in the Deemed Rejecting

Classes is proper pursuant to section 1122 of the Bankruptcy Code, does not discriminate unfairly, and is fair and equitable pursuant to section 1129(b)(1) of the Bankruptcy Code. There is no Class of Claims or Interests junior to the Holders of Claims or Interests in the Deemed Rejecting Classes that will receive or retain property under the Plan on account of their Claims or Interests. The record establishes that no party has made a *bona fide* offer for, or is willing to offer value to acquire each Debtor's Remaining Assets in excess of (i) the Allowed amounts of the Credit Enhancement Liability Claims, with respect to Zohar I and Zohar II, and (ii) the Allowed amounts of the Zohar III A-1 Note Claims for Zohar III. Accordingly, the Plan does not violate the absolute priority rule, does not discriminate unfairly, and is fair and equitable with respect to each Class that is deemed to have rejected the Plan. Thus, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to the Deemed Rejecting Classes.

NN.    **Only One Plan (11 U.S.C. § 1129(c)).**    The Plan is the only chapter 11 plan currently proposed in the Chapter 11 Cases, and section 1129(c) of the Bankruptcy Code is therefore satisfied.

OO.    **Principal Purpose (11 U.S.C. § 1129(d)).**    The principal purpose of the Plan is neither the avoidance of taxes, nor the avoidance of the application of section 5 of the Securities Act of 1933, and no party in interest has alleged otherwise. Accordingly, section 1129(d) of the Bankruptcy Code is inapplicable. The Chapter 11 Cases also are not "small business cases" and, therefore, section 1129(e) of the Bankruptcy Code is inapplicable.

PP.    **Satisfaction of Confirmation Requirements.**    Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code, and should be confirmed.

QQ.    **Good Faith Solicitation (11 U.S.C. § 1125(e)).**  The Debtors and their officers, directors, advisors, Professionals, and other agents and representatives, as well as the Controlling Party and the Controlling Class and their respective professionals, agents and representatives, have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and they are entitled to the benefits and protections afforded by section 1125(e) of the Bankruptcy Code.

RR.    **Modifications to the Plan (11 U.S.C. § 1127(a)).**  The Debtors modified the Plan subsequent to soliciting votes to accept or reject the Plan in a manner consistent with section 1127(a) of the Bankruptcy Code, as reflected in the Plan attached hereto as **Exhibit A**.  Such modifications do not adversely change the treatment of any Holder of a Claim or Interest and, as such, are deemed accepted by all Holders who have previously accepted the Plan.  The Plan as amended complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code, and no further solicitation is required.

SS.    **Retention of Jurisdiction.**  The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

**Based upon the foregoing findings, and upon the record made before the Bankruptcy Court at or in connection with the Confirmation Hearing, and good and sufficient cause appearing therefor, it is hereby ORDERED, ADJUDGED AND DECREED THAT:**

### Confirmation of the Plan

1.    Subject to the terms of this Confirmation Order, the Plan in the form attached hereto as Exhibit A is approved and confirmed pursuant to section 1129 of the Bankruptcy Code, and any

objections to the Plan have been resolved or overruled by the Bankruptcy Court for the reasons set forth on the record of the Confirmation Hearing.

2.      The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

## Classification and Treatment

3.      The Plan's classification scheme is approved.

4.      The classifications set forth on the Ballots:  (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes; (c) may not be relied upon by any Holder as representing the actual classification of such Claim under the Plan for Distribution purposes; and (d) shall not be binding on the Debtors and any Wind-Down Administrator, Asset Recovery Manager or Litigation Trustee, except for Plan voting purposes.

## Binding Effect

5.      Subject to the terms of this Confirmation Order, in accordance with section 1141 and other applicable provisions of the Bankruptcy Code, and notwithstanding any otherwise applicable law, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, Wind-Down Administrator, each Asset Recovery Entity and Asset Recovery Manager, the Litigation Trusts and Litigation Trustee, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted or voted to accept the Plan), all Persons and Entities that are subject to releases, exculpations, and injunctions provided for in the Plan, each Person or Entity acquiring property under the Plan, any and all non-Debtor parties to contracts or leases with the Debtors, and any and all other Persons and Entities.

29297607.12

## Authorization to Implement the Plan

6.       In accordance with the terms of the Plan and this Confirmation Order, the Debtors, the Wind-Down Administrator, each Asset Recovery Manager, and the Litigation Trustee, as applicable, are authorized to take or cause to be taken all corporate or other actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, and to execute, enter into or otherwise make effective all documents arising in connection therewith.

7.       Pursuant to the Plan, the Debtors and Asset Recovery Entities are authorized to form the Litigation Trusts disclosed in the Plan Supplement as of the Confirmation Date, and any references in the Confirmation Order or in the Plan to a Litigation Trust, Litigation Trustee, or Litigation Assets shall be deemed to apply to each Litigation Trust formed by the Debtors, each Litigation Trustee thereof, and the Litigation Assets therein.

8.       Prior to and on the Effective Date, on behalf of the Debtors, Michael Katzenstein, the Debtors' Chief Restructuring Officer, is authorized to take or cause to be taken all corporate or other actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, and to execute, enter into or otherwise make effective all documents arising in connection therewith.

## Enforceability of the Plan

9.       Pursuant to sections 1123, 1141 and 1142 of the Bankruptcy Code, subject to the occurrence of the Effective Date, the Plan and any agreements entered into thereunder shall be, and hereby are, valid, binding and enforceable.

## Transfer of Assets

10.       Notwithstanding any prohibition of assignability or transferability under applicable non-bankruptcy law or any contract or agreement, on the Effective Date:  (a) Zohar II and Zohar III shall be deemed to have automatically transferred to each Asset Recovery Entity all of their

right, title, and interest in and to all of the Remaining Assets in accordance with sections 1123, 363 and 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Asset Recovery Entity free and clear of all Claims, Liens, and other interests, subject only to the expenses of the Asset Recovery Entity, liens securing the applicable Indenture Trustee Claims as set forth in the Plan and with respect to the Remaining Assets of the DIP Debtors, the DIP Claims and the liens securing the DIP Claims (the "DIP Liens"), and thereupon, the Debtors and Holders of Claims and Interests against the Debtors (other than the Indenture Trustee and DIP Lenders) shall have no Claim, Lien or interest (whatsoever) in or with respect to the Remaining Assets so transferred or the Asset Recovery Entities; (b) the Asset Recovery Entity succeeding to the Debtors' interest in any limited liability company or partnership shall be deemed admitted as a member or partner in the applicable Portfolio Company, with immediate effect on the Effective Date and without any further action on the part of any party; (c) pursuant to the terms and conditions of the Litigation Trust Agreements, as applicable, all right, title, and interest in and to all of the Litigation Assets shall be deemed to and shall have automatically transferred to the Litigation Trusts (through the respective Asset Recovery Entity, where applicable) in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Litigation Trusts free and clear of all Claims, Liens, and other interests, subject only to the expenses of the Litigation Trusts, the DIP Claims and DIP Liens, and the liens securing the Zohar II Indenture Trustee Claims and Zohar III Indenture Trustee Claims as set forth in the Plan and the Litigation Trust Agreement or Agreements, except as set forth herein, the Debtors and Holders of Claims (other than the Indenture Trustee and DIP Lenders) against and Interests in the Debtors shall have no Claim, Lien or interest (whatsoever) in or with respect to the Litigation Assets or the Litigation Trusts; and (d) the DIP Liens shall be granted, affirmed and perfected as set forth in the next paragraph.

11.     The transfer of the Remaining Assets of Zohar II and Zohar III to the Asset Recovery Entities shall result in a Fund Recovery (as defined in the *Independent Director Service Agreement* [Docket No. 345-1] (the "Service Agreement"), and the Debtors shall pay the resulting Incentive Fee (as defined in the Service Agreement) to the Independent Director, provided, however, that the Incentive Fee shall not exceed $676,220.00.

12.     The following applies with respect to the second amendment to the DIP Credit Agreement set forth in the term sheet included as Exhibit L to the Plan Supplement (the "Exit Facility Amendment") to the extent the Exit Facility Amendment is consummated on or prior to the Effective Date:  (a) on the Effective Date, the DIP Liens shall attach to (i) all of the assets of Zohar III owned immediately prior to the Effective Date (including any Litigation Assets of Zohar IIII), and (ii) solely to the extent that the Controlling Class for Zohar I and Zohar II provide their prior written consent to the Debtors and the DIP Lenders, and subject to the terms of an applicable inter-creditor agreement or litigation financing or funding agreement or other similar documentation to be agreed as between the DIP Lenders and MBIA as the Controlling Class for Zohar I and Zohar II (such financing or funding agreement, the "Zohar II Litigation Funding Agreement," a copy of which will be filed in an amendment to the Plan Supplement), all of the Litigation Assets of any other Debtor; (b) any DIP Liens or otherwise on Litigation Assets contributed by Zohar I and Zohar II shall be subject to the terms of an inter-creditor agreement that is acceptable to MBIA in all respects; (c) the DIP Liens on any MD Term Loan Indebtedness owned by Zohar III shall be released upon closing of the MD Credit Bid Transaction; (d) the "Roll Option" shall be modified to include the treatment provided for in the Exit Facility Amendment; (e) the commitments under the DIP Credit Agreement shall be increased to $26 million, inclusive of all amounts drawn prior to the Effective Date.  The Exit Facility Amendment, together with

such other terms more favorable to the Debtors and their successors as may be negotiated, is hereby approved; and (f) all references to the DIP Lender in any document, including orders of the Court, shall be construed to mean each participating DIP Lender under the Exit Facility Amendment, notwithstanding any prior reference to a specific lender.

13.     Pursuant to the Plan, including Section 6.1 thereof, upon the Effective Date MBIA (or its designee or assignee) shall automatically be deemed and shall be substituted for Zohar I as the Plaintiff (or movant, as applicable) in all pending Causes of Action, including the Zohar-Patriarch Adversary Proceeding, other than with respect to the Avoidance Actions arising under the Bankruptcy Code asserted in Counts XIX, XX, XXI, and XXII.

14.     Pursuant to the Plan, including Section 6.1 thereof, MBIA's designee or assignee may include, without limitations, Zohar II Recovery LLC.  MBIA or its designee or assignee, as applicable, shall be deemed admitted as a member or partner in the applicable Portfolio Company where previously such membership or partnership interest was in the name of Zohar I, with immediate effect on the Effective Date and without any further action on the part of any party.

## Authorization of Transactions

15.     This Confirmation Order shall, and shall be deemed to, pursuant to sections 363, 1123, 1141 and 1142 of the Bankruptcy Code, authorize all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including, without limitation, the transactions provided for or required to implement in Article VI of the Plan.  Such authorization shall be effective notwithstanding any requirements under non-bankruptcy law.  Any corporate action required by the Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors' officers, directors or shareholders.  Under the

29297607.12

provisions of the Delaware General Corporation Law, including section 303 thereof, and section 1142(b) of the Bankruptcy Code, no action of the respective officers, directors or shareholders of the Debtors is required to authorize the Debtors to effectuate the Plan or to enter into, file, execute and deliver any document, agreement or instrument issued in connection therewith.

### Securities to be Issued Pursuant to the Plan

16.     Pursuant to section 1142(b) of the Bankruptcy Code and without further action by the Bankruptcy Court or by the officers, directors or shareholders of any of the Debtors, Asset Recovery Entities or Litigation Trusts, the Debtors, as applicable, are authorized to issue any notes and interests provided for under the Plan, and to perform all tasks and to execute all documents, agreements and instruments necessary or appropriate to issue any such notes and interests.

### Exemption from Registration Requirements

17.     Any interests issued under the Plan may be offered without registration under the Securities Act or any similar federal, state or local laws in reliance on section 1145(a) of the Bankruptcy Code, section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder, and other applicable exceptions.

### Plan Documents

18.     The forms, terms and provisions of each of the documents filed as part of the Plan Supplement (collectively, the "Plan Documents") are hereby approved.  The Debtors are authorized to amend and supplement the Plan Documents prior to the Effective Date, *provided*: that; such amendments shall not be inconsistent with the terms and provisions of this Confirmation Order or the Plan, including the treatment of Claims thereunder; any amendment that materially and adversely effects creditors shall be subject to Court approval, upon a motion on notice to the

affected creditors and other parties in interest; and the Debtors shall consult with the Controlling Party and the Controlling Class as to any such proposed amendments.

19.     On the Effective Date, the Debtors are hereby authorized to enter into, file, execute and deliver each of the Plan Documents and any other agreement or instrument issued in connection with or required to effectuate any Plan Document without the necessity for any further corporate, board, or shareholder action.  The Plan Documents shall be deemed incorporated into the Plan in all respects.  Each of the Plan Documents, once executed, shall constitute a legal, valid, binding and authorized obligation of the respective parties thereto, enforceable in accordance with its terms.

## Escrow Accounts

20.     On the Effective Date, the Escrow Accounts shall be established and funded as provided for in the Plan and Plan Supplement.

## Turnover of Assets

21.     Any Person that is in or comes into possession of any portion of the Remaining Assets or Litigation Assets is hereby directed to surrender possession of such Transferred Asset to the applicable Asset Recovery Entity or Litigation Trusts.  Notwithstanding anything to the contrary in any document or agreement, including any escrow agreement, as specified in the Plan or in this Confirmation Order, to the extent any amounts were to be paid or otherwise distributed to or for the benefit of any Debtor entity, or were to be paid or distributed pursuant to the Priority of Payments under the Indenture, such amounts shall be remitted to the applicable Asset Recovery

Entity.[3]  For the avoidance of doubt, any funds to be released from the AMZM Escrow Accounts

shall be transferred to the Zohar II Recovery LLC or Zohar III Recovery LLC, as applicable.

## **Modified Substantive Consolidation**

22.    Entry of this Confirmation Order shall constitute the approval, pursuant to sections

105(a), 541, 1123 and 1129 of the Bankruptcy Code, effective as of the Effective Date, of the

substantive consolidation of:  (x) Zohar I Corp. with Zohar I Limited, (y) Zohar II Corp. with

Zohar II Limited, and (z) Zohar III. Corp. with Zohar III Limited for all purposes, including voting,

confirmation, and Distribution. On and after the Effective Date, (i) all assets and liabilities of Zohar

I Corp. shall be pooled with Zohar I Limited, Zohar II Corp. shall be pooled with Zohar II Limited,

and Zohar III. Corp. shall be pooled with Zohar III Limited, (ii) no Distributions shall be made

under the Plan on account of any Claim held by a Debtor against any Debtor with which it has

been consolidated under the Plan, (iii) no Distributions shall be made under the Plan on account

of any Interest held by a Debtor in any other Debtor, and (iv) all guarantees of any Debtors of the

obligations of any other Debtor with which it has been consolidated under the Plan shall be

eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other

Debtor, and any joint or several liability of any of the Debtors shall be one obligation of the

substantively consolidated Debtors.

## **Reservation of Litigation Assets**

23.    Without the need of any party to take any action, the Litigation Trustee of the

Litigation Trusts shall be substituted for the Debtors as plaintiff or movant in all pending matters,

including the Zohar-Patriarch Adversary Proceeding and all contested matters in the Chapter 11

---

[3]      For the avoidance of doubt, any such amounts relating to Zohar I shall be remitted to MBIA pursuant to the applicable escrow agreement.

29297607.12

Cases and all extant appeals therefrom, and from and after the Effective Date, the Litigation

Trustee shall accede to all of the Debtors' right, title, interest, and standing with respect to the

Litigation Assets, notwithstanding any applicable non-bankruptcy law that may provide to the

contrary or otherwise limits the Litigation Trustee's exercise of the Debtors' right, title, interest,

and standing with respect to the Litigation Assets. The failure to specifically identify in the

Disclosure Statement, the Plan, this Confirmation Order, the Plan Supplement or the Litigation

Trust Agreements any Litigation Asset is not intended to and shall not limit the rights of the Estates

and the Litigation Trusts to pursue any such Litigation Assets.  The Debtors and the Estates

expressly reserve all Litigation Assets other than those that are expressly waived, relinquished,

released, compromised, or settled in the Plan, pursuant to this Confirmation Order, or pursuant to

any other order of the Bankruptcy Court, as Litigation Assets for later adjudication, and no

preclusion doctrine (including the doctrines of res judicata, collateral estoppel, judicial estoppel,

equitable estoppel, issue preclusion, claim preclusion, and laches) shall apply to such Litigation

Assets after the Effective Date as a consequence of the Bankruptcy Cases, or the confirmation or

consummation of the Plan.  Moreover, no Person may rely on the absence of a specific reference

in the Disclosure Statement, the Plan, this Confirmation Order, the Plan Supplement or the

Litigation Trust Agreements to any Litigation Assets against such Person as any indication that

the Estates or the Litigation Trusts will not pursue any and all available Litigation Assets against

such Person.  Nothing contained in the Disclosure Statement, the Plan, this Confirmation Order,

the Plan Supplement or the Litigation Trust Agreements will be deemed to be a waiver, release, or

relinquishment of any Litigation Assets which the Debtors and the Estates had immediately prior

to the Effective Date other than those that are expressly waived, relinquished, released,

compromised, or settled in the Plan or the Confirmation Order.

**Cancellation of Agreements and Interests; Termination of Liens**

24.    On the Effective Date, except to the extent otherwise specifically provided for in the Plan:  (a) the Zohar Indentures, the Interests in the Debtors, and all notes, bonds, agreements, instruments, certificates, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, and any other instruments or documents directly or indirectly evidencing, creating, or, relating to any indebtedness or obligations of, or ownership interest, equity, or profits interest in, the Debtors, or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity ownership, or profits interests in the Debtors giving rise to any Claims or Interests (collectively, the "Canceled Debt and Equity Documentation") shall be canceled, surrendered, extinguished and of no force or effect and deemed surrendered to the Debtors and neither the Debtors nor any successor in interest thereto shall have any continuing obligations thereunder; (b) the obligations of the Debtors pursuant, relating, or pertaining to the Zohar Indentures, the Interests in the Debtors and all other Canceled Debt and Equity Documentation shall be fully released, settled, and compromised; and (c) the Indenture Trustee shall be discharged of its duties and the collateral manager for each Debtor shall be terminated.

25.    From and after the Effective Date, the parties to the Zohar Indentures and the Transaction Documents and such other Canceled Debt and Equity Documentation will have no rights against the Debtors arising from or related to the Zohar Indentures and the Transaction Documents and such other Canceled Debt and Equity Documentation, all such rights being expressly extinguished pursuant to this Plan; *provided*, that, notwithstanding Confirmation or the occurrence of the Effective Date, any such Zohar Indenture or other Canceled Debt and Equity Documentation that governs the rights of the Holder of a Claim or Interest shall continue in effect

solely (i) for purposes of enabling Holders of Allowed Claims to receive distributions under the Plan solely as expressly provided herein, including treatment of the Indenture Trustee Claims in Classes 2, 9, 14 and (ii) to enforce the subordination, turnover, and limited recourse provisions of the Zohar Indentures and Transaction Documents, including without limitation, sections 2.6 5.2, 5.4, 5.8, 5.9 and 13.1 and the "Priority of Payments" provisions of each Zohar Indenture and the "Limitations on Recourse" provision of each Management Agreement, including as incorporated herein under Section 2.3 of the Plan.  For the avoidance of doubt and notwithstanding anything to the contrary contained herein or in the Confirmation Order, the Zohar Indentures, or the Litigation Trust Agreements, to the extent that the rights of Holders of Notes to institute claims or causes of action arising under or related to the Indentures have been assigned to any Litigation Trusts, such Litigation Trusts may pursue such claims directly and need not abide by the provisions contained in section 5.8 pertaining to the Indenture Trustee.

26.    On the Effective Date, all liens in favor of the Indenture Trustee securing the Noteholder Claims, whether arising prior to or after the Petition Date, shall be automatically released; *provided*, *however*, that the Indenture Trustee shall retain all of its liens on the Debtors' assets received by the Asset Recovery Entities and received by the Litigation Trusts (but, for the avoidance of doubt, excluding assets transferred to MBIA under the Zohar I Sale Documents or pursuant to the Plan) to secure the payment of the Indenture Trustee Claims until such Indenture Trustee Claims have been satisfied.  For the avoidance of doubt, the liens of the Indenture Trustee on any Litigation Assets (x) shall be senior to any interests held by or any distributions made on account thereof to the beneficiaries of any Litigation Trust whose interests in that Litigation Trust arise from Noteholder Claims, but (y) shall, if applicable, be junior to (i) the DIP Liens and (ii) the liens of any litigation funder for that Litigation Trust (without regard for when any litigation funder

perfects its liens on such assets).  The Indenture Trustee shall not be required to file UCC financing statements or take any other actions to record or perfect its surviving liens pursuant to this paragraph, and such liens shall be deemed perfected and enforceable upon entry of this Confirmation Order.  The DIP Lender and any lender or agent under the Zohar II Litigation Financing Agreement shall not be required to file UCC financing statements or take any other actions to record or perfect its surviving DIP Liens or the liens securing the obligations under any Zohar II Litigation Financing Agreement, and such liens shall be deemed perfected and enforceable upon entry of this Confirmation Order.  Further, if the DIP Lender or any lender or agent under any Zohar II Litigation Financing Agreement subsequently file UCC financing statements or take other action as of the Effective Date to perfect and record their liens, such liens shall be deemed perfected in the same priority as of the date of entry of this Confirmation Order. In the event that there is a sale of any Portfolio Company pursuant to the monetization process under the Settlement Agreement, including the sale of equity in the Portfolio Company or release of liens securing obligations owed by the Portfolio Company, the applicable Asset Recovery Entity is authorized to take all actions necessary to convey the Portfolio Company (or its assets) free and clear of any lien securing the Indenture Trustee Claims or DIP Liens, with such lien attaching to the proceeds of such sale in the same manner and priority as the liens on such Portfolio Company or assets.  Notwithstanding the foregoing, for so long as the Zohar II Recovery LLC or Zohar III Recovery LLC, as applicable, maintains a reserve in the amount of $250,000 (or such lesser amount agreed to by the Indenture Trustee) to secure the payment of the Indenture Trustee Claims in accordance with Section 6.15 of the Plan, the applicable Asset Recovery Entity may make distributions, including distributions of cash or other assets, free and clear of any lien securing the Indenture Trustee Claims and without liability to the Indenture Trustee.

27.     Except as otherwise provided in section 12(c) of this Confirmation Order with respect to MD Term Loan Indebtedness, upon the payment in full of the Allowed DIP Claims, all DIP Liens arising out of or related to the DIP Order or the DIP Credit Agreement shall automatically terminate, and all collateral subject to such liens shall be automatically released from such liens, in each case without further action by the DIP Lender and all obligations of the DIP Debtors (or successors thereto) arising out of or related to the DIP Claims shall be automatically released, in each case without further action by the DIP Lender.

28.     The Indenture Trustee, Noteholders and DIP Lender shall take all actions to effectuate and confirm such termination and release of their liens as reasonably requested by the DIP Debtors, the Wind-Down Administrator, the Asset Recovery Managers or the Litigation Trustee(s).

29.     Any fees and expenses of the Indenture Trustee incurred through the Effective Date that are payable as adequate protection under the DIP Order shall be placed into the Professional Claims Escrow Account and paid subject to the "Prepetition Secured Parties Fee Review Procedures" established in the DIP Order.  The Debtors shall provide the Indenture Trustee with three (3) business days' prior notice of the anticipated Effective Date and on the next business day, the Indenture Trustee shall provide the Debtors with its good faith estimate of the amounts incurred or anticipated to be incurred through the Effective Date.

## Plan Distributions

30.     The Distribution provisions provided for in the Plan are hereby approved in their entirety.

31.     The record date for purposes of determining which Holders of Allowed Zohar III A-1 Note Claims are eligible to receive distributions under the Plan shall be the Effective Date (the "Distribution Record Date").  For purposes of the Distribution of equity in New Zohar III

29297607.12

LLC, MDHI Holdco Interests and New Notes to Holders of Zohar III A-1 Notes, the Distribution

Agent shall be the Asset Recovery Manager for Zohar III Recovery LLC.  Distributions made to

Holders of Allowed Zohar III A-1 Note Claims shall be made to such Holders as of the Distribution

Record Date.  The applicable Distribution Agent shall have no obligation to recognize any transfers

of Zohar III A-1 Note Claims occurring on or after the Distribution Record Date.  Holders of

Allowed Zohar III A-1 Note Claims receiving equity in New Zohar III LLC or MDHI Holdco

Interests shall execute or be deemed to have executed the respective member or shareholder

agreement for such entity.

### Letter of Transmittal for Zohar III A-1 Notes

32.      As soon as practicable after the Effective Date, solely with respect to the Zohar III

A-1 Notes held through brokers, banks, intermediaries, nominees or other agents (each of the

foregoing, a "Note Claims Nominee") as of the Distribution Record Date, the applicable

Distribution Agent, shall send, or cause to be sent, a letter of transmittal substantially in the form

attached hereto as **Exhibit C** (the "Letter of Transmittal") to each Note Claims Nominee, an

authorized agent or representative thereof, or such other and further persons and entities as is

necessary, including, without limitation, Mediant Inc. and Broadridge Financial Solutions, Inc.

(each, a "Note Claims Nominee Party"), and each Note Claims Nominee Party shall promptly

distribute the Letter of Transmittal to all beneficial holders (each, a "Zohar III A-1 Beneficial

Noteholder") for which the related Note Claims Nominee holds Zohar III A-1 Notes.

### Registration Form for Zohar III A-1 Notes

33.      As an express condition to a Zohar III A-1 Beneficial Noteholder receiving any

Distribution to which such Zohar III A-1 Beneficial Noteholder is entitled to under the Plan on

account of the Zohar III A-1 Notes (a "Zohar III A-1 Noteholder Distribution"), each Zohar III A-

1 Beneficial Noteholder shall properly complete and deliver, or cause to be delivered, the

registration form attached to the Letter of Transmittal (the "<u>Registration Form</u>") (along with the necessary supporting documentation) to the applicable Distribution Agent, by no later than 5:00 p.m. (ET) on the date that is 120 days after the Effective Date, in accordance with the terms of the Letter of Transmittal.  Any Zohar III A-1 Beneficial Noteholder that fails to do so shall be deemed to have forfeited its right to any Zohar III A-1 Noteholder Distribution, and shall be forever barred and enjoined from asserting its Zohar III A-1 Note Claim against the Debtors, their Estates, their property, the Asset Recovery Entities, the Litigation Trust(s), or the respective assets of or in any of the foregoing.  Any such forfeited Zohar III A-1 Noteholder Distributions shall be reallocated for Distribution to other Zohar III A-1 Noteholders in accordance with the Plan, free of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary.

### <u>Defects and Disputes Regarding Registration Forms for Zohar III A-1 Notes</u>

34.    The applicable Distribution Agent is authorized to reject any and all Registration Forms (including the supporting documentation) that are not in proper form, the acceptance of which would, in the opinion of the applicable Distribution Agent or its counsel, be unlawful or that do not attach appropriate documentation to substantiate, to the satisfaction of the applicable Distribution Agent, the principal amount of Zohar III A-1 Notes held by such Zohar III A-1 Noteholder as of the Distribution Record Date (the "<u>Principal Amount Held</u>").  The applicable Distribution Agent is further authorized to waive or permit the cure of any defects or irregularities or conditions of delivery as to any particular Registration Form (including as to the supporting documentation).  Unless waived, any such defects or irregularities must be cured within the 120 day period set forth in paragraph 30, or by such later date as the applicable Distribution Agent notifies the affected Zohar III A-1 Noteholder.  Except as otherwise provided herein, neither the applicable Distribution Agent nor any other person will be under any duty to provide notification of such defects or irregularities or failure to satisfy conditions of delivery, nor will any of them

incur any liabilities for failure to provide such notification.  Delivery of any such Registration

Forms will not be deemed to have been made and such Registration Forms will be invalid until

such defects or irregularities have been cured or waived.  Notwithstanding the foregoing, to the

extent that the applicable Distribution Agent disputes the Principal Amount Held as reflected in

the Registration Form and the attached supporting documentation, the applicable Distribution

Agent shall provide, or cause to be provided, written notice of such dispute to such Zohar III A-1

Beneficial Noteholder, along with a reasonably detailed explanation of the applicable Distribution

Agent's position on such matter, and the Zohar III A-1 Beneficial Noteholder shall have fourteen

(14) days from the date of the notice to respond in writing to the applicable Distribution Agent,

and any failure of the Zohar III A-1 Beneficial Noteholder to do so shall be a waiver of the Zohar

III A-1 Beneficial Noteholder's rights to contest the applicable Distribution Agent's position.  To

the extent that the Zohar III A-1 Beneficial Noteholder timely responds and the parties cannot

consensually resolve the dispute, a hearing shall be held before the Bankruptcy Court to resolve

the dispute.  The interpretation of all Registration Form procedures by the applicable Distribution

Agent, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties.

## **Executory Contracts and Unexpired Leases**

35.     On the Effective Date, all of the Debtors' executory contracts and unexpired leases

shall be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions

and requirements of sections 365 and 1123 of the Bankruptcy Code, except to the extent that (a)

the Debtors previously have assumed, assumed and assigned, or rejected such executory contract

or unexpired lease, (b) prior to the Effective Date, the Debtors have Filed a motion to assume,

assume and assign, or reject an executory contract or unexpired lease on which this Court has not

ruled, or (c) an executory contract or unexpired lease is specifically identified in the Plan

Supplement as an executory contract or unexpired lease to be assumed pursuant to the Plan, in

which case such executory contract or unexpired lease shall be assumed by the applicable Debtor(s) and assigned to the appropriate Asset Recovery Entity.  Entry of this Confirmation Order shall constitute approval of all rejections, assumptions and assignments of executory contracts and unexpired leases pursuant to Section 9.1 of the Plan and sections 365(a) and 1123 of the Bankruptcy Code.

36.    **In accordance with the Bar Date Order, the Holder of any Claim arising from the rejection of an executory contract or unexpired lease pursuant to the Plan and this Confirmation Order (a "Rejection Damages Claim") shall file a Proof of Claim on account of such Rejection Damages Claim against the Debtors so as to be received by 5:00 p.m. on the first Business Day that is thirty (30) days after the Effective Date.  Failure to file a Rejection Damages Claim timely and properly shall result in the Rejection Damages Claim being forever barred and extinguished, absent order of the Court to the contrary.**

**Claims Administration Responsibilities; Claims Objections**

37.    Except as otherwise specifically provided in the Plan, or applicable Asset Recovery Entity Agreement or Litigation Trust Agreement, after the Effective Date, the Litigation Trustee shall have the authority (a) to file, withdraw, or litigate to judgment objections to Claims against that Debtor, (b) to settle or compromise any Disputed Claim against that Debtor without any further notice to or action, order, or approval by the Bankruptcy Court, (c) to amend the Bankruptcy Schedules in accordance with the Bankruptcy Code, and (d) to administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, Order, or approval by the Bankruptcy Court.

38.    **Unless otherwise provided in the Plan or by order of the Bankruptcy Court, any objections to Claims (including Administrative Claims and Priority Tax Claims but excluding Professional Claims and claims arising under section 1930 of chapter 123 of title**

28 of the United States Code) shall be Filed not later than 180 days after the later of (i) the **Effective Date or (ii) the date such Claim is Filed, provided that the Litigation Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by Filing a motion with the Bankruptcy Court, and serving all Holders of Claims that would be affected by such extension.** A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

### Administrative Claims

39.     **The Holder of an Administrative Claim, arising after August 26, 2021, other than: (a) Professional Claims; (b) any Administrative Claims that (i) have been previously paid by the Debtors in the ordinary course of business or otherwise or (ii) have otherwise been satisfied; (c) any Administrative Claims previously Filed; (d) any Administrative Claim that has been Allowed by prior order of the Bankruptcy Court; (e) any Administrative Claims held by any Debtor; (f) any claims for fees payable to the Clerk of the Bankruptcy Court; (g) any U.S. Trustee Fees; and (h) any DIP Claims; and (i) any Administrative Claim entitled to administrative expense status pursuant to section 503(b)(1)(D), must File and serve on counsel to the Wind-Down Administrator, a written request for such Administrative Claim so as to be received by 5:00 p.m. on the first Business Day that is thirty (30) days after the Effective Date. Such request must include at a minimum: (i) the name of the Debtor(s) that are purported to be liable for the Administrative Claim; (ii) the name of the Holder of the Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim. Failure to file and serve such notice or request timely and properly shall result in the Administrative Claim being forever barred and extinguished, absent order of the Court to the contrary.** For the avoidance of doubt, the Bar Date for Administrative Claims arising prior to

August 27, 2021 and the Bar Date for Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code, is the date as established in the Bar Date Order.

### Professional Claims

40.    **All Persons seeking Allowance of Professional Claims under the Plan shall File, on or before the date that is thirty (30) calendar days after the Effective Date, their respective applications for final allowance of compensation for services rendered and reimbursement of expenses incurred.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, any Professional Claim of the New Agent shall be resolved as provided in the New Agent Order. **Objections to any Professional Claim must be Filed and served on counsel to the Wind-Down Administrator and the requesting Professional by no later than twenty-one days (21) days after the service of the applicable final request for payment of the Professional Claim.**  Each Holder of an Allowed Professional Claim shall be paid from the Professional Claims Escrow Account (i) within five (5) Business Days from entry of such order approving such Allowed Professional Claim, (ii) with respect to any Professional Claim of the New Agent, within five (5) Business Days after such Professional Claim becomes Allowed in accordance with the New Agent Order, or (iii) at such time and upon such terms as may be agreed upon by such Professional and the Wind-Down Administrator.

### Release, Injunction, Exculpation and Related Provisions

41.    **The release, injunction, exculpation and related provisions set forth in Sections 10.3, 10.4, 10.5 and 10.6 of the Plan are hereby approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities as and to the extent provided for therein and herein.**

29297607.12

**Governmental Approvals**

42.     Each federal, state, commonwealth, local, foreign or other governmental agency is hereby authorized to accept any and all documents necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulation of any federal, state, commonwealth, local, foreign or other governmental agency with respect to the implementation or consummation of the Plan.

**Approval of MD Credit Bid Transaction**

43.     The MD Credit Bid Transaction is approved for purposes of the Settlement Agreement and these Chapter 11 Cases.

**Case Expense Allocation**

44.     The Case Expense Allocation of 55% Zohar II and 45% Zohar III is hereby approved.  As part of the Case Expense Allocation, on the Effective Date, Zohar III shall pay to Zohar II $342,308.  Zohar II shall retain a claim, in an amount to be determined at a later date by the Litigation Trustee and Zohar II Recovery LLC, against Zohar I for the Zohar II Intercompany Claim.  As soon as practicable after the amount of the Zohar II Intercompany Claim is fixed, the Litigation Trustee shall provide fourteen (14) days' notice and an opportunity to object either by (i) Filing a notice with the Court or (ii) if the Chapter 11 Cases are closed, serving a notice upon all holders of Allowed Claims against Zohar I in Classes 14-15 that have not been paid in full as of the date of such notice.

**Order Sustaining Objections to Adequate Protection Requests**

45.     Pursuant to the objection set forth in Section 6.12 of the Plan, the following request for administrative expense, super-priority claims are disallowed: (i) requests by MBIA Insurance Corp. against the Zohar II Debtors [Docket Nos. 2877 and 2878]; (ii) request by Bardin Hill

Investment Partners, LP, on account of funds managed by itself and its affiliates, against the Zohar III Debtors [Docket Nos. 2879 and 2880]; and (iii) request by the Patriarch Stakeholders (as defined in their request) against all Debtors [Docket No. 2882].

**Notice of Entry of Confirmation Order and Effective Date**

46. Pursuant to Bankruptcy Rules 2002 and 3020(c), the Debtors shall serve a notice of entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "Notice of Confirmation and Effective Date"), no later than five (5) Business Days after the Effective Date, on all Holders of Claims or Interests and all other Persons and Entities on which the Confirmation Hearing Notice was served. The form of the Notice of Confirmation and Effective Date is hereby approved in all respects. The Notice of Confirmation and Effective Date shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein, including, without limitation, the rejection of executory contracts and unexpired leases as provided for in the Plan and this Confirmation Order, and any bar dates and deadlines established under the Plan and this Confirmation Order, and no other or further notice of the entry of this Confirmation Order, the occurrence of the Effective Date, and any such rejections, bar dates and deadlines need be given.

**Retention of Jurisdiction**

47. Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall have jurisdiction of all matters in connection with, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including, among other things, with respect to the matters specifically identified in Article XII of the Plan.

## References to Plan Provisions

48.     The failure specifically to include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such article, section, or provision shall have the same validity, binding effect, and enforceability as every other article, section, or provision of the Plan, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety.

## Modification of Plan

49.     The Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation, in compliance with section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019(b); provided, that the Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications.   A Holder of a Claim that has accepted the Plan prior to any alteration, amendment, or modification will be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Holders of the Claims.   Prior to the Effective Date, the Debtors may upon consultation with the applicable Indenture Trustee, Controlling Class and Controlling Party for each Debtor, as the case may be, make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not materially change the treatment of Holders of Claims or Interests.

## Rules Governing Conflicts Between Documents

50.     To the extent that any provision of the Disclosure Statement conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control. This Confirmation Order will govern in the event of any conflict between this Confirmation Order and the Plan.

## Term of Injunctions or Stays

51.     All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect following Confirmation of the Plan, for the maximum period permitted under the Bankruptcy Code, Bankruptcy Rules and the Local Bankruptcy Rules.

## Section 1146 Exemption

52.     Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security or the making or delivery of an instrument of transfer under the Plan shall not be taxed under any law imposing a stamp tax or similar tax.

## Headings

53.     Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

## Plan Voting Record Date

54.     Notwithstanding anything to the contrary in the Disclosure Statement Order, for purposes of Confirmation, the Record Date (as defined in the Disclosure Statement Order) with respect to Holders of Zohar III A-1 Note Claims shall be May 13, 2022.

## Allowed DIP Claims

55.     On the Effective Date, all outstanding DIP Obligations shall be deemed Allowed DIP Claims without the need for the DIP Lender to take any other action, including the filing of

any claim. The Notice of Confirmation and Effective Date shall include the amount of the Allowed DIP Claims. Notwithstanding anything to the contrary in the Final DIP Order, the Debtors shall be authorized to pay, under Paragraph 27(a)(x) of the Final DIP Order, any and all Controlling Secured Party Fees and Expenses through the Effective Date that are or would otherwise be payable under Paragraphs 27(a) or 27(c) of the Final DIP Order.

## <u>Resolution of Certain Objections</u>

56.     From the Effective Date and thereafter, MBIA shall have all rights to such Zohar I PC Assets free and clear of all claims and interests of the Debtors or any other party; provided, however, that all parties reserve all rights and remedies with respect to their existing litigation claims and positions relating to the beneficial ownership of equity interests prior to March 21, 2020 and the Zohar I Auction, including as set forth in the actions captioned as *Zohar CDO 2003-1 v. Patriarch*, No. 17-cv-0307-PKC (S.D.N.Y.) and *In re Zohar III, Corp. (Tilton v. MBIA Inc.)*, Adv. Proc. No. 19-ap-50390 (Bankr. D. Del.) (KBO) and the Zohar-Patriarch Adversary Proceeding; provided further, however, that all parties likewise reserve any and all rights and remedies and defenses they may have with respect to any of the foregoing, including with respect to any litigation claims and positions.

57.     Notwithstanding anything contained in the Plan, the Plan Documents or this Confirmation Order to the contrary, (i) except to the extent of exculpation under Plan Section 10.5, neither the Plan nor this Order shall constitute a release of any claims, interests or Causes of Action held by any Patriarch Stakeholders against any non-Debtor; (ii) except to the extent of exculpation under Plan Section 10.5, neither the Plan nor this Order shall constitute an injunction against the commencement of any claims or Causes of Action held by any Patriarch Stakeholder against any non-Debtor or enjoin the continuation of litigation of the Patriarch Disputed CMA Fee Claims

pursuant to the terms of the CMA Fee Dispute Documents and the claims asserted in the Amended

Equitable Subordination Complain (as defined in the Disclosure Statement), including the appeal

of this Court's March 25, 2022 order [Case No. 19-50390-KBO, Adv. D.I. 236]; and (iii) neither

the Plan nor this Order shall constitute a release of any Patriarch Stakeholders' defenses against

any claims by the Debtors or any of their successors.

## Final Order

58.     This Confirmation Order is a final order and the period for which an appeal must

be filed will commence upon entry of this Confirmation Order.

59.     Except as otherwise provided in this Confirmation Order, if any or all of the

provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by

subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur

shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority,

or Lien incurred or undertaken by the Debtors or any other party authorized or required to take

action to implement the Plan, as applicable, prior to the effective date of such reversal, stay,

modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this

Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance

on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or

vacatur shall be governed in all respects by the provision of this Confirmation Order, the Plan, the

Plan Documents, or any amendments or modifications to the foregoing.

## <u>EXHIBIT A</u>

**Plan**

**<u>EXHIBIT B</u>**

**Notice of Confirmation and Effective Date**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| Zohar III, Corp., *et al.*, | ) Case No. 18-10512 (KBO) |
|  | ) |
| Debtors[1]. | ) Jointly Administered |
|  | ) |

**NOTICE OF (I) CONFIRMATION AND EFFECTIVE DATE OF THE THIRD AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR ZOHAR III, CORP. AND ITS AFFILIATED DEBTORS; (II) DEADLINE UNDER THE PLAN AND CONFIRMATION ORDER TO FILE ADMINISTRATIVE CLAIMS, REJECTION CLAIMS AND PROFESSIONAL FEE CLAIMS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      **Entry of Confirmation Order**.  On [    ], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Confirmation Order") confirming the *Third Amended Joint Plaint of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliate Debtors*, attached as Exhibit A to the Confirmation Order (together with the Plan Supplement, all other exhibits thereto, and as may be amended, modified or supplemented, the "Plan"),[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (the "Debtors").

2.      **Effective Date of the Plan**.  The Effective Date of the Plan was [●], 2022.

3.      **Administrative Claim Bar Date**.  The Holder of an Administrative Claim, arising after August 26, 2021, other than:  (a) Professional Claims; (b) any Administrative Claims that (i) have been previously paid by the Debtors in the ordinary course of business or otherwise or (ii) have otherwise been satisfied; (c) any Administrative Claims previously Filed; (d) any Administrative Claim that has been Allowed by prior order of the Bankruptcy Court; (e) any Administrative Claims held by any Debtor; (f) any claims for fees payable to the Clerk of the Bankruptcy Court; (g) any U.S. Trustee Fees; and (h) any Administrative Claim entitled to administrative expense status pursuant to section 503(b)(1)(D), must File and serve on counsel to the Wind-Down Administrator, at the below address, a written request for such Administrative Claim **so as to be received by [5:00 p.m. on the first Business Day that is thirty (30) days after the Effective Date]**.  Such request must include at a minimum: (i) the name of the Debtor(s) that are purported to be liable for the Administrative Claim; (ii) the name of the Holder of the

---

[1]     The Debtors and the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is c/o FTI Consulting, Inc., 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

[2]     Unless otherwise defined in this notice, capitalized terms used herein shall have the meaning ascribed to them in the Plan.

29297607.12

Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim. Failure to file and serve such notice or request timely and properly shall result in the Administrative Claim being forever barred and extinguished, absent order of the Court to the contrary. For the avoidance of doubt, the Bar Date for Administrative Claims arising prior to August 27, 2021 and the Bar Date for Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code, is the date as established in the Bar Date Order.

| Counsel for the Wind-Down Administrator |
| --- |

4.    **Deadline to File Rejection Claims**. In accordance with the Bar Date Order, the Holder of any Claim arising from the rejection of an executory contract or unexpired lease pursuant to the Plan and the Confirmation Order (a "Rejection Damages Claim") shall file a Proof of Claim on account of such Rejection Damages Claim against the Debtors so as to be received by the [*], at the address below, **by 5:00 p.m. on [the first Business Day that is thirty (30) days after the Effective Date]**. Failure to file a Rejection Damages Claim timely and properly shall result in the Rejection Damages being forever barred and extinguished.



5.    **Deadline to File Professional Claims**. All Persons seeking Allowance of Professional Claims under the Plan shall File, **[on or before the date that is thirty (30) calendar days after the Effective Date]**, their respective applications for final allowance of compensation for services rendered and reimbursement of expenses incurred. Notwithstanding anything to the contrary in the Plan, any objection to any Professional Claim of the New Agent shall be resolved as provided in the New Agent Order. Objections to any Professional Claim must be Filed and served on counsel to the Wind-Down Administrator, at the address set forth herein, and the requesting Professional **by no later than twenty-one days (21) days after the service of the applicable final request for payment of the Professional Claim**.

6.    **Inquiries by Interested Parties**. Copies of the Confirmation Order (to which the Plan is attached as Exhibit A) are available free of charge upon written request (which writing may be an email) to the undersigned counsel for the Debtors. The Confirmation Order is also on file with the Bankruptcy Court and may be viewed by accessing the Bankruptcy Court's website at www.deb.uscourts.gov. To access documents on the Bankruptcy Court's website, you will need a PACER password and login, which can be obtained at www.pacer.psc.uscourts.gov.

7.    **Limiting Notices**. Only Persons that file renewed requests to receive documents pursuant to Bankruptcy Rule 2002 on or after the Effective Date shall be entitled to receive notice under Bankruptcy Rule 2002 with respect to the Chapter 11 Cases. After the Effective Date, the Wind-Down Administrator, Asset Recovery Manager, and Litigation Trustee are authorized to limit the list of Persons receiving documents with respect to the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 to those Persons who have Filed such renewed requests, and any other person required to be served under Local Rule 2002-1(b).

29297607.12

2

8.    **DIP Obligations**.   The amount of the Allowed DIP Claims as of the Effective Date is $[_____].

Dated: [●], 2022
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4421)
Ryan M. Bartley (No. 4985)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Emails:   jpatton@ycst.com
          rbrady@ycst.com
          mnestor@ycst.com
          jbarry@ycst.com
          rbartley@ycst.com

*Counsel to the Debtors and Debtors in Possession*

29297607.12

**EXHIBIT B**

**Letter of Transmittal**

Zohar III, Limited A-1 Notes
CUSIPs: 989769AA2; 989769AB0; 989769AC8

## **LETTER OF TRANSMITTAL TO ZOHAR III A-1 NOTEHOLDERS**

> **\*\*Any Zohar III A-1 Noteholder that fails to properly complete and deliver, or caused to be delivered, the attached Registration Form (along with the necessary supporting documentation) to the Distribution Agent by [\*], 2022[6] in accordance with the terms of this Letter of Transmittal shall be deemed to have forfeited its right to any Zohar III A-1 Noteholder Distribution and shall be forever barred and enjoined from asserting its Zohar III A-1 Note Claim against the Debtors, their Estates, their property, the Asset Recovery Entities, the Litigation Trusts, or the respective assets of or in any of the foregoing. Any such forfeited Zohar III A-1 Noteholder Distributions shall be reallocated for Distribution to other Zohar III A-1 Noteholders in accordance with the Plan, free of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary.\*\***

[\*], 2022

To the beneficial owners, or representatives acting on behalf of the beneficial owners, of the following notes issued pursuant to that certain Indenture among Zohar III, Limited ("Zohar III"), Zohar III Corp., Zohar III, LLC, Natixis Financial Products Inc., and U.S. Bank, N.A., as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association, dated April 6, 2007 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time):

| Zohar III, Limited Class A-1 | CUSIP No. 989769AA2 |
|---|---|
| Zohar III, Limited Class A-1 | CUSIP No. 989769AB0 |
| Zohar III, Limited Class A-1 | CUSIP No. 989769AC8 |

The purpose of this letter (this "Letter of Transmittal") is to provide the Holders (collectively, the "Zohar III A-1 Noteholders") of the above notes (i.e., the Zohar III A-1 Notes) with important information regarding the documentation required by the order [Docket No. \*] (the "Confirmation Order") of the United States Bankruptcy Court for the District of Delaware, dated \*, 2022, confirming the *Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors* (as confirmed, the "Plan"),[7] filed

---

[6] [120 days from the date of the Effective Date]

[7] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Plan. A copy of the Plan and other documents related to the Plan were previously distributed to you in accordance with the Disclosure Statement Order. Additional copies of such documents are available free of charge upon written request (which writing may be an email) to the Distribution Agent.

29297607.12

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

by Zohar III and its affiliated Debtors[8] in jointly administered Case No. 18-10512 (KBO), to effect the Distributions (collectively, the "<u>Zohar III A-1 Noteholder Distributions</u>") to which the Zohar III A-1 Noteholders are entitled to under the Plan on account of the Zohar III A-1 Notes.

Please read this Letter of Transmittal carefully and in its entirety.

### *The Debtors' Plan*

On March 11, 2018, the Debtors commenced voluntary proceedings under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>").  On *, 2022, the Bankruptcy Court confirmed the Plan, and the Effective Date occurred on *, 2022.

Under the Plan, Zohar III A-1 Noteholders are placed in Class 3 (Zohar III A-1 Note Claims).  Pursuant to the Plan, on the Effective Date, the Zohar III A-1 Notes shall be deemed to be reduced in amount to the Zohar III Adjusted Plan Value, and each Holder of a Zohar III A-1 Note Claim shall receive, in exchange for its Zohar III A-1 Note Claim, its pro rata share of (i) the New Notes assumed by Zohar III Recovery LLC, and MDHI Holdco in the aggregate amount of $100,000, (ii) the Zohar III MDHI Holdco Interests, and (iii) 100% of the membership interests in New Zohar III LLC.

Pursuant to the Plan, on the Effective Date, the Zohar III A-1 Notes were canceled, surrendered, extinguished and of no force or effect and deemed surrendered to the Debtors and neither the Debtors nor any successor in interest thereto shall have any continuing obligations thereunder other than making the Zohar III A-1 Noteholder Distribution as provided for in the Plan.

**In order to receive any Zohar III A-1 Noteholder Distribution to which it is entitled to under the Plan, a Zohar III A-1 Noteholder must complete and deliver, or cause to be delivered, the attached Registration Form (along with the necessary supporting documentation) in accordance with the procedures and instructions provided for herein.**

### *General Procedure for Completing and Delivering Registration Form for Zohar III A-1 Noteholder Distribution*

Pursuant to the Plan and Confirmation Order, Zohar III A-1 Noteholders are required to complete the attached registration form (a "<u>Registration Form</u>") and deliver, or cause to be delivered, such form (along with the necessary supporting documentation) to * (the "<u>Distribution Agent</u>"), **by [*], 2022 at 5:00 p.m. (ET) (the "<u>Registration Deadline</u>")**, as an express condition to receiving any Zohar III A-1 Noteholder Distribution to which such Zohar III A-1 Noteholders are entitled to under the Plan, as follows:

---

[8]  The Debtors and the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).

29297607.12

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

*By electronic mail at (preferred method):*

*By regular mail at:*

*By hand delivery or overnight mail at:*

A failure by a Zohar III A-1 Noteholder to deliver, or cause to be delivered, a duly executed Registration Form (along with the necessary supporting documentation) to the Distribution Agent on or prior to the Registration Deadline will result in such Zohar III A-1 Noteholder being deemed to have forfeited its right to any Zohar III A-1 Noteholder Distribution, and to be forever barred and enjoined from asserting its Zohar III A-1 Note Claim against the Debtors, their Estates, their property, the Asset Recovery Entities, the Litigation Trust(s), or the respective assets of or in any of the foregoing.  Any such forfeited Zohar III A-1 Noteholder Distributions shall be reallocated for Distribution to other Zohar III A-1 Noteholders in accordance with the Plan.

***Additional Instructions for Completing and Delivering Registration Form for Zohar III A-1 Noteholder Distribution***

*Principal Amount of Zohar III A-1 Notes Held as of the Distribution Record Date; Supporting Documentation.*  The Confirmation Order establishes [*], 2022 (the "Distribution Record Date") as the record date for Holders of Zohar III A-1 Note Claims and for making Zohar III A-1 Noteholder Distributions. Each Zohar III A-1 Noteholder must identify and certify in the Registration Form the principal amount of Zohar III A-1 Notes held by such Zohar III A-1 Noteholder as of the Distribution Record Date (the "Principal Amount Held").  **In addition, each Zohar III A-1 Noteholder must include with its Registration Form appropriate documentation to substantiate, to the satisfaction of the Distribution Agent, the Principal Amount Held, which may include, without limitation, a brokerage statement.**  To the extent necessary, confidential or commercially sensitive information may be redacted from such documentation.

Because the Distribution Agent will rely on this certification with respect to the Principal Amount Held, it is important that you truthfully and accurately identify the Principal Amount Held and make the requisite certification, and understand that you may be held liable for any misstatement or omission contained therein.  Pursuant to 18 U.S.C. § 157 and other laws related to bankruptcy fraud, a person or entity that makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under the Bankruptcy Code may be fined or imprisoned.

*Information Reporting and Backup Withholding.*  Any payments made to U.S. holders may be subject to information reporting and backup withholding of U.S. federal income tax, currently at a rate of 28%.  Certain U.S. holders, including corporations, are exempt from these information reporting and backup withholding tax rules.  With its Registration Form, U.S. holders should complete and return an Internal Revenue Service ("IRS") Form W-9, certifying that such U.S. holder is a U.S. person, that the taxpayer identification number ("TIN") provided is correct, and

29297607.12

4

Zohar III, Limited A-1 Notes
CUSIPs: 989769AA2; 989769AB0; 989769AC8

that such U.S. holder is not subject to backup withholding. If applicable, non-U.S. holders may be required to complete and submit an IRS Form W-8 BEN, IRS Form W-8 BEN-E or other applicable IRS Form W-8, signed under penalties of perjury, attesting to the holder's foreign status. Such forms may be obtained from the Distribution Agent or at the IRS website at www.irs.gov. If you provide an incorrect TIN or other false information, certifications, or affirmations, you may be subject to penalties imposed by the IRS. If applicable, failure to provide the information on the Form W-9 may subject the payee to a U.S. $50 penalty imposed by the Internal Revenue Service and 28% federal income tax backup withholding on any payment. Backup withholding is not an additional tax. Taxpayers may use amounts withheld as a credit against their U.S. federal income tax liability or may claim a refund of any excess amounts withheld by timely filing a claim for refund with the IRS.

*Signatures.* Signatures on each Registration Form must be guaranteed by a medallion signature guarantor (or supported by a list of authorized signatories). If such Registration Form is signed by a trustee, executor, administrator, guardian, attorney-in-fact, agent, officer of a corporation or other person acting in a fiduciary or representative capacity, such person should so indicate when signing, and proper evidence satisfactory to the Distribution Agent of such person's authority to so act must be submitted. Signatures on such Registration Form must correspond to the names of the holders as shown on the security position listing them as the owner of such Zohar III A-1 Notes.

*Defects and Disputes.* The Distribution Agent is authorized to reject any and all Registration Forms (including the necessary supporting documentation) that are not in proper form, the acceptance of which would, in the opinion of the Distribution Agent or its counsel, be unlawful or that do not attach appropriate documentation to substantiate, to the satisfaction of the Distribution Agent, the Principal Amount Held. The Distribution Agent is further authorized to waive or permit the cure of any defects or irregularities or conditions of delivery as to any particular Registration Form (including as to the necessary supporting documentation). Unless waived, any such defects or irregularities must be cured **by the Registration Deadline**, or by such later date as the Distribution Agent notifies the affected Zohar III A-1 Noteholder. Except as otherwise provided herein, neither the Distribution Agent nor any other person will be under any duty to provide notification of such defects or irregularities or failure to satisfy conditions of delivery, nor will any of them incur any liabilities for failure to provide such notification. Delivery of any such Registration Forms will not be deemed to have been made and such Registration Forms will be invalid until such defects or irregularities have been cured or waived. Notwithstanding the foregoing, to the extent that the Distribution Agent disputes the principal amount of Zohar III A-1 Notes held by the Zohar III A-1 Noteholder as of the Distribution Record Date as reflected in the Registration Form and the attached supporting documentation, the Distribution Agent shall provide, or cause to be provided, written notice of such dispute to such Zohar III A-1 Noteholder, along with a reasonably detailed explanation of the Distribution Agent's position on such matter, and the Zohar III A-1 Noteholder shall have fourteen (14) days from the date of the notice to respond in writing to the Distribution Agent, and any failure of the Zohar III A-1 Noteholder to do so shall be a waiver of the Zohar III A-1 Noteholder's rights to contest the Distribution Agent's position. To the extent that the Zohar III A-1 Noteholder timely responds and the parties cannot consensually resolve the dispute, a hearing shall be held before the Bankruptcy Court to resolve

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

the dispute.  The interpretation of all Registration Form procedures by the Distribution Agent, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties.

*You may direct any questions about this Letter of Transmittal or the attached Registration Form to the Distribution Agent,* *, by mail at *, by telephone to *, or by email to *.

INSERT SENDER  NAME/TITLE

Zohar III, Limited A-1 Notes
CUSIPs: 989769AA2; 989769AB0; 989769AC8

## REGISTRATION FORM

**If you are the Holder of Zohar III A-1 Notes, to receive any Zohar III A-1 Noteholder Distribution to which you are entitled to under the Plan, you must complete and deliver, or cause to be delivered, a duly executed and conforming copy of this Registration Form (along with the necessary supporting documentation) to \* (the "<u>Distribution Agent</u>") on or prior to [\*], 2022 at 5:00 p.m. (ET) (the "<u>Registration Deadline</u>").**

**Any Zohar III A-1 Noteholder that fails to properly complete and deliver, or cause to be delivered, the attached Registration Form (along with the necessary supporting documentation) to the Distribution Agent by the Registration Deadline in accordance with the terms of the Letter of Transmittal shall be deemed to have forfeited its right to any Zohar III A-1 Noteholder Distribution, and shall be forever barred and enjoined from asserting its Zohar III A-1 Note Claim against the Debtors, their Estates, their property, the Asset Recovery Entities, the Litigation Trust(s), or the respective assets of or in any of the foregoing. Any such forfeited Zohar III A-1 Noteholder Distributions shall be reallocated for Distribution to other Zohar III A-1 Noteholders in accordance with the Plan, free of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary.**

**Item 1. Principal Amount of Zohar III A-1 Notes Held As of the Distribution Record Date; Supporting Documentation.** As of the Distribution Record Date (i.e., [\*], 2022), the undersigned Zohar III A-1 Noteholder held the following principal amount of Zohar III A-1 Notes (the "<u>Principal Amount Withheld</u>"): $ _____

Please attach appropriate documentation to substantiate, to the satisfaction of the Distribution Agent, the Principal Amount Held, which may include, without limitation, a brokerage statement. To the extent necessary, confidential or commercially sensitive information may be redacted from such documentation.

**Item 2. Registration Information.** Please provide registration details below.

Name 1 _____

Name 2 _____

Address 1 _____

Address 2 _____

City _____

State/Province _____

29297607.12

Zohar III, Limited A-1 Notes
CUSIPs: 989769AA2; 989769AB0; 989769AC8

Foreign Country Name (If Applicable) _____

Zip/Postal Code _____

U.S. Tax Identification Number _____

Check here if non-U.S. (no TIN)

Phone _____

Fax _____

Email _____

**Item 3.  Return of Completed and Duly Executed Registration Form.**  Please return your completed and duly executed Registration Form (along with the necessary supporting documentation) by one of the following means:

      *By electronic mail at (preferred method):*

      *By regular mail at:*

      *By hand delivery or overnight mail at:*

**Item 4.  Certifications.**

      By completing, executing and delivering this Registration Form (along with the necessary supporting documentation), the undersigned Zohar III A-1 Noteholder:  (i) certifies that all information contained herein is accurate and complete, including, without limitation, with respect to the Principal Amount Held; and (ii) acknowledges that the Distribution Agent will rely on this certification with respect to the Principal Amount Held.

**Item 5.  Execution.**  This Registration Form must be executed by the Zohar III A-1 Noteholder exactly as the Zohar III A-1 Noteholder's name appears on a security position report listing it as the owner of the Zohar III A-1 Notes for which it is completing this Registration Form.  If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a business entity, or other person acting in a fiduciary or representative capacity, please set forth the full title of such person.

Name of Holder (Please Print) _____

Authorized Signature _____

29297607.12

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

Name of Signatory (Please Print) _____

Title, if by Authorized Agent _____

Street Address _____

City, State, Zip Code _____

Telephone Number _____

Date Completed _____

Medallion Signature Guarantee

29297607.12

3

# EXHIBIT 2

## Redlined Changed Pages

unambiguously state that the Plan contains certain release, exculpation and injunction provisions; (g) appropriately tailored; and (h) a bar against any Person or Entity commencing or pursuing a claim or Cause of Action ~~within the Exculpation~~ against any Exculpated Party, except as set forth in the Exculpation in Section 10.5 of the Plan.  Therefore, section 1123(b) of the Bankruptcy Code is satisfied with respect to the Exculpation.

X.     **Plan Injunction (11 U.S.C. § 1123(b))**.  Section 10.6 of the Plan provides for a permanent injunction (the "Plan Injunction") against any Entity commencing or continuing ~~in any manner~~ any action, employment of process, or act to collect, offset (except as permitted by Article 10.8 of the Plan) or recover any claim, interest, or Cause of Action satisfied, released or exculpated under the Plan to the fullest extent authorized or provided by the Bankruptcy Code.  The Plan Injunction is:  (a) within the jurisdiction of the Bankruptcy Code under 28 U.S.C. § 1334; (b) appropriate under applicable law; (c) integral to the Plan, and inextricably bound with other provisions of the Plan, including the Debtor Release, the Third-Party Releases, and the Exculpation; (d) consistent with established practice in this jurisdiction; (e) in the best interests of the Debtors and the Estates; and (f) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notice, the Ballots, and the Notice of Non-Voting Status each unambiguously state that the Plan contains certain release, exculpation and injunction provisions.  Thus, section 1123(b) of the Bankruptcy Code is satisfied with respect to the Plan Injunction.

Y.     **Modified Substantive Consolidation.  (11 U.S.C. § 1123(b)(6)).**  Section 6.4 of the Plan provides for the substantive consolidation of the Debtors as set forth more fully therein. Based on the Confirmation Memorandum and the Katzenstein Declaration and in the absence of any objections by the impacted parties to the proposed substantive consolidation, the Bankruptcy

29297607.12

Priority Claims pursuant to Articles III and IV of the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

II.    **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).**  As set forth in the Voting Declaration, the Voting Classes 3, 10 and 15 voted to accept the Plan, determined without including any acceptance of the Plan by any insider, and no ballots were cast in Class 14. Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to each of the Debtors.

JJ.    **Feasibility (11 U.S.C. § 1129(a)(11)).**  The Plan provides for the liquidation of the Debtors on and after the Effective Date.  The funding on the Effective Date of the Escrow Accounts and the bank accounts of the Asset Recovery Entities and Litigation Trusts, as well as the ability of the latter entities to raise additional capital and anticipated near-term receipts are sufficient to establish the Plan's feasibility.  Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.

KK.    **Payment of Fees (11 U.S.C. § 1129(a)(12)).**  In accordance with section 1129(a)(12) of the Bankruptcy Code, Section 13.5 of the Plan provides that all U.S. Trustee Fees for each Debtor shall be paid until the earlier of such time that a particular case is closed, dismissed or converted, and all U.S. Trustee Fees coming due after the Effective Date shall be paid by the applicable Litigation Trust, thus satisfying section 1129(a)(12) of the Bankruptcy Code.

LL.    **Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16)).**  Sections 1129(a)(13)-(16) of the Bankruptcy Code are inapplicable to Confirmation, as the Debtors:  (a) do not provide "retiree benefits," as defined in section 1114 of the Bankruptcy Code (§ 1129(a)(13));

all Claims, Liens, and other interests, subject only to the expenses of the Litigation Trusts, the DIP

Claims and DIP Liens, and the liens securing the Zohar II Indenture Trustee Claims and Zohar III

Indenture Trustee Claims as set forth in the Plan and the Litigation Trust Agreement or

Agreements, except as set forth herein, the Debtors and Holders of Claims (other than the Indenture

Trustee and DIP Lenders) against and Interests in the Debtors shall have no Claim, Lien or interest

(whatsoever) in or with respect to the Litigation Assets or the Litigation Trusts; and (d) the DIP

Liens shall be granted, affirmed and perfected as set forth in the next paragraph.

11.    The transfer of the Remaining Assets of Zohar II and Zohar III to the Asset

Recovery Entities shall result in a Fund Recovery (as defined in the *Independent Director Service*

*Agreement* [Docket No. 345-1] (the "Service Agreement"), and the Debtors shall pay the resulting

Incentive Fee (as defined in the Service Agreement) to the Independent Director, provided,

however, that the Incentive Fee shall not exceed $676,220.00.

12.    11.The following applies with respect to the second amendment to the DIP Credit

Agreement set forth in the term sheet included as Exhibit L to the Plan Supplement (the "Exit

Facility Amendment") to the extent the Exit Facility Amendment is consummated on or prior to

the Effective Date:  (a) on the Effective Date, the DIP Liens shall attach to (i) all of the assets of

Zohar III owned immediately prior to the Effective Date (including any Litigation Assets of Zohar

IIII), and (ii) solely to the extent that the Controlling Class for Zohar I and Zohar II provide their

prior written consent to the Debtors and the DIP Lenders, and subject to the terms of an applicable

inter-creditor agreement or litigation financing or funding agreement or other similar

documentation to be agreed as between the DIP Lenders and MBIA as the Controlling Class for

Zohar I and Zohar II (such financing or funding agreement, the "Zohar II Litigation Funding

Agreement," a copy of which will be filed in an amendment to the Plan Supplement), all of the

Litigation Assets of any other Debtor; (b) any DIP Liens or otherwise on Litigation Assets contributed by Zohar I and Zohar II shall be subject to the terms of an inter-creditor agreement that is acceptable to MBIA in all respects; (c) the DIP Liens on any MD Term Loan Indebtedness owned by Zohar III shall be released upon closing of the MD Credit Bid Transaction; (d) the "Roll Option" shall be modified to include the treatment provided for in the Exit Facility Amendment; (e) the commitments under the DIP Credit Agreement shall be increased to [$26 million], inclusive of all amounts drawn prior to the Effective Date.  The Exit Facility Amendment, together with such other terms more favorable to the Debtors and their successors as may be negotiated, is hereby approved; and (f) all references to the DIP Lender in any document, including orders of the Court, shall be construed to mean each participating DIP Lender under the Exit Facility Amendment, notwithstanding any prior reference to a specific lender.

13.   12. Pursuant to the Plan, including Section 6.1 thereof, upon the Effective Date MBIA (or its designee or assignee) shall automatically be deemed and shall be substituted for Zohar I as the Plaintiff (or movant, as applicable) in all pending Causes of Action, including the Zohar-Patriarch Adversary Proceeding, other than with respect to the Avoidance Actions arising under the Bankruptcy Code asserted in Counts XIX, XX, XXI, and XXII.

14.   13. Pursuant to the Plan, including Section 6.1 thereof, MBIA's designee or assignee may include, without limitations, Zohar II Recovery LLC.  MBIA or its designee or assignee, as applicable, shall be deemed admitted as a member or partner in the applicable Portfolio Company where previously such membership or partnership interest was in the name of Zohar I, with immediate effect on the Effective Date and without any further action on the part of any party.

**Authorization of Transactions**

15.    ~~14.~~This Confirmation Order shall, and shall be deemed to, pursuant to sections 363, 1123, 1141 and 1142 of the Bankruptcy Code, authorize all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including, without limitation, the transactions provided for or required to implement in Article VI of the Plan.  Such authorization shall be effective notwithstanding any requirements under non-bankruptcy law.   Any corporate action required by the Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors' officers, directors or shareholders.   Under the provisions of the Delaware General Corporation Law, including section 303 thereof, and section 1142(b) of the Bankruptcy Code, no action of the respective officers, directors or shareholders of the Debtors is required to authorize the Debtors to effectuate the Plan or to enter into, file, execute and deliver any document, agreement or instrument issued in connection therewith.

**Securities to be Issued Pursuant to the Plan**

16.    ~~15.~~Pursuant to section 1142(b) of the Bankruptcy Code and without further action by the Bankruptcy Court or by the officers, directors or shareholders of any of the Debtors, Asset Recovery Entities or Litigation Trusts, the Debtors, as applicable, are authorized to issue any notes and interests provided for under the Plan, and to perform all tasks and to execute all documents, agreements and instruments necessary or appropriate to issue any such notes and interests.

**Exemption from Registration Requirements**

17.    ~~16.~~Any interests issued under the Plan may be offered without registration under the Securities Act or any similar federal, state or local laws in reliance on section 1145(a) of the

Bankruptcy Code, section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder, and other applicable exceptions.

## **Plan Documents**

18.    17.The forms, terms and provisions of each of the documents filed as part of the Plan Supplement (collectively, the "Plan Documents") are hereby approved.  The Debtors are authorized to amend and supplement the Plan Documents prior to the Effective Date, *provided*: that; such amendments shall not be inconsistent with the terms and provisions of this Confirmation Order or the Plan, including the treatment of Claims thereunder; any amendment that materially and adversely effects creditors shall be subject to Court approval, upon a motion on notice to the affected creditors and other parties in interest; and the Debtors shall consult with the Controlling Party and the Controlling Class as to any such proposed amendments.

19.    18.On the Effective Date, the Debtors are hereby authorized to enter into, file, execute and deliver each of the Plan Documents and any other agreement or instrument issued in connection with or required to effectuate any Plan Document without the necessity for any further corporate, board, or shareholder action.  The Plan Documents shall be deemed incorporated into the Plan in all respects.  Each of the Plan Documents, once executed, shall constitute a legal, valid, binding and authorized obligation of the respective parties thereto, enforceable in accordance with its terms.

## **Escrow Accounts**

20.    19.On the Effective Date, the Escrow Accounts shall be established and funded as provided for in the Plan and Plan Supplement.

## **Turnover of Assets**

21.    ~~20.~~Any Person that is in or comes into possession of any portion of the Remaining Assets or Litigation Assets is hereby directed to surrender possession of such Transferred Asset to the applicable Asset Recovery Entity or Litigation Trusts.   Notwithstanding anything to the contrary in any document or agreement, including any escrow agreement, as specified in the Plan or in this Confirmation Order, to the extent any amounts were to be paid or otherwise distributed to or for the benefit of any Debtor entity, or were to be paid or distributed pursuant to the Priority of Payments under the Indenture, such amounts shall be remitted to the applicable Asset Recovery Entity.[3]  For the avoidance of doubt, any funds to be released from the AMZM Escrow Accounts shall be transferred to the Zohar II Recovery LLC or Zohar III Recovery LLC, as applicable.

**Modified Substantive Consolidation**

22.    ~~21.~~Entry of this Confirmation Order shall constitute the approval, pursuant to sections 105(a), 541, 1123 and 1129 of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of:  (x) Zohar I Corp. with Zohar I Limited, (y) Zohar II Corp. with Zohar II Limited, and (z) Zohar III. Corp. with Zohar III Limited for all purposes, including voting, confirmation, and Distribution. On and after the Effective Date, (i) all assets and liabilities of Zohar I Corp. shall be pooled with Zohar I Limited, Zohar II Corp. shall be pooled with Zohar II Limited, and Zohar III. Corp. shall be pooled with Zohar III Limited, (ii) no Distributions shall be made under the Plan on account of any Claim held by a Debtor against any Debtor with which it has been consolidated under the Plan, (iii) no Distributions shall be made under the Plan on account of any Interest held by a Debtor in any other Debtor, and (iv) all guarantees of any Debtors of the obligations of any other Debtor with which it has been consolidated under the Plan shall be

---

[3]       For the avoidance of doubt, any such amounts relating to Zohar I shall be remitted to MBIA pursuant to the applicable escrow agreement.

eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor, and any joint or several liability of any of the Debtors shall be one obligation of the substantively consolidated Debtors.

### Reservation of Litigation Assets

23.    ~~22.~~Without the need of any party to take any action, the Litigation Trustee of the Litigation Trusts shall be substituted for the Debtors as plaintiff or movant in all pending matters, including the Zohar-Patriarch Adversary Proceeding and all contested matters in the Chapter 11 Cases and all extant appeals therefrom, and from and after the Effective Date, the Litigation Trustee shall accede to all of the Debtors' right, title, interest, and standing with respect to the Litigation Assets, notwithstanding any applicable non-bankruptcy law that may provide to the contrary or otherwise limits the Litigation Trustee's exercise of the Debtors' right, title, interest, and standing with respect to the Litigation Assets. The failure to specifically identify in the Disclosure Statement, the Plan, this Confirmation Order, the Plan Supplement or the Litigation Trust Agreements any Litigation Asset is not intended to and shall not limit the rights of the Estates and the Litigation Trusts to pursue any such Litigation Assets.  The Debtors and the Estates expressly reserve all Litigation Assets other than those that are expressly waived, relinquished, released, compromised, or settled in the Plan, pursuant to this Confirmation Order, or pursuant to any other order of the Bankruptcy Court, as Litigation Assets for later adjudication, and no preclusion doctrine (including the doctrines of res judicata, collateral estoppel, judicial estoppel, equitable estoppel, issue preclusion, claim preclusion, and laches) shall apply to such Litigation Assets after the Effective Date as a consequence of the Bankruptcy Cases, or the confirmation or consummation of the Plan.  Moreover, no Person may rely on the absence of a specific reference in the Disclosure Statement, the Plan, this Confirmation Order, the Plan Supplement or the Litigation Trust Agreements to any Litigation Assets against such Person as any indication that

the Estates or the Litigation Trusts will not pursue any and all available Litigation Assets against

such Person.  Nothing contained in the Disclosure Statement, the Plan, this Confirmation Order,

the Plan Supplement or the Litigation Trust Agreements will be deemed to be a waiver, release, or

relinquishment of any Litigation Assets which the Debtors and the Estates had immediately prior

to the Effective Date other than those that are expressly waived, relinquished, released,

compromised, or settled in the Plan or the Confirmation Order.

### Cancellation of Agreements and Interests; Termination of Liens

24.    23. On the Effective Date, except to the extent otherwise specifically provided for

in the Plan:  (a) the Zohar Indentures, the Interests in the Debtors, and all notes, bonds, agreements,

instruments, certificates, shares, purchase rights, options, warrants, collateral agreements,

subordination agreements, intercreditor agreements, and any other instruments or documents

directly or indirectly evidencing, creating, or, relating to any indebtedness or obligations of, or

ownership interest, equity, or profits interest in, the Debtors, or any warrants, options, or other

securities exercisable or exchangeable for, or convertible into, debt, equity ownership, or profits

interests in the Debtors giving rise to any Claims or Interests (collectively, the "Canceled Debt and

Equity Documentation") shall be canceled, surrendered, extinguished and of no force or effect and

deemed surrendered to the Debtors and neither the Debtors nor any successor in interest thereto

shall have any continuing obligations thereunder; (b) the obligations of the Debtors pursuant,

relating, or pertaining to the Zohar Indentures, the Interests in the Debtors and all other Canceled

Debt and Equity Documentation shall be fully released, settled, and compromised; and (c) the

Indenture Trustee shall be discharged of its duties and the collateral manager for each Debtor shall

be terminated.

25.   24.From and after the Effective Date, the parties to the Zohar Indentures and the Transaction Documents and such other Canceled Debt and Equity Documentation will have no rights against the Debtors arising from or related to the Zohar Indentures and the Transaction Documents and such other Canceled Debt and Equity Documentation, all such rights being expressly extinguished pursuant to this Plan; *provided*, that, notwithstanding Confirmation or the occurrence of the Effective Date, any such Zohar Indenture or other Canceled Debt and Equity Documentation that governs the rights of the Holder of a Claim or Interest shall continue in effect solely (i) for purposes of enabling Holders of Allowed Claims to receive distributions under the Plan solely as expressly provided herein, including treatment of the Indenture Trustee Claims in Classes 2, 9, 14 and (ii) to enforce the subordination and , turnover , and limited recourse provisions of the Zohar Indentures and Transaction Documents, including without limitation, sections 2.6 5.2, 5.4, 5.8, 5.9 and 13.1 and the "Priority of Payments" provisions of each Zohar Indenture and the "Limitations on Recourse" provision of each Management Agreement, including as incorporated herein under Section 2.3 of the Plan.  For the avoidance of doubt and notwithstanding anything to the contrary contained herein or in the Confirmation Order, the Zohar Indentures, or the Litigation Trust Agreements, to the extent that the rights of Holders of Notes to institute claims or causes of action arising under or related to the Indentures have been assigned to any Litigation Trusts, such Litigation Trusts may pursue such claims directly and need not abide by the provisions contained in section 5.8 pertaining to the Indenture Trustee.

26.   25.On the Effective Date, all liens in favor of the Indenture Trustee securing the Noteholder Claims, whether arising prior to or after the Petition Date, shall be automatically released; *provided*, *however*, that the Indenture Trustee shall retain all of its liens on the Debtors' assets received by the Asset Recovery Entities and received by the Litigation Trusts (but, for the

the proceeds of such sale in the same manner and priority as the liens on such Portfolio Company or assets.  Notwithstanding the foregoing, for so long as the Zohar II Recovery LLC or Zohar III Recovery LLC, as applicable, maintains a reserve in the amount of $250,000 (or such lesser amount agreed to by the Indenture Trustee) to secure the payment of the Indenture Trustee Claims in accordance with Section 6.15 of the Plan, the applicable Asset Recovery Entity may make distributions, including distributions of cash or other assets, free and clear of any lien securing the Indenture Trustee Claims and without liability to the Indenture Trustee.

27.    26.Except as otherwise provided in section 10(c)12(c) of this Confirmation Order with respect to MD Term Loan Indebtedness, upon the payment in full of the Allowed DIP Claims, all DIP Liens arising out of or related to the DIP Order or the DIP Credit Agreement shall automatically terminate, and all collateral subject to such liens shall be automatically released from such liens, in each case without further action by the DIP Lender and all obligations of the DIP Debtors (or successors thereto) arising out of or related to the DIP Claims shall be automatically released, in each case without further action by the DIP Lender.

28.    27.The Indenture Trustee, Noteholders and DIP Lender shall take all actions to effectuate and confirm such termination and release of their liens as reasonably requested by the DIP Debtors, the Wind-Down Administrator, the Asset Recovery Managers or the Litigation Trustee(s).

29.    Any fees and expenses of the Indenture Trustee incurred through the Effective Date that are payable as adequate protection under the DIP Order shall be placed into the Professional Claims Escrow Account and paid subject to the "Prepetition Secured Parties Fee Review Procedures" established in the DIP Order.  The Debtors shall provide the Indenture Trustee with three (3) business days' prior notice of the anticipated Effective Date and on the next business day,

the Indenture Trustee shall provide the Debtors with its good faith estimate of the amounts incurred or anticipated to be incurred through the Effective Date.

**Plan Distributions**

30.    28.The Distribution provisions provided for in the Plan are hereby approved in their entirety.

31.    29.The record date for purposes of determining which Holders of Allowed Zohar III A-1 Note Claims are eligible to receive distributions under the Plan shall be the Effective Date (the "Distribution Record Date"). For purposes of the Distribution of equity in New Zohar III LLC, MDHI Holdco Interests and New Notes to Holders of Zohar III A-1 Notes, the Distribution Agent shall be the Asset Recovery Manager for Zohar III Recovery LLC. Distributions made to Holders of Allowed Zohar III A-1 Note Claims shall be made to such Holders as of the Distribution Record Date. The applicable Distribution Agent shall have no obligation to recognize any transfers of Zohar III A-1 Note Claims occurring on or after the Distribution Record Date. Holders of Allowed Zohar III A-1 Note Claims receiving equity in New Zohar III LLC or MDHI Holdco Interests shall execute or be deemed to have executed the respective member or shareholder agreement for such entity.

**Letter of Transmittal for Zohar III A-1 Notes**

32.    30.As soon as practicable after the Effective Date, solely with respect to the Zohar III A-1 Notes held through brokers, banks, intermediaries, nominees or other agents (each of the foregoing, a "Note Claims Nominee") as of the Distribution Record Date, the applicable Distribution Agent, shall send, or cause to be sent, a letter of transmittal substantially in the form attached hereto as **Exhibit C** (the "Letter of Transmittal") to each Note Claims Nominee, an authorized agent or representative thereof, or such other and further persons and entities as is necessary, including, without limitation, Mediant Inc. and Broadridge Financial Solutions, Inc.

(each, a "Note Claims Nominee Party"), and each Note Claims Nominee Party shall promptly distribute the Letter of Transmittal to all beneficial holders (each, a "Zohar III A-1 Beneficial Noteholder") for which the related Note Claims Nominee holds Zohar III A-1 Notes.

### Registration Form for Zohar III A-1 Notes

33.   31. As an express condition to a Zohar III A-1 Beneficial Noteholder receiving any Distribution to which such Zohar III A-1 Beneficial Noteholder is entitled to under the Plan on account of the Zohar III A-1 Notes (a "Zohar III A-1 Noteholder Distribution"), each Zohar III A-1 Beneficial Noteholder shall properly complete and deliver, or cause to be delivered, the registration form attached to the Letter of Transmittal (the "Registration Form") (along with the necessary supporting documentation) to the applicable Distribution Agent, by no later than 5:00 p.m. (ET) on the date that is 120 days after the Effective Date, in accordance with the terms of the Letter of Transmittal.  Any Zohar III A-1 Beneficial Noteholder that fails to do so shall be deemed to have forfeited its right to any Zohar III A-1 Noteholder Distribution, and shall be forever barred and enjoined from asserting its Zohar III A-1 Note Claim against the Debtors, their Estates, their property, the Asset Recovery Entities, the Litigation Trust(s), or the respective assets of or in any of the foregoing.  Any such forfeited Zohar III A-1 Noteholder Distributions shall be reallocated for Distribution to other Zohar III A-1 Noteholders in accordance with the Plan, free of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary.

### Defects and Disputes Regarding Registration Forms for Zohar III A-1 Notes

34.   32. The applicable Distribution Agent is authorized to reject any and all Registration Forms (including the supporting documentation) that are not in proper form, the acceptance of which would, in the opinion of the applicable Distribution Agent or its counsel, be unlawful or that do not attach appropriate documentation to substantiate, to the satisfaction of the applicable Distribution Agent, the principal amount of Zohar III A-1 Notes held by such Zohar III A-1

## Executory Contracts and Unexpired Leases

35.    ~~33.~~On the Effective Date, all of the Debtors' executory contracts and unexpired leases shall be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except to the extent that (a) the Debtors previously have assumed, assumed and assigned, or rejected such executory contract or unexpired lease, (b) prior to the Effective Date, the Debtors have Filed a motion to assume, assume and assign, or reject an executory contract or unexpired lease on which this Court has not ruled, or (c) an executory contract or unexpired lease is specifically identified in the Plan Supplement as an executory contract or unexpired lease to be assumed pursuant to the Plan, in which case such executory contract or unexpired lease shall be assumed by the applicable Debtor(s) and assigned to the appropriate Asset Recovery Entity.  Entry of this Confirmation Order shall constitute approval of all rejections, assumptions and assignments of executory contracts and unexpired leases pursuant to Section 9.1 of the Plan and sections 365(a) and 1123 of the Bankruptcy Code.

**36.    ~~34.~~In accordance with the Bar Date Order, the Holder of any Claim arising from the rejection of an executory contract or unexpired lease pursuant to the Plan and this Confirmation Order (a "Rejection Damages Claim") shall file a Proof of Claim on account of such Rejection Damages Claim against the Debtors so as to be received by 5:00 p.m. on the first Business Day that is thirty (30) days after the Effective Date.  Failure to file a Rejection Damages Claim timely and properly shall result in the Rejection Damages Claim being forever barred and extinguished, absent order of the Court to the contrary.**

## Claims Administration Responsibilities; Claims Objections

37.    ~~35.~~Except as otherwise specifically provided in the Plan, or applicable Asset Recovery Entity Agreement or Litigation Trust Agreement, after the Effective Date, the Litigation

29297607.12

Trustee shall have the authority (a) to file, withdraw, or litigate to judgment objections to Claims against that Debtor, (b) to settle or compromise any Disputed Claim against that Debtor without any further notice to or action, order, or approval by the Bankruptcy Court, (c) to amend the Bankruptcy Schedules in accordance with the Bankruptcy Code, and (d) to administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, Order, or approval by the Bankruptcy Court.

38.     36.**Unless otherwise provided in the Plan or by order of the Bankruptcy Court, any objections to Claims (including Administrative Claims and Priority Tax Claims but excluding Professional Claims and claims arising under section 1930 of chapter 123 of title 28 of the United States Code) by the Litigation Trustee shall be Filed not later than 180 days after the later of (i) the Effective Date or (ii) the date such Claim is Filed, provided that the Litigation Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by Filing a motion with the Bankruptcy Court, and serving all Holders of Claims that would be affected by such extension.** A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

**Administrative Claims**

39.     37.**The Holder of an Administrative Claim, arising after August 26, 2021, other than:  (a) Professional Claims; (b) any Administrative Claims that (i) have been previously paid by the Debtors in the ordinary course of business or otherwise or (ii) have otherwise been satisfied; (c) any Administrative Claims previously Filed; (d) any Administrative Claim that has been Allowed by prior order of the Bankruptcy Court; (e) any Administrative Claims held by any Debtor; (f) any claims for fees payable to the Clerk of the Bankruptcy Court; (g) any U.S. Trustee Fees; and (h) any DIP Claims; and (i) any Administrative Claim entitled to administrative expense status pursuant to section**

503(b)(1)(D), must File and serve on counsel to the Wind-Down Administrator, a written request for such Administrative Claim so as to be received by 5:00 p.m. on the first Business Day that is thirty (30) days after the Effective Date.  Such request must include at a minimum: (i) the name of the Debtor(s) that are purported to be liable for the Administrative Claim; (ii) the name of the Holder of the Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim.  Failure to file and serve such notice or request timely and properly shall result in the Administrative Claim being forever barred and extinguished, absent order of the Court to the contrary.  For the avoidance of doubt, the Bar Date for Administrative Claims arising prior to August 27, 2021 and the Bar Date for Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code, is the date as established in the Bar Date Order.

<div align="center">

**Professional Claims**

</div>

40.    38.All Persons seeking Allowance of Professional Claims under the Plan shall File, on or before the date that is thirty (30) calendar days after the Effective Date, their respective applications for final allowance of compensation for services rendered and reimbursement of expenses incurred.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, any objection to any Professional Claim of the New Agent shall be resolved as provided in the New Agent Order. **Objections to any Professional Claim must be Filed and served on counsel to the Wind-Down Administrator and the requesting Professional by no later than twenty-one days (21) days after the service of the applicable final request for payment of the Professional Claim.** Each Holder of an Allowed Professional Claim shall be paid from the Professional Claims Escrow Account (i) within five (5) Business Days from entry of such order approving such Allowed Professional Claim, (ii) with respect to

29297607.12

any Professional Claim of the New Agent, within five (5) Business Days after such Professional

Claim becomes Allowed in accordance with the New Agent Order, or (iii) at such time and upon

such terms as may be agreed upon by such Professional and the Wind-Down Administrator.

**Release, Injunction, Exculpation and Related Provisions**

41.    39. **The release, injunction, exculpation and related provisions set forth in Sections 10.3, 10.4, 10.5 and 10.6 of the Plan are hereby approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities as and to the extent provided for therein and herein.**

**Payment of U.S. Trustee Fees; Post-Effective Date Reporting**

40.    U.S. Trustee Fees for each Debtor shall be paid until the earlier of such time that a particular case is closed, dismissed or converted.  For the avoidance of doubt, all U.S. Trustee Fees coming due after the Effective Date of the Plan shall be paid by the Litigation Trust to the greatest extent possible.  Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of claim or requests for payment of Administrative Claim in the Chapter 11 Cases, and shall not be treated as providing any releases under the Plan.  The Wind-Down Administrator shall ensure that all reports required by the U.S. Trustee through the date each Debtor's Chapter 11 Case is closed are Filed when they become due, in a form reasonably acceptable to the U.S. Trustee; provided that the Litigation Trustee shall succeed to this duty if the Wind-Down Administrator is discharged prior to the date any Chapter 11 Case is closed.

**Governmental Approvals**

42.    41. Each federal, state, commonwealth, local, foreign or other governmental agency

is hereby authorized to accept any and all documents necessary or appropriate to effectuate,

implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

This Confirmation Order shall constitute all approvals and consents required, if any, by the laws,

rules or regulation of any federal, state, commonwealth, local, foreign or other governmental agency with respect to the implementation or consummation of the Plan.

### Approval of MD Credit Bid Transaction

43.    42.The MD Credit Bid Transaction is approved for purposes of the Settlement Agreement and these Chapter 11 Cases.

### Case Expense Allocation

44.    43.The Case Expense Allocation of 55% Zohar II and 45% Zohar III is hereby approved.  As part of the Case Expense Allocation, on the Effective Date, Zohar III shall pay to Zohar II $342,308.  Zohar II shall retain a claim, in an amount to be determined at a later date by the Litigation Trustee and Zohar II Recovery LLC, against Zohar I for the Zohar II Intercompany Claim.  As soon as practicable after the amount of the Zohar II Intercompany Claim is fixed, the Litigation Trustee shall provide fourteen (14) days' notice and an opportunity to object either by (i) Filing a notice with the Court or (ii) if the Chapter 11 Cases are closed, serving a notice upon all holders of Allowed Claims against Zohar I in Classes 14-15 that have not been paid in full as of the date of such notice.

### Order Sustaining Objections to Adequate Protection Requests

45.    44.Pursuant to the objection set forth in Section 6.12 of the Plan, the following request for administrative expense, super-priority claims are disallowed: (i) requests by MBIA Insurance Corp. against the Zohar II Debtors [Docket Nos. 2877 and 2878]; (ii) request by Bardin Hill Investment Partners, LP, on account of funds managed by itself and its affiliates, against the Zohar III Debtors [Docket Nos. 2879 and 2880]; and (iii) request by the Patriarch Stakeholders (as defined in their request) against all Debtors [Docket No. 2882].

**Notice of Entry of Confirmation Order and Effective Date**

46.   45. Pursuant to Bankruptcy Rules 2002 and 3020(c), the Debtors shall serve a notice of entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "Notice of Confirmation and Effective Date"), no later than five (5) Business Days after the Effective Date, on all Holders of Claims or Interests and all other Persons and Entities on which the Confirmation Hearing Notice was served.  The form of the Notice of Confirmation and Effective Date is hereby approved in all respects.  The Notice of Confirmation and Effective Date shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein, including, without limitation, the rejection of executory contracts and unexpired leases as provided for in the Plan and this Confirmation Order, and any bar dates and deadlines established under the Plan and this Confirmation Order, and no other or further notice of the entry of this Confirmation Order, the occurrence of the Effective Date, and any such rejections, bar dates and deadlines need be given.

**Retention of Jurisdiction**

47.   46. Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall have jurisdiction of all matters in connection with, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including, among other things, with respect to the matters specifically identified in Article XII of the Plan.

**References to Plan Provisions**

48.   47. The failure specifically to include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such article, section, or provision shall have the same

validity, binding effect, and enforceability as every other article, section, or provision of the Plan, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety.

## **Modification of Plan**

49.    48.The Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation, in compliance with section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019(b); provided, that the Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications.  A Holder of a Claim that has accepted the Plan prior to any alteration, amendment, or modification will be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Holders of the Claims.  Prior to the Effective Date, the Debtors may upon consultation with the applicable Indenture Trustee, Controlling Class and Controlling Party for each Debtor, as the case may be, make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not materially change the treatment of Holders of Claims or Interests.

## **Rules Governing Conflicts Between Documents**

50.    49.To the extent that any provision of the Disclosure Statement conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control. This Confirmation Order will govern in the event of any conflict between this Confirmation Order and the Plan.

29297607.12

**Term of Injunctions or Stays**

51.   50.All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect following Confirmation of the Plan, for the maximum period permitted under the Bankruptcy Code, Bankruptcy Rules and the Local Bankruptcy Rules.

**Section 1146 Exemption**

52.   51.Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security or the making or delivery of an instrument of transfer under the Plan shall not be taxed under any law imposing a stamp tax or similar tax.

**Headings**

53.   52.Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**Plan Voting Record Date**

54.   53.Notwithstanding anything to the contrary in the Disclosure Statement Order, for purposes of Confirmation, the Record Date (as defined in the Disclosure Statement Order) with respect to Holders of Zohar III A-1 Note Claims shall be May 13, 2022.

**Allowed DIP Claims**

55.   54.On the Effective Date, all outstanding DIP Obligations shall be deemed Allowed DIP Claims without the need for the DIP Lender to take any other action, including the filing of any claim.  The Notice of Confirmation and Effective Date shall include the amount of the Allowed DIP Claims.  Notwithstanding anything to the contrary in the Final DIP Order, the Debtors shall be authorized to pay, under Paragraph 27(a)(x) of the Final DIP Order, any and all Controlling Secured Party Fees and Expenses through the Effective Date that are or would otherwise be payable under Paragraphs 27(a) or 27(c) of the Final DIP Order.

**Resolution of Certain Objections**

56.    55. From the Effective Date and thereafter, MBIA shall have all rights to such Zohar I PC Assets free and clear of all claims and interests of the Debtors or any other party; provided, however, that all parties reserve all rights and remedies with respect to their existing litigation claims and positions relating to the beneficial ownership of equity interests prior to March 21, 2020 and the Zohar I Auction, including as set forth in the actions captioned as *Zohar CDO 2003-1 v. Patriarch*, No. 17-cv-0307-PKC (S.D.N.Y.) and *In re Zohar III, Corp. (Tilton v. MBIA Inc.)*, Adv. Proc. No. 19-ap-50390 (Bankr. D. Del.) (KBO) and the Zohar-Patriarch Adversary Proceeding; provided further, however, that all parties likewise reserve any and all rights and remedies and defenses they may have with respect to any of the foregoing, including with respect to any litigation claims and positions.

57.    56. Notwithstanding anything contained in the Plan, the Plan Documents or this Confirmation Order to the contrary, (i) except to the extent of exculpation under Plan Section 10.5, neither the Plan nor this Order shall constitute a release of any claims, interests or Causes of Action held by any Patriarch Stakeholders against any non-Debtor; (ii) except to the extent of exculpation under Plan Section 10.5, neither the Plan nor this Order shall constitute an injunction against the commencement of any claims or Causes of Action held by any Patriarch Stakeholder against any non-Debtor or enjoin the continuation of litigation of the Patriarch Disputed CMA Fee Claims pursuant to the terms of the CMA Fee Dispute Documents and the claims asserted in the Amended Equitable Subordination Complain (as defined in the Disclosure Statement), including the appeal of this Court's March 25, 2022 order [Case No. 19-50390-KBO, Adv. D.I. 236]; and (iii) neither the Plan nor this Order shall constitute a release of any Patriarch Stakeholders' defenses against any claims by the Debtors or any of their successors.

## **Final Order**

58.    57. This Confirmation Order is a final order and the period for which an appeal must be filed will commence upon entry of this Confirmation Order.

59.    58. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors or any other party authorized or required to take action to implement the Plan, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provision of this Confirmation Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim.  Failure to file and serve such notice or request timely and properly shall result in the Administrative Claim being forever barred and extinguished, absent order of the Court to the contrary.  For the avoidance of doubt, the Bar Date for Administrative Claims arising prior to August 27, 2021 and the Bar Date for Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code, is the date as established in the Bar Date Order.

---

Counsel for the Wind-Down Administrator

---

4.    **Deadline to File Rejection Claims**.  In accordance with the Bar Date Order, the Holder of any Claim arising from the rejection of an executory contract or unexpired lease pursuant to the Plan and the Confirmation Order (a "Rejection Damages Claim") shall file a Proof of Claim on account of such Rejection Damages Claim against the Debtors so as to be received by the [*], at the address below, **by 5:00 p.m. on [the first Business Day that is thirty (30) days after the Effective Date]**.  Failure to file a Rejection Damages Claim timely and properly shall result in the Rejection Damages Claim being forever barred and extinguished.



*

5.    **Deadline to File Professional Claims**.  All Persons seeking Allowance of Professional Claims under the Plan shall File, **[on or before the date that is thirty (30) calendar days after the Effective Date]**, their respective applications for final allowance of compensation for services rendered and reimbursement of expenses incurred.  Notwithstanding anything to the contrary in the Plan, any objection to any Professional Claim of the New Agent shall be resolved as provided in the New Agent Order. Objections to any Professional Claim must be Filed and served on counsel to the Wind-Down Administrator, at the address set forth herein, and the requesting Professional **by no later than twenty-one days (21) days after the service of the applicable final request for payment of the Professional Claim**.

6.    **Inquiries by Interested Parties**.  Copies of the Confirmation Order (to which the Plan is attached as Exhibit A) are available free of charge upon written request (which writing may be an email) to the undersigned counsel for the Debtors.  The Confirmation Order is also on file with the Bankruptcy Court and may be viewed by accessing the Bankruptcy Court's website at www.deb.uscourts.gov.  To access documents on the Bankruptcy Court's website, you will need a PACER password and login, which can be obtained at www.pacer.psc.uscourts.gov.

7.    **Limiting Notices**.  Only Persons that file renewed requests to receive documents pursuant to Bankruptcy Rule 2002 on or after the Effective Date shall be entitled to receive notice under Bankruptcy Rule 2002 with respect to the Chapter 11 Cases.  After the Effective Date, the Wind-Down Administrator, Asset Recovery Manager, and Litigation Trustee are authorized to limit the list of Persons receiving documents with respect to the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 to those Persons who have Filed such renewed requests, and any other person required to be served under Local Rule 2002-1(b).

29297607.12

8.    **DIP Obligations**.  The amount of the Allowed DIP Claims as of the Effective Date is $[_____].

Dated: [●], 2022
       Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4421)
Ryan M. Bartley (No. 4985)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Emails:    jpatton@ycst.com
           rbrady@ycst.com
           mnestor@ycst.com
           jbarry@ycst.com
           rbartley@ycst.com

*Counsel to the Debtors and Debtors in Possession*