# **EXHIBIT 1**

**Revised Proposed Order**

29473936.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Zohar III, Corp., *et al.*, | ) | Case No. 18-10512 (KBO) |
| | ) | |
| Debtors[1]. | ) | Jointly Administered **Ref.** |
| | ) | |
| | ) | **Docket No. 3380** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THIRD
AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE
BANKRUPTCY CODE FOR ZOHAR III, CORP. AND ITS AFFILIATED DEBTORS**

Upon consideration of the *Third Amended Joint Plan of Liquidation Under Chapter 11 of
the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors,* dated as of June 15, 2022
attached hereto as **Exhibit A** (together with the Plan Supplement, all other exhibits thereto, and as
may be amended, modified or supplemented, the "Plan"), proposed by the above-captioned debtors
and debtors in possession (collectively, the "Debtors"); and the Bankruptcy Court having entered
an order [Docket No. 3239] (the "Disclosure Statement Order") approving the *Disclosure
Statement for Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy
Code for Zohar III, Corp. and Its Affiliated Debtors*, attached as Exhibit 1 to the Disclosure
Statement Order (the "Disclosure Statement"); and the Debtors having filed the Plan Supplement
on May 6, 2022 [Docket No. 3304] and amended or supplemented the same on June 16, 2022
[Docket No. 3391]; and upon consideration of the affidavit of service filed reflecting compliance
with the notice and solicitation requirements of the Disclosure Statement Order [Docket Nos. 3249

---

[1]    The Debtors and the last four digits of their taxpayer identification number are as follows: Zohar III, Corp.
(9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-
1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is c/o FTI Consulting, Inc., 1166
Avenue of the Americas, 15th Floor, New York, NY 10036.

and 3272] (together, the "Notice Affidavit"); and upon the *Notice of Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of Ballots and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granting Related Relief* [Docket No. 3247] (the "Confirmation Hearing Notice"); and upon consideration of the following filed with the Bankruptcy Court on June 15, 2022:  (i) the *Declaration of Justin K. Edelson of The Reliable Companies Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors, dated April 6, 2022* [Docket No. 3384] (the "Voting Declaration"), (ii) the *Declaration of Michael Katzenstein in Support of Confirmation of Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors* [Docket No. 3383] (the "Katzenstein Declaration"), and (iii) the *Memorandum of Law in Support of Confirmation of the Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp.* [Docket No. 3381] (the "Confirmation Memorandum"); and a hearing to consider Confirmation having been held on June 21, 2022 (the "Confirmation Hearing"); and any objections to the Plan having been resolved or overruled by the Bankruptcy Court pursuant to this Confirmation Order for the reasons set forth on the record of the Confirmation Hearing; and upon the evidence adduced and proffered and the arguments of counsel made at the Confirmation Hearing; and the Bankruptcy Court having reviewed all documents in connection with Confirmation and having heard all parties desiring to be heard; and upon the

record of the Chapter 11 Cases; and after due deliberation and consideration of all of the foregoing; and sufficient cause appearing therefor; the Bankruptcy Court hereby makes the following:

<u>**Findings of Fact and Conclusions of Law**</u>

A.      **Findings of Fact and Conclusions of Law.**  The findings and conclusions set forth herein, together with the findings of fact and conclusions of law set forth in the record of the Confirmation Hearing, constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to this proceeding pursuant to Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      **Capitalized Terms.**  Capitalized terms used herein, but not defined herein, shall have the meaning attributed to such terms in the Plan.

C.      **Jurisdiction and Venue.**  The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution, and the Debtors consent to entry of this Confirmation Order under the Local Rules and Article III of the United States Constitution.  Venue of this proceeding and the Chapter 11 Cases is proper in this district and in this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      **Chapter 11 Petitions.**  On March 11, 2018 (the "<u>Petition Date</u>"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  The cases are jointly administered pursuant to Bankruptcy Rule 1015 and Local Rule 1015-1.

E.      **Judicial Notice.**  The Bankruptcy Court takes judicial notice of the docket in the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed and all orders entered.

F.      **Plan Supplement.**  The filing and notice of the Plan Supplement was appropriate, and complied with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Disclosure Statement Order, and no other or further notice of the Plan Supplement is or shall be required.

G.      **Mailing of Solicitation and Confirmation Materials.**  As is evidenced by the Voting Declaration and the Notice Affidavit, the distribution of the Plan, the Disclosure Statement, the Disclosure Statement Order, the Ballots, the Confirmation Hearing Notice, the Notice of Non-Voting Status (as defined in the Disclosure Statement Order), and the other materials required to be distributed under the Disclosure Statement Order was adequate and sufficient under the circumstances of the Chapter 11 Cases, and all parties required to be given notice of the Disclosure Statement, the Plan, and the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) have been given due, proper, timely, and adequate notice thereof in accordance with the Disclosure Statement Order, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable law, and such parties have had an opportunity to appear and be heard with respect thereto.  Except as otherwise provided herein,

no other or further notice of the Disclosure Statement, the Plan, the Confirmation Hearing, and the entry of this Confirmation Order is required.

H.    **Voting.**  Votes on the Plan were solicited after disclosure of adequate information as defined in section 1125 of the Bankruptcy Code.  The procedures by which the Ballots for acceptance or rejection of the Plan were distributed and tabulated, including as set forth in the Voting Declaration, under the circumstances of the Chapter 11 Cases were fair, properly conducted, and complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, other applicable law, and the Disclosure Statement Order.  The modification of the Record Date for the Holders of Claims in Class 4 (Zohar III A-1 Note Claims) to May 13, 2022 and the extension of the Voting Deadline for such Holders to May 26, 2022, *see* Docket No. 3331, was fair, reasonable and appropriate under the circumstances, and the record of these proceedings reflect that such modification did not lead to any inconsistent or conflicting votes or disenfranchisement of any Holder that materially affected voting on the Plan.  As more fully set forth in the Voting Declaration, the following Classes voted to accept the Plan:

| CLASS | RECEIVED BALLOTS | | | |
|---|---|---|---|---|
| | *Accept* | | *Reject* | |
| | **AMOUNT (% of Amount Voted)** | **NUMBER (% of Number voted)** | **AMOUNT (% of Amount Voted)** | **NUMBER (% of Number Voted)** |
| Class 3 Zohar III A-1 Note Claims | $579,244,253.18 (100%) | 34 (100%) | $0.00 (0%) | 0 (0%) |
| Class 10 Zohar II Credit Enhancement Claims | $806,582,747.23 (100%) | 1 (100%) | $0.00 (0%) | 0 (0%) |

29297607.13

5

| CLASS | RECEIVED BALLOTS | | | |
|---|---|---|---|---|
| | Accept | | Reject | |
| | AMOUNT (% of Amount Voted) | NUMBER (% of Number voted) | AMOUNT (% of Amount Voted) | NUMBER (% of Number Voted) |
| Class 14 Zohar I Indenture Trustee Claims | No votes received | | | |
| Class 15 Zohar I Credit Enhancement Claims | $20,347,522.55 (100%) | 1 (100%) | $0.00 (0%) | 0 (0%) |

I.      **Bankruptcy Rule 3016(a).**  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the proponent of the Plan.

J.      **Burden of Proof**.  The Debtors, as proponents of the Plan, have met their burden of proving the satisfaction of the requirements for confirmation of the Plan set forth in section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard. Further, each witness who testified on behalf of the Debtors at or in connection with the Confirmation Hearing (including by declaration or proffer) was credible, reliable and qualified to testify as to the topic addressed in the testimony of such witness.

K.      **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**  As set forth below, the Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

L.      **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).**  The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code, and no party has objected to the classifications set forth in the Plan.  In addition to Administrative Claims, Professional

Claims, DIP Claims, Adequate Protection Claims, and Priority Tax Claims, which need not be classified, the Plan designates twenty-four (24) Classes of Claims and Interests. The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

M.    **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Article II of the Plan specifies that Holders of Claims in the Classes listed in the following table are Unimpaired (collectively, the "Unimpaired Classes"). Thus, section 1123(a)(2) of the Bankruptcy Code is satisfied.[2]

| Class | Description |
|---|---|
| 1 | Zohar III Other Priority Claims |
| 2 | Zohar III Indenture Trustee Claims |
| 2A | Zohar III Patriarch Disputed CMA Fee Claim |
| 2B | Zohar III Ankura CMA Claims |
| 8 | Zohar II Other Priority Claims |
| 9 | Zohar II Indenture Trustee Claims |
| 9A | Zohar II Patriarch Disputed CMA Fee Claim |
| 9B | Zohar II Ankura CMA Claims |
| 13 | Zohar I Other Priority Claims |
| 14A | Zohar I Patriarch Disputed CMA Fee Claim |

N.    **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).** Article IV of the Plan designates certain Classes of Claims and Interests as Impaired, and specifies

---

[2]    In accordance with Paragraph 31 of the Disclosure Statement Order, notwithstanding anything to the contrary in the Plan or the Disclosure Statement Order, the Holders of Claims in Classes 2A (Zohar III Patriarch Disputed CMA Fee Claim), 9A (Zohar II Patriarch Disputed CMA Fee Claim) and 14A (Zohar III Patriarch Disputed CMA Fee Claim) were provided provisional ballots to vote to accept or reject the Plan, and voted to reject the Plan (the "Patriarch Provisional Ballots"). However, such Holders did not object to the Plan on the grounds that such claims are not "Unimpaired" under the Plan; therefore, consistent with Paragraph 31 of the Disclosure Statement Order, the Patriarch Provisional Ballots are of no effect and were appropriately not counted.

the treatment of Claims and Interests in such Classes.  Specifically, Holders of Claims in the Classes listed in the following table are Impaired and were entitled to vote to accept or reject the Plan (collectively, the "**Voting Classes**").

| Class | Description |
|-------|-------------|
| 3 | Zohar III A-1 Note Claims |
| 10 | Zohar II Credit Enhancement Claims |
| 14 | Zohar I Indenture Trustee Claims |
| 15 | Zohar I Credit Enhancement Claims |

And Holders of Claims and Interests in the Classes listed in the following table are conclusively presumed to have rejected the Plan and were not entitled to vote to accept or reject the Plan (collectively, the "**Deemed Rejecting Classes**").

| Class | Description |
|-------|-------------|
| 4 | Zohar III A-2 Note Claims |
| 5 | Zohar III A-3 Note Claims |
| 6 | Zohar III B Note Claims |
| 7 | Zohar III General Unsecured Claims |
| 11 | Zohar II B Note Claims |
| 12 | Zohar II General Unsecured Claims |
| 16 | Zohar I A-3 Note Claims |
| 17 | Zohar I B Note Claims |
| 18 | Zohar I General Unsecured Claims |
| 19 | Interests |

Thus, section 1123(a)(3) of the Bankruptcy Code is satisfied.

      O.    **No Discrimination (11 U.S.C. § 1123(a)(4)).**  The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Thus, section 1123(a)(4) of the Bankruptcy Code is satisfied.

P.      **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).**  The Plan, including, without limitation, Article VI thereof, provides adequate and proper means for the Plan's implementation.  Thus, section 1123(a)(5) of the Bankruptcy Code is satisfied.

Q.      **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).**  The Plan does not provide for the issuance of any non-voting securities.  Therefore, section 1123(a)(6) of the Bankruptcy Code is satisfied.

R.      **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).**  Pursuant to the Plan, and as disclosed in the Plan Supplement, as of the Effective Date, David Dunn will be appointed as the Wind-Down Administrator, Asset Recovery Manager for Zohar II Recovery LLC, and Zohar III Recovery LLC, and the Litigation Trustee;  John Greene will be appointed as the manager of New Zohar III, LLC, MBIA will be appointed as new manager of New Zohar II, LLC; and the remaining Asset Recovery Entities will be managed by their sole members as set forth in their respective governance documents.  The Wind-Down Administrator, Asset Recovery Manager, and Litigation Trustee will have the rights and responsibilities identified in Article VI of the Plan.  The appointment of the Wind-Down Administrator, Asset Recovery Manager for Zohar II Recovery LLC and Zohar III Recovery LLC, the Litigation Trustee and manager of each other Asset Recovery Entity has been fully disclosed in the Plan Supplement, and the manner for selection of any successor to any of them has been disclosed in the Plan and Plan Supplement documents, and each of the foregoing are consistent with the interest of Holders of Claims and Interests and with public policy, and therefore section 1123(a)(7) of the Bankruptcy Code is satisfied.

29297607.13

9

S.      **Additional Plan Provisions (11 U.S.C. § 1123(b)).**  The Plan's provisions are appropriate, in the best interests of the Debtors and their Estates, and consistent with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

T.      **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).**  Here, as the Plan contemplates the winding down of the Debtors' affairs, the Debtors have exercised appropriate business judgment in proposing a default rejection plan as it pertains to the Debtors' executory contracts and unexpired leases that have not yet been assumed or rejected or that are not yet subject to a pending motion to assume or reject.

U.      **Compromises and Settlements Under and in Connection with the Plan (11 U.S.C. § 1123(b)(3)).**  The settlements and compromises embodied in the Plan comply with and satisfy the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. The settlements and compromises are reasonable, designed to achieve a beneficial and efficient resolution of the Chapter 11 Cases for all parties-in-interest, a sound exercise of the Debtors' business judgment and in the best interest of the Estates.

V.      **Releases (11 U.S.C. § 1123(b))**.  Under the facts and circumstances of the Chapter 11 Cases, the release given by the Debtors and their Estates pursuant to Section 10.3 of the Plan (the "Debtor Release") is:  (a) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (b) appropriate under applicable law; (c) integral to the Plan, and inextricably bound with the other provisions of the Plan; (d) consistent with established practice in this jurisdiction; (e) in exchange for good and valuable consideration provided by the Released Parties; (f) in the best interests of the Debtors and the Estates; (g) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notice, the Ballots, and the Notice of Non-Voting Status each unambiguously state that the Plan

contains certain release, exculpation and injunction provisions; (h) consistent with the Bankruptcy Code and other applicable law; and (i) an appropriate exercise of business judgment.  The releases given by the Releasing Parties pursuant to Section 10.4 of the Plan (the "Third-Party Releases") are (i) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (ii) appropriate under applicable law; (iii) consensual, (iv) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notice, the Ballots, and the Notice of Non-Voting Status each unambiguously state that the Plan contains certain release, exculpation and injunction provisions; and (v) consistent with the Bankruptcy Code and other applicable law.  The Debtor Release is a bar to any Person and Entity asserting against any of the Released Parties any claims or Causes of Action released pursuant to the Debtor Release, and the Third-Party Releases are a bar to any of the Releasing Parties asserting against any of the Released Parties any claims or Causes of Action released pursuant to the Third-Party Releases, as and to the extent provided for in the Plan and this Confirmation Order. Accordingly, section 1123(b) of the Bankruptcy Code is satisfied with respect to the Debtor Release and the Third-Party Releases.

       W.    **Exculpations (11 U.S.C. § 1123(b))**.  Under the facts and circumstances of the Chapter 11 Cases, the exculpation (the "Exculpation") of the Exculpated Parties as provided for in Section 10.5 of the Plan is:  (a) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (b) appropriate under applicable law; (c) integral to the Plan, and inextricably bound with the other provisions of the Plan; (d) consistent with established practice in this jurisdiction; (e) in the best interests of the Debtors and the Estates; (f) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notice, the Ballots, and the Notice of Non-Voting Status each

unambiguously state that the Plan contains certain release, exculpation and injunction provisions; (g) appropriately tailored; and (h) a bar against any Person or Entity commencing or pursuing a claim or Cause of Action against any Exculpated Party, except as set forth in the Exculpation in Section 10.5 of the Plan.  Therefore, section 1123(b) of the Bankruptcy Code is satisfied with respect to the Exculpation.

X.    **Plan Injunction (11 U.S.C. § 1123(b))**.  Section 10.6 of the Plan provides for a permanent injunction (the "Plan Injunction") against any Entity commencing or continuing any action, employment of process, or act to collect, offset (except as permitted by Article 10.8 of the Plan) or recover any claim, interest, or Cause of Action satisfied, released or exculpated under the Plan to the fullest extent authorized or provided by the Bankruptcy Code.  The Plan Injunction is: (a) within the jurisdiction of the Bankruptcy Code under 28 U.S.C. § 1334; (b) appropriate under applicable law; (c) integral to the Plan, and inextricably bound with other provisions of the Plan, including the Debtor Release, the Third-Party Releases, and the Exculpation; (d) consistent with established practice in this jurisdiction; (e) in the best interests of the Debtors and the Estates; and (f) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notice, the Ballots, and the Notice of Non-Voting Status each unambiguously state that the Plan contains certain release, exculpation and injunction provisions.  Thus, section 1123(b) of the Bankruptcy Code is satisfied with respect to the Plan Injunction.

Y.    **Modified Substantive Consolidation.  (11 U.S.C. § 1123(b)(6)).**  Section 6.4 of the Plan provides for the substantive consolidation of the Debtors as set forth more fully therein. Based on the Confirmation Memorandum and the Katzenstein Declaration and in the absence of any objections by the impacted parties to the proposed substantive consolidation, the Bankruptcy

Court finds that such substantive consolidation is justified and appropriate under the circumstances of the Chapter 11 Cases.

        Z.      **Sale of Assets Free and Clear (11 U.S.C. § 1123(b))**.  Sections 6.1 and 6.6 of the Plan, together, provide for the sale of the Remaining Assets of Zohar II and Zohar III to the Asset Recovery Entities, free and clear of all Claims, Liens, and other interests, in exchange for the assumption of certain liabilities of Zohar II and Zohar III.  Sections 6.1 and 6.8 of the Plan, together, provide that the Asset Recovery Entities will then contribute the Litigation Assets to the Litigation Trusts.  The transfer of the Remaining Assets "free and clear" is authorized pursuant to sections 363(f), 1123(b)(6), and 1141(c) of the Bankruptcy Code and as result, the Holders of Claims against and Interests in the Debtors may not pursue those Claims or Interests against the Asset Recovery Entities or their assets (including the Litigation Assets and the other Remaining Assets).  No rights of equitable subordination, if any, shall attach to the Litigation Assets and the other Remaining Assets.

        AA.      **Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))**.  Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123, 1124, 1125, and 1126 of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, the Plan Supplement, and all other matters considered by the Bankruptcy Court in connection with Confirmation.

        BB.      **Plan Proposed in Good Faith and Not by Means Forbidden by Law (11 U.S.C. § 1129(a)(3))**.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan

has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The Plan is the result of extensive arm's-length and good faith negotiations among the Debtors and certain of their significant creditors, including the Controlling Party, the Controlling Class and the Indenture Trustee.  It is clear that the Plan promotes the objectives and purposes of the Bankruptcy Code.

CC.    **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**  The procedures set forth in the Plan for the Bankruptcy Court's approval of the fees, costs, and expenses to be paid in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

DD.    **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**  Article 6.5(f) of the Plan provides that, on the Effective Date, Michael Katzenstein and Joseph J. Farnan, Jr. shall be deemed to have resigned as the Chief Restructuring Officer and Independent Director, respectively, of the Debtors.  As provided in the Plan Supplement, the following shall be appointed as of the Effective Date: David Dunn as the Wind-Down Administrator, Asset Recovery Manager for Zohar II Recovery LLC and Zohar III Recovery LLC, and the Litigation Trustee; John Greene as the manager for New Zohar III, LLC; and MBIA as manager for New Zohar II, LLC.  For the remaining Asset Recovery Entities, they will be managed by their sole members, as set forth in their respective governance documents.  None of these parties are insiders.  Mr. Dunn's compensation was disclosed in the Plan Supplement.  These appointments are consistent with the interests of stakeholders and with public policy.  The appointment of David Dunn as the Wind-

Down Administrator is acceptable to the Controlling Party and the Controlling Class, as required by the Plan. Thus, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

EE.    **No Rate Changes (11 U.S.C. § 1129(a)(6)).**    The Plan does not provide for any rate change that requires regulatory approval. Section 1129(a)(6) of the Bankruptcy Code is thus not applicable.

FF.    **Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**    Based on the Katzenstein Declaration and the Disclosure Statement, the "best interests" test is satisfied as to all Impaired Classes under the Plan, as each Holder of a Claim or Interest in such Impaired Classes will receive or retain property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code

GG.    **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**    The Unimpaired Classes are left unimpaired under the Plan, and as set forth in the Voting Declaration, the Voting Classes have voted to accept the Plan in accordance with the Bankruptcy Code, thereby satisfying section 1129(a)(8) as to those Classes. However, the Deemed Rejecting Classes are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, section 1129(a)(8) of the Bankruptcy Code has not and cannot be satisfied. The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b) of the Bankruptcy Code, as set forth below.

HH.    **Treatment of Administrative, Professional, DIP, Adequate Protection, Priority Tax, and Priority Claims (11 U.S.C. § 1129(a)(9)).**    The treatment of Administrative Claims, Professional Claims, DIP Claims, Adequate Protection Claims, Priority Tax Claims, and

Priority Claims pursuant to Articles III and IV of the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

II.    **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).**  As set forth in the Voting Declaration, the Voting Classes 3, 10 and 15 voted to accept the Plan, determined without including any acceptance of the Plan by any insider, and no ballots were cast in Class 14. Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to each of the Debtors.

JJ.    **Feasibility (11 U.S.C. § 1129(a)(11)).**  The Plan provides for the liquidation of the Debtors on and after the Effective Date.  The funding on the Effective Date of the Escrow Accounts and the bank accounts of the Asset Recovery Entities and Litigation Trusts, as well as the ability of the latter entities to raise additional capital and anticipated near-term receipts are sufficient to establish the Plan's feasibility.  Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.

KK.    **Payment of Fees (11 U.S.C. § 1129(a)(12)).**    In accordance with section 1129(a)(12) of the Bankruptcy Code, Section 13.5 of the Plan provides that all U.S. Trustee Fees for each Debtor shall be paid until the earlier of such time that a particular case is closed, dismissed or converted, thus satisfying section 1129(a)(12) of the Bankruptcy Code.

LL.    **Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16)).**    Sections 1129(a)(13)-(16) of the Bankruptcy Code are inapplicable to Confirmation, as the Debtors:  (a) do not provide "retiree benefits," as defined in section 1114 of the Bankruptcy Code (§ 1129(a)(13)); (b) have no domestic support obligations (§ 1129(a)(14)); (c) are not individuals (§ 1129(a)(15)); and (d) are not nonprofit corporations (§ 1129(a)(16)).

MM.    **No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C. § 1129(b)).**  The classification and treatment of Claims and Interests in the Deemed Rejecting

Classes is proper pursuant to section 1122 of the Bankruptcy Code, does not discriminate unfairly, and is fair and equitable pursuant to section 1129(b)(1) of the Bankruptcy Code. There is no Class of Claims or Interests junior to the Holders of Claims or Interests in the Deemed Rejecting Classes that will receive or retain property under the Plan on account of their Claims or Interests. The record establishes that no party has made a *bona fide* offer for, or is willing to offer value to acquire each Debtor's Remaining Assets in excess of (i) the Allowed amounts of the Credit Enhancement Liability Claims, with respect to Zohar I and Zohar II, and (ii) the Allowed amounts of the Zohar III A-1 Note Claims for Zohar III. Accordingly, the Plan does not violate the absolute priority rule, does not discriminate unfairly, and is fair and equitable with respect to each Class that is deemed to have rejected the Plan. Thus, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to the Deemed Rejecting Classes.

NN.     **Only One Plan (11 U.S.C. § 1129(c)).** The Plan is the only chapter 11 plan currently proposed in the Chapter 11 Cases, and section 1129(c) of the Bankruptcy Code is therefore satisfied.

OO.     **Principal Purpose (11 U.S.C. § 1129(d)).** The principal purpose of the Plan is neither the avoidance of taxes, nor the avoidance of the application of section 5 of the Securities Act of 1933, and no party in interest has alleged otherwise. Accordingly, section 1129(d) of the Bankruptcy Code is inapplicable. The Chapter 11 Cases also are not "small business cases" and, therefore, section 1129(e) of the Bankruptcy Code is inapplicable.

PP.     **Satisfaction of Confirmation Requirements.** Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code, and should be confirmed.

QQ.     **Good Faith Solicitation (11 U.S.C. § 1125(e)).**  The Debtors and their officers, directors, advisors, Professionals, and other agents and representatives, as well as the Controlling Party and the Controlling Class and their respective professionals, agents and representatives, have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and they are entitled to the benefits and protections afforded by section 1125(e) of the Bankruptcy Code.

RR.     **Modifications to the Plan (11 U.S.C. § 1127(a)).**  The Debtors modified the Plan subsequent to soliciting votes to accept or reject the Plan in a manner consistent with section 1127(a) of the Bankruptcy Code, as reflected in the Plan attached hereto as **Exhibit A**.  Such modifications do not adversely change the treatment of any Holder of a Claim or Interest and, as such, are deemed accepted by all Holders who have previously accepted the Plan.  The Plan as amended complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code, and no further solicitation is required.

SS.     **Retention of Jurisdiction.**  The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

**Based upon the foregoing findings, and upon the record made before the Bankruptcy Court at or in connection with the Confirmation Hearing, and good and sufficient cause appearing therefor, it is hereby ORDERED, ADJUDGED AND DECREED THAT:**

**<u>Confirmation of the Plan</u>**

1.     Subject to the terms of this Confirmation Order, the Plan in the form attached hereto as Exhibit A is approved and confirmed pursuant to section 1129 of the Bankruptcy Code, and any

objections to the Plan have been resolved or overruled by the Bankruptcy Court for the reasons set forth on the record of the Confirmation Hearing.

2.      The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

## Classification and Treatment

3.      The Plan's classification scheme is approved.

4.      The classifications set forth on the Ballots:  (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes; (c) may not be relied upon by any Holder as representing the actual classification of such Claim under the Plan for Distribution purposes; and (d) shall not be binding on the Debtors and any Wind-Down Administrator, Asset Recovery Manager or Litigation Trustee, except for Plan voting purposes.

## Binding Effect

5.      Subject to the terms of this Confirmation Order, in accordance with section 1141 and other applicable provisions of the Bankruptcy Code, and notwithstanding any otherwise applicable law, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, Wind-Down Administrator, each Asset Recovery Entity and Asset Recovery Manager, the Litigation Trusts and Litigation Trustee, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted or voted to accept the Plan), all Persons and Entities that are subject to releases, exculpations, and injunctions provided for in the Plan, each Person or Entity acquiring property under the Plan, any and all non-Debtor parties to contracts or leases with the Debtors, and any and all other Persons and Entities.

29297607.13

## Authorization to Implement the Plan

6.       In accordance with the terms of the Plan and this Confirmation Order, the Debtors, the Wind-Down Administrator, each Asset Recovery Manager, and the Litigation Trustee, as applicable, are authorized to take or cause to be taken all corporate or other actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, and to execute, enter into or otherwise make effective all documents arising in connection therewith.

7.       Pursuant to the Plan, the Debtors and Asset Recovery Entities are authorized to form the Litigation Trusts disclosed in the Plan Supplement as of the Confirmation Date, and any references in the Confirmation Order or in the Plan to a Litigation Trust, Litigation Trustee, or Litigation Assets shall be deemed to apply to each Litigation Trust formed by the Debtors, each Litigation Trustee thereof, and the Litigation Assets therein.

8.       Prior to and on the Effective Date, on behalf of the Debtors, Michael Katzenstein, the Debtors' Chief Restructuring Officer, is authorized to take or cause to be taken all corporate or other actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, and to execute, enter into or otherwise make effective all documents arising in connection therewith.

## Enforceability of the Plan

9.       Pursuant to sections 1123, 1141 and 1142 of the Bankruptcy Code, subject to the occurrence of the Effective Date, the Plan and any agreements entered into thereunder shall be, and hereby are, valid, binding and enforceable.

## Transfer of Assets

10.       Notwithstanding any prohibition of assignability or transferability under applicable non-bankruptcy law or any contract or agreement, on the Effective Date:  (a) Zohar II and Zohar III shall be deemed to have automatically transferred to each Asset Recovery Entity all of their

29297607.13

right, title, and interest in and to all of the Remaining Assets in accordance with sections 1123, 363 and 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Asset Recovery Entity free and clear of all Claims, Liens, and other interests, subject only to the expenses of the Asset Recovery Entity, liens securing the applicable Indenture Trustee Claims as set forth in the Plan and with respect to the Remaining Assets of the DIP Debtors, the DIP Claims and the liens securing the DIP Claims (the "DIP Liens"), and thereupon, the Debtors and Holders of Claims and Interests against the Debtors (other than the Indenture Trustee and DIP Lenders) shall have no Claim, Lien or interest (whatsoever) in or with respect to the Remaining Assets so transferred or the Asset Recovery Entities; (b) the Asset Recovery Entity succeeding to the Debtors' interest in any limited liability company or partnership shall be deemed admitted as a member or partner in the applicable Portfolio Company, with immediate effect on the Effective Date and without any further action on the part of any party; (c) pursuant to the terms and conditions of the Litigation Trust Agreements, as applicable, all right, title, and interest in and to all of the Litigation Assets shall be deemed to and shall have automatically transferred to the Litigation Trusts (through the respective Asset Recovery Entity, where applicable) in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Litigation Trusts free and clear of all Claims, Liens, and other interests, subject only to the expenses of the Litigation Trusts, the DIP Claims and DIP Liens, and the liens securing the Zohar II Indenture Trustee Claims and Zohar III Indenture Trustee Claims as set forth in the Plan and the Litigation Trust Agreement or Agreements, except as set forth herein, the Debtors and Holders of Claims (other than the Indenture Trustee and DIP Lenders) against and Interests in the Debtors shall have no Claim, Lien or interest (whatsoever) in or with respect to the Litigation Assets or the Litigation Trusts; and (d) the DIP Liens shall be granted, affirmed and perfected as set forth in the next paragraph.

29297607.13

11.     The transfer of the Remaining Assets of Zohar II and Zohar III to the Asset Recovery Entities shall result in a Fund Recovery (as defined in the *Independent Director Service Agreement* [Docket No. 345-1] (the "Service Agreement"), and the Debtors shall pay the resulting Incentive Fee (as defined in the Service Agreement) to the Independent Director, provided, however, that the Incentive Fee shall not exceed $676,220.00.

12.     The following applies with respect to the second amendment to the DIP Credit Agreement set forth in the term sheet included as Exhibit L to the Plan Supplement (the "Exit Facility Amendment") to the extent the Exit Facility Amendment is consummated on or prior to the Effective Date:  (a) on the Effective Date, the DIP Liens shall attach to (i) all of the assets of Zohar III owned immediately prior to the Effective Date (including any Litigation Assets of Zohar IIII), and (ii) solely to the extent that the Controlling Class for Zohar I and Zohar II provide their prior written consent to the Debtors and the DIP Lenders, and subject to the terms of an applicable inter-creditor agreement or litigation financing or funding agreement or other similar documentation to be agreed as between the DIP Lenders and MBIA as the Controlling Class for Zohar I and Zohar II (such financing or funding agreement, the "Zohar II Litigation Funding Agreement," a copy of which will be filed in an amendment to the Plan Supplement), all of the Litigation Assets of any other Debtor; (b) any DIP Liens or otherwise on Litigation Assets contributed by Zohar I and Zohar II shall be subject to the terms of an inter-creditor agreement that is acceptable to MBIA in all respects; (c) the DIP Liens on any MD Term Loan Indebtedness owned by Zohar III shall be released upon closing of the MD Credit Bid Transaction; (d) the "Roll Option" shall be modified to include the treatment provided for in the Exit Facility Amendment; (e) the commitments under the DIP Credit Agreement shall be increased to $26 million, inclusive of all amounts drawn prior to the Effective Date.  The Exit Facility Amendment, together with

such other terms more favorable to the Debtors and their successors as may be negotiated, is hereby approved; and (f) all references to the DIP Lender in any document, including orders of the Court, shall be construed to mean each participating DIP Lender under the Exit Facility Amendment, notwithstanding any prior reference to a specific lender.

13.     Pursuant to the Plan, including Section 6.1 thereof, upon the Effective Date MBIA (or its designee or assignee) shall automatically be deemed and shall be substituted for Zohar I as the Plaintiff (or movant, as applicable) in all pending Causes of Action, including the Zohar-Patriarch Adversary Proceeding, other than with respect to the Avoidance Actions arising under the Bankruptcy Code asserted in Counts XIX, XX, XXI, and XXII.

14.     Pursuant to the Plan, including Section 6.1 thereof, MBIA's designee or assignee may include, without limitations, Zohar II Recovery LLC.  MBIA or its designee or assignee, as applicable, shall be deemed admitted as a member or partner in the applicable Portfolio Company where previously such membership or partnership interest was in the name of Zohar I, with immediate effect on the Effective Date and without any further action on the part of any party.

## Authorization of Transactions

15.     This Confirmation Order shall, and shall be deemed to, pursuant to sections 363, 1123, 1141 and 1142 of the Bankruptcy Code, authorize all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including, without limitation, the transactions provided for or required to implement in Article VI of the Plan.  Such authorization shall be effective notwithstanding any requirements under non-bankruptcy law.  Any corporate action required by the Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors' officers, directors or shareholders.  Under the

provisions of the Delaware General Corporation Law, including section 303 thereof, and section 1142(b) of the Bankruptcy Code, no action of the respective officers, directors or shareholders of the Debtors is required to authorize the Debtors to effectuate the Plan or to enter into, file, execute and deliver any document, agreement or instrument issued in connection therewith.

## Securities to be Issued Pursuant to the Plan

16.     Pursuant to section 1142(b) of the Bankruptcy Code and without further action by the Bankruptcy Court or by the officers, directors or shareholders of any of the Debtors, Asset Recovery Entities or Litigation Trusts, the Debtors, as applicable, are authorized to issue any notes and interests provided for under the Plan, and to perform all tasks and to execute all documents, agreements and instruments necessary or appropriate to issue any such notes and interests.

## Exemption from Registration Requirements

17.     Any interests issued under the Plan may be offered without registration under the Securities Act or any similar federal, state or local laws in reliance on section 1145(a) of the Bankruptcy Code, section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder, and other applicable exceptions.

## Plan Documents

18.     The forms, terms and provisions of each of the documents filed as part of the Plan Supplement (collectively, the "Plan Documents") are hereby approved.  The Debtors are authorized to amend and supplement the Plan Documents prior to the Effective Date, *provided*: that; such amendments shall not be inconsistent with the terms and provisions of this Confirmation Order or the Plan, including the treatment of Claims thereunder; any amendment that materially and adversely effects creditors shall be subject to Court approval, upon a motion on notice to the

affected creditors and other parties in interest; and the Debtors shall consult with the Controlling Party and the Controlling Class as to any such proposed amendments.

19.    On the Effective Date, the Debtors are hereby authorized to enter into, file, execute and deliver each of the Plan Documents and any other agreement or instrument issued in connection with or required to effectuate any Plan Document without the necessity for any further corporate, board, or shareholder action.  The Plan Documents shall be deemed incorporated into the Plan in all respects.  Each of the Plan Documents, once executed, shall constitute a legal, valid, binding and authorized obligation of the respective parties thereto, enforceable in accordance with its terms.

## Escrow Accounts

20.    On the Effective Date, the Escrow Accounts shall be established and funded as provided for in the Plan and Plan Supplement.

## Turnover of Assets

21.    Any Person that is in or comes into possession of any portion of the Remaining Assets or Litigation Assets is hereby directed to surrender possession of such Transferred Asset to the applicable Asset Recovery Entity or Litigation Trusts.  Notwithstanding anything to the contrary in any document or agreement, including any escrow agreement, as specified in the Plan or in this Confirmation Order, to the extent any amounts were to be paid or otherwise distributed to or for the benefit of any Debtor entity, or were to be paid or distributed pursuant to the Priority of Payments under the Indenture, such amounts shall be remitted to the applicable Asset Recovery

Entity.[3]  For the avoidance of doubt, any funds to be released from the AMZM Escrow Accounts shall be transferred to the Zohar II Recovery LLC or Zohar III Recovery LLC, as applicable.

## Modified Substantive Consolidation

22.    Entry of this Confirmation Order shall constitute the approval, pursuant to sections 105(a), 541, 1123 and 1129 of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of:  (x) Zohar I Corp. with Zohar I Limited, (y) Zohar II Corp. with Zohar II Limited, and (z) Zohar III. Corp. with Zohar III Limited for all purposes, including voting, confirmation, and Distribution. On and after the Effective Date, (i) all assets and liabilities of Zohar I Corp. shall be pooled with Zohar I Limited, Zohar II Corp. shall be pooled with Zohar II Limited, and Zohar III. Corp. shall be pooled with Zohar III Limited, (ii) no Distributions shall be made under the Plan on account of any Claim held by a Debtor against any Debtor with which it has been consolidated under the Plan, (iii) no Distributions shall be made under the Plan on account of any Interest held by a Debtor in any other Debtor, and (iv) all guarantees of any Debtors of the obligations of any other Debtor with which it has been consolidated under the Plan shall be eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor, and any joint or several liability of any of the Debtors shall be one obligation of the substantively consolidated Debtors.

## Reservation of Litigation Assets

23.    Without the need of any party to take any action, the Litigation Trustee of the Litigation Trusts shall be substituted for the Debtors as plaintiff or movant in all pending matters, including the Zohar-Patriarch Adversary Proceeding and all contested matters in the Chapter 11

---

[3]    For the avoidance of doubt, any such amounts relating to Zohar I shall be remitted to MBIA pursuant to the applicable escrow agreement.

29297607.13

Cases and all extant appeals therefrom, and from and after the Effective Date, the Litigation Trustee shall accede to all of the Debtors' right, title, interest, and standing with respect to the Litigation Assets, notwithstanding any applicable non-bankruptcy law that may provide to the contrary or otherwise limits the Litigation Trustee's exercise of the Debtors' right, title, interest, and standing with respect to the Litigation Assets. The failure to specifically identify in the Disclosure Statement, the Plan, this Confirmation Order, the Plan Supplement or the Litigation Trust Agreements any Litigation Asset is not intended to and shall not limit the rights of the Estates and the Litigation Trusts to pursue any such Litigation Assets. The Debtors and the Estates expressly reserve all Litigation Assets other than those that are expressly waived, relinquished, released, compromised, or settled in the Plan, pursuant to this Confirmation Order, or pursuant to any other order of the Bankruptcy Court, as Litigation Assets for later adjudication, and no preclusion doctrine (including the doctrines of res judicata, collateral estoppel, judicial estoppel, equitable estoppel, issue preclusion, claim preclusion, and laches) shall apply to such Litigation Assets after the Effective Date as a consequence of the Bankruptcy Cases, or the confirmation or consummation of the Plan. Moreover, no Person may rely on the absence of a specific reference in the Disclosure Statement, the Plan, this Confirmation Order, the Plan Supplement or the Litigation Trust Agreements to any Litigation Assets against such Person as any indication that the Estates or the Litigation Trusts will not pursue any and all available Litigation Assets against such Person. Nothing contained in the Disclosure Statement, the Plan, this Confirmation Order, the Plan Supplement or the Litigation Trust Agreements will be deemed to be a waiver, release, or relinquishment of any Litigation Assets which the Debtors and the Estates had immediately prior to the Effective Date other than those that are expressly waived, relinquished, released, compromised, or settled in the Plan or the Confirmation Order.

29297607.13

**Cancellation of Agreements and Interests; Termination of Liens**

24.     On the Effective Date, except to the extent otherwise specifically provided for in the Plan:  (a) the Zohar Indentures, the Interests in the Debtors, and all notes, bonds, agreements, instruments, certificates, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, and any other instruments or documents directly or indirectly evidencing, creating, or, relating to any indebtedness or obligations of, or ownership interest, equity, or profits interest in, the Debtors, or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity ownership, or profits interests in the Debtors giving rise to any Claims or Interests (collectively, the "Canceled Debt and Equity Documentation") shall be canceled, surrendered, extinguished and of no force or effect and deemed surrendered to the Debtors and neither the Debtors nor any successor in interest thereto shall have any continuing obligations thereunder; (b) the obligations of the Debtors pursuant, relating, or pertaining to the Zohar Indentures, the Interests in the Debtors and all other Canceled Debt and Equity Documentation shall be fully released, settled, and compromised; and (c) the Indenture Trustee shall be discharged of its duties and the collateral manager for each Debtor shall be terminated.

25.     From and after the Effective Date, the parties to the Zohar Indentures and the Transaction Documents and such other Canceled Debt and Equity Documentation will have no rights against the Debtors arising from or related to the Zohar Indentures and the Transaction Documents and such other Canceled Debt and Equity Documentation, all such rights being expressly extinguished pursuant to this Plan; *provided*, that, notwithstanding Confirmation or the occurrence of the Effective Date, any such Zohar Indenture or other Canceled Debt and Equity Documentation that governs the rights of the Holder of a Claim or Interest shall continue in effect

solely (i) for purposes of enabling Holders of Allowed Claims to receive distributions under the Plan solely as expressly provided herein, including treatment of the Indenture Trustee Claims in Classes 2, 9, 14 and (ii) to enforce the subordination, turnover, and limited recourse provisions of the Zohar Indentures and Transaction Documents, including without limitation, sections 2.6 5.2, 5.4, 5.8, 5.9 and 13.1 and the "Priority of Payments" provisions of each Zohar Indenture and the "Limitations on Recourse" provision of each Management Agreement, including as incorporated herein under Section 2.3 of the Plan. For the avoidance of doubt and notwithstanding anything to the contrary contained herein or in the Confirmation Order, the Zohar Indentures, or the Litigation Trust Agreements, to the extent that the rights of Holders of Notes to institute claims or causes of action arising under or related to the Indentures have been assigned to any Litigation Trusts, such Litigation Trusts may pursue such claims directly and need not abide by the provisions contained in section 5.8 pertaining to the Indenture Trustee.

26.     On the Effective Date, all liens in favor of the Indenture Trustee securing the Noteholder Claims, whether arising prior to or after the Petition Date, shall be automatically released; *provided*, *however*, that the Indenture Trustee shall retain all of its liens on the Debtors' assets received by the Asset Recovery Entities and received by the Litigation Trusts (but, for the avoidance of doubt, excluding assets transferred to MBIA under the Zohar I Sale Documents or pursuant to the Plan) to secure the payment of the Indenture Trustee Claims until such Indenture Trustee Claims have been satisfied. For the avoidance of doubt, the liens of the Indenture Trustee on any Litigation Assets (x) shall be senior to any interests held by or any distributions made on account thereof to the beneficiaries of any Litigation Trust whose interests in that Litigation Trust arise from Noteholder Claims, but (y) shall, if applicable, be junior to (i) the DIP Liens and (ii) the liens of any litigation funder for that Litigation Trust (without regard for when any litigation funder

29297607.13

29

perfects its liens on such assets).  The Indenture Trustee shall not be required to file UCC financing statements or take any other actions to record or perfect its surviving liens pursuant to this paragraph, and such liens shall be deemed perfected and enforceable upon entry of this Confirmation Order.  The DIP Lender and any lender or agent under the Zohar II Litigation Financing Agreement shall not be required to file UCC financing statements or take any other actions to record or perfect its surviving DIP Liens or the liens securing the obligations under any Zohar II Litigation Financing Agreement, and such liens shall be deemed perfected and enforceable upon entry of this Confirmation Order.  Further, if the DIP Lender or any lender or agent under any Zohar II Litigation Financing Agreement subsequently file UCC financing statements or take other action as of the Effective Date to perfect and record their liens, such liens shall be deemed perfected in the same priority as of the date of entry of this Confirmation Order. In the event that there is a sale of any Portfolio Company pursuant to the monetization process under the Settlement Agreement, including the sale of equity in the Portfolio Company or release of liens securing obligations owed by the Portfolio Company, the applicable Asset Recovery Entity is authorized to take all actions necessary to convey the Portfolio Company (or its assets) free and clear of any lien securing the Indenture Trustee Claims or DIP Liens, with such lien attaching to the proceeds of such sale in the same manner and priority as the liens on such Portfolio Company or assets.  Notwithstanding the foregoing, for so long as the Zohar II Recovery LLC or Zohar III Recovery LLC, as applicable, maintains a reserve in the amount of $250,000 (or such lesser amount agreed to by the Indenture Trustee) to secure the payment of the Indenture Trustee Claims in accordance with Section 6.15 of the Plan, the applicable Asset Recovery Entity may make distributions, including distributions of cash or other assets, free and clear of any lien securing the Indenture Trustee Claims and without liability to the Indenture Trustee.

27.     Except as otherwise provided in section 12(c) of this Confirmation Order with respect to MD Term Loan Indebtedness, upon the payment in full of the Allowed DIP Claims, all DIP Liens arising out of or related to the DIP Order or the DIP Credit Agreement shall automatically terminate, and all collateral subject to such liens shall be automatically released from such liens, in each case without further action by the DIP Lender and all obligations of the DIP Debtors (or successors thereto) arising out of or related to the DIP Claims shall be automatically released, in each case without further action by the DIP Lender.

28.     The Indenture Trustee, Noteholders and DIP Lender shall take all actions to effectuate and confirm such termination and release of their liens as reasonably requested by the DIP Debtors, the Wind-Down Administrator, the Asset Recovery Managers or the Litigation Trustee(s).

29.     Any fees and expenses of the Indenture Trustee incurred through the Effective Date that are payable as adequate protection under the DIP Order shall be placed into the Professional Claims Escrow Account and paid subject to the "Prepetition Secured Parties Fee Review Procedures" established in the DIP Order.  The Debtors shall provide the Indenture Trustee with three (3) business days' prior notice of the anticipated Effective Date and on the next business day, the Indenture Trustee shall provide the Debtors with its good faith estimate of the amounts incurred or anticipated to be incurred through the Effective Date.

## Plan Distributions

30.     The Distribution provisions provided for in the Plan are hereby approved in their entirety.

31.     The record date for purposes of determining which Holders of Allowed Zohar III A-1 Note Claims are eligible to receive distributions under the Plan shall be the Effective Date (the "Distribution Record Date").  For purposes of the Distribution of equity in New Zohar III

29297607.13

LLC, MDHI Holdco Interests and New Notes to Holders of Zohar III A-1 Notes, the Distribution Agent shall be the Asset Recovery Manager for Zohar III Recovery LLC. Distributions made to Holders of Allowed Zohar III A-1 Note Claims shall be made to such Holders as of the Distribution Record Date. The applicable Distribution Agent shall have no obligation to recognize any transfers of Zohar III A-1 Note Claims occurring on or after the Distribution Record Date. Holders of Allowed Zohar III A-1 Note Claims receiving equity in New Zohar III LLC or MDHI Holdco Interests shall execute or be deemed to have executed the respective member or shareholder agreement for such entity.

### Letter of Transmittal for Zohar III A-1 Notes

32.     As soon as practicable after the Effective Date, solely with respect to the Zohar III A-1 Notes held through brokers, banks, intermediaries, nominees or other agents (each of the foregoing, a "Note Claims Nominee") as of the Distribution Record Date, the applicable Distribution Agent, shall send, or cause to be sent, a letter of transmittal substantially in the form attached hereto as **Exhibit C** (the "Letter of Transmittal") to each Note Claims Nominee, an authorized agent or representative thereof, or such other and further persons and entities as is necessary, including, without limitation, Mediant Inc. and Broadridge Financial Solutions, Inc. (each, a "Note Claims Nominee Party"), and each Note Claims Nominee Party shall promptly distribute the Letter of Transmittal to all beneficial holders (each, a "Zohar III A-1 Beneficial Noteholder") for which the related Note Claims Nominee holds Zohar III A-1 Notes.

### Registration Form for Zohar III A-1 Notes

33.     As an express condition to a Zohar III A-1 Beneficial Noteholder receiving any Distribution to which such Zohar III A-1 Beneficial Noteholder is entitled to under the Plan on account of the Zohar III A-1 Notes (a "Zohar III A-1 Noteholder Distribution"), each Zohar III A-1 Beneficial Noteholder shall properly complete and deliver, or cause to be delivered, the

registration form attached to the Letter of Transmittal (the "<u>Registration Form</u>") (along with the necessary supporting documentation) to the applicable Distribution Agent, by no later than 5:00 p.m. (ET) on the date that is 120 days after the Effective Date, in accordance with the terms of the Letter of Transmittal. Any Zohar III A-1 Beneficial Noteholder that fails to do so shall be deemed to have forfeited its right to any Zohar III A-1 Noteholder Distribution, and shall be forever barred and enjoined from asserting its Zohar III A-1 Note Claim against the Debtors, their Estates, their property, the Asset Recovery Entities, the Litigation Trust(s), or the respective assets of or in any of the foregoing. Any such forfeited Zohar III A-1 Noteholder Distributions shall be reallocated for Distribution to other Zohar III A-1 Noteholders in accordance with the Plan, free of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary.

### <u>Defects and Disputes Regarding Registration Forms for Zohar III A-1 Notes</u>

34.    The applicable Distribution Agent is authorized to reject any and all Registration Forms (including the supporting documentation) that are not in proper form, the acceptance of which would, in the opinion of the applicable Distribution Agent or its counsel, be unlawful or that do not attach appropriate documentation to substantiate, to the satisfaction of the applicable Distribution Agent, the principal amount of Zohar III A-1 Notes held by such Zohar III A-1 Noteholder as of the Distribution Record Date (the "<u>Principal Amount Held</u>"). The applicable Distribution Agent is further authorized to waive or permit the cure of any defects or irregularities or conditions of delivery as to any particular Registration Form (including as to the supporting documentation). Unless waived, any such defects or irregularities must be cured within the 120 day period set forth in paragraph 30, or by such later date as the applicable Distribution Agent notifies the affected Zohar III A-1 Noteholder. Except as otherwise provided herein, neither the applicable Distribution Agent nor any other person will be under any duty to provide notification of such defects or irregularities or failure to satisfy conditions of delivery, nor will any of them

incur any liabilities for failure to provide such notification. Delivery of any such Registration Forms will not be deemed to have been made and such Registration Forms will be invalid until such defects or irregularities have been cured or waived. Notwithstanding the foregoing, to the extent that the applicable Distribution Agent disputes the Principal Amount Held as reflected in the Registration Form and the attached supporting documentation, the applicable Distribution Agent shall provide, or cause to be provided, written notice of such dispute to such Zohar III A-1 Beneficial Noteholder, along with a reasonably detailed explanation of the applicable Distribution Agent's position on such matter, and the Zohar III A-1 Beneficial Noteholder shall have fourteen (14) days from the date of the notice to respond in writing to the applicable Distribution Agent, and any failure of the Zohar III A-1 Beneficial Noteholder to do so shall be a waiver of the Zohar III A-1 Beneficial Noteholder's rights to contest the applicable Distribution Agent's position. To the extent that the Zohar III A-1 Beneficial Noteholder timely responds and the parties cannot consensually resolve the dispute, a hearing shall be held before the Bankruptcy Court to resolve the dispute. The interpretation of all Registration Form procedures by the applicable Distribution Agent, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties.

## **Executory Contracts and Unexpired Leases**

35.    On the Effective Date, all of the Debtors' executory contracts and unexpired leases shall be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except to the extent that (a) the Debtors previously have assumed, assumed and assigned, or rejected such executory contract or unexpired lease, (b) prior to the Effective Date, the Debtors have Filed a motion to assume, assume and assign, or reject an executory contract or unexpired lease on which this Court has not ruled, or (c) an executory contract or unexpired lease is specifically identified in the Plan Supplement as an executory contract or unexpired lease to be assumed pursuant to the Plan, in

29297607.13

which case such executory contract or unexpired lease shall be assumed by the applicable Debtor(s) and assigned to the appropriate Asset Recovery Entity.  Entry of this Confirmation Order shall constitute approval of all rejections, assumptions and assignments of executory contracts and unexpired leases pursuant to Section 9.1 of the Plan and sections 365(a) and 1123 of the Bankruptcy Code.

36.     **In accordance with the Bar Date Order, the Holder of any Claim arising from the rejection of an executory contract or unexpired lease pursuant to the Plan and this Confirmation Order (a "Rejection Damages Claim") shall file a Proof of Claim on account of such Rejection Damages Claim against the Debtors so as to be received by 5:00 p.m. on the first Business Day that is thirty (30) days after the Effective Date.  Failure to file a Rejection Damages Claim timely and properly shall result in the Rejection Damages Claim being forever barred and extinguished, absent order of the Court to the contrary.**

#### Claims Administration Responsibilities; Claims Objections

37.     Except as otherwise specifically provided in the Plan, or applicable Asset Recovery Entity Agreement or Litigation Trust Agreement, after the Effective Date, the Litigation Trustee shall have the authority (a) to file, withdraw, or litigate to judgment objections to Claims against that Debtor, (b) to settle or compromise any Disputed Claim against that Debtor without any further notice to or action, order, or approval by the Bankruptcy Court, (c) to amend the Bankruptcy Schedules in accordance with the Bankruptcy Code, and (d) to administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, Order, or approval by the Bankruptcy Court.

38.     **Unless otherwise provided in the Plan or by order of the Bankruptcy Court, any objections to Claims (including Administrative Claims and Priority Tax Claims but excluding Professional Claims and claims arising under section 1930 of chapter 123 of title**

29297607.13

35

28 of the United States Code) shall be Filed not later than 180 days after the later of (i) the **Effective Date or (ii) the date such Claim is Filed, provided that the Litigation Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by Filing a motion with the Bankruptcy Court, and serving all Holders of Claims that would be affected by such extension.** A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

<u>**Administrative Claims**</u>

39.    **The Holder of an Administrative Claim, arising after August 26, 2021, other than:  (a) Professional Claims; (b) any Administrative Claims that (i) have been previously paid by the Debtors in the ordinary course of business or otherwise or (ii) have otherwise been satisfied; (c) any Administrative Claims previously Filed; (d) any Administrative Claim that has been Allowed by prior order of the Bankruptcy Court; (e) any Administrative Claims held by any Debtor; (f) any claims for fees payable to the Clerk of the Bankruptcy Court; (g) any U.S. Trustee Fees; and (h) any DIP Claims; and (i) any Administrative Claim entitled to administrative expense status pursuant to section 503(b)(1)(D), must File and serve on counsel to the Wind-Down Administrator, a written request for such Administrative Claim so as to be received by 5:00 p.m. on the first Business Day that is thirty (30) days after the Effective Date.  Such request must include at a minimum: (i) the name of the Debtor(s) that are purported to be liable for the Administrative Claim; (ii) the name of the Holder of the Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim. Failure to file and serve such notice or request timely and properly shall result in the Administrative Claim being forever barred and extinguished, absent order of the Court to the contrary.** For the avoidance of doubt, the Bar Date for Administrative Claims arising prior to

29297607.13

August 27, 2021 and the Bar Date for Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code, is the date as established in the Bar Date Order.

### Professional Claims

40.     **All Persons seeking Allowance of Professional Claims under the Plan shall File, on or before the date that is thirty (30) calendar days after the Effective Date, their respective applications for final allowance of compensation for services rendered and reimbursement of expenses incurred.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, any Professional Claim of the New Agent shall be resolved as provided in the New Agent Order. **Objections to any Professional Claim must be Filed and served on counsel to the Wind-Down Administrator and the requesting Professional by no later than twenty-one days (21) days after the service of the applicable final request for payment of the Professional Claim.**  Each Holder of an Allowed Professional Claim shall be paid from the Professional Claims Escrow Account (i) within five (5) Business Days from entry of such order approving such Allowed Professional Claim, (ii) with respect to any Professional Claim of the New Agent, within five (5) Business Days after such Professional Claim becomes Allowed in accordance with the New Agent Order, or (iii) at such time and upon such terms as may be agreed upon by such Professional and the Wind-Down Administrator.

### Release, Injunction, Exculpation and Related Provisions

41.     **The release, injunction, exculpation and related provisions set forth in Sections 10.3, 10.4, 10.5 and 10.6 of the Plan are hereby approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities as and to the extent provided for therein and herein.**

29297607.13

37

## Governmental Approvals

42.     Each federal, state, commonwealth, local, foreign or other governmental agency is hereby authorized to accept any and all documents necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulation of any federal, state, commonwealth, local, foreign or other governmental agency with respect to the implementation or consummation of the Plan.

## Approval of MD Credit Bid Transaction

43.     The MD Credit Bid Transaction is approved for purposes of the Settlement Agreement and these Chapter 11 Cases.

## Case Expense Allocation

44.     The Case Expense Allocation of 55% Zohar II and 45% Zohar III is hereby approved.  As part of the Case Expense Allocation, on the Effective Date, Zohar III shall pay to Zohar II $342,308.  Zohar II shall retain a claim, in an amount to be determined at a later date by the Litigation Trustee and Zohar II Recovery LLC, against Zohar I for the Zohar II Intercompany Claim.  As soon as practicable after the amount of the Zohar II Intercompany Claim is fixed, the Litigation Trustee shall provide fourteen (14) days' notice and an opportunity to object either by (i) Filing a notice with the Court or (ii) if the Chapter 11 Cases are closed, serving a notice upon all holders of Allowed Claims against Zohar I in Classes 14-15 that have not been paid in full as of the date of such notice.

## Order Sustaining Objections to Adequate Protection Requests

45.     Pursuant to the objection set forth in Section 6.12 of the Plan, the following request for administrative expense, super-priority claims are disallowed: (i) requests by MBIA Insurance Corp. against the Zohar II Debtors [Docket Nos. 2877 and 2878]; (ii) request by Bardin Hill

Investment Partners, LP, on account of funds managed by itself and its affiliates, against the Zohar III Debtors [Docket Nos. 2879 and 2880]; and (iii) request by the Patriarch Stakeholders (as defined in their request) against all Debtors [Docket No. 2882].

### **Notice of Entry of Confirmation Order and Effective Date**

46.     Pursuant to Bankruptcy Rules 2002 and 3020(c), the Debtors shall serve a notice of entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "Notice of Confirmation and Effective Date"), no later than five (5) Business Days after the Effective Date, on all Holders of Claims or Interests and all other Persons and Entities on which the Confirmation Hearing Notice was served.  The form of the Notice of Confirmation and Effective Date is hereby approved in all respects.  The Notice of Confirmation and Effective Date shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein, including, without limitation, the rejection of executory contracts and unexpired leases as provided for in the Plan and this Confirmation Order, and any bar dates and deadlines established under the Plan and this Confirmation Order, and no other or further notice of the entry of this Confirmation Order, the occurrence of the Effective Date, and any such rejections, bar dates and deadlines need be given.

### **Retention of Jurisdiction**

47.     Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall have jurisdiction of all matters in connection with, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including, among other things, with respect to the matters specifically identified in Article XII of the Plan.

**References to Plan Provisions**

48.     The failure specifically to include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such article, section, or provision shall have the same validity, binding effect, and enforceability as every other article, section, or provision of the Plan, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety.

**Modification of Plan**

49.     The Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation, in compliance with section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019(b); provided, that the Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications.   A Holder of a Claim that has accepted the Plan prior to any alteration, amendment, or modification will be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Holders of the Claims.   Prior to the Effective Date, the Debtors may upon consultation with the applicable Indenture Trustee, Controlling Class and Controlling Party for each Debtor, as the case may be, make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not materially change the treatment of Holders of Claims or Interests.

**Rules Governing Conflicts Between Documents**

50.     To the extent that any provision of the Disclosure Statement conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control. This Confirmation Order will govern in the event of any conflict between this Confirmation Order and the Plan.

**Term of Injunctions or Stays**

51.     All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect following Confirmation of the Plan, for the maximum period permitted under the Bankruptcy Code, Bankruptcy Rules and the Local Bankruptcy Rules.

**Section 1146 Exemption**

52.     Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security or the making or delivery of an instrument of transfer under the Plan shall not be taxed under any law imposing a stamp tax or similar tax.

**Headings**

53.     Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**Plan Voting Record Date**

54.     Notwithstanding anything to the contrary in the Disclosure Statement Order, for purposes of Confirmation, the Record Date (as defined in the Disclosure Statement Order) with respect to Holders of Zohar III A-1 Note Claims shall be May 13, 2022.

**Allowed DIP Claims**

55.     On the Effective Date, all outstanding DIP Obligations shall be deemed Allowed DIP Claims without the need for the DIP Lender to take any other action, including the filing of

any claim.  The Notice of Confirmation and Effective Date shall include the amount of the Allowed DIP Claims.  Notwithstanding anything to the contrary in the Final DIP Order, the Debtors shall be authorized to pay, under Paragraph 27(a)(x) of the Final DIP Order, any and all Controlling Secured Party Fees and Expenses through the Effective Date that are or would otherwise be payable under Paragraphs 27(a) or 27(c) of the Final DIP Order.

### <u>Resolution of Certain Objections</u>

56.    From the Effective Date and thereafter, MBIA shall have all rights to such Zohar I PC Assets free and clear of all claims and interests of the Debtors or any other party; provided, however, that all parties reserve all rights and remedies with respect to their existing litigation claims and positions relating to the beneficial ownership of equity interests prior to March 21, 2020 and the Zohar I Auction, including as set forth in the actions captioned as *Zohar CDO 2003-1 v. Patriarch*, No. 17-cv-0307-PKC (S.D.N.Y.) and *In re Zohar III, Corp. (Tilton v. MBIA Inc.)*, Adv. Proc. No. 19-ap-50390 (Bankr. D. Del.) (KBO) and the Zohar-Patriarch Adversary Proceeding; provided further, however, that all parties likewise reserve any and all rights and remedies and defenses they may have with respect to any of the foregoing, including with respect to any litigation claims and positions.

57.    Notwithstanding anything contained in the Plan, the Plan Documents or this Confirmation Order to the contrary, (i) except to the extent of exculpation under Plan Section 10.5, neither the Plan nor this Order shall constitute a release of any claims, interests or Causes of Action held by any Patriarch Stakeholders against any non-Debtor; (ii) except to the extent of exculpation under Plan Section 10.5, neither the Plan nor this Order shall constitute an injunction against the commencement of any claims or Causes of Action held by any Patriarch Stakeholder against any non-Debtor or enjoin the continuation of litigation of the Patriarch Disputed CMA Fee Claims

pursuant to the terms of the CMA Fee Dispute Documents and the claims asserted in the Amended Equitable Subordination Complain (as defined in the Disclosure Statement), including the appeal of this Court's March 25, 2022 order [Case No. 19-50390-KBO, Adv. D.I. 236]; and (iii) neither the Plan nor this Order shall constitute a release of any Patriarch Stakeholders' defenses against any claims by the Debtors or any of their successors.

58.     The effect of the transfer of the Debtors' assets "free and clear" of Patriarch's asserted set-off rights is not being decided in the Confirmation Order. The right of the Debtors, Litigation Trustee, and Asset Recovery Entities to argue that the effect of this "free and clear" relief extinguishes any of Patriarch's set off rights is preserved. Patriarch reserves the right to argue that the effect of this "free and clear" relief does not extinguish any of Patriarch's set off rights, that the transfer of the Litigation Assets under the Plan is not a "sale" under section 363 of the Bankruptcy Code, or that the Court possesses and should exercise discretion to not extinguish any of Patriarch's set off rights under the facts and circumstances of this case. If the court finds transfer did not extinguish Patriarch's set off rights, all parties' rights are preserved to argue whether a valid right to set off exists and should be permitted to be exercised. All parties' rights and defenses to the foregoing are preserved.

59.     Notwithstanding anything to the contrary in the Plan or otherwise in this Confirmation Order, (i) for any sale under the Settlement Agreement that closed prior to the Effective Date, if any 5% Transaction Fees are determined by a final order of the Bankruptcy Court to be due and owing by the Debtors to Patriarch Partners Management Group, LLC under the Settlement Agreement upon reversal of the "Oasis Decision", then Patriarch shall have an administrative expense claim in the amount reflected for that company on Patriarch's Exhibit C (to the extent such sale was a "Completed Sale" on Exhibit C) located in the box indicating the

amounts are subject to Third Circuit Decision, as tendered at the Confirmation Hearing (and to the extent such sale was "anticipated" in the box indicating the amounts are subject to Third Circuit Decision, as tendered at the Confirmation Hearing, then the transaction fee shall be determined based on the applicable sale price pursuant to the Settlement Agreement, and such claim shall be paid as required by the Plan (to the extent not otherwise paid at the closing of a sale) (a "PPMG Administrative Claim"); (ii) for any sale under the Settlement Agreement that closes after the Effective Date, the 5% Transaction Fee shall be payable, at closing, out of proceeds of such sale. If the Administrative and Priority Claims Escrow Account that would be obligated to satisfy any PPMG Administrative Claims has insufficient funds to do so, then Zohar II Recovery LLC, Zohar III Recovery, LLC, or both of them, as applicable, shall, upon receipt of monetization proceeds from (x) any of the Group A PC Assets or (y) solely to the extent such Group B Portfolio Company was transferred to, or owned by, the Asset Recovery Entities under the Plan any of the Debtors' interest in and claims against the Group B Portfolio Companies (as defined in the Settlement Agreement), transfer to the Administrative and Priority Claims Escrow Account an amount of asset monetization proceeds received by the applicable Asset Recovery Entity necessary to satisfy any shortfall solely as to any PPMG Administrative Claims; provided however, that the foregoing shall not impact Patriarch's right to such payment.

### Final Order

60.     This Confirmation Order is a final order and the period for which an appeal must be filed will commence upon entry of this Confirmation Order.

61.     Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority,

29297607.13

or Lien incurred or undertaken by the Debtors or any other party authorized or required to take action to implement the Plan, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provision of this Confirmation Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

29297607.13

**EXHIBIT A**

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Zohar III, Corp., *et al.*, | Case No. 18-10512 (KBO) |
| Debtors[1]. | Jointly Administered |

**THIRD AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE
BANKRUPTCY CODE FOR ZOHAR III, CORP. AND ITS AFFILIATED DEBTORS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4421)
Ryan M. Bartley (No. 4985)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Attorneys for the Debtors*

Dated:  June 15, 2022

---

[1]    The Debtors and the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is c/o FTI Consulting, Inc., 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

# TABLE OF CONTENTS

**Page**

**ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION** ........................................... 1

| | | |
|---|---|---|
| 1.1. | "A Notes" | 2 |
| 1.2. | "A-1 Notes" | 2 |
| 1.3. | "A-2 Notes" | 2 |
| 1.4. | "A-3 Notes" | 2 |
| 1.5. | "Adequate Protection Claims" | 2 |
| 1.6. | "Administrative Claim" | 2 |
| 1.7. | "Administrative and Priority Claims Escrow Account" | 2 |
| 1.8. | "Affiliate" | 2 |
| 1.9. | "Allow" | 2 |
| 1.10. | "AMZM" | 3 |
| 1.11. | "AMZM Escrow Accounts" | 3 |
| 1.12. | "Ankura" | 3 |
| 1.13. | "Ankura CM Agreements" | 3 |
| 1.14. | "Ankura CMA Order" | 3 |
| 1.15. | "Ankura CMA Escrows" | 3 |
| 1.16. | "Asset Recovery Entity" | 3 |
| 1.17. | "Asset Recovery Entity Agreement" | 3 |
| 1.18. | "Asset Recovery Manager" | 3 |
| 1.19. | "Avoidance Actions" | 4 |
| 1.20. | "B Notes" | 4 |
| 1.21. | "Ballot" | 4 |
| 1.22. | "Bankruptcy Code" | 4 |
| 1.23. | "Bankruptcy Court" | 4 |
| 1.24. | "Bankruptcy Rules" | 4 |
| 1.25. | "Bankruptcy Schedules" | 4 |
| 1.26. | "Bar Date" | 4 |
| 1.27. | "Bar Date Order" | 4 |
| 1.28. | "Business Day" | 4 |
| 1.29. | "Case Expenses Allocation" | 4 |
| 1.30. | "Cash" | 4 |
| 1.31. | "Cash Collateral Order" | 4 |
| 1.32. | "Causes of Action" | 5 |
| 1.33. | "Chapter 11 Cases" | 5 |

29250770.8

| | | |
|---|---|---|
| 1.34. | "Claim" | 5 |
| 1.35. | "Confirmation" | 5 |
| 1.36. | "Confirmation Hearing" | 5 |
| 1.37. | "Confirmation Date" | 5 |
| 1.38. | "Confirmation Order" | 5 |
| 1.39. | "Controlling Class" | 5 |
| 1.40. | "Controlling Party" | 5 |
| 1.41. | "D&O Expense Escrow Account" | 5 |
| 1.42. | "D&O Expense Escrow Agreement" | 6 |
| 1.43. | "Debtors" | 6 |
| 1.44. | "DIP Claims" | 6 |
| 1.45. | "DIP Credit Agreement" | 6 |
| 1.46. | "DIP Debtors" | 6 |
| 1.47. | "DIP Lenders" | 6 |
| 1.48. | "DIP Order" | 6 |
| 1.49. | "Disallowed" | 6 |
| 1.50. | "Disclosure Statement" | 6 |
| 1.51. | "Disclosure Statement Order" | 6 |
| 1.52. | "Disputed" | 7 |
| 1.53. | "Distributable Cash" | 7 |
| 1.54. | "Distribution" | 7 |
| 1.55. | "Distribution Agent" | 7 |
| 1.56. | "Effective Date" | 7 |
| 1.57. | "Entity" | 7 |
| 1.58. | "Escrow Accounts" | 7 |
| 1.59. | "Estate" | 7 |
| 1.60. | "Exculpated Parties" | 7 |
| 1.61. | "File" | 8 |
| 1.62. | "Final Order" | 8 |
| 1.63. | "General Unsecured Claim" | 8 |
| 1.64. | "Governmental Authority" | 8 |
| 1.65. | "Group A PC Assets" | 8 |
| 1.66. | "Holder" | 8 |
| 1.67. | "Impaired" | 8 |
| 1.68. | "Indenture Trustee" | 8 |
| 1.69. | "Indenture Trustee Claims" | 9 |

1.70. "Independent Director" ................................................................................................ 9

1.71. "Insider" .......................................................................................................................... 9

1.72. "Interest" ......................................................................................................................... 9

1.73. "Interim Compensation Order" ...................................................................................... 9

1.74. "July 2nd Order" ............................................................................................................. 9

1.75. "Lien" ............................................................................................................................... 9

1.76. "Litigation Assets" ......................................................................................................... 9

1.77. "Litigation Trust" ........................................................................................................... 9

1.78. "Litigation Trust Agreement" ........................................................................................ 9

1.79. "Litigation Trustee" ...................................................................................................... 10

1.80. "Local Bankruptcy Rules" ........................................................................................... 10

1.81. "MBIA" .......................................................................................................................... 10

1.82. "MD Buyer" ................................................................................................................... 10

1.83. "MD Buyer Equity" ....................................................................................................... 10

1.84. "MD Chapter 11 Case" .................................................................................................. 10

1.85. "MD Credit Bid Amount" ............................................................................................. 10

1.86. "MD Credit Bid Transaction" ...................................................................................... 10

1.87. "MD DIP Obligations" .................................................................................................. 10

1.88. "MDHI Holdco" ............................................................................................................ 10

1.89. "MDHI Holdco Interests" ............................................................................................. 10

1.90. "MD Term Loan Indebtedness" .................................................................................... 11

1.91. "New Agent" .................................................................................................................. 11

1.92. "New Agent Order" ....................................................................................................... 11

1.93. "New Notes" .................................................................................................................. 11

1.94. "Noteholder" .................................................................................................................. 11

1.95. "Noteholder Claims" ..................................................................................................... 11

1.96. "Other Assets" ............................................................................................................... 11

1.97. "Other Priority Claim" .................................................................................................. 11

1.98. [RESERVED] ................................................................................................................ 11

1.99. "Patriarch CMA Fee Dispute Documents" .................................................................. 11

1.100. "Patriarch Disputed CMA Fee Claims" ....................................................................... 12

1.101. "Patriarch Disputed CMA Fee Escrow" ....................................................................... 12

1.102. "Patriarch Disputed CMA Fee Escrow Agreement" .................................................... 12

1.103. "Patriarch Stakeholders" .............................................................................................. 12

1.104. "Person" ......................................................................................................................... 12

1.105. "Petition Date" .............................................................................................................. 12

1.106. "Plan" ........................................................................................................... 12

1.107. "Plan Supplement" ............................................................................................ 12

1.108. "Portfolio Companies" ....................................................................................... 12

1.109. "Post-Effective Date Administrative Claims Bar Date" ................................... 13

1.110. "Priority Tax Claim" .......................................................................................... 13

1.111. "pro rata" ............................................................................................................ 13

1.112. "Professional" ..................................................................................................... 13

1.113. "Professional Claim" .......................................................................................... 13

1.114. "Professional Claims Escrow Account" ............................................................. 13

1.115. "Professional Claims Escrow Amount" ............................................................. 13

1.116. "Proof of Claim" ................................................................................................. 13

1.117. "Related Parties" ................................................................................................. 13

1.118. "Released Parties" ............................................................................................... 13

1.119. "Releasing Parties" ............................................................................................. 14

1.120. "Remaining Assets" ............................................................................................ 14

1.121. "Retained Claims Escrow" ................................................................................. 14

1.122. "Sale Orders" ...................................................................................................... 14

1.123. "Settlement Agreement" ..................................................................................... 14

1.124. "Solicitation Package" ........................................................................................ 14

1.125. "Stila Proceeding" .............................................................................................. 14

1.126. "Transaction Documents" ................................................................................... 14

1.127. "Unimpaired" ...................................................................................................... 14

1.128. "U.S. Trustee" ..................................................................................................... 15

1.129. "U.S. Trustee Fees" ............................................................................................ 15

1.130. "Voting Deadline" .............................................................................................. 15

1.131. "Wind-Down Administrator" .............................................................................. 15

1.132. "Wind-Down Company" ..................................................................................... 15

1.133. "Wind-Down Funding Escrow" .......................................................................... 15

1.134. "Zohar Funds" ..................................................................................................... 15

1.135. "Zohar I" ............................................................................................................. 15

1.136. "Zohar I A-3 Note Claims" ................................................................................ 15

1.137. "Zohar I B Note Claims" .................................................................................... 15

1.138. "Zohar I Corp." ................................................................................................... 15

1.139. "Zohar I Credit Enhancement Claims" .............................................................. 15

1.140. "Zohar I Indenture" ............................................................................................ 15

1.141. "Zohar I Indenture Trustee Claims" ................................................................... 15

iv

1.142.  "Zohar I Issuer Holdback" ................................................................................................. 16

1.143.  "Zohar I Issuer Holdback Documents" .......................................................................... 16

1.144.  "Zohar I Limited" ............................................................................................................ 16

1.145.  "Zohar I MD Credit Bid Amount" .................................................................................. 16

1.146.  "Zohar I MDHI Holdco Interests" .................................................................................. 16

1.147.  "Zohar I Patriarch Disputed CMA Fee Claims" ........................................................... 16

1.148.  "Zohar I Sale Documents" .............................................................................................. 16

1.149.  "Zohar II" ......................................................................................................................... 16

1.150.  "Zohar II Adjusted Plan Value" ..................................................................................... 16

1.151.  "Zohar II Ankura CM Agreement" ................................................................................. 16

1.152.  "Zohar II Ankura CMA Claims" ..................................................................................... 16

1.153.  "Zohar II Ankura CMA Escrow" .................................................................................... 16

1.154.  "Zohar II B Note Claims" ................................................................................................ 16

1.155.  "Zohar II Corp." ............................................................................................................... 17

1.156.  "Zohar II Credit Enhancement Claims" ......................................................................... 17

1.157.  "Zohar II Indenture" ........................................................................................................ 17

1.158.  "Zohar II Indenture Trustee Claims" .............................................................................. 17

1.159.  "Zohar II Intercompany Claim" ...................................................................................... 17

1.160.  "Zohar II Limited" ........................................................................................................... 17

1.161.  "Zohar II MD Credit Bid Amount" ................................................................................ 17

1.162.  "Zohar II MDHI Holdco Interests" ................................................................................ 17

1.163.  "Zohar II Patriarch Disputed CMA Fee Claim" ........................................................... 17

1.164.  "Zohar III" ........................................................................................................................ 17

1.165.  "Zohar III Adjusted Plan Value" .................................................................................... 17

1.166.  "Zohar III A Note Claims" .............................................................................................. 17

1.167.  "Zohar III A-1 Note Claims" .......................................................................................... 18

1.168.  "Zohar III A-2 Note Claims" .......................................................................................... 18

1.169.  "Zohar III A-3 Note Claims" .......................................................................................... 18

1.170.  "Zohar III Ankura CM Agreement" ............................................................................... 18

1.171.  "Zohar III Ankura CMA Claims" ................................................................................... 18

1.172.  "Zohar III Ankura CMA Escrow" .................................................................................. 18

1.173.  "Zohar III B Note Claims" .............................................................................................. 18

1.174.  "Zohar III Corp." ............................................................................................................. 18

1.175.  "Zohar III Indenture" ....................................................................................................... 18

1.176.  "Zohar III Indenture Trustee Claims" ............................................................................ 18

1.177.  "Zohar III Limited" .......................................................................................................... 18

1.178.  "Zohar III MD Credit Bid Amount" ....................................................... 18

1.179.  "Zohar III MDHI Holdco Interests" ...................................................... 18

1.180.  "Zohar III Patriarch Disputed CMA Fee Claim" ................................. 18

1.181.  "Zohar Indentures" ............................................................................... 19

1.182.  "Zohar-Patriarch Adversay Proceeding" ............................................. 19

**ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS** ...................... 19

2.1.    General Rules of Classification ............................................................. 19

2.2.    Classification of Claims and Interests .................................................. 19

2.3.    Subordination of Claims Pursuant to Section 510(a) of the Bankruptcy Code ................. 21

**ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS** .............................. 21

3.1.    Administrative Claims ........................................................................... 21

3.2.    Time for Filing Administrative Claims ................................................. 21

3.3.    Professional Claims ............................................................................... 21

3.4.    DIP Claims ............................................................................................ 22

3.5.    Adequate Protection Claims .................................................................. 22

3.6.    Priority Tax Claims ............................................................................... 22

**ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** ....... 23

4.1.    Class 1 – Zohar III Other Priority Claims ............................................ 23

4.2.    Class 2 – Zohar III Indenture Trustee Claims ...................................... 23

4.3.    Class 2A – Zohar III Patriarch Disputed CMA Fee Claims .................. 23

4.4.    Class 2B – Zohar III Ankura CMA Claims ........................................... 24

4.5.    Class 3 – Zohar III A-1 Note Claims .................................................... 24

4.6.    Class 4 – Zohar III A-2 Note Claims .................................................... 24

4.7.    Class 5 – Zohar III A-3 Note Claims .................................................... 25

4.8.    Class 6 – Zohar III B Note Claims ....................................................... 25

4.9.    Class 7 – Zohar III General Unsecured Claims .................................... 25

4.10.   Class 8 - Zohar II Other Priority Claims .............................................. 25

4.11.   Class 9 – Zohar II Indenture Trustee Claims ....................................... 26

4.12.   Class 9A – Zohar II Patriarch Disputed CMA Fee Claim .................... 26

4.13.   Class 9B – Zohar II Ankura CMA Claims ............................................ 26

4.14.   Class 10 - Zohar II Credit Enhancement Claims .................................. 27

4.15.   Class 11 – Zohar II B Note Claims ....................................................... 27

4.16.   Class 12 – Zohar II General Unsecured Claims ................................... 27

4.17.   Class 13 – Zohar I Other Priority Claims ............................................. 27

4.18.   Class 14 – Zohar I Indenture Trustee Claims ...................................... 28

4.19.   Class 14A – Zohar I Patriarch Disputed CMA Fee Claim .................... 28

4.20.    Class 15 - Zohar I Credit Enhancement Claims ........................................... 29

4.21.    Class 16 – Zohar I A-3 Note Claims ......................................................... 29

4.22.    Class 17 – Zohar I B Note Claims .............................................................. 29

4.23.    Class 18 – Zohar I General Unsecured Claims ............................................ 29

4.24.    Class 19 – Interests ................................................................................... 30

**ARTICLE V ACCEPTANCE OR REJECTION OF THE PLAN** ............................................ 30

5.1.    Voting of Claims ....................................................................................... 30

5.2.    Treatment of Vacant Classes ...................................................................... 30

5.3.    [Reserved]. ............................................................................................... 30

5.4.    Nonconsensual Confirmation ..................................................................... 30

**ARTICLE VI MEANS OF IMPLEMENTATION OF THE PLAN** ....................................... 31

6.1.    Emergence Date Transactions .................................................................... 31

6.2.    [Reserved] ............................................................................................... 36

6.3.    Cancellation of Agreements and Interests; Termination of Liens ................... 36

6.4.    Modified Substantive Consolidation ........................................................... 37

6.5.    Wind-Down Company and Wind-Down Administrator .................................. 37

6.6.    The Asset Recovery Entities ...................................................................... 39

6.7.    Post-Confirmation Status of Settlement Agreement ..................................... 41

6.8.    Litigation Trust(s) .................................................................................... 41

6.9.    Establishment, Funding and Distribution of Escrow Accounts ...................... 44

6.10.    Effectuating Documents; Further Transactions .......................................... 46

6.11.    Disposition of Books and Records ............................................................ 46

6.12.    Objection to Pending Request for Allowance of Adequate Protection Claims under Section 507(b) ................................................................................ 47

6.13.    Approval of Case Expense Allocation ....................................................... 47

6.14.    Disposition of Zohar II Intercompany Claim .............................................. 47

6.15.    Treatment of Zohar II Indenture Trustee Claim and Zohar III Indenture Trustee Claim .................................................................................................... 47

6.16.    Disposition of Patriarch Disputed CMA Fee Claims ................................... 48

6.17.    MD Credit Bid Transaction ...................................................................... 48

**ARTICLE VII DISTRIBUTIONS UNDER THE PLAN** .................................................... 49

7.1.    Delivery of Distributions .......................................................................... 49

7.2.    Undeliverable and Unclaimed Distributions ............................................... 49

7.3.    Distribution Record Date; Transfer of Claims ............................................. 49

7.4.    Manner of Payment .................................................................................. 50

7.5.    Time Bar to Cash Payments by Check ....................................................... 50

7.6.    Setoffs and Recoupment ........................................................................... 50

7.7.   Allocation of Plan Distributions Between Principal and Interest ...................................... 50

7.8.   Interest on Claims ................................................................................................. 51

7.9.   No Distribution in Excess of Allowed Amount of Claim ........................................... 51

7.10.  Payment of Taxes on Distributions Received Pursuant to the Plan; Required Compliance with Withholding and Reporting Obligations................................. 51

7.11.  Minimum Distribution Amounts; Rounding.............................................................. 52

**ARTICLE VIII PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND DISPUTED CLAIMS**........................................................................................... 52

8.1.   Claims Administration Responsibilities .................................................................. 52

8.2.   Claims Objections ................................................................................................. 53

8.3.   Estimation of Claims ............................................................................................ 53

8.4.   Adjustment to Claims Without Objection................................................................ 53

8.5.   No Distributions Pending Allowance ..................................................................... 53

8.6.   Distributions After Allowance ............................................................................... 54

8.7.   Disallowance of Certain Claims ............................................................................. 54

8.8.   Claims Paid and Payable by Third Parties .............................................................. 54

**ARTICLE IX EXECUTORY CONTRACTS AND LEASES** ............................................ 54

9.1.   Executory Contracts and Unexpired Leases Deemed Rejected .................................. 54

9.2.   Cure Amounts and Objection to Assumption .......................................................... 55

**ARTICLE X EFFECT OF CONFIRMATION** ............................................................... 55

10.1.  Binding Effect...................................................................................................... 55

10.2.  Reservation of Causes of Action/Reservation of Rights............................................ 56

10.3.  Releases by the Debtors of Certain Parties .............................................................. 56

10.4.  Releases by Non-Debtors....................................................................................... 56

10.5.  Exculpation .......................................................................................................... 57

10.6.  Plan Injunction ..................................................................................................... 57

10.7.  Term of Bankruptcy Injunction or Stays ................................................................ 57

10.8.  Setoff .................................................................................................................. 58

10.9.  Preservation of Insurance....................................................................................... 58

**ARTICLE XI CONDITIONS PRECEDENT TO THE EFFECTIVE DATE;  EFFECT OF FAILURE OF CONDITIONS** .................................................................................... 58

11.1.  Conditions Precedent to the Effective Date ............................................................. 58

11.2.  Satisfaction of Conditions ..................................................................................... 59

**ARTICLE XII RETENTION OF JURISDICTION** ....................................................... 59

**ARTICLE XIII MISCELLANEOUS PROVISIONS** ...................................................... 61

13.1.  Corporate Action.................................................................................................. 61

13.2.  Modification of Plan ............................................................................................. 61

13.3.    Revocation or Withdrawal of the Plan ................................................................ 62

13.4.    Plan Supplement ................................................................................................... 62

13.5.    Payment of Statutory Fees .................................................................................... 62

13.6.    Exemption from Transfer Taxes ............................................................................ 62

13.7.    Expedited Tax Determination ............................................................................... 62

13.8.    Exhibits/Schedules ............................................................................................... 63

13.9.    Substantial Consummation ................................................................................... 63

13.10.    Severability of Plan Provisions ........................................................................... 63

13.11.    Governing Law ..................................................................................................... 63

13.12.    Conflicts ............................................................................................................... 63

13.13.    Reservation of Rights ........................................................................................... 63

13.14.    Limiting Notices ................................................................................................... 64

## INTRODUCTION

Zohar III, Corp., Zohar II 2005-1, Corp., Zohar CDO 2003-1, Corp., Zohar III, Limited, Zohar II 2005-1, Limited, and Zohar CDO 2003-1, Limited (each, a "Debtor," and collectively, the "Debtors") hereby propose the following joint plan of liquidation under chapter 11 of the Bankruptcy Code (the "Plan").

Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, properties, and risk factors, together with a summary and analysis of the Plan. All Holders of Claims entitled to vote on the Plan are encouraged to review the Disclosure Statement and to read the Plan carefully before voting to accept or reject the Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

Subject to certain restrictions and requirements set forth in the Plan and section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan prior to its substantial consummation.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

For purposes of the Plan, except as expressly provided or unless the context otherwise requires:

a.    all capitalized terms used in the Plan and not otherwise defined in the Plan shall have the meanings ascribed to them in this Article I of the Plan;

b.    any capitalized term used in the Plan that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable;

c.    whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine;

d.    any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

e.    any reference in the Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time;

f.      unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan;

g.      the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

h.      captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and

i.      the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

Unless otherwise defined in the Plan, or the context otherwise requires, the following terms shall have the respective meaning set forth below.

1.1.      "A Notes" means the A-1 Notes, A-2 Notes, and A-3 Notes.

1.2.      "A-1 Notes" means the Class A-1 Notes issued under the applicable Zohar Indenture.

1.3.      "A-2 Notes" means the Class A-2 Notes issued under the applicable Zohar Indenture.

1.4.      "A-3 Notes" means the Class A-3 Notes issued under the applicable Zohar Indenture.

1.5.      "Adequate Protection Claims" means any Claim under sections 507(a) or 507(b) of the Bankruptcy Code arising from the asserted diminution in the value of a lienholder's interest in the applicable Debtors' property during the Chapter 11 Cases, as well as the "507(b) Claims" as defined in and granted under the Cash Collateral Order and the "Adequate Protection 507(b) Claims" as defined in and granted under the DIP Order.

1.6.      "Administrative Claim" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), or 1114(e)(2) of the Bankruptcy Code, including all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.  Administrative Claims do not include Professional Claims, which are separately classified.

1.7.      "Administrative and Priority Claims Escrow Account" means the escrow account, funded and allocated by the applicable Debtor, created and funded on the Effective Date (and after the Effective Date in the case of Zohar I) to be used for the payment of Administrative Claims, including U.S. Trustee Fees, Priority Tax Claims, and Other Priority Claims, as described in the Plan.

1.8.      "Affiliate" means "affiliate," as defined in section 101(2) of the Bankruptcy Code.

1.9.      "Allow" and derivations thereof means, except as otherwise provided in the Plan, with respect to any Claim or Interest: (i) a Claim or Interest that has been scheduled by the Debtors

29250770.8

2

in their Bankruptcy Schedules, as may be amended by the Debtors or (following the Effective Date) the Wind-Down Administrator, as applicable, other than disputed, contingent, or unliquidated; (ii) solely with respect to whether the Holder of a Claim or Interest is entitled to receive a Distribution under the Plan, a Claim or Interest actually filed in the Chapter 11 Cases that is not Disputed; (iii) a Claim or Interest that is allowed (a) by a Final Order; (b) in any stipulation with a Litigation Trustee, of amount and nature of Claim or Interest executed on or after the Effective Date; or (c) in or pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith; and (iv) a Claim or Interest that is allowed pursuant to the terms of the Plan; provided, however, that Claims or Interests temporarily allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered Allowed Claims; provided, further, that any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code shall not be considered an Allowed Claim.

1.10.    "AMZM" means Alvarez & Marsal Zohar Management, LLC.

1.11.    "AMZM Escrow Accounts" means the escrow accounts at JPMorgan Chase Bank, N.A. funded with the senior collateral manager fees payable to AMZM by each of Zohar II and Zohar III.

1.12.    "Ankura" means Ankura Trust Company, LLC.

1.13.    "Ankura CM Agreements" means the Zohar II Ankura CM Agreement and the Zohar III Ankura CM Agreement.

1.14.    "Ankura CMA Order" means the *Order (I) Authorizing the Appointment of Ankura Trust Company, LLC as Collateral Manager and (II) Granting Related Relief* [Docket No. 1038].

1.15.    "Ankura CMA Escrows" means the Zohar II Ankura CMA Escrow and the Zohar III Ankura CMA Escrow.

1.16.    "Asset Recovery Entity" means each of New Zohar II LLC, Zohar II Intermediate LLC, Zohar II Recovery LLC (and any subsidiary thereof other than a Litigation Trust), New Zohar III LLC, Zohar III Intermediate LLC and Zohar III Recovery LLC (and any subsidiary thereof other than a Litigation Trust) to be formed for purposes of implementing the Plan, as more fully described in Section 6.6 of the Plan, the Disclosure Statement and the Plan Supplement; *provided, however*, that the names of the Asset Recovery Entities may be revised and the final names shall be included in the Plan Supplement.

1.17.    "Asset Recovery Entity Agreement" means each agreement pursuant to which the Asset Recovery Entities shall be formed and administered, which will be included in the Plan Supplement, and shall be subject to initial approval of the Bankruptcy Court, as it may be subsequently modified from time to time.

1.18.    "Asset Recovery Manager" means each Person appointed to act as director, manager or comparable position of an Asset Recovery Entity in accordance with the terms of the Plan, the Confirmation Order, and any Asset Recovery Entity Agreement, or any successor appointed in accordance with the terms of any Asset Recovery Entity Agreement.

1.19.    "<u>Avoidance Actions</u>" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtors and their Estates and the recovery, subordination, or other remedies that may be brought by and on behalf of the Debtors and their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code.

1.20.    "<u>B Notes</u>" means the Class B Notes issued under the applicable Zohar Indenture.

1.21.    "<u>Ballot</u>" means the ballot form distributed to each Holder of a Claim entitled to vote to accept or reject the Plan.

1.22.    "<u>Bankruptcy Code</u>" means Title 11 of the United States Code.

1.23.    "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Delaware, or in the event such court ceases to exercise jurisdiction over any Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over such Chapter 11 Case in lieu of the United States Bankruptcy Court for the District of Delaware.

1.24.    "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075.

1.25.    "<u>Bankruptcy Schedules</u>" means the schedules of assets and liabilities Filed by each Debtor pursuant to Bankruptcy Rule 1007.

1.26.    "<u>Bar Date</u>" shall mean, with respect to any particular Claim or Interest, the specific date set by the Bankruptcy Court as the last day for Filing Proofs of Claim, motions or any other requests for allowance of Administrative Claims, or proofs of Interest against the Debtors in the Chapter 11 Cases for that specific Claim or Interest.

1.27.    "<u>Bar Date Order</u>" means the *Order (i) Establishing Deadlines for the Filing of Proofs of Claim and Requests for Payment of Administrative Expenses, (ii) Approving the Form and Manner of Notice Thereof, and (iii) Granting Related Relief* [Docket No. 2778], entered by the Bankruptcy Court on August 27, 2021.

1.28.    "<u>Business Day</u>" means a day other than a Saturday, Sunday or other day on which commercial banks in Wilmington, Delaware are authorized or required by law to close.

1.29.    "<u>Case Expenses Allocation</u>" means the allocation of the administrative expenses of the Chapter 11 Cases among the Zohar I, Zohar II and Zohar III Estates.

1.30.    "<u>Cash</u>" means the legal tender of the United States or equivalent thereof.

1.31.    "<u>Cash Collateral Order</u>" means the *Final Order Under 11 U.S.C. §§ 105, 361, 362, 363 and 507 and Bankruptcy Rules 2002, 4001 and 9014, (I) Authorizing Debtors to Use Cash Collateral (II) Granting Adequate Protection to Prepetition Secured Parties (III) Providing Superpriority Administrative Expense Status; (IV) Modifying Automatic Stay; and (V) Granting*

*Related Relief* entered by the Bankruptcy Court in the Chapter 11 Cases on December 10, 2018 [Docket No. 588] and shall include any subsequent extension thereof.

1.32.    "Causes of Action" means any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, disclosed or undisclosed, suspected or unsuspected, accrued or unaccrued, apparent or unapparent, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable, in contract or in tort, directly or derivatively, of any kind or nature whatsoever, in law, equity or otherwise.

1.33.    "Chapter 11 Cases" means the bankruptcy cases pending in the United States Bankruptcy Court for the District of Delaware captioned as *In re Zohar III, Corp., et al.*, Case No. 18-10512 (KBO) (Bankr. D. Del.) (Jointly Administered).

1.34.    "Claim" means a claim against any Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

1.35.    "Confirmation" means the Bankruptcy Court's confirmation of the Plan pursuant to the Confirmation Order.

1.36.    "Confirmation Hearing" means the hearing(s) held by the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

1.37.    "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

1.38.    "Confirmation Order" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.39.    "Controlling Class" means the parties holding a majority of the Class A-1 Notes issued by Zohar III and identified in that certain *Amended Verified Statement Pursuant To Fed. R. Bankr. P. 2019(a)* [Docket No. 635], as may be subsequently amended.

1.40.    "Controlling Party" means, as set forth in the Zohar I and Zohar II Indenture, MBIA in its capacity as credit enhancer.

1.41.    "D&O Expense Escrow Account" means the account to be funded on the Effective Date to be used for the purpose of paying uninsured reasonable and documented fees, costs, or expenses, including compensation for their time expended, as measured by their applicable standard hourly rate ("Uncovered Time and Expense Amounts"), incurred by the Independent Director, the Debtors' current and former Chief Restructuring Officers, the Debtors' Chief Monetization Officer, or their respective supporting personnel solely to the extent such supporting personnel ordinarily bill hourly rates and are, in good faith, determined to be necessary to complete the requisite task, in connection with any proceeding in which the Independent Director, the Chief Restructuring Officers or Chief Monetization Officer, or their respective supporting personnel, are

named as a party or participate as a witness or in any other discovery, in all cases related to their status as a current or former officer or director of the Debtors or as supporting personnel thereof.

1.42.    "D&O Expense Escrow Agreement" means the agreement governing the disbursement of the funds in the D&O Expense Escrow Account.

1.43.    "Debtors" means each of Zohar CDO 2003-1, Limited; Zohar CDO 2003-1, Corporation; Zohar II 2005-1, Limited; Zohar II 2005-1, Corporation; Zohar III, Limited; and Zohar III, Corporation.

1.44.    "DIP Claims" means any and all Claims of the DIP Lenders arising under the DIP Credit Agreement or the DIP Order.

1.45.    "DIP Credit Agreement" means that certain *Senior Secured, Super Priority Debtor-in-Possession Loan and Security Agreements, among the Borrowers, the Guarantors, and JMB Capital Partners Lending, LLC*, dated as of December 16, 2020, as amended by that certain *Assignment, Extension and Amendment Agreement*, dated December 29, 2021 (and as further amended, modified, restated, or supplemented).

1.46.    "DIP Debtors" means Zohar III Limited, Zohar III Corp., Zohar II Limited and Zohar II Corp.

1.47.    "DIP Lenders" means JMB Capital Partners Lending, LLC, Bardin Hill Event-Driven Master Fund LP, HCN LP, and the other lenders that are parties to the DIP Credit Agreement at any time, solely in such capacity.

1.48.    "DIP Order" means the *Final Order (i) Authorizing the Debtors to Obtain Post-Petition Financing (ii) Granting Security Interests and Super-Priority Administrative Expense Status; (iii) Modifying the Automatic Stay; (iv) Authorizing the Debtors to Enter Into Agreements With JMB Capital Partners Lending, LLC; (v) Authorizing Use of Cash Collateral; and (vi) Granting Related Relief* [Docket No. 2191], as amended by the Order entered on December 28, 2021 [Docket No. 2968].

1.49.    "Disallowed" means any Claim that has either been withdrawn by the Holder, disallowed or expunged by an order of the Bankruptcy Court, or for which the Holder has agreed will be treated as a Disallowed Claim for purposes of the Chapter 11 Cases.

1.50.    "Disclosure Statement" means the disclosure statement for the Plan, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, that describes the Plan and is prepared and distributed in accordance with, among other things, sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Rule 3018 of the Federal Rules of Bankruptcy Procedure, and other applicable law.

1.51.    "Disclosure Statement Order" means an order of the Bankruptcy Court approving the Disclosure Statement, authorizing the commencement of solicitation of acceptances and rejections of the Plan, establishing the schedule and deadlines in connection with Confirmation, and establishing related procedures.

1.52.     "Disputed" means, with respect to any Claim or Interest: (i) listed on the Bankruptcy Schedules as unliquidated, disputed, or contingent, unless a Proof of Claim has been Filed; (ii) included in a Proof of Claim or request for Allowance of an Administrative Expense for which the Debtors or a Litigation Trustee, as applicable, or other party in interest, have filed an objection, or as to which the time to file an objection has not expired; or (iii) as to which the Debtors or a Litigation Trustee, as applicable, or other party in interest, have filed a request for estimation, provided, as to (ii) and (iii), that such objection or request for estimation has not been withdrawn or determined by a Final Order.

1.53.     "Distributable Cash" means the cash in the applicable Litigation Trust or Asset Recovery Entity after funding in full, or reserving for, the anticipated expenses of administering such entity (including repayment of any obligations for funded debt, including any New Notes, owed by the entity), as determined in the sole discretion of a Litigation Trustee or Asset Recovery Manager, as applicable.  Solely for Zohar I, Distributable Cash shall also exclude any amounts that a Litigation Trustee is required to deposit into the Administrative and Priority Claims Escrow Account pursuant to Section 6.9(a) of the Plan.

1.54.     "Distribution" means a delivery of Cash by the Distribution Agent to the Holder of an Allowed Claim pursuant to the Plan.

1.55.     "Distribution Agent" means (i) with respect to the Professional Claims Escrow Account and the Administrative and Priority Claims Escrow Account and the related Professional Claims, Administrative Claims, Priority Tax Claims and Other Priority Claims, the Wind-Down Administrator and (ii) with respect to any other Claims or Interests, the Litigation Trustee.

1.56.     "Effective Date" means a Business Day on which (i) no stay of the Confirmation Order is in effect; (ii) all conditions precedent specified in Section 11.1 of the Plan have been satisfied or waived (in accordance with the terms of the Plan); and (iii) the Plan is declared effective by the Debtors by the Filing of a notice on the docket.

1.57.     "Entity" has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

1.58.     "Escrow Accounts" means the Administrative and Priority Claims Escrow Account, the D&O Expense Escrow Account, the Professional Claims Escrow Account, the Retained Claims Escrow, and the Wind-Down Escrow Account.

1.59.     "Estate" means each estate created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

1.60.     "Exculpated Parties" means (a) each Professional retained by the Debtors or the Independent Director after the Petition Date, (b) Joseph J. Farnan, Jr., Marc Kirschner, Michael Katzenstein, Robert Kost, and (c) FTI Consulting, Inc., Goldin & Associates, LLC, Teneo Holdings, LLC, and their respective "additional personnel" supporting the independent Chief Restructuring Officers and Chief Monetization Officer.  For the avoidance of doubt, Exculpated Parties includes (y) Young Conaway Stargatt & Taylor, LLP and any consultants retained by Young Conaway Stargatt & Taylor, LLP to assist in their representation of the Debtors, White & Case LLP, Houlihan Lokey Capital Inc., KPMG LLP, Direct Fee Review, LLC, Robinson Gray

PA, Fox Rothschild LLP, Morris, Nichols, Arsht & Tunnell, LLP, Reliable Companies, and Walkers (Cayman) LLP and (z) the members, partners, directors, officers, managers, and employees of each party referenced in (a)-(c) and (y) of this definition who provided services to the Debtors or Independent Director, solely in their capacities as such.

1.61.    "File" and derivations thereof means, with respect to any pleading, entered on the docket of the Chapter 11 Cases and served in accordance with the Bankruptcy Rules and Local Bankruptcy Rules.

1.62.    "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

1.63.    "General Unsecured Claim" means a Claim that is not an Administrative Claim, a Priority Tax Claim, a Professional Claim, an Other Priority Claim, a Noteholder Claim, an Indenture Truste Claim, a Zohar II Ankura CMA Fee Claim, a Zohar III Ankura CMA Fee Claim, or a Patriarch Disputed CMA Fee Claim.

1.64.    "Governmental Authority" means any United States or other international, national, federal, state, municipal or local government, regulatory or administrative authority, agency or commission, licensing body or any judicial (including any state or federal court) or arbitral body or other Entity exercising executive, legislative, judicial, regulatory, licensing, or administrative powers or functions of government.

1.65.    "Group A PC Assets" means with respect to each applicable Debtor (i) its debt and equity interests in Intrepid U.S.A., Inc., MD Helicopters, Inc. (but solely MD Helicopters, Inc. to the extent provided for in Section 6.17 of the Plan), Stila Styles, LLC, UI Acquisition Holding Co. and Vulcan Engineering Co., or the proceeds of any of them; (ii) the loans made to Dura Automotive Systems, LLC and its subsidiaries, Global Automotive Systems, LLC and its subsidiaries, and Snelling Staffing, LLC and its subsidiaries, or the proceeds of any of them; and (iii) any residual interests, including as to escrow accounts, that the applicable Debtor has in the proceeds of the sales of (A) the equity or partnership interests in Denali Incorporated, FSAR Holdings, Inc., Heritage Aviation, Limited, Libertas Copper, LLC, LVD Acquisition, LLC, RM Acquisition, LLC, and UI Acquisition Holding Co. or (B) the assets of Snelling Staffing, LLC and its subsidiaries.

1.66.    "Holder" means an Entity holding a Claim or an Interest.

1.67.    "Impaired" means any Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.68.    "Indenture Trustee" means U.S. Bank, N.A. as the trustee under the applicable Zohar Indenture.

29250770.8

1.69.    "Indenture Trustee Claims" means the Zohar I Indenture Trustee Claims, the Zohar II Indenture Trustee Claims and the Zohar III Indenture Trustee Claims.

1.70.    "Independent Director" has the meaning ascribed to it in the Settlement Order and includes Joseph J. Farnan, Jr. in his capacity as such.

1.71.    "Insider" has the meaning set forth in section 101(31) of the Bankruptcy Code.

1.72.    "Interest" means any equity security (as such term is defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock and any other common stock, preferred stock, limited liability company interests, and any other equity, ownership or profits interests of the Debtors, including all options, warrants, rights, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any of the Debtors, whether or not arising under or in connection with any employment agreement, and whether or not certificated, transferable, preferred, common, voting, or denominated "stock," or similar security, that existed immediately before the Effective Date.  Interests shall include, without limitation and for the avoidance of doubt, any and all preference shares issued by the Debtors

1.73.    "Interim Compensation Order" means that certain *Order Establishing Procedures for Interim Compensation and Reimbursement of Retained Professionals* [Docket No. 293], entered by the Bankruptcy Court on June 8, 2018.

1.74.    "July 2nd Order" means that certain *Amended Order Establishing Certain Guidelines and Milestones in Furtherance of the Monetization Process for the Group A and Group B Portfolio Companies* entered by the Bankruptcy Court on July 2, 2020 [Docket No. 1751].

1.75.    "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.76.    "Litigation Assets" means any Causes of Action, claims or rights to payment beneficially owned by, or that can be asserted by, a Debtor or its Estate as of the Effective Date, including, but not limited to, the claims and causes of action (including counter-claims and defenses) brought, asserted by, or that can be asserted by the Debtors or their Estates in the Zohar-Patriarch Adversary Proceeding, the Stila Proceeding or related to the Portfolio Companies and any "Retained Claims" as defined in the Sale Orders and any rights of the Debtors in such Retained Claims.

1.77.    "Litigation Trust" means each litigation trust established by the Plan and described in the Plan Supplement and the applicable Litigation Trust Agreement.

1.78.    "Litigation Trust Agreement" means any trust agreement pursuant to which a Litigation Trust shall be formed and administered, which will be included in the Plan Supplement, and shall be subject to initial approval of the Bankruptcy Court, as it may be subsequently modified from time to time.

1.79.    "Litigation Trustee" means any Person or entity appointed to act as trustee of a Litigation Trust in accordance with the terms of the Plan, the Confirmation Order, and the governing Litigation Trust Agreement, or any successor appointed in accordance with the terms of the Plan and such Litigation Trust Agreement.

1.80.    "Local Bankruptcy Rules" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware in effect at the relevant time.

1.81.    "MBIA" means MBIA Insurance Corp.

1.82.    "MD Buyer" means MDH Holdco LLC.

1.83.    "MD Buyer Equity" means the equity interests in MD Buyer.

1.84.    "MD Chapter 11 Case" means *In re MD Helicopters, Inc.*, Case No. 22-10263 (KBO) pending in the Bankruptcy Court.

1.85.    "MD Credit Bid Amount" means the amount of MD Term Loan Indebtedness cancelled in the MD Credit Bid Transaction.

1.86.    "MD Credit Bid Transaction" means a sale transaction, to the extent approved by the court with jurisdiction over the MD Chapter 11 Case, authorizing the sale of substantially all of the assets of MD Helicopters, Inc., in exchange for the cancellation of some or all of the MD Term Loan Indebtedness, assumption of the MD DIP Obligations, and assumption of other liabilities, as specified in the applicable asset purchase agreement and Court order approving such sale; *provided, however*, that the MD Credit Bid Transaction may also be implemented as part of a "debt-for-equity" chapter 11 plan for MD Helicopters that results in the distribution of equity in reorganized MD Helicopters, Inc.

1.87.    "MD DIP Obligations" means the obligations incurred under that certain *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief at Docket No. 205* entered in the MD Chapter 1 1 Case at Docket No. 205, and any subsequent order.

1.88.    "MDHI Holdco" means a limited liability company created on or prior to the Effective Date to acquire the MD Term Loan Indebtedness owned by Zohar II and Zohar III, as well as the MD Term Loan Indebtedness currently held in the name of Zohar I. MDHI Holdco shall elect to be treated as a corporation for federal income tax purposes. There may be one or more parent companies for MDHI Holdco, and the Plan Supplement will contain information on the organizational structure and initial capitalization of MDHI Holdco and its parent entities, if any.

1.89.    "MDHI Holdco Interests" means the equity interests in MDHI Holdco; *provided, however*, that if there are one or more parent companies for MDHI Holdco, as identified in the Plan Supplement, MDHI Holdco Interests will mean the equity interests in the most senior parent

company.  The Plan Supplement will contain information on the organizational structure and initial capitalization of MD Buyer, MDHI Holdco and its parent entities, if any.

1.90.    "MD Term Loan Indebtedness" means the obligations under that certain *Credit Agreement* dated as of July 8, 2005, as amended, by and among MD Helicopters, Inc., as borrower, Patriarch Partners Agency Services, LLC, as initial agent, and the lenders party thereto.

1.91.    "New Agent" means Ankura, in its capacity as the "New Agent" as defined in the New Agent Order.

1.92.    "New Agent Order" means the *Order (I) Authorizing the Appointment of Ankura Trust Company, LLC as New Agent Under the Court-Approved Settlement Agreement by and Between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class and (II) Granting Related Relief* [Docket No. 709].

1.93.    "New Notes" means notes to be issued pursuant to Section 6.1 of the Plan by each of Zohar II and Zohar III under the Plan, having a maturity of two (2) years from the Effective Date, an annual coupon rate of 5.0%, payable in-kind on a semi-annual basis, secured by all of the Remaining Assets of the respective issuer, subordinated only to the expenses of the respective Asset Recovery Entities for Zohar III, the DIP claims and the Indenture Trustee Claims, and with no pre-payment penalties or premiums.  The documentation for the New Notes will be included in the Plan Supplement,

1.94.    "Noteholder" means any Holder of a note issued under one of the Zohar Indentures.

1.95.    "Noteholder Claims" means any Claims on account of the A Notes, the B Notes, the Zohar I Credit Enhancement Liabilities or the Zohar II Credit Enhancement Liabilities.

1.96.    "Other Assets" means all assets, entitlements, interests (or property of similar nature) owned or held by the respective Debtor as of the Effective Date other than Group A PC Assets, MD Term Loan Indebtedness, MD Buyer Equity, and Litigation Assets, which, for the avoidance of doubt, shall include the Debtors' interests in and claims against the Group B Portfolio Companies (as defined in the Settlement Agreement) and shall include the Zohar II Intercompany Claim, in the case of Zohar II only.

1.97.    "Other Priority Claim" means a priority Claim against the Debtors under section 507(a) of the Bankruptcy Code, other than Administrative Claims, Professional Claims and Priority Tax Claims.

1.98.    [RESERVED]

1.99.    "Patriarch CMA Fee Dispute Documents" means (i) the Patriarch Disputed CMA Fee Escrow Agreement, (ii) that certain Confidential Settlement Agreement, dated as of July 10, 2017, with respect to, among other things the Patriarch Disputed CMA Fee Claims and Patriarch Disputed CMA Fee Escrow, and (iii) that certain Stipulation and Order dated June 23, 2017 filed in *Zohar CDO 2003-1, LLC, et al. v. Patriarch Partners, LLC, et al*. Case No. 12247-VCS, pending in the Court of Chancery of the State of Delaware.

1.100.   "<u>Patriarch Disputed CMA Fee Claims</u>" means the Zohar I Patriarch Disputed CMA Fee Claims, the Zohar II Patriarch Disputed CMA Fee Claims, and the Zohar III Patriarch Disputed CMA Fee Claims.

1.101.   "<u>Patriarch Disputed CMA Fee Escrow</u>" means that certain escrow account maintained under the Patriarch Disputed CMA Fee Escrow Agreement.

1.102.   "<u>Patriarch Disputed CMA Fee Escrow Agreement</u>" means that certain Escrow Agreement dated as of July 11, 2017, with Citbank, N.A., as escrow agent, certain Patriarch Stakeholders and AMZM.

1.103.   "<u>Patriarch Stakeholders</u>" has the meaning ascribed to it in the Settlement Agreement and, for the avoidance of doubt includes, without limitation, Ark Angels, LLC; Ark Angels II, LLC; Ark Angels III, LLC; Ark Angels VIII, LLC; Ark Investment Partners II, LP; Ark II CLO 2001-1, Ltd.; LD Investments, LLC; Lynn Tilton; Octaluna LLC; Octaluna II, LLC; Octaluna III, LLC; Patriarch Partners, LLC; Patriarch Partners VIII, LLC; Patriarch Partners, XIV, LLC; Patriarch Partners XV, LLC; Patriarch Partners Management Group, LLC; Patriarch Partners Agency Services, LLC; Zohar Holdings, LLC; and any respective current and former controlled Affiliates of each of the foregoing.

1.104.   "<u>Person</u>" means an individual, a partnership, a joint venture, a limited liability company, a corporation, a trust, an unincorporated organization, a group, a Governmental Authority, or any Entity or association.

1.105.   "<u>Petition Date</u>" means March 11, 2018, when the Chapter 11 Cases were commenced.

1.106.   "<u>Plan</u>" means this plan, including any amendments or modifications hereto as may hereafter be Filed in accordance with the requirements of Section 1127 of the Bankruptcy Code.

1.107.   "<u>Plan Supplement</u>" means any compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan.

1.108.   "<u>Portfolio Companies</u>" means the Companies in which the Zohar Funds were lenders or equity holders at any time and includes, without limitation, CBA/Universal Instruments; Denali Inc.; Dura Operating, LLC; Global Automotive Systems, LLC; Heritage Aviation, Ltd.; Intrepid U.S.A., Inc.; Libertas Copper LLC; LVD Acquisition, LLC (Oasis); MD Helicopters, Inc.; Rand (RM Acquisition, LLC); Snelling Staffing, LLC; Vulcan Engineering Co.; Performance Designed Products, LLC / FSAR; Stila Styles, LLC; 180s, Inc.; Acme International Enterprises, Inc.; American Doors, LLC; American LaFrance, LLC; Amweld International, LLC; Best Textiles Acquisition, LLC; Bomar Industries International Inc.; Croscill Home, LLC; Duro Textiles, LLC; East Alliance Limited; eMag Solutions, LLC; Fetco Home Decor, Inc.; Galey & Lord, LLC; Glenoit Universal, Ltd.; Gorham Tissue & Paper, LLC; Hartwell Industries, Inc.; Iconic American Trucks, LLC; IMG Holdings, Inc.; Jewel of Jane LLC; MAV (PVI Acquisition, LLC); Natura Water, LLC; Netversant Solutions, LLC; Petry Holding, Inc.; Rapid Rack Holdings, Inc.; Red Shield Acquisition, LLC; Remco Maintenance, LLC; Scan-Optics, LLC; Silverack, LLC; Spiegel, LLC; Transcare Corporation; Xinhua Sports & Entertainment/Patriarch Partners Media Holdings, LLC.

1.109.    "Post-Effective Date Administrative Claims Bar Date" shall mean the first Business Day that is thirty (30) days after service of notice of the Effective Date, which notice shall include such date; *provided*, *however*, that, for the avoidance of doubt, the Bar Date for Administrative Claims arising prior to August 27, 2021 and the Bar Date for Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code, is the date as established in the Bar Date Order.

1.110.    "Priority Tax Claim" means a Claim against the Debtors under section 507(a)(8) of the Bankruptcy Code.

1.111.    "pro rata" means the proportion that the Allowed Claim in a particular Class bears to the aggregate amount of (a) Allowed Claims in such Class as of the date of determination, plus (b) Disputed Claims in such Class as of the date of determination, in their aggregate face amounts or such other amount: (i) as calculated by the applicable Distribution Agent on or before the date of any such Distribution; (ii) as determined by an Order of the Bankruptcy Court estimating such Disputed Claim; or (iii) as directed by a Final Order of the Bankruptcy Court.

1.112.    "Professional" means any Entity employed by the Debtors in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, or 363 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

1.113.    "Professional Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred during the period from the Petition Date through the Effective Date.

1.114.    "Professional Claims Escrow Account" means the escrow account created and funded on the Effective Date, in the amount of the Professional Claims Escrow Amount, to be used for the payment of Professional Claims, as described in Section 6.9 of the Plan.

1.115.    "Professional Claims Escrow Amount" means the total projected amount of unpaid Professional Claims on the Effective Date, as reasonably determined by the Debtors' Chief Restructuring Officer.

1.116.    "Proof of Claim" means a proof of Claim Filed against a Debtor in the Chapter 11 Cases.

1.117.    "Related Parties" means with respect to any Entity, its current and former Affiliates, and their respective current and former equity holders (regardless of whether such interests are held directly or indirectly), successors, assigns, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

1.118.    "Released Parties" means, collectively, in each case, solely in their respective capacities as such:  (a) the Exculpated Parties, (b) Ankura, (c) the Indenture Trustee, (d) each DIP Lender, (e) the Controlling Party; (f) the members of the Controlling Class, (g) all Holders of Claims that vote to accept the Plan; and (h) with respect to each of the Entities described in

subsections (c) through (g), such Entity's Related Parties; *provided*, *however*, that notwithstanding any provision of the Plan to the contrary, (i) Lynn Tilton, the Patriarch Stakeholders, the respective Affiliates of any of them and their Related Parties (other than the Exculpated Parties and Ankura, if they are Related Parties or Affiliates of the foregoing) shall not be Released Parties and shall not be released under the Plan and (ii) any party that objects to Confirmation of the Plan (by filing an objection with the Court or appearing at the Confirmation Hearing and making an objection on the record), files a motion to stay the effectiveness of the Confirmation Order or files an appeal of the Confirmation Order shall not be a Released Party and shall not be released under the Plan.

1.119.   "Releasing Parties" means, collectively, in each case only in its capacity as such: (a) Ankura, (b) the Indenture Trustee, (c) the DIP Lender, (d) the Controlling Party, (e) the members of the Controlling Class, and (f) all Holders of Claims that vote to accept the Plan; *provided*, *however*, that if any of the foregoing entities is excluded as a Released Party due to application of the *proviso* in the definition of "Released Party," such entity also shall not be a Releasing Party.

1.120.   "Remaining Assets" means for each of Zohar II and Zohar III, collectively, its (a) Group A PC Assets, (b) Litigation Assets, and (c) Other Assets.  Except as provided for in Section 6.17, the Remaining Assets shall not include any MD Term Loan Indebtedness and MD Buyer Equity.

1.121.   "Retained Claims Escrow" means an escrow account to be created on or prior to the Effective Date to hold the amount required to be held in escrow pursuant to the applicable Sale Orders with respect to indemnification and advancement obligations arising out of Retained Claim Actions (as defined in the applicable Sale Order).

1.122.   "Sale Orders" means the orders concerning the following Porfolio Company sales: FSAR Holdings, Inc. (Docket No. 2480), Heritage Aviation, Ltd. (Docket No. 2926), RM Acquisition, LLC (Docket No. 2050), and UI Acquisition Holding Co. (Docket No. 2988).

1.123.   "Settlement Agreement" means that settlement agreement approved by the Bankruptcy Court by order dated May 21, 2018 [Docket No. 266], as mofidied by the July 2nd Order.

1.124.   "Solicitation Package" means the Disclosure Statement, including the Plan, notice of the Confirmation Hearing approved by the Court, a Ballot, and such other items as directed by the Disclosure Statement Order.

1.125.   "Stila Proceeding" means *Zohar III, Limited v. Stila Styles, LLC and Lynn Tilton*, Case No. 2021-0384-JRS, pending in the Court of Chancery of the State of Delaware and any proceeding on appeal therefrom.

1.126.   "Transaction Documents" has the meaning ascribed to it in the applicable Indenture.

1.127.   "Unimpaired" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

1.128.   "<u>U.S. Trustee</u>" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in the District of Delaware.

1.129.   "<u>U.S. Trustee Fees</u>" means fees arising under 28 U.S.C. § 1930(a)(6) and any accrued interest thereon arising under 31 U.S.C. § 3717.

1.130.   "<u>Voting Deadline</u>" shall mean the deadline for voting to accept or reject the Plan as established by the Disclosure Statement Order.

1.131.   "<u>Wind-Down Administrator</u>" means, effective as of the Effective Date, the individual or entity responsible for, among other things, implementing the applicable provisions of the Plan, or any duly selected successor.

1.132.   "<u>Wind-Down Company</u>" means the company to be formed in connection with the Plan for purposes of resolving the affairs of the applicable Debtor after the Effective Date as provided for in the Plan.

1.133.   "<u>Wind-Down Funding Escrow</u>" means the escrow established on the Effective Date to hold funds sufficient to pay the fees, costs and expenses of the Wind-Down Administrator.

1.134.   "<u>Zohar Funds</u>" means Zohar I, Zohar II, and Zohar III.

1.135.   "<u>Zohar I</u>" means Zohar I Corp. and Zohar I Limited, as consolidated.

1.136.   "<u>Zohar I A-3 Note Claims</u>" means any Claims on account of the A-3 Notes issued by Zohar I.

1.137.   "<u>Zohar I B Note Claims</u>" means any Claims on account of the B Notes issued by Zohar I.

1.138.   "<u>Zohar I Corp.</u>" means Zohar CDO 2003-1, Corp. a Delaware corporation.

1.139.   "<u>Zohar I Credit Enhancement Claims</u>" means the Claims of MBIA as credit enhancer under the Zohar I Indenture, including any Claims arising out of the satisfaction of the A Notes issued by Zohar I.

1.140.   "<u>Zohar I Indenture</u>" means the *Indenture* among Zohar I Limited, Zohar CDO 2003-1, Corp., Zohar CDO 2003-1, LLC, and MBIA, CDC Financial Products, Inc., and the Indenture Trustee, dated November 13, 2003 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time).

1.141.   "<u>Zohar I Indenture Trustee Claims</u>" means the Claims of the Indenture Trustee under the Zohar I Indenture for all unpaid fees, expenses and other amounts incurred by the Indenture Trustee prior to the Effective Date, plus any fees, expenses and other amounts incurred by the Indenture Trustee after the Effective Date that are required to be indemnified by Zohar I under the Zohar I Indenture and the associated Transaction Documents.

1.142.   "Zohar I Issuer Holdback" means funds in the amount of $2,609,591.39 held by the Indenture Trustee pursuant to the Zohar I Issuer Holdback Documents"

1.143.   "Zohar I Issuer Holdback Documents" means that certain *Directions to Trustee and Indemnification* dated June 27, 2016, the supplement thereto dated August 26, 2016, and the *Letter Agreement* dated January 19, 2017, each between MBIA and the Indenture Trustee.

1.144.   "Zohar I Limited" means Zohar CDO 2003-1, Limited, a Cayman Islands entity.

1.145.   "Zohar I MD Credit Bid Amount" means the proportion of the MD Credit Bid Amount allocated to the MD Term Loan Indebtedness held in the name of Zohar I prior to the Effective Date.

1.146.   "Zohar I MDHI Holdco Interests" means the MDHI Holdco Interests provided in exchange for the Zohar I MD Credit Bid Amount.

1.147.   "Zohar I Patriarch Disputed CMA Fee Claims" means the claims asserted by Patriarch Partners VIII, LLC for "Disputed Collateral Management Fees," including any "Newly Payable Disputed Collateral Management Fees," as such terms are defined in the Patriarch CMA Fee Dispute Documents.

1.148.   "Zohar I Sale Documents" means: that certain *Purchase Agreement* dated as of January 12, 2017 between U.S. Bank, N.A., as Trustee, Zohar CDO 2003-1, Limited, as issuer, Zohar CDO 2003-1, LLC, and MBIA, as purchaser; that certain *Master Participation Agreement* dated as of January 12, 2017 between Zohar CDO 2003-1, Limited, as issuer, Zohar CDO 2003-1, LLC, U.S. Bank, N.A., in its capacity as Trustee, and MBIA Insurance Corporation; and all other ancillary documents.

1.149.   "Zohar II" means Zohar II Corp. and Zohar II Limited, as consolidated.

1.150.   "Zohar II Adjusted Plan Value" means the fair market value, as of the Effective Date, of the assets transferred to Zohar II Recovery LLC, as determined by the Debtors pursuant to Section 6.6(d).

1.151.   "Zohar II Ankura CM Agreement" means that certain *Collateral Management Agreement* dated as of December 9, 2019 by and among Zohar II Limited, Zohar II 2005-1, LLC and Ankura, as collateral manager.

1.152.   "Zohar II Ankura CMA Claims" means all fees, expenses, costs, and indemnities incurred by Ankura and payable under the Zohar II Ankura CM Agreement.

1.153.   "Zohar II Ankura CMA Escrow" means that certain *Escrow Agreement* dated as of December 9, 2019 by and among Ankura, as Party A, MBIA Insurance Corp., as Party B, and JPMorgan Chase Bank, N.A., as Escrow Agent.

1.154.   "Zohar II B Note Claims" means any Claims on account of the B Notes issued by Zohar II.

1.155.   "<u>Zohar II Corp.</u>" means Zohar II 2005-1, Corp. a Cayman Islands entity.

1.156.   "<u>Zohar II Credit Enhancement Claims</u>" means the Claims of MBIA as credit enhancer under the Zohar II Indenture, including any Claims arising out of the satisfaction of the A Notes issued by Zohar II.

1.157.   "<u>Zohar II Indenture</u>" means the *Indenture* among Zohar II, Zohar II 2005-1, Corp., Zohar II 2005-1, LLC, MBIA, IXIS Financial Products Inc., and the Indenture Trustee, as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time).

1.158.   "<u>Zohar II Indenture Trustee Claims</u>" means the Claims of the Indenture Trustee under the Zohar II Indenture for all unpaid fees, expenses and other amounts incurred by the Indenture Trustee prior to the Effective Date, plus any fees, expenses and other amounts incurred by the Indenture Trustee after the Effective Date that are required to be indemnified by Zohar II under the Zohar II Indenture and the associated Transaction Documents.

1.159.   "<u>Zohar II Intercompany Claim</u>" means any Administrative Expense Claim held by Zohar II Limited against Zohar I arising out of expenses incurred in the Chapter 11 Cases for the benefit of Zohar I and paid by Zohar II Limited and its Estate, including under the Cash Collateral Order and DIP Order.  The amount of the Zohar II Intercompany Claim shall be determined by Zohar II Recovery LLC and the Litigation Trustee following the Effective Date, with notice and an opportunity to be heard provided to affected parties.

1.160.   "<u>Zohar II Limited</u>" means Zohar II 2005-1, Limited, a Cayman Islands entity.

1.161.   "<u>Zohar II MD Credit Bid Amount</u>" means the proportion of the MD Credit Bid Amount allocated to the MD Term Loan Indebtedness held by Zohar II prior to the Effective Date.

1.162.   "<u>Zohar II MDHI Holdco Interests</u>" means the MDHI Holdco Interests provided in exchange for the Zohar II MD Credit Bid Amount.

1.163.   "<u>Zohar II Patriarch Disputed CMA Fee Claim</u>" means the claim asserted by Patriarch Partners XIV, LLC for "Disputed Collateral Management Fees," including any "Newly Payable Disputed Collateral Management Fees," as such terms are defined in the Patriarch CMA Fee Dispute Documents.

1.164.   "<u>Zohar III</u>" means Zohar III Corp. and Zohar III Limited, as consolidated.

1.165.   "<u>Zohar III Adjusted Plan Value</u>" means the fair market value, as of the Effective Date, of the assets transferred to Zohar III Recovery LLC, as determined by the Debtors pursuant to Section 6.6(d).

1.166.   "<u>Zohar III A Note Claims</u>" means, collectively, the Zohar III-A1 Note Claims, the Zohar III-A2 Note Claims, and the Zohar III-A3 Note Claims.

1.167.   "<u>Zohar III A-1 Note Claims</u>" means any Claims on account of the A-1 Notes issued by Zohar III.

1.168.   "<u>Zohar III A-2 Note Claims</u>" means any Claims on account of the A-2 Notes issued by Zohar III.

1.169.   "<u>Zohar III A-3 Note Claims</u>" means any Claims on account of the A-3 Notes issued by Zohar III.

1.170.   "<u>Zohar III Ankura CM Agreement</u>" means that certain *Collateral Management Agreement* dated as of December 10, 2019 by and among Zohar III Limited, Zohar III, LLC and Ankura, as collateral manager.

1.171.   "<u>Zohar III Ankura CMA Claims</u>" means all fees, expenses, costs, and indemnities incurred by Ankura and payable under the Zohar III Ankura CM Agreement.

1.172.   "<u>Zohar III Ankura CMA Escrow</u>" means that certain *Escrow Agreement* dated as of December 10, 2019 by and among Ankura, as Party A, Bardin Hill Investment Partners LP, as Party B, and JPMorgan Chase Bank, N.A., as Escrow Agent.

1.173.   "<u>Zohar III B Note Claims</u>" means any Claims on account of the B Notes issued by Zohar III.

1.174.   "<u>Zohar III Corp.</u>" means Zohar III Corp. a Delaware Corporation.

1.175.   "<u>Zohar III Indenture</u>" means the *Indenture* among Zohar III, Zohar III Corp., Zohar III, LLC, Natixis Financial Products Inc., and the Indenture Trustee, as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association, dated April 6, 2007 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time).

1.176.   "<u>Zohar III Indenture Trustee Claims</u>" means the Claims of the Indenture Trustee under the Zohar III Indenture for all unpaid fees, expenses and other amounts incurred by the Indenture Trustee prior to the Effective Date, plus any fees, expenses and other amounts incurred by the Indenture Trustee after the Effective Date that are required to be indemnified by Zohar III under the Zohar III Indenture and the associated Transaction Documents.

1.177.   "<u>Zohar III Limited</u>" means Zohar III Limited, a Cayman Islands entity.

1.178.   "<u>Zohar III MD Credit Bid Amount</u>" means the proportion of the MD Credit Bid Amount allocated to the MD Term Loan Indebtedness held by Zohar III prior to the Effective Date.

1.179.   "<u>Zohar III MDHI Holdco Interests</u>" means the MDHI Holdco Interests provided in exchange for the Zohar III MD Credit Bid Amount.

1.180.   "<u>Zohar III Patriarch Disputed CMA Fee Claim</u>" means the claim asserted by Patriarch Partners XV, LLC for "Disputed Collateral Management Fees," including any "Newly

Payable Disputed Collateral Management Fees," as such terms are defined in the Patriarch CMA Fee Dispute Documents.

1.181.   "Zohar Indentures" means (a) the Zohar I Indenture; (b) the Zohar II Indenture; and (c) the Zohar III Indenture.

1.182.   "Zohar-Patriarch Adversay Proceeding" means *Zohar CDO 2003-1, Limited, et al. v. Patriarch Partners, LLC, et al.,* Adversary Proceeding No. 20-50534 (KBO), pending in the United States Bankruptcy Court for the District of Delaware.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

### 2.1.   General Rules of Classification

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims and Interests for all purposes under the Plan, including, without limitation, voting, confirmation, and Distributions.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Claims, DIP Claims, Adequate Protection Claims, and Priority Tax Claims, as described below, have not been classified.  These Claims are not entitled to vote to accept or reject the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

### 2.2.   Classification of Claims and Interests

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired under the Plan, (ii) entitled to vote to accept or reject the Plan, and (iii) deemed to either accept or reject the Plan.  Each class is a separate Class for each applicable Debtor, other than Equity Interests in Class 19.

29250770.8

| Class | Description | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Zohar III Other Priority Claims | Unimpaired | No (Presumed to accept) |
| 2 | Zohar III Indenture Trustee Claims | Unimpaired | No (Presumed to accept) |
| 2A | Zohar III Patriarch Disputed CMA Fee Claim | Unimpaired | No (Presumed to accept) |
| 2B | Zohar III Ankura CMA Claims | Unimpaired | No (Presumed to accept) |
| 3 | Zohar III A-1 Note Claims | Impaired | Yes |
| 4 | Zohar III A-2 Note Claims | Impaired | No (Deemed to reject) |
| 5 | Zohar III A-3 Note Claims | Impaired | No (Deemed to reject) |
| 6 | Zohar III B Note Claims | Impaired | No (Deemed to reject) |
| 7 | Zohar III General Unsecured Claims | Impaired | No (Deemed to reject) |
| 8 | Zohar II Other Priority Claims | Unimpaired | No (Presumed to accept) |
| 9 | Zohar II Indenture Trustee Claims | Unimpaired | No (Presumed to accept) |
| 9A | Zohar II Patriarch Disputed CMA Fee Claim | Unimpaired | No (Presumed to accept) |
| 9B | Zohar II Ankura CMA Claims | Unimpaired | No (Presumed to accept) |
| 10 | Zohar II Credit Enhancement Claims | Impaired | Yes |
| 11 | Zohar II B Note Claims | Impaired | No (Deemed to reject) |
| 12 | Zohar II General Unsecured Claims | Impaired | No (Deemed to reject) |
| 13 | Zohar I Other Priority Claims | Unimpaired | No (Presumed to accept) |
| 14 | Zohar I Indenture Trustee Claims | Impaired | Yes |
| 14A | Zohar I Patriarch Disputed CMA Fee Claim | Unimpaired | No (Presumed to accept) |
| 15 | Zohar I Credit Enhancement Claims | Impaired | Yes |
| 16 | Zohar I A-3 Note Claims | Impaired | No (Deemed to reject) |
| 17 | Zohar I B Note Claims | Impaired | No (Deemed to reject) |
| 18 | Zohar I General Unsecured Claims | Impaired | No (Deemed to reject) |
| 19 | Interests | Impaired | No (Deemed to reject) |

29250770.8

2.3.    Subordination of Claims Pursuant to Section 510(a) of the Bankruptcy Code

The treatment of Claims in Classes 2 through 6 gives effect to the Priority of Payments (as defined in the Zohar III Indenture) and subordination provisions of the Zohar III Indenture. The treatment of Claims in Classes 9 through 11 gives effect to the Priority of Payments (as defined in the Zohar II Indenture) and subordination provisions of the Zohar II Indenture. The treatment of Claims in Classes 14 through 17 gives effect to the Priority of Payments (as defined in the Zohar I Indenture) and subordination provisions of the Zohar I Indenture.

# ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS

3.1.    <u>Administrative Claims</u> .

Unless otherwise agreed to by a Holder of an Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall receive a Cash payment equal to the Allowed Amount of such Claim. To the greatest extent possible, such payment shall be made from the Administrative and Priority Claims Escrow Account. Such payment will be made to each Holder of an Allowed Administrative Claim: (a) on the latter of (i) the Effective Date of the Plan, or (ii) the date that such Administrative Claim becomes an Allowed Administrative Claim; (b) at such time and upon such terms as may be agreed upon by such Holder and the Litigation Trustee; or (c) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

3.2.    Time for Filing Administrative Claims .

The Holder of an Administrative Claim, arising after August 26, 2021, other than: (a) Professional Claims; (b) any Administrative Claims that (i) have been previously paid by the Debtors in the ordinary course of business or otherwise or (ii) have otherwise been satisfied; (c) any Administrative Claims previously Filed; (d) any Administrative Claim that has been Allowed by prior order of the Bankruptcy Court; (e) any Administrative Claims held by any Debtor; (f) any claims for fees payable to the Clerk of the Bankruptcy Court; (g) any U.S. Trustee Fees; and (h) any Administrative Claim entitled to administrative expense status pursuant to section 503(b)(1)(D), must File and serve on counsel to the Wind-Down Administrator, a written request for such Administrative Claim so as to be received by 5:00 p.m. on the Post-Effective Date Administrative Claims Bar Date. Such request must include at a minimum: (i) the name of the Debtor(s) that are purported to be liable for the Administrative Claim; (ii) the name of the Holder of the Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim. **FAILURE TO FILE AND SERVE SUCH NOTICE OR REQUEST TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND EXTINGUISHED ABSENT ORDER OF THE COURT TO THE CONTRARY.**

3.3.    Professional Claims

All Persons seeking Allowance of Professional Claims under the Plan shall File, on or before the date that is thirty (30) calendar days after the Effective Date, their respective

applications for final allowance of compensation for services rendered and reimbursement of expenses incurred. Notwithstanding anything to the contrary in the Plan, any objection to any Professional Claim of the New Agent shall be resolved as provided in the New Agent Order.

Objections to any Professional Claim must be Filed and served on counsel to the Wind-Down Administrator and the requesting Professional by no later than twenty-one days (21) days after the service of the applicable final request for payment of the Professional Claim.

Each Holder of an Allowed Professional Claim shall be paid in full in Cash from the Professional Claims Escrow Account (i) within five (5) Business Days after entry of the order approving such Allowed Professional Claim, (ii) with respect to any Professional Claim of the New Agent, within five (5) Business Days after such Professional Claim becomes Allowed in accordance with the New Agent Order, or (iii) or at such time and upon such terms as may be agreed upon by such Professional and the Wind-Down Administrator.

3.4. DIP Claims

All remaining unpaid DIP Claims, if any, shall be deemed Allowed as of the Effective Date in an amount equal to all accrued and unpaid fees, expenses, noncontingent indemnification obligations and other amounts payable under the DIP Credit Agreement and the DIP Order. Except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment or pursuant to the "Roll Option" (as defined in the DIP Credit Agreement), if exercised, in full and final satisfaction, settlement, and release, and in exchange for, each Allowed DIP Claim, each such Allowed DIP Claim (as determined by settlement or Final Order of the Bankruptcy Court) shall be paid in full, in Cash, on the Effective Date.

3.5. Adequate Protection Claims

On the Effective Date, the Adequate Protection Claims held by the Indenture Trustee against Zohar III shall be deemed satisfied by the transfer of Zohar III's assets to Zohar III Recovery LLC and the applicable Litigation Trust(s), as provided for in Section 6.1 of the Plan, and the treatment afforded to Classes 2 and 3 under the Plan.

On the Effective Date, the Adequate Protection Claims held by the Indenture Trustee against Zohar II shall be deemed satisfied by the transfer of Zohar II's assets to Zohar II Recovery LLC and the applicable Litigation Trust(s), as provided for in Section 6.1 of the Plan, and the treatment afforded to Classes 9 and 10 under the Plan.

On the Effective Date, the Adequate Protection Claims held by the Indenture Trustee against Zohar I shall be deemed satisfied by the transfer of Zohar I's assets to the applicable Litigation Trust(s), to the extent provided for in Section 6.1 of the Plan, and the treatment afforded to Classes 14 and 15 under the Plan.

3.6. Priority Tax Claims

Unless the Holder has agreed otherwise, each Holder of an Allowed Priority Tax Claim shall receive a Cash payment equal to the Allowed Amount of such Claim. To the greatest extent possible, such payment shall be made from the Administrative and Priority Claims Escrow

Account.  Such payment to each Holder of an Allowed Priority Tax Claim will be made: (i) on the latter of (a) the Effective Date of the Plan, or (b) the date that such Priority Tax Claim becomes an Allowed Priority Tax Claim; (ii) at such time and upon such terms as may be agreed upon by such Holder and the Litigation Trustee; or (iii) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.1.    Class 1 – Zohar III Other Priority Claims

(a)    Classification. Class 1 shall consist of Other Priority Claims against Zohar III.

(b)    Impairment and Voting.  Class 1 is Unimpaired by the Plan.  Each Holder of an Allowed Other Priority Claim against Zohar III is not entitled to vote to accept or reject the Plan because such Allowed Other Priority Claims are Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)    Treatment.  Each Holder of an Allowed Other Priority Claim against Zohar III shall receive a Cash payment equal to the Allowed Amount of such Claim.  To the greatest extent possible, such payment shall be made from the Administrative and Priority Claims Escrow Account.  Such payment to each Holder of an Allowed Other Priority Claim against Zohar III will be made: (i) on the latter of (a) the Effective Date of the Plan, or (b) the date that such Other Priority Claim against Zohar III is Allowed; (ii) at such time and upon such terms as may be agreed upon by such Holder and the Litigation Trustee; or (iii) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

4.2.    Class 2 – Zohar III Indenture Trustee Claims

(a)    Classification. Class 2 shall consist of all Indenture Trustee Claims against Zohar III.

(b)    Impairment and Voting.  Class 2 is Unimpaired by the Plan.  Each Holder of an Indenture Trustee Claim against Zohar III is not entitled to vote to accept or reject the Plan because such Zohar III Indenture Trustee Claims are Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)    Treatment.  Indenture Trustee Claims against Zohar III shall be assumed by Zohar III Recovery LLC and paid from the Distributable Cash of Zohar III Recovery LLC.

4.3.    Class 2A – Zohar III Patriarch Disputed CMA Fee Claims

(a)    Classification.  Class 2A shall consist of the Zohar III Patriarch Disputed CMA Fee Claims.

(b)      Impairment and Voting.  Class 2A is Unimpaired by the Plan.  Each holder of a Zohar III Patriarch Disputed CMA Fee Claim is not entitled to vote to accept or reject the Plan because such Zohar III Patriarch Disputed CMA Fee Claim is Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code

(c)      Treatment.  To the extent Allowed, the Zohar III Patriarch Disputed CMA Fee Claims shall be paid from the funds in the Patriarch Disputed CMA Fee Escrow allocated to it pursuant to the terms of the Patriarch CMA Fee Dispute Documents.

4.4.    Class 2B – Zohar III Ankura CMA Claims

(a)      Classification.  Class 2B shall consist of the Zohar III Ankura CMA Claims.

(b)      Impairment and Voting.  Class 2B is Unimpaired by the Plan.  Each holder of a Zohar III Ankura CMA Claim is not entitled to vote to accept or reject the Plan because such Zohar III Ankura CMA Claim is Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)      Treatment.  The Zohar III Ankura CMA Claims shall be paid from the funds in the Zohar III Ankura CMA Escrow pursuant to the terms of the Zohar III Ankura CM Agreement.

4.5.    Class 3 – Zohar III A-1 Note Claims

(a)      Classification.  Class 3 shall consist of Zohar III A-1 Note Claims.

(b)      Allowance of Claims.  The Zohar III A-1 Note Claims shall be Allowed in the amount of $387,131,000.00.

(c)      Impairment and Voting.  Class 3 is Impaired by the Plan.  Each Holder of a Zohar III A-1 Note Claim is entitled to vote to accept or reject the Plan.

(d)      Treatment.  On the Effective Date, the Zohar III A-1 Notes shall be deemed to be reduced in amount to the Zohar III Adjusted Plan Value, and each Holder of a Zohar III A-1 Note Claim shall receive, in exchange for its Zohar III A-1 Note Claim, its pro rata share of (i) the New Notes assumed by Zohar III Recovery LLC and MDHI Holdco (to the extent provided for in Section 6.17 of the Plan) in the aggregate amount of $100,000, (ii) the Zohar III MDHI Holdco Interests (to the extent provided for in Section 6.17 of the Plan), and (iii) 100% of the membership interests in New Zohar III LLC.

4.6.    Class 4 – Zohar III A-2 Note Claims

(a)      Classification.  Class 4 shall consist of Zohar III A-2 Note Claims.

(b)      Impairment and Voting.  Class 4 is Impaired by the Plan.  Each Holder of a Zohar III A-2 Note Claim is deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

(c)     Treatment.    Holders of Zohar III A-2 Note Claims shall receive no distribution on account of such Claims or the Zohar III A-2 Notes.

4.7.    Class 5 – Zohar III A-3 Note Claims

(a)     Classification.  Class 5 shall consist of Zohar III A-3 Note Claims.

(b)     Impairment and Voting.  Class 5 is Impaired by the Plan.  Each Holder of a Zohar III A-3 Note Claim is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)     Treatment.    Holders of Zohar III A-3 Note Claims shall receive no distribution on account of such Claims or the Zohar III A-3 Notes.

4.8.    Class 6 – Zohar III B Note Claims

(a)     Classification.  Class 6 shall consist of Zohar III B Note Claims.

(b)     Impairment and Voting.  Class 6 is Impaired by the Plan.  Each Holder of a Zohar III B Note Claim is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)     Treatment.  Holders of Zohar III B Note Claims shall receive no distribution on account of such Claims or the Zohar III B Notes.

4.9.    Class 7 – Zohar III General Unsecured Claims.

(a)     Classification  Class 7 shall consist of General Unsecured Claims against Zohar III.

(b)     Impairment and Voting.  Class 7 is Impaired by the Plan.  Each Holder of a General Unsecured Claim against Zohar III is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)     Treatment.  The Holders of General Unsecured Claims against Zohar III shall neither receive Distributions nor retain any property under the Plan for or on account of such General Unsecured Claims.

4.10.    Class 8 - Zohar II Other Priority Claims

(a)     Classification. Class 8 shall consist of Other Priority Claims against Zohar II.

(b)     Impairment and Voting.  Class 8 is Unimpaired by the Plan.  Each Holder of an Allowed Other Priority Claim against Zohar II is not entitled to vote to accept or reject the Plan because such Allowed Other Priority Claims are Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)    Treatment.  Each Holder of an Allowed Other Priority Claim against Zohar II shall receive a Cash payment equal to the Allowed Amount of such Claim.  To the greatest extent possible, such payment shall be made from the Administrative and Priority Claims Escrow Account.  Such payment will be made to each Holder of an Allowed Other Priority Claim against Zohar II: (i) on the latter of (a) the Effective Date of the Plan, or (b) the date that such Other Priority Claim against Zohar II is Allowed; (ii) at such time and upon such terms as may be agreed upon by such Holder and the Litigation Trustee; or (iii) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

4.11.   Class 9 – Zohar II Indenture Trustee Claims

(a)    Classification. Class 9 shall consist of all Indenture Trustee Claims against Zohar II.

(b)    Impairment and Voting.  Class 9 is Unimpaired by the Plan.  Each Holder of an Indenture Trustee Claim against Zohar II is not entitled to vote to accept or reject the Plan because such Zohar II Indenture Trustee Claims are Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)    Treatment.  The Indenture Trustee Claims against Zohar II shall be assumed by Zohar II Recovery LLC and paid from the Distributable Cash of Zohar II Recovery LLC.

4.12.   Class 9A – Zohar II Patriarch Disputed CMA Fee Claim

(a)    Classification.  Class 9A shall consist of the Zohar II Patriarch Disputed CMA Fee Claim.

(b)    Impairment and Voting.  Class 9A is Unimpaired by the Plan.  Each holder of a Zohar II Patriarch Disputed CMA Fee Claim is not entitled to vote to accept or reject the Plan because such Zohar II Patriarch Disputed CMA Fee Claim is Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)    Treatment.  To the extent Allowed, the Zohar II Patriarch Disputed CMA Fee Claim shall be paid from the funds in the Patriarch Disputed CMA Fee Escrow allocated to it pursuant to the terms of the Patriarch CMA Fee Dispute Documents.

4.13.   Class 9B – Zohar II Ankura CMA Claims

(a)    Classification.  Class 9B shall consist of the Zohar II Ankura CMA Claims.

(b)    Impairment and Voting.  Class 9B is Unimpaired by the Plan.  Each holder of a Zohar II Ankura CMA Claim is not entitled to vote to accept or reject the Plan because such Zohar II Ankura CMA Claim is Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)    Treatment.  The Zohar II Ankura CMA Claims shall be paid from the funds in the Zohar II Ankura CMA Escrow pursuant to the terms of the Zohar II Ankura CM Agreement.

4.14.    Class 10 - Zohar II Credit Enhancement Claims

(a)    Classification. Class 10 shall consist of Zohar II Credit Enhancement Claims against Zohar II.

(b)    Allowance of Claims.  The Zohar II Credit Enhancement Claims shall be Allowed in the amount of $806,582,747.23.

(c)    Impairment and Voting. Class 10 is Impaired by the Plan. Each Holder of Zohar II Credit Enhancement Claims is entitled to vote to accept or reject the Plan.

(d)    Treatment.  On the Effective Date, the Zohar II Credit Enhancement Claims shall be deemed to be reduced in amount to the Zohar II Adjusted Plan Value, and each Holder of Zohar II Credit Enhancement Claims shall receive, in exchange for its Zohar II Credit Enhancement Claims, its pro rata share of (i) the New Notes assumed by Zohar II Recovery LLC and MDHI Holdco (to the extent provided for in Section 6.17 of the Plan) in the aggregate amount of $100,000, (ii) the Zohar II MDHI Holdco Interests (to the extent provided for in Section 6.17 of the Plan), and (iii) 100% of the membership interests in New Zohar II LLC.

4.15.    Class 11 – Zohar II B Note Claims

(a)    Classification.  Class 11 shall consist of Zohar II B Note Claims.

(b)    Impairment and Voting.  Class 10 is Impaired by the Plan.  Each Holder of a Zohar II B Note Claim is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)    Treatment.  Holders of Zohar II B Note Claims shall receive no distribution on account of such Claims or the Zohar II B Notes.

4.16.    Class 12 – Zohar II General Unsecured Claims

(a)    Classification.  Class 12 shall consist of General Unsecured Claims against Zohar II.

(b)    Impairment and Voting.  Class 12 is Impaired by the Plan.  Each Holder of a General Unsecured Claim against Zohar II is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan, pursuant to section 1126(g) of the Bankruptcy Code.

(c)    Treatment.  The Holders of General Unsecured Claims against Zohar II shall neither receive Distributions nor retain any property under the Plan for or on account of such General Unsecured Claims.

4.17.    Class 13 – Zohar I Other Priority Claims

(a)    Classification. Class 13 shall consist of Other Priority Claims against Zohar I.

(b)    Impairment and Voting.  Class 13 is Unimpaired by the Plan.  Each Holder of an Allowed Other Priority Claim against Zohar I is not entitled to vote to accept or reject the Plan because such Allowed Other Priority Claims are Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)    Treatment.  Each Holder of an Allowed Other Priority Claim against Zohar I shall receive a Cash payment equal to the Allowed Amount of such Claim.  To the greatest extent possible, such payment shall be made from the Administrative and Priority Claims Escrow Account.  Such payment will be made to each Holder of an Allowed Other Priority Claim against Zohar I: (i) on the latter of (a) the Effective Date of the Plan, or (b) the date that such Other Priority Claim against Zohar I is Allowed; (ii) at such time and upon such terms as may be agreed upon by such Holder and the Litigation Trustee; or (iii) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

4.18.    Class 14 – Zohar I Indenture Trustee Claims

(a)    Classification. Class 14 shall consist of all Indenture Trustee Claims against Zohar I.

(b)    Impairment and Voting.  Class 14 is Impaired by the Plan.  Each Holder of an Indenture Trustee Claim against Zohar I is entitled to vote to accept or reject the Plan.

(c)    Treatment.  Indenture Trustee Claims against Zohar I shall be paid, up to the Allowed amount of the Indenture Trustee Claims against Zohar I, from the Distributable Cash attributable to Zohar I in the Litigation Trust applicable to Zohar I available after payment in full of all Allowed Administrative Claims and Priority Claims against Zohar I, as required by the Plan.

(d)    Claim Allowance Process.  Notwithstanding anything else in the Plan to the contrary, there shall be no requirement for the Indenture Trustee to file with the Bankruptcy Court any request for payment of a Zohar I Indenture Trustee Claim.  Instead, the Indenture Trustee shall present all requests for payment of a Zohar I Indenture Trustee Claim from a Litigation Trust (subject to and in accordance with the terms of the Plan, including Section 4.18(c) of the Plan, and the applicable Litigation Trust Agreement) to the Litigation Trustee who shall have the right to bring any dispute concerning the Allowance of such Claim to the Bankruptcy Court.

4.19.    Class 14A – Zohar I Patriarch Disputed CMA Fee Claim

(a)    Classification.  Class 14A shall consist of the Zohar I Patriarch Disputed CMA Fee Claim.

(b)    Impairment and Voting.  Class 14A is Unimpaired by the Plan.  Each holder of a Zohar I Patriarch Disputed CMA Fee Claim is not entitled to vote to accept or reject the Plan because such Zohar I Patriarch Disputed CMA Fee Claim is Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(c)    Treatment.  To the extent Allowed, the Zohar I Patriarch Disputed CMA Fee Claim shall be paid from the funds in the Patriarch Disputed CMA Fee Escrow allocated to it pursuant to the terms of the Patriarch CMA Fee Dispute Documents.

4.20.    <u>Class 15 - Zohar I Credit Enhancement Claims</u>

(a)    <u>Classification</u>. Class 15 shall consist of Zohar I Credit Enhancement Claims against Zohar I.

(b)    <u>Allowance of Claims</u>.  The Zohar I Credit Enhancement Claims shall be Allowed in the amount of $20,347,522.55, after giving effect to the Zohar I Sale Documents and the Treatment provided for in Section 6.1(b) of the Plan.

(c)    <u>Impairment and Voting</u>.  Class 15 is Impaired by the Plan.  Each Holder of a Zohar I Credit Enhancement Claim is entitled to vote to accept or reject the Plan.

(d)    <u>Treatment</u>.  Each Holder of a Zohar I Credit Enhancement Claim shall receive (i) the treatment provided for in Section 6.1(b) of the Plan with respect to the Zohar I Sale Documents and (ii) a Cash payment, up to the Allowed amount of the Zohar I Credit Enhancement Claim, from the Distributable Cash attributable to Zohar I in the Litigation Trust applicable to Zohar I remaining after payment in full of the Zohar I Indenture Trustee Claim.

4.21.    <u>Class 16 – Zohar I A-3 Note Claims</u>

(a)    <u>Classification</u>.  Class 16 shall consist of Zohar I A-3 Note Claims.

(b)    <u>Impairment and Voting</u>.  Class 16 is Impaired by the Plan.  Each Holder of a Zohar I A-3 Note Claim is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)    <u>Treatment</u>.  Holders of Zohar I A-3 Note Claims shall receive no distribution on account of such Claims or the Zohar I A-3 Notes.

4.22.    <u>Class 17 – Zohar I B Note Claims</u>

(a)    <u>Classification</u>.  Class 17 shall consist of Zohar I B Note Claims.

(b)    <u>Impairment and Voting</u>.  Class 17 is impaired by the Plan.  Each Holder of a Zohar I B Note Claim is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)    <u>Treatment</u>.  Holders of Zohar I B Note Claims shall receive no distribution on account of such Claims or the Zohar I B Notes.

4.23.    <u>Class 18 – Zohar I General Unsecured Claims</u>

(a)    <u>Classification</u>.  Class 18 shall consist of General Unsecured Claims against Zohar I.

(b)    <u>Impairment and Voting</u>.  Class 18 is Impaired by the Plan.  Each Holder of a General Unsecured Claim against Zohar I is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)     Treatment.  The Holders of General Unsecured Claims against Zohar I shall neither receive Distributions nor retain any property under the Plan for or on account of such General Unsecured Claims.

4.24.    Class 19 – Interests

(a)     Classification.  Class 19 shall consist of Interests in the applicable Debtor.

(b)     Impairment and Voting.  Class 19 is Impaired by the Plan.  Each Holder of an Interest is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(c)     Treatment.  Interests shall be cancelled, released, and extinguished, and Holders of Interests shall neither receive any Distributions nor retain any property under the Plan for or on account of such Interests.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THE PLAN

5.1.    Voting of Claims

(a)     Classes Entitled to Vote. Each Claim in Classes 3, 10, 14 and 15 shall be entitled to vote separately to accept or reject the Plan, as provided in the Disclosure Statement Order or any other applicable order of the Bankruptcy Court.

(b)     Class Conclusively Presumed to Accept. Classes 1, 2, 2A, 2B, 8, 9, 9A, 9B 13, and 14A are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

(c)     Classes Deemed to Reject.  Classes 4 through 7, Classes 11 and 12, and Classes 16 through 19 will not  receive a recovery or retain any interest under the Plan.  In accordance with section 1126(g) of the Bankruptcy Code, these Classes are deemed to have rejected the Plan.

5.2.    Treatment of Vacant Classes

Any Class of Claims or Interests that does not contain a Holder of an Allowed Claim or Allowed Interest shall be deemed deleted from the Plan for all purposes.

5.3.    [Reserved].

5.4.    Nonconsensual Confirmation

If any Class of Claims or Interests entitled to vote shall not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan in accordance with Section 13.2 of the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both.  With

respect to Impaired Classes of Claims that are deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE VI

## MEANS OF IMPLEMENTATION OF THE PLAN

6.1.    Emergence Date Transactions

For each Debtor, the Plan will be implemented by or through a Wind-Down Company (if applicable), Wind-Down Administrator, Asset Recovery Entity and Asset Recovery Manager, Litigation Trust(s) and Litigation Trustee.  The post-Effective Date organization of the Asset Recovery Entities is set forth in the Plan Supplement.

(a)    Funding of Escrows

To ensure adequate implementation of the Plan, the following amounts and accounts shall be funded on the Effective Date as set forth below:

| Account | Purpose | Amount of Funding | Source of Funding |
|---|---|---|---|
| Administrative and Priority Claims Escrow Accounts (with sub-accounts for Zohar I, Zohar II and Zohar III) | Payment of all Allowed Administrative and Priority Claims (other than Professional Claims) against Zohar II and Zohar III | As estimated by Zohar I, Zohar II and Zohar III, based on the respective Claims asserted against them | Zohar II (for itself and Zohar I) and Zohar III (solely for itself) |

| Account | Purpose | Amount of Funding | Source of Funding |
|---|---|---|---|
| D&O Expense Escrow Account | Payment of Uncovered Time and Expense Amounts, incurred by the Independent Director, the Debtors' current and former Chief Restructuring Officers, the Debtors' Chief Monetization Officer, or their respective supporting personnel solely to the extent such supporting personnel ordinarily bill hourly rates and are, in good faith, determined to be necessary to complete the requisite task, in connection with any proceeding in which the Independent Director, the Chief Restructuring Officers or Chief Monetization Officer, or their respective supporting personnel, are named as a party or participate as a witness or in any other discovery, in all cases related to their status as a current or former officer or director of the Debtors or as supporting personnel thereof. | As determined by the Debtors, in consultation with the Controlling Party and Controlling Class, and disclosed in the Plan Supplement | Zohar II and Zohar III, based on the Case Expense Allocation |
| Professional Claims Escrow Account | Payment of all Allowed Professional Fees | The Professional Claims Escrow Amount | Zohar II and Zohar III, based on the Case Expense Allocation |

| Account | Purpose | Amount of Funding | Source of Funding |
|---|---|---|---|
| Retained Claims Escrow | To be held pursuant to the Sale Orders with respect to any Retained Claim Actions (as defined in the Sale Orders) | $825,000 | Zohar II and Zohar III, based on the Case Expense Allocation |
| Wind-Down Escrow Account | Wind-down expenses | As determined by the Debtors, in consultation with the Controlling Party and Controlling Class, and disclosed in the Plan Supplement | Zohar II and Zohar III, based on the Case Expense Allocation |
| Litigation Trust Bank Account(s) | Expenses of the Litigation Trust(s) and Litigation Trustee | As determined by the Debtors, in consultation with the Controlling Party and Controlling Class, as applicable, and disclosed in the Plan Supplement | To be disclosed in the Plan Supplement |
| Asset Recovery Entity Bank Accounts | Expenses of the applicable Asset Recovery Entity and Asset Recovery Manager | As determined by the Debtors, in consultation with the Controlling Party and Controlling Class, as applicable, and disclosed in the Plan Supplement | To be disclosed in the Plan Supplement |
| Reserves for Indenture Trustee Claims | To fund the Indenture Trustee Claims assumed by the Asset Recovery Entities | Initially, $250,000 for the Zohar II Indenture Trustee Claim and $250,000 for the Zohar III Indenture Trustee Claim, and to be replenished on an "evergreen" basis as such Indenture Trustee Claims are paid | $250,000 from Zohar II and $250,000 from Zohar III |

(b)     <u>Zohar I</u>

Under the Zohar I Sale Documents, MBIA acquired all the right, title and interest (whether legal, equitable or beneficial) of the assets of Zohar I existing as of such date and a Participation (as defined in the Zohar I Sale Documents) in 100% of the equitable and beneficial ownership interests in each such asset for which MBIA did not receive the legal and record ownership of such

asset.  The Confirmation Order shall authorize, approve and deem MBIA to be the legal and record owner of all such assets, in addition to its previous acquisition of the beneficial and equity ownership interests in such assets, except to the extent that an asset was disposed of in connection with a third-party sale transaction approved by the Bankruptcy Court prior to the Effective Date.

On the Effective Date, Zohar I shall complete the transactions contemplated by the Zohar I Sale Documents by (i) fully and finally transferring to MBIA or its assignee any debt and equity interests that remain recorded in the name of Zohar I, *provided, however,* that, subject to Section 6.17 of the Plan, MBIA shall contribute, or cause the contribution, to MDHI Holdco the MD Term Loan Indebtedness recorded in the name of Zohar I in exchange for the Zohar I MDHI Holdco Interests, and the Zohar I MDHI Holdco Interests shall be distributed to MBIA or its assignee; and (ii) substituting MBIA or its assignee for Zohar I as the Plaintiff (or movant, as applicable) in all pending Causes of Action, including the Zohar-Patriarch Adversary Proceeding, other than with respect to the Avoidance Actions arising under the Bankruptcy Code asserted in Counts XIX, XX, XXI, and XXII.

The Avoidance Actions asserted in Counts XIX, XX, XXI, and XXII of the Zohar-Patriarch Adversary Proceeding shall be transferred to a Litigation Trust as provided in the Plan Supplement on the Effective Date, and that Litigation Trustee on behalf of such Litigation Trust shall be substituted for Zohar I as the Plaintiff for such Avoidance Actions, subject to any liens of the Indenture Trustee securing the Zohar I Indenture Trustee Claims.

        (c)     <u>Zohar II</u>

*Step 1*:  Zohar II shall fund its share of the Escrow Accounts.

*Step 2*:  The Zohar II Credit Enhancement Claims shall be reduced to the Zohar II Adjusted Plan Value and exchanged for the New Notes issued by Zohar II with a face amount equal to the Zohar II Adjusted Plan Value.

*Step 3*:  Subject to Section 6.17 of the Plan, the MD Term Loan Indebtedness and MD Buyer Equity held by Zohar II shall be transferred to MDHI Holdco in exchange for MDHI Holdco's assumption of New Notes issued by Zohar II in an amount equal to the Zohar II MD Credit Bid Amount.

*Step 4*:  Subject to Section 6.17 of the Plan, all but $15,000 of the New Notes issued by Zohar II and assumed by MDHI Holdco will be converted into the Zohar II MDHI Holdco Interests.

*Step 5*:  All of the Remaining Assets of Zohar II shall be transferred to Zohar II Recovery LLC in exchange for Zohar II Recovery LLC's assumption of the New Notes issued by Zohar II that were not assumed by MDHI Holdco, if applicable, and the Zohar II Indenture Trustee Claim.

*Step 6*:  All but $85,000 (or $100,000, to the extent provided for in Section 6.17 of the Plan) of the New Notes issued by Zohar II and assumed by Zohar II Recovery LLC will be converted into equity of New Zohar II LLC.

*Step 7*:  To the extent identified in the Plan Supplement, Zohar II Recovery LLC shall contribute any of its Group A PC Assets or Other Assets to one or more subsidiary holding companies, each of which shall be wholly owned by Zohar II Recovery LLC.

*Step 8*:  The Litigation Assets received from Zohar II shall be transferred to the applicable Litigation Trust(s) and the Litigation Trustee on behalf of such Litigation Trust(s) shall also be substituted for Zohar II in all actions where Zohar II is the Plaintiff (or movant as applicable).

(d)    <u>Zohar III</u>

*Step 1*:  Zohar III shall fund its share of the Escrow Accounts.

*Step 2*:  The Zohar III A Note Claims shall be reduced to the Zohar III Adjusted Plan Value and exchanged for New Notes issued by Zohar III with a face amount equal to the Zohar III Adjusted Plan Value.

*Step 3*:  Subject to Section 6.17 of the Plan, the MD Term Loan Indebtedness held by Zohar III shall be transferred to MDHI Holdco in exchange for MDHI Holdco's assumption of New Notes issued by Zohar III in an amount equal to the Zohar III MD Credit Bid Amount.

*Step 4*:  Subject to Section 6.17 of the Plan, all but $10,000 of the New Notes issued by Zohar III and assumed by MDHI Holdco will be converted into the Zohar III MDHI Holdco Interests.

*Step 5*: All of the Remaining Assets of Zohar III shall be transferred to Zohar III Recovery LLC in exchange for Zohar III Recovery LLC's assumption of the New Notes issued by Zohar III that were not assumed by MDHI Holdco, if applicable, and the Zohar III Indenture Trustee Claim.

*Step 6*:  All but $90,000 (or $100,000, to the extent provided for in Section 6.17 of the Plan) of the New Notes issued by Zohar III and assumed by Zohar III Recovery LLC will be converted into equity of New Zohar III LLC.

*Step 7*:  To the extent identified in the Plan Supplement, Zohar III Recovery LLC shall contribute any of its Group A PC Assets or Other Assets to one or more subsidiary holding companies, each of which shall be wholly owned by Zohar III Recovery LLC.

*Step 8*:  The Litigation Assets received from Zohar III shall be transferred to the applicable Litigation Trust(s) and the Litigation Trustee on behalf of such Litigation Trust(s) shall also be substituted for Zohar III in all actions where Zohar III is the Plaintiff (or movant as applicable).

(e)    <u>Authorization of Transactions</u>

The Confirmation Order shall, and shall be deemed to, pursuant to sections 363, 1123, 1141 and 1142 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

6.2.    [Reserved]

6.3.    Cancellation of Agreements and Interests; Termination of Liens

On the Effective Date, except to the extent otherwise specifically provided for in the Plan: (a) the Zohar Indentures, the Interests in the Debtors, and all notes, bonds, agreements, instruments, certificates, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, and any other instruments or documents directly or indirectly evidencing, creating, or, relating to any indebtedness or obligations of, or ownership interest, equity, or profits interest in, the Debtors, or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity ownership, or profits interests in the Debtors giving rise to any Claims or Interests (collectively, the "Canceled Debt and Equity Documentation") shall be canceled, surrendered, extinguished and of no force or effect and deemed surrendered to the Debtors and neither the Debtors nor any successor in interest thereto shall have any continuing obligations thereunder; (b) the obligations of the Debtors pursuant, relating, or pertaining to the Zohar Indentures, the Interests in the Debtors and all other Canceled Debt and Equity Documentation shall be fully released, settled, and compromised; and (c) the Indenture Trustee shall be discharged of its duties and the collateral manager for each Debtor shall be terminated.

From and after the Effective Date, the parties to the Zohar Indentures and the Transaction Documents and such other Canceled Debt and Equity Documentation will have no rights against the Debtors arising from or related to the Zohar Indentures and the Transaction Documents and such other Canceled Debt and Equity Documentation, all such rights being expressly extinguished pursuant to this Plan; *provided*, that, notwithstanding Confirmation or the occurrence of the Effective Date, any such Zohar Indenture or other Canceled Debt and Equity Documentation that governs the rights of the Holder of a Claim or Interest shall continue in effect solely (i) for purposes of enabling Holders of Allowed Claims to receive distributions under the Plan solely as expressly provided herein, including treatment of the Indenture Trustee Claims in Classes 2, 9, 14 and (ii) to enforce the subordination and turnover provisions of the Zohar Indentures and Transaction Documents, including without limitation, sections 2.6 5.2, 5.4, 5.8, 5.9 and 13.1 and the "Priority of Payments" provisions of each Zohar Indenture, including as incorporated herein under Section 2.3 of the Plan. For the avoidance of doubt and notwithstanding anything to the contrary contained herein or in the Confirmation Order, the Zohar Indentures, or the Litigation Trust Agreement(s), to the extent that the rights of Holders of Notes to institute claims or causes of action arising under or related to the Indentures have been assigned to any Litigation Trust, such Litigation Trust may pursue such claims directly and need not abide by the provisions contained in section 5.8 pertaining to the Indenture Trustee.

On the Effective Date, all liens in favor of the Indenture Trustee securing the Noteholder Claims, whether arising prior to or after the Petition Date, shall be automatically released; *provided*, *however*, that the Indenture Trustee shall retain all of its liens on the Debtors' assets (but, for the avoidance of doubt, excluding assets transferred to MBIA under the Zohar I Sale Documents) to secure the payment of the Indenture Trustee Claims until such Indenture Trustee Claims have been satisfied. For the avoidance of doubt, the liens of the Indenture Trustee on any Litigation Assets (x) shall be senior to any interests held by or any distributions made on account thereof to the beneficiaries of any Litigation Trust whose interests in that Litigation Trust arise

from Noteholder Claims, but (y) shall, if applicable, be junior to the liens of any litigation funder for that Litigation Trust. The Indenture Trustee shall not be required to file UCC financing statements or take any other actions to record or perfect its surviving liens pursuant to this section, and such liens shall be deemed perfected and enforceable upon entry of the Confirmation Order.

Upon the payment in full of the Allowed DIP Claims, all liens on property of the DIP Debtors arising out of or related to the DIP Order or the DIP Credit Agreement shall automatically terminate, and all collateral subject to such liens shall be automatically released from such liens, in each case without further action by the DIP Lender and all obligations of the DIP Debtors arising out of or related to the DIP Claims shall be automatically released, in each case without further action by the DIP Lender.

The Indenture Trustee, Noteholders and DIP Lender shall take all actions to effectuate and confirm such termination and release as reasonably requested by the DIP Debtors, the Wind-Down Administrator, the Asset Recovery Managers or the Litigation Trustee.

6.4.    Modified Substantive Consolidation

Entry of the Confirmation Order shall constitute the approval, pursuant to sections 105(a), 541, 1123 and 1129 of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of: (i) Zohar I Corp. with Zohar I Limited, (ii) Zohar II Corp. with Zohar II Limited, and (iii) Zohar III. Corp. with Zohar III Limited for all purposes, including voting, confirmation, and Distribution. On and after the Effective Date, (i) all assets and liabilities of Zohar I Corp. shall be pooled with Zohar I Limited, Zohar II Corp. shall be pooled with Zohar II Limited, and Zohar III. Corp. shall be pooled with Zohar III Limited, (ii) no Distributions shall be made under the Plan on account of any Claim held by a Debtor against any Debtor with which it has been consolidated under the Plan, (iii) no Distributions shall be made under the Plan on account of any Interest held by a Debtor in any other Debtor, and (iv) all guarantees of any Debtors of the obligations of any other Debtor with which it has been consolidated under the Plan shall be eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor, and any joint or several liability of any of the Debtors shall be one obligation of the substantively consolidated Debtors.

6.5.    Wind-Down Company and Wind-Down Administrator

(a)    The Wind-Down Company

On the Effective Date, the Debtors may, at their election and with the consent of the Controlling Party and Controlling Class, form the Wind-Down Company for the purposes of resolving the affairs of the Debtors after the Effective Date, which, if formed, shall be deemed the successor to the Debtors as provided for herein.

The Wind-Down Company shall hold the Escrow Accounts funded on the Effective Date. If the Debtors elect not to form the Wind-Down Company, the Escrow Accounts shall be held by the Litigation Trust(s) as set forth in the Plan Supplement.

(b)    Appointment and Authority of Wind-Down Administrator

To the maximum extent permitted by applicable law, the Wind-Down Administrator shall have all power and authority that may be or could have been exercised, with respect to the Debtors, by any officer, director, shareholder, member, manager or other party acting in the name of such Debtor or its Estate with like effect as if duly authorized, exercised and taken by action of such officer, director, shareholder, member, manager or other party.

The identity of the Wind-Down Administrator will be disclosed in the Plan Supplement, and shall be acceptable to the Controlling Party and Controlling Class, each in their reasonable discretion, and the appointment of the Wind-Down Administrator shall be approved in the Confirmation Order.   In the event of the Wind-Down Administrator's resignation, death, incapacity or otherwise inability to serve, a replacement Wind-Down Administrator shall be appointed by the Litigation Trustee.

(c)    Duties of Wind-Down Administrator

The Wind-Down Administrator will be responsible for:

(1)    Winding up the Debtors' affairs as is appropriate under the circumstances;

(2)    Administering the Plan and taking such actions as are necessary to effectuate the Plan;

(3)    At the election of the Wind-Down Administrator, effecting the dissolution and cancellation of each of the Debtors;

(4)    Filing all appropriate (including final) tax returns;

(5)    Administering Distributions to Holders of Allowed Administrative and Priority Claims;

(6)    Ensuring that all reports required by the U.S. Trustee through the date each Debtor's Chapter 11 Case is closed are Filed; and

(7)    Seeking entry of an order closing the Chapter 11 Case and obtaining a final decree for each Debtor, subject to, as applicable, obtaining the consent of the affected Asset Recovery Manager and the Litigation Trustee in each instance.

The Wind-Down Administrator shall be discharged of its duties upon the filling of a certification with the Bankruptcy Court (or delivery to the Litigation Trustee and Asset Recovery Managers, if no Chapter 11 Case remains open at that time) that the foregoing actions have all been completed, except that items (6) and (7) shall be assumed by the Litigation Trustee if any Chapter 11 Case remains open at the time that the Wind-Down Administrator has otherwise completed its responsibilities under the Plan.

29250770.8

(d)    Expenses of the Wind-Down Administrator

All fees, costs and expenses of the Wind-Down Administrator shall be paid from the funds on deposit in the Wind-Down Escrow Account.

(e)    Engagement of Professionals

The Wind-Down Administrator shall have the authority to retain professionals to assist it in carrying out the purposes of discharging its obligations, which shall be paid from the Wind-Down Escrow Account and no other source.  There shall be no limitation on the Wind-Down Administrator's selection of professionals and no professional may be disqualified from or prohibited from representing the Wind-Down Administrator based on the fact that it previously represented or currently represents a party in interest in the Chapter 11 Cases.

(f)    Corporate Existence and Dissolution or Cancellation of Debtors

Any officer, director or manager of each Debtor shall be deemed to have resigned upon the occurrence of the Effective Date. From and after the Effective Date, no officer or director of the Debtors serving immediately prior to the Effective Date shall have any further duties or obligations related to the Debtors, the Asset Recovery Entities or any Litigation Trust.

Immediately after the Effective Date, the Wind-Down Administrator shall be authorized to take, in his or her sole and absolute discretion, all actions deemed to be appropriate in connection with dissolving or canceling the existence of the Debtors under applicable laws, including under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation.  The Wind-Down Administrator shall be authorized to file any certificate of dissolution or cancellation or other documents as may be necessary or desirable to terminate the legal existence of the Debtors.  For the avoidance of doubt, the Wind-Down Administrator is not obligated to take any affirmative action to dissolve or cancel the existence of any Debtor.

The Wind-Down Administrator and Debtors shall not be required to pay any stamp or similar tax arising out of the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under this Plan.

6.6.    The Asset Recovery Entities

(a)    Establishment of the Asset Recovery Entities

The Controlling Party of Zohar II shall create New Zohar II LLC, Zohar II Intermediate LLC and Zohar II Recovery LLC, which shall have the ownership structure and capitalization described in the Plan Supplement.  Each of these three entities shall elect to be treated as corporations for federal income tax purposes.

The Controlling Class of Zohar III shall create New Zohar III LLC, Zohar III Intermediate LLC and Zohar III Recovery LLC, which shall have the ownership structure and capitalization

described in the Plan Supplement. Each of these three entities shall elect to be treated as corporations for federal income tax purposes.

Zohar II Recovery LLC and Zohar III Recovery LLC may also have one or more subsidiaries, as described in the Plan Supplement, which shall each be wholly owned by its respective parent entity. The organizational documents for each of the Asset Recovery Entities shall provide that the equity of such Asset Recovery Entities be freely tradeable or assignable to the maximum extent practicable.

<div align="center">(b)    <u>Appointment of the Asset Recovery Managers</u></div>

On the Effective Date, an Asset Recovery Manager for Zohar II Recovery LLC, Zohar III Recovery, LLC and any subsidiary shall be appointed by the applicable Controlling Class or Controlling Party at such Asset Recovery Entity, as the case may be, and shall constitute a representative of the applicable Debtor's estate under section 1123 of the Bankruptcy Code. The identity of each initial Asset Recovery Manager and its proposed compensation shall be disclosed in the Plan Supplement and shall be subject to approval by the Bankruptcy Court at the Confirmation Hearing.

The same party can serve as the Asset Recovery Manager for more than one Asset Recovery Entity and can also serve as Wind-Down Administrator or a Litigation Trustee.

<div align="center">(c)    <u>Responsibilities of the Asset Recovery Manager</u></div>

Each Asset Recovery Manager's primary responsibility shall be to maximize the value of the Remaining Assets (other than the Litigation Assets, which shall be administered by the Litigation Trustee) held by its respective Asset Recovery Entity for the benefit of members of the respective Asset Recovery Entity. Subject to Section 6.7 of this Plan, except as set forth in the Asset Recovery Entity Agreement, no Asset Recovery Entity or Asset Recovery Manager shall have any obligations to the Debtors or any Holders of Claims or Interests against the Debtors.

<div align="center">(d)    <u>Transfer of the Remaining Assets; Free and Clear Transfer</u></div>

Notwithstanding any prohibition on assignability under applicable non-bankruptcy law, on the Effective Date, pursuant to the terms and conditions of the applicable Asset Recovery Entity Agreement, the Debtors shall be deemed to have automatically transferred to each Asset Recovery Entity all of their right, title, and interest in and to all of the Remaining Assets in accordance with section 1141 of the Bankruptcy Code. All such assets shall automatically vest in the Asset Recovery Entity free and clear of all Claims, Liens, and other interests, subject only to the expenses of the Asset Recovery Entity, DIP Claims and liens securing DIP Claims and liens securing the applicable Indenture Trustee Claims as set forth in the Plan and in the applicable Asset Recovery Entity Agreement. Thereupon, the Debtors and Holders of Claims and Interests against the Debtors shall have no interest in or with respect to the Remaining Assets so transferred or the Asset Recovery Entities.

Any provision in any contract purporting to restrict the rights of the Debtors to assign or transfer any Remaining Asset, to prohibit the assignment of any Remaining Asset, or to limit or

restrict the rights of any assignee of any Remaining Asset shall not be enforced or enforceable with respect to the Transfer of the Remaining Assets under the Plan.

On or as close as reasonably practicable to the Effective Date, the Debtors, in consultation with the Controlling Class, Controlling Party and proposed or appointed Litigation Trustee, shall make a good faith determination of the fair market value of the Remaining Assets as of the Effective Date, *provided*, *however*, that the Debtors shall not be required to hire an expert to make such a valuation.

(e)     Expenses of Asset Recovery Manager; Retention of Advisors

Each Asset Recovery Entity shall be responsible for its own expenses, including the fees and costs of its Asset Recovery Manager and any professionals retained by it.

Except as provided in the applicable organizational documents, there shall be no limitation on an Asset Recovery Manager's selection of professionals and no professional may be disqualified from or prohibited from representing an Asset Recovery Manager based on the fact that it previously represented or currently represent a party in interest.

(f)     Payments to Be Made upon Dissolution of an Asset Recovery Entity

In connection with the dissolution or termination of any Asset Recovery Entity, provisions shall be made for the treatment of any payments to be paid to such Asset Recovery Entity hereunder so as to preserve such payment for its intended beneficiaries, including by substituting a Litigation Trust for the applicable Zohar Fund as the recipient of such payment.

6.7.     Post-Confirmation Status of Settlement Agreement

The terms and provisions of the Settlement Agreement shall remain in full force and effect from and after the Effective Date, except that MBIA, for the assets acquired under the Zohar I Sale Documents, and the applicable Asset Recovery Managers shall assume the obligations of the Independent Director and the CRO with respect to the monetization process under the Settlement Agreement and July 2 Order for the debt and equity interests in the Portfolio Companies contributed to them on the Effective Date.  The applicable Asset Recovery Managers shall also assume any claims and defenses of the applicable Debtors against any party with respect to the Settlement Agreement, including, without limitation, any claims that the Settlement Agreement was breached.  Furthermore, paragraphs 6 and 18 of the Settlement Agreement, shall remain in effect and binding on the parties to the Settlement Agreement, Ankura (and any successor to it), the Wind-Down Administrator and each Asset Recovery Entity and its respective Asset Recovery Manager.

6.8.     Litigation Trust(s)

(a)     Establishment of the Litigation Trust(s)

One or more  Litigation Trusts will be created, and the Litigation Assets will be transferred to and vest in the Litigation Trust(s) as provided for in the Plan and Plan Supplement as of the

Effective Date.  The transfer of the Litigation Assets to the Litigation Trust(s) will be done in a manner so as to minimize any tax impact on the Debtors and their estates.

From and after the Effective Date, the Litigation Trustee may commence, litigate, and settle any Causes of Action or claims or rights to payment or claims that belong to the Debtors or Estates as of the Effective Date or are instituted by the Litigation Trust(s) or Litigation Trustee on or after the Effective Date, except as otherwise expressly provided in the Plan and the Litigation Trust Agreement(s).  The Litigation Trust(s) and Litigation Trustee shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the applicable Debtor and its Estate, including setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.  Without the need for filing any motion for such relief, in connection with the Litigation Assets, the Litigation Trust(s) or the Litigation Trustee (as applicable) hereby shall be deemed substituted for the applicable Debtor (i) in all pending matters including, but not limited to, motions, contested matters and adversary proceedings in the Bankruptcy Court; and (ii) with respect to any Causes of Action pending before the Bankruptcy Court or any other court, other than as expressly provided for in Section 6.1(b) with respect to Zohar I.

On and after the Effective Date, the Litigation Trust(s) shall have no liability on account of any Claims against, or Interests in, the Debtors except as set forth in the Plan and in the Litigation Trust Agreement(s).

(b)    Appointment of the Litigation Trustee

On the Effective Date, the Litigation Trust(s) and Litigation Trustee shall be appointed and shall constitute a representative of the Debtor's estate under section 1123 of the Bankruptcy Code.  The identity of the Litigation Trustee and its compensation shall be disclosed in the Plan Supplement and subject to approval by the Bankruptcy Court at the Confirmation Hearing.  In the event of a Litigation Trustee's resignation, death, incapacity or otherwise inability to serve, a successor Litigation Trustee shall be appointed in accordance with the applicable Litigation Trust Agreement.

The same party can serve as a Litigation Trustee, Wind-Down Administrator or an Asset Recovery Manager.

(c)    Responsibilities of the Litigation Trustee

The Litigation Trustee's primary responsibilities shall be as follows, but shall additionally include any other matters set forth in the applicable Litigation Trust Agreement:

(1)    Pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, or resolve the Litigation Assets;

(2)    Determine the allocation of expenses for prosecuting, reducing to cash and collecting the proceeds of any Litigation Assets;

(3)    Determine the allocation of recoveries from Litigation Assets to the extent the recovery is not directly traceable to Litigation Assets; and

(4)    Determine the amount and timing of Distributions of the Cash proceeds of the Litigation Assets to the beneficiaries of the Litigation Trust.

The Debtors and applicable Asset Recovery Entity or Entities may form more than one Litigation Trust and if more than one Litigation Trust is formed, the Plan Supplement shall identify such Trusts, the identity of the selected Litigation Trustee for each Litigation Trust, any responsibility under the Plan reserved to a specific Litigation Trustee, and the allocation of Litigation Assets as among the Litigation Trusts, which shall also be set forth in the applicable Litigation Trust Agreements.  Further, if the Debtors and any applicable Asset Recovery Entity or Entities form more than one Litigation Trust as identified in the Plan Supplement, references herein or in the Confirmation Order to the Litigation Trust, Litigation Trustee, and Litigation Assets shall be deemed to apply to each Litigation Trust formed by the Debtors, each Litigation Trustee thereof, and the Litigation Assets therein**.**

(d)    Transfer of the Litigation Assets

Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date, pursuant to the terms and conditions of the Litigation Trust Agreement(s), the Debtors shall be deemed to have automatically transferred to the Litigation Trust(s), all of their right, title, and interest in and to all of the Litigation Assets in accordance with section 1141 of the Bankruptcy Code.  All such assets shall automatically vest in the Litigation Trust(s) free and clear of all Claims, Liens, and other interests, subject only to the expenses of the Litigation Trust(s), DIP Claims and liens securing DIP Claims and the liens securing the Zohar II Indenture Trustee Claims and Zohar III Indenture Trustee Claims as set forth in the Plan and the Litigation Trust Agreement(s).  Thereupon, the Debtors shall have no interest in or with respect to the Litigation Assets or the Litigation Trust(s).

(e)    Expenses of Litigation Trustee; Retention of Advisors

The expenses of any Litigation Trust and Litigation Trustee, including the fees and expenses of any professionals retained by the Litigation Trustee, shall be paid solely from the assets of such Litigation Trust, including any financing obtained by such Litigation Trust.  The allocation of the expenses of such Litigation Trust shall be determined as set forth in the applicable Litigation Trust Agreement.

There shall be no limitation on a Litigation Trustee's selection of professionals and no professional may be disqualified or prohibited from representing a Litigation Trustee based on the fact that it previously represented or currently represents a party in interest.

(f)    Payments to Be Made upon Dissolution of the Litigation Trust(s)

In connection with the dissolution or termination of the Litigation Trust(s), provisions shall be made for the treatment of any payments to be paid to the Litigation Trust(s) hereunder so as to preserve such payment for its intended recipient.

6.9.    Establishment, Funding and Distribution of Escrow Accounts

(a)    Administrative and Priority Claims Escrow Account

On the Effective Date, the Administrative and Priority Claims Escrow Account shall be established, shall be divided into sub-accounts for each Debtor, and shall be funded from the applicable Debtor's Cash, subject to the next sentence.  Solely with respect to Zohar I, if the Administrative and Priority Claims Escrow Account is not funded in full on the Effective Date, it shall be funded by the Litigation Trustee prior to the distribution of any Distributable Cash to holders of Claims in Classes 14 and 15.  The Wind-Down Administrator shall have responsibility for directing the Distribution of the funds in the Administrative and Priority Claims Escrow Account in accordance with the terms of the Plan.

The funds in the Administrative and Priority Claims Escrow Account shall be distributed to satisfy all Allowed Administrative and Priority Claims against the Debtors until the Holders of all such Claims are paid the full Allowed amount of their Claims (or such other less favorable treatment agreed to by the holder of such claim).  If there are any funds in the respective sub-account for any Debtor in the Administrative and Priority Claims Escrow Account after the Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims against such Debtor are paid the full Allowed amount of such Claims, the balance of such funds shall be remitted to:  (i) the  Litigation Trust specified in the Plan Supplement, for payment of Allowed Claims against Zohar I in accordance with the Plan, (ii) Zohar II Recovery LLC, for payment of Allowed Claims against Zohar II in accordance with the Plan, and (iii) Zohar III Recovery LLC, for payment of Allowed Claims against Zohar III in accordance with the Plan.

(b)    D&O Expense Escrow Account

On the Effective Date, the D&O Expense Escrow Account shall be established, funded, and maintained pursuant to the D&O Expense Escrow Agreement.  The funds in the D&O Expense Escrow Account shall be held in trust for the benefit of the Independent Director, the Debtors' current and former Chief Restructuring Officers, the Debtors' Chief Monetization Officer, or their respective supporting personnel, to satisfy Uncovered Time and Expense Amounts in connection with any proceeding in which the Independent Director, the Chief Restructuring Officers or Chief Monetization Officer, or their respective supporting personnel, are named as a party or participate as a witness or in any other discovery, in all cases related to their status as a current or former officer or director of the Debtors or as supporting personnel thereof.

The Plan Supplement shall include the form of D&O Expense Escrow Agreement, which shall detail the manner for disbursing the funds therein and the duration for such escrow account.  Amounts remaining in the D&O Expense Escrow Account at its termination shall be remitted to the Zohar II Asset Recovery Entity and Zohar III Asset Recovery Entity, ratably based on the Case Expense Allocation.

(c)    Professional Claims Escrow Account

On the Effective Date, the Professional Claims Escrow Account shall be established, funded in the amount of the Professional Claims Escrow Amount, and maintained by the Wind-Down Administrator.  The funds in the Professional Claims Escrow Account shall be held in trust

for the benefit of the Professionals and used solely for the purpose of satisfying Professional Claims.

From and after the Effective Date, pending the final Allowance of their Professional Claims, retained Professionals shall be paid from the Professional Claims Escrow Account the interim amount permitted to be paid under the Interim Compensation Order on account of their Professional Claims. Allowed amounts shall be paid within three (3) business days of interim or final allowance, as applicable, including interim allowance in accordance with the procedures set forth in the Interim Compensation Order. If there are any funds in the Professional Claims Escrow Account after each Holder of an Allowed Professional Claim has received payment in full, the balance of such funds shall be remitted to the Zohar II Asset Recovery Entity and Zohar III Asset Recovery Entity, ratably based on the Case Expense Allocation.

(d)     Wind-Down Escrow Account

On the Effective Date, the Wind-Down Escrow Account shall be established, funded in the amount determined by the Debtors (in consultation with the Controlling Party and Controlling Class) and set forth in the Plan Supplement, and maintained by the Wind-Down Administrator. The funds in the Wind-Down Escrow Account shall be held in trust for the benefit of the Wind-Down Administrator and used solely for the purpose of satisfying the expenses incurred in discharging the Wind-Down Administrator's duties and obligations.

Any amount that remains in the Wind-Down Escrow Account at the time the Wind-Down Administrator has discharged its duties and is eligible to be discharged of its duties, as determined by the Wind-Down Administrator in its sole discretion, shall be distributed to Zohar II Recovery LLC and Zohar III Recovery LLC ratably in accordance with the Case Expense Allocation.

(e)     Patriarch Disputed CMA Fee Escrow

Once all Patriarch Disputed CMA Fee Claims are Allowed or Disallowed, any funds remaining in the Patriarch Disputed CMA Fee Escrow after payment of the Allowed amounts of the Patriarch CMA Fee Claims shall be paid to (i) the Litigation Trust(s) for any amounts originally contributed by Zohar I that remain after payment of the Zohar I Patriarch Disputed CMA Fee Claim, (ii) Zohar II Recovery LLC for amounts originally contributed by Zohar II that remain after payment of the Zohar II Patriarch Disputed CMA Fee Claim, and (iii) Zohar III Recovery LLC for amounts originally contributed by Zohar III that remain after payment of the Zohar III Patriarch Disputed CMA Fee Claim.

(f)     Ankura CMA Escrows

Not later than five (5) Business Days prior to the Effective Date, the Debtors shall provide Ankura with written notice of the Effective Date. Not later than three (3) business days prior to the Effective Date, Ankura shall provide each of Zohar II and Zohar III with an estimate of the amounts anticipated to be incurred and payable under Article III of the respective Ankura CM Agreement as of the occurrence of the Effective Date. On the Effective Date, the Debtors shall deposit into the applicable Ankura CMA Escrow the amount by which the current balance of the applicable Ankura CMA Fee Escrow is less than the estimate provided to the applicable Zohar Fund pursuant to the prior sentence. Ankura and its professionals shall not be required to submit

any fee applications and all requests for payment of Ankura CMA Claims shall be submitted in accordance with the Ankura CMA Order.  As soon as reasonably practicable after the Effective Date, (i) any amounts in the Ankura Zohar II Escrow shall be used to pay the outstanding Zohar II Ankura CMA Claims incurred and payable through the Effective Date and the balance of such escrow shall be paid to Zohar II Recovery LLC and (ii) any amounts in the Ankura Zohar III Escrow shall be used to pay the outstanding Zohar III Ankura CMA Claims incurred and payable through the Effective Date and the balance of such escrow shall be paid to Zohar III Recovery LLC.  Once such payments have been made in accordance with the Ankura CMA Order, they shall be non-refundable and not subject to challenge as provided in the Ankura CMA Order and the parties to the documents governing the Ankura CMA Escrows shall take all steps necessary to terminate such escrows.

(g)    Zohar I Issuer Holdback

The Indenture Trustee shall continue to hold the Zohar I Issuer Holdback to secure the payment of the Zohar I Indenture Trustee Claims as permitted by the Zohar I Issuer Holdback Documents.  The Indenture Trustee shall first satisfy the Zohar I Indenture Trustee Claims from the funds in the Zohar I Issuer Holdback prior to seeking payment from the Distributable Cash of Zohar I in the Litigation Trust(s).  If any funds remain in the Zohar I Issuer Holdback once all Allowed Zohar I Indenture Trustee Claims have been paid in full, the remaining funds shall be distributed to MBIA.

(h)    AMZM Escrow Accounts

Upon and after the Effective Date of this Plan and the discharge of the Indenture Trustee of its duties pursuant to Section 6.3 of the Plan, any funds to be released from the AMZM Escrow Accounts shall be transferred to the Zohar II Recovery LLC or Zohar III Recovery LLC, as applicable based on the source of the funds in the particular AMZM Escrow Account.

6.10.    Effectuating Documents; Further Transactions

The appropriate officer, director or authorized representative of the Debtors or the Wind-Down Administrator, as applicable, shall be, and hereby are, authorized to execute, deliver, file, and record such contracts, instruments, releases, indentures, certificates, and other agreements or documents, and take such other actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and Confirmation of the Plan shall constitute all necessary corporate or limited liability company authorizations necessary to carry out such actions.

6.11.    Disposition of Books and Records

After the Effective Date, the Debtors shall transfer the Debtors' non-privileged books and records in the Debtors' actual possession and otherwise assign their rights and interest in such books and records to (i) the relevant Litigation Trust, with respect to the books and records related to the Litigation Assets transferred to such Litigation Trust, and (ii) the respective Asset Recovery Entities with respect to the books and records related to all Remaining Assets other than the Litigation Assets.  The Debtors shall also transfer privileged books and records related to the Litigation Assets and/or the Remaining Assets to the relevant Litigation Trust and/or the Asset Recovery Entities, as applicable, and the Plan Supplement shall specify the treatment and manner

in which any privileged materials related to the Litigation Assets and the Remaining Assets will be transferred to such Litigation Trust and Asset Recovery Entities, as applicable.  From and after the Effective Date, the Asset Recovery Entities and Litigation Trust(s) shall continue to preserve and maintain all documents and electronic data transferred to them by the Debtors for at least such period as necessary to allow the Wind-Down Administrator to fulfill its obligations.

6.12.    Objection to Pending Request for Allowance of Adequate Protection Claims under Section 507(b)

The Plan constitutes an objection to any request for a claim under Section 507(b) of the Bankruptcy Code filed or made by any party other than the Indenture Trustee.  The Court has determined that the Indenture Trustee is the sole party having any lien or security interest in the Debtors' property and, correspondingly, is the only party entitled to assert a claim for any diminution in the value of its interest in the Debtors' property.  Therefore, the Debtors object to the pending administrative expense claims filed by MBIA Insurance Corp. against the Zohar II Debtors [Docket Nos. 2877 and 2878], Bardin Hill Investment Partners, LP, on account of funds managed by itself and its affiliates, against the Zohar III Debtors [Docket Nos. 2879 and 2880] and the Patriarch Stakeholders (as defined in their request) against all Debtors [Docket No. 2882], as well as any future claim under Section 507(b) of the Bankruptcy Code submitted by a party other than the applicable Indenture Trustee.

For the avoidance of doubt, the Debtors are not objecting to any claim to enforce a right to payment held by the Controlling Party or the Controlling Class under the DIP Order.

6.13.    Approval of Case Expense Allocation

The Case Expense Allocation shall be disclosed in the Plan Supplement and approved at the Confirmation Hearing.

6.14.    Disposition of Zohar II Intercompany Claim

The Plan contemplates a settlement of the Zohar II Intercompany Claim.  Specifically, if the Plan is confirmed for Zohar I and Zohar II, Zohar II shall be deemed to have consented to a treatment, subject to the occurrence of the Effective Date for Zohar I, that results in Zohar II (or Zohar II Recovery, LLC, if it succeeds to the assets of Zohar II) receiving a beneficial interest in the relevant Litigation Trust on account of the Zohar II Intercompany Claim, with a payment preference senior to Classes 14 through 19, in lieu of the treatment required under section 1129(a)(9)(A) of the Bankruptcy Code.  As a result of such treatment, and expressly conditioned on the payment preference described in the foregoing sentence, no amounts shall be required to be placed into the Administrative and Professional Claim Escrow Account on account of the Zohar II Intercompany Claim.

6.15.    Treatment of Zohar II Indenture Trustee Claim and Zohar III Indenture Trustee Claim

Zohar II Recovery LLC shall be deemed to have assumed the Zohar II Indenture Trustee Claim and Zohar III Recovery LLC shall be deemed to have assumed the Zohar III Indenture Trustee Claim, and the Indenture Trustee shall retain its liens on all assets received by the Asset

Recovery Entities from the Debtors, including any Litigation Assets subsequently transferred to the Litigation Trust(s), to ensure that the foregoing claims are Unimpaired.  On the Effective Date, the Indenture Trustee shall remit to Zohar II all funds in its possession with respect to any "Account", as defined in the Zohar II Indenture, of Zohar II, and the Indenture Trustee shall remit to Zohar III all funds in its possession with respect to any "Account", as defined in the Zohar III Indenture, of Zohar III, which funds shall be used to fund any amounts required to be placed into the Escrow Accounts by the respective Debtor.  The Asset Recovery Entity Agreements for Zohar II Recovery LLC and Zohar III Recovery LLC shall provide for a reserve to be established for the Zohar II Indenture Trustee Claims and Zohar III Indenture Trustee Claims, respectively, and replenished on an "evergreen" basis (using funds from the proceeds received by the applicable Asset Recovery Entity) to secure the payment of such Indenture Trustee Claims, and the "evergreen" amount of each such reserve shall be $250,000, unless the Indenture Trustee agrees to a lesser amount.

Notwithstanding anything else in the Plan to the contrary, there shall be no requirement for the Indenture Trustee to file with the Bankruptcy Court any request for payment of a Zohar II Indenture Trustee Claim or Zohar III Indenture Trustee Claim.  Instead, the Indenture Trustee shall present all requests for payment of a Zohar II Indenture Trustee Claim or Zohar III Indenture Trustee Claim to each of Zohar II Recovery LLC, Zohar III Recovery LLC and the Litigation Trustee, and such parties shall have the rights to dispute such amounts in accordance with the applicable provisions of the Indentures.

6.16.  <u>Disposition of Patriarch Disputed CMA Fee Claims</u>

The applicable Litigation Trustee shall be substituted for AMZM and the applicable Debtors under the Patriarch CMA Fee Dispute Documents.  The Litigation Trustee shall prosecute to conclusion or settlement the dispute over the Patriarch Disputed CMA Fee Claims in accordance with the Patriarch CMA Fee Dispute Documents.

6.17.  <u>MD Credit Bid Transaction</u>

To the extent that a sale of substantially all of the assets of, or a restructuring of, MD Helicopters, Inc. has not been consummated prior to the Confirmation Date, on the Effective Date, (i) the MD Buyer Equity and (ii) the MD Term Loan Indebtedness owned or held in the name of each of Zohar I, Zohar II and Zohar III will be transferred to MDHI Holdco as described in "Step 3: in Section 6.1(c) and (d).  MDHI Holdco and MD Buyer will then prosecute to conclusion the MD Credit Bid Transaction.

If a sale of substantially all of the assets of, or a restructuring of, MD Helicopters, Inc. is consummated prior to the Confirmation Date, (i) the Confirmation Order shall contain provisions sufficient to ensure implementation of the MD Credit Bid Transaction to the extent it has been approved by the Bankruptcy Court in the MD Chapter 11 Cases; (ii) any references in the Plan to the creation of MDHI Holdco, distribution of MDHI Holdco Interests and any transfer of MD Buyer Equity and MD Term Loan Indebtedness to MDHI Holdco shall be excised from the Plan; (iii) the MD Term Loan Indebtedness and MD Buyer Equity held by Zohar II and Zohar III as of the Effective Date shall be included as Remaining Assets and contributed to the applicable Asset Recovery Entity; (iv) any MD Term Loan Indebtedness and any equity interests in MD Helicopters

Inc. held by or in the name of Zohar I shall be distributed in accordance with Section 6.1(b) hereof; and (v) the amount of outstanding New Notes at Zohar II Recovery, LLC and Zohar III Recovery, LLC following "Step 6" in Section 6.1(c) and (d) shall be $100,000 for each entity.

## ARTICLE VII

## DISTRIBUTIONS UNDER THE PLAN

### 7.1.   Delivery of Distributions

Subject to Bankruptcy Rule 9010 and Section 7.3, all Distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the Bankruptcy Schedules filed with the Bankruptcy Court if no Proof of Claim has been filed and otherwise at the address of such Holder as set forth in the most-recently filed Proof of Claim; *provided* that the applicable Distribution Agent shall use any address for purposes of Distributions identified to it in writing, including by a filing with the Bankruptcy Court, by the Holder of a Claim.  Nothing in the Plan shall require the Debtors or applicable Distribution Agent to attempt to locate any Holder of an Allowed Claim or Interest.

### 7.2.   Undeliverable and Unclaimed Distributions

#### (a)   Holding Undeliverable and Unclaimed Distributions

If the Distribution to any Holder of an Allowed Claim is returned as undeliverable or is otherwise unclaimed as provided for in the Plan, no additional Distributions shall be made to such Holder unless and until the applicable Distribution Agent is notified in writing of such Holder's then-current address.  Nothing contained in the Plan shall require the applicable Distribution Agent to attempt to locate any Holder of an Allowed Claim.

#### (b)   Failure to Claim Unclaimed/Undeliverable Distributions

Any Holder of an Allowed Claim that does not contact the applicable Distribution Agent to claim an undeliverable or unclaimed Distribution within ninety (90) days after the Distribution is made shall be deemed to have forfeited its right to such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution on account of its Allowed Claims against the Debtors, their Estates, their property, the Administrative and Priority Claims Escrow Account, the Asset Recovery Entities, the Litigation Trust, or the respective assets of or in any of the foregoing.  In such cases, such unclaimed/undeliverable Distributions shall be redistributed and paid to Holders of Allowed Claims in accordance with the Plan, free of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary.

### 7.3.   Distribution Record Date; Transfer of Claims

The Confirmation Order shall establish a record date for Holders of Zohar III A-1 Note Claims and the mechanism for making distributions under the Plan to the Holders of Zohar III A-1 Note Claims.

29250770.8

Except with respect to Noteholder Claims, the claims register shall remain open after the Effective Date and the applicable Distribution Agent shall recognize any transfer of Claims in accordance with Bankruptcy Rule 3001(e) at any time thereafter, provided that for purposes of each Distribution, the applicable Distribution Agent is not obligated to recognize (and will have no liability if it does not recognize) any transfer during the period commencing thirty (30) calendar days prior to making any Distribution. Except as otherwise provided in the Plan, any transfer of a Claim, whether occurring prior to or after the Confirmation Date, shall not affect or alter the classification and treatment of such Claim under the Plan and any such transferred Claim shall be subject to classification and treatment under the Plan as if such Claim were held by the transferor who held such Claim on the Petition Date.

Each Debtor, Asset Recovery Trust and Asset Recovery Manager, and Litigation Trust and Litigation Trustee shall not be required to recognize the transfer of any Noteholder Claim following the Effective Date, except as expressly provided for in the applicable Asset Recovery Entity Agreement or Litigating Trust Agreement(s).

7.4.    Manner of Payment

At the option of the applicable Distribution Agent, any Cash payment to be made under the Plan may be made by a check or wire transfer or as otherwise determined by the Distribution Agent.

7.5.    Time Bar to Cash Payments by Check

Checks issued pursuant to the Plan on account of Allowed Claims or Interests shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof, following which date the applicable Distribution Agent may void and cancel such check without any recourse to the party to which such check was issued.

7.6.    Setoffs and Recoupment

The applicable Distribution Agent may, but shall not be required to, set off against or recoup from any Distribution on account of an Allowed Claim, any rights to payment of any nature whatsoever that the Debtors may have against the claimant, except where expressly released by the Plan's release provisions; *provided*, *however*, neither the failure to do so nor the allowance of any Claim or Interest under the Plan shall constitute a waiver or release by any Debtor, Asset Recovery Entity, or Litigation Trust of any such right to payment they may have against such claimant; *provided further* that the Debtors shall provide notice to the affected claimant of any set off or recoupment, and such claimant shall have the right to challenge any such set off or recoupment in Bankruptcy Court or any other court having proper jurisdiction.

7.7.    Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such Distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

29250770.8

7.8.    <u>Interest on Claims</u>

Except as specifically provided for in the Plan, the Confirmation Order or a Final Order of the Bankruptcy Court (including, without limitation, the DIP Order and Cash Collateral Order), interest shall not accrue on Claims or Distributions to be made under the Plan, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim, and no Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

7.9.    <u>No Distribution in Excess of Allowed Amount of Claim</u>

Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim.

All distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

7.10.    <u>Payment of Taxes on Distributions Received Pursuant to the Plan; Required Compliance with Withholding and Reporting Obligations</u>

In connection with the Plan and all Distributions under the Plan, the applicable Distribution Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under the Plan shall be subject to any such withholding or reporting requirements.  The applicable Distribution Agent may withhold from amounts distributable to any Person any and all amounts, determined in the applicable Distribution Agent's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement.  Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution.  The applicable Distribution Agent has the right, but not the obligation, to refrain from making a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

As an express condition to receiving a Distribution, each Holder of an Allowed Claim must furnish any information that the applicable Distribution Agent believes, in good faith, it is required to obtain prior to making a Distribution in order to allow the applicable Distribution Agent to comply with tax-reporting and other regulatory obligations, including furnishing a Taxpayer Identification Number or Employer Identification Number (*i.e.*, social security number for an individual and employer identification number for a business) and a completed Form W-9 or, if not a US company, comparable Form, which may be obtained from the Internal Revenue Service.

The applicable Distribution Agent shall make an initial request to Holders of Claims for the information required under this Section of the Plan as soon as reasonably practicable after the Effective Date and shall specify a period of sixty (60) days to respond, and such request shall specify that the information is being requested for purposes of potential Distributions under the Plan.  A second request shall be made after the expiration of the initial sixty (60) day period.  Each such request shall specify that the information is being requested for purposes of potential Distributions under the Plan and that the failure to respond will result in disallowance of the Claim

29250770.8

in accordance with this Section of the Plan.  Any party that fails to respond to a second request within sixty (60) days of the applicable Distribution Agent mailing such request, shall have their Claim Disallowed and expunged and shall forfeit any Distributions under the Plan on account of such Claim.

7.11.  Minimum Distribution Amounts; Rounding

The applicable Distribution Agent shall not be required to make any Distribution that is less than $250.00 ("De Minimis Distribution").  Any De Minimis Distribution shall continue to be held for the benefit of the Holders of Allowed Claims entitled to such De Minimis Distributions until such time that the aggregate amount of De Minimis Distributions held by the applicable Distribution Agent for the benefit of a Holder of a Claim equals or exceeds $250.00, at which time the applicable Distribution Agent will distribute such De Minimis Distributions to such Holder. If, at the time that the final Distribution under the Plan is to be made to a particular Class of Claims, the De Minimis Distributions held by the applicable Distribution Agent for the benefit of a Holder of a Claim totals less than $50.00, such funds shall not be distributed to such Holder, but rather, such Claim shall be deemed expunged and such Distribution shall be reallocated for Distribution to the other Holders of Allowed Claims in such affected Class.

On or about the time that a final Distribution is made to a Class and upon the applicable Distribution Agent determining that there are insufficient funds remaining to cost-effectively make any further Distribution to Holders of Claims in that Class, the applicable Distribution Agent may donate any undistributed funds to the American Bankruptcy Institute Endowment Fund.

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down) with amounts equal to or greater than $0.50 being rounded up and fractions less than $0.50 being rounded down.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

8.1.  Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, or applicable Asset Recover Entity Agreement or Litigation Trust Agreement(s), after the Effective Date, the Litigation Trustee shall have the authority to file, withdraw, or litigate to judgment objections to Claims against that Debtor, and shall have sole authority (a) to settle or compromise any Disputed Claim against that Debtor without any further notice or action, order, or approval by the Bankruptcy Court, (b) to amend the Bankruptcy Schedules in accordance with the Bankruptcy Code, and (c) to administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

8.2.     Claims Objections

Unless otherwise provided in the Plan or by order of the Bankruptcy Court, any objections to Claims (including Administrative Claims and Priority Tax Claims but excluding Professional Claims and claims arising under section 1930 of chapter 123 of title 28 of the United States Code) shall be Filed not later than 180 days after the later of (i) the Effective Date or (ii) the date such Claim is Filed (the "Claims Objection Deadline"), *provided* that the Litigation Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by Filing a motion with the Bankruptcy Court and serving all Holders of Claims that would be affected by such extension. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

8.3.     Estimation of Claims

The Litigation Trustee may (but is not required to) at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to sections 105 and 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Litigation Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Litigation Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

8.4.     Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, amended, settled or superseded may be adjusted or expunged on the claims register at the direction of the Litigation Trustee without the need for any application, motion, complaint, claim objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court *provided* that such Litigation Trustee shall provide twenty-one (21) days' notice of the proposed adjustment to the Holder of such Claim during which period the Holder may object to such adjustment.

8.5.     No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, if any portion of a Claim is Disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed.

8.6.    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.

8.7.    Disallowance of Certain Claims

Any Claims or Interests held by Persons from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or by a Person that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and such Persons may not receive any Distributions on account of their Claims or Interest until such time as such Causes of Action against such Persons have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors by such Person have been turned over or paid to the applicable Litigation Trust.

8.8.    Claims Paid and Payable by Third Parties

A Claim shall be Disallowed without a Claim Objection thereto having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a source other than the Debtors, the Estates, the Escrow Accounts, a Litigation Trust or an Asset Recovery Entity; *provided* that the Litigation Trustee shall provide 21 days' notice of the proposed disallowance to the Holder of such Claim during which period the Holder may object to such disallowance.  If the parties cannot reach an agreed resolution, the matter shall be decided by the Bankruptcy Court.

Any and all rights of the Litigation Trustee to seek return or repayment of a distribution under the Plan from the Holder of a Claim on account of any payment on account of such Claim from a source other than the Debtors, the Escrow Accounts, a Litigation Trust, or an Asset Recovery Entity are reserved.

## ARTICLE IX

## EXECUTORY CONTRACTS AND LEASES

9.1.    Executory Contracts and Unexpired Leases Deemed Rejected

On the Effective Date, all of the Debtors' executory contracts and unexpired leases will be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except to the extent that (a) the Debtors previously have assumed, assumed and assigned, or rejected such executory contract or unexpired lease, (b) prior to the Effective Date, the Debtors have Filed a motion to assume, assume and assign, or reject an executory contract or unexpired lease on which the Bankruptcy Court has not ruled, or (c) an executory contract and unexpired lease is specifically identified in the Plan Supplement as an executory contract or unexpired lease to be assumed pursuant to the Plan, in which case such executory contract or unexpired lease shall be assumed by the applicable

Debtor(s) and assigned to the Asset Recovery Entity. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all rejections, assumptions and assignments of executory contracts and unexpired leases pursuant to Section 9.1 of the Plan and sections 365(a) and 1123 of the Bankruptcy Code.

9.2.    <u>Cure Amounts and Objection to Assumption</u>

In the event that the Debtors elect to assume an executory contract or unexpired lease pursuant to clause (c) of Section 9.1 of the Plan, the Debtors shall include in the Plan Supplement the amount that they believe is required to be paid under section 365(b) of the Bankruptcy Code as cure in connection with the assumption of such executory contract or unexpired lease (a "<u>Cure Amount</u>"), and they shall contemporaneously with such filing (or amendment) of the Plan Supplement, serve a notice of such Cure Amount on each affected counterparty (each such notice a "<u>Contract Notice</u>"). The Debtors shall have the right to revise the Cure Amount through the commencement of the Confirmation Hearing. The affected counterparties shall have (14) fourteen days from the service of the last-served Contract Notice to object to the proposed Cure Amount or the proposed assumption and assignment (the "<u>Contract Objection Period</u>"). If no objection is timely-Filed during the Contract Objection Period, then the Cure Amount shall be fixed as set forth in the Plan Supplement and last-served Contract Notice, such Cure Amount shall promptly be paid on or after the Effective Date by the Asset Recovery Manager as an expense of the Asset Recovery Entity, and such executory contract or unexpired lease shall be deemed assumed as of the later of the Effective Date and the expiration of the Contract Objection Period or as otherwise provided in an order of the Bankruptcy Court. If an objection is timely-Filed within the Contract Objection Period, such executory contract or unexpired lease shall neither be assumed or rejected until (i) the Debtors (or applicable Asset Recovery Manager, if such objection is not resolved prior to the Effective Date) enter into a written agreement resolving the Cure Amount, (ii) the Debtors file a notice that they are withdrawing their request to assume the executory contract or unexpired lease that is subject to the objection, or (iii) a Final Order is entered by the Bankruptcy Court resolving the objection.

## ARTICLE X

## EFFECT OF CONFIRMATION

10.1.    <u>Binding Effect</u>

Subject to the occurrence of the Effective Date, the provisions of the Plan, the Plan Supplement, and the Confirmation Order shall bind (a) any Holder of a Claim or Interest and such Holder's successors and assigns (whether or not the Claims or Interests are Impaired under the Plan, whether or not such Holder has voted to accept the Plan, and whether or not such Holder is entitled to a Distribution under the Plan), (b) all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, (c) each Person acquiring property under the Plan or the Confirmation Order, and (d) any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

29250770.8

10.2.    Reservation of Causes of Action/Reservation of Rights

Except where expressly released or exculpated in the Plan, nothing contained in the Plan shall be deemed to be a waiver or the relinquishment of any claim or Cause of Action that the Debtors, the Estates, Litigation Trustee or the Litigation Trust(s), as applicable, may have or may choose to assert against any Person, including, but not limited to, the Litigation Assets.

10.3.    Releases by the Debtors of Certain Parties

**To the maximum extent permitted by applicable law, pursuant to section 1123(b)(3) of the Bankruptcy Code, for good and valuable consideration, including the actions of the Released Parties to facilitate the Plan and the implementation of the Plan, effective as of the Effective Date, each Debtor, in its individual capacity and as a debtor in possession for itself and on behalf of its Estate, and any person claiming through, on behalf of, or for the benefit of each Debtor and its Estate, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date or thereafter whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity, arising from or related to any actions, transactions, events or omissions occurring on or before the Effective Date relating to the Debtors, in any way whatsoever, or the Chapter 11 Cases.  The Wind-Down Company (if any) and each Wind-Down Administrator, Asset Recovery Entity, Asset Recovery Manager, Litigation Trust(s) and Litigation Trustee, shall be bound, to the same extent that the Debtors and the Estate are bound, by the releases set forth above.  Notwithstanding anything herein to the contrary, the release set forth in this Section 10.3 of the Plan shall not apply to any act or omission constituting gross negligence, actual fraud or willful misconduct by any of the Exculpated Parties.**

10.4.    Releases by Non-Debtors

**To the maximum extent permitted by applicable law, pursuant to sections 105(a) and 1123(b)(5) and (6) of the Bankruptcy Code, for good and valuable consideration, including the actions of the Released Parties to facilitate the Plan and the implementation of the Plan, effective as of the Effective Date, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date or thereafter whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity arising from or related to any actions, transactions, events or omissions occurring on or before the Effective Date relating to the Debtors, in any way whatsoever, or the Chapter 11 Cases.  For the avoidance of doubt, the foregoing release shall not waive or release any right that a Releasing Party has under the Plan, including to receive a distribution under the Plan; provided, however, that notwithstanding any other provision of the Plan to the contrary, nothing herein shall constitute a waiver or release of any claims or causes of action to enforce or arising under the Zohar I Issuer Holdback Documents.**

10.5.    Exculpation

Except as otherwise specifically provided in the Plan, the Plan Supplement or related documents, no Exculpated Party shall have or incur any liability to any entity for any act or omission taken (or not taken, as the case may be) on or after the Petition Date and prior to the Effective Date in connection with, or related to, the Debtors or arising out of the Chapter 11 Cases, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation or consummation of the Plan, the Disclosure Statement, the exhibits to the Plan and the Disclosure Statement, the Plan Supplement documents, any instrument, release or other agreement or document created, modified, amended or entered into in connection with the Plan, except for their willful misconduct or gross negligence as determined by a Final Order.

For the avoidance of doubt, the foregoing exculpation shall in no way limit the procedures set forth in paragraph 3 of that certain *Order Approving Independent Director Service Agreement and Indemnification Agreement* [Docket No. 345], which shall remain in full force and effect notwithstanding the discharge of the Independent Director's duties upon the occurrence of the Effective Date pursuant to this Plan.

10.6.    Plan Injunction

Subject to the occurrence of the Effective Date, Confirmation of the Plan shall act as a permanent injunction against any Entity commencing or continuing any action, employment of process, or act to collect, offset (except as permitted by Section 10.8 of the Plan) or recover any claim, interest, or Cause of Action satisfied, released or exculpated under the Plan to the fullest extent authorized or provided by the Bankruptcy Code.

Without limiting the foregoing, from and after the Effective Date, all Entities that have held, hold, or may hold claims, interests, or Causes of Action satisfied, released or exculpated under the Plan shall be permanently enjoined from taking any of the following actions against, as applicable, the Asset Recovery Entity, Asset Recovery Manager, Litigation Trust(s), Litigation Trustee, Wind-Down Company (if any), Wind-Down Administrator, Released Parties or Exculpated Parties, on account of any such claims, interests, or Causes of Action: (a) commencing or continuing in any manner any suit, action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance of any kind; and (d) commencing or continuing in any manner any action or other proceeding of any kind.

10.7.    Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect following Confirmation of the Plan, for the maximum period permitted under the Bankruptcy Code, Bankruptcy Rules and the Local Bankruptcy Rules.

29250770.8

10.8.  Setoff

Notwithstanding anything in the Plan, in no event shall any Holder of a Claim be entitled to setoff any Claim against any claim, right, or cause of action of the Debtors, unless such Holder preserves its right to setoff by preserving such right to set-off in a timely filed proof of claim or filing a motion for authority to effect such setoff on or before the Confirmation Date (regardless of whether such motion is heard prior to or after the Confirmation Date).

10.9.  Preservation of Insurance

Notwithstanding anything in the Plan or Plan Supplement to the contrary, Confirmation of the Plan shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, the Debtors' current and former officers and directors, or any other person or entity.

## ARTICLE XI

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE; EFFECT OF FAILURE OF CONDITIONS

11.1.  Conditions Precedent to the Effective Date

The Effective Date shall not occur, and the Plan shall not become effective with respect to a Debtor unless and until the following conditions are satisfied in full or waived (except that the condition that the Confirmation Order be entered must be satisfied) by that Debtor and the Controlling Party or Controlling Class for the applicable Debtor and, in the case of condition (h), below, the Independent Director and CRO:

(a)    the Confirmation Order shall have been entered, and shall not be subject to any stay;

(b)    the Confirmation Order shall be a Final Order;

(c)    the Wind-Down Company shall have been formed;

(d)    the Escrow Accounts shall have been funded in the amounts identified in the Plan and Plan Supplement;

(e)    the Asset Recovery Entities and Litigation Trust(s) shall have been formed and the Remaining Assets shall have been transferred to the applicable Asset Recovery Entities and the Litigation Assets to the Litigation Trust(s);

(f)    the Wind-Down Administrator and each Asset Recovery Manager and Litigation Trustee shall have accepted his, her or its appointment;

(g)    [RESERVED]

29250770.8

58

(h)     the D&O Expense Escrow Agreement shall be acceptable to the Independent Director and CRO, in their sole discretion;

(i)     the Plan (as confirmed by the Bankruptcy Court), Confirmation Order, Case Expense Allocation, D&O Expense Escrow Agreement, Asset Recovery Entity Agreements and Litigation Trust Agreement shall be in final form reasonably acceptable to the Controlling Party (with respect to Zohar I and Zohar II) and Controlling Class (with respect to Zohar III);

(j)     the amounts required to be deposited into the Escrow Accounts on the Effective Date pursuant to the Plan are acceptable to the Controlling Class and Controlling Party, in their reasonable discretion; and

(k)     the applicable Controlling Class or Controlling Party for such Debtor, as the case may be, shall have provided its prior written consent to the occurrence of the Effective Date with respect to such Debtor.

11.2.    Satisfaction of Conditions

Except as expressly provided or permitted in the Plan, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

In the event that the conditions specified in Section 11.1 of the Plan shall not have occurred or otherwise been waived as permitted under the Plan with respect to any Debtor, upon the filing of a notice by the Debtor or Debtors, as applicable, on the docket of the Chapter 11 Cases, (a) the Plan shall be deemed withdrawn with respect to the specific Debtor or Debtors, (b) all Holders of Claims and Interests against the specific Debtor or Debtors shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Order were never entered as to the specific Debtor or Debtors, and (c) the obligations of such Debtor or Debtors with respect to Claims and Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Interests by or against the specific Debtor or Debtors or any other Person or prejudice in any manner the rights of the specific Debtor or Debtors or any Person in any further proceedings involving such Debtor or Debtors.

***For the avoidance of doubt, the Plan may become effective for one or more Debtors on a date that is different from the date the Plan becomes effective for the other Debtors.***

## ARTICLE XII

## RETENTION OF JURISDICTION

The Bankruptcy Court shall have jurisdiction of all matters in connection with, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including to:

(a)     hear and determine motions for the assumption or rejection of executory contracts or unexpired leases and the allowance of cure amounts and Claims resulting therefrom;

(b)    hear and determine any and all adversary proceedings, applications and contested matters;

(c)    hear and determine all applications for compensation and reimbursement of expenses under sections 330, 331 and 503(b) of the Bankruptcy Code;

(d)    hear and determine any objections (including requests for estimation) in connection with Disputed Claims, in whole or in part;

(e)    enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)    issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(g)    consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including the Confirmation Order;

(h)    hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, the Asset Recovery Entity Agreements, the Litigation Trust Agreement, the Settlement Agreement, any transactions or payments contemplated hereby or thereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(i)    hear and determine (i) matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any request by the Debtors), prior to the Effective Date or (ii) requests by the Wind-Down Administrator after the Effective Date for an expedited determination of tax issues under section 505(b) of the Bankruptcy Code;

(j)    issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(k)    hear and determine such other matters as may be provided in the Confirmation Order;

(l)    hear and determine any rights, claims or Causes of Action, held by or accruing to the Debtors, the Estates, Litigation Trustee or the Litigation Trust(s) pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(m)    recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(n)    enforce the terms of any Asset Recovery Entity Agreement or Litigation Trust Agreement;

(o)    enforce the releases granted and injunctions issued pursuant to the Plan and the Confirmation Order;

(p)    enter a final decree closing the Chapter 11 Cases; and

(q)    hear and determine any other matter over which the Bankruptcy Court has jurisdiction.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1.    Corporate Action

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of shareholders, directors, members, or managers of one or more of the Debtors shall be in effect from and after the Effective Date pursuant to the applicable general business, corporation or limited liability company law of the states or country in which the Debtors are incorporated or organized, without any requirement of further action by the shareholders, directors, members, or managers of the Debtors.

13.2.    Modification of Plan

Alterations, amendments, or modifications of or to the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date in compliance with section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a); *provided*, that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with section 1125 of the Bankruptcy Code. The Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation in compliance with section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019(b); *provided*, that the Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications. A Holder of a Claim that has accepted the Plan prior to any alteration, amendment, or modification will be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Holders of the Claims.

Prior to the Effective Date, the Debtors may upon consultation with the applicable Indenture Trustee, Controlling Class and Controlling Party for each Debtor, as the case may be, make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not materially change the treatment of Holders of Claims or Interests.

### 13.3. Revocation or Withdrawal of the Plan

Each Debtor reserves the right to revoke or withdraw the Plan as to it prior to the Confirmation Date. Subject to the foregoing sentence, if a Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void for that Debtor. In such event, nothing contained in the Plan shall constitute or be deemed an admission, waiver or release of any Claims or Interests by or against the Debtors or any other Person or to prejudice in any manner the rights of that Debtor, its Estate or any Person in any further proceedings involving any of the Debtors or the Estates.

### 13.4. Plan Supplement

The Plan Supplement and the documents contained therein are incorporated into and made a part of the Plan as if set forth in full in the Plan. The documents initially included in the Plan Supplement may thereafter be amended and supplemented, prior to the Effective Date; *provided, however*, that any amendment or supplement to a Plan Supplement document made after Confirmation, but prior to the Effective Date, that materially and adversely effects any creditor of the Debtors shall be subject to further order of the Court; *provided further, however,* that amendments or supplements to any Plan Supplement document that are made after the occurrence of the Effective Date shall be made in accordance with the terms of such Plan Supplement document, without need for further order of the Court.

### 13.5. Payment of Statutory Fees

U.S. Trustee Fees for each Debtor shall be paid until the earlier of such time that a particular case is closed, dismissed or converted. For the avoidance of doubt, all U.S. Trustee Fees payable for the quarter in which the Effective Date occurs shall be paid by the Debtors on (or as soon as immediately practicable after) the Effective Date, and all U.S. Trustee Fees coming due for any successive quarter shall be paid by the Litigation Trust(s) to the greatest extent possible.

The Litigation Trustee and Asset Recovery Entities will cooperate with the Wind-Down Administrator to complete the reporting required under 28 U.S.C. § 589b regarding receipts, disbursements, and post-confirmation administration.

### 13.6. Exemption from Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan shall not be taxed under any law imposing a stamp tax or similar tax.

### 13.7. Expedited Tax Determination

The Debtors and Wind-Down Administrator (as applicable) are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtors for any and all taxable periods (or portions thereof) ending after the Petition Date through and including the Effective Date.

13.8.    Exhibits/Schedules

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full in the Plan.

13.9.    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

13.10.    Severability of Plan Provisions

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court may alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, giving consideration to the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

13.11.    Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to its principles of conflict of law.

13.12.    Conflicts

To the extent that any provision of the Disclosure Statement conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  The Confirmation Order will govern in the event of any conflict between the Confirmation Order and the Plan.

13.13.    Reservation of Rights

If the Plan is not confirmed or if the Plan is confirmed and does not become effective, the rights of all parties-in-interest in the Chapter 11 Cases are and will be reserved in full.  Any concessions or settlements reflected in the Plan, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Chapter 11 Cases shall be bound or deemed prejudiced by any such concession or settlement.

13.14.  <u>Limiting Notices</u>

Only Persons that file renewed requests to receive documents pursuant to Bankruptcy Rule 2002 on or after the Effective Date shall be entitled to receive notice under Bankruptcy Rule 2002 with respect to the Chapter 11 Cases, which information shall be included in the Notice of the Effective Date.  After the Effective Date, the Wind-Down Administrator, Asset Recovery Manager, and Litigation Trustee are authorized to limit the list of Persons receiving documents with respect to the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 to those Persons who have Filed such renewed requests, and any other person required to be served under Local Rule 2002-1(b).

IN WITNESS WHEREOF, the Debtors have executed the Plan this 15th day of June 2022.

<div style="margin-left: 40%;">

Zohar I Limited
Zohar I Corp.
Zohar II Limited
Zohar II Corp.
Zohar III Limited
Zohar III Corp.

</div>

By:     _/s/ Michael Katzenstein_____
      By:    Michael Katzenstein
      Their:  Chief Restructuring Officer

# **EXHIBIT B**

## **Notice of Confirmation and Effective Date**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Zohar III, Corp., *et al.*, | Case No. 18-10512 (KBO) |
| Debtors[1]. | Jointly Administered |

**NOTICE OF (I) CONFIRMATION AND EFFECTIVE DATE OF THE THIRD AMENDED
JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR
ZOHAR III, CORP. AND ITS AFFILIATED DEBTORS; (II) DEADLINE UNDER THE PLAN
AND CONFIRMATION ORDER TO FILE ADMINISTRATIVE CLAIMS, REJECTION
CLAIMS AND PROFESSIONAL FEE CLAIMS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.    **Entry of Confirmation Order**.  On [____], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Confirmation Order") confirming the *Third Amended Joint Plaint of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliate Debtors*, attached as Exhibit A to the Confirmation Order (together with the Plan Supplement, all other exhibits thereto, and as may be amended, modified or supplemented, the "Plan"),[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (the "Debtors").

2.    **Effective Date of the Plan**.  The Effective Date of the Plan was [●], 2022.

3.    **Administrative Claim Bar Date**.  The Holder of an Administrative Claim, arising after August 26, 2021, other than:  (a) Professional Claims; (b) any Administrative Claims that (i) have been previously paid by the Debtors in the ordinary course of business or otherwise or (ii) have otherwise been satisfied; (c) any Administrative Claims previously Filed; (d) any Administrative Claim that has been Allowed by prior order of the Bankruptcy Court; (e) any Administrative Claims held by any Debtor; (f) any claims for fees payable to the Clerk of the Bankruptcy Court; (g) any U.S. Trustee Fees; and (h) any Administrative Claim entitled to administrative expense status pursuant to section 503(b)(1)(D), must File and serve on counsel to the Wind-Down Administrator, at the below address, a written request for such Administrative Claim **so as to be received by [5:00 p.m. on the first Business Day that is thirty (30) days after the Effective Date]**.  Such request must include at a minimum: (i) the name of the Debtor(s) that are purported to be liable for the Administrative Claim; (ii) the name of the Holder of the

---

[1]    The Debtors and the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is c/o FTI Consulting, Inc., 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

[2]    Unless otherwise defined in this notice, capitalized terms used herein shall have the meaning ascribed to them in the Plan.

Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim.  Failure to file and serve such notice or request timely and properly shall result in the Administrative Claim being forever barred and extinguished, absent order of the Court to the contrary.  For the avoidance of doubt, the Bar Date for Administrative Claims arising prior to August 27, 2021 and the Bar Date for Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code, is the date as established in the Bar Date Order.

| Counsel for the Wind-Down Administrator |
| --- |

4.     **Deadline to File Rejection Claims**.  In accordance with the Bar Date Order, the Holder of any Claim arising from the rejection of an executory contract or unexpired lease pursuant to the Plan and the Confirmation Order (a "Rejection Damages Claim") shall file a Proof of Claim on account of such Rejection Damages Claim against the Debtors so as to be received by the [*], at the address below, **by 5:00 p.m. on [the first Business Day that is thirty (30) days after the Effective Date]**.  Failure to file a Rejection Damages Claim timely and properly shall result in the Rejection Damages being forever barred and extinguished.



5.     **Deadline to File Professional Claims**.  All Persons seeking Allowance of Professional Claims under the Plan shall File, **[on or before the date that is thirty (30) calendar days after the Effective Date]**, their respective applications for final allowance of compensation for services rendered and reimbursement of expenses incurred.  Notwithstanding anything to the contrary in the Plan, any objection to any Professional Claim of the New Agent shall be resolved as provided in the New Agent Order. Objections to any Professional Claim must be Filed and served on counsel to the Wind-Down Administrator, at the address set forth herein, and the requesting Professional **by no later than twenty-one days (21) days after the service of the applicable final request for payment of the Professional Claim**.

6.     **Inquiries by Interested Parties**.  Copies of the Confirmation Order (to which the Plan is attached as Exhibit A) are available free of charge upon written request (which writing may be an email) to the undersigned counsel for the Debtors.  The Confirmation Order is also on file with the Bankruptcy Court and may be viewed by accessing the Bankruptcy Court's website at www.deb.uscourts.gov.  To access documents on the Bankruptcy Court's website, you will need a PACER password and login, which can be obtained at www.pacer.psc.uscourts.gov.

7.     **Limiting Notices**.  Only Persons that file renewed requests to receive documents pursuant to Bankruptcy Rule 2002 on or after the Effective Date shall be entitled to receive notice under Bankruptcy Rule 2002 with respect to the Chapter 11 Cases.  After the Effective Date, the Wind-Down Administrator, Asset Recovery Manager, and Litigation Trustee are authorized to limit the list of Persons receiving documents with respect to the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 to those Persons who have Filed such renewed requests, and any other person required to be served under Local Rule 2002-1(b).

29297607.13

8. **DIP Obligations**. The amount of the Allowed DIP Claims as of the Effective Date is $[_____].

Dated: [●], 2022
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4421)
Ryan M. Bartley (No. 4985)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Emails:    jpatton@ycst.com
              rbrady@ycst.com
              mnestor@ycst.com
              jbarry@ycst.com
              rbartley@ycst.com

*Counsel to the Debtors and Debtors in Possession*

29297607.13

**<u>EXHIBIT B</u>**

**Letter of Transmittal**

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

## LETTER OF TRANSMITTAL TO ZOHAR III A-1 NOTEHOLDERS

> **\*\*Any Zohar III A-1 Noteholder that fails to properly complete and deliver, or caused to be delivered, the attached Registration Form (along with the necessary supporting documentation) to the Distribution Agent by [\*], 2022[6] in accordance with the terms of this Letter of Transmittal shall be deemed to have forfeited its right to any Zohar III A-1 Noteholder Distribution and shall be forever barred and enjoined from asserting its Zohar III A-1 Note Claim against the Debtors, their Estates, their property, the Asset Recovery Entities, the Litigation Trusts, or the respective assets of or in any of the foregoing.  Any such forfeited Zohar III A-1 Noteholder Distributions shall be reallocated for Distribution to other Zohar III A-1 Noteholders in accordance with the Plan, free of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary.\*\***

[\*], 2022

  *To the beneficial owners, or representatives acting on behalf of the beneficial owners, of the following notes issued pursuant to that certain Indenture among Zohar III, Limited ("Zohar III"), Zohar III Corp., Zohar III, LLC, Natixis Financial Products Inc., and U.S. Bank, N.A., as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association, dated April 6, 2007 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time):*

| Zohar III, Limited Class A-1 | CUSIP No. 989769AA2 |
|---|---|
| Zohar III, Limited Class A-1 | CUSIP No. 989769AB0 |
| Zohar III, Limited Class A-1 | CUSIP No. 989769AC8 |

  The purpose of this letter (this "Letter of Transmittal") is to provide the Holders (collectively, the "Zohar III A-1 Noteholders") of the above notes (i.e., the Zohar III A-1 Notes) with important information regarding the documentation required by the order [Docket No. \*] (the "Confirmation Order") of the United States Bankruptcy Court for the District of Delaware, dated \*, 2022, confirming the *Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors* (as confirmed, the "Plan"),[7] filed

---

[6]  [120 days from the date of the Effective Date]

[7]  Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Plan.  A copy of the Plan and other documents related to the Plan were previously distributed to you in accordance with the Disclosure Statement Order.  Additional copies of such documents are available free of charge upon written request (which writing may be an email) to the Distribution Agent.

Zohar III, Limited A-1 Notes
CUSIPs: 989769AA2; 989769AB0; 989769AC8

by Zohar III and its affiliated Debtors[8] in jointly administered Case No. 18-10512 (KBO), to effect the Distributions (collectively, the "Zohar III A-1 Noteholder Distributions") to which the Zohar III A-1 Noteholders are entitled to under the Plan on account of the Zohar III A-1 Notes.

Please read this Letter of Transmittal carefully and in its entirety.

***The Debtors' Plan***

On March 11, 2018, the Debtors commenced voluntary proceedings under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On *, 2022, the Bankruptcy Court confirmed the Plan, and the Effective Date occurred on *, 2022.

Under the Plan, Zohar III A-1 Noteholders are placed in Class 3 (Zohar III A-1 Note Claims). Pursuant to the Plan, on the Effective Date, the Zohar III A-1 Notes shall be deemed to be reduced in amount to the Zohar III Adjusted Plan Value, and each Holder of a Zohar III A-1 Note Claim shall receive, in exchange for its Zohar III A-1 Note Claim, its pro rata share of (i) the New Notes assumed by Zohar III Recovery LLC, and MDHI Holdco in the aggregate amount of $100,000, (ii) the Zohar III MDHI Holdco Interests, and (iii) 100% of the membership interests in New Zohar III LLC.

Pursuant to the Plan, on the Effective Date, the Zohar III A-1 Notes were canceled, surrendered, extinguished and of no force or effect and deemed surrendered to the Debtors and neither the Debtors nor any successor in interest thereto shall have any continuing obligations thereunder other than making the Zohar III A-1 Noteholder Distribution as provided for in the Plan.

**In order to receive any Zohar III A-1 Noteholder Distribution to which it is entitled to under the Plan, a Zohar III A-1 Noteholder must complete and deliver, or cause to be delivered, the attached Registration Form (along with the necessary supporting documentation) in accordance with the procedures and instructions provided for herein.**

***General Procedure for Completing and Delivering Registration Form for Zohar III A-1 Noteholder Distribution***

Pursuant to the Plan and Confirmation Order, Zohar III A-1 Noteholders are required to complete the attached registration form (a "Registration Form") and deliver, or cause to be delivered, such form (along with the necessary supporting documentation) to * (the "Distribution Agent"), **by [*], 2022 at 5:00 p.m. (ET) (the "Registration Deadline")**, as an express condition to receiving any Zohar III A-1 Noteholder Distribution to which such Zohar III A-1 Noteholders are entitled to under the Plan, as follows:

---

[8]  The Debtors and the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).

Zohar III, Limited A-1 Notes
CUSIPs: 989769AA2; 989769AB0; 989769AC8

*By electronic mail at (preferred method):*

*By regular mail at:*

*By hand delivery or overnight mail at:*

A failure by a Zohar III A-1 Noteholder to deliver, or cause to be delivered, a duly executed Registration Form (along with the necessary supporting documentation) to the Distribution Agent on or prior to the Registration Deadline will result in such Zohar III A-1 Noteholder being deemed to have forfeited its right to any Zohar III A-1 Noteholder Distribution, and to be forever barred and enjoined from asserting its Zohar III A-1 Note Claim against the Debtors, their Estates, their property, the Asset Recovery Entities, the Litigation Trust(s), or the respective assets of or in any of the foregoing. Any such forfeited Zohar III A-1 Noteholder Distributions shall be reallocated for Distribution to other Zohar III A-1 Noteholders in accordance with the Plan.

***Additional Instructions for Completing and Delivering Registration Form for Zohar III A-1 Noteholder Distribution***

*Principal Amount of Zohar III A-1 Notes Held as of the Distribution Record Date; Supporting Documentation.* The Confirmation Order establishes [*], 2022 (the "Distribution Record Date") as the record date for Holders of Zohar III A-1 Note Claims and for making Zohar III A-1 Noteholder Distributions. Each Zohar III A-1 Noteholder must identify and certify in the Registration Form the principal amount of Zohar III A-1 Notes held by such Zohar III A-1 Noteholder as of the Distribution Record Date (the "Principal Amount Held"). **In addition, each Zohar III A-1 Noteholder must include with its Registration Form appropriate documentation to substantiate, to the satisfaction of the Distribution Agent, the Principal Amount Held, which may include, without limitation, a brokerage statement.** To the extent necessary, confidential or commercially sensitive information may be redacted from such documentation.

Because the Distribution Agent will rely on this certification with respect to the Principal Amount Held, it is important that you truthfully and accurately identify the Principal Amount Held and make the requisite certification, and understand that you may be held liable for any misstatement or omission contained therein. Pursuant to 18 U.S.C. § 157 and other laws related to bankruptcy fraud, a person or entity that makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under the Bankruptcy Code may be fined or imprisoned.

*Information Reporting and Backup Withholding.* Any payments made to U.S. holders may be subject to information reporting and backup withholding of U.S. federal income tax, currently at a rate of 28%. Certain U.S. holders, including corporations, are exempt from these information reporting and backup withholding tax rules. With its Registration Form, U.S. holders should complete and return an Internal Revenue Service ("IRS") Form W-9, certifying that such U.S. holder is a U.S. person, that the taxpayer identification number ("TIN") provided is correct, and

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

that such U.S. holder is not subject to backup withholding.  If applicable, non-U.S. holders may be required to complete and submit an IRS Form W-8 BEN, IRS Form W-8 BEN-E or other applicable IRS Form W-8, signed under penalties of perjury, attesting to the holder's foreign status.  Such forms may be obtained from the Distribution Agent or at the IRS website at www.irs.gov.  If you provide an incorrect TIN or other false information, certifications, or affirmations, you may be subject to penalties imposed by the IRS.  If applicable, failure to provide the information on the Form W-9 may subject the payee to a U.S. $50 penalty imposed by the Internal Revenue Service and 28% federal income tax backup withholding on any payment.  Backup withholding is not an additional tax.  Taxpayers may use amounts withheld as a credit against their U.S. federal income tax liability or may claim a refund of any excess amounts withheld by timely filing a claim for refund with the IRS.

*Signatures.*  Signatures on each Registration Form must be guaranteed by a medallion signature guarantor (or supported by a list of authorized signatories).  If such Registration Form is signed by a trustee, executor, administrator, guardian, attorney-in-fact, agent, officer of a corporation or other person acting in a fiduciary or representative capacity, such person should so indicate when signing, and proper evidence satisfactory to the Distribution Agent of such person's authority to so act must be submitted.  Signatures on such Registration Form must correspond to the names of the holders as shown on the security position listing them as the owner of such Zohar III A-1 Notes.

*Defects and Disputes.*   The Distribution Agent is authorized to reject any and all Registration Forms (including the necessary supporting documentation) that are not in proper form, the acceptance of which would, in the opinion of the Distribution Agent or its counsel, be unlawful or that do not attach appropriate documentation to substantiate, to the satisfaction of the Distribution Agent, the Principal Amount Held.  The Distribution Agent is further authorized to waive or permit the cure of any defects or irregularities or conditions of delivery as to any particular Registration Form (including as to the necessary supporting documentation).  Unless waived, any such defects or irregularities must be cured **by the Registration Deadline**, or by such later date as the Distribution Agent notifies the affected Zohar III A-1 Noteholder.  Except as otherwise provided herein, neither the Distribution Agent nor any other person will be under any duty to provide notification of such defects or irregularities or failure to satisfy conditions of delivery, nor will any of them incur any liabilities for failure to provide such notification.  Delivery of any such Registration Forms will not be deemed to have been made and such Registration Forms will be invalid until such defects or irregularities have been cured or waived.  Notwithstanding the foregoing, to the extent that the Distribution Agent disputes the principal amount of Zohar III A-1 Notes held by the Zohar III A-1 Noteholder as of the Distribution Record Date as reflected in the Registration Form and the attached supporting documentation, the Distribution Agent shall provide, or cause to be provided, written notice of such dispute to such Zohar III A-1 Noteholder, along with a reasonably detailed explanation of the Distribution Agent's position on such matter, and the Zohar III A-1 Noteholder shall have fourteen (14) days from the date of the notice to respond in writing to the Distribution Agent, and any failure of the Zohar III A-1 Noteholder to do so shall be a waiver of the Zohar III A-1 Noteholder's rights to contest the Distribution Agent's position.  To the extent that the Zohar III A-1 Noteholder timely responds and the parties cannot consensually resolve the dispute, a hearing shall be held before the Bankruptcy Court to resolve

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

the dispute.  The interpretation of all Registration Form procedures by the Distribution Agent, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties.

*You may direct any questions about this Letter of Transmittal or the attached Registration Form to the Distribution Agent, *, by mail at *, by telephone to *, or by email to *.*

INSERT SENDER  NAME/TITLE

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

## REGISTRATION FORM

**If you are the Holder of Zohar III A-1 Notes, to receive any Zohar III A-1 Noteholder Distribution to which you are entitled to under the Plan, you must complete and deliver, or cause to be delivered, a duly executed and conforming copy of this Registration Form (along with the necessary supporting documentation) to * (the "Distribution Agent") on or prior to [*], 2022 at 5:00 p.m. (ET) (the "Registration Deadline").**

**Any Zohar III A-1 Noteholder that fails to properly complete and deliver, or cause to be delivered, the attached Registration Form (along with the necessary supporting documentation) to the Distribution Agent by the Registration Deadline in accordance with the terms of the Letter of Transmittal shall be deemed to have forfeited its right to any Zohar III A-1 Noteholder Distribution, and shall be forever barred and enjoined from asserting its Zohar III A-1 Note Claim against the Debtors, their Estates, their property, the Asset Recovery Entities, the Litigation Trust(s), or the respective assets of or in any of the foregoing.  Any such forfeited Zohar III A-1 Noteholder Distributions shall be reallocated for Distribution to other Zohar III A-1 Noteholders in accordance with the Plan, free of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary.**

**Item 1.  Principal Amount of Zohar III A-1 Notes Held As of the Distribution Record Date; Supporting Documentation.**  As of the Distribution Record Date (i.e., [*], 2022), the undersigned Zohar III A-1 Noteholder held the following principal amount of Zohar III A-1 Notes (the "Principal Amount Withheld"):  $ _____

Please attach appropriate documentation to substantiate, to the satisfaction of the Distribution Agent, the Principal Amount Held, which may include, without limitation, a brokerage statement. To the extent necessary, confidential or commercially sensitive information may be redacted from such documentation.

**Item 2.  Registration Information.**  Please provide registration details below.

Name 1 _____

Name 2 _____

Address 1 _____

Address 2 _____

City _____

State/Province _____

Zohar III, Limited A-1 Notes
CUSIPs: 989769AA2; 989769AB0; 989769AC8

Foreign Country Name (If Applicable) _____

Zip/Postal Code _____

U.S. Tax Identification Number _____

Check here if non-U.S. (no TIN)

Phone _____

Fax _____

Email _____

**Item 3.   Return of Completed and Duly Executed Registration Form.**  Please return your completed and duly executed Registration Form (along with the necessary supporting documentation) by one of the following means:

> *By electronic mail at (preferred method):*
>
> *By regular mail at:*
>
> *By hand delivery or overnight mail at:*

**Item 4.   Certifications.**

By completing, executing and delivering this Registration Form (along with the necessary supporting documentation), the undersigned Zohar III A-1 Noteholder:  (i) certifies that all information contained herein is accurate and complete, including, without limitation, with respect to the Principal Amount Held; and (ii) acknowledges that the Distribution Agent will rely on this certification with respect to the Principal Amount Held.

**Item 5.   Execution.**  This Registration Form must be executed by the Zohar III A-1 Noteholder exactly as the Zohar III A-1 Noteholder's name appears on a security position report listing it as the owner of the Zohar III A-1 Notes for which it is completing this Registration Form.  If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a business entity, or other person acting in a fiduciary or representative capacity, please set forth the full title of such person.

Name of Holder (Please Print) _____

Authorized Signature _____

29297607.13

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

Name of Signatory (Please Print) _____

Title, if by Authorized Agent _____

Street Address _____

City, State, Zip Code _____

Telephone Number _____

Date Completed _____

| Medallion Signature Guarantee |
| :--- |
| |
| |
| |
| |

**<u>EXHIBIT 2</u>**

**Blackline**

**[Revised Proposed Confirmation Order]**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Zohar III, Corp., *et al.*, | ) | Case No. 18-10512 (KBO) |
|  | ) |  |
| Debtors[1]. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Ref. Docket No. ~~__~~3380 ____** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THIRD AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR ZOHAR III, CORP. AND ITS AFFILIATED DEBTORS**

Upon consideration of the *Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors,* dated as of June 15, 2022 attached hereto as **Exhibit A** (together with the Plan Supplement, all other exhibits thereto, and as may be amended, modified or supplemented, the "Plan"), proposed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and the Bankruptcy Court having entered an order [Docket No. 3239] (the "Disclosure Statement Order") approving the *Disclosure Statement for Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors*, attached as Exhibit 1 to the Disclosure Statement Order (the "Disclosure Statement"); and the Debtors having filed the Plan Supplement on May 6, 2022 [Docket No. 3304] and amended or supplemented the same on June ~~[*]~~16, 2022 [Docket No. *~~*~~3391]; and upon consideration of the affidavit of service filed reflecting compliance with the notice and solicitation requirements of the Disclosure Statement Order [Docket Nos. 3249

---

[1]     The Debtors and the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is c/o FTI Consulting, Inc., 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

and 3272] (together, the "Notice Affidavit"); and upon the *Notice of Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of Ballots and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granting Related Relief* [Docket No. 3239 3247] (the "Confirmation Hearing Notice"); and upon consideration of the following filed with the Bankruptcy Court on June 15, 2022:  (i) the *Declaration of Justin K. Edelson of The Reliable Companies Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors, dated April 6, 2022* [Docket No. *3384] (the "Voting Declaration"), (ii) the *Declaration of Michael Katzenstein in Support of Confirmation of Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors* [Docket No. *3383] (the "Katzenstein Declaration"), and (iii) the *Memorandum of Law in Support of Confirmation of the Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp.* [Docket No. *3381] (the "Confirmation Memorandum"); and a hearing to consider Confirmation having been held on June 21, 2022 (the "Confirmation Hearing"); and any objections to the Plan having been resolved or overruled by the Bankruptcy Court pursuant to this Confirmation Order for the reasons set forth on the record of the Confirmation Hearing; and upon the evidence adduced and proffered and the arguments of counsel made at the Confirmation Hearing; and the Bankruptcy Court having reviewed all documents in connection with Confirmation and having heard all parties desiring to be heard; and upon the

record of the Chapter 11 Cases; and after due deliberation and consideration of all of the foregoing; and sufficient cause appearing therefor; the Bankruptcy Court hereby makes the following:

<div align="center">**Findings of Fact and Conclusions of Law**</div>

A.    **Findings of Fact and Conclusions of Law.**  The findings and conclusions set forth herein, together with the findings of fact and conclusions of law set forth in the record of the Confirmation Hearing, constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to this proceeding pursuant to Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    **Capitalized Terms.**  Capitalized terms used herein, but not defined herein, shall have the meaning attributed to such terms in the Plan.

C.    **Jurisdiction and Venue.**  The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution, and the Debtors consent to entry of this Confirmation Order under the Local Rules and Article III of the United States Constitution.  Venue of this proceeding and the Chapter 11 Cases is proper in this district and in this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    **Chapter 11 Petitions.**  On March 11, 2018 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  The cases are jointly administered pursuant to Bankruptcy Rule 1015 and Local Rule 1015-1.

E.    **Judicial Notice.**  The Bankruptcy Court takes judicial notice of the docket in the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed and all orders entered.

F.    **Plan Supplement.**  The filing and notice of the Plan Supplement was appropriate, and complied with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Disclosure Statement Order, and no other or further notice of the Plan Supplement is or shall be required.

G.    **Mailing of Solicitation and Confirmation Materials.**  As is evidenced by the Voting Declaration and the Notice Affidavit, the distribution of the Plan, the Disclosure Statement, the Disclosure Statement Order, the Ballots, the Confirmation Hearing Notice, the Notice of Non-Voting Status (as defined in the Disclosure Statement Order), and the other materials required to be distributed under the Disclosure Statement Order was adequate and sufficient under the circumstances of the Chapter 11 Cases, and all parties required to be given notice of the Disclosure Statement, the Plan, and the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) have been given due, proper, timely, and adequate notice thereof in accordance with the Disclosure Statement Order, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable law, and such parties have had an opportunity to appear and be heard with respect thereto.  Except as otherwise provided herein,

no other or further notice of the Disclosure Statement, the Plan, the Confirmation Hearing, and the entry of this Confirmation Order is required.

   H. **Voting.** Votes on the Plan were solicited after disclosure of adequate information as defined in section 1125 of the Bankruptcy Code. The procedures by which the Ballots for acceptance or rejection of the Plan were distributed and tabulated, including as set forth in the Voting Declaration, under the circumstances of the Chapter 11 Cases were fair, properly conducted, and complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, other applicable law, and the Disclosure Statement Order. The modification of the Record Date for the Holders of Claims in Class 4 (Zohar III A-1 Note Claims) to May 13, 2022 and the extension of the Voting Deadline for such Holders to May 26, 2022, *see* Docket No. 3331, was fair, reasonable and appropriate under the circumstances, and the record of these proceedings reflect that such modification did not lead to any inconsistent or conflicting votes or disenfranchisement of any Holder that materially affected voting on the Plan. As more fully set forth in the Voting Declaration, the following Classes voted to accept the Plan:

| CLASS | RECEIVED BALLOTS | | | |
|---|---|---|---|---|
| | *Accept* | | *Reject* | |
| | **AMOUNT (% of Amount Voted)** | **NUMBER (% of Number voted)** | **AMOUNT (% of Amount Voted)** | **NUMBER (% of Number Voted)** |
| Class 3 Zohar III A-1 Note Claims | $579,244,253.18 (100%) | 34 (100%) | $0.00 (0%) | 0 (0%) |
| Class 10 Zohar II Credit Enhancement Claims | $806,582,747.23 (100%) | 1 (100%) | $0.00 (0%) | 0 (0%) |

| CLASS | RECEIVED BALLOTS | | | |
| --- | --- | --- | --- | --- |
| | *Accept* | | *Reject* | |
| | AMOUNT (% of Amount Voted) | NUMBER (% of Number voted) | AMOUNT (% of Amount Voted) | NUMBER (% of Number Voted) |
| Class 14 Zohar I Indenture Trustee Claims | *No votes received* | | | |
| Class 15 Zohar I Credit Enhancement Claims | $20,347,522.55 (100%) | 1 (100%) | $0.00 (0%) | 0 (0%) |

I.      **Bankruptcy Rule 3016(a).**  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the proponent of the Plan.

J.      **Burden of Proof**.  The Debtors, as proponents of the Plan, have met their burden of proving the satisfaction of the requirements for confirmation of the Plan set forth in section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard. Further, each witness who testified on behalf of the Debtors at or in connection with the Confirmation Hearing (including by declaration or proffer) was credible, reliable and qualified to testify as to the topic addressed in the testimony of such witness.

K.      **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**  As set forth below, the Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

L.      **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).**  The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code, and no party has objected to the classifications set forth in the Plan.  In addition to Administrative Claims, Professional

Claims, DIP Claims, Adequate Protection Claims, and Priority Tax Claims, which need not be classified, the Plan designates twenty-four (24) Classes of Claims and Interests.  The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

M.     **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).**  Article II of the Plan specifies that Holders of Claims in the Classes listed in the following table are Unimpaired (collectively, the "Unimpaired Classes").  Thus, section 1123(a)(2) of the Bankruptcy Code is satisfied.[2]

| Class | Description |
|---|---|
| 1 | Zohar III Other Priority Claims |
| 2 | Zohar III Indenture Trustee Claims |
| 2A | Zohar III Patriarch Disputed CMA Fee Claim |
| 2B | Zohar III Ankura CMA Claims |
| 8 | Zohar II Other Priority Claims |
| 9 | Zohar II Indenture Trustee Claims |
| 9A | Zohar II Patriarch Disputed CMA Fee Claim |
| 9B | Zohar II Ankura CMA Claims |
| 13 | Zohar I Other Priority Claims |
| 14A | Zohar I Patriarch Disputed CMA Fee Claim |

N.     **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).**

Article IV of the Plan designates certain Classes of Claims and Interests as Impaired, and specifies

---

[2]     In accordance with Paragraph 31 of the Disclosure Statement Order, notwithstanding anything to the contrary in the Plan or the Disclosure Statement Order, the Holders of Claims in Classes 2A (Zohar III Patriarch Disputed CMA Fee Claim), 9A (Zohar II Patriarch Disputed CMA Fee Claim) and 14A (Zohar III Patriarch Disputed CMA Fee Claim) were provided provisional ballots to vote to accept or reject the Plan, and voted to reject the Plan (the "Patriarch Provisional Ballots").  However, such Holders did not object to the Plan on the grounds that such claims are not "Unimpaired" under the Plan; therefore, consistent with Paragraph 31 of the Disclosure Statement Order, the Patriarch Provisional Ballots are of no effect and were appropriately not counted.

the treatment of Claims and Interests in such Classes.  Specifically, Holders of Claims in the Classes listed in the following table are Impaired and were entitled to vote to accept or reject the Plan (collectively, the "**Voting Classes**").

| Class | Description |
|-------|-------------|
| 3 | Zohar III A-1 Note Claims |
| 10 | Zohar II Credit Enhancement Claims |
| 14 | Zohar I Indenture Trustee Claims |
| 15 | Zohar I Credit Enhancement Claims |

And Holders of Claims and Interests in the Classes listed in the following table are conclusively presumed to have rejected the Plan and were not entitled to vote to accept or reject the Plan (collectively, the "**Deemed Rejecting Classes**").

| Class | Description |
|-------|-------------|
| 4 | Zohar III A-2 Note Claims |
| 5 | Zohar III A-3 Note Claims |
| 6 | Zohar III B Note Claims |
| 7 | Zohar III General Unsecured Claims |
| 11 | Zohar II B Note Claims |
| 12 | Zohar II General Unsecured Claims |
| 16 | Zohar I A-3 Note Claims |
| 17 | Zohar I B Note Claims |
| 18 | Zohar I General Unsecured Claims |
| 19 | Interests |

Thus, section 1123(a)(3) of the Bankruptcy Code is satisfied.

O.    **No Discrimination (11 U.S.C. § 1123(a)(4)).**  The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Thus, section 1123(a)(4) of the Bankruptcy Code is satisfied.

P.     **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).**  The Plan, including, without limitation, Article VI thereof, provides adequate and proper means for the Plan's implementation.  Thus, section 1123(a)(5) of the Bankruptcy Code is satisfied.

Q.     **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).**  The Plan does not provide for the issuance of any non-voting securities.  Therefore, section 1123(a)(6) of the Bankruptcy Code is satisfied.

R.     **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).**  Pursuant to the Plan, and as disclosed in the Plan Supplement, as of the Effective Date, David Dunn will be appointed as the Wind-Down Administrator, Asset Recovery Manager for Zohar II Recovery LLC, and Zohar III Recovery LLC, and the Litigation Trustee;  John Greene will be appointed as the manager of New Zohar III, LLC, MBIA will be appointed as new manager of New Zohar II, LLC; and the remaining Asset Recovery Entities will be managed by their sole members as set forth in their respective governance documents.  The Wind-Down Administrator, Asset Recovery Manager, and Litigation Trustee will have the rights and responsibilities identified in Article VI of the Plan.  The appointment of the Wind-Down Administrator, Asset Recovery Manager for Zohar II Recovery LLC and Zohar III Recovery LLC, the Litigation Trustee and manager of each other Asset Recovery Entity has been fully disclosed in the Plan Supplement, and the manner for selection of any successor to any of them has been disclosed in the Plan and Plan Supplement documents, and each of the foregoing are consistent with the interest of Holders of Claims and Interests and with public policy, and therefore section 1123(a)(7) of the Bankruptcy Code is satisfied.

S.      **Additional Plan Provisions (11 U.S.C. § 1123(b)).**  The Plan's provisions are appropriate, in the best interests of the Debtors and their Estates, and consistent with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

T.      **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).**  Here, as the Plan contemplates the winding down of the Debtors' affairs, the Debtors have exercised appropriate business judgment in proposing a default rejection plan as it pertains to the Debtors' executory contracts and unexpired leases that have not yet been assumed or rejected or that are not yet subject to a pending motion to assume or reject.

U.      **Compromises and Settlements Under and in Connection with the Plan (11 U.S.C. § 1123(b)(3)).**  The settlements and compromises embodied in the Plan comply with and satisfy the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. The settlements and compromises are reasonable, designed to achieve a beneficial and efficient resolution of the Chapter 11 Cases for all parties-in-interest, a sound exercise of the Debtors' business judgment and in the best interest of the Estates.

V.      **Releases (11 U.S.C. § 1123(b))**.  Under the facts and circumstances of the Chapter 11 Cases, the release given by the Debtors and their Estates pursuant to Section 10.3 of the Plan (the "Debtor Release") is:  (a) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (b) appropriate under applicable law; (c) integral to the Plan, and inextricably bound with the other provisions of the Plan; (d) consistent with established practice in this jurisdiction; (e) in exchange for good and valuable consideration provided by the Released Parties; (f) in the best interests of the Debtors and the Estates; (g) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notice, the Ballots, and the Notice of Non-Voting Status each unambiguously state that the Plan

contains certain release, exculpation and injunction provisions; (h) consistent with the Bankruptcy Code and other applicable law; and (i) an appropriate exercise of business judgment. The releases given by the Releasing Parties pursuant to Section 10.4 of the Plan (the "Third-Party Releases") are (i) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (ii) appropriate under applicable law; (iii) consensual, (iv) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notice, the Ballots, and the Notice of Non-Voting Status each unambiguously state that the Plan contains certain release, exculpation and injunction provisions; and (v) consistent with the Bankruptcy Code and other applicable law. The Debtor Release is a bar to any Person and Entity asserting against any of the Released Parties any claims or Causes of Action released pursuant to the Debtor Release, and the Third-Party Releases are a bar to any of the Releasing Parties asserting against any of the Released Parties any claims or Causes of Action released pursuant to the Third-Party Releases, as and to the extent provided for in the Plan and this Confirmation Order. Accordingly, section 1123(b) of the Bankruptcy Code is satisfied with respect to the Debtor Release and the Third-Party Releases.

W.    **Exculpations (11 U.S.C. § 1123(b))**. Under the facts and circumstances of the Chapter 11 Cases, the exculpation (the "Exculpation") of the Exculpated Parties as provided for in Section 10.5 of the Plan is: (a) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (b) appropriate under applicable law; (c) integral to the Plan, and inextricably bound with the other provisions of the Plan; (d) consistent with established practice in this jurisdiction; (e) in the best interests of the Debtors and the Estates; (f) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notice, the Ballots, and the Notice of Non-Voting Status each

unambiguously state that the Plan contains certain release, exculpation and injunction provisions; (g) appropriately tailored; and (h) a bar against any Person or Entity commencing or pursuing a claim or Cause of Action against any Exculpated Party, except as set forth in the Exculpation in Section 10.5 of the Plan. Therefore, section 1123(b) of the Bankruptcy Code is satisfied with respect to the Exculpation.

X.     **Plan Injunction (11 U.S.C. § 1123(b))**.  Section 10.6 of the Plan provides for a permanent injunction (the "Plan Injunction") against any Entity commencing or continuing any action, employment of process, or act to collect, offset (except as permitted by Article 10.8 of the Plan) or recover any claim, interest, or Cause of Action satisfied, released or exculpated under the Plan to the fullest extent authorized or provided by the Bankruptcy Code. The Plan Injunction is: (a) within the jurisdiction of the Bankruptcy Code under 28 U.S.C. § 1334; (b) appropriate under applicable law; (c) integral to the Plan, and inextricably bound with other provisions of the Plan, including the Debtor Release, the Third-Party Releases, and the Exculpation; (d) consistent with established practice in this jurisdiction; (e) in the best interests of the Debtors and the Estates; and (f) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the Confirmation Hearing Notice, the Ballots, and the Notice of Non-Voting Status each unambiguously state that the Plan contains certain release, exculpation and injunction provisions. Thus, section 1123(b) of the Bankruptcy Code is satisfied with respect to the Plan Injunction.

Y.     **Modified Substantive Consolidation.  (11 U.S.C. § 1123(b)(6)).**  Section 6.4 of the Plan provides for the substantive consolidation of the Debtors as set forth more fully therein. Based on the Confirmation Memorandum and the Katzenstein Declaration and in the absence of any objections by the impacted parties to the proposed substantive consolidation, the Bankruptcy

Court finds that such substantive consolidation is justified and appropriate under the circumstances of the Chapter 11 Cases.

Z.  **Sale of Assets Free and Clear (11 U.S.C. § 1123(b))**.  Sections 6.1 and 6.6 of the Plan, together, provide for the sale of the Remaining Assets of Zohar II and Zohar III to the Asset Recovery Entities, free and clear of all Claims, Liens, and other interests, in exchange for the assumption of certain liabilities of Zohar II and Zohar III.  Sections 6.1 and 6.8 of the Plan, together, provide that the Asset Recovery Entities will then contribute the Litigation Assets to the Litigation Trusts.  The transfer of the Remaining Assets "free and clear" is authorized pursuant to sections 363(f), 1123(b)(6), and 1141(c) of the Bankruptcy Code and as result, the Holders of Claims against and Interests in the Debtors may not pursue those Claims or Interests against the Asset Recovery Entities or their assets (including the Litigation Assets and the other Remaining Assets).  No rights of equitable subordination, if any, shall attach to the Litigation Assets and the other Remaining Assets.

AA.  **Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))**.  Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123, 1124, 1125, and 1126 of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, the Plan Supplement, and all other matters considered by the Bankruptcy Court in connection with Confirmation.

BB.  *Plan Proposed in Good Faith and Not by Means Forbidden by Law* (11 U.S.C. § 1129(a)(3)).  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan

has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The Plan is the result of extensive arm's-length and good faith negotiations among the Debtors and certain of their significant creditors, including the Controlling Party, the Controlling Class and the Indenture Trustee.  It is clear that the Plan promotes the objectives and purposes of the Bankruptcy Code.

  CC. **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**  The procedures set forth in the Plan for the Bankruptcy Court's approval of the fees, costs, and expenses to be paid in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

  DD. **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**  Article 6.5(f) of the Plan provides that, on the Effective Date, Michael Katzenstein and Joseph J. Farnan, Jr. shall be deemed to have resigned as the Chief Restructuring Officer and Independent Director, respectively, of the Debtors.  As provided in the Plan Supplement, the following shall be appointed as of the Effective Date: David Dunn as the Wind-Down Administrator, Asset Recovery Manager for Zohar II Recovery LLC and Zohar III Recovery LLC, and the Litigation Trustee; John Greene as the manager for New Zohar III, LLC; and MBIA as manager for New Zohar II, LLC.  For the remaining Asset Recovery Entities, they will be managed by their sole members, as set forth in their respective governance documents.  None of these parties are insiders.  Mr. Dunn's compensation was disclosed in the Plan Supplement.  These appointments are consistent with the interests of stakeholders and with public policy.  The appointment of David Dunn as the Wind-

29297607.13

14

Down Administrator is acceptable to the Controlling Party and the Controlling Class, as required by the Plan.  Thus, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

EE.    **No Rate Changes (11 U.S.C. § 1129(a)(6)).**  The Plan does not provide for any rate change that requires regulatory approval.  Section 1129(a)(6) of the Bankruptcy Code is thus not applicable.

FF.    **Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**  Based on the Katzenstein Declaration and the Disclosure Statement, the "best interests" test is satisfied as to all Impaired Classes under the Plan, as each Holder of a Claim or Interest in such Impaired Classes will receive or retain property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code

GG.    **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**  The Unimpaired Classes are left unimpaired under the Plan, and as set forth in the Voting Declaration, the Voting Classes have voted to accept the Plan in accordance with the Bankruptcy Code, thereby satisfying section 1129(a)(8) as to those Classes.  However, the Deemed Rejecting Classes are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, section 1129(a)(8) of the Bankruptcy Code has not and cannot be satisfied.  The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b) of the Bankruptcy Code, as set forth below.

HH.    **Treatment of Administrative, Professional, DIP, Adequate Protection, Priority Tax, and Priority Claims (11 U.S.C. § 1129(a)(9)).**  The treatment of Administrative Claims, Professional Claims, DIP Claims, Adequate Protection Claims, Priority Tax Claims, and

Priority Claims pursuant to Articles III and IV of the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

II.    **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).**  As set forth in the Voting Declaration, the Voting Classes 3, 10 and 15 voted to accept the Plan, determined without including any acceptance of the Plan by any insider, and no ballots were cast in Class 14. Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to each of the Debtors.

JJ.    **Feasibility (11 U.S.C. § 1129(a)(11)).**  The Plan provides for the liquidation of the Debtors on and after the Effective Date.  The funding on the Effective Date of the Escrow Accounts and the bank accounts of the Asset Recovery Entities and Litigation Trusts, as well as the ability of the latter entities to raise additional capital and anticipated near-term receipts are sufficient to establish the Plan's feasibility.  Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.

KK.    **Payment of Fees (11 U.S.C. § 1129(a)(12)).**    In accordance with section 1129(a)(12) of the Bankruptcy Code, Section 13.5 of the Plan provides that all U.S. Trustee Fees for each Debtor shall be paid until the earlier of such time that a particular case is closed, dismissed or converted, thus satisfying section 1129(a)(12) of the Bankruptcy Code.

LL.    **Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16)).**    Sections 1129(a)(13)-(16) of the Bankruptcy Code are inapplicable to Confirmation, as the Debtors:  (a) do not provide "retiree benefits," as defined in section 1114 of the Bankruptcy Code (§ 1129(a)(13)); (b) have no domestic support obligations (§ 1129(a)(14)); (c) are not individuals (§ 1129(a)(15)); and (d) are not nonprofit corporations (§ 1129(a)(16)).

MM.    **No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C. § 1129(b)).**  The classification and treatment of Claims and Interests in the Deemed Rejecting

Classes is proper pursuant to section 1122 of the Bankruptcy Code, does not discriminate unfairly, and is fair and equitable pursuant to section 1129(b)(1) of the Bankruptcy Code. There is no Class of Claims or Interests junior to the Holders of Claims or Interests in the Deemed Rejecting Classes that will receive or retain property under the Plan on account of their Claims or Interests. The record establishes that no party has made a *bona fide* offer for, or is willing to offer value to acquire each Debtor's Remaining Assets in excess of (i) the Allowed amounts of the Credit Enhancement Liability Claims, with respect to Zohar I and Zohar II, and (ii) the Allowed amounts of the Zohar III A-1 Note Claims for Zohar III. Accordingly, the Plan does not violate the absolute priority rule, does not discriminate unfairly, and is fair and equitable with respect to each Class that is deemed to have rejected the Plan. Thus, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to the Deemed Rejecting Classes.

NN.    **Only One Plan (11 U.S.C. § 1129(c)).**    The Plan is the only chapter 11 plan currently proposed in the Chapter 11 Cases, and section 1129(c) of the Bankruptcy Code is therefore satisfied.

OO.    **Principal Purpose (11 U.S.C. § 1129(d)).**    The principal purpose of the Plan is neither the avoidance of taxes, nor the avoidance of the application of section 5 of the Securities Act of 1933, and no party in interest has alleged otherwise. Accordingly, section 1129(d) of the Bankruptcy Code is inapplicable. The Chapter 11 Cases also are not "small business cases" and, therefore, section 1129(e) of the Bankruptcy Code is inapplicable.

PP.    **Satisfaction of Confirmation Requirements.**    Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code, and should be confirmed.

QQ.     **Good Faith Solicitation (11 U.S.C. § 1125(e)).**  The Debtors and their officers, directors, advisors, Professionals, and other agents and representatives, as well as the Controlling Party and the Controlling Class and their respective professionals, agents and representatives, have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and they are entitled to the benefits and protections afforded by section 1125(e) of the Bankruptcy Code.

RR.     **Modifications to the Plan (11 U.S.C. § 1127(a)).**  The Debtors modified the Plan subsequent to soliciting votes to accept or reject the Plan in a manner consistent with section 1127(a) of the Bankruptcy Code, as reflected in the Plan attached hereto as **Exhibit A**.  Such modifications do not adversely change the treatment of any Holder of a Claim or Interest and, as such, are deemed accepted by all Holders who have previously accepted the Plan.  The Plan as amended complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code, and no further solicitation is required.

SS.     **Retention of Jurisdiction.**  The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

**Based upon the foregoing findings, and upon the record made before the Bankruptcy Court at or in connection with the Confirmation Hearing, and good and sufficient cause appearing therefor, it is hereby ORDERED, ADJUDGED AND DECREED THAT:**

## Confirmation of the Plan

1.     Subject to the terms of this Confirmation Order, the Plan in the form attached hereto as Exhibit A is approved and confirmed pursuant to section 1129 of the Bankruptcy Code, and any

objections to the Plan have been resolved or overruled by the Bankruptcy Court for the reasons set forth on the record of the Confirmation Hearing.

2.      The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

### Classification and Treatment

3.      The Plan's classification scheme is approved.

4.      The classifications set forth on the Ballots:  (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes; (c) may not be relied upon by any Holder as representing the actual classification of such Claim under the Plan for Distribution purposes; and (d) shall not be binding on the Debtors and any Wind-Down Administrator, Asset Recovery Manager or Litigation Trustee, except for Plan voting purposes.

### Binding Effect

5.      Subject to the terms of this Confirmation Order, in accordance with section 1141 and other applicable provisions of the Bankruptcy Code, and notwithstanding any otherwise applicable law, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, Wind-Down Administrator, each Asset Recovery Entity and Asset Recovery Manager, the Litigation Trusts and Litigation Trustee, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted or voted to accept the Plan), all Persons and Entities that are subject to releases, exculpations, and injunctions provided for in the Plan, each Person or Entity acquiring property under the Plan, any and all non-Debtor parties to contracts or leases with the Debtors, and any and all other Persons and Entities.

29297607.13

**Authorization to Implement the Plan**

6.      In accordance with the terms of the Plan and this Confirmation Order, the Debtors, the Wind-Down Administrator, each Asset Recovery Manager, and the Litigation Trustee, as applicable, are authorized to take or cause to be taken all corporate or other actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, and to execute, enter into or otherwise make effective all documents arising in connection therewith.

7.      Pursuant to the Plan, the Debtors and Asset Recovery Entities are authorized to form the Litigation Trusts disclosed in the Plan Supplement as of the Confirmation Date, and any references in the Confirmation Order or in the Plan to a Litigation Trust, Litigation Trustee, or Litigation Assets shall be deemed to apply to each Litigation Trust formed by the Debtors, each Litigation Trustee thereof, and the Litigation Assets therein.

8.      Prior to and on the Effective Date, on behalf of the Debtors, Michael Katzenstein, the Debtors' Chief Restructuring Officer, is authorized to take or cause to be taken all corporate or other actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, and to execute, enter into or otherwise make effective all documents arising in connection therewith.

**Enforceability of the Plan**

9.      Pursuant to sections 1123, 1141 and 1142 of the Bankruptcy Code, subject to the occurrence of the Effective Date, the Plan and any agreements entered into thereunder shall be, and hereby are, valid, binding and enforceable.

**Transfer of Assets**

10.      Notwithstanding any prohibition of assignability or transferability under applicable non-bankruptcy law or any contract or agreement, on the Effective Date:  (a) Zohar II and Zohar III shall be deemed to have automatically transferred to each Asset Recovery Entity all of their

right, title, and interest in and to all of the Remaining Assets in accordance with sections 1123, 363 and 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Asset Recovery Entity free and clear of all Claims, Liens, and other interests, subject only to the expenses of the Asset Recovery Entity, liens securing the applicable Indenture Trustee Claims as set forth in the Plan and with respect to the Remaining Assets of the DIP Debtors, the DIP Claims and the liens securing the DIP Claims (the "DIP Liens"), and thereupon, the Debtors and Holders of Claims and Interests against the Debtors (other than the Indenture Trustee and DIP Lenders) shall have no Claim, Lien or interest (whatsoever) in or with respect to the Remaining Assets so transferred or the Asset Recovery Entities; (b) the Asset Recovery Entity succeeding to the Debtors' interest in any limited liability company or partnership shall be deemed admitted as a member or partner in the applicable Portfolio Company, with immediate effect on the Effective Date and without any further action on the part of any party; (c) pursuant to the terms and conditions of the Litigation Trust Agreements, as applicable, all right, title, and interest in and to all of the Litigation Assets shall be deemed to and shall have automatically transferred to the Litigation Trusts (through the respective Asset Recovery Entity, where applicable) in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Litigation Trusts free and clear of all Claims, Liens, and other interests, subject only to the expenses of the Litigation Trusts, the DIP Claims and DIP Liens, and the liens securing the Zohar II Indenture Trustee Claims and Zohar III Indenture Trustee Claims as set forth in the Plan and the Litigation Trust Agreement or Agreements, except as set forth herein, the Debtors and Holders of Claims (other than the Indenture Trustee and DIP Lenders) against and Interests in the Debtors shall have no Claim, Lien or interest (whatsoever) in or with respect to the Litigation Assets or the Litigation Trusts; and (d) the DIP Liens shall be granted, affirmed and perfected as set forth in the next paragraph.

11.     The transfer of the Remaining Assets of Zohar II and Zohar III to the Asset Recovery Entities shall result in a Fund Recovery (as defined in the *Independent Director Service Agreement* [Docket No. 345-1] (the "Service Agreement"), and the Debtors shall pay the resulting Incentive Fee (as defined in the Service Agreement) to the Independent Director, provided, however, that the Incentive Fee shall not exceed $676,220.00.

12.     The following applies with respect to the second amendment to the DIP Credit Agreement set forth in the term sheet included as Exhibit L to the Plan Supplement (the "Exit Facility Amendment") to the extent the Exit Facility Amendment is consummated on or prior to the Effective Date:  (a) on the Effective Date, the DIP Liens shall attach to (i) all of the assets of Zohar III owned immediately prior to the Effective Date (including any Litigation Assets of Zohar IIII), and (ii) solely to the extent that the Controlling Class for Zohar I and Zohar II provide their prior written consent to the Debtors and the DIP Lenders, and subject to the terms of an applicable inter-creditor agreement or litigation financing or funding agreement or other similar documentation to be agreed as between the DIP Lenders and MBIA as the Controlling Class for Zohar I and Zohar II (such financing or funding agreement, the "Zohar II Litigation Funding Agreement," a copy of which will be filed in an amendment to the Plan Supplement), all of the Litigation Assets of any other Debtor; (b) any DIP Liens or otherwise on Litigation Assets contributed by Zohar I and Zohar II shall be subject to the terms of an inter-creditor agreement that is acceptable to MBIA in all respects; (c) the DIP Liens on any MD Term Loan Indebtedness owned by Zohar III shall be released upon closing of the MD Credit Bid Transaction; (d) the "Roll Option" shall be modified to include the treatment provided for in the Exit Facility Amendment; (e) the commitments under the DIP Credit Agreement shall be increased to $26 million, inclusive of all amounts drawn prior to the Effective Date.  The Exit Facility Amendment, together with

29297607.13

22

such other terms more favorable to the Debtors and their successors as may be negotiated, is hereby approved; and (f) all references to the DIP Lender in any document, including orders of the Court, shall be construed to mean each participating DIP Lender under the Exit Facility Amendment, notwithstanding any prior reference to a specific lender.

13.     Pursuant to the Plan, including Section 6.1 thereof, upon the Effective Date MBIA (or its designee or assignee) shall automatically be deemed and shall be substituted for Zohar I as the Plaintiff (or movant, as applicable) in all pending Causes of Action, including the Zohar-Patriarch Adversary Proceeding, other than with respect to the Avoidance Actions arising under the Bankruptcy Code asserted in Counts XIX, XX, XXI, and XXII.

14.     Pursuant to the Plan, including Section 6.1 thereof, MBIA's designee or assignee may include, without limitations, Zohar II Recovery LLC.  MBIA or its designee or assignee, as applicable, shall be deemed admitted as a member or partner in the applicable Portfolio Company where previously such membership or partnership interest was in the name of Zohar I, with immediate effect on the Effective Date and without any further action on the part of any party.

**<u>Authorization of Transactions</u>**

15.     This Confirmation Order shall, and shall be deemed to, pursuant to sections 363, 1123, 1141 and 1142 of the Bankruptcy Code, authorize all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including, without limitation, the transactions provided for or required to implement in Article VI of the Plan.  Such authorization shall be effective notwithstanding any requirements under non-bankruptcy law.  Any corporate action required by the Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors' officers, directors or shareholders.  Under the

provisions of the Delaware General Corporation Law, including section 303 thereof, and section 1142(b) of the Bankruptcy Code, no action of the respective officers, directors or shareholders of the Debtors is required to authorize the Debtors to effectuate the Plan or to enter into, file, execute and deliver any document, agreement or instrument issued in connection therewith.

### Securities to be Issued Pursuant to the Plan

16.     Pursuant to section 1142(b) of the Bankruptcy Code and without further action by the Bankruptcy Court or by the officers, directors or shareholders of any of the Debtors, Asset Recovery Entities or Litigation Trusts, the Debtors, as applicable, are authorized to issue any notes and interests provided for under the Plan, and to perform all tasks and to execute all documents, agreements and instruments necessary or appropriate to issue any such notes and interests.

### Exemption from Registration Requirements

17.     Any interests issued under the Plan may be offered without registration under the Securities Act or any similar federal, state or local laws in reliance on section 1145(a) of the Bankruptcy Code, section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder, and other applicable exceptions.

### Plan Documents

18.     The forms, terms and provisions of each of the documents filed as part of the Plan Supplement (collectively, the "Plan Documents") are hereby approved.  The Debtors are authorized to amend and supplement the Plan Documents prior to the Effective Date, *provided*: that; such amendments shall not be inconsistent with the terms and provisions of this Confirmation Order or the Plan, including the treatment of Claims thereunder; any amendment that materially and adversely effects creditors shall be subject to Court approval, upon a motion on notice to the

affected creditors and other parties in interest; and the Debtors shall consult with the Controlling Party and the Controlling Class as to any such proposed amendments.

19.    On the Effective Date, the Debtors are hereby authorized to enter into, file, execute and deliver each of the Plan Documents and any other agreement or instrument issued in connection with or required to effectuate any Plan Document without the necessity for any further corporate, board, or shareholder action.  The Plan Documents shall be deemed incorporated into the Plan in all respects.  Each of the Plan Documents, once executed, shall constitute a legal, valid, binding and authorized obligation of the respective parties thereto, enforceable in accordance with its terms.

### Escrow Accounts

20.    On the Effective Date, the Escrow Accounts shall be established and funded as provided for in the Plan and Plan Supplement.

### Turnover of Assets

21.    Any Person that is in or comes into possession of any portion of the Remaining Assets or Litigation Assets is hereby directed to surrender possession of such Transferred Asset to the applicable Asset Recovery Entity or Litigation Trusts.  Notwithstanding anything to the contrary in any document or agreement, including any escrow agreement, as specified in the Plan or in this Confirmation Order, to the extent any amounts were to be paid or otherwise distributed to or for the benefit of any Debtor entity, or were to be paid or distributed pursuant to the Priority of Payments under the Indenture, such amounts shall be remitted to the applicable Asset Recovery

Entity.[3]  For the avoidance of doubt, any funds to be released from the AMZM Escrow Accounts shall be transferred to the Zohar II Recovery LLC or Zohar III Recovery LLC, as applicable.

## Modified Substantive Consolidation

22.    Entry of this Confirmation Order shall constitute the approval, pursuant to sections 105(a), 541, 1123 and 1129 of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of:  (x) Zohar I Corp. with Zohar I Limited, (y) Zohar II Corp. with Zohar II Limited, and (z) Zohar III. Corp. with Zohar III Limited for all purposes, including voting, confirmation, and Distribution. On and after the Effective Date, (i) all assets and liabilities of Zohar I Corp. shall be pooled with Zohar I Limited, Zohar II Corp. shall be pooled with Zohar II Limited, and Zohar III. Corp. shall be pooled with Zohar III Limited, (ii) no Distributions shall be made under the Plan on account of any Claim held by a Debtor against any Debtor with which it has been consolidated under the Plan, (iii) no Distributions shall be made under the Plan on account of any Interest held by a Debtor in any other Debtor, and (iv) all guarantees of any Debtors of the obligations of any other Debtor with which it has been consolidated under the Plan shall be eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor, and any joint or several liability of any of the Debtors shall be one obligation of the substantively consolidated Debtors.

## Reservation of Litigation Assets

23.    Without the need of any party to take any action, the Litigation Trustee of the Litigation Trusts shall be substituted for the Debtors as plaintiff or movant in all pending matters, including the Zohar-Patriarch Adversary Proceeding and all contested matters in the Chapter 11

---

[3]    For the avoidance of doubt, any such amounts relating to Zohar I shall be remitted to MBIA pursuant to the applicable escrow agreement.

29297607.13

Cases and all extant appeals therefrom, and from and after the Effective Date, the Litigation Trustee shall accede to all of the Debtors' right, title, interest, and standing with respect to the Litigation Assets, notwithstanding any applicable non-bankruptcy law that may provide to the contrary or otherwise limits the Litigation Trustee's exercise of the Debtors' right, title, interest, and standing with respect to the Litigation Assets. The failure to specifically identify in the Disclosure Statement, the Plan, this Confirmation Order, the Plan Supplement or the Litigation Trust Agreements any Litigation Asset is not intended to and shall not limit the rights of the Estates and the Litigation Trusts to pursue any such Litigation Assets.  The Debtors and the Estates expressly reserve all Litigation Assets other than those that are expressly waived, relinquished, released, compromised, or settled in the Plan, pursuant to this Confirmation Order, or pursuant to any other order of the Bankruptcy Court, as Litigation Assets for later adjudication, and no preclusion doctrine (including the doctrines of res judicata, collateral estoppel, judicial estoppel, equitable estoppel, issue preclusion, claim preclusion, and laches) shall apply to such Litigation Assets after the Effective Date as a consequence of the Bankruptcy Cases, or the confirmation or consummation of the Plan.  Moreover, no Person may rely on the absence of a specific reference in the Disclosure Statement, the Plan, this Confirmation Order, the Plan Supplement or the Litigation Trust Agreements to any Litigation Assets against such Person as any indication that the Estates or the Litigation Trusts will not pursue any and all available Litigation Assets against such Person.  Nothing contained in the Disclosure Statement, the Plan, this Confirmation Order, the Plan Supplement or the Litigation Trust Agreements will be deemed to be a waiver, release, or relinquishment of any Litigation Assets which the Debtors and the Estates had immediately prior to the Effective Date other than those that are expressly waived, relinquished, released, compromised, or settled in the Plan or the Confirmation Order.

29297607.13

**Cancellation of Agreements and Interests; Termination of Liens**

24.     On the Effective Date, except to the extent otherwise specifically provided for in the Plan:  (a) the Zohar Indentures, the Interests in the Debtors, and all notes, bonds, agreements, instruments, certificates, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, and any other instruments or documents directly or indirectly evidencing, creating, or, relating to any indebtedness or obligations of, or ownership interest, equity, or profits interest in, the Debtors, or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity ownership, or profits interests in the Debtors giving rise to any Claims or Interests (collectively, the "Canceled Debt and Equity Documentation") shall be canceled, surrendered, extinguished and of no force or effect and deemed surrendered to the Debtors and neither the Debtors nor any successor in interest thereto shall have any continuing obligations thereunder; (b) the obligations of the Debtors pursuant, relating, or pertaining to the Zohar Indentures, the Interests in the Debtors and all other Canceled Debt and Equity Documentation shall be fully released, settled, and compromised; and (c) the Indenture Trustee shall be discharged of its duties and the collateral manager for each Debtor shall be terminated.

25.     From and after the Effective Date, the parties to the Zohar Indentures and the Transaction Documents and such other Canceled Debt and Equity Documentation will have no rights against the Debtors arising from or related to the Zohar Indentures and the Transaction Documents and such other Canceled Debt and Equity Documentation, all such rights being expressly extinguished pursuant to this Plan; *provided*, that, notwithstanding Confirmation or the occurrence of the Effective Date, any such Zohar Indenture or other Canceled Debt and Equity Documentation that governs the rights of the Holder of a Claim or Interest shall continue in effect

solely (i) for purposes of enabling Holders of Allowed Claims to receive distributions under the Plan solely as expressly provided herein, including treatment of the Indenture Trustee Claims in Classes 2, 9, 14 and (ii) to enforce the subordination, turnover, and limited recourse provisions of the Zohar Indentures and Transaction Documents, including without limitation, sections 2.6 5.2, 5.4, 5.8, 5.9 and 13.1 and the "Priority of Payments" provisions of each Zohar Indenture and the "Limitations on Recourse" provision of each Management Agreement, including as incorporated herein under Section 2.3 of the Plan.  For the avoidance of doubt and notwithstanding anything to the contrary contained herein or in the Confirmation Order, the Zohar Indentures, or the Litigation Trust Agreements, to the extent that the rights of Holders of Notes to institute claims or causes of action arising under or related to the Indentures have been assigned to any Litigation Trusts, such Litigation Trusts may pursue such claims directly and need not abide by the provisions contained in section 5.8 pertaining to the Indenture Trustee.

26.    On the Effective Date, all liens in favor of the Indenture Trustee securing the Noteholder Claims, whether arising prior to or after the Petition Date, shall be automatically released; *provided*, *however*, that the Indenture Trustee shall retain all of its liens on the Debtors' assets received by the Asset Recovery Entities and received by the Litigation Trusts (but, for the avoidance of doubt, excluding assets transferred to MBIA under the Zohar I Sale Documents or pursuant to the Plan) to secure the payment of the Indenture Trustee Claims until such Indenture Trustee Claims have been satisfied.  For the avoidance of doubt, the liens of the Indenture Trustee on any Litigation Assets (x) shall be senior to any interests held by or any distributions made on account thereof to the beneficiaries of any Litigation Trust whose interests in that Litigation Trust arise from Noteholder Claims, but (y) shall, if applicable, be junior to (i) the DIP Liens and (ii) the liens of any litigation funder for that Litigation Trust (without regard for when any litigation funder

29297607.13

perfects its liens on such assets).  The Indenture Trustee shall not be required to file UCC financing statements or take any other actions to record or perfect its surviving liens pursuant to this paragraph, and such liens shall be deemed perfected and enforceable upon entry of this Confirmation Order.  The DIP Lender and any lender or agent under the Zohar II Litigation Financing Agreement shall not be required to file UCC financing statements or take any other actions to record or perfect its surviving DIP Liens or the liens securing the obligations under any Zohar II Litigation Financing Agreement, and such liens shall be deemed perfected and enforceable upon entry of this Confirmation Order.  Further, if the DIP Lender or any lender or agent under any Zohar II Litigation Financing Agreement subsequently file UCC financing statements or take other action as of the Effective Date to perfect and record their liens, such liens shall be deemed perfected in the same priority as of the date of entry of this Confirmation Order.  In the event that there is a sale of any Portfolio Company pursuant to the monetization process under the Settlement Agreement, including the sale of equity in the Portfolio Company or release of liens securing obligations owed by the Portfolio Company, the applicable Asset Recovery Entity is authorized to take all actions necessary to convey the Portfolio Company (or its assets) free and clear of any lien securing the Indenture Trustee Claims or DIP Liens, with such lien attaching to the proceeds of such sale in the same manner and priority as the liens on such Portfolio Company or assets.  Notwithstanding the foregoing, for so long as the Zohar II Recovery LLC or Zohar III Recovery LLC, as applicable, maintains a reserve in the amount of $250,000 (or such lesser amount agreed to by the Indenture Trustee) to secure the payment of the Indenture Trustee Claims in accordance with Section 6.15 of the Plan, the applicable Asset Recovery Entity may make distributions, including distributions of cash or other assets, free and clear of any lien securing the Indenture Trustee Claims and without liability to the Indenture Trustee.

27.     Except as otherwise provided in section 12(c) of this Confirmation Order with respect to MD Term Loan Indebtedness, upon the payment in full of the Allowed DIP Claims, all DIP Liens arising out of or related to the DIP Order or the DIP Credit Agreement shall automatically terminate, and all collateral subject to such liens shall be automatically released from such liens, in each case without further action by the DIP Lender and all obligations of the DIP Debtors (or successors thereto) arising out of or related to the DIP Claims shall be automatically released, in each case without further action by the DIP Lender.

28.     The Indenture Trustee, Noteholders and DIP Lender shall take all actions to effectuate and confirm such termination and release of their liens as reasonably requested by the DIP Debtors, the Wind-Down Administrator, the Asset Recovery Managers or the Litigation Trustee(s).

29.     Any fees and expenses of the Indenture Trustee incurred through the Effective Date that are payable as adequate protection under the DIP Order shall be placed into the Professional Claims Escrow Account and paid subject to the "Prepetition Secured Parties Fee Review Procedures" established in the DIP Order.  The Debtors shall provide the Indenture Trustee with three (3) business days' prior notice of the anticipated Effective Date and on the next business day, the Indenture Trustee shall provide the Debtors with its good faith estimate of the amounts incurred or anticipated to be incurred through the Effective Date.

**Plan Distributions**

30.     The Distribution provisions provided for in the Plan are hereby approved in their entirety.

31.     The record date for purposes of determining which Holders of Allowed Zohar III A-1 Note Claims are eligible to receive distributions under the Plan shall be the Effective Date (the "Distribution Record Date").  For purposes of the Distribution of equity in New Zohar III

LLC, MDHI Holdco Interests and New Notes to Holders of Zohar III A-1 Notes, the Distribution

Agent shall be the Asset Recovery Manager for Zohar III Recovery LLC.  Distributions made to

Holders of Allowed Zohar III A-1 Note Claims shall be made to such Holders as of the Distribution

Record Date.  The applicable Distribution Agent shall have no obligation to recognize any transfers

of Zohar III A-1 Note Claims occurring on or after the Distribution Record Date.  Holders of

Allowed Zohar III A-1 Note Claims receiving equity in New Zohar III LLC or MDHI Holdco

Interests shall execute or be deemed to have executed the respective member or shareholder

agreement for such entity.

### Letter of Transmittal for Zohar III A-1 Notes

32.    As soon as practicable after the Effective Date, solely with respect to the Zohar III

A-1 Notes held through brokers, banks, intermediaries, nominees or other agents (each of the

foregoing, a "Note Claims Nominee") as of the Distribution Record Date, the applicable

Distribution Agent, shall send, or cause to be sent, a letter of transmittal substantially in the form

attached hereto as **Exhibit C** (the "Letter of Transmittal") to each Note Claims Nominee, an

authorized agent or representative thereof, or such other and further persons and entities as is

necessary, including, without limitation, Mediant Inc. and Broadridge Financial Solutions, Inc.

(each, a "Note Claims Nominee Party"), and each Note Claims Nominee Party shall promptly

distribute the Letter of Transmittal to all beneficial holders (each, a "Zohar III A-1 Beneficial

Noteholder") for which the related Note Claims Nominee holds Zohar III A-1 Notes.

### Registration Form for Zohar III A-1 Notes

33.    As an express condition to a Zohar III A-1 Beneficial Noteholder receiving any

Distribution to which such Zohar III A-1 Beneficial Noteholder is entitled to under the Plan on

account of the Zohar III A-1 Notes (a "Zohar III A-1 Noteholder Distribution"), each Zohar III

A-1 Beneficial Noteholder shall properly complete and deliver, or cause to be delivered, the

registration form attached to the Letter of Transmittal (the "Registration Form") (along with the necessary supporting documentation) to the applicable Distribution Agent, by no later than 5:00 p.m. (ET) on the date that is 120 days after the Effective Date, in accordance with the terms of the Letter of Transmittal.  Any Zohar III A-1 Beneficial Noteholder that fails to do so shall be deemed to have forfeited its right to any Zohar III A-1 Noteholder Distribution, and shall be forever barred and enjoined from asserting its Zohar III A-1 Note Claim against the Debtors, their Estates, their property, the Asset Recovery Entities, the Litigation Trust(s), or the respective assets of or in any of the foregoing.  Any such forfeited Zohar III A-1 Noteholder Distributions shall be reallocated for Distribution to other Zohar III A-1 Noteholders in accordance with the Plan, free of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary.

**Defects and Disputes Regarding Registration Forms for Zohar III A-1 Notes**

34.    The applicable Distribution Agent is authorized to reject any and all Registration Forms (including the supporting documentation) that are not in proper form, the acceptance of which would, in the opinion of the applicable Distribution Agent or its counsel, be unlawful or that do not attach appropriate documentation to substantiate, to the satisfaction of the applicable Distribution Agent, the principal amount of Zohar III A-1 Notes held by such Zohar III A-1 Noteholder as of the Distribution Record Date (the "Principal Amount Held").  The applicable Distribution Agent is further authorized to waive or permit the cure of any defects or irregularities or conditions of delivery as to any particular Registration Form (including as to the supporting documentation).  Unless waived, any such defects or irregularities must be cured within the 120 day period set forth in paragraph 30, or by such later date as the applicable Distribution Agent notifies the affected Zohar III A-1 Noteholder.  Except as otherwise provided herein, neither the applicable Distribution Agent nor any other person will be under any duty to provide notification of such defects or irregularities or failure to satisfy conditions of delivery, nor will any of them

incur any liabilities for failure to provide such notification.  Delivery of any such Registration Forms will not be deemed to have been made and such Registration Forms will be invalid until such defects or irregularities have been cured or waived.  Notwithstanding the foregoing, to the extent that the applicable Distribution Agent disputes the Principal Amount Held as reflected in the Registration Form and the attached supporting documentation, the applicable Distribution Agent shall provide, or cause to be provided, written notice of such dispute to such Zohar III A-1 Beneficial Noteholder, along with a reasonably detailed explanation of the applicable Distribution Agent's position on such matter, and the Zohar III A-1 Beneficial Noteholder shall have fourteen (14) days from the date of the notice to respond in writing to the applicable Distribution Agent, and any failure of the Zohar III A-1 Beneficial Noteholder to do so shall be a waiver of the Zohar III A-1 Beneficial Noteholder's rights to contest the applicable Distribution Agent's position.  To the extent that the Zohar III A-1 Beneficial Noteholder timely responds and the parties cannot consensually resolve the dispute, a hearing shall be held before the Bankruptcy Court to resolve the dispute.  The interpretation of all Registration Form procedures by the applicable Distribution Agent, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties.

## **Executory Contracts and Unexpired Leases**

35.     On the Effective Date, all of the Debtors' executory contracts and unexpired leases shall be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except to the extent that (a) the Debtors previously have assumed, assumed and assigned, or rejected such executory contract or unexpired lease, (b) prior to the Effective Date, the Debtors have Filed a motion to assume, assume and assign, or reject an executory contract or unexpired lease on which this Court has not ruled, or (c) an executory contract or unexpired lease is specifically identified in the Plan Supplement as an executory contract or unexpired lease to be assumed pursuant to the Plan, in

which case such executory contract or unexpired lease shall be assumed by the applicable Debtor(s) and assigned to the appropriate Asset Recovery Entity. Entry of this Confirmation Order shall constitute approval of all rejections, assumptions and assignments of executory contracts and unexpired leases pursuant to Section 9.1 of the Plan and sections 365(a) and 1123 of the Bankruptcy Code.

36.    **In accordance with the Bar Date Order, the Holder of any Claim arising from the rejection of an executory contract or unexpired lease pursuant to the Plan and this Confirmation Order (a "__Rejection Damages Claim__") shall file a Proof of Claim on account of such Rejection Damages Claim against the Debtors so as to be received by 5:00 p.m. on the first Business Day that is thirty (30) days after the Effective Date.  Failure to file a Rejection Damages Claim timely and properly shall result in the Rejection Damages Claim being forever barred and extinguished, absent order of the Court to the contrary.**

### Claims Administration Responsibilities; Claims Objections

37.    Except as otherwise specifically provided in the Plan, or applicable Asset Recovery Entity Agreement or Litigation Trust Agreement, after the Effective Date, the Litigation Trustee shall have the authority (a) to file, withdraw, or litigate to judgment objections to Claims against that Debtor, (b) to settle or compromise any Disputed Claim against that Debtor without any further notice to or action, order, or approval by the Bankruptcy Court, (c) to amend the Bankruptcy Schedules in accordance with the Bankruptcy Code, and (d) to administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, Order, or approval by the Bankruptcy Court.

38.    **Unless otherwise provided in the Plan or by order of the Bankruptcy Court, any objections to Claims (including Administrative Claims and Priority Tax Claims but excluding Professional Claims and claims arising under section 1930 of chapter 123 of title**

28 of the United States Code) shall be Filed not later than 180 days after the later of (i) the **Effective Date or (ii) the date such Claim is Filed, provided that the Litigation Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by Filing a motion with the Bankruptcy Court, and serving all Holders of Claims that would be affected by such extension.** A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

<u>**Administrative Claims**</u>

39.    **The Holder of an Administrative Claim, arising after August 26, 2021, other than: (a) Professional Claims; (b) any Administrative Claims that (i) have been previously paid by the Debtors in the ordinary course of business or otherwise or (ii) have otherwise been satisfied; (c) any Administrative Claims previously Filed; (d) any Administrative Claim that has been Allowed by prior order of the Bankruptcy Court; (e) any Administrative Claims held by any Debtor; (f) any claims for fees payable to the Clerk of the Bankruptcy Court; (g) any U.S. Trustee Fees; and (h) any DIP Claims; and (i) any Administrative Claim entitled to administrative expense status pursuant to section 503(b)(1)(D), must File and serve on counsel to the Wind-Down Administrator, a written request for such Administrative Claim so as to be received by 5:00 p.m. on the first Business Day that is thirty (30) days after the Effective Date. Such request must include at a minimum: (i) the name of the Debtor(s) that are purported to be liable for the Administrative Claim; (ii) the name of the Holder of the Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim. Failure to file and serve such notice or request timely and properly shall result in the Administrative Claim being forever barred and extinguished, absent order of the Court to the contrary.** For the avoidance of doubt, the Bar Date for Administrative Claims arising prior to

August 27, 2021 and the Bar Date for Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code, is the date as established in the Bar Date Order.

## Professional Claims

40.      **All Persons seeking Allowance of Professional Claims under the Plan shall File, on or before the date that is thirty (30) calendar days after the Effective Date, their respective applications for final allowance of compensation for services rendered and reimbursement of expenses incurred.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, any Professional Claim of the New Agent shall be resolved as provided in the New Agent Order. **Objections to any Professional Claim must be Filed and served on counsel to the Wind-Down Administrator and the requesting Professional by no later than twenty-one days (21) days after the service of the applicable final request for payment of the Professional Claim.**  Each Holder of an Allowed Professional Claim shall be paid from the Professional Claims Escrow Account (i) within five (5) Business Days from entry of such order approving such Allowed Professional Claim, (ii) with respect to any Professional Claim of the New Agent, within five (5) Business Days after such Professional Claim becomes Allowed in accordance with the New Agent Order, or (iii) at such time and upon such terms as may be agreed upon by such Professional and the Wind-Down Administrator.

## Release, Injunction, Exculpation and Related Provisions

41.      **The release, injunction, exculpation and related provisions set forth in Sections 10.3, 10.4, 10.5 and 10.6 of the Plan are hereby approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities as and to the extent provided for therein and herein.**

29297607.13

### Governmental Approvals

42.     Each federal, state, commonwealth, local, foreign or other governmental agency is hereby authorized to accept any and all documents necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulation of any federal, state, commonwealth, local, foreign or other governmental agency with respect to the implementation or consummation of the Plan.

### Approval of MD Credit Bid Transaction

43.     The MD Credit Bid Transaction is approved for purposes of the Settlement Agreement and these Chapter 11 Cases.

### Case Expense Allocation

44.     The Case Expense Allocation of 55% Zohar II and 45% Zohar III is hereby approved.  As part of the Case Expense Allocation, on the Effective Date, Zohar III shall pay to Zohar II $342,308.  Zohar II shall retain a claim, in an amount to be determined at a later date by the Litigation Trustee and Zohar II Recovery LLC, against Zohar I for the Zohar II Intercompany Claim.  As soon as practicable after the amount of the Zohar II Intercompany Claim is fixed, the Litigation Trustee shall provide fourteen (14) days' notice and an opportunity to object either by (i) Filing a notice with the Court or (ii) if the Chapter 11 Cases are closed, serving a notice upon all holders of Allowed Claims against Zohar I in Classes 14-15 that have not been paid in full as of the date of such notice.

### Order Sustaining Objections to Adequate Protection Requests

45.     Pursuant to the objection set forth in Section 6.12 of the Plan, the following request for administrative expense, super-priority claims are disallowed: (i) requests by MBIA Insurance Corp. against the Zohar II Debtors [Docket Nos. 2877 and 2878]; (ii) request by Bardin Hill

Investment Partners, LP, on account of funds managed by itself and its affiliates, against the Zohar III Debtors [Docket Nos. 2879 and 2880]; and (iii) request by the Patriarch Stakeholders (as defined in their request) against all Debtors [Docket No. 2882].

### Notice of Entry of Confirmation Order and Effective Date

46.     Pursuant to Bankruptcy Rules 2002 and 3020(c), the Debtors shall serve a notice of entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "Notice of Confirmation and Effective Date"), no later than five (5) Business Days after the Effective Date, on all Holders of Claims or Interests and all other Persons and Entities on which the Confirmation Hearing Notice was served.  The form of the Notice of Confirmation and Effective Date is hereby approved in all respects.  The Notice of Confirmation and Effective Date shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein, including, without limitation, the rejection of executory contracts and unexpired leases as provided for in the Plan and this Confirmation Order, and any bar dates and deadlines established under the Plan and this Confirmation Order, and no other or further notice of the entry of this Confirmation Order, the occurrence of the Effective Date, and any such rejections, bar dates and deadlines need be given.

### Retention of Jurisdiction

47.     Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall have jurisdiction of all matters in connection with, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including, among other things, with respect to the matters specifically identified in Article XII of the Plan.

29297607.13

## **References to Plan Provisions**

48.     The failure specifically to include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such article, section, or provision shall have the same validity, binding effect, and enforceability as every other article, section, or provision of the Plan, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety.

## **Modification of Plan**

49.     The Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation, in compliance with section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019(b); provided, that the Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications.   A Holder of a Claim that has accepted the Plan prior to any alteration, amendment, or modification will be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Holders of the Claims.   Prior to the Effective Date, the Debtors may upon consultation with the applicable Indenture Trustee, Controlling Class and Controlling Party for each Debtor, as the case may be, make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not materially change the treatment of Holders of Claims or Interests.

### Rules Governing Conflicts Between Documents

50.     To the extent that any provision of the Disclosure Statement conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control. This Confirmation Order will govern in the event of any conflict between this Confirmation Order and the Plan.

### Term of Injunctions or Stays

51.     All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect following Confirmation of the Plan, for the maximum period permitted under the Bankruptcy Code, Bankruptcy Rules and the Local Bankruptcy Rules.

### Section 1146 Exemption

52.     Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security or the making or delivery of an instrument of transfer under the Plan shall not be taxed under any law imposing a stamp tax or similar tax.

### Headings

53.     Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

### Plan Voting Record Date

54.     Notwithstanding anything to the contrary in the Disclosure Statement Order, for purposes of Confirmation, the Record Date (as defined in the Disclosure Statement Order) with respect to Holders of Zohar III A-1 Note Claims shall be May 13, 2022.

### Allowed DIP Claims

55.     On the Effective Date, all outstanding DIP Obligations shall be deemed Allowed DIP Claims without the need for the DIP Lender to take any other action, including the filing of

any claim.  The Notice of Confirmation and Effective Date shall include the amount of the Allowed

DIP Claims.  Notwithstanding anything to the contrary in the Final DIP Order, the Debtors shall

be authorized to pay, under Paragraph 27(a)(x) of the Final DIP Order, any and all Controlling

Secured Party Fees and Expenses through the Effective Date that are or would otherwise be

payable under Paragraphs 27(a) or 27(c) of the Final DIP Order.

<div align="center">**Resolution of Certain Objections**</div>

56.     From the Effective Date and thereafter, MBIA shall have all rights to such Zohar I

PC Assets free and clear of all claims and interests of the Debtors or any other party; provided,

however, that all parties reserve all rights and remedies with respect to their existing litigation

claims and positions relating to the beneficial ownership of equity interests prior to March 21,

2020 and the Zohar I Auction, including as set forth in the actions captioned as *Zohar CDO 2003-1

v. Patriarch*, No. 17-cv-0307-PKC (S.D.N.Y.) and *In re Zohar III, Corp. (Tilton v. MBIA Inc.)*,

Adv. Proc. No. 19-ap-50390 (Bankr. D. Del.) (KBO) and the Zohar-Patriarch Adversary

Proceeding; provided further, however, that all parties likewise reserve any and all rights and

remedies and defenses they may have with respect to any of the foregoing, including with respect

to any litigation claims and positions.

57.     Notwithstanding anything contained in the Plan, the Plan Documents or this

Confirmation Order to the contrary, (i) except to the extent of exculpation under Plan Section 10.5,

neither the Plan nor this Order shall constitute a release of any claims, interests or Causes of Action

held by any Patriarch Stakeholders against any non-Debtor; (ii) except to the extent of exculpation

under Plan Section 10.5, neither the Plan nor this Order shall constitute an injunction against the

commencement of any claims or Causes of Action held by any Patriarch Stakeholder against any

non-Debtor or enjoin the continuation of litigation of the Patriarch Disputed CMA Fee Claims

29297607.13

pursuant to the terms of the CMA Fee Dispute Documents and the claims asserted in the Amended Equitable Subordination Complain (as defined in the Disclosure Statement), including the appeal of this Court's March 25, 2022 order [Case No. 19-50390-KBO, Adv. D.I. 236]; and (iii) neither the Plan nor this Order shall constitute a release of any Patriarch Stakeholders' defenses against any claims by the Debtors or any of their successors.

58.    The effect of the transfer of the Debtors' assets "free and clear" of Patriarch's asserted set-off rights is not being decided in the Confirmation Order. The right of the Debtors, Litigation Trustee, and Asset Recovery Entities to argue that the effect of this "free and clear" relief extinguishes any of Patriarch's set off rights is preserved. Patriarch reserves the right to argue that the effect of this "free and clear" relief does not extinguish any of Patriarch's set off rights, that the transfer of the Litigation Assets under the Plan is not a "sale" under section 363 of the Bankruptcy Code, or that the Court possesses and should exercise discretion to not extinguish any of Patriarch's set off rights under the facts and circumstances of this case. If the court finds transfer did not extinguish Patriarch's set off rights, all parties' rights are preserved to argue whether a valid right to set off exists and should be permitted to be exercised. All parties' rights and defenses to the foregoing are preserved.

59.    Notwithstanding anything to the contrary in the Plan or otherwise in this Confirmation Order, (i) for any sale under the Settlement Agreement that closed prior to the Effective Date, if any 5% Transaction Fees are determined by a final order of the Bankruptcy Court to be due and owing by the Debtors to Patriarch Partners Management Group, LLC under the Settlement Agreement upon reversal of the "Oasis Decision", then Patriarch shall have an administrative expense claim in the amount reflected for that company on Patriarch's Exhibit C (to the extent such sale was a "Completed Sale" on Exhibit C) located in the box indicating the

amounts are subject to Third Circuit Decision, as tendered at the Confirmation Hearing (and to the extent such sale was "anticipated" in the box indicating the amounts are subject to Third Circuit Decision, as tendered at the Confirmation Hearing, then the transaction fee shall be determined based on the applicable sale price pursuant to the Settlement Agreement, and such claim shall be paid as required by the Plan (to the extent not otherwise paid at the closing of a sale) (a "PPMG Administrative Claim"); (ii) for any sale under the Settlement Agreement that closes after the Effective Date, the 5% Transaction Fee shall be payable, at closing, out of proceeds of such sale. If the Administrative and Priority Claims Escrow Account that would be obligated to satisfy any PPMG Administrative Claims has insufficient funds to do so, then Zohar II Recovery LLC, Zohar III Recovery, LLC, or both of them, as applicable, shall, upon receipt of monetization proceeds from (x) any of the Group A PC Assets or (y) solely to the extent such Group B Portfolio Company was transferred to, or owned by, the Asset Recovery Entities under the Plan any of the Debtors' interest in and claims against the Group B Portfolio Companies (as defined in the Settlement Agreement), transfer to the Administrative and Priority Claims Escrow Account an amount of asset monetization proceeds received by the applicable Asset Recovery Entity necessary to satisfy any shortfall solely as to any PPMG Administrative Claims; provided however, that the foregoing shall not impact Patriarch's right to such payment.

**Final Order**

60.  ~~58.~~This Confirmation Order is a final order and the period for which an appeal must be filed will commence upon entry of this Confirmation Order.

61.  ~~59.~~Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority,

29297607.13

or Lien incurred or undertaken by the Debtors or any other party authorized or required to take action to implement the Plan, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provision of this Confirmation Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

[Revised Proposed Confirmation Order]

**EXHIBIT A**

**Plan**

# **EXHIBIT B**

## **Notice of Confirmation and Effective Date**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Zohar III, Corp., *et al.*, | ) Case No. 18-10512 (KBO) |
| | ) |
| Debtors[1]. | ) Jointly Administered |
| | ) |

**NOTICE OF (I) CONFIRMATION AND EFFECTIVE DATE OF THE THIRD AMENDED
JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR
ZOHAR III, CORP. AND ITS AFFILIATED DEBTORS; (II) DEADLINE UNDER THE PLAN
AND CONFIRMATION ORDER TO FILE ADMINISTRATIVE CLAIMS, REJECTION
CLAIMS AND PROFESSIONAL FEE CLAIMS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.     **Entry of Confirmation Order**.  On [＿＿＿], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Confirmation Order") confirming the *Third Amended Joint Plaint of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliate Debtors*, attached as Exhibit A to the Confirmation Order (together with the Plan Supplement, all other exhibits thereto, and as may be amended, modified or supplemented, the "Plan"),[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (the "Debtors").

2.     **Effective Date of the Plan**.  The Effective Date of the Plan was [●], 2022.

3.     **Administrative Claim Bar Date**.  The Holder of an Administrative Claim, arising after August 26, 2021, other than:  (a) Professional Claims; (b) any Administrative Claims that (i) have been previously paid by the Debtors in the ordinary course of business or otherwise or (ii) have otherwise been satisfied; (c) any Administrative Claims previously Filed; (d) any Administrative Claim that has been Allowed by prior order of the Bankruptcy Court; (e) any Administrative Claims held by any Debtor; (f) any claims for fees payable to the Clerk of the Bankruptcy Court; (g) any U.S. Trustee Fees; and (h) any Administrative Claim entitled to administrative expense status pursuant to section 503(b)(1)(D), must File and serve on counsel to the Wind-Down Administrator, at the below address, a written request for such Administrative Claim **so as to be received by [5:00 p.m. on the first Business Day that is thirty (30) days after the Effective Date]**.  Such request must include at a minimum: (i) the name of the Debtor(s) that are purported to be liable for the Administrative Claim; (ii) the name of the Holder of the

---

[1]     The Debtors and the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is c/o FTI Consulting, Inc., 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

[2]     Unless otherwise defined in this notice, capitalized terms used herein shall have the meaning ascribed to them in the Plan.

Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim.  Failure to file and serve such notice or request timely and properly shall result in the Administrative Claim being forever barred and extinguished, absent order of the Court to the contrary.  For the avoidance of doubt, the Bar Date for Administrative Claims arising prior to August 27, 2021 and the Bar Date for Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code, is the date as established in the Bar Date Order.

| Counsel for the Wind-Down Administrator |
|---|

4.      **Deadline to File Rejection Claims**.  In accordance with the Bar Date Order, the Holder of any Claim arising from the rejection of an executory contract or unexpired lease pursuant to the Plan and the Confirmation Order (a "Rejection Damages Claim") shall file a Proof of Claim on account of such Rejection Damages Claim against the Debtors so as to be received by the [*], at the address below, **by 5:00 p.m. on [the first Business Day that is thirty (30) days after the Effective Date]**.  Failure to file a Rejection Damages Claim timely and properly shall result in the Rejection Damages Claim being forever barred and extinguished.



| * |
|---|

5.      **Deadline to File Professional Claims**.  All Persons seeking Allowance of Professional Claims under the Plan shall File, **[on or before the date that is thirty (30) calendar days after the Effective Date]**, their respective applications for final allowance of compensation for services rendered and reimbursement of expenses incurred.  Notwithstanding anything to the contrary in the Plan, any objection to any Professional Claim of the New Agent shall be resolved as provided in the New Agent Order. Objections to any Professional Claim must be Filed and served on counsel to the Wind-Down Administrator, at the address set forth herein, and the requesting Professional **by no later than twenty-one days (21) days after the service of the applicable final request for payment of the Professional Claim**.

6.      **Inquiries by Interested Parties**.  Copies of the Confirmation Order (to which the Plan is attached as Exhibit A) are available free of charge upon written request (which writing may be an email) to the undersigned counsel for the Debtors.  The Confirmation Order is also on file with the Bankruptcy Court and may be viewed by accessing the Bankruptcy Court's website at www.deb.uscourts.gov.  To access documents on the Bankruptcy Court's website, you will need a PACER password and login, which can be obtained at www.pacer.psc.uscourts.gov.

7.      **Limiting Notices**.  Only Persons that file renewed requests to receive documents pursuant to Bankruptcy Rule 2002 on or after the Effective Date shall be entitled to receive notice under Bankruptcy Rule 2002 with respect to the Chapter 11 Cases.  After the Effective Date, the Wind-Down Administrator, Asset Recovery Manager, and Litigation Trustee are authorized to limit the list of Persons receiving documents with respect to the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 to those Persons who have Filed such renewed requests, and any other person required to be served under Local Rule 2002-1(b).

29297607.13

8.    **DIP Obligations**.  The amount of the Allowed DIP Claims as of the Effective Date is $[_____].

Dated: [●], 2022
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4421)
Ryan M. Bartley (No. 4985)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Emails:    jpatton@ycst.com
          rbrady@ycst.com
          mnestor@ycst.com
          jbarry@ycst.com
          rbartley@ycst.com

*Counsel to the Debtors and Debtors in Possession*

29297607.13

**EXHIBIT B**

**Letter of Transmittal**

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

## LETTER OF TRANSMITTAL TO ZOHAR III A-1 NOTEHOLDERS

> **\*\*Any Zohar III A-1 Noteholder that fails to properly complete and deliver, or caused to be delivered, the attached Registration Form (along with the necessary supporting documentation) to the Distribution Agent by [\*], 2022[6] in accordance with the terms of this Letter of Transmittal shall be deemed to have forfeited its right to any Zohar III A-1 Noteholder Distribution and shall be forever barred and enjoined from asserting its Zohar III A-1 Note Claim against the Debtors, their Estates, their property, the Asset Recovery Entities, the Litigation Trusts, or the respective assets of or in any of the foregoing.  Any such forfeited Zohar III A-1 Noteholder Distributions shall be reallocated for Distribution to other Zohar III A-1 Noteholders in accordance with the Plan, free of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary.\*\***

[\*], 2022

*To the beneficial owners, or representatives acting on behalf of the beneficial owners, of the following notes issued pursuant to that certain Indenture among Zohar III, Limited ("Zohar III"), Zohar III Corp., Zohar III, LLC, Natixis Financial Products Inc., and U.S. Bank, N.A., as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association, dated April 6, 2007 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time):*

| Zohar III, Limited Class A-1 | CUSIP No. 989769AA2 |
|---|---|
| Zohar III, Limited Class A-1 | CUSIP No. 989769AB0 |
| Zohar III, Limited Class A-1 | CUSIP No. 989769AC8 |

The purpose of this letter (this "Letter of Transmittal") is to provide the Holders (collectively, the "Zohar III A-1 Noteholders") of the above notes (i.e., the Zohar III A-1 Notes) with important information regarding the documentation required by the order [Docket No. \*] (the "Confirmation Order") of the United States Bankruptcy Court for the District of Delaware, dated \*, 2022, confirming the *Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and Its Affiliated Debtors* (as confirmed, the "Plan"),[7] filed

---

[6]  [120 days from the date of the Effective Date]

[7]  Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Plan.  A copy of the Plan and other documents related to the Plan were previously distributed to you in accordance with the Disclosure Statement Order.  Additional copies of such documents are available free of charge upon written request (which writing may be an email) to the Distribution Agent.

29297607.12

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

by Zohar III and its affiliated Debtors[8] in jointly administered Case No. 18-10512 (KBO), to effect the Distributions (collectively, the "Zohar III A-1 Noteholder Distributions") to which the Zohar III A-1 Noteholders are entitled to under the Plan on account of the Zohar III A-1 Notes.

Please read this Letter of Transmittal carefully and in its entirety.

***The Debtors' Plan***

On March 11, 2018, the Debtors commenced voluntary proceedings under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  On *, 2022, the Bankruptcy Court confirmed the Plan, and the Effective Date occurred on *, 2022.

Under the Plan, Zohar III A-1 Noteholders are placed in Class 3 (Zohar III A-1 Note Claims).  Pursuant to the Plan, on the Effective Date, the Zohar III A-1 Notes shall be deemed to be reduced in amount to the Zohar III Adjusted Plan Value, and each Holder of a Zohar III A-1 Note Claim shall receive, in exchange for its Zohar III A-1 Note Claim, its pro rata share of (i) the New Notes assumed by Zohar III Recovery LLC, and MDHI Holdco in the aggregate amount of $100,000, (ii) the Zohar III MDHI Holdco Interests, and (iii) 100% of the membership interests in New Zohar III LLC.

Pursuant to the Plan, on the Effective Date, the Zohar III A-1 Notes were canceled, surrendered, extinguished and of no force or effect and deemed surrendered to the Debtors and neither the Debtors nor any successor in interest thereto shall have any continuing obligations thereunder other than making the Zohar III A-1 Noteholder Distribution as provided for in the Plan.

**In order to receive any Zohar III A-1 Noteholder Distribution to which it is entitled to under the Plan, a Zohar III A-1 Noteholder must complete and deliver, or cause to be delivered, the attached Registration Form (along with the necessary supporting documentation) in accordance with the procedures and instructions provided for herein.**

***General Procedure for Completing and Delivering Registration Form for Zohar III A-1 Noteholder Distribution***

Pursuant to the Plan and Confirmation Order, Zohar III A-1 Noteholders are required to complete the attached registration form (a "Registration Form") and deliver, or cause to be delivered, such form (along with the necessary supporting documentation) to * (the "Distribution Agent"), **by [*], 2022 at 5:00 p.m. (ET) (the "Registration Deadline")**, as an express condition to receiving any Zohar III A-1 Noteholder Distribution to which such Zohar III A-1 Noteholders are entitled to under the Plan, as follows:

---

[8]  The Debtors and the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).

29297607.12

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

*By electronic mail at (preferred method):*

*By regular mail at:*

*By hand delivery or overnight mail at:*

A failure by a Zohar III A-1 Noteholder to deliver, or cause to be delivered, a duly executed Registration Form (along with the necessary supporting documentation) to the Distribution Agent on or prior to the Registration Deadline will result in such Zohar III A-1 Noteholder being deemed to have forfeited its right to any Zohar III A-1 Noteholder Distribution, and to be forever barred and enjoined from asserting its Zohar III A-1 Note Claim against the Debtors, their Estates, their property, the Asset Recovery Entities, the Litigation Trust(s), or the respective assets of or in any of the foregoing.  Any such forfeited Zohar III A-1 Noteholder Distributions shall be reallocated for Distribution to other Zohar III A-1 Noteholders in accordance with the Plan.

***Additional Instructions for Completing and Delivering Registration Form for Zohar III A-1 Noteholder Distribution***

*Principal Amount of Zohar III A-1 Notes Held as of the Distribution Record Date; Supporting Documentation.*  The Confirmation Order establishes [*], 2022 (the "Distribution Record Date") as the record date for Holders of Zohar III A-1 Note Claims and for making Zohar III A-1 Noteholder Distributions. Each Zohar III A-1 Noteholder must identify and certify in the Registration Form the principal amount of Zohar III A-1 Notes held by such Zohar III A-1 Noteholder as of the Distribution Record Date (the "Principal Amount Held").  **In addition, each Zohar III A-1 Noteholder must include with its Registration Form appropriate documentation to substantiate, to the satisfaction of the Distribution Agent, the Principal Amount Held, which may include, without limitation, a brokerage statement.**  To the extent necessary, confidential or commercially sensitive information may be redacted from such documentation.

Because the Distribution Agent will rely on this certification with respect to the Principal Amount Held, it is important that you truthfully and accurately identify the Principal Amount Held and make the requisite certification, and understand that you may be held liable for any misstatement or omission contained therein.  Pursuant to 18 U.S.C. § 157 and other laws related to bankruptcy fraud, a person or entity that makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under the Bankruptcy Code may be fined or imprisoned.

*Information Reporting and Backup Withholding.*  Any payments made to U.S. holders may be subject to information reporting and backup withholding of U.S. federal income tax, currently at a rate of 28%.  Certain U.S. holders, including corporations, are exempt from these information reporting and backup withholding tax rules.  With its Registration Form, U.S. holders should complete and return an Internal Revenue Service ("IRS") Form W-9, certifying that such U.S. holder is a U.S. person, that the taxpayer identification number ("TIN") provided is correct, and

29297607.12

4

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

that such U.S. holder is not subject to backup withholding.  If applicable, non-U.S. holders may be required to complete and submit an IRS Form W-8 BEN, IRS Form W-8 BEN-E or other applicable IRS Form W-8, signed under penalties of perjury, attesting to the holder's foreign status.  Such forms may be obtained from the Distribution Agent or at the IRS website at www.irs.gov.  If you provide an incorrect TIN or other false information, certifications, or affirmations, you may be subject to penalties imposed by the IRS.  If applicable, failure to provide the information on the Form W-9 may subject the payee to a U.S. $50 penalty imposed by the Internal Revenue Service and 28% federal income tax backup withholding on any payment.  Backup withholding is not an additional tax.  Taxpayers may use amounts withheld as a credit against their U.S. federal income tax liability or may claim a refund of any excess amounts withheld by timely filing a claim for refund with the IRS.

     *Signatures.*  Signatures on each Registration Form must be guaranteed by a medallion signature guarantor (or supported by a list of authorized signatories).  If such Registration Form is signed by a trustee, executor, administrator, guardian, attorney-in-fact, agent, officer of a corporation or other person acting in a fiduciary or representative capacity, such person should so indicate when signing, and proper evidence satisfactory to the Distribution Agent of such person's authority to so act must be submitted.  Signatures on such Registration Form must correspond to the names of the holders as shown on the security position listing them as the owner of such Zohar III A-1 Notes.

     *Defects and Disputes.*  The Distribution Agent is authorized to reject any and all Registration Forms (including the necessary supporting documentation) that are not in proper form, the acceptance of which would, in the opinion of the Distribution Agent or its counsel, be unlawful or that do not attach appropriate documentation to substantiate, to the satisfaction of the Distribution Agent, the Principal Amount Held.  The Distribution Agent is further authorized to waive or permit the cure of any defects or irregularities or conditions of delivery as to any particular Registration Form (including as to the necessary supporting documentation).  Unless waived, any such defects or irregularities must be cured **by the Registration Deadline**, or by such later date as the Distribution Agent notifies the affected Zohar III A-1 Noteholder.  Except as otherwise provided herein, neither the Distribution Agent nor any other person will be under any duty to provide notification of such defects or irregularities or failure to satisfy conditions of delivery, nor will any of them incur any liabilities for failure to provide such notification.  Delivery of any such Registration Forms will not be deemed to have been made and such Registration Forms will be invalid until such defects or irregularities have been cured or waived.  Notwithstanding the foregoing, to the extent that the Distribution Agent disputes the principal amount of Zohar III A-1 Notes held by the Zohar III A-1 Noteholder as of the Distribution Record Date as reflected in the Registration Form and the attached supporting documentation, the Distribution Agent shall provide, or cause to be provided, written notice of such dispute to such Zohar III A-1 Noteholder, along with a reasonably detailed explanation of the Distribution Agent's position on such matter, and the Zohar III A-1 Noteholder shall have fourteen (14) days from the date of the notice to respond in writing to the Distribution Agent, and any failure of the Zohar III A-1 Noteholder to do so shall be a waiver of the Zohar III A-1 Noteholder's rights to contest the Distribution Agent's position.  To the extent that the Zohar III A-1 Noteholder timely responds and the parties cannot consensually resolve the dispute, a hearing shall be held before the Bankruptcy Court to resolve

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

the dispute.  The interpretation of all Registration Form procedures by the Distribution Agent, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties.

*You may direct any questions about this Letter of Transmittal or the attached Registration Form to the Distribution Agent,  *,* by mail at *, by telephone to *, or by email to *.

INSERT SENDER  NAME/TITLE

29297607.12

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

<u>**REGISTRATION FORM**</u>

**If you are the Holder of Zohar III A-1 Notes, to receive any Zohar III A-1 Noteholder Distribution to which you are entitled to under the Plan, you must complete and deliver, or cause to be delivered, a duly executed and conforming copy of this Registration Form (along with the necessary supporting documentation) to \* (the "<u>Distribution Agent</u>") on or prior to [\*], 2022 at 5:00 p.m. (ET) (the "<u>Registration Deadline</u>").**

**Any Zohar III A-1 Noteholder that fails to properly complete and deliver, or cause to be delivered, the attached Registration Form (along with the necessary supporting documentation) to the Distribution Agent by the Registration Deadline in accordance with the terms of the Letter of Transmittal shall be deemed to have forfeited its right to any Zohar III A-1 Noteholder Distribution, and shall be forever barred and enjoined from asserting its Zohar III A-1 Note Claim against the Debtors, their Estates, their property, the Asset Recovery Entities, the Litigation Trust(s), or the respective assets of or in any of the foregoing.  Any such forfeited Zohar III A-1 Noteholder Distributions shall be reallocated for Distribution to other Zohar III A-1 Noteholders in accordance with the Plan, free of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary.**

**Item 1.  Principal Amount of Zohar III A-1 Notes Held As of the Distribution Record Date; Supporting Documentation.**  As of the Distribution Record Date (i.e., [\*], 2022), the undersigned Zohar III A-1 Noteholder held the following principal amount of Zohar III A-1 Notes (the "<u>Principal Amount Withheld</u>"):  $ _____

Please attach appropriate documentation to substantiate, to the satisfaction of the Distribution Agent, the Principal Amount Held, which may include, without limitation, a brokerage statement. To the extent necessary, confidential or commercially sensitive information may be redacted from such documentation.

**Item 2.  Registration Information.**  Please provide registration details below.

Name 1 _____

Name 2 _____

Address 1 _____

Address 2 _____

City _____

State/Province _____

29297607.12

1

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

Foreign Country Name (If Applicable) _____

Zip/Postal Code _____

U.S. Tax Identification Number _____

Check here if non-U.S. (no TIN) ☐

Phone _____

Fax _____

Email _____

**Item 3.  Return of Completed and Duly Executed Registration Form.**  Please return your completed and duly executed Registration Form (along with the necessary supporting documentation) by one of the following means:

> *By electronic mail at (preferred method):*

> *By regular mail at:*

> *By hand delivery or overnight mail at:*

**Item 4.  Certifications.**

By completing, executing and delivering this Registration Form (along with the necessary supporting documentation), the undersigned Zohar III A-1 Noteholder:  (i) certifies that all information contained herein is accurate and complete, including, without limitation, with respect to the Principal Amount Held; and (ii) acknowledges that the Distribution Agent will rely on this certification with respect to the Principal Amount Held.

**Item 5.  Execution.**  This Registration Form must be executed by the Zohar III A-1 Noteholder exactly as the Zohar III A-1 Noteholder's name appears on a security position report listing it as the owner of the Zohar III A-1 Notes for which it is completing this Registration Form.  If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a business entity, or other person acting in a fiduciary or representative capacity, please set forth the full title of such person.

Name of Holder (Please Print) _____

Authorized Signature _____

29297607.12

Zohar III, Limited A-1 Notes
CUSIPs:  989769AA2; 989769AB0; 989769AC8

Name of Signatory (Please Print) _____

Title, if by Authorized Agent _____

Street Address _____

City, State, Zip Code _____

Telephone Number _____

Date Completed _____

┌─────────────────────────────────────────────────────────────────────┐
│ Medallion Signature Guarantee                                       │
│                                                                     │
│                                                                     │
│                                                                     │
│                                                                     │
└─────────────────────────────────────────────────────────────────────┘

29297607.12