**EXHIBIT 1**

**Blackline**

## *<u>Exhibit B-1 - Executed Organizational Documents for New Phoenix II, LLC</u>*

CWT DRAFT 6.1.2022
EXECUTION VERSION

# NEW ZOHAR II LLC[1]

# OPERATING AGREEMENT

This Operating Agreement (this "Agreement") of New Zohar II LLC, a Delaware limited liability company (the "Company"), is made and entered into as of [●]July 13, 2022, by MBIA Insurance Corporation, the sole member and manager of the Company (the "Member").

The Member desires to enter into this Agreement to provide for the Company's governance and the conduct of its business.

NOW, THEREFORE, the undersigned, as the Member of the Company, hereby adopts the following as the Company's "operating" agreement, as such term is used in the Limited Liability Company Act of the State of Delaware (as amended from time to time, the "Act"), and hereby agrees as follows:

1. **Formation of the Company.**  The Company was formed in connection with the Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and its Affiliated Debtors, dated January 31, 2022 (as amended, the "Zohar Plan"), pursuant to the provisions of the Act by filing the Certificate of Formation with the Delaware Secretary of State on [●]July 12, 2022 (the "Formation Date").  The Member hereby adopts, approves and ratifies such Certificate of Formation.

2. **Name.**  The name of the limited liability company is "New Zohar II LLC".

3. **Term.**  The term of existence of the Company commenced on the Formation Date and shall be perpetual, unless the Company is dissolved in accordance with the Act or at the election of the Member at any time or as otherwise provided by this Agreement or law.

4. **Agent for Service of Process.**  The initial agent for service of process on the Company is The Corporation Trust Company.  The Member may from time to time change the Company's agent for service of process.  If the agent ceases to act as such for any reason, the Member will promptly designate a replacement agent and notify the Delaware Secretary of State of such change.

5. **Purpose.**  The Company is formed in connection with the Zohar Plan for the purpose of engaging in any lawful act or activity for which limited liability companies may be formed under the Act.  The Company shall have all of the powers a limited liability company may have under the Act.

6. **Qualification in Other Jurisdictions.**  The Member shall take and/or authorize the taking of such action as may be necessary to cause the Company to be qualified, formed, or registered under assumed or fictitious name statutes or similar laws in any jurisdiction

---

[1] This LLC Agreement will also be used for Zohar II Intermediate LLC.

in which the Company transacts business and in which such qualification or registration is required by law or deemed advisable by the Company.

7. **Member.**  The name and present mailing address of the Member is as set forth on <u>Schedule A</u>, as may be amended from time to time.

8. **Management.**  The business and affairs of the Company shall be managed by the Member.  The Member shall have the power to do any and all acts necessary or convenient to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members under the Act.  Except as otherwise provided herein to the contrary, no other person or entity shall have authority to bind the Company.

9. **Officers; Authorized Signatories.**

(a)  The Member may hire employees and appoint officers of the Company to oversee the daily operation of the Company.  Such officers shall be subject to removal by the Member at any time.

(b)  The Member and any officer of the Company are authorized to execute, deliver and file, in the name of and on behalf of the Company, any and all documents, agreements, certificates, receipts, instruments, forms, letters, or similar documents and to do or cause to be done any other actions as the Member or such officer may deem necessary or desirable to further the interests of the Company, except as may be limited by the terms of this Agreement; <u>provided</u>, that the Member may authorize individuals or entities who are not officers of the Company to act as authorized signatories of the Company to execute, deliver and file, in the name of and on behalf of the Company, such documents, agreements, certificates, receipts, instruments, forms, letters, or similar documents as the Member may deem necessary or desirable.

10. **Capital Contributions.**  The Member is not required to make any contributions to the capital of the Company (such amounts, the "<u>Capital Contributions</u>").  The Capital Contributions of the Member shall be set forth on the <u>Schedule A</u>.  The Member shall not have the right to demand the return of any Capital Contributions.  The Member shall not be required to contribute additional capital to the Company or to provide any additional financing to the Company except to the extent required by applicable law.  No interest shall be paid on any capital contributed to the Company.

11. **Distributions.**  [Except as set forth in section [ ]6.8 of the Zohar Plan,] all distributions of cash or other property in respect of a Member's membership interest (collectively, "<u>Distributions</u>") shall be made as and when determined by the Member.

12. **Assignments.**  Subject to applicable securities and other laws, the Member may transfer, assign or otherwise dispose of all or part of its membership interest in the Company, including with respect to all economic and distribution rights and all voting or approval rights.

**13. Admission of Additional Members.**  One or more additional members of the Company may be admitted to the Company with the consent of the Member upon such terms as the Member shall determine.

**14. Liability of Members.**  Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company by reason of being a member.

**15. Tax Treatment**.  The Company will be classified as an association taxable as a corporation for U.S. federal income tax purposes, and neither the Company nor the Member will take any action (including the filing of any election) that would cause it to be taxable as anything other than a corporation for U.S. federal income tax purposes.[2]

**16. Books of Account**.  Complete books of account of the Company's business, in which each Company transaction will be fully and accurately entered, will be kept at the Company's principal executive office.  The Company's financial books and records will be kept on the method of accounting designated by the Member, which will be the method of accounting followed by the Company for federal income tax purposes.

**17. Exculpation; Indemnification**.  To the fullest extent permitted by the Act, or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification, no present or former Member of the Company or present or former officer of the Company shall be personally liable to the Company or the Member for or with respect to any acts or omissions in the performance of his or her duties as a Member or officer of the Company.  The Company shall indemnify, to the fullest extent permitted by the Act (or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification), each person who is or was or had agreed to become a Member or officer of the Company, or each such person who is or was serving or who had agreed to serve at the request of the Member or an officer of the Company as an employee or agent of the Company or as a manager, director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise (including the heirs, executors, administrators or estate of such person) (collectively, the "Covered Persons").  Without limiting the generality or the effect of the foregoing, the Company may enter into one or more agreements with any person or entity which provide for indemnification greater or different than that provided in this Section 17.  Any repeal or modification of this Section 17 shall not adversely affect any right or protection existing hereunder immediately prior to such repeal or modification.

**18. Winding-Up**.  On the dissolution of the Company, the Company will engage in no further business other than that which is necessary to wind-up its business and affairs.  The Member will wind-up the Company's affairs and give notice of the commencement of winding-up to all known creditors and claimants against the Company whose addresses appear in the

---

[2] NTD:  An election must be filed on an IRS Form 8832 no later than 75 days after the Company is organized to make sure that it is treated as a corporation for U.S. federal income tax purposes.

Company's records.  After paying or adequately providing for the payment of all known debts of the Company (except debts owing to the Member), the remaining assets of the Company will be distributed or applied in the following order of priority:

> (a)  First, to pay the expenses of liquidation;

> (b)  Second, to repay outstanding loans to the Member; and

> (c)  Third, to the Member.

**19. Governing Law.**  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, all rights and remedies being governed by said laws.  If any provision of this Agreement conflicts with a default rule under the Act, this Agreement shall govern.

**20. Amendments.**  This Agreement may not be amended without the written consent of the Member.

**21. Successors and Assigns.**  This Agreement is binding upon, and inures to the benefit of, the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and permitted assigns.

**22. Gender; Pronouns.**  The use of any gender herein shall be deemed to be or include the other genders and the use of the singular herein shall be deemed to be or include the plural (and vice-versa), wherever appropriate. The headings herein are inserted only as a matter of convenience and reference, and in no way define, limit or describe the scope of this Agreement, or the intent of any provisions thereof.  Use of either the singular or the plural should not be deemed a limitation, and the use of the singular should be construed to include, where appropriate, the plural.

**23. Other Business Activities.**  Except as provided in this Agreement, no provision of this Agreement will be construed to limit in any manner the Member in the carrying on of its own businesses or activities.

**24. Authority.**  The Member represents and warrants that it has the capacity and authority to enter into this Agreement.

**25. Headings.**  The article, section and paragraph titles and headings in this Agreement are inserted as a matter of convenience and for ease of reference only and will be disregarded for all other purposes, including the construction or enforcement of this Agreement or any of its provisions.

**26. Third Party Beneficiaries.**  This Agreement is made solely for the benefit of the Members and their permitted successors and assigns, and no other person or entity will have or acquire any right by virtue of this Agreement other than the Covered Persons (solely with respect to Section 17).

[*Remainder of page intentionally left blank. Signature page follows.*]

**IN WITNESS WHEREOF**, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first mentioned above.


**MEMBER:**


MBIA INSURANCE ~~CORPORATION~~CORP.


By: _____
    Name:  Anthony McKiernan
    Title:  Chief Financial Officer


[*Signature page to Operating Agreement of New Zohar II LLC*]

<u>SCHEDULE A</u>

New Zohar II LLC
Operating Agreement

| <u>Name and Business Address</u> | <u>Membership Interest</u> | <u>Capital Contribution</u> |
| --- | --- | --- |
| MBIA Insurance ~~Corporation~~Corp.<br>1 Manhattanville Road #301<br>Purchase, New York 10577<br>Attention:  ~~Jonathan Harris~~<br>~~           Managing Director and Counsel~~ | 100% | - |

**_Exhibit B-2 - Executed Organizational Documents for Phoenix II Intermediate, LLC_**

EXECUTION VERSION
A&P Draft 6/8/2022

**LIMITED LIABILITY COMPANY AGREEMENT**
**OF**
**[ZOHAR II INTERMEDIATE , LLC]**

THIS LIMITED LIABILITY COMPANY AGREEMENT ("Agreement") is dated as of the [●] 13th day of [●] July, 2022, by [●], a [●] New Zohar II, LLC, a limited liability company, as the sole member (the "Member"), and shall be binding upon such other individuals and members as may be added pursuant to the terms of this Agreement.

1.    Formation Of The Company.  By execution of this Agreement, the Member ratifies and confirms the action of [●] Allison Overgaard, as an "authorized person" of the Company within the meaning of the Delaware Limited Liability Company Act, 6 Del. C. § 18-101, et seq. (the "Act"), filing a certificate of formation (the "Certificate") with the Secretary of State of the State of Delaware for the purpose of forming [●] Zohar II Intermediate, LLC (the "Company"), a limited liability company formed under the Act. Upon the filing of the Certificate [his/her] her powers as an authorized person of the Company within the meaning of the Act ceased and the Member thereupon became an "authorized person" within the meaning of the Act.

2.    Name Of The Company.  The name of the company to be stated in the Certificate and the limited liability company governed by this Agreement shall be "[●] Zohar II Intermediate, LLC."

3.    Purpose.  This Company is formed for the purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to the foregoing.

4.    Registered Office; Registered Agent.  The address of the registered office of the Company in the State of Delaware is  [●] 1209 Orange Street, Wilmington, County of New Castle, Delaware 19801. The registered agent for service of process maintained at such address is [●] The Corporation Trust Company.

5.    Capital Contributions By The Sole Member.  In consideration for its limited liability company interest in the Company, the Member has or will contribute a sum set forth in the books and records of the Company.  Except for the foregoing consideration, the Member shall not be obligated to make capital contributions to the Company and all limited liability company interests in the Company held by the Member shall be nonassessable.

6.    Capital Accounts.  During any period when the Company is treated as a disregarded entity or partnership for Federal income tax purposes, a separate capital account shall be maintained for each member and, at any time when there shall be more than one member, such capital accounts shall be maintained in accordance with the

provisions of § 704 of the Internal Revenue Code of 1986, as amended (the "Code"), and the Treasury Regulations promulgated thereunder.  If an event occurs that results in the dissolution of the Company, any distributions made to the members shall be in proportion to the then remaining positive balances in their respective capital accounts.

7.     Allocation of Profits and Losses.  During any period when the Company is treated as a disregarded entity for Federal income tax purposes, all profits and losses of the Company shall be allocated to the Member.  During any period when the Company is treated as a partnership for Federal income tax purposes, the Company's profits and losses shall be allocated among the members in proportion to the limited liability company interests in the Company held by each member and it shall be the intent of the members that each member's distributive share of income, gain, loss, deduction, or credit (or item thereof) shall be determined and allocated in accordance with this Section 7 to the fullest extent permitted by §§ 704(b) and (c) of the Code and the Treasury Regulations promulgated thereunder.

8.     Distributions.  [Except as set forth in section [ ] 6.8 of the Zohar Plan,]  distributions shall be made to the members at the times and in the aggregate amounts determined by the Member. Such distributions shall be allocated among the members in proportion to the limited liability company interests in the Company held by each member.

9.     Management Powers of the Member.  The Company shall be managed by the Member as an authorized agent of the Company.  The Member shall have the full, exclusive, and absolute right, power, and authority to manage and control the Company and the property, assets, and business thereof.  Except as otherwise provided herein to the contrary, no other person or entity shall have authority to bind the Company.  Any person dealing with the Company, other than a member, may rely upon the authority of the Member or any officer designated in writing as such by the Member in accordance with Section 10 (if any) in taking any action in the name of the Company without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action actually is taken in accordance with the provisions of this Agreement.

10. Officers; Authorized Signatories.

10.     (a)Officers; Authorized Signatories.  The Member may, from time to time, delegate to one or more persons such authority and duties as the Member may deem advisable.  In addition, the Member may assign, in writing, titles to any person, including, without limitation, the titles of President, Vice President, Secretary, Assistant Secretary, Treasurer, and Assistant Treasurer.  Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authority and duties that are normally associated with that office, subject to any specific delegation of authority and duties made pursuant to the first sentence of this Section 10.  Any number of titles may be held by the same person.  Each officer shall hold office until his successor shall be duly designated and shall

qualify or until his death, until he shall resign, or until he shall have been removed in the manner hereinafter provided.  Any number of offices may be held by the same person.  The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed by the Member.  Any delegation pursuant to this <u>Section 10</u> may be revoked at any time by the Member.  Any officer may resign as such at any time.  Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time be specified, at the time of its receipt by the Member.  The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation.  Any officer may be removed as such, either with or without cause, by the Member whenever, in his judgment, the best interests of the Company will be served thereby; provided, however, that such removal shall be without prejudice to the contract rights, if any, of the person so removed.  Designation of any officer shall not of itself create contract rights.  Any vacancy occurring in any office of the Company may be filled by the Member.

11.    <u>Exculpation; Indemnification</u>.  To the fullest extent permitted by the Act, or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification, no present or former Member of the Company or present or former officer of the Company shall be personally liable to the Company or the Member for or with respect to any acts or omissions in the performance of his or her duties as a Member or officer of the Company.  The Company shall indemnify, to the fullest extent permitted by the Act (or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification), each person who is or was or had agreed to become a Member or officer of the Company, or each such person who is or was serving or who had agreed to serve at the request of the Member or an officer of the Company as an employee or agent of the Company or as a manager, director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise (including the heirs, executors, administrators or estate of such person) (collectively, the "<u>Covered Persons</u>").  Without limiting the generality or the effect of the foregoing, the Company may enter into one or more agreements with any person or entity which provide for indemnification greater or different than that provided in this <u>Section 11</u>.  ~~To the maximum extent permitted by law, each Covered Person's duties to the Company, any Member or any other Person shall be eliminated.~~  Any repeal or modification of this <u>Section 11</u> shall not adversely affect any right or protection existing hereunder immediately prior to such repeal or modification.

12.    <u>Dissolution</u>.  The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (a) the written consent of the members, or (b) the entry of a decree of judicial dissolution under § 18-802 of the Act.

13.    <u>Transferability of Interests</u>.  Subject to applicable securities and other laws, the Member may transfer, assign or otherwise dispose of all or part of its limited liability company interest in the Company, including with respect to all economic and distribution rights and all voting or approval rights.

14.    [Reserved]

15. <u>Consents</u>.   Any action that may be taken by the members at a meeting may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed by or on behalf of the member or members holding sufficient limited liability company interests in the Company to authorize or approve such action at such meeting.

16. <u>Amendments</u>.   Except as otherwise provided in this Agreement, this Agreement may be amended only by an affirmative vote of the member or members holding a majority of the limited liability company interests in the Company.

17. <u>Governing Law</u>.   This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of Delaware.

18. <u>Counterparts</u>.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together, shall constitute one and the same Agreement.

19. <u>Tax Treatment</u>.   The Company will be classified as an association taxable as a corporation for U.S. federal income tax purposes, and neither the Company nor any Member will take any action (including the filing of any election) that would cause it to be taxable as anything other than a corporation for U.S. federal income tax purposes.

20. <u>Tax Elections</u>.   Subject to <u>Section 19</u>, the Member shall have the power to cause the Company to make all elections required or permitted to be made for income tax purposes.

21. <u>Other Business Activities</u>.   Except as provided in this Agreement, no provision of this Agreement will be construed to limit in any manner the Member in the carrying on of its own businesses or activities.

22. <u>Third Party Beneficiaries</u>.   This Agreement is made solely for the benefit of the Members and their permitted successors and assigns, and no other person or entity will have or acquire any right by virtue of this Agreement other than the Covered Persons (solely with respect to Section 11).

23. <u>Effectiveness</u>.   Pursuant to Section 18-201(d) of the Act, this Agreement shall be effective as of the filing of the Certificate on [●]July 12, 2022.

*{Signature Page Follows}*

4

A&P Draft 6/8/2022

IN WITNESS WHEREOF, the parties hereto have made this Agreement effective as of the date and year first above-written.

Member: New Zohar II, LLC


By:
[•]


Name: [•]Anthony McKiernan
Title: [•]President

***Exhibit C-2 – Amended and Restated Limited Liability Company***
***<u>Agreement for New Phoenix III, LLC to be entered into on the Effective Date</u>***

*Final Version*

### AMENDED AND RESTATED
**LIMITED LIABILITY COMPANY AGREEMENT**
**OF**
~~New Zohar~~ **NEW PHOENIX** III ~~-~~**,** LLC

THIS AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT ("Agreement") is dated as of the [●] day of [●]August, 2022, and entered into by (i) BH VID LLC (the "Withdrawing Member"), and (ii) the Holders of Zohar III A-1 Note Claims (as defined in the Plan) identified as of the Effective Date as set forth on Exhibit A attached to this Agreement, as such exhibit shall be updated from time to time in accordance with Section 14 15 of this Agreement[1] (each, a "Member" and collectively, the "Members"), and shall be binding upon such other individuals and members as may be added pursuant to the terms of this Agreement.  For purposes of this Agreement , "Plan" shall mean [●]. For purposes of this Agreement "Confirmation Order" shall mean [●].that certain *Findings of Fact, Conclusions of Law, and Order Confirming Third Amended Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and its Affiliated Debtors* entered by the United States Bankruptcy Court for the District of Delaware on June 21, 2022.  For purposes of this Agreement, "DIP/Exit Credit Agreement" means that certain *Amended and Restated Loan Agreement* by and among:  Zohar III, Limited, as the DIP Borrower; after the Effective Date, Zohar Litigation Trust-A, Zohar Litigation Trust-B, and Phoenix III Recovery, LLC, as the Successor Borrowers; the Subsidiary Guarantors; the Lenders party thereto; and Acquiom Agency Services LLC, as Administrative Agent and Collateral Agent, to be entered into on the Effective Date.  For purposes of this Agreement, "Effective Date" shall have the meaning ascribed to it in the Plan.  For purposes of this Agreement, "Plan" shall mean that certain *Third Amended Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and its Affiliated Debtors*, dated June 15, 2022 filed with the United States Bankruptcy Court for the District of Delaware (as subsequently amended and modified).

WHEREAS, the Company was formed pursuant to Section 6.6(a) of the Plan by the filing of the Certificate of Formation of the Company with the Secretary of State of the State of Delaware on July 21, 2022 (the "Certificate"), and the execution of that certain Limited Liability Company Agreement of the Company, dated July 27, 2022, executed by the Withdrawing Member, as the sole member (the "Original LLC Agreement");

WHEREAS, in connection with the transactions contemplated by the Plan, the Holders of Zohar III A-1 Note Claims are receiving 100% of the membership interests in the Company as set forth in the Plan and Confirmation Order;

---

[1] ~~The initial members shall be the holders of Zohar III A-1 Note Claims (as defined in the Plan).~~

29465155.8

*Final Version*

WHEREAS, the Members of the Company identified on Exhibit A on the date hereof (the "Initial Members") and the Withdrawing Member wish to amend and restate the Original LLC Agreement to reflect (i) the withdrawal of the Withdrawing Member as a member of the Company, (ii) the admission of the Initial Members, and (iii) the terms set forth in the Plan Supplement for the Limited Liability Company Agreement of the Company.

NOW THEREFORE, the Original LLC Agreement is hereby amended and restated in its entirety as follows:

1.    Formation Of The Company.  By execution of this Agreement, each Member ratifies and confirms the action of [●]Brian J. Lohan, as an "authorized person" of the Company within the meaning of the Delaware Limited Liability Company Act, 6 Del. C. § 18-101, et seq. (the "Act"), filing a certificate of formation (the "Certificate") with the Secretary of State of the State of Delaware for the purpose of forming [●]New Phoenix, III LLC (the "Company"), a limited liability company formed under the Act. Upon the filing of the Certificate [his/her] his powers as an authorized person of the Company within the meaning of the Act ceased and the Manager (as defined below) thereupon became an "authorized person" within the meaning of the Act.

2.    Name Of The Company.  The name of the company to be stated in the Certificate and the limited liability company governed by this Agreement shall be "[●]New Phoenix III, LLC."

3.    Purpose.  This Company is formed for the purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to the foregoing.  Notwithstanding anything to the contrary in the preceding sentence, the Company and the Manager shall discharge the obligations imposed on the Company, as an "Asset Recovery Entity" under and as defined in the Plan, and on the Manager, as an "Asset Recovery Manager" under and as defined in the Plan.

4.    Registered Office; Registered Agent.  The address of the registered office of the Company in the State of Delaware is [●]1000 North King Street, Wilmington, New Castle County, Delaware, 19801.  The registered agent for service of process maintained at such address is [●]YCS&T Services LLC.

5.    Capital Contributions By The Members.  In consideration for their limited liability company interests in the Company, each Member has or will contribute a sum set forth in the books and records of the Company.  Except for the foregoing consideration, no Member shall be obligated to make capital contributions to the Company and all limited liability company interests in the Company held by the Members shall be nonassessable.

*__Final Version__*

6.    __Distributions__.  ~~[Except as set forth in section [__] of the Zohar Plan,]~~ ~~all~~ All distributions of cash or other property in respect of a Member's membership interest (collectively, "__Distributions__") shall be made as and when determined by the ~~Member~~Manager.

7.    __Appointment and Removal of Manager__.

a.    At any time, and from time to time, one or more individuals or entities may be elected to manage the Company (the "__Manager__").  A Manager need not be a member or resident of the State of Delaware.  The Manager shall be responsible for any and all such duties as conferred upon the Manager as in this Agreement.

b.    ~~[●]²~~ John Greene shall be appointed as initial Manager of the Company.  ~~[The initial compensation of the Manager shall be as set forth on Exhibit B attached to this Agreement.]~~

c.    A Manager (whether an initial or a successor Manager) shall cease to be a Manager upon the earlier of (i) such Manager's resignation or (ii) such Manager's removal pursuant to the affirmative vote of the Members holding (whether by ownership or contract) greater than fifty percent (50%) of the voting right with respect to the limited liability company interests in the Company (the "__Vote of a Majority of the Members__").

d.    Any vacancy in the Manager position, whether occurring as a result of a Manager resigning or being removed, may be filled by appointment of a successor by (i) the Vote of a Majority of the Members or (ii) if there is no Vote of a Majority of the Members within fourteen (14) days of a vacancy, the entry of an order of the United States Bankruptcy Court for the District of Delaware obtained upon motion of any Member that provides the other Members not less than fourteen (14) days' notice.

8.    __Management Powers of the Manager__.  Except for powers specifically reserved to the members by this Agreement (if any) or by non-waivable provisions of applicable law, as provided herein, the Company shall be managed by the Manager as an authorized agent of the Company.  The Manager shall have the full, exclusive, and absolute right, power, and authority to manage and control the Company and the property, assets, and business thereof.  Subject to the restrictions specifically contained in this Agreement, the Manager may make all decisions and take all actions for the Company not otherwise provided for in this Agreement.  Any person dealing with the Company, other than a member, may rely upon the authority of the Manager or any officer designated in writing as such by the Manager in accordance with __Section 9__ (if any) in taking

---

~~² The Manager shall be the individual or entity disclosed in the Plan Supplement and approved by the Bankruptcy Court in the Confirmation Order.~~

~~29465155.~~8

any action in the name of the Company without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action actually is taken in accordance with the provisions of this Agreement.

        9.    <u>Officers</u>.  The Manager may, from time to time, delegate to one or more persons such authority and duties as the Manager may deem advisable.  In addition, the Manager may assign, in writing, titles to any person, including, without limitation, the titles of President, Vice President, Secretary, Assistant Secretary, Treasurer, and Assistant Treasurer.  Unless the Manager decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authority and duties that are normally associated with that office, subject to any specific delegation of authority and duties made pursuant to the first sentence of this <u>Section 9</u>.  Any number of titles may be held by the same person.  Each officer shall hold office until his successor shall be duly designated and shall qualify or until his death, until he shall resign, or until he shall have been removed in the manner hereinafter provided.  Any number of offices may be held by the same person.  The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed by the Manager.  Any delegation pursuant to this <u>Section 9</u> may be revoked at any time by the Manager.  Any officer may resign as such at any time.  Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time be specified, at the time of its receipt by the Manager.  The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation.  Any officer may be removed as such, either with or without cause, by the Manager whenever, in his judgment, the best interests of the Company will be served thereby; *provided*, *however*, that such removal shall be without prejudice to the contract rights, if any, of the person so removed.  Designation of any officer shall not of itself create contract rights.  Any vacancy occurring in any office of the Company (other than a Manager) may be filled by the Manager.

        10.    <u>Exculpation; Indemnification</u>.  To the fullest extent permitted by the Act, or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification, no present or former Manager of the Company, no present or former Member of the Company, or present or former officer of the Company shall be personally liable to the Company or any Member for or with respect to any acts or omissions in the performance of his or her duties as a Manager, Member or officer of the Company.  The Company shall indemnify, to the fullest extent permitted by the Act (or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification), each person who is or was or had agreed to become a Manager, Member or officer of the Company, or each such person who is or was serving or who had agreed to serve at the request of the Manager, Members or an officer of the Company as an employee or agent of the Company or as a manager, director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise (including the heirs, executors, administrators or estate of such person) (collectively, the "<u>Covered Persons</u>").  Without limiting the generality or the effect of the foregoing, the Company may

4

*Final Version*

enter into one or more agreements with any person or entity which provide for indemnification greater or different than that provided in this Section 10.  To the maximum extent permitted by law, each Covered Person's duties to the Company, any Member or any other Person shall be eliminated.  Any repeal or modification of this Section 10 shall not adversely affect any right or protection existing hereunder immediately prior to such repeal or modification. Any Manager, Member or officer of the Company shall be entitled to advancement of its reasonable expenses incurred in connection with the defense of an indemnifiable action in advance of the final disposition of such action; *provided*, that such person shall promptly repay to the Company the amount of any such advancement paid to it if it shall be determined that such person is not entitled to be indemnified by the Company in connection with such action.

       11.    Dissolution.  The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (a) the unanimous written consent of the Members, or (b) the entry of a decree of judicial dissolution under § 18-802 of the Act.

       12.    Authority of Members.  Unless authorized to do so by this Agreement or by the Manager, no member, agent, or employee of the Company shall have any power or authority to bind the Company in any way, to pledge its credit, or to render it liable pecuniarily for any purpose; *provided*, *however*, that the Manager may act by a duly authorized attorney-in-fact.

       13.    Limitations On Authority.  The authority of the Manager over the conduct of the affairs of the Company shall be subject only to such limitations as are expressly stated in this Agreement or in the Act.

       14.    Transferability of Interests.  A member may assign in whole or in part its limited liability company interest in the Company, provided that in order to be admitted as a member of the Company, the transferee of any limited liability company interest in the Company shall agree to be bound by the terms of this Agreement.  Notwithstanding the foregoing, there shall be no transfer of any limited liability company interest (i) to Lynn Tilton or any of her affiliates or (ii) if such transfer directly or indirectly would cause the termination of the Company for state law or federal or state tax purposes or violate the then applicable U.S. federal or state securities laws or rules and regulations.  The Manager may, in is reasonable discretion, require a member proposing to transfer its limited liability company interest in the Company to provide an opinion of counsel in a form reasonably acceptable to the Manager that the proposed transfer of such member's limited liability company interest in the Company shall not violate the immediately preceeding sentence.

       15.    Admission of Additional Members; Withdrawal of Withdrawing Member.

*Final Version*

    a.  The Initial Members are hereby admitted as Members of the Company with all rights and obligations as set forth herein.

    b.  a.The Manager shall update Exhibit A hereto from time to time to reflect (i) the identification of Holders of Zohar III A-1 Note Claims that are identified subsequent to the Effective Date and are entitled to receive distributions under the Plan, in accordance with the mechanisms and procedures approved in the Confirmation Order, each of whom shall be automatically admitted as a Member upon the Manager identifying such Holders of Zohar III A-1 Note Claims on Exhibit A, and (ii) the admission of new members.

    c.  b.Except as provided in Section 15(b)(i), additional members of the Company may only be admitted to the Company with the consent of the Manager.

    d.  Effective upon the execution of this Agreement and the admission of the Initial Members, the Withdrawing Member shall withdraw and shall no longer be a member of the Company.

   16. Consents.  Any action that may be taken by the members Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed by or on behalf of the member or members holding sufficient Member or Members holding (whether by ownership or contract) the voting right with respect to limited liability company interests in the Company sufficient to authorize or approve such action at such meeting.

   17. Amendments.  Except as otherwise provided in this Agreement, this Agreement may be amended only by the Vote of a Majority of the Members.

   18. Governing Law.  This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of Delaware.

   19. Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together, shall constitute one and the same Agreement.

   20. Tax Treatment.  The Company will be classified as an association taxable as a corporation for U.S. federal income tax purposes, and neither the Company nor any Member will take any action (including the filing of any election) that would cause it to be taxable as anything other than a corporation for U.S. federal income tax purposes.

   21. Tax Elections.  Subject to Section 20, the Manager shall have the power to cause the Company to make all elections required or permitted to be made for income tax purposes.

*Final Version*

22.    <u>Other Business Activities</u>.  Except as provided in this Agreement, no provision of this Agreement will be construed to limit in any manner any Member in the carrying on of its own businesses or activities.

23.    <u>Third Party Beneficiaries</u>.  This Agreement is made solely for the benefit of the Members and their permitted successors and assigns, and no other person or entity will have or acquire any right by virtue of this Agreement other than the Covered Persons (solely with respect to <u>Section 10</u>).

~~24.    Effectiveness.  Pursuant to Section 18-201(d) of the Act, this Agreement shall be effective as of the filing of the Certificate on [●].~~

*{Signature Page Follows}*

IN WITNESS WHEREOF, the parties hereto have made this Agreement effective as of the date and year first above-written.

Withdrawing Member:

BH VID LLC
By: Bardin Hill Investment Partners LP, as
     Investment Manager

By: _____
Name: John Freese
Title: Authorized Signatory


By: _____
Name: Jacob Fishelis
Title: Authorized Signatory

*[Signature Page – Amended and Restated LLC Agreement New Phoenix III, LLC]*

Initial Members:

[●]

_____

Name:[●]
Title: [●]

[●]

_____

Name: [●]
Title: [●]

ACKNOWLEDGED AND AGREE TO BE BOUND by the terms hereof:

MANAGER:

JOHN GREENE,

_____

Exhibit A[1]

| Member | Address | Original Principal Amount of Class A-1 Notes | Percentage Interest in the Company |
|---|---|---|---|
| [●] | [●] | [●] | [●] |

---

[1] To be updated in accordance with Section 15(a)(i).

\

Exhibit B

Manager Compensation

**_Exhibit D-1 - Organizational Documents for Phoenix II Recovery, LLC_**

EXECUTION VERSION
CWT DRAFT 6.1.22

**LIMITED LIABILITY COMPANY AGREEMENT[1]**
**OF**
**[●]**
**ZOHAR II RECOVERY, LLC**

THIS LIMITED LIABILITY COMPANY AGREEMENT ("Agreement") is dated as of the [●] 13th day of [●]July, 2022, by [●], a [●]Zohar II Intermediate, LLC, a limited liability company, as the sole member (the "Member"), and shall be binding upon such other individuals and members as may be added pursuant to the terms of this Agreement.

1.    Formation Of The Company.  By execution of this Agreement, the Member ratifies and confirms the action of [●]Allison Overgaard, as an "authorized person" of the Company within the meaning of the Delaware Limited Liability Company Act, 6 Del. C. § 18-101, et seq. (the "Act"), filing a certificate of formation (the "Certificate") with the Secretary of State of the State of Delaware for the purpose of forming [●] Zohar II Recovery, LLC (the "Company"), a limited liability company formed under the Act. Upon the filing of the Certificate [his/her] her powers as an authorized person of the Company within the meaning of the Act ceased and the Member thereupon became an "authorized person" within the meaning of the Act.

2.    Name Of The Company.  The name of the company to be stated in the Certificate and the limited liability company governed by this Agreement shall be "[●]."Zohar II Recovery, LLC".

3.    Purpose.  This Company is formed for the purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to the foregoing.

4.    Registered Office; Registered Agent.  The address of the registered office of the Company in the State of Delaware is [●]1209 Orange Street, Wilmington, County of New Castle, Delaware 19801.  The registered agent for service of process maintained at such address is [●]The Corporation Trust Company.

5.    Capital Contributions By The Sole Member.  In consideration for its limited liability company interest in the Company, the Member has or will contribute a sum set forth in the books and records of the Company.  Except for the foregoing consideration, the Member shall not be obligated to make capital contributions to the Company and all limited liability company interests in the Company held by the Member shall be nonassessable.

---

[1]    This LLC Agreement is intended to be used by (i) *Zohar II Recovery LLC.*

6.      Capital Accounts.  During any period when the Company is treated as a disregarded entity or partnership for Federal income tax purposes, a separate capital account shall be maintained for each member and, at any time when there shall be more than one member, such capital accounts shall be maintained in accordance with the provisions of § 704 of the Internal Revenue Code of 1986, as amended (the "Code"), and the Treasury Regulations promulgated thereunder.  If an event occurs that results in the dissolution of the Company, any distributions made to the members shall be in proportion to the then remaining positive balances in their respective capital accounts.

7.      Allocation of Profits and Losses.  During any period when the Company is treated as a disregarded entity for Federal income tax purposes, all profits and losses of the Company shall be allocated to the Member.  During any period when the Company is treated as a partnership for Federal income tax purposes, the Company's profits and losses shall be allocated among the members in proportion to the limited liability company interests in the Company held by each member and it shall be the intent of the members that each member's distributive share of income, gain, loss, deduction, or credit (or item thereof) shall be determined and allocated in accordance with this Section 7 to the fullest extent permitted by §§ 704(b) and (c) of the Code and the Treasury Regulations promulgated thereunder.

8.      Distributions.  [Except as set forth in section [ ] 6.8 of the Zohar Plan,]  distributions shall be made to the members at the times and in the aggregate amounts determined by the Member[;; provided, however, that such Distributions shall only be made if a reserve in the amount of $250,000 (or such lesser amount agreed to by U.S. Bank, N.A.) is maintained to secure the payment of the Zohar II Indenture Trustee Claims in accordance with Section 6.15 of the Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and its Affiliated Debtors, dated January 31, 2022] (the "Zohar Plan")[2]. Such distributions shall be allocated among the members in proportion to the limited liability company interests in the Company held by each member.

9.      Management Powers of the Member.  The Company shall be managed by the Member as an authorized agent of the Company.  The Member shall have the full, exclusive, and absolute right, power, and authority to manage and control the Company and the property, assets, and business thereof.  Except as otherwise provided herein to the contrary, including the rights and duties of the Asset Recovery Manager set forth in Section 10(b) hereof, no other person or entity shall have authority to bind the Company.  Any person dealing with the Company, other than a member, may rely upon the authority of the Member or any officer designated in writing as such by the Member in accordance with Section 10 (if any) in taking any action in the name of the Company without inquiry into the provisions of this Agreement or compliance herewith,

---

[2]      Bracketed language to be used in the Limited Liability Company Agreement of *Zohar II Recovery LLC* only.

2

regardless of whether that action actually is taken in accordance with the provisions of this Agreement.

          10.    <u>Officers; Authorized Signatories</u>.

          (a)    The Member may, from time to time, delegate to one or more persons such authority and duties as the Member may deem advisable, including the rights and duties of the Asset Recovery Manager as set forth in Section 10(b) hereof.  In addition, the Member may assign, in writing, titles to any person, including, without limitation, the titles of President, Vice President, Secretary, Assistant Secretary, Treasurer, and Assistant Treasurer.  Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authority and duties that are normally associated with that office, subject to any specific delegation of authority and duties made pursuant to the first sentence of this <u>Section 10</u>.  Any number of titles may be held by the same person.  Each officer shall hold office until his successor shall be duly designated and shall qualify or until his death, until he shall resign, or until he shall have been removed in the manner hereinafter provided.  Any number of offices may be held by the same person.  The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed by the Member.  Any delegation pursuant to this <u>Section 10</u> may be revoked at any time by the Member.  Any officer may resign as such at any time.  Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time be specified, at the time of its receipt by the Member.  The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation.  Any officer, including the Asset Recovery Manager (as hereinafter defined), may be removed as such, either with or without cause, by the Member whenever, in his judgment, the best interests of the Company will be served thereby; provided, however, that such removal shall be without prejudice to the contract rights, if any, of the person so removed.  Designation of any officer shall not of itself create contract rights.  Any vacancy occurring in any office of the Company may be filled by the Member.

          (b)[●] David Dunn shall be appointed as the Asset Recovery Manager for the Company, as such term is defined in the Zohar Plan (the "<u>Asset Recovery Manager</u>").  The Asset Recovery Manager shall have the duty and obligation to manage the assets, other than any of the following, held by the Company and its subsidiaries:  (i) Litigation Assets, (ii) interests in the Litigation Trust, and (iii) any interests in MDHI Holdco (each as defined in the Zohar Plan), for purposes of maximizing their value for the benefit of the Member.  For the purposes of fulfilling such duty, the Asset Recovery Manager shall be an authorized agent of the Company.  [The Asset Recovery Manager shall regularly consult with and report to the Member on the management and status of the

Company's assets, and the consent of the Member shall be required for the disposition or monetization of any asset having an estimated or appraised value of more than $[●].]  1,000,000.   The Asset Recovery Manager shall constitute the "Asset Recovery Manager" as defined in the Zohar Plan, as confirmed by the Bankruptcy Court by order dated [——]June 21, 2022, Docket No. [——]3400, and shall have the duties thereof as set forth in the Zohar Plan. Any , together with such other or additional duties or obligations of the Asset Recovery Manager and the compensation for the Asset Recovery Manager shall be set forth in Schedule 1 heretoas may be established by the Member. Except for such matters specifically set forth herein as duties of the Asset Recovery Manager, the Company shall otherwise be managed by the Member.

11.    Exculpation; Indemnification.  To the fullest extent permitted by the Act, or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification, no present or former Member of the Company or present or former officer of the Company shall be personally liable to the Company or the Member for or with respect to any acts or omissions in the performance of his or her duties as a Member or officer of the Company.  The Company shall indemnify, to the fullest extent permitted by the Act (or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification), each person who is or was or had agreed to become a Member or officer of the Company, or each such person who is or was serving or who had agreed to serve at the request of the Member or an officer of the Company as an employee or agent of the Company or as a manager, director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise (including the heirs, executors, administrators or estate of such person) (collectively, the "Covered Persons")  Without limiting the generality or the effect of the foregoing, the Company may enter into one or more agreements with any person or entity which provide for indemnification greater or different than that provided in this Section 11.  Any repeal or modification of this Section 11 shall not adversely affect any right or protection existing hereunder immediately prior to such repeal or modification.

12.    Dissolution.  The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (a) the written consent of the members, or (b) the entry of a decree of judicial dissolution under § 18-802 of the Act.

13.    Transferability of Interests.  Subject to applicable securities and other laws, the Member may transfer, assign or otherwise dispose of all or part of its limited liability company interest in the Company, including with respect to all economic and distribution rights and all voting or approval rights.

14.    [Reserved]

15.    Consents.  Any action that may be taken by the members at a meeting may be taken without a meeting if a consent in writing, setting forth the action so

taken, is signed by or on behalf of the member or members holding sufficient limited liability company interests in the Company to authorize or approve such action at such meeting.

16. _Amendments_.  Except as otherwise provided in this Agreement, this Agreement may be amended only by an affirmative vote of the member or members holding a majority of the limited liability company interests in the Company.

17. _Governing Law_.  This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of Delaware.

18. _Counterparts_.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together, shall constitute one and the same Agreement.

19. _Tax Treatment_.  The Company will be classified as an association taxable as a corporation for U.S. federal income tax purposes, and neither the Company nor any Member will take any action (including the filing of any election) that would cause it to be taxable as anything other than a corporation for U.S. federal income tax purposes.

20. _Tax Elections_.  Subject to _Section 19_, the Member shall have the power to cause the Company to make all elections required or permitted to be made for income tax purposes.

21. _Other Business Activities_.  Except as provided in this Agreement, no provision of this Agreement will be construed to limit in any manner the Member in the carrying on of its own businesses or activities.

22. _Third Party Beneficiaries_.  This Agreement is made solely for the benefit of the Members and their permitted successors and assigns, and no other person or entity will have or acquire any right by virtue of this Agreement other than the Covered Persons (solely with respect to Section 11).

23. _Effectiveness_.  Pursuant to Section 18-201(d) of the Act, this Agreement shall be effective as of the filing of the Certificate on [●]July 12, 2022.

*{Signature Page Follows}*

5

CWT DRAFT 6.1.22

IN WITNESS WHEREOF, the parties hereto have made this Agreement effective as of the date and year first above-written.

Member: Zohar II Intermediate, LLC


By: _____
[•]

_____

Name: [•]Anthony McKiernan
Title: [•]President




ACKNOWLEDGED AND AGREED:


[•]

_____
Name:
Title:  Asset Recovery Manager

CWT DRAFT 6.1.22

SCHEDULE 1

[TBA]

USActive 57885390.7

*__Exhibit D-2 – Organizational Documents for Phoenix III Recovery, LLC__*

A&P Draft 6/8/2022
*Execution Version*

## LIMITED LIABILITY COMPANY AGREEMENT[1]
## OF
## [PHOENIX III RECOVERY, LLC]

THIS LIMITED LIABILITY COMPANY AGREEMENT ("Agreement") is dated as of the [●] 29th day of [●]July, 2022, by [●], a [●]Phoenix III Intermediate, LLC, a Delaware limited liability company, as the sole member (the "Member"), and shall be binding upon such other individuals and members as may be added pursuant to the terms of this Agreement.  For purposes of this Agreement "Confirmation Order" shall mean that certain *Findings of Fact, Conclusions of Law, and Order Confirming Third Amended Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and its Affiliated Debtors* entered by the United States Bankruptcy Court for the District of Delaware on June 21, 2022.  For purposes of this Agreement, "DIP/Exit Credit Agreement" means that certain *Amended and Restated Loan Agreement* by and among:  Zohar III, Limited, as the DIP Borrower; after the Effective Date, Zohar Litigation Trust-A, Zohar Litigation Trust-B, and Phoenix III Recovery, LLC, as the Successor Borrowers; the Subsidiary Guarantors; the Lenders party thereto; and Acquiom Agency Services LLC, as Administrative Agent and Collateral Agent, to be entered into on the Effective Date.  For purposes of this Agreement, "Effective Date" shall have the meaning ascribed to it in the Plan.  For purposes of this Agreement, "Plan" shall mean that certain *Third Amended Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and its Affiliated Debtors,* dated June 15, 2022 filed with the United States Bankruptcy Court for the District of Delaware (as subsequently amended and modified).

1.     Formation Of The Company.  By execution of this Agreement, the Member ratifies and confirms the action of [●]Brian J. Lohan, as an "authorized person" of the Company within the meaning of the Delaware Limited Liability Company Act, 6 Del. C. § 18-101, et seq. (the "Act"), filing a certificate of formation (the "Certificate") with the Secretary of State of the State of Delaware for the purpose of forming [●] Phoenix III Recovery, LLC (the "Company"), a limited liability company formed under the Act.  Upon the filing of the Certificate [his/her] his powers as an authorized person of the Company within the meaning of the Act ceased and the Member thereupon became an "authorized person" within the meaning of the Act.

2.     Name Of The Company.  The name of the company to be stated in the Certificate and the limited liability company governed by this Agreement shall be "[●]Phoenix III Recovery, LLC."

3.     Purpose.  This Company is formed for the purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any

---

[1]     This LLC Agreement is intended to be used by (i) *Zohar III Recovery LLC.*

29465167.1

A&P Draft 6/8/2022

lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to the foregoing.

4.    Registered Office; Registered Agent.  The address of the registered office of the ~~Company~~ limited liability company in the State of Delaware is [●]1000 North King Street, Wilmington, New Castle County, Delaware, 19801.  The registered agent for service of process maintained at such address is [●]YCS&T Services LLC.

5.    Capital Contributions By The Sole Member.  In consideration for its limited liability company interest in the Company, the Member has or will contribute a sum set forth in the books and records of the Company.  Except for the foregoing consideration, the Member shall not be obligated to make capital contributions to the Company and all limited liability company interests in the Company held by the Member shall be nonassessable.

6.    Capital Accounts.  During any period when the Company is treated as a disregarded entity or partnership for Federal income tax purposes, a separate capital account shall be maintained for each member and, at any time when there shall be more than one member, such capital accounts shall be maintained in accordance with the provisions of § 704 of the Internal Revenue Code of 1986, as amended (the "Code"), and the Treasury Regulations promulgated thereunder.  If an event occurs that results in the dissolution of the Company, any distributions made to the members shall be in proportion to the then remaining positive balances in their respective capital accounts.

7.    Allocation of Profits and Losses.  During any period when the Company is treated as a disregarded entity for Federal income tax purposes, all profits and losses of the Company shall be allocated to the Member.  During any period when the Company is treated as a partnership for Federal income tax purposes, the Company's profits and losses shall be allocated among the members in proportion to the limited liability company interests in the Company held by each member and it shall be the intent of the members that each member's distributive share of income, gain, loss, deduction, or credit (or item thereof) shall be determined and allocated in accordance with this Section 7 to the fullest extent permitted by §§ 704(b) and (c) of the Code and the Treasury Regulations promulgated thereunder.

8.    Distributions.  [Except as set forth in section [_] of the Zohar Plan,] ~~distributions~~ Distributions shall be made to the members at the times and in the aggregate amounts determined by the Member[;: provided, however, that such Distributions shall only be made if (i) (A) the ~~DIP Roll-over~~ Exit Facility ~~is repaid or the Lender~~ Loans (as defined in the DIP ~~Roll-over Facility~~/Exit Credit Agreement) are repaid or (B) the Administrative Agent (as defined in the DIP/Exit Credit Agreement) consents to such distribution and (ii) a reserve in the amount of $250,000 (or such lesser amount agreed to by U.S. Bank, N.A.) is maintained to secure the payment of the Zohar ~~II~~ III Indenture Trustee Claims in accordance with Section 6.15 of the ~~Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and its Affiliated Debtors,~~

2

A&P Draft 6/8/2022

dated January 31, 2022]Plan[2].  Such distributions shall be allocated among the members in proportion to the limited liability company interests in the Company held by each member.

9.    Management Powers of the Member.   The Company shall be managed by the Member as an authorized agent of the Company.   The Member shall have the full, exclusive, and absolute right, power, and authority to manage and control the Company and the property, assets, and business thereof.   Except as otherwise provided herein to the contrary, including the rights and duties of the Asset Recovery Manager set forth in Section 10(b) hereof, no other person or entity shall have authority to bind the Company.   Any person dealing with the Company, other than a member, may rely upon the authority of the Member or any officer designated in writing as such by the Member in accordance with Section 10 (if any) in taking any action in the name of the Company without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action actually is taken in accordance with the provisions of this Agreement.

10.    Officers; Authorized Signatories.

(a)    The Member may, from time to time, delegate to one or more persons such authority and duties as the Member may deem advisable, including the rights and duties of the Asset Recovery Manager as set forth in Section 10(b) hereof.   In addition, the Member may assign, in writing, titles to any person, including, without limitation, the titles of President, Vice President, Secretary, Assistant Secretary, Treasurer, and Assistant Treasurer.   Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authority and duties that are normally associated with that office, subject to any specific delegation of authority and duties made pursuant to the first sentence of this Section 10.   Any number of titles may be held by the same person.   Each officer shall hold office until his successor shall be duly designated and shall qualify or until his death, until he shall resign, or until he shall have been removed in the manner hereinafter provided.   Any number of offices may be held by the same person.   The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed by the Member.   Any delegation pursuant to this Section 10 may be revoked at any time by the Member.   Any officer may resign as such at any time.   Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time be specified, at the time of its receipt by the Member.   The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation.   Any officer, including the Asset Recovery Manager (as hereinafter defined), may be removed as such, either with or without cause, by the Member whenever, in his judgment,

---

[2]    Bracketed language to be used in the Limited Liability Company Agreement of *Zohar III Recovery LLC* only.

3

29465167.1

the best interests of the Company will be served thereby; provided, however, that such removal shall be without prejudice to the contract rights, if any, of the person so removed. Designation of any officer shall not of itself create contract rights. Any vacancy occurring in any office of the Company may be filled by the Member.

(b)      [●] From and after the Effective Date, David Dunn shall be appointed as the Asset Recovery Manager for the Company, as such term is defined in the Zohar Plan (the "Asset Recovery Manager"). The Asset Recovery Manager shall have the duty and obligation to manage the assets, other than any of the following held by the Company: (i) Litigation Assets (as defined in the Plan), (ii) interests in the Litigation Trust, Trusts (as defined in the Plan), and (iii) any interests in New Stila Holdco LLC, and (iii) any interests in MDHI Holdco (each as defined in the Zohar Plan), for purposes of maximizing their value for the benefit of the Member. For the purposes of fulfilling such duty, the Asset Recovery Manager shall be an authorized agent of the Company. [The Asset Recovery Manager shall regularly consult with and report to the Member on the management and status of the Company's assets, and the consent of the Member shall be required for the disposition or monetization of any asset having an estimated or appraised value of more than $[●].] 1,000,000. The Asset Recovery Manager shall constitute the "Asset Recovery Manager" as defined in the Zohar Plan, as confirmed by the Bankruptcy Court by order dated [___], Docket No. [___] Confirmation Order, and shall have the duties thereof as set forth in the Zohar Plan. Any additional duties or obligations of the Asset Recovery Manager and the compensation for the Asset Recovery Manager shall be set forth in Schedule 1 hereto; provided however, that the Member may also modify the delegation of authority and/or duties to the Asset Recovery Manager as the Member may deem advisable through one or more written consents. Except for such matters specifically set forth herein as duties of the Asset Recovery Manager, the Company shall otherwise be managed by the Member.

11.    Exculpation; Indemnification. To the fullest extent permitted by the Act, or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification, no present or former Member of the Company or present or former officer of the Company shall be personally liable to the Company or the Member for or with respect to any acts or omissions in the performance of his or her duties as a Member or officer of the Company. The Company shall indemnify, to the fullest extent permitted by the Act (or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification), each person who is or was or had agreed to become a Member or officer of the Company, or each such person who is or was serving or who had agreed to serve at the request of the Member or an officer of the Company as an employee or agent of the Company or as a manager, director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise (including the heirs, executors, administrators or estate of such person) (collectively, the "Covered Persons"). Without limiting the generality or the effect of the foregoing, the Company may enter into one or more agreements with any

4

person or entity which provide for indemnification greater or different than that provided in this Section 11.  To the maximum extent permitted by law, Member's duties to the Company, any Member or any other Person shall be eliminated.  Any repeal or modification of this Section 11 shall not adversely affect any right or protection existing hereunder immediately prior to such repeal or modification.  Any Manager, Member or officer of the Company shall be entitled to advancement of its reasonable expenses incurred in connection with the defense of an indemnifiable action in advance of the final disposition of such action; *provided*, that such person shall promptly repay to the Company the amount of any such advancement paid to it if it shall be determined that such person is not entitled to be indemnified by the Company in connection with such action.

12.    Dissolution.  The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (a) the written consent of the members, or (b) the entry of a decree of judicial dissolution under § 18-802 of the Act.

13.    Transferability of Interests.  Subject to applicable securities and other laws, the Member may transfer, assign or otherwise dispose of all or part of its limited liability company interest in the Company, including with respect to all economic and distribution rights and all voting or approval rights.

14.    [Reserved]

15.    Consents.  Any action that may be taken by the members at a meeting may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed by or on behalf of the member or members holding sufficient limited liability company interests in the Company to authorize or approve such action at such meeting.

16.    Amendments.  Except as otherwise provided in this Agreement, this Agreement may be amended only by an affirmative vote of the member or members holding a majority of the limited liability company interests in the Company.

17.    Governing Law.  This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of Delaware.

18.    Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together, shall constitute one and the same Agreement.

19.    Tax Treatment.  The Company will be classified as an association taxable as a corporation for U.S. federal income tax purposes, and neither the Company nor any Member will take any action (including the filing of any election) that would cause it to be taxable as anything other than a corporation for U.S. federal income tax purposes.

A&P Draft 6/8/2022

20.     Tax Elections.  Subject to Section 19, the Member shall have the power to cause the Company to make all elections required or permitted to be made for income tax purposes.

21.     Other Business Activities.  Except as provided in this Agreement, no provision of this Agreement will be construed to limit in any manner the Member in the carrying on of its own businesses or activities.

22.     Third Party Beneficiaries.  This Agreement is made solely for the benefit of the Members and their permitted successors and assigns, and no other person or entity will have or acquire any right by virtue of this Agreement other than the Covered Persons (solely with respect to Section 11).

23.     Effectiveness.  Pursuant to Section 18-201(d) of the Act, this Agreement shall be effective as of the filing of the Certificate on [●]July 21, 2022.

*{Signature Page Follows}*

29465167.1

A&P Draft 6/8/2022

IN WITNESS WHEREOF, the parties hereto have made this Agreement effective as of the date and year first above-written.

Member:



_____

PHOENIX III INTERMEDIATE, LLC

BY: New Phoenix III, LLC, its sole Member

By: BH VID LLC, its sole Member

By: Bardin Hill Investment Partners LP, as Investment Manager

By: _____
Name: [●]John Freese
Title: [●]Authorized Signatory

By: _____
Name: Jacob Fishelis
Title: Authorized Signatory

ACKNOWLEDGED AND AGREE TO BE BOUND by the terms hereof:

[ASSET RECOVERY MANAGER]

_____

Name: [●]
Title: [●]

DAVID DUNN

*[Signature Page – LLC Agreement for Phoenix III Recovery, LLC]*

A&P Draft 6/8/2022

*[Signature Page – LLC Agreement for Phoenix III Recovery, LLC]*

*A&P Draft 6/8/2022*

Schedule 1 – Additional duties or obligations of Asset Recovery Manager

- *The Asset Recovery Manger shall have the authority to execute all documents, on behalf of Company, required to be executed in connection with the Exit Facility Loans.*

- *The Asset Recovery Manager shall have the authority to issue borrowing requests, on behalf of Company, under and in accordance with the Exit Facility Loans.*

- *The Asset Recovery Manager shall have the authority to take all actions on behalf of the Company as Administrative Borrower under the Exit Facility Loans, including but not limited to preparing budgets, making payments required in connection with the Exit Facility Loans, complying with reporting requirements, creating reserves in accordance with the documents memorializing the Exit Facility Loans, and receiving notices and otherwise communicating with the Lenders, Agents, and Loan Parties.*

***<u>Exhibit D-4 – Organizational Documents for Phoenix III Intermediate, LLC</u>***

## LIMITED LIABILITY COMPANY AGREEMENT
## OF
## [PHOENIX III INTERMEDIATE , LLC]

THIS LIMITED LIABILITY COMPANY AGREEMENT ("Agreement") is dated as of the [•] 29th day of [•]July, 2022, by [•], a [•]New Phoenix III, LLC, a Delaware limited liability company, as the sole member (the "Member"), and shall be binding upon such other individuals and members as may be added pursuant to the terms of this Agreement.

1.      Formation Of The Company.  By execution of this Agreement, the Member ratifies and confirms the action of [•]Brian J. Lohan, as an "authorized person" of the Company within the meaning of the Delaware Limited Liability Company Act, 6 Del. C. § 18-101, et seq. (the "Act"), filing a certificate of formation (the "Certificate") with the Secretary of State of the State of Delaware for the purpose of forming [•] Phoenix III Intermediate, LLC (the "Company"), a limited liability company formed under the Act. Upon the filing of the Certificate [his/her] his powers as an authorized person of the Company within the meaning of the Act ceased and the Member thereupon became an "authorized person" within the meaning of the Act.

2.      Name Of The Company.  The name of the company to be stated in the Certificate and the limited liability company governed by this Agreement shall be "[•]Phoenix III Intermediate, LLC."

3.      Purpose.  This Company is formed for the purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to the foregoing.

4.      Registered Office; Registered Agent.  The address of the registered office of the Company limited liability company in the State of Delaware is [•]1000 North King Street, Wilmington, New Castle County, Delaware, 19801.  The registered agent for service of process maintained at such address is [•]YCS&T Services LLC.

5.      Capital Contributions By The Sole Member.  In consideration for its limited liability company interest in the Company, the Member has or will contribute a sum set forth in the books and records of the Company.  Except for the foregoing consideration, the Member shall not be obligated to make capital contributions to the Company and all limited liability company interests in the Company held by the Member shall be nonassessable.

6.      Capital Accounts.  During any period when the Company is treated as a disregarded entity or partnership for Federal income tax purposes, a separate capital account shall be maintained for each member and, at any time when there shall be more than one member, such capital accounts shall be maintained in accordance with the provisions of § 704 of the Internal Revenue Code of 1986, as amended (the "Code"), and the Treasury Regulations promulgated thereunder.  If an event occurs that results in the

dissolution of the Company, any distributions made to the members shall be in proportion to the then remaining positive balances in their respective capital accounts.

7.    Allocation of Profits and Losses.  During any period when the Company is treated as a disregarded entity for Federal income tax purposes, all profits and losses of the Company shall be allocated to the Member.  During any period when the Company is treated as a partnership for Federal income tax purposes, the Company's profits and losses shall be allocated among the members in proportion to the limited liability company interests in the Company held by each member and it shall be the intent of the members that each member's distributive share of income, gain, loss, deduction, or credit (or item thereof) shall be determined and allocated in accordance with this Section 7 to the fullest extent permitted by §§ 704(b) and (c) of the Code and the Treasury Regulations promulgated thereunder.

8.    Distributions.  [Except as set forth in section [_] of the Zohar Plan,] distributions Distributions shall be made to the members at the times and in the aggregate amounts determined by the Member.  Such distributions shall be allocated among the members in proportion to the limited liability company interests in the Company held by each member.

9.    Management Powers of the Member.  The Company shall be managed by the Member as an authorized agent of the Company.  The Member shall have the full, exclusive, and absolute right, power, and authority to manage and control the Company and the property, assets, and business thereof.  Except as otherwise provided herein to the contrary, no other person or entity shall have authority to bind the Company.  Any person dealing with the Company, other than a member, may rely upon the authority of the Member or any officer designated in writing as such by the Member in accordance with Section 10 (if any) in taking any action in the name of the Company without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action actually is taken in accordance with the provisions of this Agreement.

10. Officers; Authorized Signatories.

10.    (a)Officers; Authorized Signatories.  The Member may, from time to time, delegate to one or more persons such authority and duties as the Member may deem advisable.  In addition, the Member may assign, in writing, titles to any person, including, without limitation, the titles of President, Vice President, Secretary, Assistant Secretary, Treasurer, and Assistant Treasurer.  Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authority and duties that are normally associated with that office, subject to any specific delegation of authority and duties made pursuant to the first sentence of this Section 10.  Any number of titles may be held by the same person.  Each officer shall hold office until his successor shall be duly designated and shall qualify or until his death, until he shall resign, or until he shall have been removed in the

2

A&P Draft 6/8/2022

manner hereinafter provided.  Any number of offices may be held by the same person. The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed by the Member.  Any delegation pursuant to this <u>Section 10</u> may be revoked at any time by the Member.  Any officer may resign as such at any time.  Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time be specified, at the time of its receipt by the Member.  The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation.  Any officer, may be removed as such, either with or without cause, by the Member whenever, in his judgment, the best interests of the Company will be served thereby; provided, however, that such removal shall be without prejudice to the contract rights, if any, of the person so removed.  Designation of any officer shall not of itself create contract rights.  Any vacancy occurring in any office of the Company may be filled by the Member.

11.    <u>Exculpation; Indemnification</u>.  To the fullest extent permitted by the Act, or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification, no present or former Member of the Company or present or former officer of the Company shall be personally liable to the Company or the Member for or with respect to any acts or omissions in the performance of his or her duties as a Member or officer of the Company.  The Company shall indemnify, to the fullest extent permitted by the Act (or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification), each person who is or was or had agreed to become a Member or officer of the Company, or each such person who is or was serving or who had agreed to serve at the request of the Member or an officer of the Company as an employee or agent of the Company or as a manager, director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise (including the heirs, executors, administrators or estate of such person) (collectively, the "<u>Covered Persons</u>").  Without limiting the generality or the effect of the foregoing, the Company may enter into one or more agreements with any person or entity which provide for indemnification greater or different than that provided in this <u>Section 11</u>.  To the maximum extent permitted by law, each Covered Person's duties to the Company, any Member or any other Person shall be eliminated.  Any repeal or modification of this <u>Section 11</u> shall not adversely affect any right or protection existing hereunder immediately prior to such repeal or modification.  <u>Any Manager, Member or officer of the Company shall be entitled to advancement of its reasonable expenses incurred in connection with the defense of an indemnifiable action in advance of the final disposition of such action; *provided*, that such person shall promptly repay to the Company the amount of any such advancement paid to it if it shall be determined that such person is not entitled to be indemnified by the Company in connection with such action.</u>

12.    <u>Dissolution</u>.  The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (a) the written consent of the members, or (b) the entry of a decree of judicial dissolution under § 18-802 of the Act.

29465175.2

A&P Draft 6/8/2022

13.    Transferability of Interests.  Subject to applicable securities and other laws, the Member may transfer, assign or otherwise dispose of all or part of its limited liability company interest in the Company, including with respect to all economic and distribution rights and all voting or approval rights.

14.    [Reserved]

15.    Consents.  Any action that may be taken by the members at a meeting may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed by or on behalf of the member or members holding sufficient limited liability company interests in the Company to authorize or approve such action at such meeting.

16.    Amendments.  Except as otherwise provided in this Agreement, this Agreement may be amended only by an affirmative vote of the member or members holding a majority of the limited liability company interests in the Company.

17.    Governing Law.  This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of Delaware.

18.    Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together, shall constitute one and the same Agreement.

19.    Tax Treatment.  The Company will be classified as an association taxable as a corporation for U.S. federal income tax purposes, and neither the Company nor any Member will take any action (including the filing of any election) that would cause it to be taxable as anything other than a corporation for U.S. federal income tax purposes.

20.    Tax Elections.  Subject to Section 19, the Member shall have the power to cause the Company to make all elections required or permitted to be made for income tax purposes.

21.    Other Business Activities.  Except as provided in this Agreement, no provision of this Agreement will be construed to limit in any manner the Member in the carrying on of its own businesses or activities.

22.    Third Party Beneficiaries.  This Agreement is made solely for the benefit of the Members and their permitted successors and assigns, and no other person or entity will have or acquire any right by virtue of this Agreement other than the Covered Persons (solely with respect to Section 11).

23.    Effectiveness.  Pursuant to Section 18-201(d) of the Act, this Agreement shall be effective as of the filing of the Certificate on [●]July 21, 2022.

A&P Draft 6/8/2022

*{Signature Page Follows}*

29465175.2

A&P Draft 6/8/2022

IN WITNESS WHEREOF, the parties hereto have made this Agreement effective as of the date and year first above-written.

Member:

[●]

NEW PHOENIX III, LLC

By: BH VID LLC, its sole Member

By: Bardin Hill Investment Partners LP, as Investment Manager

By: _____
Name: [●]John Freese
Title: [●]Authorized Signatory

By: _____
Name: Jacob Fishelis
Title: Authorized Signatory

**_Exhibit K – Organizational Documents for New Stila Holdco LLC_**

*Execution Version*

## LIMITED LIABILITY COMPANY AGREEMENT
### OF
### [~~NEW STILA HOLDCO LLC~~]

THIS LIMITED LIABILITY COMPANY AGREEMENT ("<u>Agreement</u>") is dated as of the [~~●~~] 29th day of [~~●~~]July, 2022, and entered into by ~~Zohar~~ Phoenix III Recovery~~,~~ LLC[~~]~~ (the "<u>Member</u>"), and shall be binding upon such other individuals and members as may be added pursuant to the terms of this Agreement.  For purposes of this Agreement ~~, "Plan" shall mean [●]. For purposes of this Agreement~~"<u>Confirmation Order</u>" shall mean [~~●~~]that certain *Findings of Fact, Conclusions of Law, and Order Confirming Third Amended Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and its Affiliated Debtors* entered by the United States Bankruptcy Court for the District of Delaware on June 21, 2022.  For purposes of this Agreement, "DIP/Exit Credit Agreement" means that certain *Amended and Restated Loan Agreement* by and among:  Zohar III, Limited, as the DIP Borrower; after the Effective Date, Zohar Litigation Trust-A, Zohar Litigation Trust-B, and Phoenix III Recovery, LLC, as the Successor Borrowers; the Subsidiary Guarantors; the Lenders party thereto; and Acquiom Agency Services LLC, as Administrative Agent and Collateral Agent, to be entered into on the Effective Date.  For purposes of this Agreement, "Effective Date" shall have the meaning ascribed to it in the Plan.  For purposes of this Agreement, "Plan" shall mean that certain *Third Amended Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and its Affiliated Debtors*, dated June 15, 2022 filed with the United States Bankruptcy Court for the District of Delaware (as subsequently amended and modified).

      1.    <u>Formation Of The Company</u>.  By execution of this Agreement, the Member ratifies and confirms the action of [~~●~~]Brian J. Lohan, as an "authorized person" of the Company within the meaning of the Delaware Limited Liability Company Act, 6 <u>Del</u>. <u>C</u>. § 18-101, *et seq*. (the "<u>Act</u>"), filing a certificate of formation (the "<u>Certificate</u>") with the Secretary of the State of Delaware for the purpose of forming[ New Stila Holdco LLC[~~]~~ (the "<u>Company</u>"), a limited liability company formed under the Act. Upon the filing of the Certificate [~~his/her~~]his/ powers as an authorized person of the Company within the meaning of the Act ceased and the Manager (as defined below) thereupon became an "authorized person" within the meaning of the Act.

      2.    <u>Name Of The Company</u>.  The name of the company to be stated in the Certificate and the limited liability company governed by this Agreement shall be "[New Stila Holdco LLC[~~]~~."

      3.    <u>Purpose</u>.  This Company is formed for the purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to the foregoing.  Notwithstanding anything to the contrary in the preceding sentence, the Company and the Manager shall discharge the obligations imposed on the Company, as an "Asset Recovery Entity" under

and as defined in the Plan, and on the Manager, as an "Asset Recovery Manager" under and as defined in the Plan.

4.    <u>Registered Office; Registered Agent</u>.  The address of the registered office of the ~~Company~~ limited liability company in the State of Delaware is [●]1000 North King Street, Wilmington, New Castle County, Delaware, 19801.  The registered agent for service of process maintained at such address is [●]YCS&T Services LLC.

5.    <u>Capital Contributions By The Members</u>.  In consideration for their limited liability company interests in the Company, each Member has or will contribute a sum set forth in the books and records of the Company.  Except for the foregoing consideration, no Member shall be obligated to make capital contributions to the Company and all limited liability company interests in the Company held by the Members shall be nonassessable.

6.    <u>Distributions</u>.  To the extent the Company may lawfully do so, it is intended that the Company shall make pro rata distributions of its assets to the Members as determined by the Manager as expeditiously as possible.

7.    <u>Appointment and Removal of Manager</u>.

a.    At any time, and from time to time, one or more individuals or entities may be elected to manage the Company (the "<u>Manager</u>").  A Manager need not be a ~~member~~ Member or resident of the State of Delaware.  The Manager shall be responsible for any and all such duties as conferred upon the Manager as in this Agreement.

b.    [●]¹ Phoenix III Recovery, LLC shall be appointed as initial Manager of the Company.  ~~The initial compensation of the Manager shall be as set forth on Exhibit B attached to this Agreement.~~

c.    A Manager (whether an initial or a successor Manager) shall cease to be a Manager upon the earlier of (i) such Manager's resignation or (ii) such Manager's removal pursuant to the affirmative vote of the Members holding greater than fifty percent (50%) of the limited liability company interests in the Company (the "<u>Vote of a Majority of the Members</u>").

d.    Any vacancy in the Manager position, whether occurring as a result of a Manager resigning or being removed, may be filled by appointment of a successor by (i) the Vote of a Majority of the Members or (ii) if there is no Vote of a Majority of the Members within fourteen (14) days of a vacancy, the entry of an order of the United States Bankruptcy Court for the District of Delaware obtained upon motion of any Member that provides the other Members not less than fourteen (14) days' notice.

---

¹ ~~The Manager shall be the individual or entity disclosed in the Plan Supplement and approved by the Bankruptcy Court in the Confirmation Order.~~

29581156.2

8. <u>Management Powers of the Manager</u>.  Except for powers specifically reserved to the ~~members~~ Members by this Agreement (if any) or by non-waivable provisions of applicable law, as provided herein, the Company shall be managed by the Manager as an authorized agent of the Company.  The Manager shall have the full, exclusive, and absolute right, power, and authority to manage and control the Company and the property, assets, and business thereof.  Subject to the restrictions specifically contained in this Agreement, the Manager may make all decisions and take all actions for the Company not otherwise provided for in this Agreement.  Any person dealing with the Company, other than a ~~member~~Member, may rely upon the authority of the Manager or any officer designated in writing as such by the Manager in accordance with <u>Section 9</u> (if any) in taking any action in the name of the Company without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action actually is taken in accordance with the provisions of this Agreement.  Notwithstanding anything to the contrary contained in this Agreement or otherwise applicable provision of law or equity, to the maximum extent permitted by the Act, the Manager shall owe no duties (including fiduciary duties) to the Company or the Members; *provided however* that a Manager shall have the duty to act in accordance with the implied contractual covenant of good faith and fair dealing. Notwithstanding anything to the contrary contained in this Agreement or otherwise applicable provision of law or equity, to the maximum extent permitted by the Act, no Manager shall be liable to the Company or any Member for breach of this Agreement or any duty (including any fiduciary duty); *provided* that such Member or Manager may be liable to the Company or any other Member for any act or omission that constitutes a bad faith violation of the implied covenant of good faith and fair dealing

9. <u>Officers</u>.  The Manager may, from time to time, delegate to one or more persons such authority and duties as the Manager may deem advisable.  In addition, the Manager may assign, in writing, titles to any person, including, without limitation, the titles of President, Vice President, Secretary, Assistant Secretary, Treasurer, and Assistant Treasurer.  Unless the Manager decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authority and duties that are normally associated with that office, subject to any specific delegation of authority and duties made pursuant to the first sentence of this <u>Section 9</u>.  Any number of titles may be held by the same person.  Each officer shall hold office until his successor shall be duly designated and shall qualify or until his death, until he shall resign, or until he shall have been removed in the manner hereinafter provided.  Any number of offices may be held by the same person.  The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed by the Manager.  Any delegation pursuant to this <u>Section 9</u> may be revoked at any time by the Manager.  Any officer may resign as such at any time.  Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time be specified, at the time of its receipt by the Manager.  The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation.  Any officer may be removed as such, either with or without cause, by the Manager whenever, in his judgment, the best interests of the Company will be served thereby; provided, however, that such removal shall be without prejudice to the contract rights, if any, of the person so removed.  Designation of any officer shall not of

3

itself create contract rights.  Any vacancy occurring in any office of the Company (other than a Manager) may be filled by the Manager.

10.    Exculpation; Indemnification.  To the fullest extent permitted by the Act, or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification, no present or former Manager of the Company, no present or former Member of the Company, or present or former officer of the Company shall be personally liable to the Company or any Member for or with respect to any acts or omissions in the performance of his or her duties as a Manager, Member or officer of the Company.  The Company shall indemnify, to the fullest extent permitted by the Act (or any other applicable law presently or hereafter in effect that increases the scope of such permitted indemnification), each person who is or was or had agreed to become a Manager, Member or officer of the Company, or each such person who is or was serving or who had agreed to serve at the request of the Manager, Members or an officer of the Company as an employee or agent of the Company or as a manager, director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise (including the heirs, executors, administrators or estate of such person) (collectively, the "Covered Persons").  Without limiting the generality or the effect of the foregoing, the Company may enter into one or more agreements with any person or entity which provide for indemnification greater or different than that provided in this Section 10.  To the maximum extent permitted by law, each Covered Person's duties to the Company, any Member or any other Person shall be eliminated.  Any repeal or modification of this Section 10 shall not adversely affect any right or protection existing hereunder immediately prior to such repeal or modification.  Any Manager, Member or officer of the Company shall be entitled to advancement of its reasonable expenses incurred in connection with the defense of an indemnifiable action in advance of the final disposition of such action; *provided*, that such person shall promptly repay to the Company the amount of any such advancement paid to it if it shall be determined that such person is not entitled to be indemnified by the Company in connection with such action.

11.    Dissolution.  The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (a) the unanimous written consent of the Members, or (b) the entry of a decree of judicial dissolution under § 18-802 of the Act.

12.    Authority of Members.   Unless authorized to do so by this Agreement or by the Manager, no member, agent, or employee of the Company shall have any power or authority to bind the Company in any way, to pledge its credit, or to render it liable pecuniarily for any purpose; *provided*, *however*, that the Manager may act by a duly authorized attorney-in-fact.

13.    Limitations On Authority.  The authority of the Manager over the conduct of the affairs of the Company shall be subject only to such limitations as are expressly stated in this Agreement or in the Act.

14.    Transferability of Interests.  A member Member may not assign in whole or in part its limited liability company interest in the Company without the consent

of the Manager, not to be unreasonably withheld, and [*]³ and ; provided that the transferee of any limited liability company interest in the Company shall be bound by the terms of this Agreement.  Notwithstanding the foregoing, there shall be no transfer of any limited liability company interest if such transfer directly or indirectly would cause the termination of the Company for state law or federal or state tax purposes or violate the then applicable U.S. federal or state securities laws or rules and regulations. The Manager may, in is reasonable discretion, require a member proposing to transfer its limited liability company interest in the Company to provide an opinion of counsel in a form reasonably acceptable to the Manager that the proposed transfer of such member's limited liability company interest in the Company shall not violate the immediately preceeding sentence.

15.    Admission of Additional Members.

a.The Manager shall update Exhibit A hereto from time to time to reflect the identification of Holders of Zohar III A-1 Note Claims that are identified subsequent to the Effective Date and are entitled to receive distributions under the Plan, in accordance with the mechanisms and procedures approved in the Confirmation Order.

a.    b.Except as provided in Section 15 and Section 16(a)14, additional members of the Company may be admitted to the Company with the consent of all of the membersManager.

b.    The Manager shall update Exhibit A hereto from time to time to reflect the identification of transferees of any limited liability company interest in the Company pursuant to Section 14 or additional members of the Company admitted pursuant to Section 15(a).

16.    Consents.  Any action that may be taken by the Manager or members at a meeting may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed by or on behalf of the Manager, member or members holding sufficient limited liability company interests in the Company to authorize or approve such action at such meeting.

17.    Amendments.  Except as otherwise provided in this Agreement, this Agreement may be amended only by the Vote of a Majority of the Members.

18.    Governing Law.  This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of Delaware.

19.    Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together, shall constitute one and the same Agreement.

20.    Tax Treatment.  The Company will be classified as an association taxable as a corporation for U.S. federal income tax purposes, and neither the Company

---

³    Note:  To be discussed

5

nor any Member will take any action (including the filing of any election) that would cause it to be taxable as anything other than a corporation for U.S. federal income tax purposes.

21.    <u>Tax Elections</u>.  Subject to <u>Section 20</u>, the Manager shall have the power to cause the Company to make all elections required or permitted to be made for income tax purposes.

22.    <u>Other Business Activities</u>.  Except as provided in this Agreement, no provision of this Agreement will be construed to limit in any manner any Member in the carrying on of its own businesses or activities.

23.    <u>Third Party Beneficiaries</u>.  This Agreement is made solely for the benefit of the Members and their permitted successors and assigns, and no other person or entity will have or acquire any right by virtue of this Agreement other than the Covered Persons (solely with respect to Section 10).

24.    <u>Effectiveness</u>.  Pursuant to Section 18-201(d) of the Act, this Agreement shall be effective as of the filing of the Certificate on [●]July 21, 2022.

*{Signature Page Follows}*

6

IN WITNESS WHEREOF, the parties hereto have made this Agreement effective as of the date and year first above-written.

~~Members~~Member:

[●]

_____

PHOENIX III RECOVERY, LLC

By: Phoenix III Intermediate, LLC, its sole member

By: New Phoenix III, LLC, its sole Member

By: BH VID LLC, its sole Member

By: Bardin Hill Investment Partners LP, as Investment Manager

By: _____
Name: ~~[●]~~John Freese
Title: ~~[●]~~Authorized Signatory


By: _____
[●]

_____

Name: ~~[●]~~Jacob Fishelis
Title: ~~[●]~~Authorized Signatory


*[Signature Page – LLC Agreement for New Stila Holdco LLC]*

Exhibit A

| Member | Address | Percentage Interest in the Company |
|--------|---------|-----------------------------------|
| [●] | [●] | [●] |

Exhibit B

Manager Compensation

| Member | Address | Percentage Interest in the Company |
|--------|---------|-----------------------------------|
| Phoenix III Recovery, LLC | 1000 North King Street, Wilmington, New Castle County, Delaware, 19801 | 100% |