IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>Zohar III, Corp.,[1]<br><br>Debtor. | ) Chapter 11<br>)<br>) Case No. 18-10512 (KBO)<br>)<br>)<br>)<br>) **Docket Ref. No. 3860** |

ORDER APPROVING CONSUMMATION OF
PORTFOLIO COMPANY TRANSACTION
<u>(INTREPID AND AGAPE HOSPICE)</u>

Upon that certain *Order (I) Approving Certain Modifications to the Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and its Affiliated Debtors Pursuant to Section 1127(b) of the Bankruptcy Code; (II) Finding That (A) Such Modifications Are Not Material and Adverse or (B) the Debtors Have Satisfied the Requirements of Section 1127(b) and (c) of the Bankruptcy Code With Respect to Such Modifications; (III) Confirming the Modified Plan; and (IV) Granting Related Relief* [Docket No. 3467] (the "<u>Confirmation Order</u>"), confirming the *Fourth Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code for Zohar III, Corp. and its Affiliated Debtors* (the "<u>Plan</u>"), that certain *Order Approving and Authorizing the Settlement Agreement By and Between the Debtors. Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class* dated May 21, 2018 [Docket No. 266] (the "<u>Settlement Order</u>," and Exhibit A

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Zohar III, Corp. (9612). The Debtor's address is c/o Province, LLC 70 Canal Street, Suite 12E, Stamford, CT 06902. In addition to Zohar III, Corp., the Debtor's affiliates include the following debtors whose bankruptcy cases have been closed prior to the date hereof, along with the last four digits of their respective federal tax identification numbers and chapter 11 case numbers: Zohar II 2005-1, Corp. (4059) (Case No. 18-10513); Zohar CDO 2003-1, Corp. (3724) (Case No. 18-10514); Zohar III, Limited (9261) (Case No. 18-10515); Zohar II 2005-1, Limited (8297) (Case No. 18-10516); Zohar CDO 2003-1, Limited (5119) and (Case No. 18-10517). All motions, contested matters, and adversary proceedings that remained open as of the closing of such cases, or that are opened after the date thereof, with respect to such Closed-Case debtors, are administered in this remaining chapter 11 case.

31771956.4

thereto the "Settlement Agreement"), and the *Order in Aid of Implementation of the Global Settlement Agreement Approved in These Cases for Authority to Establish Certain Procedures for the Corporate Approval of Portfolio Company Transactions and for Related Relief* [Docket No. 545] (the "Procedures Order"); and upon the notice filed with this Court on July 9, 2024 [Docket No. 3860] (the "Transaction Notice")[2] and the declarations attached thereto as Exhibit A (the "Transaction Declarations"); and this Court having jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the sale of the Purchased Assets to Cardinal Hospice, LLC and Agape Hospice of the Low Country, LLC (the "Purchasers" and each a "Purchaser") pursuant to that certain Asset Purchase Agreement (with any amendments, the "Agape APA") with Intrepid U.S.A., Inc. ("Intrepid" or the "Parent") and certain direct and indirect subsidiaries of Intrepid, as seller (the "Sellers" and with Parent, the "Seller Parties"), dated June 24, 2024 (the "Intrepid-Agape Transaction"); and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1. Pursuant to the Plan and Confirmation Order, David Dunn, in his capacity as Asset Recovery Manager of Phoenix II Recovery, LLC and Phoenix III Recovery, LLC (as successors in interest to Zohar II 2005-1 Limited and Zohar III, Limited) (the "Phoenix Recovery Entities"),

---

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Monetization Procedures Order, the Transaction Notice, or the Agape APA, as applicable. The terms "Patriarch Stakeholders" and "Other Stakeholders" as used herein shall have the meanings ascribed thereto in that certain *Order Approving and Authorizing the Settlement Agreement By and Between the Debtors. Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class* dated May 21, 2018 [Docket No. 266] (the "Settlement Order," and Exhibit A thereto the "Settlement Agreement").

is fully authorized to approve and consummate the Intrepid-Agape Transaction on behalf of the Phoenix Recovery Entities, including, but not limited to (i) authorizing Phoenix Recovery Entities to consent to the Intrepid-Agape Transaction, (ii) exercising any rights with respect to the Purchased Assets to implement or consummate the Intrepid-Agape Transaction, and (iii) authorizing and approving the release of the Phoenix Recovery Entities' liens, claims, encumbrances or other interests in connection with the Intrepid-Agape Transaction, as provided herein.

2. The Asset Recovery Manager, on behalf of the Phoenix Recovery Entities, is authorized to consent to and perform under the Agape APA and the Assignment. The Agape APA (and all ancillary documents), all of the terms and conditions thereof, and all of the transactions contemplated by the Intrepid-Agape Transaction are hereby approved, including but not limited to the transfer of the Purchased Assets to the Purchaser. The failure specifically to include any particular provision of the Agape APA in the Transaction Notice or this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agape APA be authorized and approved in its entirety. The transfer of the Purchased Assets to the Purchasers shall be a legal, valid and effective transfer of the Purchased Assets.

3. Based upon, among other considerations, the Transaction Notice and the Transaction Declarations, the Asset Recovery Manager's authorization, approval and consummation of the Intrepid-Agape Transaction is prudent, in good faith and fully consistent with the duties imposed upon the Asset Recovery Manager under the Plan.

4. The sale of the Purchased Assets and the consideration provided by the Purchasers, and the Assignment and the consideration provided by the Phoenix Recovery Entities, are fair and reasonable and shall be deemed for all purposes to constitute a transfer for fair value, full and

adequate consideration, reasonably equivalent value and fair consideration under any applicable law.

5. Effective as of the Closing, the sale of the Purchased Assets to the Purchasers shall constitute a legal, valid and effective transfer of the Purchased Assets and shall vest Purchasers with all rights, title and interests in and to the Purchased Assets, free and clear of all liens, claims, encumbrances and interests of any kind held by parties to the Settlement Order (or their successors under the Confirmation Order and Plan), or held or asserted by Ankura Trust Company, LLC, as administrative and collateral agent (the "Agent") under that certain First Amended and Restated Credit Agreement, dated as of January 11, 2007 (as amended, restated, supplemented, or otherwise modified from time to time, the "Credit Agreement" and the obligations thereunder, the "Phoenix Indebtedness"), among Parent and certain of its subsidiaries, as borrowers and guarantors, and the institutions and other investors from time to time party thereto as Lenders (collectively, the "Encumbrances"), pursuant to the Plan, the Confirmation Order, the Procedures Order, and the Settlement Order, with such Encumbrances attaching to the proceeds from the Intrepid-Agape Transaction with the same validity and priority as such released liens. For the avoidance of doubt, the Purchased Assets are being transferred to Purchasers free and clear of all liens, claims, encumbrances and interests of any kind held by the parties to the Settlement Agreement (including their successors under the Confirmation Order and Plan).

6. The sale process was conducted at arms' length, and in good faith. Neither the Phoenix Recovery Entities, the Asset Recovery Manager, the Seller, the Purchasers, nor the Agent has engaged in any action or inaction that would cause or permit the Agape APA or the transactions completed thereunder or the Assignment to be avoided or would impose any costs or damages.

7. The Phoenix Recovery Entities, the Asset Recovery Manager, the Agent and the Patriarch Stakeholders are authorized and directed to execute and deliver all instruments and documents, and take such other action—including the exercise of any shareholder or lender approval rights—as may be necessary or appropriate to consummate, implement and effectuate the Intrepid-Agape Transaction including, without limitation, execution of any and all instruments necessary to terminate, cancel and release all Encumbrances of any kind arising under or related to all credit facilities to which the Debtors, the Patriarch Stakeholders, or the Phoenix Recovery Entities is a party, including any mortgage, deed of trust, security agreement, UCC financing statement, pledge, control agreement, or other instrument related to the perfection of any Encumbrance against the Purchased Assets. Any actions taken by the Phoenix Recovery Entities, the Asset Recovery Manager, the Agent or the Patriarch Stakeholders in furtherance of the matters authorized by this Order are hereby ratified and confirmed.

8. Any cash payment to be made in connection with the Phoenix Indebtedness shall at Closing be paid directly to the Agent, and then applied by the Agent to the obligations under the Credit Agreement in accordance with its terms.

9. Nothing in this Order shall modify or waive any closing conditions or termination rights in the Agape APA, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

10. The parties, including, for the avoidance of doubt, the Purchaser, may file a certified copy of this Order with the appropriate clerk and recorded with the recorder of any state, county, or local authority to act to terminate and cancel any and all Encumbrances against the Purchased Assets.

11. The Retained Claims shall be, and hereby are, transferred and assigned to the Phoenix Recovery Entities (or their designee(s)), and the Phoenix Recovery Entities (or their designee(s)) are hereby vested with all authority to prosecute the Retained Claims, without challenge by virtue of this assignment to standing or the ability of the Phoenix Recovery Entities (or their designee(s)) to file and prosecute any and all Retained Claims. The Retained Claims shall be subject to any defenses by any Patriarch Stakeholder and any counterclaims of any Patriarch Stakeholders, except for any claims or counterclaims of the Patriarch Stakeholders that have been released.

- As consideration for the transfer and assignment of the Retained Claims pursuant to the preceding paragraph, the remaining principal amount of the Phoenix Indebtedness owed to the Phoenix Entities held by the Phoenix Entities is hereby deemed to be reduced by $5,500,000.

- To the extent not already asserted, the Phoenix Recovery Entities (or their designee(s)) shall commence any causes of action based upon a Retained Claim (a "Retained Claim Action") on or before January 17, 2025 (the "Retained Claim Deadline"), or such later date as agreed to in writing by the Phoenix Recovery Entities (or their designee(s)), as applicable, and the subject proposed Patriarch Stakeholder defendant. If a Retained Claims Action or Retained Claims Actions is / are not commenced by the Retained Claims Deadline, then the Retained Claims and any counterclaims, claims and defenses relating thereto shall be deemed to be released.

- "Retained Claims" means any and all of the claims, actions, suits and proceedings (including any counterclaims, third-party claims, and claims for contribution or indemnification) of Snelling Holdings, LLC, Zohar Healthcare, LLC, Intrepid U.S.A., Inc. ("Intrepid"), or any of Intrepid's direct or indirect subsidiaries (each an "Intrepid Party" and collectively the "Intrepid Parties"), whether commenced or filed before, at or after the Closing against any Intrepid Party's member, current or former directors, managers or officers, or current or former direct or indirect equityholders or controlling persons, or any of such Persons' affiliates, in whatever capacity, or any of their or their affiliates' respective former, current or future directors, officers, employees, general or limited partners, managers, members, direct or indirect equityholders, controlling persons, attorneys, advisors, agents or representatives or representatives of any of the foregoing, or any former, current or future estates, heirs, executors, administrators, trustees, successors or assigns of any of the foregoing, in each case to the extent based upon, attributable to, or resulting from actions, omissions, or circumstances occurring or existing prior to the Closing.

12. This Order shall be binding in all respects upon the Debtors' estates, the Phoenix Recovery Entities, the Asset Recovery Manager, all creditors, all holders of equity interests in the Debtors, the Patriarch Stakeholders, the Other Stakeholders, all holders of any interests or claims (whether known or unknown) against any Debtor, the Purchasers, the Seller and all successors and assigns of the Purchasers, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in this chapter 11 case or upon a conversion of this case to chapter 7 of the Bankruptcy Code.

13. The provisions of this Order are non-severable and mutually dependent.

14. As provided by Bankruptcy Rule 9014, the terms and conditions of this Order shall be effective immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rules 6004(h) and 6006(d). Time is of the essence in closing the sale and the Seller and the Purchasers intend to close the sale as soon as possible.

15. Nothing contained in the Plan, or order of any type or kind entered in this chapter 11 case, any subsequent chapter 7 or chapter 11 case of the Debtor, or any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the terms of this Order.

16. This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

Dated: July 19th, 2024  
Wilmington, Delaware

**KAREN B. OWENS**  
**UNITED STATES BANKRUPTCY JUDGE**