**REDACTED VERSION OF DOCKET NO. 4022**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ZOHAR III, CORP.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 18-10512 (KBO)<br><br>**Hearing Date:  July 30, 2026 at 1:00 p.m. (ET)**<br>**Reply Deadline:  July 28, 2026 at 5:00 p.m. (ET)**<br>**(with permission of the Court)**<br><br>**Re: Docket Nos. 3999 & 4014** |

**THE COMMON MEMBER'S REPLY TO PATRIARCH'S OBJECTION TO THE
EMERGENCY MOTION OF NEW STILA HOLDCO LLC TO ENFORCE THE
SETTLEMENT AGREEMENT WITH RESPECT TO PENDING LITIGATION
BETWEEN STILA STYLES, LLC AND PATRIARCH STAKEHOLDERS**

New Stila Holdco LLC (the "**Common Member**") hereby submits this reply (this "**Reply**") to the Objection (the "**Objection**") [Docket No. 4014] of Octaluna III, LLC ("**Octaluna**") to the *Emergency Motion of New Stila Holdco LLC to Enforce the Settlement Agreement with Respect to Pending Litigation Between Stila Styles, LLC and Patriarch Stakeholders* [Docket No. 3999] (the "**Enforcement Motion**")[2].  In support of this Reply, the Common Member respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The Patriarch Stakeholders, including Octaluna, have for years acknowledged that the tax distributions that are the subject of the Superior Court's order are subject to Paragraph 18

---

[1]    The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Zohar III, Corp., (9612). The Debtor's address is c/o Province, LLC 70 Canal Street, Suite 12E, Stamford, CT 06902. In addition to Zohar III, Corp., the Debtor's affiliates include the following debtors whose bankruptcy cases have been closed prior to the date hereof, along with the last four digits of their respective federal tax identification numbers and chapter 11 case numbers: Zohar II 2005-1, Corp. (4059) (Case No. 18-10513); Zohar CDO 2003-1, Corp. (3724) (Case No. 18-10514); Zohar III, Limited (9261) (Case No. 18-10515); Zohar II 2005-1, Limited (8297) (Case No. 18-10516); Zohar CDO 2003-1, Limited (5119) and (Case No. 18-10517). All motions, contested matters, and adversary proceedings that remained open as of the closing of such cases, or that are opened after the date thereof, with respect to such Closed-Case debtors, are administered in this remaining chapter 11 case.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Enforcement Motion.

of the Settlement Agreement; indeed, Patriarch included (and capped) those amounts in the Paragraph 18 Bar Order. ████████████████████████████████████████ ████████████████, Patriarch rushed headlong into a different jurisdiction and forced Stila to spend millions of dollars defending against Tilton's claim that it was obligated to pay distributions for those years, despite that Tilton laid in wait on asserting those claims until the Zohar Funds' bankruptcy cases were in full swing and she faced the prospect of losing control of the company. But while the Judgment resolves the question of Stila's obligation to pay those amounts (pending Stila's entitlement to appeal), the amounts remain disputed as between the Zohar Stakeholders and Octaluna, and unequivocally subject to Paragraph 18. Tilton could have chosen not to litigate and still received the very same disputed amount upon a sale of Stila that she is entitled to receive now; her election instead to take a wasteful detour to the Superior Court does not strip this Court of its jurisdiction to oversee the enforcement of the Settlement Agreement that has always governed how this amount is to be paid.

2.    The Court has repeatedly exercised its jurisdiction—both before and after the Effective Date and at the request of both the Zohar Funds and the Patriarch Stakeholders—to enforce the Settlement Agreement. Octaluna's arguments that the Court does not have subject matter jurisdiction to hear the Enforcement Motion—which asks the Court to do only and exactly that—can and should be rejected out of hand. And since the Court can enforce its prior orders, and that is what the Enforcement Motion asks this Court to do, the Anti-Injunction Act does not prohibit the Court from granting the Enforcement Motion. Nor is the Court's prior decision not to interfere in Stila's management and cash usage applicable "law of the case" that would bar the Court's application of Paragraph 18 squarely to Octaluna's efforts now to jump the line and enforce disputed amounts against Stila before the company has been sold.

# REDACTED VERSION OF DOCKET NO. 4022

3.      Octaluna's opening jurisdictional arguments are nothing more than arguments on the merits—that Paragraph 18 means something different than what the Common Member contends it does.  But Paragraph 18 is directly on point; it provides for an extension of the payment terms on the Patriarch Stakeholders' claims such that they are deemed due and payable through the closing of a monetization transaction—even if they would otherwise be due and payable (and subject to enforcement) at some point prior to the closing.  Thus, Paragraph 18 limits Octaluna's ability to compel payment of the Judgment (and any of its other claims) until the closing of Stila's monetization transaction regardless of whether it is subject to ongoing dispute (which it is) or is even undisputed.  This construction is supported by the text of Paragraph 18, and it is not altered by any of the surrounding text in the Settlement Agreement.  It was accepted by the parties until Octaluna's most recent litigation campaign.  And it is embedded in the "sell, pay, fight" protocol.

4.      The Patriarch Stakeholders' tactical (and value-destroying) litigation strategy cannot justify abandonment of the "sell, pay, fight" protocol that has been the touchstone of these bankruptcy cases.  More than eight years ago the Patriarch Stakeholders and Zohar Funds agreed to sell Stila. ███████████████████████████████████████████████ ███████████████████████████████████████.  Octaluna will be paid what it is entitled to under Paragraph 18 and the Paragraph 18 Bar Order at the closing of Stila's sale. ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████.  The equities therefore favor the Common Member.

**REDACTED VERSION OF DOCKET NO. 4022**

5.      The Enforcement Motion should be granted.

## ARGUMENT

A.°°°   *Octaluna's objections to jurisdiction are contrary to years of litigation over the Settlement Agreement both before and after Effective Date.*

6.      This Court has both "jurisdiction" and "authority" to grant the Enforcement Motion.  The Court has long held that it has subject matter jurisdiction to interpret and enforce the Settlement Agreement.  The Common Member and Patriarch Stakeholders have acknowledged this to be the case after the Plan's Effective Date.  Octaluna's argument that the Court lacks jurisdiction is simply an argument on the merits as to how the Settlement Agreement should be interpreted.  And Octaluna's "law of the case" argument is directly contradicted by the Court's ruling on October 24, 2022, and can be rejected out of hand:

> It's black-letter law that I possess the ability to enforce the terms and provisions in the settlement order entered by Judge Sontchi in May of 2018, as well as the agreements reached between the parties embodied in that settlement agreement, which is approved by and incorporated into the settlement order. The parties have never disputed my ability to do so. Post-confirmation doesn't change this.

Oct. 24, 2022 Hr'g Tr. 58:6-12.  Finally, because the Court is exercising this jurisdiction to enforce its own Settlement Order and the Settlement Agreement, the Anti-Injunction Act does not prohibit granting the Enforcement Motion.

*1.      The Court has subject matter jurisdiction to grant the Enforcement Motion.*

7.      In 2018, this Court entered the Settlement Order approving the Settlement Agreement.  Docket No. 266.  In that order, the Court "retain[ed] jurisdiction to hear any and all disputes arising out of the interpretation or enforcement of this Order," Settlement Order ¶ 5, and in the Settlement Agreement, the parties, including Octaluna, agreed to this Court's jurisdiction

over "resolution of any matter in connection with th[e Settlement A]greement or the enforcement thereof." Settlement Agreement ¶ 27.

8.    In 2022, this Court confirmed the Plan. The Plan provided that "the Settlement Agreement shall remain in full force and effect from and after the Effective Date" and "paragraphs 6 and 18 of the Settlement Agreement, shall remain in effect and binding on the parties to the Settlement Agreement, Ankura (and any successor to it), the Wind-Down Administrator and each Asset Recovery Entity and its respective Asset Recovery Manager." Plan § 6.7. The Plan provided for the Court's continued jurisdiction to:

> hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, the Asset Recovery Entity Agreements, the Litigation Trust Agreement, the Settlement Agreement, any transactions or payments contemplated hereby or thereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court.

Plan Art. XII, clause (h). In the Confirmation Order, the Court found that it properly retained jurisdiction over the foregoing matters. Confirmation Order ¶ SS ("Retention of Jurisdiction. The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.").

9.    The Enforcement Motion asks this Court to interpret the Settlement Agreement and to enforce its terms against Octaluna. This is the very jurisdiction that the parties agreed the Court would have in the Settlement Agreement, that the Debtors requested the Court retain under the Plan, and that the Court retained for itself in the Settlement Order and Confirmation Order. The Common Member has acknowledged the Court's continuing jurisdiction to enforce the Settlement Agreement following the Effective Date:

> We agree with Patriarch; the Court certainly has continuing jurisdiction to interpret, implement, and enforce the settlement

> agreement and the July 2nd order. Clearly, under the recent *Essar Steel* decision that is what you have.

*See* Objection ¶ 41 (citing Oct. 24, 2022 Hr'g Tr 35:6-20); *cf.* Objection ¶ 44 (arguing that "jurisdiction does not toggle with [the Common Members] convenience."). Octaluna likewise acknowledged the Court's continuing jurisdiction to enforce the Settlement Agreement: "Indeed, in the debtors' own plan, their own plan, Your Honor, they made it a point to preserve this Court's post-confirmation jurisdiction to handle matters related to interpretation and enforcement of the settlement agreement." Oct. 24, 2022 Hr'g Tr 15:12-15. And the court confirmed its continuing jurisdiction. *See* Oct. 24, 2022 Hr'g Tr. 58:6-12 (quoted at ¶ 6, *supra*).

10.    The Enforcement Motion clearly establishes the Court's subject matter jurisdiction to interpret and enforce the Settlement Order and Settlement Agreement under the Third Circuit's established precedent as both a core matter and related-to matter. *See* Enforcement Motion ¶ 19-20 (discussing Third Circuit cases). It also demonstrates that the Court has time and again exercised that jurisdiction. *See* Enforcement Motion ¶ 21 (citing prior motions to enforce the Settlement Agreement pre and post-Effective Date). Octaluna only makes a cursory reference to the Common Member's cited authority at all, and its discussion of *Resorts International* fails to acknowledge and address the fact that the Settlement Agreement being enforced here was a central part of the Plan, which *Resorts International* recognized would form a basis to exercise related to jurisdiction, even post-Effective Date.

11.    Octaluna's position ignores the parties' agreement in the Settlement Agreement itself for this Court to oversee its enforcement, and the Court's retention of ongoing jurisdiction over the Settlement Agreement. It is also wholly at odds with the position that it advanced to the Court in October 2022 and the Court's ruling at that time.

*2.*    *The Court has authority to grant the Enforcement Motion.*

12.    At bottom, Octaluna's argument is that it has a different interpretation of the Settlement Agreement than the Common Member.  That is exactly the type of dispute that this Court retained jurisdiction to resolve and has authority to resolve.  Recent decisions confirm that the Court has authority to rule on the Enforcement Motion.  For instance, in *In re iSun, Inc.*, Judge Horan recently exercised the court's jurisdiction to interpret whether a sale order and asset purchase agreement included a specific debtor as a seller and its assets as part of the Court-approved sale.  *In re iSun, Inc.*, No. 24-11144 (TMH), 2026 WL 1747280, at *5 (Bankr. D. Del. June 16, 2026) ("The parties in this case do not agree on what the Sale Order and Stalking Horse Agreement actually authorize. . . . This is precisely the kind of dispute that requires construction of the Sale Order. The parties are presenting competing interpretations of the Sale Order's decretal paragraphs and their relationship to the Stalking Horse Agreement's definitional terms. That dispute falls squarely within the Court's retained jurisdiction to 'interpret, implement, and enforce the terms and provisions of [the Sale] Order.' It is a dispute about what the order means and what it authorizes.").  *In re Lazy Days' RV Ctr. Inc.* supports a similar conclusion.  There the Third Circuit affirmed the reopening of a chapter 11 case to allow the Bankruptcy Court to interpret a dispute over a settlement agreement that arose in state court litigation, finding that "because the Bankruptcy Court here was well suited to provide the best interpretation of its own order, it had jurisdiction to reopen."  724 F.3d 418, 423 (3d Cir. 2013) (internal quotation marks and citations omitted).[3]

---

[3]    Like the Enforcement Motion, each of these decisions relied on *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) to establish that the Court had authority to interpret and enforce its prior orders.  *See* Enforcement Motion ¶ 19.

13.    N Other than challenging the Common Member's interpretation of the Settlement Agreement, Octaluna makes no serious challenge to the Court's authority to enforce the Settlement Agreement and Settlement Order.

14.    Octaluna argues that the Court's findings in October 2022— ██████████ ████████████████████████████████████████████████████ ████████████████████ precludes this action. *See* Objection ¶¶ 40-44.  But the question posed then was whether Patriarch was entitled to pre-closing relief *directed at Stila* to ██ ████████████████████████ under Paragraph 18.  And "upon review of the settlement agreement, [the Court found] that those requests are outside the scope of that paragraph and any other paragraph."  Oct 24, 2022 Hr'g Tr. 60:20-23.  Contrary to the contention in the Objection, the Court did not deny Octaluna's prior request because the parties were non-debtors or the request concerned a non-debtor's assets—it denied the request because there was no support for it in the Settlement Agreement.  The Enforcement Motion presents a wholly different inquiry under the Settlement Agreement about whether Patriarch can enforce its Judgment now or must wait for closing.  Denial of Octaluna's prior and distinctly different request provides no law of the case or estoppel to govern the Enforcement Motion.

### 3.    *The Anti-Injunction Act does not bar the Enforcement Motion.*

15.    While the Anti-Injunction Act generally prohibits federal court interference with state court lawsuits, it does not constrain a federal court from exercising its retained jurisdiction over its prior orders.  *See* 28 U.S.C. § 2283 (federal courts "may not grant an injunction to stay proceedings in a State court, except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments").  This Court's continuing jurisdiction over enforcement of the Settlement Agreement has been amply established.  The Third Circuit has found that where a settlement agreement has been overseen and approved by a federal

court, that court "emphatically, … is empowered to protect its jurisdiction and effectuate the settlement agreement." *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, 369 F.3d 293, 298 (3d Cir. 2004). In *Diet Drugs*, the district court approved a class action settlement that allowed parties to opt out of the settlement, subject to a limitation on pursuing exemplary damages. The district court then issued injunctions that limited the evidence that could be presented in subsequent state court proceedings by plaintiffs that exercised the opt-out to enforce the limitation on exemplary damages. The Third Circuit affirmed the district court's general authority to "effectuate the restraints of the settlement through an order limiting opt-out plaintiffs' conduct in ancillary state proceedings," while narrowing the scope of its injunctions to "minimize[] entanglement in the state judge's ability to supervise judicial proceedings in his own courtroom." *Id*. at 317.

16. The Common Member is asking for nothing more than an interpretation and enforcement of the Settlement Agreement. If, on the merits, the Court agrees with the Common Member that enforcement of the Judgment violates the Settlement Agreement, an order barring enforcement of the Judgment simply "effectuate[s] the restraints of the settlement," long ago agreed to by Octaluna and approved by this Court. *Id.* If, on the merits, the Court disagrees with the Common Member, the Enforcement Motion will be denied and there will be no injunction in place.

17. *Pennzoil* and *Local Union No. 107* do not require this Court to abstain from enforcing the Settlement Agreement. Here, the Settlement Agreement approved by this Court imposes an agreed upon limitation on enforcement of the Judgment. Well before Octaluna commenced proceedings in the Delaware Superior Court, the Common Member and its predecessors raised that limitation in defending against Octaluna's demands for payment of the

same claims in this Court. *See* ¶¶ 27, 29, *infra.* In contrast, in *Pennzoil*, the defendant sought a federal court injunction in New York against enforcement of a forthcoming Texas state court judgment. The federal court in New York had no apparent connection to the litigation and the federal law challenges raised in New York were only raised for the first time in that court. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 5-6 (1987). Thus, *Pennzoil* is easily distinguishable because the defendant and the dispute at issue in *Pennzoil* lacked the nexus to this Court that is presented by the Enforcement Motion. *In re Highway Truck Drivers & Helpers Local Union No. 107*, 888 F.2d 293 (3d Cir. 1989) is similarly inapplicable. It concerned a request to deem void *ab initio* a state court order adjudicating a debtor's liability that was entered during the course of a chapter 11 case. The automatic stay had been lifted at the time the order was entered, and the Third Circuit found that the full faith and credit clause prohibited the district court from nullifying an otherwise validly issued order. *Id*. at 298-99. The Enforcement Motion does not challenge entry of the Judgment and contains no request for this Court to alter the terms of the Judgment. The Enforcement Motion simply seeks to hold Octaluna to the limitations on its collection of claims (including the Judgment) that were agreed to and embodied in the Settlement Agreement prior to the commencement of the Delaware Superior Court proceedings.

B.°°° ***The Court should enforce the Settlement Agreement by barring enforcement of the Judgment.***

*1.* <u>Paragraph 18 allows Stila to defer payment of Octaluna's claims until closing</u>

18. The parties have long observed the "sell, pay, fight" protocol under the Settlement Agreement. This protocol, set forth almost six years ago, expressed this Court's construction of how the Settlement Agreement would be implemented: "Again, there is no harm to the Patriarch stakeholders because, again, the sell, pay and then fight protocols, what was agreed to by them, to maximize value and to stop the harm inflicted on all parties by the myriad of litigation." Oct. 29,

2020 Hr'g Tr. 27:9-13. There is no basis to abandon this protocol in the waning days of the Settlement Agreement and these chapter 11 cases out of deference to Patriarch's cynical litigation strategy.

19.     Paragraph 18 provides that the amounts owed to the Patriarch Stakeholders "shall be deemed due and payable through the closing of any monetization event." "Through" is temporal and extends the due-and-payable period until closing. This provision has the effect of extending the mandatory payment date of any of Octaluna's claims against Stila—deeming them to be due and payable "through the closing of any monetization event," even if the claims are actually due and payable before closing. In this manner, Paragraph 18 removes the "impetus" from any "due and payable legal judgment," *see* Objection ¶ 5, by permitting Stila to defer payment of such an amount through the closing of its monetization transaction. Octaluna's construction of Paragraph 18 ignores that the term "through the closing" modifies when the claims are due and payable; giving that term its proper effect establishes that under Paragraph 18 Stila can defer payment to Octaluna up until closing.

20.     Allowing pre-closing enforcement would vitiate other language in Paragraph 18. Paragraph 18 provides that Octaluna's claims will be paid at closing on a *pari passu* basis with other similarly situated claims. In denying Octaluna's October 2022 request to direct the collateralization or payment of its tax-related claims, the Court noted how the timing and *pari passu* provisions of Paragraph 18 work together:

> Paragraph 18 discusses the payment of Patriarch claims and equity interests upon a monetization event. It does not guarantee that funds will be available to pay such claims and interests and, in fact, the *pari passu* language in the paragraph contemplates scenarios in which funds will not be available to pay such claims and interest in full.

Oct. 24, 2022 Hr'g Tr. 60:24-61:4. ██████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████.

Indeed, Octaluna admits that it is seeking to improve the current unsecured priority of its claim through enforcement of the Judgment. *See* Obj. ¶ 53 ("New Stila Holdco is effectively attempting impermissibly to modify Octaluna's ability to execute its priority over Stila's assets and bear the risk of dissipation.").

21.     Octaluna's remaining arguments to support its construction of the Settlement Agreement and defeat the Enforcement Motion do nothing to bolster Octaluna's case.  If anything, they undermine it.

22.     Octaluna argues that Paragraph 18 only applies to "asserted" claims, but reads "asserted" to mean only claims that are asserted and still subject to dispute, as opposed to claims that are asserted and for which there is no dispute.  Octaluna's construction of Paragraph 18 with respect to what it characterizes as "asserted" claims appears to be no different than the Common Member's general interpretation of Paragraph 18.  *See* Objection ¶ 6 ("The 'sell, pay, fight' scheme means that 'asserted' claims or interests are deemed due and payable so that they can be paid through monetization, even though the parties may fight later about whether those claims or interests are valid.").  Yet, the text of Paragraph 18 says nothing about the disputed or undisputed nature of those claims; it applies to all of the Patriarch Stakeholders' claims that were supported by written documentation.  Once the Court removes the unsubstantiated disputed/undisputed

**REDACTED VERSION OF DOCKET NO. 4022**

qualifier that Octaluna has grafted onto the word "asserted" in Paragraph 18, the interpretations are harmonized and comport with the Common Member's construction.

23. Even if Octaluna were correct that Paragraph 18 only applies to claims for which there are ongoing disputes, the liabilities set forth in the Judgment remain disputed. As an initial matter, Stila intends to appeal the Judgment and it may still be overturned. Eaton Decl. ¶ 10. But critically, Octaluna's entitlement to any tax distributions at all, including those represented in the Judgment, is the subject of multiple claims in the Adversary Proceeding. *See* Enforcement Motion ¶ 26, n. 5 (identifying relevant counts in Adversary Proceeding). Thus, even under Octaluna's construction of the Settlement Agreement, the Judgment is a disputed claim that need not be paid until closing.

24. Nor is Paragraph 20 of the Settlement Agreement relevant or even operable. *Cf.* Settlement Agreement ¶ 20 ("Notwithstanding the foregoing, the Group A Portfolio Companies and the Group B Portfolio Companies can distribute payments as designated by the Designated Tax Director for the payment of their state and federal income taxes."). It is not relevant because Paragraph 20 applies only to payments of the Portfolio Companies' "state and federal income taxes" during the bankruptcy cases, not tax *distributions*, which are payments made to equity holders in Stila. For that reason, Paragraph 20 provides no authorization for tax distributions to Octaluna. It is also not operable because Paragraph 20 concerned an agreement as to the operation of the Portfolio Companies in the 15-Month Window, which long ago expired. And the specific sentence that Octaluna relies on concerns payments "designated by a Designated Tax Director," a role that Ms. Tilton abandoned in March 2020.

25. Octaluna's reference to various other payments is equally unavailing. Interest payments on Portfolio Company loans were ordinary course payments within the scope of

Paragraph 20, which mandated ordinary course operations be maintained in the 15-Month Window, and Paragraph 6, which reserved enforcement rights for "prospective non-payment of interest." *See* Settlement Agreement ¶¶ 6, 20. Octaluna also ignores that, as the Court well knows, interest largely ceased being paid at the end of the 15-Month Window when the Portfolio Companies' liquidity became too constrained to support their debt service. That interest accrued and became part of the claims the Zohar Funds and the Patriarch Stakeholders were paid upon closing of the monetization transactions— ████████████████████████ And the balance of the payments Octaluna refers to, PPAS and PPMG fees, all appear to be payments to entities controlled by Ms. Tilton that were authorized while she was in control of the Portfolio Companies, whereas the liabilities subject to the Judgment are amounts that Tilton claimed to have deferred and only demanded to be paid years after the fact, on the eve of losing control of Stila.

### 2. *The equities favor the Common Member.*

26. Octaluna's equitable arguments flip history on its head. Octaluna argues that "[i]f New Stila Holdco believed that any judgment in favor of Ms. Tilton and Octaluna could not be enforced due to the Settlement Agreement, it could and should have raised that at the outset, saving the parties and the Superior Court time and money." Objection ¶ 59. Octaluna cannot reasonably claim to have been ignorant of the Common Member's view that these amounts—which Patriarch included in the Paragraph 18 Bar Order—would be subject to Paragraph 18. Its argument otherwise is contradicted by the record of Paragraph 18 proceedings before this Court.

27. Octaluna has long been on notice of the Common Member's and its predecessors' position concerning the deferral of payment under Paragraph 18. In October 2022, when Octaluna sought relief from this Court to obtain cash collateralization or immediate payment of its tax-related claim, the Common Member objected, stating: "Nothing in the Settlement Agreement requires Tilton's Paragraph 18 claims to be paid in advance of a monetization event, for any reason.

Instead, it provides that they will only be paid upon the closing of a monetization event, on a pari passu basis with similarly situated creditors." Docket No. 3577 ¶ 3; October 24, 2022 Hr'g Tr. 43:14-24 (the Common Member advancing the same argument to the Court). In denying Octaluna's request, the Court adopted a construction of Paragraph 18 that seemed to comport exactly with the Common Member's construction. *See id.* at 60:24-61:4 (quoted at ¶ 20, *supra*).

28.    In litigating yet another dispute over Paragraph 18 less than a year later (related to the Portfolio Company Vulcan), another Asset Recovery Entity (Phoenix II) reiterated that position: "Lastly, nothing in Paragraph 18 contemplates Patriarch's claims being paid at any time prior to a monetization event, nor does it require the Portfolio Companies to pay or reserve cash for such claims." Docket No. 3773 ¶ 8; *see also* August 17, 2023 Hr'g Tr. 26:11-13 (Octaluna's counsel acknowledging the Common Member's position here: "As shown in Slide 3, Your Honor, the ARM says that Paragraph 18 does not contemplate payment pre-closing, but points to no provision in the agreement that says this.").

29.    Nor was this an interpretation new to the Common Member and the other Asset Recovery Entities. Litigation over Paragraph 18 and the Patriarch Stakeholders' entitlements took center stage after Ms. Tilton resigned from the Portfolio Companies. In September 2020, for instance, the Zohar Funds expressed the same viewpoint:

> Under this rubric, Patriarch's Paragraph 18 claims fall into three categories. ***First***, there are claims the Debtors concede are "documented" and those claims will be paid upon the closing of a monetization event on a pari passu basis with other similarly situated claims (subject to the Debtors' claw-back rights), in accordance with Paragraph 18 of the Settlement Agreement and the Court's August 4, 2020 ruling. ***Second***, there are claims that the Debtors concede are "documented," but for which the Debtors and the Portfolio Companies have asserted (or may assert) defenses or counterclaims before a monetization event occurs. Those claims—absent some change between now and a monetization event, such as an adjudication on the merits—will also be paid in accordance with

**REDACTED VERSION OF DOCKET NO. 4022**

paragraph 18 upon the closing of a monetization event (subject to the Debtors' claw-back rights). And ***third***, there are claims that are not "documented," in that Patriarch has not offered "written documentation showing the claim[s] … [are] owed to a Patriarch Stakeholder," and those claims should not be declared due and payable as Patriarch requests, unless and until entitlement to payment is sufficiently demonstrated.

Docket No. 1979 ¶ 2 (emphasis in original). Indeed, Octaluna seemingly shared that view at the time, writing to the Zohar Funds that its "claims are therefore deemed due and payable upon the commencement of any monetization transaction consistent with the terms of Paragraph 18 of the Settlement Agreement." Docket No. 1903, Exh. J p. 6 (Aug. 19, 2020 Letter from M. Loseman to J. Barry and M. Nestor).

30.    To be sure, the Superior Court litigation was both ▮▮▮▮▮▮▮▮▮▮ to Stila. Yet, Octaluna, not Stila or the Common Member, elected to pursue resolution of Octaluna's tax-related claim in Delaware Superior Court. Had Octaluna never filed suit, Octaluna would have received an approximately $21 million payment for its tax-related claims at the closing of a sale of Stila, as stipulated under the Paragraph 18 Bar Order. Now, after three years of litigation, Octaluna has won for itself an approximately $19 million Judgment on account of its tax-related claims. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Yet, Octaluna and Ms. Tilton chose to seek vindication of their asserted right to payment in advance of Stila's sale. They did so with full knowledge of the Common Member's position, and notwithstanding that the amounts being litigated were subject to the Paragraph 18 Bar Order. *See* ¶ 27, *supra.*

31.    Octaluna faults the Common Member for not intervening in the Delaware Superior Court to stop the litigation. But it was Octaluna that chose to commence a separate litigation, naming only Stila but not the Common Member or any other Zohar Stakeholders, over amounts it knew to be disputed in the adversary proceedings and subject to the Paragraph 18 Bar Order. In

any event, that action, while completely unnecessary, was permitted under the Settlement Agreement at the time it was commenced. *See*, *e.g.,* Settlement Agreement ¶¶ 15, 18 (providing that litigation by the Patriarch Stakeholders, among others, concerning the Portfolio Companies was only stayed during the "15-Month Window"). With that litigation concluded, and Octaluna threatening enforcement of its newly-awarded Judgment, it is only now that the Common Member has a ripe dispute that requires enforcement of the Settlement Agreement by this Court.

32.     Lastly, as stated in the Enforcement Motion, the Paragraph 18 Bar Order caps Octaluna's claim: it includes Octaluna's tax-related claims and specifically excludes the accrual of interest thereon. *See* Enforcement Motion ¶ 26. The Court has already denied the Patriarch Stakeholders' efforts to increase the claims subject to the Paragraph 18 Bar Order. *See id.* ¶¶ 25, 26 (discussing Patriarch Stakeholders' motion to amend Paragraph 18 Bar Order). Enforcement of the Judgment with respect to pre-judgment and post-judgment interest, which Octaluna claims exceeds $6 million, would separately violate the Paragraph 18 Bar Order. Octaluna failed to explain how it can collect the full Judgment in the face of the Paragraph 18 Bar Order, but its repeated invocation of its right to be paid $25 million confirms that it intends to ignore the Paragraph 18 Bar Order for this purpose, as well.

*3.*     ██████████████████████████████████████

33.     ██████████████████████████████████████████████████████████████████████████████████████.

34.     Stila is required to be sold under the Settlement Agreement. Octaluna and the other Patriarch Stakeholders agreed to that process long ago. And more than six years ago, the Court entered the Amended Timeline Order, which ultimately vested conduct of Stila's sale process in its independent director, David Eaton. ██████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████

35.    Octaluna's cynical gambit to upend this Court's prior rulings should not be rewarded. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

36.    Contrary to Octaluna's assertion that "[t]his Court held that the Settlement Agreement did not require either the Zohars or the Patriarch Stakeholders to preserve the value of the Portfolio Companies through a monetization event," Objection ¶ 56, n.6, the Common Member understood this Court to have recently affirmed that the goal of the Settlement Agreement and its implementing orders was "selling Stila in order to maximize its value given the facts and circumstances presented." Sept. 29, 2025 Hr'g Tr. 147:1-3; *see also* Settlement Agreement ¶ 10 ("It is acknowledged that the CRO will act in the best interests of the Zohar Funds, and Tilton in the best interests of the Group A Portfolio Companies."). ████████████████████ ████████████████

37.    ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

## **CONCLUSION**

38.     The Enforcement Motion should be granted.  The Court should enforce the "sell, pay, fight" protocol under the Settlement Agreement, and bar enforcement of the Judgment pending the closing of a sale for Stila.


[Signature page follows]

Dated: July 28, 2026          YOUNG CONAWAY STARGATT & TAYLOR, LLP
Wilmington, Delaware

/s/ Ryan M. Bartley
Michael R. Nestor (No. 3526)
Ryan M. Bartley (No. 4985)
Joshua J. Hall (No. 7510)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mnestor@ycst.com
       rbartley@ycst.com
       jhall@ycst.com

-and-

Jonathan E. Pickhardt, Esq. (admitted *pro hac vice*)
Ellison Ward Merkel, Esq. (admitted *pro hac vice*)
Evan Hess, Esq. (admitted *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: jonpickhardt@quinnemanuel.com
       ellisonmerkel@quinnemanuel.com
       evanhess@quinnemanuel.com

*Counsel to the Common Member*